JEREMY TALCOTT
CA Bar No. 311490
Pacific Legal Foundation
1212 West Amerige Avenue
Fullerton, CA 92833-2709
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
JTalcott@pacificlegal.org

STEVEN M. SIMPSON
CA Bar No. 336430
CALEB KRUCKENBERG*
VA Bar No. 97609
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 610
Arlington, VA 22201
Telephone: (202) 888-6881
Facsimile: (916) 419-7747
SSimpson@pacificlegal.org
CKruckenberg@pacificlegal.org

* *Pro Hac Vice Pending*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, | Case No. 5:22-cv-00855 |
| & | **COMPLAINT** |
| THE ALLIANCE FOR CONSTITUTIONAL SEX OFFENSE LAWS, | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF JUSTICE, | |
| & | |
| MERRICK B. GARLAND, ATTORNEY GENERAL OF THE UNITED STATES, in his official capacity, | |
| Defendants. | |

Plaintiffs, by their attorneys, Jeremy Talcott, Caleb Kruckenberg, and Steven M. Simpson of the Pacific Legal Foundation, hereby allege the following:

### PRELIMINARY STATEMENT

More than twenty-five years ago, Plaintiff John Doe, pled no contest to a single misdemeanor count of sexual battery. When he was 23, he had a consensual but inappropriate encounter with a 16-year-old, which did not involve sexual intercourse. His conviction required him to register as a sex offender.

Since then, Mr. Doe has dedicated himself to making amends and becoming a model citizen. He expressed sincere remorse for his crime and voluntarily underwent psychological treatment. And equipped with a healthier perspective, he pursued higher education and has had a rewarding and productive career, became a loving husband and father, and became an active participant in his church. He has done everything one is supposed to do following a criminal conviction.

Because of his remarkable rehabilitation, California courts expunged his conviction and issued a certificate of rehabilitation, which is a judicial recommendation for an unconditional pardon. He is no longer a convicted criminal and has not registered as a sex offender for more than a decade.

California's interest in recognizing Mr. Doe's turnaround, however, has been disregarded by the Attorney General of the United States. According to the Attorney General in a new rule, *Registration Requirements Under the Sex Offender Registration and Notification Act*, 86 Fed. Reg. 69,856 (Dec. 8, 2021), Mr. Doe is still a convicted sex offender and must register under the federal Sex Offender Registration and Notification Act (SORNA). Mr. Doe must do so, despite the fact that California, which is instrumental to the proper functioning of SORNA, not only doesn't require him to register but prohibits him from doing so.

The Attorney General has thus foisted a profound injustice on Mr. Doe. He is requiring Mr. Doe to do the impossible: register in California as a sex offender when such registration is impossible. But the failure to register under the provisions of

2

SORNA is a federal crime that carries a penalty of 10 years in prison. And the Attorney General now *presumes* Mr. Doe is guilty of this crime.

Registering now, even if it were possible, would mean that Mr. Doe would have to turn the clock back on the past decade and threaten his stable and productive life. He would face restrictions on everyday activities like picking his children up from school, face ostracization and harassment from his community, and put his hard-earned career success at risk. He would even be forbidden from speaking freely about his treatment at the hands of the government.

Mr. Does is not alone. Hundreds of other individuals who have had their convictions expunged are in the same position. They now face orders to register, even though they have no criminal convictions. And even those who *can* register in California are presumed to be criminals because that state does not collect all of the information required by the Attorney General.

The Attorney General has no lawful authority to overrule California's decision and classify Mr. Doe and others in similar circumstances as sex offenders. In *Gundy v. United States*, a plurality of the Supreme Court upheld a different provision of SORNA over a nondelegation challenge but avoided the constitutional concerns through narrow statutory interpretation. Writing for the four dissenters, Justice Gorsuch recognized that a delegation that "purports to endow the nation's chief prosecutor with the power to write his own criminal code" "scrambles th[e] design" of the Constitution, which "promises that only the people's elected representatives may adopt new federal laws restricting liberty." 139 S.Ct. 2116, 2131 (2019).

