BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch
JEREMY S.B. NEWMAN (D.C. Bar. #1024112)
KATHRYN L. WYER (Utah Bar #9846)
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Washington, DC  20005
Tel. (202) 616-8475/Fax (202) 616-8470
jeremy.s.newman@usdoj.gov
kathryn.wyer@usdoj.gov
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE #1 et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE et al.,<br><br>Defendants. | NO. 5:22-CV-855-JGB-SP<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:  July 18, 2022<br>Hearing Time: 9:00 a.m.<br>Courtroom: Riverside, Courtroom 1 |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ...................................................................................1

BACKGROUND .....................................................................................2

    I.    STATUTORY BACKGROUND..........................................2

    II.   REGULATORY BACKGROUND ....................................4

    III.  PROCEDURAL HISTORY ................................................6

LEGAL STANDARD...............................................................................6

ARGUMENT ...........................................................................................7

    I.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS ........................................................................................7

         A.    Plaintiffs Identify No Unconstitutional Legislative Delegation ................................................................... 7

         B.    Plaintiffs' First Amendment Claim Lacks Merit .................... 12

         C.    Plaintiffs' Due Process Claim Does Not Support Emergency Relief ............................................................... 18

         D.    Plaintiffs' Fail To Show that the Rule Exceeds Statutory Authority .................................................................. 21

    II.   THE OTHER FACTORS DO NOT SUPPORT A PRELIMINARY INJUNCTION........................................................ 24

CONCLUSION ......................................................................................25

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
Case No. 5:22-cv-855-JGB-SP

# TABLE OF AUTHORITIES

**Page**

## CASES

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ........ 6-7, 24, 25

*Baldwin Park Free Speech Coal. v. City of Baldwin Park*,
       No. 2:19-cv-9864, 2021 WL 4846059 (C.D. Cal. Oct. 18, 2021) ...............13

*Barber v. Thomas*, 560 U.S. 474 (2010) ...................................................................24

*Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011 (9th Cir. 2016) ...........................24

*Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*,
       467 U.S. 837 (1984) ...................................................................24

*City of Austin v. Reagan Nat'l Advert. of Austin LLC*, 142 S. Ct. 1464 (2022) .....13

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)...........................................7, 13

*Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003) ...........................................18

*Copeland v. Dep't of Alcoholic Beverage Control*,
       241 Cal. App. 2d 186, 50 Cal. Rptr. 452 (Ct. App. 1966) ...........................23

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ...............................................7

*Delgado v. Swearingen*, 375 F. Supp. 3d 1251 (N.D. Fla. 2018) ....................15, 17

*Dixon v. United States*, 548 U.S. 1 (2006) ...............................................................19

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) .................................13, 14, 15, 16, 17

*Doe v. Shurtleff*, 628 F.3d 1217 (10th Cir. 2010) .............................................13, 15

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ..........................25

*Guatay Christian Fellowship v. Cnty. of San Diego*,
       670 F.3d 957 (9th Cir. 2011) .......................................................................18

*Gundy v. United States*, 139 S. Ct. 2116 (2019) ............................ 2-3, 8, 10, 11, 12

*HSH, Inc. v. City of El Cajon*, 44 F. Supp. 3d 996, 1004–05 (S.D. Cal. 2014) ....... 19

*Humes v. Sac. Co. DHHS*,
    No. 2:18-CV-0004, 2019 WL 338223 (E.D. Cal. Jan. 28, 2019) ................ 23

*Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020) ...... 13

*In re Nat'l Sec. Agency Telecommc'ns Recs. Litig.*, 671 F.3d 881 (9th Cir. 2011) .. 9

*In re Paoli*, 49 F. Supp. 128 (N.D. Cal. 1943) ........................................ 23

*In re Phillips*, 17 Cal. 2d 55, 109 P.2d 344 (1941) .................................. 23

*In re Winship*, 397 U.S. 358 (1970) .................................................. 19

*Jackson v. Rausch*,
    No. 3:19-CV-377, 2021 WL 5365778 (E.D. Tenn. Nov. 17, 2021) ...... 15, 17

*Jennings v. Mukasey*, 511 F.3d 894 (9th Cir. 2007) ................................ 22

*J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928) ........................ 8

*Kercheval v. United States*, 274 U.S. 220 (1927) ................................... 24

*Laird v. Tatum*, 408 U.S. 1 (1972) .................................................. 15

*Lambert v. California*, 355 U.S. 225 (1957) ........................................ 19

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) ..................................... 6

*Loving v. United States*, 517 U.S. 748 (1996) ..................................... 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................ 7

*Mai v. United States*, 952 F.3d 1106 (9th Cir. 2020),
    *cert. denied*, 141 S. Ct. 2566 (2021). ........................................ 14

iv

*Marin All. for Med. Marijuana v. Holder*,
     866 F. Supp. 2d 1142 (N.D. Cal. 2011) ........................................................25

*McKune v. Lile*, 536 U.S. 24 (2002) ...................................................................2

*Mendoza-Linares v. Garland*, 51 F.4th 1146 (9th Cir. 2022) ...........................9

*Meyer v. Bd. of Med. Examiners*, 34 Cal. 2d 62, 206 P.2d 1085 (1949) ...............23

*Mistretta v. United States*, 488 U.S. 361 (1989) ...........................................8, 9

*Mullaney v. Wilbur*, 421 U.S. 684 (1975) .......................................................19

*Nichols v. United States*, 578 U.S. 104 (2016) ...................................................2

*Nunez-Reyes v. Holder*, 646 F.3d 684 (9th Cir. 2011)) .....................................9

*Oregon v. Legal Servs. Corp.*, 552 F.3d 965 (9th Cir. 2009) ...........................7

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) .................................14

*Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) ............................20

*Patterson v. New York,* 432 U.S. 197 (1977) ...................................................19

*People v. Ansell*, 25 Cal. 4th 868 (Cal. 2001) .................................................21

*People v. Frawley*, 82 Cal. App. 4th 784, 98 Cal. Rptr. 2d 555 (2000) ...............22

*Short v. Berger*, No. 22-1151, 2022 WL 1051852, (C.D. Cal. Mar. 3, 2022) ........25

*Singer v. United States*, 323 U.S. 338 (1945) .................................................11

*Smith v. Doe*, 538 U.S. 84 (2003) .....................................................................3

*Standen v. Whitley*, 994 F.2d 1417 (9th Cir. 1993) .........................................24

*State v. Blake*, 481 P.3d 521 (Wash. 2021) .....................................................19

*Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022) .........................................7

v

*Touby v. United States*, 500 U.S. 160 (1991) ..........................................................12

*United States v. Bridges*, 741 F.3d 464 (4th Cir. 2014) ............................................24

*United States v. Crowder*, 656 F.3d 870 (9th Cir. 2011) ..........................................20

*United States v. Eaton*, 144 U.S. 677 (1892) ..........................................................11

*United States v. Felts*, 674 F.3d 599 (6th Cir. 2012) ...............................................20

*United States v. Fernandes*, 636 F.3d 1254 (9th Cir. 2011) ....................................18

*United States v. Grimaud,* 220 U.S. 506 (1911) .......................................................11

*United States v. Hayden*, 255 F.3d 768 (9th Cir. 2001) ............................................23

*United States v. Lyte*,
        No. CR2001859001, 2021 WL 3511156 (D. Ariz. Aug. 10, 2021) .............19

*United States v. Mattix*, 694 F.3d 1082 (9th Cir. 2012) ......................................4, 22

*United States v. Melgar-Diaz*, 2 F.4th 1263 (9th Cir. 2021),
        *cert. denied*, 142 S. Ct. 813 (2022) ......................................................8, 10, 11

*United States v. Mingo*, 964 F.3d 134 (2d Cir. 2020) ...............................................12

*United States v. Motamedi*,
        No. 20-10364, 2022 WL 101951 (9th Cir. Jan. 11, 2022) ...........................9

