Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

| View More Comments | 724 | (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments | 724 | (/docket/DOJ-OAG-2020-0003/comments) |

Share ▾

---

Comment

The Sex Offender Registry needs to be COMPLETELY ABOLISHED . The very existence of it goes agaisnt our Nations Constitution in every way . The basis for it being passed and approved was gained by and through Proven False Statistics and Fear and the people wanting something more done to prevent the crimes , which is perfectly understandable to want to prevent such crimes as with any crimes . But violating peoples rights and the Consitution we are supposed to withhold is not the answer. When a person is convicted of sex offenses , Law Enforcement Agencies have their DNA and records on file . They have their own privatized registry within law enforcement and there is no need for a public shaming system which has already proven to not work and just help to destroy peoples lives, including friends and families of offenders. It is already proven that the recidivism rate is lower than any other crime there is besides murder . There are far more people that fall victim to sexual related incidents due to the drug trade than do to people on the Registry . Everyday women and young women are lured into sex trafficking through drugs , we dont have a registry for drug offenders do we ? More people die from Dugs and DUI on a daily basis yet neither if those crimes are register able offenses. If we are going to violate the Consitution to create registries for peoppe convicted of crimes then we must violate the rights of every citizen in the entire country creating registries for every crime there is so people know exactly who is next door , whether it be sex offender , thief , drug addict , drug dealer , etc etc etc ... you and your family can be hurt and influenced in bad ways by peoppe who have committed ANY CRIME of ANY SORT . People can be affected badly by people with perfectly good clean records and that happens everyday in Amercia . All a sex offender Registry effectively does is give Sex Traffickers a way to get away with their crimes trafficking mg women and children in certain areas where sex offenders reside . Traffickers target areas where alot of people are on the Reigstry giving them perfect suspects to thwart local law Enforcements into checking with the wrong people and wasting time and efforts looking n the wrong places while they make their escape . The Registry doesnt work . Period. 90% of victims are assaulted by people they know and trust that aren't even on the Registry . If a person once convicted decides they want to reoffend a Registry isnt going to stop them . They will simply drive to some other community and commit their crimes or outside of their own neighborhood where their face is known as most , most likely do anyway . In today's world with social media and everything , a person on the Registry finds it nearly impossible to find decent living conditions and getting and maintaining a job that they

AR-00001137

Regulations.gov

can live on and actually move forward in life with . If we want society to become a better place for the next generations, we cannot make life harder to do better in . We must adopt ways that encourage change and help constitute change and a better world . A Registry does nothing but promote a worse world . Effectively promoting anger and hatred towards our neighbors instead of promoting Gods Law in forgiving our neighbors and having love and compassion for one another . There are many laws in this Nation that need to change and should have never been approved and passed in the 1st place and this is one that is in it's very nature an abomination to God and our nations Constitution , which all of our laws are supposed to be governed and formed by and through . All people should have the right to have an Equal chance to be able to successfully move forward in life and not be judged by every person in society for a mistake they made in ther past effectively making life harder to walk through which effectively pushes alot of Americans into lives of crime of other sorts to even feed themselves because they cannot obtain and maintain jobs . Some people only know how to do jobs that they cannot possibly do legally having to register as a sex offender too . Having to go and register everytime a person moves or goes somewhere effectively prevents a person from doing many different kinds of jobs limiting their job performing abilities severely . I understand we need to protect our women and children from disgusting crimes that people do . I'm all for that but a Registry system is NOT THE ANSWER in any way , it does nothing but make the world we live in worse .

---

**Comment ID**

DOJ-OAG-2020-0003-0294

---

 **Tracking Number**

kf4-ajyy-59jo

---

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 15, 2020



Your Voice in Federal Decision Making

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

AR-00001138

Regulations.gov

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001139

8/9/23, 11:36 AM                                                                 Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

| View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments) |   Share ▾

---

Comment

In 2009 the State of Washington , the county of King , The city of Seattle , in conjunction with the Department of Homeland Security , Immigration and customs enforcement and the American KGB , also know as HSI , in coordination with the United States Naval Criminal Investigation service did launch an illegal , Uncostitutional and Terrorist act of the military policing of civilians. This was done in my Seattle home in 2009. This act of state sponsored terrorism renders your nation morally equivalent to nazi Germany and the Soviet Union and your people along with you. I have no faith in your failed court system who has had every opportunity to set a clear example of punishment in several non sex offense based cases to rationally resolve any issue with any degree of credibility. Even given the opportunity to punish transgressors under the PCA from petitioners that derectly acknowledge there can be no remedy for the defendant , who themselves were not convicted of sex offenses , the court still allows the court officers who themselves are no different than an SS or KGB office in moral complexion , to walk free. Strike one.

Secondly as a nation with whom I must Register , I absolutely love your double standards on child abuse. My father violently beat me from age 3 to 12 on an almost daily basis , The states of Washington , Oregon , Arizona and Texas we all aware of it. I got the message all right. This country and its people firmly support child beating. Notice how no " retroactive " lawsuit is available for child beating victims. The only thing worse that a pedophile is a person that believes only certain kinds of child abuse is wrong. Others are just fine. No wife beater or child beater registry huh? A nation that can treat someone as though they have committed a crime they have not , and ignore actual crimes that occur to a person because their " off duty " . Worthless as a people and a government , both parties , all persons equitably. strike Two.

I am simply trying to ignore you and your people at this point , and trying to be as quiet and non criminal as possible , why do you not want that? I don't understand , I have completely stopped working and participating in your communities and your society. Why is this a problem your representative Dan Satterberg , King County Prosecutor , communicated by his action this is what you wanted , my understanding was all I had to do was sign one document at a county sheriffs office once a year and you would leave me alone. Why is this no longer good enough for you?

AR-00001140

Regulations.gov

I would leave your country had president Bush not create laws that prevented me from going to the nation of my choice . So because of that I am stuck here when you don't want me costing you tax dollars. Some day I believe your government will come to kill me . You already sent the military into my home once why would you not do it again.

I doubt you will even read this ,your probably to busy trying to be the EARN IT and LAED acts passed and increase the communist stranglehold on America the Patriot act all but enshrined.

---

**Comment ID**

DOJ-OAG-2020-0003-0295

---

 **Tracking Number**

kf4-b4pj-o3po

---

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 15, 2020

---



Your Voice in Federal Decision-Making

About   Bulk Data Download      Agencies      Learn

(/about)          (/bulkdownload)    (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001141

8/9/23, 11:32 AM                                           Regulations.gov

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments)   Share ▾

---

Comment

The impact of the registry on family members is atrocious. Children should not have to be ridiculed on their school bus because their parent is on a list. Registrants are often refused entry at schoolsl. They cannot attend their children's events, etc. was any thought given to what impact these things have on children? My guess is not.

Kids are being forced to see their parent as a sex offender, when in many cases the offense occurred a decade or more before their birth.

Again why is this damage being done to children being accepted as "collateral damage?"

Arent these the very ones that registry was supposed to protect?

The entire law and its decades of continual increases in requirements is a punitive farce.

A failed effort.

Time to admit it and repeal it

**Comment ID**
DOJ-OAG-2020-0003-0296

◎ **Tracking Number**
kf4-b5mp-nlhi

AR-00001142

**Comment Details**                                    **Submitter Info**

**Received Date**

Sep 15, 2020



About    Bulk Data Download      Agencies     Learn

(/about)         (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I am the spouse of person on the registry. His offence, which was in Florida in 1997, was lewd and lascivious act in the presence of a minor (no contact). He was sentenced to probation and community service, and had adjudication withheld; at the time he reached his plea agreement with the state, there weren't any laws that would have continually punished him for the next 20 years. The requirement to register came AFTER his plea - I won't even say conviction, because he was not convicted. To make a very long story short, my husband made a stupid mistake in his 20s and has paid the price every day for the last 20+ years. He is a college graduate, an excellent husband, an outstanding father, and a benefit to the community in general. The State of Florida does not tier its offenders, nor does it clearly state what the offender actually did, so people immediately believe my husband is a child molester or rapist. He cannot be removed the registry in Florida for several more years, even after his 20 year requirement is up, because the state makes you go to court and fight to be removed, even though the time has expired and he has not had any other offences. Florida's sex offender registry and requirements are completely out of control and it is common knowledge that it is the easiest to be placed on and the hardest to be removed from. Now on to the issue of victims OF THE ACTUAL REGISTRY: as I mentioned earlier my husband has never touched a minor or anyone else inappropriately, but he has been called "child molester," "rapist," "pedophile," and on and on. He has been physically confronted and threatened by countless neighbors as well as random people who find our address. He has been fired from two high paying jobs, solely because he appears on the registry and it's a bad reflection on the business (the businesses knew of his offence and the details, and hired him anyway because the offence was actually quite minor with no physical contact, but because the registry is so vague, they didn't want to be associated with it). We work hard and have been blessed in many ways, even with the curse of the registry, and were able to purchase our dream house in an nice neighborhood...we lasted eight years before I finally had a nervous breakdown due to the constant harassment and physical confrontations I was subjected to; I - someone who has never, ever been in any kind of trouble - have been physically attacked by a neighbor; I have been accosted by a random man who staked out our home and he told "I think I will rape you since you think sex offenders are hot. I will find you when you least expect it;" I have been fired from a job; I have been called a pedophile; I have had my vehicle and home damaged by people who find my address online. Our son, who we have tried to shield

AR-00001144

from the hatred caused by the registry, has lost friends and has witnessed his parents harassed and threatened, because people do not care about the children of the people on the registry. He has been kicked out of sports, even if his dad doesn't attend (although, there is no law saying he can't). The saddest part of the situation is that the registry, while I understand what the intent was, has not deterred any new offenders and will not deter any truly sick individuals; the only thing it accomplishes is an on-going, unfair punishment for not only the offender but for their entire family. The FBI has published a study that show recidivism rates among people like my husband are so low, that it makes a sane person wonder why certain people are included on the registry at all. The registry does nothing to safe guard children or other potential victims, but it does victimize the families and friends of offenders, as well as continually punishing the offender, no matter how minor the offence was. As someone who has spent a lot of time reading the SORNA and different states' laws regarding sex offenders, my suggestion is this: a public registry is not helpful, but police should be aware of certain offenders (tier 2 and tier 3 offenders) in their communities; all states must tier every offender; and, the states should be required to automatically drop every offender who hasn't re-offended at the end of SORNA's minimum required time (15 years for tier 1, etc.) without the offender having to go through the judicial system again with a case to be removed. I sincerely hope that my comments are read in the manner in which they have been intended, and that common sense and moral decency prevail in regards to the registry.

**Comment ID**

DOJ-OAG-2020-0003-0297

 **Tracking Number**

kf4-bd8j-pwmz

**Comment Details**                                    **Submitter Info**

**Received Date**

Sep 15, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download        Agencies        Learn

(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

AR-00001145

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001146

8/9/23, 11:31 AM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

---

Comment

Please reconsider proposed actions regarding the Sex Offender Registry. I truly believe it is severe and unusual punishment for many people that do not deserve to be on a public registry. There is a wide variation for reasons that people have been put on this registry. My sons charges stem from nude pictures being sent by a young lady who was one month shy of her 18th birthday. He did not ask for them. He did not share these photos. Her father found out and charges were brought against my son for possession of child pornography. He had friends in the prosecutors office. Because there was more than one photo he wouldve been a multiple felon. She was a few years younger than him. He plead to a consensual touching only charge over clothing. to avoid the more serious child pornography charge. He was in the process of applying to medical schools after graduating from the University of Michigan in biology and premed. Since then he has only been able to get a job in construction trades. That job also presents difficulties depending on where the jobsites are, if they are near schools. This happened over 10 years ago. He is now going to school at the University of Michigan again to obtain his MBA. All of this is so wrong and it has totally changed his life. He is a young person who is totally unable to reach his potential. In the meantime his fianc passed away from leukemia less than a year ago. All he wants to do is be able to help cure cancer in any way shape or form, even research. He will not be allowed into any of those jobs because of this registry. As painful as the thought is I hope he will someday meet somebody and is able to have a family. His biggest concern regarding this registry is the ability to be able to parent his children in the way that they deserve. Children deserve to be able to have parents at their school and functions. They do not deserve to be abused by people who are aware of their parents offense. My son has been harassed In the last 10 years by people. All people see is their name on a registry. They are all labeled child rapists no matter what their offenses by the public. It is wrong. I think there should be the opportunity for individual assessments to get off the registry, may be after 10 years. My son has had absolutely no violations prior to or after this offense He lives in total fear of even a speeding ticket. He will get his crime expunged in the near future but what good is that if he still remains on a sex offender registry. And all for a misdemeanor charge. Please please do not approve this proposed change. My son is a fine upstanding young man who only wants to live a life where he is allowed to help other people. He took a class weekly with child rapists They repulsed him. And yet he is labeled by the public as one of them. It is so wrong. Please allow people who deserve it to live

AR-00001147

8/9/23, 11:31 AM                                              Regulations.gov

their lives without the punishment of the registry. I never thought I would be writing this letter. Nobody understands until they have been there. I still am amazed that this is allowed to happen in the United States of America, supposedly land of the free. This registry totally enslaves so many people. Thank you for listening. My life and my families lives has been forever changed by this.

**Comment ID**

DOJ-OAG-2020-0003-0298

 **Tracking Number**

1k4-9iz6-ei0t

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 15, 2020



About  Bulk Data Download     Agencies    Learn

(/about)        (/bulkdownload)  (/agencies) (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001148

8/9/23, 10:25 AM                                                                          Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

| View More Comments  ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  ( 724 ) (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

**Comment**

My nephew is a sentenced sex-offender currently serving time. This was his first offense, everything was through the internet and he did not physically touch or meet with anyone. He went to a legal site where a 16 year old lied about her age. When my nephew found out, he cut off contact, as well as when he downloaded groups of pictures, he would delete ones that he new were underage. That being said, the whole sex offender registry is a joke. Studies have showed that this crime has a low rate of recidivism, yet they are the ones who pay for their crimes for the rest of their lives. If a registry needs to be around, it should be visible only to the police. My nephew wasn't even sentenced but the local media plastered his picture and did a report where the facts weren't even correct. Then a woman in our town blasted his picture on Facebook and went on about this evil, deplorable "dirtbag". My sister was worried that vigilantes would be surrounding her house.

My nephew lost EVERYTHING because of one stupid mistake where NOBODY was touched. He was a successful business owner, owned his own house and traveled the world. He totally owns up to his mistake and is serving his time without complaining. But even though he will get out in 4 years, he will really be serving a life sentence if the registry continues as it is. And making it public really is only pandering to the voyeurism that so many people crave. Our Department of Justice does not serve justice at all. We never would have believed that if we didn't see the way it works (or doesn't work) first hand.

| **Comment ID** |
|---|
| DOJ-OAG-2020-0003-0299 |

|  **Tracking Number** |
|---|
| 1k4-9iz7-e0gh |

AR-00001149

Regulations.gov

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 15, 2020



About    Bulk Data Download       Agencies      Learn

(/about)         (/bulkdownload)     (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001150

8/9/23, 10:26 AM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

---

Comment

The sex registry does no good whatsoever.....the public runs on pure hysteria. I would say the mass majority of people believe this registry equals violent, depraved men that molest or even kill children. But when you say "children" they conjure up in their minds an innocent 0-10year old or so child. Unfortunately that does happen but 95%, maybe more, are NOT child molesters. When the next child IS molested they will NOT be on this registry. I personally(along with my younger sister) was molested and beaten for YEARS in the 1960's and NO ONE gave a damn....my step father NEVER spent a day in jail much less be put on a registry. Yes that is right....our step father.....no "stranger danger" we were as he called us "baggage that came with your Mother". I ran away from home Feb 14, 1970 at 14 years of age and never looked back. So no registry would have helped us at all. He committed suicide in 1975 and when I got the call it was the best day of my life at that time. It took years to heal but my desire to survive won out and I married, had 3 sons and vowed to do my best that they would never experience the drunk psychopath that we had to live with....and they did not....Time heals, sometimes slowly....but it heals. I know personally of too many on this registry(no I am not on this registry or a sex offender of any kind) that should not be on this life destroyer.......if you really think these people are oh so dangerous then why do you not just lock them up? Why these silly useless rules...or is it what is really the biggest problem facing people today.....MONEY.....is the money so lucrative you are just blinded? Or is it that your lives are that important but no one else? Very frustrating we have not progressed past the Salem Witch Trials......do AWAY with his punitive useless registry and all the rules that go with it!!

**Comment ID**

DOJ-OAG-2020-0003-0300

AR-00001151

Regulations.gov

 **Tracking Number**

kf4-dluz-mi3m

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 15, 2020



About    Bulk Data Download       Agencies       Learn

(/about)       (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001152

8/9/23, 11:36 AM                                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

| Comment |
|---|

I am a registered SO for a crime committed 30 years ago. I have not been in any trouble since despite the heavy restrictions I continue to deal with. I have a wife and 9 year old son and gainful employment. The registration in FL is far to punishing for something so long ago. Adding more and more requirements and restrictions violates ex post facto since it adds undo punishment to me even though I was sentenced under different laws and before there even was a registration. As a result of being on the registration, I was given a trespass warning at Walt Disney World in front of my family, have been in churches that have suggested I change churches. We now attend a great church and have been members for 5 years without any issues or hassle. Years ago, I lost of job just because I was on the registry. I can say a great deal more, but please do not make it worse for us who do the right thing now and pay our taxes.

| **Comment ID** |
|---|
| DOJ-OAG-2020-0003-0301 |

|  **Tracking Number** |
|---|
| kf4-e13e-f60k |

| **Comment Details** | **Submitter Info** |
|---|---|
| **Received Date** | |
| Sep 15, 2020 | |

AR-00001153



About    Bulk Data Download    Agencies    Learn

(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001154

Regulations.gov

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)       Share ▾

---

Comment

Hello:
My name is Jeff R.

According to the National Criminal Justice Reference Service – Office of Justice Programs (BJA BJS NIJ OJJDP OVC SMART) – A US Federal Entity,

https://www.ncjrs.gov/App/Publications/abstract.aspx?ID=271086

Research that has compared the recidivism rates of sex offenders with those of non-sex offenders has consistently found that sex offenders have lower overall recidivism rates than non-sex offenders. Research indicates that sex offenders, regardless of their type of sex offense, have higher rates of GENERAL recidivism than sexual recidivism.
So it would stand to reason that if sex offenders have lower overall rates of recidivism, and that if the few times that they actually do re-offend tend to be non-sex crimes, then that would make the actual risk of an offender committing another sex crime very low!
And much research has borne this out. Sex offenders have exceptionally low recidivism rates overall. Most studies have placed this rate in the low single digits!
Here is a list of verifiable studies from credible sources: https://www.womenagainstregistry.org/recidivism

Look, I made a series of poor choices a few decades ago. I served my time and learned my lesson. I spent over 10 years in prison, managed to make it through 3 years of very tough probation, payed all fines, fees, and restitution. Now I just want to be left alone! I paid my debt to society in full.
I own a decent car and a nice house with land in a desirable neighborhood. I was homeless with only $100 when I was released. I worked extremely hard after prison without any help from family or friends. I am a tax-paying and law-abiding citizen.

There are over 900,000 of us in the US that are on the registry. Our civil rights are daily being violated.

1/3

AR-00001155

Although I pay taxes and obey the laws (and paid my debt to society in full), I cannot enjoy the parks, recreation facilities and beaches in my county. I am permanently dis-enfranchised from voting (thanks to Florida Constitutional Amendment 4, which has a carve-out for former sex offenders). And I daily face the risk of felony prosecution for things that other citizens are not forced to do (like having to appear at the county jail 4 times each year for a forced interrogation).

I am a natural-born US citizen! All I want is to get on with my life and my rehabilitation and integration. My travel is restricted, my personal information is made public (for vigilantes), and I have to obey a series of arcane strict-liability laws. Every day I feel like i have one foot in prison and the other foot on a banana peel!

Please leave me alone and let me achieve a new life! I am a law-abiding tax-paying citizen!

**Comment ID**

DOJ-OAG-2020-0003-0302

 **Tracking Number**

kf4-e96d-mjo8

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 15, 2020



Your Voice in Federal Decision-Making

About     Bulk Data Download     Agencies     Learn

(/about)       (/bulkdownload)     (/agencies)   (/learn)

Reports     FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

AR-00001156

8/9/23, 10:27 AM                                          Regulations.gov

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001157

8/9/23, 11:33 AM                                          Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |   Share ▾ |

---

**Comment**

It has been shown by academic research that the public sex offense registries in the United States do not reduce sexual offending*. You need to give up beating this dead horse. The federal, state, and local governments all spend tremendous amounts of effort and money trying to keep compliant the almost 1 million people on sex offense registries in the United States. This is wasted effort.

This does not mean that sexual offenses are not occurring. They are quite common. Resources, such as money and personnel need to be spent differently, such as on:
sex education,
psychological treatment for people who feel a propensity to hurt sexually, and
making it easier for family and close friends to report abuse by knowing they will not be destroying the other person's life.

* Prescott, J. J., & Rockoff, J. E. (2011). "Do sex offender registration and notification laws affect criminal behavior?"The Journal of Law and Economics,54(1), 161-206. Retrieved from https://doi.org/10.1086/658485

|  **Comment ID**
    DOJ-OAG-2020-0003-0303 |

|  **Tracking Number**
    1k4-9iz8-1dtt |

AR-00001158

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 15, 2020



About      Bulk Data Download      Agencies      Learn

(/about)      (/bulkdownload)      (/agencies)      (/learn)

Reports      FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)      (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001159

8/9/23, 10:31 AM                                          Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

| Share ▾ |
|---|

| Comment |
|---|

Public sex offender registry's do nothing to protect the public what so ever.
They have shown no effect on these offenses. Stop trying to impose the Adam walsh act on states and their citizens.

---

**Comment ID**

DOJ-OAG-2020-0003-0304

---

 **Tracking Number**

1k4-9iz9-bpdb

---

**Comment Details**                                    **Submitter Info**

**Received Date**

Sep 15, 2020

---



AR-00001160

Regulations.gov

About       Bulk Data Download       Agencies       Learn

(/about)        (/bulkdownload)     (/agencies)    (/learn)

Reports      FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001161

8/9/23, 11:34 AM                                                     Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)        Share ▾

---

Comment

From local hero to worldwide zero is what can define a simple lapse of judgement and mistake I made, which can be said for the many individuals that statistically would never make the same mistake twice. The registry is punitive and will always be, due to the brand that it puts on those who simply take responsibility and would like to continue on with a short life in a healthy and productive manner. Our lives are only a vapor on this earth, we're here one minute and gone the next. Please consider the damages, to not only those trying to learn and move past their mistake, but to all the family members that have supported them. It is about time to promote factual data, eliminate myths, and strive to eliminate the registry, not add more draconian laws to an already immoral, unconstitutional, and punitive registry. I ask that you research factual data, make wise decisions, and treat everyone as you would want to be treated. The registry is destructive to everyone and counterproductive to public safety. Please do not allow fear to overrule facts. I've been discriminated against, kicked out of countries, humiliated and shamed, all in the name of a registry that was passed on fear and opinion. I challenge one law maker, police officer, or judge to be able to recite the enormous amount of differing laws and ordinances that vary in all 50 states, in many counties, throughout the cities, and even into the local neighborhoods. I would never wish the registry upon anyone, yet, we imprison thousands of individuals (and their families) to a lifetime of it, against all factual data that shows its ineffectiveness. Due to the registry, the parental relationships with their children is destroyed, community relationships are destroyed, and integration back into a healthy and meaningful life is a very small glimmer of hope. May God continue to bless our country, its leaders, and all those who have direct judicial impact to His children on this earth.

**Comment ID**

DOJ-OAG-2020-0003-0305

AR-00001162

 **Tracking Number**

kf4-grku-cscc

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 15, 2020



About        Bulk Data Download        Agencies        Learn

(/about)        (/bulkdownload)        (/agencies)        (/learn)

Reports        FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)        (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001163

8/9/23, 11:37 AM                                                                                              Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

-*-The fact that SORNA needs explanation describe the irrefutable need to do away with it. No ex-sex offender will ever understand the complexity of jurisdictional, registration requirements. Nonetheless, the Department of justice requires listing of laws that violates Human rights, and bill of rights. All registration requirements violates all these rights. Their constitutionality is non-existent. The Sorna change is also illegal. It makes Sorna interpretation subjective instead of objective. It defeat the purpose of the court which is the one that should interpret the law.

**Comment ID**
DOJ-OAG-2020-0003-0306

 **Tracking Number**
kf4-hwiq-ipze

**Comment Details**                                          **Submitter Info**

**Received Date**
Sep 15, 2020

AR-00001164

Regulations.gov



About    Bulk Data Download       Agencies      Learn

(/about)          (/bulkdownload)   (/agencies)   (/learn)

Reports     FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001165

8/9/23, 11:33 AM                                                 Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

| View More Comments   724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments   724  (/docket/DOJ-OAG-2020-0003/comments) |   Share ▾ |

---

Comment

Registration laws and SOCTUS rulings were based on incorrect data. For example, some magazine writer in NY wrote an article on sex offenders without any facts to back his claim and SCOTUS used that article to say "registration is not punishment". Problem is, that same writer retracted his phony claims but SCOTUS judgement was already given and we are stuck with "registration is not punishment" mode of operation when in reality, politicians all over USA are using fear monger technics to add more and crazy laws to registry, without any regards to not grandfathering people from new laws and keep applying retroactively. I would not have agreed to a plea deal had I known the government will continue to add more and more stringent requirements for registrants to follow and then created CRIMINAL elements into the new laws that did not exist at the time of sentencing, This latest attempt by Mr. Barr is another attempt, no doubt its politically motivated, to add to our agony. The AG should not have to interpret anything beyond what is written by law makers, IF the language in current laws is not clear then Mr. Barr should contact the US Congress and the Senate to pass new laws to correct any misinterpretation. Think of it, if the AG himself needs to interpret, what are common man's chances to interpret laws correctly and follow them as well. It is my belief that God will punish all the criminals in the DOJ and politicians in the USA who have used sex offender's plight to further their careers. God has already punished us and forgiven us by giving us a second chance in life, when will Mr. Barr and SCOTUS provide that 2nd chance to million registrants. If Mr, Barr is serious about learning the real facts on sex offenders and registration laws, before pursuing and implementing the proposed changes, all he needs to do is access countless number of fact based research papers available via Google search, that clearly show how the politicians have mismanaged the sex offenders for their re-election campaigns, piled on unconstitutional laws. For example, we cannot even travel abroad without fear of being sent home, thanks to International Megan's law and that removed the freedom of right to travel that is in our constitution. Murderers are treated better than sex offenders, some of whom dont even have a victim and are on the registry due to internet chat sting operations by dirty cops posing as children in adult chat rooms, where it clearly asks all to take an oath that they are over the age of 18. Some of these "chat registrants" never committed an offense before their arrest and remain clean years and years after paying their dues to the society and have become better human beings. The problem is SORNA puts all registrants in the same boat. There should be a clear distinction between real offenders

AR-00001166

with victims and those without any victims, where victimless registrants be allowed to roll-off the registry after 10 years on registry without re-offending. For example, State of FL keeps people on registry even after death to show higher number of registrants in order to get more federal dollars. It makes their job much more difficult having to keep track of people who have not committed a crime in 10-15 years and takes away valuable resources from monitoring real criminals. Our prison system is built to keep the population in prison as long as possible so that companies with managing prison contracts can make a profit and they in turn support politicians who pass new laws to help their business. No regard for the registrants and collateral damage they cause to family and friends of registrants. This is the USA we live in, where an AG like Mr. Barr, who is supposed to uphold the laws of the land, are piling on more laws for the unfortunate. I strongly oppose the proposed changes to SORNA and these should be discarded and rolled back,

**Comment ID**

DOJ-OAG-2020-0003-0307

 **Tracking Number**

kf4-m6l8-mx53

---

**Comment Details**                                          **Submitter Info**

**Received Date**

Sep 15, 2020

---



About     Bulk Data Download     Agencies     Learn

(/about)          (/bulkdownload)     (/agencies)     (/learn)

Reports     FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)     (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

AR-00001167

Regulations.gov

Support (/support)   Provide Site Feedback

AR-00001168

8/9/23, 10:25 AM                                         Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

View More Comments 〔724〕 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 〔724〕 (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

---

Comment

The notion that this registry isn't punishment and the fact that everyone involved in enforcing this illegal registry keeps saying it isn't punishment just goes to show how truly brain washed y'all are. For those that actually know and understand that the registry is punishment but chose to do nothing about it to keep the money coming in, I hope you burn in hell. A dirty cop did this to me! I didn't deserve this but this vindictive cop that was to be a family member one day didn't like me so his little brain figured out a way to get rid of me. But now with every new addition to this sorna crap y'all just keep driving the nail further into the wound. Make a registry for the other category of felons because they are the one's more likely to reoffend! There is a reason all the big names involved with Jeffery Epstein are fighting to squash the publishing of their names because they know being one this list IS PUNISHMENT but y'all know that, you just want to look good and push your fake narrative to the public because of money! Take the money out of it and y'all have no reason to continue with this bull shit! So just to put it out there so hopefully one day that ass hole will see it that sorry assed dirty cops name is Eugene Baker of Jacksonville florida. He's the guy directly responsible for getting me on this hit list!

**Comment ID**

DOJ-OAG-2020-0003-0308

◎ **Tracking Number**

kf5-8mpj-w4k1

Comment Details                          Submitter Info

AR-00001169

Regulations.gov

**Received Date**

Sep 16, 2020



About    Bulk Data Download       Agencies      Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001170

8/9/23, 10:28 AM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 16, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)        Share ▾

---

Comment

Please consider the facts: (https://scholar.google.com/scholar?
q="Sex+Offender+Registration+and+Notification+Act") Living in Florida is a "life sentence" even for what is
considered Tier I offenses. This is not fair to the person who did their time and has not committed any crime
afterwards nor to their families who suffer right along with them. A person should be able to move forward
from a bad mistake in his/her life.

**Comment ID**
DOJ-OAG-2020-0003-0309

 **Tracking Number**
kf5-f8o4-yhyq

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**
Sep 16, 2020

AR-00001171

Regulations.gov



Your Voice in Federal Decision Making

About      Bulk Data Download      Agencies      Learn

(/about)         (/bulkdownload)   (/agencies)   (/learn)

Reports      FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001172

8/9/23, 11:37 AM                                                 Regulations.gov

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 21, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)       Share ▾

---

Comment

You are trying to turn your own citizens into terrorists, unbelievable!
Why do the foreign terrorists hate America so much and want to destroy it, probably very similar reasons.
Keep pushing people to the breaking point and they will eventually break, and then you and anyone connected with this will be responsible for whatever happens.
How much blood and treasure has been spent fighting radicals and terrorists, why are the blacks killing each other and killing cops right now, why is there a war on cops happening right now, because this country has pushed them too far. What do you expect is going to happen when you push people over the edge. You better think about this right now.

**Comment ID**

DOJ-OAG-2020-0003-0310

 **Tracking Number**

1k4-9izu-7n3r

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 16, 2020

AR-00001173

Regulations.gov



Your Voice in Federal Decision Making

About     Bulk Data Download     Agencies     Learn

(/about)          (/bulkdownload)    (/agencies)   (/learn)

Reports     FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001174

8/9/23, 11:56 AM                                                                Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

Sex offenses are the only crime that basically sentence an offender to "life", no matter the actual sentence received from the judge. This registry continues to punish, punish and punish again an offender, long after they've completed their time. Studies have shown that the registry does NOT, in fact, make communities safer. Sex offenders have some of the lowest percentages of recidivism yet some of the harshest punishments. The only thing that comes out of the registry is lack of employment, housing, loans, etc. not to mention the risk of vigilantism from outside sources who feel it is their responsibility to be judge, jury and executioner.

My son had a great life. Supportive family, Bachelor's degree, owned his own home, started a successful business. He made a couple of very poor choices involving the internet and someone lying about their age (with no ramifications against THAT person) and is now serving just short of seven years behind bars. He also has to register as a sex offender FOR LIFE -for a no contact crime. While I do not condone his actions in any way, I firmly believe that they should not result in what amounts to a life sentence. Who will hire him, where will he live, etc., etc. Someone who was a contributing member of society will be left with nothing because of this sex offender registry. I have NO DOUBT that with all the support he has, he would again be a contributing member of society if just given the chance. Unfortunately, our government sees otherwise.

The biggest issue I have against the registry is the "one size fits all" aspect. My son committed a no contact crime, yet is lumped in the same category as somebody who rapes children. How can that be justified? He is also a first time offender. Are we not a country that gives second chances? There are programs like The First Step Act and the Second Chance, but they exclude sex offenders from participating? Why? Seems unconstitutional at best.

I would like to see changes in the definition of what constitutes a "sex offense". I feel it's obvious that there is a major difference between looking at pictures on the internet and sexually molesting a child. I believe the

AR-00001175

internet crimes should be categorized as just that - internet or cyber crimes - not sex offenses. Sex offenses conjure up images of people preying on young children, lurking behind bushes, hanging around schools. That's just not a realistic image and certainly is not true in all cases.

I believe in protecting our innocent children. I just don't want to see our government go overboard and throw the baby out with the bath water. Please, please consider either abolishing the sex offender registry altogether, or make MAJOR changes to the laws and restrictions regarding it, dependent on the offense.

**Comment ID**

DOJ-OAG-2020-0003-0311

 **Tracking Number**

1k4-9izs-cvlt

**Comment Details**                                          Submitter Info

**Received Date**

Sep 16, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download       Agencies      Learn

(/about)        (/bulkdownload)    (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001176

Regulations.gov

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

Share ▾

---

Comment

I am a Vietnam Vet 20 years service, purple heart. Granada vet too. When I took the oath to serve several times, Sworn to protect the constitution, well the Equal protection clause of the 14th amendment is not bring applied to.sex offenders. These sorna laws are a copy of the Nazi laws in Germany. Now Germany considers sex offender laws a violation of human rights as I do too. Putting people on a list for life. Just put them in prison for life instead. It is total punishment in my opinion. Germany will send no sex offender back to the states due to punishment they would receive if sent back. There is one case pending as of this comment in Germay. Do stop sex offender registration . The combat vet suffers the most on the list due to PTSD and having stress from being on the list , results is suicide. Do, you support vet suicide.????????? Violated expo facto too.

**Comment ID**
DOJ-OAG-2020-0003-0312

 **Tracking Number**
kf5-ncor-8crq

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Sep 16, 2020

AR-00001177



About    Bulk Data Download      Agencies     Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001178

Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

Published 3/5/2020 at the Portsmouth Daily Times
By Sandy Rozek

Melissa Martin (2/28/20) makes an eloquent but often erroneous case in favor of sexual offense registries.

These registries have been in place in every state for twenty to thirty years. Many studies have been done evaluating the effectiveness of them and their contribution to public safety. The results are overwhelmingly negative.

Registries do not reduce reoffense by those who have already offended. Sexual reoffense being high is a fraud that has been perpetuated for many years.

Contrary to Ms. Martins negative assessment of recidivism studies, they are found to be highly accurate and consistent. The earliest reoffense study found was in New York in 1944 (p.324,#6). Reoffense by sexual offenders, measured by rearrest, was 7% after 11 years, and that was when only violent offenders were tracked. The addition of statutory, non-contact, and failure to register offenses lowered the overall rate, but it remains relatively consistent. See a national study here and a compilation of state studies, where available, here. For those who cannot or will not alter their behavior, being on a registry is not a deterrent. The fact that the reoffense rate has held steady over the many years in the single digits, both before and after the emergence of sexual offender registries, is evidence of that.

Registries do not deter first-time offenders. This studyexamined the effectiveness of a variety of sexual offender laws passed between the two decades of 1990 and 2010. This study used a sample of 1,129 sexual offenders released from New Jersey State correctional facilities. When each law is analyzed using its specific purpose and application process, and then compared to a sample of sex offense cases, it becomes apparent that the laws do not apply to a wide percentage of sex offense cases. The researchers conclude that the laws have little preventive capability.

AR-00001179

8/9/23, 11:38 AM                                    Regulations.gov

Studies verify that between 95% and 96% of all new sexual crime is committed by those with no previous
sexual crime convictions and therefore not on a registry. Therefore, registries do not protect against sexual
assault; they especially do not protect children from sexual abuse as, correctly noted by Ms. Martin, virtually
all abusers of children are those in their lives, e.g., their family members, peers, and authority figures,
persons who are highly unlikely to already be on a registry.

Rather than contributing to public safety, sexual offender registries have been decried as decreasing it. In
addition to creating re-entry barriers for those with sexual convictions, barriers that affect their ability to find
and maintain the essentials most closely associated with rehabilitation, such as housing, employment, and
social support, a large increase in homelessness has been found as a direct result of public notification and
residency restrictions. Additionally, vigilantism against those on the registry occurs, ranging from
harassment to physical harm to persons or their property all the way to murder.

There is no upside to the registry. It does not lower reoffense. It does not deter crime. It does not protect
citizens. It does not make society safer. It does not encourage rehabilitation and reentry.

And for the privilege of maintaining something that does nothing good but creates only harm, each state
bears a financial burden in millions of dollars in resources each year.

And counting family members of registrants, who suffer the same deprivations and discrimination as their
registered loved ones, society bears the burden of millions of wasted and destroyed lives.

There is no valid reason for maintaining sexual offense registries.

Sexual offense registries must go.

---

**Comment ID**

DOJ-OAG-2020-0003-0313

---

 **Tracking Number**

1k4-9izt-gdrh

---

|            Comment Details            |            Submitter Info            |
| :-----------------------------------: | :---------------------------------: |

**Received Date**

Sep 16, 2020

---

AR-00001180



About     Bulk Data Download      Agencies      Learn

(/about)          (/bulkdownload)     (/agencies)   (/learn)

Reports     FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001181

8/9/23, 12:00 PM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments   724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments   724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

| Comment |
| --- |

I find these registration requirements both Draconian and based on misinformation. Not only does it take away states rights, it also takes away the incentive for those of us on the registry who have worked hard to make amends for our behavior and become better citizens. The registry has been proven time and time again, to not do anything to make our children safer. So, why are you even considering these actions. Many states are trying to back off of registry restrictions and now the DOJ wants to jump in and to set the clock back ?? We need more educated and well thought out remedies, not more knee jerk, emotional responses, that do more harm than good !!

| Attachments  1 |
| --- |

|  SOR-Info-Center-Fact-Sheet-April-2018 |
| --- |
| ⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0314/attachment_2.pdf) |

| **Comment ID** |
| --- |
| DOJ-OAG-2020-0003-0314 |

|  **Tracking Number** |
| --- |

AR-00001182

Regulations.gov

kf5-owqf-zsqz

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 16, 2020



About    Bulk Data Download     Agencies     Learn

(/about)        (/bulkdownload)     (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001183

## Sex Offense Registry Fact Sheet
## April 2018

**Have Sexual Abuse and Physical Abuse Declined Since the 1990s?**

David Finkelhor & Lisa Jones

*There are now 861,837[i] people listed on the U.S. sex offense registry (National Center for Missing & Exploited Children, 2017) – an increase of 10,000+ since 2016.

*What is "the registry"? Internet/public postings of those convicted of sex offenses including photos, home address, and crime of conviction; some states use license plates and work addresses.

*Cases known to professionals – The National Incidence Study*
Because of concern that child protection agency data may not be a fully reliable count of child maltreatment, roughly every decade since 1980 the federal government has conducted the National Incidence Study (NIS) of Child Abuse and Neglect. The NIS gets reports directly from a systematic sample of professionals who work with children across many different sectors and agencies. In the most recent evaluation of data (2010), reports they receive. This is an area issues like changes in standards of reporting and criteria. 2000 requires those convicted of sex offenses

**Widespread public sex offense registries emerged in the mid-1990s.** The Jacob Wetterling Act (1994) requires states to implement a sex offense registry; Megan's Law (1996) requires states to conduct community notification and maintain internet sites with sex offense information; the Pam Lychner Act (1996) establishes the National Sex Offender Registry. Recent federal laws include the Adam Walsh Act (2006) establishes uniform registration/notification and requires registration for those 14 and older; Keeping the Internet Devoid of Predators (2008) requires those convicted of sex offenses to disclose all internet identifiers; International Megan's Law (2016) requires passport identifiers for those convicted of sex offenses.

**State and federal sex offense laws often apply for life, even after completion of jail/prison and parole/probation.**

The Department of Justice (2003) study[ii] tracked 9,691 sex offenders released from prison in 1994 for 3 years; 5.3% were rearrested for a sex crime within 3 years; 3.5% were reconvicted.

A Connecticut Office of Policy and Management (2012) study[iii] tracked those released in 2005; 3.6% were rearrested with a new sex crime, 2.7% were convicted, 1.7% returned to prison.

A California Department of Corrections (2015) study found that of the 8,471 California sex offenders released from prison in 2009-2010, 0.8% were returned to prison for a new sex crime and continuing... 5.3% for a new non-sex crime, 2% for failing to register as a sex offender).



**Figure 1. NCANDS National Estimate Substantiated Sexual Abuse (1990-2010)**

62% Decline (1992-2010)

3% Decline (2009-2010)

Rate per 10,000 Children (<18)

Source: National Child Abuse and Neglect Data System

***Do sex offense registries keep us safer?**

A 2008 study found over 95% of sex offenses in New York are committed by first-time offenders[v].

• The sex offense registry is not widely accessed; a Nebraska study found only 3.8% of adults had actually accessed it.

• There is no evidence that creating and maintaining the sex offender registry is an economical or effective proxy of sex crimes against minors.

↑ ↑ ↑ There has been a steady and significant decline in child sexual abuse since 1990[viii]—before federal registry laws. Scholars find the decline is largely due to social and economic factors[ix] - not the registry.

**Why does the public believe those convicted of sex offenses are destined to re-offend?**
State-based laws such as "Jessica's Law"[x] include provisions that those convicted of sex offenses wear GPS devices – often for life – on the grounds that recidivism is inevitable; Ellman & Ellman (2015) detail[xi] how false sex offense recidivism data guides major judicial decisions and policies, and how the Supreme Court has utilized debunked research showing re-offense rates are "frightening and high."

**Author: Emily Horowitz, Ph.D. (Dept. of Sociology & Criminal Justice, St. Francis College)**
**Contact: ehorowitz@sfc.edu / April 2018**

**\*Do residency restrictions (state laws requiring those with sex offense convictions to live a certain distance from schools or other places where children congregate) protect children and victims?** A Minnesota study investigating 224 recidivistic sex offenders in Minnesota concluded, "not one of the 224 sex offenses would likely have been deterred by a residency restriction law" (<u>Minnesota Department of Corrections</u>[xii]).



**\*What are the unintended effects of sex offense laws?** "In Miami, Florida…over 60 sex offenders are now living under a bridge because they cannot locate compliant housing. Other states…have also reported increased homelessness of sex offenders as a result of residential restrictions. Housing availability is limited by geographic restrictions and exacerbated by practical considerations such as affordability. Most sex offenders are underemployed as a result of their felony record and stigmatizing status…" (<u>Levenson</u>[xiii] 2009).

People convicted of sex offenses have wives, partners, children, and parents; registries identify where registrants live, harming family members, including children, in <u>devastating ways</u>[xiv] (Levensen & Tewksbury, 2009).

**\*The registry was designed to protect children from "stranger-danger." Does it do this?**
➢ The registry includes people convicted of statutory crimes, "Romeo and Juliet" offenses, non-contact offenses (e.g. looking at images of children or having a conversation with an FBI agent posing as a minor), and those with adult victims. Minorities are over-represented on the registry. Twenty-two percent<u> of those on the registry are black compared to 13% of the U.S. population</u>[xv].
➢ About 1/3 of those who sexually abuse minors are children themselves; among adult perpetrators, those under the age of 30 are overrepresented (see <u>here</u>[xvi]).
➢ <u>Between 75% and 93%</u>[xvii] of people who sexually abuse children are non-strangers. Instead, they are primarily acquaintances and family members.

**\*Is the United States unique in making sex offender registries publicly available?**
Other countries have law-enforcement only (private) registries; only <u>South Korea</u>[xviii] has a fully public registry similar to U.S. In the U.K., a tabloid published a list of those convicted of sex offenses (2000) to "name and shame" and push for a public registry; the effort was <u>abandoned</u>[xix] quickly after a spate of vigilante attacks and opposition from law enforcement and child welfare groups. The UK refused to extradite an alleged sexual abuser because he could be subjected to an indefinite commitment order that would be a <u>"flagrant denial"</u>[xx] of the European convention on human rights.



**Summary**
Our sex offense laws are based on false assumptions about the victimization of children by strangers who are presumed to be repeat offenders. The reality is far more complex--the vast majority of victims are harmed by non-strangers and/or those without prior convictions. Moreover, of those convicted of sexually abusing other children, many are themselves children or young adults. Research shows that those labeled "sex offenders" are not "hardwired" to inevitably reoffend, and are responsive to rehabilitation.

**We need to start over and rethink how to prevent sexual violence. Our sex offense legal regime is ineffective, unfair, and unsupported by research – without making anyone safer.**

Author: Emily Horowitz, Ph.D. (Dept. of Sociology & Criminal Justice, St. Francis College)
Contact: <u>ehorowitz@sfc.edu</u> / April 2018

AR-00001185

i http://www.missingkids.com/content/dam/ncmec/en_us/documents/sexoffendersmap.pdf

ii https://www.bjs.gov/content/pub/pdf/rsorp94.pdf

iii http://www.ct.gov/opm/lib/opm/cjppd/cjresearch/recidivismstudy/sex_offender_recidivism_2012_final.pdf

iv https://www.cdcr.ca.gov/adult_research_branch/Research_Documents/2014_Outcome_Evaluation_Report_7-6-2015.pdf

v http://psycnet.apa.org/record/2008-18509-003

vi http://psycnet.apa.org/record/2008-18509-003

887403408316705

vii https://www.ncjrs.gov/App/Publications/abstract.aspx?ID=247350

viii http://www.unh.edu/ccrc/pdf/CV267_Have%20SA%20PA%20Decline_FACT%20SHEET_11-7-12.pdf

ix https://spssi.onlinelibrary.wiley.com/doi/abs/10.1111/j.1540-4560.2006.00483.x

x https://www.ocregister.com/2014/12/14/jessicas-law-promised-more-than-it-could-deliver/

xi http://dx.doi.org/10.2139/ssrn.2616429

xii http://www.csom.org/pubs/MN%20Residence%20Restrictions_04-07SexOffenderReport-Proximity%20MN.pdf

xiii
https://www.americanbar.org/publications/human_rights_magazine_home/human_rights_vol36_2009/spring2009/restriciting_sex_offender_residences_policy_implications.html

xiv https://metamorafilms.files.wordpress.com/2016/08/collateral-damage.pdf

xv https://www.counterpunch.org/2016/04/11/are-sex-offenders-white/

xvi http://www.unh.edu/ccrc/factsheet/pdf/CSA-FS20.pdf

xvii http://www.unh.edu/ccrc/factsheet/pdf/CSA-FS20.pdf

xviii https://smart.gov/pdfs/global-survey-2016-final.pdf

xix https://www.theguardian.com/society/2000/aug/04/childprotection

xx https://www.theguardian.com/law/2016/feb/26/us-fails-extradite-alleged-american-paedophile-roger-giese-britain

AR-00001186

8/9/23, 11:57 AM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |   Share ▾ |

Comment

The following are concerns created by the proposed rules reported in the federal Register Vol. 85, No. 157, Docket No. OAG 157. (September 16, 2020)

1.      The entire document should be gender neutral.

2.      The implementation of the SORNA has to be reconciled. Currently the SORNA Act being defined at a federal level and then defined again at the state level is a method that is confusing, overwhelming, and frankly unfair to any that are required to register. The impetus for understanding and knowing the laws in each state a person may travel to, move to or live in is always put on the shoulders of the sex offender. From a Mens Reas perspective, only the state that the person is currently living and registered in would the laws be known fully because that information is provided to the registrant on an annual (or more often) basis. This is truly the unfairness of holding the sex offender accountable.

3.      In the proposed section 72.4, it states a sex offender is required to register "initially register in the jurisdiction in which the offender was convicted in if that jurisdiction differs from the jurisdiction of residence." I understand that this is currently in 34 USC 20913(a), however the implementation of this could be impossible to accomplish. For example, if a person was convicted in Georgia, but upon release they will be living in Wisconsin. To require a person to travel to Georgia for that initial registration would not be able to be accomplished from both a financial perspective and most likely from a supervised release perspective, especially in a 3-day timeframe.

4.      Under section 72.5, it states "Expiration of the SORNA registration period accordingly does not obviate the need for sex offenders to check with the registration jurisdictions whether they remain subject to registration requirements under the jurisdictions' laws." Once again putting the onerous on the sex offender unfairly creates a situation that is punishable by law. The government must take up the responsibility normalizing the SORNA across states and notifying the sex offenders of their responsibilities.

5.      The number of examples provided in this publication indicate that this registration process can be extremely complicated. Once again, it needs to be simplified and normalized.

6.      Given the recidivism data from the Bureau of Criminal Justice, in section 72.6 the paragraph that states information about temporary lodging should be provided while away from his residence for seven or more days should be based on the Tier of the offender. Regardless, unless this is normalized by the state

AR-00001187

Regulations.gov

registries, this rule would be almost impossible to implement. Also, again related to Mens Reas the rule would be unfair unless DOJ has coordinated with all states and all registered individuals are notified.

7.      The Attorney General should add a section of the procedure/process of terminating the registration once the offender has reached the time limit.

**Comment ID**

DOJ-OAG-2020-0003-0315

 **Tracking Number**

kf5-rk30-ei60

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 16, 2020



About   Bulk Data Download     Agencies    Learn

(/about)          (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001188

8/9/23, 11:42 AM                                              Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)    Share ▾

---

Comment

I am on the sex offender registry. I took a plea agreement of Nolo Contendre back is May of 1995. At rhat time my requirement was to register my address and to report any change of address within 10 days. There was no internet registry. Normally as people convicted of a crime who do not reoffend get further and further away from their conviction, things get easier for them. The same cannot be said for a convicted sex offender! Over the past 25+ years it has gotten harder and harder on me. With re-registration requirements, random home checks, reporting if I leave the county I live in, and going from 25 years in the registry to life in the registry, the more time that goes by for me, the worse things get! I don't know how anyone can say the sex offender registry is not "cruel and unusual punishment". Over the years I have lost relationships over being on the registry. Now with Covid-19 and losing my job through no fault of my own and struggling against many other unemployed people to find a new job, I am losing job offers over being on the registry. It's hard enough to get an interview. Even harder to get a second or third interview. But to be given an offer based on a background check that turns up not that I had a felony conviction 25+ years ago, but that I am a registered sex offender, and then to have that my offer withdrawn to me is "cruel and unusual punishment". I have had no problems with the law in the 25+ years post my conviction. I have been a model citizen. I am a professional SAP SD Consultant which is in high demand. Yet because I'm a registered sex offender 25+ years post conviction I cannot attain new employment. What do I do now? I mean I keep trying and hoping and praying for more interviews and another offer, but really what do I do? How do I support myself and my family? What if I do finally get another offer and I'm told I need to travel internationally knowing I cannot travel to most countries? Please someone tell me what I am to do and how this is not "cruel and unusual punishment"! There cannot be a one size fits all Registry. Yes I know that is easier and more cost effective for states to enforce. But that puts everyone under one standard and that makes no sense. All I want to do is to get in with my life and work to support myself and my family. Yet 25+ years later I'm still struggling to do that. I thought the "justice" system was about rehabilitation not continued retribution. This sex offender registry does need to be reformed, but not how the proposed SORNA changes are proposing. It needs to be reformed to evaluate "offenders" on a case by case basis for removal from the registry.

AR-00001189

**Comment ID**

DOJ-OAG-2020-0003-0316

 **Tracking Number**

kf5-xlpe-m8hj

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 16, 2020



About    Bulk Data Download      Agencies      Learn

(/about)          (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001190

Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |   Share ▾ |
|---|---|

---

| Comment |
|---|

As a sex offender treatment provider in Washington state I ask that you carefully examine the science regarding juveniles who commit sexual offenses. Please consider a work group of treatment providers and researchers who are familiar with this population. The potential consequences of this legislation will have profound, detrimental consequences for so many young people.

Although the body of research on juveniles who commit sexual offenses is growing, there appears to be a consensus in the field that juvenile sexual offenders are different that adult sexual offenders both in the dynamics of their offending and life course . Authors of one prominent article write It is generally assumed by researchers and practitioners that juvenile sexual offending and adult sexual offending are two distinct phenomena requiring distinct explanatory and descriptive models (pp. 1560).

A meta-analysis by Caldwell (2016) of 106 data sets (n=33,783) indicated the weighted base rate for detected sexual recidivism of juveniles was 4.97% and general recidivism of 39.4% over an average follow up time of 62.06 months. These study results support the general consensus that sexual recidivism among juvenile offenders is a rare event (pp. 421). There is a strong research base to suggest juvenile sex offenders do not continue offending into adulthood and desistance from offending is the norm among adolescents who sexually offend3.

The American Bar Association (2009) wrote an opinion on juvenile sex offenders and made a number of urgings and recommendations to Congress and state legislatures. The article highlights that juveniles are different than adults in regard to culpability due to the vulnerability of children and their inability to make critical decisions in an informed and mature manner.

Lussier, P., Van Den Berg, C., Bijleveld, C., & Hendriks, J. (2012). A developmental taxonomy of juvenile sex offenders for theory, research, and prevention: The adolescent-limited and the high-rate slow desister. Criminal Justice and Behavior, 39, pp. 1559-1581.
Caldwell, M. (2016). Quantifying the decline in juvenile sexual recidivism rates. Psychology, Public Policy, &

AR-00001191

Regulations.gov

Law, Volume 22(4), pp. 414-426.

American Bar Association (2009). Juvenile sex offender policy. Found americanbar.org.

---

**Comment ID**

DOJ-OAG-2020-0003-0317

---

 **Tracking Number**

1k4-9izy-5egj

---

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 16, 2020

---



Your Voice in Federal Decision Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001192

8/9/23, 12:07 PM                                                            Regulations.gov

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

I'm against the proposed SORNA rule changes contemplated under Docket No. OAG 157; AG Order No. 4759-2020. Specifically, requiring the registration/reporting of communication identifiers, such as ALL email addresses and phone numbers. Providing all professional licenses is too onerous as well. Adding location and names of employers exposes businesses and their employees to possible safety risks and to undue and unnecessary public scutiny. Moreover, these requirements are irrelevant and ineffective in preventing future offenses, bettering public safety, or protecting the registrant's privacy. Lastly, I'm against the segmentation of Periodic in-person verification requirements. There is no public safety value or proven enhancement to public safety by requiring in-person verification cycles less than once every 12 months. All of the above are burdensome on the adminstration arm of registration and punitive on the registrant. Redirect your energy and my tax dollars on issues that do not continue to punish those who have already been convicted and servers out their sentence.

**Comment ID**

DOJ-OAG-2020-0003-0318

⊙ **Tracking Number**

kf6-18bu-ljd3

**Comment Details**                                    **Submitter Info**

**Received Date**

AR-00001193

8/9/23, 12:07 PM                                          Regulations.gov

Sep 16, 2020



About    Bulk Data Download    Agencies    Learn

(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001194

8/9/23, 11:40 AM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)        Share ▾

Comment

I love my country. I am a veteran of the United States Army. I have never been arrested. I consider myself a law-abiding citizen. I never really paid any attention to the SORNA laws. I just assumed they were necessary and kept us safe. Then a family member was convicted of a crime that requires him to register. I always believed that the purpose of our judicial system was to punish someone for a crime, if sent to prison provide rehabilitation (which absolutely doesn't happen even to those who want it), and then when they have served their sentence, be reintegrated back into society to contribute. I have quickly learned that laws such as SORNA do the exact opposite. They prevent people convicted of crimes requiring them to register to be able to become employed, prevent them from finding housing, prevent them from providing basic needs for their families (I have met people who can't take their kids to school, watch them participate in sports, watch them graduate or receive awards, can't shop for groceries because all the stores are too close to restricted areas in their county, couldn't help an aged parent who broke their leg because his house was too close to a park), or even attend church.

I have learned that our law makers and most of the American public do not care that research study after research study (I am not listing any because I'm sure you've seen them and multiple other responders have them listed in their comments) demonstrate the ineffectiveness of SORNA and how it doesn't protect us, to include our children, from these imaginary monsters who are apparently lurking in bushes to snatch us away. People just don't care. SORNA supporters, the media, and politicians have created such hysteria that no one believes the research. SORNA does more harm than good, that's the truth, not my opinion but what research and statistics have shown us. That's not popular. Standing up and saying the truth is scary because people will literally hurt you. Standing up and telling the truth will get you fired and ostracized.

As I said at the start of this, I have never been arrested. But because of laws like SORNA, I am treated as if I have been convicted along with my family member. My address is listed online for anyone to look up. Everyone who lives at my address, four other adults who have never been arrested, are required to have our vehicle information entered into the registry. Neighbors who I have known for years will not talk to me. I have been called names and have felt threatened. I have since installed cameras around my house to monitor for people who might vandalize my property. I am not allowed to decorate for Halloween, something I have done for years. I am at risk for being attacked or murdered by vigilantes. All due to SORNA.

AR-00001195

8/9/23, 11:40 AM                                                        Regulations.gov

I strongly oppose SORNA. I oppose the addition of any more restrictions placed on those required to register. I oppose any public registration lists. I oppose the fact that the laws applied to those required to register are so varied they are impossible to comply with. It's not just state by state but county by county, city by city. You have set up a system of failure, instead of a system that allows registered offenders to reintegrate, repent, and contribute to our society.

I hope you listen.

**Comment ID**

DOJ-OAG-2020-0003-0319

 **Tracking Number**

kf6-4x6e-nsc4

**Comment Details**                                        Submitter Info

**Received Date**

Sep 16, 2020



Your Voice in Federal Decision Making

About        Bulk Data Download        Agencies        Learn

(/about)            (/bulkdownload)        (/agencies)    (/learn)

Reports        FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001196

8/9/23, 11:57 AM                                        Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)        Share ▾

---

Comment

Dear Attorney General,

Last Saturday, the state police stopped my son. He was doing nothing wrong. When he asked why they pulled him over, they did not readily provide an answer. Our son asked twice while the officer stared at him for an uncomfortably long time before he was told there was an APB out for a car with his description. They asked his adult passenger, to step out of the car, proceeded to take their information, and asked if they knew my son was on the sex offender registry. It so happens the person he was with did know he was on the registry, but what if they did not?

His crime occurred when he was 21 when he fell in love with a 14 year old. She ran away from home and the police triangulated her cell phone to locate her. They had had relations and both confessed immediately. He ended up serving 3 years in prison and 2 year on parole. The only other time he had been in any kind of trouble was when he received a speeding ticket at 16. He served his sentence and all the testing performed proved he is not a high risk for reoffending.

Now, what kind of life can he have? When policies drive people to isolation, joblessness, and shame what kind of result do you expect? I beg you to reconsider trying to strengthen registry restrictions and instead put our resources to work at educating and providing mental health services for likely reoffenders.

---

**Comment ID**

DOJ-OAG-2020-0003-0320

AR-00001197

 **Tracking Number**

1k4-9j02-syky

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 16, 2020



Your Voice in Federal Decision Making

About        Bulk Data Download        Agencies        Learn

(/about)        (/bulkdownload)        (/agencies)        (/learn)

Reports        FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)        (/faq)


Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001198

8/9/23, 11:45 AM                                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

Share ▾

---

Comment

In. May of 2006 I was convicted of a Class 4 Misdemeanor, sexual Exploitation of a minor, in Aurora Colorado. I was sentenced to 5 years probation and Registration as a Sex offender.
After successfully filling the requirement of probation, I moved to Key West Florida where I was required to transfer my registration from Colorado to Florida. In September of 2014 I returned to Colorado and in September of 2016 I filled court documents and was successfully removed from the Sex Offender registry in Colorado, where my crime was committed.
I submitted my court documents to the State of Florida FDLE requesting that I be removed from the Florida register. This request has been denied 4 times and in doing so the Florida registry populates my profile on the National registry.
This is not only harmful to me personally but also is a violation of many laws. This bill perpetuates that same issue and impacts not only my life but that of many of my friends and family.
I worked very hard with the State of Colorado to fulfill the requirements of my conviction, Successfully. This law and the State of Florida continue to create punishment for me years after I was release by the courts in the district were I was convicted

**Comment ID**

DOJ-OAG-2020-0003-0321

◎ **Tracking Number**

kf6-v71l-kkeh

| Comment Details | Submitter Info |
|---|---|

AR-00001199

**Received Date**

Sep 17, 2020



About    Bulk Data Download       Agencies     Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001200

8/9/23, 11:58 AM                                                        Regulations.gov

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

Docket No. OAG 157. Proposed Rule Interpreting Registration Requirements Under SORNA

I am a family member of a brilliant young man who was arrested and convicted for viewing 36 images of teen girls in sexual acts. He was away a college and 4 officers drew guns on his senior citizen housemate who answered the door, He was evicted within 2 weeks of his arrest, He was asked to withdraw from the college and after a year and a half of due process with a top criminal attorney convicted of a felony sex offense with lifetime registration. He served jail time, 3 years probation and paid out of pocket $200 a week for 150 weeks for mandatory therapy or $30,000.

At age 26, he returned to that same college and completed his degree. He is searching for a job at this time. He cant work in a job requires travel to US states bc he would need to register w local law enforcement at any state he enters. He cant travel internationally except to Europe due to Megans Law.

Now you want to add more laws and requirements to his already limited freedom.

The grief I face is for his lost young adult life and his disadvantaged future. He is a kind, caring and decent young man.

Please take time to view this 3 minute PSA video how easily the wrong click of the mouse can put anyone into this lifetime of punishment.

https://youtu.be/IouHfa1S6sw

On behalf of the 1 million people who are required to register and their families, I hereby request you consider the burden these human beings and their families face and oppose adding these SORNA laws to impede us further.

AR-00001201

Regulations.gov

**Comment ID**

DOJ-OAG-2020-0003-0322

 **Tracking Number**

1k4-9j0f-kmbw

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 17, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001202

8/9/23, 12:08 PM                                              Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments ⬭724 (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments ⬭724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

Current law is over broad end costs taxpayers a considerable amount of money with ZERO BENEFITS toward making our society safer. In fact, it had been demonstrated that SORNA creates numerous problems, not the least of which is that it actually makes us less safe than would be if it didnt exist. While it is possible that it was created with good intentions, it is abundantly clear this is, at best, a failed experiment. The solution is to eliminate it in its entirety. If thats not possible, then at the very least its coverage should be strictly limited to individuals who pose a real and significant threat to society. I challenge you to do the morally right and practically right thing and avoid to doing only that which has the purpose politically benefiting the politicians. For once, put the countrys interests above your own.

**Comment ID**

DOJ-OAG-2020-0003-0323

 **Tracking Number**

1k4-9j0h-syy5

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 17, 2020

AR-00001203



About     Bulk Data Download       Agencies      Learn

(/about)          (/bulkdownload)   (/agencies)   (/learn)

Reports     FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001204

8/9/23, 11:41 AM                                    Regulations.gov

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)   Share ▾

---

Comment

William P. Barr,

Attorney General.

Dear Sir,

I am writing in response to the purposed rule on Registration Requirements Under the Sex Offender Registration and Notification Act.

Let me state that I was a victim of criminal sex offense. So, I have real knowledge of the victim's side of this argument.
I am thoroughly against the Registry as it currently stands. I find it to be in complete opposition to any and ALL Double Jeopardy rules and regulations of law.
The fact that these Registrants should be tracked is not my issue. My issue is that the general public is not capable of handling the level of disclosure that the current Registry provides.
Not All cases are cut and dry. Some have extenuating circumstances, but the Registry does not show that.
You, Sir, and ALL other lawmakers associated with the enactment of the registry are, in my humble opinion, guilty of perpetuating further punishment of the registrants, and by extension, their respective families. This would include, but not be limited to, stalking, assault, aggravated assault, hate crimes, and, in some cases, murder. I am sure that is not the intent, yet it is the result of the Registry as it stands.
I implore you, Sir, with your fellow lawmakers to reevaluate the Registry. I am not asking that there not be a method of tracking persons who commit heinous and horrendous sexual acts, I am asking that it NO longer be public.

Sincerely,
A concerned citizen and registered voter

AR-00001205

**Comment ID**

DOJ-OAG-2020-0003-0324



**Tracking Number**

1k4-9j0i-q3ki

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 17, 2020



About        Bulk Data Download        Agencies        Learn
(/about)            (/bulkdownload)        (/agencies)        (/learn)

Reports        FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)        (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001206

8/9/23, 11:54 AM                                                        Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments ⟨ 724 ⟩ (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments ⟨ 724 ⟩ (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

16 y/o girl killed by dui driver gets 2-20 years, no registration. Another person touches breast of 16 y/o goes to trial, get 10-life sentence on lewdness, registered for 25 years. makes sense.

| **Comment ID** |
| DOJ-OAG-2020-0003-0325 |

|  **Tracking Number** |
| kf7-7kmw-umpe |

| **Comment Details** | **Submitter Info** |
|---|---|
| **Received Date** | |
| Sep 17, 2020 | |

AR-00001207

8/9/23, 11:54 AM                                                    Regulations.gov



About     Bulk Data Download        Agencies      Learn

(/about)          (/bulkdownload)     (/agencies)    (/learn)

Reports     FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001208

8/9/23, 11:50 AM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **DOJ** on Sep 22, 2020

Share ▾

---

Comment

I myself as well as my friends and family members are greatly opposed of the SORNA Requirements. This bill with all its micro managing regulations makes someone feel less than a human being and more like an animal. We have been told all our lives from both religious factions as well as from our own politicians that people make mistakes and that everyone deserves a second chance. These SORNA requirements however completely contradict that. Reading through paragraph after paragraph of requirements that you impose on a registrant literally tells me that you are setting them up for failure. Not even Jesus Christ himself could be able to follow all these regulations and guidelines that you have on this bill. Put yourself in the shoes of not only the registrant but also all the families that you affect by imposing such inhumane regulations on someone. The constant demonizing that is imposed on a registration makes it impossible to live a decent, normal life. Now I know that there are cases where some registrants are multiple offenders of serious sexual misconduct and that those specific people need to be more closely monitored. But to constantly punish individuals who made a mistake in life, let alone have to adhere to all these inhumane conditions, without giving them an opportunity to be removed from the registry is completely unfair. I ask that you please show compassion for not only these individuals but also their families to not enforce these inhumane SORNA requirements. Thank you!

**Comment ID**

DOJ-OAG-2020-0003-0326

 **Tracking Number**

kf7-92mz-reof

**Comment Details**                              **Submitter Info**

https://www.regulations.gov/comment/DOJ-OAG-2020-0003-0326

AR-00001209

Regulations.gov

**Received Date**

Sep 17, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download       Agencies      Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001210

8/9/23, 11:43 AM                                                Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)        Share ▾

---

Comment

Sex offender registries do nothing to keep the public safe. The majority of people currently being forced to register are not heineous monsters like Jeffrey Dahlmer, they are one-time offenders that have never had another conviction. The purpose of this registry does nothing but shame and label, it is very similar to how Jews were labeled with a gold star in Nazi Germany. States were rewarded by the federal government and paid for each registrant they had, and some even changed commitment papers to reflect their sentences were to fall under Megan's Law, when Megan's Law didn't exist the day they were arrested, a total violation of Ex-Post Facto Laws. People who have committed a violation of law are punished, and should be allowed to go on with their lives after having served their time as established by the court. To disenfranchise so many for a mistake made and suffered for (along with their families) is not conducive to rehabilitation and does nothing but cost taxpayers an enormous amount of money. It seems that money or political influence can buy your way out of punishment shame (Jeffrey Epstein). I have been adversely affected by the registry because my husband cheated on his first wife, and she reported to authorities first saying that she had a dream she saw him molesting their 3 year old, then the next day after being told they couldn't do anything about a 'dream' she came back and said she must have been repressing it, and it wasn't a dream but real. Because he refused to plea bargain (he was offered 3 years, no mandatory) for a crime he didn't commit, and the fact that the McMartin Daycare Trial was going in 1990 and he had an incredibly biased judge, who cross examined a witness from the bench which biased the jury). If he had lied the two times he went to the parole board when they asked him if he had learned him lesson, he would have been released on parole, but no, he is stubborn and just gave them a blank stare. So, first time offender, never had another arrest was finally released after the prison maxed him out 12 1/2 years of his life lost, he never saw either of his children again since the day of his arrest. After he was convicted and sent to jail, his then wife divorced him and surrendered both of their children over to the state, and she eventually committed suicide the month after she heard he had remarried. It is so easy to make this type of accusation, and almost impossible to defend. Most people wouldn't believe a mother would harm her children just to get revenge on a cheating husband. I heard many years later that she had tried to retract her accusation and was told by the prosecutor that she would go to jail for perjury if she did. Every individual is unique and has their good and bad, and each of us needs to ask forgiveness if we have done something wrong -, neither you nor I are

AR-00001211

Regulations.gov

perfect people. A quote taken from the movie Gettysburg "Any man who judges by the group is a pea-wit. You take men one at a time.There's many a man worse than me, and some better, but I don't think race or country matters a damn. What matters, Colonel, is justice". Dr. Lisa Zilney wrote in her paper "Guilt by Association: Labeling Research-Based Policy Suggestions as Pro-Offender and said it best "What the public repeatedly fails to understand is that someone required to register for a sex offense could be an individual who urinated in public in a school zone, a 20-year-old who had sexual relations with his 15-year-old girlfriend whom he later married, an individual caught viewing online child pornography, or an individual who kidnapped and raped a child (to name only a few). In their impact, these acts are extremely varied, yet each is under the umbrella term sex offender and this individual would be required to register'. We need laws that are unbiased and not based on emotion, not registries that disenfranchise and humiliate for life, and leaves nothing but a feeling of hopelessness and shame. Please stop this labeling, it does nothing to keep children safer. 2C Law didn't work and exploded our prison population, but did nothing to keep the public safer. The same can be said for SOR's. Gail Colletta of the Florida Action Committee said it best when she wrote "The incorrect perception of sex offenders that continues to be propagated has prompted increasingly severe sanctions against them. Harsh punishments, such as continuous public notification and residency restrictions, continue to be passed despite evidence that suggests they have little to no effect on recidivism rates and actually decrease public safety because of the social stigma and employment and housing instability they create". We need to stop creating blocks to successful rehabilitation that registries enforce, and we need to educate and stop treating registrants as a 'one size fits all'

---

### Comment ID

DOJ-OAG-2020-0003-0327

---

 **Tracking Number**

kf7-ar2j-ut1k

---

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 17, 2020



AR-00001212

Regulations.gov

About      Bulk Data Download      Agencies      Learn

(/about)      (/bulkdownload)      (/agencies)   (/learn)

Reports      FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)


Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001213

8/9/23, 12:04 PM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)          Share ▾

---

Comment

My husband was accused of a crime he didn't commit. There was absolutely no evidence against him, just someone's word against his. We believed in the justice system, so he went to trial. Instead of getting a few months in prison, he now hopes to be released after 15 years. We thought he would register for 10 years and then we could put this terrible ordeal behind us. Now he might need to register for life? Why?

Why does legislation continue to be developed, at the state and federal level, that makes it more difficult for someone who made a mistake, or someone falsely accused, to reintegrate back into society? It's far more difficult for registered people to find housing and jobs and be successful citizens again than for those convicted of any other offense. Therefore, the Department of Justice has stated that these restrictions can lead to increased recidivism.

It is amazing that recidivism has not increased significantly since public registries. There has been very little change in sexual offense recidivism since before public registries began. Those convicted of sexual offenses reoffend far less than those convicted of any other crime, excluding murder.

Are these laws and regulations supposed to keep society safe, when there are many studies showing no evidence of that and the great possibility of adverse effects on society's saftey?

Are these laws and regulations supposed to protect children from strangers, when over 90% of sexual offense victims know their offenders, who are often close friends or family members?

Are these laws and regulations supposed to heal the hurt of victims? I was sexually abused by two family members when I was young. I thank God these laws were not in place at the time and no one found out about the abuse. It would have been significantly more traumatic for me as a child and as an adult, knowing these individuals I had forgiven are continually paying for their mistakes.

There is no evidence anywhere to show the numerous sexual offense registries are effective, and a lot of

AR-00001214

　　　　　　　　　　　　　Regulations.gov

evidence to show otherwise. Yet the media and general hysteria dictate, not facts and reason. When will it end?

Public registries spawn hate crimes that injure, maim, and on a few occasions kill the registered person, family members, friends, or house mates. Does that keep society safe?

Alternatives:
- Keep public registration for the highest risk offenders.
- Focus funds saved from bulky registries on educating children regarding protecting themselves sexually (most importantly), treatment strategies, prevention, and restorative justice
- Allow registrants who are not high risk to request and perhaps receive termination as an incentive for good behavior

Please do not continue pouring taxpayer money into registries, laws, and regulations that do not work but instead cause much harm.

**Comment ID**

DOJ-OAG-2020-0003-0328

 **Tracking Number**

1k4-9j0n-b022

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 17, 2020



　　　　2/3

AR-00001215

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001216

8/9/23, 11:42 AM                                                     Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)          Share ▾

---

Comment

The above suggested propositions have created and will continue creating an economic burden, specifically in real estate economics. It significantly impacts housing prices to go down when a registrant moves in the area and research shows the prices of homes rebound after registrant moves out. This is especially true of a registrant who has completed their time and paid their debts. Has created family and community and a meaningful job to give back to society and support the household, not to mention everyone else who has to suffer the consequences SORNA has unintentionally caused to the housing market.

Here's a quote from a study I have attached to this comment: "Registered sex offenders not only affect a home's value, but also its liquidity or number of days it spends on the market." The study goes on to prove this fact.

Additionally, how much does it cost taxpayers, the states, and the government to have to continue having ex-convicts fulfill the duties of SORNA? Specifically those who have completed their time, but at the same time demonstrates no recent evidence that suggests recidivism? With this in mind, would a major reduction of the list be a more economically sound approach, as well? Evidence is showing an economic burden this has caused, so it would be reasonable to approach SORNA with at least a modicum of practicality. Is there a need to keep registrants having to fulfill these duties, especially with evidence suggesting those who have aged out of crime? Or those who have completed their sentences? Have not reoffended after decades? Have completed treatment? How about the responsibility from media and authorities of verifying that some registrants are indeed dangerous, and not raised to a Level III because of a technicality such as missing a required prison therapy session? Why still apply the same old-fashioned and outdated model that science and research continuously demonstrates how it causes (and has caused) debt in our country, instead of growth and increase—of which we collectively envision. I think this would create a reasonable effect on the economy in this country, in general, if a reduction from the obligations of SORNA was considered, specifically for those with evidence of no future recidivism. This would keep SORNA to more of its intended purpose.

AR-00001217

I submit this proposition with a PDF attachment of the study that proves the negative impact this causes in real estate economics—an area that prodigiously restricts the American Dream not only to registrants who have paid all of their debts, but to the rest of the country.

**Comment ID**

DOJ-OAG-2020-0003-0329

 **Tracking Number**

kf7-ljp5-q61r

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 17, 2020



Your Voice in Federal Decision Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001218

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

---

Comment

This will only cause more harm that is not needed or a requirement of any public safety.

This is simply more punishment and most registrants are not a problem for anyone.

Please do not push this to be passed.

**Comment ID**
DOJ-OAG-2020-0003-0330

 **Tracking Number**
1k4-9j0s-o29o

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**
Sep 18, 2020

AR-00001219

Regulations.gov



Your Voice in Federal Decision Making

About   Bulk Data Download      Agencies     Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001220

8/9/23, 11:54 AM                                          Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)         Share ▾

---

Comment

Hello.i am against the registry and their ex post factor laws which state in burgess vs salmon the ex post facto laws cannot be evaded by giving civil form to that in which it is essentially criminal. Intent does not have to be involved for it to be ex post factor argument the whole registry is in violaton of ex post factor laws retroactive laws due process laws. Congress when passed didnt have to have a constitutional.law that os what gets faught on court if it is a violation which has proven it is tome and time again. Congresses intent has bo bearing if its un constitutional.in nature of not.I request the adam walsh act be repealed and sometjing constitutional.and more effect put in its place

Maybe if you didnt apply it retroactively and it was part of a crimminals sentence which let them.know the rules applied if they plead guilty or are found guilty then i dont think u would have any or many court battles about it plus it would benefit people because it would be more realistic with actual threats studies have been done which show 95.% oof people on the sex offenders list are of.no threat to society at all and 90% were convicted over 10 years ago

**Comment ID**

DOJ-OAG-2020-0003-0331

 **Tracking Number**

1k4-9j11-lgru

**Comment Details**                                        **Submitter Info**

AR-00001221

**Received Date**

Sep 18, 2020



About    Bulk Data Download      Agencies      Learn

(/about)       (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I have been negatively affected by the Michigan State Public Sex Offender Registry and feel that this proposed rule will have the same effects if enacted. My testimony on a proposed bill in the Michigan Legislature can be found at the following address https://www.house.mi.gov/SharedVideo/PlayVideoArchive.html?video=JUDI-052720.mp4 and scroll to 54:33 to view my specific testimony.

**Comment ID**

DOJ-OAG-2020-0003-0332

 **Tracking Number**

1k4-9j11-anyb

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 18, 2020

AR-00001223



About    Bulk Data Download      Agencies    Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)


Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001224

8/9/23, 12:13 PM                                                Regulations.gov

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

Thank you for the opportunity to comment. I am of the opinion that the Registry in its current state and the proposed SORNA rules change Docket No. OAG 157 will do little to remedy the host of problems associated with the Registry. I base this opinion on the following.

1. The Registry for anyone who has served time and completed their parole or probation obligations is being punished for a second time and I view this as double jeopardy.

2. Persons placed on the registry never receive a fair chance of entering back into society after rehabilitation and face little to no employment opportunities. Registrants can't support themselves let alone their families especially now during the pandemic.

3. The registry not only places a scarlet letter on the offender but also on the offenders family.

4. There are a million people currently on the Registry which is growing on a daily basis. Monitoring offenders has a cost which is also growing by the day.

5. My view is that the money spent on the Registry and the ancillary costs to community law enforcement could be far better spent on rehabilitation, education, employment allowing Registrants the ability to be productive members of society and contributing to the general good of the community.

6. I believe that before any individual that is classified as a tier 1, 2, 3 offender, he or she should have a thorough review of the individuals past to see if the individuals offense was most likely a one off situation and thoroughly determine the chance or possibility of recidivism.

7. Statistics show that recidivism of first time offenders is miniscule, and to place a individual on the Registry for 10 years, 25years, or life has unintended consequences not only for the offender but for society in general as stated above. In my view the system is broken when a individual who commits murder has a

AR-00001225

far better chance to renter society than a sex offender.

8. Making the registry more uniform as proposed in the SORNA rules change does not address the real issues or problems that occur as a result of the Registry. The Registry and the proposed new SORNA rules does not make society any safer in my view and has the opposite affect serving to create desperation and hopelessness.

Thank you for taking the time to read my comments, I am attaching a paper I wrote a few years back when I became aware of what was happening after the Adam Walsh Act was passed.

Sincerely,

James McKinley



Attachments   1

Sex Offender Registry

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0333/attachment_1.pdf)

**Comment ID**
DOJ-OAG-2020-0003-0333

**Tracking Number**
1k4-9j14-zwn8

**Comment Details**                                    **Submitter Info**

**Received Date**
Sep 18, 2020

AR-00001226

8/9/23, 12:13 PM                                         Regulations.gov



Your Voice in Federal Decision-Making

About      Bulk Data Download       Agencies      Learn

(/about)         (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)    |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001227

The Sex Offender Registry

Does The End Justify The Means?

I think the vast majority of society would agree that Sexual abuse in all forms is completely
unacceptable behavior, it is also a uncomfortable and complex subject for the majority of us to discuss,
understand and come to grips with.  In fact,  sex crimes are so uncomfortable for society to deal with
we tend to focus more on the punishment especially when they are egregious and insidious offenses
perpetrated against minors. I believe this subject must be confronted by society as a whole and in its
entirety and by its "entirety I mean not only the crime itself but what are the causes at its core, the
punishment dealt out and whether the punishment is really commensurate with the crime. Some believe
sex offenders have a mental illness and some believe sex offenders are all sexual deviants fully aware
of their actions and deserve no quarter.

On a daily basis we read about or watch on the news,  reports of sex crimes and the majority are high
profile cases. Sex crimes committed by doctors, clergy, entertainers, judges, lawyers etc. but they are in
reality from all segments of society. Much of society is of the mind,  "Once A Sex Offender Always A
Sex Offender" and the solution is to lock sex offenders up and throw away the key.  There is no doubt
in my mind sex crimes are a very serious problem and you will find compelling arguments for and
against the Sex Offender Registry with the common ground being something has to be done.  So lets
examine what we as a society are doing about it and how it directly relates to the Sex Offender
Registry.

If you believe in a "No Tolerance Policy"  that includes significant prison time, that is understandable
as you are not alone in your thinking, it's an opinion shared by many. However I would ask you to
consider this. When a person who has been convicted of a crime, sentenced and has served his or her
prison sentence do you believe they have payed their debt to society and should he or she be allowed to
re-enter society with the opportunity to become productive law abiding citizens?  We see and read
about the adjudication of sex offenders regularly and for many of us we think justice is being served
with long prison sentences. However this is far from the case for people convicted of sex offenses. The
reality is that after a sex offender serves his or hers sentence a second sentence is then imposed on them
and that in the majority of cases is mandatory entry into The Sex Registry. These are laws have been
mandated by federal and state authorities in order to better create a safer and more knowledgeable
public

These laws primarily began in 1994 in New Jersey with the murder of Megan Kanka by her neighbor
who was a repeat sex offender.  President Clinton signed federal legislation called  Megan's Law on
May 3, 1996. The Sex Offender Registrant Act  ("SORNA") was passed in 2006 in order to strengthen
the national network of registration and notification programs and to establish minimum standards for
such systems. This was the beginning of the Sex Offense Registry and a very powerful beginning at
that. The intent was to make communities aware of predators living in their respective communities and
although these laws were passed with honest intent for public safety they have become extreme for far
too many in my view. The reason why they are extreme is because sex offenders are not looked at on an
individual basis and mitigating factors or circumstances. You will find that registered sex offenders
include people convicted of nonviolent crimes such as solicitation, public urination, streaking, and
consensual sex with teenagers, even teenagers that subsequently marry.

Once released from serving their prison sentence which the length of sentence can vary greatly from
state to state offenders have to report to law enforcement in the state and community in which they

AR-00001228

intend to reside.  Each state has its own registry system. Requirements with respect to who must register, what information they must provide, and what information the public may see, can vary by jurisdiction. Typically, an individual who has been convicted of specific sex offenses must register at the law enforcement agency in the city or town where he or she lives and in many communities within 24 hours after being released from prison. He or she usually must re-register every year and sometimes more frequently whenever they move. Failure to register or report to law enforcement would be considered a separate criminal offense. The information an offender must provide at registration can vary, but often includes the offenders name, date of birth, social security number, addresses, photograph, vehicle information, offense information, fingerprints, DNA sample, and more. This information can be accessed by the public. Public information provided varies depending upon the state as well as the number of years an offender would be on the registry which is predicated on the level ( Risk Assessment) assigned. This means that depending on the state an offender could be on the registry anywhere from 5 years to life.

After looking into and spending time doing some research on sex crimes I found that sex crimes themselves vary in severity with many offenders. December 31, 2005  the number of sex offenders on the National Sex Offender Registry was 551,987 currently the number exceeds 950,000 people listed on sex offender registries. The usefulness even of properly focused registries is debatable, since the Justice Department data indicate that almost 9 out of 10 sex crimes are committed by people with no past records for that kind of offense. Recidivism or the tendency of a convicted criminal to re offend is questionable at the very least, as  recidivism rates for sex offenders seem to have been greatly exaggerated. I would ask, if protecting potential victims is the rationale for the registries, shouldn't registries in the case of sex offenders be focused on or limited to people who are at high risk or repeat offenders, people most likely to commit crimes again. Much of what I have gleaned in my own research is that recidivism rates for sex offenders not only have been greatly exaggerated but there is very little to no clinical data to suggest that first time offenders who have been adjudicated pose any type of threat of recidivism. According to the Office of Justice (SMART Office), sex offender registration and notification requirements arguably have been implemented in the absence of empirical evidence regarding their effectiveness. According to SMART Office, "there is no empirical support for the effectiveness of residence restrictions. In fact, a number of negative unintended consequences have been identified that may aggravate rather than mitigate offender risk". Legal scholars argue that even if the registration schemes were initially constitutional they have, in their current form, become unconstitutionally burdensome and not grounded based on constitutional grounds. A study published in fall 2015 found that statistics cited by Justice Kennedy in two U.S. Supreme Court cases commonly cited in decisions upholding constitutionality of sex offender policies were unfounded.  In September 2017 a federal judge found that Colorado registry is unconstitutional cruel and unusual punishment as applied to three plaintiffs.

One of the most startling statistics I have discovered is the average age of a sex offender. You might think like I did that the average age was probably some where in in a bracket of 25-50 years, but I was shocked to learn that the average age of sex offenders reported by the US Bureau Of Justice is 14. Some of these children have been placed on the Sex Offense Registry for life! Can you imagine what life will be like for these children as they grow older with literally no future. No real employment opportunities because who will or want to hire a convicted sex offender. What happens to and where can sex offenders go to survive and live out their lives?  Miracle Village or City of Refuge is  faith based isolated community of approximately 200 sex offenders in Florida and growing. Created by Richard Witherow, a minister working in prisons for 30 years, who wrote and self-published *The Modern Day Leper*, attacking the way society treats sex offenders with what he calls punitive, illogical, and counterproductive laws. I would ask you to think about this carefully, is this what we as a society

really want? After one has served their time in prison they are forced by society to spend the rest of their lives in a sex offenders leper colony? Religion aside, as human beings are we ethically doing the right thing by not looking at sex offenders on a case by case basis and trying to identify who is and who is not a legitimate threat to society as repeat offenders and seeking to find viable treatment for those who are? By profiling sex offenders painted by one broad brush stroke, are we really serving and protecting society and is it worth the cost monetarily or for that matter on a moral or a ethical basis? These are just some of thoughts or questions  I have had to come to terms with knowing someone who is currently incarcerated as a sex offender. You may deplore the acts of sex offenders as I do but as you gain more knowledge about the circumstances of many who have been placed on the Sex Offense Registry you will find that for many offenders the current remedy leads to cruel and abusive treatment and I question whether this one size fits all  punishment handed out by society really fits the crime.

The registration laws are very broad in scope and exceedingly long in duration that requires people to register who pose no safety risk under under most community notification laws. Anyone can access online sex offender registries that may have nothing to do with public safety. Harassment to and violence against registrants have resulted and frankly predictable in my view. In many cases, residency restrictions are banishing registrants from entire urban areas and forcing them to live away from their homes and families. There are studies showing that current registration, community notification, and residency restriction laws may be counterproductive and making law enforcement's  task, promoting public safety more difficult. For example, the number of people required to register even though their crimes were not serious makes it exceedingly more difficult for law enforcement to determine which sex offenders warrant careful monitoring. Public access to registry information encourages-neighbors, employers, colleagues, and others to shun and ostracize former offenders, and makes it exceedingly difficult for sex offenders to successfully integrate into society. It has also become apparent to me that residency restrictions push former offenders away from the supervision, treatment, stability, and supportive networks they will need to re-enter society to become successful, law abiding citizens. In one report, Iowa officials told Human Rights Watch that they are losing track of registrants who have been made transient by the state's residency restriction law or who have dropped out of sight rather than comply with the law. As one Iowa sheriff said, "We are less safe as a community now than we were before the residency restrictions. Many child safety and rape prevention advocates believe that millions of dollars are being misspent on registration and community notification programs that do not get at the real causes of child sexual abuse and adult sexual violence. They would like to see more money spent on prevention, education, and awareness programs for children and adults, counseling for victims of sexual violence, and programs that facilitate treatment and the transition back to society for convicted sex offenders. As one child advocate told Human Rights Watch, "When a sex offender succeeds in living in the community, we are all safe.

The vast majority 90% on the National Sex Registry are  first time offenders. Many of these sex offenders got into trouble as a result of internet services or businesses which I view as purveyor's and enablers of sex offenders. There are numerous sites available that actively promote sexual content and encounters. They do not vet the people availing themselves of there web sites and as a result minors actively use these sites and lie about their age.  These purveyors or enablers are running a business and profiting from their enterprises with little to no accountability or consequences.  I would ask why are these sites allowed to operate in the first place? Would it not be a fair statement that these web sites encourage, aid and abet sex offenses? Why are these sites allowed to operate or for that matter why is there no accountability, adjudication of these companies or why at a minimum are they not subject to be put on a national sex registry? Have you opened your email to be spammed by elicit sex sites? Be very careful of what you open because you to could run a fowl of the law if you were curios and opened one of these web sites. If for instance you explore one of these sites a footprint is left in your

phone or computer and even if you only did it once you could be charged with possession of CP, adjudicated and end up on the National Sex Registry!

OK, we all agree we want safe communities but with a no tolerance mind set, we need to ask ourselves are we in fact doing the right thing and are these effective laws currently on the books?  On further examination, I question the cost of our tax dollars spent on convicted sex offender's incarceration, monitoring and maintaining the the Sex Offense Registry. Would society not be better served if a greater portion of federal and state taxes or funds were allocated to identifying high risk offenders, research and treatment?

As I stated from the on set this is a serious and uncomfortable issue to discuss and I truly believe we are all accountable for our actions and no way am I trying to detract or lesson the seriousness of sex offenses but I do have serious reservations about the way society is dealing with it. When we were young and in school the majority of us would begin the day reciting "The Pledge Of Allegiance" with the final stanza " And Liberty And Justice For All".  We all need to ask questions:

- Is the Sex Offender Registry a valuable tool in deterring sex offenders or potential sex offenders?

- Is the Sex Registry implemented fairly or is it just a knee jerk reaction to a serious problem?

- Does the Sex Registry distort or tarnish what society believes is "Truth In Sentencing"?

- Does the Sex Registry distort our values as an American society?

- What is the Sex Registry really achieving?

- Are our communities best served by the Sex Registry in its current form?

- Should the Sex Registry be abandoned altogether or revised to put more focus on convicted sex offenders that pose the most serious risk to society?

I am sure that you may have many other questions, comments and or reservations about this uncomfortable issue. I am also sure there are many who will have an intractable view but I would ask that if you believe in fair and objective justice and truly concerned about the safety of your community that you consider the aforementioned and do some research of your own. The victims extend beyond the initial victim and encompasses the victims family and friends as well as the offenders family and friends. We all need to take a serious look at this problem no matter how uncomfortable and decide whether the current system is fair, just and making the communities in which we live a safer environment.

After experiencing an uncomfortable three and one half years of deliberation and doing my best to be objective and fair, I have come to a conclusion that surprisingly was part and parcel to the first question I asked myself. As a society have we become so polarized in our thinking that we are can only think in terms of a conservative or liberal mindset and no longer use our own common sense. My common sense makes me question,  Does The End Justify The Means? My conclusion is that the system as it pertains to the Sex Registry and in its current state, is badly flawed.

J. A. McKinley

AR-00001231

I

AR-00001232

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

Share ▾

---

Comment

Reference Docket No. OAG 157. Proposed Rule Interpreting Registration Requirements Under SORNA

I understand that you have the daunting task of establishing regulations SORNA. Please understand that this is punishment and rises to the level of ruining the lives of families and children that you so seek to protect. I personally know two people who are required to register as persons who committed a sexual offense though they never touched a child nor meant to harm a child. Their risk of re-offending is extremely low and perhaps equal to or lower than those not on the registry.

Due to the wide net cast by the Federal government everyone in the United States will soon know a family negatively effected by the registry. What is the purpose of a democracy if not to provide for rehabilitation and retribution? Surely we are not a country that believes that one child's future is worth more than another's. One person's ability to contribute is worth more than another. And some person's who have never touched a child or directly contributed to the abuse of a child should pay with the rest of their life through ongoing humiliation, loss of wages and freedom to just be a family. This is punishment.

**Comment ID**

DOJ-OAG-2020-0003-0334

◎ **Tracking Number**

1k4-9j14-dh36

Comment Details                                Submitter Info

AR-00001233

**Received Date**

Sep 18, 2020



About      Bulk Data Download       Agencies      Learn

(/about)         (/bulkdownload)      (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001234

8/9/23, 12:12 PM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

So now that the courts have ruled that a state level conviction does not relieve the obligation of a registered individual the obligation to register , it now seems to to me as this tiered system is now just a false carrot. A state saying you do not have to register has no meaning. The feds will just send a Marshall to make you do it. Therefore , the tiered system is of no benefit to the person only to the state who gets a chance to retry and reconvict the person under the guise of " assessment ". For example Oregon State requires all persons even asking for relief to agree to reassessment and says they may add more years if they don't like what they see , never mind if you score level 2 , have been actually registered for 40 years , they'll just start the clock over , more ex post facto bs hidden under color of law.

**Comment ID**

DOJ-OAG-2020-0003-0335

 **Tracking Number**

kf8-u688-vddm

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 18, 2020

AR-00001235

8/9/23, 12:12 PM                                                 Regulations.gov



About     Bulk Data Download       Agencies      Learn

(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001236

8/9/23, 11:47 AM                                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)          Share ▾

---

Comment

With consideration of sex offenders who have met the requirements of their registration and probation, the language may seem to create greater restrictions on the offender and their life. Although the act is favorable and unfavorable in some aspects I believe the benefit is displayed on both sides. The provision to the offenders to receive clear obligations is very important in assisting in the understanding and compliance of the requirements set for them. I also think that the current pictures of the offender are very necessary and creates an awareness that places ease on communities where parents have access to community information. I think that this is reasonable because some people have radical approaches for identifying sex offenders like signage in the yard and a community bulletin posting that information does not place the focus solely on the offender but their families as well and they should not be identified as an offender vicariously. The act discussed the presentation of all passports, addresses, and other documents in the periodic verifications.

An issue I have is the registry tier. I believe that regardless of the time passed you should still be on a registry; in the case of juvenile offenders, I believe they should be listed for the 15 years as the tier 1 offenders are.

Another issue I have is that the act does not mention anything about rehabilitation efforts or working with rehabilitation centers to assist in the possibility of decreasing the time to be listed on the registry.

Overall, I believe this act serves its purpose.

**Comment ID**
DOJ-OAG-2020-0003-0336

 **Tracking Number**
kf8-uwk0-z5nl

AR-00001237

Regulations.gov

| **Comment Details** | **Submitter Info** |
|---|---|

**Received Date**

Sep 18, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001238

8/9/23, 12:01 PM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

Lets run the comparison to some things I recently heard the AG say vs SORNA
1)Confinement
Stay at home order unconstitutional detantion.
SORNA governs everything from where you can go to where you can live but this is constitutional to you.
COMPARISON RESULT = SORNA vastly more restrictive in scope and penalty, but in your eyes Constitutional.

Mask requirements unconstituionally intrusive because you might get fined if they dont want to wear it. SORNA requires the reporting of Name, Birthday, Address, Phone number(s), Car descriptions& Plate number, Work Name Address & phone number, School Name Address & Phone on penalty of imprisonment. All post for anyone to see and all this is not all required but you dont see this as intrusive or unconstitutional.

These two points are direct evidence of the cognitive dissonances associated with he registry. Both COVID restrictions and SORNA were pomulgated for 'public safety'. COVID restrictions have mountains of evidence proving need an effaciency, but you want to outlaw as unconstitutional. SORNA has mountains of evidence that you ignore proving it is ineffective, useless and harmful to public safety, but you want to make more restrictive and harsh while trumpeting it 'constitutionality'. I propose either scrap either SORNA or the US Consitution because the two cannot logically co-exist.
Logical and honest people know that SORNA violates the 1st, 4th, 5th, 6th, 8th, and 16th Amendments to the Constitution regardless the justifications used by the Supreme Court to ignore the truth. It imposes retroactive punishments without due process. The punishments are cloak behind the semantics of calling the civil regulatory schemes despite the advancing a decidedly punitive aim which oftain exceeds what in other non registry cases has been ruled Cruel and Unusual Punishment. Why is it that legislative deferral in non registry cases weighs very little in determining legislative intent, but is nearly insurmountable in registry cases? That dichtomy proves the 'unusual' part and your own COVID interpretation proves the 'Cruel' part.

AR-00001239

Regulations.gov

**Comment ID**

DOJ-OAG-2020-0003-0337

 **Tracking Number**

kf9-7xvo-xvz5

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 19, 2020



About   Bulk Data Download       Agencies      Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001240

8/9/23, 12:10 PM                                                    Regulations.gov

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)          Share ▾

---

Comment

A registry for ALL convicted felons ... or a registry for NONE. It is unfair and discriminatory to single out one felon over the other.

**Comment ID**
DOJ-OAG-2020-0003-0338

**Tracking Number**
kfa-1bxc-0qd8

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Sep 19, 2020

8/9/23, 12:10 PM                                    Regulations.gov



About     Bulk Data Download      Agencies      Learn

(/about)        (/bulkdownload)     (/agencies)     (/learn)

Reports      FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001242

8/9/23, 12:09 PM

Regulations.gov

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

Share ▾

---

Comment

SORNA and its registries have become an out of control cancer for crime fighting. Too much time, money and effort is put into tracking when only a very small population has done a hideous crime. Drug dealers do more crime with less time, take more man hours, destroy more children and families then all the sex offenders on the registry - but get away with so much cause of this cancerous sex offender registry. Drug dealers are laughing all the way to the bank.

**Comment ID**

DOJ-OAG-2020-0003-0339

 **Tracking Number**

kfa-1hjh-fy4o

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 19, 2020

AR-00001243



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001244

8/9/23, 11:59 AM                                        Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)    Share ▾

---

Comment

Mixing bad apples with sweet lemons is wrong. Posting child rapist and child murderer with lonely teenagers on the same registry is just plain wrong. The registry is destroying lives. The public does not know or what to know but they lump all "sex offenders" together as "child predators and killers." The registry is just plain wrong, unchristian, medieval, discriminatory and evil.

**Comment ID**

DOJ-OAG-2020-0003-0340

 **Tracking Number**

kfa-1opl-bgaw

**Comment Details**                                      **Submitter Info**

**Received Date**

Sep 19, 2020

AR-00001245

Regulations.gov



Your Voice in Federal Decision Making

About     Bulk Data Download      Agencies      Learn

(/about)        (/bulkdownload)    (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001246

8/9/23, 11:48 AM                                        Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Adam Walsh and Senator Lauren Book / Florida have made millions off the backs of sex offenders. It ought to be a crime for misuse of the registry. It ought to be investigated how Lauren Book gets 3 million a year from the State of Florida.

**Comment ID**

DOJ-OAG-2020-0003-0341

 **Tracking Number**

kfa-1slm-pd4p

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 19, 2020

AR-00001247

8/9/23, 11:48 AM                                                 Regulations.gov



About   Bulk Data Download     Agencies     Learn

(/about)       (/bulkdownload)   (/agencies)   (/learn)

Reports     FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001248

8/9/23, 12:02 PM                                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)          Share ▾

---

Comment

Crimes Not on the Registry
............................................
Murder
Aggravated assault or aggravated battery
Burglary
Battery on a Law Enforcement Officer or Firefighter
Possession of a controlled substance, other than marijuana
Kidnapping
Grand theft
Stalking
Carjacking
Resisting an officer with violence
Drug trafficking
Robbery
Carrying a concealed weapon

Crimes on the Billion Dollar Registry
Sex crimes on a child

**Comment ID**

DOJ-OAG-2020-0003-0342

AR-00001249

Regulations.gov

 **Tracking Number**

kfa-28cw-y24e

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 19, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

8/9/23, 12:00 PM                                     Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

| Comment |

This is a very bad idea for juveniles, in particular. Many juveniles who commit sexual offenses do not have pervasive problems with sexual deviancy, most DO NOT sexually reoffend, and many states (like Washington State) have responsibly addressed juvenile registration/notification distinctly different than adult registration/notification.

**Comment ID**

DOJ-OAG-2020-0003-0343

 **Tracking Number**

1k4-9j1v-t228

**Comment Details**                                    **Submitter Info**

**Received Date**

Sep 19, 2020

AR-00001251



About   Bulk Data Download      Agencies      Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports     FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001252

8/9/23, 12:04 PM
Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

I disagree with rapidly expanding the number of people required to register on the SORNA. The requirement creates a class of citizens for whom normal life is impossible even after they have served their sentences (to include probation).

The following are actions I suggest the Justice Department consider to modify the SORNA:

1.      Reduce the requirement for mandatory registration of first offenders on the SORNA to those offenders who commit acts of extreme physical violence resulting in injury and those who offend against minors under the age of consent. This is more in line with the spirit of the Adam Walsh Act.

2.      Restore judicial discretion for placing all other first offenders on the registration. Make an evaluation by a competent psychiatrist/psychologist a prerequisite for that decision along with the judges knowledge of the individual facts of the case.

3.      Establish a pardon/administrative removal process that allows individuals to apply for a pardon and removal from the SORNA registration list after 3-5 years.

4.      Remove restrictions that keep pardoned first time offenders who were not involved in acts of violence or acts involving minors under the age of consent from certain occupations such as teaching, public safety (lifeguard, police, Fire department) medical fields or joining the military.

**Comment ID**
DOJ-OAG-2020-0003-0344

AR-00001253

Regulations.gov

 **Tracking Number**

1k4-9j1y-i3cs

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 19, 2020



Your Voice in Federal Decision Making

About          Bulk Data Download          Agencies          Learn

(/about)          (/bulkdownload)          (/agencies)          (/learn)

Reports          FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)          (/faq)

Privacy & Security Notice (/privacy-notice)     |     User Notice (/user-notice)     |

Accessibility Statement (/accessibility)     |     Developers (https://open.gsa.gov/api/regulationsgov/)     |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)     Provide Site Feedback

AR-00001254

8/9/23, 11:44 AM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |    Share ⏷ |

---

| Comment |

We are asking you to demolish the sex offender registration. It is unconstitutional in every way, it violates our civil rights, and it is dangerous for us. You keep people on it who were: accused and convicted as children, people who went to the bathroom behind a trash barrel, two people in love having sex on a beach, two teens having consensual sex, a person who moons another, a mother who sends a photo of her child in the bathtub, two people in a relationship sending sexy photos to each other, a person standing in their living room naked, and many others who did not intentionally commit a crime, had no intent to, and did not know they were doing anything wrong. You put men who are on adult sites looking for relationships, approached and pursued by cops and sent ADULT photos, then stung and accused of looking for sex with a minor. People who have moved to another state, or live in another state and were put on while traveling through so they are counted at least twice for being on the registry. You are paying millions to states who put EVERYONE on the registry for life and keep them there pulling in the millions even after they leave the state or die. You are paying millions to states who have duplicate listing of the same person. You are funding stings that are unethical and illegal and letting cops pocket the money when the person is innocent. You keep people who have minor or misdemeanor charges on the registry for life even though their actual crime did not call for a lengthy sentence or probation. Almost half of the people on the registry are kids or where when they were put on it. You violate our rights to travel when you label our driver's license and passports. You put us in danger when we travel. All these things are unconstitutional. Perhaps the attached document explains the illegality of the registry. Please read.

| Attachments  1 |

📄

AR-00001255

8/9/23, 11:44 AM                                                    Regulations.gov

Justice Gingsburg

 Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0345/attachment_1.pdf)

**Comment ID**

DOJ-OAG-2020-0003-0345

**Tracking Number**

kfa-dncx-emu5

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 19, 2020



Your Voice in Federal Decision Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001256

Rather than try to explain in my own words what Justice Ginsburg did for our cause, I will copy and paste the dissenting opinion in *Smith v. Doe* below and let the words Justice Ginsburg wrote explain it,

As JUSTICE SOUTER carefully explains, it is unclear whether the Alaska Legislature conceived of the State's Sex Offender Registration Act as a regulatory measure or as a penal law. See *ante,* at 107-109 (opinion concurring in judgment). Accordingly, in resolving whether the Act ranks as penal for *ex post facto* purposes, I would not demand "the clearest proof" that the statute is in effect criminal rather than civil. Instead, guided by *Kennedy* v. *Mendoza-Martinez,* 372 U. S. 144 (1963), I would neutrally evaluate the Act's purpose and effects. See *id.,* at 168-169 (listing seven factors courts should consider "[a]bsent conclusive evidence of [legislative] intent as to the penal nature of a statute"); cf. *Hudson* v. *United States,* 522 U. S. 93, 115 (1997) (BREYER, J., concurring in judgment) ("[I]n fact if not in theory, the Court has simply applied factors of the *Kennedy* variety to the matter at hand.").[1]

Measured by the *Mendoza-Martinez* factors, I would hold Alaska's Act punitive in effect. Beyond doubt, the Act involves an "affirmative disability or restraint." 372 U. S., at 168. As JUSTICE STEVENS and JUSTICE SOUTER spell out, Alaska's Act imposes onerous and intrusive obligations on convicted sex offenders; and it exposes registrants, through aggressive public notification of their crimes, to profound humiliation and community-wide ostracism. See *ante,* at 109, and n. (SOUTER, J., concurring in judgment); *ante,* at 111-112 (STEVENS, J., dissenting in No. 01-729 and concurring in judgment in No. 01-1231).

Furthermore, the Act's requirements resemble historically common forms of punishment. See *Mendoza-Martinez,* 372 U. S., at 168. Its registration and reporting provisions are comparable to conditions of supervised release or parole; its public notification regimen, which permits placement of the registrant's face on a webpage under the label "Registered Sex Offender," calls to mind shaming punishments once used to mark an offender as someone to be shunned. See *ante,* at 111-112 (STEVENS, J., dissenting in No. 01-729 and concurring in judgment in No. 01-1231); *ante,* at 109 (SOUTER, J., concurring in judgment).

Telling too, as JUSTICE SOUTER observes, past crime alone, not current dangerousness, is the "touchstone" triggering the Act's obligations. *Ibid.* (opinion concurring in judgment); see *ante,* at 112-113 (STEVENS, J., dissenting in No. 01-729 and concurring in judgment in No. 01-1231). This touchstone adds to the impression that the Act retributively targets past guilt, *i.e.,* that it "revisit[s] past crimes [more than it] prevent[s] future ones." *Ante,* at 109 (SOUTER, J., concurring in judgment); see *Mendoza-Martinez,* 372 U. S., at 168.

Tending the other way, I acknowledge, the Court has ranked some laws civil and nonpunitive although they impose significant disabilities or restraints. See, *e. g., Flemming* v. *Nestor,* 363 U. S. 603 (1960) (termination of accrued disability benefits payable to deported resident aliens); *Kansas* v. *Hendricks,* 521 U. S. 346 (1997) (civil confinement of mentally ill sex offenders). The Court has also deemed some laws nonpunitive despite "punitive aspects." See *United States* v. *Ursery,* 518 U. S. 267, 290 (1996).

What ultimately tips the balance for me is the Act's excessiveness in relation to its nonpunitive purpose. See *Mendoza-Martinez,* 372 U. S., at 169. As respondents concede, see Brief for Respondents 38, the Act has a legitimate civil purpose: to promote public safety by alerting the

public to potentially recidivist sex offenders in the community. See *ante,* at 102-103 (majority opinion). But its scope notably exceeds this purpose. The Act applies to all convicted sex offenders, without regard to their future dangerousness. And the duration of the reporting requirement is keyed not to any determination of a particular offender's risk of reoffending, but to whether the offense of conviction qualified as aggravated. The reporting requirements themselves are exorbitant: The Act requires aggravated offenders to engage in perpetual quarterly reporting, even if their personal information has not changed. See *ante,* at 90. And meriting heaviest weight in my judgment, the Act makes no provision whatever for the possibility of rehabilitation: Offenders cannot shorten their registration or notification period, even on the clearest demonstration of rehabilitation or conclusive proof of physical incapacitation. However plain it may be that a former sex offender currently poses no threat of recidivism, he will remain subject to long-term monitoring and inescapable humiliation.

John Doe I, for example, pleaded *nolo contendere* to a charge of sexual abuse of a minor nine years before the Alaska Act was enacted. He successfully completed a treatment program, and gained early release on supervised probation in part because of his compliance with the program's requirements and his apparent low risk of reoffense. Brief for Respondents 1. He subsequently remarried, established a business, and was reunited with his family. *Ibid.* He was also granted custody of a minor daughter, based on a court's determination that he had been successfully rehabilitated. See *Doe I* v. *Otte,* 259 F. 3d 979, 983 (CA9 2001). The court's determination rested in part on psychiatric evaluations concluding that Doe had "a very low risk of re-offending" and is "not a pedophile." *Ibid.* (internal quotation marks omitted).

Notwithstanding this strong evidence of rehabilitation, the Alaska Act requires Doe to report personal information to the State four times per year, and permits the State publicly to label him a "Registered Sex Offender" for the rest of his life.

Satisfied that the Act is ambiguous in intent and punitive in effect, I would hold its retroactive application incompatible with the *Ex Post Facto* Clause, and would therefore affirm the judgment of the Court of Appeals.

Rest in Peace Ruth Bader Ginsburg!

8/9/23, 11:59 AM                                              Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments) |   Share ▾ |

---

**Comment**

First let me say this "Frankenstein's Monster is not the monster, Frankenstein is the Monster." What I am saying simply is "hurt people, hurt people".
I was molested many times as a child and raped a few times as a teenager.with that said, some of my best friends whom I would trust with my life (and have) are registered sex offenders. Many have "Crossed the Line" because the Line was crossed with them. they survived so why wouldn't this one survive too. You see the Lines can get fuzzy, if you too were a victim. Or your girlfriend of two years is still 15 and you just turned 18 and she is rebelling against her parents and flunking school. Then the parents decide that they way to get rid of boyfriend is to charge him with Statutory Rape. Or the wife has a new boyfriend and the easiest way to get rid of him, is to set him up with her 15 year old niece. Or you or both of you had too much to drink and she was coming on to you, kissing and rubbing up on you then she says No. Or some girl at a party is giving it away for free, why not get some? Or you are a dork and girls your age will not give you the time of day and you just want someone to love you. Or you are 38 years old and she is 17 years old. Or she has screwed half the guys you know, why not get some too. you get ready to leave your nasty 40 year old girlfriend and then she dangles her 15 year old daughter in front of you, so you stay. Or . . . . . . See how easy it is to become labeled for the rest of your life???? Does it make it right - NO but it can and does happen.

| **Comment ID** |
| DOJ-OAG-2020-0003-0346 |

|  **Tracking Number** |
| 1k4-9j2i-hc3e |

AR-00001259

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 20, 2020



About   Bulk Data Download     Agencies    Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.  🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I personally know many registrants (ex-sex offenders) who after having spent 10, 20, 30, 40 years in prison, are not the person that they were at the time of their crime. Many are abused physically and mentally while in prison with no real healing treatment by people/counselors that they can not trust, and are expected to "bare their souls" in front of a group of other sex offenders.Some of whom really are sick.

Some after spending a number of years in prison, have to go thru Mental evaluation and several Boards before they can go before the Board of Parole, all who deem that this person is not a threat to society. Then upon release, they are required to register as a sex offender and their picture is plastered on the Internet and the Local police take fliers to their neighbors to "suggest" that they are "dangerous and to be on the look out". Mind you this flier shows a picture of a 50+ year old man and states that he had sexual intercourse with a CHILD under the age of 18. It does not suggest in Bold print that the man was 20 at the time and the girl was 16 or 17. and don't forget that in "teeny tiny" print at the bottom that it says that this can not be used to injury, harass or commit a crime against, YET that is the whole purpose of the flier.

Now the guy loses his job, his place to stay, and so much more. How is a homeless, unemployed man with sooooo many barriers suppose to become a law abiding citizen of the community when no one wants him to live or work in their neighborhoods?

It is difficult enough to get that minimum wage job in the first place because he almost has to work night shift because he was to be available to register once every three months, go to probation once a week and sex offender group once a week, and they are usually not on the same day. Then he still has to pay for Probation, for sex offender group, the GPS and any other fines, restitution, court costs and back child support on top of the Lie Detector test that they spring on them with no notice yet they have to come up with almost $200.00.

I have had many registered sex offenders stay at my house and never had a minutes worth of trouble out of them.

I personally would rather you have a robber/drug user register, at least if I felt it was necessary to lock my bedroom door, when I wake up the next morning I know my T.V. and Stereo will still be there.

Why is it that there is no Drug user Register or Robber Register or Murder Register or DUI Register??? Isn't it unconstitutional to single out one group???? And if they did their Time, then they have repaid society the

AR-00001261

debt for their crime, Why are they still required to continue to pay a debt that has been paid???

P.S. There is a difference between a Pedophile or Serial Rapist and a sex offender. Why are we wasting time, money and energy on guys that will never re-offend instead of using our resources to truly help those who are really sick?

---

**Comment ID**

DOJ-OAG-2020-0003-0347

---

 **Tracking Number**

1k4-9j2j-k4f2

---

**Comment Details**                                                          **Submitter Info**

**Received Date**

Sep 20, 2020

---



About      Bulk Data Download      Agencies      Learn

(/about)         (/bulkdownload)      (/agencies)    (/learn)

Reports      FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)      (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001262

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)   |   Share ▾

---

Comment

[***DOJ DOCKET NOTE: Personal identifying information of the Commenter redacted at the Commenter's request.***] My name is [NAME REDACTED] and my son is serving a sentence in Delaware and will be required to sign up under the sex offender registration and notification act. To me, my son has paid his debt to society for a crime he did not commit but didn't have the money to hire a lawyer to prove that he was innocent. The public defender scared him into taking a plea deal. So he has spent a great deal of years in the prison for something he didn't do and now you want to punish him even more when he gets out period where is he supposed to go and what is he supposed to do? All of these restrictions make people look down upon him even though he is innocent so you make it that he has to live on the street, in the woods, etc. And if he was guilty, you can still paid his debt to society and he's still being punished to have to register as being a sex offender and not being able to live anywhere. What about murderers, what about thieves, what about other people that have done crimes they don't have to register? They have done crimes against other people and they're allowed to come out and have a second chance? I believe they have done time in prison and they come out they should be allowed a second chance at life and to live a life without being ostracized. Please think about what you're doing here and how many lives you're affecting

---

**Comment ID**

DOJ-OAG-2020-0003-0348

---

◎ **Tracking Number**

1k4-9j2j-31nq

---

AR-00001263

Regulations.gov

### Comment Details

**Received Date**

Sep 20, 2020



About   Bulk Data Download      Agencies    Learn

(/about)         (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001264

8/9/23, 12:11 PM                                  Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

| Comment |

There are so many things to be said about the ineffectiveness of SORNA and the harm it causes, that it is difficult to begin. When the registry named after Jacob Wetterling was first established, it was for law enforcement use only. Even Patty Wetterling, Jacobs mother, speaks out openly against the registry while working tirelessly for the safety and well-being of children. But soon after a heinous abduction by a previous offender occurred, the decision to make the registry public was made. It has become an industry, from law enforcement, low hanging fruit for politicians who use the registry as a tough on crime agenda, treatment providers, polygraphers, and more, all working together to keep contracts that put money in their pockets. The registry, instead of keeping children safe, has damaged millions who must live with a parent or grandparent who is publicly shamed by the label. There have been no efforts for diversionary programs for low risk and especially non hand on offenders, those caught in stings, viewing child pornography but no distribution or production. Rather funds are wasted that are needed in programs that can be research based for keeping children from harm. A National Center for Missing and Exploited Children publication some years ago stated that only 3-5 percent of offenders on the registry reoffend. The majority of abuse comes to children by a family member or someone known to the family. We are seeing increased abuse within organizations as well that purport to safely provide activities for children Multiple research studies substantiate this as well. Treatment programs keep registrants in their programs just to generate money for their contracts and to satisfy law enforcement who want to have numbers to show their effectiveness. Rarely is anyone fully deemed as having completed treatment programs successfully which speaks to the inadequacy of either the programs or greed or both! There are easily 2-3 million of children directly impacted . The children of those on the registry are the ones being harmed the most. It is time to scrap the entire SORNA system and pass legislation that will truly provide safety and appropriate treatment systems and the capability to redeem oneself thereby enabling a person to care for their family and be a contributing member of society. John Walsh, in the AWA attempted but failed to establish tiers etc. purposefully, but states have aimlessly either ignored or deliberately failed in developing any laws that can result in effective systems for allowing those who are low risk ( and there are many well developed risk assessments) to complete programs and diversionary programs that truly improve safety. The registry requires a lifetime

AR-00001265

label that promotes fear and does more harm, especially to the families impacted. Any other offense allows for meaningful efforts by the many who are trying so hard to satisfy probation, communities, and employers etc. to move forward. Let us develop and use tax dollars where the public IS truly served in our best interest. The final sentence of the Practitioners Advisory Group, which consists of 11 legal and judicial scholars in addressing the United States Sentencing Commission in the 2012 report, states We commend the Commission for its willingness to investigate ways to reform sentences in this area to better reflect true culpability and achieve justice, and are grateful for the opportunity to assist its work in this area. This was especially a response to the offense of viewing child pornography, but it can apply to many others who bear the label of sex offender.

**Comment ID**

DOJ-OAG-2020-0003-0349

 **Tracking Number**

1k4-9j2m-uwzu

**Comment Details**                                            **Submitter Info**

**Received Date**

Sep 20, 2020



Your Voice in Federal Decision Making

About     Bulk Data Download       Agencies      Learn

(/about)          (/bulkdownload)    (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

AR-00001266

Regulations.gov

AR-00001267

Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001) / Comment

 PUBLIC SUBMISSION

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

Share ▾

---

| Comment |
|---|

Sex offender registration is based one thing:

ongoing threat to the community, singling out sex crimes as particularly horrendous.

Great, so it would be a simple matter to increase sentence time to the point when released, there is no more threat to the community. Therefore the registry would be entirely uncessasarty because every sex offense would be minimum 25 years in prison.

But the government doesn't do that, instead they do this, civil/regulatory legislative intent is used instead. But it's a trick.

Because it becomes a cruel and unusual argument that is much easier to challenge.

So to avoid all that, then the most effective virtual imprisonment other than parole is registration. Best of both worlds, custody without long term incarceration, bonus benefit: fueled by the force and effect of public prejudice.

All fits together perfectly.

| **Comment ID** |
|---|
| DOJ-OAG-2020-0003-0350 |

|  **Tracking Number** |
|---|
| 1k4-9j2m-nxoq |

AR-00001268

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 20, 2020



About    Bulk Data Download      Agencies     Learn

(/about)      (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001269

8/9/23, 11:55 AM                                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)   Share ▾

---

Comment

A key goal of incarceration and treatment is to encourage restitution and reformation. Registries and residence restrictions make it harder for people who have committed sexual offenses to find and keep jobs, live near work, and participate in the community. Registries and residence restrictions typically increase homelessness and dependency on social services, rather than helping individuals become productive,employed, tax-paying citizens who can make restitution to their victims and contribute in positive ways to their communities.

**Comment ID**
DOJ-OAG-2020-0003-0351

 **Tracking Number**
1k4-9j2y-x4pq

**Comment Details** | **Submitter Info**

**Received Date**
Sep 21, 2020

AR-00001270



Your Voice in Federal Decision Making

About     Bulk Data Download       Agencies      Learn

(/about)          (/bulkdownload)    (/agencies)    (/learn)

Reports     FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)     (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001271

8/9/23, 12:03 PM                                       Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)   |   Share ▾ |

---

| Comment |

So Mr. Attorney General. Covid lockdown procedures are equivalent to house arrest and the greatest civil liberties violation in history. You know I never read anything about the great enslavement of 1918. Yes back when the Spanish flu hit everything state leaders are doing is the same thing they did back then. Those people got over it why don't you. Now in parralel SORNA and Canel culture don the same thing. There have been several people in many states that have arrived on SORNA not for public safety reasons but for political corruption. The truth is SORNA created by Bush jr. , extended by Obama , and then by Trump , supported bi partisanly in congress and looked over intentionally by countless judges including SCOTUS , is a prime example of the rise of communism in America. Oh yes there are some Token bad guys like Weinstein on the list but they are focalist facade, to fuel the vangaurdism necessary for the survival of the new American mostly millennial proletariat. Sex offenders by in large are target because of their anti communist values , in the 20th they would have killed them outright for their dissent , see Stalin ,MAO and Pol Pot for further details , the millennials have what they call cancel culture which is nothing more than the American Communist version of Stalin's great purge. Oh yes they don't kill you , they just let you go homeless and die unemployed. Which their construction of this device the effort made in it , shows their men's rea. These people are the evil of communism. SORNA is a tool of that evil , written it's supporters and maintain by courts loyal to Beijing ideology.

| **Comment ID** |
| DOJ-OAG-2020-0003-0352 |

|  **Tracking Number** |
| kfc-uflz-onq2 |

AR-00001272

Regulations.gov

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 21, 2020



About
(/about)

Bulk Data Download
(/bulkdownload)

Agencies
(/agencies)

Learn
(/learn)

Reports
(https://resources.regulations.gov/public/component/main?main=Reports)

FAQ
(/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001273

Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

| Comment |
|---|

See attached file(s)

| Attachments   1 |
|---|

📄 Comments on Proposed Rules Docket No. OAG No. 1576

| ⬇ Download ▾ |
|---|

**Comment ID**
DOJ-OAG-2020-0003-0353

◎ **Tracking Number**
1k4-9j37-w47i

| **Comment Details** | **Submitter Info** |
|---|---|

AR-00001274

**Received Date**

Sep 21, 2020



About    Bulk Data Download       Agencies      Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001275

## Comments of Barbara E. Wright, Attorney at Law
## to Proposed Rules Interpreting SORNA
### Docket No. OAG 1576

Barbara Wright, Attorney at Law
*Legal & Policy Committee Chairperson,*
**Ohio Rational Sexual Offense Laws (OH-RSOL)**
P.O. Box 273
Sharon Center, OH 44274

"Each of us is more than the worst thing we've ever done."

--- Bryan Stevenson, Author/ Activist

## Introduction

The Sex Offender Registration and Notification Act (SORNA) was enacted in response to the violent abduction of several young children by strangers. The U.S. Code, at 34 U.S.C. 20913(b), directs the U.S. Attorney General, to "issue guidelines and regulations to interpret and implement…" SORNA, and to establish rules to further the public safety goal of SORNA. This authority is limited, however, to collecting information which "…furthers the legislative safety objective of SORNA." 34 U.S.C. 20914(a)(8).

The goal of SORNA, and by extension, these proposed rules, is to protect society from these violent predators. Evidence shows that SORNA has not proven to prevent or deter any crimes from occurring,[1] and these rules do not deliver upon that objective.[2] Instead, the rules are overly broad and over-inclusive, and may possibly make society **less safe.**[3]

In order to be effective, these rules should focus narrowly on the "violent predators" SORNA was enacted to monitor, and find cost-effective ways to allow states to reduce the incidence of sexual assault based upon available evidence and effective use of law enforcement resources.

## Objections to Proposed Rules, Docket No. OAG 1576

These rules increase the regulatory authority of the federal government and the cost to states without evidence that they satisfy the public safety objective. The increased costs to state and local governments divert resources from prevention and treatment, and create a false sense of security and the illusion of control.[4]

Further, these rules exceed the authority of the Attorney General to adopt rules which protect public safety and implement a uniform national system of registry. In some cases, these rules go beyond registration, and impose lifetime penalties upon individuals convicted of any sexual offense, without regard for risk or potential for rehabilitation.  They also create a disincentive for good behavior.

AR-00001276

Ohio Rational Sexual Offense Laws (OH-RSOL) * Comments in response to Docket No. OAG 1576

Finally, these rules create further confusion and could result in non-compliance, which in turn leads to greater cost and compromise of public safety.

1. The proposed rules add new individuals to the registry based upon acts prior to the enactment of SORNA, many of whom have previously been removed under state laws .This dilutes the effectiveness of the registry. It has been said that a strong, limited registry is a more effective tool for law enforcement and the public, and risk assessment is an essential part of that tool.[5]

2. The proposed rules usurp the right and the authority of states to determine the best legislative scheme to protect society from sexual assault. These rules are designed to be adopted by states without the need for thoughtful, meaningful public hearings inherent in the legislative process.

3. The proposed rules contravene judicial precedent in Ohio and other states which have interpreted state law to prohibit retroactive application of SORNA to persons who were convicted of a sexual offense prior to the enactment of SORNA.

4. The rules blur the lines between application of state law and application of SORNA to persons convicted of a state offense, without crossing jurisdictional lines.

5. The rules are overly broad, do not accomplish the public safety objective, and create additional opportunities for vigilantism, without guidance what information should be made publicly available, and without penalty for dissemination of inaccurate or harmful information.

6. The rules create additional responsibilities for states and local governments without providing additional funding or training. This unfunded mandate makes no provision for improving the stability of would-be offenders through housing or employment opportunities.

7. The rules miss opportunities to clarify provisions of SORNA and make application more consistent in implementing jurisdictions, and to simplify SORNA compliance by individuals required to register.

## New Individuals Added to Registry

Section 72.3 adds a new group of persons required to register, persons convicted prior to SORNA (Page 49353, column 1, paragraph 3). This further increases costs without evidence of benefit. We should instead provide an incentive for good behavior to allow individuals who pose no risk to be removed from the register.

When SORNA was enacted, we did not have reliable risk assessment tools; we do today. Evidence indicates that only 16% of persons required to register are high risk.[6] The perception is that everyone on the registry is dangerous, and that everyone who is dangerous is on the registry. This false sense of security and illusion of control allows members of the public to let

AR-00001277

Ohio Rational Sexual Offense Laws (OH-RSOL) * Comments in response to Docket No. OAG 1576

down their guard in situations that might present a greater danger.[7] These rules should ensure that registries only include those who pose a risk to society.

Further, Section 72.3 mis-represents the holding in *U.S. v. DeJarnette.* The holding is limited to the requirement of initial registration, and further concludes that the initial registration requirement of SORNA applies to all persons whose offenses pre-date the AWA, but only if those persons are not already required to register under prior law.[8]

## Usurps Authority of the Legislature

The Overview states that the rules do not change what implementing jurisdictions need to do to adopt SORNA. Instead, these rules are intended to enhance prosecution of non-compliant offenders convicted of a federal offense, or a person who travels in interstate commerce.

However, a state which chooses to adopt these rules may do so without the usual vetting or public comment required for legislation. This deprives the public of the right to representation by its elected officials, deprives the members of the legislature of opportunity to comment, and deprives the public of the right to testify according to its state legislative process.

The reason for the legislative process is to allow meaningful legislation which comports with good public policy and consistency with the needs and desires of the public. Adoption of these rules, whether for federal offenses or otherwise, will circumvent those policy objectives and result in inconsistent legislation, and open the state to judicial challenges.

Further, it is not clear whether states procedures for termination inconsistent with SORNA will be valid under the proposed rules. If SORNA applies to "ALL OFFENDERS," it renders such termination procedures adopted by state legislatures meaningless.

## Contravenes Judicial Precedent

The Department of Justice cites the Alaska case of *Smith v. Doe,* 538 U.S. 84 (2003) for the proposition that SORNA is not punitive, and can therefore be applied retroactively. *Doe* was decided prior to enactment of SORNA, and applied to laws which were much less restrictive than SORNA, especially as applied by the states.

In contrast to *Doe,* the application of SORNA to individuals convicted of an offense prior to the enactment of SORNA has been challenged successfully in numerous jurisdictions. See, for example, *State v. Bodyke*, 126 Ohio St.3d 266 (2010); *State v. Williams,* 129 Ohio St.3d 344 (2011). The interpretation of state law by its highest court takes precedence over a federal decision interpreting state law. Therefore, any attempt to impose SORNA upon persons required to register as a matter of state law will contravene judicial precedent in those states.

Further, the decision in *U.S. v. DeJarnette*, the decision relied upon by the Department of Justice herein, only applies in the 9th Circuit, and is in direct conflict with *Does v. Snyder* in the 6th Circuit.[9] Therefore, these rules cannot, and should not, be used to apply a different set of

AR-00001278

Ohio Rational Sexual Offense Laws (OH-RSOL) * Comments in response to Docket No. OAG 1576

rules for federal offenses in states which have determined the application of SORNA to be unconstitutional.

## Blurs the Lines Between State and Federal Laws

Section 72.3 provides that the rules apply to "all sex offenders" (Page 49353, column 1, paragraph 3). This provision is overly broad, and allows the application of SORNA to ALL offenses, whether state or federal, despite assertions in the Overview to the contrary, and despite the fact that not all sexual offenses require registration under state (or federal) law. This interpretation leads to confusion which set of rules to apply.

A state which chooses not to accept these rules as part of its legislative or rulemaking function must still enforce them as a matter of federal law in certain situations. At the same time, the state may adopt its own laws, and penalties for con-compliance with those laws. This applies a dual standard of enforcement for states and two sets of rules for individuals required to register.

Further, in states which adopt these rules, it is not clear how to convert existing or former registrants to SORNA's tier levels. It is already difficult for a state to determine how to register a person required to register for an out-of-state offense, and states which have attempted to classify individuals for registration for offense prior to SORNA know the difficulty in applying risk-based classifications to SORNA tier levels. These rules perpetuate that uncertainty, rather than clarify the requirements.

Finally, many states do not currently collect information on international travel as part of the public registry. These rules allow a state to adopt this requirement as part of its minimum standards. This means sensitive travel information will be available on some persons required to register, and not others.

## Overly Broad/ Exceed Authority of the AG/ Encourage Additional Opportunities for Vigilantism

As previously discussed, the authority of the Attorney General is limited to giving effect to the legislative intent to protect the public (Page 49333, column 3, paragraph 2). Without evidence they will achieve any public safety goals, these rules are overly broad and exceed that authority. Instead, these rules will lead to further vigilante activity, harassment of families of individuals required to register, and the erosion of public safety.

By way of example, there is no evidence that collecting travel or passport information, or collection of Internet identifiers, advance public safety goals. And public dissemination of that information can lead to vigilantism or harassment. Such incidents are becoming more prevalent with the promulgation of third-party sites.[10] Groups are

AR-00001279

Ohio Rational Sexual Offense Laws (OH-RSOL) * Comments in response to Docket No. OAG 1576

forming to promulgate unproven conspiracy theories, without consequence or accountability for the accuracy of such information.[11]

There is the distinct possibility, however, of the further erosion of offender stability and increased risk as more and more information is made available to the public.

The following rules encourage vigilantism, and therefore pose threats to public safety:

1. Information regarding international travel and passports;
2. Registry information picked up by underground third-party sites;
3. Inclusion of immigration status encourages discrimination and possible deportation based simply upon a persons' inclusion on the register; and
4. Publication of Internet identifiers increases the risk of harassment and even entrapment by persons posing as law enforcement officers.

At the very least, these rules need to address public dissemination of this information and vigilantism, and provide rules which are narrowly drafted to accomplish the public safety objective of SORNA.

## Additional Responsibilities and Costs to States

As discussed above, these rules do nothing to enhance SORNA. They merely increase costs and consume resources which would otherwise be used to prevent crime.

Research indicates that a disproportionate amount of law enforcement time and resources is spent on registration, to the detriment of other law enforcement activities.[12] These rules impose further obligations on the states as an unfunded mandate without contribution in any meaningful amount. It is estimated that the annual costs could be as high as $20 million annually in Ohio,[13] while JAG funds are grossly inadequate to defray those costs.[14]

It is well established that SORNA has many unintended consequences, including loss of housing or employment, mental health issues, harassment and vigilantism.[15] These rules increase those unintended consequences, and further impair the stability and risk of persons required to register. Society also pays the costs of social safety net services as a result of these consequences.

## Missed Opportunities/ Failure to Establish a Comprehensive National Registry

If the goal of these rules is to clarify the requirements for persons required to register, for law enforcement, for legislature, or for courts, they fail in that regard. Instead, these rules, and SORNA itself, create a second system of registry that conflicts with state laws, and make it confusing which rules apply:

1. Many states do not currently collect information on international travel as part of the public registry. This means sensitive travel information will be available on some persons required to register, and not others.

AR-00001280

Ohio Rational Sexual Offense Laws (OH-RSOL) * Comments in response to Docket No. OAG 1576

2. As stated above, Section 72.3 is contrary to the law in several jurisdictions, including Ohio, Michigan and Pennsylvania, where courts have ruled that the new requirements of SORNA make it punitive, and therefore cannot be applied retroactively to pre-AWA offenses.[16]

3. One reason for the distinction is that states have added additional requirements, including residency and proximity restrictions, which make state laws punitive. Since SORNA does not require any such restrictions, it is unclear which requirements a person must be required to follow for a federal offense.

4. The rules state that they do not limit or preempt state laws; thus, states will continue to use proximity restrictions and unproven sanctions to satisfy the cry for "law and order," when evidence indicates the result produces the exact opposite result.[17]

5. Some states adopt a tiered system, but still require lifetime registration. These rules should require states to adopt the 15/ 25/ life schedule of SORNA for consistency.

6. The rules perpetuate the inconsistency which exists when a person moves from a state which has three tiers, but lifetime registration for all three. When this occurs, the persons required to register based upon an out-of-state conviction is often labelled tier three for a low-level offense. This continues the cycle of compromise to public safety based upon an overly inclusive registry.

7. With regard to remote Internet identifiers, some states already require e-mail and other identifiers. Some counties interpret this as requiring notification of a change in IP address. As I understand it, IP addresses are dynamic, and may change frequently; Section 72.6 should clarify this.

8. Counties have also asked for the names and phone numbers of the friends of a person required to register. Not only is that not a requirement under SORNA or state law, it is an unconstitutional violation of the privacy of the "known associates" of the persons required to register eerily reminiscent of McCarthyism.

9. The IML, along with unfounded states laws imposing proximity restrictions, have been written to survive removal from the registry. This provides no incentive to individuals previously convicted of a sexual offense for good behavior.

The Department of Justice should exercise its rulemaking authority to clarify exactly who the rules apply to, clarify the rules themselves, and provide funding and training for states and local law enforcement on the application of SORNA and these rules.

In order to truly protect society, we must include only the most serious offenders on sexual offense registries, and must limit the use of punitive sanctions by the states. More importantly, we must not only rely on registration as a means of protecting the public, but must find a way to prevent offenses by persons not on the register, and by persons close to the victim;[18] we must educate the public how to prevent being the victim of sexual assault; and we must return the authority to the courts to consider the criminogenic risk and needs of persons convicted of a sexual offense at sentencing.[19]

Ohio Rational Sexual Offense Laws (OH-RSOL) * Comments in response to Docket No. OAG 1576

## Specific Objections to Rules

Following are specific suggestions for reform of the rules:

1. Part 72.1. Purpose.
   Revise part (b) to allow states to adopt requirements which are less stringent than SORNA without fear of losing federal funds. In the alternative, clarify the existing rule that states may adopt registration requirements that are substantially similar to SORNA.

2. Part 72.3 Applicability.
   Remove the application of SORNA to pre-AWA offenses consistent with state and federal rulings that SORNA is an impermissible infliction of punishment in violation of ex post facto or state retroactivity laws.
   In the alternative, specify that this part only applies to persons with a federal offense or traveling in interstate commerce, to persons not already required to register prior to the enactment of the AWA, and specify which requirements apply. (If the state does not collect interstate travel, for instance, a person registered for a federal offense cannot be punished for the failure to provide that information. In fact, the only requirement of these rules is that the federal offense require registration at all.)

3. Part 72.5 How long sexual offenders must register.
   Clarify that classification should be based upon the risk posed by offenses as represented by tier levels; and revise part (c) to allow reduction for all levels consistent with scientific research of recidivism risk.[20]

4. Part 72.6 Information registered persons must provide.
   a. Clarify the remote identification identifiers requirement in part (b) to indicate that IP addresses are not required, and that telephone numbers of "known associates" is a violation of privacy laws.
   b. Provide grace periods for registration required under part (c) to reflect that loss of housing and employment can occur without warning, and that it may take time to locate a replacement.
   c. Eliminate part (c)(2) entirely without evidence that such information is likely to assist in the prevention or deterrence of sexual conduct. In the alternative, specify that this information is not part of the public record, and may not be promulgated by third-party sites without penalty. This requirement is more likely to lead to conditions which impair the stability of the person required to register than public safety. Moreover, it will be costly to collect from a person who travels regularly.
   d. Define place of employment. For instance, where does a truck driver register? Or a freelance graphic designer who works from home? Or a national sales manager who travels throughout the country?
   e. Define place of residence. How does a person register a residence address if he is transient or homeless?

AR-00001282

Ohio Rational Sexual Offense Laws (OH-RSOL) * Comments in response to Docket No. OAG 1576

      f.  Parts (d) and (e) could be used to harm the family of a person required to register. Therefore, these rules should prohibit this information from becoming part of the public record.

      g.  Provide evidence that watercraft and aircraft have been used in the commission of a sexual offense to justify collection of that information in part (f).

      h.  Specify in part (g) that professional licensing shall not be denied on the basis of a conviction for a sexual offense unless it has a relationship to the responsibilities of the job. Ohio has statutory prohibitions against employment or licensing in 850 different situations, many of which are imposed as a knee-jerk reaction to the nature of the offense, not the risk of re-offense.

      i.  SORNA does not require publication of tier level one information, or name of employer or listing of non-sexual offenses for all levels. Section 72.6 should be revised accordingly.

      j.  These rules should provide specific penalties for inaccurate information or for use of information to harm the family of the person required to register.

5.  <u>Part 72.7 How persons convicted of a sexual offense must register and keep registration current.</u>.

      a.  Provide an alternative to in-person verification required under part (b) in instances of pandemic, hurricane or other natural disasters.[21]

      b.  Same comments as above regarding parts (e) and (f).

6.  <u>Part 72.8 Liability for violations.</u>

Provide that penalty for state violations shall be governed by state law and provide defense that individual is compliant with state law; provide defense for persons with out-of-state convictions who fail to register through good faith belief that registration is not required.

7.  <u>Parts 72.9 through 72.18.</u>

- Establish that the rules are not intended to replace the legislative process;
- Provide that judicial precedents still apply in the case of any rules which conflict with the state Supreme Court interpretation;
- Clarify the process for classification of out-of-state offenders;
- Discourage third party dissemination of information, require accuracy of information, and provide penalties for violation thereof;
- Discourage inclusion of non-essential information listed in Part 72.6 in public registries under state law in compliance with SORNA;
- Encourage states to provide penalties for vigilantism;
- Encourage states to use risk assessment and other proven methods for the identification, treatment, and termination of low-risk offenders;
- Discourage states from utilizing residency restrictions or other proximity restrictions as counterproductive means of state-sponsored violence;

AR-00001283

Ohio Rational Sexual Offense Laws (OH-RSOL) * Comments in response to Docket No. OAG 1576

- Discourage states from lifetime registration for all, and instead recommend adoption of SORNA's guidelines in Part 72.5; and
- Provide that IML, residency restrictions, and other regulatory measures only apply for the duration of registration..

Respectfully Submitted,

Barbara Wright, Attorney at Law

**References**

[1]   Huffman, M.K., (2016). Moral Panic and the Politics of Fear: The Dubious Logic Underlying Sex Offender Registration Statutes and Proposals for Restoring Measures of Judicial Discretion to Sex Offender Management. *Virginia Criminal Law Association, 4*, p. 241-303, 254. Abstract reprinted by Westlaw. http://ctsentencingcommission.org/wp-content/uploads/2018/12/Moral-Panic-Article-VJCL-Summer-2016.pdf.

[2]   Letourneau, Ph.D., Levenson, Ph.D., Bandyopadhyay, Ph.D., Sinha, Ph.D., & Armstrong, K.S. (2010, September). Evaluating the Effectiveness of Sex Offender Registration and Notification Policies for Reducing Sexual Violence against Women. *Medical University of South Carolina, Document No.: 231989,* p. 11. https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf. Wilson, (2013). The Expansion of Criminal Registries and the Illusion of Control. *Louisiana Law Review, 73.* http://digitalcommons.law.lsu.edu/lalrev/vol73/iss2/7.

[3]   Prescott, J.J. (2012). Do Sex Offender Registries Make Us Less Safe? *Michigan Law, University of Michigan 35*(2) at pp. 48-55 https://repository.law.umich.edu/articles/83/; Agan, (2011). Sex Offender Registries: Fear without Function? *The Journal of Law & Economics,* 54(1). www.jstor.org/stable/101086/658483.

[4]   *Id,* note 2.

[5]   Gutierez, Melody, State law Oks controversial bills on sanctuary and sex offenders (San Francisco Chronicles, September 2017) https://www.sfgate.com/bayarea/article/Bills-on-sanctuary-sex-offenders-moving-to-12202512.php.

[6]   Hanson, R.K. (2012, November 7). Declaration in United States District Court for the Northern District of California https://www.eff.org/files/filenode/024_hanson_decl_11.7.12.pdf.

[7]   Muschert, Ph.D., Young-Spillers, M.S., & Carr, M.G.S., (2005). Child Abduction Policy: Influenced by Media Coverage or Empirical Data? *Ohio Department of Rehabilitation and Corrections.* https://drc.ohio.gov/oorc; Taylor, J., (2010). An Examination Of Media Accounts Of Child Abductions In The United States. *The Pennsylvania State University Graduate School.* https://etda.libraries.psu.edu/files/final_submissions/2893; Wilson, (2013). The Expansion of Criminal Registries and the Illusion of Control. *Louisiana Law Review, 73.* http://digitalcommons.law.lsu.edu/lalrev/vol73/iss2/7.

AR-00001284

Ohio Rational Sexual Offense Laws (OH-RSOL) * Comments in response to Docket No. OAG 1576

---

8        *United States v. DeJarnette,* 741 F.3d 971741 F.3d 971 (9th Cir. 2013).

9        *Does v. Snyder,* 834 F.3d 696 (6th Circuit 2016).

10       NARSOL, https://narsol.org/?s=vigilantes.

11       How QAnon Impedes Legitimate Anti-Trafficking Group  https://www.huffpost.com/entry/how-qanon-impedes-legitimate-anti-trafficking-groups_n_5f4eacb9c5b69eb5c03592d1**.**

12       *Id,* note 10 at p. 10. According to the Ohio Attorney General Sex Offender Registry, Defiance County included 119 persons on its SORN registry on August 27, 2020. https://www.icrimewatch.net/results_county.php?AgencyID=55149&keyword=Defiance.
         According to the U.S. Census, registered persons represent .3% of the population (using 2019 figures), but 9% of the county budget and 17% of the sheriff's time. Defiance County Annual Report 2016. https://www.defiance-county.com/board-of-commissioners/2016-Annual-Report.pdf, Buckeye State Sheriff's As. sociation: Data and Statistics by county or state/ Defiance County. https://buckeyesheriffs.org/statistics-ohio.php?county=20.

13       County Commissioner's Association of Ohio, (1997, June). Sex Offender Registration & Notification (House Bill 180). *County Advisory Bulletin 1997-03,* at pp. 4-5, Table. https://ccao.org/wp-content/uploads/CAB%20199703.pdf; Ad Hoc Committee on Sex Offender Registration, (2016, April). Report and Recommendations. *Ohio Criminal Sentencing Commission,* at pp. 8-10. https://supremecourt.ohio.gov/Boards/Sentencing/resources/sentencingRecs/AdHocCommSexOffenderReg.pdf.

14       *Id,* note 10 at pp. 8-10, Appendix C.

15       *Id,* note 2 reports the need for law enforcement or social safety net services for harassment, physical assault or injury, property damage, unemployment, housing assistance and mental health counseling. https://smart.ojp.gov/sites/g/files/xyckuh231/files/media/document/adultsexoffendermanagement.pdf.

16       *Id;* see also *State v. Bodyke*, 126 Ohio St.3d 266 (2010); *State v. Williams,* 129 Ohio St.3d 344 (2011).

17       Lobanov-Rostovsky, C., (2015, July).  Adult Sex Offender Management. *U.S. Department of Justice, Office of Sex Offender Sentencing, Monitoring, Assessing, Registering and Tracking, Sex Offender Management Assessment and Planning Initiative Research Brief* at p. 3. https://smart.ojp.gov/sites/g/files/xyckuh231/files/media/document/adultsexoffendermanagement.pdf.

18       Levenson, Brannon, Fortney & Baker, (2007). Public Perceptions About Sex Offenders and Community Protection Policies. *Analyses of Social Issues and Public Policy, 7*(1), pp. 1-25, at p. 7. https://www.innovations.harvard.edu/sites/default/files/ 105361.pdf; Perpetrators of Sexual Violence Statistics, (2020). *Rape, Abuse & Incest National Network.* https://www.rainn.org/ statistics/perpetrators-sexual-violence; Harland (2015). *Sexual Assault in Ohio 2015. Ohio Office of Criminal Justice Services, at p. 8.* https://www.ocjs.ohio.gov/links/ocjs_Sexual_Assault_2015.pdf; National Center for Missing and Exploited Children website: http://www.missingkids.com/theissues/nonfamily.

19       *Id*, note 10 at pp. 1-2.

20       *Id,* note 19.

21       Offender Watch Systems provides a mobile app to law enforcement that could be made available to persons required to register. https://offenderwatch.com/offenderwatch-mobile/.

AR-00001285

8/9/23, 12:07 PM                                      Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

Share ▾

---

Comment

I thought that the purpose of criminal justice was to rehabilitate, restore, re-integrate a person into society. However, this seems punitive. We certainly agree that there may be some that need to be on a registry, but the registry needs to be limited. There needs to be an opportunity for a person, especially one that has remained offense free for 10 or 7 years, to get off the registry. Many people on the registry have never committed another offense, and there are even children on the registry. Each case needs to be considered separately, not lumped into a group. God forgives a repentant person, but the state seems unable to do so. The law should be able to help restore, as has been said not tough on crime, but smart on crime. Please do your part to restore individuals and to look at each one separately. Following is a paper by a professor at Southwestern University

Carpenter, Catherine L., Blanket Exclusions, Animus, and the False Policies They Promote (August 2, 2020). 50 Sw. L. Rev., Forthcoming, Available at SSRN: https://ssrn.com/abstract=3665638

---

**Comment ID**
DOJ-OAG-2020-0003-0354

---

 **Tracking Number**
1k4-9j39-gsj0

---

Comment Details                                    Submitter Info

**Received Date**

AR-00001286

8/9/23, 12:07 PM                                                Regulations.gov

Sep 21, 2020



About   Bulk Data Download      Agencies    Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001287

8/9/23, 12:05 PM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |  Share ▾ |

---

| Comment |

The So called Rules are Unconstitutional , It is proven the registry does nothing to prevent or lower crime its all a waist of tax payers money and it does nothing but hold down citizens who have payed their debt for their crime in most cases years before this registry ever existed retro active punishment is unjust it is not American justice with barbaric and punitive rules that detour a person from getting a job, being equal it only disables those who are on this hit list and punishes their families of those on these hit lists. STOP holding the people down . No one deserves to be on a hit list for life let a lone you retroactively applying life sentences is WRONG !

| **Comment ID** |
| DOJ-OAG-2020-0003-0355 |

|  **Tracking Number** |
| kfd-b1bo-bmjt |

|              **Comment Details**              |              **Submitter Info**              |
| --- | --- |
| **Received Date** |
| Sep 21, 2020 |

AR-00001288



About    Bulk Data Download       Agencies      Learn

(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports     FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001289

8/9/23, 11:56 AM                                        Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |   Share ▾   |

---

Comment

I believe the registry should change but in a different sense. I believe instead of three tiers it should be three tiers "type A sex offender not involving another human, "type B" sex offender involving another person over the age of 17, and "type C" which is a sex offender involving someone 17 and under. It would be simple the registry would work like this, If a person falls in category type A a person would only have to register half of the the time they were in jail/prison and probation, for example if you were in jail 6 months and 1 year probation a person would have to register for 9 months. "Type B" would be similar but instead of half the time it would be 1x the time unless it was a violent offense which would raise it to 1.5 times the time. "Type C" would consist similar to type B but would start as 2x the time and if a violent offense would just be 4x the amount of time. This time would also include a time served once the probation was complete it would be also mentioned in the registry the person has either finished the time served or if they are still under probation. This would be my proposal I don't believe in getting rid of the registry, but believe not all offenders are or should be treated the same.

| **Comment ID** |
| DOJ-OAG-2020-0003-0356 |

| ◎ **Tracking Number** |
| kfd-nodi-hc1n |

|   **Comment Details**   |   **Submitter Info**   |

AR-00001290

Regulations.gov

**Received Date**

Sep 22, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download         Agencies    Learn

(/about)        (/bulkdownload)    (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001291

8/9/23, 11:48 AM                                        Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 22, 2020

| View More Comments | 724 | (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments | 724 | (/docket/DOJ-OAG-2020-0003/comments) |   Share ▾

---

| Comment |

To whom this may concern,

This is regarding Docket number OAG 157. Proposed rule interpreting registration requirements for SORNA.

My son is now under probation for 5 years, not being able to leave the state of Pennsylvania and is held under the first tier law of Megan's law, which is 15 years. He will be 34 years of age when this 1st tier of Megan's law will be expunged from his life.

My son was at a party with a group of friends that he regularly hung out with. There was alcohol, drugs and of course teenagers taking pictures with their cameras during the course of the evening in March of 2017. My son, who had turned 18 in January 2017, was one of the teenagers at the party. During the course of the party, some inappropriate pictures were taken with my son's phone. Days later a team of police from 4 or 5 different townships were dispatched to pick up my son at his high school. He was home sick that day and the police came to pick him up at his mother's house. His phone was confiscated and some incriminating pictures were found on the phone. NO other teenager who was at that party was picked up and none of their phones were seized. Why? Because my son was 18 and 3 months old. The others at the party were within weeks of being the age of 18. My son went to jail for a short while and was under house arrest with an ankle bracelet for a year. I think that the sentence regarding my son as a dangerous sex offender and pedophile are ridiculous. He is a danger to no one. I am his father, but I look at this whole scenario of events that took place at this party as someone who happened to be an "adult" in the eyes of the law. Really? How many 18 year olds have you come across, including yourselves, that haven't lived life by the seat of their pants. I'm sorry ladies and gentlemen, but the punishment is so very far beyond over the top for this offense and has stifled my son's life and caused great pain to our family, clergy and friends that surround him. He is now 21, on the dean's list at a prestigious university, but even there he was not allowed to be at the main campus to experience real college life. Instead he is at an extension of that university living under his parent's roof. Who knows what lies ahead for my son's life as he has this dark cloud looming over him until he is 34 years of age. Please revise these harsh laws that leave individuals reeling, so that they may move on with their lives as productive citizens of society.

AR-00001292

 Regulations.gov

Thank you for considering my plea.

His loving father

**Comment ID**

DOJ-OAG-2020-0003-0357

**Tracking Number**

1k4-9j3q-3tr7

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 22, 2020



Your Voice in Federal Decision Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001293

8/9/23, 12:14 PM                                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 23, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

---

Comment

The proposal by AG Barr creates conditions that could impose federal regulations on states that have their own ideas about how to best create and maintain SO Registries. This proposed rule change needs to be removed because it is an attack on States' Rights. The rule change pushes States into a corner and coerces them to give up their own schemes in lieu of SORNA's one-size-fits-all scheme because they fear losing JAG funding. This is problematic on many fronts and I want to submit my opposition.

**Comment ID**
DOJ-OAG-2020-0003-0358

 **Tracking Number**
1k4-9j3t-qqie

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Sep 22, 2020

AR-00001294



Your Voice in Federal Decision Making

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001295

8/9/23, 12:15 PM                                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 23, 2020

| View More Comments   724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments   724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⏷ |

---

| Comment |

Docket No. OAG 157; Proposed Rule Interpreting Registration Requirements Under SORNA
My name is Rita Finley, I am writing this letter in response to the Proposed changes to SORNA. I want to speak to the continued collateral consequences that impact the rights of those who have completed their court-imposed sentences. These consequences of perpetual punishment continue to prohibit a safe reentry into society. The proposed changes are not only vague but cannot easily be interpreted.
SORNA is a failed system that was designed to increase harsher penalties with no proven increase in safety to the public. The DOJ should undertake a complete analysis of the collateral consequences and should repeal those that do not serve the public interest. Taxpayer dollars are being wasted with no evidence that public registries decrease sex offenses. Science matters!
Policymakers continue to pile on punitive mandatory consequences and impede people convicted of crimes from safely reentering and becoming contributing members of society There is scant evidence that collateral consequences such as living and working limitations act as a deterrent. Scientific research does validate that limiting or completely barring formerly incarcerated persons access to personal and family support does increase recidivism. Science matters !
Employment can be barred from anyone with a criminal conviction. Restrictions on public housing and public benefits upon leaving prison are imposed on those leaving prison who do not have money or resources. Proposed regulations can deter the chances of rehabilitation for the formerly incarcerated with a professional license.
Denying people, the ability to support themselves: put a roof over their heads, feed their families, continue their education, and deny them the right to vote is not democracy.
Rehabilitation, treatment, and support have proven to be successful. Providing a pathway off the naming and shaming registry incentivizes those to complete programs and succeed in being a productive member of society. It should not take decades to be removed from registration.

---

|    **Comment ID** |

AR-00001296

DOJ-OAG-2020-0003-0359

 **Tracking Number**

1k4-9j3u-2c85

**Comment Details**                    **Submitter Info**

**Received Date**

Sep 22, 2020



Your Voice in Federal Decision Making

About   Bulk Data Download      Agencies    Learn

(/about)         (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001297

8/9/23, 12:15 PM                                    Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 23, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) |  Share ▾ |

---

Comment

"The proposal by the AG creates conditions that could impose federal regulations on states that have their own ideas about how to best create and maintain SO Registries. This proposed rule change needs to be removed because it is an attack on States' Rights. The rule change pushes States into a corner and coerces them to give up their own schemes in lieu of SORNA's one-size-fits-all scheme because they fear losing JAG funding." Also, How can anyone move on with their life's if everyone is caught up in this scheme that the Feds want to control everything? Ask yourself this question... If I was on the registry, Would I want this to take place? I bet your answer would be no! With Registration we are not free, we are not humans anymore, We are a specific group of people that is single out in HATE. Registry alone is a HATE CRIME against one specific group of people and that is Sex Offenders regardless what our crimes are we are HUMAN like you. Instead of punishment you should try to get funding for mental health. One persons decision can destroy a whole world.

**Comment ID**
DOJ-OAG-2020-0003-0360

◎ **Tracking Number**
kfe-aq9f-izbu

**Comment Details**                                   **Submitter Info**

AR-00001298

Regulations.gov

**Received Date**

Sep 22, 2020



About    Bulk Data Download        Agencies        Learn

(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001299

8/9/23, 12:17 PM                                                       Regulations.gov

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 23, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

| Comment |
|---|

The proposal by the AG creates conditions that could impose federal regulations on states that have their own ideas about how to best create and maintain SO Registries. This proposed rule change needs to be removed because it is an attack on States' Rights. The rule change pushes States into a corner and coerces them to give up their own schemes in lieu of SORNA's one-size-fits-all scheme because they fear losing JAG funding.

**Comment ID**
DOJ-OAG-2020-0003-0361

 **Tracking Number**
1k4-9j3u-jobs

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Sep 22, 2020

AR-00001300

8/9/23, 12:17 PM                                                 Regulations.gov



Your Voice in Federal Decision Making

About    Bulk Data Download      Agencies      Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports     FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)


Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001301

An official website of the United States Government.  🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 23, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)          Share ▾

Comment

For SORNA to meet its stated goal of establishing "a comprehensive, national sex offender registration system," then SORNA should set out to standardize the process and eliminate state-to-state variability. FDLE is using out-of-state visitors to artificially inflate the number of website registrants, taking additional government funds to address the increased numbers and permanently ruining the lives of visitors who are trying to rebuild their lives.

The Florida Department of Law Enforcement (FDLE) maintains the public sex offender registry for the state. FDLE collects and posts demographic information about sex offenders (i.e. name, address, offense, conviction date, etc) as well as posting a photo of the individual on their website. These activities meet the SORNA requirements and further the SORNA goal of creating "a system for monitoring and tracking sex offenders following their release into the community." However, with very limited exceptions, there is no mechanism for an offender to be removed from FDLE's website after being posted. FDLE also moves far beyond the SORNA vision by applying their system to people not residing in Florida communities permanently but instead simply visiting the state for a few days. Thus, a person will be posted on the FDLE Sex Offender Registry for the rest of their life - even if the person: 1) was never arrested in Florida; 2) was never convicted of a crime in Florida; 3) never lived in Florida; and 4) may not be posted on a public sex offender registry where they live.

For purpose of the FDLE Sex Offender Registry, people are considered to have established a "residence" simply by visiting Florida temporarily. Originally, a person had to be visiting Florida for 14 days to be considered a "resident" -- over time, that period of time has been reduced to 3 days. The statistics of the FDLE Sex Offender website are collected and published every 3 years. The latest government oversight report for the FDLE website comes from 2018 (https://oppaga.fl.gov/Documents/Reports/18-08.pdf) and shows that over 73,000 individuals are contained on the FDLE Registry, yet only 28,000 of those individuals live in Florida! In other words, 60% of the individuals on the Florida Sex Offender Registry do not live in the state of Florida.

As an example, I personally know one individual who was convicted of an internet-based sex offense over 15 years ago. He has never been posted on the public sex offender registry in his state of residence and is classified as a "Level 1 – Low Risk" offender according to SORNA. This person visited Florida for 5

AR-00001302

Regulations.gov

days in 2010 when the "residency" requirement for FDLE was 5 days, and now that person's information is posted on the FDLE Sex Offender Registry for life. The new posting of his information on the Florida Registry occurred 6 years after his original offense and left his co-workers with the impression that he had re-offended in Florida. He was fired from his job and has had difficulty finding new, permanent employment. The FDLE Sex Offender Registry continues to appear on his background report giving the false impression that he has re-offended since his original incident.

FDLE states that they will not remove any sex offender from their website. They contend that SORNA is a "minimum" standard and they are justified in exceeding the requirements of SORNA as they see fit. Since shrinking the definition of "residency" from 14 days to 3 days for out-of-state visitors, FDLE has shown a 50+% increase in the number of offenders on their website and used that volume increase to justify a $7M website investment project and increased staffing. FDLE is artificially inflating their numbers and essentially stealing government funds, while the out-of-state resident is damaged for life with no recourse.

SORNA should establish a standard set of federal rules/policies which demonstrate how our communities should address sex offenders but must also be a mechanism to allow offenders to demonstrate that they have paid their debt to society. Over 95% of sex offenders do not re-offend yet the current policies punish them for life.

---

Attachments  1

---

📄 Sex Offenders Registration and Monitoring Triennial Review - 2018

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0362/attachment_1.pdf)

---

**Comment ID**

DOJ-OAG-2020-0003-0362

---

⊙ **Tracking Number**

kfe-dyvj-okk1

---

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 22, 2020

---

AR-00001303

8/9/23, 12:16 PM                                    Regulations.gov



About       Bulk Data Download        Agencies      Learn

(/about)          (/bulkdownload)      (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001304

# Sex Offender Registration and Monitoring Triennial Review - 2018

Report No.  18-08

December 2018



OPPAGA

Office of Program Policy Analysis and Government Accountability

AR-00001305



December 2018

Report No. 18-08

# Sex Offender Registration and Monitoring Triennial Review - 2018

## EXECUTIVE SUMMARY

Beginning in the early nineties, both federal and Florida law have facilitated oversight of sexual offenders and predators living in Florida communities. Several entities have a role in monitoring sex offenders in Florida, including the Florida Department of Law Enforcement (FDLE), Florida Department of Corrections (FDC), Department of Highway Safety and Motor Vehicles (DHSMV), and local law enforcement. The agencies' various activities include monitoring, registering, verifying, and providing information about sex offenders.

> As directed by Chapter 2005-28, *Laws of Florida*, OPPAGA studied the effectiveness of Florida's sexual offender registration process and public notification provisions.

FDLE's sex offender registry lists more than 73,000 offenders and predators , of which, just over 28,000 reside in Florida communities. Since 2005, when the Office of Program Policy Analysis and Government Accountability (OPPAGA) was first statutorily required to review the registry, the number of registered sexual predators and sex offenders in Florida communities has grown by 53%. Sheriffs' offices monitor all registered sex offenders and are meeting statutory requirements, adopting various strategies to fulfill them. Additionally, FDC supervises offenders sentenced to community supervision and those who have been conditionally released from prison. Also, some sex offenders are conditionally released into the community from the Sexually Violent Predator Program's Florida Civil Commitment Center.

Some sex offenders are required to participate in specialized treatment as a term of their community supervision. OPPAGA's review found a wide range of treatment costs as well as cost variability by both provider and geographic area. To help ensure reasonable rates and set standards for treatment quality, FDC entered into contractual agreements with treatment providers throughout its four regions to provide sex offender treatment services. However, many sex offender treatment providers do not operate under the parameters of a contract and are not monitored for quality assurance.

AR-00001306

Sex offenders in Florida may face barriers to housing including residence restrictions, unwelcoming property managers, lack of affordable housing, and issues with employment and income.  Transient offenders continue to present monitoring challenges.  While the overall percentage of registered sex offenders living in Florida communities with a transient address is small (6%), some counties have higher than average rates.  In addition, barriers to housing have contributed to sex offender enclave communities.  Enclaves include apartment complexes, rooming houses, trailer parks, and motels that were established expressly for, or are willing to rent to, sex offenders.  There are local variations in emergency shelter access for sex offenders, with most communities designating a specific shelter or area of a shelter for sex offenders.  In addition, some communities have ordinances that require sex offenders to self-disclose their registration status at shelters.

In support of this project, OPPAGA conducted fieldwork in Hendry, Lee, Miami-Dade, and Palm Beach counties, including

- meeting with FDC, Community Corrections probation officers, and staff;

- meeting with sheriff's office staff and accompanying officers on address verifications to multiple sex offender residences;

- visiting the Pelican Lake Community, a sex offender enclave near Pahokee in Palm Beach County that is run by Matthew 25 Ministries and houses 125 sex offenders;

- facilitating a focus group attended by 31 individuals required to register as offenders and predators; and

- attending a meeting of the Palm Beach County Re-Entry Taskforce's Sex Offender Subcommittee.

2

AR-00001307

# INTRODUCTION

## Florida law facilitates oversight of sexual offenders and predators living in Florida communities

Beginning in 1994, the federal government passed multiple laws to establish guidelines and requirements for states to track sex offenders and inform the public of their presence. Over time, the Florida Legislature has passed laws that meet, and in some cases exceed, federal requirements to register and monitor sex offenders. (See Appendix A for more information on these laws.)

All sex offenders that are required to register have been convicted of certain qualifying felonies set forth in Florida statutes.[1] The sex offender registration laws do not apply to acts like public urination or streaking, which are typically punished as disorderly conduct or some other misdemeanor offense and thus are not qualifying offenses for registration. The court designates some sex offenders as sexual predators because they are deemed to present an extreme threat to public safety as demonstrated through repeated sex offenses, the use of physical violence, or preying on child victims.

Several entities have a role in monitoring sex offenders in Florida. These entities include the Florida Department of Law Enforcement (FDLE), Department of Highway Safety and Motor Vehicles (HSMV), Florida Department of Corrections (FDC), and local law enforcement. The agencies' various activities include registering, verifying, and providing information about sex offenders. (See Exhibit 1.)

FDLE maintains Florida's sex offender registry, a statewide system for collecting and disseminating sex offender information to both the public and law enforcement agencies. Information available to the public includes the offender's address, photo, physical description including any tattoos, and a description and tag number for all vehicles registered to the offender as well as the date and type of sex offense. Additional information available to law enforcement includes work address, home or cellular telephone number, any email or internet identifiers, and a description and tag number of any vehicles registered to individuals who reside with the offender.

---

[1] Sex offenders as defined in s. 943.0435, *F.S.*; sex offenders under the custody, control, or supervision of FDC as defined in s. 944.607, *F.S.*; sexual predators as defined in s. 775.21, *F.S.*; and juvenile sex offenders adjudicated delinquent as described in s. 943.0435(1)(h)1.d., *F.S.*

AR-00001308

**Exhibit 1**
**Florida's Monitoring of Sex Offenders Consists of Four Main Activities**

| | |
|---|---|
| **Registration**<br>• Sheriffs<br>• Florida Department of Law Enforcement | Certain sex offenders who are released from prison or placed on supervision must register in person with the sheriff in the county where they live within 48 hours of establishing a residence or experiencing any change of information required to be provided pursuant to statute. These offenders also must re-register two or four times a year based on their conviction(s) and status. The offender must provide information such as their physical description, addresses, and vehicle descriptions. The Florida Department of Law Enforcement (FDLE) maintains this information on the sex offender registry. |
| **Identification**<br>• Department of Highway Safety and Motor Vehicles | All sex offenders required to register must also attempt to obtain a driver license or identification card from the Department of Highway Safety and Motor Vehicles (DHSMV) within 48 hours of registration and notify the department within 48 hours of any change in address. Per Florida statute, driver licenses and identification cards issued to registered sex offenders display distinctive information on the front to identify their registration status. |
| **Address Verification**<br>• Florida Department of Corrections<br>• County and Local Law Enforcement Agencies | The Florida Department of Corrections (FDC) and local law enforcement entities are responsible for verifying sex offender addresses in a manner that is consistent with federal laws and standards to ensure that sex offenders can be found at the address they register. |
| **Community Notification**<br>• Florida Department of Law Enforcement<br>• Florida Department of Corrections<br>• County and Local Law Enforcement Agencies | The Florida Department of Law Enforcement (FDLE) is responsible for statewide notification efforts. FDLE informs the public of the location of sex offenders and provides information via the online sex offender registry and a toll-free, nationwide hotline. Local law enforcement agencies are also required to notify the public of the presence of sexual predators living in their communities. Within 48 hours, law enforcement agencies must notify licensed child care centers and schools within a one-mile radius of the predator's residence.<br><br>Local law enforcement agencies, or FDC, if an offender is on community supervision, are also required to notify institutions of higher learning when a sex offender enrolls, is employed, or volunteers at that institution of higher learning, including technical schools, community colleges, and state universities. The Florida College System reported that colleges have taken steps to provide information to volunteers, students, and staff about the presence of sex offender on campus(s). These efforts include establishing specific college policies related to sex offender reporting, designating an office on campus as a point of contact, and posting the rights and responsibilities that pertain to sex offender reporting on the college website. Sheriffs' offices and FDLE report that institutions of higher learning typically work directly with their local law enforcement agencies who provide notification, follow-up on unreported changes in offenders' status, and update registration information as appropriate. |

Source: Florida Department of Law Enforcement.

## The Florida Department of Law Enforcement is in the process of improving the sex offender registry

In 2017, the Legislature appropriated the first of a three-year non-recurring appropriation to FDLE to improve the sexual offender and predator registry database. The three-year estimated cost was $7.1 million. The registry system redesign and development is scheduled for completion in June 2020; however, several key improvements to the registry have already been implemented. During 2015 and 2016, FDLE conducted numerous meetings with law enforcement across the state to identify registry modifications to improve agencies' ability to manage their offender populations and to improve the efficiency of tracking registrants. Many of these recommendations were incorporated into the new registry data system. For example, the registry redesign allows sheriffs' departments the ability to run status reports on address verifications and offender registration violations. The improvements to the registry's public use interface have included the creation of mobile phone and tablet applications. In

4

AR-00001309

addition, improvements to the portrayal of address information on the interactive map graphics, available both online and through the applications, clearly indicate offenders' with transient addresses and addresses with multiple offenders living in one residence.  (See Exhibit 2.)

**Exhibit 2**
**Recent Improvements to the FDLE Sex Offender Registry Website Include Graphics to Depict Offender Locations and Living Arrangements**



Source:  Florida Department of Law Enforcement.

## Florida is substantially compliant with federal sex offender requirements

The federal Sex Offender Registration and Notification Act (SORNA) provides a comprehensive set of minimum standards for sex offender registration and notification in the United States.[2]   These minimum standards address elements such as the immediate transfer of information, requirements for website registries, and community notification.  Along with 17 other states, Florida is substantially compliant and has substantially implemented the requirements of the act.[3]  (See Exhibit 3.)

Jurisdictions that fail to substantially implement SORNA requirements risk losing a portion of their federal Edward Byrne Memorial Justice Assistance Grant (JAG) funds.[4]  Criminal justice programs can use these funds for technical assistance, training, public information, and other purposes.  In federal Fiscal Year 2016, Florida received approximately $17.8 million in JAG funds.[5]  Substantially compliant states can also receive bonus funds from previous fiscal year funding reductions from noncompliant

---

[2] Title I of the Adam Walsh Child Protection and Safety Act of 2006 (P. L. 109-248).

[3] In addition, the Seminole Tribe of Florida and the Miccosukee Tribe of Indians of Florida were among 131 tribal jurisdictions in the United States found to be substantially compliant.

[4] Jurisdictions include the 50 states, 5 principal U.S. territories, and Indian tribes that elect to function as registration jurisdictions under 42 U.S.C. 16927.

[5] The $17.8 million in JAG funds includes funds awarded to state and local governments.  The total allocated to state government was $11.3 million.

AR-00001310

states.  In federal Fiscal Year 2016, there was approximately $1 million available from such reductions; Florida received a bonus award of $203,389, the largest of any state.[6]

**Exhibit 3**
**Florida and 17 Other States Are Substantially Compliant With Federal Sex Offender Registration and Notification Act Requirements[1]**



[1] In addition to the 18 states, the 4 territories of American Samoa, Commonwealth of the Northern Mariana Islands, Guam, and the U.S. Virgin Islands were also substantially compliant.

Source:  OPPAGA analysis of Florida Department of Law Enforcement's Florida Sex Offender Registry.

---

[6] The next highest bonus award was to Pennsylvania at $113,613, followed by Michigan at $99,109, and Ohio at $96,166.

AR-00001311

# FINDINGS

## More than 28,000 registered sex offenders and sexual predators live in Florida communities

### The Florida Department of Law Enforcement's sex offender registry listed more than 73,000 offenders and predators; most offenders did not reside in Florida communities

As of October 2018, there were 73,004 sex offenders and sexual predators on the Florida sex offender registry; 60,143 of these individuals were classified as sex offenders and 12,861 as sexual predators.[7] The typical registered sex offender in Florida was a white, middle-aged male. Approximately 98% of all offenders on the registry were male and 2% were female. Whites made up the largest percentage at 75%, followed by African Americans at 24%, and other races at 1%. When considering sex and race, white males made up the largest percentage of the registry at 73%. Additionally, the average age of offenders on the registry was 50 years of age. Offenders who were ages 65 and older accounted for 14% of the registry, which increased from 12% in 2015. Finally, 79% of offenders on the registry had at least one child victim.

However, most (60% or 43,607) of the offenders on the state registry did not reside in Florida communities. (See Exhibit 4.) Many offenders who were not within a Florida community resided out-of-state (30% or 21,746). The next largest category was confinement (25% or 18,500).[8] Some offenders were deported (4% or 2,845) and a small number were civilly committed (1% or 516).[9] Additionally, about 1% (849) of offenders on the registry had absconded and their whereabouts were unknown. At the time of our review, the remaining offenders on the registry lived in Florida communities (39% or 28,548). (See Appendix B for data on the number of sex offenders by county.)

---

[7] The registry also included 985 deceased persons not included in the above numbers. Deceased offenders' names are left on the registry for one year from the documented date of death so that victims, community members, and criminal justice partners will have notice of a registrant's death.

[8] People who are confined are in a state or federal prison facility, county or municipal jail, or in the custody of U.S. Immigration and Customs Enforcement.

[9] People who are civilly committed are confined or detained by the Florida Department of Children and Families under the Involuntary Civil Commitment of Sexually Violent Predators Act.

7

AR-00001312

Exhibit 4
As of October 2018, Most Registered Sex Offenders and Predators Lived Outside of Florida Communities



Source:  OPPAGA analysis of Florida Department of Law Enforcement data.

## The number of registered sex offenders and sexual predators has increased over the last 14 years

Since 2005, when OPPAGA was first statutorily required to review the registry, the number of registered sexual predators and sex offenders in Florida communities has grown by 53%.[10]  Over this same period, the increase in the growth rate of sexual predators has outpaced the rate of growth for offenders, with the number of predators in Florida's communities growing by 184% and the number of offenders growing by 44%.[11]  (See Exhibit 5.)  Predators are individuals who have been convicted of a sexually violent offense as defined in s. 775.21, *Florida Statutes*, and the court has written an order designating them as predators.  In addition, individuals that have been civilly committed under the Involuntary Civil Commitment of Sexually Violent Predators Act are also designated as sexual predators.

---

[10] OPPAGA's first statutorily required review of Florida's sex offender registration practices and procedures was *Florida's State, County, Local Authorities Are Implementing Jessica Lunsford Act*, OPPAGA Report No. 06-03, January 2006.

[11] FDLE reported that over the last three years, an average of 670 sex offenders and sexual predators were removed from the registry.  Reasons for removal include offender death, relief from the requirement to register within another jurisdiction, court action pertaining to the qualifying offense for the registry, such as a case being overturned or retried, or other court decisions that may affect an offender's registration requirement, including Romeo and Juliet relief.  Romeo and Juliet relief allows offenders to petition the court for removal of the registration requirement if they meet certain criteria, including the victim being at least 13 years-old, but not more than 17 years old, the offender was not more than 4 years older than the victim, and the sexual activity was consensual.

AR-00001313

**Exhibit 5**
**The Number of Registered Sex Offenders and Predators Residing in Florida Communities Continues to Increase**



Source: OPPAGA analysis of Florida Department of Law Enforcement data.

# Sex offenders living in Florida communities receive varying levels of supervision

**Sheriffs monitor registered sex offenders in Florida communities and have adopted various strategies to meet statutory obligations**

All registered sex offenders are monitored by local law enforcement. Sheriffs' offices have statutory requirements for offender registration, address verification, and public notification. Our survey of sheriffs found that they are routinely complying with statutory requirements and have adopted various strategies to fulfill these requirements. However, local practices differ in terms of registration hours and cost as well as response to failures to register and re-register.[12]

- *Failure to register.* Sex offenders who are released from prison or are on probation must register with the sheriff in the county where they live within 48 hours of establishing a residence. Additionally, offenders must re-register in-person two or four times a year based on their conviction(s) and status. Two-thirds of sheriffs' offices responding to our survey reported exercising some discretion in arresting or seeking a warrant for first-time late registration, using strategies such as first attempting to locate offenders to advise them to

---

[12] We surveyed all 67 sheriffs' offices and received responses from 53; however, some offices did not answer all items on the survey.

AR-00001314

register.  However, for re-registration violations, more sheriffs report arresting or seeking a warrant.

State attorneys can prosecute sex offenders for failure to register or re-register.  During Fiscal Year 2017-18, 1,253 offenders were convicted of offenses related to registration violations.  Most were incarcerated, with approximately 45% (568) of the offenders convicted receiving a state prison sentence and 31% (389) a jail sentence.[13]

- ▪ ***Registration hours and cost.***  Most sheriffs provide registration five or more days a week, with a few offices open two or three days a week.  Only seven sheriffs' offices reported that they require offenders to pay for registration or re-registration.  For an initial registration, the costs ranged from $19 to $75 and $5 to $25 for re-registration.  A few agencies also reported a $5 or $10 fee for information updates, such as a change in employment or a new vehicle.[14]  Offenders who are unable to pay may be sent an invoice for future payment, allowed to complete an affidavit if indigent, or have the registration debt sent to collections if not paid within 30 days.  While charging offenders may help offset the sheriff's expense for conducting registration and re-registration activities, it is unclear if the cost could potentially be a deterrent to timely compliance.

- ▪ ***Address verification.***  Florida law requires that local law enforcement and FDC verify sex offender addresses in a manner consistent with federal laws and standards, which requires, at a minimum, regular face-to-face contact between a law enforcement official and the offender.[15]  Florida's registration and re-registration activities fulfill this requirement as sex offenders must re-register in person two or four times a year based on their conviction(s) and status.  In addition, although not required by law, most sheriffs' offices conduct at least one in-person address verification at an offender's residence per year.[16]  Furthermore, many sheriffs' offices reported conducting several address verifications per year with 89% of offices responding to our survey conducting address verifications for predators three or more times per year and 52% conducting address verifications for other sex offenders three or more times per year.

**Sheriffs' offices use different methods to notify the public, schools, and childcare facilities about sexual predators.**  Florida law requires sheriffs' offices to notify the public when a sexual predator moves into their county.[17]  Most sheriffs' offices reported notifying the public via their website (58%), followed by distributing posters or flyers (54%).  (See Exhibit 6.)  Additionally, 21% of offices use OffenderWatch®, which is a private licensed software product and service.  Sheriffs' offices contract with OffenderWatch® to provide for an automated registration, verification, and notification system specific to their jurisdiction to help manage sex offenders in their community.[18]

---

[13] Per ss. 943.0435(9)(a) and 775.21, *F.S.*, failure to register is a third degree felony punishable by incarceration.

[14] Sections 775.21(6)(a)1.b. and 943.0435(2)(a)2., *F.S.*

[15] Section 943.0435(6), *F.S.*

[16] Fifty-two out of 53 responding sheriffs' offices reported conducting an address verification at least once per year for sex offenders and sexual predators.  One sheriff's office did not respond to the address verification question in our survey.

[17] Section 775.21(7)(a), *F.S.*

[18] For example, OffenderWatch® allows the sheriff's office to divide sex offenders' residences into zones within the county so they can be grouped together.  This allows a sheriff's deputy to more efficiently conduct address verifications because the deputy can check addresses of sexual offenders residing within the same zone.

AR-00001315

**Exhibit 6**
**Sheriffs Most Typically Notify the Public About Sexual Predators Through Their Websites[1]**



| | |
|---|---|
| Website | 58% |
| Distributing Posters or Flyers | 54% |
| Social Media | 44% |
| Door-to-Door Notification | 35% |
| Phone Calls | 27% |
| Email | 27% |
| Offender Watch® | 21% |
| Newspapers | 10% |
| Other | 8% |

[1] Percentages total greater than 100% as each agency may use multiple types of public notification methods.
Source: OPPAGA analysis of Sheriffs' survey data.

Sheriffs' offices must also notify schools and childcare facilities when a predator moves within a one-mile radius. Offices reported that they notify schools and childcare facilities through face-to-face contact with the administration (53%), email (39%), phone calls (31%), or letters (31%).[19]

## Some offenders are supervised in the community, most by the Florida Department of Corrections

Some sex offenders living in Florida communities are also under court-imposed supervision. While on probation, offenders are required to adhere to specified conditions for an established period or they can be punished by receiving a sanction such as incarceration. Offenders can be sentenced to probation by state or federal court in lieu of or after a sentence of incarceration.[20] As of December 2018, the FDC supervised 8,978, sex offenders.

FDC provides different types of community supervision, but most sex offenders are monitored on sex offender probation. (See Exhibit 7.) This intensive form of supervision requires sex offender treatment and close monitoring in the field to ensure compliance with special conditions and sex offender registration requirements. Other forms of community supervision include regular probation,

---

[19] Three sheriffs' offices reported that they have never encountered a sexual predator moving within a one-mile radius of a school or childcare facility and one sheriff's office did not respond to this question and thus these offices are excluded from the results.

[20] Federal sex crimes include those that occur on federal lands or in federal prisons, those that involve interstate or foreign travel, or those that involve child pornography produced or distributed in association with interstate or foreign commerce. As of October 2018, the U.S. Probation and Pretrial Services supervised 449 offenders in Florida communities.

AR-00001316

conditional release, and community control. In addition, some supervised offenders are placed on electronic monitoring for enhanced monitoring and supervision.[21]

**Exhibit 7**
**The Florida Department of Corrections Supervises Sex Offenders in Different Ways**

| | |
|---|---|
| **Sex Offender Probation** 57% | These offenders must meet special conditions in addition to the standard conditions of regular probation. These special conditions include a mandatory curfew from 10 p.m. to 6 a.m., active participation in and successful completion of a sex offender treatment program, and submission to a warrantless search of the offender's person, residence, or vehicle. |
| **Regular Probation** 31% | Previously registered sex offenders who commit a non-sex crime can be sentenced to regular probation. Standard conditions of supervision include restrictions on firearm possession and ownership, travel restrictions without department consent, and submitting a DNA sample for analysis. |
| **Conditional Release** 6% | Offenders sentenced to prison who have served 85% of their sentence may be placed on conditional release for the remainder of their sentence (no more than 15%). In addition to the conditions of sex offender probation, conditional release offenders have added conditions such as a minimum of one annual polygraph as part of their treatment program as well as maintaining a driving log and not driving alone. |
| **Community Control** 6% | Community control is a more restrictive form of supervision that is used in lieu of incarceration. Offenders are confined to their residence except for work, school, church, and the probation office. |

Source: Florida Department of Corrections.

To help ensure that sex offenders are complying with the terms of their supervision, FDC probation officers are required to make routine contact with offenders. Regardless of supervision type, all sex offenders are placed in the sex offender risk class. This risk class provides the maximum standards for probation officer contact with the exception of community control (house arrest).[22] This entails routine visits to the offender's residence, place of work, or treatment provider. For offenders on sex offender probation, officers also conduct periodic home inspections to look for evidence of violation of probation which may, depending on the offenders' conditions, include the possession of pornography or alcohol or, if their offense was against a minor, evidence of children in the home.[23] The ability to search electronic devices of those on sex offender probation is an important component of these home visits. Officers may check an offender's phone, tablet, or computer for sexual images or inappropriate

---

[21] For a complete list of special supervision conditions, see Appendix B of *Sex Offender Registration and Monitoring: Statewide Requirements, Local Practices, and Monitoring Procedures*, Report No. 15-16, December 2015.

[22] Probation officers with sex offender probation caseloads are specialists with a minimum of five years of experience. Given the frequency of contacts required for supervised sex offenders, the maximum caseload ratio for officers supervising this population is set at 40:1. In some areas, for example rural counties and counties experiencing staff shortages, mixed caseloads are common, where officers may be supervising sex offenders and other high-risk offenders as well as lower-risk offenders. This can result in officers having more than 40 cases overall, but no more than 40 sex offender probation cases.

[23] For offenders on regular probation, the probation officer conducts visual inspections and, if reasonable suspicion exists, a search is conducted. If the officer finds something that would warrant a new criminal charge, local police are called to complete the search and make an arrest based on new charges.

AR-00001317

text messages during any home, field, or office contact.  Probation officers report any instances of non-compliance with the established conditions to the court.  If a sex offender on regular probation is suspected of using an electronic device for a sex crime, the officer contacts law enforcement to report the suspected crime.

**In addition to community supervision, some offenders and predators may also be required to be under electronic monitoring.**  Florida law requires that the court impose electronic monitoring as a condition of probation or community control for certain sex offenders.[24]  These offenders include those who violate the terms of their probation and who have committed specified offenses including sexual battery, lewd and lascivious offenses committed upon or in the presence of persons less than 16 years of age, sexual performance by a child, and selling or buying of minors.[25]  In addition, the court is required to impose lifetime electronic monitoring, following their term of imprisonment, for offenders who committed specified offenses against children.[26]  Most recently, the Legislature required mandatory terms of community control with electronic monitoring for sexual predators and offenders who commit a felony violation of the registry laws if the court does not impose a prison sentence.[27]

Electronic monitoring affords FDC and law enforcement the ability to actively monitor and identify an offender's location and provide timely reports or records of the offender's presence near or within a crime scene or in a prohibited area or the offender's departure from specified geographic limitations.  As of November 2018, 3,435 of the 8,978 sex offenders on FDC community supervision were on active electronic monitoring.

## Sex offenders may also be supervised under stipulated agreements

Some sex offenders are also conditionally released into the community from the Sexually Violent Predator (SVP) Program's Florida Civil Commitment Center (FCCC) under stipulated agreement contracts.  These offenders have been found by the court, or detained due to a probable cause finding, to be sexually violent predators.  (See Appendix C.)  State attorneys sometimes utilize stipulated agreements to negotiate release terms for some offenders detained or committed to the SVP Program.  Stipulated agreements are negotiated civil contracts between a state attorney and an offender that allow the offender to be released into the community under specified terms and conditions.  Stipulated agreements can be negotiated at different points in the civil commitment process.

- *Pretrial.*  The court conducts a civil proceeding in which a civil commitment order is held in abeyance as long as the offender adheres to the terms and conditions stipulated in the contract.  If the offender does not adhere, the offender is returned to the FCCC either as a detainee facing a civil commitment trial or as a committed SVP if the offender has waived the right to a trial.

- *Split agreement.*  The offender agrees to participate in treatment at the FCCC for a limited amount of time.  After which time, a mutually agreed upon independent evaluator will recommend outpatient treatment when the clinician thinks the offender has completed enough inpatient treatment at the center to safely be treated in the community.  Once released, the offender must adhere to the terms and conditions stipulated in the contract or be returned to

---

[24] Sections 948.30(3), 948.012(4), and 948.063, *F.S.*

[25] Sections 943.0435(9)(b), 775.21(10)(c), and 948.30(3)(a), *F.S.*

[26] Sections 948.30, F.S., and 948.012, F.S., require lifetime electronic monitoring for offenders who committed their crime on or after September 1, 1995 and who are placed under supervision for certain offenses where the victim is 15 years of age or younger, including lewd and lascivious offenses, sexual performance by a child, and selling or buying of minors.

[27] Mandatory minimum term of six months for a first offense, one year for a second offense, and two years for subsequent offenses.

AR-00001318

the center, either as a detainee facing a civil commitment trial or as a committed sexually violent predator if the offender has waived the right to a trial.

- ***Post commitment.***  The offender is committed by the court to the FCCC.[28]  After participating in treatment, the offender petitions the court for release under the provision that the offender no longer poses a danger to the public.

State attorneys reported that they negotiate these agreements in an effort to maintain public safety by providing some measure of accountability when it is unlikely that the state will prevail at the commitment trial or annual release hearing.  While state attorneys' offices that use them cite their broad prosecutorial discretion and authority to negotiate civil contracts as the legal basis for these agreements, some stakeholders have questioned the legal basis and enforceability of the agreements.  However, a recent Florida District Court of Appeals decision upheld the lower court in its decision to commit an offender to FCCC after he failed to meet the terms of his stipulated agreement.[29]

OPPAGA examined stipulated agreements approved by the circuit courts for the conditional release of 225 offenders from 2001 through 2018.[30]  We found that these agreements typically provided for the offender's release in exchange for participation in sex offender treatment and adherence to other conditions while living in the community.  These conditions can include the offender taking polygraph tests at his own expense, submitting periodic reports to the court, no contact with victims or minors, attending Alcoholics Anonymous, abiding by a curfew, or not possessing pornographic materials.  Depending on the terms of the agreement, if the offender fails to comply with the release conditions, he may be held as a detainee at the FCCC while the state begins the process of civil commitment.  If the offender has waived his right to a trial, he may be immediately committed as a sexually violent predator.  Offenders who violate their agreement by committing a new offense may be sent to jail or prison and then returned to the FCCC.  We also determined the current location of the offenders who at one time had been released under a stipulated agreement.  At the time of our review, many (39%) of these offenders did not reside in Florida communities.  (See Exhibit 8.)

---

[28] Offenders committed under the Involuntary Civil Commitment of Sexually Violent Predators Act are designated as predators for purposes of registration and public notification regardless of their status prior to commitment under the Act.

[29] Gates v. State, 252 So.3d 1179 (Fla. 2018).

[30] These agreements originated in 18 of Florida's 20 judicial circuits.

AR-00001319

Exhibit 8
At the Time of Our Review, Many of the 225 Sexually Violent Predators Released Under Stipulated
Agreements Did Not Live in Florida Communities[1]



Almost 40% of SVP offenders were outside
of Florida communities through confinement,
civil commitment, deportation, or by living
out-of-state

| 92 | 38 | 29 | 13 | 7 | 42 | 4 |

■ Community  ■ Confinement  ■ Out-of-state  ■ Civilly Committed  ■ Deported  ■ Other  ■ Absconded

[1] Other represents offenders for whom we could not determine their location.  This includes individuals who, while referred and detained at the FCCC, were never civilly committed under the Jimmy Ryce Act and whose offense(s) does not require registration (typically predating Florida's sex offender registry requirements) as well as offenders identified as deceased.

Source:  OPPAGA analysis of information from the Florida Department of Law Enforcement, Florida Department of Children and Families, and Florida Department of Corrections.

**The state attorney or public defender is responsible for monitoring agreement terms for conditionally released offenders, though monitoring capacity is limited.**  State attorneys' or public defenders' offices are typically responsible for providing supervision to conditionally released offenders to help ensure that they are meeting the terms of their agreements.[31]  However, unlike probation officers, state attorneys' and public defenders' offices do not have the resources or expertise to directly enforce conditions.  For example, they cannot enter offenders' homes to determine their living conditions or see if they are in violation of terms such as abiding by a curfew or being in possession of pornographic material.  Instead, state attorneys' offices rely primarily on reports from an offender's treatment provider to monitor compliance and may run periodic criminal history checks to see if the offender has been arrested.  State attorneys' offices we spoke with acknowledged that they are ill equipped to maintain the type of supervision necessary for a predator in the community.  However, in place of no conditions for supervision or aftercare treatment mandated by statute, they reported that agreements do provide some level of accountability.

Some offenders are also under community supervision by the FDC when they are released from the FCCC.  As of May 2018, FDC was supervising 17 offenders who had been under stipulated agreements in our review period, with 15 known to be living in Florida communities and two with out-of-state addresses.  For offenders under stipulated agreement contracts who are also subject to department supervision, the state attorney typically communicates with both the probation officer and the sex offender treatment provider to ensure compliance with the terms and conditions of the contract.  Additionally, the sex offender treatment provider and the probation officer utilize polygraph results to ensure compliance.  This approach, where the probation officer and treatment provider communicate

---

[31] The 2nd Judicial Circuit reported that the offender's attorney, usually an assistant public defender, is required to monitor the offender and submit documentation to support compliance with the contract terms.

15

AR-00001320

regularly and utilize polygraph results to monitor and intervene when the offender shows signs of noncompliance or reoffending, is widely considered a best practice.

# The Florida Department of Corrections facilitates sex offender therapy; service monitoring limited to contracted providers

## Some sex offenders are required to participate in specialized treatment

Florida law requires certain sex offenders to actively participate in and successfully complete a sex offender treatment program provided by qualified practitioners specifically trained to work with sex offenders.[32,33]  Court ordered sex offender treatment is intended to reduce recidivism and improve offenders' reintegration into society.   During Fiscal Year 2017-18, 2,126, or 24% of sex offenders under community supervision were required to participate in treatment.

When an offender begins treatment, a clinician develops a treatment plan that enumerates offense-related goals such as accepting responsibility for one's sexual offenses, sexual self-regulation, and relapse prevention as well as self-stated goals such as maintaining employment and developing a support system.   Sex offender treatment in Florida typically consists of weekly group sessions with 8 to 15 offenders, which may be supplemented with

> Florida's sex offender probation model utilizes the team treatment (i.e., containment) model.   Team treatment is a specialized supervision model that combines well trained probation officers, sex-offense-specific treatment, and polygraph assessments.   This supervision model emphasizes communication between the probation officer and treatment provider; utilizing polygraph results to inform both supervision and treatment personnel to reduce the offender's risk of reoffending.  It is widely considered a best practice and is used in several other states and jurisdictions including Alaska, California, New Jersey, and Pennsylvania.

individual appointments and exercises in therapeutic workbooks.  Other treatment protocols could include the use of medications to help control sexual compulsiveness or hormone suppressing drugs to reduce testosterone levels.[34]  Over time, clinicians assess offenders' progress toward treatment goals as well as strengths, such as being motivated to make positive changes and being in good health, and their risks or problems, such as substance abuse and lack of transportation.  Statute also requires that, as part of a treatment program, offenders must undergo at least an annual polygraph examination.[35]  Polygraph exams are intended to aid clinicians in monitoring high-risk behavior, help

---

[32] Section 948.30, *F.S.*, requires offenders to participate in sex offender treatment if they committed their crime on or after October 1, 1995 and are placed under supervision for certain offenses including sexual battery, lewd and lascivious offenses committed upon or in the presence of persons less than 16 years of age, sexual performance by a child, and selling or buying of minors.

[33] A qualified practitioner is a social worker, mental health counselor, or a marriage and family therapist licensed under Ch. 491, *F.S.*, who has the coursework, training, qualifications, and experience to evaluate and treat sexual offenders; a psychiatrist licensed under Ch. 458, *F.S.*, or Ch. 459, *F.S.*; or a psychologist licensed under Ch. 490, *F.S.*

[34] Practitioners may also provide risk assessments for offenders to regain privileges such as minor contact and Internet access.  Section 948.30, *F.S.*, provides for the specific components of risk assessments, which include the offender's treatment history and current mental status.  Reported costs for risk assessments ranged from $60 to $2,500.

[35] Section 948.30(2)(a), *F.S.*, also requires that the polygraph examination be conducted by a polygrapher who is a member of a national or state polygraph association and who is certified as a post-conviction sex offender polygrapher, where available.

AR-00001321

reduce the sex offender's denial mechanisms, and inform treatment decision-making.  In some cases, the court may order more frequent polygraph exams.  Polygraph examination results are also provided to the offender's probation officer.

Clinicians play an important role in Florida's team treatment model.  Clinicians not only provide sex offender treatment but also serve a monitoring function through their observations and interactions with offenders during treatment sessions as well as monthly reporting to FDC probations officers.  Monthly reports include information about attendance, payment, participation, and overall progress.  Offenders who commit a violation of treatment program rules, including lack of participation, failure to take or pass a polygraph exam, or three unexcused absences from scheduled treatment sessions may be discharged from the treatment program.  This can result in a probation violation, which in turn can result in the offender being sent to jail or prison.  FDC community supervision staff reported that treatment providers will contact them outside of standard monthly reporting when issues arise with a particular offender, thus providing an additional layer of supervision.  Due to the individualized nature of treatment, there is no set length of time to complete sex offender treatment, with clinicians we spoke with reporting that offenders take between one to four years of weekly group therapy to complete a program.  However, at least one treatment program retains offenders for longer periods, scaling back frequency, but maintaining some treatment sessions as a means of monitoring.

**Treatment costs vary; affordability can present challenges to offenders**.  As required by statute, almost all sex offenders are required to pay for their own treatment and polygraph testing.[36]  While some states, such as Alaska and New Jersey, pay for post-incarceration treatment for offenders, more commonly, states require offenders to pay for their own treatment or have limited funding for indigent offenders.[37]  In Florida, there is a wide range of costs for treatment services.  (See Exhibit 9.)  Our review of treatment costs found variability by both provider and geographic area.

**Exhibit 9**
**Examples of Sex Offender Treatment Costs**

| Treatment Activity | Reported Cost Range |
|---|---|
| Evaluation | $40 - $450 |
| Group Sessions | $20 - $100 |
| Individual Sessions | $35 - $80 |
| Polygraph Testing | $150 - $250 |

Source:  Florida Department of Corrections and the Florida Association for the Treatment of Sexual Abusers.

Department central office and probation staff and clinicians all reported that it is common for offenders, particularly those unemployed or underemployed, to have issues paying for treatment and polygraph exams.  Treatment programs often work with offenders on pricing, such as a sliding scale for some services, or putting them on a payment plan and allowing offenders to owe them for treatment sessions so they can continue to participate.  However, if the provider is unwilling or if the offender fails to adhere to the payment plan, the practitioner can refuse to provide treatment.  In these

---

[36] Section 948.30(1)(c), *F.S.*, requires active participation in and successful completion of a sex offender treatment program with qualified practitioners specifically trained to treat sex offenders, at the probationer's or community controllee's own expense.  However, FDC does pay treatment costs for a few offenders.  Low-income offenders who committed their sexual offense(s) before October 1995 are eligible for department-funded treatment on a sliding scale based on the offender's personal income, the Federal Poverty Guideline Income level, and the number of family members in the household.  For Fiscal Year 2018-19, the department reported that it paid approximately $26,000 for sex offender treatment for around 80 offenders.

[37] The Alaska Department of Corrections pays for the first year of outpatient community-based treatment.  After that, the offender is expected to pay a portion of the treatment costs.

17

AR-00001322

cases, the probation officer notifies the court that the offender is out of compliance.  Our review of monthly progress reports submitted by treatment providers to probation officers showed outstanding payment balances of hundreds of dollars and in two cases in excess of $1,200.  Paying for polygraph exams can be an additional challenge.  Offenders are required to submit to annual polygraphs at a cost of $150 to $250 in addition to regular treatment.[38]  According to FDC staff, when offenders are unable to pay for their polygraphs, probation officers will give them a reasonable period to comply, but at a certain point, will notify the court that the offender is out of compliance.

### Sex offender therapy may not be available in every county; monitoring is limited to contracted providers, and treatment effectiveness has not been evaluated

During Fiscal Year 2018-19, FDC entered into contractual agreements with 17 providers throughout its four regions to provide sex offender treatment services.  The department provides limited funding for these contracts because most sex offenders are required to pay for their own treatment.  These agreements help ensure reasonable rates and set standards for treatment quality, with contracts outlining service requirements and associated costs.  For example, contracted providers are required to conduct a 50-minute, face-to-face pre-treatment evaluation of each sex offender within 10 calendar days of referral to determine the level of services needed.  The department also requires contracted providers to include specific components in their sex offender treatment programs, including comprehensive relapse prevention, victim empathy modules, and cognitive behavior therapy.  In addition, the contracts describe provider responsibilities for communicating with probation officers, ensuring offender participation, developing discharge policies, and complying with contract monitoring.

However, most sex offender treatment providers do not operate under the parameters of a contract.  Thus, in an effort to make more practitioners available to offenders, the department established and maintains a treatment resource list.  This list consists of clinicians who express interest in providing sex offender treatment.  While inclusion on the resource listing does not guarantee referrals for treatment of sex offenders from FDC, probation officers provide offenders with contact information for clinicians on the listing.  The clinicians are required to attest that they are a licensed clinical social worker, marriage and family therapist, mental health counselor, or psychologist under Chs. 490 or 491, *Florida Statutes*, are eligible to evaluate and treat sex offenders, and have specialized knowledge and experience.  FDC staff checks the clinician's licensure status to make sure it is still in effect and verify the clinician has not had any disciplinary actions.  In addition, department staff check-in with resource providers annually to ensure they are still willing to provide sex offender treatment services and that their license is still in good standing.  As of November 2018, there were 57 practitioners on the sex offender resource provider list.

**Some areas of the state have more limited access to sex offender treatment providers.**  Not all counties have FDC treatment providers.  Currently, the department's contractors provide treatment in 41 counties and non-contracted clinicians provide treatment in 31 counties; 10 counties do not have FDC treatment providers.  (See Exhibit 10.)  Per Florida statute, offenders who do not have a specialized sex offender treatment provider within 50 miles of their home are to required to seek other appropriate therapy.[39]  Additionally, judges can specify that an offender seek treatment from a certain practitioner, in which case, the offender must comply with the court order regardless of the distance.

---

[38] An offender may also be required to undergo an initial sexual history polygraph exam, with an estimated cost of $200 to $250.

[39] Section 948.30(1)(c), *F.S.*

AR-00001323

**Exhibit 10**
**Availability of Sex Offender Treatment Providers Varies Across the State**



Source:  OPPAGA analysis of Florida Department of Corrections information.

**Quality assurance monitoring is limited to providers under contract with the department.**  FDC regional office staff monitors contracted providers to ensure department standards are followed by conducting annual site visits to ensure adherence to contract provisions and quarterly site visits to ensure quality treatment.  For example, among other requirements, contracted providers are obligated to provide group counseling sessions for a minimum of 45 minutes to between 5 and 15 offenders.  This time cannot include administrative functions such as collecting fees and the sign-in process.

However, non-contracted resource providers are not obligated to adhere to these standards.  As a result, offenders receiving treatment from resource providers could be receiving less treatment time and in larger groups.  In addition, resource providers are not obligated to adhere to any cost parameters and can set any price for their services.

**Florida-based research is needed to determine treatment effectiveness.**  While Florida has had a statutory requirement for sex offender treatment in place for 23 years, little is known about the effectiveness of treatment practices to reduce sex offense recidivism.[40]  To date, a comprehensive study

[40] In 1995, in an effort to reduce the commission of violent and repeat sex offenses, the Legislature required outpatient sex offender treatment for supervised sexual predators and sex offenders convicted of specified offenses.

19

has not been conducted in the state.  Additionally, treatment providers reported that they do not have affordable access to recidivism data to ascertain long-term outcomes of offenders once they leave treatment.  Given the lack of research and access to data, it is difficult for providers to evaluate the effectiveness and continue to improve the treatment they provide.

According to the Florida Association for the Treatment of Sexual Abusers (FATSA) members, Florida is unique and looking at its processes and outcome data would provide a feedback loop to help providers learn, improve patient results, and help keep communities safe.  To determine the effectiveness of current treatment practices and help establish best practice standards, the Legislature could consider authorizing a study to evaluate the effectiveness of current treatment practices to reduce recidivism and ensure public safety.

## Sex offenders may face housing barriers, contributing to offender instability and monitoring difficulties

### Sex offenders can face barriers to housing; local residence restrictions cited as a common obstacle

Many studies have established that sex offenders who maintain stable employment, housing, and family relationships have significantly lower recidivism rates.  Sex offenders in Florida face multiple barriers to housing including residence restrictions, unwelcoming property managers, a lack of affordable housing, and issues with employment and income.  These factors may contribute to the growth of sex offender enclave communities and increases in offender transiency.  Most of the sheriff's offices responding to our survey reported that there are housing barriers for sex offenders within their counties.  The highest percentage of these respondents reported that residence restrictions were barriers, followed by property managers who are unwilling to rent to sex offenders, a lack of affordable housing, employment or income issues, and transportation.  (See Exhibit 11.)

AR-00001325

**Exhibit 11**
**Sheriffs Cited Local Residence Restrictions as the Most Common Housing Barrier for Sex Offenders[1]**



[1] Percentages total greater than 100% as each agency may use multiple types of public notification methods.
Source: OPPAGA analysis of Sheriffs' survey data.

Florida statute prohibits certain offenders convicted of a crime against a victim less than 16 years of age from living within 1,000 feet of any school, childcare facility, park, or playground.[41]  However, local government can impose municipal or county residence restrictions that further prohibit where some or all sexual offenders can live.  For example, in some communities, certain offenders who committed a crime against a minor less than 16 years of age cannot live within 2,000 feet of any school, designated public school bus stop, day care center, park, playground, or other place where children regularly congregate.  Some ordinances include additional locations such as public libraries, churches, zoos, and public beaches.  Furthermore, some counties have multiple ordinances in different municipalities and each may have different residency restrictions.  For example, a sheriff's office in one county may monitor sex offenders who have a 1,500 feet restriction in one city and a 2,500 feet restriction in another city.[42]  Several counties have four or more ordinances.  As of November 2018, there were 166 local residence restrictions in 48 Florida counties, including 29 county and 137 municipal ordinances. (See Exhibit 12.)  Lastly, 14 communities, including seven counties and six municipalities, have enacted no loitering or child safety zone ordinances that enumerate places where children congregate and sex offenders are not allowed to be present.

---

[41] Section 775.215(2)(a), *F.S.*

[42] FDC developed the Sex Offender Registration Restrictions System to help  determine if offenders under its supervision can legally live at a certain address.  The system allows probation officers to check the address against state and local restrictions as well as the offender's rules of supervision.  For example, if there is a local ordinance that an offender cannot live within 2,500 feet of a park or school, then the officer changes the buffer from 1,000 feet to 2,500 feet.  The officer enters the address into the system and it prints a map with the address, highlighting the areas where the offender cannot live.  If the address is near the border, the officer will go into the field and physically measure the distance to determine if the address is appropriate.

AR-00001326

**Exhibit 12**
**Some Florida Counties Have Enacted Local Residency Restrictions for Sex Offenders**



Source:  OPPAGA analysis of Florida Department of Corrections information.

While local residence restrictions have been widely implemented in Florida communities, federal research and Florida stakeholders reported that they may have unintended results.  According to the U.S. Department of Justice's Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking Office (SMART) research has demonstrated that residence restrictions do not decrease and are not a deterrent for sexual recidivism.[43]  In addition, some research has shown no significant decreases in sex crime rates following the implementation of residence restrictions.  However, residence restrictions do affect offenders who have to move or have limited housing options, particularly in urban areas.  This combination can lead to an increase in homelessness, loss of family

---

[43] The Adam Walsh Child Protection and Safety Act of 2006 authorized the establishment of the office.  The office is responsible for assisting with implementation of the Sex Offender Registration and Notification Act and for assisting criminal justice professionals across the entire spectrum of sex offender management activities needed to ensure public safety.

AR-00001327

support, and financial hardship, which are all known to be destabilizing factors.  Offenders who lack stability are more likely to reoffend.

As required by statute, OPPAGA sought input from the Florida Association for the Treatment of Sexual Abusers for this review.[44,45] FATSA does not support local residence restrictions.  Its formal response stated that the state requirement of a 1,000 foot residence restriction serves the purpose of creating buffer zones, without unreasonably eliminating housing options and encouraging transience.[46]   However, local ordinances that create larger buffer zones result in more expansive areas being off limits to sex offenders seeking housing.  This condition is particularly acute in urban areas where development is denser and these child-focused places can be in closer proximity to each other, creating overlapping buffers.  Lastly, FATSA reported that there is no evidence suggesting that Florida's 1,000-foot residence restriction is insufficient to accomplish the sex offender management goals of the state and local governments.

> For example, a 2,500 foot residence restriction, the most commonly implemented by local governments, creates a nearly half mile buffer (0.47 miles) around schools, parks, playgrounds, and other places where children congregate, resulting in a minimum 0.7 square mile sex offender exclusion zone.

## Transient offenders continue to present monitoring challenges

While the overall percentage of registered sex offenders living in Florida communities with a transient address is small (6%), some counties have higher than average rates.  (See Exhibit 13.)  For example, 10 counties have a higher rate than the state average of 8.29 transient offenders per 100,000 people. The counties with the highest rates are Duval with 17.64 transient offenders per 100,000 people, Broward with 17.34, and Miami-Dade with 16.14.

---

[44] Section 943.04353, *F.S.*

[45] As required by statute, the Florida Council Against Sexual Violence was also contacted for this review but did not provide comment.

[46] This applies to sexual offenders and predators whose victim(s) was less than 16 years of age.

AR-00001328

**Exhibit 13**
Ten Counties Have a Higher Rate of Transient Offenders Than the State Average

| County | Number of Transient Offenders | Rate of Transients Offenders Per 100,000 People |
|---|---|---|
| Bay | 1 | 0.56 |
| Martin | 1 | 0.65 |
| Highlands | 1 | 0.98 |
| Walton | 1 | 1.51 |
| Okaloosa | 3 | 1.52 |
| St. Lucie | 5 | 1.65 |
| St. Johns | 4 | 1.68 |
| Charlotte | 3 | 1.70 |
| Pasco | 11 | 2.14 |
| Gadsden | 1 | 2.22 |
| Santa Rosa | 4 | 2.35 |
| Collier | 9 | 2.45 |
| Okeechobee | 1 | 2.58 |
| Indian River | 4 | 2.63 |
| Citrus | 4 | 2.75 |
| Lee | 20 | 2.80 |
| Polk | 19 | 2.84 |
| Desoto | 1 | 3.00 |
| Osceola | 12 | 3.41 |
| Lake | 12 | 3.51 |
| Nassau | 3 | 3.63 |
| Flagler | 4 | 3.72 |
| Sarasota | 18 | 4.31 |
| Hillsborough | 62 | 4.40 |
| Escambia | 15 | 4.75 |
| Leon | 14 | 4.81 |
| Taylor | 1 | 4.98 |
| Hendry | 2 | 5.05 |
| Manatee | 25 | 6.62 |
| Palm Beach | 118 | 8.25 |
| Brevard | 49 | 8.40 |
| Union | 1 | 9.29 |
| Monroe | 7 | 9.47 |
| Orange | 132 | 9.80 |
| Pinellas | 107 | 11.04 |
| Volusia | 72 | 13.61 |
| Alachua | 36 | 13.74 |
| Miami-Dade | 447 | 16.14 |
| Broward | 329 | 17.34 |
| Duval | 168 | 17.64 |
| **Total** | **1,727** | **8.29** |

Source:  OPPAGA analysis of Florida Department of Law Enforcement registry data and University of Florida Bureau of Economic and Business Research population estimates as of April 1, 2018.

24

AR-00001329

As shown in Exhibit 13, Miami-Dade had the highest number of transient offenders. We spoke to the Miami-Dade County Homeless Trust, which reported working to find housing for transient sex offenders living in homeless encampments. Trust staff reported that untreated mental health issues and a lack of employability contribute to sex offender homelessness. Additionally, some offenders have financial commitments to family residences where they are unable to reside due to residence restrictions, but for various reasons chose not to move their families.[47]  Staff reported that a predominant reason for continued sex offender transience is an unwillingness on the part of property managers to rent to sex offenders.[48]

**Transient offenders are required to check-in every 30 days, but monitoring these offenders is still problematic.**  Per Florida law, transient offenders are required to check-in at sheriffs' offices every 30 days as long as they lack a fixed address.[49] Prior to 2014, transient sexual predators and some offenders were only required to register every three months and sex offenders every six months.[50]  The 30-day check in requirement provides that in addition to the three or six month registration, offenders must go to the sheriff's office every 30 days in person to verify information such as transient location.[51] This 30-day transient reporting requirement is different from a typical registration because an offender is not required to verify all information but must provide the addresses and locations of transient residence.[52]  For example, a transient offender could report that the offender resides in the woods behind a specific retail store or an intersection of two roads.  Finally, Florida statute requires each sheriff's office to establish procedures for reporting transient residence information and providing notice to transient offenders to report every 30 days.  In October of 2017, to streamline and standardize the data entry process, FDLE added a transient check-in module to the sex offender registry system for local law enforcement.

While transient offenders have more accountability under the 30-day transient reporting requirement, sheriffs' offices reported that transient offenders are still difficult to monitor.  The mobility of these offenders makes it difficult to locate them; as a result, they can consume a disproportionate amount of officer time compared to non-transient offenders.  For example, some offices reported that it is difficult to find a transient offender's campsite in a wooded area and it can take several attempts to find and verify a transient offender's location.  While some sex offenders may be transient because they have difficulty finding a legal residence, stakeholders, including sheriff's offices, reported that sex offenders might claim to be transient even though they have a permanent or temporary address they cannot register due to state or local residence restrictions.

---

[47] For example, in Miami-Dade, FDC reported that in August of 2018, there were nine sex offenders under its supervision who owned residences in the Miami area where they lived prior to being sentenced, but now cannot reside or sleep there due to residence restrictions.

[48] FDC staff reported that a lack of affordable housing in areas that comply with sex offender residency restrictions is also a problem in Miami-Dade County.

[49] Sections 943.0435(4)(b)2. and 775.21(6)(g)2.b., *F.S.*

[50] Sections 943.0435(14)(b), *F.S.*

[51] Sections 943.0435(4)(b)2. and 775.21(6)(g)2.b., *F.S.*

[52] According to s. 775.21(2)(o), *F.S.*, a transient residence means a county where a person lives, remains, or is located for a period of three or more days in the aggregate during a calendar year and which is not the person's permanent or temporary address. The term includes, but is not limited to, a place where the person sleeps or seeks shelter and a location that has no specific street address.

AR-00001330

## Some offenders find housing in enclave communities

**Barriers to housing have contributed to intentional and ad-hoc sex offender enclave communities.** Intentional enclaves include for-profit and faith-based communities designed to assist sex offenders upon release from prison.  The number of intentional enclave communities and housing providers appears to be growing.  However, their numbers are small and they only exist in a handful of counties.[53]  Notably, of the 10 counties with the highest rates of sex offender transience, 7 do not have housing specific to this population.

Intentional enclaves often provide at least initial transportation to secure identification and register with the sheriff as well as ongoing, onsite sex offender treatment.  Ad-hoc enclaves do not provide these support services, but are willing to rent to sex offenders, and as a result, have become enclaves over time.  Both intentional and ad-hoc enclaves include apartment complexes, rooming houses, trailer parks, and motels that are willing to rent to sex offenders, and as a result, have become enclaves over time.  FDC staff reported that the advantages of enclaves are that offenders tend to hold each other accountable and multiple offenders can be monitored at one time.  In responding to our survey, many sheriff's offices shared FDC's opinion that enclaves make for expedient address verification and monitoring checks and that offenders who live in close proximity are aware of each other's behavior, improving accountability.  Additionally, one sheriff's office reported that enclave residents remind each other of their registration requirements while another reported that they provide law enforcement a source of intelligence regarding other offenders.

However, some sheriffs did express concern about the potential of offenders encouraging, conspiring, or covering for each other's deviant behavior, resulting in re-offenses.  FDC staff and some sheriffs also stated that public perception and complaints are a barrier to establishing sex offender enclave communities.  In addition, both FDC probation staff and some sheriffs reported that established enclaves are preferable to transient offenders because offenders who live there have a stable location.  Enclave communities have been vetted as willing to rent to offenders and meeting residence restrictions.  Because enclaves are largely a response to housing barriers experienced by sex offenders, many offenders residing in enclaves may otherwise be transient.

**Communities could consider methods to increase available housing options for sex offenders.** Many affordable housing options are not available to sex offenders.  For example, federal housing law prohibits lifetime registered sex offenders from admission to Department of Housing and Urban Development's subsidized housing.  In addition, sexual offenders are not protected under the Federal Fair Housing Act, which makes it easier for property owners and real estate developers to deny housing to them.  Some communities have attempted to increase housing opportunities for offenders reentering the community by creating greater access to existing housing or by increasing the amount of housing available either by new construction or converting existing units.  Using collaborative partnerships between stakeholders, such as housing officials, property owners, service providers, and law enforcement, communities could tailor strategies to meet their unique needs and to promote public safety and improve law enforcement's ability to monitor them.  For example, considerations could be made specific for a sex offender population, such as choosing locations that comply with state and local residency restrictions and allowing for onsite services such as sex offender treatment and employment support.

---

[53] A November 2018 listing of sex offender housing opportunities provided by Matthew 25 Ministries included 19 providers in 11 cities.

26

# There are local variations in emergency shelter access for sex offenders

Federal guidelines do not stipulate shelter procedures for sex offenders during times of emergency, leaving these decisions to state and local jurisdictions.  Some states have enacted laws that place requirements on offenders, shelter staff, and other personnel during times of emergency.  Louisiana and Mississippi both require registered sex offenders to notify shelter staff and law enforcement about their status and provide identifying information.  The states' laws specify that this information include full name, date of birth, social security number, and last address of registration prior to the declaration of emergency.  In addition, shelters in these states are required to make reasonable efforts to notify local law enforcement about the presence of the sex offender in the emergency shelter.  The Louisiana law requires its Department of Corrections to provide information about emergency protocols to every sex offender under its supervision.

Florida does not have a state law providing direction to sex offenders or communities on emergency shelter procedures and local communities have varying processes.  There have been recent changes to how shelter is provided to offenders during emergencies.  Prior to 2017, the FDC directed sex offenders under its supervision to go through a series of steps to find shelter during times of emergency with the last step being to take shelter in an administrative area of a prison.  However, during Hurricane Irma, correctional staff faced challenges managing large groups of sex offenders, which included offenders who were not under their supervision.  As a result, FDC now requires probation officers to work with offenders to have a plan in place for finding emergency shelter, such as evacuating to a relative's home in another part of the state.  In addition, the department is working with local communities to determine emergency shelter arrangements for sex offenders other than state correctional facilities.  These arrangements vary across the state.  Our review found that they include designating a specific shelter or an area of a shelter for sex offenders.  The jail or another area of the sheriff's office is the most common location for a designated shelter.  In a few communities, sex offenders may evacuate to any public emergency shelter and are not limited to a specific shelter or area of a shelter.

Some local communities in Florida also provide direction to sex offenders during times of emergency through ordinances.  Similar to the laws in Louisiana and Mississippi, many of these ordinances require that sex offenders self-disclose their registration status.  For example, the City of Jacksonville and Seminole County require that registered sex offenders declare their status immediately upon entering a shelter.  Some ordinances also provide guidance on which shelters are accessible to sex offenders.  The Lee County ordinance requires that offenders report to a pre-designated shelter identified by the sheriff's office.  In addition, several ordinances impose a penalty, such as a fine or a jail sentence, if offenders do not follow them.  For example, the City of Crystal River assesses penalties, including but not being limited to a fine of up to $500, a 60-day or less jail term, or both.

## AGENCY RESPONSE

In accordance with the provisions of s. 11.51(2), *Florida Statutes*, a draft of OPPAGA's report was submitted to the Florida Department of Corrections and the Florida Department of Law Enforcement for review.  Please see Appendix D for Florida Department of Law Enforcement's response.

AR-00001332

# APPENDIX A

## Legislative Changes to Sex Offender Laws Since 2005

Exhibit A-1 shows changes to Florida's sex offender law since the passage of the Jessica Lunsford Act in 2005.  The Legislature has passed three sex offender laws since OPPAGA's 2015 report.

**Exhibit A-1**
**The Florida Legislature Has Enacted Several Sex Offender Related Laws Since 2005**

| Year | Description |
| --- | --- |
| 2005 | Passed the Jessica Lunsford Act, requiring sex offenders to re-register twice a year in person with the sheriff of the county in which they reside.  (Chapter 2005-28, *Laws of Florida*) |
| 2007 | Required sexual predators, juvenile sex offenders adjudicated delinquent, and sex offenders convicted of certain crimes to re-register four times a year, required offenders report email addresses and instant message names, and required driver license and identification cards issued to registered sex offenders to display distinctive information on the front to identify them as sexual offenders or predators. (Chapters 2007-209, 2007-207, and 2007-143, *Laws of Florida*) |
| 2014 | Increased the information an offender must report, including information on vehicles an offender owns and vehicles owned by any person residing with the offender, expanding and clarifying the requirement to report internet identifiers prior to their use, and tattoos or other identifying marks. Also specified registration requirements for offenders with transient addresses, requiring them to inform the sheriff within 48 hours after establishing a transient residence and every 30 days thereafter if they maintain a transient residence. (Chapter 2014-5, *Laws of Florida*) |
| 2016 | Included lewd or lascivious battery upon an elderly or disabled person as an offense that requires sexual offenders to register quarterly and for life.  (Chapter 2016-104, *Laws of Florida*) |
| 2017 | In recognition that sexual offenders and predators may use social networking sites to gain information about victims and make contact with them, amended statutory definition of internet identity to specify that it includes any designation, moniker, screen name, username, or other name used for self-identification to send or receive social Internet communication. The law further required sex offenders to register each Internet identifier and its corresponding website homepage or application software name within 48 hours after use.  (Chapter 2017-170, *Laws of Florida*) |
| 2018 | Modified the statutory definitions of residence as it applies to registered sex offenders and predators reporting this information. Modification included a decreasing from 5 days to 3 days the time period in which a person must abide, lodge, or reside at a place in order to meet any of the definitions for reporting purposes. Also imposed mandatory terms of community control with electronic monitoring for sexual offenders and predators who commit a felony violation of the sex offender registry laws, if the court does not impose a prison sentence. (Mandatory minimum of six months for first offense, one year for second offense, and two years for third or subsequent offense.)  (Chapter 2018-105, *Laws of Florida*) |

Source:  OPPAGA analysis of Florida laws and statutes.

AR-00001333

# APPENDIX B

## Number of Sexual Offenders Per County

Exhibit B-1 shows the number of sexual offenders and predators per county.  It also is contains the rate of all sexual offenders, including predators, for each county.

**Exhibit B-1**

| County | Offenders | Predators | Total | Rate (Per 100,000) |
|---|---|---|---|---|
| Alachua | 398 | 54 | 452 | 172.46 |
| Baker | 51 | 4 | 55 | 217.59 |
| Bay | 361 | 25 | 386 | 214.36 |
| Bradford | 82 | 20 | 102 | 416.34 |
| Brevard | 738 | 84 | 822 | 140.91 |
| Broward | 1,097 | 127 | 1,224 | 64.52 |
| Calhoun | 37 | 3 | 40 | 297.07 |
| Charlotte | 219 | 15 | 234 | 132.39 |
| Citrus | 269 | 33 | 302 | 207.45 |
| Clay | 294 | 88 | 382 | 180.16 |
| Collier | 231 | 31 | 262 | 71.33 |
| Columbia | 231 | 52 | 283 | 430.68 |
| De Soto | 74 | 12 | 86 | 258.37 |
| Dixie | 75 | 12 | 87 | 587.12 |
| Duval | 1,781 | 327 | 2,108 | 221.37 |
| Escambia | 802 | 95 | 897 | 283.89 |
| Flagler | 108 | 3 | 111 | 103.25 |
| Franklin | 31 | 8 | 39 | 366.16 |
| Gadsden | 203 | 35 | 238 | 529.51 |
| Gilchrist | 37 | 6 | 43 | 257.42 |
| Glades | 20 | 4 | 24 | 199.12 |
| Gulf | 27 | 5 | 32 | 233.90 |
| Hamilton | 26 | 8 | 34 | 279.56 |
| Hardee | 54 | 5 | 59 | 228.95 |
| Hendry | 20 | 2 | 22 | 55.58 |
| Hernando | 364 | 32 | 396 | 213.94 |
| Highlands | 168 | 20 | 188 | 183.52 |
| Hillsborough | 1,558 | 265 | 1,823 | 129.47 |
| Holmes | 57 | 6 | 63 | 337.22 |
| Indian River | 191 | 9 | 200 | 131.73 |
| Jackson | 142 | 17 | 159 | 368.72 |
| Jefferson | 31 | 12 | 43 | 315.64 |
| Lafayette | 10 | 3 | 13 | 183.25 |
| Lake | 437 | 48 | 485 | 141.85 |
| Lee | 727 | 82 | 809 | 113.37 |

AR-00001334

| County | Offenders | Predators | Total | Rate (Per 100,000) |
|---|---|---|---|---|
| Leon | 506 | 92 | 598 | 205.41 |
| Levy | 150 | 21 | 171 | 416.52 |
| Liberty | 17 | 4 | 21 | 294.16 |
| Madison | 45 | 9 | 54 | 303.17 |
| Manatee | 397 | 64 | 461 | 122.08 |
| Marion | 772 | 96 | 868 | 249.12 |
| Martin | 141 | 12 | 153 | 99.68 |
| Miami-Dade | 1,492 | 271 | 1,763 | 63.66 |
| Monroe | 110 | 6 | 116 | 156.88 |
| Nassau | 120 | 14 | 134 | 162.08 |
| Okaloosa | 286 | 31 | 317 | 161.10 |
| Okeechobee | 102 | 10 | 112 | 289.03 |
| Orange | 1,923 | 376 | 2,299 | 170.77 |
| Osceola | 432 | 49 | 481 | 136.59 |
| Palm Beach | 875 | 132 | 1,007 | 70.39 |
| Pasco | 752 | 85 | 837 | 162.74 |
| Pinellas | 1,515 | 182 | 1,697 | 175.04 |
| Polk | 1,037 | 100 | 1,137 | 169.73 |
| Putnam | 265 | 44 | 309 | 426.21 |
| St. Johns | 207 | 21 | 228 | 95.56 |
| St. Lucie | 390 | 38 | 428 | 141.58 |
| Santa Rosa | 329 | 22 | 351 | 206.37 |
| Sarasota | 390 | 35 | 425 | 101.81 |
| Seminole | 293 | 28 | 321 | 69.27 |
| Sumter | 152 | 10 | 162 | 138.87 |
| Suwannee | 72 | 10 | 82 | 191.51 |
| Taylor | 56 | 9 | 65 | 323.90 |
| Union | 50 | 0 | 50 | 464.38 |
| Volusia | 882 | 104 | 986 | 186.33 |
| Wakulla | 84 | 6 | 90 | 305.14 |
| Walton | 135 | 21 | 156 | 235.99 |
| Washington | 67 | 9 | 76 | 331.67 |
| Unknown County | 81 | 9 | 90 | |
| Total Offenders | 25,076 | 3,472 | 28,548 | 137.77 |

Source:  OPPAGA analysis of Florida Department of Law Enforcement data.

AR-00001335

# APPENDIX C

## Sexually Violent Predator Commitment Process

The 1998 Legislature enacted the Involuntary Civil Commitment of Sexually Violent Predators Act (ICC-SVP) to create a civil commitment process for sexually violent predators (SVPs) after those offenders have served their criminal sentence or term of confinement for specified sex offenses.[54]  (See Exhibit C-1.)  As defined by statute, sexually violent predators are persons who have been convicted of a sexually violent offense; have a mental abnormality or personality disorder that makes them likely to engage in future acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment; and have been committed under the act.[55]

**Exhibit C-1**
**Sexually Violent Predator Civil Commitment Process**



Offender referred to Department of Children and Families for assessment as to whether the offender meets the clinical definition of a sexually violent predator; the department then provides a recommendation to the state attorney

State attorney determines whether to file a petition with the circuit court alleging that the person is a sexually violent predator. If the judge determines probable cause exists, the offender is detained at the Florida Civil Commitment Center.

The case proceeds through the commitment process, and in many instances, a civil trial is held. If the court makes the determination at trial that the offender is a sexually violent predator, the person is committed under the ICC-SVP Act and is housed for treatment at the Florida Civil Commitment Center until such time as the court determines that the person is no longer a threat to public safety.

Source:  OPPAGA analysis of *Florida Statutes.*

Offenders detained or committed under the ICC-SVP are housed for treatment at the Florida Civil Commitment Center (FCCC).[56]  As of October 2018, there were 554 offenders at FCCC.  This represents a decrease of over 19% since 2012 when the population was 681.[57]  The treatment program consists of four levels of sex offender-specific cognitive behavior treatment, which takes approximately six years to complete.  However, statute provides that individuals committed under the Act be confined until the court determines that they are no longer a threat to public safety.[58]  Committed predators receive an annual examination of their mental condition and the court may hold a hearing to determine whether there is probable cause to believe that the person's condition has so changed that it is safe for

---

[54] Sections 394.910 - 394.932, *F.S.*

[55] Section 394.912(10), *F.S.*

[56] For Fiscal Year 2017-18, the Legislature appropriated the Department of Children and Families Sexual Violent Predator Program $34.8 million, of which $32.1 million was used for operations, treatment services, and security for the FCCC and $2.7 million for the offender screening, assessment, and recommendation process.  The FCCC is a secure, accredited 720-bed facility located in Arcadia, Florida.  The Department of Children and Families contracts with Correct Care Recovery Solutions for the operation of the program.

[57] Possible factors for this decline cited by Department of Children and Families program staff include longer prison sentences for sex offenders, which delays their entry into the program, and judges releasing predators from the center prior to completing treatment.

[58] Section 394.918, *F.S.*

AR-00001336

he or she to be released.  If the court believes there is probable cause, a trial is held at which the state attorney bears the burden of proving that the person's mental condition remains such that, if released, he or she is likely to engage in acts of sexual violence.

The treatment program at FCCC does not include outpatient treatment or re-entry services because the Department of Children and Families does not have statutory authority to implement a community-based treatment phase.[59]  As a result, those offenders not under state or federal probation do not have any formalized post-release supervision or treatment requirements following their release from FCCC.[60]

---

[59] In *The Delays in Screening Sexually Violent Predators Increase Costs; Treatment Facility Security Enhanced*, Report No. 08-10, February 2008, OPPAGA found that Florida's sexually violent predator program could be strengthened by implementing a community-based treatment component for those who are leaving the facility as a means to re-enter society and reduce the risk of reoffending.  OPPAGA also recommended that to improve the treatment program and enhance public safety, the Department of Children and Families should provide the Legislature with suggested statutory language to create a community-based treatment component and an estimate of associated costs.  These provisions should specify which entity would provide monitoring, treatment, and supervision of individuals released from civil commitment and criteria for the length of such treatment and supervision.

[60] Beginning in 2014, when an individual who is sentenced to probation is transferred to the custody of the Department of Children and Families pursuant to the ICC-SVP Act, his or her period of supervision is tolled, or held, until he or she is no longer in the custody of the department and are in the community.

AR-00001337

# AGENCY RESPONSE

## FDLE

| | | |
|---|---|---|
| Florida Department of Law Enforcement | **Office of Executive Director** Post Office Box 1489 Tallahassee, Florida 32302-1489 (850) 410-7001 www.fdle.state.fl.us | Rick Scott, *Governor* Pam Bondi, *Attorney General* Jimmy Patronis, *Chief Financial Officer* Adam Putnam, *Commissioner of Agriculture* |
| Richard L. Swearingen *Commissioner* | | |

December 27, 2018

Mr. R. Philip Twogood
Coordinator
Office of Program Policy Analysis and Government Accountability
111 West Madison Street, Room 312
Tallahassee, FL 32399-1475

Dear Mr. Twogood:

Thank you for the opportunity to review, comment and suggest clarifications to your preliminary report *Sex Offender Registration and Monitoring Triennial Review -2018*. Please see enclosed notes and clarifications regarding this draft report.

Florida's sexual offender/predator registry is a valuable public safety tool. We look forward to continuing the strong local, state and federal partnerships that help ensure this information is timely, accurate and comprehensive for Florida's citizens and criminal justice professionals. Thank you for the time and attention your staff provided in the development of this report.

Sincerely,

Richard L. Swearingen
Commissioner

RLS/mc

Enclosure

*Service • Integrity • Respect • Quality*

33

AR-00001338

**Notes for Consideration**

1. *Page 3, end of first full paragraph - "All sex offenders that are required to register have been convicted of certain qualifying felonies set forth in Florida statutes."*

   **Note:** There are some out of state offenders who were convicted of misdemeanors as classified by that state which do NOT equate to a Florida felony offense. These individuals are required to register in Florida solely on the basis of their requirement to register in another state or jurisdiction.

2. *Page 10, last paragraph -*

   **Clarification:** Florida sheriff's offices utilize a variety of different supporting and data management systems and protocols to assist them in effectively performing their responsibilities including those relating to registered sexual offenders and predators. Many particularly relate to and integrate with their tracking and monitoring of a broader category of criminal activity and community monitoring within their jurisdictions. These additional tools sometimes include "off the shelf" software, contracted or outsourced mailing services, criminal records management software, mapping applications and various other supports and investigative systems. All are internally developed or sourced from a variety of commercial providers.

   However, none of these systems support or fulfill Florida statutory requirements regarding registering and reporting registration information to the state registry. This is only possible and completed exclusively via the state Sexual Offender Predator System (SOPS) that incorporates immediate integration of registration information and updates from every Florida sheriff's office, the Florida Department of Corrections, the Florida Department of Juvenile Justice and the Florida Department of Highway Safety and Motor Vehicles. SOPS in turn immediately updates the registry public website, notifies all local criminal justice partners, updates the Florida Criminal Justice Network Intranet, updates state and national registration systems utilized by both criminal justice professionals and citizens, triggers international notifications required by federal law and relays updates and messages to all state and local partners regarding registrant activity.

3. *Page 25, second paragraph, third sentence - "Prior to 2014, transient sexual predators were only required to register every three months and sex offenders every six months."*

   **Note:** Some sexual *offenders* were/are required to register every three months. This is based upon the specific offense(s) qualifying the individual for registration which are specified within Section 943.0435(14)(b), FS. and is in accordance with the minimum requirements of the federal Walsh Act.

4. *Page 27, regarding local variations in emergency shelter access for sex offender -*

   **Note:** Additional considerations impacting the issue of registrants and emergency shelters which have been reported to the registry include dependent family members: minors, elderly parents, disabled and infirm family, or registrants, who require full time caregivers, etc. Challenges have been reported in the provision of emergency shelter and accommodation of these circumstances. For instance, if registrants are all to report to a specific shelter do their dependent, minor or infirm family members also seek shelter in this location housing multiple sex offenders? Do the dependent family members seek shelter in other locations, without the registrant and, if so, who is then responsible for their care, safety and supervision?

AR-00001339

This page is intentionally left blank

AR-00001340



OPPAGA provides performance and accountability information about Florida government in several ways.

- Reports deliver program evaluation and policy analysis to assist the Legislature in overseeing government operations, developing policy choices, and making Florida government more efficient and effective.

- Government Program Summaries (GPS), an online encyclopedia, www.oppaga.state.fl.us/government, provides descriptive, evaluative, and performance information on more than 200 Florida state government programs.

- PolicyNotes, an electronic newsletter, delivers brief announcements of research reports, conferences, and other resources of interest for Florida's policy research and program evaluation community.

- Visit OPPAGA's website at www.oppaga.state.fl.us.

---

OPPAGA supports the Florida Legislature by providing data, evaluative research, and objective analyses that assist legislative budget and policy deliberations.  This project was conducted in accordance with applicable evaluation standards.  Copies of this report in print or alternate accessible format may be obtained by telephone (850/488-0021), by FAX (850/487-3804), in person, or by mail (OPPAGA Report Production, Claude Pepper Building, Room 312, 111 W. Madison St., Tallahassee, FL  32399-1475).

**OPPAGA website:**  www.oppaga.state.fl.us
Project supervised by Claire K. Mazur (850/717-0575)
Project conducted by Michelle Ciabotti, Marina Byrd, and James Clark
R. Philip Twogood, Coordinator

AR-00001341

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document ( DOJ-OAG-2020-0003-0001 ) (/document/DOJ-OAG-2020-0003-0001)  /   Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 23, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

The proposal by the AG creates conditions that could impose federal regulations on states that have their own ideas about how to best create and maintain SO Registries. This proposed rule change needs to be removed because it is an attack on States' Rights. The rule change pushes States into a corner and coerces them to give up their own schemes in lieu of SORNA's one-size-fits-all scheme because they fear losing JAG funding.

**Comment ID**

DOJ-OAG-2020-0003-0363

**Tracking Number**

1k4-9j3w-2y34

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 22, 2020

AR-00001342



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document ( DOJ-OAG-2020-0003-0001 ) (/document/DOJ-OAG-2020-0003-0001)  /  Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 23, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

The proposal by the AG creates conditions that could impose federal regulations on states that have their own ideas about how to best create and maintain SO Registries. This proposed rule change needs to be removed because it is an attack on States' Rights. The rule change pushes States into a corner and coerces them to give up their own schemes in lieu of SORNA's one-size-fits-all scheme because they fear losing JAG funding.
Eric Griffin-Shelley, Ph.D.

**Comment ID**

DOJ-OAG-2020-0003-0364

**Tracking Number**

1k4-9j3w-6yvr

**Comment Details**

**Submitter Info**

**Received Date**

Sep 22, 2020



*Your Voice in Federal Decision Making*

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001345

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document ( DOJ-OAG-2020-0003-0001 ) (/document/DOJ-OAG-2020-0003-0001)  /  Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 23, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▼

Comment

"The proposal by the AG creates conditions that could impose federal regulations on states that have their own ideas about how to best create and maintain SO Registries. This proposed rule change needs to be removed because it is an attack on States' Rights. The rule change pushes States into a corner and coerces them to give up their own schemes in lieu of SORNA's one-size-fits-all scheme because they fear losing JAG funding."

**Comment ID**
DOJ-OAG-2020-0003-0365

**Tracking Number**
1k4-9j3w-a6vt

**Comment Details**                                    **Submitter Info**

**Received Date**
Sep 22, 2020



About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001347

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 23, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

Comment

Please reconsider this. So many comments have spelled out how ineffective this is, how pubishing this is; how the ripple effect takes the lives of their families and throws it into the choas and pain of this registry. Why won't law makers listen? Why won't they use the information at their disposal and use their heads? Please stop with this ignorance! This takes the states and forces them into a one size fits all for something that has proven to be ineffective. Why is this even being suggested when there are smarter ways out there to do this!?!. I am so tired of fighting with ignorance and neglect of these politicians and the media....please do not pass this!

**Comment ID**

DOJ-OAG-2020-0003-0366

◎ **Tracking Number**

kfe-gx6y-qvhk

| **Comment Details** | **Submitter Info** |
|---|---|

**Received Date**

Sep 22, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 23, 2020

| View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

Comment

As the wife of a Registered Offender from a consensual act in 2001, I am writing today to oppose these proposed changes to SORNA. I'd like to first start by pointing out the lack of due process by applying these changes retroactively. I don't see that there is even a proposed risk assessment to identify the hundreds of thousands of citizens this will affect. The retro activity proposed here is punitive and unconstitutional.

I am interested in knowing why a registry should exist for anyone with any crime. Or why is there only one crime with a registry for further punishment? Why don't we return to the way crimes were handled prior to the list? A time when judges and court systems decided what punishment fit, what restrictions were needed to protect the public and for what duration. A time when the sentencing was handled by actually hearing the stories with all facts and data received during individual trials and tailored the punishment to the individual. There will always be sexual offenders, sadly, that will not change. Those who are convicted will serve their sentences and again become part of society. An almost minuscule percentage of those will re-offend, the vast majority will not. And our modern-day attempts at monitoring and tracking and restricting and controlling every aspect of their lives will have little to nothing to do with whether they re-offend or whether they don't.

The sex offender registry is still going strong, the numbers grow by the day, but it hasn't worked as a preventative tool. Instead, it's caught up thousands of people in a tightly woven net of legal sanctions and social stigma. Legal sanctions that are so ever-changing and so vague that it's literally impossible to begin to understand the legal obligations and requirements of a Registered Offender. Registered offenders are constrained by where, with whom, and how they can live - then further constrained by harassment or shunning neighbors and prejudice from employers. Some of the people on the Sex Offender Registry have had their lives ruined for a relatively minor or harmless offense; for example, a statutory rape case in which the victim is a high school grade younger than the offender. Other are people like Brock Turner - people who have committed serious crimes that are nonetheless very different from the ones the registry was supposed to prevent, and which the registry might, in fact, make harder to fight. This happens often in the criminal justice system: something designed for one purpose ends up getting up getting used for something else.

Regardless of what kind of sex offense is committed, though, all perpetrators end up on the same list. Some of the activists who inspired the registry laws to begin with, like Nancy Wetterling, have since turned against them.

AR-00001350

Those advocates say they never intended for the registry to expand so far beyond child molesters and that they certainly didn't intend for so many people to be registered for having consensual sex as teenagers.

We know more about sex crimes now than policymakers did in 1996. The "stranger danger," child-focused predator isn't as common as people think. Sexual abuse at the hands of intimate partners and family members is far more common. Sex offender registries don't prevent crimes. They simply continually punish the citizens who have already paid the price for their crime. It's too harsh of a punishment to impose and apply punishment outside of incarceration and parole.

We need to focus on reintegrating Offenders into society. By accepting them as individual and allowing them access to housing and employment and allowing them to partake in their childrens lives. We need to focus on allowing the path off the registry to allow people to leave their past in the past.

I do not believe that there should be a Sex Offender Registry at the National level, not at the State, but even if one is removed from the state registry, they're still punished by federal restrictions even if there was no federal crime. I also believe that the general public should not have any access to a registry of this kind, regardless of the crime. The police will not stand up and defend a Registrant who has fallen victim to abuse from public knowledge of their skeletons.

I appreciate the opportunity to share my thoughts on the matter. I must apologize for not referencing specific parts of this proposed rule, but it's terribly difficult to follow and I don't understand the full impact of what's propsed. All I know is this in absolutely unconstitutional to punish people retroactively.

I am choosing to remain anonymous because enough of my families life is on public display for scrutiny from the public.

---

**Comment ID**

DOJ-OAG-2020-0003-0367

---

 **Tracking Number**

kfe-l8av-rml8

---

**Comment Details**              **Submitter Info**

**Received Date**

Sep 22, 2020



About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document ( DOJ-OAG-2020-0003-0001 ) (/document/DOJ-OAG-2020-0003-0001)   /   Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 23, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I am opposed to this bill, as I am generally opposed to all Sex Offender laws. I have spent the last ten years researching and evaluating the impact these laws have had on American society and I am convinced that these laws hurt more than they support society in general. The laws are rooted in superstition, ignorance and emotional reactionary suppositions mired in fear. I would rather support legislation that is created not by those whose understandIng of this problem rooted in non- empirical information, by is grounded in scientific research which provides accurate information concerning sex offending behavior. This is a public health problem that can never be successfully addressed by failed laws. Havent we learned anything on the failed war on; poverty; drugs; etc. laws alone will never correct human behavior. All laws do is create compliance; never change.

**Comment ID**
DOJ-OAG-2020-0003-0368

◎ **Tracking Number**
1k4-9j44-acf9

**Comment Details**                              Submitter Info

**Received Date**
Sep 23, 2020

AR-00001353



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001354

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 23, 2020

| View More Comments (724) (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments (724) (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

| Comment |

The truth would not be heard
By LC . . .

At 19 I met a girl who told we she was 18. We went out to the club on 18+ night… We went on a couple dates…
We had sex one time. I found out she was underage and broke things off. She claimed she was pregnant. I told
her we needed to talk to her mom and explain what happened. She told me she had an abortion. I left her alone
because I assumed she was just playing games. I met my now ex wife and joined the Army only to find about a
year later I was under investigation. Eventually a warrant was issued and I was transported from TX back to IL in
chains like a dog. I had ZERO criminal history. At my first court appearance I found out how old she actually was
(13) and for the first time here allegations of rape. I was shocked.

Upon speaking to my lawyer I learned the rape allegations were recanted but she insisted that I knew how old
she was. I wasn't worried at the time because I assumed the fact that she and the fact that a family member of
hers was saying she lied and in fact was the one who told me she was lying 1st this would get dismissed… Not
so. My lawyer told me that likely was not the case. If this child was mine all they needed was this child and our
birth certificates to convict and I was looking at 6-30 years in prison… But he said he believed me and he would
do everything he could. At some point I received a letter from her stating that she was sorry for lying etc. I really
thought at that point if we have to go to trial this will help. My paid lawyer, the one who believed me and was
willing to fight left the firm. My case was handed to another partner who I didn't know at the time was also the
head public defender. Immediately he started pressuring me to plead guilty to this crime. I didn't want to. They
did a blood typing test and said this child was mine… Mind you no DNA test was ever done. For 5 years I still
refused to to plead to this case. I felt I was innocent and should not be held responsible for someone lying to me.
I went to court one day expecting another continuance but instead my lawyer pulls me in a room and tells me I
can either plead guilty now or go to trial and if I go to trial the judge has told him if I am convicted he will ask for
more than the minimum sentence. I was already looking at a minimum of six years… I was told I wouldn't be
listed as a child sex offender and that i would have to admit to paternity serve 30 months of probation and
register for 10 years.

I agreed but asked if I could have time for my family to come was told yes, but that didn't happen. When the
judge called me up and asked if I had be forced to take this deal I wanted to say yes so bad. I wanted to tell him
that the only reason I am pleading to this is because my lawyer has told me that you will ask for more than the

minimum sentence in this case and I don't know how you can say that without hearing all the facts. But I didn't because I was scared and alone and being scowled at by everyone in the court room. A few days after I went to my lawyer and told him i wanted to retract my plea of guilty. He wouldn't let me. Fast forward, while attending mandatory sex offender consoling I was informed that laws had changed and my 10 year registration is now a 10 year registration and was now listed as a violent sexual predator… No violence at all but Im listed as a violent predator…

I'm a chef and I'm good at what I do. I just applied to a job had to cook as part of the interview was told out of hundreds of applicants my dish was the best. I was offered the position. When completing the background check I asked is there anything that will disqualify me. I was told as long as the offense was more than 5 years old I should be good…. Well today I was told I am disqualified solely because my name is on the sex offender registry. Something I should have been off of years ago. This isn't the 1st time the second time or even the 10th time. I cant even take care of my family because of being on a registry I shouldn't have ever been on for something that happened when I was 19 years old. I am 43 almost 44 now. I am still being punished. I have also been denied housing. I told one landlord my entire story. She said she believed me but could not rent to me because of no crime addendum's. Which isn't true those laws are to give landlords the ability to evict people if they commit felonies while living in their property but they uses them as a excuse not to rent to felons. Especially those on the SOR.

I am tired. I am at my whits end. I cannot deal with this for the rest of my life.



Attachments  5

The truth would not be heard

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0369/attachment_1.pdf)

I am not my crime

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0369/attachment_2.pdf)

Statutory Rape Not Always Rape

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0369/attachment_3.pdf)

This Is bullying. Plain and simple.

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0369/attachment_4.pdf)

WILL SOMEBODY HELP WILL ANYONE LISTEN DOES ANYONE CARE

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0369/attachment_5.pdf)

**Comment ID**

DOJ-OAG-2020-0003-0369

 **Tracking Number**

kff-de4a-ci4w

**Comment Details**                           **Submitter Info**

**Received Date**

Sep 23, 2020



About       Bulk Data Download       Agencies       Learn

(/about)         (/bulkdownload)      (/agencies)   (/learn)

Reports       FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

9/23/2020                                    The truth would not be heard – Tales From the Registry

# TALES FROM THE REGISTRY



## The truth would not be heard

By LC . . .

At 19 I met a girl who told me she was 18. We went out to the club on 18+ night… We went on a couple dates…We had sex one time. I found out she was underage and broke things off. She claimed she was pregnant. I told her we needed to talk to her mom and explain what happened. She told me she had an abortion. I left her alone because I assumed she was just playing games. I met my now ex wife and joined the Army only to find about a year later I was under investigation. Eventually a warrant was issued and I was transported from TX back to IL in chains like a dog. I had ZERO criminal history. At my first court appearance I found out how old she actually was (13) and for the first time here allegations of rape. I was shocked.

Upon speaking to my lawyer I learned the rape allegations were recanted but he insisted that I knew how old she was. I wasn't worried at the time because I assumed the fact that she and the fact that a family member of hers was saying she lied and in fact was the one who told me she was lying 1st this would get dismissed… Not so. My lawyer told me that likely was not the case. If this child was mine all they needed was this child and our birth certificates to convict and I was looking at 6-30 years in prison… But he said he believed me and he would do everything he could. At some point I received a letter from her stating that she was sorry for lying etc. I really thought at that point if we have to go to trial this will help. My paid lawyer, the one who believed me and was willing to fight left the firm. My case was handed to another partner who I didn't know at the time was also the head public defender. Immediately he started pressuring me to plead guilty to this crime. I didn't want to. They did a blood typing test and said this child was mine… Mind you no DNA test was ever done. For 5 years I still refused to to plead to this case. I felt I was innocent and should not be held responsible for someone lying to me. I went to court one day expecting another continuance but instead my lawyer pulls me in a room and tells me I can either plead guilty now or go to trial and if I go to trial the judge has told him if I am convicted he will ask for more than the minimum sentence. I was already looking at a minimum of six years… I was told I wouldn't be listed as a child sex offender and that i would have to admit to paternity serve 30 months of probation and register for 10 years.

I agreed but asked if I could have time for my family to come was told yes, but that didn't happen. When the judge called me up and asked if I had be forced to take this deal I wanted to say yes so bad. I wanted to tell him that the only reason I am pleading to this is because my lawyer has told me that you will ask for more than the minimum sentence in this case and I don't know how you can say that without hearing all the facts. But I didn't because I was scared and alone and being scowled at by everyone in the court room. A few days after I went to my lawyer and told him i wanted to retract my plea of guilty. He wouldn't let me. Fast forward, while attending mandatory sex offender consoling I was informed that laws had changed and my 10 year registration is now a 10 year registration and was now listed as a violent sexual predator… No violence at all but Im listed as a violent predator…

I'm a chef and I'm good at what I do. I just applied to a job had to cook as part of the interview was told out of hundreds of applicants my dish was the best. I was offered the position. When completing the background check I asked is there anything that will disqualify me. I was told as long as the offense was more than 5 years old I should be good…. Well today I was told I am disqualified solely because my name is on the sex offender registry. Something I should have been off of years ago. This isn't the 1st time the second time or even the 10th time. I cant even take care of my family because of being on a registry I shouldn't have ever been on for something that happened when I was 19 years old. I am 43 almost 44 now. I am still being punished. I have also been denied housing. I told one landlord my entire story. She said she believed me but could not rent to me because of no crime addendum's. Which isn't true those laws are to give landlords the ability to evict people if they commit felonies while living in their property but they uses them as a excuse not to rent to felons. Especially those on the SOR.

I am tired. I am at my whits end. I cannot deal with this for the rest of my life.

Share this:

🐦  📘

Related

WILL SOMEBODY HELP, WILL ANYONE LISTEN, DOES ANYONE CARE????

This Is bullying. Plain and simple.
October 29, 2013

Statutory Rape Not Always Rape
December 8, 2012

AR-00001358

9/23/2020                              The truth would not be heard – Tales From the Registry

November 3, 2012                    In "Tales from the Registry"           In "Tales from the Registry"
In "Tales from the Registry"

This entry was posted in Tales from the Registry on September 22, 2020 [https://tftr.narsol.org/2020/09/22/the-truth-would-not-be-heard/] by .

*September 22, 2020 at 8:26 pm*
**VICTOR PALMA**
LC, your story is a sadly familiar one to those of us on the registry. I'm very sorry to hear of your pain and frustration. We are not allowed to live a normal life even after we've paid our debt to society, or even worse if the debt shouldn't have had to be paid in the first place. The registry is a farce. I do hope that organizations like NARSOL will eventually be successful at ending this madness. Hang in there man! I do know that it does matter where you live in terms of your quality of life while your name is on the registry. My experience has all been in Maryland and this state appears to be reasonable although even within the same state, things can differ from county to county. For instance, in Maryland, I have the right to vote even though I'm still on supervised release. Other states, as I'm sure you've heard, are horrible places to live for someone on the registry. I plan on relocating to Texas in the next couple of years and I do hope I don't regret that decision when the time comes. San Antonio is my home town, so I am very motivated to make a go of it. I wish you all the best. Victor

*September 22, 2020 at 8:14 pm*
**JOSHUA NOVAK**
I believe, you need to seek legal assistance, and challenge your Registration under the State and Federal Expost Facto Clause…. In Pennsylvania, the Supreme Court found in the case of Commonwealth vs Muniz 164 A.3d 1189 PA 2017, that a change in Muniz's 10 year registration requirement to (Life) Violated the State and Federal Ex Post Facto Clause as the new law as applied Retroactively was unconstitutional…. Several states have also held this as illegal…. Also, Muniz, was appealed to the United States Supreme Court and the request by the state was denied thus affirming it was illegal…. If you were given 10 year registration, neither the State Legislator or Congress may amend your penalty…. You clearly have a case, that can be won…. But you need to fight it bud… What you waiting for???? Your freedom is out there waiting for you to come get it…

*September 22, 2020 at 5:24 pm*
**GENE KLIEWER**
Hey man I feel a little of your pain .I have a simular experience . I was falsely charged in Canada that I molested a 3 year grandaughter of a wife I married from the internet .I live in Wa. And move from in 08 . its such a long story but same thing with my lawyer who was a coward when he faced the prosecutor in the court room . he told me the same thing take a plea or do years in prison .I was so scared of the prospect that I took a plea . that got me 8 months now when I came back to Wa the rogue Sherrod made me a level 3 from a 1 in Canada that was in 2013 I'm still on the registry so when I find a lady friend my fear is she will see me on the S O list and drop me which has happened 2 times .I'm so lonely being by myself I'm 77 and I don't want to die alone . I feel your desperation . I'm a believer so I know where I'm going when I die but I'd love to have a friend except me .

*September 22, 2020 at 4:49 pm*
**DONNA**
My grandson had something very similar happen to him. He was also 19. She was 14 but said she was 16. His life is ruined now. He can't find a decent job, or housing. He is registered for at least 20 years. He is only 21. He has all these hoops he has to jump through like SO counseling, individual counseling and drug classes. He has to drop urine whenever they say. He has never done drugs. The "system" isn't there to help, only to punish!

*September 22, 2020 at 4:18 pm*
**BRIAN**
I know it's exactly zero consolation, but I'm happy you shared this. We're all in this together.

*September 22, 2020 at 4:16 pm*
**JERRY P**
LC, Your story is familiar here… Hang in there…. Not sure what state you're in, but "look for the helpers" as Mr. Rogers would say. I won't go into my long story, but you are not alone. I haven't been able to find work in

AR-00001359

years–and I petitioned the court to come off the registry and won! My conviction still follows me... And haunts me... But with a few good TRUE friends and "helpers" I am blessed...

Very Respectfully,

Jerry


*September 22, 2020 at 4:03 pm*
**TAMMIE LAWSON**

This is another example of the after effects if The so called wonderful registry!!! I have been living this nightmare right along with you my friend. I don't know why I can't live a normal life and be treated fairly like everyone else the ONLY reason is the label we carry.

AR-00001360

# TALES FROM THE REGISTRY



## I am not my crime
By The Outspoken Offender…

Introduction

First and foremost, I'm not my crime. I believe this is one of the most powerful and important statements that people should hear. And not just for me, but for the countless others that have been convicted of a crime, including people living on the registry. This isn't a statement that condones what I've done in the past or that I condone what others have done. Rather, it's statement that says, "I'm still productive. I'm can still be an active, positive member of society if I choose to do so."

Living on the Registry

Before my arrest in 2006, I was very active in TV news, radio broadcasting and film production. Since I was in the industry, my case was blasted all over the local and national news. It was a horrible experience to say the least, not only for myself, but for my family as well. After spending 41 months inside a federal prison, (2007-2012) and five years on federal supervision, my life continues as a registered sex offender. I actually don't like that description so I prefer to say, "registered citizen." But you get the point.

Jobs and Housing

I'll keep this topic brief as I talk more about it here. Besides the social stigma of being on the sex offender registry, the constant denial of jobs and housing is one of the worst things to endure. This is true for anyone with a felony record and especially for people living on the registry. You only have to read reports like this one to grasp the crisis. Luckily, I've never been homeless but I've been close. Thanks to my families support, my never ending and fierce ambition to survive, and my diverse job resume, I've been able to keep off the streets. I know that I'm one of the lucky ones. Hopefully my luck will continue.

The Labeling Theory/Ostracism

"Labeling theory states that individuals who are given a label eventually subscribe to that label; in other words,it becomes a self-fulfilling prophecy. In the case of sex offenders, this can only mean more damage to society." – Carla Schultz, San Jose State University

I agree Ms. Schultz's statement. Again, without going into all the details here, the registry has caused more damage than good. It is a false sense of security and a moral panic.

In 2017, I completed my fifth film entitled, NOT FOR RENT!, a documentary that discusses discriminatory housing issues among ex-felons and sex offenders. The film also covers Utah's Good Landlord Program and the negative effects it's had on fair housing among former offenders. Among the numerous interviews in the film, I spoke with Kipling D. Williams, a Distinguished Professor of Psychology at Purdue University. He states:

"Being excluded is painful because it threatens fundamental human needs, such as belonging and self-esteem."

AR-00001361

9/23/2020                                    I am not my crime – Tales From the Registry

If we want a safer society, why ostracize people living on the registry by banning them from most housing rentals and employment? Wouldn't this cause more instability and a better chance of re-offending? Though many experts believe this is the case, laws are still being enacted today that does the exact opposite of what we should be doing.

Advice for Others

Why am I putting myself out there, you ask? Because I want to help others and educate the public. These are my main goals. People living on the registry (and children!) are not the monsters you think they are. They are not a threat to anyone including your child(ren). But the stigma of the sex offender registry has already been applied. It labels people as dangerous, threatening, or worse, a violent sexual predator. I've imagined what would happen if I announced to people while grocery shopping that I was a registered sex offender. Of course I would get some weird looks. How many moms and dads would hold on to their kids tightly or actually leave the store? When did a sex offender automatically become a threat to all children?

Relationships

My other focus of this blog is relationships. After my divorce in 2017, I've come to realize how little friends I actually have. Why is that? Does it have anything to do with my offense? I believe some of it does. I'll never forget when I was still incarcerated I wrote a letter to a long-time friend of mine. She actually replied back and I was so happy to hear from her. She gave me a quick update on her family. She also mentioned that she didn't hate me. That was a huge relief because her friendship meant a lot to me. I then sent her a Christmas card a couple of months later. Unfortunately, I received my own card back in the mail with "Return to Sender" written on the front. I was devastated. To this day, I have never heard from her.

Conclusion

I do appreciate you stopping by and reading my blog, and watching my vlogs on YouTube. It does mean a lot to me and hopefully I can be of some inspiration and support to you and your family. I always welcome your messages and stories. Hopefully we can form a team effort to educate and bring powerful stories to light. If you have a story to tell, contact me. Your story will always remain private.

I'll leave you with one of my favorite quotes:

"To laugh often and much; To win the respect of intelligent people and the affection of children; To earn the appreciation of honest critics and endure the betrayal of false friends; To appreciate beauty, to find the best in others; To leave the world a bit better, whether by a healthy child, a garden patch, or a redeemed social condition; To know even one life has breathed easier because you have lived. This is to have succeeded." – Ralph Waldo Emerson

**Share this:**

---

**Related**

The Implications of Allowing an Unconstitutional Registry
April 9, 2016
In "Tales from the Registry"

Registries Used to Attack Offenders
December 1, 2012
In "Tales from the Registry"

Some good news for a change
February 18, 2013
In "Tales from the Registry"

This entry was posted in Personal Tales, Tales from the Registry on February 28, 2020 [https://tftr.narsol.org/2020/02/28/i-am-not-my-crime/] by .

*July 6, 2020 at 12:50 pm*
**HELEN**
Hello – my name is Helen and I have story for you. Our family only recently began dealing with the legalities of the criminal justice system and understanding what sex offender registries actually mean.

I'd like to share the specifics of our son's story with you but due to the legal and sensitive nature of his case it would make me more comfortable to do so privately versus on this public comment blog.

Part of the reason I am reaching out at all is because your statement regarding your "never ending fierce ambition to survive". This is touching because that survival instinct did not resonate with my son and so we no longer have him on earthly planes any more.

I look forward to sharing our story with you soon privately.

*July 6, 2020 at 6:58 pm*
**MATT**
Yes, Helen, I'd love to listen and share.

AR-00001362

I am not my crime – Tales From the Registry

*March 27, 2020 at 4:28 am*

**W**

Spread the word, there is help and there is hope. For anyone dealing with this in the best way they can and especially those who are on their own just try to stick with it. You'll get to where you need to be, though it may not happen as soon as you want it to. If you've suffered greatly we ALL have as well. For many of us on here we're trying to help family but eventually we're doing this for anyone who thinks they're done or that there's no hope.

There IS ALWAYS hope, cruel though it may seem. Pick yourself up and join the effort.

*March 2, 2020 at 7:04 pm*

**MATTHEW WRENSCH**

Enjoyed reading all this. Been there/done that. My main problem was housing. It still may be a problem in the future.

*February 29, 2020 at 9:54 pm*

**CRASH**

The Outspoken Offender

Impressive post. A lot of good points were made. I was thinking the same sort of thing, about the ostracization of SOs leading to more crimes. Not just the ostracization of SOs leading to more crimes but the ostracization of other criminals as well. Though it is not guaranteed that every person who is fully integrated into society would abide by the law. Some are very well predisposed to committing crimes again.

What I was thinking was that there is this continual "loop" or "cycle" when it comes to the American justice system and the American system as a whole. A lot of people who went through the justice system and desire change, redemption, and retribution are denied the very things that would keep them out of trouble. Things that would have kept some of them out of trouble in the 1st place. The things that sustain "law abiding" citizens everday and holds their freedom intact, and keeps the small number of them who would be predisposed to committing crimes, in line with the law. Things such as a job, a career, money, a vehicle, a house, and an apartment.

There are so many people who commit crimes simply because they had nothing better to do. Some of them, didn't have a job/career to keep them busy or occupied so they decided to take or steal things from others or deal drugs to pay for the house or apartment with bills that are really expensive. Some of them also deal drugs to buy things for their children which are the minors that most of society has a deep "concern" for.

Some of them, didn't have a home to feel positive energy and get some good rest, so they got depressed out on the streets and started drinking, doing drugs, or both. Being kept busy or occupied keeps a lot of people out of trouble. SOs are bound to get arrested simply for not registering, as they live under a bridge somewhere with no means of transportation to a precinct.

A number of drug addicts would get caught up in the continual loop of getting caught with drugs and/or drug paraphernalia, going through the system in jail and/or some drug/alcohol treatment center, then getting caught with drugs and/or drug paraphernalia again and repeating the cycle. Some addicts take things futher and get involved with gangs and drug dealers.

It doesn't help that society passes judgement and negative labels, as that would only bring things into existence. Like from that quote you posted, certain people would only read or listen to the labels, let them sink in and decide that they truly are what they have been labeled as and that they have nothing good to offer society. Not just the judgement and labeling of SOs and other criminals but the judgement and labeling of others in general. There's this sort of "foreshadowing" as to what would become of a person, should the person allow it.

A good example is how a teen whose constantly told terrible things about himself or overhears those things from students and/or teachers decides one day to take it out on everyone. Things like "loser," "you're a nobody," etc. To him, the people aren't worth anything either. He ends up degrading others just as much as he was degraded. He isn't worth anything so neither are they.

*February 29, 2020 at 3:18 pm*

**THE OUTSPOKEN OFFENDER**

Hello Brandi,

I'm sorry that is has been difficult for you lately. When you say your education means nothing, I would have to disagree with you. It is helpful! I think it's at least helpful for yourself, your self-esteem and for future employment. Or, you could even start your own business using your paralegal degree.

You are NOT your past. I still have a hard time moving through life with a sex offense but I've come to realize that I can't make everyone like me or accept me. I just got to do what I think is right and try to be as healthy

AR-00001363

that I can't make everyone like me or accept me. I just got to do what I think is right and try to be as healthy physically and emotionally as possible. Good luck to you and keep going!

*February 28, 2020 at 10:07 pm*
**BRANDI**
I have been feeling pretty upset lately because of the harsh judgement on my past. My case is one where the victim was not a victim but just under the age of consent. Nonetheless, the deed was done and I was in the wrong. But to not even be allowed to tell this for a consideration for a position in an area of employment that I am over qualified for still does nothing. Currently I have a 3.8 GPA ina paralegal certificate program but that means nothing because of the registry and my conviction. I want to do this as well. Reach out to others and credit those who do so. Thank you for posting this, it helps to not feel so alone in a world surrounded by millions of people. Like you stated I am NOT my past.

*April 18, 2020 at 5:03 am*
**MICHAEL FLETCHER**
Hello Brandi, I hope you are doing well. My name is Michael and I'm in So Cal, and if you are willing, I will hire you, ASAP to help me organize and put together a Civil Complaint of a 3 year campaign of provocation, vandalism, and harassment carried by the family on a 10 acre lot next to my 10 acre lot. I will also need to like to hire Mr. "The Outspoken Offender" for his video and Documentary skills and talents. I hope I will be able speak with both on the phone at some point, because it's a very long and convoluted situation by a large number of people and a dozen lawyers, cross-coupled with legends of churches. As every registrant is all too aware that label puts a large bright target on you. Add a bunch of money and a valuable piece of property, then the heat seeking missiles get launched...

*September 21, 2020 at 3:38 pm*
**LC**
To the out spoken offender and who ever else wants to listen. I have a story that stretches now almost 24 years my story just got another chapter today. I was turned down for a job that I was the most qualified for out of hundreds of applicants just because Im on the registry for a crime I didn't knowingly commit almost 24 years ago.
If anyone wants to know my story if anyone can help I would greatly appreciate it... Im a chef... not a threat to anyone especially in a kitchen smh.....

AR-00001364

# TALES FROM THE REGISTRY

## Statutory Rape Not Always Rape
originally posted 8/25/2010

Statutory rape is not always rape.  In fact, many times this is not the case. Coercion or intimidation are most certainly not always present in a case where a victim is under the age of consent.   Many times this is the case … just as many times it is not.   My girlfriend is 15 and I am 19.   Her father didn't approve of our relationship and found out we had sex and reported me.  (At the time, I was 18 and she was 14 – we are exactly four years, three days apart.   It happened about two months before our respective birthdays).   She took my virginity!  I don't go around and solicit young minors for sex; I just met her, fell in love with her, and it happened.   I would never make her feel bad, or convince her to do something that she doesn't want to.   We chose to do it together.

I'm in love with her!!!!  And now I've lost the love of my life…the girl of my dreams, and I'm being thrown into the same pot as child molesters and rapists. How is that right?  Statutory rape laws should exist to protect young girls from older men, but in these times it's becoming a god damn witch hunt fueled by the idea that every case is the same…it's not.   There are predatory relationships that should be prosecuted … just as there are loving relationships that should not be.   There should be defenses available to honest and good people who are in circumstances like mine.

Mandatory sentencing is also a problem.   I live in a state where my 'crime' carries a mandatory sentence of nine months' imprisonment.   The judge can't even remove that!   It takes the case out of the hands of the judge and does not allow judicial discretion so that all of the facts are taken into consideration. Young people fall in love.   These laws are being twisted into a hammer and used to beat down on young 'offenders' by moral conservatives and angry, vengeful parents.  The law enables them, and it's sickening.  Society needs to wake up, realize whats happening here, and do something about it.   If I go to prison (and probably even if I don't),  I plan on writing many letters to people in positions of authority.  I hope someone listens.

**Share this:**

**Related**

Suffered Abuse, Then Abused, Now Abused Again by Laws
November 24, 2012
In "Tales from the Registry"

Another Plea Bargain Gone Badly Wrong!
November 30, 2012
In "Tales from the Registry"

Until It Happens to You
November 18, 2012
In "Tales from the Registry"

This entry was posted in Tales from the Registry on December 8, 2012 [https://tftr.narsol.org/2012/12/08/statutory-rape-not-always-rape/] by .

AR-00001365

# TALES FROM THE REGISTRY

## This Is bullying. Plain and simple.

Hello, my name is Kevin Soucy and I have been labeled a level 2 offender in the state of Rhode Island.

Back in 1999 I was in my early 20's, lonely, socially awkward, and still recovering from the nightmare of going through public school with an undiagnosed mental illness. I got a job working on computers and websites for a woman who had a young granddaughter whom I began having romantic feelings for. One day we were alone and playing on the bed when I reached up and pulled her pants down. She freaked out, and awareness of what I was doing hit me like a bucket of ice water. I couldn't eat for the rest of the day and later than evening I confessed to the grandmother via email.

The police got involved and I was sentenced to 15 years suspended with 4 months to serve in prison. When I got out I was required to attend group therapy, which never seemed to work at all. Finding jobs in the computer field became impossible and I ended up spending my 20's and early 30's delivering pizza. I hated my life and hated society for all the abuse I endured.

As the years went by, the hate turned into a rage, which I released by looking at pornography. Trace files were found on my computer and I was arrested again. I spent 2 years in a maximum security facility while the case was tossed around in court. While I was in there, I actually found a form of therapy that worked: Native American Shamanism. I learned how to meditate, and release my thoughts in a non-destructive When I was released the second time I felt much better. And then the problems started all over again. I went to a new therapist who tried to force me to give up all forms of fantasy and sci-fi. I got a job with an old friend delivering pizza again, but due to new rules I was required to register my job with the local police. They showed up at the pizza place and told my boss that if he hired me, they would put flyers on every house in a 20 block radieous. So there went my job.

I met the girl of my dreams not long after and asked her to marry me. She changed my whole life, and I in turn changed hers. I was there for her as she decided to give up drugs and alcohol, and brought her to a methodone clinic every morning for nearly a year. She lost weight to scary levels and we found out that she had been allergic to the methodone itself. She went through a painful detox at home and I was there to make sure she took her new medication on time. We went to the hospital numerous times, and stuck with her, reading books to her on her bedside. She's doing much better now, but things are still pretty rough due to lack on money.

I grew up with broadway musicals and Les Miserables is one of my favorites. The story of ValJean is a mirror of my own life....the fallen man who redeems himself by helping others. I give blood. I'm a type o+ and have a big enough body to give 2 pints per donation. Every 4 months, like clockwork I go to the blood center to donate. So far I have given 44 pints. It greatly angers me that the current sex offender laws don't take this into account.

My life had never felt better. I was no longer alone and starting to develop as a 3D computer artist. My therapist didn't like this at all. To him, comic books, video games, and animated movies were bad for me. End of subject...no argument or discussion of themes. He refused to listen to me when I told him numerous times, fantasy and sci-fi are a major part of my life. Rather than making me more dangerous, it gives me an outlet and an escape from this world where I feel powerless. Finally he kicked me out of his program and I was violated by my probation officer for non-compliance.

In court, I begged the judge to have me re-evaluated. I spent 2 nights in jail while the case was evaluated. My public defender, my mom, and my finacee all fought to get me out, and the second day I broke down crying in the courtroom. I felt like a dog that had been kicked around so much that it just wants to curl up and die. All the memories of being bullied by teachers in public school washed over me.

They let me out the following day with the condition to go directly to my doctor to set up the evaluation. I was diagnosed with Aspergers Syndrome and Schizo-effective disorder. This is one of the reasons why I always excelled when it came to computers but failed badly when it came to subjects I didn't care about. It also explained why I was always socially awkward, unable to carry on conversations with strangers due to my limited interests. Without well-developed social skills, my high libido went unsatisfied. It was always easier for me to talk to children, who didn't judge me. Group sex offender therapy was deemed ineffective for me and I found a nice one-on-one therapist who works with people with Aspergers. She listens to me when I make a comparison between something in my life and a story like Les Miserables or Phantom of the Opera. She doesn't judge me when I tell her about the themes of a cartoon movie like Paranorman or Wreck-it-Ralph. I don't watch them because they are for children. I watch them because they have powerful stories, art and animation made by adults. Me and my finacee both love watching old cartoons like Animaniacs, Tiny Toon Adventures and The Muppet Show. We both know the names of all the voice actors, and enjoy watching behind the scenes documentaries on how the shows were created, from the writing, animation, and music.

I found an old friend from middle school through facebook, who was the head programmer and technician for a large scale video game project. I joined up as a 3D modeler and animator, and for almost a year I worked on it. Last month they launched a kickstarter to raise the money to develop this project as a full time job.

http://www.kickstarter.com/projects/missingworldsmedia/the-phoenix-project-city-of-titans?ref=live

Last night I was ordered to attend a meeting at the Rhode Island Parole Board regarding what was to happen after my 15 years run out in December of 2014. According to Rhode Island General Law 13-8-32, when my time on probation is up, I will be required to wear a tracking device and will not be allowed to use any online chat services, including the one I use to communicate and coordinate with the project I've poured my heart and soul into over the past year. I will also not be able to actually play the game because of the possibility that the person on the other side of the screen might be younger than 17. I have no history of online stalking and could really care less how old the other players are. I'm not there to hook up with anyone. I'm there to play a game where I can be the hero.

The laws want to take that all away from me and I am growing very angry with this bullying behavior. I served my time and gave blood on top of it, yet my pleas fall on deaf ears. It's the same way the other children used to bully me, picking on me to the point of tears. It's the same way the teachers used to bully me, forcing me under threat of punishment (bad grades = punishment at home) to attend classes I had no interest in and would usually zone out in. I learned computer programming around age 8, and struggled with game design software that I had no manual for, one time creating an inch thick printout of source code for Activision's Pitfall to pour over in study hall. This is where my mind went as the teacher droned on

AR-00001366

about American History or Math. I exerted just enough effort to get a passing grade, always bored, daydreaming about video games. How they played, and how they were made. I animated my first 2d sprite using the code from Pitfall. I used to draw my own cave layouts on paper based on Pitfall II. I had Commodore 64 magazines full of small games written in basic that I could study and add to. I was learning math from it. And rather than the endless excersizes in a typical math class, I was actually USING that math as I was learning it.

Video games are my life. This online game that I am helping to develop is my life. Entry level jobs in this field bring in salaries around $35,000 per year. Me and my fiancee would really like to get married someday but right now I'm still living with my parents, denied work that I am good at due to background checks. My fiancee lives in public housing, with all kinds of crazy people banging on her door at 3 am looking for cigarrettes. When I met her she was agoraphobic due to being nearly raped when her elevator got off on the wrong floor. Using what I had learned in prison, I got her out of the house, a feat which all of her family respect me for. I'm very poor right now. I had to give up my car and now ride a bicycle back and forth to be with my fiancee (I'm not allowed to spend the night with her due to restrictions). I'm 37 and still live in my parent's basement, and my fiancee is on disability. I NEED this job to get both of us out of this pit we're stuck in.

This law and these restrictions will basically rip all the stability from my life. They will isolate me from a community that accepts me and respects me as an artist. This law is unjust, subjecting a minority group to further punishment after they have served their time, all in the name of "protecting the public". Me and my fiancee's lives hang in the balance, so I feel the need to scream this out. I really feel like I'm at the end of my rope, and those old hatreds of being bullied start to surface again. I want to fight.  Where do I start?

**Share this:**

**Related**

| Working on being human again someday | A sibling's crime | Yet Another Life Ruined |
|---|---|---|
| January 19, 2017 | September 18, 2013 | December 5, 2019 |
| In "Personal Tales" | In "Tales from the Registry" | In "Tales from the Registry" |

This entry was posted in Tales from the Registry on October 29, 2013 [https://tftr.narsol.org/2013/10/29/this-is-bullying-plain-and-simple/] by .

AR-00001367

*February 10, 2016 at 12:03 pm*
**THEREGRETFULONE**
What has happened to you, is only beginning for me.


*July 29, 2014 at 12:04 am*
**HOPE**
Dear Kevin Soucy,

Do not give up. There have already been laws recently passed in several states, stating that bans on social net-working for sex offenders is unconstitutional, violating the First and Fourteenth Amendments. Read what the judge has to say: Laws must be "narrowly tailored to achieve a significant government interest" – and a full ban on social networking does not qualify. Direct quote: "The [social networking ban law] applied to all registrants, regardless of…any showing that the offender is a current threat to minors…In essence, it burdens more people than necessary to achieve its purported goal." Listen to the affirming words of that judge, and recognize that hope is never lost…and if states as conservative as Louisiana, Nebraska, Indiana, and North Carolina have got-ten such a law to pass, then surely a liberal state like Rhode Island will too…In the meantime, you stated that your therapist supports you…having anyone trustworthy to the parole board on your side is always a powerful thing…get her to talk about every last thing you've put in this post, and argue that your release from these con-ditions will be a benefit to society…have her convince them that they have the power to modify your condi-tions, and should use it so…If needed, get a lawyer to argue the recent law above and its repercussions in your defense…Above all, do not give up. You have more people than you think on your side.

–Hope

Links:
http://nccriminallaw.sog.unc.edu/?p=4424
http://nccriminallaw.sog.unc.edu/?p=4073
http://www.ca6.uscourts.gov/opinions.pdf/13a0301p-06.pdf


*January 16, 2014 at 7:29 pm*
**JUSTICE123**
There is no Justice in what has happened to you and many others. I am praying that this site will help to get rid of the current sexual registry laws. It is ruining many innocent people's lives. Not only you a victim but so is your fiancé, friends and family! I will pray for you.

AR-00001368

# TALES FROM THE REGISTRY

## WILL SOMEBODY HELP, WILL ANYONE LISTEN, DOES ANYONE CARE????

originally posted 10/14/2008

In the eyes of the law, my son is a registered sex offender in Illinois. This is the furthest thing from the truth, a truth nobody has wanted to hear.

Paul at the age of 18 was very close to his 2nd cousin, a girl who was 12. Paul is ADHD and learning disabled (All documented; report dated just weeks before his arrest show his comprehension level at the 4th grade, 7th month. This was an evaluation for special education paid for by the state to determine goals for life after high school). The cousins were together everyday due to her mom being a caregiver for my mother.

On Memorial weekend, 2003, the girl`s family went on a camping trip which included Paul. Her Mom noticed them sitting close and wanted to know what was going on between the two of them. Both children denied anything was going on and yet she insisted that the children were lying.

Upon returning home from camping on Sunday, the girl`s mother grounded her to her room, with no books, TV or games. She was not allowed out of the room except to use the bathroom until she told the "truth." Regardless of what either child said, her mother refused to let her out of her room until the truth was told. Her mom went so far as to take her to the emergency room on Tuesday to see if she had been having sex. Finally on Thursday the girl told her Mom that Paul had touched her and was allowed out of her room for telling the "truth." She couldn't say exactly when this happened, only that it happened twice; once in February and once in March at my house. I know for a fact that it couldn't have happened in March, because she was grounded the entire month for hooking up with a 23 year old on the internet, lying about her age, saying she was 18 and having him call my house so that they could set up a location to meet.

The girl's parents went to the police to file a complaint and until Paul's arrest, she continually called him and told him to just tell the police he did it and everything would be over with.

On Sunday, June 15th, Paul was stopped by the neighborhood police while driving one of his other cousins home. My husband and I were at the police station within minutes of the police bringing him there. They refused to let me see him since he was 18. I knew because of his low comprehension that he would not understand what was going on.

Paul was kept there, booked and arraigned the next morning because he "confessed." He told the police, "Whatever she said I did, I did."

After Paul was arraigned and we brought him home we talked at great length about what happened. When I asked him why he didn't ask for a lawyer when the police asked him he told me that he was never asked if he wanted an attorney. I told Paul that they had to have asked him and he said, no, they didn't! I said, Paul, did they say you have the right to remain silent, you have the right to an attorney, and he said yes. I pointed out to him that that was the way of them asking if he wanted an attorney. He started to sob and told me he didn't know that's what it meant. He also told me that the police officer told him to just say he did it and he'd be out of there and home in time at all. I know my son did not understand what was happening; even the police knew he had a disability. The very first thing on the police report is that Paul is ADHD. Someone should have intervened and explained to him. Upon reading Paul's confession, I knew that a large part of it had been dictated to him.

As the months went by and we went back and forth to court, nobody wanted to listen or hear the truth. No matter the motions our lawyer filed, nobody wanted to listen. At one point, the girl`s mother (related through my sister, the grandmother) that if we gave them $2500 they would see what they could do about dropping the charges. This was brought to the attention of the state's attorney and again nobody cared. This was all for money.

Paul at this time was 5'2 294 and weighed 105. We knew we risked prison time for him if we went to trial and lost because of his confession; so when the state's attorney offered a plea bargain in June of 2004 of 2 years probation we took it knowing he would never survive in prison being as small is he was, having low comprehension, and the maturity of a 12 year old. God, I am so sorry that we didn't fight then.

For 3-1/2 years we have been in a nightmare and it has now come to a head. Paul has had much difficulty in gaining employment, not only because of his sex offender status, but due to his disabilities. He finally gained employment, delivering pizzas and he was the happiest I had seen him since this nightmare started. When his boss found out he was an offender and couldn't deliver to schools he was fired from his job and has not been able to gain employment since.

I am now watching my son slowly die emotionally because of this label. He is appalled that this label has been put on him, knowing he would never touch or hurt anyone in his life and that nobody wants to hear the truth. He's been accused of touching this girl, and to think that he is now labeled with others who have viscously attacked children. I, and my family have lost ALL faith in our system. Where is justice? When this all started I had faith and believed in our system, that the truth would prevail, that others would see he didn't understand when he "confessed" because the girl and the police told him to just admit he did it. Now I see that it's actor against actor, state's attorney against defense lawyer; the best actor wins.

---

**Share this:**

---

**Related**

Mother

AR-00001369

January 7, 2013
In "Tales from the Registry"

Lied to by a Teenager Stating She Was 19
Years Old
January 7, 2013
In "Tales from the Registry"

He Can't Live His Life
January 7, 2013
In "Tales from the Registry"

This entry was posted in Tales from the Registry on November 3, 2012 [https://tftr.narsol.org/2012/11/03/will-somebody-help-will-anyone-listen-does-anyone-care/] by .

One Thought to "WILL SOMEBODY HELP, WILL ANYONE LISTEN, DOES ANYONE CARE????"

*March 4, 2019 at 7:49 pm*
**THE CRIMINALIZED MAN**
We hear. We care. Your story may be hearsay to us, but it carries echoes of our own true stories.

AR-00001370

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 24, 2020

| View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

---

| Comment |

My only comment would be to suggest you pause and reflect on the purpose of these draconian laws. What are they for? What is their purpose? Are they being effective? Is empirical scientific evidence being followed when creating these laws or are they being generated by unchecked emotions?

Try to put yourselves in the shoes of those being affected by these laws? Just try to imagine for one tiny second how you'd feel? How your family and friends would feel?

Just simply ask yourselves if these laws have worked as a deterrent to future sex crimes. When you are trying to put out a fire you don't just throw gasoline into it. Take a moment to look at the mess that these laws have created. The sex offender numbers will continue to increase and you just can't continue to create more laws hoping that they will work. They are not working. A more reasonable and humane approach is needed.

Thank you for taking the time to read my comment. The amount of suffering I've gone through as a result of these laws has been horrific. I would never wish this on my worst enemy. That would make me a monster.

| **Comment ID** |
| DOJ-OAG-2020-0003-0370 |

| ◎ **Tracking Number** |
| kff-krl8-qjcs |

| **Comment Details** | **Submitter Info** |

AR-00001371

**Received Date**

Sep 23, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001372

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 24, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

| Comment |
| --- |

Honorable Attorney General Barr and Associates,
I would ask that you consider the effect of what you propose doing. It is a fact that SORNA does nothing to deter new sex offenses, it only serves to appease a phobic public. It is also a fact that the recidivism rate for the million on the registry is very, very low. Studies show less than 5 percent. Your changes only serve to punitively punish a population that paid their debt to society and seek to live the rest of their lives as law abiding citizens.

**Comment ID**

DOJ-OAG-2020-0003-0371

 **Tracking Number**

1k4-9j4i-n6xj

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 23, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001374

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 24, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

---

Comment

As citizens of the United States of America we deserve to have laws based on facts, not politics. The entire industry of "sex offenses" run counter to facts such as the statistics published by the FBI themselves. The current laws do NOT protect anyone and, in fact, put everyone in greater jeopardy. The registry destabilizes individuals and families AND it doesn't actually do anything for victims.

The goal should be to create as many ties to the community as possible. Ostracizing anyone is a negative move for the entire community. Let he or she without fault cast the first stone. We are all imperfect beings and can benefit by taking those who fall off the wagon and helping them back on their feet: one day we might need the same help.

This entire set of requirements is nothing more than political grandstanding which will ultimately be challenged in court and be found unconstitutional more than likely. All it's meant to do is show how "tough on crime" the current administration is and garner votes. We the voting public need to decide whether we're OK with being the most criminal society on the planet. Do we really believe that about America? I do not. We have the worst justice system in the world. When your neighbor offends you, retaliation simply makes everyone's lives worse. Helping your neighbor when the stumble improves the whole community. Remember, YOU will stumble someday too. Think about how you want to be treated: ostracized or included?

I fully expect every comment to be ignored and AG Barr to do whatever gets votes. The public needs to be told the facts not what they want to hear. Yeah, it will get votes, but it will also make the US even worse than it is today.

Is America the most criminal society on the planet? It's for the people to decide. The first step is to get rid of these ridiculous laws which have no correlation with facts and reality. Ultimately, each and every person is responsible. Politicians only do what we allow them to do.

---

**Comment ID**

DOJ-OAG-2020-0003-0372

AR-00001375

**Tracking Number**

kff-tqqa-6waw

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 23, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 24, 2020

| View More Comments  ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  ( 724 ) (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

This proposed rule change is an attack on states rights. More proposed federal regulation isnt needed. Thank you for taking my views under consideration.

| **Comment ID** |
|---|
| DOJ-OAG-2020-0003-0373 |

| ◎ **Tracking Number** |
|---|
| 1k4-9j4p-hwd6 |

| **Comment Details** | **Submitter Info** |
|---|---|
| **Received Date** | |
| Sep 23, 2020 | |



AR-00001377

About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001378

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 24, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I was convicted of L and L conduct with minor 14 and under. It made no difference that I have a polygraph test that proves that I had no sexual motives as I was playing with my granddaughter. I makes no difference that according to the US Supreme Court Cunningham decision my sentence was illegal. It makes no difference that the rate of recidivism of those convicted of the crime of which I was convicted is among the lowest. It makes no difference that as time progresses I am being subjected to more and more punishments. It makes no difference that for political reasons these punishments, which are ex-post facto, and thus are illegal, are by hook and crook being passed off as non-punishments and therefore not illegal. I would hope that at some point someone would have the backbone to stand up and say enough is enough, would recognize that these laws are are doing nothing more that destroying lives and families just so that a few can feel revenge, which is only destructive to themselves and those they touch. I am nearly 80 years old. I spent 12 years in prison, when my original charge should hove carried no more that 6 years. I am serving 5 years on parole, but will be punished for the rest of my life because of SORNA. I am asking you to consider the facts, the science, of this situation and do away with SORNA. Thank you, Kenneth E. Jenks, first time offender, life time sufferer.

**Comment ID**

DOJ-OAG-2020-0003-0374

**Tracking Number**

kfg-a4t7-m9yk

| Comment Details | Submitter Info |
|---|---|

**Received Date**

AR-00001379

Sep 23, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 24, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

The proposal to extend SORNA to all persons on the registry regardless of conviction date is another ploy to take away states rights. More federal regulations isn't needed and regardless of thoughts that this is not punishment it is. Thank you for your consideration of my views.



**Comment ID**

DOJ-OAG-2020-0003-0375

**Tracking Number**

1k4-9j53-4jns

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 24, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 24, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

On behalf of the hundreds of thousands of people on the sex offense registry in this country who have one-time-only offenses and are working hard to reintegrate back into society successfully as law-abiding citizens, I oppose the changes to SORNA unless SORNA is amended to act as a ceiling and not a floor.

There is already great confusion for registrants trying to navigate the state statutes and county/municipal ordinances, which are frequently so vague that even law enforcement is not in agreement as to how to interpret them.

The new proposed requirement will cause additional vagueness. An example at point: requiring people who do not work at a fixed location to provide authorities information describing where they will be working with whatever definiteness is possible. There are many county sheriff offices that cannot interpret current laws with any consistency, let alone handle this new proposed requirement.

Section 72.4 would also require every registrant to register in every jurisdiction where they reside, work, are enrolled as a student, and in the jurisdiction where the conviction occurred. This needs to be streamlined for the hundreds of thousands of registrants who are not re-offending.

There is great concern on what criteria will be used to determine the tier to which a registrant will be assigned. This section is too vague. The determination needs to use empirically-based Risk Assessments, not the offense. Otherwise, there will be people in Tier 1 who are a high risk to society and people in Tier 3 who are very low risk.

Section 72.6 takes away freedoms from non-re-offending registrants who live in states that do not require such an invasion of privacy. This continued punishment is getting into the ex-facto concerns.

Section 72.7 implements tighter regulations than are currently enforced in many states.

My biggest concern is for people who have a one-time-only sex offense, often committed 20 to 30 years ago. All current research, including with the U. S. Department of Justice, is showing a low recidivism rate (committing another sex offense), when all people on the registry are taken collectively. Additionally, research shows that in

over 90% of sex offenses, the victim knows the perpetrator, and approximately 90% of FUTURE sex crimes will be committed by people NOT on the registry.

The California Sex Offender Management Board found that this country spends anywhere from 10 to 40 billion dollars per year to maintain and monitor the registry.

Society needs for our government and law enforcement to closely monitor the high risk and repeat offenders, but these people are in the minority when it comes to ALL people on the registry. There is NO research showing that the registry is helping.

It is time for the Department of Justice to start using evidence-based practices and best policies. The federal government has asked states to form a Sex Offender Management Board (SOMB), which many states have not done. But check with those who did form these research boards, such as California and Illinois. In searching for the current research, they have found that the registry is not working, residency restrictions are not working, and exclusion zones are not working. In fact, research is showing that these restrictions have only made society less safe, as they make it more difficult for registrants to obtain a decent-paying job, find a place to live, and have family/community mentorship and support all necessary to reintegrate back into society as law-abiding citizens.

Patty Wetterlingly, the mother who helped to jumpstart Congress into forming the registry, has said that the registry has been hijacked. She stated that there are too many people on the registry for whom the registry was never intended. She only wanted it for people like the man who abducted, raped, and killed her son.

You cannot count on SMART to aid the Department of Defense in this matter. If the evidence-based policies were ever implemented, most people at SMART would be without a job.

What research shows does work: Instead of spending billions of dollars per year on the registry, divert a large portion of that money to preventive programs to be offered in schools, colleges, workplaces, and other public venues to stop the cycle of abuse, raise awareness of the consequences, identify support resources, increase victims services, and ultimately restore families.

Sincerely,

Sarah Fiebig

**Comment ID**

DOJ-OAG-2020-0003-0376

 **Tracking Number**

1k4-9j54-pi0x

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 24, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 24, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Any psychologist will tell you that making decisions based on fear does not have a good outcome. There is a rapidly growing population in this country that ignores research and science. All research, including with the U.S. Department of Justice, is showing a low recidivism rate for people with a past sex crime. Those with a one-time-only sex offense have a rate in the single digits.

The Human Rights Watch states: There is "no legitimate community safety justification for the provisions in this legislation that require offenders to register for the rest of their lives, regardless of whether they have lived offense free for decades." According to the California Sex Offender Management Board, this country spends annually anywhere from 10 to 40 billion dollars to monitor the sex offense registry -- a registry where only a small percentage ever re-offend. Some subgroups, such as those caught viewing child pornography, have a recidivism rate between 2 and 3%. (These statistics are after being caught and punished.)

Additionally, research has shown that at least 90% of FUTURE sex crimes will be committed by people NOT on the registry. The ad described in this article against Malinowski is fear mongering based on myths. We say we value education in this country, so why aren't we using what we have learned?

Please read all these attached documents. We believe that only true predators and violent offenders should be on any list. Especially not for a lifetime. People sometimes make mistakes but should not necessarily have to pay for the rest of their lives. A person can get a year in prison and 5 years probation and be done with about any crime in our nation, except someone accused of committing a sex crime. An additional "crime status" is attached to them usually for life with the anticipation they will commit a crime. Punishment for violation of the registry is more strict than the penalty for the real crime. This is so unfair and unconditional. Putting kids on the registry especially for life is totally inhumane. We are supposed to be a fair and just country, land of the free, home of the brave. Yet we treat people like this? We are better than that America!

AR-00001386

Attachments  12

letter abour registry

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0377/attachment_1.pdf)

Justice Gingsburg

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0377/attachment_2.pdf)

Civil Rights

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0377/attachment_3.pdf)

Consitutional rights

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0377/attachment_4.pdf)

TRAVEL

⬇ Download ▾

The Sex Offender Registry

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0377/attachment_6.pdf)

How law enforcement turns law

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0377/attachment_7.pdf)

NPR Eschews Journalism in Favor of Moral Panic

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0377/attachment_8.pdf)

Guilt by Association Labeling Research Based Policy Suggestions as Pro-Offender

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0377/attachment_9.pdf)

life on the regsitry

⬇ Download ⌄

Millions of Lives Ruined by Sex Offender Registry

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0377/attachment_11.pdf)

A new Study by Danielle Arlanda Harris and Jill Levenson finds that our current practices likely and paradoxically increase risk for reoffending by producing traumatic stress that le

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0377/attachment_12.pdf)

**Comment ID**
DOJ-OAG-2020-0003-0377

**Tracking Number**
kfb-zi27-kj00

| **Comment Details** | **Submitter Info** |
| --- | --- |

**Received Date**
Sep 20, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

September 20, 2020

Regulations Docket Clerk
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW
Room 4234,
Washington, DC 20530.

RE: Docket No. OAG 157

The Department of Justice is right now taking comments on their proposed changes to the sex offender requirements. The federal government, and The Justice Department actively participate and control the sex stings going on under the Missing and Exploited ICAC program.  The federal government sends each state millions of dollars every year to maintain the registry and to perform the stings. The federal government though they don't control the prisons in each state, are supposed to oversee them and make sure the abuses stop. The Department Of Justice is supposed to over sea all law enforcement and make sure our rights are not being abused.

We are sex offenders, mothers, sons and daughters, sisters, brothers, cousins, grandparents and friends of people on the registry. We have personal experience with this and we are begging you to pay attention.  We are also mothers, sons and daughters, sisters and brothers, and grandparents of those whose lives are ruined by the sex stings, not because they set out to hurt anyone or to commit a crime, but were set up by cops on adult sites, using adult photos, and convincing or entrapping these men to meet up.

We aren't lawyers or politicians.  We don't know how to argue or write in correct legal terms or norms. We are people, just regular citizens.  We have always believed in our judicial and legal system and have patriotically honored our country.  We have always believed in our civil and constitutional rights. We are CITIZENS of this country who deserve to be heard and deserve someone to stand up for us.

- We believe that current sex offender laws and policies are misguided and that we should focus on prevention rather than punishment.
- We believe the laws are misguided because they focus on the myth of "stranger danger", the myth that offending is related to physical proximity rather than relational proximity and the myth that those on this "list" are the ones committing new sex offenses.
- We believe that perpetually punishing someone who offended decades ago is a total waste of money and only serves to destabilize them by removing housing opportunities, employment opportunities and making it hard to successfully re-integrate into the community, thereby actually increasing their chance to re-offend.
- We also believe that instead of trying to forever re incarcerate people for technical violations of non-crimes, we should instead be investing in programs to stabilize former offenders, support victims and teach all children, parents and the general population to recognize, avoid, and stop abuse.

1

You claim you keep a registry to protect the public.  The problem with that is almost all children abused or assaulted are done so by someone they know not by someone on the registry.  Even Lauren Book who has pushed the registry to be so strict a person literally can not survive when on it, now realizes this fact.

In a feature she wrote for Social Miami that "stranger danger" is usually not a factor in child abductions or sexual assaults. While most laws restrict those required to register from living or even coming near places like schools and playgrounds, it's curious that Sen. Book would now write, "Kids are virtually never grabbed off the street and pulled into an unmarked van."  Isn't that *precisely* the scenario that these exclusion zones are intended to prevent?

In July, she was interviewed for a Florida Daily story on the dangers of Social Media Platform "Tik Tok". There she was quoted as saying, "The reality is that 95 percent of sexual abuse is preventable through education and awareness" WOW! Don't you think that if 95% of sexual abuse is preventable we should invest more money and other resources into *prevention* rather than punishment and focus on efforts that will prevent 95% of new sexual abuse victims rather than focusing on forever punishing individuals who offended decades ago?

Sex offender laws play into parents worst nightmare… that their child will become the next Jacob Wetterling or Adam Walsh. The laws are intended to prevent the types of cases that are not usually a factor when it comes to the overwhelming majority of sexual offenses against children. Most victims are like Sen. Book herself, where the perpetrator was a caregiver or had a preexisting relationship with the child. *Not* a stranger and in almost all cases, *not* someone on the registry!

Sexual abuse in any form against man, woman or child is never acceptable. There is a tremendous need to fund programs like "Stop It Now" that teaches parents how to begin and maintain a dialog with their children to intervene before harm occurs and about grooming behaviors as well as other things at age-appropriate levels in their Circles of Safety.

The registry causes many problems and unjust consequences to those on it. For instance, many people on the registry are murdered by vigilantes.  A 54 year old person required to register as a sex offender was found dead with "suspicious head injuries" according to the Madison Wisconsin Police, A local alderman is calling for the closure of these "homeless encampments", but fails to recognize that persons forced to register are generally not allowed in most shelters, are subject to restrictions on housing and are chronically unemployed or unemployed because of the stigma of being registered. Thousands of registrants live under bridges and on the streets in places like Miami because they aren't allowed to live in hardly any areas and because of the law requiring them to tell landlords and neighbors of their status, are unable to find housing or jobs.

Nicole Pittman, the director of the Impact Justice Center on Youth Registration Reform whose group is trying to eliminate or reduce the placement of children on sex offender registries, states that roughly 200,000 of the nation's approximately 850,000 registered sex offenders were under age 18 (a minor under federal law) when they were placed on these registries following convictions in state courts or adjudications in juvenile courts.

2

"This [law] is supposed to protect kids and [but it is] actually hurting them," Ms. Pittman told the **WalStreet Journal** about the new law. "We have kids going on the registry for sending nude pictures of themselves."

The registry is punishment no matter how you look at it.  It violates many of our constitutional and civil rights.  We should be able to trust our government to serve and protect ALL citizens.  No other criminals are required to live with the stigma and humiliation AFTER THEY HAVE PAID THEIR DEBT TO SOCEITY, like sex offenders do.  And really when you think about it, don't drug dealers who get kids hooked on drugs deserve the same hatred you give sex offenders?

It has been argued over and over that sex offenders do NOT suffer because of the registry, that they are NOT being punished, and that they do NOT deserve relieve.  We believe many of our rights are trampled on over and over.  The registry directly violates our right to privacy.  Maybe you don't agree with that because the word privacy is not explicity used in the constitution.  We are attaching a document with our beliefs of our rights and how we believe we are being violated. One amendment no one thinks about is the Nineth Ammendment.


**UNENUMERATED RIGHTS NINTH AMENDMENT**

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

It is clear from its text and from Madison's statement that the Amendment states but a rule of construction, making clear that a Bill of Rights might not by implication be taken to increase the powers of the national government in areas not enumerated, and that it does not contain within itself any guarantee of a right or a proscription of an infringement.  In 1965, however, the Amendment was construed to be positive affirmation of the existence of rights which are not enumerated but which are nonetheless protected by other provisions.

Although privacy is not mentioned in the Constitution, it is one of the values served and protected by the First Amendment through its protection of associational rights, and by the Third, the Fourth, and the Fifth Amendments as well. The Justice recurred to the text of the Ninth Amendment, apparently to support the thought that these penumbral rights are protected by one Amendment or a complex of Amendments despite the absence of a specific reference. Justice Goldberg, concurring, devoted several pages to the Amendment.

"The language and history of the Ninth Amendment reveal that the Framers of the Constitution believed that there are additional fundamental rights, protected from governmental infringement, which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments. . . . To hold that a right so basic and fundamental and so deep-rooted in our society as the right of . . . . . Moreover, a judicial construction that this fundamental right is not protected by the Constitution because it is not mentioned in explicit terms by one of the first eight amendments or elsewhere in the Constitution would violate the Ninth Amendment. . . . Nor do I mean to state that the Ninth Amendment constitutes an independent source of right protected from infringement by either the States or the Federal Government. Rather, the Ninth Amendment shows a belief of the Constitution's authors that fundamental rights exist that are not expressly enumerated in the first eight amendments and an intent that the list of rights included there not be deemed exhaustive."

3

Therefore, although neither Douglas' nor Goldberg's opinion sought to make the Ninth Amendment a substantive source of constitutional guarantees, both read it as indicating a function of the courts to interpose a veto over legislative and executive efforts to abridge other fundamental rights. Both opinions seemed to concur that the fundamental right claimed and upheld was derivative of several express rights and, in this case, really, the Ninth Amendment added almost nothing to the argument. https://www.law.cornell.edu/lii/get_the_law

> Both the sex stings and the registry violate our nigh amendment rights. An adult person, visiting an adult site that requires a claim of being 18 or older, where fantasy and role playing are paramount, deserves the right to privacy believing the only people on that site are indeed adults even if they are playing out fantasies or role playing.  And adult in that situation is on the Internet, a place were we all know anything goes and everything is not true or fact.  On these sites they play out fantasies and play games often pretending to be someone or something they are not.  So when an ADULT person is there the cops have NO RIGHT to contact them, pursue them, and set them up on a sex sting.  Cops have no right to use psychological tricks to reign these person's in to get a conviction.  The adult person on that adult site has the right to PRIVACY.  The stings violate the NINTH Amendment.

The AWA directs states to impose criminal penalties on an offender who fails to comply with the registry requirements. Additionally, state-convicted sex offenders who knowingly fail to properly register may be subject to prosecution under a new federal statute that subjects them to fines and up to ten years imprisonment. Thus, failing to register can potentially cause an offender to be sentenced for a longer prison term than that imposed for the initial sex crime itself.  SORNA also mandates a community notification program, which requires the appropriate official in the jurisdiction to notify the U.S. attorney general, law enforcement agencies, schools, and public housing agencies in the state(s) in which the offender is registered.

We ask that you demolish the registry and let us live in peace.  We deserve a second chance as much as anyone else who has been through the justice system does.  Once we pay our debt to society we should be free to regain our lives, our families, and make something of ourselves. We should have the right to happiness, fairness and kindness, the right to be travel and the right to freedom.  We deserve the right to a peaceful life and opportunity.  Our country forgives others who commit crimes and often gives them a chance.  The recidivism rate for sex offenders is under 3%.  We deserve a second chance.

Please read all attached sheets of how we feel our rights are being violated.  Thank you.

D B

4

Rather than try to explain in my own words what Justice Ginsburg did for our cause, I will copy and paste the dissenting opinion in *Smith v. Doe* below and let the words Justice Ginsburg wrote explain it,

As JUSTICE SOUTER carefully explains, it is unclear whether the Alaska Legislature conceived of the State's Sex Offender Registration Act as a regulatory measure or as a penal law. See *ante,* at 107-109 (opinion concurring in judgment). Accordingly, in resolving whether the Act ranks as penal for *ex post facto* purposes, I would not demand "the clearest proof" that the statute is in effect criminal rather than civil. Instead, guided by *Kennedy* v. *Mendoza-Martinez,* 372 U. S. 144 (1963), I would neutrally evaluate the Act's purpose and effects. See *id.,* at 168-169 (listing seven factors courts should consider "[a]bsent conclusive evidence of [legislative] intent as to the penal nature of a statute"); cf. *Hudson* v. *United States,* 522 U. S. 93, 115 (1997) (BREYER, J., concurring in judgment) ("[I]n fact if not in theory, the Court has simply applied factors of the *Kennedy* variety to the matter at hand.").[1]

Measured by the *Mendoza-Martinez* factors, I would hold Alaska's Act punitive in effect. Beyond doubt, the Act involves an "affirmative disability or restraint." 372 U. S., at 168. As JUSTICE STEVENS and JUSTICE SOUTER spell out, Alaska's Act imposes onerous and intrusive obligations on convicted sex offenders; and it exposes registrants, through aggressive public notification of their crimes, to profound humiliation and community-wide ostracism. See *ante,* at 109, and n. (SOUTER, J., concurring in judgment); *ante,* at 111-112 (STEVENS, J., dissenting in No. 01-729 and concurring in judgment in No. 01-1231).

Furthermore, the Act's requirements resemble historically common forms of punishment. See *Mendoza-Martinez,* 372 U. S., at 168. Its registration and reporting provisions are comparable to conditions of supervised release or parole; its public notification regimen, which permits placement of the registrant's face on a webpage under the label "Registered Sex Offender," calls to mind shaming punishments once used to mark an offender as someone to be shunned. See *ante,* at 111-112 (STEVENS, J., dissenting in No. 01-729 and concurring in judgment in No. 01-1231); *ante,* at 109 (SOUTER, J., concurring in judgment).

Telling too, as JUSTICE SOUTER observes, past crime alone, not current dangerousness, is the "touchstone" triggering the Act's obligations. *Ibid.* (opinion concurring in judgment); see *ante,* at 112-113 (STEVENS, J., dissenting in No. 01-729 and concurring in judgment in No. 01-1231). This touchstone adds to the impression that the Act retributively targets past guilt, *i.e.,* that it "revisit[s] past crimes [more than it] prevent[s] future ones." *Ante,* at 109 (SOUTER, J., concurring in judgment); see *Mendoza-Martinez,* 372 U. S., at 168.

Tending the other way, I acknowledge, the Court has ranked some laws civil and nonpunitive although they impose significant disabilities or restraints. See, *e. g., Flemming* v. *Nestor,* 363 U. S. 603 (1960) (termination of accrued disability benefits payable to deported resident aliens); *Kansas* v. *Hendricks,* 521 U. S. 346 (1997) (civil confinement of mentally ill sex offenders). The Court has also deemed some laws nonpunitive despite "punitive aspects." See *United States* v. *Ursery,* 518 U. S. 267, 290 (1996).

What ultimately tips the balance for me is the Act's excessiveness in relation to its nonpunitive purpose. See *Mendoza-Martinez,* 372 U. S., at 169. As respondents concede, see Brief for Respondents 38, the Act has a legitimate civil purpose: to promote public safety by alerting the

public to potentially recidivist sex offenders in the community. See *ante,* at 102-103 (majority opinion). But its scope notably exceeds this purpose. The Act applies to all convicted sex offenders, without regard to their future dangerousness. And the duration of the reporting requirement is keyed not to any determination of a particular offender's risk of reoffending, but to whether the offense of conviction qualified as aggravated. The reporting requirements themselves are exorbitant: The Act requires aggravated offenders to engage in perpetual quarterly reporting, even if their personal information has not changed. See *ante,* at 90. And meriting heaviest weight in my judgment, the Act makes no provision whatever for the possibility of rehabilitation: Offenders cannot shorten their registration or notification period, even on the clearest demonstration of rehabilitation or conclusive proof of physical incapacitation. However plain it may be that a former sex offender currently poses no threat of recidivism, he will remain subject to long-term monitoring and inescapable humiliation.

John Doe I, for example, pleaded *nolo contendere* to a charge of sexual abuse of a minor nine years before the Alaska Act was enacted. He successfully completed a treatment program, and gained early release on supervised probation in part because of his compliance with the program's requirements and his apparent low risk of reoffense. Brief for Respondents 1. He subsequently remarried, established a business, and was reunited with his family. *Ibid.* He was also granted custody of a minor daughter, based on a court's determination that he had been successfully rehabilitated. See *Doe I* v. *Otte,* 259 F. 3d 979, 983 (CA9 2001). The court's determination rested in part on psychiatric evaluations concluding that Doe had "a very low risk of re-offending" and is "not a pedophile." *Ibid.* (internal quotation marks omitted).

Notwithstanding this strong evidence of rehabilitation, the Alaska Act requires Doe to report personal information to the State four times per year, and permits the State publicly to label him a "Registered Sex Offender" for the rest of his life.

Satisfied that the Act is ambiguous in intent and punitive in effect, I would hold its retroactive application incompatible with the *Ex Post Facto* Clause, and would therefore affirm the judgment of the Court of Appeals.

Rest in Peace Ruth Bader Ginsburg!

AR-00001395

## Civil Rights

A civil right is an enforceable right or privilege, which if interfered with by another gives rise to an action for injury.

**Discrimination occurs when the civil rights of an individual are denied or interfered with because of the individual's membership in a particular group or class.**

Civil rights refer to legal provisions that stem from notions of equality. Civil rights are not in the Bill of Rights; they deal with legal protections.

> We feel the registry violates our civil rights because we are denied the same civil rights as other citizens. We cannot go wherever we chose, we cannot participate in our children's lives, we cannot live where we want to, we cannot travel where we want to. We cannot work in our careers or live without fear of imprisonment or danger. Our families suffer the same restrictions as we do.

A civil liberty, on the other hand, refers to personal freedoms protected by the Bill of Rights. For example, the First Amendment's right to free speech is a civil liberty.

The Thirteenth, Fourteenth, and Fifteenth Amendments to the United States Constitution constituted the largest expansion of civil rights in the history of the United States. The Thirteenth Amendment outlawed involuntary servitude. The Fourteenth Amendment made it illegal for a state to pass laws "which shall abridge the privileges or immunities of the citizens of the United States... [or] deprive **any person of life, liberty, or property** without due process of law, [or] deny to any person within its jurisdiction the equal protection of the laws." The Fifteenth Amendment prohibits the U.S. or any state to deny a citizen the right to vote based on that person's "race, color, or previous condition of servitude."

> A person on the registry is denied the right to life, liberty, and property. They are denied the right to live in peace and their right to free speech. A person set up in a sting is denied the same rights as well as the right to privacy.

(3) Depriving persons of rights or privileges
If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United

States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

A person on the registry is denied the right to peacefully travel from one state to another and even to another country.  All states have different sex offender laws so a person is not allowed the right the security and safety of traveling in our country.

AR-00001397

**Constitutional Rights**

**Cruel and unusual punishment** is a phrase in common law describing punishment that is considered unacceptable due to the suffering, pain, or humiliation it inflicts on the person subjected to the sanction. The precise definition varies by jurisdiction, but typically includes punishments that are arbitrary, unnecessary, overly severe compared to the crime, or not generally accepted in society. First, it limits the kinds of punishment that can be imposed on those convicted of crimes; second, it proscribes punishment grossly disproportionate to the severity of the crime; and third, it imposes substantive limits on what can be made criminal and punished as such.

> Both the registry, passport identification qualify here.  In some states such as Florida a registered person is required to notify all neighbors, employers and anyone they work with, potential employers, and friends of their status. Of course this means they will not be able to find a place to live and will end up homeless. If they are lucky enough to have a job they will most likely lose that job and not be able to get another one. Most will lose all their friends and end up alone and lonely.  For many, the spouse is fired or can't find work because of their status.  Their children are bullied and pushed aside at school and in the neighborhood.  The entire family suffers and pays the price.  When someone comes to visit them, that person goes on the list as an associate for this person so probably will not visit.  They can not go hardly anywhere in their community.  And no matter where they go with travel they risk unknowing breaking the rules in others states and being harshly punished.

> For some they have to put a sign up in their yard that they are a sex offender.  In some states the words "sex Offender" is stamped across their driver's license.  In states like Florida a registered person can not go to a hospital for treatment and can not even draw unemployment after they lose their job due to their status.  These people lose all opportunity for a decent life, they lose their family or their families suffer, they are unable to provide for their families or in most cases to even live with their families.  AND if the violate even one of those things they are sent to PRISON for years.

> For juveniles, this means growing up in a detention center with no friends or family in their lives.  On top of that according to DOJ's own study, the recidivism rate is less than 3% so this precaution is not even needed.

> In some states mandatory prison sentences are extremely harsh and long.  In other states it is up to the judge.  In some, for first offense, there is no jail time and a second chance.  Florida and some other states use mandatory sentences to the extreme.  It is not a ceiling of punishment but the floor.  And if a person violates the registry then can get up to 30 years in prison, a much longer sentence than the crime they committed called for.

> How is the registry not cruel and unusual punishment?

**Due process of law** in the [Fourteenth Amendment] refers to that law of the land in each state which derives its authority from the inherent and reserved powers of the state, exerted within the limits of those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, and the greatest security for which resides in the right of the people to make their own laws, and alter them at their pleasure.

**Due process** is the legal requirement that the state must respect all legal rights that are owed to a person. Due process *balances the power of law of the land and protects the*

1

AR-00001398

*individual person from it.* When a government harms a person without following the exact course of the law, this constitutes a due process violation, which offends the rule of law.

This directly affects the sex stings.  Cops pursue men on adult websites looking for casual sex or relationships.  The men don't look for a cops ad and reply. Then they send photos of ADULT women to entice them.  Then set them up on a traveling for unlawful sex with a minor.

All of this is done under the "umbrella" of SEX TRAFFICKING, yet none of these men are charged with or convicted of sex trafficking.  Cops don't follow the rules of ICAC but make up their own.

If cops posted an ad saying they were a minor looking for sex with an older man, and/or sent a photo of a minor when corresponding with that man, and the man still wanted to meet up, THEN MAYBE YOU WOULD HAVE A SEX OFFENDER.

Due process has also been frequently interpreted as limiting laws and legal proceedings (see substantive due process) so that judges, instead of legislators, may define and guarantee fundamental fairness, justice, and liberty. That interpretation has proven controversial. Analogous to the concepts of natural justice, and procedural justice used in various other jurisdictions, the interpretation of due process is sometimes expressed as a command that the government must not be unfair to the people or abuse them physically.

The entire system is corrupt in some states like Florida.  They get so much money from the federal government to run stings and to have people on their registry even the judges are corrupt. In some states like Florida a person NEVER gets off the registry even if they move, were put on when only visiting, or even if they die.  Florida rakes in the money for people on their registry who don't even live there.  It is the DOJ's responsibility to oversea these abuses don't happen.  AND unless a person is truly a predator or has violently raped another person, there is no reason to put them on the registry for life.

The **Equal Protection Clause** is from the text of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause requires each state to provide equal protection under the law to all people, including all non-citizens, within its jurisdiction. This clause has been the basis for many decisions rejecting irrational or unnecessary discrimination against people **belonging to various groups (which includes sex offenders)**.

The clause, which took effect in 1868, provides "nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws". It mandates that individuals in similar situations be treated equally by the law.  A primary motivation for this clause was to validate the equality provisions contained in the Civil Rights Act of 1866, which guaranteed that all citizens would have the guaranteed right to equal protection by law. As a whole, the Fourteenth Amendment marked a large shift in American constitutionalism, by applying substantially more constitutional restrictions against the states than had applied before the Civil War.

Sex offenders and men caught up in the sex stings are not given EQUAL PROTECTION under the law.  Law enforcement is supposed to serve and protect, not staulk and set up a crime.

In FACT, being on the registry puts their lives in danger, having signs in their yards puts them in danger. ALL people in our country are supposed to have the right to live in peace, to prosper, to travel, and to pursue happiness and success.

2

**An *ex post facto* law** is a law that retroactively changes the legal consequences (or status) of actions that were committed, or relationships that existed, before the enactment of the law. In criminal law, it may criminalize actions that were legal when committed; it may aggravate a crime by bringing it into a more severe category than it was in when it was committed; it may change the punishment prescribed for a crime, as by adding new penalties or extending sentences; or it may alter the rules of evidence in order to make conviction for a crime likelier than it would have been when the deed was committed.

This applies to the sex stings and the registry.  People are not trying to commit a crime, are not looking to break the law, have no intention and predisposition to commit that crime. They are trying to meet other adults on adult sites and are literally trapped into committing a crime.  Unless the cops put up an ad saying they are a minor, and send photos of minors, then there is no way to prove that person was looking for sex with a minor.  The stings should NOT BE ALLOWED.

A person convicted of a sex crime is always sentenced to prison and probation or parole.  If that person successfully completes those punishments that should be then end of it just like it is for any other crime in our country. You do not have a registry for:
   DUI offenders
   Drug dealers who get kids hooked on drugs
   Domestic violence
   Child abusers
   Someone who left the scene of an accident
   Robbers
   Those who commit fraud
   Murderers

The **Fourteenth Amendment** (**Amendment XIV**)
   *All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*

**Setting up stings, and putting people on the registry directly violates the Fourteenth Amendment rights of citizens.**

**Reasonable Expectation of Privacy**
A person must "have exhibited an actual (subjective) expectation of privacy and... that the expectation be one that society is prepared to recognize as 'reasonable.'" Thus, a person has a legitimate expectation of privacy if he honestly and genuinely believes the location under surveillance is private, and if a reasonable person in the same or similar circumstances would believe the location to be private as well.

The government should not have the right to surveille and set up persons in sex stings. Citizens have the right to assume their communication while on an Adult Internet site is private.  The stings directly violate privacy rights.

People on the registry have served their time, they deserve a second chance just like anyone else.  The rate of recidivism is VERY low so it SHOULD NOT be assumed they will commit a crime before that ever happens.

3

Amendment VI
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

In the sex stings there is no "victim", no one against that person except a cop who is an adult.  In trial these people are not allowed their own witness or evidence because it is ruled invalid based on the fact there is no victim, yet when ask to strike down a cops testimony the judge refuses.

Amendment V
**The Double Jeopardy Clause** in the Fifth Amendment to the US Constitution prohibits anyone from being prosecuted twice for substantially the same crime. The relevant part of the Fifth Amendment states, "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . . "
Scope of the Double Jeopardy Rule

Typically, only sanctions which can be considered as "punishment" would qualify under the rule. The registry is clearly PUNISHMENT!

Amendment VIII
The penalty subjects the individual to a fate forbidden by the principle of civilized treatment guaranteed by the Eighth Amendment." A punishment must be examined "in light of the basic prohibition against inhuman treatment," and the Amendment was intended to preserve the "basic concept . . . [of] the dignity of man" by assuring that the power to impose punishment is "exercised within the limits of civilized standards."

The sex offense registry imposes onerous and intrusive obligations on convicted sex offenders; and it exposes registrants, through aggressive public notification of their crimes, to profound humiliation and community-wide ostracism (Justice Gingsburg) see attached. How can a person regain their lives, their dignity and even their family if they are on the registry for the rest of their lives?  Children NEVER have a chance at a normal life.  The registry is clearly punishment and it isn't even civilized. We are better than this.

The Right to Travel
The doctrine of the "right to travel" actually encompasses three separate rights, of which two have been notable for the uncertainty of their textual support. The first is the right of a citizen to move freely between states, a right venerable for its longevity. The second, expressly addressed by the first sentence of Article IV, provides a citizen of one state who is temporarily visiting another state the "Privileges and Immunities" of a citizen of the latter state. The third is the right of a new arrival to a state, who establishes citizenship in that state, to enjoy the same rights and benefits as other state citizens. This right is most often invoked in challenges to durational residency requirements, which require that persons reside in a state for a specified period of time before taking advantage of the benefits of that state's citizenship.

**Depriving persons of rights or privileges**
If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State

4

or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**The sex offender registry violates equal protection of the laws and equal privileges and immunities of the laws.**
**Sex stings violate equal protection of the laws and equal privileges and immunities of the laws.**

**The Fourth Amendment**
Electronic surveillance can implicate the Fourth Amendment right of the people to be secure against unreasonable searches and seizures. The U.S. Supreme Court initially ruled in Olmstead v. U.S (1928) that electronic eavesdropping is not a search or seizure since the government intercepted conversations without entering the defendant's home and conversations aren't tangible things to be seized. However, the Court later overruled *Olmstead* in *Katz v.* U.S. (1967) and held that the Fourth Amendment protects any place where an individual maintains a reasonable expectation of privacy. Both cases involved wiretapping or bugging.


**Reasonable Expectation of Privacy**
A person has a legitimate expectation of privacy if he honestly and genuinely believes the location under surveillance is private, and if a reasonable person in the same or similar circumstances would believe the location to be private as well. Therefore, the government has more latitude to legally survey communications in a public place than it does in a private place.

**Warrant Requirement**
Because electronic surveillance is a search under the Fourth Amendment, it is subject to the same warrant requirements as other searches. To obtain a warrant, the government must show probable cause to believe a search is justified, describe in particularity the conversation to be intercepted, and provide a specific time period for the surveillance, among other requirements.

As with other searches and seizures, exigent circumstances may serve as grounds for the government to forgo obtaining a warrant. If a situation threatens a person's life or the national security, or a conspiracy suggests the existence of organized crime, then the government may proceed without a warrant.

**Sex stings are supposed to go by the guidelines of ICAC. ICAC**

10 Investigates obtained through court records indicates the online undercover stings, which typically don't involve real children or victims, are not even specified in the list of priorities agencies are supposed to target:
- A child is at immediate risk of victimization.
- A child is vulnerable to victimization by a known offender.
- A known suspect is aggressively soliciting a child(ren).
- Manufacturers, distributors or possessors of images that appear to be home photography with domiciled children.

5

- Aggressive, high-volume child pornography manufacturers or distributors who either are
  commercial distributors, repeat offenders, or specialize in sadistic images.
- Manufacturers, distributors, or solicitors involved in high-volume trafficking or belong to
  an organized child pornography ring that operates as a criminal conspiracy.
- Distributors, solicitors and possessors of images of child pornography.
- Any other form of child victimization.

Cops go to ADULT sites and cruise.  **They** contact almost every man posting.  **THEY** send a photo of an ADULT female.  **THEY** ask to meet. The man is arrested for traveling to meet a minor.  NOT CHARGED WITH SEX TRAFFICKING.


# UNENUMERATED RIGHTS
# NINTH AMENDMENT

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

It is clear from its text and from Madison's statement that the Amendment states but a rule of construction, making clear that a Bill of Rights might not by implication be taken to increase the powers of the national government in areas not enumerated, and that it does not contain within itself any guarantee of a right or a proscription of an infringement.  In 1965, however, the Amendment was construed to be positive affirmation of the existence of rights which are not enumerated but which are nonetheless protected by other provisions.

Although privacy is not mentioned in the Constitution, it is one of the values served and protected by the First Amendment through its protection of associational rights, and by the Third, the Fourth, and the Fifth Amendments as well. The Justice recurred to the text of the Ninth Amendment, apparently to support the thought that these penumbral rights are protected by one Amendment or a complex of Amendments despite the absence of a specific reference. Justice Goldberg, concurring, devoted several pages to the Amendment.

"The language and history of the Ninth Amendment reveal that the Framers of the Constitution believed that there are additional fundamental rights, protected from governmental infringement, which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments. . . . To hold that a right so basic and fundamental and so deep-rooted in our society as the right of privacy in marriage may be infringed because that right is not guaranteed in so many words by the first eight amendments to the Constitution is to ignore the Ninth Amendment and to give it no effect whatsoever. Moreover, a judicial construction that this fundamental right is not protected by the Constitution because it is not mentioned in explicit terms by one of the first eight amendments or elsewhere in the Constitution would violate the Ninth Amendment. . . . Nor do I mean to state that the Ninth Amendment constitutes an independent source of right protected from infringement by either the States or the Federal Government. Rather, the Ninth Amendment shows a belief of the Constitution's authors that fundamental rights exist that are not expressly enumerated in the first eight amendments and an intent that the list of rights included there not be deemed exhaustive."

Therefore, although neither Douglas' nor Goldberg's opinion sought to make the Ninth Amendment a substantive source of constitutional guarantees, both read it as indicating a

6

function of the courts to interpose a veto over legislative and executive efforts to abridge other fundamental rights. Both opinions seemed to concur that the fundamental right claimed and upheld was derivative of several express rights and, in this case, really, the Ninth Amendment added almost nothing to the argument. But, if there is a claim of a fundamental right that cannot reasonably be derived from one of the provisions of the Bill of Rights, even with the Ninth Amendment, how is the Court to determine, first, that it is fundamental, and second, that it is protected from abridgment?

An adult person, visiting an adult site that requires a claim of being 18 or older, where fantasy and role playing are paramount, deserves the right to privacy believing the only people on that site are indeed adults even if they are playing out fantasies or role playing. And adult in that situation is on the Internet, a place were we all know anything goes and everything is not true or fact.  On these sites they play out fantasies and play games often pretending to be someone or something they are not.  So when an ADULT person is there the cops have NO RIGHT to contact them, pursue them, and set them up on a sex sting. Cops have no right to use psychological tricks to reign these person's in to get a conviction.  The adult person on that adult site has the right to PRIVACY.  The stings violate the NINTH Amendment.

7

**TRAVEL**

The passport notification law forces convicted child sex offenders to basically bear a "proverbial Scarlet Letter" on their passports. This law is just like how the the Nazis treated Jewish people. The Nazis would mark Jewish passports with a "J" and the Soviet Union listed citizens' ethnicities as Jewish while others listed their place of birth. There is no provision for those who are rehabilitated or have had their records expunged to be able to get the mark removed.  It also doesn't exempt anyone who was a minor at the time of their offense.

**Instead of focusing on people who have demonstrated a propensity to commit such crimes, the IML casts a** wide net that covers offenders who have never assaulted a child, let alone traveled to another country for that purpose. The Americans whose passports will brand them as international child molesters include people convicted of misdemeanors as well as felonies, people who committed their *offenses as minors,* people who were *convicted decades ago and have never reoffended*, people who as *teenagers had consensual sex* with other teenagers, and people who *committed noncontact offenses such as sexting, streaking, public urination, and looking at child pornography*.

> The registry and passport labels violate our constitutional rights:  of ex post facto, due process, cruel and unusual punishment, equal protection and search and seizure.  A study published in fall 2015 found that statistics cited in two U.S. Supreme Court decisions that are often cited in decisions upholding the constitutionality of sex offender policies are unfounded.

The Right to Travel

The doctrine of the "right to travel" actually encompasses three separate rights, of which two have been notable for the uncertainty of their textual support. The first is the right of a citizen to move freely between states, a right venerable for its longevity. The second, expressly addressed by the first sentence of Article IV, provides a citizen of one state who is temporarily visiting another state the "Privileges and Immunities" of a citizen of the latter state. The third is the right of a new arrival to a state, who establishes citizenship in that state, to enjoy the same rights and benefits as other state citizens. This right is most often invoked in challenges to durational residency requirements, which require that persons reside in a state for a specified period of time before taking advantage of the benefits of that state's citizenship.

> Each state has different rules and laws on their registry.  Even though we have the right to travel from state to state, we can end up in prison in a state other than our own in for something in which we did not even know violated their sex offender laws.  In some states a person may not be required to register at all or has gotten off, but in another may be required for the same crime to register for life so may end up in prison in that state even though they didn't actually commit a crime, but because they believed due to their own state requirements, there was no problem.  That is the government creating a crime committed by someone who had no intention to do so.

> How is the registry not punishment?

# The Sex Offender Registry: Vengeful, unconstitutional and due for full repeal

By Jesse Kelley, opinion contributor — 03/05/18 08:00 AM EST
The views expressed by contributors are their own and not the view of The Hill

The Bureau of Justice Statistics reports that at least 95 percent of all state prisoners will be released from prison at some point. However, convicted sex-offenders almost exclusively face the vengeful, additional punishment of registration under the Sex Offender Registry and Notification Act (SORNA).

Generally, under SORNA, an individual who is required to register as a sex offender must register at least once a year; report any change of address within as little as three days; produce vehicle information, a recent photograph and a DNA sample; and abide by stringent residency restrictions, which can force individuals out of urban areas, away from family and into unemployment.

SORNA violates our nation's founding documents by singling out a specific category of offenders for unfair, unconstitutional punishment. While the Department of Justice cites public safety as its rationale for continuing to enforce the overreaching requirements of SORNA, the program has metastasized, defacing some of our most treasured rights: the right to due process, the right to be free from double jeopardy and the right to avoid cruel and unusual punishment.

The right to due process can be found in the Fifth and 14th Amendments of our Constitution. Due process is commonly understood to include the presumption of innocence, the right to a fair trial and the right to counsel — ideas that ensure a defendant is treated as fairly as possible in our adversarial criminal justice system. It can be "gauged by its aim to safeguard both private and public rights against unfairness."

Despite what some courts have found, the current requirements of SORNA violate due process, specifically the tenet of presumption of innocence, or the idea that a person is innocent until proven guilty. Each state differs in how it implements SORNA, so an individual's length of registration varies by state. For example, all sex offenders in California and South Carolina register for life, regardless of the crimes committed. By demanding post-detention reporting for up to a lifetime, the court is presuming that an individual has the propensity to commit a certain type of crime in the future and therefore must be scrupulously supervised.

Courts have addressed this concern when the individual required to report is a minor. The Pennsylvania Supreme Court ruled that the state's version of SORNA violates juvenile offenders' due process rights because the requirements of satisfying SORNA assume that a juvenile will commit some sex offense in the future without giving him or her the opportunity to challenge that assumption. Equity demands assigning this same ruling to adult reporting requirements.

AR-00001406

Another element of due process known as "double jeopardy" appears in the **Fifth Amendment** and protects an individual from being prosecuted for the same offense twice. It also bars multiple punishments for the same crime. Individuals convicted of crimes who have faced incarceration and then must begin sex registry-reporting are certainly being punished repeatedly.

SORNA requirements punish ex-offenders by inflicting upon them tangible, secondary punishments, like the inability to qualify for housing and increased difficulties securing employment. These secondary punishments effectively banish ex-offenders to a modern leper colony by not only removing re-entry resources but also by affirmatively ostracizing those attempting to rebuild a life after incarceration.

In addition to violating double jeopardy, repeated punishments violate the **Eighth Amendment** by **imposing cruel and unusual punishment**. The government is prohibited from imposing a criminal sentence that is either vindictive or far too harsh for the crime committed. Incarceration is intended to be a punishment and a deterrence, so any subsequent punishment can only be vindictive. After incarceration, an ex-offender's privacy is significantly diminished by the requirement to report one's name, address, photo, employment status and provide a DNA sample.

Last fall, a federal judge found that the Colorado sex offender registry's punitive impact outweighed any value it might have had in protecting the public and **concluded that registration violates the prohibition against cruel and unusual punishment.** As the judge specifically stated,

> "This ongoing imposition of a known and uncontrollable risk of public abuse of information from the sex offender registry, in the absence of any link to an objective risk to the public posed by each individual sex offender, has resulted in and continues to threaten [sex offenders] with punishment disproportionate to the offenses they committed."

As Clarence Darrow famously said, "You can only protect your liberties in this world by protecting the other man's freedom. You can only be free if I am free." Protecting the **constitutional rights of everyone,** even *those convicted of sex offenses,* is of the upmost importance for protecting our freedom.

Therefore, both legislators — by way of developing and amending laws — and judges — via hearing arguments and creating case law — must re-examine SORNA in order to preserve liberty and uphold the Constitution.

*Jesse Kelley (@JessdKelley) is a policy analyst and state affairs manager for criminal justice at the R Street Institute, a nonprofit group aimed at promoting limited government in Washington, D.C.*

# How law enforcement turns law-abiding men into sexual predators

10 Investigates gets results with reporting, year-long public records battles

Author: Noah Pransky (WTSP)
Published: 12:26 PM EDT July 17, 2015
Updated: 12:26 PM EDT July 17, 2015

**TAMPA BAY, Florida (Dec. 29, 2014)** -- A drawn-out struggle to obtain public records has started to yield results for 10 Investigates, as local agencies have started releasing limited records – and providing insight – regarding how law enforcement conducts controversial sex "predator" stings.

Records recently obtained by 10 Investigates – primarily through the court system, since law enforcement agencies continue to deny public record requests – detail the incredible man hours dedicated to the stings, ways some officers violated the rules to boost arrest totals, and even

how agencies take valuable property from individuals accused.

10 Investigates previously reported how many of the men arrested and publicly shamed by made-for-TV press conferences were not actually looking for children online. Instead, they were looking for other adults when detectives started to groom and convince them to break the law.

And while law enforcement leaders have denied any widespread issues with the operations, 10 Investigates continues to find evidence - in documents those agencies wanted to keep private – that details a pattern of officer misconduct in an effort to boost arrest totals.

Following 10 Investigates' year-long investigation, it was apparent law enforcement's approach toward the stings had changed: they ran fewer operations, skipped press conferences sometimes, and arrested far fewer men than had become routine. The Department of Justice also launched a review of Central Florida's Internet Crimes Against Children (ICAC) task force.

Yet law enforcement agencies have continued to stymie some of 10 Investigates' questions and record requests, often providing overly-broad public record exemptions as an excuse.

***UPDATE JULY 2015****: After pressure from the legal department of WTSP's parent company, Gannett/TEGNA, the Polk Co. Sheriff's Office started turning over emails they previously said didn't exist. A spokesperson said the agency made a "mistake" and provided 13 emails from two different stings. While the records included significant redactions, it showed detectives responding to legal Craig's List "casual encounters" ads with a standard "hey what age you looking for" message. 10 Investigates is continuing to analyze the records as they are obtained.*

10 Investigates was seeking detectives' emails to men who ultimately showed no interest in having sex with underage teens. An open-records advocate in Attorney General Pam Bondi's office suggested the records should be public.

However, most of the examples 10 Investigates obtained through the judicial system were from men who were ultimately arrested – not the cases where officers unsuccessfully tried to deceive a target. 10 Investigates was trying to determine whether entrapment techniques were limited to just a few isolated cases, or whether they were more widespread.

AR-00001408

Yet, despite the limited records obtained, 10 Investigates was able to determine a pattern of exaggerations on arrest reports by law enforcement officers involved in the stings.

Some officers claimed men were looking for children online when there was never any evidence to support the statement. But officers would use the claims to pile on additional felony charges, which were didn't just serve to publicly shame the accused men, but also allowed law enforcement to seize their property: two repercussions that – even when some of the men are exonerated – typically burden them socially and financially for the rest of their lives.

In addition to federal grant dollars used to run the ICAC stings, 10 Investigates found law enforcement agencies frequently took the vehicles from men arrested and kept them as their own – even when charges against the men were dropped.

In November, 10 Investigates reported how Florida's Contraband Forfeiture Act made it easy for agencies to seize property as their own from anyone accused of committing a felony – even if charges are ultimately never filed.
Sex stings have become especially rich sources for seizures, since almost every man arrested is accused of traveling to seduce, solicit, or entice a child to commit a sexual act…even though no real children are ever involved in the stings. However, the accusations are felonies, meaning law enforcement can seize suspect's vehicles, making it extremely difficult for them to ever get them back without paying thousands of dollars – or more - in cash to the arresting agency.

For example, in one January 2014 sting where the Clearwater Police Department (CPD) and Pinellas County Sheriff's Office (PCSO) arrested 35 men in a single weekend, CPD seized 19 cars as their own under Florida's Contraband Forfeiture Act.

The two agencies also arrested "in excess of 20" men in a similar April sting, which was after 10 Investigates started asking questions about the operations, and 11 more men in a September sting, after 10 Investigates had aired multiple stories on the topic.

Even though the number of men arrested dropped once a spotlight was shined on how they operated, CPD and PCSO were still able to seize nine vehicles in the April sting and three vehicles in the September sting.

If suspects are unable to win their vehicles back through civil procedures, the agencies are allowed to keep the vehicles for their own use or sell them at auction for cash. Often, attorneys for the agencies negotiate to sell the vehicles back to their original owners for up to half of the vehicle's estimated value.

One 24-year-old man, arrested in the January sting in Clearwater, had to pay $10,000 cash to get his 2014 Lexus returned. And even though all felony charges were later dropped in his case, he will not get the money back for either the negotiated settlement or the fees he paid an attorney to handle the vehicle case.

Clearwater's police chief at the time, Anthony Holloway, is now the chief of St. Petersburg's police department, but has not yet accepted interview requests for this story.

The Polk County Sheriff's Office, which serves as the leader of Central Florida's ICAC task force, also has seized a great deal of property the last few years in predator stings. The agency provided a list of nine late-model vehicles it was ultimately awarded, as well as several other pending or negotiated cases.

The Polk Co. Sheriff's Office also seized $15,900 from a suspect in a June 2013 sting, negotiating with him to split the proceeds 50% each. The sheriff's office netted $7,950 from the seizure.

Similar hauls were noted from predator stings around Florida, including in Osceola County and Lee County.
**ALSO READ: *Columbia Journalism Review* lauds 10 Investigates' reporting**

Most of the cases examined by 10 Investigates involved men who weren't necessarily looking for underage teens, but either posted – or responded to – ads seeking adults. Sometimes, the officers would act as an interested adult with a teenage "sister" who was also interested.

Even though many of the men had no interest in the underage decoys, if they traveled to meet the adult, they were arrested as a "sexual predator" and charged with "traveling to meet a minor."

In the case of a 27-year-old Cape Coral man, arrested during the Lee County Sheriff's Office (LCSO) sting this past May, deputies arrested him even though he didn't even travel to meet a child for sex. Law enforcement officers responded to the man's legal "casual encounters" Craigslist ad, pretending to be a 14-year-old girl, even though the ad said, "age for all women must be 18+ no one under email me plz."

The man repeatedly told the undercover detectives that he was "not OK" with meeting up with an underage girl, but because he didn't immediately end the conversation, he was arrested for utilizing his phone to solicit a sexual act from a child. Detectives went to his house and arrested him as a sexual predator of children.

Prosecutors decided there was insufficient evidence to prosecute on either of the accused charges, yet the accusations and man's name remain on LCSO's online press releases and other media outlets' news stories.
-----
Law enforcement officers also frequently broke their own rules and introduced sex to otherwise innocent conversations.

Among the victims of detectives ignoring ICAC guidelines was a 21-year-old in Pinellas County who responded to a DateHookup.com ad posted of an 18-year-old woman. The officer who posted the ad during Operation Home Alone II started exchanging messages with the man when he asked her to a movie.
The officer wrote, "are you Ok with me being under 18?" The 21-year-old continued the conversation.

Following more exchanged messages and text messages, the detective later added that "she" was about to turn 16, the age of consent in Florida.
As the two continued to swap texts, the man said "I don't want to have sex, is that OK?" But the detective, who repeatedly rejected the man's interest in a possible relationship, kept pushing sex and threatened to call off their meeting. When the man finally indicated he would have sex, police had enough to charge him with numerous felonies.
Prosecutors declined to file charges, but the man's name and accusations still appear on at least one local media outlet's website.
-----

AR-00001410

A 19-year-old man in Orange Co. was accused of soliciting the guardian of a 13-year-old decoy to arrange sex with her. But the evidence proved differently, as the man was merely responding to an innocuous ad from a 26-year-old woman, which was posted by law enforcement. The detective later tried to convince the man to have sex with the woman's "younger sister," even though he showed little interest.

According to notes from the prosecutor, "this is a tough case" because of "entrapment issues." The man chatted with what he believed to be a 26-year-old woman for five days and the "Law Enforcement Officer suggest(ed) sex first on 2nd day." The defendant said several times he wasn't interested in the 13-year-old, even suggesting he bring a younger teenager boy for the girl when the detective kept bringing the teenager into the discussion. The prosecutor also noted the "law enforcement officer again suggests illegal sex 2 more times" but the defendant was non-committal."

Ultimately, after hundreds of text messages, the man agreed to sex with both females, and was arrested upon arrival. The state declined to prosecute, but the accusations and man's name remain public record.

Court records from "Operation Home Alone," a January sting by the Clearwater Police Department and Pinellas County Sheriff's Office, detail 34 websites and apps targeted by law enforcement as potential breeding grounds for child predators. There is no love lost between deputies and sites like Craigslist and Backpage.
But the law enforcement plan also included sites like Facebook and Twitter, as well as legal dating and social media sites MeetMe.com, Fling.com, Omegle.com, Hi5.com, Tagged.com, and SpeedDate.com.
In most cases, detectives weren't posting ads of children, but ads of adults looking other adults. They would then later introduce a child to the conversation, or switch his/her age to that of a teenager.

And, as 10 Investigates previously reported, detectives were frequently reaching out to law-abiding men posting law-abiding ads on legal dating sites, seeking other adults. In Lee County, arrest records indicate detectives responded to one man's ad on the traditional dating site PlentyOfFish.com.

10 Investigates has pushed to see other records from law enforcement officers responding to legal dating ads on legal dating sites, but almost every request has been refused. Often, public record exemptions are cited, ranging from "active investigation" to "confidential surveillance techniques," but a Lee County Sheriff's Office spokesperson said records from their June sting had already been destroyed by July.

10 Investigates reported this summer how law enforcement agencies were spending tens of thousands of dollars and hundreds of man-hours on each sting. Yet the majority of the men arrested were either teenagers or in their early 20s and not considered high risks to children. In fact, some law enforcement officers have told 10 Investigates the federal ICAC guidelines seem to de-emphasize undercover stings where there is no probable cause to begin with.

Polk County Sheriff Grady Judd repeatedly said men seeking children online was a problem in Central Florida, but provided few examples of actual children being approached.

New documents – notes obtained from prosecutors trying to establish probable cause in court - further bolster 10 News' initial findings that the stings offered a solution to a supposed widespread problem that didn't actually exist in Central Florida.

In 2013, a prosecutor declined to pursue "traveler" charges against a man caught in an Osceola Co. sting because the "state tried to find evidence that the crime of solicitation of minor via computer (parent) was taking place…there are no known cases."
The prosecutor notes the detective "asked ICAC affiliate + the FBI and was able to come up with about 5 examples Nationwide. None in Central FL."

Another Osceola Co. prosecutor in the case of a 21-year-old defendant wrote, "biggest concern was entrapment argument b/c the LE Operation was not really addressing on-going criminal activity…There have been NO documented cases in this area of parents being solicited on-line for sex w/their minor children."

You can read those documents **here** and **here**, but WTSP chose to redact personal information and case numbers from the documents to protect men who have been exonerated from their crimes. The state also redacted some information in accordance with Florida public records laws.
10 Investigates reported how spending tens of thousands of dollars at a time on these controversial stings could be taking away valuable resources from other areas of cybercrime.

In fact, a 2010 audit by the US Dept. of Justice's Office of Justice Programs told the Polk County Sheriff's Office that the ICAC task force wasn't responding quickly enough to some high-priority CyberTips:
"From review of data over the period of March 2009 thru March 2010, there were multiple instances when it took the agency 20-30 days to review CyberTip data," the agency wrote in a summary letter. "Given the amount of federal support in this initiative, the average review time is not meeting the goals of the program. OJJDP strongly recommends that the locality provide additional resources towards the review, referral, and investigation of CyberTip data. These tips represent crucial information that may lead to the rescue of a child victim."

Records indicate the other issues in the 2010 audit, including improved reporting & accounting from the task force, appear to have been addressed.
A DOJ spokesperson tells 10 Investigates it is currently reviewing the millions of dollars in grants awarded to Polk County Sheriff's Office and the Central Florida ICAC task force.

Another issue exposed by 10 Investigates involved the potentially illegal involvement of the Air Force Office of Special Investigations (OSI). Federal law dating back to Reconstruction mandates the military may not be used to enforce local laws.
In some recent cases, an OSA agent working out of MacDill Air Force Base admitted to reaching out to random personal ads online and hoping he might snare a servicemember.

Among the cases profiled by 10 Investigates was that of a man arrested in Pinellas County earlier this year. The prosecution agreed to drop all sex-related charges in exchange for a plea bargain on one misdemeanor charge of "unlawful use of a two-way communications device."

The defense attorney tells 10 Investigates it was "too good of a deal" for his client to pass on, but had full confidence a judge would have thrown the case out, especially after a federal court in Seattle issued a similar ruling.
**READ:** Air Force Involvement Prompts Motion to Dismiss

AR-00001412

Pinellas County Sheriff Bob Gualtieri said his agency has stopped working with the Air Force OSI on predator stings since 10 Investigates brought it to his attention. Gualtieri also declined to call a press conference following Pinellas County's most recent undercover sting in September, a departure from the standard made-for-TV events agencies typically hold for media outlets at the conclusion of an operation.

Prosecutors tell 10 Investigates that even though a number of law enforcement leaders won't participate in the undercover stings anymore, the agencies that are still conducting them are paying more attention to the rules than ever before.

State attorneys' offices have worked with law enforcement agencies to make sure the stings are targeting potentially-dangerous predators seeking children, and not teenagers who may just be looking for partners close to their age.

If you have any additional information as to how the predator operations are conducted, please contact Noah Pransky at npransky@wtsp.com. You can reach Noah on Twitter at @NoahPransky, or connect with him on Facebook too.

**NPR Eschews Journalism in Favor of Moral Panic**

Good Morning I Am Full Of Rage III: Cannonball Run

Normally, I don't want to be writing *this much* but an NPR story ran today that I feel comfortable saying is journalistic malpractice. Thus, I'm compelled to say something about it. Here we are.

A piece by Cheryl Thompson ran under the headline of *Sex Offender Registries Often Fail Those They Are Designed To Protect.* As Stephen Hardwick — an appellate public defender in Ohio — often notes the only people that registries are designed to protect are incumbent politicians. That being the case, I would be extremely surprised indeed if the headline held up under scrutiny. And, strangely enough — it does! Just for reasons that are completely contrary to the reporting.

A bit of foregrounding: most people on sex offense registries don't go on to commit additional offenses according to the *government's own data*, and that 95.8% of all reported sex crimes that are cleared by arrest are attributable to people who aren't or would not be on a registry. These are two unstated premises that the piece relies on for its newsworthiness, and it never bothers to mention that they're inaccurate (thus my quip about journalistic malpractice: you're not supposed to be making people *less* well informed and *more* afraid at the same time).

The article itself focuses mostly on how people abscond or otherwise become non-compliant with the myriad laws in various states that regulate the lives of people with past sex offense convictions who have exited the legal system:

> The men are among the more than 25,000 convicted sex offenders and predators across the U.S. who have absconded, their whereabouts unknown to law enforcement or the victims — often children — whom they sexually assaulted or abused, an NPR investigation has found. Tens of thousands of others are out of compliance with sex offender registry laws.

It sounds kind of scary — especially the bit about "tens of thousands" who aren't compliant, but that's only if you assume that there is some kind of relationship between those laws and sexual recidivism (which is, ostensibly, the purpose of those compliance laws). What the research, of course, has generally found is that there isn't a relationship between compliance and sexual recidivism:

AR-00001414

Also, compliance laws are oftentimes insanely technical that even law enforcement often can't understand what's required of people on the registry. If law enforcement can't understand the laws, how are people relegated to a homeless shelter supposed to?

Oftentimes what these prosecutions boil down to is if you have ever neglected to update your license after a move, except it's a felony offense now, except as the affidavit indicates, it's actually much more complicated. Further, some jurisdictions reset registration time (which tend to be lengthy, like 10 or 20 years or lifetime) if someone is convicted of failure to register, meaning more opportunities to make more mistakes and commit more "crimes." It becomes a cycle of "criminality" that is nearly inescapable.

Back to the piece:

> Many state registries are rife with errors, such as wrong addresses or names of offenders who died as long as 20 years ago. Others include the names of hundreds of offenders who have failed to verify their whereabouts in more than a decade.
>
> …
>
> Some sex offenders commit additional sex crimes after failing to tell police their whereabouts. In Missouri, for instance, a man who pleaded guilty in 1991 to sexually abusing a 5-year-old girl was convicted in 1998 and in 2017 of sex crimes against other minors, after moving between states without registering.

It is true that many state registries have many errors in them, but again — so what? And, not for nothing, but Florida keeps dead people on its registry to keep it bloated and thus boost the federal dollars it rakes it in for maintaining it.

The assumption here is that knowing where people are, or if they are compliant, means that we're enhancing public safety somehow. Again, research has indicated that these public registries tend to make re-offense *more* likely, probably by destabilizing the lives of people on the registry. Even if you know where people are, so what? Phillip Garrido kidnapped and kept Jaycee Dugard in captivity while on a registry and active parole supervision in California. There's really no skepticism at all in the piece about that basic point, which is astonishing.

Incredibly, the reporter tracks down one of the people who the D.C. registry lists as non-compliant and interviews them. Whether or not what NPR did here is ethical — that is tracking down and hassling a 61-year old man over a 30-year-old conviction and functionally threatening him with imprisonment because his paperwork wasn't in order — is up for debate:

> NPR found Lang after checking court documents in Maryland and discovering a traffic citation from May 2019 for driving with an expired license. The court record listed an address in Northwest D.C., about 9 miles from the address he listed on D.C.'s public sex offender registry.
>
> Authorities haven't gone after him for failing to register, despite stopping him for several traffic violations, including the 2019 incident.
>
> "I've been living right here going on four years," he told NPR. "If you can find me, why the law can't find me?"
>
> "This is ridiculous, man. I'm not hiding," he added.

At least, unlike the USA TODAY piece that ran a little while ago, it didn't include his home address in the story. Small blessings. But the point is that Mr. Lang wasn't "hiding," he was just living his life, and ostensibly isn't a threat to anyone. The piece could ask *why are we harassing this man? why are we devoting public safety resources to tracking him over a crime that occurred in the early 90's?* but, of course, does not.

Also, the piece gives some context about how registries got their start:

> A federal law passed in 1994 known as the Jacob Wetterling Act requires states to establish registration programs for people convicted of sex crimes or crimes against children. The law was named for a Minnesota boy abducted by a man as the 11-year-old rode his bicycle home from the store in 1989. That law also requires states to verify addresses of convicted sex offenders every year for at least 10 years.

Which is sort of ironic, because as APM's In the Dark deftly reported, the case that spawned registries would not have been solved or prevented with one, but rather with basic, fundamental police practice that was not followed in Wetterling's abduction and murder. In essence, the

AR-00001416

Wetterling case was an example of the government not doing its job in the first place and parlaying that negligence into asks for unprecedented power and authority: that is, the registry.

Patty, Jacob's mother, championed these laws initially but has in recent years become a critic of the same laws that bore her son's name. In 2019, she gave a keynote address at a symposium in St. Paul, Minnesota questioning their utility and fairness.

But the NPR starts and stops with the story of Kristen Trogler, a survivor of child sexual abuse. Her abuser, Robert Maurer, was subsequently non-compliant and also convicted of a subsequent sex offense.

> Thirty years have passed since Trogler's abuse, but she relives it daily. She says she turned to drugs and alcohol as a teen.

> "I was in pain," she told NPR. "I wanted to not be in this black hole that I'm still in every single day."

It is, I think, impossible not to have sympathy for Trogler — I'm also a survivor of childhood sexual abuse, and I've written about that elsewhere. But our criminal system, and indeed these post-conviction registration systems aren't really designed to help survivors heal. Indeed, they're wholly indifferent to whether or not survivor's heal. I'm currently writing another piece that argues it's actually in the criminal system's *interest* to ensure that survivors continue to suffer, because so long as survivors continue to suffer the criminal system retains its legitimacy to inflict never-ending punishments — in other words, the trope people often use to justify these harsh punishments is that "well if survivors have to suffer forever, why shouldn't the abuser?"

Okay, but what if they didn't have to?

But, back to the point, what is clear is that Trogler has carried a tremendous amount of pain for a very long time, due at least in part or in whole to abuse that Maurer visited on her when she was very young. It's just not clear how any aspect of the story is at all related to things that would have either protected her in the first place, or helped her subsequently. The piece centers Maurer's absence from Missouri's registry as a cause for concern, but then later observes he is serving a prison term of life without parole. His absence from the registry isn't exactly a mystery.

Because of that disconnect, Trogler's suffering is being used here as little more than a prop by Thompson. Were she genuinely concerned about Trogler's suffering, it might have been interesting to examine the ways in which criminal justice processes are largely indifferent to the healing of survivors, or that these systems are undermining support structures for survivors. Indeed, as ATSA observes, *victim adovacy organizations have questioned the large expenditure of funds on sex offender management tools that may not really protect communities, while resources and services for victims are being cut*.

These stories are difficult, because they are rich with pain and trauma and loss and anger and disgust. They also involve a hideously complex area of law and social science that require at least a little bit of research, that oftentimes journalists simply aren't very interested in (as seems to be the case here).

One of the few useful quotes in the piece — which is glossed over by the reporter and buried in the middle of the piece, is from Kelly Socia, a criminology professor at the University of Massachusetts who has authored a number of research articles about this topic:

> "The registry really doesn't work," Socia says. "It's a bloated, inefficient system that is incredibly expensive to maintain. I don't think it really protects anybody."

So in the end, I agree with the headline of the piece. Registries really *don't* protect people they're intended to, just for much more profound and basic reasons than the NPR article articulates.

**Update:** I normally wouldn't circle back to this, except that I listened to the audio of Cheryl Thompson's story and it is — improbably, and against all odds — even worse than the print reporting.

It opens with her accosting 61-year-old Mr. Lang on a basketball court where she tells the listener that he is a regular since being released from prison for rape, but that he isn't properly registered with DC authorities. She does not mention in the audio that his crime was almost 30 years ago, and that he was released from prison almost 20 years ago (which to her credit, she does at least include in the print reporting). She then proceeds to tell his neighbors about what he did three decades ago (to be fair, I have no idea if Thompson did that, or simply referred to him as a convicted rapist who was non-compliant and asked for their response).

In both the print reporting and the audio, she heavily implies that Lang and the other people she writes about are intentionally evading these requirements — referring to them as "absconders," but at least notes in the audio that Lang gave authorities a different address than the one that was on the registry. If Lang were intentionally evading these requirements, as opposed to simple neglect or forgetfulness, wouldn't he make sure to provide police with the address he is supposed to be at?

Thompson also, inexplicably, discloses that Lang suffers from AIDS, despite that not being relevant in any way to her ostensible lede. It is needless, thoughtless, empty cruelty.

The one subject who didn't make the print reporting, but *does* appear in the audio is a veteran living in a VA long-term care facility in Illinois who was convicted of sex abuse more than three decades ago. He, too, was not properly registered so Thompson reached out to police who then issued an arrest warrant for the presumably ailing man.

To be clear, I am not defending what either he or Lang did decades ago. But what this reporting indicates, is that so long as the subjects of your story have done something bad in the past that they were held accountable for — no matter how long ago it was — you're free to ignore essentially any ethical considerations when reporting on them. Is it ethical that you're seeking to imprison terminally ill senior citizens in the middle of a pandemic for the equivalent of not having their paperwork in order? Is it ethical to disclose the HIV/AIDS status of a subject of your story, when that has no relevance at all to your lede? Maybe it is, but I certainly don't think so. Either way, I'm confident that these were not questions that neither Thompson nor her editors at NPR even bothered to consider.

Case 5:22-cv-00855-JGB-SP   Document 86-4   Filed 12/15/23   Page 284 of 592   Page ID #:2085

9/7/2020          Guilt by Association: Labeling Research-Based Policy Suggestions as "Pro-Offender" | by Lisa Anne Zilney | Sep, 2020 | Medium

You have **2** free stories left this month. Sign up and get an extra one for free.

# Guilt by Association: Labeling Research-Based Policy Suggestions as "Pro-Offender"



Lisa Anne Zilney
Sep 7 · 11 min read ★

In the current political climate, keyboard warriors are out in full force: tossing rude insults, stigmatizing and labeling individuals, and posting adversarial disagreements to almost every social media post that crosses my desk. I recently stumbled across a Facebook post that advocated letters and petition-signing in the hopes of banning those required to register for a sex offense from yet another venue in life. A little more Facebook digging and I found numerous pages dedicated to labeling both convicted individuals and those only suspected of sex crimes. These pages (which do not violate Facebook's Community Standards) are replete with hate, threats, and violence.



AR-00001420

The reactions I read on this Facebook thread were similar to those I hear from students at the start of a semester of my *Sex Crimes* course.What the public repeatedly fails to understand is that someone required to register for a sex offense could be an individual who urinated in public in a school zone, a 20-year-old who had sexual relations with his 15-year-old girlfriend whom he later married, an individual caught viewing online child pornography, or an individual who kidnapped and raped a child (to name only a few). In their impact, these acts are extremely varied, yet each is under the umbrella term *sex offender* and this individual would be required to register.

Laws across the United States restrict where registrants can both reside and congregate, restrict participation in activities, restrict attendance at school functions for children or grandchildren, restrict travel both national and international, provide employment and licensure restrictions, provide designations on passports and driver's licenses, allow for mandatory minimum sentences, and use a public registry to identify many individuals for life. Such legislation merely serves to create a public that *feels* safer; these laws do not empirically decrease sexual violence. But does that matter to most Americans?



The thread seeking to ban registrants from a sport venue was on a private Facebook group with 32,000 members. On average, a post on this page receives approximately 50–70 comments, with some posts receiving only a dozen comments. The thread in question continued to receive comments for well over a week, with a total of more than 1600 comments. The original poster elsewhere commented that: "It is NOT OKAY to mock or abuse people…It is NOT OKAY to be a bully…People need to start acting like civilized adults!" These suggestions apparently did not apply to this thread…

## Free-Flowing Hate & Misinformation

AR-00001421

The post advocated letters and petition-signing to the governing body of a sport, with
the goal of banning all registrants from acting as a participant or spectator at sponsored
events. After a week online, close to 2,400 people had signed the petition. (As an aside,
this venue, often with children present and often in a public greenspace, would likely
be restricted by existing laws that target a registrant's movements.) It came to the
attention of the original poster that a male registrant involved in this sport was paroled
after serving 12-years of a 14-year prison sentence. The registrant pled guilty when he
was in his early 30s to 4 counts, including indecency with a child and sexual conduct
with a person under the age of 16. The individual was seen participating in an event
(apparently permitted by the conditions of his parole as employment). There were
indeed minors present and his presence offended majority of individuals on the thread.

While some individuals suggested a professional avenue for addressing this concern
rather than Facebook, most posters felt free to direct nasty remarks at both registrants
and anyone who suggested anything but the harshest treatment of registrants.
Comments about registrants illustrated the media-perpetuated view of sex offenses
rather than empirical findings. Some individuals expressed outrage: "Convicted
pedophiles need to be banned…period"; "If your behavior is sufficiently deviant to get
you on the list, out you should go!"; "It's time to start naming names!"; "Pedos should
be banned for life from ANY venue where children even MIGHT happen to be." Some of
the comments were too vulgar to repeat but involved suggestions of dismemberment,
castration, and death.

**MYTH 1:**

Some individuals expressed variations of myths likely learned from the media:
"Pedophiles cannot be rehabilitated which is why they are required to register for the
rest of their lives" or "Pedophiles are incapable of reform according to studies. He will
continue to prey on young girls." One person commented: "You don't cure pedophiles.
That is why the registries exist…." And someone was quick to respond: "You do. With a
bullet." Another suggested: "Sex offenders cannot be rehabilitated. This is not my
personal opinion it is fact. Guaranteed this little (expletive) WILL do this again and
again and again, just give it time…There is no cure!"

**FACT:**

In response to these incorrect assertions, I linked a couple of easy-to-read articles that
demonstrate empirical evidence that treatment can reduce the risk of recidivism and
advance public safety. One link was to The Effectiveness of Treatment for Sexual
Offenders the other to the New Hope for Sex Offender Treatment page. There were no
comments to these links.

But posters were not only hateful to registrants, but also toward anyone who suggested
anything other than barbaric criminal justice responses. These individuals were viewed
as "defenders of child predators and not interested in children's safety," "disgusting,"

AR-00001422

"sex offender apologists," and there were implications that they were themselves sexual offenders.



One individual posted a well-thought out response: "I do not support pedophiles in any way, shape or form but I find this whole thread disturbing. This is not a movement to make anything safer. If it was no names would have been named…Instead it is a direct attack on someone that has already served his time. It has publicly named his relatives. Causing them to have to live through this again. Causing the victim to live through it again. Why? What personal gain are any of you getting from this? It sure isn't going to change anything. It only serves to bring out the villagers with their pitchforks. There

AR-00001423

have been calls to kill him. There are dozens of (armchair) psychologists that assure us
all that this behavior WILL continue. No room for debate. Just further crucifying a man
that has served his time. And just as horrific is the way anyone that doesn't join in on
this vendetta is being treated. Anyone that has dared to disagree has been called
horrible names and has had the wrath of the crowd directed at them. I don't think this
was the original poster's intent but that has been the result. This "peaceful protest" is a
full blown riot….This "riot" does nothing to ensure safety of children…It's the
"unknown sex offender," family relative or inner circle member that is the danger.
Learn about victim grooming, and about secretive behavior….lists don't keep you safe.
Who's next on the list?"

Some of the replies were quite personal: "You are seriously coming off as a pedophile
and I wouldn't trust children around you"; "I think I just threw up a little in my mouth
reading…your…repeated arguments in defense of pedo participation"; "There are
some sex offender apologists in these comments, and it is disgusting. There is no
amount of prison or punishment that can negate the fact that they did what they did";
"What is your agenda defending pedos, I'm going to have to go check that registry
again….maybe the FBI should check your hard drive. People that defend pedos don't
belong anywhere"; "When it comes to pedophile supporters, those people shouldn't
even exist….and some opinions are wrong and (expletive) up. You having an opinion
doesn't mean it has the same value as mine…Not every "opinion" belongs in polite
society"; and "Loving that this post is bringing out the pedophile supporters, gives us
names to stay away from…It's terrifying, my unfriend button is ready LOL."

**MYTH 2:**

Many of the posters suggested they were informed about the recidivism rates of
registrants: "You are part of the problem. Are you aware that sexual predators have a
90% reoffend rate? That is a 90% KNOWN reoffend rate. That actual data is skewed
since most sexual assaults go unreported. It is, more than likely, closer to 99%."

**FACT:**

Wanting to correct this piece of misinformation, I linked an article published in the
*American Journal of Public Health* that outlines several longitudinal recidivism studies.
The article is Sex Offender Laws and Prevention of Sexual Violence or Recidivism.
Several of the highlighted statistics point to a 2.1% recidivism rate for a second sex
crime over 16 years in New York state, and a 5.5% recidivism rate over 14 years in
Ohio. While the article points out methodology issues in recidivism studies, it clearly
notes that "most new sexually based crimes are committed by someone not on the
registry."

Some posters suggested a background check for all exhibiting or attending members at
this venue's events, and another suggested a "list that holds enablers accountable,"
referring to anyone not advocating for draconian, lifetime punishment. A more rational
suggestion was that the government body in question begin to utilize SafeSport. The

AR-00001424

US Center for SafeSport has the "authority to respond to reports of sexual misconduct within the U.S. Olympic & Paralympic Movement" as per the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017. The legislation permits the Center to serve as an independent organization with jurisdiction over cases of abuse (emotional, physical, and sexual), bullying, and harassment of amateur athletes. While SafeSport is not an option here because the sport is not under the guise of the U.S. Olympic & Paralympic Movement, even this suggestion couldn't be agreed upon. Some suggested that: "SafeSport has wreaked havoc. People are accused and tried by the Committee without any way to defend themselves…and with little evidence. Lives can (and have) been ruined." While others expressed that "SafeSport is an absolute joke. They are overwhelmed, underfunded, and don't do their job 90% of the time."

## Inserting Evidence

As the American criminal justice system continues to strengthen laws against individuals who have committed a sexual offense, it is important to understand how attitudes toward controversial criminological topics can be altered based on scientific understanding rather than a media frenzy. In an unsuccessful attempt to share some of the evidence I have learned from 15-years researching sex offenses, I shared this post:

"I have not read 1500+ comments, and I don't intend to (though the message of brand the offender, and/or kill and dismember him is clear). I study registrants and have for 15 years. Here are some factors of interest. It is never the victim's fault and there should be no victim shaming, anytime, anywhere! The recidivism rate is very low — less than 5%. Someone who is on lifetime registration (as most registrants are) is monitored by law enforcement for life. They are usually not permitted to go to parks or where children gather. All registered offenders are not child offenders! There are many other reasons a person in put on the registry (statutory offenses, viewing illicit material, etc). Treatment is mandatory for those with a sex offense conviction and it works to achieve deterrence in the overwhelming number of offenders. Registrants have extreme difficulty finding work, housing etc., and this extends to their family. Labeling offenders and publicly displaying their information does NOT reduce recidivism. You may feel safer, but you are not. And the impact on the offender and his family is severe. Imagine the impact on a child of a registrant when his/her father's name is plastered everywhere and people comment about killing him? Just because you *think* you have the right to know everyone's business, doesn't mean you do! Lists and public shaming do not reduce sexual violence (this is demonstrated by ALL the research in this area!). Education and outreach reduces sexual violence! Programs that teach good touch/bad touch, grooming techniques, and the importance of telling someone. These facts don't make me pro-offender and/or anti-victim. Researchers reveal what works and what doesn't. Stop the fear-mongering and hysteria!"

And then the backlash of comments began: "If you care more about protecting the offender, rather than making others aware that this person is out on parole, YOU are part of the problem." Another wrote: "Well go buy your buddy a beer then. Can't stand

AR-00001425

a woman who doesn't stand by other women. How does he get away with it? Because people like you come to his rescue time and again. Stop it!" And: "You aren't helping yourself. Your defense is textbook what people say who defend predators. You're really a pathetic human to come on here to defend a sexual predator."

One person requested I link resources to back up my "opinions," so I provided several, including repetition of the information on treatment effectiveness. I linked an article entitled Sex Offender Registries: Common Sense or Nonsense? from *Criminal Legal News* and a government report entitled Sex Offender Laws and Prevention of Sexual Violence or Recidivism. Despite these articles and government statistics, I was still bombard with public posts and personal messages about the use of "my" fake statistics! In frustration, I replied again:

"There is so much misinformation in this thread, I literally don't even know where to start. Pedophiles do not comprise all registrants, so banning registrants from an increasing number of places that children gather makes no sense if someone is registered for any number of online or adult offenses. The registry doesn't empirically lower sex crime rates. Just because you know all about your neighbor's business does not keep you safer! Sex crime rates are lowered through treatment, education, outreach. And the recidivism rates are very low. It's unrealistic to make policy based on a small percentage. Offenders need to reintegrate into society with jobs, housing, etc. to help deter a future offense. Someone on this thread said, "Don't question victims based on the 5-ish percent of people that make false allegations." So why monitor, shame, and discard all registrants based on a low recidivism rate? Again, I am pro rational policies that actually, in real life, deter and help prevent sex crimes. The laws we have now do not!"

The replies were more of the same hate-spewing, knee-jerk reactions fueled by misinformation. But the interesting part was that people didn't want to read the research, they just emotionally reacted. A couple of days after my posts on this thread, someone advised the group that pictures and accusations were being posted on Facebook referring to a completely innocent bystander as the "predator in question." The poster stated: "It is NOT THE SAME PERSON and a post like that could conceivably ruin a person's career and even his life. This is the problem with vigilantism. Suppose the police had been called or some people decided to take matters into their own hands? BE CAREFUL WHAT YOU SAY AND POST. A good man is now forced to turn his life upside down." There were zero responses to this revelation…

We live in a society that refers to those who have committed a sex offense as a *sexual offender*: as if that person is always an offender, as if that person is nothing more than an offender. If you played sports in college, are you forever an athlete? If you shoplifted as a teen, are you considered a thief as an adult? Does/should one bad act label someone for life? Part of understanding the stigma against registrants is understanding the power of language and labels in creating public fear which has translated to support of lifetime policies that are not empirically effective at reducing abuse of women and

children. Often, it is an individual who committed one bad act, at one period during their life, and there is significant variance in seriousness across registrants. This does not dismiss the powerful and negative impact of a sexual offense on the victim and does not excuse multiple victim/predatory behavior! The purpose is simply to stop and think about the social and psychological impacts of a lifetime scarlet letter on registrant reintegration. The focus should instead be on awareness and prevention, which has been lost in reactionary measures.

Sex Offense Laws     Sex Offender     Sex Offender Registry     Education

About  Help  Legal

Get the Medium app

 

AR-00001427

8/3/2019 A life of misery – Tales From the Registry
https://tftr.narsol.org/2019/08/03/a-life-of-misery/ 3/4

I'll make this quick. When my son was 18, still in high school he dated a girl over the summer. She was
also in high school, but not quite 14. He didn't know her age, and very immature
for his age. He had been held back a grade by me when he was 5 because he started kindergarten at 4,
and I was following the suggestion of the teacher at that time. Point is,
they were both high school students.

However, because of her not being exactly 14 years old, she was not of the age of consent. Even though
her mother knew about the relationship because that's why they hung out, at her mother's home, the
mother claimed that she didn't know they ate dating. It turns out that the mother had placed another
boy in jail for many years over her other daughter, and had successfully sued his parents for money in a
civil suit. The boy, who was under 18 years of age, got about 16 years in prison.

My son, who wasn't aware that he was being preyed upon was 18, and because if the type of car I
drove, at the time, the mother thought she would be able to do the same to me, lock my son up and file
a lawsuit against me for money. We all lived in the same apartment complex.

I had never met or seen her before the trial in the courtroom, where she taunted
me from the seats behind about the car I drove, and about my son, she was trying it cause me to make a
scene in court, but the Holy Spirit told me "do not turn around". I was so emotional because my son was
facing 20yrs in prison at the age of 18. I was very thankful that God was with me and kept me calm, in
the moment that I almost turned in my seat to see who was saying awful things right in my ear. I can
never forget that day.

We had taken a plea bargain at the advice of our lawyer because she said we'd lose based in their ages
and the was no point in risking him being locked away for 20 years. She said he would not have it
register when we 1st signed the plea, then 10 minutes before our trial she bring us into a private room
along with the prosecutor and says that she's sorry, she was wrong, and he'll have to register for 10
years, 1 time per year. We were very upset, Both her and the prosecutor assured us that this was the
guidelines of the law and after 10 years he wouldn't have to register any longer. We signed their
document and our court trial started about 5 minutes later. Long story short… the judge seemed to try
to get my son to change his plea because we were afraid.

With my son and the girl being of different races, we were advised not to go to trial. He was sentenced
to several years, thankfully, all was suspended except 4 consecutive weekends in jail for time served
because he had to wear an ankle bracelet throughout the entire school year, including  his graduation.
He was given 2 years' probation plus several hours of community service work and drug testing, which
he completed because he never smoke or drank anything and was always clean when tested weekly for
2 years. I don't know why they ordered drug testing as part of probation.. He had to register with the
police department for 10 years. By the way, the police department put him down for  lifetime registry,
ignoring the sentence given, they changed it without any care or trial. They simply checked a different
box than what we came to register for and made him sign. The guy was very intimidating. This was on
the same day that we left court.

AR-00001428

Our lawyer said we could do nothing until year 11, which is when it was technically violating his rights. She made us fearful of  getting any further because it would put him at risk of 20 yrs. in prison again. Looking back, we should have demanded that they  x the registry issue. We were so exhausted. My son did everything they asked him to do, and eventually, after years of enduring denial for jobs,  rings because of finding out about his record, alienation from society, the only job he could get was in a bar/nightclub as a manager, which was good but he eventually began drinking and he also had to take pills to stay awake and go to sleep since the bar closed every night late and he didn't usually get o  until about 4am. After that job ended, he came back to live at home, by then he had an alcohol and prescription drug problem. He kept it hidden from us for years, but it only got worse as he continued the cycle of job denials, hiring and  rings. He became a danger to himself and considered suicide.

The alcohol makes him violent and he takes risks when he's in that state. It's like Jekyll and Hyde. His life is endangered because he seeks help and no can help him by law. About 3 years ago he completed a 30 day sobriety program and es clean for about 2 years or so, but he recently had a relapse and now we're looking  r a recovery in-patient place because he has not only alcohol, and other dependencies, but also emotional issues but no one is willing to help him because of his record. Thus is now almost 20 years later. He'll be 35 this year and he's seeing his life go by and has lost hope in some cases. He asked me to help him find a place to recover but I can't. No one will accept him because of this record. He had a 12-year-old son.

He's now becoming aware of his Dad's struggles but it is too hard on him to see his dad like this, which make my son feel worse because he can't overcome this on his own and he's I'm
sure ashamed of his state and the fact that his son (who barely understands) has to see him like this and hardly contributing financially to his life, as well as causing him embarrassment
in his drunken exploits. I believe this has all given him a mental problem. I don't know what to do. I want to scream at the supreme court and  this registry is ridiculous

AR-00001429



# Millions of Lives Ruined by Sex Offender Registry, Says Top Anti-Registry Advocate

June 1, 2020

**By Vicki Henry**

Women Against Registry advocates for the families who have loved ones required to register as sexual offenders.

According to the National Center for Missing & Exploited Children's [NCMEC] last published figures, there are over 912,000 men, women and children (as young as 8 and 10 in some states) required to register.

The NCMEC has ceased publishing the number of registered citizens as it will soon top 1,000,000. The "crimes" range from urinating in public (indecent exposure), sexting, incest, mooning, exposure, false accusations by a soon-to-be ex-wife, angry girlfriend, or spiteful student, viewing abusive OR suggestive images of anyone 18 years old or younger, playing doctor, prostitution, solicitation, Romeo and Juliet consensual sexual dating relationships, rape, endangering the welfare of a child, the old bait-n-switch internet stings (taking sometimes 12 months before a person steps over the line), guys on the autism spectrum or with intellectual disabilities, and many others.

If you multiply the number on the registry by 2 or 3 family members, you can clearly see there are well over 3 million wives, children, moms, aunts, girlfriends, grandmothers and other family members who experience the collateral damage of being murdered, harassed, threatened, children beaten, having signs placed in their yards, homes set on fire, vehicles damaged, asked to leave their churches and other organizations, having their children passed over for educational opportunities, having flyers distributed around their neighborhood, wives losing their jobs when someone learns they are married to a registrant. Professionals indicate three things are needed for successful reintegration: a job, a place to live, and a "positive" support system.

The Supreme Court's Crucial Mistake About Sex Crime Statistics – 'Frightening and High' (Debunks the 80% recidivism rate cited by now SCOTUS Justice Kennedy)

It is very important that you read the abstract and then the full 12-page essay by Ira Mark and Tara Ellman.

ABSTRACT This brief essay reveals that the sources relied upon by the Supreme Court in Smith v. Doe, a heavily cited constitutional decision on sex offender registries, in fact provide no support at all for the facts about sex offender re-offense rates that the Court treats as central to its constitutional conclusions. This misreading of the social science was abetted in part by the Solicitor General's misrepresentations in the amicus brief it filed in this case. The false "facts" stated in the opinion have since been relied upon repeatedly by other courts in their own constitutional decisions, thus infecting an entire field of law as well as policy making by legislative bodies. Recent decisions by the Pennsylvania and California supreme courts establish principles that would support major judicial reforms of sex offender registries, if they were applied to the facts. This paper appeared in Constitutional Commentary Fall, 2015. (Google: Frightening and High)

A study reviewing sex crimes as reported to police revealed that:
      a) 93% of child sexual abuse victims knew their abuser;
      b) 34.2% were family members;
      c) 58.7% were acquaintances;
      d) Only 7% of the perpetrators of child victims were strangers;
      e) 40% of sexual assaults take place in the victim's own home;
      f) 20% take place in the home of a friend, neighbor or relative (Jill Levenson, PhD, Lynn University)

There is a tremendous need to fund programs like "Stop It Now" that teaches parents how to begin and maintain a dialog with their children to intervene before harm occurs and about grooming behaviors as well as other things at age-appropriate levels in their Circles of Safety.

Our question to the public is one of, when does redemption begin? When are those required to register given their lives back without the stigma and hate?

We support the principles of Restorative/Transformative Justice; restore the victim, restore the offender AND restore the community. Unfortunately, our justice systems, federal and some states, prefer to annihilate human beings using mandatory minimum sentences, leaving our families destitute for years or decades and call that justice.

Our country is evidently proud to be 'the incarceration nation' with 5% of the world's population and 25% of the world's incarcerated.

Here is an example of how our families are harmed. A well-meaning teacher printed out profile pictures of local registrants and put them on the board around the classroom. She promoted her effort to protect her students by suggesting they look at and remember those people.

One student pointed at one picture and said, "Katie isn't that your dad?" It was….
***

**Vicki Henry**
**Women Against Registry, President**
**800-311-3764**
**Fighting the Destruction of Families**
http://www.womenagainstregistry.com
**Facebook:  Women Against Registry**
**Follow us on Twitter:  @WomenAgainstReg**

AR-00001431

A new Study by Danielle Arlanda Harris and Jill Levenson finds that our current practices likely and paradoxically increase risk for reoffending by producing traumatic stress that leads to emotional dysregulation.

In recent years, there has been a rapid expansion of increasingly restrictive laws managing the post release behavior and movement of individuals convicted of sexual offenses. In the US, this legislation has led to many barriers for people returning to their community as "registered sex offenders." We consider the often ignored but undeniable traumagenic impact of life on "the list" and conceptualize this experience as *Post-Conviction Traumatic Stress*. We present a qualitative content analysis of secondary data collected from interviews with over 70 men.

Emergent themes were first organized according to the human needs identified in Maslow's hierarchy, and then by the established symptoms of PTSD, and finally in terms of resilient coping versus traumatic coping when basic human needs were unmet. We discuss the unexplored impact of traumatic instability on risk for recidivism and present recommendations for trauma-informed policies and practices with individuals required to register as "sex offenders."

[READ THE STUDY](#)

https://andreworcesteripee.org/wp-content/uploads/2020/09/Life-on-the-List-
Harris-and-Levenson-2020.pdf

-

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 24, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

| Comment |

The sex offender registry — a blight on justice and freedom

By Sandy . . . We are well accustomed to those on sex offender registries making the headlines. A registrant in Washington State named Wes Heyden recently dominated the news cycle for several days in a most unexpected way.

The founder and owner of a popular coffee shop which, under his leadership, expanded to a chain with more to come, came under fire recently when he told the coffee shop employees that they were not allowed to wear shirts or clothing promoting the BLM movement. His official statement was, "No clothing worn (may) include graphics displaying any political, religious or personal biases."

Employees unhappy with this took to social media in protest, creating a firestorm in which Heyden compared the difficulties he faced as a registrant to those faced by African Americans.

"I can't vote. I can't buy a gun. I can't rent an apartment. I can't get an SBA loan. I've been hated! . . . If I protest anything it'll be for reformed sex offenders so they can restore their freedoms that should be open to all people. . . . What's worse, being beat and profiled by cops, which I have over and over again, or living like you don't deserve to? Being hated by all . . . "

His statement drew some support and praise for what he had accomplished but also harsh, bitter criticism. One Facebook post encapsulates the reason for the anger: "But this guy on social media compared the consequences of his chosen sex offender life to the hardships that are felt of living as a Black person, saying that he had it just as hard."

Heydon has now resigned his connection with the chain of coffee shops, turning over his creation to a long-time employee.

The crime for which Heyden was convicted occurred in 1993 when he was 15 years old, a juvenile. As is sometimes the wont of the justice system, he was not tried and convicted until 1996 so that he could be tried as an adult.

In his enumeration of the difficulties he has faced and faces due to his status as a registered sexual offender, Mr. Heyden is not only accurate in what he said, he is also brave for speaking out. The person who referenced his "chosen sex offender life" needs to think about the facts.

Whatever Heyden did, he was 15. The incident was such that one of the charges in connection with it was a misdemeanor. Heyden did not choose a "sex offender life." He screwed up big time as a teenager 27 years ago. What he chose was to be rehabilitated and to live a law-abiding life as a responsible, contributing member of

AR-00001433

society. I do not believe that he, and most definitely not I, intended to denigrate the difficulties that African Americans have in dealing with our justice system.

I believe that he, and most definitely I, want the public to understand that another part of our justice system, the post-punishment sex offender registry, is as much a blight on justice and freedom and as much a cause of destruction of American lives as is systemic racism.

---

Attachments  5

---

📄 In Florida another restriction that will further harm society

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0378/attachment_1.pdf)

---

📄 In Mississippi a family destroyed

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0378/attachment_4.pdf)

---

📄 2007Oklahoma

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0378/attachment_5.pdf)

---

📄 2009Halloween-2020

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0378/attachment_6.pdf)

---

📄 New Mexico is My Home

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0378/attachment_7.pdf)

---

**Comment ID**

DOJ-OAG-2020-0003-0378

---

◎ **Tracking Number**

kfg-7tj0-yz81

---

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 23, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

## In Florida another restriction that will further harm society

By Sandy . . . John Tobia, County Commissioner in Brevard County, Florida, is proposing that the county levy additional 1000-foot restrictions on those on Florida's sexual offense registry, adding "businesses that cater to youth" to schools, day care facilities, parks, and playgrounds. The proposal is presented as an option for those business owners to opt in or not.  Upon examination, it is clear that this proposal does not include a very important dimension, that being the likelihood of this restriction resulting in enhanced public safety and enhanced safety for children.

A look at the research shows that residency and other restrictions that shut off parts of a town or city to persons required to register have no benefit to public safety.  There are no statistics, no studies, no reports, and no evidence supporting the theory that restrictions limiting where registrants may live, work, or be offer protection to children or the public at large. Several significant studies show this.

According to the U.S. Justice Department Study published in July, 2015:

"[T]he evidence is fairly clear that residence restrictions are not effective. In fact, the research suggests that residence restrictions may actually increase offender risk by undermining offender stability and the ability of the offender to obtain housing, work, and family support. There is nothing to suggest this policy should be used at this time." https://www.smart.gov/SOMAPI/sec1/ch8_strategies.html (last main section)

Especially significant for Florida is this part of that report: "In a study of sex offenders subject to residence restrictions in Florida ($n$ = 165), researchers found no significant difference in the distance recidivists (defined as a new sex crime rearrest) and nonrecidivists lived in proximity to schools and daycare centers (Zandbergen, Levenson & Hart, 2010).

This is a layman's piece, but it encapsulates this issue extremely well. https://www.capegazette.com/node/60014

The reason that limiting former sexual offenders' access to potential targets is futile is simple. Children's sexual abusers are not those already punished and now tracked for having committed a sexual crime. Children's sexual abusers are those who have never been arrested or convicted for such offenses. They are those close to the children in their everyday lives, their family members, their peers, and their authority figures. A chart that encapsulates the findings of an FBI report shows this.

In spite of all of this, if no harm were done, one could still say, "Why not?" But harm is done. Florida of all places knows the results of overly-stringent restrictions as to where registrants may live.

This proposed law, even though opting in is up to each business, will create new thousand-foot areas in which those on the registry may not live or work. Registrants with jobs inside of those areas will lose their jobs. Registrants living within those areas will lose their homes.

The result will be more homeless, unemployed individuals in Brevard County than there already are. While no studies support the use of these restrictions, may studies find that the consequences to such restrictions impede rehabilitation and result in conditions that create a less safe society. In addition to those findings documented in the Justice Dept. study cited above, these document it

further: https://lawdigitalcommons.bc.edu/jlsj/vol36/iss2/5/ ; https://journals.sagepub.com/doi/abs/10.1177/0887403413512326  (Florida specific); https://www.npr.org/2014/10/23/358354377/aclu-challenges-miami-law-on-behalf-of-homeless-sex-offenders (Florida specific)

Those proposing and supporting this latest attempt to further limit the freedom of Brevard County's registered citizens are not acting in the best interest of Brevard County or any of its citizens.

AR-00001437

## In Mississippi a family destroyed

By Sandy . . . "My son would call me several times every day, and now we're cut off from all communications."  Matt's voice choked up even more before he continued. "He is devastated. I am devastated."

Matt and his son, like a great many others in Mississippi, are victims of recently passed legislation there, S.B. 2009, also known as Carly's Law. This legislation prohibits any contact whatsoever between a person listed on the sexual offense registry and the named victim unless and until the victim petitions the court to revoke the no-contact order and the court agrees.

This includes a person who was registered for sexual contact with a willing but underaged partner even if the two of them are now married.

This includes a person who, as a minor, was registered for sexual play with a younger sibling or cousin even though the two of them have since reconciled and have been enjoying a normal familial relationship.

This includes Matt. In 2012 Matt was convicted of illegal touching of a vulnerable adult. His son Paul, age 16 at the time, was the victim.

Paul, fostered and then adopted by Matt and his wife Patsy, was born with fetal alcohol spectrum disorder. He suffers numerous learning and developmental disabilities, was and continues to be prone to outbursts of violence, and often expressed himself in sexually inappropriate ways in public and at home.

He was expelled from several schools. He has been arrested and been in and out of various institutions. At one point when he was living at home, he would get into bed with Matt and demand sexual touching, often in a fit of rage and threatening to use a knife. Fearing for their safety, Matt one time gave in to the demands and manually masturbated his adopted son.

Matt hangs his head in shame while telling about this, and his voice grows more choked. "I know what I did was stupid and wrong. I gave in to the pressure and the fear that he really would harm us. It was a moment of weakness for which I will pay for the rest of my life."

Soon afterward Paul was arrested again and became a ward of the state. He was placed in a state-paid private institution, where he remains to this day. While there, he acted out again, and the state investigators grilled him. He told them about the sexual incident with his father.

Matt suffered two heart attacks, had open heart surgery, and then in 2011 was arrested and charged with a sexual crime. He pled guilty, and his prison sentence was suspended with a term of probation given, which has now ended.

AR-00001438

Paul never wanted his father to be arrested or separated from him. Matt and Patsy made the decision that they could not have Paul at home again, fearing reoccurrences of the streaks of violence and sexual demands. However, they have remained close by use of Paul's cell phone, speaking several times daily, and Patsy visits him. Matt felt it best that he not visit, seeing him only one time after his conviction.

When Matt saw that Carly's Law was signed into law by Governor Tate Reeves on July 7, retroactively enforced as of July 1, he immediately stopped answering Paul's calls. All communication is handled by Patsy. Paul is extremely upset at not being able to speak with his father. Every time he calls, he asks her if Matt has been able to find a lawyer to get this law changed.

According to this new law, only the victim, or his/her parents or guardian, may petition the court to waive this. As an institutionalized ward of the state with diagnosed mental and emotional disabilities, Paul has no standing to petition. As the offender, Matt cannot. This removes any due process from him and tramples his First Amendment rights of free speech and association with his own son. And it adds additional penalties *ex post facto*. It leaves him with no rights, only permanent disconnection and separation from his son.

Matt's voice had grown weaker and weaker in telling his story, but he continued. "This has put an impenetrable barrier between myself and my son. This is ill-conceived legislation. It was done in total disregard for due process; it blocks reconciliation and tramples constitutional rights. It destroys families and people who have forgiven and been forgiven and have healed and reconciled.

"It destroys lives that had learned to trust again."

AR-00001439



Post Office Box 36123
Albuquerque, NM 87176
narsol.org

Post Office Box 25423
Raleigh, NC 27611
888.997.7765

# NARSOL Condemns Vigilante Justice in Oklahoma

*Police department's Facebook page incites mob rule and vigilantism*

**Raleigh, North Carolina | July 10, 2020—** The National Association for Rational Sexual Offense Laws (NARSOL) protests in the strongest possible terms the recent actions of the Oklahoma City Police Dept. Its Facebook page features the pictures of people on the sex offense registry who are out-of-compliance and offers cash for information leading to their apprehension. NARSOL demands that this post be taken down.

"This is unconscionable," says NARSOL's communication director Sandy Rozek. "Law enforcement is sworn to protect all citizens, not just those it likes. Instead, the Oklahoma City Police are conducting a campaign of hate, appealing to mob mentality at its worst, and providing a platform for vigilantism to flourish."

The comments offered in response to the actions of the police department verify that it is being taken in the spirit with which it was meant – one of inciting vigilantism.

"Nail em to center post as ya set hay on fire," writes Raymond West.

"I wish someone would just take these pieces of waste down a dark alley and just end them," is Robert Cypert's offering.

Brandon Farnsworth replies, "It's time for some target practice."

More than one asked if the price offered was for "dead or alive."

"We are not saying these individuals are innocent of failure to register, as it's defined by Oklahoma law," Rozek continued, "and we are not saying that law enforcement should not charge individuals who break the law. What we are saying is that doing it in such a way that encourages, even solicits, an outpouring of hate, vengeance, and vigilantism does not contribute to an orderly society and furtherance of public safety but rather works against those important goals."

Lori Hamilton, leader of the advocacy group Oklahoma Voices, makes clear that none of the individuals targeted are charged with any new sexual crimes, although the actions of the Oklahoma City police encouraged media to do some inventive journalism and made claims that they are wanted for their original crimes.

**NATIONAL ASSOCIATION FOR RATIONAL SEXUAL OFFENSE LAWS**
**Fighting to restore dignity & constitutional rights to millions.**
*NARSOL is a 501(c)(4) for IRS purposes. Contributions made to NARSOL are NOT tax deductible.*
*Vivante Espero is a 501(c)(3) for IRS purposes. Contributions made to Vivante ARE tax deductible.*

AR-00001440

"Six of the 10 are wanted for sexual acts with a child, one for attempted rape, a couple others for rape convictions, and one for sexual battery," erroneously reports KOCO channel 5 news.

"KOCO should have stated that six of the ten are required to register for those offenses," said Rozek. "The people being targeted by OKC police may have paid their debt in full already, and it's NARSOL's position that a registration obligation should not be required after a person has completed the period of incarceration and supervision imposed by the court."

NARSOL and its state advocacy organizations exist to assure that those with sexual crime convictions and the resulting post-punishment assignment to a sexual offense registry are dealt with according to law and policies based on research, basic human decency and what fosters an orderly, civilized society.

There is nothing about putting a bounty on someone's head and encouraging the worst of speculation and making the individuals the targets of hate and vigilante activity that is even in the same room with research findings, human decency, or a civilized society.

NARSOL is demanding the immediate removal of this Facebook post of the Oklahoma City Police Department.

# # #

*NARSOL is the nation's largest civil rights organization advocating on behalf of registered citizens and their families. NARSOL opposes dehumanizing registries and works to eliminate discrimination, banishment, and vigilantism against persons accused or convicted of sexual offenses through the use of impact litigation, public education, legislative advocacy, and media outreach in order to reintegrate and reconcile affected individuals and restore their constitutional rights.*



Post Office Box 36123
Albuquerque, NM 87176
narsol.org

Post Office Box 25423
Raleigh, NC 27611
888.997.7765

# NARSOL Calls Out Patch: STOP the Red Dots!

*"Red-dotting" sex offender homes at Halloween feeds baseless hysteria*

**Raleigh, North Carolina | September 22, 2020**—Every year as Halloween approaches, many *Patch* media outlets, as well as others, publish articles featuring "red-dot" maps showing addresses, and sometimes names, of persons listed on sexual offense registries. Within the last few years, this practice has been adopted by some local police departments on their Facebook pages. According to the editors and publishers of such pieces, this is done in order to help protect children who will be trick or treating at Halloween.

The National Association for Rational Sexual Offense Laws (NARSOL) also wants children protected and kept safe. We are in full agreement with that goal. However, there is a total lack of evidence that the publication of these addresses at Halloween keeps children safe. Indeed, the volume of evidence showing no connection at all between Halloween and sexual harm done to children is numerous and well documented.

"A heightened risk of being sexually abused is NOT one of the dangers children face at Halloween. The simple fact is that there are no significant increases in sex crimes on or around Halloween. There is no 'Halloween effect.' There is no change in the rate of sexual crimes by non-family members during Halloween. That was true both before and after communities enacted laws to restrict the activities of registrants during Halloween." (Association for the Treatment of Sexual Abusers (ATSA) 2019)

". . . the scariest thing about Halloween today is the fear-mongering designed to persuade parents that their kids live in a neighborhood full of dangerous predators. And yet, the facts say otherwise." (Marty Klein, *Psychology Today, 2018*)

"Using national incident-based reporting system (NIBRS) crime report data from 1997 through 2005, we examined 67,045 non-familial sex crimes against children age 12 and younger.  Halloween rates were compared to expectations based on time, seasonality and weekday periodicity.  There were no significant increases in sex crimes on or around Halloween, and Halloween incidents did not demonstrate unusual case characteristics." (Jill Levenson, ATSA, 2014)

"Research shows no evidence of increased child sex abuse on Halloween. . . ." (Emily Horowitz, Huffington Post, 2014)

**NATIONAL ASSOCIATION FOR RATIONAL SEXUAL OFFENSE LAWS**
**Fighting to restore dignity & constitutional rights to millions.**
*NARSOL is a 501(c)(4) for IRS purposes. Contributions made to NARSOL are NOT tax deductible.*
*Vivante Espero is a 501(c)(3) for IRS purposes. Contributions made to Vivante ARE tax deductible.*

AR-00001442

Management practices that impose restrictions on registrants related to Halloween activities in an attempt to keep children from sexual harm do not make children or society safer.

Indeed, they can actually create situations that contribute to greater risk.

They perpetuate the myth of "stranger-danger," thus diverting the focus away from where harm to children is much more likely to come. According to the *Huffington Post* , ". . . government data shows the vast majority (about 93%) of sex crimes against children are not committed by strangers but by family members or acquaintances."

They ignore one of the legitimate increased risks to children at Halloween, that of being injured or killed in car-child accidents. "Children are three times more likely to be fatally injured by a car on the [Halloween] holiday, and the risk grows to 10 times for kids 4 to 8." (Washington Post, 2019)

They further target and ostracize all who live in the home featured as a "red dot" or whose address is printed as belonging to one labeled a "sex offender." As many registrants are married with children, this puts those children at risk for ridicule, vandalism, and harm to property and person.

The *Patch* publications, as well as others, justify this continued practice by responding that it is what their readers want. Journalism must always represent non-partisan truth telling. It must never cater to political correctness or advocate for any practice merely because it is consistent with public popular opinion but contrary to the facts based upon reliable data. Communities rely on *Patch* for information they can depend upon without reservation. This petition presents an opportunity for bringing the truth to *Patch*'s readers and reinforcing the integrity of journalistic ethics.

NARSOL and its affiliates, along with all of the other undersigned, call for an end to the publication of the names and/or addresses of persons registered as sexual offenders at Halloween under the guise of "public awareness" or "child protection."

**This campaign to reduce harm and to cease a hurtful publication practice that has no positive effect at all on child protection or public safety is endorsed by all of the following.**

National Association for Rational Sexual Offense Laws (NARSOL) -- sponsor

One Standard of Justice (Connecticut) – co-sponsor

Association for the Treatment of Sexual Abusers (ATSA)

R. Karl Hanson, Ph.D., C.Psych, Carleton University and Ryerson University

Elizabeth J. Letourneau, Ph.D.,Director, Moore Center for the Prevention of Child Sexual Abuse, Professor, Johns Hopkins Bloomberg School of Public Health (*The opinions expressed herein are my own and do not necessarily reflect the views of the Johns Hopkins University.)*

Dr. Jill Levenson, PhD, LCSW, Professor of Social Work, Barry University

Fred S. Berlin, M.D. Ph.D., Director, National Institute for the Study, Prevention and Treatment of Sexual Trauma

Ira Ellman, Charles J. Merriam Distinguished Professor of Law and Affiliate Professor of Psychology, Emeritus, Arizona State University

Catherine L. Carpenter, Professor of Law

Chrysanthi Leon, JD, PhD, Associate Professor, Sociology and Criminal Justice

Alissa R. Ackerman, PhD

David S. Prescott, LCSW, LICSW, Editor, Safer Society Press

Maggie Ingram, MHS, Johns Hopkins University Bloomberg School of Public Health

Emily Horowitz, Ph.D.

Professor J.J. Prescott, University of Michigan

Ilan H. Meyer, Ph.D., UCLA School of Law

Erin B. Comartin, Ph.D., LMSW, Associate Professor of Social Work, Wayne State University

Prostasia Foundation

Meaghan Ybos, co-founder of People for the Enforcement of Rape Laws (PERL)

Heather Marlow, co-founder of People for the Enforcement of Rape Laws (PERL)

Robin J. Wilson, Ph.D., ABPP, Wilson Psychology Services LLC

Liam E. Marshall, Ph.D., RP, ATSAF, Rockwood Psychotherapy & Consulting, Canada

Dr. Jennifer L. Klein, Associate Professor, Undergraduate Coordinator, Criminal Justice, University of Texas at Tyler

Michael J. Gilbert, Ph. D., Associate Professor Emeritus (retired), Dept. of Criminal Justice & Criminology, University of Texas at San Antonio

Rev. J. Amos Caley, Salvation and Social Justice, Abolition Campaign Director; Abolish the Drug War, NJ Organizero

Joseph J. Plaud, Ph.D., M.A.T., Exec. Director, Applied Behavioral Consultants, LLC, Boston, MA

Janice M. Bellucci, civil rights attorney and E.D., Alliance for Constitutional Sex Offense Laws

Christopher P. Dum, Ph.D., Associate Professor, Department of Sociology, Kent State University

Dr. Danielle T. Cooper, Associate Professor, Department of Criminal Justice, University of New Haven

Alliance for Constitutional Sex Offense Laws (ACSOL)

Dr. Jean Kennedy, Kennedy Consultant

Richard Resch, Managing Editor, *Criminal Legal News*

Brian Kelmar, Chairman of LRIDD (Legal Reform for Intellectually and
Developmentally Disabled)

Dr. Meridith Spencer, Assistant Professor, Program Director, Criminal Justice, Fisher
College

Dr. Danielle Bailey, Assistant Professor of Criminal Justice at the University of Texas at
Tyler

Judge William Buhl, chair of the Professional Advisory Board to Michigan's Coalition for
a Useful Registry

Ken Abraham, Founder, Citizens for Criminal JUSTICE

Robert B. Chatelle, Executive Director, National Center for Reason and Justice

Jefferson B. Davis, former CT state legislator and former registrant

Lisa Anne Zilney, Ph.D., Montclair State University

Scott H. Greenfield, Attorney and Blogger at *Simple Justice*

Nancy E. DiZio M.Ed LMHC, Associate Clinical Director, New England Forensic
Associates

Human Rights Defense Center

Earl Yarington, MSW, PhD, journalist, *Baltimore Post-Examiner*

Russell Dick, MSW

B4U-ACT, Inc.

*Prison Legal News*

*Criminal Legal News*

James H. Maynard, Esq., Maynard Law Office, LLC, New Jersey, specializing in sex
offense law

Lenore Skenazy, advocate for rationality

Mary Kay Villaverde, social media coordinator, FSDP (Families for Sensible Drug
Policy)

Rita Finley, CAUTIONclick National Campaign for Reform

Vicki Henry, President, Women Against Registry (W.A.R.)

E. King Alexander, Jr., attorney

Will Mingus, PhD, Editor in Chief, *LifeTimes* magazine

John Sloan, site manager, Women Against Registry of Florida

Norm Pattis, Pattis and Smith, LLC

Wayne Bowers, Executive Director, CURE-SORT

Melissa D. Grady, PhD, Associate Professor

Joshua Vaughn, reporter, *The Appeal*

David Mensah

Lois Pullano, Executive Director, Citizens for Prison Reform

Dr. Peter P. Ventura, Golden State Bible Baptist Prison Ministry

Joshua B. Hoe, Decarceration Nation

Michael McKay, Editor, *LifeTimes* magazine and *The Registry Report*

Marty Weiss

Phil Telfeyan, Executive Director, Equal Justice Under Law

Carolyn Gil

Thomas Chleboski, Vice-President of Maryland CURE

Tom Luettke, Esq., President, Ohio Association of Local Reentry Coalitions

Alexander Taubes, Esq. Civil Rights Attorney

Paul Rigney, Executive Director, Registrant Travel Action Group, Inc.

Joshua Hoe, Safe and Just Michigan

Rev. Patti Aupperlee

John S. Santa

Ohio Voices

Attorney Debra Beard Bader

William Canavan, Boston Release Network

Hope Metcalf, New Haven, Connecticut

The Michigan Center for Youth Justice

Ken Nolley, Ph.D., Professor Emeritus of English and Film Studies, Willamette University

Christopher Zoukis, MBA, author, managing director Zoukis Consulting Group

AR-00001446

Timothy C. Moynahan, JD of The Moynahan Law Firm, LLC.

Kathleen Hambrick, *Lady Justice Myth Blog*

Christopher E. Pelloski, MD, author

Leslie M Lothstein, PhD, ABPP, CGP

Derek W. Logue of OnceFallen.com, registered citizen/civil rights advocate

Kathy Williams, paralegal

Michael Boyle, Law Offices of Michael Boyle

Families and Individuals for Reform (FAIR – Ohio)

Barbara Wright, attorney

Eric Tennen, attorney

Connie Cooper, retired special education teacher

Hallie Liebermann, sexual issues historian and journalist

Eden Koz, owner Just Be®, LLC

Susan. G. Figge, Behind Bars and Beyond Interfaith Working Group, Wooster

Vanita L. Nevis, program coordinator, ARCH (Returning Citizens with Hope) Ministry

Barbara Allan, founder, Prison Families Anonymous -- 50 YEARS OF HEALING FAMILIES

Phil Taylor, LPC, Dallas, TX

Glenn Gerding, attorney

Rory Fleming, attorney and advocate

Nebraskans Unafraid

Jeanie Mezger, Board of Directors, Nebraskans Unafraid

Stacey Borden, founder/president, New Beginnings Reentry Services, Inc.

Carol Tierney, SOPRI

Leonard A. Bard, Ph.D., forensic psychologist

Alice Benson, Director, Titus House Ministries

Alex Tischenko, Director, Revosys, Inc.

Martha Barbone, DVM, CPS, retired USAF officer

Sex Offender Solutions and Education Network (SOSEN)

Maria Laskowski, officer, OSJ, Connecticut

Tiheba Bain, Executive Director, Women Against Mass Incarceration

Beatrice Codianni, Executive Director, SWAN

Marty Klein, Ph.D, certified sex therapist, qualified forensic expert in human sexuality

Dr. Kate Sutton, Ph.D.

Rahisha Bivens, MSW social worker

Charlotte R. Simpson

Tatyana Manos

Dan Swern, Producing Director, coLAB Arts

Bill Himelhoch

Carol Tierney, SOPRI

Rosario Guzzi, Paralegal

John M. Campbell, Member, Texas Voices

Frank Bertram, Ph.D.

Eric Miller, concerned citizen

Noah Ford, law-abiding citizen

Tony Caruso, registrant since 1993, married, father of three, ages 5, 5, and 3

Sara Gonzalez

Efrain Morales, Jr

Tony B. Nelson

Jorge Guzman

Amanda Redfern

Jim Cornelio

Frans D. VanderBerg

Mr. and Mrs. Paul Laskowski, parents of a person listed on the sexual offense registry

Linda Quinet

Alan Wulff

John Crossley

Deborah Galasso

AR-00001448

Jeffrey Scheckwitz

**NARSOL AFFILIATES, ADVOCATES, AND CONTACTS**

Advocates for Change, Colorado

Arizonans for Rational Sexual Offense Laws

Arkansas Time After Time

Coalition for Sexual Offense Restoration (CSOR-CO)

Families Advocating Intelligent Registries, Maryland (FAIR)

Florida Action Committee (FAC)

Idaho Sex Offense Awareness & Reform (ISOAR)

Illinois Voices for Reform

Indiana Voices

Liberty and Justice Coalition, New Mexico

Michigan Citizens for Justice

Michigan's Coalition for a Useful Registry

NH Citizens for Criminal Justice Reform

North Carolinians for Rational Sexual Offense Laws

Ohio RSOL

Oklahoma for Rational Sexual Offense Laws (OKRSOL)

Oklahoma Voices

Oregon Voices

Pennsylvania for Rational Sexual Offense Laws (PARSOL)

Restore Georgia

Safer Virginia

Sex Offender Policy Reform Initiative (SOPRI-MA)

Tennessee4Change

Texas Voices for Reason and Justice

Vermonters for Criminal Justice Reform

West Virginia for Rational Sexual Offense Laws (WVRSOL)

Paul Shannon, NARSOL board member and chair; executive committee, Sex Offender
Policy Reform Initiative of Massachusetts

Allan Marain, attorney, NARSOL contact, New Jersey

Joseph Beaudoin, IT professional, father, NARSOL contact, Louisiana.

Mike Wilson, NARSOL advocate, Michigan

David Garlock, NARSOL board member

Ken Roberts, NARSOL contact, Mississippi

Patricia Borden, NARSOL advocate, Arizona

Terry Borden, NARSOL advocate, Arizona

Jeff Goetz, NARSOL contact, Kentucky

Jeff Miller, Victims Against the Registry, NARSOL advocate, Utah

Brenda Jones, NARSOL board member and executive director; executive director, FAIR;
NARSOL advocate, Maryland

Jan Nolley, M.S.W., NARSOL advocate, Oregon

Michael Shimkin, NARSOL board member; executive board, SOPRI; NARSOL advocate,
Massachusetts

Theresa Robertson, Ph.D., NARSOL contact, Pennsylvania

Robin W. Vander Wall, NARSOL board member and vice-chair

Timothy R. Burgess Advocate / Mediator, Vermont

Janna Tippits, NARSOL contact, Idaho

Margaret Hawkins, E.D., Assc. for Rational Sexual Offense Laws (DARSOL); NARSOL
contact, Delaware

Bart Holt, NARSOL advocate, Montana

Casey Peppin, NARSOL advocate, Washington State

Janna Tippens, NARSOL contact, Idaho

Larry, NARSOL board member

Travis Hardy, NARSOL contact, Wyoming

Dave Frank, NARSOL advocate, Wisconsin

Don Thurber, NARSOL advocate, South Carolina

Richard Earl, NARSOL board member; NARSOL advocate, New Hampshire

Lori Hamilton, Executive Director, OK Voices, NARSOL advocate, Oklahoma

Dwayne Daughtry, NARSOL board member

Susan Walker, Director/Regional Coordinator, CSOR and NARSOL, NARSOL advocate, Colorado

Cindy Prizio, E.D. One Standard of Justice, NARSOL advocate, Connecticut

Sandy Rozek, NARSOL board member; communications director, NARSOL

# # #

*NARSOL is the nation's largest civil rights organization advocating on behalf of registered citizens and their families. NARSOL opposes dehumanizing registries and works to eliminate discrimination, banishment, and vigilantism against persons accused or convicted of sexual offenses through the use of impact litigation, public education, legislative advocacy, and media outreach in order to reintegrate and reconcile affected individuals and restore their constitutional rights.*

# TALES FROM THE REGISTRY



## New Mexico is My Home

By NMCowboy87

I am 33 years old and I am from New Mexico however, I committed my offence back in Oklahoma back in 2011. I had a lawyer I paid $1,000.00 in the end just to say, "Take this plea deal or you go to court it will be life with out the chance of Probation." I was told he just glanced over the evidence and was best friends with the judge. Basically good old boys having out backwoods southern Justice.

I had to service 5 years in Prison was released to New Mexico in 2016 where I did Probation until 2019 when Oklahoma stated I was to be placed on Unsupported Probation until 2021.

I am very upset at the state of New Mexico as they require life long registry every 3 months and the problem is the registration office has moved 4 times since 2016. Also the original officer retired and was replaced in 2018 to great relief.

At this time I am living with my mother age 63 in a three room 1975 single wide trailer on my father's farm and we are lucky for now. However, my father is going blind from insulin-dependent diabetes, have nephropathy in feet, breathing problems and the same age as my mother by just one week. I

am grateful for now to have a safe place to live and am working with a lawyer to help get off the registration in 15 years. According to law it is not New Mexico that sets my registration, it's Oklahoma, the state I came from.

I am very hopeful I am able to get removed as I want to be able to get housing, employment, schooling, travel and not have to live solely on SSI the rest of my life.

**Share this:**

----

**Related**

Only you can turn things around
October 10, 2019
In "Personal Tales"

Holding on to Hope
January 7, 2013
In "Tales from the Registry"

This doesn't seem to be "collateral damage"
July 26, 2019
In "International Travel Tales"

This entry was posted in Tales from the Registry on June 27, 2020 [https://tftr.narsol.org/2020/06/27/new-mexico-is-my-home/] by .

AR-00001452

*July 11, 2020 at 11:01 pm*
**JONATHON**

I moved to Georgia in 2017. I had been living in South Carolina Since 1992 and had been on the registry since 2003 there. When I got out it was once a year and you had no residency restrictions. Within 4 years they had changed the frequency to every 90 days and you had to pay a fee. This is why I moved to Georgia. I was not going to reward South Carolina for how I was being treated by buying a second home there. I have an acre lot in Augusta that I will sell only to another registrant. This lot is in a nice subdivision with a golf course and I personally believe its the best looking lot in all of Augusta Georgia.

This lot is not cheap. It is for a registrant who is successful and well funded and is looking for a State will leave him or her be. I love it here.

*June 28, 2020 at 10:29 am*
**GENE**

Ah man do I feel the same, I was accused of

an offense back in 2010 In Canada ,Im an american and I made the stuped decision to get involved with a Women there, she made accusations that I messed with her granddaughter needless to say once your accused your screwed,same type of lawyer said the same thing ,take a plea or get years ,he cowered every time he saw the prosecuter ,so I knew he wouldnt defend me ,and the worst thing I did was try to explain to the investigator what really happened , ( I talked ) i should have kept my mouth shut ,when I got out of a prison north of Toronto I headed for the border within a week ,when I arrived in Washington the sheriff told me he was making me a level 3 even though it was a level 1 in Canada ,so you have rouge cops who do what they want ,what can a guy do with no money, Im 77 and looking at another 3 years before I can petition to have my name removed from the S.O. list ,its been 7 years since i arrived home ,Im doing better Ive have a small business to suppliment S.S.I.

*June 27, 2020 at 8:43 pm*
**BRIAN**

Hey, just to help you set proper expectations, employment and schooling all can and will happen. My sentence goes back to 1999, 10 years of probation and now 11 years post-probation. Travel is becoming increasingly more difficult as time has gone by. International travel at best is super dicey and you have to choose your destinations very carefully.

I hope you can get the registration requirement removed. I'm completely blocked by a single line in the deregistration requirements, so anything short of a miracle means I'll be on it for my life.

AR-00001453

I don't know why I'm writing this letter. I wonder if it will ever get read. And if it does, whether anyone will really care. I've been a good citizen all my life. I have been a highly popular Radio personality all over the U.S. I was in my 20th year of marriage to a Princess. I had a beautiful daughter and a precious autistic son by another marriage. At age 50, I decided to leave radio and buy my own business in St. Louis. One year after that, my wife (the love of my life) left me, and so did my daughter. I'm running my store all by myself cause I can't afford help. Here I am, in a big city, all alone. Running a business in a bad part of town thats stressing me out daily. Not a day went by that there wasn't a conflict. I had lost my wife and daughter, my best friend to heart failure, even my dog, and my son was 500 miles away.

One particular Sunday while on the computer, I'm contacted by a girl who claims shes 13. We spoke a little, then I blew her off. The next 3 consecutive Sundays she spoke again. Eventually she expresses desire to meet. I still have the script from that chat. Several times she told me to meet her at a bowling alley and to be sure to bring "Mikes Hard Lemonade". I told her No'- I will not. I'm not a pedophile, I won't do it. But she kept pressing. I got off the computer, did my chores, fixed lunch, went shopping and sat down to watch a ballgame. At 3 pm, I went downtown to the stadium to get my son a souvenir, then take a 15 mile drive to go to a cookout. Enroute, I happened to pass by the locale she said to meet her out. My curiosity kicked in, wondering if people really did this. I turned into the bowling alley and stopped. I said to myself, "I better not do this, it could be a trap. Then I reasoned, I'm not going to stop, nor talk to anyone. It was a circular drive, so I drove in, turned around and pulled out. At the exit, I was stopped with 7 guns pointed at my head. My nightmare had just begun. I was pulled out of the car and charged with "Attempted enticement of a child. Now I ask you - who was enticed? Is that what countrymen do to other countrymen? What nation arrests someone

I had no requested alcohol which I would have been a way to lure her, I had no intent.

AR-00001454

for driving in And Right Back out of a parking lot ??
My Nightmare Had just Begun. THE FIRST DAY I met My
Probation officer, She looked At My papers And SAID, Quote, "I'm
really Surprised. You didn't do Anything". For The Next 5 years
I had To Spend $200/month for Therapy. Over $10,000 And was
Hardly ever Spoken To in CLASS Because They knew I did Nothing To
deserve This. I was Evicted from My apartment Because There was
A delapidated Swing Set in The yard, so Rusty It Would have fallen
Had Anyone USED IT. I was evicted again At Another Because They
Suddenly Wouldnt allow felons. I LOST My $150,000 franchise due
To Being on The Registry. They refused To extend My agreement, And
I couldnt Sell IT Because of its location, I HAD To Board it up
And Walk Away. I HAD A Residency check And I told The Cop At
The door To hold on Cause I had To PUT PANTS ON. He Said "Oh you
dont Need pants" And Threw The door open And Walked IN. I
Moved 100 miles, in With My 90 yr. old dad. They Wanted me out
Cause A Daycare Wanted To Move To The Neighborhood. My dad was
really old At The Time And I was all he had. I was Subject To
Constant Polygraphs, even one With A week To go on probation. Everyone
else had Their last one a whole year Before theirs ended. I'd give
Anything To Have My ex Back, But I know she wouldnt even Consider It
Because of My label. All I have left (dad died) is My Son, But he lives
in Alabama With A 2000 foot law. Impossible To find a decent home.
I ran into an old freind who knew My Situation, I asked how he knew.
His daughter teaches There And They Circulated My picture. Here, 8 yrs. later
I could WALK The 50 yd line of their football field And They Wouldnt know
Me. But all My freinds know About Me. THIS is NO WAY To live. Do
You realy Think This is The life I deserve for No More Than I did?
Ive only Told you 10% of My Story. And dont get Me Wrong, I Think
There Should Be A Registry for The dangerous. But I'm pleading And Begging,
IF You WANT To clean it up, please See That people Like Me who Touched
No one, And hurt No one, Are released from this Rue They Set us up on.
I had No intent To grab a child, I was just A lonely, bored idiot with
Nothing To do, If I had even thot itd Cost Me everything You Can Bet I
[...] So Stupid. I hope You read This, Even More I hope You Cared.

AR-00001455

·8/29/2020              ⌈ Docket No. OAG 157 ⌉

To all concerned,
    I am replying in response to a
public opinion request concerning
"sex offendender registration", SORNA,
etc.
    I am a U.S. citizen, as well as
a "registrant" of a sex offense
since 1990, when registration began.
I have since followed the 30 years
of 'witch hunts' against "sex offenders",
and the devestating affects to these
people and their families and children,
caused by irrational laws such as "registration",
etc.
    For decades, those registered with sex
offenses, have been harrassed,
intimidated, threatened, assaulted in
multiple ways, houses burnt down, fired
from their jobs, abandoned by their
churches, etc., removed from their
residences, and even murdered, not only
in prisons, but even in society.
    These unjust and cruel consequences
have been caused by irrational laws
like "registration", which expose their
private lives and information. It has
affected not only them, but their
innocent families, relatives, and even
their children! These laws do not
protect children, they destroy their
lives, their families' lives, and
they place millions at risk of harm.

AR-00001456

3

our children, many who have committed
suicide because of fear and threats
of being labeled with the stigma
of "sex offender", and the public
registration. Even for something as
minor as texting a nude photo to
a same age willing person.

Thank God many states are now
changing these cruel laws to protect
our children from their detrimental
affects.

These irrational and cruel laws are
not protecting our children, they are
killing them, and have only destroyed
the lives of millions of men, women,
and children.

Sex offense treatment and positive
reintegration into society works
and is safe and effective for all.

Registration ~~for one~~ for one
needs to be abolished, and so
many other irrational "sex offense"
laws need to be reviewed and
revised to be truly effective and
to ensure the privacy and safety
of our American citizens and human
beings which include those labeled
as "sex offenders", as well as our
children, who are adversely affected.

Also remember that contrary to common
"sex offender myths", re-offense is only
an average of 3.5% of offenders.

## "They scared him to death"

*by Sandy*

"They scared him to death." When Maureen Walgren of Naperville, Illinois, said this, referring to the conversation that school officials and law enforcement had with her 16-year-old honor student son Corey, she meant it literally.

Corey was at lunch on a normal school day in his high school this past January when he was called into the office. Waiting for him was the campus dean and a police officer. They questioned him about what was alleged to be an image on his phone of a consensual sexual encounter with a female classmate, also 16. The accusation was possession of and possibly sharing "child pornography." Evidence strongly suggests that the threat of being registered as a sexual offender on the state's public registry was made. *http://www.chicagotribune.com/news/local/breaking/ct-naperville-north-suicide-20170522-story.html*

Only at that point were attempts made to contact his parents. Corey was



told that his mother was on the way to the school, and he was left alone to wait for her.

At some point before she arrived, Corey left. Leaving his car at school, he walked a mile and threw himself off of a six story-parking garage. His death was not instantaneous, but it came before his mother could get to him and be with him in his dying moments.

As it turned out, the images on the phone were so black that nothing could be seen. Even though audio of the encounter was discernible, police records indicate that they would not have pressed charges after all. If only they had waited until the investigation was finished before they threatened him with child pornography and the registry, the story may well have had a different ending.

Corey was an excellent student. He was a good athlete and a popular young man; over 2000 people attended his funeral. He was fortunate to have in-

volved, supportive parents and to have been raised in a loving, supportive home. He was a sweet, friendly, well-liked, high school junior who was planning with those parents which colleges to visit in order to narrow down his application choices. He had never been in any trouble at all. Just the weekend before, he had talked to his parents about his choice to have a sexual encounter, his first, at this point in his life, and he recognized that it was not the wisest of decisions.

It is a decision that has been made by countless high school students over countless years. Many, many of them reached the same conclusion that Corey was reaching. Many, many of them have done what we hope for all of our children: learn from their mistakes and unwise decisions and make better ones in the future.

Sadly, sad almost beyond words, that is something that Corey will never be able to do.

JUNE 2017 ISSUE | NARSOL NEWS Letter

---

\* this innocent 16 year old boy <u>child</u> (who could be <u>your</u> son), did not kill himself because of what he did. He did so out of fear and threats of being labeled with "sex offender", the stigma, and the <u>"Public Registration"</u>

AR-00001458

Regulations Docket Clerk, Office of Legal Policy
U.S. Dept. of Justice
950 Pennsylvania Ave NW
Room 4234
Washington, DC 20530

Aug 30, 2020

Dear Whom concern,
     Personal Identify Information: I do not want my first name, last name or my DOC#

     I was sentence on Jan 16, 1996 for 1st degree sexual assault of child. I'm under PMR it was 2017, but they have not release me, because I have not completed treatment yet.

     I have serval concerns on the registration. The first one is 72.5 How long sex offenders must register. On my sentence day I had sign paper saying 15yrs I have to register, but later on I found out I'm on life registration I would like to know how that can be when the courts gave me 15yrs to register, in same part but paragraph (a) of § 72.5 provides an exception "when the sex offe- offender is in custody or civilly committed... I been on the registration for over 25yrs since I been in prison. I'm in prison so the commuity has no threat of me. Since 2000 around about I been getting charged to be on the registration first it was $50.00° in beginning, but that did not last long they now charge me $100.00 a yr. That has added up to $1,450.00 being in prison we do not have 100.00 yr. most inmates in Wisconsin prison get 04hr receive 4.48 every 2wks in yr is $107.52, but they will take out 10% for release account $96.77 then court cost/victim is 50% $48.38 then canteen needs (soap, deodorant and toothpaste, stamps and paper) That bring $0 and some have to pay child support too 100%. not including Health service Unit (HSU) co-pay $7.50. So our credit will be bad when we get out of prison.

AR-00001459

Comments regarding Registration Requirements under the Sex Offender Registration and
Notification Act

RE: Docket No. OAG 157

To whom it may concern,

I am writing as both a registrant (someone currently required to registry due to SORNA) and
also a concerned citizen. I live in Missouri and have a misdemeanor offense (non-contact and
victim age of 16) from 2012. There are probably many others that are also directly impacted by
SORNA, but none more so than myself. In Missouri, I would *not* have to register if it weren't for
SORNA. So, whatever arbitrary changes are made would apply to me which is why I am writing.

A little about myself, I have been on the registry for eight years for a misdemeanor offense. I
spent two weeks in jail, completed two years probation, paid all restitution, completed
counselling, held a full time job during most of my registration period. I am married and have
three children. I have a relatively normal life except for being listed on the registry.

I realize that many of the laws that impact me are state law and SORNA is federal. However,
there are some changes that I think make sense from a federal level and should be introduced
in here. This is ranked in order of priority.

1. **Visibility. We should hide tier 1 offenders from public view.** Law enforcement would
   still have their information, but they do not need the public ridicule as more serious
   offenses. We should also not list children on the registry. Please forbid minors from
   being listed.
2. **Reduce duration** on the registry from 15,25, and life to 5, 10, and 15 years. The
   registration minimums are excessive. I spent two weeks in jail. My registration time is 10
   years! That is 260 times longer than I spent in jail. Think about that. It is excessive.
   There is no study that supports supervision for this length of time. The study I saw
   showed a flattening of the recidivism curve by year 7. That means that there is not a
   rational purpose to register people for more than 7 years. I realize that I am on the far
   end of the spectrum of offenses, but am cast under the same umbrella as more serious
   offenses. It's not justice and certainly not fair to me or those that are similarly situated.
   **Tiers should be removed. Only those that are evaluated as being potentially a
   threat should be listed on the registry.** People that have multiple sex offenses should
   be listed and those only.
3. **Tiering.** I am classified as Tier 3 on the registry. I know you are saying, but you only
   had a misdemeanor. The reason is that SORNA does not explicitly say misdemeanors
   should be under Tier 1. Remember, Missouri law says that I do not have to register so I
   am held to SORNA. SORNA has a tier 3 catch all statement in case it missed an
   offense " any other sexual offense against a minor". So, I am tier 3. That alone should
   boggle your mind that we are doing this. I am grouped with the worst offenders for a

non-contact inappropriate email. This needs to be fixed and it can be done through **adding one line under Tier 1 saying that misdemeanors belong there.**

4. I work remotely full time from my house. Yet, my employer and their office location is still highlighted on the map. **Why list my employer's address if I do not physically work there?** That's fine if it needs to be collected for 'public safety', but there is no public safety interest by showing that. I asked my local registration authority to remove the indicator since I am not there and they said the law required it.

5. **Mug shots.** There is a picture taken of me everytime I register. That is almost 24 photos! The issue here is that all of the pictures are put on the website. I believe this is done to make it appear as if I have been arrested multiple times. They appear as mug shots. Why can't the picture be the most recent one? I asked my local registration office and they said it was the law (technically the law is vague on this since it isn't mentioned that all or just one photo should be shown). Can we just show the most recent?

AR-00001461

9-2-20                    RE: DOCKET NO OAG 157

SIR OR MADAM —

   PLEASE BE ADVISED I AM AGAINST
THE CHANGES TO THE SORNA REGISTRATION
REQUIREMENTS. THESE CHANGES PLACE AN
UNDUE BURDEN ON REGISTRANTS. AND WILL
RESULT IN UNWITTING VIOLATIONS OF THE
LAW.

   DO NOT ENACT THESE NEW MEASURES!

   Scott Breeze
   5200 C ST SE
   WASH DC 20019

AR-00001462

John Moses Burton
F.S.L. Elkton  90387-083
P.O. Box 10
Lisbon OH 44432-0010

REGULATIONS DOCKET CLERK
OFFICE OF LEGAL POLICY
US DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVE NW    Room 4234
WASHINGTON  DC  20530

RE: DOCKET No. OAG 157

To whom it May Concern:

I would like to address the above referenced new updates to the SORNA
Implimentations. First, I would like to address the waste that the Registry
causes because 98% of all jurisdictions has access to the centralized
database National Crime Information Center Interstate Identification Index (NCIC-III)
authorized by 28 USC § 534.

The NCIS is more readily searchable, accurate with the provisions cited in the
Doe v Smith case and meets and/or beats the information included in the SORNA
divided lists. The cost savings associated with utilizing just the NCIC could be
better spent on helping law enforcement and counselling for individuals.

The requirements of requiring Social Security numbers in paragraph (a)(3) of § 72.6
appears to violate the Social Security Act that SSNs are not meant for Identification
purposes but only for financial and tax purposes.

The burdens of licensing information [72.6(g)] and [72.6(c)(3)] for
Employment burdens registrants with limiting the ability to obtain gainful
employment. Similar registry requirements were repealed in Kansas Employers
advocated for their businesses not listed on the Registry inciting Workplace
harrassment.

The Provision to force registrants to first register in places they were convicted
is counter productive if they are not returning to that jurisdiction. A person
caught in an online task force in an outside of their home jurisdiction, never lived
in said location. With individuals not able to leave their state because of being on
supervised Release restrictions, it's a double edge issue. You cannot go but you must go.
How will this be addressed?

Patty Wetterlyng realizes SORNA is never what she envisioned. The Registry
is too punitive and hinders individuals re-entergrate into society. Those with no direct
actions of an element of SEX is called a sex offender. The duty has returned the
registry is outdated and should be reconsidered.

Respectfully Yours

Trevon Jackson #75229067
L.S.C.I. Allenwood
P.O. BOX 1000
White-Deer,PA 17887-1000

(To)
Regulations Docket Clerk
Office of Legal Policy Department of Justice
950 Pennsylvania Avenue NW Room 4234
Washington, DC 20530

David J. Karp, Senior Counsel
Office of Legal Policy          A+N
U.S. Department of Justice
Washington, DC 20530

RE: Docket OAG157, (Revison of Part 72 of Federal Regulations)

To: whom it may concern;

    I'm writing this letter in regards to the new propose SORNA federal regulations(revision of part 72 os SORNA). I'm expected to release within 4 months to a halfway house. During my time in prison I've been completely productive. I've completed my GED and several program. I am currently enrolled in Paralegal Studies. I seek to become a lawyer in the near future, if permitted with my conviction. This formal letter is solely based upon how registration handicaps rehabilitation, damages families, and have little value to the public safety for this costly process, that cause more harm then good. First I would like to address that when the Adam Walsh Act was passed by congress in 2006, they delegated the implementation to the Department of Justice (DOJ) who then formed the SO sentencing monitoring, apprehending, registering and tracking (SMART) office. The SMART office then developed guidelines for states to meet in order to continue to receive their Edward Byrne Fund Grand money or lose that 10%. To date only 18 states have substantially complied and "NO STATE" is in full compliance. A known flaw in the design involves the transfer of criminal code in the state to the SORNA designed codes some are shown as Tier III when their offense falls into Tier I category. Over and above the DOJ minimum guidelines registered citizens are held accountable for state, county and municipality requirements. Which I truly question is not right at all. Let's truly question who poses more danger to a community. A register offender or a drug offender. They pose more danger to the community because they are more people who commit serious crimes and murders over drugs and most likely to more offend. So why is it that they don't have to register as a violent offender. This should violent our eight amendment when our liberty is restored. Its like it never restored. Which is cruel and usual punishment.

    This cruel and usual punishment handicaps rehabilitation because we not able to participate or demonstrate that we pose no danger to the community or person. It's like a life time of punishment and repetition, which isn't fair. Next, it damages our families because we are unable to participate or live certain places or even take our children to sporting events or to even school which kids look forward to those things. On the other hand, I truly believe they should be registration for those who are Tier III which are deemed very violent and dangerous and pose serious bodily harm to a person. You should look to reconsider the SORNA regulations and it would also save the government sus'ainably amount of money as well. I believe this regulations should be really highly considered in changing with many people would greatly benefit from and freedom would be restored for those who pose no little or harm due to the nature of their crime. I hope that you take my letter in consideration with great respects.

Thank you so much for your time!

Very Respectfully,

Submitted:

Trevon Jackson

8/27/2020
Date

AR-00001464

9-5-20

Regulations Docket Clerk
Office of Legal Policy
U.S. Department f Justice
950 Pennsylvania Ave. NW.
Room 4234
WAshington DC   20530

Docket No. OAG 157

To Whom It MAY CONCERN:

My nAME is JEFFERY McGAHA and I
am currently incarcerAted in federal prison
for 1 count of Attempting to receive
material that contained child pornography.
I AM a first time offender who was
never in trouble with law enforcement
until now. I READ the proposAl to
change the registration requirements
of SORNA put out by A.G. BARR on
July 15, 2020. I AM writing to Address
some concerns I have with some of
the proposeD Changes as well as
concerns related to the prior version
of SORNA And its restrictions.

AR-00001465

pg. 2

First let me address the new changes proposed by A.G. Barr. One of the items is the retro-activeness of the plan. There are many sex offenders in the country now (around 1 million) that committed their offenses years if not decades ago. It's not very fair on them to change the rules this far into their new lives. Most new sex offender (S.O.) laws made are not retro-active but only for new offenders after the date the law was passed.

Next is the ability to reduce your time on the registry by keeping a clean record for a certain period of time. I am greatful that this is included but noticed there was no reduction for Tier II offenders, only tier I and III. Why is that? Also, SEVERAL states offer NO opportunity to reduce your time on the registry. Where I may be a Tier I on the federal SORNA guidelines and must register for 15 years with the chance to get off in 10 my state may keep me on for life. This needs to be addressed.

AR-00001466

Pg. 3

The next thing I'd like to address is the issue of registering Any temporary lodging. My wife and I would love to travel this beautiful country one day And see all it has to offer. The Grand Canyon, Mt. Rushmore, giant Redwoods, the Rocky Mountains but some States, once you register there, NEVER take you off their registries EVEN After you leave the state and return to your primary residence. So I could do my time on the registry in my state, let's say 15 years, and be removed BUT still be on the registry in other States simply because I vacationed there for 1 week 5 years ago. According to what I read in A.G. Barrs proposal I would only have 3 business days to register in A state I visited. If, at very least, this could be extended to a grace period of 5 business days or 7-10 consecutive days that would solve the problem here. Some states also charge a registration fee and if you are only going to be there 5-7 days then leave how is it fair to have to pay the fee to register?

AR-00001467

Pg. 4

Concerning International Megans Law.
Why are we trying to stop citizens
from traveling? I know some travel
for reasons th t are scrupulous but
NOT EVERYONE DOES. My crime DID not
cross state lines or country borders,
I travel only with family, never alone,
and telling places I am coming
only plants a seed of distrust in
their minds before I can prove that
I am not there to DO Anything wrong.
Its like telling some group of people,
"Don't trust him, he's a democrat." or
"Watch out for her, she's a Baptist."
By marking my passport with the
"scarlet S.O." designation you set me
up for failure before I get to prove
myself, and by contacting the country
I plan to visit you sow the seed
of doubt before I even get there.
Please give r e and others like me who
want to c nge their lives a fighting
chance! I m e A bAD choice at a
rough time    my life. I never did
it before ar  WILL NOT DO it AgAin.
I made that vow to my GOD, myself
and my family.

AR-00001468

Pg. 5

Now, talking about previous SORNA regulations, why is it that I am lumped into the same basket as people who DI terrifing crimes that brought about Megans LAW or the Adam Walsh Act? I never touched anyone, never tried to meet anyone, and didn't victimize anyone. I didn't distribute Anything, produce anything or even have any pictures or videos on my computer. Yet I am put in with the same rules that people who physically Abused someone have to follow. Its like lumping someone who had a couple of joints in their pocket with someone who imported thousands of pounds, or someone who Accidently killed someone in with A mass murderer. I understand we have a tier system but the same restrictions Apply to a tier I as they do to A tier III. Plus, some states do not have a tier system At All. There needs to be changes to reflect if a person committed a horrible crime or one that was no where near as bad.

AR-00001469

Pg. 6

In closing I hope you take time to consider what I have said in this letter. Not All of us who Are or will be on the sex offender registry are predators lurking in the woods Around a play ground. The majority of us will admit we made a very bad choice and research shows we will be very low on the scale to committ that crime again. In fact, my Pattern score issued to my by the B.O.P. say I Am at minimum risk to re-offend.

Please give us A chance that want to improve ourselves. I know that I won't let you down.

JEFFERY McGAHA
18752-033
FSL Elkton
PO Box 10
Lisbon OH 44432

AR-00001470

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment



💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 24, 2020

| View More Comments | 724 | (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments | 724 | (/docket/DOJ-OAG-2020-0003/comments) |

Share ▾

---



Comment

[**DOJ DOCKET NOTE: Commenters on DOJ Proposed Rules have the option to provide or not to provide their own Personal Identifying Information (PII) such as their names. However, in order to protect the privacy of persons other than the commenter who may not have given their consent for such PII to be posted on www.regulations.gov, it is DOJ's policy to redact third-party PII from a comment. In such instances, the full, un-redacted comment is available for public inspection in person by contacting the For Further Information Contact identified in the Proposed Rule. ***] See attached file(s)

Attachments  2



📄 I would like to express my concerns over the proposed changes to Sex Offender Registration and Notification Act

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0387/attachment_1.pdf)

📄 Derek Employment rate DE Registrants

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0387/attachment_2.pdf)

**Comment ID**

AR-00001471

DOJ-OAG-2020-0003-0387

 **Tracking Number**

1k4-9j57-u810

## Comment Details

**Received Date**

Sep 24, 2020



About (/about)  Bulk Data Download (/bulkdownload)  Agencies (/agencies)  Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)  FAQ (/faq)

Privacy & Security Notice (/privacy-notice)  |  User Notice (/user-notice)  |
Accessibility Statement (/accessibility)  |  Developers (https://open.gsa.gov/api/regulationsgov/)  |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)  Provide Site Feedback

Reference Docket No. OAG 157  "PERSONAL IDENTIFYING INFORMATION" Redact this information: [***DOJ DOCKET NOTE: THE PERSONAL IDENFITYING INFORMATION OF THIS COMMENTER WAS REDACTED AT THE COMMENTER'S REQUEST***]

I would like to express my concerns AGAINST the proposed changes to Sex Offender Registration and Notification Act (SORNA) the provision of the Adam Walsh Act.

Attorney General Barr is trying to reestablish the delegation of decision making of AWA policy to the Attorney General. The goal is to apply the AWA retroactively in spite of rulings like DOES vs. Snyder which found SORNA to be punitive. Proposed changes expand the law of strict liability and basically give the Attorney General "carte blanche" to do what he/she wants to do. One head of an agency should not have the sole decision-making power over this area of our society that has so much importance/ complexity /confusion /misunderstanding.

The decision of the 6th Circuit in Willman v. Atty. General of the U.S. held that there is an independent federal obligation for sexual offenders to register. I do not agree with this decision. Individual states should retain their powers to enact specific laws pertaining to their own method of handling sexual offenders and their registration. Every state is unique in its population. States should retain their powers and rights, the federal government should not interfere. Decision-making should be left up to each state. One size does not fit all.

One area of important concern is juveniles being required to register. Young people SHOULD NOT BE PLACED ON A REGISTRY without some form of assessment and should be given the opportunity to exit the registry based upon their individual circumstances. Research shows that their minds and self-control are still developing. When given the proper education/rehabilitation-they may very likely no longer be a threat and no longer have any propensity to commit a sexual crime. They should NOT BE LOCKED INTO A REGISTRY FOR THESE VERY LONG PERIODS OF TIME THAT SORNA COMPLIANCE REQUIRES.

One of the greatest failures of SORNA is its reliance on classifying all sexual offenders based upon their offense, not on their likelihood to re-commit their crime. These offenders have often served long periods of incarcerated time-research shows their recidivism rate to be low. Careful consideration should be given to MUCH SHORTER PERIODS OF REGISTRATION TIME LIMITS. Why track so many people for such great lengths of time who have already served their time for their crimes who statistically have shown no propensity to re-commit? Wouldn't it make more sense to help them with job training, education, housing, and community-support instead of spending so much money on tracking their whereabouts?

For the small minority of offenders who are a threat to society-they could receive much needed counseling and possibly special housing where there is some form of supervision. The money not spend on tracking so many who are not threats to society could be used to provide this help for the most likely to re-offend.

Attorney General Barr's regulations include expansion of information to be collected and disseminated to include expanded employment information, including professional licenses. This amounts to more regulation of a group of people (for the most part) who statistically have been shown not to be a threat to society. Yes, for those that are likely to re-offend--this regulation should be considered.

Under this proposal individuals will be required to notify their local registration office if they leave the jurisdiction for seven days or longer. This order is proposed allegedly in order to protect children who reside at the location(s) where a registrant may visit. Again, regulation only needed for a very small percentage-not the majority of sexual offenders.

The proposed regulations also address overseas travel for those subject to the International Megan's Law. Specifically, the regulations will require registrants to provide additional information to the federal government regarding their overseas travel such as whether they have dual citizenship and/or passport issued by another country. More regulation that is discriminatory against a specific group of people who for the most part pose no threat to society.

The AWA is in violation of the ex post facto clause (U.S. Constitution Art 1, section 10) and the bill of attainder clause (U.S. Constitution Art.1 section 9). It's also in violation of equal protection and due process laws of the 14th amendment and the 5th amendment guaranteeing due process. To tell states they have to not only add more stipulations to their registry laws but to also add those that are off their registry back on their registry. That is violation of separation of powers in cases that they have been court ordered off and/or have been given relief by the courts because the legislative branch cannot overrule, interfere, or act as a member of the judicial branch. In cases like Doe vs. Snyder a lot of the aspects of the registry were deemed unconstitutional because it violated the vague doctrine of the 5th amendment and the ex post facto clause. Recently, a bill that would have added several more restrictions/punishment for murderers was turned down because it was overbearing, but yet they face nowhere near the stigma and difficulties that sex offenders face.

It has been proven time and again sex offenders are the least likely to reoffend, but more laws are piled on them while people like murderers, child beaters, drunk drivers, terrorists are treated more humanely and with less restrictions/punishments.

https://www.prisonpolicy.org/blog/2019/06/06/sexoffenses/  Report by the Bureau of Justice showed in a 9-year follow-up from release of prisoners- Rape and Sexual Assault had the lowest recidivism rate of all the other categories including ALL VIOLENT crimes.

"If it saves just one child, it is worth it" is the slogan used so many times to justify these draconian laws that resemble very closely the Jim Crow laws and the Nuremburg laws under Hitler that EVERYONE IN THE FREE WORLD CONDEMNED. https://www.facinghistory.org/holocaust-and-human-behavior/chapter-6/nuremberg-laws

There have been multiple studies that show the recidivism rate for sexual offenders is much lower than for most other crimes. In fact, your office (U.S. Dept. of Justice) stated in 2010 that the recidivism rate is less than 5%.

Information from Scientific American   "https://www.scientificamerican.com/article/misunderstood-crimes/ "The evidence suggests otherwise. Sex crimes researchers R. Karl Hanson and Kelly E. Morton-Bourgon of Public Safety Canada conducted a large-scale meta-analysis (quantitative review) of recidivism rates among adult sex offenders. They found a rate of 14 percent over a period averaging five to six years. Recidivism rates increased over time, reaching 24 percent by 15 years. The figures are clearly out of alignment with the public's more dire expectations

Since 2010 there have been studies showing sexual offender recidivism rate  to be much less than 5 %. This study conducted by University of Nebraska found less than #1 percent for recidivism rate of sexual offenders. https://www.unomaha.edu/college-of-public-affairs-and-community-service/nebraska-center-for-justice-research/documents/ne-sex-offender-recidivism-final-report.pdf

AR-00001474

justice-research/documents/ne-sex-offender-recidivism-report-2.
pdfhttps://www.prisonpolicy.org/blog/2019/06/06/sexoffenses/

Much has been written lately about the unintended consequences of the registry. These include homelessness, increased joblessness, being on welfare. This is a tremendous drain on our social/economic structure. Derek Logue of Nebraska just conducted a study of the unemployment rate of registered persons in Delaware. The unemployment rate is 3 times higher than for non-registered people in the state of Delaware.

AR-00001475

1|Page        Delaware Registrant Unemployment Rate Sept. 2020

## UNEMPLOYMENT RATE FOR DELAWARE'S REGISTERED PERSONS SEPT. 2020

A count was conducted by Derek W. Logue of Delaware's sex offense registry on September 3, 2020 to determine the unemployment rate of Delaware's Registered Persons. Based on a count of every publicly listed registrant in the state not currently incarcerated, 1146 of 3182 Registered Persons (36%) of Delaware's Registered Persons are unemployed. By comparison, the July 2020 unemployment rate for Delaware's general population was 10.4%, more than twice the unemployment rate of 3.9% posted in February 2020, likely due to COVID-19.

Some caveats: Many registered persons were "self-employed," and home addresses and work addresses were often the same. This was particularly noticeable in some smaller communities like Clayton and Felton, as well as among transient registrants. This could lead to underestimating the true unemployment rate among the registrant population. Also, because some registrants work or in school in a different city, they appear in multiple searches, thus inflating the rate of employment (see examples below):



| | |
|---|---|
| Name: | A_____ , A_____ |
| Risk: | Tier 2 (Moderate Risk) |
| Home: | 24519 Blue BLVD |
| | MILLSBORO , DE   19966 |
| Work: | 24519 Blue BLVD |
| | MILLSBORO , DE   19966 |
| School: | (no address on file) |

| | |
|---|---|
| Name: | AB_____ , ALB_____ |
| Risk: | Tier 2 (Moderate Risk) |
| Home: | 1490 Main ST |
| | WOODSIDE  DE  19980 |
| Work: | 385 W North ST |
| | DOVER  DE  19904 |
| School: | (no address on file) |

| | |
|---|---|
| Name: | C_____ , J_____ |
| Risk: | Tier 2 (Moderate Risk) |
| Home: | 4 Marblehead RD |
| | SALEM TRACE |
| | NEWARK , DE  19702 |
| Work: | (no address on file) |
| School: | 400 Christiana RD |
| | NEWARK , DE  19713 |

AR-00001476

Here's an article about the collateral consequences of the Sexual Offender Registry.
https://www.cjcj.org/uploads/cjcj/documents/frenzel_et_al_collateral_consequences_final_formatted.pdf


    What about the thousands of children who are homeless, fatherless, motherless, beat up, murdered, kicked out of school, humiliated to the point of committing suicide, and constantly mocked because their parent is a sex offender or are one themselves because they were "curious" or thought innocent? A very public registry makes for vigilante and violent behaviors against registrants. Presently, there are a number of these hate/vigilante individuals and groups and their number is growing. http://oncefallen.com/vigilantes.html
https://www.omahadailyrecord.com/content/omaha-man-charged-murder-sex-offender-vigilante


    The majority of sex crimes is committed by a trusted family member, friend, or colleague and most is NOT ON THE REGISTRY. A Bureau of Justice Report found that 3 out of 4 sex crimes were committed by someone known to the victim. Some studies cite this percentage to be much higher.   https://bjs.gov/content/pub/pdf/SOO.PDF
https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf


    So what good is the registry if most sexual offenses are being committed by people who are not on the registry? The money spent on maintaining the registry could be better spent on education: programs and counselors to help people understand their sexuality. Emphasis should be on educating all persons who are having difficulty with their sexual urges. Especially, educating young people how to manage and deal with their sexual feelings and what the laws are governing sexual behaviors that are deemed harmful. Information should be given to young people so that they would have an understanding of what acts are unlawful and would receive help before they committed these acts.

https://rsoresearch.files.wordpress.com/2012/01/free-as-the-least-free.pdf When one person loses his freedom, we're all a little less free. The presumption of innocence was addressed in Coffin v. U.S. 1895. It addressed the long history of the presumption of innocence. A statement from Supreme Court of the United States in Henry v. U.S. (1959) which established that it is better, so the 4th Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest.

    Who Really Commits New Sex Crimes?        https://sosen.org/blog/2015/12/29/who-really-commits-new-sex-crimes.html        " not forgetting to add in the re-offense rate for people on the registry for new sex crimes The June 2002: Department of Justice: Recidivism of Prisoners Released in 1994 (DOJ-2002) crime from 1994-1997. (DOJ-2002 page 5) it is known that during that time period (1994-1997): Of the released sex offenders 3.5% (339) Were reconvicted for a sex crime over a Three year period So for one year average there was 113 RECONVICTED for a new sex offense. (DOJ-2003[p2]). Now for the (reality) plug-in (113/63000) you get 0.17% or basically less than 2/10 of 1%. According to the Department of Justice, most child sexual abuse victims are molested by family members (34%) or close acquaintances (59%) totaling 93% of new sex crimes (Bureau of Justice Statistics, 2000)."

Here's the breakdown thus far, in the Percentage of new sex crimes

Close acquaintances (59%)

Family members (34%)

Police officers 3.0%

Teachers 00.7%

Clergy 00.3%

Strangers 2% those who have not been convicted of a sex crime (note: this could include somebody that was met at a party or a street dance and does not necessarily mean an adult)

People on the registry/previously convicted 00.17%. that is 17/100s of 1%.


By continually punishing sex offenders by having them register, restricting their places of residence/ work, and prohibiting who they may come into contact with--including their own family members (at times) we (society) are promoting these #3 negative side effects: http://web.sbu.edu/psychology/lavin/negative%20punishment.htm

1. punishment often fails to stop and can even increase the occurrence of the undesired response.
2. punishment arouses strong emotional responses that may generalize. Results may be anxiety, apprehension, and self-punishment.
3. Usually punishment models aggression. Social power is exemplified.

I am a public school teacher of 36 years- I can attest to all of the above. NO SMOOTH SAILING FOR TEACHERS WHO DEAL OUT PUNISHMENTS ALL THE TIME WITHOUT ALLOWING FOR REWARD AND INCENTIVES, GROWTH.

Here is a document from ATSA (Association for the Treatment of Sexual Abuse with documentation of the following FACTS:      https://www.atsa.com/sex-offender-registries-and-residence-restrictions-0

Fact 1; Registries do not lower sexual re-offense rates. Re-offense rates are already so low that registries and residence requirements do not drive the numbers of re-offenders lower.  Fact 2: Registries do not make society safer. Because registries and residence requirements are designed to minimize sexual assaults by strangers, such laws do nothing to protect against the more typical situation of sexual assault by someone the victim knows. Fact 3: Registries do not help individuals become productive members of society. Fact 4: Registries are not cost effective Use of taxpayer money to maintain the registries could be more effectively used to educate the public about ways to prevent sexual abuse from occurring in the first place. Fact 5: Registries and residence restrictions are not humane. The restrictions go beyond what is reasonable and humane and create a life-long inescapable branding. Recent studies show that adolescents placed on registries have a higher suicide rate than teenagers who have committed nonsexual crimes Fact 6: Residence requirements do harm families. Often registered persons are prohibited from living with their families or in their home neighborhoods because of proximity to parks, schools, or other locations the individual is required to avoid. This splits families and reduces the individual's access to supports that promote positive outcomes and build safer communities. CAN THE AVERAGE PERSON HONESTLY THINK THIS IS GOOD PRACTICE? HOW WOULD YOU LIKE TO BE SEPARATED FROM YOUR FAMILY/SUPPORT GROUP?

AR-00001478

Sex offenders who have served their time for their crimes have completed their punishment. They have paid for their wrong-doings. They need to be given the opportunity to be more than their mistakes they've made in their lives.

Those who are promoting and are in charge of this very costly ineffective system of registering **all** people who have paid for their crimes should be held accountable for their actions.

AR-00001479

## UNEMPLOYMENT RATE FOR DELAWARE'S REGISTERED PERSONS SEPT. 2020

A count was conducted by Derek W. Logue of Delaware's sex offense registry on September 3, 2020 to determine the unemployment rate of Delaware's Registered Persons. Based on a count of every publicly listed registrant in the state not currently incarcerated, 1146 of 3182 Registered Persons (36%) of Delaware's Registered Persons are unemployed.  By comparison, the July 2020 unemployment rate for Delaware's general population was 10.4%, more than twice the unemployment rate of 3.9% posted in February 2020, likely due to COVID-19.

Some caveats: Many registered persons were "self-employed," and home addresses and work addresses were often the same. This was particularly noticeable in some smaller communities like Clayton and Felton, as well as among transient registrants. This could lead to underestimating the true unemployment rate among the registrant population. Also, because some registrants work or in school in a different city, they appear in multiple searches, thus inflating the rate of employment (see examples below):





| | Name: | B_____ T. JI |
| --- | --- | --- |
| Homeless | Risk: | Tier 2 (Moderate Risk) |
| | Home: | |
| | Work: | |
| | School: | (no address on file) |

Cities that did not have registrants listed publicly at the time of this count include or unable to be accessed due to website error: Arden, Bethel, Blackbird, Bowers Beach, Broad Brook, Centerville, Henlopen Acres, Ivyland, Kirkwood, Lewes Beach, Little Creek, Long Neck, Manor, Marshallton, Middletown, Millville, Minquadale, Montchanin, Rehoboth Beach, Rockland, Slaughter Beach, South Bethany, St. Georges, Stanton, Talleyville, Winterhur, and Yorklyn. Philadelphia PA was included in the state registry for some reason, but the 81 people listed for Philly were excluded (many were within a detention center despite the checkmark that was supposed to filter out incarcerated Registrants). Those in DOC custody were also excluded in the count.

| Municipality | Unemployed RCs | Total RCs | Percent Unemployed |
| --- | --- | --- | --- |
| Bear | 17 | 53 | 32% |
| Bellefonte | 2 | 3 | 66% |
| Bethany Beach | 1 | 3 | 33% |
| Blades | 6 | 11 | 55% |
| Bridgeville | 18 | 65 | 27.7% |
| Camden | 9 | 38 | 23.7% |
| Camden Wyoming | 7 | 23 | 30.4% |
| Cheswold | 2 | 5 | 40% |
| Christiana | 2 | 2 | 100% |
| Clarksville | 1 | 2 | 50% |
| Claymont | 9 | 32 | 28.1% |
| Clayton | 8 | 32 | 25% |
| Dagsboro | 8 | 23 | 34.8% |
| Delaware City | 4 | 5 | 80% |
| Dewey Beach | 0 | 3 | 0% |
| Dover | 156 | 438 | 35.6% |
| Dover AFB | 0 | 1 | 0% |
| Edgemoor | 1 | 2 | 50% |
| Ellendale | 9 | 20 | 46% |
| Elsmere | 3 | 8 | 37.5% |
| Farmington | 1 | 1 | 100% |
| Fenwick Island | 0 | 1 | 0% |
| Felton | 24 | 91 | 26.4% |
| Frankford | 4 | 18 | 22.2% |
| Frederica | 8 | 21 | 38.1% |

| | | | |
|---|---|---|---|
| Georgetown | 45 | 151 | 29.8% |
| Greenville- | 2 | 2 | 100% |
| Greenwood | 13 | 38 | 34.2% |
| Harbeson | 1 | 32 | 3.1% |
| Harrington | 30 | 67 | 44.7% |
| Hartley | 13 | 31 | 41.9% |
| Hockessin | 4 | 9 | 44% |
| Houston | 6 | 12 | 50% |
| Kenton | 2 | 2 | 100% |
| Laurel | 40 | 114 | 35.1% |
| Leipsic | 0 | 1 | 0% |
| Lewes | 17 | 42 | 40.5% |
| Lincoln | 21 | 53 | 39.6% |
| Magnolia | 27 | 65 | 41.5% |
| Marydel | 6 | 9 | 66.6% |
| Milford | 19 | 120 | 15.8% |
| Millsboro | 36 | 155 | 23.2% |
| Milton | 9 | 42 | 21.4% |
| Nassau | 1 | 1 | 100% |
| New Castle | 93 | 275 | 33.8% |
| Newark | 76 | 207 | 36.7% |
| Newport | 2 | 8 | 25% |
| Ocean City | 3 | 8 | 37.5% |
| Ocean View | 5 | 12 | 41.6% |
| Odessa | 0 | 1 | 0% |
| Port Penn | 0 | 1 | 0% |
| Rehoboth | 4 | 13 | 38.4% |
| Seaford | 47 | 136 | 34.6% |
| Selbyville | 3 | 22 | 13.6% |
| Smyrna | 16 | 24 | 21.6% |
| Townsend | 11 | 30 | 36.6% |
| Viola | 1 | 4 | 25% |
| Wilmington | 287 | 582 | 49.3% |
| Woodside | 1 | 5 | 20% |
| Wyoming | 3 | 7 | 42.9% |
| TOTAL DE RCs | 1146 | 3182 | 36% |

Trevon Jackson #75229067
L.S.C.I. Allenwood
P.O. BOX 1000
White-Deer,PA 17887-1000

(To)
Regulations Docket Clerk
Office of Legal Policy Department of Justice     $A+N$
950 Pennsylvania Avenue NW Room 4234
Washington, DC 20530

David J. Karp, Senior Counsel
Office of Legal Policy
U.S. Department of Justice
Washington, DC 20530

RE: Docket OAG157, (Revison of Part 72 of Federal Regulations)

To: whom it may concern;

    I'm writing this letter in regards to the new propose SORNA federal regulations(revision of part 72 os SORNA). I'm expected
to release within 4 months to a halfway house. During my time in prison I've been completely productive. I've completed my
GED and several program. I am currently enrolled in Paralegal Studies. I seek to become a lawyer in the near future, if
permitted with my conviction. This formal letter is solely based upon how registration handicaps rehabilitation, damages
families, and have little value to the public safety for this costly process, that cause more harm then good. First I would like to
address that when the Adam Walsh Act was passed by congress in 2006, they delegated the implementation to the Department
of Justice (DOJ) who then formed the SO sentencing monitoring, apprehending, registering and tracking (SMART) office. The
SMART office then developed guidelines for states to meet in order to continue to receive their Edward Byrne Fund Grand
money or lose that 10%. To date only 18 states have substantially complied and "NO STATE" is in full compliance. A known flaw
in the design involves the transfer of criminal code in the state to the SORNA designed codes some are shown as Tier III when
their offense falls into Tier I category. Over and above the DOJ minimum guidelines registered citizens are held accountable for
state, county and municipality requirements. Which I truly believe is not right at all. Let's truly question who poses more danger
to a community. A register offender or a drug offender. They pose more danger to the community because they are more people
who commit serious crimes and murders over drugs and most likely to more offend. So why is it that they don't have to register
as a violent offender. This should violent our eight amendment when our liberty is restored. Its like it never restored. Which is
cruel and usual punishment.

    This cruel and usual punishment handicaps rehabilitation because we not able to participate or demonstrate that we pose no
danger to the community or person. It's like a life time of punishment and repetition, which isn't fair. Next, it damages our
families because we are unable to participate or live certain places or even take our children to sporting events or to even
school which kids look forward to those things. On the other hand, I truly believe they should be registration for those who are
Tier III which are deemed very violent and dangerous and pose serious bodily harm to a person. You should look to reconsider
the SORNA regulations and it would also save the government sustainably amount of money as well. I believe this regulations
should be really highly considered in changing with many people would greatly benefit from and freedom would be restored for
those who pose no little or harm due to the nature of their crime. I hope that you take my letter in consideration with great
respects.

Thank you so much for your time!

Very Respectfully,

Submitted:

Trevon Jackson

$8/21/20$
Date

AR-00001483

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 25, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

SORNA is too broad. When will we learn one size does not fit all? The sex offender registry is a bloated, expensive, counterproductive failure. There are many empirical studies that sow it's an utter failure that creates public danger rather than reduces it. Individuals who pose no risk, were children at time of offense, Romeo/Juliet, non-contact, consensual, non-intentional, stings ops, etc. Need to be removed from the registry immediately. Funds would be better spent on prevention and community education, such as 97% of offenses are by someone the victim knows and trust. Equally 97% of people added to the registry annual have no prior sex related offense, which leaves around 3% recidivism, the lowest of any other crime. People who commit murder or child abuse are allowed to move and engage in life freely after their offenses, but we have children who may have sent a picture to their teen peer and now carries a pedophile label, sometimes for life. SORNA was created from emotion, at a time we had very little science for solving cases (DNA) and much less for understanding psychological motivations for sex offenses and offenders, but now we do. I am a survivor who testified against my father to place him in prison for 30 years. I appreciate all offenders are not the same and have become a child advocate that studies psychology. SORNA is like a cancer clinic that inoculates every patient with the same dose of radiation. This type of treatment kills almost everyone because for most the dose is too high to survive, in others the disease will grow because there is not enough treatment. While others in communities with carcinogenic threats, will never get the education and intervention needed because all the funds have been wasted on the "treatment" of some that proves worse than the disease. The entire registry needs to be scrapped and rebuilt on scientific facts, instead of continuing this failed experiment that has destroyed so many innocent and families. We can save millions, I'm speaking of individuals, families and dollars if we do this right. Don't the victims of sex offenses deserve a justice system that uses evidence to reduce more suffering? Isn't that what we as a society should aim for?

---

**Comment ID**

DOJ-OAG-2020-0003-0389

AR-00001484



**Tracking Number**

kfh-blxt-dr8a

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 24, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 25, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)        Share ⌄

Comment

I am licensed as a Certified Sex Offender Treatment Provider in Washington State. I have worked extensively with adolescent client who have committed sexual offenses as well as with survivors of sexual assault. I am writing to encourage you to reconsider amending SORNA to require federal registration for individuals who sexually offended as minors. There is virtually no evidence to suggest that requiring registration reduces recidivism. The available research indicates that most adolescents who offend sexually will not go on to commit a new offense making a federal registration requirement unnecessary. While I believe this legislation is likely motivated by an attempt to enhance community safety, the unintended consequences will be to place additional burdens on individuals who are not a threat to community safety.

Thank you for your consideration.

**Comment ID**

DOJ-OAG-2020-0003-0390

 **Tracking Number**

1k4-9j5b-1n1f

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 24, 2020

AR-00001486



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 25, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

---

Comment

The Registry is PUNISHMENT ! NO ANDS IFS OR BUTS ! This is getting old for the last 25 years you and your registries so called rules are nothing more then a way to hold down those who have served their sentences , To KEEP retroacting this PUNISHEMNT year after year is sad ! STOP waisiting tax payers money and STOP acting like you are a sentencing Judge Mr. Barr , You have tore this country up enough , look what is going on in our streets , look at the damage you and Trump have done to this country . You are the ones who need to be on a List you are the ones tearing American apart with your madness . Enough is enough ! Retro activating Life Sentences is NOT CONSITUTIONAL ! STOP     People deserve the right to have freedom after serving the sentence they received from a sentencing judge . Your B.S rules are exactly that .

**Comment ID**

DOJ-OAG-2020-0003-0391

 **Tracking Number**

kfh-h9ok-gwa8

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 24, 2020

AR-00001488



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 25, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Re: Docket No. OAG 157 Proposed Rule Interpreting Registration Requirements under SORNA

My comments are about the statement that "The rule in part reflects the exercise of authorities SORNA grants to the Attorney General to interpret and implement SORNA's requirements".

It seems to me that an Attorney General with this authority could implement stringent conditions only to be replaced a new Attorney General with a different philosophy about the requirements. I am a Florida resident who spends summer months in Ohio. I am familiar with how registry requirements differ between these two states and even county to county within each state. If applicability conflicts with a state's judicial precedents, will this not lead to court battles and more confusion among registrants? Where do states rights under our federal government apply?

I understand that this is not new law but new requirements which means new restrictions for registrants. For instance, these regulations apply to all sex offenders, regardless of when the offense occurred. Those offenders, whose requirement to register has expired, will once again be brought back under jurisdiction.

Is the Department of Justice going to pay the states to implement this: additional law enforcement officers to monitor the new restrictions and the additional people that must return to the registry; training for all officers; clerical personnel for the additional paper work and other administrative costs? Certainly, this is the worst possible time for states to take on this burden. They are working with significant less tax revenue because of Covid 19. Where is the money coming from to cover these costs?

I also understand that an additional requirement is informing the authorities of transient addresses. This is our family's experience. My son was sentenced in 2011. In 2018 he was crossing a street and was hit by a car. He was taken to a local hospital and transferred to University Hospital in Cleveland, Ohio. Over the next two weeks, he changed addresses four times between hospital and rehab, each lasting longer than four days. There were two more address changes before he was able to return home after four months. (By the way, if you are unaware, we were told that no five, four or three star rated rehab facility will take someone on the registry. This

would not apply to those with former felony convictions for drug dealing, armed robbery, assault or other serious offenses. How would a facility know? But a seven-year-old conviction of a man with a job, an apartment and health insurance was kept from the best care because of the registry. Add to that, although we live in a metropolitan area with many rehab facilities, the closest one star was over an hour away. It was winter.) My son was fortunate the accident occurred between his six months registry requirements.

How would those residence changes be handled by someone after such an accident under the new requirements? These will be additional rules that will disproportionately affect those having been in an accident and the elderly as they face living and cognitive changes.

Those on the registry benefit from using the internet in search of employment. Many, like my son, are already paying monthly for internet monitoring. Why add the additional requirement of having to report remote identifiers?

According to the SMART Office website, Chapter 5: Adult Sex Offender Recidivism findings from the Sex Offender Management Assessment and Planning Initiative, "The rates of recidivism for general crime are higher than those for sex crimes". Why give one person, no matter who, the power to impose additional restrictions for criminal activity that has a lower recidivism rate than most?

What I find most interesting from that study, the first listed finding is "Observed recidivism rates of sex offenders are underestimates of actual reoffending". What is the basis of that statement? It reeks of thought police. Teens who have underage sex age up and even marry each other. Non-contact, non-production first time child pornography offenders are often those who suffer from depression because of childhood trauma. Psychiatric treatment can address that activity. That statement seems to belong in a movie meant to frighten.

In 2012, the Practitioners Advisory Group of the US Sentencing Commission issued a report which states We commend the Commission for its willingness to investigate ways to reform sentences in this area to better reflect true culpability and achieve justice, and are grateful for the opportunity to assist its work in this area. This was a response to the offense of viewing child pornography, but it can apply to many others who bear the label of sex offender. Unfortunately, sentencing is a small part of paying for these crimes. It goes on with the registry. This latest action will make the punishment continue for the registrants and their families. For what purpose?

---

**Comment ID**

DOJ-OAG-2020-0003-0392

---

 **Tracking Number**

1k4-9j5c-l2p6

---

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 24, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001492

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 25, 2020

View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

In the past we had The War on Drugs, Tough On Crime, and Three Strikes Youre Out. These slogans represent laws and policies that most politicians, government officials and citizens now recognize as misguided approaches to criminal justice that caused an explosion in the prison population as well as significant collateral damage. Now weve moved to sex offender registries (which are growing by leaps and bounds) and corresponding laws based on fear, misinformation, horror, and politics. Multiple studies have shown these laws to be ineffective*, and in my state, Michigan, the sex offender registry has been declared unconstitutional.

Current sex offender laws need to be changed. New laws that are evidence-based, that are backed by science and that are just need to be enacted.

Thank you for reading and considering my comments.

Sincerely,
Nancy Byers

*Prescott, J.J., & Rockoff, J. E.
Do sex offender registration and notification laws affect criminal behavior?
The Journal of Law and Economics
https://doi.ortg/10.1086/658485

**Comment ID**

DOJ-OAG-2020-0003-0393

AR-00001493



**Tracking Number**

1k4-9j5n-k4ec

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 25, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

View More Comments ⬚724 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ⬚724 (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

It all seems so laughable. The crimes behind the registry were based on children who were both raped and murdered, great, so how many child raper-murderers are on the registry of the one million?---- none! great example, the acts were founded on cases that would never be part of the registry, so why use those the examples to justify the existence of the unconstitutional registry? Answer: Prejudice.

So what is the percentage of sex crimes committed by re-offence of registered sex offenders? Common accepted number is 5-8% So who is most likely to commit a sex crime against a child, someone they know. Again, generally accepted percentage is around 80-90%.

It's all so laughable again, THE GREATEST DANGER TO THE COMMUNITY IS EVERYONE NOT ON THE REGISTRY !! So the greatest danger to the community is the community itself !! So, applying the wonderful logic of the unconstitutional prejudicial community is to have the whole community registered !!!, thereby forming a very efficient Police State!

And having everyone on the corresponding and appropriately named "highly likely sex offender registry", the wonderful statistics would show such a registry would definitely be effective to substantial reduce the number of crimes against children as the current registry is SUPPOSED to have already proven that, but no statistics have shown that to be true. That's what the prejudicial paranoid community wants---a police state, then give it to them.

Also noting so many of the statistical studies the government presents are 10-15 years old, They will never show current statistics because those old statistics are contradicted by more precise and accurate current statistics.

We are on our way to a police anyways as the Constitution is eroded day-by-day by highest Courts saying "not enough", "does not reach", or "not sufficient"--- to violate the constitution. Just what the Framers of the Constitution wanted to happen!

Its so funny, so many parents forget one thing: they want to protect their own children but it is a GUARANTEED probability that their own child will end up on the registry, and watch the amazing conversion, realizing the registry was a disaster all along. Now they know. Just a simple matter of perspective and circumstance.

AR-00001495

**Comment ID**

DOJ-OAG-2020-0003-0394



**Tracking Number**

1k4-9j5q-32v5

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 25, 2020



Your Voice in Federal Decision Making

About   Bulk Data Download     Agencies     Learn

(/about)          (/bulkdownload)      (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

| View More Comments (724) (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments (724) (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

Comment

Dear Sir or Madam,
I am writing in regards to current requirements as well as proposed changes of SORNA.
The Sex Offender Registry is in need of serious reform. Just like all drug offenses are not the same or all robberies are not the same, all sex offenses are also not the same. However, the way it is now, being placed on the registry and requirements therein are very black and white. No consideration is given to the actual crime that took place. No consideration is given to any mitigating circumstances. However, black and white could not be further from the truth in many sex crimes.
My son, at the age of 21, was arrested in a sting operation. He had never been in trouble a day in his life with the law, not even so much as a parking or speeding ticket. He was raised in a middle to upper middle class home with a large supporting family. He was serving his community working in EMS and had plans and hopes for his future which have now all been taken from him. Is he innocent in everything that happened? No. However he took a plea deal, per the advice of his lawyer, which included a charge of Attempted Aggravated Indecent Assault. The only qualifying thing for this charge is the age difference between him and the FICTITIOUS victim. This was not even one of his initial charges. The day he entered his guilty plea he was told BY THE JUDGE that he would be a Tier 2 offender. It was not until five weeks later that he was informed by his attorney that the judge had "made a mistake" and that he was actually a Tier 3. How is it fair that a 21 year old with no prior criminal history and NO ACTUAL VICTIM is placed on the registry for the rest of their life? There were several mitigating circumstances as well. He was diagnosed after the fact with severe ADHD. Per his therapist, the severity of his untreated and undiagnosed ADHD made him impulsive and gave him the mental age of a 16-18 year old even though his chronological age was 21. He was being bullied at work. He had a girlfriend at the time who was verbally abusive to him (I would hear her call him and scream at him). He was morbidly obese and had low self esteem. When you put all these things together it is the perfect storm. He is not blameless in his crime and I do not intend to sound that way. He also has accepted full responsibility and very thoughtfully and eloquently addressed the court and judge. However, with all his mitigating circumstances, when he was baited by law enforcement, he fell right into their trap. Law enforcement knew exactly what they were doing when they posed as a 14 yr old (as opposed to posing as a 16 or 17 year old). They knew the consequences would be severe. He was subsequently sentenced to state prison and now will have to register every three months for life for a crime that did not even have an actual victim. Let me say that again. There was no victim. He did not molest or touch anybody. How is this not cruel and unusual punishment? How is this not an infringement on his constitutional

AR-00001497

right to the pursuit of happiness? He is paying his debt to society with his prison sentence, especially during a
pandemic which has resulted in long periods of lockdown (23 hrs 20 mins a day for 2.5 months straight), no
visits from family, limited phone calls and interaction with family. However, he will never be done paying his debt
because he will have to carry the title of a Sex Offender with him for life. He will never be able to go on vacation
for more than a week without having to say where he is going. This is disheartening because our family travels
often. He will forever, as it stands now, have his information such as employer, home address, etc made public
knowledge. I also know there are thousands of young men on the registry for this same reason. There was an
article in the NY Times Magazine on/about Aug 27, 2020 titled "Convicted of Sex Crimes, but With No Victims"
that talks about this exact issue. I would challenge each of you to read it and really consider this as it is occurring
at epic rates and ruining thousands of lives.

There are multiple studies that show the registry does nothing to improve the safety of communities. It is
expensive as well as time and labor intensive with no real benefit as a large majority of people on the registry
pose no threat to society. Sex Offenders have one of the lowest rates of recidivism of any other class of criminals
yet are subject to the strictest punishments. In my son's case, his therapist has said, with treatment, he is not a
threat to society and unlikely to ever reoffend.

I would like to suggest that judges in each state have the discretion to place people on the registry based on the
actual crime and taking into account mitigating circumstances, much like SB 145 that was recently passed in
California. Also, lifetime registrants of any age, not just juveniles, should have the ability to be removed from the
registry at some point in the future after completing requirements.

Thank you.

---

**Comment ID**

DOJ-OAG-2020-0003-0395

---

 **Tracking Number**

kfi-g1v3-khm3

---

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 25, 2020



About    Bulk Data Download    Agencies    Learn
(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

---

Comment

The proposal by the AG creates conditions that could impose federal regulations on states that have their own ideas about how to best create and maintain SO Registries. This proposed rule change needs to be removed because it is an attack on States Rights. The rule change pushes States into a corner and coerces them to give up their own schemes in lieu of SORNAs one-size-fits-all scheme because they fear losing JAG funding.

**Comment ID**
DOJ-OAG-2020-0003-0396

◎ **Tracking Number**
1k4-9j5t-jsdq

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Sep 25, 2020

AR-00001500



*Your Voice in Federal Decision Making*

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

View More Comments ⟨724⟩ (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ⟨724⟩ (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

Comment

From a taxpayer's point of view - the registry is just to damn expensive. We need the money to fight domestic terrorism, police training, rebuilding cities that are being destroyed, educating our children. This registry serves little or no purpose other than to harrass individuals, keep them incarcerated and prevent then from reentering society. SORNA has become a billion dollar empire.

**Comment ID**
DOJ-OAG-2020-0003-0397

◎ **Tracking Number**
kfi-tjjk-6a67

| **Comment Details** | **Submitter Info** |
|---|---|

**Received Date**
Sep 25, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

View More Comments   724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

---

Comment

As a Vietnam Vet recover alcoholic after two sex offenses was my bottom after prison. Finding it hard to get satisfaction when trying to get off the list after 15 years. It seems The states want to find reason to not let u off. There is no due process when a person is assigned a tier 1 and when they move the local police jack u up to a tier 3 and u have to go through due process just to get your tier lowered again. Not fair.Police should not have the authority to determine your tier, only the Judge should via due process . No matter where they move state to state or county. I am currently trying to get off the state list, but socialism won't let me. Otis Fellows

**Comment ID**
DOJ-OAG-2020-0003-0398

**Tracking Number**
kfi-thj5-bvsw

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Sep 25, 2020

AR-00001504



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001505

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |  Share ⌄ |

---

| Comment |

I strongly oppose the Registration Requirements under the Sex Offender Registration and Notification Act that is being proposed by Attorney General Bill Barr. It appears that his proposal has been done with little to no forethought of the logistical nightmare it will be to implement this nationwide and the punitive hardships it will have on the 900,000+ Registrants living in the U.S. The implementation of this Draconian measure will have ripple effects that will disrupt millions of lives, run up costs of maintaining such an unwieldy system, wasting valuable resources from federal agencies, and clog up courts with frivolous cases for years to come.

Heres what I mean...

If this was to happen, which agency or agencies are going to monitor 900,000+ Registrants in all 50 states? FBI? ICE? Homeland Security? Federal Marshals? How many agents are going to be dedicated to make sure that 900,000+ Registrants are SORNA compliant? How many Registrants will each agent monitor all year round on top of their already existing workload?

Or will you start a whole new agency just for SORNA? Is there funding for this? How much will this cost us taxpayers?

Of 50 states only 17 are SORNA compliant. Has it occurred to you why that is? California ,for example, has over 100,000 Registrants living throughout its state. To implement SORNA'sminimal requirement would run up costs for California at least 4 times the amount - Registrants having to register up to 4 times a year in each jurisdiction for where they live, work or go to school, and where they were convicted. BTW, what if the Registrant was convicted in another state that he is no longer living in? For example, if this Registrantwas convicted in Texas but is currently living in California, does that mean he has to return to Texas up to four times a year to re register?

Do you see the insanity of these requirements?

The current infrastructure that is in place is mostly maintained by state Registries in the form of local police and sheriff stations throughout the U.S. They occupy various jurisdictions which have different Registration requirements based on the needs of the community and the size of their budget. That last part is important

AR-00001506

because that dictates what they are capable of implementing. How will these states handle this sudden increase of workload? Where are the funds to do this?

The lives of 900,000+ Registrants and theirfamilies will be overturned by these Registration Requirements. Like I mentioned earlier, if implemented Registrants need to register up to 3 jurisdictions...that is least 3 times a year for Tier 1's. For Tier 2's that is up to 6 times a year. And for Tier 3's that is up to 12 times a year. What place of employment will tolerate this much time off for the Registrant to do this? If you do not know this, then it is important to realize that employment for Registrants is difficult enough as it is being on the Registry. Mostly low income work are the only options. And on top of this they have families to support! The lives that are affected do not start and end with Registrants.

Like I stated above, what if the jurisdictions that the Registrants are unable to comply with SORNA minimal requirements? What if the jurisdiction this Registrant works in won't accept his registration because they only accept those that live there only? What if the jurisdiction where he was convicted won't accept him for the same reasons? What if nearly ALL jurisdictions cannot accompany SORNA minimal requirements for various reasons, like there is no budget for this? Are you going to start rounding up THOUSANDS of Registrants at a time for failure to comply? Which agency/agencies will determine this?

And let's say, for the sake of argument, you can round up thousands and thousands of Registrants within a year, how will the federal court system handle this sudden surge of frivolous court cases? How much would this cost the taxpayer?

Are you willing to fill up prisons once again during a time when the inmate population needs to be reduced? And how much will that cost the taxpayer?

Do you not see that this proposal is nothing more than a flaccid attempt to shrug off waves of accusations from different departments of government in regards to Bill Barr's corrupted use of his office as Attorney General? Do you people want to be part of his legacy of incompetence and corruption? Because in my estimation there is no life after Bill Barr's tenure...

Don't be part of Bill Barr's folly! Strike down this proposal! It is bad for EVERYONE.

**Comment ID**

DOJ-OAG-2020-0003-0399

 **Tracking Number**

1k4-9j65-qu4v

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 26, 2020



Your Voice in Federal Decision Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
| --- | --- |

---

Comment

As a former child victim, and parent of 2 rape victims, also parent of a nonviolent, no contact registrant, please stop this nightmare. The scientific evidence shows the registry has not prevented sex crime. Nor has it protected communities, what it has done is create a second class of citizens. It has made people homeless, unemployable, and targets for vigilantes. It punishes entire families, it is to broad, and punishes many for life that are not a danger to reoffend. Every state makes their own rules and restrictions we have gone to far. When those that once advocated for the laws now advocate for reform we should listen. My family lives in fear of being killed by under educated vigilantes. Should we not use evidence rather than emotion to make laws? If our prisons offered true rehabilitation then therapy would be a part of it. Rehabilitation would better protect our communities. We once condemned Germany for a list, special ID'S, passport ID stamps, special residency restrictions, and now they condemn us. Once a sentence is served it should be done, and it should be a uniform law nation wide. Then for you to go back and punish retroactively is absurd. People have been living crime free, why go back and destroy them? Reform SORNA to better match scientific evidence, stop over punishment. With the movements toward CJR, SORNA needs reform as well. The AWA is confusing and expensive, it needs to end. When you encourage states to up the anti for profit it can only go bad. There's a very small number of people who reoffend, the number decreases over a 15 year time period. There are children as young as 8 registered for life. People who committed crimes at 14, 16, 18 years of age, for life. The human brain doesn't even mature until mid twenties. People are on the registry that are 80 or more, it's just too much.

| **Comment ID** |
| --- |
| DOJ-OAG-2020-0003-0400 |

|  **Tracking Number** |
| --- |
| 1k4-9j65-8nh4 |

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 26, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001510

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

Comment

SORNA needs to be eliminated. Our countrys sex offense laws are based on rare, sensationalized cases and societal myths. The data collected over the last twenty years clearly shows SORNA does not increase public safety. It is punitive and of no value to society.

As for the proposed changes, I strongly oppose the federal government usurping states rights. Currently, the 33 states that are not SORNA compliant each have its own rules. For example, people convicted of a Tier 1 offense in Washington get off the registry after 10 years even though SORNA requires 15 years. In the past, an individual only needed to abide by the rules of his or her home state to avoid prosecution. With these proposed changes, that individual must also abide by the federal regulations to avoid prosecution especially if they cross state lines.

Further, I strongly oppose requiring people to provide new information (information about professional licenses) when they register that was not in the original statute. This is overreach.

In conclusion, I strongly support the elimination of SORNA. If that is not a possibility, I strongly oppose the proposed changes which will cost more and do nothing to increase public safety.

| **Comment ID** |
| DOJ-OAG-2020-0003-0401 |

|  **Tracking Number** |
| 1k4-9j6h-lc5d |

AR-00001511

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 26, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

## Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

| View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

Comment

I strongly oppose the Registration Requirements under the Sex Offender Registration and Notification Act that is being proposed by Attorney General Bill Barr. It appears that his proposal has been done with little to no forethought of the logistical nightmare it will be to implement this nationwide and the punitive hardships it will have on the 900,000+ Registrants living in the U.S. The implementation of this Draconian measure will have ripple effects that will disrupt millions of lives, run up costs of maintaining such an unwieldy system, wasting valuable resources from federal agencies, and clog up courts with frivolous cases for years to come.

Here's what I mean…

If this was to happen, which agency or agencies are going to monitor 900,000+ Registrants in all 50 states? FBI? ICE? Homeland Security? Federal Marshals? How many agents are going to be dedicated to make sure that 900,000+ Registrants are SORNA compliant? How many Registrants will each agent monitor all year round on top of their already existing workload?

Or will you start a whole new agency just for SORNA? Is there funding for this? How much will this cost us taxpayers?

Of 50 states only 17 are SORNA compliant. Has it occurred to you why that is? California ,for example, has over 100,000 Registrants living throughout its state. To implement SORNA's minimal requirement would run up costs for California at least 4 times the amount – Registrants having to register up to 4 times a year in each jurisdiction for where they live, work or go to school, and where they were convicted. BTW, what if the Registrant was convicted in another state that he is no longer living in? For example, if this Registrant was convicted in Texas but is currently living in California, does that mean he has to return to Texas up to four times a year to re register?

Do you see the insanity of these requirements?

The current infrastructure that is in place is mostly maintained by state Registries in the form of local police and sheriff stations throughout the U.S. They occupy various jurisdictions which have different Registration

AR-00001513

requirements based on the needs of the community and the size of their budget. That last part is important because that dictates what they are capable of implementing. How will these states handle this sudden increase of workload? Where are the funds to do this?

The lives of 900,000+ Registrants and their families will be overturned by these Registration Requirements. Like I mentioned earlier, if implemented Registrants need to register up to 3 jurisdictions…that is least 3 times a year for Tier 1's. For Tier 2's that is up to 6 times a year. And for Tier 3's that is up to 12 times a year. What place of employment will tolerate this much time off for the Registrant to do this? If you do not know this, then it is important to realize that employment for Registrants is difficult enough as it is being on the Registry. Mostly low income work are the only options. And on top of this they have families to support! The lives that are affected do not start and end with Registrants.

Like I stated above, what if the jurisdictions that the Registrants are unable to comply with SORNA minimal requirements? What if the jurisdiction this Registrant works in won't accept his registration because they only accept those that live there only? What if the jurisdiction where he was convicted won't accept him for the same reasons? What if nearly ALL jurisdictions cannot accompany SORNA minimal requirements for various reasons, like there is no budget for this? Are you going to start rounding up THOUSANDS of Registrants at a time for failure to comply? Which agency/agencies will determine this?

And let's say, for the sake of argument, you can round up thousands and thousands of Registrants within a year, how will the federal court system handle this sudden surge of frivolous court cases? How much would this cost the taxpayer?

Are you willing to fill up prisons once again during a time when the inmate population needs to be reduced? And how much will that cost the taxpayer?

Do you not see that this proposal is nothing more than a flaccid attempt to shrug off waves of accusations from different departments of government in regards to Bill Barr's corrupted use of his office as Attorney General? Do you people want to be part of his legacy of incompetence and corruption? Because in my estimation there is no life after Bill Barr's tenure…

Don't be part of Bill Barr's folly! Strike down this proposal! It is bad for EVERYONE.

**Comment ID**

DOJ-OAG-2020-0003-0402

 **Tracking Number**

kfk-c0bv-z39h

**Comment Details**                                        **Submitter Info**

**Received Date**

Sep 26, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

This is a law I as a voter an a citizen of this country do not want in my America.

Abolish this law.

The legislation you want to inact in its very nature is unconstitutional so seise and desist .Fundamental rights remember

Article 1 section 9 address this very legislation.

If it can not pass constitutionally then there is no law to inact here period please save our way of life by standing up and support the constitution articule 1 section 9

The Constitution of the United States of America is the supreme law of the United States. Empowered with the sovereign authority of the people by the framers and the consent of the legislatures of the states, it is the source of all government powers, and also provides important limitations on the government that protect the fundamental rights of United States citizens.

 Passing this type of law violates the constitution.

 This kind of law makes our country weaker by ignoring the constitutional laws laid out by our founders.


A Bill of attainder is a legislative act declaring the guilt of an individual or a group of persons and punishing them.

 Only the courts may determine whether one has violated a criminal statute.

An ex post facto law declares an act illegal after it has been committed, or increases the punishment for an offense already committed.

 No Bill of attainder or ex post facto law shall be passed.

 Before you enact this illegal law  show some restraint of power. Legislation should be  check against the constitution to  see if it does not violate  our Constitutional rights as is promised  this law can not stand and pass the checks and balances of the constitution because it has violations of our constitutional rights. Which we all hold dear.

 According to our Senate one of the branches of the government .The Senate passed out a visitor constitution pamphlet which gives the meaning. of the constitution and the Articles which Our Senators recognize to be law.  It states  you have no right to inflict this punishment. Period

The constitution says that legislation has no right to make criminal laws.only the judicial branch is the only one to make criminal laws and to interpret the law and sentence. Judges  have the finial word while it must still be tested against our constitution .

This is the law of the land to the highest extents.

It violates our constitution. Period. It violates these:

Article 1 Section 8.

Cruel and unusual punishment .  To have just sex offenders on a public list is unusual and cruel.

Example of a legal case finding this law unconstitutional

9/2/2017: In Millard v. Rankin, an as-applied challenge, Colorado Senior District Judge Richard Matsch rejected the pretty ribbons the legislature wrapped around the Sex Offender Registry Act. Applying the "intents-effects" test to the law, the court held that it was unconstitutional under the Eighth Amendment.

The Eighth Amendment prohibits excessive bail, excessive fines, and cruel and unusual punishments.


The Ninth Amendment states that the list of rights enumerated in the Constitution is not exhaustive, and that the people retain all rights not enumerated.

A constitutional right can be a prerogative or a duty, a power or a restraint of power

Look out America if you do not abolish this punishment.

You must put every criminal who ever did any crime. In the past, present and future on a public registry.

 Every crime public or no deal

 You can not single out a group of people to make a special law just for.them .

   I want to know who are the murders the robbers the.people with  DUI's   pimps prostitutes johns drug users. I already know who the rapist are. i what to know everything about all the criminals. so i can be informed who lives near me because I want to be safe

punish them all over again.

why not no one should be safe no one should be free if you are a criminal in your lifetime. Think legislators you can make even more money. It is after all about the money anyway. This america sounds so lovely.

That won't happen will it?

If you Public Officials did that you would not be in public office for long the people would vote you right out of power. But since it's sex offenders.We just do anything to them. Sounds a lot like a Hitler move to me. To single out a vulnerable group of people and destroy them. I don't care what you say they did. We defend the vulnerable .

That's what America does.

   Put every crime public or no deal . one registry is not enough.  You can not single out a group of people to make a special law for were you violate their constitutional rights  and expect to keep doing it freely and no one will know. We know. So stop.

Article 1 Section 9

If you violate and pass this you became lawless and criminal and you should be charged. Walking over our citizens constitutional rights which we were born with. Violating peoples rights Is a crime in this country.  Follow the law of the land  or there is no law.

AR-00001517

I do not care what these people have done Period they are our Citizens.

Remember most of these citizens have been sentenced by a judge (some have not even been sentenced or seen a court or a judge which is illegal) first and then sentenced again by legislation.

There was A sworn in judge who did follow the law who took an oath and sentenced these people.  These Judges did not sentence sex offenders to serve a forever sentence , so  how can you legally hold these people to these legislative laws that are Malleable?  Political gains.? Politicians  sentenced these citizens to , an eternal sentence on the registry not the laws of the land not the judge. Just legislators   Did this.

 Does this Oath mean anything?

This oath remember?


28 U.S. Code § 453.Oaths of justices and judges


Each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office:

"I, ___ ___, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as ___ under the Constitution and laws of the United States. So help me God."


(June 25, 1948, ch. 646, 62 Stat. 907; Pub. L. 101–650, title IV, § 404, Dec. 1, 1990, 104 Stat. 5124.)


If you are a judge of the USA


How can you let the  Oath You took mean nothing. It  Has become a broken promise.  A promise to be fair to your countrymen to uphold the constitution.

Judges are the law.  You Judges do nothing as Politicians violate the law.

Do not let this legislation pass.  I make a plea to you stand by your constitutional duty and stand up against this violation.

If it passes your honors you have lost your word and your bond is gone. Then there is no law and order.

Our Citizens no matter what they have done they are our Citizens and shall be treated as such. This is the law of the land , and so says.

Legislators

It is time to stop these  fear tactics , Get elected by your own doings not off of fear of your ill informed citizens.

 Shame on you .  You are educated . You all know better . You are informed. Do better and follow the law yourselves. Quite using SORA as your personal election tool just so you can be elected.  Quite using our Citizens for your personal gain there are laws against this kind of crime.

If you need a villain you have one in a sex offender. We are so scared of people that do this crime. No wonder we would let their rights be violated so easy. We can not live in fear all our lives.

 Let the courts do their jobs that is what our taxes dollars pay for and are supposed to be used for. Not your pocket.

 Right States?

 Are You going to take that  bribe from AWA?. Bribery is again a crime.

Beware people in power you are also not above the law.

Maybe there is registry for you next.

You want law and order then follow the law of land.

How can I sleep well at night when the people who should protect my rights are violating my fellow citizens rights. Selling us out in the middle of the night passing laws under the cover of darkness why do you need to hide your law making is it illegal?

It is only a matter tine before you begin to violate my rights.  So  if they are not free we are not free. Stand up for the constitution.

The legislators the prosecutors the judges and people who have study this particular crime know this is a sham.

The true sex offender is sitting in prison for a lifetime.

The ones on the registry you so fear would not be on the registry if they have had a fair chance and more money to defend themselves.

If this was not the most easiest  crime to be convicted of .

AR-00001519

This is so uncalled for. It is dark age tactic  Cruel and unusual punishment. To make people have a Scarlett letter

To make them lesser of a human being and a citizen with no rights so we can have a face to use as a villain. When all the time it is  the legislation you make law is the true villain to people of this country.

This  is what is wrong about the registry

They have rights remember.  They have rights period.


 If the finger pointing happens to you?  How will or could you defend yourself of the worst thing you could be accused of in society. They have no protection under our laws this is out right wrong . Good luck if it happens to you. Never know how they might charge you with a crime in this country it is getting easier to become a sex offender. Who knows. Could you be at a stop light when a child is crossing You look in the direction of a child could you be reckless eyeballing for sex with that child? Just because., it seems to be that easy to catch a case for this kind of crime today. How do we have so many people under the thumb of these legislated laws. It is not normal for this kind of crazy.

People freak out about sex  its not the worst crime in reality but in America we never have sex because so taboo. We are so God fearing that the Children are conceived by Immaculate Conception.

     Wrong is wrong two wrongs do not make a right.


If you need a villain you have one in a sex offender. We are so scared of people that do this crime because we are so ill informed. Most offenders are just like you and me but with one difference we get forgiveness and a chance to start over when we make a mistake. So let's do what we should do and let them have a chance to be set free from our public shaming.

     We all know this registry has not stopped a single rape. It is a useless tool for crime prevention. Abolish this useless, lawless, unconstitutional,  costly time consuming waste of police man hours  hit list.

The Facts about sex offenders might surprise people . First they are lowest to offend again.  A robber will offend more repeatedly

That most of these crimes are committed by the people closes to you not the stranger danger we all grew up with that scared us and still scares us today.  it has been around decades before there even was a registry

You know they need to build fear before you get scared and become willing to give up your rights so easily for others not knowing you are also giving up your own rights.

 If you want to judge people look in the mirror first because who knows what you got away with in your life but you got a second chance.  Give these citizens a second chance. Instead you give these citizens no hope and no chance at freedom ever.

AR-00001520

Even if the courts have sentenced them to 25 years  you keep changing the sentences without them violating or committing a new crime changing a sentence to a lifetime was not by a judge but by politicians..

  Right there is a violation changing a sentence to something else after a judge has ruled. Would you want to be resentenced after you served your time telling You ahh your a drunk you might drive drunk again you got sentenced to 30 days but hell you might drive drunk agagain So now you will do 5 years in the same jail added time to your sentence by a legislators not a judge.   Maybe you might see freedom ? Might not can't take chances with people like you. Would you find it right and legal? Well this is happening and if you don't do something it could happen to you in the future.. Do you want this  happening to you? No.  then abolish this registry.


This is Unheard of in America

This isn't China. Russia Iran Turkey or North Korea.

Are we communist? Do we have Democracy or not.

Was this not built on the constitution or not?

 I know people want law and order. But they refuse to follow the law themselves.

Follow the law already won't you? Do the right thing. Abolish this registry.


 Thank you for hearing me.


Angela Kubik.

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

Comment

I, and many others in the state of Delaware have seen the repercussions of what substantial compliance with SORNA has wrought. Delaware has been in substantial compliance with this ineffective and inhumane regulation for several years. The results in Delaware have been this: 1. SORNA has no impact regarding decreasing the number of sex offenses in our state. The incidence of sex offenses with the laws that were in place prior to implementing SORNA are the same now as they were prior to compliance with SORNA. Obviously, the prior existing laws were just as effective. 2. SORNA has had no impact on Delawares sexual offense recidivism rate. It remains very low at 4.7 to 5.3%, as it was before the implementation of SORNA. 3. Due to increased incarceration rates with SORNAS over-reaching, over-inclusive regulations, our overcrowded prison system has forced Delaware to send inmates to another state for confinement. This has been an added burden on tax-payers. 4. Delaware now has an army of able-bodied people who were employed but lost their jobs after the implementation of SORNA. Those inmates that were released after the implementation of SORNA are unable to find employment. If they are fortunate enough to find employment, it is a job that does not provide a living wage. Hence, many of the 5,000+ people (and growing daily) on Delawares registry are dependent on our states social programs such as Medicaid and food stamps. 5. Many on the registry are homeless due to SORNAS dictate of a having a public registry and notification of neighbors and housing managers. This is completely counterproductive, an oxymoron, to one of the goals of SORNA, which is to know the location of registered persons at all times. There is no way to know where a homeless person is. 6. Collateral damage: *Many people cannot live with their wives and children or any family members if there are children present, even if their offense involved an adult. Many cannot live in a home where there is a computer. This tears families apart. *Vigilantism. Due to the public registry, there has been destruction of property and threats against registrants. Due to notification of neighbors and people in surrounding communities, families of registrants have had to move due to terrorist threats even if the registrant does not live in the home. *Bullying. Some children with a parent on the public registry have been bullied and taunted by school mates and others, even though the registered parent does not live in the home. For some children, this has caused irreparable damage. *Finances. The extra funding by the Federal Government given to SORNA compliant states does not cover the ever-growing expenditures needed to maintain compliance with SORNA. Compliant states registries will continue to grow uncontrollably due to the overzealous, and the over- inclusive regulations of SORNA. In addition, the amount of time a person is required to remain on the registry, 25 years to life. This alone creates an ever-growing money-pit as more and more people are added to the registry daily. Yet another drain on tax-payers money.

AR-00001522

Bottom Line: There have been many studies by reputable organizations (ATSA and others), who have statistical proof that SORNA does not make anything or anyone safer. Facts show that almost all sex offenses are committed by someone known by the victim. The public registry, and notification of neighbors, employers, schools, and housing managers simply creates joblessness, homelessness, foments hate and vigilantism, irreparably destroys families and has created an army of disabled humans who are forced to avail themselves of social programs to survive. The money wasted on, SORNA, a system that does not produce any positive results, and which is a total waste of taxpayers money, money which could be spent on so many other needed resources, is a system that cannot and should not be potentiated!

**Comment ID**

DOJ-OAG-2020-0003-0404



**Tracking Number**

1k4-9j6u-sun0

**Comment Details**                          Submitter Info

**Received Date**

Sep 27, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

| View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

The nearly 500 comments here are all completely moot simply because the massive rock that the sex offender registry is, has finally had a crack form in it because of the landmark decision by the 6th Court of Appeals:

https://www.scotusblog.com/wp-content/uploads/2017/02/16-768-opinion-below-6th-cir.pdf

Published version:

https://scholar.google.com/scholar_case?case=8782247482523616851

Supported by the amici brief:

http://www.sado.org/content/pub/10760_Law-Prof-Amici-Brief.pdf

The reason is the State of Michigan appealed to the US Supreme Court:

https://www.scotusblog.com/wp-content/uploads/2017/02/16-768-cert-petition.pdf

Docket for reference:

https://www.scotusblog.com/case-files/cases/snyder-v-doe/

The opposing argument:

https://www.scotusblog.com/wp-content/uploads/2017/02/16-768-BIO.pdf

But the US Supreme Court denied the appeal without opinion:

https://scholar.google.com/scholar_case?case=2086867239115311980

AR-00001524

Because the Solicitor General of the United States answered this upon request of the Court:

https://www.scotusblog.com/wp-content/uploads/2017/07/16-768-cert-ac-US.pdf

Michigan responded:

https://www.scotusblog.com/wp-content/uploads/2017/07/16-768-snyder-v.-doe-supp-brief-of-petitions.pdf

And Now it's a matter to start driving wedges into the crack and the whole registry will be legal history.

Curious points from the above:

Why Didn't the US Supreme Court file an opinion on such a massively important decision? Because the Solicitor General of the United States,--- ironically under the Attorney General of the United States! sided in the favor of the all important decision of the 6th Circuit. This is profound!

The Government rarely, if ever, supports on the side of the people. But here the Attorney General continues to support registration as expected. It appears it's the classic left hand doesn't know what the right hand is doing, incredibly ironic!

The last words from Michigan:

"But the decision itself reveals that the Sixth Circuit disagreed with offense based registration as a general matter, not because of specific nuances in Michigan law. The Sixth Circuit's decision calls into question not only Michigan's SORA, but the whole of modern SORA requirements, concluding that three basic features of such laws are irrational."

"The Sixth Circuit's statements cannot be reconciled with the limited reading the federal government seeks to give that decision. The decision indicts the whole of offense-based registration, reporting, and residency restrictions"

And as the 6th Circuit stated:

"As we have explained, this case involves far more than an Ex Post Facto challenge. And as the district court's detailed opinions make evident, Plaintiffs' arguments on these other issues are far from frivolous and involve matters of great public importance. These questions, however, will have to wait for another day..."

So, all the above has to be litigated in the Courts all over again as a class and/or individual attacks, referencing everything called out in the above.

In its silence, the US Supreme Court has rested on the matter in favor of the registrants. The beginning of the end has begun. I have filed my complaint already:

https://beta.regulations.gov/document/DOJ-OAG-2020-0003-0293

---

**Comment ID**

DOJ-OAG-2020-0003-0405

AR-00001525



**Tracking Number**

1k4-9j6v-4npk

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 27, 2020



About    Bulk Data Download    Agencies    Learn

(/about)    (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001526

The nearly 500 comments here are all completely moot simply because the massive rock that
the sex offender registry is, has finally had a crack form in it because of the landmark decision
by the 6th Court of Appeals:

https://www.scotusblog.com/wp-content/uploads/2017/02/16-768-opinion-below-6th-cir.pdf

Published version:

https://scholar.google.com/scholar_case?case=8782247482523616851

Supported by the amici brief:

http://www.sado.org/content/pub/10760_Law-Prof-Amici-Brief.pdf

The reason is the State of Michigan appealed to the US Supreme Court:

https://www.scotusblog.com/wp-content/uploads/2017/02/16-768-cert-petition.pdf

Docket for reference:

https://www.scotusblog.com/case-files/cases/snyder-v-doe/

The opposing argument:

https://www.scotusblog.com/wp-content/uploads/2017/02/16-768-BIO.pdf

But the US Supreme Court denied the appeal without opinion:

https://scholar.google.com/scholar_case?case=2086867239115311980

Because the Solicitor General of the United States answered this upon request of the Court:

https://www.scotusblog.com/wp-content/uploads/2017/07/16-768-cert-ac-US.pdf

Michigan responded:

https://www.scotusblog.com/wp-content/uploads/2017/07/16-768-snyder-v.-doe-supp-brief-of-pe
titions.pdf

And Now it's a matter to start driving wedges into the crack and the whole registry will be legal
history.

Curious points from the above:

Why Didn't the US Supreme Court file an opinion on such a massively important decision?
Because the Solicitor General of the United States,--- ironically under the Attorney General of
the United States! sided in the favor of the all important decision of the 6th Circuit. This is
profound!

The Government rarely, if ever, supports on the side of the people. But here the Attorney
General continues to support registration as expected. It appears it's the classic left hand
doesn't know what the right hand is doing, incredibly ironic!

The last words from Michigan:

"But the decision itself reveals that the Sixth Circuit disagreed with offense based registration as
a general matter, not because of specific nuances in Michigan law. The Sixth Circuit's decision
calls into question not only Michigan's SORA, but the whole of modern SORA requirements,
concluding that three basic features of such laws are irrational."

"The Sixth Circuit's statements cannot be reconciled with the limited reading the federal
government seeks to give that decision. The decision indicts the whole of offense-based
registration, reporting, and residency restrictions"

And as the 6th Circuit stated:

"As we have explained, this case involves far more than an Ex Post Facto challenge. And as the
district court's detailed opinions make evident, Plaintiffs' arguments on these other issues are far
from frivolous and involve matters of great public importance. These questions, however, will have to
wait for another day…"

So, all the above has to be litigated in the Courts all over again as a class and/or individual attacks,
referencing everything called out in the above.

In its silence, the US Supreme Court has rested on the matter in favor of the registrants. The
beginning of the end has begun. I have filed my complaint already:

https://beta.regulations.gov/document/DOJ-OAG-2020-0003-0293

AR-00001528

The nearly 500 comments here are all completely moot simply because the massive rock that the sex offender registry is, has finally had a crack form in it because of the landmark decision by the 6th Court of Appeals:

https://www.scotusblog.com/wp-content/uploads/2017/02/16-768-opinion-below-6th-cir.pdf

Published version:

https://scholar.google.com/scholar_case?case=8782247482523616851

Supported by the amici brief:

http://www.sado.org/content/pub/10760_Law-Prof-Amici-Brief.pdf

The reason is the State of Michigan appealed to the US Supreme Court:

https://www.scotusblog.com/wp-content/uploads/2017/02/16-768-cert-petition.pdf

Docket for reference:

https://www.scotusblog.com/case-files/cases/snyder-v-doe/

The opposing argument:

https://www.scotusblog.com/wp-content/uploads/2017/02/16-768-BIO.pdf

But the US Supreme Court denied the appeal without opinion:

https://scholar.google.com/scholar_case?case=2086867239115311980

Because the Solicitor General of the United States answered this upon request of the Court:

https://www.scotusblog.com/wp-content/uploads/2017/07/16-768-cert-ac-US.pdf

Michigan responded:

https://www.scotusblog.com/wp-content/uploads/2017/07/16-768-snyder-v.-doe-supp-brief-of-petitions.pdf

And Now it's a matter to start driving wedges into the crack and the whole registry will be legal history.

Curious points from the above:

Why Didn't the US Supreme Court file an opinion on such a massively important decision? Because the Solicitor General of the United States,--- ironically under the Attorney General of the United States! sided in the favor of the all important decision of the 6th Circuit. This is profound!

The Government rarely, if ever, supports on the side of the people. But here the Attorney General continues to support registration as expected. It appears it's the classic left hand doesn't know what the right hand is doing, incredibly ironic!

The last words from Michigan:

"But the decision itself reveals that the Sixth Circuit disagreed with offense based registration as a general matter, not because of specific nuances in Michigan law. The Sixth Circuit's decision calls into question not only Michigan's SORA, but the whole of modern SORA requirements, concluding that three basic features of such laws are irrational."

"The Sixth Circuit's statements cannot be reconciled with the limited reading the federal government seeks to give that decision. The decision indicts the whole of offense-based registration, reporting, and residency restrictions"

And as the 6th Circuit stated:

"As we have explained, this case involves far more than an Ex Post Facto challenge. And as the district court's detailed opinions make evident, Plaintiffs' arguments on these other issues are far from frivolous and involve matters of great public importance. These questions, however, will have to wait for another day…"

So, all the above has to be litigated in the Courts all over again as a class and/or individual attacks, referencing everything called out in the above.

In its silence, the US Supreme Court has rested on the matter in favor of the registrants. The beginning of the end has begun. I have filed my complaint already:

https://beta.regulations.gov/document/DOJ-OAG-2020-0003-0293

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

The registry has no real legitimate use other than to brand felons who did commit or were convicted of a sex
offense. I understand the loss that John Walsh experienced, I too lost my infant son to a horrific death, but
making legislation to brand felons who committed or were convicted of a sex offense isn't going to bring Adam or
my son back.

A sex offense is a societal taboo and understandable disturbing thing, especially when it involves children of any
age.

The courts already have the means to deal with persons convicted of these types of crimes. So ask yourself
objectively, honestly, what actual purpose does a sex offender registry serve the community? If one looks at the
registry, they might see a bunch of dots appear in their neighborhood, ok, those are the known sex offenders.
But what about the potential sex offenders? The ones not known? Well you get the picture, then the dots would
cover the map, because who knows what is going on in the neighborhood.

Why spent taxpayers dollars on sex offender lists and registries when we as a society could create secure
facilities and have trained professionals for treatment of sex offenders. If that does not work, then the courts
have the means to send that offender to a prison.

The hysteria that surrounds this issue isn't productive, we as a responsible society need to address the root
causes of these types of crimes, mob rule isn't going to correct the problem.

Let's figure out a more productive means of prevention and also a means of treatment and supervision to assist
the offender into not committing this horrible deeds.

If they fail, well that is what our justice system is there for.

I have not seen any credible research that states that sex offenders are out of control and they immediately rape
or molest once they are released from prison, matter of fact, I've seen research that supports the exact opposite,
that sex offenders tend to not reoffend after a prison term with a form of treatment.

So if we're going to target offenders who commit offenses, then we should also then create registries for bank
robbers, armed robbers, drug dealers, convicted murderers and every other violent crime there is.

I've asked myself this.... Would a registry have saved my son? I've searched my soul and thought about this for
long hours and I have to be completely honest..... Absolutely not. The horrible events would have taken place
whether a registry was in place or not. That is the responsible honest truth, as difficult as it is to admit, but
registry for sex offenders does not serve a legitimate purpose other than brand and punish persons for the rest
of their lives to make us feel better with a false sense of security.

AR-00001531

They served their assigned punishment, by continuing it into an eternity only serves to keep them down, unemployable and homeless in most cases. I see no purpose in this means of continued punishment, if we honor Our Constitution, then lets figure out a different means to handling this issue. But let's be realistic about it, I lost an infant son, so I KNOW about loss, it doesn't make me happier or feel safer just because the man who did it is on a registry or not.

**Comment ID**

DOJ-OAG-2020-0003-0408

 **Tracking Number**

1k4-9j79-zojl

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 27, 2020



About    Bulk Data Download    Agencies    Learn

(/about)         (/bulkdownload)    (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001532

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)    Share ▾

---

Comment

I am VERY concerned about the suggested changes to SORNA. The current restrictions to individuals already expand restrictions well beyond the normal served time and often beyond probation and community custody times. This new law or updated to the Federal law is encroaching on the rights of the citizens. Those offenders whom have paid their dues. Each state should set the restrictions and abide by those, we do not need nor want the federal regulations to dictate what the state must follow. Further restrictions are NOT the answer. Let us try to reform and truly rehabilitate those whom offend. Let's avoid indefinite or lifetime registration and continued punishment for life. Sex Offenders have a much lower recidivism than others, but they seem to carry a heavier burned. These NEW LAWS are NOT solving our problems. We need to take a different approach. We need to look back and ask, are we better off now than say 20-30 years ago before many of these restrictions were passed? Are these laws actually helping or hurting our citizens and offenders coming out and trying to get back into being productive members of society. I suggest new laws do not help. They are just enacted out of paranoia.

Please refrain from creating additional laws and burdens for current and future offenders.

Thank you for reading,
-Dan Wright

 **Comment ID**

DOJ-OAG-2020-0003-0409

**Tracking Number**

1k4-9j79-ebqm

AR-00001533

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 27, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001534

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

These Rules are unjust , To retro activate it is even more unjust this kind of move in the middle of a pandemic is a very dirty move but would not expect any less from a corrupt attorney general , Look at all the damage your administration has caused all the corrupt this you and Trump have gotten away with this is just the icing on the cake .You should never retroactively apply punishment in any fashion let alone a life time of it . Chief Justice Roberts was right when he said allowing this to happen be very scary and he also stated this in his dissent because he knew it would not take long for a corrupt attorney general to abuse his powers . These rules are wrong and should not be applied .

**Comment ID**

DOJ-OAG-2020-0003-0410

**Tracking Number**

kfl-tgmj-p9ii

**Comment Details**                                                **Submitter Info**

**Received Date**

Sep 27, 2020

AR-00001535



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Sep 28, 2020

View More Comments  ( 724 )  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  ( 724 )  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

Hi,
The SOR is a total joke. I am on the list as a tier 3 offender for a misdemeanor offense I did not even commit. This is worse than being a drunk driver. I have been on the list for about 20 years. I feel my name should be remove from the list and my record cleared. This incident happened in my old neighborhood and I was trying to protect my family. I had an attorney who was useless and basically told me to lie. I also had to go to a psychologist who said there was no chance of me ever offending again. I am sick of the cops pounding on my door so see if I am home. My wife and daughter are upset about that every year. To me this is harassment as I have done what I am supposed to do about reporting. I feel this list should be abolished. I hope this helps. Thanks.

Harold R. Rodgard

**Comment ID**
DOJ-OAG-2020-0003-0411

 **Tracking Number**
1k4-9j7e-rell

| **Comment Details** | **Submitter Info** |
| --- | --- |

**Received Date**
Sep 27, 2020



About   Bulk Data Download     Agencies    Learn
(/about)        (/bulkdownload)   (/agencies)  (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001538

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

Comment

RETURN ADDRESS REDACTED

September 29, 2020

Regulations Docket Clerk

Office of Legal Policy

U.S. Department of Justice

950 Pennsylvania Avenue NW

Room 4234

Washington, DC 20530

Subject: Comments on Rulemaking Registration Requirements Under the Sex Offender Registration and Notification Act (SORNA), 28 CFR Part 72

Reference: Docket No. OAG 157

To Whom it May Concern,

The following recommendation is provided regarding the subject proposed rule as published in the Federal Register/Vol.85, N0. 157/Thursday, August 13, 2020/Proposed Rules, Page 49332.

Comment: Part 72.5, How long sex offenders must register. Modify 72.5(c), Reduction, to insert the following in

AR-00001539

the seventh line after the words is reduced by 5 years.

If a tier II sex offender has maintained for 15 years a clean record as described in 34 U.S.C. 20915(b)(1), and no other previous conviction for a sex offense, the period for which the sex offender must register and keep the registration current under paragraph (a) of this section is reduced by 10 years.

Justification for Comment: As with the reductions provided for tier I and certain tier III registered sex offenders, the opportunity for a reduction in the period of registration for qualified tier II registered sex offenders will provide a significant motivation for them to avoid reoffending during the period of registration. The reduction will also provide the tier II registered offenders the opportunity and encouragement to focus their life in a constructive manner that is beneficial not only to them but to their communities. This will help avoid creating a large pool of former felons who have little hope of re-establishing a life that allows them to find employment, education, and an affordable place to live. It appears highly likely that registered tier II offenders who avoid a subsequent sex offense for 15 years and who have no previous sex offense conviction are not serious threats to reoffend.

Name of commenter redacted

**Comment ID**

DOJ-OAG-2020-0003-0412

 **Tracking Number**

1k4-9j8g-bhw9

**Comment Details**

**Received Date**

Sep 29, 2020



About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001541

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

---

Comment

Should not the evidence be the driving force behind any punishment? As some have already stated with actual links to the true statistics on these types of crimes. The actual numbers don't lie. Now that said ,here in Florida. Which already has some of the most draconian laws in the country. Political aspirations drive the fear based passage of a never ending statutes. Every county or township has different rules and guidelines. This state also passed a retroactive lifetime registration. Now the federal government will do the same. How would anyone in authority on this matter feel if a government entity passed retroactive laws on lets say DUIs?? All sorts of Americans would be punished for something hopefully they put past them. Been treated and are productive citizens. Not that I'm inferring these crimes are on the same level. This just plain cannot be Constitutionally allowed. This just increases more burden on registrants and there families. Where does it go from there? No registry exists for any other crime!! Why not? Statistics on different felonies vary. But nothing said about it. If a registrant has been free of violating any laws for several years. Then why would they be a threat to society? And if so. Would that not constitute the government to make sure said dangers to general public,or children not be released in the first place? Make no mistake. This is a direct punishment. If it were not why are registry violations criminal?? And severe at that. It impacts families. It goes way beyond someone trying to move on with life and do all the right things One of the federal proposals is registering if away from residence over 7 days. How many of you take vacations of this time frame? Most people try to. Give that a little thought. Now as far as any registry goes. How does it prevent any crime? It absolutely does not. Again evidence has proven this repeatedly. Your own department's figures don't support it.
Feel free to reach out to me
I would enjoy a spirited debate on this!!

| **Comment ID** |
| DOJ-OAG-2020-0003-0413 |



**Tracking Number**

kfq-5fe8-ri07

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 30, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)          Share ▾

---

Comment

Registry is the worst kind of punishment an individual can have . It prevents the individual to redeem themselves and build a new life . It destroys families . It is a violation of human rights and it does not protect anyone . Please abolish registry . No advance country in this world has harsh registry laws like the USA.
This prevents individual to build a life for themselves . They can not get a job . They cannot go to school . They can not rent a place to live . The chance of reoffending is lower that any other criminal act . It is only 4%.
We have to start acting as human and give a second chance in life to these offenders like Christ mentions on the Bible. Please vote against it .

**Comment ID**
DOJ-OAG-2020-0003-0414

◎ **Tracking Number**
1k4-9j7q-757o

**Comment Details**                              **Submitter Info**

**Received Date**
Sep 28, 2020

AR-00001544



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I am strongly opposed to SORNA and the individual state registries. The purpose of the registry is pure and simple punishment. The registrants have served their sentences and should be allowed to put their lives back together just as any other person convicted of a crime. These registries contribute to the breakdown of families, homelessness, the inability to maintain employment, etc. How does this really serve the prevention of sex crimes when you take away a persons dignity and hope of rebuilding their life?

**Comment ID**

DOJ-OAG-2020-0003-0415

 **Tracking Number**

1k4-9j7q-7300

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 28, 2020

AR-00001546



About   Bulk Data Download   Agencies   Learn
(/about)      (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

Comment

After serving a jail term, the offender punishment should end. Registry is the second form of punishment that is not necessary. The offender and his entire family are getting a life time punishment. It ruins a chance of getting ahead in life, they cant get decent jobs, go to school and getting a chance to become a positive contributor to the society.
Please vote against it. It is a violation of human right and it has not reduced the crime. Please vote against it .

**Comment ID**
DOJ-OAG-2020-0003-0416

 **Tracking Number**
1k4-9j7q-riqk

| **Comment Details** | **Submitter Info** |
| --- | --- |

**Received Date**
Sep 28, 2020

AR-00001548



About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001549

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

### Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |   | Share ⌄ |

---

| Comment |

This Registry is Wrong ! These Rules are Wrong ! Retroactive Punishment is Unconstitutional ! This Registry is Punishment , If you think for a minute it isn't you try Not being able too get a job , You try too have your neighbors treat your children and family like a Plague , You not be able to attend your children's after school programs , You be disabled or a life time of Shunning and Shaming. You be homeless and you not be excepted in a Shelter on a sub below zero night , Thats a few things someone on this punitive registry lives with day to day. This 1800s witch hunt justice registry punishment must end . Enough with your foot on citizens necks allow people to serve a sentence and live their lives after a mistake they have paid for already. Last thing they need is a life of HELL on this registry with rules being applied after the fact.

| **Comment ID** |
| DOJ-OAG-2020-0003-0417 |

|  **Tracking Number** |
| kfn-39w8-3jf7 |

| **Comment Details** | **Submitter Info** |
| --- | --- |
| **Received Date** | |
| Sep 28, 2020 | |

AR-00001550



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) |  Share ▾ |

---

| Comment |

Michigan: Port Huron judge rules parts of state's sex offender registry unconstitutional
Court order below, see attached for news articles.

US supreme Court acquiesces

https://scholar.google.com/scholar_case?case=2761042225060144853
https://scholar.google.com/scholar_case?case=13354480825836831293

| Attachments  1 |

📄 alll

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0418/attachment_1.pdf)

**Comment ID**
DOJ-OAG-2020-0003-0418

**Tracking Number**
kfn-5hgl-ldah

AR-00001552

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 28, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

AR-00001553

# Times Herald

NEWS

# Port Huron judge rules parts of state's sex offender registry unconstitutional

**Liz Shepard** Times Herald

Published 2:12 p.m. ET Feb. 14, 2020 | Updated 3:21 p.m. ET Feb. 14, 2020

U.S. District Judge Robert Cleland has ruled parts of the state's Sex Offender Registry Act are unconstitutional and cannot be enforced against many pre-2011 registrants.

He also ruled several provisions are void because of vagueness, strict liability and under the First Amendment.

The ruling states registrants have for years been forced to comply with unconstitutional provisions and it was expected legislative action would have corrected them by now.

"Unfortunately, the legislature was not able to finalize a new registration statute. Faced with the continued violation of their rights, Plaintiffs returned to this court to remedy Defendants' ongoing violations," the judge wrote. "The court's duty is to invalidate those portions of SORA that violate the Constitution. In so doing, the court recognizes that its ruling will fracture the existing structure of SORA. However, the court anticipates that its ruling will reignite efforts to finalize a new, unified registration statute that can survive constitutional review, as has the national model, SORNA.

"But until such time as the legislature acts, SORA will be unenforceable against a large portion of registrants and may be enforced only in part against the remaining registrants."

Friday's ruling followed arguments heard in the Port Huron federal courthouse Feb. 5.

"Today's decision is a win for the public safety of Michigan communities," Miriam Aukerman, senior staff attorney for the ACLU of Michigan, said in a press release. "The registry is an ineffective and bloated system that makes Michigan communities less safe by making it more difficult for survivors to report abuse, sabotaging people's efforts to reenter society, and wasting scarce police

resources on hyper-technicalities. Today's decision means that lawmakers must finally do their jobs and pass evidence-based laws that better serve everyone. Michigan families deserve true reform that prioritizes public safety and prevention, not a failed registry."

Parties in the case have until March 13 to determine how they'll notify registrants and how the registry could be amended. Lawmakers have 60 days to replace the statute following the filing of the state and ACLU's proposals.

## What the ruling says

The Sex Offender Registration Act is null and void for any registrant whose offense occurred prior to April 12, 2011 and who has not committed a subsequent offense.

The following provisions are void for vagueness for all registrants:

The prohibition of working within a student safety zone
The prohibition of loitering within a student safety zone
The requirement to report all telephone numbers routinely used by an individual

Provisions void for strict liability for all registrants:

Under the due process clause of the U.S. Constitution, SORA must be interpreted as incorporating a knowledge requirement.

Provisions void under the First Amendment for all registrants::

The requirement to report in person and notify the registering authority immediately after establishing any electronic mail or instant messaging addresses.

The requirement to report all telephone numbers
The requirement to report all electronic mail addresses and instant message addresses

"We urge the Michigan Legislature to focus on what actually works to reduce sexual offending," Paul Reingold, law professor at the University of Michigan and co-counsel on the case said in a statement. "The legislature will now need to overhaul the SORA law, and can do so is a way that is rooted in research and prioritizes prevention, support for survivors, and the successful re-entry of those who have already served time. The legislature has a responsibility to act quickly in order to provide relief to the 44,000 registrants who continue to be unfairly punished by these unconstitutional laws."

# SORA Background

The Sex Offender Registry Act was approved in 1994 as a private database available to law enforcement. At that time, those convicted of one sex offense had to remain on the list for 25 years and those convicted of multiple sex offenses had to remain on the list for life. Following registration, offenders were required to notify the state of a change of address within 10 days.

The legislature has amended the law over the years, including making it public and, in 2006, barring most offenders from living, working or loitering within 1,000 feet of school property.

A 2011 rule change also retroactively required many offenders who would have been on the list for 25 years to remain on it for life.

The U.S. Sixth Circuit Court of Appeals ruled it was unconstitutional to apply the earlier changes to people already on the list in 2016.

But the legislature didn't act.

The ACLU, University of Michigan Clinical Law Program and the Oliver Law Group filed a class-action lawsuit in June 2018 against the state on behalf of all of Michigan's registrants, arguing the state must follow earlier rulings.

Last year, Cleland ruled significant portions of the Sex Offender Registry Act cannot be applied to pre-2011 registrants, but deferred further relief to give the legislature time to bring the act into compliance with the Constitution.

*Contact Liz Shepard at (810) 989-6273 or lshepard@gannett.com. Follow her on Twitter @lvshepard. Laura Fitzgerald contributed to this report.*

AR-00001556

# The Detroit News

POLITICS

# Michigan lawmakers debate changes to states sex offender registry law after court ruling

**George Hunter** The Detroit News
Published 12:01 a.m. ET Jun. 8, 2020

Michigan lawmakers are debating how to overhaul the state's sex offender registry after a federal appeals court ruled sections of the law are unconstitutional, but Michigan Attorney General Dana Nessel is contending the proposed fixes don't repair the law's flaws.

As Democratic and Republican elected officials wrestle over the best solution to a highly charged issue, a federal judge has freed the state's 44,000 convicted sex offenders from complying with registry reporting requirements because of the novel coronavirus outbreak and confusion about the current registry.

Among the state's registry restrictions the U.S. Sixth Circuit Court of Appeals struck down in 2016 were a ban on convicted sex offenders from living, working or loitering within 1,000 feet of schools and a 2011 revision of the law that put sex offenders back on the registry permanently if they committed a felony after they had served their sentences and had been taken off the registry.

The appeals court ruled that parts of the registry violated the 1st and 14th Amendments, and the constitutional protection against being punished "ex post facto," or retroactively.

Detroit U.S. District Judge Robert Cleland has given the Legislature a deadline to amend the law by no later than 14 days after the coronavirus state of emergency ends. The revised law would need to take effect within 60 days.

If the Republican-controlled Legislature fails to change the law with Democratic Gov. Gretchen Whitmer's approval, the current law would be considered invalid and sex offenders wouldn't have to deal with any reporting requirements. The GOP majority and Whitmer already have had trouble reaching deals on the budget, road repair funding and other controversial issues.

State Rep. Jim Lower, R-Greenville, introduced legislation that would make at least seven changes to the law. They include allowing sex offender registrants who are parents or legal guardians to enter a student safety zone under certain circumstances, and banning

AR-00001557

individuals from being listed on the registry if they committed a felony after July 1, 2011, and had previously committed a listed sex offense.

Lawmakers and attorneys representing the plaintiffs in the federal suit met May 6 to discuss the bill, which has been the subject of hearings in the House Judiciary Committee.

"Without the changes, the law becomes almost entirely unenforceable," Lower said in an email. "In addition to the court required changes, I believe we have an opportunity to make the law easier to enforce/follow and have a real conversation about which types of offenders should and shouldn't been on the registry and how long they should be required to register."

But in a May 11 letter to the Judiciary Committee, Nessel argued the proposed bill has the same constitutional problems as the existing registry law.

"The bill needs considerably more work if the state is going to avoid future litigation over the constitutionality of its registry," wrote the Democratic attorney general, adding particular areas of concern are the registry's "exclusion zones" prohibiting offenders to live, work or loiter within 1,000 feet of schools, and "its onerous in-person reporting requirements."

Nessel's spokesman Ryan Jarvi declined to comment beyond what was in the letter.

Lower told The Detroit News that lawmakers are taking into consideration the concerns of Nessel and others. "The bill as it was introduced is just a starting point," he said, "and I'm sure the final version will be much different, as is the case with most bills."

Michigan State Police Col. Joseph Gasper has supported abolishing the sections of the law that were found unconstitutional, including the safety zone provision.

"In addition to the historical difficulties often encountered when attempting to define the boundaries of these zones ... the department has been advised by its attorneys ... (that) any effort to retain the student safety zone provisions would almost certainly result in further litigation and a similar determination that zones are unconstitutional and unenforceable," he wrote in a letter to the Judiciary Committee.

Gasper also called for stricter rules governing sex offenders who move to Michigan from other states.

"Any revision of (the law) should ensure and clarify that an individual convicted in another state of an offense requiring sex offender registration in that state should, at a minimum, be required to register in Michigan for a similar duration under substantially similar terms regardless of the date of offense," he wrote.

"Otherwise, registered sex offenders from other states with offenses prior to Michigan's 2011 amendments to (the law) could seek sanctuary from all sex offender registration by simply relocating to Michigan."

## How law has evolved

The Michigan Sex Offenders Registration Act was passed in 1994 as a private database, available only to law enforcement. Offenders weren't originally required to regularly report. After initial registration, the only other obligation was to notify law enforcement within 10 days of changing addresses, and that notification did not have to be in person.

The act has since been amended nine times, allowing public access to the database and imposing stricter reporting requirements for offenders. A 2011 amendment carried the most rigorous requirements.

The 2011 change "subjects registrants to obligations, restraints, disabilities and punishment of a different character and different order of magnitude than the original sex offender statutes," said a lawsuit filed in 2012 by the American Civil Liberties Union and the University of Michigan's clinical law program. They filed a federal lawsuit on behalf of a sex offender, "John Doe."

"You can't punish someone under one set of rules, then change the rules and go back and re-punish the person," said Paul Reingold, a retired UM law professor who has argued on behalf of the plaintiffs and testified before the Legislature during recent deliberations.

"Those amendments were really draconian and were based on an even more draconian federal law that had been passed," said Reingold, referring to the 2006 Sex Offender Registration and Notification Act that established a national sex offender registry and set uniform reporting guidelines.

Michigan is one of 18 states that comply with the federal law.

"It turns out, most states chose not to follow the federal law because it's incredibly burdensome on registrants, it doesn't do anything to make the community safer, and it's expensive to operate," Reingold said.

The rule barring offenders from coming within 1,000 feet of schools is particularly burdensome, he said.

"These broad school exclusion zones make it incredibly difficult for people to live their lives," Reingold said.

"People subjected to these exclusion zones can't find jobs, can't find places to live, and as a result, their whole family suffers," he said.

# Law creates 'leper colony'

Among those on Michigan's sex offender registry is William Hetherington, 65, who made national headlines after his 1986 conviction for a new Michigan crime, spousal rape. The Air Force veteran's case was highlighted in the 1990s by television shows, including the "Phil Donahue Show," ABC's "Prime Time Live" and CBS' "60 Minutes," after advocates raised questions about his conviction.

Hetherington said his ex-wife falsely accused him of raping her after they'd had consensual sex. Despite his clean prison record, his served more than double the maximum sentence under Michigan guidelines for spousal rape because at parole hearings he refused to express remorse for a crime he insisted he hadn't committed.

When Hetherington was released from prison in 2009, his name was added to the sex offender registry. He was in a federal program that provides housing for honorably discharged homeless military veterans until the state changed the rules in 2011.

The change required Hetherington to stay on the sex offender list for life, and he was kicked out of the housing program, which bars anyone with lifetime reporting requirements on sex offender registries.

"I can't get subsidized housing like every other disabled person in the country," Hetherington said. "I'm in a one-room sleeping room that a minister let me move into (in Vassar, near Frankenmuth) in July 2011. I didn't think I'd be there a year, let alone nine years."

"All the sex offender list does is create a leper colony," said Hetherington, who is still trying to get his conviction overturned.

According to a 2019 study by the U.S. Department of Justice's Bureau of Justice Statistics, which looked at sex offenders' recidivism rates from their 2005 release from prison until 2014, "sex offenders were less likely than other released prisoners to be arrested during the 9 years following release."

*ghunter@detroitnews.com*

*(313) 222-2134*

*Twitter: @GeorgeHunter_DN*

AR00001560

# Times Herald

NEWS

# Information on Michigan State Sex Offender Registry might not be accurate, undersheriff says

**Laura Fitzgerald** Port Huron Times Herald

Published 9:28 a.m. ET Aug. 27, 2020 | Updated 10:45 a.m. ET Aug. 28, 2020

St. Clair County Undersheriff Matt Paulus said the public should be aware information on the Michigan Sex Offender Registry might not be up to date following an April U.S. District Court interim order barring officials from enforcing the sex offender registration act.

The April order, issued by U.S. District Judge Robert Cleland as a response to a February ruling and the COVID-19 pandemic, bars officials from "enforcing registration, verification, school zone, and fee violations of SORA that occurred or may occur from February 14, 2020, until the current crisis has ended, and thereafter until registrants are notified of what duties they have under SORA going forward."

Paulus said this means the information, such as addresses, available on the Michigan sex offender public list might not be accurate. Police do not know if a registered offender fails to verify their address because they are not enforcing the registry.

"Basing something off of that website would be a mistake," Paulus said.

Concerned parents should teach children age-appropriate safety, Paulus said. Community members can look after each other to promote neighborhood safety.

Concerned victims should contact the St. Clair County Victims' Rights Office at (810) 985-2424, he said.

## Court rulings challenge Michigan Sex Offender Registration Act

AR-00001561

The April interim order and a February injunctive relief order regarding an earlier class-action lawsuit has left police and prosecutors in limbo, waiting for the legislature to amend the act to bring it into compliance with the Constitution before enforcement can begin again.

The American Civil Liberties Union, University of Michigan Clinical Law Program and the Oliver Law Group filed a class-action lawsuit in June 2018 against the state on behalf of all of Michigan's registrants, arguing the state must follow earlier rulings declaring the act unconstitutional for pre-2011 registrants.

Last year, Cleland ruled significant portions of the Sex Offender Registration Act cannot be applied to pre-2011 registrants, but deferred further relief to give the legislature time to bring the act into compliance with the Constitution.

The legislature failed to amend the act.

As a result, Cleland issued a ruling in February that stated the act is null and void for any registrant whose offense occurred prior to April 12, 2011 and who has not committed a subsequent offense.

He also ruled several provisions are void because of vagueness, strict liability and under the First Amendment.

When Cleland issued the April interim order, he cited the inability of registrants to register in-person at many police departments when they closed their public lobbies during the COVID-19 pandemic.

The pandemic had also made it nearly impossible for the Michigan State Police Sex Offender Registration Unit to submit their judgment detailing how the registry will be amended and how registrants will be notified of the amendments, and for employees working from home to mail notices to the approximately 44,000 offenders on the list, Cleland stated.

Final judgments are required to be entered no later than two weeks after the crisis ends, Cleland wrote. Lawmakers have 60 days to amend the sex offender registration act following the filing of the state and ACLU's proposals.

The crisis will be declared over when there is no longer a federal or state executive order or legislative act declaring a state of emergency, or when the court determines that the conditions that prompted the interim order no longer apply.

## Police not to enforce Michigan Sex Offender Registration Act

Michigan State Police Spokesperson Lori Dougovito said the state police have advised their members not to enforce registration, verification, student safety zones and fee verification.

Removal from the list must be completed through a court order initiated by the offender or their attorney, Dougovito said.

At this point, Michigan State Police do not have the legal authority to remove anyone from the list without a court order or an amendment to the sex offender registry that requires removal, Dougovito said.

The ACLU has argued the sex offender registry does not advance public safety because the registry makes it more difficult for survivors to report abuse, makes it difficult for offenders to re-enter society, and wastes limited police resources.

The ACLU has advised registrants to continue to register so that address information remains up to date for when further information becomes available, according to a status update submitted on Aug. 4 by the lawsuits' parties.

An ALCU attorney was not available for comment.

Although they are not required to, Paulus said a fair number of sex offenders have continued to register with the sheriff department since the February court ruling.

He said the department must wait for guidance from state officials before they can enforce the registry again.

According to the Aug. 4 status update, stakeholders involved in drafting a new law met July 30, but no new proposals are in the works.

Since the February court ruling, no offenders in St. Clair County have petitioned the court for removal from the list, St. Clair County Chief Assistant Prosecutor Steve Guilliat said.

Since the February ruling, charges for violations to the act were dismissed against a registrant whose offense occurred before 2011. Pending charges for violations were stayed until the state delivers guidance for registrants whose original offenses occurred after 2011, Guilliat said.

*Contact Laura Fitzgerald at (810) 941-7072 or lfitzgeral@gannett.com. Follow her on Twitter @LM_Fitz.*

AR-00001563

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments (724) (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments (724) (/docket/DOJ-OAG-2020-0003/comments) |   Share ⌄

---

| Comment |

The Bureau of Prisons is attempting to follow the Attorney General's directive to reduce the prison population in response to COVID-19. Officials are scouring records in an attempt to find those who are worthy of home confinement. They are using certain risk factors as their criteria. Just today, it has been reported that in their effort to set more free amid lawsuits and public scrutiny, they are now looking at those who have served less than half of their original sentence.

They are not considering anyone accused of a computer sex crime (even though sex crimes have one of the lowest recidivism rates). Any person, who looked at or downloaded an illegal image is deemed ineligible for home confinement. In fact, they are considered violent criminals (which is a seriously biased definition of the term "violent"). They do not take into account that many inmates with these charges have served exceptionally long, overly punitive sentences; a fact that many in the criminal justice world will admit. Even the United States Sentencing Commission has addressed the issue of overly harsh sentencing due to the fact that these guidelines were set up before the prevalence of computers in our society.

Now, once again, in the face of overwhelming evidence to the contrary, the BOP is playing on the fears and ignorance of the public. Their decision is resulting in the deaths of people who deserve better from our government. I am begging you not to turn already harsh sentences into death sentences.

The most recent inmate to die from Oakdale was George Jeffus. He was serving time for child pornography related charges. He was elderly, 76 years old and had health issues. He had already served the majority of his sentence. He was the absolute perfect candidate for consideration. Clearly, he was at high risk for COVID-19 and met all the criteria. And yet, by a warped, out-of-date, cruel or ignorant policy, he was deemed too dangerous to be considered or to be saved. By BOP standards, his life was apparently not worth saving. Did some pictures that this gentleman looked at years ago really warrant putting him to death now? No one would answer in the affirmative to that question and yet, that is exactly what happened.

There are men, right now, in all our prisons, first time offenders who looked at the wrong thing on their computers. Images they absolutely should never have viewed but do not as a result deserve a death sentence. Many men, like George Jeffus have been behind bars for over a decade. Many men have only a few years left to

AR-00001564

serve. Many men have grave health issues. And these men are being ignored for participation in this program. Why? Why? Why? Please do not allow others to suffer the fate of Mr. Jeffus

An inmate who knew Mr. Jeffus wrote the following about him:
"I just wanted to say a few things about the last inmate to die here at Oakdale. He lived 7 cells down from me. I read the press release and it just said his age and his charges which always sound worse than they actually are. George Jeffus always had a good attitude and a good word for you. He had a daughter that sent him car magazines that he liked. I shared them with him too. He was a veteran who served in Germany in the sixties, the same time as my father.

He liked football and always asked me about the Vols because I am from Tennessee. He didn't have that much time left here and HE DIDN'T DESERVE TO DIE IN PRISON. It just has weighed on my mind when I read that little thing about his life".
It is time we all rethink the punitive nature of our society and of our Judicial system. Every single inmate behind those walls has value. They have families that love them and stand beside them no matter what they have done….because that is what families do. EVERYONE deserves a second chance in life. NO ONE deserves to die at the hands of a fearful, ignorant, misguided or willfully brutal system of justice. It is an absolute mandate to protect these inmates and save their lives – not to destroy or end those lives.
Laurie Draper Jones (landstar727@yahoo.com)

The opinions expressed within posts and comments are solely those of each author, and are not necessarily those of Women Against Registry.
Tags: BOP petri dish judicial system punitive

---

Attachments  1

 It is time we rethink our approach

 Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0419/attachment_1.pdf)

**Comment ID**

DOJ-OAG-2020-0003-0419

 **Tracking Number**

kfn-bp6u-rw7d

**Comment Details**                    **Submitter Info**

**Received Date**

Sep 28, 2020



About   Bulk Data Download   Agencies   Learn
(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001566

# It is time we rethink our approach!

by Vicki Henry • April 26, 2020 •

The Bureau of Prisons is attempting to follow the Attorney General's directive to reduce the prison population in response to COVID-19. Officials are scouring records in an attempt to find those who are worthy of home confinement. They are using certain risk factors as their criteria. Just today, it has been reported that in their effort to set more free amid lawsuits and public scrutiny, they are now looking at those who have served less than half of their original sentence.

They are not considering anyone accused of a computer sex crime (even though sex crimes have one of the lowest recidivism rates). Any person, who looked at or downloaded an illegal image is deemed ineligible for home confinement. In fact, they are considered violent criminals (which is a seriously biased definition of the term "violent"). They do not take into account that many inmates with these charges have served exceptionally long, overly punitive sentences; a fact that many in the  criminal justice world will admit.  Even the United States Sentencing Commission has addressed the issue of overly harsh sentencing due to the fact that these guidelines were set up before the prevalence of computers in our society.

Now, once again, in the face of overwhelming evidence to the contrary, the BOP is playing on the fears and ignorance of the public.  Their decision is resulting in the deaths of people who deserve better from our government. I am begging you not to turn already harsh sentences into death sentences.

The most recent inmate to die from Oakdale was George Jeffus. He was serving time for child pornography related charges. He was elderly, 76 years old and had health issues.  He had already served the majority of his sentence. He was the absolute perfect candidate for consideration.

Clearly, he was at high risk for COVID-19 and met all the criteria.  And yet, by a warped, out-of-date, cruel or ignorant policy, he was deemed too dangerous to be considered or to be saved. By BOP standards, his life was apparently not worth saving. Did some pictures that this gentleman looked at years ago really warrant putting him to death now? No one would answer in the affirmative to that question and yet, that is exactly what happened.

There are men, right now, in all our prisons, first time offenders who looked at the wrong thing on their computers.  Images they absolutely should never have viewed but do not as a result deserve a death sentence.  Many men, like George Jeffus have been behind bars for over a decade.  Many men have only a few years left to serve.  Many men have grave health issues.  And these men are being ignored for participation in this program.  Why?  Why?  Why?  Please do not allow others to suffer the fate of Mr. Jeffus

An inmate who knew Mr. Jeffus wrote the following about him:
"I just wanted to say a few things about the last inmate to die here at Oakdale. He lived 7 cells down from me. I read the press release and it just said his age and his charges which always sound worse than they actually are. George Jeffus always had a good attitude and a good word for you. He had a daughter that sent him car magazines that he liked. I shared them with him too.

AR-00001567

He was a veteran who served in Germany in the sixties, the same time as my father. He liked football and always asked me about the Vols because I am from Tennessee. He didn't have that much time left here and HE DIDN'T DESERVE TO DIE IN PRISON. It just has weighed on my mind when I read that little thing about his life".

It is time we all rethink the punitive nature of our society and of our Judicial system.  Every single inmate behind those walls has value. They have families that love them and stand beside them no matter what they have done....because that is what families do.  EVERYONE deserves a second chance in life.  NO ONE deserves to die at the hands of a fearful, ignorant, misguided or willfully brutal system of justice.  It is an absolute mandate to protect these inmates and save their lives – not to destroy or end those lives.

Laurie Draper Jones (landstar727@yahoo.com)

*The opinions expressed within posts and comments are solely those of each author, and are not necessarily those of Women Against Registry.*

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)    Share ▾

Comment

Here is what michigan is doing they realize that sex offenders need to reinergrate into society they cannot do that with the sex offender registration always on their back ...

https://www.bjs.gov/content/pub/pdf/rsorsp9yfu0514.pdf

**Comment ID**
DOJ-OAG-2020-0003-0420

**Tracking Number**
1k4-9j84-6g8w

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Sep 29, 2020



About   Bulk Data Download      Agencies      Learn
(/about)         (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)   Share ▾

---

Comment

    I am writing in regard to the proposed changes to SORNA. I think that these changes are over broad and an over reach of the Federal government into state and local jurisdictions. These changes will not increase public safety in any meaningful way and may actually harm the public good by stigmatizing and pauperizing persons convicted of crimes essentially everywhere and forever.

    State and local authority should be able to retain independent judgement, discrimination and discretion with handling these cases. The Three Strikes fiasco comes to mind, handcuffing local jurisdiction and feeding the prison population without rhyme or reason. The Federal government should not repeat this error with SORNA.

    Most especially, these changes risk permanently branding young offenders whose original offense never involved children of any age, nor predatory behavior, nor stalking, and who have an absolutely minimal likelihood of ever re-offending.

    The proposed amplified registry is wrong in that it mixes in the very young one time and one-off offenders with the disturbed and dangerous. Young offenders who have admitted their mistake are not dangerous individuals and have good family support and good prospects in life need to stay off this long-term registry. The proposed changes to SORNA would utterly crush any chances for a normal family life, educational opportunities and gainful, useful employment.

    For the sake of the families of young offenders and for the sake of proportionality and a bit of mercy, please reconsider this change to SORNA. Thank you.

A.C.

**Comment ID**

DOJ-OAG-2020-0003-0421

 **Tracking Number**

1k4-9j8h-hea9

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Sep 29, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

AR-00001572

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

IT'S JUST ADMINISTRATIVE NOT PUNISHMENT.

I pleaded guilty on August 26, 1998, for attempted sexual assault of a person under the age of thirteen. I was placed on the Michigan sex offender registry (SOR) list. I was on probation for five years and addended weekly sex offender counseling during my time on probation. After my probation ended in August 2003, my twenty-two-year punishment has continued to this day.

Since August 1998 I have turned my life around. I remarried, held a job that just paid a little over minimum wage until my retirement. The following is a list of instances that give evidence the SOR is indeed intended for punishment.

My wife and I sold our home and the new owners wanted to move in before we planned on moving out. We would need temporary housing before moving into our new house. We booked a two-week stay at Value Place. After a four day stay, I was notified that we would have to move out the next day because I was on the Michigan Sex Offender Registry. No refund was provided. We moved into a Red Roof Inn until our house was finished.

After spending nine months planning with our builder and moving into our new home. I changed my address according to my new address to satisfy the SOR requirements. I was approached by our builder as he was concerned that I was on the SOR and his daughter had put money down on a neighboring lot. He was not sure if his daughter would want to live next to a sex offender. He also mentioned he didn't know if he would have built us a house if he had known I was on the registry.

After settled in, the word was out that the community that a sex offender was living among them. We were approached by the property developer, the President of the association, my builder, and the builder's son in law. We were told they wanted us to move out of the house. The developer would pay us the price for the house. If we don't move out they were going to get the sheriff to get us to move. We had to hire an attorney to help us stay in our house. About a week later, the president of the community association told us they have checked and legally they could not force us to move.

To get better acquainted with the neighborhood I thought it would be a good idea to join a community group on the internet. This would keep us updated on new neighbors, crime in the area, yard sales, and community picnics. I submitted an application to join nextdoor.com and was refused membership because I am on the sex offender registry.

We planned a two-week vacation to Costa Rica. Upon arrival, immigration refused me from interring the county because I was on the Sex Offender Registry. The government booked us on the next flight returning to the states.

After twenty-two years on the registry, these are just a few of the significant events that happened to my wife and me. The registry is punishment and should be dissolved. It provides no purpose at all except to have registrants put down and keep them from becoming a valuable citizens

**Comment ID**

DOJ-OAG-2020-0003-0422

 **Tracking Number**

1k4-9j9b-sehl

**Comment Details**                                    **Submitter Info**

**Received Date**

Sep 30, 2020



AR-00001574

Support (/support)   Provide Site Feedback

AR-00001575

Let me start off by stating the obvious. Should not the evidence as well as
the science support the need for additional punishments? Make no mistake that
this  is  absolutely a punishment.  No way around it. Not only for a
registrant, but their families as well.  Shouldnâ€™t a persons conduct once
released from sanctions, and over a period of time, show a low risk for re
offense?  As others have already provided as well as your departments own
figures show.Honestly if a person is so dangerous to society or children. Or
any other crime for that matter.Then the courts should make sure said
individual isnâ€™t allowed back in general public.. That just requires common
sense. Which evidently is in short supply in our Government these days.Any
registry  doesnâ€™t provide public safety. How can it prevent a crime. So
from all the hype of media and politicians this all proves to be scare tactic
to get the public to in general feel better. And promote whatever the cause
may be. As fas as retroactively applying new laws. How can that be
constitutional? If a person has been released from all sanctions as well as
payed their so called debt to society. And have not committed any offenses
especially over a period of time. Would that show potentially they are not
the threat that has been portrayed by so many? One portion of the proposal
that just plain irritated me. Is if you are away from residence more than 7
days you need to register the new address. So lets get this straight. So if a
individual was inclined to commit a new crime. The individual would have a
whole week to do so. So once again how does a registry of any kind prevent or
deter anything? How do registrants take vacations? Could anyone imagine the
stress on a family unit dealing with these types of issues caused by any sort
of registry. What happened to the America that believed in second chances for
everyone? Iâ€™m not downplaying the severity of these types of crimes. But a
felony crime is just that. Whoâ€™s the next registry for? Slippery slope it
is.
There are already numerous state,county,township laws and statutes
restricting where one can live,work. Itâ€™s technically illegal for a
registrant to eat at a McDonalds that has a playground due to its a place
where children congregate. How do you tell your kids that? Your not allowed
in all sorts of places without the risk of prison. But yet registrations are
not a punishment!!! Not just punishment. But everything starts out as 3rd
degree felony. So a non punitive law is punishable by prison???On a personal
note. I recently had to skip going with my family to Disney in Fl. Once again
a family outing ruined by the registry.  As IDs are checked against registry
and you are denied access to parks. So how did that stop a crime? This entire
proposal will just create more confusion for a segment of the population that
is already burdened with almost unbearably harsh rules and regulations. And
its a sizable population at that. Estimated in the 750,000 to 100,000.000
range. Hopefully common sense will prevail!! Abolish the registry on the
Federal/State level,or at the very least have a system in place that takes
into account individualâ€™s history or lack there of, and not just a blanket
feel good law.

Let me start off by stating the obvious. Should not the evidence as well as
the science support the need for additional punishments? Make no mistake that
this  is  absolutely a punishment.  No way around it. Not only for a
registrant, but their families as well.  Shouldnâ€™t a persons conduct once
released from sanctions, and over a period of time, show a low risk for re
offense?  As others have already provided as well as your departments own
figures show.Honestly if a person is so dangerous to society or children. Or
any other crime for that matter.Then the courts should make sure said
individual isnâ€™t allowed back in general public.. That just requires common
sense. Which evidently is in short supply in our Government these days.Any
registry  doesnâ€™t provide public safety. How can it prevent a crime. So
from all the hype of media and politicians this all proves to be scare tactic
to get the public to in general feel better. And promote whatever the cause
may be. As fas as retroactively applying new laws. How can that be
constitutional? If a person has been released from all sanctions as well as
payed their so called debt to society. And have not committed any offenses
especially over a period of time. Would that show potentially they are not
the threat that has been portrayed by so many? One portion of the proposal
that just plain irritated me. Is if you are away from residence more than 7
days you need to register the new address. So lets get this straight. So if a
individual was inclined to commit a new crime. The individual would have a
whole week to do so. So once again how does a registry of any kind prevent or
deter anything? How do registrants take vacations? Could anyone imagine the
stress on a family unit dealing with these types of issues caused by any sort
of registry. What happened to the America that believed in second chances for
everyone? Iâ€™m not downplaying the severity of these types of crimes. But a
felony crime is just that. Whoâ€™s the next registry for? Slippery slope it
is.
There are already numerous state,county,township laws and statutes
restricting where one can live,work. Itâ€™s technically illegal for a
registrant to eat at a McDonalds that has a playground due to its a place
where children congregate. How do you tell your kids that? Your not allowed
in all sorts of places without the risk of prison. But yet registrations are
not a punishment!!! Not just punishment. But everything starts out as 3rd
degree felony. So a non punitive law is punishable by prison???On a personal
note. I recently had to skip going with my family to Disney in Fl. Once again
a family outing ruined by the registry.  As IDs are checked against registry
and you are denied access to parks. So how did that stop a crime? This entire
proposal will just create more confusion for a segment of the population that
is already burdened with almost unbearably harsh rules and regulations. And
its a sizable population at that. Estimated in the 750,000 to 100,000.000
range. Hopefully common sense will prevail!! Abolish the registry on the
Federal/State level,or at the very least have a system in place that takes
into account individualâ€™s history or lack there of, and not just a blanket
feel good law.

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

| Comment |

As a daughter of a convicted sex offender, and no I'm not a victim per se, I'm a victim of the registry my father is on.

As a registered Nurse Practicner, I have seen first hand what the impact of the registry can do to people. I have had patients ( none victims ) that had a family member on registry, and those patients have become suicidal, depressed and bullied beyond belief. Of those, 2 have succeeded in their suicide attempts. This is a direct result of what the registry is doing to families. It Doesn't protect society, it destroys it and creates more hate toward government and law than we need right now in todays society.

The proposed AWA is NOT going to work. That is not the answer. The answer is to Have a way off the registry for offenders. My father was convicted 30 years ago, there was no registry. Soon he was to register for 15 years, then a few years later moved to 25, then around 2011 moved to life time. I can not for the life of me understand the the common sense implied in doing this. My father never committed any other crimes, been clean as a whistle to date for 30 yrs now. And was a very small sentence to begin with. Makes no sense.

I believe the best remedy is to have an assessment of each offender. Many like my father, are not a risk, nor should be classified as high risk tier 3. He's now handicapped, and an auto accident severed his area below. It would be impossible for him to be any type of risk at all.

Second make the registry police only, not public. The registry not only effects the offender, it affects the entire family, relatives of family and in all walks of life. You may think your affecting 500,000 offenders nation wide, but when you factor in the families and children of families and their offspring and etc., that number grows 10 fold to 5 million as a conservative number. These are the people actually affected by the damage of the registry. This damage includes; bullying of children of offenders by
their peers in school, depression, suicide, drugs, hate, and etc. This blood is on the AWA proposal.

You need to go back to original registry where each offender has a chance of coming off. Where max time on registry is 15-25 yrs. No more. The registry does no good. But if one must exist, then make it fair, not just for

AR-00001578

offenders, but the children. You claim the registry protects them, prove it. It's destroying them and killing them. Do assessments, that's not hard at all to evaluate.

**Comment ID**

DOJ-OAG-2020-0003-0425

 **Tracking Number**

1k4-9j9g-leeb

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 1, 2020



Your Voice in Federal Decision Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

(see attached for clickable links)

SOLICITOR GENERAL OF THE UNITED STATES (#3 below the Attorney General) CONTRADICTS >> THIS REGULATORY REVISION<< MADE BY THE ATTORNEY GENERAL OF THE UNITED STATES!

Folks, the beginning of the end of Sex offender registration is happening based on this story:

The US Supreme Court: formally started the registration with its landmark case:

https://scholar.google.com/scholar_case?case=14879258853492825339

And the end is:
https://scholar.google.com/scholar_case?case=2086867239115311980

Because of this:
https://scholar.google.com/scholar_case?case=8782247482523616851

The result is:
https://scholar.google.com/scholar_case?case=2761042225060144853

And the news about it:
https://www.detroitnews.com/story/news/politics/2020/06/08/michigan-sex-offender-registry-changes-considered/5196974002/ which stated:

""Any revision of (the law) should ensure and clarify that an individual convicted in another state of an offense requiring sex offender registration in that state should, at a minimum, be required to register in Michigan for a similar duration under substantially similar terms regardless of the date of offense," he wrote. >>>"Otherwise, registered sex offenders from other states with offenses prior to Michigan's 2011 amendments to (the law) could seek sanctuary from all sex offender registration by simply relocating to Michigan.""<<<

AR-00001580

And it appears the news about this groundbreaking decision has been gagged by the APwire and Reuters because of the above statement.

https://www.record-eagle.com/news/local_news/sex-offender-registry-months-out-of-date-but-little-action-from-lawmakers/article_68690fb4-f4c5-11ea-abf0-13f1f00f784b.html

Sep 13, 2020 "LANSING Michigan's Sex Offender Registry could collapse if legislators can't find a fix and there's no telling when their deadline will come."
https://www.thealpenanews.com/news/local-news/2020/09/courts-stymied-as-sex-offender-laws-still-stalled/

SEP 23, 2020 "ALPENA Northern Michigan police, courts, people convicted of sex crimes, and victims are in limbo as legislators indefinitely postpone an overhaul to the state's sex offender registry, despite being told four years ago that the registry was unconstitutional."

Pertinent to everyone else in the Country is best stated by the State of Michigan:

https://www.scotusblog.com/wp-content/uploads/2017/07/16-768-snyder-v.-doe-supp-brief-of-petitions.pdf

"But the decision itself reveals that the Sixth Circuit disagreed with offense based registration as a general matter, not because of specific nuances in Michigan law. >>>The Sixth Circuit's decision calls into question not only Michigan's SORA, but the whole of modern SORA requirements, concluding that three basic features of such laws are irrational."<<<

">>>The decision indicts the whole of offense-based registration, reporting, and residency restrictions<<<"

>>>"Further, even if this concern does not implicate SORNA, it implicates much of the country: 20 other states have residency restrictions, Pet. 20a fact the federal government does not deny."<<<

"Beyond these assertions of irrationality, the Sixth Circuitin its final summation of why SORA is punitiveconcluded that "SORA brands registrants as moral lepers solely on the basis of a prior conviction." Pet. App. 26a. >>>That concern applies, of course, to all offense-based registration, including SORNA."<<<

>>>"The Sixth Circuit rejected the basic premises of modern, offense-based sex-offender registration.<<< The decision below not only threatens the federal SORNA, but also conflicts with decisions that have upheld retroactive application of offense-based requirements. This case is a good vehicle for resolving whether basic components of modern SORA laws are punitive for ex post facto purposes because Michigan's SORA includes many of the components over which the lower courts have disagreed. "

Well, the US Supreme court denied the petition without opinion (see link above), so THE SIXTH CIRCUIT DECISION IS NOW THE LAW OF THE LAND!

Note:
Because the Solicitor General of the United States answered this upon request of the US Supreme Court:

https://www.scotusblog.com/wp-content/uploads/2017/07/16-768-cert-ac-US.pdf

Why Didn't the US Supreme Court file an opinion on such a massively important decision? Because the Solicitor General of the United States,--- ironically (#3) under the Attorney General of the United States! sided in the favor of the all important decision of the 6th Circuit. This is profound!
The Government rarely, if ever, supports on the side of the people. But here the Attorney General continues to

support registration as expected. It appears it's the classic left hand doesn't know what the right hand is doing, incredibly ironic!

Folks, time to start filing on all the above. And the civil litigation for damages is beyond comprehension.



Attachments   ( 1 )

📄   beginning end - Google Docs

⬇  Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0426/attachment_1.pdf)

**Comment ID**
DOJ-OAG-2020-0003-0426

◎  **Tracking Number**
1k4-9j9k-bmr4

**Comment Details**                    **Submitter Info**

**Received Date**
Oct 1, 2020



About
(/about)

Bulk Data Download
(/bulkdownload)

Agencies
(/agencies)

Learn
(/learn)

Reports
(https://resources.regulations.gov/public/component/main?main=Reports)

FAQ
(/faq)

AR-00001582

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

SOLICITOR GENERAL OF THE UNITED STATES (#3 below the Attorney General) CONTRADICTS  >> THIS REGULATORY REVISION<< MADE BY THE ATTORNEY GENERAL OF THE UNITED STATES!

Folks, the beginning of the end of Sex offender registration is happening based on this story:

The US Supreme Court: formally started the registration with its landmark case:

https://scholar.google.com/scholar_case?case=14879258853492825339

And the end is:

https://scholar.google.com/scholar_case?case=208686723911531980

Because of this:

https://scholar.google.com/scholar_case?case=878224748252361851

The result is:

https://scholar.google.com/scholar_case?case=2761042225060144853

And the news about it:

https://www.detroitnews.com/story/news/politics/2020/06/08/michigan-sex-offender-registry-changes-considered/5196974002/ which stated:

"Gasper also called for stricter rules governing sex offenders who move to Michigan from other states. "Any revision of (the law) should ensure and clarify that an individual convicted in another state of an offense requiring sex offender registration in that state should, at a minimum, be required to register in Michigan for a similar duration under substantially similar terms regardless of the date of offense," he wrote. >>>"Otherwise, registered sex offenders from other states with offenses prior to Michigan's 2011 amendments to (the law) could seek sanctuary from all sex offender registration by simply relocating to Michigan.""<<<

And it appears the news about this groundbreaking decision has been gagged by the APwire and Reuters because of the above statement.

https://www.record-eagle.com/news/local_news/sex-offender-registry-months-out-of-date-but-little-action-from-lawmakers/article_68690fb4-f4c5-11ea-abf0-13f1f00f784b.html

Sep 13, 2020 "LANSING — Michigan's Sex Offender Registry could collapse if legislators can't find a fix — and there's no telling when their deadline will come."

https://www.thealpenanews.com/news/local-news/2020/09/courts-stymied-as-sex-offender-laws-still-stalled/

SEP 23, 2020 "ALPENA — Northern Michigan police, courts, people convicted of sex crimes, and victims are in limbo as legislators indefinitely postpone an overhaul to the state's sex offender registry, despite being told four years ago that the registry was unconstitutional."

AR-00001584

Pertinent to everyone else in the Country is best stated by the State of Michigan:
https://www.scotusblog.com/wp-content/uploads/2017/07/16-768-snyder-v.-doe-supp-brief-of-petitions.pdf
"But the decision itself reveals that the Sixth Circuit disagreed with offense based registration as a general matter, not because of specific nuances in Michigan law. >>>The Sixth Circuit's decision calls into question not only Michigan's SORA, but the whole of modern SORA requirements, concluding that three basic features of such laws are irrational."<<<

"The Sixth Circuit's statements cannot be reconciled with the limited reading the federal government seeks to give that decision. >>>The decision indicts the whole of offense-based registration, reporting, and residency restrictions"<<<

>>>"Further, even if this concern does not implicate SORNA, it implicates much of the country: 20 other states have residency restrictions, Pet. 20—a fact the federal government does not deny."<<<

"Beyond these assertions of irrationality, the Sixth Circuit—in its final summation of why SORA is punitive—concluded that "SORA brands registrants as moral lepers solely on the basis of a prior conviction." Pet. App. 26a. >>>That concern applies, of course, to all offense-based registration, including SORNA."<<<

>>>"The Sixth Circuit rejected the basic premises of modern, offense-based sex-offender registration.<<< The decision below not only threatens the federal SORNA, but also conflicts with decisions that have upheld retroactive application of offense-based requirements. This case is a good vehicle for resolving whether basic components of modern SORA laws are punitive for ex post facto purposes because Michigan's SORA includes many of the components over which the lower courts have disagreed. "

Well, the US Supreme court denied the petition without opinion (see link above), so THE SIXTH CIRCUIT DECISION IS NOW THE LAW OF THE LAND!

Note:
Because the Solicitor General of the United States answered this upon request of the US Supreme Court:
https://www.scotusblog.com/wp-content/uploads/2017/07/16-768-cert-ac-US.pdf
Why Didn't the US Supreme Court file an opinion on such a massively important decision?
Because the Solicitor General of the United States,--- ironically (#3)  under the Attorney

General of the United States! sided in the favor of the all important decision of the 6th Circuit. This is profound!

The Government rarely, if ever, supports on the side of the people. But here the Attorney General continues to support registration as expected. It appears it's the classic left hand doesn't know what the right hand is doing, incredibly ironic!

Folks, time to start filing on all the above. And the civil litigation for damages is beyond comprehension.

AR-00001586

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Hi,

SORNA is nothing more than an exercise in futility. It only places a burden on both Offenders and the Sates that enforces it.

It also deviates economic resources that could be utilized to help Offenders re-entry society. SORNA does not give any incentive to Law Enforcement in assisting Offenders in becoming a productive member of society. Effective laws are the ones who can be understood and adhered to by the common people. This requirements are open to confusion and gray areas that can be abused by Probation Officers and other members of the law. The studies and DATA are there for everyone to see, the solution is not more "Laws" and "Restrictions," but education, and allowing individuals who genuinely want to become better people to do so. SORNA can create a dangerous precedent for citizens and individuals accused of other crimes besides sex offenses.

Human dignity should be above all, above any laws or bias of society.

**Comment ID**
DOJ-OAG-2020-0003-0427

**Tracking Number**
kfq-vizg-bcsw

**Comment Details**                          **Submitter Info**

AR-00001587

**Received Date**

Oct 1, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

---

Comment

This will be the law of the land in a few years!

"Furthermore, the Interim Order and Injunction does not prohibit individuals required to be registered under the SORA from voluntarily complying with the requirements of the SORA"

UNBELIEVABLE!!!! required but voluntary???

So I want to voluntarily go to the police station to stigmatize myself and prevent myself from getting a job and a place to live???

This is actually the logic of a Government???

from

https://www.michigan.gov/msp/0,4643,7-123--524592--,00.html

whole quote:

"The Court noted that the interim injunction only prohibits enforcement of the SORA; it does not prevent the MSP from maintaining the Sex Offender Registry, such as inputting information about new registrants or continuing the Public Sex Offender Registry. Furthermore, the Interim Order and Injunction does not prohibit individuals required to be registered under the SORA from voluntarily complying with the requirements of the SORA, including, but not limited to, reporting in-person to a registering authority to register or verify information required to be reported under the SORA."

AR-00001589

**Comment ID**

DOJ-OAG-2020-0003-0428



**Tracking Number**

1k4-9j9q-a2ba

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 1, 2020



About    Bulk Data Download    Agencies    Learn
(/about)         (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

Simply put, the proposed changes to SORNA are a bad idea and should not be implemented. Most notably, numerous studies have shown SORNA: 1) provides no additional protection to the public; 2) does not reduce sexual recidivism; 3) harms children due to collateral effects from parental underemployment, residence restrictions and peer bullying; and 4) consumes scarce resources at both the federal and state levels.

The Association for the Treatment of Sexual Abusers (ATSA) has recently (2020) published a white paper titled Registration and Community Notification of Adults Convicted of Sexual Crime: Recommendations for Evidence-Based Reform. Its findings align with those of official publications from the Bureau of Justice Statistics regarding recidivism and danger posed by former sex offenders. I urge those DOJ personnel promoting SORNA amendments to read the document to obtain a clear understanding of the danger presented by convicted offenders.

Among its many recommendations, ATSA urges recognition that a national one-size-fits all approach to SORN laws does not work within the U.S. and allow states to make adjustments to their registries based on individual needs without incurring any financial penalty.

By specifying a floor rather than a ceiling for states to comply with the SORNA requirements, the DOJ will only exacerbate the ill effects and create further confusion and uncertainty for registrants while providing no benefit to society.

**Comment ID**
DOJ-OAG-2020-0003-0429

 **Tracking Number**
1k4-9j9q-iqgf

AR-00001591

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 1, 2020



Your Voice in Federal Decision-Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

AR-00001592

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments ⑦24 (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments ⑦24 (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
| --- | --- |

---

| Comment |
| --- |

The endless pages of this regulation are based on an absolutely false premise - that registered sex offenders are a significant risk to society. DOJ data confirm the extremely low reoffense rate of registrants. Potential victims of sexual offending are unequivocally at risk from someone they know - family, friends and acquaintances - not a registered stranger.

The registration schemes that have been foisted on the American public are worthless at protecting society, instead instilling a false sense of security. At the same time, public registries post employment data, resulting in extraordinarily restrictive employment opportunities for registrants, penalize businesses who choose to hire registrants and registrant families with severely restricted income potential.

International Megan's Law is equally flawed. Registrants are not posing any risk when traveling internationally. As DOJ is aware, criminal enterprises are running "sex trafficking rings", not registrants.

DOJ's proposed "clarification" of registration rules are just another effort at guaranteeing prosecutorial success when registrants who clearly pose no threat to society have violated some "administrative" registration rule. If DOJ is interested in justice for the public, it should:

1. Remove all registries from public view. If the public is interested in viewing a list of registrants in their community, give them an option to submit a request for that data to the local law enforcement agency.

2. Prohibit third party aggregators from posting registrant personal information publicly, putting registrants and their families at risk of retribution from vigilantes.

3. Revise registration requirements to contain some degree of logic. Requiring lifetime registration is simply nonsensical for any offense. The overwhelming number of offenses is between those who are acquainted. Requiring an 80-year-old who offended against a family member 50 years ago to register until he or she is dead is simply ridiculous. The same can be said for a teacher who engaged in a consensual relationship with a minor. And there are endless other examples of the stupidity of lifetime registration and its financial costs to the taxpayer.

AR-00001593

4. Cease marking registrant passports with a scarlet letter, alerting other countries of likely decades old convictions when there is absolutely no evidence that registrants are posing any danger to the public when travelling internationally.

5. Current SORNA requirements are fear-based, not fact-based and nothing has changed in the past decades. For justice to prevail, withdraw this rulemaking and rewrite it with input from a panel of sex offender treatment professionals, law enforcement leaders, registrants, registrant family members and citizens to bring some sense to the process. The attorneys are only addressing state and federal legal inconsistencies in fear-based rules to the detriment of an American public who deserves the truth about where potential risk actually exists. That risk isn't addressed in current or proposed sex offense registration schemes.

**Comment ID**

DOJ-OAG-2020-0003-0430

 **Tracking Number**

1k4-9j9r-ax2p

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 1, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001594

AR-00001595

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

---

Comment

SORNA has been commercialized. See, e.g., kidslivesafe.com; homefacts.com; citydata.com; mugshots.com.
Not compensating registrants for performance of their "civil" duties is clearly subornation and non-consensual economic exploitation of a disfavored subclass akin to African slavery and prohibited by the 13th Amendment. An entire industry has again been built on the backs of a disenfranchised subclass.
Targeted individuals are subject to ostracism and vigilantism. Some have been murdered. Including innocent by-standers. Proponents of SORNA should themselves be indicted for human rights violation.

**Comment ID**
DOJ-OAG-2020-0003-0431

 **Tracking Number**
1k4-9j9s-n5r3

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Oct 1, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

---

Comment

I feel that the registry is unconstitutional. Punishment continues and people are umbrelled. The registry endangers the lives and livelihood of not only the registrant, but their family's too. Stipulations that cause out of pocket expenses to comply with this draconian registry to people that can't gain employment to pay and pay, then become noncompliant because they have no real income resources. It's a registry that forces people to fail with no help. How is it reform is excluded for SO? These laws are disgusting and unfair.

**Comment ID**

DOJ-OAG-2020-0003-0432

 **Tracking Number**

1k4-9j9t-xqzc

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 1, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 PUBLIC SUBMISSION

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Please do not implement any more restrictive requirements with SORNA. The sex offender laws are already punishment enough and keep good citizens from finding work, residence, and being able to travel like others who have completed prison sentences. State registration laws are already tough enough. Please repeal SORNA

**Comment ID**
DOJ-OAG-2020-0003-0433

**Tracking Number**
kfp-y4jz-tvvw

**Comment Details**                    **Submitter Info**

**Received Date**
Sep 30, 2020

AR-00001600



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001601

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
| --- | --- |

---

| Comment |
| --- |

The registry not only does not work but it puts children in danger running from an imagined threat into the arms of the real threats. The vast majority of offenses occur by people not on the registry.

Making laws based off of isolated inscedenses is criminal and unconstitutional.

Also, not one high profile politician is on this registry though many have been caught in sex crimes including frequent trips to Epstein Island.

This continued doubling down will only serve to increase the publics dissatisfaction with the service you are supposed to be providing us.

**Comment ID**

DOJ-OAG-2020-0003-0434

 **Tracking Number**

kfq-2ysb-bllb

| **Comment Details** | **Submitter Info** |
| --- | --- |

**Received Date**

Sep 30, 2020

AR-00001602



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001603

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)          Share ⌄

Comment

Unless this new Registration Requirement is to replace the individual state requirements, it is hard to believe that aanother layer of regulation in needed. It would be one thing if you intend to streamline regulations but to simply establish a double set of ever-changing standards that every offender in the country must try to keep up with seems like it is simply an attempt to sset up a snare to entrap individuals who have served their time and are trying to re-establish their lives in a positive manner. It may be based on the false statement made by the Supreme Court during the first Registry challenge when a the Judge stated that a psychologist in a non-research based article commented that the recidivism rate for sex offenders is "frightfully high." Like so many scary statements about sex offenders, the actual fact from respected studies is that offenders who complete treatment have the lowest rate of all offenders - in the 5% range! Yet, onerous over-regulation followed by additional punishment does nothing but make it harder for those individuals to re-establish their laws in a law-abiding manner (and even to find housing and jobs) so much more difficult. I am strongly opposed to the passage of this regulation!

**Comment ID**

DOJ-OAG-2020-0003-0435

 **Tracking Number**

kfq-71rm-9nv9

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Sep 30, 2020

AR-00001604



Your Voice in Federal Decision-Making

About   Bulk Data Download    Agencies    Learn
(/about)        (/bulkdownload)   (/agencies)  (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

---

Comment

I don't even know where to begin on how many levels this is so wrong. What happened to America? Talk about cruel and unusual punishment! How are we supposed to contribute to society? Rehabilitation in America is a fairy tale! I used to be proud to be American. Several countries in Europe have Actual rehabilitation and very low recidivism. Here, we are punished for life. Period.
No more productive citizens. No more security. No more quality of life. We have families and friends that love and And want us, but we aren't allowed to visit? To quote one President: Nuts!

---

**Comment ID**

DOJ-OAG-2020-0003-0436

---

 **Tracking Number**

kfr-8pgt-8jev

---

**Comment Details**                    **Submitter Info**

**Received Date**

Oct 1, 2020

AR-00001606



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001607

 An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I disagree with federal government asserting a privilege to undermine states rights as in the 10th amendment.

**Comment ID**

DOJ-OAG-2020-0003-0437

**Tracking Number**

kfr-ddnl-y8zt

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 1, 2020



AR-00001608

About   Bulk Data Download      Agencies      Learn
(/about)      (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments  (724)  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  (724)  (/docket/DOJ-OAG-2020-0003/comments) |    Share ⌄ |

---

| Comment |

I am responding to the proposed SORNA regulations. According to your website, Sex offender registration and notification programs are important for public safety purposes. Studies have shown time and time again that the sex offender registration does not promote public safety and in fact it causes more harm than good. Registrant lists give the public a false sense of safety. In reality, the vast majority of new sexual crimes are not committed by registered sex offenders who, by definition, have prior sex offenses, but by first-time sex offenders (Bureau of Justice Statistics, 2003).

Do you even know who is on the sex offender registry? It is not the bald, lonely guy with no teeth and a big beer gut, it is our children, our husbands, our brothers, and our friends. These people are not bad peoplethey simply made a mistake. Sex offender registration is required for all criminals with a sex offense conviction regardless of their risk for future recidivism, despite extensive research indicating that the majority will not go on to sexually offend against new victims (Levenson & D'Amora, 2007; Zgoba, 2004).

The majority of the people on the list are not threats. They are people who have done their time yet live forever with this stigma. Their lives have been completely turned upside down. They have lost every hope and dream they ever had and often times suffer from adverse consequences such as difficulty in securing and maintaining employment, housing disruption, relationship loss, threats and harassment, physical assault, and property damage. Psychosocial stressors such as shame, embarrassment, depression, or hopelessness are frequently reported by sex offenders as common byproducts of public disclosure. (Levenson & Tewksbury, 2009). Not only are they themselves suffering but their families, including their children, and anyone who loves and cares for them also suffer.

The proposed new requirements will require the registrants who are not employed at a fixed location, such as a landscaper, HVAC repairman, or contractor, to provide information as to where s/he will be working with whatever definiteness is possible. What does that even mean? Will making them report to the sheriffs office on a daily basis keep the public safe? That is a nuisance to both the registrant and the understaffed and overworked sheriffs office.

In the fifteen years that SORNA has been in effect, there is no support for the effectiveness of registration and

community notification laws in reducing sexual offending by: (a) rapists, (b) child molesters, (c) sexual recidivists, or (d) first-time sex offenders. Analyses also showed that over 95% of all sexual offense arrests were committed by first-time sex offenders, casting doubt on the ability of laws that target repeat offenders to meaningfully reduce sexual offending. (PsycINFO Database Record (c) 2016 APA, all rights reserved).

Without proof that the registry is effective and in the face of so much evidence that registration only destabilizes and creates a barrier to successful reentry to a population that already has a low rate of recidivism, I strongly ask you to reconsider SORNA in its entirety.



Attachments  1

### image

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0438/attachment_1.png)

**Comment ID**

DOJ-OAG-2020-0003-0438

**Tracking Number**

1k4-9j9y-ska5

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 1, 2020

AR-00001611



Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

I am responding to the proposed SORNA regulations. According to your website, "Sex offender registration and notification programs are important for public safety purposes." Studies have shown time and time again that the sex offender registration does not promote public safety and in fact it causes more harm than good. Registrant lists give the public a false sense of safety. In reality, the vast majority of new sexual crimes are not committed by registered sex offenders who, by definition, have prior sex offenses, but by first-time sex offenders (Bureau of Justice Statistics, 2003).

Do you even know who is on the sex offender registry? It is not the bald, lonely guy with no teeth and a big beer gut, it is our children, our husbands, our brothers, and our friends. These people are not bad people…they simply made a mistake. Sex offender registration is required for all criminals with a sex offense conviction regardless of their risk for future recidivism, despite extensive research indicating that the majority will not go on to sexually offend against new victims (Levenson & D'Amora, 2007; Zgoba, 2004).

The majority of the people on the list are not threats. They are people who have done their time yet live forever with this stigma. Their lives have been completely turned upside down. They have lost every hope and dream they ever had and often times suffer from adverse consequences such as difficulty in securing and maintaining employment, housing disruption, relationship loss, threats and harassment, physical assault, and property damage. Psychosocial stressors such as shame, embarrassment, depression, or hopelessness are frequently reported by sex offenders as common byproducts of public disclosure. (Levenson & Tewksbury, 2009). Not only are they themselves suffering but their families, including their children, and anyone who loves and cares for them also suffer.

The proposed new requirements will require the registrants who are not employed at a fixed location, such as a landscaper, HVAC repairman, or contractor, to provide information as to where s/he will be working with whatever definiteness is possible. What does that even mean? Will making them report to the sheriff's office on a daily basis keep the public safe? That is a nuisance to both the registrant and the understaffed and overworked sheriff's office.

In the fifteen years that SORNA has been in effect, there is no support for the effectiveness of registration and community notification laws in reducing sexual offending by: (a) rapists, (b) child molesters, (c) sexual recidivists, or (d) first-time sex offenders. Analyses also showed that over 95% of all sexual offense arrests were committed by first-time sex offenders, casting doubt on the ability of laws that target repeat offenders to meaningfully reduce sexual offending. (PsycINFO Database Record (c) 2016 APA, all rights reserved).

Without proof that the registry is effective and in the face of so much evidence that registration only destabilizes and creates a barrier to successful reentry to a population that already has a low rate of recidivism, I strongly ask you to reconsider SORNA in its entirety.

AR-00001613

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

---

| Comment |

Good Day,

Please read the attached report that was JUST released as it is Absolutely Critical to these laws:

The Association for the Treatment of Sexual Abusers (ATSA) is an international, multi-disciplinary non-profit association of more than 3,000 professionals dedicated to preventing sexual abuse.

ATSA promotes sound research, evidence-based and effective practice, informed public policy, and comprehensive prevention strategies
that lead to the effective assessment, treatment, and management of individuals who have sexually abused or are at risk to abuse.

ATSAs members include leading researchers in the study of sexual violence; practitioners who evaluate and treat individuals adjudicated or convicted of sexual crimes and those at risk of offending; law enforcement and corrections officials; victim advocates; prosecutors, public defenders, and members of the judiciary; and other individuals who seek to end sexual abuse.

| **Comment ID** |
| DOJ-OAG-2020-0003-0439 |

|  **Tracking Number** |
| 1k4-9ja3-5483 |

AR-00001614

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 1, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Attorney General Barr,

I am writing to oppose the modification of the proposed wording of the Federal SORNA, specifically the rule change codifying the requirements of state registration schemes on a federal level. This proposal is corecing individual states to comply with these guidelines in order to receive JAG funding. (Smells fishy to me)

States have their own ideas on how to best create and maintain S.O. registries. This proposed rule change needs to be removed because it is a direct attack on States' Rights.

This rule will put hundreds of thousands of individuals back onto a registry after they have already served their time. How can you place citizens back onto a registry after they have already served their time, completed probation and any courses needed and their states found that they were successfully able to be removed, there was no need to monitor?

Is this proposal because the feds themselves are finding all of the different rules, regulations, requirements, restrictions, timelines, deadlines, etc - from all of the different states, prosecutors, tribal lands, counties, cities and townships to be entirely unintelligible and unmanageable. This proposed rule further clouds the rules by creating more. For 19+ years, my husband has done his best to exercise due diligence and stay informed about all the various laws, requirements, regulations, rules, restrictions, etc. that apply to him as a registrant, but this is getting ridiculous. Every year there are new rules, now the federal government wants to overlay its rules on top of all of the States requirements - yet not nullify all the myriad requirement of all those 50 states. This is becoming completely absurd - how is one supposed to "in good faith" understand what is required of them?

Sex offense are committed by first time offenders and those that have committed a sex crime have low rates to re-offend. Even DOJs own site states that you should get rid of SORNA. SORNA is all about control and abusing your citizens.

Facts should matter. This proposed rule does not make changes based on facts. This is making changes based on fear and misinformation.

AR-00001616

The AWA (SORNA) was intentionally passed with extreme prejudice towards ANYONE with a sex offense. It was done with malice. The cruelty is the point. Prejudice is an effective feeling towards a person based on their perceived group membership.

The Tiering scheme is unbalanced. There is no risk assessment here for all of these individuals.

I am discouraged and I am defeated. My husband has been a successful, law abiding citizen since his conviction for a consensual act with a young woman who lied about her age. She was 3 days shy of consenting age. Three days.... and he will be punished for a lifetime for a consensual act.

I urge you to look at facts and science. This is not based on facts at all.

Sincerely,

A concerned wife, mother and citizen of the United States.

**Comment ID**
DOJ-OAG-2020-0003-0440

 **Tracking Number**
kfs-89cv-lket

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**
Oct 2, 2020



Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 2, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |  Share ⌄ |

---

| Comment |

Attorney General Barr,

I am writing to oppose the modification of the proposed wording of the Federal SORNA, specifically the rule change codifying the requirements of state registration schemes on a federal level. This proposal is corecing individual states to comply with these guidelines in order to receive JAG funding. (Smells fishy to me)

States have their own ideas on how to best create and maintain S.O. registries. This proposed rule change needs to be removed because it is a direct attack on States' Rights.

This rule will put hundreds of thousands of individuals back onto a registry after they have already served their time. How can you place citizens back onto a registry after they have already served their time, completed probation and any courses needed and their states found that they were successfully able to be removed, there was no need to monitor?

Is this proposal because the feds themselves are finding all of the different rules, regulations, requirements, restrictions, timelines, deadlines, etc - from all of the different states, prosecutors, tribal lands, counties, cities and townships to be entirely unintelligible and unmanageable. This proposed rule further clouds the rules by creating more. For 19+ years, my husband has done his best to exercise due diligence and stay informed about all the various laws, requirements, regulations, rules, restrictions, etc. that apply to him as a registrant, but this is getting ridiculous. Every year there are new rules, now the federal government wants to overlay its rules on top of all of the States requirements - yet not nullify all the myriad requirement of all those 50 states. This is becoming completely absurd - how is one supposed to "in good faith" understand what is required of them?

Sex offense are committed by first time offenders and those that have committed a sex crime have low rates to re-offend. Even DOJs own site states that you should get rid of SORNA. SORNA is all about control and abusing your citizens.

Facts should matter. This proposed rule does not make changes based on facts. This is making changes based on fear and misinformation.

AR-00001619

The AWA (SORNA) was intentionally passed with extreme prejudice towards ANYONE with a sex offense. It was done with malice. The cruelty is the point. Prejudice is an effective feeling towards a person based on their perceived group membership.

The Tiering scheme is unbalanced. There is no risk assessment here for all of these individuals.

I am discouraged and I am defeated. My husband has been a successful, law abiding citizen since his conviction for a consensual act with a young woman who lied about her age. She was 3 days shy of consenting age. Three days.... and he will be punished for a lifetime for a consensual act.

I urge you to look at facts and science. This is not based on facts at all.

Sincerely,

A concerned wife, mother and citizen of the United States.

**Comment ID**

DOJ-OAG-2020-0003-0441

 **Tracking Number**

kfs-896g-9p53

Comment Details | Submitter Info

**Received Date**

Oct 2, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

AR-00001620

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

Sex offender registration laws are primarily intended to limit certain rights that are granted to non-offenders, and to impose obligations only on sex offenders.  The purpose of limiting the rights of and imposing obligations on sex offenders is primarily to protect the safety of other persons.  Unfortunately sex offender's rights and obligations have been unnecessarily impacted adversely by registration laws enacted out of emotion and fear or to help political candidates, so they think, win their elections.

Sex offender registration laws adversely impact the lives of many persons they are intended to protect, including the lives of an offender's family members. There are books filed with examples evidencing adverse consequences which the current maze of sex offender registration laws inflict on public safety officials, the use of public funds, law enforcement resources and of course the sex offenders. That information has been printed and disseminated for public review so many times by others. I will not reprint that information here. Sex offender laws are also very expensive to administer, much more so than the post incarceration administrative expense attributable to offenders of other laws.   The point here is that sex offender registration laws impact the lives of all Americans, are extremely expensive and are punitive. Therefore, it is critically important for such laws to be drafted after taking into account applicable scientific data-backed recidivism rate information and inputs from law enforcement officials, registrants and their families, public safety officials, evangelicals and authorities with public budgeting concerns.

The current overlapping of federal post incarceration monitoring requirements for sex offenders and state, county and city sex offender registration laws must be eliminated.  These overlapping laws have been developed out of fear that the recidivism rate of offenders is frightening and high. The registry laws have created a class of second class of citizens, the "sex offenders".  Sex offender's inalienable rights to life, liberty and the pursuit of happiness are burdened beyond the offender's probability of compliance. Scientific data-backed evidence will not support a need for such fear.  In fact, that data reveals that the recidivism rate of sex offenders is lower than the recidivism rate of any other type of crime, except murder.

SEX OFFENDER REGISTRATION *CORRECIONS*

INDIVIDUAL RISK ASSESSMENT VS ONE SHOE FITS ALL FEET

First Issue

Sex-offender registration laws are not stimulated by scientific-based data. Their ever increasing encroachment into activities required to live day to day are instead being driven primarily by a mistaken belief and fear that the recidivism rate of sex offenders is frightening and high.  Numerous scientific studies have generated evidence which refutes that claim. The data evidences that the recidivism rate of sex offenders is lower than all other types of offensives, except murder. In spite of that evidence, all who have been sentenced under any sex offender law and who live in the same state are subjected to identical restrictions under their state's registration laws.  In other words, one shoe fits all feet.  If a person caught in a traffic jam caused by a blizzard that leaves his car to run behind the nearest build and relieve himself, the same as the offender who has sodomized a five year old child.  I don't think so! The length of time these two offenders are required to remain on the registry might differ but other conditions which both offenders must satisfy are the same if they live within the same state. This is not right and SORNA does nothing to correct the one shoe fits all feet concept of justice. The one shoe fits all feet concept is also present in the First Step Act.  It is used to make the decision that all inmates incarcerated for violating any of the sex offenses defined in 18 U.S.C. Section 2252 are ineligible to receive time credits under that act. The offenses described in Section 2252 vary dramatically.  In paragraph four a sex offender is a person who views or possesses a picture of a child involved in a sex act.  Viewing or possession of such pictures requires the offender to be placed on the sex offender registry.  Paragraphs 1 through 3 describe persons who produce child pornography, distribute it in interstate commerce and/or sell it for profit. The harm to society from commercial child pornography activity is very different from the harm resulting from looking at a picture on a computer. Yet the First Step Act treats offenses described in paragraphs 1 through 4 all the same.

First Correction

A sex offender' restrictive conditions while on the sex offender registry should be subject to a narrowly tailored actuarial data-based individual risk assessment developed and administered by credentialed subject matter professionals and take into account the nature of the crime.  The individual risk assessment approach will reduce the waste of law enforcement resources by reducing the reporting requirements for minimum and/or low risk sex offenders, improves public safety as more law enforcement resources are released from low risk offenders and become available to deal with higher risk offenders who need more help. The concomitant effect of these efficiencies is to lower the costs of monitoring offenders on the sex offender registry while improving public safety. Otherwise, law enforcement will continue to overburden itself, consume tax dollars for which there is little or no public safety benefit and burden offenders with needless reporting requirements which may cause the offender to become unemployable.  That costs taxpayers additional tax dollars.  Individual risk assessment will be a win, win, win correction, only if authorities will use it.

THE LEGISLATIVE MAZE

Second Issue

For long periods of time after a sex offender sentenced in federal court has completed his term of incarceration, an offender is under supervised release administered by an assigned federal probation officer.   If the offender decides to live in a state that has conformed to the Adam Walsh Act ("the Act") then that state has established a sex offender registry and the offender's name, address, date of birth, place of employment and picture is posted on the internet.  As a practical matter, most states adopting the Act have adopted additional requirements with which the offender must comply. These state requirements cover almost every aspect of everyday life.  The requirements  include, but are not limited to, where  an offender  can live, can work, can be educated, whether or not they are allowed to go into a park, school or library, when and where to report for drug tests even when there has never been an incidence of substance abuse in the offender's past. The laws controlling offender's registry requirements vary greatly from state to state.  Many political sub-divisions (counties, cities, townships etc.) within each state also have regulations with which offenders must

remain compliant or go back into prison.  The regulations of one jurisdiction may conflict with the regulations of another putting a registrant in a situation where compliance is impossible.  This maze of regulations is vague, conflicting and places the registrant in an impossible predicament. SORNA does nothing to resolve this issue.

The federal court system should rule that the maze of regulations is unconstitutional for any one of several reasons.  The maze of regulations is vague. The regulations constitute cruel and unusual punishment. Constitutional questions of double jeopardy arise when an offender is sent back to prison because the offender failed to comply with the laws of the offender's state, county or city of residence.

Second Correction

Every jurisdiction with sex offender registration concerns should work with all other jurisdictions with sex offender concerns to establish a council.   The objective of this council would be to establish and maintain sex offender registration requirements and monitoring procedures that are uniform in all participating jurisdictions.  Along with representatives from legislative bodies of the participating jurisdictions, council members would include representatives from all of the groups listed in paragraph two of page one.  Decisions of the council should be based on scientifically measured recidivism rates and very diversified compassionate humanitarian interest which will be brought into the council by the diversity of groups comprising its membership.

The current maze of confusing and increasingly harsh registration obligations required to keep registrants from returning to prison has evolved, and still is evolving, from fear, politics and the unsupported ravings of someone without research expertise who made his living selling such counseling programs to prisons by touting that untreated sex offenders recidivism was as high as 80%. This salesman's unsupported ravings provided the fodder to support Justice Kennedy's language "frightening and high".

Current sex offender laws define a person for the rest of his/her life by a single instant in their life that was filled with the worst act ever done in their life.  That makes no sense!  These laws need a complete overhaul, not added onto as proposed by Attorney General Bill Barr.

AR-00001626

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

SORNA has been commercialized. E.g.,homefacts.com; citydata.com; mugshots.com; kidslivesafe.com. And the list goes on. Government jobs have been added to process the volumes of data forcibly extracted from the individuals targeted by SORNA. An entire niche industry has in fact been built on the involuntary backs of a disfavored subclass, again. But see US Const Amend 13; Title 18 Chap 77.
I think you should be trying to figure out how to pay registrants the fair market value of the "civil" duties imposed on them rather than worsening their conditions of servitude.

**Comment ID**
DOJ-OAG-2020-0003-0443

 **Tracking Number**
1k4-9jaf-sajj

**Comment Details**                    **Submitter Info**

**Received Date**
Oct 2, 2020

AR-00001627



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)   Share ▾

---

Comment

As a wife of 24 yrs to an offender, I do not support the registry Nor the AWA.
My husband has been on registry for 28 yrs. Never committed any other offense of any kind. And as a highly educated individual that he is, many know of his background, but still find him as a changed person for the better and accepted by many dispite being on registry.
It is humiliating to say the least to have police show up on thanksgiving day and Christmas day for a registry check, knowing that many family members are present. HOW INCREDIBLY RUDE, your hurting children and familys, not protecting them with these tactics.

Who's going to keep paying and footing the bill for keeping offenders for life on registry? I'm not, and sure that many feel the same way.

There needs to be assessments done on offenders to prove they are a risk and have to remain on a registry. My husband had a minor sentence, yet climbed the ranks of the tiers from tier one to tier three of a period of years with no assessment to justify the move or reasoning. My husband had a heart attack and stroke, I highly highly doubt that in mid 60's he's being crippled now, that he's a risk that needs to register for life on tier three. Seriously?!? The States and federal government need to take a much closer look before they begin wasting tax dollars on offenders that don't belong on registry.

I Highly oppose The AWA and registries until legitimate assessments are done on each individual on the registry.

**Comment ID**
DOJ-OAG-2020-0003-0444

AR-00001629



**Tracking Number**

1k4-9jaf-4jz1

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 2, 2020



Your Voice in Federal Decision Making

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

---

Comment

This will add more burden to all registrant. Which will not only affect their lives but the lives of an entire household. These changes will definitely have unintended consequences to innocents wives, partners and their children.

**Comment ID**

DOJ-OAG-2020-0003-0445

 **Tracking Number**

1k4-9jag-v6gc

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 2, 2020



About   Bulk Data Download   Agencies   Learn
(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
|---|---|

---

| Comment |
|---|

I OPPOSE changes to SORNA that increase any level of increased registration requirements.

SORNA as well as the State registries are focused on preventing an individual AND their families from moving forward after an event occurred in their life. Individuals with any registry requirement have huge barriers placed on:

    Where they can live.
    Where they can work.
    Where they can go to school.
    Where they can go for entertainment.
    Where they can practice religious beliefs.
    How they communicate online.
    How long they can visit locations not identified as their home.
    Unique identifiers on such as passports and drivers licenses.
    Routinely being singled out, in public forums, for past transgressions.

SORNA has been identified as not punishment, but why if not punishment, does any infraction carry with it severe penalties?

SORNA is not based on empirical data but is based on strumming the emotional strings for political and financial gain.

How can it be legal to enact or modify a law and then claim it is legally binding regardless of when the offence took place. That specifically violates "Ex Post Facto" rule of law.

SORNA has no allowance for emergency situations such as COVID, hurricanes, massive snowstorms, regional firestorms, etc that may prevent an individual from being compliant.

SORNA provides a false sense of safety, with enormous costs, and no proof as to positive effects.

AR-00001633

I could continue with the reasons SORNA is just a bad idea, but I think I have made my point. SORNA is a bad idea, dont add additional restrictions to an already unmanageable concept.

**Comment ID**

DOJ-OAG-2020-0003-0446

 **Tracking Number**

1k4-9jah-2nih

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 2, 2020



Your Voice in Federal Decision Making

About
(/about)

Bulk Data Download
(/bulkdownload)

Agencies
(/agencies)

Learn
(/learn)

Reports
(https://resources.regulations.gov/public/component/main?main=Reports)

FAQ
(/faq)

AR-00001634

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

---

Comment

I don't believe any changes are warranted - in fact if anything less restrictions should apply as it makes life so much more difficult for those who have already completed their punishment. I know someone who is on the registry and have seen how difficult it is for him to even find work and your own statistics show this list does not protect anyone. Please stop the nonsense. Reduce or eliminate requirements. More regulation only puts obstacles in a persons way to get their life back together. A steady home and work-life means less chances for recidivism and that should be our goal.

Thank you.

---

**Comment ID**

DOJ-OAG-2020-0003-0447

---

 **Tracking Number**

1k4-9jaj-2gpr

---

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 2, 2020

AR-00001635



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001636

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

As a wife of 24 yrs to an offender, I do not support the registry Nor the AWA. My husband has been on registry for 28 yrs. Never committed any other offense of any kind. And as a highly educated individual that he is, many know of his background, but still find him as a changed person for the better and accepted by many dispite being on registry. It is humiliating to say the least to have police show up on thanksgiving day and Christmas day for a registry check, knowing that many family members are present. HOW INCREDIBLY RUDE, your hurting children and familys, not protecting them with these tactics. Who's going to keep paying and footing the bill for keeping offenders for life on registry? I'm not, and sure that many feel the same way. There needs to be assessments done on offenders to prove they are a risk and have to remain on a registry. My husband had a minor sentence, yet climbed the ranks of the tiers from tier one to tier three of a period of years with no assessment to justify the move or reasoning. My husband had a heart attack and stroke, I highly highly doubt that in mid 60's he's being crippled now, that he's a risk that needs to register for life on tier three. Seriously?!? The States and federal government need to take a much closer look before they begin wasting tax dollars on offenders that don't belong on registry. I Highly oppose The AWA and registries until legitimate assessments are done on each individual on the registry.

**Comment ID**
DOJ-OAG-2020-0003-0448

 **Tracking Number**
kft-5v5g-sevn

**Comment Details**                          **Submitter Info**

**Received Date**

Oct 3, 2020



About    Bulk Data Download    Agencies    Learn

(/about)          (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001638

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

---

Comment

I should start of by saying that I am a daughter of an offender, and no not a victim. My father has been on registry since it first started
and though his sentence was very small, he has to register for life. It started out with just 15 yrs to register, then moved to 25, then to life every few yrs. This is wrong, and I highly oppose the registry without ways for them to come off.

Myself I am a nurse Practitioner and have seen first hand the effects of victims of the registry, thus being family members, children, teens, spouses, relatives and etc; and none of these actual victims of the offender. These are victims of harassment, bullying, targeting and humiliations, depression, anger at justice and even death associated with the registry. The registry dose not help people, it destroys lives. I have had two teens clients that committed suicide because of bullying and harassment in school due to a family member or relative on registry.

There are what 500,000 sex offenders on the registry, and there is 10 times that whom are family, kids, teens, young adults, and etc., which is directly affected by the registry. The registry is not helping those mentioned, it is destroying them and killing them.

There was a case down south where a couple targeted sex offenders off the registry the couple made their way into house citing car trouble. Then killed the offender, and killed other family members just because they were there. This fear lives in the 5 million (conservative number) of people associated or related to offender, such as the children, teens, and young adults of offender. This fear drives depression, and suicide among kids and teens. The registry is not helping or saving kids, it's hurting and destroying them.

The registry is costly and as a tax payer I'm fed up with paying tax payers dollars to keep offenders on registry for life. I believe in fairness, and the way the registry is set up is in no way fair. There should be individual assessments to determine risks, there should be limits to how long they remain on registry, not life time. For example, a 65 yr old stroke victim that is paralyze should not have to continue to register for life. Why? state and federal greed for money?
There are many offenders that should come off the registry, and yes, there are a few or handful that should stay on , I agree. But the majority including my father, spent nearly 28 yrs on it and never so much had a parking

AR-00001639

ticket all those yrs. A roll model citizen.

I beg the question of assessments and way off registry as the answer, not throw everyone on a life time death sentence by being on registry for life. The registry has affected me as well, and my own children are getting harassed and bullied because their grand father was an offender from many years ago. This is wrong, and this should not be happening to innocent children because someone uses the registry to bully another.

**Comment ID**

DOJ-OAG-2020-0003-0449

  **Tracking Number**

kft-7h0s-nq47

**Comment Details**                                    Submitter Info

**Received Date**

Oct 3, 2020



About   Bulk Data Download      Agencies      Learn

(/about)         (/bulkdownload)   (/agencies)   (/learn)

Reports      FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

After reading this proposed rule, I disagree with this rule to an extent. I am not in support of this rule because I believe this rule should differentiated from the different offenders. Someone who simply urinated in public, should not have this dark cloud following them for the rest of their lives. Putting them in the same category as people who have done truly disgusting things. For this rule to be affective their needs to be requirements for the offender, not just any offender. Someone with a lighter offence just should not face the same fate. This could potentially ruin lives, just think about this what if they were wrongly convicted? This must be kept in mind, not every time is someone rightfully convicted.

**Comment ID**
DOJ-OAG-2020-0003-0450

◎ **Tracking Number**
kfu-69kl-jaei

**Comment Details**                                          **Submitter Info**

**Received Date**
Oct 3, 2020

AR-00001641



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

The level of arbitrary, capricious, and anecdote-based requirements throughout the SORNA scheme is frightening and high.  Even the updated language and modifications proposed lack a scientific method, data-backed evidence approach to achieving the goal of promoting and fostering a safe, healthy, and productive society.  The only achievement of this updated scheme is the continued enablement and perpetuation of inefficient, ineffectual government bloat which encumbers tax revenue that should otherwise be utilized productively to reach the same goal with much greater efficiency.

For each SORNA requirement, I've taken an operations optimization analysis approach to assess the Value-add, The "why?" and The Method of the current proposal to create an alternative. This operations optimization analysis approach should be considered, if not implemented wholly, in developing the final regulatory policy.

SORNA: 72.1-72.3 (and related U.S.C.), Purpose and Applicability of SORNA

Purpose and Objective: To create a register of all persons who have been convicted of or pled to a state or federal "sex offense" as defined by statutes and codes.  The persons on this registry will be burdened by enumerated legal requirements enforced by criminal sanctions for a period of time to prevent future additional sex-offenses.

Why? (1):        Individuals who commit a sex-offense will continue to commit sex-offenses absent any mitigation.

Why? (2):        (Supposition) Individuals who possess the mindset to commit a sex offense have a proclivity for such patterns of behavior.

Why? (3):        A few individuals who had committed a prior sex offense went on to commit additional, worse sex-offenses and murder.

Why? (4):        There was nothing to mitigate the future risk these individuals posed.

Why? (5):        The majority of individuals who committed a sex-offense did not go on to commit future sex-offenses and/or murder.

Value-Add:          Increase Public safety by preventing future potential sex-
                    offenses.
Method:             100% of individuals who committed a sex-offense, both
                    state and federal, are registered as "sex-offenders and are
                    required to provide certain identifying information at
                    prescribed intervals by prescribed means for prescribed
                    lengths of time in each jurisdiction prescribed.
Variance:           High- Each jurisdiction has developed its own version of a
                    registry that suits its needs through local legislation based
                    upon varying methodologies that may or may not fall
                    within the specifications and boundaries as adjusted by
                    refreshing SORNA requirements.

Metrics
And Measurement:    The SMART office scrubs Federal SORNA requirements
                    against each jurisdiction's registry scheme to create a
                    compliance spreadsheet/score with ratings: "In
                    compliance", "In compliance with a slight deviation"
                     and "not in compliance".  Scores determine if and
                 in what amount federal funding is provided to the
                    jurisdiction to award compliance.
Analysis Disposition:    Needs Improvement- costly and sub-optimal.


Qualitative Analysis:

        In addition to the waste created by a scheme engineered for exceptions,
the constitutionally of SORNA at large is questionable.  The first constitutional
concern is made apparent in the language of SORNA.  SORNA generally directs the
Attorney General to ....."Interpret and implement" SORNA (USC 34 20912(b)).
Congress created SORNA and if there is vague or ambiguous language requiring
the Attorney General to "interpret" congressional intent, then SORNA itself
violates the vagueness doctrine.  As Justice Gorsuch reiterates, "In our
constitutional order, a vague law is no law at all."  (US v. Davis).  Furthermore,
interpreting the intent of congress is subjective due to the interpreter, so
absolute clarity is never possible.  This is amplified even more as jurisdictions
constantly try to adapt to inputs that could vary from one Attorney General to the

next.  Congressional intent cannot be written into existence by any on individual. The responsibility rests entirely upon congress itself.

The second constitutional concern arises from SORNA'S creation of a class of citizens, the "sex offenders", who face societal burdens that greatly impact the inalienable rights to life, liberty and the pursuit of happiness.  Arguably, this creates a cruel and unusual punishment as well.  Instead of narrowly tailoring the registration requirements for each individual based on actuarial evidence-based risk assessment, SORNA applies a baseless, massive generalization across a class of citizens; a constitutionally forbidden bill of attainder.

Waste in the form of unnecessary costs (tax revenue encumbrance) accumulates exponentially as resources are consumed in SORNA'S imposed requirements across 100% of the "sex-offender" class.   Why invest law enforcement resources in the monitoring, managing and enforcement of regulations across individuals who, based on actuarial evidence based risk assessments, do not require monitoring and management?  Instead of focusing these resources on the offenders who need careful management based on their risk assessment, the effectiveness of enforcement is diluted across the entire sex-offender class.  This, in turn, creates the false perception of a resource shortage resulting in more wasteful consumption of underutilized resources.

Various jurisdictions have had registry schemes in-place. Some jurisdictions continually modify their respective registry schemes to minimize administrative costs while improving public safety metrics.  Jurisdictions accomplish this by focusing their resources on only the help-needed areas and individuals; continuous improvement.  Efforts like these are hamstrung by the high-level mass generalizations of SORNA.  Because jurisdictions that improve their registry schemes likely find the regression imposed by SORNA to be cost prohibitive, they remain "non-compliant" and in some cases are penalized.  SORNA penalizes jurisdictions for fine-tuning, narrowly tailoring their registration schemes to individuals, thereby reinforcing the maintaining of a "sex-offender" class of citizens, returning to the constitutionally question.  Other jurisdictions will simply comply with SORNA'S requirements, chasing an ever-changing goal post to

acquire federal funding to, hopefully, cover the costs.  For these jurisdictions, the goal is not to foster public safety but is to capture funding.  While the need for funding can be attributed to many things, one thing that funding is not needed for is to manage an out of control sex-offender class.  Data shows that such a group does not exist.

The bias for government bloat, unproductive tax revenue use, constitutionally questions, compliance variation proliferation, and rewarding of public safety sub-optimizations are the results of current and proposed SORNA policy.  There are better alternatives.

The following alternatives are better proposals and should be taken into account.

## <u>Alternative 1-</u> SORNA as a Synthesis and Best Practice Sharing Vehicle

 SORNA is stripped, streamlined and simplified into the following policy statements:

(1) The Sex Offender Registration and Notification Act requires each jurisdiction to promote public safety through effective monitoring, management and enforcement of constitutional requirements assigned to an individual who has been convicted of a sex-offense.  The assigned requirements will be determined using actuarial, data-based, individual risk assessment developed and administered by credentialed subject-matter-expert professionals.

(2) The SMART office will work to synthesize proven best-practices among jurisdictions and assist in implementing best-practices to create parity between each jurisdiction while continually evaluating scientific methods and researching data provided by each jurisdiction to discover and pilot-test more cost effective and positive-outcome schemes that support constitutional, narrowly-tailored monitoring, management and enforcement of any requirements imposed upon an individual who was convinced of a sex-offense.

Benefits Over Existing SORNA
> 1) Preventative oriented instead of punitive reactionary;
>
> 2) Resources focused on continuous improvement instead of status-quo stagnation;
> 3) Eliminates variances and incentive for sub-optimizations caused by arbitrary, dynamic imposed federal requirements;
> 4) Eliminates constitutionality concerns;
> 5) Based on science and data instead of political and pop-culture anecdote;
> 6) Simplifies the overall purpose of SORNA.

**Alternative 2- Same as Alternative 1 but remove SMART office component**

Benefits/Detriment Over Alternative# 1
> 1) Eliminates overhead cost of the SMART office (Benefit).
> 2) May impede speed at which best-practices are evaluated and implemented amongst jurisdictions; this could be mitigated by requiring jurisdictions to hold roundtable socializations of means and methods as part of SORNA; Benefit or Detriment Unknown

SORNA 72.4-72.7 (and related USC), Where sex offenders must register, information required and frequency

Purpose and Objective: To provide a specific location where sex offenders must provide the required information (per jurisdiction registry scheme) that will serve as their sex-offender registration entry.  All registrants will know where they are required to report and register.

Why? (1):          Exact locations for registry entries must be defined.

Why? (2):          Registrants are responsible to appear in-person to register.

Why? (3):           There is no registrant portal that allows for remote online registry entry.

Why? (4):             In-person registration is more effective in assuring
                      public safety.

Why? (5):             A sex offender will witness, in–person, the number of
                      law enforcement personnel and resources surrounding
                      them during the registration process and will thereby
                      feel less tempted to sexually offend again.

Value-Add:            Ensures that registrants are aware of and know where
                      they must travel to register.

Method:               Registration requirement is triggered by conviction of a
                      sex offense that is broadcast to local registry and/or
                      probation/parole resources who then inform the new
                      registrant of location details.

Variance:             High-Conflicts between federal requirements and
                      jurisdiction registration requirements regarding the
                      number of locations a registrant must register in
                      person. Some jurisdictions are migrating to an on line
                      registration portal.

Metrics and
Measurements:         Same as above

Analysis Disposition:  Needs Improvement, sub-optimal

Qualitative Analysis

Other than an initial in-person registry entry in the residence jurisdiction, all
additional in-person requirements imposed by federal regulations provide only to
impose an undue burden on the registrant to become a road warrior to visit the
numerous registration locations to avoid criminal sanctions.  This poses and, more
accurately, punishes a registrant who has a job that requires travel between and
within jurisdictions.  The point here is that an employer who is burdened by an
employee who must take time off from his work to register will seek to stop such

current and/or future employments.   This constitutes forced under-employment, which is unconstitutional.

The multiple, in-person, requirement is based upon the anecdotal fallacy that by seeing numerous law enforcement agents throughout the registration process, a convicted sex-offender will be magically spooked enough to resist the temptation to reoffend.  This, again, is based on yet another anecdotal fallacy that all sex-offenders will definitely attempt to reoffend.  Real-world data refutes this. The DOJ's own assessment system (Pattern) used for all federal prisons refutes this. This SORNA requirement is based on fantasy.

Bias for sub-optimization and cost inefficiency is favored.  There is no incentive for jurisdictions to streamline their own registration schemes, and so costs to maintain legacy processes remain.  The jurisdictions that do attempt to leverage technology and promote cost effectiveness risk becoming "not in compliance" and forfeiting federal funding.  Competition for this federal funding forces the pursuit of least-worst processes.  There is no opportunity to create an end-to-end, seamless registration process that propagates instantaneously across multiple jurisdictions of concern.

The "escape routes" this multiple touch-point SORNA process seeks to eliminate still exists. No matter how many in-person, multiple jurisdiction registration visits are required, the ability to "skip out" remains. In fact, it is as if this requirement exists solely for the purpose of increasing the likelihood of a "failure to register" flag that provides another opportunity for incarceration of a registrant.  Revisiting the example of a registrant that travels for work; for each business stop across multiple jurisdictions, the registrant must go, in-person, to the registration location of each jurisdiction for initial registration, abiding by that location's business hours and queue time.  If this falls outside of the realm of possibility due to customer site visits, meetings and related business transactions the registrant is responsible for in order to make a living, too bad.  Yet, the requirements of SORNA are engineered for the exceptions; just not those exceptions that would assist a registrant who is trying to earn a living.  Here again,

a class of citizens is created subject to undue hardships and underemployment, all unconstitutional.

These undue burdens again violate liberty interest of the majority by applying characteristics attributed to only an infinitesimal minority across 100% of a created class of individuals.  This additional ingredient to SORNA is, again, based on anecdote and opinion with no scientific or date-backed evidence.  In fact, real data will refute the baseless foundation of this requirement.

**Alternative 1: Utilize a Registry Portal that Satisfies Multi-Jurisdiction Registry Entry and Notification**

1) Each Jurisdiction shall develop, maintain and revise an online/remote registration entry and update portal to allow registrants to populate information as required as defined by each respective jurisdiction's registry scheme that will populate any concerned jurisdiction's scheme instantaneously. Upon initial, in-person, registration at the jurisdiction of residence, the registration office will supply credentials to the registrant to access the portal.  Each jurisdiction shall maintain a secure, encrypted registrant access profile database to store these credentials.

2) The SMART office will work with data transaction architects to assign a code to all fields of each jurisdiction's scheme; common fields will share the same code. These fields will be shared with any non-residence jurisdiction instantaneously when and as required by residence jurisdiction registry scheme. Any vacant unpopulated field in the receiving, non-residence jurisdiction, will be flagged as "information not collected and required by residence jurisdiction," or similar messaging.

3) The smart office will work with data analytics engineers to measure the effect and validity of each field's impact on public safety within and without each jurisdiction and will publish results and make recommendations as to the highest positive correlations that should be in use, and those with low, negative or random correlations to be discontinued and removed from each jurisdiction's registry scheme.  The goal of this data analysis is to minimize the amount of data

fields (registrant information) to the lowest as possible that produces the highest validity.

Benefits over
Existing SORNA:

1) Increases cost effectiveness of information sharing, monitoring, managing and enforcing requirements by leveraging technology instead of manual in-person redundancies.
2) Promotes data-driven and supported public safety metrics instead of anecdotal metric creation.
3) Eliminates variance imposed by additional federal requirements and minimizes variance between jurisdictions instead of adding to capricious and arbitrary information gathering.
4) Ensures requirements of each jurisdiction concerned are provided by the registrant with data field dispositions instead of relying on multiple, in-person redundancies requiring registration office resources to be versed and knowledgeable in every other jurisdiction's schemes.
5) Reduces the amount of information registration schemes collect to a scientifically correlated set of metrics instead of allowing jurisdictions to bloat requirements based on politically motivated, emotional, snap-judgements.
6) Promotes preventative action based on science and data instead of enlarging policy to address the actions of very few individuals.
7) Promotes societal integration of registrants instead of perpetuating a patchwork of criminally punitive arbitrary requirements.

**Alternative 2: Registry Council**

Same as Alternative 1 but remove SMART office component.   In its place add the following:

1) Each jurisdiction will work to create a registry council comprised of members from registration authorities, other law enforcement (parole/probation), an elected member from the jurisdiction's

congressional body, a representative class of the registrant body and their family members.

2) The registry council will partner with a third party data analytics provider to measure and quantify the impact of each piece of information required by their respective jurisdiction's registry scheme and will work to minimize the amount of constitutionally allowable data points that maximizes public safety metrics  through correlation.  Each jurisdiction's registry council will partner regularly with every other jurisdiction's registry council to standardize the required data collection  profile and will partner with  a third party data analytic and exchange provider to implement the standardized data profile throughout each jurisdiction.

Benefits/Detriment Over Alternative 1

1) Eliminates overhead cost of SMART office. (benefit)
2) Fosters empowerment of jurisdictions' management of findings/issues unique to respective jurisdiction.
3) May increase inter-jurisdiction registration requirements knowledge for registrants.

SMART office Re-Engineering

In its current state, the SMART office consists of only law enforcement agents and is thereby deficient in the ability to interpret, analyze and modify data. Further, it has no interest nor perspective regarding the impact of various registration schemes on actual public safety metrics and the constitutionality of any imposed registry requirements.  The SMART office is currently a punishment driven entity based on the fallacy that every registrant will certainly reoffend unless massive deterrents are in place.  Real-world data contradicts this presumption.  The Smart office must be evolved and transformed into a cross-functional cooperative team with the goals of maximizing public safety and maximizing a registrant's re-integration into society.   Unless this occurs, resources (tax allocations, law enforcement agents and judicial processing) will continue to be wasted with little or no productive output.  A glaring fact that proves change is needed is that each year, in every jurisdiction, there are numerous suits filed, for a litany of reasons. All are challenging various aspects of various registration schemes.  The SMART office's greatest deficiency is this lack of the voice from individuals, their friends

and family impacted by the requirements created by agents who are so far
removed from the real-world implications.

Transforming the SMART office into a registry council begins with the body
of the council itself.  Instead of a stagnant, one sided bureaucracy, the new
registry council will be comprised of members from congress, law enforcement,
third party data analytics organizations, psychology and therapist professionals,
victim advocates and representative class ( men, women, all races, etc.) of
registrants along with their families, and registry activist/advocate organizations.
This council will data-mine, discuss, develop and deploy constitutional,
scientifically correlated requirements that are proven to produce positive
outcomes in public safety, rehabilitation, and re-integration for all registrants,
instead of laying a minefield of criminally sanctionable, highly varied, arbitrary
and capricious requirements focused on continuous punishment.

AR-00001654

Sex offender registration laws are primarily intended to limit certain rights that are granted to non-offenders, and to impose obligations only on sex offenders.  The purpose of limiting the rights of and imposing obligations on sex offenders is primarily to protect the safety of other persons.  Unfortunately sex offender's rights and obligations have been unnecessarily impacted adversely by registration laws enacted out of emotion and fear or to help political candidates, so they think, win their elections.

Sex offender registration laws adversely impact the lives of many persons they are intended to protect, including the lives of an offender's family members. There are books filed with examples evidencing adverse consequences which the current maze of sex offender registration laws inflict on public safety officials, the use of public funds, law enforcement resources and of course the sex offenders. That information has been printed and disseminated for public review so many times by others. I will not reprint that information here. Sex offender laws are also very expensive to administer, much more so than the post incarceration administrative expense attributable to offenders of other laws.   The point here is that sex offender registration laws impact the lives of all Americans, are extremely expensive and are punitive. Therefore, it is critically important for such laws to be drafted after taking into account applicable scientific data-backed recidivism rate information and inputs from law enforcement officials, registrants and their families, public safety officials, evangelicals and authorities with public budgeting concerns.

The current overlapping of federal post incarceration monitoring requirements for sex offenders and state, county and city sex offender registration laws must be eliminated.  These overlapping laws have been developed out of fear that the recidivism rate of offenders is frightening and high. The registry laws have created a class of second class of citizens, the "sex offenders".  Sex offender's inalienable rights to life, liberty and the pursuit of happiness are burdened beyond the offender's probability of compliance. Scientific data-backed evidence will not support a need for such fear.  In fact, that data reveals that the recidivism rate of sex offenders is lower than the recidivism rate of any other type of crime, except murder.

SEX OFFENDER REGISTRATION *CORRECIONS*

INDIVIDUAL RISK ASSESSMENT VS ONE SHOE FITS ALL FEET

First Issue

     Sex-offender registration laws are not stimulated by scientific-based data. Their ever increasing encroachment into activities required to live day to day are instead being driven primarily by a mistaken belief and fear that the recidivism rate of sex offenders is frightening and high.  Numerous scientific studies have generated evidence which refutes that claim. The data evidences that the recidivism rate of sex offenders is lower than all other types of offensives, except murder. In spite of that evidence, all who have been sentenced under any sex offender law and who live in the same state are subjected to identical restrictions under their state's registration laws.  In other words, one shoe fits all feet.  If a person caught in a traffic jam caused by a blizzard that leaves his car to run behind the nearest build and relieve himself, the same as the offender who has sodomized a five year old child.  I don't think so! The length of time these two offenders are required to remain on the registry might differ but other conditions which both offenders must satisfy are the same if they live within the same state. This is not right and SORNA does nothing to correct the one shoe fits all feet concept of justice. The one shoe fits all feet concept is also present in the First Step Act.  It is used to make the decision that all inmates incarcerated for violating any of the sex offenses defined in 18 U.S.C. Section 2252 are ineligible to receive time credits under that act. The offenses described in Section 2252 vary dramatically.  In paragraph four a sex offender is a person who views or possesses a picture of a child involved in a sex act.  Viewing or possession of such pictures requires the offender to be placed on the sex offender registry.  Paragraphs 1 through 3 describe persons who produce child pornography, distribute it in interstate commerce and/or sell it for profit. The harm to society from commercial child pornography activity is very different from the harm resulting from looking at a picture on a computer. Yet the First Step Act treats offenses described in paragraphs 1 through 4 all the same.

First Correction

A sex offender' restrictive conditions while on the sex offender registry
should be subject to a narrowly tailored actuarial data-based individual risk
assessment developed and administered by credentialed subject matter
professionals and take into account the nature of the crime.  The individual risk
assessment approach will reduce the waste of law enforcement resources by
reducing the reporting requirements for minimum and/or low risk sex offenders,
improves public safety as more law enforcement resources are released from low
risk offenders and become available to deal with higher risk offenders who need
more help. The concomitant effect of these efficiencies is to lower the costs of
monitoring offenders on the sex offender registry while improving public safety.
Otherwise, law enforcement will continue to overburden itself, consume tax
dollars for which there is little or no public safety benefit and burden offenders
with needless reporting requirements which may cause the offender to become
unemployable.  That costs taxpayers additional tax dollars.  Individual risk
assessment will be a win, win, win correction, only if authorities will use it.

THE LEGISLATIVE MAZE

Second Issue

For long periods of time after a sex offender sentenced in federal court has
completed his term of incarceration, an offender is under supervised release
administered by an assigned federal probation officer.   If the offender decides to
live in a state that has conformed to the Adam Walsh Act ("the Act") then that
state has established a sex offender registry and the offender's name, address,
date of birth, place of employment and picture is posted on the internet.  As a
practical matter, most states adopting the Act have adopted additional
requirements with which the offender must comply. These state requirements
cover almost every aspect of everyday life.  The requirements  include, but are
not limited to, where  an offender  can live, can work, can be educated, whether
or not they are allowed to go into a park, school or library, when and where to
report for drug tests even when there has never been an incidence of substance
abuse in the offender's past. The laws controlling offender's registry requirements
vary greatly from state to state.  Many political sub-divisions (counties, cities,
townships etc.) within each state also have regulations with which offenders must

remain compliant or go back into prison.  The regulations of one jurisdiction may conflict with the regulations of another putting a registrant in a situation where compliance is impossible.  This maze of regulations is vague, conflicting and places the registrant in an impossible predicament. SORNA does nothing to resolve this issue.

The federal court system should rule that the maze of regulations is unconstitutional for any one of several reasons.  The maze of regulations is vague. The regulations constitute cruel and unusual punishment. Constitutional questions of double jeopardy arise when an offender is sent back to prison because the offender failed to comply with the laws of the offender's state, county or city of residence.

Second Correction

Every jurisdiction with sex offender registration concerns should work with all other jurisdictions with sex offender concerns to establish a council.   The objective of this council would be to establish and maintain sex offender registration requirements and monitoring procedures that are uniform in all participating jurisdictions.  Along with representatives from legislative bodies of the participating jurisdictions, council members would include representatives from all of the groups listed in paragraph two of page one.  Decisions of the council should be based on scientifically measured recidivism rates and very diversified compassionate humanitarian interest which will be brought into the council by the diversity of groups comprising its membership.

The current maze of confusing and increasingly harsh registration obligations required to keep registrants from returning to prison has evolved, and still is evolving, from fear, politics and the unsupported ravings of someone without research expertise who made his living selling such counseling programs to prisons by touting that untreated sex offenders recidivism was as high as 80%. This salesman's unsupported ravings provided the fodder to support Justice Kennedy's language "frightening and high".

Current sex offender laws define a person for the rest of his/her life by a single instant in their life that was filled with the worst act ever done in their life.  That makes no sense!  These laws need a complete overhaul, not added onto as proposed by Attorney General Bill Barr.

AR-00001659

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

Comment

After reading this proposed rule, I disagree with this rule to an extent. I am not in support of this rule because I believe this rule should differentiated from the different offenders. Someone who simply urinated in public, should not have this dark cloud following them for the rest of their lives. Putting them in the same category as people who have done truly disgusting things. For this rule to be affective their needs to be requirements for the offender, not just any offender. Someone with a lighter offence just should not face the same fate. This could potentially ruin lives, just think about this what if they were wrongly convicted? This must be kept in mind, not every time is someone rightfully convicted.

**Comment ID**
DOJ-OAG-2020-0003-0453

◎ **Tracking Number**
kfu-dz2x-tb97

**Comment Details**                                          **Submitter Info**

**Received Date**
Oct 3, 2020

AR-00001660



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

---

Comment

No action should be taken on this proposed change until the experts in the field for treatment of sexual abusers are consulted and their recommendations entered into the record. This paper by the Association for the Treatment of Sexual Abusers (ATSA), published in September 2020, provides specific recommendations for evidence-based reform of SORNA. I request that it be entered into the record relating to the proposed rule change. The original document is found at:

https://www.atsa.com/policy-papers/adultsorn

Thank you.

**Comment ID**
DOJ-OAG-2020-0003-0454

 **Tracking Number**
1k4-9jbr-j08j

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**
Oct 4, 2020

AR-00001662



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001663

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

Comment

This regulation will allow safety and proper justice for the victims. This will also make it clear and cause no confusion to what the sex offender has done. This will also make the process easier and clear. There should not be any loopholes or ways to avoid registration.

**Comment ID**

DOJ-OAG-2020-0003-0455

◎ **Tracking Number**

1k4-9jbx-skey

| **Comment Details** | **Submitter Info** |

**Received Date**

Oct 4, 2020



About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001665

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |   Share ▾ |

---

| Comment |

I would like to strongly discourage these new S.O.R.N.A. rules and regulations from being enacted.
Registration is nothing more than a feel good law that doesn't protect anyone or make anyone any safer.
But instead makes life almost impossible for registrants to live a normal safe life, find housing or employment.
which outright takes away the abilities of registrants to not only support themselves but also their families.
It's not right that even after years and decades after completing sentences for many, that the Department of Justice wants to make life even harder on registrants than it already is, I can assure you that it is seriously way bad already.
Not to mention that these new rules and regulations would add a serious new financial burden upon the states to have to deal with this. Thank You.

| **Comment ID**
DOJ-OAG-2020-0003-0456 |

| **Tracking Number**
1k4-9jby-fcc1 |

| **Comment Details** | **Submitter Info** |

**Received Date**

Oct 4, 2020

AR-00001666



About (/about)  Bulk Data Download (/bulkdownload)  Agencies (/agencies)  Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)  FAQ (/faq)

Privacy & Security Notice (/privacy-notice)  |  User Notice (/user-notice)  |
Accessibility Statement (/accessibility)  |  Developers (https://open.gsa.gov/api/regulationsgov/)  |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)  Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)    Share ▾

---

Comment

Though, I understand some concerns regarding the less severe sex-offenses, such as indecent exposure and how it affects them equally to the much higher sex offenders. I still support the contents of this regulation. Sexually related offenses and human trafficking is increasing rapidly, there is a need for tighter restraints against offenders. There may not be a database for non-sexual offenders but sex-offender almost always utilize other non-sexual offenses along with their crime/s.
-kpar

**Comment ID**
DOJ-OAG-2020-0003-0457

 **Tracking Number**
kfv-ybnu-v54y

**Comment Details** | **Submitter Info**

**Received Date**
Oct 4, 2020



*Your Voice in Federal Decision Making*

About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001669

The Sex Offense Registry is counterproductive and ineffective.  It does not make society safer because it increases unemployment and homelessness among registered people.  And, associated residency restrictions prevent registered persons from living with family where financial and emotional support are available.  According to Levenson, J. & Tewksbury, R.*, Collateral Damage:  Family Members of Registered Sex Offenders,* families reported employment problems and financial hardships as the most pressing issues.  And residency restriction laws led to housing disruption.  Family members reported threats and harassment by neighbors.  And children of RSOs experienced stigmatization and differential treatment by teachers and classmates.

According to the SORNA system, sex offenders are classified into three tiers based on the nature and seriousness of their sex offenses and their histories of recidivism.  This statement is not always true because some offenders are placed into a more stringent tier only due to relocation to a different state.  For example, in New Jersey a young man was convicted in late 2006, and classified as Tier 1, with a lifetime registration requirement, and the right to apply for waiver of registration requirements if he didn't reoffend after 15 years.  However, after returning home to Ohio in August of 2008 he was reclassified as Tier II, and subsequent to that, as Sexual Predator.  These changes were imposed without any new offense being committed.  In response to letters of inquiry to the Ohio Attorney General and County Sheriff, the registered person received a reply from the county sheriff.  It said the only classification which requires lifetime reporting in Ohio is sexual predator, therefore his classification of sexual predator is appropriate.  The Attorney General never replied to the young man's inquiry.

It makes no sense that a 22 year old who had a consensual sexual encounter with a 15 year old would be classified as a sexual predator for life!  It represents a total denial of the fact that young people can learn from their mistakes, change their lives, and be rehabilitated.  This young man's debt to society was paid when he was classified as Tier 1 sex offender and required to register.   The sex offense registry has become a draconian system with no regard for the seriousness of sex offenses or the history of recidivism.  It fails to live up to it's stated purpose with regard to classification of people, and does not make society safer.  It destroys the lives of people who might otherwise reach their full potential and contribute meaningfully to society.  The proposed regulations to SORNA will only make the dysfunctional system worse.

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |   Share ⌄ |

---

Comment

I am a registered sex offender, convicted in 2009 for traveling from US to Canada with nude pictures of minors (teens) on my hard drive. I have served over 4.5 years in an FCI (low) and completed probation successfully in 2020. I am extremely concerned about the overreaching consequences of the proposed changes. I am retired and wish to resume a full life, having served my time and completed a SO Treatment program. But I have found this nearly impossible, as obstacles are constantly thrown my way. Travel is restricted to most countries outside of the EU. I have been harassed in my own neighborhood by strangers who only know me from seeing my name and address on the SO registry.
Studies have shown that this registry, while it is intended to serve the public, has only caused more problems than it has solved. It endangers the lives of low offenders like me, who did not commit and hands-on crime, and who pose no risk to their neighbors whatsoever. Furthermore, it is a fact that of all crimes, SOs have one of the lowest recidivism rates. Instead of adding further punishment to low level offenders, it behooves the government to provide us with a path towards getting of the lifetime registry, especially when we are in compliance and have committed no further sex crimes.
I hope you will consider this when voting on this legislation.

| **Comment ID** |
| DOJ-OAG-2020-0003-0459 |

|  **Tracking Number** |
| 1k4-9jc3-v9ja |

| **Comment Details** | **Submitter Info** |

**Received Date**

Oct 4, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |  Share ▾ |

Comment

I made a mistake, now I am a registered sex offender. And although I'm not a monster I am perceived as one due to this registry. I stepped off the narrow path into the wide one the world travels, fornication regardless of the age it's not something that our heavenly Father wants us to participate in. I am not condoning sexual behavior with underage people don't get the wrong impression here. I've stepped back on my narrow path I repented, and I am following my heavenly Father's ways once again. And at some point we will all stand before Him. we will all be judged, and we will be judged according to how we judged others on this Earth. For those people who keep punishing for something that was done in the past to people who no longer behaving those manners, remember you two will be judged just as harshly for whatever you've done during your life on this Earth. And in our heavenly Father's eyes a lie is just as bad as murdering someone. So when you keep this label on me when I am not this person any longer, you're lying about me, and probably many others. You may find this is not relevant at this time, but one day you will stand before our heavenly Father as will all of us.

**Comment ID**

DOJ-OAG-2020-0003-0460

 **Tracking Number**

kfw-hj90-soxu

**Comment Details**                                           **Submitter Info**

**Received Date**

Oct 5, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

| View More Comments  (724)  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  (724)  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

| Comment |

The sex offender registration fundamentally is very hurtful and cruel. No other offenses are there that can be so publicly denigrating. It starts with the language of the offense. In Indiana IC 35 42 4 2 States by force or imminent threat of force. When no Force has been utilized in an alleged crime, they go by eminent threat of force. There is no fighting eminent threat of force. Eminent threat of force is a perceived threat. A perceived Threat by the alleged victim. A perceived threat doesn't necessarily mean there was an actual threat. Therefore how do you fight a perceived threat when there was no evidence of an actual threat. Life on registration is nothing short of a life sentence where are the court throws an alleged offender into a life of ridicule, despair, hopelessness, depression and embarrassment. Likewise when someone is placed on the registration are immediately labeled as a child molester by the General Public. This form of systemic prejudice can lead to a life that is next to impossible to live. Most job ads identify a requirement that someone be able to pass a background check. The wording of the requirement on job postings state "must be able to pass a background check". Not knowing that companies exact policy based on background checks, you have to deduce that you would not qualify. There for every single job that has that on the posting can be eliminated from your search. Likewise when you are subjected to a background check, the background check reporting companies are far from being standardized or impartial. The reporting companies for background checks put information in Black and suspect information in red. Many times these reporting agencies do not include dates for the information they so Radley place in red. Therefore the job seeker is unfairly portrayed no matter how many years they have had compliant registration.

     The sex offender registration also lead to some mental health issues in an otherwise mentally healthy individual; after years of subjection and ridicule as well as a legal form of defamation of character, the "offender" as they are dubbed for life, has to just "suck it up" and live life without the privilege of being treated fairly and impartially treated in the workplace.

After 25 years on the registration the damage is done. The right of my dreams and aspirations of having a career have systematically been eliminated. With the Courts making decisions based on opinions and gender pressure, people like myself, who had one incident in life, lead to being labeled as an offender has to sit back and anything that the courts decide like from a dictator in his office. Not accounting for the so-called offenders original sentence. How many times has the credibility and necessity of the sex offender registration come into question?

Has anything truly changed for the better? I say no. Have things become out of control in the sense that offenders no longer have any say-so or representation? I say yes. Organizations that have attempted to be on the side of the offenders have only made token changes over the course of the 25 years I have been on the registration. While living in Indiana I got out of prison and was labeled a sex offender. Over the course of a few years that title was replaced with sexually violent predator. Without ever being in violation of the registration. I contacted the ACLU many years ago, and have been waiting for things to change for many years. Thus far I haven't seen any fruit from their efforts.

Do you want to know why there are only a few comments here on this forum? The reason is, nobody is talking about it in the public eye. The news agencies don't want to talk about it because it'll put them in a poor light. Therefore nobody really knows about it in the general scheme of things. Only a few of us who have the vision for change.

I have not heard anything on any news agency mainstream or otherwise about the SORNA proposal. The only reason why I have heard about it is the ACLU has informed me from time to time what the courts were doing.

In closing, it is my opinion based on the fact that it has been determined the sex offender registration has been a violation of civil rights; that the course maybe in a quandary about what to do about their past decisions. I am sure many others who have been subjected to the registration would follow suit. I feel that if the courts would find the sex offender registration a violation of a person civil rights and eliminate it because of that finding, the states that have it enacted the Sex Offender Registration , would be liable for damages. It is because of this belief that I feel that it is constantly slow-walked through Court proceedings. Not because of wanting to get any facts or make carefully informed decisions, but to cover the state's proverbial butt.

It is my hope that justice prevails and the registration eliminated.

---

**Comment ID**

DOJ-OAG-2020-0003-0461

---

 **Tracking Number**

1k4-9jcd-84hh

---

**Comment Details**                                    Submitter Info

**Received Date**

Oct 5, 2020



About    Bulk Data Download    Agencies    Learn
(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001677

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

**PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Perhaps early in the genesis of the registry it was truly intended to be a tool for the safety of the public, however now it has morphed into a behemoth of epic proportions with an appetite for destruction of the lives of registrants and subsequently their families and other loved ones. Plain and simple, the registry is punitive and does not provide any benefit to the public. It is not possible for anyone to truly be monitored and kept tabs on 24/7 so how does the knowledge of someone's address, vehicle and tag number, and place of employment make anyone safer especially when you consider that the recidivism rate amongst this group is lowest when compared to any other crime? Those who commit truly heinous violent acts are often sent to prison for life or what equates to a life sentence and will never be back in society so it is the lower level offender who often suffers the most. Since the overwhelming majority of new sex offences are not committed by those on the registry, it is time to move beyond fear mongering and hiding behind lies that these men and women impose a huge threat to the safety of the public. Ultimately these laws will prove to be unsustainable as the number of registrants reach a million plus, the costs becoming overwhelming and the legal ramifications so complex, few even know the true extent of the legislation.

Attachments  1

📄  The Digest Volume XIII Issue 5

⬇  Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0462/attachment_1.pdf)

**Comment ID**

AR-00001678

DOJ-OAG-2020-0003-0462

 **Tracking Number**

kfw-jths-msm4

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 5, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

**From:** **NARSOL** communications@narsol.org
**Subject:** The Digest Volume XIII, Issue 5
**Date:** October 1, 2020 at 9:06 AM
**To:** Mrs. Donna Lombardi  bayerdbl60@gmail.com








## The push to federalize registration

Few things have had the impact in the community of registrants and advocates as Attorney General Barr's proposals to federalize registration. But what does this mean? Get one prespective here.



## Halloween pushback

NARSOL has just sent out a press release in the form of an open letter to media across the nation calling for an end to the publication of "red-dot" maps or other publications at Halloween that lead the public to believe that persons on the registry are a special threat to children during trick-or-treating. Read about it here. View the press release here.







### OCT./NOV. 2020

### VOLUME XIII, ISSUE 5

## In this issue:

**Page 1**

Federalizing registration

Halloween is happening

**Page 2**

When registration = a death sentence

**Page 4**

Legal corner

**Page 6**

Victory in Tennessee

**Page 8**

NPR, please tell the truth

**Page 9**

*USA Today* favors restrictions

Lifetime GPS challenged in WI

**Page 10**



## Except . . .

How often do we read about a job opportunity or a criminal justice reform iniiative or a shelter for the homeless or in an emergency situation only to read the words "except for sex offenders." Read this piece about this cruel exclusionary practice here.

Except . . .

### Page 11

Rethinking issue of online pornography

### Page 12

In our states

*NARSOL opposes dehumanizing registries and works to eliminate discrimination, banishment, and vigilantism against persons accused or convicted of sexual offenses through the use of impact litigation, public education, legislative advocacy, and media outreach in order to reintegrate and reconcile affected individuals and restore their constitutional rights.*

Copyright © 2020 NARSOL All rights reserved.

**Follow us on Twitter** | **Follow us on Facebook**

You have previously subscribed to receive emails from NARSOL.

Click here to unsubscribe

**NARSOL | Vivante Espero**
PO Box 25423
Raleigh, NC 27611
United States

**Website:** https://narsol.org
**E-Mail:** contact@narsol.org
**Phone: (888) 997-7765**

AR-00001681

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

| View More Comments | 724 | (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments | 724 | (/docket/DOJ-OAG-2020-0003/comments) |

Share ⌄

---

Comment

I was entrapped by an undercover sting, a detective posing as a minor. There was no "real" person. They called my phone, sent emails, sent IMs until I agreed to meet, they typed up obscene messages and claimed I typed them. I did not. I was never in trouble with the law ever. This incident has ruined me forever. The shame and disgrace I have to live with every day is unbearable. I can't find a better job or move somewhere else. I can't support my children in their schooling. I know there are violent offenders out there, paid the price and debt to society. Why does SORNA feel the need to make it even more difficult for a registrant to survive with more and more harsh and strict requirements? Are you actually protecting society? Studies show the registry does nothing to protect the community but causes unrest and disruptiveness.
I have been threatened in the streets, I fear for my life every day that someone will recognize me and will want to impose harm. My family who is innocent are in danger and I fear for them. Every car that drives by slowly I wonder if they are looking for me.
I have never hurt any person or animal. I am a law-abiding citizen that just wants his life back. Everyone makes mistakes, some are forgiven but the registrants are not and every year it gets harder every year. Please consider the effects of the laws you are trying to impose.
SORNA is already incredibly onerous, adding additional requirement and restrictions (such as the disclosure of professional licenses) will place
individuals who have been lucky enough to secure employment or businesses in jeopardy.
Making it expressly retroactive will take people who have long ago completed their state-ordered
sanction and effectively put them back on probation (the obligations under registration are
tantamount to probation.)

| **Comment ID** |
| DOJ-OAG-2020-0003-0463 |

**Tracking Number**

kfw-kczo-wuix

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 5, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

Comment

Perhaps early in the genesis of the registry it was truly intended to be a tool for the safety of the public, however now it has morphed into a behemoth of epic proportions with an appetite for destruction of the lives of registrants and subsequently their families and other loved ones. Plain and simple, the registry is punitive and does not provide any benefit to the public. It is not possible for anyone to truly be monitored and kept tabs on 24/7 so how does the knowledge of someone's address, vehicle and tag number, and place of employment make anyone safer especially when you consider that the recidivism rate amongst this group is lowest when compared to any other crime? Those who commit truly heinous violent acts are often sent to prison for life or what equates to a life sentence and will never be back in society so it is the lower level offender who often suffers the most. Since the overwhelming majority of new sex offences are not committed by those on the registry, it is time to move beyond fear mongering and hiding behind lies that these men and women impose a huge threat to the safety of the public. Ultimately these laws will prove to be unsustainable as the number of registrants reach a million plus, the costs becoming overwhelming and the legal ramifications so complex, few even know the true extent of the legislation.

| Attachments  1 |
|---|

| 📄  The Digest Volume XIII Issue 5 |
|---|
| ⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0462/attachment_1.pdf) |

**Comment ID**

DOJ-OAG-2020-0003-0462

 **Tracking Number**

kfw-jths-msm4

**Comment Details**                                    **Submitter Info**

**Received Date**

Oct 5, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download      Agencies      Learn

(/about)          (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 5, 2020

| View More Comments | 724 | (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments | 724 | (/docket/DOJ-OAG-2020-0003/comments) |

Share ▾

Comment

[***DOJ DOCKET NOTE: PERSONAL IDENTIFYING INFORMATION OF THE COMMENTER REDACTED AT THE COMMENTER'S REQUEST***]RETURN ADDRESS REDACTED October 4, 2020 Regulations Docket Clerk Office of Legal Policy U.S. Department of Justice 950 Pennsylvania Avenue NW Room 4234 Washington, DC 20530 Subject: Comments on Rulemaking Registration Requirements Under the Sex Offender Registration and Notification Act (SORNA), 28 CFR Part 72 Reference: Docket No. OAG 157 To Whom it May Concern, The following recommendation is provided regarding the subject proposed rule as published in the Federal Register/Vol.85, N0. 157/Thursday, August 13, 2020/Proposed Rules, Page 49332. Comment: Part 72.5, How long sex offenders must register. Modify Part 72.5 to add the following subpart (d) Pardons. Whenever a registrant receives a pardon for a sex offense which resulted in the requirement that the registrant be placed on the sex offender registry, the registrant shall be removed from the sex offender registry immediately (within 3 days) and shall be relieved of the requirement to keep the registration current. In addition, the offense shall be expunged from all court and law enforcement records. Justification for Comment: Granting of a pardon for a sex offense is evidence that the registrant is not considered sexually dangerous. Otherwise, a pardon would be inappropriate, and should not, and would not, be granted. Once determined that a registrant is not considered sexually dangerous through the pardon process, the registrant should be automatically removed from the sex offender registry. There is little, if any, value in seeking, or in granting a pardon, if the registrant is not relieved of the registration requirement and the record is not expunged. If Congress intended for the SORNA to prevent a pardon from relieving a registrant from the registration requirement and/or to prevent expungement of the offense from the record, they should clarify the intent with additional legislation. This is a critical matter and should not be left to the rule making process. Name of commenter redacted

| Comment ID |
| DOJ-OAG-2020-0003-0465 |

**Tracking Number**

1k4-9jbr-i528

**Comment Details**

**Received Date**

Oct 4, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download    Agencies    Learn

(/about)    (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001687

DAMIEN BENNETT
#46919-044
FCI-LOW COMPLEX
P.O. BOX 9000
FORREST CITY, AR 72336

MEMPHIS TN 380

14 SEP 2020 PM 1 L

X-RAYED
SEP 21 2020
DOJ MAILROOM

REGULATIONS DOCKET CLERK
OFFICE OF LEGAL POLICY
U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVE, ROOM 4234
WASHINGTON, DC 20530

INSPECTED 28

INSPECTED 21

20530-

DOCKET NO. OAG

AR-00001688

Sept 12th 2020

To whom it may concern,

To update SORNA being more intrusive in a citizen's life seems absurd. Honestly, SORNA or any state registry for that matter has no place in America. As natural born citizens, we are endowed with unalienable rights, among them are life, liberty, and the pursuit of happiness.

When someone violate the law by committing a crime, they're dealt with to the fullest extent of the law and punished. After ~~finishing~~ SERVING their sentence, it's reasonable to assume their rights will be restored. However, those with a sex offense may never have them restored. SORNA plays a huge role as it complicates and trivialize criminal justice, and rehabilitation. Its intention for improving public safety is seen as good but the rights and safety of those who register is neglected. What's worse is SORNA's the base template for states to follow, in which they can impose stricter rules in their constitution without violating 8th and/or 14th amendment when they are clearly doing so.

I'm opposed to these changes, this caste system has no place anywhere as it can barely justify its place in public safety and criminal justice. It's a form of humiliation, a violation of human rights, and most importantly a detriment to those who is trying to reintegrate into society as productive and reformed citizens. Please reconsider before you make it harder to succeed in this country, the land of opportunity because registered citizen have not a single one.

Sincerely,
Damien Emmett

AR-00001689



IRISTENSEN, MD
AK  99901

REFERRED
MAIL REFERRAL UNIT

SEP 2 1 2020

READER #3

David J. Karp, Senior Counsel
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

20530-

AR-00001690

**Alan L. Christensen, MD**
PO Box 8215
Ketchikan, AK  99901

(270) 804-9365

David J. Karp, Senior Counsel
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

9.15.20

Re: **Docket No. OAG 157**
   **AG Order No. 4759-2020, Proposed Rule 2020-15804**

Dear David,

As senior counsel on this project, I wanted to be sure you had the opportunity to review and ponder my comments prior to the scheduled hearing.  If I could, I would have William Barr himself review them as well, but I know you are both overwhelmed with work and find that highly unlikely.  Nevertheless, please know I have thought a great deal about this subject and earnestly petition your conscientious review of my comments so they do not go unheard.

I would ask the Justice Department to put the proposed rule 2020-15804 on hold until they conscientiously look at the large body of wonderful scientific research and evidence AGAINST taking such actions.  The effects of this proposed rule would be cost exorbitant to enforce and devastating, not only for registrants, but their entire extended families!  More importantly, when you stretch limited resources over large, broad areas, they become less effective and easily distracted from the real hot spots of concern.

A large, massive imposed solution not only impairs capable and reformed individuals, but is incredibly expensive, time consuming, increasingly difficult to enforce, and distracts resources from more obvious and effective solutions.

Recently our family participated in a missing person search which ended with the tragic discovery of a murdered young woman, that we and others believe, could have been prevented had the police been able to immediately focus their resources on the likely perpetrator rather than interviewing dozens and dozens of low risk "offenders" who resided in the general area. In her case, timing was critical and despite important and valuable leads that were available, they were watered down and distracted by masses of individuals that each had to be excluded as potential perpetrators.

AR-00001691

Rather than imposing aggressive and enhanced restrictions and reporting requirements on
the ever-growing and undifferentiated list of hundreds of thousands of individuals, it would be
far wiser to direct those funds and resources to more productive and selective areas based
on valid risk stratification.  Research shows that the huge cost of both money and resources
to expand and manage the registry does very little to secure the public safety and ultimately
distracts from more effective strategies to precisely monitor and limit those select individuals
that represent true risk to society.

I propose the Justice Department impose national risk stratification requirements for all
states, and require registrants with minimal risks to be "down graded" or even cleaned from
the massive registry with restrictions reduced or removed, where reasonable, so they can
become productive and contributing members of society rather than a propagating drain on
the "system" and it's resources.

SORNA's stated objective is to "effectively track and locate sex offenders in the community,"
in order to "provide for the public safety."  This is sold on political persuasions that outwardly
seem progressive, but are unfortunately based on popular, generally unfounded, primeval
assumptions and attitudes.  Not a single, valid, body of evidence or scientific research has
ever shown the effectiveness of the registry, or for that matter, that it provides safety to
anyone!  On the contrary, there are volumes of well designed research and expert opinion
that show just the opposite!

I am not opposed to any honest and cost-effective action to reduce or prevent sexual abuse
or exploitation of any individual, but the assumptive and poorly calculated effects of the
registry are ultimately destructive and unrecoverable.  Importantly, the registry fails, in
principle to separate those who are true predators, and a risk to society, from those who are
not.  Even worse, because of sensationalism and assumptions associated with sexual
crimes, local governments, and the general population at large, view ALL sexual registrants
as sexual predators and abhorrent rapists!  As a result, the registry has evolved into a "legal
endorsement" of misinformation and community vigilantism, destroying many, many lives, not
protecting them!  With it's far reaching and inclusive provisions, truth be known, every single
one of us, at some point in our lives, could have fallen victim to the registry!  Maybe the point
is that we all should, or eventually will !!

We now have well over 1 million individuals on the sex offender registry, most for a lifetime.
The majority are for non-violent, and more importantly, non-predatory infractions.  A great
number include consensual relationships or sexting between minors, or more commonly, the
simple possession of a pornographic depiction on a personal electronic device, often
acquired during the unfortunate click of an internet link on a trolling website!  Many are
caught in fabricated and confabulated sting operations created by local police to look "tough
on crime" and acquire additional federal funding and grants.  Intent is no defense and simply
"possessing" is conviction.  Some are for ridiculous charges such as voiding on the side of
the road, or mooning in public.  Many are perpetuated from an angry parent or partner over
an unapproved "first love", or misguided teenage curiosity. Even an autistic 8 year old was
placed on the registry for repeatedly "hugging" a female classmate.  A 14 year old was added
for having a partially naked picture of herself on her own phone, discovered by police looking
at volunteered evidence for a completely unrelated crime!  To anyone with a vestigial sense of

rationality, it seems we have gone far astray and deluded from the original intent of the sex offender registry.  Indeed, 27% of people on the registry were put on as minors and now carry that burden for life! In the full sense of the term, these are NOT pedophiles and are not a risk to the general public!  Do we really want to aggressively restrict all these with your new proposed rules?

Realistically, many may not even be guilty at all!, but were "forced" to take plea deals to avoid the potential of lifetime sentencing that would invariably be imposed under mandatory minimum guidelines, should they lack the insurmountable funds needed for a realistic defense, or otherwise fail in their pursuit for a fair and honest trial by some technicality or public bias.  In fact, 97% of individuals on the registry entered into plea deals because they had no other realistic alternative.

In the name of justice reform, we recognize many societal failings of the past and perceive the greater benefit of improving and reform, and then re-inculcating back into society.  We recognize humanity for what it is, our individual lack of perfection and our predisposition for mistakes.  All of us!  But fortunately, for most, the mistake is not the definitive end, but rather the natural process of learning, progression and improvement.  Regrettably, some are not interested and are not willing to make any effort, but for those who are, the means to improvement should not be the end!  For the competent and capable, an effective solution can not simply rely on bigger padlocks and stronger chains!   What are we really trying to accomplish??  IF we want to make a real and meaningful difference, we must focus on healing the disease and saving souls rather than the blanket destruction of those we perceive as worthless and less valued than ourselves, for therein is pride and the setup for the ultimate destruction of a civilized society.

The opportunity to have a "second chance" and fully integrate back into society is available to virtually every other malefactor who has served their time, including murderers and violent criminals.  But for registrants, this is not usually the case, as many states lack stratification and mark them for life, with no means of recovery or reform, regardless of their infraction. This approach is further calcified by this proposed rule.

As a society in general, it has been politically popular to lump all registrants as aggressive pedophiles, even though by far, most are not.  As a group they are completely marginalized and rejected by society, labeled with a scarlet letter, and tossed to "vigilantic" wolves.  Their whereabouts are continuously tracked and publicly published, untrue of any other criminal. They can not have an email address, job, account, phone, car, identification, or any other contact without stringent federal requirements to divulge every move they make. They are repeatedly rejected from reasonable housing, expelled from jobs, and often prohibited from higher education and foreign travel.  They are cut off and restricted from any "normal" aspect of life or the pursuit of inherent happiness.   They are in totality and categorically, rejected.   In general, they can not participate, ever, in normal family activities and events at the park or school, even if they have completed counseling and formal intervention with risk mitigation. They are reprobate and non-reformable in the baseless public eye, and further endorsed by the registry, even though their recidivism rate is below that of any other crime short of murder!

Research and expert opinion consistently declare that these publicly conceived biases and conclusions are baseless and unsupported!  If we were to error on such egregious assumptions, then who will free the unjustly imprisoned and provide for an honest and accurate accounting?  Is that not the role of the JUSTICE DEPARTMENT, as it's name implies??  Because of the abhorrent nature of sexual crimes, of course we want to do all we can to protect potential victims, but we now know that only a very small percentage of individuals on the registry actually represent any realistic threat to the public or society.  So is it OK to trash hundreds of thousands for the sake of a few?  We have got to find a course that actually works, that identifies and treats the real underlying issues, and secures the public. With the current reckless and misguided proposals, we completely miss the actual problem! If we don't figure this out, we will ultimately place millions on the registry while the problem continues unchecked and unabated, blossoming further out of control and having little positive effect on desired outcomes.

We know of many things that could impact a difference, and I believe we could stop child pornography almost instantly, but we have to accurately define the problem and examine evidence based solutions directed at the roots, not the symptoms.  We only make the problem worse if we get distracted chasing down the wrong path, beating up the secondary victims instead of focusing on the true instigators and perpetrators, ultimately leaving nothing but a wake of family destruction behind, which is not beneficial to society.   It may well be that our current volumes of rules, regulations and institutions are actually the bigger threat to our society and public safety.  I ask again, what are we doing??  When we consider to take action such as this proposed rule, we must weigh the costs to society as much as we do the perceived benefits and honestly consider if it will even accomplish what we are trying to achieve.  We should not take action to simply powder our emotions or because logically it sounds good, makes us feel better, stronger or even more empowered.  We have to dive deep and figure out the ramifications, lest karma catch us in our own snare.  I get it.  We want to stop sexual trafficking, and restrict the movement of aggressive and unreformed pedophiles, but that is NOT the million plus on the registry!  In fact, the serious offenders we are trying to target are not even on the registry!!  We are petting ourselves, pretending to have accomplished something great while the problem remains largely unchecked.   In the meantime, we are burning and destroying our hope for the future in hundreds of thousands of affected individuals and their intimately entwined families and future progeny, all with justified, but not fully considered, collateral damage.

If we act amiss, and pursue a course of extremism, then what becomes our our legacy and what kind of world have we created for our posterity?  Can we stand at some future point and rationalize and excuse ourselves by justifying mob mentality and emotional pubic ignorance which move contrary to the facts and evidence?   These registrants ARE our brothers and sisters, wives, husbands and children.  Morally, we are also accountable for them, and even perhaps more particularly if they are downtrodden and unable to voice or stand for themselves.  Like you and me, many made careless mistakes and are good souls with limitless potential and amazing talent, often reformed, anxious and willing to rightfully contribute to our society in a meaningful and positive way.  Yet, if we lock them in a virtual cage, throw away the key, and keep poking sticks at them, what do we expect to achieve as an end result?  When I was young, we called these people with contemptuous disrespect for others, "Bullies."

Where we have greater power and influence, we also carry greater responsibility. It becomes imperative therefore, to be cautious, accurate, and thoughtful, without simply reacting emotionally or on political popularity. It is often a fine line we are called upon to walk. I know you are rightfully sincere in your honest efforts to advocate for what is "best" for society.  But when we are swayed and driven by primeval passions, baseless stereotypes, populists assumptions, or preconceived notions rather than sound thinking and good evidence, it is easy to get off course.  If anything, the federal Department of Justice is entrusted to separate out the emotion and balance out the extremes, to temper the path with more rational prudence and governance, and serve ALL the people, not throw "fuel on the fire!"  Let us use our influence, supported by volumes of wonderful research, valid science and critical evidence, to correct the wrongs, fix the misalignments, adjust our course and defend the liberties and justice for all.  Then our legacy will stand without future retribution!

With the consequences so high, and if we are not sure, it would be far better to hold off than unknowingly serve and advocate further destruction that can never be restored or fully restituted.  You may move on, but your posterity will surely carry that weight!  As much as we abhor predatory behavior, it is important that we not shift from defending the vulnerable to becoming predatory ourselves, from saving lives, to "justifiably" destroying them.

I hope you will be wise and thoughtful, weighing the heavy responsibility to afford impartial justice under the law, for both the powerful as well as the marginalized.  There are so many broken souls you know not of!  You have the power to help relieve the unseen heavy burdens, the tearful eyes, the broken hearts and hopeless suffering of truly thousands upon thousands who are now trying to do the right thing!  I petition you to not pile it on further! Use your influence to protect ALL people, and bring some degree of morality and decency back to our convoluted and ensnaring legal system that seems to have run amuck with excessive power and dominance.

Let's clean up the registry, streamline it's purpose, stratify the real risk offenders and refocus our efforts until it becomes meaningful again.  Listen to our pleas.  See clearly through the clouds of distractive bias.  Like those we expect to reform, we must learn from the past. Let us not endorse redressed snares, be party to modern "Witch Trials" or re-advocate for a new "Scarlet Letter."  We are better than that.   Let's fix this destructive mess.  Once we have our "house in order", then your rules may have benefit and real purpose!

I stand as a witness and in testimony to your actions and interpretations, but it can not be said you were never told or did not know.

*"Beware that, when fighting monsters, you yourself do not become a monster."*   — *Friedrich W. Nietzsche*

Alan L Christensen, MD



CHRISTENSEN, MD
·215
AN, AK  99901

**REFERRED**
MAIL REFERRAL UNIT

SEP 2 1 2020

**READER #3**

Regulations Docket Clerk
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW, Room 4234
Washington, DC 20530

20530-

AR-00001696

Alan L. Christensen, MD
PO Box 8215
Ketchikan, AK  99901

(270) 804-9365

Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW, Room 4234
Washington, DC 20530

9.15.20

Re:  **Docket No. OAG 157**

Dear Department of Justice,

I would ask the Justice Department to put the proposed rule 2020-15804
on hold until they conscientiously look at the large body of wonderful scientific research and
evidence AGAINST taking such actions." The effects of this proposed rule would be cost
exorbitant to enforce and devastating, not only for registrants, but their entire extended
families!  More importantly, when you stretch limited resources over large, broad areas, they
become less effective and easily distracted from the real hot spots of concern.

A large, massive imposed solution not only impairs capable and reformed individuals, but is
incredibly expensive, time consuming, increasingly difficult to enforce, and distracts
resources from more obvious and effective solutions.

Recently our family participated in a missing person search which ended with the tragic
discovery of a murdered young woman, that we and others believe, could have been
prevented had the police been able to immediately focus their resources on the likely
perpetrator rather than interviewing dozens and dozens of low risk "offenders" who resided in
the general area. In her case, timing was critical and despite important and valuable leads
that were available, they were watered down and distracted by masses of individuals that
each had to be excluded as potential perpetrators.

Rather than imposing aggressive and enhanced restrictions and reporting requirements on
the ever-growing and undifferentiated list of hundreds of thousands of individuals, it would be
far wiser to direct those funds and resources to more productive and selective areas based
on valid risk stratification.  Research shows that the huge cost of both money and resources
to expand and manage the registry does very little to secure the public safety and ultimately

AR-00001697

distracts from more effective strategies to precisely monitor and limit those select individuals that represent true risk to society.

I propose the Justice Department impose national risk stratification requirements for all states, and require registrants with minimal risks to be "down graded" or even cleaned from the massive registry with restrictions reduced or removed, where reasonable, so they can become productive and contributing members of society rather than a propagating drain on the "system" and it's resources.

SORNA's stated objective is to "effectively track and locate sex offenders in the community," in order to "provide for the public safety."  This is sold on political persuasions that outwardly seem progressive, but are unfortunately based on popular, generally unfounded, primeval assumptions and attitudes.  Not a single, valid, body of evidence or scientific research has ever shown the effectiveness of the registry, or for that matter, that it provides safety to anyone!  On the contrary, there are volumes of well designed research and expert opinion that show just the opposite!

I am not opposed to any honest and cost-effective action to reduce or prevent sexual abuse or exploitation of any individual, but the assumptive and poorly calculated effects of the registry are ultimately destructive and unrecoverable.  Importantly, the registry fails, in principle to separate those who are true predators, and a risk to society, from those who are not.  Even worse, because of sensationalism and assumptions associated with sexual crimes, local governments, and the general population at large, view ALL sexual registrants as sexual predators and abhorrent rapists!  As a result, the registry has evolved into a "legal endorsement" of misinformation and community vigilantism, destroying many, many lives, not protecting them!  With it's far reaching and inclusive provisions, truth be known, every single one of us, at some point in our lives, could have fallen victim to the registry!  Maybe the point is that we all should, or eventually will !!

We now have well over 1 million individuals on the sex offender registry, most for a lifetime. The majority are for non-violent, and more importantly, non-predatory infractions.  A great number include consensual relationships or sexting between minors, or more commonly, the simple possession of a pornographic depiction on a personal electronic device, often acquired during the unfortunate click of an internet link on a trolling website!  Many are caught in fabricated and confabulated sting operations created by local police to look "tough on crime" and acquire additional federal funding and grants.  Intent is no defense and simply "possessing" is conviction.  Some are for ridiculous charges such as voiding on the side of the road, or mooning in public.  Many are perpetuated from an angry parent or partner over an unapproved "first love", or misguided teenage curiosity. Even an autistic 8 year old was placed on the registry for repeatedly "hugging" a female classmate.  A 14 year old was added for having a partially naked picture of herself on her own phone, discovered by police looking at volunteered evidence for a completely unrelated crime!  To anyone with a vestigial sense of rationality, it seems we have gone far astray and deluded from the original intent of the sex offender registry.  Indeed, 27% of people on the registry were put on as minors and now carry that burden for life!  In the full sense of the term, these are NOT pedophiles and are not a risk to the general public!  Do we really want to aggressively restrict all these with your new proposed rules?

AR-00001698

Realistically, many may not even be guilty at all!, but were "forced" to take plea deals to avoid
the potential of lifetime sentencing that would invariably be imposed under mandatory
minimum guidelines, should they lack the insurmountable funds needed for a realistic
defense, or otherwise fail in their pursuit for a fair and honest trial by some technicality or
public bias.  In fact, 97% of individuals on the registry entered into plea deals because they
had no other realistic alternative.

In the name of justice reform, we recognize many societal failings of the past and perceive
the greater benefit of improving and reform, and then re-inculcating back into society.  We
recognize humanity for what it is, our individual lack of perfection and our predisposition for
mistakes.  All of us!  But fortunately, for most, the mistake is not the definitive end, but rather
the natural process of learning, progression and improvement.  Regrettably, some are not
interested and are not willing to make any effort, but for those who are, the means to
improvement should not be the end!  For the competent and capable, an effective solution
can not simply rely on bigger padlocks and stronger chains!   What are we really trying to
accomplish??  IF we want to make a real and meaningful difference, we must focus on
healing the disease and saving souls rather than the blanket destruction of those we perceive
as worthless and less valued than ourselves, for therein is pride and the setup for the ultimate
destruction of a civilized society.

The opportunity to have a "second chance" and fully integrate back into society is available to
virtually every other malefactor who has served their time, including murderers and violent
criminals.   But for registrants, this is not usually the case, as many states lack stratification
and mark them for life, with no means of recovery or reform, regardless of their infraction.
This approach is further calcified by this proposed rule.

As a society in general, it has been politically popular to lump all registrants as aggressive
pedophiles, even though by far, most are not.  As a group they are completely marginalized
and rejected by society, labeled with a scarlet letter, and tossed to "vigilantic" wolves.  Their
whereabouts are continuously tracked and publicly published, untrue of any other criminal.
They can not have an email address, job, account, phone, car, identification, or any other
contact without stringent federal requirements to divulge every move they make. They are
repeatedly rejected from reasonable housing, expelled from jobs, and often prohibited from
higher education and foreign travel.  They are cut off and restricted from any "normal" aspect
of life or the pursuit of inherent happiness.   They are in totality and categorically, rejected.   In
general, they can not participate, ever, in normal family activities and events at the park or
school, even if they have completed counseling and formal intervention with risk mitigation.
They are reprobate and non-reformable in the baseless public eye, and further endorsed by
the registry, even though their recidivism rate is below that of any other crime short of murder!

Research and expert opinion consistently declare that these publicly conceived biases and
conclusions are baseless and unsupported!  If we were to error on such egregious
assumptions, then who will free the unjustly imprisoned and provide for an honest and
accurate accounting?  Is that not the role of the JUSTICE DEPARTMENT, as it's name
implies??  Because of the abhorrent nature of sexual crimes, of course we want to do all we
can to protect potential victims, but we now know that only a very small percentage of

individuals on the registry actually represent any realistic threat to the public or society.  So is it OK to trash hundreds of thousands for the sake of a few?  We have got to find a course that actually works, that identifies and treats the real underlying issues, and secures the public.  With the current reckless and misguided proposals, we completely miss the actual problem!  If we don't figure this out, we will ultimately place millions on the registry while the problem continues unchecked and unabated, blossoming further out of control and having little positive effect on desired outcomes.

We know of many things that could impact a difference, and I believe we could stop child pornography almost instantly, but we have to accurately define the problem and examine evidence based solutions directed at the roots, not the symptoms.  We only make the problem worse if we get distracted chasing down the wrong path, beating up the secondary victims instead of focusing on the true instigators and perpetrators, ultimately leaving nothing but a wake of family destruction behind, which is not beneficial to society.  It may well be that our current volumes of rules, regulations and institutions are actually the bigger threat to our society and public safety.  I ask again, what are we doing??  When we consider to take action such as this proposed rule, we must weigh the costs to society as much as we do the perceived benefits and honestly consider if it will even accomplish what we are trying to achieve.  We should not take action to simply powder our emotions or because logically it sounds good, makes us feel better, stronger or even more empowered.  We have to dive deep and figure out the ramifications, lest karma catch us in our own snare.  I get it.  We want to stop sexual trafficking, and restrict the movement of aggressive and unreformed pedophiles, but that is NOT the million plus on the registry!  In fact, the serious offenders we are trying to target are not even on the registry!!  We are petting ourselves, pretending to have accomplished something great while the problem remains largely unchecked.  In the meantime, we are burning and destroying our hope for the future in hundreds of thousands of affected individuals and their intimately entwined families and future progeny, all with justified, but not fully considered, collateral damage.

If we act amiss, and pursue a course of extremism, then what becomes our our legacy and what kind of world have we created for our posterity?  Can we stand at some future point and rationalize and excuse ourselves by justifying mob mentality and emotional pubic ignorance which move contrary to the facts and evidence?  These registrants ARE our brothers and sisters, wives, husbands and children.  Morally, we are also accountable for them, and even perhaps more particularly if they are downtrodden and unable to voice or stand for themselves.  Like you and me, many made careless mistakes and are good souls with limitless potential and amazing talent, often reformed, anxious and willing to rightfully contribute to our society in a meaningful and positive way.  Yet, if we lock them in a virtual cage, throw away the key, and keep poking sticks at them, what do we expect to achieve as an end result?  When I was young, we called these people with contemptuous disrespect for others, "Bullies."

Where we have greater power and influence, we also carry greater responsibility. It becomes imperative therefore, to be cautious, accurate, and thoughtful, without simply reacting emotionally or on political popularity. It is often a fine line we are called upon to walk. I know you are rightfully sincere in your honest efforts to advocate for what is "best" for society.  But when we are swayed and driven by primeval passions, baseless stereotypes, populists

*Page 5*

assumptions, or preconceived notions rather than sound thinking and good evidence, it is easy to get off course.  If anything, the federal Department of Justice is entrusted to separate out the emotion and balance out the extremes, to temper the path with more rational prudence and governance, and serve ALL the people, not throw "fuel on the fire!"  Let us use our influence, supported by volumes of wonderful research, valid science and critical evidence, to correct the wrongs, fix the misalignments, adjust our course and defend the liberties and justice for all.   Then our legacy will stand without future retribution!

With the consequences so high, and if we are not sure, it would be far better to hold off than unknowingly serve and advocate further destruction that can never be restored or fully restituted.  You may move on, but your posterity will surely carry that weight!  As much as we abhor predatory behavior, it is important that we not shift from defending the vulnerable to becoming predatory ourselves, from saving lives, to "justifiably" destroying them.

I hope you will be wise and thoughtful, weighing the heavy responsibility to afford impartial justice under the law, for both the powerful as well as the marginalized.   There are so many broken souls you know not of!  You have the power to help relieve the unseen heavy burdens, the tearful eyes, the broken hearts and hopeless suffering of truly thousands upon thousands who are now trying to do the right thing!  I petition you to not pile it on further! Use your influence to protect ALL people, and bring some degree of morality and decency back to our convoluted and ensnaring legal system that seems to have run amuck with excessive power and dominance.

Let's clean up the registry, streamline it's purpose, stratify the real risk offenders and refocus our efforts until it becomes meaningful again.  Listen to our pleas.  See clearly through the clouds of distractive bias.  Like those we expect to reform, we must learn from the past. Let us not endorse redressed snares, be party to modern "Witch Trials" or re-advocate for a new "Scarlet Letter."  We are better than that.   Let's fix this destructive mess.  Once we have our "house in order", then your rules may have benefit and real purpose!

I stand as a witness and in testimony to your actions and interpretations, but it can not be said you were never told or did not know.

*"Beware that, when fighting monsters, you yourself do not become a monster."  — Friedrich W. Nietzsche*

Alan L Christensen, MD

LARRY MICHAEL FRANCIS
BAG OF HOT AIR
ADVOCACY WRITER
186 HYATT LN
JASPER TX 75951-7086

DOCKET NO. OAG 157



SHREVEPORT LA 710

18 AUG 2020 PM 1 L
REFERRED
MAIL REFERRAL UNIT

AUG 24 2020

READER #3

**REGULATIONS DOCKET CLERK**
**OFFICE OF LEGAL POLICY**
**U S DEPARTMENT OF JUSTICE**
**950 PENNSYLVANIA AVE NW RM 4234**
**WASHINGTON DC 20530**

20530-

AR-00001702

# L Michael Francis

Sunday, August 16, 2020

Regulations Docket Clerk
Office of Legal Policy
U S Department of Justice
950 Pennsylvania Ave NW Rm 4234
Washington DC 20530

Re: Public Comment on OAG 157, RIN 1105-AB52

Greetings, Regulations Docket Clerk,

Please accept and enter into record the enclosed document titled, PUBLIC COMMENT ON RIN 1105-AB52. The 60-Day Comment Period is 8/13/202 to 10/13/2020. The entire document is 6 pages.

This same document will be made available in pdf format at http://www.regulations.gov.

Additionally, you may access this document on Adobe Cloud at https://documentcloud.adobe.com/link/track?uri=urn:aaid:scds:US:d32fe1b6-9c5e-4830-bcf5-dc7005bab67b

Thank you,

*L. Michael Francis*

L Michael Francis
Bag of Hot Air, Advocacy Writer

AR-00001703

20 AUG 2020  / /  DOCKET NO. OAG 157  / /  AG ORDER NO. 4759-2020

# PUBLIC COMMENT ON RIN 1105–AB52

Registration Requirements Under the Sex Offender Registration and Notification Act
DEPARTMENT OF JUSTICE Office of the Attorney General 28 CFR Part 72



**Public Comment by Larry Michael Francis**

**Bag of Hot Air, Advocacy Writer**

## 60-Day Comment Period is 8/13/2020 to 10/13/2020

**AGENCY: DEPARTMENT OF JUSTICE
ACTION: PROPOSED RULE.**

Regulations Docket Clerk, Office of Legal Policy, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Room 4234, Washington, DC 20530. To ensure proper handling, please reference Docket No. OAG 157 on your correspondence. You may submit comments electronically or view an electronic version of this proposed rule at http://www.regulations.gov.

## Cause and Cure of Sexual Offending
### What every adult needs to know.

### CAUSE

Chain of thoughts → feelings → behaviors with an underlying motivation to find an opportunity for sexual gratification.

Afflictive emotions arise from issues of self-interest. Reason becomes clouded, boundaries fade, hurt-for-hurt mood results.

Unfulfilled needs and uncontrolled thought processes and other thinking errors become the focus of attention.

Selfish motivations from attachments, desires, wants, issues and errors block empathy for other setting up final step:

Exclusion of the victim from the empathy pool.

### CURE

Choose a different path, knowing the outcome of habitual causal chains, by planning an alternative way to sexual gratification.

Understand your motivations, emotions and thinking errors. Deal with issues of self-interest, focus on fulfilling real needs.

Restore all the ethical boundaries that have eroded over time. Respect and value yourself as you respect and value others.

Empathize at every opportunity. Identify your selfish motivations that formerly blocked empathy and deal with them.

AR-00001704

20 AUG 2020 // DOCKET NO. OAG 157 // AG ORDER NO. 4759-2020

## PUBLIC COMMENT ON RIN 1105–AB52



**Bag of Hot Air is the pen name for advocacy writer Larry Michael Francis since 2002. For comments, email BagofHotAir@Gmail.com.**

Always have a better plan in mind and ready.

If you already know where your thoughts are taking you, then you have taken that path before. You are aware of what it means to take that first step and entertain the thought.

Find an appropriate way to sexual gratification that meets your need to feel loved and accepted, virile yet non-offensive and respectful of women and children.

The longer you entertain the thought the more difficult it is to stop. Always plan ahead to interrupt inappropriate thoughts, feelings and behaviors.

Having problems with borders? Find a person you trust to periodically question your motivations for behaviors and verify your activities, someone you confide in often.

---

BACKGROUND OF SORNA

# Docket No. OAG 121
*Comment Posted on July 18, 2007*

A Report on the Adam Walsh Act (AWA)
Actual name: Sex Offender Registration and Notification Act (SORNA Title 1 of the Adam Walsh Child Protection and Safety Act of 2006).

Adam Walsh was the son of "America's Most Wanted" John Walsh. When Adam was abducted and murdered, public hysteria about Sex Offenders was at a high point and it was assumed, incorrectly, that Adam was the victim of a sex crime. This controversial federal sex offender law, introduced as HR 4472, was

written to standardize sex offender Laws across the country by passing minimum national standards established on three Tier Levels.
Individual States were given two years to become compliant with the AWA. When no States met the deadline, it was extended to July 2010, and again to 2011. As of November 13, 2013, 17 States had become substantially compliant, but two of those States are now possibly reconsidering.
Some States, in a panic to keep in favor with the Washington politicians, had gone forward

ADULT EDUCATION

## *An Alternative to "Stranger Danger" Relatively Speaking*

How did so many politicians so easily come to the false assumption that there are sexual predators waiting on every corner for innocent children to prey upon? All adults need to fully understand the real risks for children and the vulnerable, the cause of sexual offending, and the cure for sexual offending. SORNA is ineffective and perhaps harmful because it publicly and punitively labels, shames and blames those who will never offend again and provides no education for those trusted who may be unaware of their own potential for offending.

PAGE 2

AR-00001705

20 AUG 2020 // DOCKET NO. OAG 157 // AG ORDER NO. 4759-2020

with their own interpretation of the Walsh legislation, guessing at what they believed could be the final government guidelines. Texas constructed CCF Chapter 62 while still considering compliance with AWA, but then rejected AWA citing costs and the offense-based classification as primary concerns.

The AWA has other issues too: The AWA was "passed" under an "Interim Rule" in May 2007 when disgraced US Attorney General Gonzales deemed SORNA a "pressing emergency" and bypassed ordinary procedure for public comment. He deemed SORNA retroactive to all sex offenders but declined to provide any procedures for notice and registration of sex offenders. Public comment was not opened until May 30, 2007 and then Only for challenges to guidelines, not the rule itself (there was never a Comment Period opened on the rule).

The AWA superseded 42 USC 14071, Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program upon which the [Texas] Art. 62.402 was based. Thus in rejecting AWA, States may be also rejecting 42 USC § 14071. Because of the way the AWA was "passed" there was no opportunity for recourse and remedy to redress the true nature of the Act, that of protecting our children from sexual predators. The AWA 's registration and

notification policies based solely on nature-of-crime stereotyping by Tier Levels merely provides a source of information for discrimination, stigmatization, and vigilante-based attacks against offenders, regardless of their risk factors, rehabilitation, recovery, restoration, or even the actual crime (sometimes just a failure to appear in court).

The following Public Comment "Docket No. OAG 121" was submitted to the Federal Registry during the very narrow Opportunity for Public Comment on the guidelines for the AWA. As already mentioned, no opportunity was given to redress the Act itself with its controversial myths and misinformation about the citizenry it would affect the most:

July 18, 2007
Docket No. OAG 121
Public Comment On Sex Offender Registration and Notification Act aka: Adam Walsh Act's Sex Offender Registration and Notification or SORNA, for short.

Specifically, these comments refer to the National Guidelines for Sex Offender Registration and Notification which were posted May 30, 2007, in the Federal Register. Comments must be received by August 1, 2007. The Adam Walsh Act was passed July 27, 2006,

## SORNA at the International Level?

Domestically, the sex offender registry, SORNA and the SMART Office offer little more than redundancy for law enforcement for those few states that have implemented AWA rules. Internationally, an SO jacket could bring disastrous results where US citizens are not protected by our rule of law.

which gave the states a deadline of July 27, 2007, to implement the Walsh Act in order to maintain federal law enforcement funding. Some states, in a panic to keep in favor with the Washington politicians, have gone forward with their own interpretation of the Walsh legislation, guessing at what they believe could be the final government guidelines. Any guidelines which impinge on inalienable rights must, whether federal or state, also provide recourse and remedy including due process for defense (for example when mitigating circumstances exist or when sex offenders have been restored through treatment and no longer pose a risk to society) and equal protection (to insure that a low risk or no significant risk offender is not categorized or stereotyped with high risk or violent offenders).

PAGE 3

AR-00001706

20 AUG 2020 // DOCKET NO. OAG 157 // AG ORDER NO. 4759-2020

**PUBLIC COMMENT ON RIN 1105–AB52**

### The Guidelines Must Be In Keeping With The Nature of The Act

Clearly, the nature of the Act, also conveyed by the common name of the Act, is to protect our children from sexual predators. Since there seems to be a mean-spirited segment of the government that wishes to see persons with sex offenses punished, shamed and banished as long as possible, and seeks to find another way to cause further anguish to sex offenders' lives; then surely there must be substantial evidence that these guidelines will actually protect our children, and the evidence does not show that. Historically rather there is evidence that registration and notification provides a source of information for discrimination, stigmatizing, and vigilante-based attacks against offenders, regardless of their risk factors, rehabilitation, recovery, restoration, or even the actual crime. Perhaps the worst problem with the guidelines is that the dangerous sex offenders are driven underground and farther away from preventative treatment.

Sex Offenses are deviant behaviors. but just like most other crimes the deviant behavior is a learned behavior. Just like any other learned behavior, that behavior can be retrained, relearned, and modified through treatment. Some sex offenders,

such as true-incest offenders, only have a 5% recidivism risk in the first year after discovery, and for them the risk drops to 0% after the first year, even without treatment. The behavioral modification curve shows that the recovery and restoration process for a sex offender is like any other treatment process and that the offender is finally returned to a normal state. The Guidelines allow only for a continual registration, perhaps for a lifetime, that does not take restoration into account. There are even cases where a statutory offender is now married to his "victim-girlfriend" and should be able to live a normal life without interference by government. If the guidelines adhered to the nature of the Act, then there would be provisions within them to exclude certain offenders from the initial registration, and to remove offenders from the requirement once they have met treatment benchmarks of recovery.

There are tools available to forensic psychologists to assess risk to our children based on a clinical evaluation. The guidelines should consider these assessments over a strict determination made by mean-spirited governmental agencies or vigilante groups. Simply put, if a sex offender's behavior is controlled, then they are not the threat. [End of Comment]

### Bag of Hot Air, Advocacy Writer Commentary

It is not possible to go back in time and correct past offenses, and yet there is great value in the future that comes from understanding the past. But dwelling on the past, as often we do in psychoanalysis with all the vicious-circle formations and feedback mechanisms, leads to self-centeredness or therapeutic dependencies.

Focus on a future that is full of the meaning of life. "The more one forgets himself – by giving himself to a cause to serve or another person to love – the more human he is and the more he actualizes himself." [Man's Search for Meaning by Victor E Frankl, Beacon Press, Unitarian Universalist Assn, 25 Beacon St, Boston MA 02108].

This writer submitted Public Comment under OAG 121 and has unique experiences with professionals in the field of cognitive therapy and psychology. However, Bag of Hot Air does not hold the credentials for credibility. The comments in this newsletter make good sense to the writer, but your feedback is most welcome. Please send your email responses to BagofHotAir@Gmail.com.

AR-00001707

20 AUG 2020 // DOCKET NO. OAG 157 // AG ORDER NO. 4759-2020

**PUBLIC COMMENT ON RIN 1105–AB52**

## REMOVE THE MISNOMER, AWA.

# Abolish SORNA and SMART Office

## THINK OF THE SEX OFFENDER REGISTRY AS ANOTHER DIVISIVE

☑ **Most people** feeling the effects of afflictive emotions that often lead to sexual offending may never ask for help for fear of being accused of a sexual offense, arrested, and targeted by the Sex Offender Registry;

☑ The Sex Offender Registry endangers and fosters afflictive emotions in **targeted persons**, promotes public hysteria and unreasonable stereotypes, is no cure for sexual offending, nor is it a prevention;

☑ **Many people** who otherwise would benefit from seeking a cure are being caught up in the Sex Offender Registry, and perhaps because of over-criminalization of sex behaviors many are arrested and prevented from carrying on with their lives.

The cure should be inexpensive and easily accessed, perhaps with a prescription or referral. Licensed Professional Counselors should be permitted to treat clients confidentially without further involvement with law enforcement.

Unless an organization owns deliberate policy to allow or encourage sexual offenses, there must be legal protection for organizations against lawsuits. It is ridiculous to assume that the Boy Scouts of America or the Catholic Church encouraged sexual assault.

Laws have been in place for a long time to fairly prosecute offenders. Fair trials of fact determine punishment for crimes and considering the mitigating circumstances determine an end of the punishment. SORNA exceeds those factual determinations by implementing additional punishment that did not exist at the time of an offense. SORNA's rules are outside the purview of our legal system, and therefore unlawful.

Our criminal justice courts have the authority within each state jurisdiction to determine fair judgments, often bargaining with defendants to accept the verdict and ruling of the court with full disclosure of the consequences. With SORNA no such transparency exists when year after year the requirements of registration can be changed on a whim.

The victims of SORNA are grouped together under a label that does not acknowledge dynamic risk levels that consider mitigating circumstances nor the facts that can change affecting the individual. Yet, the same stigma is forced upon all those who are labeled sex offenders regardless of the seriousness of the act, whether that act was ongoing, or the progress toward restoration of the individual who seeks to return to a normal existence.

Since so few states have come into compliance with SORNA and are not likely to implement consistent state regulation there can be no equity in the implementation of rules.

PAGE 5

AR-00001708

20 AUG 2020 // DOCKET NO. OAG 157 // AG ORDER NO. 4759-2020

**PUBLIC COMMENT ON RIN 1105–AB52**

---

## *IN THIS ISSUE*

### BACKGROUND OF SORNA

Docket No. OAG 121
Comment Posted on July 18, 2007

### ADULT EDUCATION

A Solution for the Greater Risk of Child Sexual Abuse: An Alternative to "Stranger Danger" *Relatively Speaking.*

### REMOVE THE MISNOMER, AWA.

Abolish SORNA and SMART Office

AR-00001709

Inmate Name: Earnest Bradley Hall

Register Number: 17434-037

United States Penitentiary

P.O. Box 1000

Lewisburg, PA 17837

X-RAYED

SEP 22 2020

DOJ MAILROOM

HARRISBURG PA   171

14 SEP 2020   PM 2  L

FOREVER / USA

14 SEP 2020 Regulations Docket Clerk, Office of Legal Policy

U.S. Department of Justice

450 Pennsylvania Avenue NW, Room 4234   LEGAL

Washington, DC 20530   MAIL

INSPECTED 28   INSPECTED 21

9-13-2020

20530-

AR-00001710

RE: DOCKET NO. OAG 157

I, Earnest Bradley Hall, want to state the
following concerning DOJ proposed changes
to the SORNA laws:

1. First, SORNA laws and the sex offender Registry
(SOR) violate the United States constitution in
so many ways.

2. SORNA laws and the (SOR) imposes more
punishment on the person(s) being force to register
but it also imposes ~~puit~~ punishment on the
families and friends of the person being force
to register as a sex offender.

3. The case Marbury v. Madison, in this case
the United States Supreme Court upheld the
supremacy of the Constitution and stated
unequivocally that the Supreme Court had
the power of "Judicial Review" to strike down
actions taken by American federal or state
legislative bodies which, in opinion, offended
the Constitution. The legal profession generally
considers this case as the most important
milestone in the history of American law since
the Constitution. (1803).

Page 1 of 8

4. The SORNA laws and the SOR's offend the
   United States Contitution.

5. The American Bill of Rights, 1791. Four
   years after the signing of the Constitution,
   America statesmen amended their supreme
   law by declaring the rights of free speech,
   freedom of the press and religion, a right to
   trial by one's peers (Jury), protection against
   "cruel and unusual punishment" or unreasonable
   searches or seizures, and other rights. The
   first ten amendments received the name
   "Bill of Rights".
         Our "Bill of Rights" lists prohibitions
   of the government, and it defines uses of
   power that the people grant and don't grant
   to public officials. In America, people in
   public office receive permission instead of
   give permission. public officials are to act
   as servants, and not the masters, of the people.

   The SORNA laws and the SOR's violates a
   person's rights and imposes "cruel and
   unusual punishment" upon the person(s) being
   forced to register, additionally, it also
   imposes punishment on the families and friends
   of the person(s) being force to register as
   a sex offender.

                    Page 2 of 8

AR-00001712

6. The SORNA laws and the SOR's subjects
Person(s) being force to register to more
imposed punishment, harassment even after
completion of a term of prison.

7. The SORNA laws are _not_ even in the
Power of Congress's _limited Power_ to
Enforce under the United States Constitution,
McCulloch V. Maryland, 4 wheat. 316, 416-17
(1819), which Art. I., § 8, cls. 6 and 10 enumerate,
and limit Congress to — Counterfeiting the
Securities and current coin of the United
States; piracies and felonies committed on the
high seas, and offenses against the law of
nations, and NO other conduct at all.
Declared by Chief Justice Marshall.

   To Illustrate this maxim of constitutional
limits on Congress's power, and the limits
placed on federal power by the Constitution,
Justice Thomas made Very clear when he
wrote: "From the time of the ratification of
the Constitution to the mid-1930's, it was
widely understood that the Constitution
granted Congress _only limited Powers_,
notwithstanding the Commerce clause."

United State v. Lopez, 514 U.S. 549, 599 (1995)
(Thomas, J., concurring).
  He pointed out:

                    page 3 of 8

AR-00001713

"Thus, whatever effect ordinary murders, or robbery, or gun possession [or sex offenses] might have on interstate commerce (or on any other subject of federal concern) was irrelevant to the question of congressional power."

Id., 514 U.S., at 596-97, and n. 6 (Thomas, J., concurring).

Because none of the statutory provisions within Chapter 110 of Title 18 of the United States defines conduct for which the Constitution confers on Congress legislative powers to enact any of these federal criminal laws, those laws remain out of the domain "of federal concern" and renders all me and other's convictions under such unconstitutional provisions completely void, and demonstrates that there are a lot of prosecutions and "so called laws" being enforced that are unfair and totally Illegal and unconstitutional.

8. The SORNA LAWS are good examples of tyrannical and arbitrary power, "because the police power is not one national sovereign, but under the controlled by 50 different states. The Federalist No, 45, at 293 in the Sebelius court (J. Madison) stated: The independent power of the states also serves as a check on the power of the Federal Government: by denying any one government complete Jurisdiction

Page 4 of 8

AR-00001714

over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power." Bond v. United States, ... 131 S. Ct. 2355 ["Bond I"], 2364, ... (2011)."

Thus, before the Federal Government may take nationwide enforcement of ANY of its laws - civil or criminal -, and be able to enforce and prosecute such violations thereof in a district court of the united States, an amendment of the Constitution must be in place authorizing such enforcement; prosecution, and punishment thereof, as the principle was illustrated by the Court, when it wrote: "Before 1919, the temperance movement fought to curb the sale of alcoholic beverages one state at a time. But in 1933, the 18th Amendment was repealed by the 21st Amendment.

Therefore, in the absence of a properly passed constitutional amendment, "U.S. Term Limits, Inc. V. Thornton, 574 U.S. 779, 838 (1995), conferring upon the Federal Government, thus Congress, the Power to enforce any commerce-related prohibitions enacted by Congress in a nationwide manner is prohibited by the strict limits placed on the Government by the Constitution all Members of Congress; the Executive Branch of law enforcement

Page 5 of 8

AR-00001715

agencies; and the federal courts are sworn to uphold, and establishes, under those circumstances, the district courts are want of both subject-matter and personal jurisdiction over such cases, and "[n]either consent nor submission by the states can enlarge the pow of Congress; none can exist except those which are granted," Ashton v. Cameron County W.I. Dist. No. One, 298 U.S. 513, 531 (1936)(citations omitted), by the Constitution and the people who voted for it. Accord, Sebelius, 132 S.Ct., at 2577-78 (2012).

9. The significance of all this is that there are currently thousand of federal prisoners who are incarcerated in federal institutions who should NOT be there, on the simple reason that the Government had, and has, no authority to have them sentenced on convictions the Government has no constitutional authority to prosecute in the federal courts, since the Government has no authority to enforce it's federal criminal laws in a nationwide manner, where the mass majority of those purported federal offenses were committed within the states, and not within any area the Government has legislative jurisdiction over, such as: bank robbery; forgery; drug-related offenses; firearm-related offenses; kidnapping;

Page 6 of 8

AR-00001716

Computer crimes; and child pornography offenses, Just to name a few of the thousands of federal criminal laws that have their so-called federal nexus some form of effect on interstate commerce.

The Government has NO constitutional authority to even charge federal offenses against those prisoners if the offenses are not within the kind expressly enumerated and provided for in the CONSTITUTION.

Read: Zivotofsky v. Clinton, 132 S. Ct. 1421, 1428 (2012). Judiciary, since that "duty will sometimes involve the "[r]esolution of litigation challenging the constitutional authority of one of the three branches," but courts cannot avoid their responsibility merely "because the issues have political implications."

Bond v. United States, 131 S. Ct. 2355 ("Bond I"), 2366-67 (2011) "The principles of limited national powers and state sovereignty are intertwined. While neither originates in the Tenth Amendment, both are expressed by it. Impermissible interferences with state sovereignty is not within the enumerated power of the National Government, ... and action that exceeds the National Government's

Page 7 of 8

AR-00001717

powers undermines the sovereign interests of states....

....The unconstitutional action can cause concommitant indury to persons in individual cases."

With all this being said, the SORNA law and the sex offender Registry (SOR) are punitive and impose violate the 8th Amendment of the U.S. Constitution.

Date: 09-14-2020

Respectfully submitted,
E.B. Hall
Earnest B. Hall

page 8 of 8

AR-00001718

SPRINGFIELD MO  658

15 SEP 2020  PM 2  L



Regulations Docket Clerk, Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW, Room 4234
Washington, DC 20530.

X-RAYED
SEP 2 1 2020
DOJ MAILROOM



INSPECTED 28

INSPECTED 21

20530—

AR-00001719

Re: Docket No. OAG 157

**EROSION OF RIGHTS AND DEGRADATION OF SOCIETY:**

Citizens face the possibility of being placed on one kind of registry or another based upon a
perceived risk alone, without a criminal case involved.

Allowing the rights of one group of society to be degraded opens the door to the degradation of
the rights of everyone. The ever-expanding SORNA & AWA registry is a prime example of this
erosion of rights.  Opening pandora's box so now there is on the books laws throughout the
U.S. giving creation to Registries for Domestic Violence, Gun Offenders, Meth Makers, Repeat
Traffic Offenders, DWI Offenders, Child Abusers, Oklahoma's Abortion Registry, Dangerous
Dogs, and even now proposals for an AIDS Registry.  These laws are similar in may ways to
registry by Nazi laws that required Jews, homosexuals and other undesirables or seen threats
to society to wear identifying marks on their clothing and carry special papers.

**AWA TIER SYSTEM:**

The duration lengths of AWA Tier System does not acknowledge or provide properly for cases
involving aging, infirmities, disabilities, hospitalization, mobility, handicaps, alzheimers,  or other
limiting factors that make it difficult or impossible for a person to maintain their registration.
There needs to be an amendment to automatically allow a person to be dropped from
requirements of registry if they are mentally, physically, or reach age 65 which limits or causes
them to be unable to register or not a serious risk.

The AWA Tier System is based on what crime was committed or age of victim rather than the
true risk assessment of recidivism of an individual.  This results in persons that state sex
offender programs have determined to be low risk being forced into life time registrations,
costing states unneeded added expense and time.

**BIG LEGISLATIVE HOAX:** (Better to be a Murder than Sex Offender)

I personally know multiple sex offenders who were approached on the prison yards repeatedly
and told, "You know what your problem is, you let your victims live.  Don't you know that it is
better to be a murder than a sex offender!"  Pointing out sex offenders have to register,
restrictions on residency, restrictions on where they go,  names listed on internet government
web sites, work restrictions, & social outcasts while murders do not.  Talking to various sex
offenders verifying this truth, one told me his lawyer told him  that it was better to be a murder
than sex offender.  It that does not scare you it should, as it does me.  If message is on prison
yards it is on the streets also.

So the very laws that legislatures claim are to protect people are in fact encouraging people to
kill their victims.  When laws are created they are usually to encourage one behavior and
discourage another, it this case they encourage murder.  They should rename the Adam Walsh
Child ~~Protection and Safety~~(Endangerment) Act, because that is what it does.  As the message
is spreading in the prison yards then you know it is also spreading on the streets too.  They may
claim the sex crime rates have decreased, but what about the total number of missing persons
and murders across this country?

AR-00001720

Around 94 to 96% of all sex crimes are committed by people **NOT** on the registry, so who are these registries protecting any way?  All they do is provide a **FALSE SENSE OF PROTECTION**, while not really protecting anyone, a big legislative hoax.

In Spring 1998 UMKC Law Review (1998 Univ. Of Mo-Kc School of law) stated, "Much current legislation, such as registration, notification, and sexual predator law, are not based on research of criminal statistics or treatment of sex offenders, what has emerged is a series of hastily-drafted laws in response to public pressure emanating from a string of publicized sex crimes, such as that which occurred in New Jersey involving the death of Megan Kanka."  That was years after first sex offender registration law was passed in New Jersey and we have had over two decades since then with no change in how things are done.

Time Magazine, May 21, 2018 "Inside Sex Offender Therapy" by Eliana Dockterman stated: "Punitive measure alone, however, have not been found to meaningfully increase community safety." "Recent research published by the American Public Health Association suggests that focusing on punishment rather than positive goals can actually increase the chance of recidivism." "...on national sex-offender recidivism, an overview of studies looking at the numbers in Connecticut, Alaska, Delaware, Iowa & S. Carolina found that the rate is about 3.5% for sex offenders."  In 2018 Missouri reported sex offender recidivism rate at 2%.

Justice Gary Stein (in New Jersey – Artway v. Attorney General of New Jersey) wrote: "...humiliation and stigma were not simply parts of early punishment, but at times were the only element of punishment... public notice and public ostracism concerning prior sex offences appear to fall squarely within the parameters of punishment as practiced at the time of the adoption of the Constitution."   Which clearly points out that registration is a punishment no matter what the legislators and courts say.  And since it does not really protect anyone as they claim, then it is only punitive in nature not administrative.

**CONCLUSION:**

BAN Sex Offender Registration and associated laws now, before countless others have to die because of politically correct legislators who are willing to turn registered constituents into second class citizens perpetuating a false sense of security while endangering the very people they claim to protect, just to get reelected.  In this time of struggles and government short falls it seems a waste to put countless man hours and dollars into registries across this land when it all could be better spent on health care, education, and infrastructure.

Sex offender registrations are **One of the Biggest Legislative Hoaxes** of all time.  Do the right thing and ban these horrendous laws based on bogus claims and falsehoods now.

A. Moore, Concerned American                                    (armoore@email.com)

For more in depth studies see:
A Decade of Devastation: Ten Years of the Adam Walsh Act
          http://www.oncefallen.com/10yearsofawa.html
The Budget Crisis and the Former Sex Offender
          http://www.oncefallen.com/budgetcrunch.html
REGISTRIES REVISITED
          http://www.oncefallen.com/registriesrevisited.html



NAME: David Richards

REG.# 65834-060
Federal Correctional Institution Elkton
P. O. Box 10
Lisbon, Ohio 44432

INSPECTED 21

INSPECTED 28

CLEVELAND OH 440

18 SEP 2020 PM 3 L

X-RAYED
SEP 24 2020
DOJ MAILROOM

Regulations Docket Clerk
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave. NW, Room 4234
Washington, DC
Docket No.: 049157

9/18/20

Dear Regulations Docket Clerk: [DOCKET № : OAG 157]

Please accept this letter as my commentary on the proposed Department of Justice changes to the SORNA laws.

I begin by paraphrasing Voltaire: "Before I argue, I will define my terms." Webster's defines 'punishment' as: "... a penalty imposed on an offender for a crime or wrongdoing." The Oxford English Dictionary defines 'punishment' as: "... loss or suffering inflicted ... severe treatment or suffering." Webster's defines 'penalty' as: "... a punishment fixed by law, as for a crime ... the disadvantage, suffering, or handicap imposed upon an offender ... (for) any unfortunate consequence, or (as the) result of an act ..."; and the OED defines 'penalty' as: "... a loss as a result of one's own actions."

Permit me to be abundantly clear. - I am not proud of the fact that I know first-hand that the SORNA laws are punishment. Due to a previous charge, I was required to register from July 2007 for 10 years. I experienced hate crimes, discrimination, public shaming, and

AR-00001723

2

estrangement from my family. I was treated unfairly in terms of housing, education and employment. While on the registry, shame was piled on, coming from almost everywhere. Having to endure the ramifications and the stigma that comes from being on the registry is traumatizing, and is punishment.

The SORNA laws are a knee-jerk reaction to the myth of the "frightening and high recidivism rate" of sex offenders. The facts speak for themselves. the recidivism rate for sex offenders is very low. And the recidivism rate after a second offense is so miniscule as to be hardly measureable.

According to a 2007 DOJ Study, sex offenders have a rearrest record of 5.3%. More recently, a 2014 DOJ Study showed a rearrest record of 5.6%. and a 2016 California Study showed a rearrest rate of 4.8%. Further, a recent Ohio Study showed an average reconviction rate of 0.8%.

Section 20913 of the U.S. Code says: "Duty to register is not a consequence ... of a District Court's special conditions of supervision;

Statutory duty to register is an obligation that exists independent of those conditions." The fact that the U.S. Code says that registration is not a consequence, but an obligation, means that it is indeed punitive.

The term "sex offender" is a stigmatizing label that keeps one in eternal shame by defining that person by the mistakes they've made, disregarding the humanity of that person, and keeping him locked in the vicious cycle of shame and isolation with little or no chance of redemption. That is punishment!

The overwhelming majority of persons who fall under the requirements of the SORNA laws are decent, law-abiding, hard-working citizens and human beings; persons who have learned from their experiences and mistakes; persons who have made fundamental changes in their lives; and persons who have paid their debt to society, as adjudicated by a U.S. District Court.

The fact is that the registry hurts more than it helps. It inhibits a person's successful reentry. It can make people homeless and helpless. It

AR-00001725

4

undermines the vulnerable support system tenuously in place; including participation in mandated treatment plans. These things are so very necessary for successful reentry. These things are underminal by the registry.

Thank you for considering my comments I look forward to a positive outcome.

Sincerely,

David Richards
№: 65434-060
FCI Elkton
P.O. Box 10
Lisbon. Ohio 44432

AR-00001726

J. Salamon
198 Chilson Road
W. Springfield, MA. 01089-2145

TRENTON NJ 085

REFERRED 14 SEP 2020 PM 6 L
MAIL REFERRAL UNIT

SEP 1 8 2020

Regulation Docket Clerk, Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW, Room 4234
Washington, DC  20530

20530—

AR-00001727

J. Salamon
198 Chilson Road
West Springfield, Massachusetts
01089-2145
jsalamon2038@emailinterface.org

September 11, 2020

Regulation Docket Clerk, Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW, Room 4234
Washington, DC 20530

RE: Docket No. OAG 157

To Whom It May Concern:

In regard to the above referenced matter, enough is enough! We, as a society, need to stop creating barriers that make it more difficult for any United Stated Citizen to establish themselves and be productive members of society, post-conviction. Admittedly, those convicted of a sexual offense have certainly committed an upsetting and horrific act, but never enough so to restrain their liberty, as guaranteed by the Constitution of the United States, once released into the public community. If society is going to revert back to the caste system of the 1600's, then it should certainly have a registry for those who have commited murder, arson, as well as animal abuse. At that point, we can't leave anyone out, so there must be a registry for those that have driven while intoxicated and drug dealers. In the midst of the ongoing opiod epidemic I surely want to know who is likely to get my children addicted to drugs, which may lead to premature death. While this may sound like satire, in all seriousness, it highlights the absurdity of the Registry scheme. Thankfully, the United States was founded upon tenets, one of which being "fresh starts" and "second chances". It is imperative, as a preservation of human and Constitutional rights that we recognize that these offenders are human beings, those that have made a mistake, who also have impregnable rights and should be afforded the same unencumbered opportunities as everyone else in society.

Sexual offenders have always been a part of society. Those convicted of committing rape, sexual assault and other lesser related offenses have always been punished and then released into the community. For the vast majority of history they were not registered. They did not have to "check in" with law enforcement once they were no longer on probation or parole. Their presence in the community as former sexual offenders was largely unknown. They lived and worked wherever they could with no restrictions on where; there were no imaginary lines drawn around parks or schools, no prohibition against trick-or-treat or other Halloween activities, no requirement to notify law enforcement if their telephone number or place of employment changed, or if they travelled to another state. According to the wisdom of today, the exact wisdom behind the current proposed amendment to SORNA, recidivism must have been rampant. As each year more individuals, as virtually all "first-time" offenders were released after serving a sentence for a sexual crime, the sheer mass of these felons unleashed on an unsuspecting public, with no one tracking or constantly monitoring them, must have resulted in ever-increasing numbers of victims. Stranger-rape victims must have been piling up in the streets. Those suffering from sexual assault must have been overwhelming the hospitals and legal system. Children must have been kidnapped from schools and parks in record number on a daily basis. But none of those things happened.

A study done in New York City, the Mayor's Commitee Report on Sex Offenses covering the years 1930 through 1939 shows the same low sexual reoffense rates for