This case illustrates why Justice Gorsuch was correct. Under our constitution, no executive official should have the power to transform thousands of law-abiding citizens into criminals with the stroke of a pen—least of all the head of the agency that prosecutes those individuals. Because *Gundy* involved a different provision of SORNA, the Court's decision does not control the outcome of this case, and this case instead presents the question expressly reserved by the majority. This Court should

therefore hold the new rule unconstitutional.

## THE PARTIES

1. Plaintiff, John Doe,[1] is an individual residing in the State of California.

2. Mr. Doe enlisted in the U.S. Marine Corps at age 17 and was honorably discharged in 1996.

3. In 1994, while he was 23 and still serving in the Marines, Mr. Doe engaged in an otherwise-consensual encounter with a 16-year-old girl. This incident did not involve sexual intercourse.

4. In 1996, Mr. Doe pled no contest to a single misdemeanor count of sexual battery under California Penal Code § 243.4(a) and was sentenced to no jail time and three years' probation.

5. Mr. Doe was then required to register for life with the State of California as a sex offender.

6. After the conviction, Mr. Doe obtained his bachelor's degree, followed by a master's degree, and rose through the ranks of various companies.

7. In 2005, Mr. Doe was engaged to be married and rented a second home for him and his future wife. Mr. Doe did not, however, move into the home.

8. Mr. Doe did not understand that his obligation to register as a sex offender included registering his rental home address, where he did not live. He did not immediately update his registration information to include the future home as an additional residence address.

9. In 2006, Mr. Doe was charged with a misdemeanor count of failing to register under California Penal Code § 290(g)(1). He pled no contest and was sentenced to three years' probation.

10. Mr. Doe subsequently got married and had two children.

11. Mr. Doe became an involved father, active in his church and community, and

---

[1] John Doe is a pseudonym. Plaintiffs will file a motion for leave to proceed pseudonymously as soon as this matter is docketed.

1  continued to advance his career.

2  12. At present, Mr. Doe is a successful businessman residing in California.

3  13. Because of his rehabilitation, a state court expunged Mr. Doe's original conviction in 2002 pursuant to Cal. Penal Code § 1203.4.

5  14. In 2010, a state court expunged Mr. Doe's failure to register conviction, also pursuant to Cal. Penal Code § 1203.4.

7  15. Then in 2012, a state court issued a "Certificate of Rehabilitation" to Mr. Doe, under Cal. Penal Code § 4852.01, which California law recognizes as a "judicial recommendation for a pardon." *People v. Ansell*, 25 Cal. 4th 868, 891 (Cal. 2001).

10 16. Under California law, Mr. Doe is no longer required to register as a sex offender and has no criminal convictions.

12 17. The Alliance for Constitutional Sex Offense Laws (ACSOL) is a nonprofit organization "dedicated to protecting the Constitution by restoring the civil rights of people listed on the public registries and their families." https://all4consolaws.org/about-us/.

16 18. ACSOL is based in California and has more than 100,000 California registrants among its membership.

18 19. Mr. Doe is an ACSOL member.

19 20. ACSOL has members within the Central District of California and regularly advocates for those members' interests in courts, legislative bodies, and the public.

21 21. One of ACSOL's central purposes is limiting unlawful registration requirements for its membership to help its members live law-abiding and productive lives as a part of their communities.

24 22. Defendant Merrick B. Garland is the Attorney General of the United States and is sued in his official capacity.

26 23. Defendant Garland is the head of the U.S. Department of Justice.

27 24. Defendant U.S. Department of Justice (DOJ) is a federal agency, which issued the rule challenged in this case.

25. On December 8, 2021, DOJ, at the direction of Defendant Garland, issued the rule, *Registration Requirements Under the Sex Offender Registration and Notification Act*, 86 Fed. Reg. 69,856 (Dec. 8, 2021).