*Vill. of Hoffman Ests. v. Flipside*, 455 U.S. 489 (1982) ..........................................20

*Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*,
        537 U.S. 371 (2003) ...................................................................................10

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474-76 (2001) ...............................9

*Willman v. Att'y Gen.*, 972 F.3d 819 (6th Cir. 2020) ...............................................20

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) ...........................................6, 24

vi

## **STATUTES**

Jacob Wetterling Crimes Against Children Registration Act ("Wetterling Act"),
      Pub. L. No. 103-322, § 170101, 108 Stat. 1796 (1994) ................................2

Sex Offender Registration and Notification Act ("SORNA"), part of the
      Adam Walsh Child Protection and Safety Act, Pub. L. No. 109-248,
      §§ 102-155, 120 Stat. 587 (2006)...........................................................*passim*

Keeping the Internet Devoid of Sexual Predators ("KIDS") Act,
      Pub. L. No. 110-400, 122 Stat. 4224 (2008) ...................................................3

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 ...............................6

18 U.S.C. § 2250 ...................................................................................................*passim*

34 U.S.C. § 20901 ...................................................................................................9

34 U.S.C. § 20911 ...................................................................................21, 22, 23

34 U.S.C. § 20912 ...................................................................................3, 4, 8, 9

34 U.S.C. § 20913 ...................................................................................................10

34 U.S.C. § 20914 ...................................................................3, 5, 8, 9, 10, 12

34 U.S.C. § 20916 ...................................................................................3, 14, 15, 16

34 U.S.C. § 20918 ...................................................................................................10

34 U.S.C. § 20919 ...................................................................................................10

34 U.S.C. § 20927 ...................................................................................................3

Cal. Penal Code § 290 ...........................................................................................23

Cal. Penal Code § 290.007 ....................................................................................23

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
Case No. 5:22-cv-855-JGB-SP

Cal. Penal Code § 290.45 ...................................................................16

Cal. Penal Code § 290.5 ....................................................................21

Cal. Penal Code § 1203.4 ...............................................21, 22, 23, 24

**LEGISLATIVE MATERIALS**

H.R. Rep. 103-392 at 6 (1993), 1993 WL 484758 ...............................2

H.R. Rep. 105-256 at 6 (1997), 1997 WL 584298 ...............................3

H.R. Rep. 109-218(I) (2005), 2005 WL 2210642 ..............................2, 3

S. Rep. 110-332 (2008), 2008 WL 1885750 ......................................14

**ADMINISTRATIVE MATERIALS**

Dep't of Justice, National Guidelines for Sex Offender Registration and
    Notification, Final Guidelines, 73 Fed. Reg. 38030 (July 2, 2008)
    ("2008 Guidelines")...............................................................*passim*

Dep't of Justice, Supplemental Guidelines for Sex Offender Registration and
    Notification, Final Guidelines, 76 Fed. Reg. 1630 (Jan. 11, 2011)
    ("2011 Supplemental Guidelines")........................................*passim*

Dep't of Justice, Proposed Rule, 85 Fed. Reg. 49332 (Aug. 13, 2020) ..................5

Dep't of Justice, Final Rule, 86 Fed. Reg. 69856 (Dec. 8, 2021) ...................*passim*

28 C.F.R. § 72.2 ..............................................................................21

28 C.F.R. § 72.6 .......................................................................*passim*

28 C.F.R. § 72.7 .....................................................................5, 8, 18, 20, 21

28 C.F.R. § 72.8 ..................................................................5, 18, 20

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
Case No. 5:22-cv-855-JGB-SP

# INTRODUCTION

Since 2006, the Sex Offender Registration and Notification Act ("SORNA") has set forth federal sex offender registration standards while relying on states to implement them. In December 2021, the Attorney General issued a final rule (the "Rule"), 86 Fed. Reg. 69856 (Dec. 8, 2021), describing registration requirements that SORNA and prior Attorney General guidelines already established well over a decade ago. The original plaintiffs sought to preliminarily enjoin the Rule, claiming, incorrectly, that it changed prior requirements in various ways. After they were denied relief for lack of standing, Plaintiffs amended their complaint to add three individuals claiming to be subject to SORNA's requirements, while retaining as plaintiffs Doe #1 (who still lacks standing) and an organization representing sex offenders. In their renewed request for emergency relief, Plaintiffs now concede that the Rule did not change prior requirements in the ways they had alleged.

Plaintiffs still fail to show any likelihood of success on the merits or establish irreparable harm. Their motion therefore should be denied. At the heart of Plaintiffs' claims is their assertion that, for various reasons, Plaintiffs face different registration requirements under SORNA than they do under California law and that, as a result, California does not collect information that SORNA requires. But the independence of SORNA's requirements is well established, and SORNA takes the possibility of differing state practices into account through its inclusion of a "knowingly" *mens rea* and an affirmative defense based on impossibility. Courts have never deemed SORNA invalid due to differing state requirements, instead recognizing that SORNA's affirmative defense is available if a state does not permit registration.

Against that backdrop, all of Plaintiffs' claims fail. Plaintiffs now concede that the Rule did not change SORNA's definition of "conviction," thereby also conceding that their statutory interpretation challenge fails. And although they continue to assert that state law relief under Cal. Penal Code § 1203.4 qualifies as an "expungement," they concede that Does #1 & #2 were relieved of state

1

registration requirements not under that provision at all, but through a certificate of rehabilitation, which plainly is not the equivalent of a reversal, vacatur, or setting aside of a prior conviction.

The Rule also is not the product of an unconstitutional exercise of delegated legislative power but instead tracks SORNA's express requirements while filling in limited details guided by the statute's intelligible principles. Nor does the collection of internet identifiers under the Rule unconstitutionally chill anonymous speech when the Rule differs in every material respect from the California law struck down by the Ninth Circuit. Finally, Plaintiffs' pre-enforcement due process challenge is unripe but would fail on the merits anyway because SORNA's affirmative defense in no way changes the government's burden to prove the elements of the charged crime. Plaintiffs' Motion for a Preliminary Injunction should be denied.

## **BACKGROUND**

## I.   STATUTORY BACKGROUND

States "began enacting registry and community-notification laws" in the early 1990s in order "to monitor the whereabouts of individuals previously convicted of sex crimes." *Nichols v. United States*, 578 U.S. 104, 106 (2016); *cf.* H.R. Rep. 109-218(I) at 28 (2005), 2005 WL 2210642. Legislatures have found sex offenders a particularly apt class of offenders for registration. "When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *McKune v. Lile*, 536 U.S. 24, 32-33 (2002). H.R. Rep. 109-218(I) at 29 (collecting studies). By 1993, sex offender registries existed in 24 states, including California. *See* H.R. Rep. 103-392 at 6 (1993), 1993 WL 484758.

In 1994, Congress enacted the Jacob Wetterling Crimes Against Children Registration Act ("Wetterling Act"), Pub. L. No. 103-322, § 170101, 108 Stat. 1796 (1994), which "conditioned certain federal funds on States' adoption of registration laws meeting prescribed minimum standards." *Gundy v. United States*, 139 S. Ct.

2116, 2121 (2019). By May 1996, all 50 states and the District of Columbia had some sort of registration system for released sex offenders in place. *See Smith v. Doe*, 538 U.S. 84, 90 (2003); H.R. Rep. 105-256 at 6 (1997), 1997 WL 584298. However, the "loopholes and deficiencies" in these systems "had allowed over 100,000 sex offenders (about 20% of the total) to escape registration." *Gundy*, 139 S. Ct. at 2121 (citing H.R. Rep. 109-218(I), at 20, 23-24, 26 (2005)).