26. The new rule became effective on January 7, 2022.

27. Under the new rule, despite his conviction having been expunged, Mr. Doe is required to re-register as a sex offender in California.

28. In addition, Mr. Doe is directed to provide all of the information required by the new rule to California authorities in person, but California has informed him that he cannot do so as he is not considered a registrant under California law.

29. Many of ACSOL's members are in similar circumstances.

30. ACSOL's membership includes individuals convicted of sex offenses, as described by federal law, and required to register as sex offenders under both California and federal law. These members would be required to comply with the new rule, even though California does not provide avenues for them to provide all of the required information to California authorities.

31. ACSOL's membership also includes individuals convicted of California crimes that are sex offenses, as described by federal law, who are putatively required to register as sex offenders under federal law, but have had their convictions expunged under California Penal Code § 1203.4 and have no other convictions.

32. ACSOL's membership also includes individuals convicted of California crimes that are sex offenses, as described by federal law, who are putatively required to register as sex offenders under federal law, but have been granted relief from registration under California Penal Code § 290.5 and have no other convictions.

33. Like Mr. Doe, these ACSOL members with either expunged convcitions or relief from registration have no obligation to register under California law, and indeed, *cannot* register, yet are presumed to be in non-compliance with the new rule.

34. Throughout this Complaint, Defendants are referred jointly as DOJ or the Department except where otherwise specified.

### Jurisdiction and Venue

35. This Court has federal question jurisdiction pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

*36.* This Court also has inherent equitable jurisdiction to decide federal constitutional issues. *See Sierra Club v. Trump*, 929 F.3d 670, 694 (9th Cir. 2019).

37. This Court has the authority to grant an injunction and declaratory judgment in this matter pursuant to 28 U.S.C. §§ 2201, 2202 and 5 U.S.C. §§ 705, 706(2).

38. Venue for this action properly lies in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(b)(2), (e)(1) because a defendant resides in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### STATEMENT OF FACTS

**I.  Legal Background**

39. SORNA conditions certain federal funding on a state's implementation of a comprehensive federal registration system for those convicted of certain offenses. *See* 34 U.S.C. § 20913. When a jurisdiction fails to "substantially implement" SORNA, the Attorney General shall order that 10% of relevant grant funding be withheld from the state as a penalty. 34 U.S.C. § 20927(a).

40. To enforce SORNA, Congress also passed 18 U.S.C. § 2250. This statute makes it a federal crime, punishable by up to 10 years in prison, for anyone to fail to register as directed by SORNA. 18 U.S.C. § 2250(a)(1).

41. SORNA contains a number of delegations of authority to the Attorney General to decide its implementation and scope. In Section 20912(b), the Attorney General is directed to "issue guidelines and regulations to interpret and implement" SORNA. In Section 20913(d), the Attorney General is given "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other

1 categories of sex offenders who are unable to comply with" initial registration. In Section 20914(a)(7) and (8), the Attorney General can decide what information a registrant must provide to their local jurisdiction, including "any . . . travel-related information required by the Attorney General," or "[a]ny other information required by the Attorney General." Finally, the Attorney General may direct a registrant to "provide and update information" in whatever "time and manner" he prescribes. 34 U.S.C. § 20914(c).

42. In *Gundy v. United States*, the Supreme Court addressed a non-delegation challenge only to 34 U.S.C. § 20913(d) as it related to the initial registration requirement. 139 S.Ct. 2116, 2123 (2019). While the statute on its face allowed the Attorney General to determine whether SORNA would apply to pre-enactment convictions, according to a plurality of the Court, the Court had "already interpreted § 20913(d) to say something different—to require the Attorney General to apply SORNA to all pre-Act offenders as soon as feasible." *Id*. (citing *Reynolds v. United States*, 565 U.S. 432, 442–43 (2012)).