In 2006, Congress replaced the Wetterling Act with SORNA, part of the Adam Walsh Child Protection and Safety Act. Pub. L. No. 109-248, §§ 102-155, 120 Stat. 587. SORNA "makes 'more uniform and effective' the prior 'patchwork' of sex-offender registration systems." *Gundy*, 139 S. Ct. at 2121. Like the Wetterling Act, SORNA is spending clause legislation, setting forth comprehensive registration standards for states and territories to follow, and conditioning federal funding on these jurisdictions' substantial implementation of its requirements. 34 U.S.C. §§ 20912(a), 20927(a). It also directs the Attorney General to "issue guidelines and regulations to interpret and implement" its provisions, 34 U.S.C. § 20912(b), and further authorizes the Attorney General to identify additional required information, *id.* § 20914(a)(7), (8), as well as time and manner requirements for reporting and updating information, *id.* § 20914(c). Via SORNA, Congress also established criminal sanctions for a sex offender subject to federal jurisdiction who "knowingly fails to register or update a registration" in accord with SORNA's requirements. *See* 18 U.S.C. § 2250(a). The same provision establishes an affirmative defense where "uncontrollable circumstances prevented the individual from complying" with registration requirements. *Id.* § 2250(c).

On October 13, 2008, Congress, through the Keeping the Internet Devoid of Sexual Predators ("KIDS") Act, Pub. L. No. 110-400, 122 Stat. 4224, directed the Attorney General to require sex offenders to report to their jurisdiction's registry "those Internet identifiers the sex offender uses or will use of any type that the Attorney General determines to be appropriate." *See* 34 U.S.C. § 20916(a). Congress

3

further directed that the Attorney General prohibit jurisdictions from including registrants' internet identifiers on public registry websites. *Id.* § 20916(c).

## II.  REGULATORY BACKGROUND

Pursuant to SORNA, 34 U.S.C. § 20912(b), the Attorney General first issued guidelines for registration jurisdictions in 2008. National Guidelines for Sex Offender Registration and Notification ("2008 Guidelines"), 73 Fed. Reg. 38030 (July 2, 2008). Promulgated through notice-and-comment rulemaking, the 2008 Guidelines went into effect on August 1, 2008, and have the force of law with respect to federal registration requirements. *United States v. Mattix*, 694 F.3d 1082, 1084 (9th Cir. 2012). The Attorney General issued supplemental guidelines, also following notice-and-comment rulemaking, in 2011. Supplemental Guidelines for Sex Offender Registration and Notification ("2011 Supplemental Guidelines"), 76 Fed. Reg. 1630 (Jan. 11, 2011).

These Guidelines delineated SORNA's registration requirements for implementing jurisdictions. Addressing the term "sex offender," the 2008 Guidelines explained that "SORNA registration requirements are predicated on convictions," and that registration is no longer required "if the predicate conviction is reversed, vacated or set aside, or if the person is pardoned for the offense on the ground of innocence." 73 Fed. Reg. at 38050. However, changes, whatever they are called, that do not "relieve a conviction of substantive effect," or that preserve "penal consequences," do not "negate the SORNA requirements." *Id.*

The 2008 Guidelines also required jurisdictions to collect from registrants their internet identifiers used "for purposes of routing or self-identification in Internet communications or postings," *id.* at 38055, while recommending that registries limit the public availability of such information, *id.* at 38059. The 2011 Supplemental Guidelines did not change the description of identifiers to be collected but implemented the KIDS Act's prohibition on allowing such identifiers to be included on public registry websites. 76 Fed. Reg. at 1631, 1633, 1637.

The Rule that Plaintiffs challenge here was issued in 2021, following notice-and-comment rulemaking, and went into effect on January 7, 2022. Proposed Rule, 85 Fed. Reg. 49332 (Aug. 13, 2020); Rule, 86 Fed. Reg. at 69856. The Rule does not supersede or amend SORNA's statutory provisions, nor the 2008 or 2011 Guidelines. *See id.* Rather, "[m]any of the requirements it articulates reflect express SORNA requirements," and it "embodies the same policies as those appearing in the previously issued . . . guidelines," in a "concise and comprehensive" form. *Id.* at 69856-57. In addition to repeating express statutory requirements, the Rule incorporates limited past exercises of the Attorney General's authority under § 20914(a)(7), (a)(8) and (c) by requiring dates of birth, information about places an offender stays for seven or more days, information about passports and immigration documents, and professional licenses, 28 C.F.R. § 72.6; and by setting forth certain additional time and manner specifications, *id.* § 72.7.

As to internet identifiers, § 72.6(b) repeats the requirement, present in federal law since the 2008 Guidelines and mandated by the KIDS Act, that sex offenders provide to their registering jurisdictions "[a]ll designations the sex offender uses for purposes of routing or self-identification in internet or telephonic communications or postings, including email addresses and telephone numbers." 28 C.F.R. § 72.6(b). Any changes in this information must be reported to the jurisdiction "within three business days," "by whatever means the jurisdiction allows." *Id.* § 72.7(e).

The Rule also describes, but does not alter, a sex offender's potential criminal liability under 18 U.S.C. § 2250(a). *See* 28 C.F.R. § 72.8(a)(1). Section 2250, not the Rule, "provides criminal liability for sex offenders based on SORNA violations." 86 Fed. Reg. at 69882. Any liability depends on the sex offender's awareness of a requirement since "sex offenders are not held liable" under § 2250 "for violations of registration requirements they did not know about." *Id*. Because "[r]egistration is a reciprocal process" that relies on jurisdictions to collect the information that sex offenders must submit, the Rule recognizes that "a registration jurisdiction's failure

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
Case No. 5:22-cv-855-JGB-SP

or refusal to carry out the reciprocal role needed to effect registration, or the updating of a registration, as required by SORNA," may suffice to invoke the affirmative defense set forth in 18 U.S.C. § 2250(c). 86 Fed. Reg. at 69882.

## III.   PROCEDURAL HISTORY

Plaintiff Doe #1 (then referred to as Doe) and ACSOL filed their Complaint on May 24, 2022 and sought a preliminary injunction.  [ECF 2, 13].  On September 28, 2022, the Court denied Plaintiffs' motion for lack of standing but granted leave to amend.  [ECF 40].  The now-operative First Amended Complaint ("FAC") [ECF 41] challenges—and Plaintiffs seek to preliminarily enjoin—the Rule on four grounds under the Administrative Procedure Act ("APA"): (1) that it reflects an exercise of impermissibly delegated authority by Congress, FAC ¶¶ 110-22; (2) that it exceeds the Attorney General's statutory authority under SORNA, *id.* ¶¶ 123-34; (3) that its description of the affirmative defense set forth in 18 U.S.C. § 2250(c) impermissibly presumes guilt in violation of due process, *id.* ¶¶ 135-49; and (4) that its requirement that sex offenders report internet identifiers violates the First Amendment, *id.* ¶¶ 150-55; PI Mot [ECF 44].

## LEGAL STANDARD

A preliminary injunction is "an extraordinary and drastic remedy" that should not be granted "unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). A plaintiff must show that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). After *Winter*, "plaintiffs must establish that irreparable harm is likely, not just possible[.]" *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Alternatively, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows

that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. Plaintiffs fail to satisfy either standard.

## ARGUMENT

## I.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

### A.   Plaintiffs Identify No Unconstitutional Legislative Delegation

Plaintiffs' first claim—that the Rule is an exercise of authority unconstitutionally delegated by Congress—is unlikely to succeed. As an initial matter, Plaintiffs have failed to establish standing for this claim.[1] A plaintiff's obligation to demonstrate standing "is an essential and unchanging" prerequisite to a federal court's jurisdiction to consider the plaintiff's claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The standing inquiry must be "especially rigorous" when reaching the merits of a claim would force a court to decide the constitutionality of actions taken by a coordinate Branch of the Federal Government. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "A plaintiff must demonstrate standing 'for each claim he seeks to press' and for 'each form of relief sought.'" *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Thus, to establish standing for their claims here, Plaintiffs must identify for each an injury-in-fact that is "concrete, particularized, and actual or imminent," fairly traceable to the distinct provisions of the Rule that they challenge, and redressable by a favorable ruling. *Id.* Where an alleged injury relates to potential criminal enforcement, Plaintiffs must show a "credible threat of prosecution" relating to the specific Rule provision at issue. *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022).