43. The plurality, therefore, avoided the delegation question entirely. Four justices concluded that "because § 20913(d) does not give the Attorney General anything like the 'unguided' and 'unchecked' authority that Gundy says" there was no need to wade into any difficult delegation questions. *Id*. The plurality noted, however, that if the statute had granted the discretion Gundy had argued, "we would face a nondelegation question." *Id*.

44. Justice Alito cast the deciding vote, and joined the outcome, but only concluded that Section 20913(d) set out a "discernable standard that is adequate under the approach this Court has taken for many years." *Id*. at 2131. He also wrote, however, "[i]f a majority of this Court were willing to reconsider the approach we have taken for the past 84 years, I would support that effort." *Id*. at 2132.

45. Justice Kavanaugh, who had joined the Court but did not participate in the decision, has since expressed his view that "Justice Gorsuch's scholarly analysis of

the Constitution's nondelegation doctrine in his *Gundy* dissent may warrant further consideration in future cases." *Paul v. United States*, 140 S.Ct. 342, 342 (2019) (statement respecting denial of cert.).

## II. The New Rule

46. The Attorney General has now issued regulations implementing new SORNA requirements under the remaining delegations of authority not discussed in *Gundy*. *Registration Requirements Under the Sex Offender Registration and Notification Act*, 86 Fed. Reg. 69,856 (Dec. 8, 2021).

47. In a rule that took effect on January 7, 2022, the Attorney General invoked his authority under 34 U.S.C. § 20912(b), 20913(d), and 20914(a)(7), (8), (b) to create much more burdensome registration requirements. *Id*. at 69,856.

48. According to the new rule, SORNA applies to "all sex offenders" "regardless of when the conviction . . . occurred" and "regardless of whether a jurisdiction has substantially implemented the Act." *Id*. at 69,884. According to the Attorney General, this would apply even to convictions that were expunged, as "only pardons on the grounds of innocence terminate registration obligations under SORNA." *Id*. at 69,866; *see also Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering and Tracking, National Guidelines* 73 Fed. Reg. 38,030, 38,050 (July 2, 2008) ("SMART Guidelines") (registration is excused only "if the predicate conviction is reversed, vacated, or set aside, or if the person is pardoned for the offense on the ground of innocence," and "an adult sex offender is 'convicted' for SORNA purposes if the sex offender remains subject to penal consequences based on the conviction, however, it may be styled").

49. The rule also sets out the information a registrant must provide to a local jurisdiction, which now includes a social security number, his "remote communication identifiers" (e.g., internet usernames), his work or school information, and information concerning any international travel, passport, and vehicle registration or professional licenses. *Id*. at 69,885.

50. The registrant must also appear "in-person" at least yearly in his local jurisdiction, and verify all information. *Id*. at 69,885–86. Depending on his predicate offense, the registrant may be required to appear as many as four times per year. *Id*. He must also report, in person, changes in address within three days, give advance notice if he plans to change residences, jobs, or school, report changes in remote communication identifiers within three days, and international travel plans prior to any trip. *Id*. at 69,886.

51. Any violations are federal felonies. *Id*.

52. Moreover, if a local jurisdiction does not comply with SORNA registration requirements, then a registrant is *guilty of the crime* of failing to register unless he proves at trial that registration was, in essence, impossible. That is, the new rule provides individuals who live in non-compliant states with an affirmative defense, but that defense is only available if they can prove at trial that "uncontrollable circumstances prevented the sex offender from complying with SORNA, [that] the sex offender did not contribute to the creation of those circumstances in reckless disregard of the requirement to comply and complied as soon as the circumstances preventing compliance ceased to exist." *Id*. There is, of course, no guarantee that an individual will be able to prevail on this defense and they must undergo the time and expense of a trial to find out if their state's non-compliance has turned them into a felon.