---

[1]  As Defendants previously argued, Doe #1 lacks standing because, based on Plaintiffs' allegations, his SORNA registration period has expired. Because Does #2-4 assert facts that suggest they may still be required to register under SORNA, Defendants do not rely on Doe #1's lack of standing in response to Plaintiffs' PI motion but reserve the right to raise this defense at a later stage.

Plaintiffs assert that the Rule results from legislative authority that Congress conferred on the Attorney General in 34 U.S.C. §§ 20912 and 20914. But Plaintiffs identify no Rule provision that (a) results from an alleged unconstitutional exercise of delegated authority under either provision and (b) causes them injury. Although § 20912 authorizes the Attorney General to issue guidelines and regulations "to interpret and implement" SORNA's other statutory provisions, 34 U.S.C. § 20912(b), the Rule in fact primarily repeats express statutory requirements. As described above, the Rule does incorporate past exercises of delegated authority under 34 U.S.C. § 20914(a)(7), (8), and (c), but those exercises are quite limited, requiring additional information such as dates of birth and professional licenses, and specifying when and how offenders must report or update their information. *See* 28 C.F.R. §§ 72.6, 72.7. Plaintiffs identify no injury relating in any way to these limited exercises. And even to the extent Plaintiffs rely on an alleged threat of criminal prosecution under 18 U.S.C. § 2250, they fail to identify any specific Rule provision in this context that, in their view, exposes them to an imminent threat.

Aside from their lack of standing, Plaintiffs identify no unconstitutional delegation. The Ninth Circuit has explained that the nondelegation doctrine "is an exceedingly modest limitation," imposing a test that is "not demanding." *United States v. Melgar-Diaz*, 2 F.4th 1263, 1266-67 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 813 (2022) (quoting *Gundy*, 139 S. Ct. at 2129 (plurality)). So long as a statute "lay[s] down . . . an intelligible principle" to guide the executive's discretion, "such legislative action is not a forbidden delegation of legislative power." *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928); *cf. Mistretta v. United States*, 488 U.S. 361, 372 (1989) (recognizing "Congress simply cannot do its job absent an ability to delegate power under broad general directives").[2]

---

[2] Plaintiffs suggest that the dissent in *Gundy*, 139 S. Ct. at 2129, and other non-majority opinions by certain Justices, have questioned the intelligible principle test. PI Mot. 9. However, the Ninth Circuit has recently explained that "'[w]e are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by

Here, Plaintiffs argue that 34 U.S.C. §§ 20912 and 20914 unlawfully delegate legislative authority to the Attorney General, but they fail to show that either provision lacks an "intelligible principle" to guide agency rulemaking. For one thing, Plaintiffs ignore that SORNA's stated purpose to "protect the public from sex offenders and offenders against children," 34 U.S.C. § 20901, provides the overarching principle that guides all exercises of the Attorney General's authority in this area. That principle is the same kind of "broad general directive[]" that the Supreme Court has deemed sufficient in other cases when accompanied by further guidance. *See Mistretta*, 488 U.S. at 372. For example, the Supreme Court has upheld delegations to agencies to take actions "generally fair and equitable," in the "public interest," or "requisite to protect the public health." *In re Nat'l Sec. Agency Telecommc'ns Recs. Litig.*, 671 F.3d 881, 896 (9th Cir. 2011) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474-76 (2001)). In conjunction with SORNA's more specific provisions, § 20901 is sufficient to guide the Attorney General's exercise of Congress's delegated authority to "issue guidelines and regulations to interpret and implement" SORNA, 34 U.S.C. § 20912(b).

And the challenged § 20914 subsections provide still further congressional guidance. Section 20914(a) requires sex offenders to provide to registries information including name; Social Security number; residence, employment, school, and vehicle information; international travel information, including dates and carrier and "any other itinerary or other travel-related information required by the Attorney General," 34 U.S.C. § 20914(a)(7); and "[a]ny other information required by the Attorney General," *id.* § 20914(a)(8). Plaintiffs argue that (a)(7) and

---

that Court,' and the intelligible principle test remains the standard for determining whether the delegation of legislative power is constitutional." *United States v. Motamedi*, No. 20-10364, 2022 WL 101951, at *1 n.1 (9th Cir. Jan. 11, 2022) (quoting *Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011)); *see also Mendoza-Linares v. Garland*, 51 F.4th 1146, 1167 n.11 (9th Cir. 2022) (applying intelligible principle standard).

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
Case No. 5:22-cv-855-JGB-SP

(a)(8) "do not include any qualification on 'information required by the Attorney General.'" PI Mot. 10. Their claim is plainly wrong as to (a)(7), which by its own terms is limited to "itinerary or other travel-related information." 34 U.S.C. § 20914(a)(7). Nor are Plaintiffs correct as to (a)(8). The plurality in *Gundy* emphasized that, in applying the nondelegation doctrine, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," rather than "in a vacuum." *Gundy*, 139 S. Ct. at 2126 (plurality). And "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 384 (2003). In context, § 20914(a)(8) confers authority on the Attorney General to make registration effective and protect public safety by requiring information relating to offenders' identities, locations, and primary activities.[3]

As for 34 U.S.C. § 20914(c), that delegation to the Attorney General to identify time and manner requirements for registration is so narrow that "'Congress need not provide any direction to the' Executive." *Melgar-Diaz*, 2 F.4th at 1267 (upholding statute allowing immigration officers to "designate[]" the "time or place" for lawful entry into the United States). Moreover, contrary to Plaintiffs' argument, PI Mot. 11, Congress itself set forth the basic time and manner specifications, identifying where, when, and how initial registration must take place, 34 U.S.C. §§ 20913(a), (b), 20919; when and how major changes must be reported, *id.* § 20913(c); and how and how often information must be updated and verified, *id.* § 20918. Congress could permissibly grant the Attorney General "narrow, interstitial

---

[3] In fact, the Attorney General has exercised his authority under § 20914(a)(7) and (8) to require information that is similar to the information explicitly required by statute and relevant to identifying and locating sex offenders. *See*, *e.g.*, 28 C.F.R. § 72.6(a)(2) (requiring reporting of date of birth); *id.* § 72.6(f) (requiring reporting of information about where offender's vehicle is habitually kept).

10

. . . authority" to fill in the remaining details. *Melgar-Diaz*, 2 F.4th at 1267.[4]

A proper understanding of the SORNA provisions that Plaintiffs attack thus belies Plaintiffs' assertion that they are the type of "unchecked" delegations that the *Gundy* plurality suggested could present a nondelegation concern. *See Gundy*, 139 S. Ct. at 2123 (plurality); PI Mot. 11. Rather, like the provision upheld in *Gundy*, these provisions are narrow conferrals of authority, guided by intelligible principles.

Plaintiffs argue, citing *United States v. Eaton*, 144 U.S. 677 (1892), that agencies cannot impose criminal penalties without "sufficient statutory authority." PI Mot. 10. But *Eaton* merely held that, under the facts of that case, Congress had not authorized an agency to make a particular regulatory violation a crime. 144 U.S. at 688. The Supreme Court later clarified that *Eaton* "turned on its special facts" and does not "state a fixed principle that a regulation can never be a 'law' for purposes of criminal prosecutions." *Singer v. United States*, 323 U.S. 338, 345 (1945). Rather, "the Executive or an independent agency [may] define[] by regulation what conduct will be criminal, so long as Congress makes the violation of regulations a criminal offense and fixes the punishment, and the regulations 'confin[e] themselves within the field covered by the statute.'" *Loving v. United States*, 517 U.S. 748, 768 (1996) (quoting *United States v. Grimaud,* 220 U.S. 506, 518 (1911)).