53. In the rule, the Department addressed non-delegation issues following *Gundy*. First, it read the *Gundy* decision as authorizing any action under Section 20913(d) because it "involved no exercise of legislative authority" and merely implemented SORNA as soon as possible. *Id*. at 69,869. Concerning Section 20914(a)(8), the Department insisted that this "is not an impermissible delegation of legislative authority, but rather is instrumental to the Attorney General's effectuating the legislative objective to protect the public from sex offenders and offenders against children by establishing a comprehensive national system for the registration of

those offenders." *Id*. at 69,856 (cleaned up). "The Attorney General's exercise of the authority under section 20914(a)(8) is limited to requiring additional information that furthers the legislative public safety objective or the implementation or enforcement of SORNA's provisions." *Id*.

### III. The Effect on Plaintiffs

54. Although Mr. Doe is not required—or even permitted—to register as a sex offender under California law, the new rule nevertheless requires him to register and comply with the new rule's requirements.

55. In particular, Mr. Doe will be required to provide information such as his social security number, his "remote communication identifiers" (e.g., internet usernames), his work or school information, and information concerning any international travel, passport, and vehicle registration or professional licenses to local authorities, in person at least yearly. Mr. Doe must also report, in person, changes in address within three days, give advance notice if he plans to change residences jobs or schools, report changes in remote communication identifiers within three days, and international travel plans prior to any trip.

56. Merely being required to register as a sex offender will prevent Mr. Doe from going to his children's schools, will harm his reputation, would likely result in the loss of his job, ostracization from his community, and potentially require him to move to avoid being near public schools and parks.

57. Furthermore, if Mr. Doe fails to follow any of the rule's registration requirements, he faces criminal prosecution and up to 10 years in federal prison.

58. California does not consider Mr. Doe a sex offender, however, and will not allow him to register in compliance with the new rule. California has no mechanism for registering people with no convictions, so the authorities simply turn him away when he has attempted to comply with the new rule.

59. DOJ has even found that California has not "substantially complied" with SORNA, in part, because it does not collect all of the information required by the

Attorney General. Nevertheless, the Attorney General still requires Mr. Doe to register as a sex offender with the State of California.

60. And because the new rule makes the impossibility of registration only an affirmative defense to a criminal prosecution, Mr. Doe faces potential criminal liability at any time.

61. The Department thus presumes that Mr. Doe is guilty of violating 18 U.S.C. § 2250(a)(1) and is free to initiate prosecution at will.

62. Mr. Doe also seeks to engage in anonymous speech on the internet through the use of anonymous remote communication identifiers, such as email addresses and social media usernames. He wishes to remain anonymous to preserve his privacy, and to avoid adverse reputational and other risks related to his past offenses. He also wishes to speak anonymously about issues of public concern, including sex offender registration requirements, and the unfairness of the new SORNA rule.

63. The new rule requires Mr. Doe to disclose his remote communication identifiers, which could be accessible by members of the public. Because of this disclosure requirement, Mr. Doe worries that he cannot speak freely about issues of public concern, particularly the new SORNA rule, without jeopardizing his reputation, privacy, and the safety of his family. Mr. Doe has refrained from speaking on these matters of public concern using his anonymous remote communication identifiers because of the new rule.

64. ACSOL has members in California who likewise have been convicted of sex offenses, as described by federal law, and are required to register as sex offenders under both California and federal law. These members would be required to comply with the new rule, even though California does not provide avenues for them to provide all of the required information to California authorities. These members are also presumed guilty of violating 18 U.S.C. § 2250(a)(1) and the United States is free to initiate prosecution at any time.

65. ACSOL's membership also includes individuals convicted of California

crimes that are sex offenses, as described by federal law, who are putatively required to register for life as sex offenders under federal law, but have had their convictions expunged under California Penal Code § 1203.4 or have been granted relief from registration under California Penal Code § 290.5 and have no other convictions. Like Mr. Doe, these ACSOL members have no obligation to register under California law, yet are presumed to be in non-compliance with the new rule and presumed guilty of violating 18 U.S.C. § 2250(a)(1).