Here, Congress itself identified "knowing[] fail[ure] to register or update a registration as required by [SORNA]" as a crime chargeable against sex offenders subject to federal jurisdiction. 18 U.S.C. § 2250(a). Courts have repeatedly rejected nondelegation challenges to the imposition of criminal liability under this provision, including cases where the predicate offense involved a violation of the Attorney General's rules. *See Gundy*, 139 S. Ct. at 2122-23 (rejecting nondelegation challenge

---

[4] Plaintiffs also allege that the Rule "re-defin[es] the word 'conviction,'" PI Mot. 11, but this appears to be an inadvertent holdover from Plaintiffs' first PI motion, as Plaintiffs now concede that the Rule did not change the Attorney General's prior explanation of the term "convicted" in SORNA's definition of "sex offender." *See* PI Mot. 20-21 (acknowledging explanation in 2008 Guidelines still applies).

to Attorney General's determination in a final rule that SORNA's registration requirements applied to pre-Act offenders); *United States v. Mingo*, 964 F.3d 134, 137-39 (2d Cir. 2020) (rejecting nondelegation challenge based on Congress's delegation to Secretary of Defense "which particular military offenses should qualify as a 'sex offense'" under SORNA). Moreover, in regard to the specific provisions Plaintiffs challenge here, Congress expressly stated that sex offenders "shall provide . . . information required by the Attorney General," 34 U.S.C. § 20914(a), (a)(7), (a)(8), and "shall provide and update information . . . in conformity with any time and manner requirements prescribed by the Attorney General," *id.* § 20914(c). A violation of SORNA's requirement to comply with the Attorney General's directions within these narrow contours thus falls within the offense defined by § 2250(a).

Plaintiffs also cite *Touby v. United States*, 500 U.S. 160 (1991), for the notion that "something more than an intelligible principle" may be required for delegation in the criminal context. PI Mot. 10. But *Touby* did "not resolve the issue," holding the statute under review would "pass[] muster even if greater congressional specificity is required in the criminal context." *Touby*, 500 U.S. at 166. In *Gundy*, the Court answered the question left open in *Touby* by applying the intelligible principle test (rather than a stricter test) to uphold a sex offender's conviction under § 2250 for violating SORNA. 139 S. Ct. at 2123 (plurality) (applying "intelligible principle" test); *id.* at 139 S. Ct. at 2131 (Alito, J., concurring in judgment) (voting to affirm based on "the approach this Court has taken for many years").

## C.    Plaintiffs' First Amendment Claim Lacks Merit

Plaintiffs fare no better with their First Amendment challenge to the Rule's requirement that sex offenders provide registries with "[r]emote communication identifiers." *See* 28 C.F.R. § 72.6(b). This provision reiterates a requirement put in place in 2008, *see* 73 FR at 38055; 76 Fed. Reg. at 1637, and expressly mandated in the 2008 KIDS Act, 34 U.S.C. § 20916(a), along with the requirement that identifiers be exempted from public website posting. *See* 86 Fed. Reg. at 69872.

12

Plaintiffs argue that this long-standing requirement chills their anonymous protected speech. But, according to them, California does not currently collect identifiers, making it impossible for Plaintiffs to provide this information or to assert a certainly impending prospect of a chill as a result. *See* Bellucci Decl. ¶ 11 (PI Mot. Ex. E). Their speculation that California might in the future collect such identifiers is not enough to confer standing to raise this claim, much less does it warrant emergency relief. *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020) (chilling effect based on "fear of future injury that itself" is "speculative" cannot confer standing); *accord Clapper*, 586 U.S. at 418.

Even if the Court reaches the merits of this claim, Plaintiffs fail to show a likelihood of success. Rather, Plaintiffs continue to pursue the incorrect notion that § 72.6(b) is "virtually indistinguishable" from the provision struck down in *Doe v. Harris*, 772 F.3d 563, 575 (9th Cir. 2014), *see* PI Mot. 13, even though § 72.6(b) shares none of the features deemed problematic in *Harris*.

The Ninth Circuit has agreed with other courts that provisions requiring sex offenders to report internet identifiers are content neutral and thus are at most subject to intermediate scrutiny under the First Amendment. *Harris*, 772 F.3d at 575; *cf. Doe v. Shurtleff*, 628 F.3d 1217, 1223 (10th Cir. 2010) (holding Utah provision content neutral). Like other such provisions, § 72.6(b) "[o]n its face . . . makes no reference to specific subject matters or viewpoints" and thus qualifies as content neutral. *Harris*, 772 F.3d at 575; *accord City of Austin v. Reagan Nat'l Advert. of Austin LLC*, 142 S. Ct. 1464, 1472 (2022); *Baldwin Park Free Speech Coal. v. City of Baldwin Park*, No. 2:19-cv-9864, 2021 WL 4846059, at *6 (C.D. Cal. Oct. 18, 2021). Such requirements are deemed narrowly tailored and upheld as long as they do not burden "substantially more speech than is necessary to further the government's legitimate interests." *Harris*, 772 F.3d at 577 (internal quotation and alterations omitted). Here, the provision at issue both furthers the government's legitimate interests and does not burden substantially more speech than necessary.

13

The Ninth Circuit has already recognized that the governmental interests underlying identifier reporting requirements are legitimate. *Id.* (collecting cases and concluding that California "clearly has a legitimate interest" in "preventing and responding to crime, particularly crimes as serious as sexual exploitation and human trafficking"); *cf. Packingham v. North Carolina*, 137 S. Ct. 1730, 1739-40 (2017) (Alito, J., concurring) ("The State's interest in protecting children from recidivist sex offenders plainly applies to internet use."). Plaintiffs argue that the Attorney General failed to explain the justification for the requirement. But that is wrong. In fact, the Attorney General has provided such justification, *see* 73 Fed. Reg. at 38055; 86 Fed. Reg. at 69872, as did Congress when mandating the requirement over a decade ago. *See* S. Rep. 110-332, at *1-2 (2008) (explaining that the KIDS Act was intended to address child exploitation "perpetrated through the use of the Internet" and thus to "fill a gap left by earlier sex offender registration laws").[5] As the Ninth Circuit has recognized, courts "must accord substantial deference to the predictive judgments of Congress." *Mai v. United States*, 952 F.3d 1106, 1117-18 (9th Cir. 2020) (internal quotation omitted), *cert. denied*, 141 S. Ct. 2566 (2021). The recognition by California and other states of a legitimate interest in collecting such information bolsters Congress's conclusion. The first prong of intermediate scrutiny is thus easily satisfied.

Section 72.6(b) is also narrowly tailored. Plaintiffs focus on the impact of the internet identifier reporting requirement on sex offenders' anonymous speech. However, SORNA does not require or encourage public disclosure of identifiers. *Cf.* 34 U.S.C. § 20916(c) (exempting from public disclosure any "[internet identifier] information provided by a sex offender"); *see also* 76 Fed. Reg. at 1637 (adopting

---

[5] Plaintiffs ignore these statements, instead citing the Attorney General's explanation for collecting telephone numbers. PI Mot. 14. But although § 72.6(b) also requires reporting of telephone numbers, Plaintiffs assert no chill on their protected speech from the collection of telephone numbers or otherwise suggest that collection of telephone numbers is at issue here. *See* Exs. A ¶ 22, B ¶ 16, C ¶ 18, D ¶ 12.