66. ACSOL members who will be forced to re-register, despite having had their offenses of conviction expunged under California law face significant collateral consequences, such as loss of career opportunities and professional licensing, adverse reputation harms, inability to travel freely, and residency restrictions.

67. ACSOL's membership also includes individuals who wish to engage in anonymous speech on the internet through the use of anonymous remote communication identifiers, such as email addresses and social media usernames. These members wish to remain anonymous to preserve their privacy, and to avoid adverse reputational and other risks related to their past convictions. They also wish to speak anonymously about issues of public concern, including sex offender registration requirements and the unfairness of the new SORNA rule.

68. The new rule requires these ACSOL members to disclose their remote communication identifiers, which could be accessible by members of the public. Because of this disclosure requirement, these ACSOL members worry that they cannot speak freely about issues of public concern, particularly the new SORNA rule, without jeopardizing their reputation, privacy, and the safety of their families. These ACSOL members have refrained from speaking on these matters of public concern using their anonymous remote communication identifiers, because of the new rule.

## COUNT I—VIOLATION OF U.S. CONSTITUTION, NON-DELEGATION DOCTRINE, AND SEPARATION OF POWERS

69. Plaintiffs repeat and reallege each and every allegation hereinabove as if fully set forth herein.

70. The Administrative Procedure Act (APA) directs a court to "hold unlawful and set aside" an agency's rule that is "contrary to constitutional right." 5 U.S.C. § 706(2)(B).

71. Article I, § 1, of the Constitution provides: "All legislative Powers herein granted shall be vested in a Congress of the United States."

72. No agency has any inherent power to make law, and "an agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).

73. Article II, § 3, of the Constitution directs that the President "shall take Care that the Law be faithfully executed . . . ."

74. A "fundamental precept" of "another strand of [] separation-of-powers jurisprudence, the delegation doctrine," "is that the lawmaking function belongs to Congress, U.S. Const., Art. I, § 1, and may not be conveyed to another branch or entity." *Loving v. United States*, 517 U.S. 748, 758 (1996).

75. Congress may not "abdicate or [] transfer to others the essential legislative functions with which it is thus vested." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529 (1935).

76. The President, acting through his agencies, therefore, may not exercise Congress' legislative power to declare entirely "what circumstances . . . should be forbidden" by law. *Panama Refining Co. v. Ryan*, 293 U.S. 388, 418–19 (1935).

77. The provisions in 34 U.S.C. §§ 20912 and 20914 granting the Attorney General authority to issue the SORNA rule at issue, in this case, are unlawful delegations of legislative authority.

78. The statutes delegate to the Attorney General the unrestrained authority to

1  impose any registration requirement on sex offenders, without any guiding principles.

79. The statutes impermissibly allow the Attorney General to unilaterally define the scope of violations of 18 U.S.C. § 2250.

80. The new rule exercises this delegated authority to create new registration requirements that are not required or even contemplated by Congressional directive.

81. As a result of the foregoing, Plaintiffs are entitled to a declaratory judgment and permanent injunction declaring the delegations in 34 U.S.C. §§ 20912 and 20914 invalid, barring enforcement of the final rule, vacatur of the rule, attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

## COUNT II—VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(2)(C)—RULE IN EXCESS OF STATUTORY AUTHORITY

82. Plaintiffs repeat and reallege each and every allegation hereinabove as if fully set forth herein.

83. The executive branch's authority "must stem either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). Likewise, "[i]t is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). The APA directs a court to "hold unlawful and set aside" an agency's rule that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right" or "in excess of statutory jurisdiction [or] authority." 5 U.S.C. § 706(2)(A), (B), (C).

84. The final rule was issued in excess of statutory authority and is therefore invalid.

85. Under SORNA, "The term 'sex offender' means an individual who was *convicted* of a sex offense." 34 U.S.C. § 20911(1) (emphasis added). As relevant

here, "'sex offense' means—a criminal offense that has an element involving a sexual act or sexual contact with another[.]" *Id*. at § 10911(5)(A)(i).