14

mandatory exemption of sex offenders' internet identifiers from public website posting). A requirement to report identifiers to the government allows such information to be used later "to trace speech back to its source," *Shurtleff*, 628 F.3d at 1222, but this "affect[s] anonymity only after" speech occurs, *id.* at 1223, and does not "unnecessarily chill" speech, *id.* at 1225. *See also Laird v. Tatum*, 408 U.S. 1, 11 (1972) (courts have not deemed the government's information-gathering activities by themselves to impermissibly chill speech). Other courts have thus upheld similar requirements against First Amendment challenges. *Shurtleff*, 628 F.3d at 1225; *Jackson v. Rausch*, No. 3:19-CV-377, 2021 WL 5365778, at *4–5 (E.D. Tenn. Nov. 17, 2021) (rejecting claim that disclosing identifiers to Tennessee law enforcement had an unconstitutional chilling effect); *Delgado v. Swearingen*, 375 F. Supp. 3d 1251, 1261-62 (N.D. Fla. 2018) (upholding disclosure of identifiers to law enforcement because they had been used "to investigate and solve crimes").

Plaintiffs are entirely wrong in asserting that § 72.6(b) is "virtually indistinguishable" from the California provision struck down in *Harris*. In fact, the law at issue in *Harris* was different in each respect that Plaintiffs cite. Plaintiffs first assert that the Rule's definition of "[r]emote communication identifiers" is "nearly identical" to the law considered in *Harris*. PI Mot. 13. But the problem with the California law's definition, according to the Ninth Circuit, was its inclusion of "any and all Internet identifiers *established or used* by the person," as well as Internet Service Providers ("ISPs"); the Ninth Circuit held that the ambiguities in this language, which arguably required sex offenders to report identifiers not used for interactive communication, "unnecessarily chill[ed] protected speech." *Harris*, 772 F.3d at 578-79. Here, in contrast, the Rule contains no such ambiguities. Instead, incorporating the 2008 statutory definition, the Rule clearly applies only to identifiers used for internet "communications or postings" and does not require ISPs. *See* 34 U.S.C. 20916(e)(2); 28 C.F.R. § 72.6(b). Other courts have concluded that similar language raises no chilling concerns. *Shurtleff*, 628 F.3d at 1221 & n.1.

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
Case No. 5:22-cv-855-JGB-SP

Plaintiffs next argue that the Rule allows a registrant's identifiers to be "disseminated to the public at will" just like in *Harris*. PI Mot. 14. That is also wrong. In *Harris*, the court struck down the California law largely because it expressly authorized state law enforcement to publicly disclose offenders' internet identifiers whenever "necessary to ensure public safety," while vesting "unbridled discretion" in the law enforcement agency to determine when this condition was satisfied. *Harris*, 772 F.3d at 580-81. Here, in contrast, federal authorities do not publicly disclose sex offenders' internet identifiers, and SORNA has prohibited the inclusion of internet identifiers on public websites since 2011. *See* 34 U.S.C. § 20916(c); 76 Fed. Reg. at 1637.[6] Plaintiffs also cite no language in SORNA or the Rule requiring or encouraging public disclosure by state law enforcement agencies. *See* PI Mot. 15 (quoting SORNA Guidelines' explanation of what SORNA does *not* prohibit—namely, jurisdictions' sharing of internet identifiers for law enforcement and other legitimate purposes "other than public disclosure.").

To the extent an implementing jurisdiction's own laws allowed for public disclosure, any concerns would properly be addressed to that jurisdiction. But Plaintiffs' jurisdiction—California—has already revised its law in response to the Ninth Circuit's decision in *Harris*. Rather than granting law enforcement discretion to publicly disclose internet identifiers, California now prohibits any such disclosure. *See* Cal. Penal Code § 290.45(b) ("Information that may be provided [to the public] . . . shall not include any Internet identifier[.]"). Indeed, by Plaintiffs' own account, "California does not currently collect remote communication identifier information" at all, Bellucci Decl. ¶ 11, rendering any purported chilling of speech from collection of this information purely hypothetical.

Plaintiffs also point to jurisdictions' ability to set up a function on their public websites whereby an individual can enter a known internet identifier and learn

---

[6] Plaintiffs argue that the 2011 Supplemental Guidelines "did not adopt a mandatory [prohibition]," PI Mot. 14, but in fact they did just that. *See* 76 Fed. Reg. at 1637.

16

whether that identifier is associated with any (unidentified) registrant. PI Mot. 15. As an initial matter, this function is controlled by implementing jurisdictions, not the federal government, and Plaintiffs fail to allege that California even has such a function in place. The mere possibility that California might set up such a function in the future cannot provide a basis for emergency relief against the United States.

Moreover, even if such a function were in place, it would not reveal a sex offender's identity. As another court explained, the person on the other end of a communication may already know the registrant's identity, and if so, would already be able to look up the registrant's name on the state's registry, so "the challenged requirement will make no difference at all." *Delgado*, 375 F. Supp. 3d at 1259. On the other hand, if the registrant's identity is unknown, learning that the identifier is associated with some unknown registrant will allow the user to break off the communication, if desired, but has no impact on the registrant's ability to communicate anonymously. *See id.* at 1259, 1262 (upholding this aspect of Florida law but striking down provision allowing someone to request registrant's identity— a feature that the Rule at issue here neither mandates nor encourages).

Finally, Plaintiffs argue that the requirement to report new identifiers "within three business days to his residence jurisdiction (by whatever means the jurisdiction allows)," 86 Fed. Reg. at 69886 (§ 72.7(e)), is just as burdensome as the 24-hour requirement at issue in *Harris*. PI Mot. 15.[7] However, the court in *Harris* emphasized that the California law's 24-hour window was significantly shorter than what other jurisdictions allowed. *Harris*, 772 F.3d at 581 (citing 3-day window in Georgia law); *cf. Jackson*, 2021 WL 5365778, at *2 (upholding provision allowing changes in identifiers to be reported within 3 days); *Delgado*, 375 F. Supp. 3d at

---

[7] Plaintiffs now concede that the Rule does not require in-person reporting, 86 Fed. Reg. at 69880 ("SORNA does not require that these changes be reported through in-person appearances[.]"), abandoning their original erroneous contention to the contrary. *Cf.* First PI Mot. [ECF 13] 13, 15 (arguing that "requiring registrants to physically report to police goes much further" than the law in *Harris*).

1255, 1263 (upholding provision requiring reporting identifiers within 48 hours after using them). Plaintiffs again are wrong in contending that the Rule's requirement is identical to that at issue in *Harris*, and they provide no other explanation for why the 3-day reporting requirement is overly burdensome. Indeed, although Plaintiffs claim that they have "changed their behavior" as a result of the 2021 Rule, PI Mot. 15, that claim is implausible because the Rule did not change the statutory requirements or regulatory guidance in effect since 2008. The internet identifier reporting requirement in § 72.6(b) thus does not burden substantially more speech than necessary. Plaintiffs are unlikely to succeed on their First Amendment claim.

### D.    Plaintiffs' Due Process Claim Does Not Support Emergency Relief

Plaintiffs also argue that the Rule violates due process by "expand[ing] upon" the affirmative defense set forth in the criminal statute, 18 U.S.C. § 2250(c), in a way that, according to Plaintiffs, "presumes registrants guilty" if they "reside in states that don't adequately implement SORNA." PI Mot. 16. As an initial matter, Plaintiffs fail to identify any due process-related injury fairly traceable to the Rule. Sex offender registration requirements, by themselves, do not implicate offenders' due process rights. *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 5–8 (2003); *United States v. Fernandes*, 636 F.3d 1254, 1257 (9th Cir. 2011). Plaintiffs' due process claim thus necessarily relates to a potential criminal prosecution, but any criminal charge, and any affirmative defense thereto, must be brought under the statute, not the Rule. *See* 28 C.F.R. § 72.8(a) (referencing "criminal penalties under 18 U.S.C. 2250(a)" and an affirmative defense "as provided in 18 U.S.C. 2250(c)"). The other Rule provision cited by Plaintiffs, § 72.7(g), does not suggest otherwise. Plaintiffs thus lack standing to challenge the Rule on due process grounds.