86. Invoking Section 20912(b), the new rule creates 28 C.F.R. § 72.2, which says, "All terms used in this part have the same meaning as in SORNA." 86 Fed. Reg. at 69,884. In the explanation for the rule, DOJ elaborated that, notwithstanding a comment asking "that a sex offender be removed from the sex offender registry if he receives a pardon," it believed that "only pardons on the ground of innocence terminate registration obligations under SORNA[.]" *Id*. at 69,866.

87. The new rule, therefore, considers Mr. Doe's expunged convictions, as well as the expunged convictions of other ACSOL members, to be "convictions" requiring registration.

88. Under the plain meaning of the statutory text, a "conviction" does not include an adjudication that has been expunged under California law.

89. If a defendant satisfies its conditions, Section 1203.4(a)(1) results in him being "permitted by the court to withdraw their plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if they have been convicted after a plea of not guilty, the court shall set aside the verdict of guilty[.]"

90. Section 1203.4 thus "enables [a] defendant to truthfully represent to friends, acquaintances and private sector employers that he has no conviction." *People v. Arata*, 151 Cal. App. 4th 778, 788 (Cal. Ct. App. 2007) (citation omitted).

91. Because the new rule considers expunged convictions to nevertheless require registration, it conflicts with the plain meaning of the statutory term "conviction" and is thus invalid.

92. As a result of the foregoing, Plaintiffs are entitled to a declaratory judgment and permanent injunction barring enforcement of the final rule, vacatur of the rule, attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

# COUNT III—VIOLATION OF U.S. CONSTITUTION, DUE PROCESS CLAUSE

93. Plaintiffs repeat and reallege each and every allegation hereinabove as if fully set forth herein.

94. A court must set aside agency action that is "contrary to [a] constitutional right." 5 U.S.C. § 706(2)(B).

95. The due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution require the government to bear the burden of proving beyond a reasonable doubt all of the elements of a crime. *See In re Winship*, 397 U.S. 358, 361–62 (1970). This forbids shifting "the burden of proof to the defendant" to "prove the critical fact in dispute." *Mullaney v. Wilbur*, 421 U.S. 684, 701 (1975). Indeed, while legislatures have the power to define the elements of offenses, "[i]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime." *Patterson v. New York*, 432 U.S. 197, 210, (1977) (citation omitted). In all cases, due process requires that the government "must prove every ingredient of an offense beyond a reasonable doubt and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense." *Id*. at 215; *see also Dixon v. United States*, 548 U.S. 1, 6 (2006) (recognizing that due process does not allow shifting the burden to the defense to disprove "any of the elements of the offense itself").

96. All crimes require an *actus reus*, which the government must prove beyond a reasonable doubt.

97. Due process also requires that a person cannot be held criminally responsible for things over which he has no control.

98. According to DOJ, California has not substantially implemented SORNA, in part, because it does not require registrants to provide all the information required by the Attorney General.

99. Mr. Doe and other members of ACSOL are not required to register under

17

California law because their convictions have been expunged under Cal. Penal Code § 1203.4.

100. Mr. Doe and other members of ACSOL whose sex offense convictions have been expunged under Cal. Penal Code § 1203.4, are not *permitted* by California authorities to register as sex offenders as required by the new rule.

101. Other members of ACSOL who have successfully petitioned for relief from registration under Cal. Penal Code § 290.5 are also neither required to register under California law nor *permitted* to register as sex offenders as required by the new rule.

102. New Section 72(g)(1) asserts that the government has no obligation "to establish that a registration jurisdiction's procedures would have allowed a sex offender to register or keep the registration current in conformity with SORNA" before it prosecutes them for failing to do the "impossible." 86 Fed. Reg. at 69,867, 69,886.