Moreover, Plaintiffs' pre-enforcement challenge is unripe. *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 984 (9th Cir. 2011) (holding due process claims ripen only after "a distinct deprivation" of a liberty interest "has already occurred"). Typically, such claims are addressed after charges are brought,

18

based on specific facts of the case. *E.g.*, *United States v. Lyte*, No. CR2001859001, 2021 WL 3511156, at *5-6 (D. Ariz. Aug. 10, 2021) (addressing due process claim based on defendant's alleged compliance with state law while ruling on defendant's criminal liability). Here, the notion that Plaintiffs face prosecution under § 2250(a) in a manner that would violate their due process rights "remains entirely hypothetical." *HSH, Inc. v. City of El Cajon*, 44 F. Supp. 3d 996, 1004-05 (S.D. Cal. 2014). This claim thus fails on threshold jurisdictional grounds.

Plaintiffs also are unlikely to succeed on the merits of this claim. Plaintiffs essentially argue that offenders who are prosecuted under § 2250(a) should not bear the burden in their criminal case to establish their eligibility for the affirmative defense in § 2250(c) if California did not allow them to register in accord with SORNA. But Plaintiffs fail to show that due process requires this shifting of burdens. To the contrary, in *Patterson v. New York,* 432 U.S. 197 (1977), which Plaintiffs cite, the Supreme Court recognized that "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required." *Id.* at 210 (placing burden to prove "extreme emotional disturbance" defense on defendant did not violate due process).[8]

Nor does the hypothetical § 2250(a) prosecution posited by Plaintiffs warrant any deviation from this general rule. Plaintiffs argue that California's alleged restrictions on their ability to register or provide all information required by SORNA makes them criminally liable for "wholly innocent and passive nonconduct," PI Mot. 20, citing *State v. Blake*, 481 P.3d 521, 527-28 (Wash. 2021). But the Supreme Court decisions on which *Blake* relied are inapposite, addressing situations where the defendant lacked knowledge of the requirement, *Lambert v. California*, 355 U.S. 225, 229 (1957), or where the requirement was unconstitutionally vague,

---

[8] Other cases cited by Plaintiffs, PI Mot. 18-19, also fail to suggest that the government must prove the unavailability of any affirmative defense identified in the statute. *See In re Winship*, 397 U.S. 358, 361-62 (1970); *Mullaney v. Wilbur*, 421 U.S. 684, 701 (1975); *Dixon v. United States*, 548 U.S. 1, 6 (2006).

*Papachristou v. City of Jacksonville*, 405 U.S. 156, 166-68 (1972).

SORNA presents no similar concern. Regardless of whether a defendant asserts an affirmative defense under § 2250, the government still must prove the elements of the crime set forth in § 2250(a)—that an individual convicted of a sex offense under state law was (1) required to register under SORNA, (2) traveled in interstate commerce, and (3) knowingly failed to register or update a registration as required by SORNA. 18 U.S.C. § 2250(a). Here, SORNA's "knowingly" *mens rea* obviates any due process concerns by ensuring that "a sex offender is not held liable for failing to provide a type of information if he is unaware of a requirement to provide that information, as may be the case if a jurisdiction does not request that information." 86 Fed. Reg. at 69859; *see United States v. Crowder*, 656 F.3d 870, 875 (9th Cir. 2011) ("a convicted sex offender who 'knowingly fails to register or update a registration' is on notice or chargeable with notice of the facts constituting the offense"); *cf. Vill. of Hoffman Ests. v. Flipside*, 455 U.S. 489, 499 (1982) (recognizing scienter requirement mitigates due process concerns).

That the § 2250(c) affirmative defense may be invoked on a theory of impossibility does not present a due process problem. Indeed, when the Sixth Circuit did reach what Plaintiffs call a "lurking constitutional problem," *see* PI Mot. at 17, after first declining to reach it in *United States v. Felts*, 674 F.3d 599, 605 (6th Cir. 2012), the court cited the availability of the affirmative defense as ameliorating any concerns. *Willman v. Att'y Gen.*, 972 F.3d 819, 824 (6th Cir. 2020) ("[W]e agree with the federal government that the affirmative defense is available to Willman if Michigan does not permit him to register."). The Rule makes clear that an offender need not continually attempt to register where a state makes it impossible to do so; the defense is available in this situation unless an offender continues to violate SORNA's requirements after becoming aware of a change in state policy or practice that allows him to comply. *See* 28 C.F.R. § 72.8(b); 86 Fed. Reg. at 69882-83.

Nor does the Rule provision that Plaintiffs cite, § 72.7(g), change any

presumptions or shift any burdens, contrary to Plaintiffs' contention. PI Mot. 16. That provision holds sex offenders to compliance with a state's time and manner specifications for registering and reporting or updating information where they have not otherwise complied with SORNA's specifications. *See* 28 C.F.R. § 72.7(g)(1). Plaintiffs' suggestion that this provision raises a due process concern is meritless. Neither the examples nor the disclaimer in § 72.7(g)(2) change the burdens applicable to a SORNA prosecution under § 2250(a) or an affirmative defense under § 2250(c). *See* 28 C.F.R. § 72.7(g). Plaintiffs' due process claim thus fails, and therefore certainly does not warrant emergency relief.

### E. Plaintiffs Fail To Show that the Rule Exceeds Statutory Authority

Plaintiffs finally argue that the Rule is unlawful because the Attorney General's interpretation of the term "convicted" in SORNA's definition of "sex offender," 34 U.S.C. § 20911(1), does not exclude individuals like Doe #1 and #2, who have received relief under Cal. Penal Code § 1203.4.[9] Plaintiffs lack standing to challenge the Rule on this basis because the Attorney General's interpretation was set forth in the 2008 Guidelines, not the Rule. The Rule's regulatory text does not discuss the meaning of convicted and merely confirms that "[a]ll terms used in this part have the same meaning as in SORNA." 28 C.F.R. § 72.2; 86 Fed. Reg. at 69884. Although the Rule's preamble responds to a comment regarding the meaning of conviction, Plaintiffs now acknowledge that this response merely "cite[s] to the [2008] Guidelines," PI Mot. 20, as providing the governing standard. *See* 86 Fed. Reg. at 69866 (citing 73 Fed. Reg. at 78050). Accordingly, Plaintiffs can claim no injury regarding this issue that is fairly traceable to the Rule, and setting aside the

---

[9] As Plaintiffs concede, Doe #1 and Doe #2 were required to register under California law until, years after their § 1203.4 relief, they received a certificate of rehabilitation. Neither such certificates—which are a "judicial recommendation for a pardon," *People v. Ansell*, 25 Cal. 4th 868, 891 (Cal. 2001)—nor relief from state registration requirements pursuant to Cal. Penal Code § 290.5 changes an offender's status as "convicted" under federal law, and Plaintiffs do not argue otherwise in their motion.

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
Case No. 5:22-cv-855-JGB-SP

Rule would not redress any injury because Plaintiffs would remain subject to the Attorney General's interpretation of the term in the 2008 Guidelines. *See Mattix*, 694 F.3d at 1084 (2008 Guidelines have force of law concerning registration).

Plaintiffs' claim also fails on the merits because the 2008 Guidelines correctly interpreted SORNA to continue to apply where a sex offender has received limited postconviction relief that leaves in place substantive effects or penal consequences of his conviction. SORNA defines "sex offender" as someone who "was convicted of a sex offense." 34 U.S.C. § 20911(1). In general, the meaning of "was convicted" is clear: someone "was convicted" of a sex offense if they have a prior conviction for a sex offense. Plaintiffs, for example, refer to Doe #1's "conviction" for sexual battery in 1996, and Doe #2's similar "conviction" in 2005. *E.g.*, FAC ¶¶ 6, 13, 25.