103. The new rule presumes Mr. Doe and other members of ACSOL whose sex offense convictions have been expunged under Cal. Penal Code § 1203.4 or have been granted relief under Cal. Penal Code § 290.05 are guilty of the *actus reus* of Section 2250 because the state does not provide any means for them to comply with the rule's registration requirements.

104. The new rule "declare[s] an individual guilty or presumptively guilty of a crime," in violation of due process. *See Patterson*, 432 U.S. at 210.

105. As a result of the foregoing, Plaintiffs are entitled to a declaratory judgment and permanent injunction barring enforcement of the final rule, vacatur of the rule, attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

### COUNT IV—VIOLATION OF U.S. CONSTITUTION, FIRST AMENDMENT

106. Plaintiffs repeat and reallege each and every allegation hereinabove as if fully set forth herein.

107. A court must set aside agency action that is "contrary to [a] constitutional right." 5 U.S.C. § 706(2)(B).

108. "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." *Packingham v. North Carolina*, 137 S.Ct. 1730, 1735 (2017). The "most important place[] (in a spatial sense) for the exchange of views" today is "cyberspace … and social media in particular." *Id*. This applies in equal measure to those previously convicted of sex offenses. *Id*. Indeed, because people who have completed their sentences in full now only live with "collateral consequences of conviction rather than [] a restraint on liberty," and are thus "no longer subject to formal punishment," they "enjoy the full protection of the First Amendment." *Doe v. Harris*, 772 F.3d 563, 572 (9th Cir. 2014) (citations omitted).

109. As the Ninth Circuit has held, when the government requires those convicted of sex offenses to provide law enforcement with their remote communication identifiers it "imposes a substantial burden on sex offenders' ability to engage in legitimate online speech, and to do so anonymously," in violation of the First Amendment. *Id*. at 574, 578.

110. The new rule violates the First Amendment because it requires Mr. Doe, as well as ACSOL's members, to provide up-to-date "remote communication identifiers" as a part of their registration information. *See* 86 Fed. Reg. at 69,885. The definition of "remote communication identifiers" is impermissibly vague, and chills free expression and anonymous speech. *See* 86 Fed. Reg. at 69,859. The identifiers can also be disseminated to the public at will, states are encouraged to allow members of the public to check specific identifiers to see if they belong to a registrant, and jurisdictions are encouraged to share them with law enforcement agencies. *See Id.* Plus registrants must update any changes within three days, *in person* with law enforcement. *Id.* at 69,885. There is little doubt that this provision unlawfully chills protected speech, particularly anonymous speech, yet fails to meet

constitutional scrutiny.

111. As a result of the foregoing, Plaintiffs are entitled to a declaratory judgment and permanent injunction barring enforcement of the final rule, vacatur of the rule, attorneys' fees, expenses, costs and disbursements, and any other relief that may be appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, for the foregoing reasons, Plaintiffs demand judgment against Defendants as follows:

(i) The issuance of a preliminary injunction prohibiting Defendants from enforcing the final rule pursuant to 5 U.S.C. § 705 and 28 U.S.C. § 2201;

(ii) A declaratory judgment, pursuant to 5 U.S.C. § 706(2) and 28 U.S.C. § 2202, holding unlawful and setting aside 34 U.S.C. §§ 20912 and 20914 and the final rule;

(iii) An award of attorneys' fees and costs to Plaintiffs; and

(iv) Any other relief as the Court deems just, equitable and proper.

## JURY DEMAND

Plaintiffs herein demand a trial by jury of all triable issues in the present matter.

DATED: May 23, 2022

                Respectfully submitted,

                JEREMY TALCOTT
                By s/ *Jeremy Talcott*
                     JEREMY TALCOTT

                STEVEN M. SIMPSON
                By s/ *Steven M. Simpson*
                     STEVEN M. SIMPSON

                CALEB KRUCKENBERG
                By s/ *Caleb Kruckenberg*
                     CALEB KRUCKENBERG*

                **Pro Hac Vice Application Forthcoming*
                 *Attorneys for Plaintiffs*