The Attorney General sensibly determined that offenders may be relieved of registration requirements "if the predicate conviction is reversed, vacated, or set aside"—but not if the conviction continues to have "substantive effect" or "if the sex offender remains subject to penal consequences based on the conviction, however it may be styled." 73 Fed. Reg. 3805073. If, despite some form of postconviction relief, an offender remains subject to negative legal consequences from his conviction, then the fact of the past conviction still has legal significance under SORNA. In other words, the person was convicted. 34 U.S.C. § 20911(1).

Because § 1203.4 relief is limited and leaves in place many consequences of a conviction, it does not eliminate the fact of a past conviction for SORNA purposes. Plaintiffs mischaracterize § 1203.4 relief as an "expungement" such that convictions subject to that relief "no longer exist." PI Mot. 22. The term "convicted" in SORNA is defined by federal law, not state law, but in any event, neither federal nor California courts consider § 1203.4 relief to be an expungement. *Jennings v. Mukasey*, 511 F.3d 894, 898-99 (9th Cir. 2007) ("Section 1203.4 does not, properly speaking, 'expunge' the prior conviction." (quoting *People v. Frawley*, 82 Cal. App. 4th 784, 791, 98 Cal. Rptr. 2d 555, 559 (2000)).

Plaintiffs acknowledge that, despite § 1203.4 relief, a prior conviction can be used as an enhancement or predicate "in any subsequent prosecution." Cal. Penal Code § 1203.4(a)(1). Many other consequences also remain. Notably, offenders who receive § 1203.4 relief still must register under California law, absent additional, separate relief. Cal. Penal Code § 290.007; *Humes v. Sac. Co. DHHS*, No. 2:18-cv-0004, 2019 WL 338223, at \*3 (E.D. Cal. Jan. 28, 2019). California thus considers an offender who has received § 1203.4 relief to be someone who "has been . . . convicted" of a sex offense.  Cal. Penal Code § 290(c)(1).

In addition, § 1203.4 relief does not restore rights to drive a vehicle, Cal. Penal Code § 1203.4(a)(1); possess a firearm, *id.* § 1203.4(a)(2); or hold public office, *id.* § 1203.4(a)(3), if such rights were impaired by the conviction. A conviction subject to § 1203.4 relief qualifies as relevant criminal history when calculating sentences under the Federal Sentencing Guidelines, *United States v. Hayden*, 255 F.3d 768, 772 (9th Cir. 2001); can justify revoking a medical, legal, or liquor license, *Meyer v. Bd. of Med. Examiners*, 34 Cal. 2d 62, 66-67, 206 P.2d 1085, 1088 (1949) (medical license); *In re Phillips*, 17 Cal. 2d 55, 60-61, 109 P.2d 344, 347-48 (1941) (legal license); *Copeland v. Dep't of Alcoholic Beverage Control*, 241 Cal. App. 2d 186, 188-89, 50 Cal. Rptr. 452 (Ct. App. 1966) (liquor license); and can be considered in citizenship determinations, *In re Paoli*, 49 F. Supp. 128, 131 (N.D. Cal. 1943).  The numerous consequences unchanged by § 1203.4 confirm that § 1203.4 relief "has been so qualified in its application" that it does not "obliterate the record of conviction against a defendant and purge him of the guilt inherent therein," nor "place the defendant in the position which he would have occupied . . . if no accusation or information had ever been presented against him."  *Meyer*, 34 Cal. 2d at 67 (citations and quotations omitted). An offender who receives § 1203.4 relief still "was convicted" of the sex offense. 34 U.S.C. § 20911(1).

That § 1203.4 relief operates by allowing withdrawal of a guilty plea and entry of a not guilty plea does not change the analysis. Plaintiffs argue that once

23

withdrawn, a guilty plea is annulled and has no legal effect, but they rely on cases where defendants withdrew their guilty pleas before trial and then stood trial to determine their guilt for the underlying offense. *See Kercheval v. United States*, 274 U.S. 220, 223-24 (1927); *Standen v. Whitley*, 994 F.2d 1417, 1422 (9th Cir. 1993). In contrast, offenders who obtain § 1203.4 relief pled guilty or nolo contendere, never disputed their guilt, completed a criminal sentence, and then obtained limited (but not complete) relief from collateral consequences of conviction through a special statutory procedure. Notably, § 1203.4 relief is only available after offenders serve their sentence. *See* Cal. Penal Code § 1203.4(a)(1); *see also* Exs. A ¶¶ 5-6, 12, B ¶¶ 4-5, 9 (Does #1, 2 obtained § 1203.4 relief after probation). Under § 1203.4, then, "the convictions of such sex offenders may nominally be 'vacated' or 'set aside,' but the sex offender is nevertheless required to serve what amounts to a criminal sentence for the offense." 73 Fed. Reg. 38050.[10]

## II.    THE OTHER FACTORS DO NOT SUPPORT A PRELIMINARY INJUNCTION

Plaintiffs bear the burden of demonstrating that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20; *see also All. for the Wild Rockies*, 632 F.3d at 1131 (plaintiffs must show irreparable harm is likely, not just possible). To meet this burden, plaintiffs "must do more than merely allege imminent harm sufficient to establish standing; [they] must *demonstrate* immediate threatened injury." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016). Plaintiffs must also show that the threatened harm would *not* occur if an injunction were granted. *See Winter*, 555 U.S. at 20.

---

[10] The Attorney General's interpretation of SORNA is the best reading of the statute, so no deference is necessary to sustain it, but contrary to Plaintiffs' argument, PI Mot. 22 n.4, courts grant deference under *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984), to the Attorney General's construction of SORNA. *See, e.g., United States v. Bridges*, 741 F.3d 464, 468-69 (4th Cir. 2014). Nor do Plaintiffs identify a "grievous ambiguity or uncertainty" in SORNA that would support application of the rule of lenity here. *Barber v. Thomas*, 560 U.S. 474, 488 (2010).

Here, for the same reasons discussed above with respect to Plaintiffs' lack of certainly impending injuries to support standing, they fail to establish irreparable harm. Indeed, Plaintiffs identify nothing in the challenged Rule that changes in any way the regime to which they and other California sex offenders have been subject for over a decade. Enjoining the Rule would in no way alter Plaintiffs' obligations under SORNA and prior Guidelines—which would remain in effect. Nor does the constitutional nature of Plaintiffs' claims entitle them to a preliminary injunction when those claims lack merit. *Short v. Berger*, No. 22-1151, 2022 WL 1051852, at *9 (C.D. Cal. Mar. 3, 2022) (without a "sufficient likelihood of success on the merits" of constitutional claims, there is "no presumption of irreparable harm"); *Marin All. for Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1160 (N.D. Cal. 2011) ("Plaintiffs' constitutional claims are too tenuous to support a presumption of irreparable harm."). Plaintiffs' assertion that California does not currently collect internet identifiers makes the prospect of irreparable harm on their First Amendment claim *less*, not *more*, likely. This factor thus does not favor an injunction.

Plaintiffs must also show both that the balance of equities tips in their favor and that the public interest favors an injunction. *All. for the Wild Rockies*, 632 F.3d at 1135; *cf. Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (factors merge when federal government is party). Plaintiffs fail to support an injunction on either ground. Enjoining the Rule would likely create confusion regarding longstanding registration obligations under SORNA and in jurisdictions across the country. The equities as well as the public interest favor retaining the Rule in place while Plaintiffs' claims are adjudicated on the merits.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

Dated: November 30, 2022        Respectfully submitted,

25

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

/s/
JEREMY S.B. NEWMAN (D.C. #1024112)
KATHRYN L. WYER (Utah #9846)
U.S. Department of Justice, Civil Division
1100 L Street, N.W.
Washington, DC  20005
Tel. (202) 616-8475/Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for the Defendants*

Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction
Case No. 5:22-cv-855-JGB-SP