those released after serving a sentence as we see today. A Bureau of Justice report published in 1997 gives this information: In 1976, 53 instances per 100,000 female victims (Male victims were not counted until later); in 1980, 65 per 100,000; in 1986, 65 per 100,000; in 1995, 66 per 100,000. This was all pre-Megan's Law registries. Furthermore, children were not being assaulted or kidnapped from parks or schools. Schools had no security monitors, no screening devices; parents and other members of the public were, for the most part, free to come and go as they wished. Children played in parks, in the streets, in neighbors' yards, unmonitored and unharmed. The rare, rare occassion of a child being taken by a stranger (e.g., Jaycee Durgard; Elizabeth Smart), was so remarkable that it dominated news cycles for months and even years.

Those convicted of sexual crimes did what those convicted of other crimes did. They served their sentences, struggled to gain employment upon release, and assimilated into society as best they could. The only difference between the former sexual offenders and those convicted of other offenses is that the reoffense rate for the former was and remains remarkably lower than for the latter. But a lot happened despite the need. Adam Walsh happened in 1981, although never proven to have been a sexual crime; Jocob Wetterling happened in 1987, and Megan Kanka happened in 1994. These children were all tragically murdered. Jacob and Megan were victims of sexual offenses. Their cases were rare, horrific, and catalytic. We all know what it has mushroomed into - something that puts school children on the registry for sending indecent pictures to each other as well as people caught urinating in public. Advocates overreact and newspaper articles portray the situation in the most sensational terms possible.

There will always be sexual offenders. Sadly, that will not change. Those who are convicted will serve their sentences and again become a part of society. A minuscule percentage of those will reoffend. The vast majority will not. And our modern-day attempts at monitoring and tracking and restricting and controlling every aspect of their lives will have nothing to do with whether they recidivate. The Sexual Offender Registry is out of control, overbroad and largely unnecessary and ineffectual.

The SORNA guidelines in current iteration are not only overreaching, but grossly overbroad and vague. First, the fact that the SORNA guildlines sweep everyone convicted of a "sexual crime" into the same category, under the umbrella of "sex offender" is a major flaw. This gets applied to rapists, consensual adult-minor relationships, underage pornography viewers, those found urinating in public and indecent assault, even though some of these are not "sexual" in nature. While I do not believe a criminal registry of any sort should exist or is Constitutional, I understand the need to safeguard the public. I do not condone inappropriate sexual acts of any kind and I join in the chorus that believes something must be done to protect the innocent. For lack of a better method, and need to do something, the government responded with the SORNA Act. The SORNA guidelines may have a place, but it should be strictly reserved for the worst of the worst, those convicted of REPEAT contact offenders. This stands on the fact that prior to the Registry and for decades after its inception, the recidivism rate has remained stubbornly unchanged. While politicians, media pesonalities, prosecutors and even some Judges claim some unsubstantiated astronomical rate of recidivism, this is false.

That being said, the proposed rules should not be instituted. They take this issue and society in the wrong direction. Before any added restrictions are implemented, this area of law needs to be refined and tailored to restrict only those with repeat contact offenses. At that time, it will then be appropriate to evaluate the SORNA guidelines and determine if they are effective as written, or

AR-00001729

through empirical evidence, whether further restrictions are necessary. And even then, any form of punitive restriction of liberty should not be a broad-brushed imposition. They must be tailored to a degree for each individual crime, effectuating a measure of correction with a long-term goal of behavioral change while encouraging a means of being responsible, contributing members of society, not a patsy or burden.

Therefore, I repeat, not a single one of the proposed changes to SORNA should be enacted.

Your time and consideration in this matter is sincerely appreciated.

Respectfully Submitted,

NAME James Stewart
REG.# 07491 - 010
Federal Correctional Institution Elkton
P. O. BOX 10
Lisbon, OH 44432

CLEVELAND OH  440

17 SEP 2020  PM 2  L

X-RAYED

SEP 28 2020

DOJ MAILROOM

INSPECTED 28

INSPECTED 26

Regulations Docket Clerk
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave NW RM 4234
Washington, DC 20530

Docket # OAG 157     20530-

AR-00001731

TRULINCS 07491010 - STEWART, JAMES HALE - Unit: ELK-D-B

-------------------------------------------------------------------------------------------------------

FROM: 07491010 STEWART, JAMES HALE

SUBJECT: Proposed Regulations
DATE: 09/05/2020 03:23 PM

Regulations Docket Clerk
Office of Legal Policy
U.S. Dept. of Justice
950 Pennsylvania Ave. NW Rm. 4234
Washington,DC 20530

Docket No. OAG 157

    I am writing to comment on the proposed rules of the federal Sex Offender Registry.
There is a strongly held conviction that a sex offender Cannot change and will eventually re-offend This is a Myth not factual.
    The term "Sex-Offender" is a Stigmatizing Label that is defining a person by the mistakes They have made in the past. It
disregards the persons humanity and it keeps them Locked in Shackles of the past without a chance of Redemption. It attempts
to keep one in eternal Shame. Yes they have been convicted of a sexual offense , but they are decent, good Human beings
who have Learned from their experiences, and many have made fundamental changes in their Lives.
            Never Judge People by their past , People change, People move on..

    Being on the registry brings more shame coming from all corners. For everyone having to endure the ramifications and
stigma that comes from being on the registry is Traumatizing in and of itself. Please restore the sense of humanity We all need
to experience.

    .  MYTH-- All sex-offenders are bad people and want to harm others.
        Fact--- Criminal Justice experts agree a person Leaving Prison has a much Higher success rate if there is family and a
good support system in place. Persons with sex-offense Compulsions act out due to shame in many instances as the addiction
cycle reaches the shame level. The tracking mechanisms put a person in crisis on housing, job seeking and retaining possibly
preventing the family unit to stay together, and a general sense of self-worth. These are characteristics that can lead to Re-
offending, Rather than protecting, The laws are putting the public at risk by minimizing the persons ability to gain a creditable
life.

    MYTH-- All sex-offenders are child molesters and all child molesters are predators.
    Fact-- The FBI-UCR,National Crime Victimization survey reveals that only 23% of sex crimes are against someone under 18;
and the bureau of justice statistics shows that Predators represent around 3% of all sex offenders and child killers are less than
1% of all offenders.

The fact is the Registry Hurts more than It helps, The Registry prevents people from Re-entry into a productive Life and
instead of it makes people Homeless and Helpless, This is a fact.

    Consider A Data Base that the FBI and other Law enforcement have access to instead of a National or international
Registry .

                                                                James Stewart

                                                                07491 - 010

MCDANIEL 14725088
AL CORRECTIONAL INSTITUTION
X 6001
ND KY 41105



CHARLESTON WV  250

14 SEP 2020  PM 3  L

INSPECTED 28

X-RAYED

SEP 1 8 2020

DOJ MAILROOM

Regulations Docket Clerk, Ofc. of Legal Policy
United States Department of Justice
950 Pennsylvania Avenue, NW : Room 423
Washington, DC 20530

INSPECTED 28

cKet No. OAG-157

20530-

AR-00001733

Thursday, September 10, 2020

Regulations Docket Clerk, Ofc. of Legal Policy
United States Department of Justice
950 Pennsylvania Avenue, NW ; Room 423
Washington, DC 20530

Re: Docket No. OAG-157; Comments/
Objection To The Proposed
Changes To SORNA

Greetings :

Please accept my comments/objection regarding the
proposed changes to the Sex Offender Registration
and Notification Act (SORNA) as discussed below.

1. First and foremost, SORNA simply does not work. For every
government study lauding the effectiveness of SORNA
there are two or three independent studies which support
the fact that SORNA is an invasive, counter-productive,
punitive, and ineffective failure.

2. As stated above, SORNA is in fact a punitive measure and
not an administrative procedure. SORNA must be
repealed rather than being enhanced. The fact that
the measure is punitive, whether intentional or

1

simply a by-product of the Act, is well documented. The changes proposed by the DOJ only serve to further enhance the punitive nature of SORNA.

By its very nature, SORNA effectively extends the sentence of the individual convicted of a crime classified as a sex offense, in many cases turning a conviction into a de facto "life sentence without parole". There is no means by which an offender may complete a Sex Offender Treatment Program or other counseling (which are proven to drasticly reduce an already extremely low recidivist rate) to either reduce or eliminate their registration requirements or reduce a term of incarceration. We don't register drug offenders (or other offenders) in this country even while they are among the highest of recidivism rates, and yet we reward drug offenders (which is always a crime of violence) with programs such as RDAP/RSAT which provide the drug offender with a year off their sentence and monetary gain.

It is high time we do likewise for the convicted SO who who completes SOP/SOTP/NR-SOTP or individualized counseling. Sex Offender Treatment Programs are proven to be highly effective in the reduction of recidivism, unlike measures such as SORNA which only promote public fear and mistrust.

2

AR-00001735

Among the great many punitive aspects which
SORNA creates — primarily due to being a public-
accessible database rather than Law Enforcement only —
is that it creates a societal atmosphere of fear and a
sense of public threat where no threat actually exist.

Very few SO's are sexually violent predators the likes
of Ted Bundy or Jeff Dahmer; yet American society
continues to view every SO in such light due to media
sensationalism and worthless "feel good laws" such as the
Sex Offender Registration and Notification Act.

Due to publically available registration information
created by SORNA, the vast majority of registrants
are ostracized and denied even the basic necessities of
life such as employment and housing (which can become
the basis for reincarceration due to registration violation).
Such actions are indeed punitive and not administrative.

To enhance SORNA, when it should be dismantled and
replaced with rehabilitive treatment programs, serves
only to continue the punishment of an American citizen
after they have served their term of physical incarceration,
while leaving them both mentally and emotionally incarcerated.

This is 2020, not 1720; let us open our eyes that we may
see clearly. We need effective rehabilitation, not
ineffective registration.

3

AR-00001736

I can personally testify to the punitive effects of the unjust, public-accessible registration information. As a Registrant:

A. I have lost housing and become homeless.
B. I have lost employment and been denied employment.
C. I have lost personal business opportunities.
D. I have been denied hotel accomodations "in the interest of public safety"; I have been refused service.
E. I have been harassed, threatened with violence, and had my home vandalized and property stolen on multiple occassions.
F. I have had long-standing personal relationships destroyed.

All of this because of SORNA making my private, personal information into public information. Because of SORNA, I fear for my own safety and for the safety of my loved ones.

Case in Point: I provided the Federal Government with well documented, confirmed credible information regarding a self-proclaimed domestic terrorist who had posted bomb-making instructions on the Internet and had plans to murder the President, a Senior Federal Judge, a Federal Prosecutor, and a WV State Trooper as well as the Editor of a local news-paper. He had drawn maps of the US Courthouse in Charleston, WV as well as posessing a "shopping" list of items he would need to carry out his plan to include an AR-15 and Body Armor as well as improvized explosive devices which he would build.

4

AR-00001737

The Government wrongly provide him with documentation naming me as their primary source of information. This person has vowed revenge for my "snitching." He also knows that I must register as a sex offender and that with one click of the mouse he will have all the information he needs to exact his revenge upon me and my family. To further "enhance" SORNA information is for the DOJ to "sign my death warrant". He will be released to Ripley, WV which is only a 30 minute drive to the area which I will return. I'll be "looking over my shoulder" for the rest of my life due to SORNA and won't even be allowed to own a weapon for protection of self or family.

3. The DOJ has no authority to enact law; this is the duty of Congress. Congress alone is to legislate changes to Federal law. Furthermore, the States may enact stricter law as enhancement to Federal law but the Federal Government has zero authority to "toughen" State law. Incidentally, the United States Constitution does not grant the Federal Government liberty to interfere with the sovereignty of the individual States. Moreover, in 2011 US Dist. LEXIS 40815, Case No. 3:10-cv-0147, the Court opined that it "did not have the jurisdiction to compell the State of West Virginia"; as such, neither would the DOJ or any agency of the Federal Government hold jurisdiction to compell any of the United States to be subject to any Federal Rule change, be it a change to enact stricter SORNA measures or any other measure, rule, or act.

5

In conclussion, SORNA has created a sub-culture of individuals viewed by society as less than human and unworthy of redemption, not unlike what African — Americans faced during the 1960's and 1970's and still largely continues in 2020. This should not be

Short of the elimination of the databases and the repeal of the Sex Offender Registration and Notification Act, the only change to SORNA that I could support in good conscience would be to eliminate public access to Sex Offender Registration databases and make them accessible to law enforcement agencies only in the performance of their public safety duties only.

Respectfully submitted,

David W. McDaniel; 14725-088
Federal Correctional Institution
PO Box 6001
Ashland, KY 41105

AR-00001739

MICHAEL RAGAN JR.
17 MAPLE Hill DRIVE
PORT DEPOSIT MD
21904

TRENTON NJ 085

15 SEP 2020  PM 5  L

REFERRED
MAIL REFERRAL UNIT
SEP 21 2020
READER #3

REGULATION DOCKET CLERK
OFFICE OF LEGAL POLICY
U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE NW
ROOM 4234
WASHINGTON, DC 20530

20530-

AR-00001740

Michael Ragan
17 Maple Hill Drive
Port Deposit, Maryland
21903

September 11, 2020

Regulation Docket Clerk, Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW, Room 4234
Washington, DC 20530

RE: Docket No. OAG 157

To Whom It May Concern:

In regard to the above referenced matter, enough is enough! We, as a society, need to stop creating barriers that make it more difficult for any United Stated Citizen to establish themselves and be productive members of society, post-conviction. Admittedly, those convicted of a sexual offense have certainly committed an upsetting and horrific act, but never enough so to restrain their liberty, as guaranteed by the Constitution of the United States, once released into the public community. If society is going to revert back to the caste system of the 1600's, then it should certainly have a registry for those who have commited murder, arson, as well as animal abuse. At that point, we can't leave anyone out, so there must be a registry for those that have driven while intoxicated and drug dealers. In the midst of the ongoing opiod epidemic I surely want to know who is likely to get my children addicted to drugs, which may lead to premature death. While this may sound like satire, in all seriousness, it highlights the absurdity of the Registry scheme. Thankfully, the United States was founded upon tenets, one of which being "fresh starts" and "second chances". It is imperative, as a preservation of human and Constitutional rights that we recognize that these offenders are human beings, those that have made a mistake, who also have impregnable rights and should be afforded the same unencumbered opportunities as everyone else in society.

Sexual offenders have always been a part of society. Those convicted of committing rape, sexual assault and other lesser related offenses have always been punished and then released into the community. For the vast majority of history they were not registered. They did not have to "check in" with law enforcement once they were no longer on probation or parole. Their presence in the community as former sexual offenders was largely unknown. They lived and worked wherever they could with no restrictions on where; there were no imaginary lines drawn around parks or schools, no prohibition against trick-or-treat or other Halloween activities, no requirement to notify law enforcement if their telephone number or place of employment changed, or if they travelled to another state. According to the wisdom of today, the exact wisdom behind the current proposed amendment to SORNA, recidivism must have been rampant. As each year more individuals, as virtually all "first-time" offenders were released after serving a sentence for a sexual crime, the sheer mass of these felons unleashed on an unsuspecting public, with no one tracking or constantly monitoring them, must have resulted in ever-increasing numbers of victims. Stranger-rape victims must have been piling up in the streets. Those suffering from sexual assault must have been overwhelming the hospitals and legal system. Children must have been kidnapped from schools and parks in record number on a daily basis. But none of those things happened.

A study done in New York City, the Mayor's Commitee Report on Sex Offenses covering the years 1930 through 1939 shows the same low sexual reoffense rates for those released after serving a sentence as we see today. A Bureau of Justice report

AR-00001741

published in 1997 gives this information: In 1976, 53 instances per 100,000 female victims (Male victims were not counted until later); in 1980, 65 per 100,000; in 1986, 65 per 100,000; in 1995, 66 per 100,000. This was all pre-Megan's Law registries. Furthermore, children were not being assaulted or kidnapped from parks or schools. Schools had no security monitors, no screening devices; parents and other members of the public were, for the most part, free to come and go as they wished. Children played in parks, in the streets, in neighbors' yards, unmonitored and unharmed. The rare, rare occassion of a child being taken by a stranger (e.g., Jaycee Durgard; Elizabeth Smart), was so remarkable that it dominated news cycles for months and even years.

Those convicted of sexual crimes did what those convicted of other crimes did. They served their sentences, struggled to gain employment upon release, and assimilated into society as best they could. The only difference between the former sexual offenders and those convicted of other offenses is that the reoffense rate for the former was and remains remarkably lower than for the latter. But a lot happened despite the need. Adam Walsh happened in 1981, although never proven to have been a sexual crime; Jacob Wetterling happened in 1987, and Megan Kanka happened in 1994. These children were all tragically murdered. Jacob and Megan were victims of sexual offenses. Their cases were rare, horrific, and catalytic. We all know what it has mushroomed into – something that puts school children on the registry for sending indecent pictures to each other as well as people caught urinating in public. Advocates overreact and newspaper articles portray the situation in the most sensational terms possible.

There will always be sexual offenders. Sadly. that will not change. Those who are convicted will serve their sentences and again become a part of society. A minuscule percentage of those will reoffend. The vast majority will not. And our modern-day attempts at monitoring and tracking and restricting and controlling every aspect of their lives will have nothing to do with whether they recidivate. The Sexual Offender Registry is out of control, overbroad and largely unnecessary and ineffectual.

The SORNA guidelines in current iteration are not only overreaching, but grossly overbroad and vague. First, the fact that the SORNA guildlines sweep everyone convicted of a "sexual crime" into the same category, under the umbrella of "sex offender" is a major flaw. This gets applied to rapists, consensual adult-minor relationships, underage pornography viewers, those found urinating in public and indecent assault, even though some of these are not "sexual" in nature. While I do not believe a criminal registry of any sort should exist or is Constitutional, I understand the need to safeguard the public. I do not condone inappropriate sexual acts of any kind and I join in the chorus that believes something must be done to protect the innocent. For lack of a better method, and need to do something, the government responded with the SORNA Act. The SORNA guidelines may have a place, but it should be strictly reserved for the worst of the worst, those convicted of REPEAT contact offenders. This stands on the fact that prior to the Registry and for decades after its inception, the recidivism rate has remained stubbornly unchanged. While politicians, media pesonalities, prosecutors and even some Judges claim some unsubstantiated astronomical rate of recidivism, this is false.

That being said, the proposed rules should not be instituted. They take this issue and society in the wrong direction. Before any added restrictions are implemented, this area of law needs to be refined and tailored to restrict only those with repeat contact offenses. At that time, it will then be appropriate to evaluate the SORNA guidelines and determine if they are effective as written, or through empirical evidence, whether further restrictions are necessary. And even

AR-00001742

then, any form of punitive restriction of liberty should not be a broad-brushed imposition. They must be tailored to a degree for each individual crime, effectuating a measure of correction with a long-term goal of behavioral change while encouraging a means of being responsible, contributing members of society, not a patsy or burden.

Therefore, I repeat, not a single one of the proposed changes to SORNA should be enacted.

Your time and consideration in this matter is sincerely appreciated.

Respectfully Submitted,

'oynton Beach Blvd #414
Beach, Fl. 33437

WEST PALM BCH FL 334

11 SEP 2020  PM 4

INSPECTED 21

SEP 1 7 2020
DOJ MAILROOM

INSPECTED 28

Regulation Docket Clerk
Office of Legal Policy, U.S. Department of Justice
950 Pennsylvania Avenue N.H.
Room 4234
Washington, D.C. 20530

20530-

AR-00001744



**Florida Action Committee, Inc.**
6615 W Boynton Beach Blvd #414
Boynton Beach, FL 33437
www.floridaactioncommittee.org

September 3, 2020

Regulations Docket Clerk
Office of Legal Policy, U.S. Department of Justice
950 Pennsylvania Avenue NW
Room 4234
Washington, DC 20530

RE:    **DOCKET NO. OAG 157 – COMMENTS ON SORNA**

I am President of the Florida Action Committee (FAC). We are a 2000+ member non-profit organization that advocates for public safety and laws based on empirical research. Among our members are persons required to register as sexual offenders or sexual predators in Florida.

Our organization is <u>strongly opposed</u> to the proposed changes to the Sex Offender Registration and Notification Act ("SORNA") in their current form *<u>unless</u>* SORNA is amended to act as a ceiling and not a floor, when it comes to requirements imposed on persons required to register as sexual offenders.

In *United States v. Kebodeaux*, 570 U.S. 387, 398 (2013), the Supreme Court stated that SORNA reduced the duration of Kebodeaux's registration requirement from the lifetime requirement imposed by Texas law, and reduced the frequency with which Kebodeaux must update his registration to every six months from every 90 days as imposed by Texas law. By now imposing requirements that are *the greater of* either federal, state or municipal laws, we create a huge disparity among people who were convicted of the exact same offense but who happen to live in different jurisdictions. That result is directly in conflict with the stated intent of SORNA, which is to create uniformity among jurisdictions.

Our organization sees first-hand the confusion created by having to navigate the state statutes, county and city ordinances and a federal Act when complying with "registration requirements". These dramatically varying rules and restrictions often conflict with each other and confuse not only the individuals who must comply with them, but the agencies that must enforce them.

1

AR-00001745

These new requirements impose vague additional requirements, which in Florida require in-person registration. For example, SORNA will now require that a sex offender who is not employed at a fixed location such as a landscaper or construction worker must provide authorities information describing where he/she will be working *with whatever definiteness is possible*. Will this require a daily trip to the sheriff's office to announce a new site or route? These sort of requirements can preclude employment in certain fields altogether and we all know how difficult it is for people saddled with this stigma to secure employment to begin with.

Most importantly, in the fifteen years that SORNA has been in effect, there is zero (0) evidence proving its effectivity. Study after study presents no evidence that SORNA effectively reduces sex crime recidivism. In the absence of any proof that this is effective and in the face of so much evidence that registration only destabilizes and creates a barrier to successful reentry to a population that already has a low rate of recidivism, we strongly implore you to reconsider SORNA in its entirety.

Sincerely,

Gail Colletta, President
The Florida Action Committee, Inc.

2

AR-00001746

PETER WM,
954 BRANFORD LN NW
LILBURN, GA 30047

REFERRED
MAIL REFERRAL UNIT
SEP 23 2020
READER #3

REGULATIONS DOCKET CLERK
OFFICE OF LEGAL POLICY
U.S. DEPT OF JUSTICE
950 PENNSYLVANIA AVE NW ROOM 4234
WASHINGTON, DC 20530

Docket No. OAG 157

PERSONAL IDENTIFYING INFORMATION: Please redact my Signature, Name and Address provided at the end of this document.

Thank you for the opportunity to provide feedback on the proposed rule changes reported in the Federal Register Vol. 85, No. 157, Docket No. OAG 157.

1. If the Attorney General is granted the authority to interpretation and implementation of SORNA, interpretations can be changed with each new administration or appointment.
2. These potential changes could require Sex Offenders to comply with ever changing requirements that may or may not be known to them, resulting in higher recidivism rates, incarcerations and cost increases at all phases.
3. This could cause interruptions or even destroy families with rule changes based on political goals.
4. May create a whole nightmare of legal cases for violations to the potentially ever-changing interruptions.
5. Sex Offenders caught up in this process could incur large legal fees to prove unintended violations. It is safe to assume a large majority of Sex Offenders live and work poverty level or below forcing them to suffer repercussions due to the inability to pay for legal fees or maintain jobs because of incarceration pending court actions to prove their ignorance of the changes.
6. The proposed rule implements requirements for Sex Offenders to register for convictions prior AWA implementation. This is really destructive and could create a legal nightmare for offenders who have not reoffended post AWA and SORNA laws in place since July 27, 2006 or 14 years ago.
    a. This published change could potentially be in direct conflict with state rulings that do not requiring Sex Offenders to register if the crime was committed prior to the AWA. Many of states have added to the baseline of the SORNA with additional requirements. This would cause additional hardship in areas such as living and working restrictions that they currently do not have to adhere to. It could push many Sex Offenders into homeless situations as it does now to Sex Offenders registering after the enactments of the AWA.
    b. Without understanding the punishment of registering as a Sex Offender, this change would potentially destroy families due to financial and emotional stressors.
7. There should be limits set and oversight of the interpretation and implementation that the Attorney General creates. Without this, the Attorney General would be free to make changes without public input as required by current Congressional vetting processes.

Peter Wray
954 Branford Lane NW
Lilburn, GA 30047

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 6, 2020

| View More Comments ⟨724⟩ (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments ⟨724⟩ (/docket/DOJ-OAG-2020-0003/comments) | Share ⏷ |
| --- | --- |

Comment

This my objection to the SORNA Law and DOJ Proposed Rule changes.

Since my misdemeanor plea I have been on STATE SOR for over 19 years. It has dramatically effected, my ability to provide adequate support for my children, two of my children deny my existence due to their positions as teachers, I have lost several career opportunities, which would have contributed to my childrens health, wellbeing and education and societys through tax monies on that income, any position has become increasingly more difficult to obtain as ex post facto legislative changes, I have been harassed out of a few jobs when coworkers used STATE SOR to advance their own position, I have been the victim of vigilantism, all the apartment complexes in this city refuse to rent to anyone on the Registry, I have had landlords tell me to move after they found that I was on the Registry, The Registry greatly effects travel into other states as one has to Identify ones motel or hotel, I have been harassed in recreational, outright simple shunning that greatly effects the stability of a Registrant, The restriction on Living, Working and Loitering within a School zone is prohibitive even if one could determine where the boundaries lay as there are so many as, where can I go to Church as many have schools nearby, or Political Activities may be impacted by The Registry My health is impacted as I have had more than a few medical care givers refuse to give me care for my critical condition, as I age I note that adult communities as well as assisted living facilities along with nursing homes refuse to allow individuals on The Registry.

I pray that you let SORNA die in Committee and not enact the DOJ Rule changes of 10/2020 so that a reasonable and scientific based SOR can be written in conjunction with the ACLU and allies and the State of Local-State and US Government.
Consider:
The system is broken. Its overwhelmed and I think the public is starting to realize that. You cant paint sex offenders with a broad brush. John Walsh, father of Adam Walsh**

The harm the Registry does to families is incalculable. Breaking up otherwise good stable families.

Most sex crimes are committed by a person well known to the victim yet the Registry seems to be based upon

stranger danger.

A person who is on a registry and they are doing good and complete all terms of the Court and no other convictions there is no path off the registry.

Consider the money and lost Law Enforcement time spent on this program with little return value, in fact that this money used on the registry could be used for victim treatment and public education.
Im worried that were focusing so much energy in naming and shaming convicted sex offenders that were not doing as much as we should to protect our children from other real threats. Patty Wetterling, mother of Jacob Wetterling**

the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.
In Does v. Snyder, the court accordingly found that the Local-State law was punitive in effect and could not be imposed retroactively. The Snyder court forcefully explained:
A regulatory regime that severely restricts where people can live, work, and loiter, that categorizes them into tiers ostensibly corresponding to present dangerousness without any individualized assessment thereof, and that requires time-consuming and cumbersome in-person reporting, all supported by -at best- scant evidence that such restrictions serve the professed purpose of keeping Local-State communities safe, is something altogether different from and more troubling than Alaskas first-generation registry law. SORA brands registrants as moral lepers solely on the basis of a prior conviction. It consigns them to years, if not a lifetime, of existence on the margins, not only of society, but often, as the record in this case makes painfully evident, from their own families, with whom, due to school zone restrictions, they may not even live. It directly regulates where registrants may go in their daily lives and compels them to interrupt those lives with great frequency in order to appear in person before law enforcement to report even minor changes to their information.**

Isnt it time lawmakers consider the statistics and listen to the experts?

In closing I ask that the DOJ Rule Changes STATE SOR, SORNA law be stricken as unconstitutional and thus allow Registrants to fully reintegrate into society without the media Myths and fear mongering based upon antipathy of a disfavored class.

Sincerely,
T. Mercier

**Does v. Snyder from Documents



Attachments  2

 SORNA RESPONSE 08172020

⬇ Download ▾

MCFJ SOR DOJ RECIDIVISM RATE Report MAY 2019 rsorsp9yfu0514

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0479/attachment_2.pdf)

**Comment ID**

DOJ-OAG-2020-0003-0479

 **Tracking Number**

1k4-9jch-cx2k

**Comment Details**                                    **Submitter Info**

**Received Date**

Oct 5, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download    Agencies    Learn

(/about)        (/bulkdownload)    (/agencies)  (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

AR-00001751

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 6, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)    Share ▾

Comment

The Sorna Act is outdated and casts a large web on otherwise law abiding citizens who have already paid their dues in one way or another.
This act needs to be revised. There have been many studies conducted since this act came into fruition that show that this act is unconstitutional.
Studies also show that this act does not deter sex crimes and that majority of sex crimes committed are by persons that are not even on the registry.
Majority of people on the registry simply want to get along with their lives but the registry continues to penalize them in all aspects of their lives.
I agree that there has to be some form of registration for repeat offenders for violent sex crimes but majority offenders on the registry do not fit this category.
I implore you to make changes or simply replace this act that does not casts such a wide net over people that do not deserve to be on it for the rest of their lives.

**Comment ID**

DOJ-OAG-2020-0003-0480

 **Tracking Number**

kfw-w2v6-uf0n

**Comment Details**          **Submitter Info**

**Received Date**

Oct 5, 2020

AR-00001752



About   Bulk Data Download   Agencies   Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001753

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 6, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
|---|---|

---

Comment

I am writing as a victim of sexual abuse. I want to thank the politicians that have tried to make society safer against sexual crimes. However, after reading the restrictions of SORNA, I know this would not have made a difference in protecting me when I was abused as a minor because of how focused it is on the false "stranger danger". Truth is, Christianity and psychological help has guided me to forgive my wrongdoer, and I would never want them to be subject to SORNA as I am confident they would not reoffend.

All SORNA does is create a *false* image of safety. False because it is scientifically proven offenders have one of the lowest reoffending rates of any crime. SORNA creates separation in society, giving the illusion every person on the registry is the same. But they are not! SORNA has also instigated vigilantes to take matters into their own hands, and police sickly applaud their actions.
I wish the government would take *all* the effort put into the reactionary SORNA, and instead create public awareness that would prevent sexual crimes instead of continuously punishing those that are low-risk of reoffending. SORNA should focus on those of high-risk and who truly are a danger to society.

I am a victim and I wholeheartedly disagree with SORNA.

| **Comment ID** |
|---|
| DOJ-OAG-2020-0003-0481 |

| ◎ **Tracking Number** |
|---|
| kfx-7ri8-eoe5 |

| **Comment Details** | **Submitter Info** |
|---|---|

AR-00001754

**Received Date**

Oct 5, 2020



Your Voice in Federal Decision Making

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001755

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 6, 2020

| View More Comments  (724) (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  (724) (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

Comment

People CAN and do change This list allows no one a chance. People have jobs and families and look forward to ending their time spent on the lists, subject to public scrutiny when in fact, not all crimes fit the punishment. This makes it infinitely more difficult and in fact ruins their lives forever, not only for the time they were sentenced to. It sets up their children for failure. If someone is indeed in need of monitoring as a repeat offender, let the states systems address this.
Why punish those who have made a mistake and only gone forward improving their lives and now face total desolation.

Under age consensual sex does not make one a life long predator. 25 years is enough punishment. Consider if your sons/daughters or loved ones made a mistake but have paid their time. Would you feel the same if this involved your loved ones? Or would you consider it to be a harsh move?

Allow people to graduate from this list, to rise above and continue on with their lives. Allow consideration for time spent changing their lives. Does the system allow for a personal review of every case?? Every case is not the same. This is not cookie cutter.
If you wish to put the law into effect, put it into effect for new crimes. How can you consider this a fair and equitable plan? to punish people who have already been punished and are looking to freedom? How can you go back years and recall this population of people back into more years of penalty then they were orignally told they would have? Look at yourselves in the mirror.. Again I ask,.. if this were your family would you do the same? Would you fight to make this law effective if your family member was punished for under age consensual sex and has served 20 years as a hard working citizen, with a family and now faces being pushed back into more years of punishment. Look in the mirror.. if it was your son, your grandson, your husband.. would you really think this was fair??

| **Comment ID** |
| DOJ-OAG-2020-0003-0482 |

AR-00001756



**Tracking Number**

1k4-9jco-gm71

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 5, 2020



Your Voice in Federal Decision Making

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

The current practice of putting all offenders on the sex offender list is a life long punishment in itself . It should not be used for low tier offenders. It currently groups all levels of offenders together which taxes law enforcement, floods the system and hides the most dangerous predators . Placing the lowest tiers of first offenders on the same level as violent high level offenders is not only cruel its counter productive. Not only do they pay for their original punishment handed down by the court they are then placed on the sex offender list which makes it nearly impossible to find work , education and every day needs like housing . The list continues to brand and punishment them .

In its current state , it does nothing more then add isolation and despair and offers no real help to anyone . It keeps low offenders with a chance at rehabilitation from attaining any kind of proper education, employment or housing and locks them out of society. If anything this is a further threat to society. If you strip a young man of all his rights and needs as a human how do you expect him to move forward on a higher path? The offender list program needs to be revised . It condemns many young people to an inhuman existence most of them do not deserve.

**Comment ID**
DOJ-OAG-2020-0003-0483

 **Tracking Number**
1k4-9jd2-senq

**Comment Details**                    **Submitter Info**

AR-00001758

**Received Date**

Oct 6, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001759

Comments on Rulemaking

SUBJECT:  Registration Requirements Under the Sex Offender Registration and Notification Act (SORNA), 28 CFR Part 72

DATE:  October 5, 2020

Reference: Docket No.  OAG 157

**Introduction to Comments**

Due to ever increasing state and federal laws and the continued lack of enforcement of the federal ICAC standards of investigation, the state and federal sex offender registries have become bureaucratic monsters for a record number of US citizens.  Many requirements placed on registrants go far beyond simple administrative purpose.  Since registries were first created, registrants in some jurisdictions now have restrictions on where they can live, they are restricted from visiting churches, parks and schools, they cannot participate in certain holidays like Halloween, they cannot vote or own or possess firearms for self-defense, face harsher penalties by law than non-registrants for future non-sex related offenses, their DNA is kept in a database for future reference without probable cause, they cannot get mortgage loans and business loans, or rent property, they cannot enter public property like the Pentagon even if they are a federal contractor, they cannot attend certain colleges or schools, they cannot travel abroad to many places in the world, and they are subject to a whole host of private industry restrictions like not being able to visit Disney World or other theme parks, not being able  to stay at certain hotels when traveling, and not being able to obtain a decent, if any, job.  Part of the reason for this is because the federal SORNA act allows states to be more restrictive than the federal SORNA act, which is highly unusual for federal law, which generally does not allow states to create laws that are more restrictive than the federal law due to possible violations by the states of the federal Constitution's inalienable liberties and rights of US citizens.

The sort of segregation that the sex offender registries have created was ended in the landmark Supreme Court ruling in Brown V. Board of Education and is reminiscent of the Jim Crow laws that unfairly demonized a specific class of human beings to justify regulating them.  Therefore, the federal SORNA rules must be constructed in such a way as to respect state's rights and the rights of registrants under state law and perhaps more importantly, must require states to respect registrants' federal rights and privileges guaranteed by the federal Constitution and Bill of Rights.  Anything less would be inadequate and fly in the face of Brown v. Board of Education.

**Comments**

In light of the ongoing question as to the constitutionality of the sex offender registries and the fact that the registries duplicate criminal records already publicly available on line and at courthouses and police stations across the U.S., the following comments are submitted on the proposed federal SORNA rules contained in the Federal Register, Docket Number OAG 157:

1. The Congress may not have the right to regulate sex offenders because most sex offenses do not involve acts of commerce nor is the creation of a sex offender registry a power explicitly granted to Congress by the Constitution (United States v. Morrison, 529 U.S. 598 (2000)).

Discussion:  Crime is regulated under Article I, section 8 of the Constitution because most crime involves commerce.  Sex offenses, for the most part, do not.  In general, sex crimes also do not represent felonies and crimes committed on the high seas or violations of the law of nations. Therefore, the federal registry should be crafted to cover only a very few offenses, if any.  The U.S. should not be in the business of legally taking action against persons for crimes that they might commit at some point in the future. To do so, may in fact, be considered cruel and unusual punishment.  Arrest, punishment and other legal action that restricts a citizen's liberty must be predicated upon the actual commission of an offense.  If we start down the road to taking legal action against a singular class of people (registrants) who are not granted a hearing before a judge to present the facts of their case and who MIGHT commit an offense in the future, we are progressing down a very dangerous and likely unconstitutional slope.

In addition, when a court deems a sex offender safe enough to be released from prison, a very high bar is created for the Congress to jump over in order to continue regulation of an offender after completing a court ordered sentence.  In United States V. Comstock (560 U.S. 126 (2010)), the Court ruled the federal government has the right to hold a sex offender in civil commitment if the person is deemed "sexually dangerous" under the authority of the Adam Walsh Act.  Therefore, if the courts allow a person to leave incarceration without civil commitment, the offender must not be considered "sexually dangerous," by definition, and should not continue to be regulated by either the federal or state governments after release into the community.

Further, Justice Antonin Scalia wrote in a dissenting opinion in US vs. Kebodeaux 570 U.S. 387 (2013) in which he argued that an act intended to execute a power of Congress is only necessary and proper if the power is as well. He stated that because it is not clear that the Wetterling Act's registration requirement is a valid Congressional power, SORNA's modification and execution of that power is equally unsure. In the same case, Justice Clarence Thomas' separate dissent argued that SORNA's registration requirements are unconstitutional because they do not execute any Congressional powers explicitly granted by the Constitution.  Instead, SORNA represents an unconstitutional usurpation of state powers regarding sex offender registration and that SORNA failed the "legitimate use" test Chief Justice John Marshall set forth in McCulloch v. Maryland 17 U.S. (4 Wheat.) 316 (1819).  Thomas also argued that although Congress has the power to regulate the conduct of members of the military, once Kebodeaux became a civilian, there was no justification for the involvement of the federal government and that the decision violated the precedent set by United States v. Comstock 560 U.S. 126 (2010).  Kebodeaux did not decide the Constitutional legality of SORNA but only whether it could regulate Kebodeaux.

2.  SORNA's criminal provision 18 USC 2250 indicates that the registry is no longer simply a civil requirement for simple administrative purposes because section 18 USC 2250 contains explicit criminal punishments for violating SORNA's requirements in direct contrast to the assertions of Smith (538 US 92-106) and Felts (674 F.3d 605-606).

Discussion:  Civil laws and regulations are penalized with civil penalties not criminal penalties.  The question becomes whether the intention of sex offender registries is to impose a punishment or are they merely a "civil proceeding". If the intention is to punish, that ends the inquiry. If the intention is to enact only a regulatory scheme that is civil and non-punitive, the courts must examine whether the scheme is so punitive as to negate the State's intention to deem it civil. Creating a piece of the

registries that is clearly a criminal punishment with a penalty of up to ten years in prison should end
these questions so that the ex post facto clause now clearly applies.  The dissenting justices in Smith
V. Doe (538 U.S. 84 (2003) contended that the sex offender registration law was punitive and
imposed severe deprivations of liberty.  Since 2003 the registries have become even more
restrictive.  Justice Stevens' dissenting opinion said, "It is also clear beyond peradventure that these
unique consequences of conviction of a sex offense are punitive. They share three characteristics,
which in the aggregate are not present in any civil sanction. The sanctions (1) constitute a severe
deprivation of the offender's liberty, (2) are imposed on everyone who is convicted of a relevant
criminal offense, and (3) are imposed only on those criminals. Unlike any of the cases that the Court
has cited, a criminal conviction under these statutes provides both a sufficient and a necessary
condition for the sanction".  In addition, he asserted that SORNA fails the legitimate use test Chief
Justice John Marshall set forth in McCulloch v. Maryland 17 U.S. (4 Wheat.) 316 (1819).  Justice Ruth
Bader Ginsburg stated in her dissent in Doe v. Lee, 132 F. Supp. 2d57, 69 (D. Conn. 2001),
'community notification is an "onerous and intrusive obligation" on the offender, [and] the result is
"profound humiliation and community-wide ostracism," it resembles historical practices of shaming,
reliance upon convictions rather than present dangerousness, and the law's "excessiveness in
relation to its non-punitive purpose."

3.The SORNA should be amended to clarify that it is subject to the ex post facto clause of the U.S.
    Constitution.

Discussion:  Since registries were first created, registrants in most jurisdictions now have restrictions
that amount to criminal punishment such as limiting where they can live, restricting visits to
churches, parks and schools, prohibiting participation in certain holidays like Halloween, prohibiting
voting or firearm ownership for self-defense, facing harsher penalties by law than non-registrants
for future non-sex related offenses, having their DNA kept in a database for future reference
without probable cause.  Registrants are often denied mortgage loans, business loans, or renting of
property on the basis of being listed on the registry.  They are often prohibited from entering public
property like the Pentagon even if they are a federal contractor, and prohibited from attending
certain colleges or schools.  They cannot travel abroad to many places in the world, and they are
subject to a whole host of private industry restrictions like not being able to visit Disney World or
other theme parks, not being able to stay at certain hotels when traveling, and not being able to
obtain a decent, if any, job.

SORNA now contains criminal punishments for registrants who violate the rules per 18 USC 2250.
Criminal punishments are not applied to simple administrative rule violations.  The government has
asserted, in general, that the sex offender registry rules are not subject to the ex post facto clause of
the Constitution in accordance with Smith v. Doe, 538 U.S. 1009 (2003).  However, in Doe v. Snyder
(834 F.3d 696 (6th Cir. 2016), the Sixth Circuit Court of Appeals held in an as-applied challenge that
Michigan's SORNA-implementing law is punitive and, therefore, could not be applied retroactively.
This ruling was upheld by the US Supreme Court in October of 2017.  In addition, eight state
supreme courts in recent years have held that the retroactive application of their sex offender
registration and notification laws violate their respective state constitutions.  In addition, other state
courts have found issues with the retroactive application of their sex offender registration laws,
albeit in less sweeping fashion.  These rules must, therefore, be crafted in such a way as to respect

state's rights and the rights of registrants under state law and more importantly to ensure states do not violate a registrant's rights and privileges granted by the federal Constitution and Bill of Rights.

I will also assert for the record, that even though the ex post facto application of sex offender registries does not, in DOJ's opinion, violate the prohibition on the application of ex post facto laws against a person registered before the enactment of the new rules/legislative amendments, I believe it does violate Article I, Section 10 of the US Constitution which says that, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." When an accused person reviews the laws with which he/she is charged with violating, and makes a decision to either pursue a trial or opt for a plea bargain, that decision is based on the law and the registry requirements as they exist at the time. As such, when the state or federal government subsequently changes the law or registry requirements after the contract for a plea bargain is signed or after a judge signs off on the sentencing contract of a convicted person, they are violating the contract to which they obligated themselves. This too is unconstitutional and must not be allowed.

4. Section §72.5— How Long Sex Offenders Must Register. This section conflicts with the Federal Fair Credit and Reporting Act. As such, the conflict must be corrected.

Discussion: This section appears to be in direct conflict with the Federal Fair Credit Reporting Act which states that arrests/convictions may only be reported on background checks for seven years after release from prison. This has been interpreted to apply to criminal records and bars background screening companies from reporting "records of arrest that, from date of entry, antedate the report by more than seven years." Allowing this information to appear on a public registry for more than the requisite 7 years would amount to allowing background check companies to report the information because banks, employers and landlords, among others, check the registry as do most background check companies.

 This section should also be changed to establish standardized procedures for determining which tier an offender will be placed in, how long each offender will remain on the registry, what restrictions can be placed on registrants in compliance with their federal Constitutional rights and also create a way for tier II offenders to petition for early removal from the registry. Currently, the states and territories are responsible for establishing what constitutes a sex offense in their state or territory and which of these offenses make up each tier, independent of other states and territories and the federal government. Since registries were first created, registrants in some jurisdictions now have restrictions on where they can live. They are restricted from visiting churches, parks and schools, they cannot participate in certain holidays like Halloween, they often cannot vote or own or possess firearms for self-defense, They face harsher penalties by law, than non-registrants for future non-sex related offenses, their DNA is kept in a database for future reference without probable cause, they often cannot get mortgage loans, business loans or rent property, they are not allowed to enter public property like the Pentagon even if they are a federal contractor, they not allowed to attend certain colleges or schools, they cannot obtain business or professional licenses, they cannot travel abroad to many places in the world, and they are subject to a whole host of private industry restrictions like not being able to visit Disney World or other theme parks, not being able  to stay at most hotels when traveling, and not being able to obtain a decent, if any, job.

AR-00001763

There are also likely to be sex offenders whose offense places them in a given tier in one state, but a different tier for the same offense in a different state or in the federal registry. The only way to prevent this is to have standardized definitions of what constitutes a sex offense and the tier to which that offense must be assigned and what restrictions can be placed on a registrant as a result of their tier assignment. As an example, using the arbitrary federal definition for tier II, that any offense with a punishment of one year or more is a tier II classification, an offender caught urinating in public (lewd and lascivious offenses) could be classified as Tier II in certain cases and therefore, have no chance to petition for early removal from the registry for a very low-level offense.  As another example, in states like Florida that require registration in person with the Sheriff's department and then a visit to the Florida Department of Highway Safety and Motor Vehicles (DHSMV) to obtain a valid Florida sex offender ID card  in any Florida county where a registrant is present for 48 hours or longer and places all registrants on a single Tier (the equivalent of Tier III because it is a lifetime registration requirement), registrants who are convicted of very low-level offenses such as urinating in public would be required to register for life with no chance to petition for early removal. Florida state law also prohibits those convicted of certain sex crimes against a child under 16 years of age (an arbitrary age) from living within 1,000 feet of a school, day care center, playground, park, or other place commonly frequented by children.  State law also places restrictions on where certain registered sex offenders may work.  In cases where the victim was a minor, sex offenders cannot volunteer or work at any business, school, day care, park, playground, or other place where children regularly are present.  In Miami-Dade County, Florida, some registered sex offenders are prohibited from living within 2,500 feet of a school, day care center, park, or playground. The county also recently added "child safety zones" to its ordinance, which prohibits sex offenders from loitering within the 300 feet of schools, day cares, parks, and school bus stops.  Currently, there more than 160 municipalities in Florida that impose greater restrictions on convicted sex offenders than required by state law.  Simply traveling from city to city would require registrants to know up to 161 or more different rules in order to remain in compliance. Failure to comply with these requirements is a level three felony for violation of what is supposed to be a simple civil administrative requirement.   This would appear to violate a registrant's due process, create potentially large time requirements of the offender to re-register every three to six months on a different date for every county/municipality in every county where they were ever present for more than 48 hours and potentially be cruel and unusual punishment because low level offenders would be required to register for life, which some courts have deemed punishment. Therefore, a system that allows Tier II and possibly some Tier III offenders to petition for early removal and uses a court hearing for each offender to assess whether they pose a relatively low, moderate or high risk of re-offense, based on application of elements such as the characteristics of the sex offense or offenses they committed, their offense history and other criteria such as response to treatment, medical doctor or psychiatric recommendations and community support, would be more legally fair and ensure the due process of each offender. In addition, before community notification takes place under this system, offenders would receive a final classification order from the court which would then allow the opportunity for a hearing to challenge the offender's tier placement and restrictions on travel, residency or employment. Such a system was used by Governor Chris Christie's administration in New Jersey and remains in place there today.  By using this procedure nationwide we could prevent dangerous people who receive a charge with less than a one year sentence who still pose a danger, to be placed on a tier higher than tier I and people who

are not dangerous who are classified as Tier II or III, but should be on a lower tier, are not unfairly penalized due to the arbitrary federal rule that anyone with a charge with a sentence of one year or more is at least a tier II registrant. This would also prevent a registrant's federal Constitutional Rights, Privileges and Immunities from being violated by creating standardized federal restrictions on registrants that states must follow or risk losing federal monies.

There is an important fact that must be taken into consideration here.  Persons deemed "sexually dangerous" by the court are allowed to be civilly committed under the authority of the Adam Walsh Act, after their prison term is served.  As a result, the legal claim of a need to continue to have a registry to monitor registrants after incarceration or the end of probation because they are still "sexually dangerous" would not appear to be a sound legal argument.

1.   Section (B) $72.6—The requirements of the Keeping the Internet Devoid of Sexual Predators Act of 2008 (KIDS Act) which directed the attorney general to require sex offenders to provide internet identifiers was likely voided by the ruling in Packingham v. North Carolina, (582 U.S 2017) which gave sex offenders the 1st Amendment right to use the internet, after North Carolina's bill passed in 2008 making it a felony for sex offenders to use the internet was overturned by the ruling.

Discussion:  Requiring sex offenders to divulge their internet identifiers is seen as an attempt to discourage their exercise of 1st amendment rights.  This section also does not specify how often a registrant must use a phone number, internet identifier, or email address in order to be required to report it to the registry.  If a registrant uses a customer's phone while performing work for a one-time customer, should the registrant be required to report it?  If the registrant uses a fellow employee's phone once or twice because the registrant's cell phone ran out of battery, should the registrant be required to report the other employee's phone number?  If a registrant uses a business's email address once a month due to the malfunction of his/her own email address, should the registrant be required to report that email address?

2.   Section (C) 2 $72.6-- The requirement to report travel to destinations inside the U.S. if the registrant will be using temporary lodging for more than 7 days will generally have the effect of preventing travel into a state or different jurisdictions within a state, if and when the travel plans are reported to the place of temporary lodging, as most places of lodging will not knowingly allow sex offenders to stay at their locations.  If this section is to be retained, a specific prohibition against a commercial lodging provider discriminating against a sex offender in any way should be included in the rule/statute.

Discussion:  Because the effect of this section will be to prevent travel into a state or a location other than the home jurisdiction of the registrant, it is an unconstitutional violation of the inalienable liberty to travel.  Furthermore, the U.S. should not be in the business of taking legal action legal against a single class of persons for crimes that they might commit in the future who have not been granted a hearing before a judge to present the facts of their case.  Arrest, punishment, and other legal action must only be predicated upon the actual commission of an

offense.  If the U.S. starts down the road to taking legal action against people by enforcing specific travel limitations against only a singular class of people who are not granted a hearing before a judge to present the facts of their case because they might commit an offense while traveling, we are progressing down a very dangerous and likely unconstitutional slope.

Certainly, tier I and II offenders should not have this travel restriction.  This SORNA requirement as listed violates the Commerce Clause, the Privileges and Immunities Clause of Article IV, the Privileges or Immunities Clause of the Fourteenth Amendment, and/or a substantive due process right to travel, especially since they are only being applied to one class of persons, registrants, who are not granted a hearing before a judge to present the facts of their case. The U.S. Supreme Court in Crandall v. Nevada, 73 U.S. 35 (1868) declared that freedom of movement is a fundamental right. Article 13 of the Universal Declaration of Human Rights, of which the United States is a signatory, states that everyone has the right to freedom of movement and residence within the borders of each State and everyone has the right to leave any country, including his own, and to return to his country.  As a result, this section should be omitted.

3.  Section (C) 3 §72.6—The requirement to list a registrant's place of employment is punishment for the employer and risks the safety and competitiveness of the business.  This requirement should be eliminated.

Discussion:  Vigilantes have been known to seek out registrants and kill or threaten them, and customers have been known to stop patronizing businesses that employ sex offenders.  As a simple civic administrative action, the registry should not penalize employers.  Therefore, employment information should either not be collected or not be published to a public registry.  Many employers will not hire sex offenders, and making the registrant's place of employment public will only make the employment problem faced by sex offenders who are not deemed sexually dangerous, worse.

4.  Section (C) 4 §72.6 -- Requiring registrants to register their school and its location is likely a violation of a citizen's right to attend public schools without hindrance from the government as the registration is only required of one class of persons who are not granted a fact finding hearing before being denied this right.

Discussion:  Most colleges and universities will not allow people on a sex offender registry to enroll. This is also likely a violation of the right to freely associate granted by the 1st Amendment because the government is maintaining a public list that contains people who wish to attend school with others of a like mind who will not be allowed to attend because they are listed on the registry. Regardless of the intent, this will be the effect.

This sort of segregation was to have ended with Brown V. Board of Education and is reminiscent of Jim Crow laws that unfairly demonized a class of human beings in order to justify their regulation. Justice John Marshall Harlan II wrote: "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech."  NAACP v. Alabama (1958)

5.  Section (D) §72.6—The effect of requiring a registrant to report all international travel to the U.S. government which is, in turn, allowed to notify the country of destination will be to

encourage the country of destination to disallow the registrant entry into the destination country.  The U.S. Government should be prohibited from providing travel plans to foreign nations.

Discussion:  The Registrant Travel Action Group keeps a list of all countries that do not allow registrants entry at registranttag.org.  The list is long.  Whether it is the intent to interfere with a citizen's international travel rights is not the question here, it will be the effect.  The federal government is not allowed to regulate international travel to the extent that burden denies the registrant the ability to travel internationally at all.  Especially, if the travel is not commerce related.  However, this is what will happen in most cases when the federal government reports registrant's travel plans and the status as a registrant to the destination country (i.e., Canada or Mexico).  Furthermore, the U.S. is not in the business of taking legal action against persons for crimes that they might commit at some point in the future.  Arrest, punishment, and other legal action must only be predicated upon the actual commission of an offense.  If we start down the road to taking legal action against people by enforcing specific requirements to travel against only a singular class of people who are not granted a hearing before a judge to present the facts of their case and who might commit an offense while traveling, we are progressing down a very dangerous and likely unconstitutional slope.  These SORNA requirements as listed violate the Commerce Clause, the Privileges and Immunities Clause of Article IV, the Privileges or Immunities Clause of the Fourteenth Amendment, and/or a substantive due process right to travel.  Especially, since they are only being applied to one class of persons, registrants.  The U.S. Supreme Court in Crandall v. Nevada, 73 U.S. 35 (1868) declared that freedom of movement is a fundamental right.  Article 13 of the Universal Declaration of Human Rights, of which the United States is a signatory, states that everyone has the right to freedom of movement and residence within the borders of each State and everyone has the right to leave any country, including their own, and to return to their country.  Certainly, tierI and II offenders should not be subject to this notification requirement.  This section should be omitted.

6.  Section (G) $72.6—This section, requiring registrants to disclose any professional license they possess, violates the guaranteed inalienable liberty to engage in commerce.

Discussion:  If notified they have given a professional license to a registered sex offender; a state is allowed to immediately revoke the license.  Thereby, denying the liberty to engage in commerce to every registrant who reports their license to the registry, even if the registrant is not sexually dangerous.  This can be demonstrated in Illinois where six medical doctors and five registered nurses had their professional license revoked when it was discovered they were sex offenders.

7.  Section 72.8 —This section should clearly define interstate travel for foreign commerce and that the travel restrictions in this rule apply only to travel involving interstate or intrastate travel for purposes of commerce.

Discussion:  Business travel or travel where the intent is strictly for commerce purposes is the only travel that is explicitly allowed to be regulated by Congress under the U.S. Constitution.  Traveling for the purpose of pleasure or for a family funeral or anniversary, or traveling because a person won a ten night all expenses paid trip to a jurisdiction away from their home jurisdiction, among other similar reasons, would not constitute travel in commerce and therefore, should not be considered regulated by this section.

8. Section 72.6(c)(3), "Place of Employment." Name and address of place of employment should not be placed on the public registry.

Discussion:  These SORNA rules and the registries themselves may violate the Regulatory Flexibility Act (5 U.S.C. 605(b)) due to the requirement for registrants to report their place of employment to registries which will then publish the places of employment on public registries.  The placement of the name of a registrant's place of employment on a public registry particularly burdens small businesses who have small budgets, sensitive client bases, and less access to the best employees. When an employer employs a registrant, it is usually done because the employee is not viewed as "sexually dangerous" and is essential to the company's success both in the past and in the foreseeable future.  Publicly exposing the company as an employer of a registered sex offender by placing the company name on a registrant's public profile means that some of the company's customers are likely to stop patronizing the company and the resultant loss of sales can be catastrophic.  This is an unfair punishment for the employer.

In addition, due to budget limitations, it is very hard for small businesses to replace top employees at an affordable salary.  Also, many top employees for small business started when the company was newly opened and worked for years at low wages in the hopes that in the long run, they would be paid a reasonable salary.  These employees, in most cases, accept pay that is lower than what a top employee employed by a large corporation or who graduated from a top college or university would require to join a small business because of the inherent risks of working for a small company. Employers must remain loyal to this type of employee if they hope to survive.   Small businesses should not be penalized in this fashion.  Thy are not committing a crime.

9. Executive order 12866 and 13563, "Regulatory Planning and Review"—These new SORNA rules and regulations are unnecessary and will not save registrants or the states time or money.

Discussion:  Because SORNA allows states to create registry requirements that are stricter than SORNA or have different rules than SORNA, registrants will be required to know at least two sets of registry rules, the federal SORNA and their home jurisdiction's, instead of just knowing their home jurisdiction only.  If the registrant works or goes to school in a district different than their home jurisdiction the registrant could have to know up to three different sets of registration rules. Certainly, that is an unnecessary and unfair burden on registrants and costly in terms of the time and money to appear in person to keep registrations current.

The requirement to re-register every six months for tier II and every three months for tier III requires more time and money from registrants and the various states as they will likely need new computers and software, and more administrative and enforcement personnel to handle the extra workload not required when tier I and II registrants were only required to re-register once per year and tier III every six months.  These extra registration requirements will undoubtedly cause more people to be required to register and will likely result in more people inadvertently violating the re-registration requirements due to the frequency of reregistration, which in turn will also require the states to hire more enforcement personnel to enforce the rules equitably.  The attorney general is therefore, wrong to say that these new rules create cost reductions and that they do not violate the Unfunded Mandates Reform Act of 1995 because in aggregate total, the states will likely have to spend $100 million or more on new computer equipment, software, administrative personnel and

AR-00001768

enforcement personnel, not to mention the extra expense in time and money to the private sector due to the extra burdens on registrants and small business as discussed above.

10. Executive order 13132," Federalism"—These new rules will have a significant impact on the relationship between states and the federal government.

Discussion:   The new rules 1) create federal criminal penalties for violation of the registration requirements and the federal government demands that states help enforce the requirements, and 2) create monetary penalties for states that do not implement and enforce the new SORNA rules.

11. Small Business Regulatory Enforcement Fairness Act of 1996 (5 USC 804 (2))—These new rules will have a serious effect on the employment of registrants and put employers who have registrants working for them at an unfair disadvantage compared to companies that do not employ registrants.

Discussion:  Often the reaction from the general public upon learning that a business employs a registrant is to stop patronizing the business.  Federal agencies, often the source of business for small companies through the SBA, will refuse to grant security clearances to companies that hire registrants.   If they do grant clearances to these companies, they will not allow a registrant access to federal buildings and spaces even if the registrant is the employee who can best do the work.  Thereby, destroying the company's ability to successfully compete with companies that do not employ registrants.

Employers should not suffer this sort of discrimination for being loyal to employees who are not sexually dangerous.  Forcing employers to fire employees due to pressure from customers and the various government agencies for reasons cited above means these employers may not be as competitive or as innovative as they could be because often times registrants are their best employees who have worked at lower pay rates for long periods of time and are the most productive.

12. Section 72.6(c)(3), Temporary Lodging Away from Residence" -- The rules must forbid the home jurisdiction from routinely notifying a jurisdiction to which a registrant plans to travel or notify a place of lodging that a registrant plans to stay there.

Discussion:  SORNA rules, generally, only require a person to register in a specific jurisdiction if planning to reside, work, or go to school there.  However, when traveling for more than 7 days to a jurisdiction outside their home jurisdiction, a registrant is required to report the travel destination and place of temporary lodging to their home jurisdiction in advance of travel, but is not required to register in the jurisdiction where they will be temporarily lodging.   This creates multiple problems regarding the inalienable liberty to travel not only interstate but intrastate.  The first is that it appears to be the intent that the home jurisdiction will report to the place of planned temporary lodging that a sex offender plans to be staying there.  Such notification will have the effect of preventing the registrant from traveling because the temporary lodging providers (e.g., Disney World Hotels) will often not allow a registered sex offender to stay on their property.

Another concern is that travel for pleasure and not for the purpose of commerce should be outside the constitutional jurisdiction of Congress to regulate.  The temporary lodging reporting requirement may unfairly burden intrastate travel because states do not have the right to burden or

restrict travel that is not for the purpose of commerce.  Some states require registrants to register in each municipality, county or state jurisdiction where they are present for more than 48 hours, including where they will be staying in the jurisdiction.  This requirement will have the effect on registrants of significantly restricting their travel, even intrastate travel, when the place of lodging or temporary lodging is notified that a sex offender is planning to stay there and there exists different registration rules for every municipality within the state.

Florida state law also prohibits those convicted of certain sex crimes against a child under 16 years of age from living within 1,000 feet of a school, day care center, playground, park, or other place commonly frequented by children.

Florida state law also places restrictions on where certain registered sex offenders may work.  In cases where the victim was a minor, sex offenders cannot volunteer or work at any business, school, day care, park, playground, or other place where children regularly are present.  In Miami-Dade County, Florida, some registered sex offenders are prohibited from living within 2,500 feet of a school, day care center, park, or playground. The county also recently added "child safety zones" to its ordinance, which prohibits sex offenders from loitering within the 300 feet of schools, day cares, parks, and school bus stops.

Currently, there more than 160 municipalities in Florida that impose greater residency restrictions on convicted sex offenders than required by state law.  Simply traveling from city to city in Florida could require registrants to know up to 161 or more different rules.  In addition, states like Florida require any registrant in the state for more than 48 hours to register in Florida where lifetime registration is required across all tiers and remains in effect even if the offender leaves the state or dies.

Florida also requires all registrants to visit the Florida Department of Highway Safety and Motor Vehicles (DHSMV) to obtain a valid Florida sex offender ID card and report to every sheriff in every jurisdiction where they are present for more than 48 hours thereby creating a monetary penalty and administrative burden above and beyond simple civic registration.  Due to the fact that these SORNA rules allow jurisdictions to make their own rules more stringent than federal rules, places like Florida are creating burdens to interstate and intrastate travel by forcing registrants only temporarily lodging in a jurisdiction to register for life with the sheriff in every jurisdiction where they reside for more than 48 hours.  The effect in places like Florida is to prevent access to Florida by requiring lifetime registration for every registrant from outside Florida who is present in the state for more than 48 hours and to restrict people who reside in Florida from leaving their home jurisdiction because they would have to learn over 160 different rules – one for each municipality in the state with its own requirements stricter than state law.

Therefore, the SORNA rules should mandate a uniform set of rules that states must adopt to avoid potential excessive burdens on the inalienable liberty to travel interstate and intrastate.  The SORNA requirements as listed in the proposed rule violate the Commerce Clause, the Privileges and Immunities Clause of Article IV, the Privileges or Immunities Clause of the Fourteenth Amendment, and/or a substantive due process right to travel, especially since they are only being applied to only one class of persons, registrants, who are not granted a hearing before a judge to present the facts of their case. The U.S. Supreme Court in Crandall v. Nevada, 73 U.S. 35 (1868) declared that freedom of movement is a fundamental right.  Article 13 of the Universal Declaration of Human Rights, of

which the United States is a signatory, states that everyone has the right to freedom of movement and residence within the borders of each State and everyone has the right to leave any country, including his own, and to return to his country.  At the very least, the rules should include a prohibition against requiring registrants to register in a state where they are temporarily lodging (less than 30 days) in order to secure the liberties of interstate/intrastate travel from excessive burdens on federal rights and privileges.  The burden of learning 160 or more municipalities' rules in order to travel intrastate, like Florida requires, would seem to be an excessive burden on a registrant's rights to travel and should be prohibited by the federal rule.  The federal rule should also contain a provision that does not allow a jurisdiction to report to a place of temporary lodging that a registrant plans to be staying there.

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

### Comment

What you're doing here is unwarranted and is going to cost thousands of people and families their jobs and homes (and possibly lives). There's no call for this. In fact, there's no call for the registry as a whole. The only reason it's able to exist is due to legal gymnastics allowing for a Nazi Germany-like scheme, all in an effort to help political individuals gain victory points for re-election. There's zero empirical evidence the registry has helped keep people safe and reduce recidivism, and an overwhelming amount of evidence from every corner of US and abroad that shows that it not only not meet its stated goal, but in fact helps create an overall unsafe community by not allowing people to productively reintegrate into society. It should greatly frighten people that the government has the power to do something so horrible without presenting evidence to its validity. People who support and expend it despite knowing all the harm it causes with no positive gain, will have a special ring of hell waiting for them.

**Comment ID**

DOJ-OAG-2020-0003-0485

 **Tracking Number**

kfy-avhw-puie

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 6, 2020

AR-00001772



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

Richard J. Morgan
SBI# 00649107
JTVCC
1181 Paddock Rd.
Smyrna, DE 19977

September 26, 2020

To Whom This May Concern:

Hi. My name is Richard Morgan, currently an inmate at James T. Vaughn Correctional Center in Delaware. I have lived around all kinds of criminals for the past 10 years and still have time left on my sentence (even with this being my first offence). I can tell you for a fact that there are some serious rapists in here, if they are released, they will re-offend, which is why I believe the sex offender registry is needed. However, I believe (whole-heartedly) it is being implemented incorrectly. I believe the registry was designed to inform the public of the most dangerous type of sex offender. But it's being abused by the justice system as a means to classify every individual (male and female) no matter the offense as a sex offender, when this is an injustice on the system's part. Think about it, is it fair, or right to punish a young man (26 years old) for the rest of his life for having a sexual relationship with a willing 14, 15, 16, 17 year-old girl? Yes, he broke the law by engaging in a sexual relationship with a minor (13-17 years of age), which is considered sexually offensive to the public (as such) be punished for it, but to ruin his life over a dim-witted mistake is just not right, and is unconstitutional.

The system needs to be reformed; here are my thoughts on how. The registry should be used for the most dangerous and possible re-offender. Not an individual that got caught having sex in public with his girl, or urinating in public, or having an inappropriate relationship with a willing minor. These offenders should be given the opportunity to earn their way off the registry.

Those individuals that complete their registered period of time or have completed their conditions for Relief would have a second chance at being productive members of society instead of having their lives ruined forever. This one is a fine line—continue reading and I'll explain. I've come up with a basis for a format to implement the registry according to the type of offense. Note, this is not a finished work-up, my resources are limited. I do not have access to case law; therefore, I'm unsure of the classifications of crimes in Delaware's Title 11 and Statutory Codes.

A rapist is someone that has violated an unwilling individual in a most traumatizing way. Those are the most dangerous types of offenders. I classify these individuals and types of offenses as Category 1 Offenders (Rapists). These most dangerous offenders include: rapist murderers, serial rapists, sexual assaulters, child (12 years old or younger) rapists, forcible minor (13 years to 17 years of age) rapists, and etc.

This system also has a Tier level system in order to gauge the seriousness of the Category Offense (Tier 3 down to Tier 1). Tier 3 Offenders are the most serious and dangerous within their categories, Tier 1 being the least. This is where I believe the registry guidelines should be implemented by each state, at the same time, implementing a Relief Guideline as well.

It is a currently mandated requirement for sex offenders to participate in sex offender programs that do risk assessments. This information is collected for the probation/parole officer. This mandated sex offender program will stay as it currently is, only under Category 1, not Category 2.

Category 1 (Rapist):

Tier 3 Offenders register for life every 3 months and no sentence of Registry Relief is available.

Tier 2 Offenders register for no longer than 25 years every 3 months, no Sentence Relief is available; Registry Relief is available at the discretion of parole or probation officer.

Tier 1 Offenders register for no longer than 15 years every 3 months. Relief is available as long as sentencing conditions are met.

My plan would also have the offenses and sentencing guidelines implied within this, but this is not a bill, this is an incomplete idea.


Category 2:

Now we have a second category, classified as Category 2 Offenders (sex offenders). These individuals have committed a sex-related crime that is deemed sexually offensive to the public, hence the name. Offenses include: engaging in an inappropriate sexual relationship with a willing minor (ages 13-17), urinating in public, indecent exposer, engaging in a sex act in public, and etc.

Under my idea with the Category 2, the sexual offender programs are not required unless the court deems them necessary and/or appropriate to the offense.

This follows the same Tier system I mentioned earlier. See below for Category layout:

Tier 3 offenders register for no longer than 10 years every 3 months. Relief is available as long as sentence conditions are met.

Tier 2 offenders register for no longer than 5 years every 3 months. Relief is available as long as sentence conditions are met.

Tier 1 offenders register for no longer than 2 years every 3 months. Relief is available as long as sentence conditions are met.

Now with the idea of the system shown, you need to understand the Tier system has a second function (Re-offending Guideline):

This is how it works: if an individual has previously been convicted of a Category 2, Tier 3 offense, later commits a Category 2, Tier 1 offense, then their higher classification level increases to the next Tier level. In this case, the offender will be sentenced under a Category 1, Tier 1 offense even if the new charge is a Category 2, Tier 1 offense. This is because this individual has shown to be a danger to society. With this re-offense, the Registry Time Period will stack according to the previous offense level with the new offense level which will be ten years plus fifteen years for a total of 25 years.

And if the individual has committed a Category 2, Tier1 offense before, then later commits a category 1, Tier 1 offense, well that individual would be sentenced under a Category 1, Tier 2 offense because they have shown (again) they are a danger to society.

Note, these descriptions are second-time offenders. The more times an individual commits offenses—the worse the classified offense.

Once individuals have completed their registered periods of time and/or completed their conditions for Relief, they will be removed from the registry completely, and be allowed to be a productive individual of society, instead of ruining their lives forever.

My suggestions would allow those individuals that made dim-witted mistakes second chances to be productive individuals of society, unlike the current system. Also, if the individual is a repeat offender or rapist, my system would punish these individuals more severely than under the current system. During my time in jail (Yes, I'm currently in jail for 17 years due to having an inappropriate relationship with a minor (teenage girl) 10 years ago, I've seen child rapists (12 and under) come in and out these doors more than 3 times and get less time (altogether) than I have in jail currently. I only made a dim-witted mistake. They knowingly continue to molest kids, and come and go in and out of jail with no cumulative punishment compared to me. A young man (age 26 at time of offense) made a dim-witted mistake and now his life is ruined because of it, and does more time for his first offense than a repeat sex offender. My idea will still monitor, but also free it up, by giving people a second chance.

With the benefit of reducing registry time based upon the severity of the offense, this plan will free-up costs for data collection, number of required man-hours, operation expenses, etc. All of which are great cost-saving features.

I hope people will consider my suggestions. If you have any questions about my ideas, feel free to write me.

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
| --- | --- |

---

| Comment |
| --- |

As an American Citizen I am opposed to yet more restrictions placed on select members of our society and by
extension, their families. There is simply too much evidence contradicting the myth that RSO's will go on to
commit more crimes to justify the actions suggested in this proposal.

Facts should matter more than emotions in this case as many questions arise from what is being proposed here.
For instance, where are the resources and manpower coming from in order to undertake the proposed actions?
How effective is the Registry in its current form in addressing new crimes when more than 90% of all new sex
crimes are being committed by those who are NOT on it?

As a taxpayer I question the need for the Registry in general and question its effectiveness in any form,
especially with the numerous independent and Governmental funded studies that suggest it is anything other
than effective. Given that these "civil" measures continue to multiply in many States, this proposal would be best
if, without dismantling the Registry outright, placing a ceiling on what States can do rather than set a base in
regards to the amount of restrictions placed on a person forced to register.

| **Comment ID** |
| --- |
| DOJ-OAG-2020-0003-0487 |

| ◎ **Tracking Number** |
| --- |
| 1k4-9jdd-mime |

| **Comment Details** | **Submitter Info** |
| --- | --- |

AR-00001777

**Received Date**

Oct 6, 2020



About Bulk Data Download Agencies Learn
(/about) (/bulkdownload) (/agencies) (/learn)

Reports FAQ
(https://resources.regulations.gov/public/component/main?main=Reports) (/faq)

Privacy & Security Notice (/privacy-notice) | User Notice (/user-notice) |
Accessibility Statement (/accessibility) | Developers (https://open.gsa.gov/api/regulationsgov/) |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support) Provide Site Feedback

AR-00001778

To: William Barr, Attorney General of The United States

Re. Docket No. OAG 157 Proposed Rule United States Department of Justice to revise 28 CFR Part 72 (08/13/2020): Public Law 109-248, 34 U.S.C. 20901 *et seq.*

**Summary:**

Oregon Voices is an organization devoted to support and advocacy for individuals and families affected by the sex offender registry. We support all victims of abuse, and believe victims have the right to seek justice in a system that is objective and supportive.

We believe that evidence-based practices promote public safety. Sex offender registries should be used on a case-by-case basis depending on risk assessment. Sex offender registries often needlessly put law abiding former offenders and their families in harm's way, and act as lasting barriers to societal reintegration. Bloated conviction-based public sex offender registries are no longer able to do the job they were intended to do.

In short, if *everyone* is a risk, then *no one* is.

We wish to comment on the proposed rule changes regarding SORNA. The expansions they describe are not warranted by the evidence, and they will cause chaos in the majority of states who have not fully implemented SORNA.

There are well founded reasons that SORNA has been avoided by the majority of jurisdictions. Thirty-one (31) out of 50 states have made the conscious decision to avoid the pitfalls that come with SORNA. Included among these is that the provisions of SORNA are overbroad, expensive to implement and maintain, and fail to achieve desired safety objectives. Furthermore, there are aspects of SORNA that raise a variety of Constitutional questions, which are by no means settled.

The rule-making states that it "is not innovative in terms of policy."[1] However, statements throughout the document appear to contain novel ideas that appear to have a potentially great impact on the sovereignty of the various states. We ask for clarification and revision of statements reiterated throughout the document—specifically in relationship to the following claims:

> The requirements of SORNA apply to all sex offenders. All sex offenders must comply with all requirements of that Act, regardless of when the conviction of the offense for which registration is required occurred (including if the conviction occurred before the enactment of that Act), regardless of whether a jurisdiction in which registration is required has substantially implemented that Act's requirements or has implemented any particular requirement of that Act, and regardless of whether any particular requirement or class of sex offenders is mentioned in examples in this regulation or in other regulations or guidelines issued by the Attorney General . . . .[2]

This rulemaking should be reconsidered and revised in several parts:

---

[1] https://www.federalregister.gov/d/2020-15804/p-18
[2] https://www.federalregister.gov/d/2020-15804/p-177

AR-00001779

1.  We request revision and clarification of statements that imply that persons convicted of sexual offenses *must* register within their respective states as SORNA requires, even when the state has made the decision to avoid substantial SORNA compliance in favor of evidence-based registration and monitoring systems.

2.  The policies and laws of the states of the United States should be respected. Therefore, persons previously convicted of sexual offenses should be excluded from SORNA compliance, both interstate and intrastate, when the jurisdiction in which that person resides is found to be under any of the following conditions:

   a)  where state courts have ruled that SORNA cannot be applied to pre-enactment offenders such as for reasons of prohibition on retroactive punishment or due process violation; or
   b)  where the offense is not registerable under that state's laws; or
   c)  when a term of registration has been completed under state law; or
   d)  when the person previously registered has been relieved of the duty to register under state law.

3.  There should be no influence exercised over or enforcement of intrastate registration when the jurisdiction has made the decision not to comply or participate in SORNA as iterated in 34 U.S.C. 20911(2)-(4), 20913, 20914(a)(1)-(7), 20915, 20918.

In each of these cases, the sovereignty of the individual states to conduct their own justice system is of paramount importance. Ample law exists in each of the 50 states and territories to require re-registration under the laws and procedures of the state when traveling into that state even if the individual registrant is not required to register in the state of conviction.

In most cases where registrants have been released from the registry due to retroactive punishment issues, the person committed the offense long ago and has not committed any subsequent offense (committing a new offense would pull that person back into the current registry scheme). Re-capturing individuals with ages-old convictions into 25-year or lifetime SORNA registration serves no public safety purpose.[3]

There is no evidence to support any claim that SORNA is a superior system to what is used by states. In fact, there is a much greater body of evidence to show that SORNA is a detriment to successful reintegration through its destabilizing impacts.

Particularly in cases where individuals have been deemed by their jurisdiction to be of insignificant risk, or had long ago convictions, a new focus on pulling them into the SORNA scheme serves no public safety purpose, creates confusing double-standards, and places law-abiding persons at serious risk of prosecution while conducting innocuous activities such as traveling on business or vacation.

---

[3] Hanson, R. Karl, Andrew Harris, Elizabeth LeTourneau, L. Maaike Helmus, and David Thornton, "Reductions in Risk Based on Time Offense-Free in the Community: Once a Sexual Offender, Not Always a Sexual Offender" (2018) *Psychology, Public Policy and Law.*
https://www.apa.org/pubs/journals/features/law-law0000135.pdf

AR-00001780

Indeed, pulling individuals back into an invasive and arduous sex offender registration scheme creates the real risk of destabilizing individuals who have developed prosocial lifestyles that have a correlation to reduction in recidivism (Hanson, 2018, p.58).

The rulemaking repeatedly indicates a premise that individuals deemed by the Federal Government to be subject to SORNA must comply *regardless* of whether the jurisdiction in which he/she resides has chosen to become compliant or is otherwise released from duty to register. Thus, the implication is that individuals who cannot register in their respective states are subject to arrest by the federal government but may have an affirmative defense under 18 U.S.C. 2250, subsection (c) of section 2250 that they were unable to register.[4] Such a standard of exposing an individual to prosecution is inherently unfair and destructive to persons who will face prosecution for innocent activities and later need to prove their innocence. By the time this can be done, damage to an individual's life, reputation and stability has already been done.

The vast majority of states have opted not to implement substantial compliance with SORNA for logical reasons. The heavily burdensome requirements of SORNA are tied to the crime of conviction, and there is no evidence whatsoever that this approach has resulted in any increase in public safety.

**SORNA and Public Safety:**

Federal SORNA was a reaction to a handful of sex offenders moving across state lines and committing heinous acts. The popular attitude at the time of SORNA drafting was that recidivism was 'frightening and high' and that sex offenders would travel widely to seek victims and to avoid detection.

Claims of high recidivism, later proven false, were extracted from a popular consumer psychology magazine article and ended up being written into a Supreme Court decision in 2003.[5] This "urban myth" about high recidivism was perpetuated and was later used to justify SORNA in 2006.[6]

The early premises of high recidivism have been proven inaccurate through DOJ's own statistical analysis and every major study conducted using empirical data. In fact, persons convicted of sexual offenses are among the least likely to recidivate. Longitudinal studies have proven that a relatively small cohort of individuals was likely to commit new offenses, and generally did so fairly quickly after release from custody. The same study showed that the individual's SORNA tier status was not a significant predictor of sexual or general recidivism.[7]

There is no nexus to the SORNA crime-based tier levels and actual or present risk. The SMART office seeks to place persons previously convicted of sexual offenses in the

---

[4] https://www.federalregister.gov/d/2020-15804/p-49
[5] Smith v. Doe, 538 U.S. 84.
[6] Ellman, Ira Mark and Ellman, Tara, "Frightening and High": The Supreme Court's Crucial Mistake About Sex Crime Statistics" (2015).  *Constitutional Commentary*, 419. https://scholarship.law.umn.edu/concomm/419
[7] Tewksbury, Richard, Wesley Jennings, and Kristen Zgoba, "A longitudinal examination of sex offender recidivism prior to and following the implementation of SORN" (April 2012).  *Behavioral Sciences & the Law* 30(3):308-28.

AR-00001781

worst light possible. Having observed that long-term recidivism statistics do not support lifetime registration, SMART initiated a campaign to sow doubt that the statistics are valid, speculating sex crimes must be underreported, and, therefore, the recidivism rate must be drastically higher.  However, such pseudo-scientific speculation has no basis in fact. Even the DOJ's SMART office has recognized that "different types of sex offenders have different rates of recidivism"[8] It should be noted that SORNA makes no allowance for these different 'types' of offenses (i.e. rape vs. viewing pornography vs. molesting).

Researchers do recognize that unreported crimes are not reflected in recidivism rates. But there is no evidence that such crime is dramatically under-reported. Certainly, any under-reporting that exists is not relevant to the fact that recidivism declines over time to desistance levels (Hanson, 2018, p.49).

Even when SMART statistics are used, more than 75 percent will *not* recidivate after 15 years in the community. This represents more than 500,000 SORNA offenders who remain on 25-year or lifetime registration, though posing little, if any risk in the community. Objective analyses place sexual crime recidivism at much lower rate. A recent long-term validated study of more than 7,000 individuals showed that recidivism was most prevalent in the first five years after release (9.1%). Recidivism rates declined rapidly thereafter. For example, at 15 to 20 years, 2% of the cohort recidivated and only 0.3% from 20 to 25 years. Only one individual out of 7,225 was found to recidivate after 20 years offense free (Hanson, 2018, p.53). Indeed, low-risk individuals (as determined through risk-assessment tools such as the Static-99R) who remain offense free in the community will become statistically no more likely to commit a new sexual crime than persons who have never been convicted of an non-sexual crime (Hanson, 2018, p.57).

The DOJ analysis above exposes flaws in the crime-based tier approach–which makes no distinction among these different 'types' of offenders. Without further analysis of the characteristics of individual risk using scientifically valid data, serious gaps are created in public safety, and due process issues arise when applying draconian registration measures to individuals who may pose little to no present risk. Present risk is entirely unrelated to the Federal SORNA Tier levels and has more to do with a variety of risk factors that, when properly evaluated, lead to focus on those deemed to pose current risk and to require a greater level of monitoring and public notification

Therefore, SORNA and its progeny such as International Megan's Law are anachronistic approaches given what is known today about recidivism. The State of Oregon, for example, has adopted a risk-targeted approach to registration per ORS Chapter 163A — Sex Offender Reporting and Classification.[9]

The approach of SORNA and that of the State of Oregon Sex Offender Level system are irreconcilable. That is because the Oregon system relies on risk-assessment and is designed to increase public safety by directing resources toward the registration and notification of individuals deemed more likely to re-offend through validated risk assessment tools.

Registration systems that analyze the risk level of individuals allow states to devote scarce resources to keeping track of higher risk individuals and provide the public useful

---

[8] https://smart.ojp.gov/somapi/chapter-5-adult-sex-offender-recidivism#ld5ors
[9] https://www.oregonlegislature.gov/bills_laws/ors/ors163A.html

AR-00001782

information on those who pose a high statistical risk, rather merely that a person was at some point in the (often distant) past convicted of a certain offense.

Ironically, evidence-based practices are no longer a novel concept in Federal criminal justice policy. The *First Step Act of 2018* signed into law by President Donald J. Trump directed the Bureau of Prisons to establish risk and recidivism assessment systems to stem growth of the Federal prison system.[10] Given the movement toward evidence-based policy, as opposed to brute-force strategies, now is not the time for the executive branch on its own accord to be expanding the reach and breadth of SORNA.

Indeed, the Federal SORNA only remains intact due to the popularity of punitive measures against persons convicted of sexual offenses and the persistent yet incorrect belief that there is a direct correlation between a past conviction and high future risk.

However, where Federal interests are not directly implicated (example: person convicted in a state court of past sexual offense traveled across state lines to commit an offense), SORNA is not implicated, and any attempt to make it so exceeds Congressional authorization.

**SORNA Possesses Interstate, Not Intrastate Jurisdiction:**

When an individual was convicted in neither federal or tribal court, and where out of state travel/commerce is not implicated, the Federal Government does not have authority to prosecute in-state under SORNA regulations.

It is requested that the proposed rulemaking language be modified to clearly state the inherent jurisdictional limitations.

Without further clarification, the rulemaking appears to indicate that the previously convicted offender could be prosecuted federally for failing to register (even if not required) within his/her own jurisdiction. It could be construed from the language of the rule-making that non-compliant states will be compelled to implement the aspects of SORNA that they are in disagreement with or be faced with a chaotic situation of simultaneous dual registration requirements.

> Sex offenders can be held liable for violating any requirement stated in this rule, regardless of when they were convicted, and regardless of whether the jurisdiction in which the violation occurs has adopted the requirement in its own law.[11]

It is requested that the rulemaking be modified to acknowledge the limitations of Federal powers under SORNA:

> Section 2250 permits conviction on the basis of any of three jurisdictional elements: a prior conviction of one of the federal qualifying offenses; residence in, or travel to or from, Indian country; or travel in interstate or foreign commerce.[12]

---

[10] https://fas.org/sgp/crs/misc/R45558.pdf
[11] https://www.federalregister.gov/d/2020-15804/p-45
[12] Doyle, Charles, *SORNA: A Legal Analysis of 18 U.S.C. §2250* (2017), p.10

AR-00001783

That power to levy criminal penalties is limited to issues that involve interstate or foreign commerce. Just as federal authorities have no power to determine what criminal penalties states impose for state crimes, they also cannot intrude upon state sovereignty to determine how states decide to implement registry regulations that follow from those crimes.

It has been established that SORNA clearly has authority over the registration duty of an individual due to that individual's having been convicted in Federal court.[13] However, even the reach of the federal SORNA on covered Federal offenders is on shaky ground when only intrastate conduct is implicated. Chief Justice Roberts in his Kebodeaux concurrence asserted that, "[t]he fact of a prior federal conviction, by itself, does not give Congress a freestanding, independent, and perpetual interest in protecting the public from the convict's purely intrastate conduct."[14]

Therefore, the authority of Congress via SORNA to step into purely intrastate conduct is virtually nil. There appears to be a consistent theme pervading the document that registrants must comply with SORNA, regardless of where they are, what they are doing, and their current status under individual state law.

Congress cannot itself, nor can it delegate authority to compel the states to register individuals under SORNA because state legislatures are not subject to federal direction. The registration mechanism is purely a state system, and thus the state cannot be compelled to perform the related tasks of complying with SORNA when the state has not explicitly agreed to do so.[15]

**SORNA Is Not Immune to State and Federal Constitutional Challenges:**

The rulemaking promulgates the premise that the registration requirements and retroactive applications involved in SORNA are Constitutionally sound because of an earlier U.S. Supreme Court decision.[16]

The information collected under the Alaska law when looking at *Smith* was significantly less onerous, invasive, and time-consuming than that required to be collected under SORNA. While it is not the intent of this response to speculate as to if or when *Smith* may be revisited, it is noted herein that several state courts have found the retroactive application of SORNA within their own jurisdictions to be impermissible.

While federal courts have thus far rejected ex post facto challenges to SORNA itself, the same cannot be said of state supreme courts. Several state courts, notably Ohio and Pennsylvania, found the enactment of federal SORNA to be punitive in reference to individuals convicted before enactment.[17] [18]

---

[13] United States v. Kebodeaux, 133 S. Ct. 2496 (2013)

[14] Kebodeaux, 133 S. Ct. at 2507 (Roberts, Ch.J., concurring); Justice Alito also concurred only in the judgment, id. at 2508 (Alito, J., concurring)

[15] *Printz v. United States*, 521 U.S. 898 (1997) https://supreme.justia.com/cases/federal/us/521/898/

[16] Smith v. Doe, 538 U.S. 84 (2003).

[17] Commonwealth v. Muniz, 164 A.3d 1189  (Pa. 2018)

[18] *State v. Williams,* 129 Ohio.St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108 (Oh 2011)

AR-00001784

It is sufficient to recognize that several states have made this finding and are therefore
unable to register certain individuals that this rulemaking seeks to pull back into SORNA.

In the event of a push for SORNA compliance in the 31 states that have chosen to avoid
SORNA implementation, it is almost a certainty that 'substantial compliance' will spark
additional legal filings within state court systems. Given the strength of individual state
Constitutions, at least some of these jurisdictions will likely continue to refuse to register
persons under certain circumstances.

At some point, should SORNA be forced upon individual state registration systems, the
matter will be presented to various state supreme courts, as occurred in Pennsylvania,
Ohio, and several other states. It is likely that a rather large contingent of individuals will
subsequently be removed from their respective state registries due to findings such as
*ex post facto* punishment or due process violation. Any request for 'cooperation' as
suggested by this rulemaking under this circumstance would become moot. A state
cannot engage in a program that violates its own rule of law and its constitution.

It is apparent from the rulemaking that one of the major objectives is to pull pre-
enactment offenders and others no longer required to register into the SORNA scheme.
It is also designed to increase the frequency of reporting and the amount of information
to be disclosed by current registrants in many jurisdictions.

As state-based, state-funded registration programs are apparently being called upon to
draw these individuals into the SORNA scheme, it should be realized that this may
destabilize and potentially undo carefully crafted registration polices that previously
passed constitutional muster in the various states. The ensuing chaos would undermine
the Attorney General's goals in the long run.

An example of this might be an individual who now registers once per year with address,
car registration information, and employer. But when the same individual becomes
subject to multiple annual in-person appearances, disclosure of email and internet
identifiers, detailed accounts of short-term travel plans, and various other frequent
information collection, this could very well be challenged in state court and determined to
be a form of punishment. In this case, the individuals affected may no longer be required
to register.

It is better to let states have the registration system that suits their respective
constitutional requirements than to risk dismantling that system when a punitive system
is foisted upon them. It is better to let the states employ what methods they and the
research deem appropriate for public safety in keeping with their own laws and policies.

In reference to the introduction of a mandated nationwide seven-day travel notification,[19]
we question whether the Attorney General legitimately possesses the authority to enact
such a novel provision in the absence of legislative authority (regardless of any
delegation previously authorized).

The constitutional implications of creating barriers to freedom of travel throughout the
various states are serious. American citizens, including registrants, travel for a wide

---

[19] https://www.federalregister.gov/d/2020-15804/p-79

AR-00001785

variety of reasons. An individual may not know in advance where he/she will be traveling and for how long. To create such a notification requirement will surely present a serious barrier to travel and will face constitutional challenges at both state and federal levels. All states currently require individuals entering their state to register within a prescribed time-period. Consequently, the newly proposed federal rule is both unnecessary and overbroad.

**Unfunded Mandates Reform Act:**

Should the Federal government continue to assert that SORNA supersedes state registration schemes, this proposal would require states to register individuals who are no longer required to register, to register others at more frequent intervals, and to gather vast quantities of constantly changing data (such as travel plans, email addresses, and internet identifiers).

In most states, including Oregon, the collection of that data would become dramatically more labor intensive. This would require large increases in budgets to deal with the massive increase in registration requirements.

Several years ago, the Justice Policy Institute reviewed how much it would cost to implement SORNA in relationship to how much the state would gain in the additional Byrne grant money that is allotted for compliance. More than a decade ago, it was estimated that compliance with SORNA would cost Oregon more than $6 million a year in new costs, while the Byrne funding would only cover around $225,000 of those costs.[20] As registries have burgeoned in the intervening years, the costs would certainly be significantly higher today.

This is merely the cost of registering compelled individuals. Nowhere does this proposal contemplate the heavy costs of incarcerating the many registrants who will fail to adequately navigate the maze of new requirements, thereby running afoul of the law and being subjected to long terms of incarceration for technical violations.

Any agency of the Federal Government passing such heavy burdens onto the states may not do so without a thorough analysis explaining the cost-benefit analysis and many other factors under the Unfunded Mandates Reform Act 2 USC §1501 et seq. (1995).[21]

In short, in addition to the Federal Government being prohibited from forcing states to implement laws such as SORNA, it certainly cannot do so without analyzing the massive costs of a significantly expanded registration system which it has no intention or means to fully fund.  An objective cost-benefit analysis will reveal that SORNA's objectives are unobtainable with it's brute-force registration scheme, when compared to a nuanced and evidence-based approach such as that employed in the State of Oregon.

---

[20] What will it cost states to comply with the Sex Offender Registration and Notification Act? (2008) http://www.justicepolicy.org/images/upload/08-08_FAC_SORNACosts_JJ.pdf

[21] https://www.govinfo.gov/content/pkg/PLAW-104publ4/pdf/PLAW-104publ4.pdf

AR-00001786

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

Why not implementing changes that will surely make a difference. None of you at the DOJ level are professionals in Sex Offenders Treatment you will benefit from listening to actual professionals in the field. Many of the registrant have families, children of their own, wives, husbands and so on and these draconian laws are made specifically to cause more suffering not only to the registrant itself, but to those around him, to their only support structure they have. There is no need to exacerbate the conditions of those who are registrant and their families. In addition, by implementing some of these recommendations, you are lessening the burden imposed to the state and to the federal agencies thus allowing the allocation of better resources to areas that required more funding and more emphasis for prevention.

Please refer to the following recommendations from the actual experts and established through actual research:

Based upon current knowledge and research, ATSA offers the following recommendations for evidence-based registration reforms:

• Discontinue one-size-fits all approaches for the registration and notification of individuals convicted of sexual crimes;
• Individualize registration and notification requirements based upon empirically validated risk assessment tools and similar methods;
• Develop avenues and criteria for relief from registration which incorporates the desistance literature and recognizes the importance of treatment and supervision interventions for reducing recidivism risk, facilitating desistance and strengthening protective factors;
• Limit public community notification practices to the highest risk registrants, decrease broad-based dissemination of registrant information and/or reestablish law enforcement only registration practices coupled with allowing public inquiry about specific individuals;
• Remove adjunct policies, such as residence restrictions, from SORN laws as they do not work and are one of the primary drivers for legal challenges. Adjunct policies also undermine protective factors and create unnecessary

AR-00001787

barriers for community reintegration;
• Recognize that a national one-size-fits all approach to SORN laws does not
work within the U.S. and allow states to make adjustments to their registries
based on individual needs without incurring any financial penalty;
• Utilize registration as part of a larger management scheme for adults
convicted of sexual crimes, with greater collaboration and focus on
rehabilitative and reintegration efforts;
• Enhance SORN information for law enforcement purposes, including steps to
ensure the accuracy of the information and strengthening tracking of
registrants moving between jurisdictions; and
• Strengthen partnerships between law enforcement and sexual offense specific
management professionals, including treatment professionals

If you implement some of those recommendations, you will an offender who will integrate to, and become a more
productive member of the society and the chances for re-offending will dramatically drop which is the goal of any
agency seeking to have a better outcome based on their policies.

**Comment ID**

DOJ-OAG-2020-0003-0489

 **Tracking Number**

kfy-sk9e-fz3z

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 6, 2020



Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

THE RULES ARE PUNISHMENT ! PLEASE DO NOT KEEP RETROACTIVLY APPLYING PUNISHMENT AFTER A SENTENCE ! LEAVE THIS TO THE COURTS, THIS ADMINISTRATION HAS DONE ENOUGH DAMAGE TO THIS COUNTRY , BILL BARR NEEDS TO RESIGN .

**Comment ID**

DOJ-OAG-2020-0003-0490

**Tracking Number**

kfy-toav-ieig

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 6, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

| View More Comments ⬤724 (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments ⬤724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

Comment

imagine these laws apply to even the victim as collateral damage in some cases, for example, a romeo and juliet couple one time offender with his current wife of 10 years. The victim then marries the guy she falls in love with when they are able to legally. The collateral consequences from these laws will effectively punish the victim as well as her kids in this case for being in love? Or how bout a father of a kid that will never see their mother, because he cant petition his wife because the government thinks he is a threat to her, but at the same time, their kid he has in the Usa with him and is proven not a threat to the kid? How does this make sense, these are true stories on the registry.

These laws do more harm then good, and punishes 1 million plus people plus, their wives/husbands, mothers, fathers, kids and grandkids. In a effort to save one child. There is no proof these laws even have saved a child, but proof it has burdened many children and families. These people are trying to get on with their life's, they should be able to without the country that's supposed to protect them create laws that put them at risk of failing and put them back in prison. If you went in today and asked 20 cops a registration question, 9 out of 10 times you will get a different answer. You will effectively ruin the lives of millions of people with this decision. please do the right thing and vote against this proposal we have enough bad laws to reform already without these new laws.
Thank you for your time

---

**Comment ID**

DOJ-OAG-2020-0003-0491

---

 **Tracking Number**

kfy-v4ph-lx0j

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 6, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

The nationwide sex offender registry is a huge waste of time and money with little to no benefits to Americans. As someone who went to prison for ten years when I was 17 years old for a very poor choice, I have served my time and paid my debt to society. I am classified as the lowest risk to reoffend by "experts" and I am a contributing member of society with a loving family, great career, and a beautiful home. I have zero desire to commit another crime and I am nothing like I was when I was committed the crime. Numerous states have found portions of their sex offender registry unconstitutional and the common theme with these is they were found to be forms of punishment, not deterrents. Look at the evidence for what is working, and what is not working, and it is clear that the sex offender registry is simply not working except as a form of punishment to those that have served their time. The entire process is broken and a trip to a different state nearly landed me in jail, because the visiting state did not have any sort of process to register me as a temporary visitor. Please consider the numerous comments and take some time to hear from your constituents about their experiences. The registry is broken, so instead of trying to place band-aids on this, recommend to Congress for the repeal. Thanks

**Comment ID**

DOJ-OAG-2020-0003-0492

**Tracking Number**

1k4-9jdh-lb6f

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 7, 2020

AR-00001794



Your Voice in Federal Decision Making

About    Bulk Data Download    Agencies    Learn
(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
|---|---|

---

| Comment |
|---|

Another layer of laws and reporting is not the answer. The current set of laws, regulations and reporting, not to mention county by county ordinances that are completely out of control impact not only the offenders, but also their family members.

The current system does not look at the individual. It is a blanket set of rules and there are so many ways an individual can end up on this registry. It doesnt work. Most, if not all, of the current sex offender laws were enacted because some public official was looking for votes. They were not based on scientific data. They are based on a mistaken belief and fear that the recidivism rate of sex offenders is high. It in fact is not high. It is lower than any other crime except murder.

They keep changing and adding laws and ordinances without regard to the impact this is having on individuals, including innocent family members. Many people on the registry had a singular offense and they keep being punished over and over for something that happened potentially many years ago. In addition, all of these unnecessary laws do not improve public safety and they overburden law enforcement, consume tax dollars and burden offenders with needless reporting requirements which further exacerbate the offenders ability to find and keep employment.

Each state already has registries, Florida being one of the most strict. So, in addition to trying to comply with current state requirements, we also have to adhere to local ordinances and sometimes they are vague or conflicting and often put us in situations where compliance is impossible. For example, in my county, we must register, in person, numerous changes within 48 hours. The registration office is not open on weekends; therefore, if something happens late on a Friday, by Monday morning, we are no longer in compliance and risk arrest.

I also believe that the registry also puts individuals on the list at a greater risk. I have had people I dont know and who arent law enforcement show up at my door because I am on the registry. I am female and often afraid to answer my door for fear of who may be standing on the other side.

If one were to look at the scientific data, the recidivism rate of sex offenders is extremely low. If individual risk

AR-00001796

assessments were completed and the punishment tailored to the crime, not only would this give people their lives back, it would also free up a great deal of money that is currently being poured into a broken system. So many of the requirements are so vague that even law enforcement cant interpret the requirements. The many layers of regulations and reporting requirements constitute cruel and unusual punishment for not only the offender, but also the family members and friends.

The system needs a complete overhaul. An overhaul of the entire system may be an expensive undertaking, but this could be much more efficient and effective, not to mention much less expensive for everyone. This proposal by Attorney General Bill Barr is not the answer.

**Comment ID**

DOJ-OAG-2020-0003-0493

 **Tracking Number**

1k4-9jdu-twja

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 7, 2020



About   Bulk Data Download   Agencies   Learn

(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001797

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

---

Comment

A total review and reconsideration of SORNA in its entirety is required. The three tiered level is completely flawed and must be reworked.

-The vast majority of those who are sexually abused (especially minors) are abused by a relative, friend or close acquaintance. SORNA does absolutely nothing to change that. In fact, the numbers of sexual abuse in this category has been steadily declining since the passage of SORNA and Adam Walsh Act in 2006.

-The 'grab-and-run' (kidnapping/sex assaults) that SORNA was ostensibly created to eliminate are almost exclusively perpetrated by individuals who not only have never been convicted of a sex offense, most have never been convicted of any felony. SORNA does not identify any of these individuals.

-Recidivism rates of 'touch' offenses (sexual abuse, criminal sexual contact, rape, manufacturing of child porn) are lower than the recidivism rates for almost all categories of felonies. Recidivism rates of 'picture' cases (possesion/reciept of child porn) are similarly low, and show little to no correlation to 'touch' cases.

-Those convicted of 'picture' cases almost never commit a 'touch' offense even though picture cases make up the majority of SOR citizens, as well as Federal sex offenses, but are often even more hampered in daily life than touch cases.

The real crime here is that in the case of many 'picture' offenses it is the FBI that is responsible for the dissemination of unverified videos of sexual acts with purported minors. Over zealous judges and prosecutors seize on those swept up in these sting operations and prosecute and sentence to the fullest extent possible in order to bolster their careers. And judges who see the flaws in the sentencing system are forced to impose unwarranted sentences because of the mandatory sentencing requirements. The individual is then caught in the SORNA cycle once they have served, with their lives and those of their family being trapped in this never ending program. Meanwhile the violent offenders are being charged with other felony crimes, like kidnapping, or assault, and are released and never register.

There must be empirical data to support the requirements set forth under SORNA. To date there is none.

AR-00001798

-In the fifteen years that SORNA has been in effect, there is zero empirical evidence proving its effectiveness. Study after study presents no evidence that SORNA effectively reduces sex crime recidivism. In the absence of any empirical data showing that this is effective and in the face of so much evidence that registration only destabilizes and creates a barrier to successful reentry of a population that already has a low rate of recidivism, a complete review of SORNA is required.

The Walsh Act and resulting SORNA is a knee jerk reaction to a horrific tragedy. However, SORNA is being used to justify incarceration and monitoring of individuals that have not and will never commit a horrendous act such as the one that spurred the Act. This has become a money making venture for law enforcement, judiciary, prosecutors, prisons and jails and those tasked with 'monitoring' these individuals who fall under SORNA.

**Comment ID**

DOJ-OAG-2020-0003-0494

 **Tracking Number**

1k4-9jdu-t6mj

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 7, 2020



Your Voice in Federal Decision Making

AR-00001799

Support (/support)   Provide Site Feedback

AR-00001800

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)        Share ▾

Comment

A man, timid and teary eyed, stands to speak. He is no older than 45. He has been a registered sex offender for 20 years. He hangs his head with shame as he tells the crowd about the recent shakedown of his house by several local police officers. He has been subject to years of mandated costly treatment, probation, and monitoring of electronic devices. Still, his house is torn to pieces after an unexpected visit by Denver police. Law enforcement allocated to this task could have spent their time defending domestic threats. Instead, they found nothing of concern in a registered sex offender's home, who was convicted of a sex crime 20 years ago.

Sex Offender Registration and Notification systems have been implemented to provide accessible data on sex offenders (1). These systems are designed to be utilized by both law enforcement and the public to monitor criminal activity and contribute to a sense of community safety. Despite the accessibility to these systems, a national study found that 55% of respondents have never accessed their state's sex offender registry (2). Of respondents who never accessed the registry, 71% reported having no use for the registry, while 24.7% reported that they did not believe that the registry contributed to safety (3). Only 16.4% have accessed their state's registry more than five times (4). 74% of respondents noted that their sole purpose for accessing their state's registry was not for sense of safety, but a mere curiosity of sex offenders living in the area (5) .

The rule proposed by the Department of Justice to clarify Sex Offender Registration and Notification requirements expands who qualifies as a sex offender, reinforces strict registration timelines, and extends information that sex offenders are required to provide. This proposed rule will spend money, time, and resources that could be allocated elsewhere to defend the interests and safety of American citizens. As a former social work intern in a law office, I was assigned several clients who were sex offenders. These clients were incarcerated in our county jail for failure to meet timely registration requirements or to comply with conditions of probation. The failure to adhere was not due to the lack of clarity in regulations. Rather, these clients lacked the money, transportation, and resources to meet the requirements. The offenses that led to their enlistment to the Sex Offender Registration occurred anywhere from 10 to 20 years prior. Several of the cases were juvenile offenses. These juvenile offenses followed clients into adulthood, where barriers were built because of their label and registered status as a "sex offender." Barriers prevented these clients from obtaining employment and housing, often leading to incarceration and the prevention of their contribution to the economy and society.

AR-00001801

The clarification of guidelines indicated by this proposal will not prevent or control crime. In fact, it will likely contribute to the arrest and incarceration of offenders who were convicted decades ago. This enhancement of regulations will distract our law enforcement from protecting the public from those engaging in violent and unlawful behavior.

(1) Harris, A. J., & Cudmore, R. (2018). Community Experience With Public Sex Offender Registries in the United States: A National Survey. Criminal Justice Policy Review, 29(3), 258-279. https://doi.org/10.1177/0887403415627195
(2) Ibid., 266.
(3) Ibid., 274.
(4) Ibid., 266.
(5) Ibid., 274.

---

**Comment ID**

DOJ-OAG-2020-0003-0495

---

 **Tracking Number**

1k4-9jdw-w66l

---

**Comment Details**                                    Submitter Info

**Received Date**

Oct 7, 2020

---



Your Voice in Federal Decision Making

AR-00001802

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)  /  Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  /  Comment

🖥 **PUBLIC SUBMISSION**

## Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)     View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

Here are some basic facts about registrants:

No other group of offenders, including murderers, arsonists, those who commit violent assaults, etc., is subjected to the draconian restrictions of being placed on a public list.
No other country (with the exception of North Korea) has a public list, although many countries' law enforcement agencies maintain nonpublic lists.
•Over 95% of new sexual crime is committed by persons NOT on a registry.
http://psycnet.apa.org/record/2008-18509-003 https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf page 15
https://www.researchgate.net/publication/232505213_Does_a_Watched_Pot_Boil_A_TimeSeries_Analysis_of_New_York_State's_Sex_Offender_Registration_and_Notification_Law
•Public urination, sexting, underage sex, and indecent exposure can trigger a requirement to register.
https://www.hrw.org/report/2007/09/11/no-easy-answers/sex-offender-laws-us third section
•Many registrants face unemployment, homelessness, instability, and personal danger.
http://journals.sagepub.com/doi/abs/10.1177/1043986204271704?journalCode=ccja ; https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf page 9
•Only a small fraction of those on registries are truly high-risk.
https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf page 11
•"Stranger-danger" is rare; 90% or more of victims know their attackers, higher for children.
https://www.rainn.org/statistics/perpetrators-sexual-violence https://www.innovations.harvard.edu/sites/default/files/105361.pdf page 7
•Re-offense is rare. The DOJ has reported a 5.3% re-arrest rate, and a 3.5% reconviction rate after 3 years.
https://www.bjs.gov/content/pub/press/rsorp94pr.cfm https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf page 7
•Research studies have found no relationship between having a registry and a decrease in sex offenses.
http://psycnet.apa.org/record/2008-18509-003 https://www.ncjrs.gov/pdffiles1/nij/grants/225370.pdf pp. 7, 41
•Sex offender registries put innocent family members of registrants in harm's way.
https://link.springer.com/article/10.1007/s12103-008-9055-x https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf pages 9-10
•Registrants are frequently denied special housing such as nursing home care and section 8 housing.
https://www.theatlantic.com/health/archive/2017/06/aging-sex-offenders/528849/ http://scholarship.law.marquette.edu/cgi/viewcontent.cgi?article=1386&context=elders
•Former sex offenders are less and less likely to reoffend the longer they live offense-free.
https://www.hrw.org/report/2007/09/11/no-easy-answers/sex-offender-laws-us http://journals.sagepub.com/doi/abs/10.1177/0886260514526062
https://ofm.wa.gov/sites/default/files/public/legacy/sgc/meetings/board/2015/10/research_outline.pdf https://www.eff.org/files/filenode/024_hanson_decl_11.7.12.pdf
•Current sexual offense laws create conditions that lead to increased crime.
https://qz.com/869499/new-evidence-says-us-sex-offender-policies-dont-work-and-are-actually-causing-more-crime/ https://repository.law.umich.edu/cgi/viewcontent.cgi?referer=https://www.google.com/&httpsredir=1&article=1078&context=articles

---

**Comment ID**

DOJ-OAG-2020-0003-0496

◉ **Tracking Number**

kg0-26m7-6b4c

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 7, 2020



AR-00001804



AR-00001805

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

I am a licensed psychologist in the state of Maryland. I have concerns about the effectiveness of the sex offender registry. The thought process behind why the registry was created makes sense, to promote awareness in the community of a former convicted predator's location and to prevent future sex offenses from occurring. Although this sounds good in theory, research has shown that the SOR in fact DOES NOT do this. The registry does nothing to protect the community and does not prevent crime(s) from occurring. Study after study presents no evidence that SORNA effectively reduces sex crime recidivism. In the absence of any proof that this is effective measure and in the face of so much evidence that registration only destabilizes and creates a barrier to successful reentry to a population that already has a low rate of recidivism. Sex offenders have the lowest recidivism rate of any crime group. This is a fact that has been proven over and over again in the research. A better measurement must be implemented if this population of people are deemed to be monitored (as some should continue to be monitored), starting with implementation of a sex offender risk assessment. If someone is at a high risk of reoffending, some type of monitoring should be put into place for this individual other than a registry.

My second concern involves an individual having to be on the registry for the rest of his/her life. This is absolutely absurd and occurs with no other crime. An individual goes to jail for 5, 15, or 25 years and serves his/her time for a sex crime. The individual participates in sex offender classes, holds employment in prison, is a role model inmate, becomes rehabilitated and is later released to only encounter more obstacles. For example, the registry makes it much more difficult to obtain employment, increases homelessness, causes strain on familial relationships, and leaves the individual marked as a target in society. Lastly, the registry takes away any chance of redemption or societal reintegration for an individual who has already served his/her time in prison.

In conclusion, there is no benefit of having a SOR. The research shows that the registry does not serve the purpose for the reasons it was created. It does not deter crime, lower re-offense, protect citizens, or make the community any safer. Each state pays millions of dollars in resources each year for something that does nothing good and only creates harm. This money could be allocated to other resources such as victim assistance and sex offender programs.

Thank you for your time.

**Comment ID**

DOJ-OAG-2020-0003-0497

 **Tracking Number**

1k4-9je3-ocur

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 7, 2020



About   Bulk Data Download       Agencies       Learn

(/about)         (/bulkdownload)    (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001807

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

I stand with NARSOL to put an end to the registry. It is nothing more than a public hit list and puts innocent family members in harm's way that live with a registrant. I demand it be taken down immediately to prevent the loss of any more lives and put an end to vigilantism. This madness must stop. The registry has morphed out of control and protects no one. Children are placed on the registry for sexting and face a lifetime of harassment and continued punishment. Teens have committed suicide by being placed on the list. Please visit https://ww1.womenagainstregistry.org/ to learn more.

"NARSOL demands the end to state-sponsored facilitation of vigilante murders https://narsol.org/2020/05/narsol-demands-the-end-to-state-sponsored-facilitation-of-vigilante-murders/?no_cache=1&fbclid=IwAR2-BRHdhsP1287wEhF3SGkvrhGKaSXBAECc9uxMdpVyaQNQw2p_rfZIv-Y"

Barbara Rehling, BSN, RN
Women Against Registry
Missouri State Chapter Leader

**Comment ID**
DOJ-OAG-2020-0003-0498

 **Tracking Number**
1k4-9je4-yo53

| Comment Details | Submitter Info |
|---|---|

AR-00001808

**Received Date**

Oct 8, 2020



About    Bulk Data Download    Agencies    Learn

(/about)         (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

AR-00001809

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

Comment

The registry was built on falsifications of facts. Read for yourself -Frightening and High.
https://scholarship.law.umn.edu/cgi/viewcontent.cgi?article=1429&context=concomm

The registry must be dismantled. It leads to homelessness, ridicule, harassment, bullying, vigilantism, and continued punishment for life. No one should have to be defined by their crime. Children who have a mom or dad on the registry are subjected to the same harassment and ridicule. The family members of a loved one on the registry are subjected to the same punishments yet they were never convicted of a crime. There are people that had SISs issued and fulfilled their probation but still have been subjected to the whims of the registry to which they were told would not have to do. When will this madness end. People listed on the registry are targeted by vigilantes who kill the sex offender and whoever happens to be with them, which is usually an innocent person.
https://nypost.com/2013/07/25/husband-wife-vigilante-team-killed-two-planned-to-work-way-through-sex-offender-registry-hit-list/
https://www.hg.org/legal-articles/sex-offenders-facing-increased-vigilantism-21805
https://narsol.org/tag/vigilantism/
https://ctmirror.org/2018/05/21/sex-offender-registry-harm-good/

It causes depression, PTSD, and a myriad of other physical and mental health illnesses. The registry makes it difficult to get a job, place to live and the need for stability. All of which are things that are required to reintegrate into society. People on the registry are shunned and not all on the registry have committed the same offences that deserve the same punishment. Public urination, consensual sex in public places, consensual sex between teens, sexting, rape, failure to register, and child pornography all have the same punishments - life on the registry. The one size fits all mentality is not the way to solve this nor is having a registry. The registry is difficult and expensive to upkeep and many registries have missing information on them. Punishing people for life is not a way to treat society. The sex offender is the modern day leper of society. Let's stop this irrational registry and take it down. Let common sense reign. We need more sex education in schools, more prevention education, and talk about a taboo subject instead of pouring more money into a broken registry system that was doomed to fail from the start.

AR-00001810

The Supreme Courts Crucial Mistake About Sex Crime Statistics Frightening and High (Debunks the 80% recidivism rate cited by now SCOTUS Justice Kennedy)

It is very important that you read the abstract below and then the full 12-page essay by Ira Mark and Tara Ellman.

ABSTRACT This brief essay reveals that the sources relied upon by the Supreme Court in Smith v. Doe, a heavily cited constitutional decision on sex offender registries, in fact provide no support at all for the facts about sex offender re-offense rates that the Court treats as central to its constitutional conclusions. This misreading of the social science is abetted in part by the Solicitor Generals misrepresentations in the amicus brief it filed in this case. The false facts stated in the opinion have since been relied upon repeatedly by other courts in their own constitutional decisions, thus infecting an entire field of law as well as policy making by legislative bodies. Recent decisions by the Pennsylvania and California supreme courts establish principles that would support major judicial reforms of sex offender registries, if they were applied to the facts. This paper appeared in Constitutional Commentary Fall, 2015. (Google: Frightening and High)

Sex Offender Registries Often Fail Those They Are Designed To Protect
https://www.npr.org/2020/08/25/808229392/sex-offender-registries-often-fail-those-they-are-designed-to-protect
The Effect of Megans Law on Sex Offender Reintegration
https://journals.sagepub.com/doi/10.1177/1043986204271676
Grand Challenges: Social Justice and the Need for Evidence-Based Sex Offender Registry Reform
https://scholarworks.wmich.edu/jssw/vol43/iss2/2/

I would love to sit down with the policy makers and explain my story as I am on the sex offender registry yet I never committed a sex offense.

Thank you,

Barbara Rehling, BSN, RN

**Comment ID**

DOJ-OAG-2020-0003-0499

 **Tracking Number**

1k4-9je5-a6mt

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 8, 2020

AR-00001811



About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 8, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Why is it that I hear and see written that the sex offender registry "protects the pubic". How does it do that? No one seems to give a rational or reasonable account as to how it protects. I will tell you what it does do. It gives a misinformed hateful public a reason to ostracize and badger someone living in their neighborhood. It gives some in law enforcement reason to impose more and more registration requirements. It gives vigilantes reason to threaten and in some cases kill a person on the registry simply because they think they "are doing the public a favor". It gives employers reason to not hire a qualified individual due to their status on the registry. It strains families and loved ones due to financial support of the registrant, and the list goes on. Most comments have stated in one way or another these very things so for the sake of a different perspective I will stop with these obvious inequities.

Several questions exist however, One is this; if a person is homeless, they will be required to register say once a month. If a person has a home and lucky enough to be working, but their work requires they travel or have different jobs in various locations during the week, I can safely say it is impossible for them to register daily or several times weekly their location and still maintain employment. Common sense would tell any rational thinking individual this sort of requirement is impossible to abide by, but yet it is there in black and white ready to be imposed on who knows how many people. What about self employed individuals who may need to be in different locations during the week. How will that affect their business?

People who want to commit sex crimes will do so if they are so strongly inclined and no SORNA will change that. We are a society of haters, and what better group is there to hate and continuously punish but a sex offender! We are looking to you Mr. Barr to set things right. We are looking to you to make rational, Contritutional decisions concerning the million or so people and their loved ones who are so negatively impacted by registration requirements. All people are redeemable but under our current laws and ordinances they are not even given a chance to be proven a contributing member of our society. Please consider the comments written in response to your decision.

Any group of people who are targeted for hate by an ever increasing amount of restrictions, Isolation, and unwarranted suspicion contributes greatly to the overall hate that exists in our country today.

AR-00001813



Attachments  1

📄 palm-card-final-front-flat-300dpi

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0500/attachment_1.pdf)

**Comment ID**

DOJ-OAG-2020-0003-0500

◎ **Tracking Number**

kg0-uhpw-dtrt

**Comment Details**  |  **Submitter Info**

**Received Date**

Oct 8, 2020

Your Voice in Federal Decision Making

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001814

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
| --- | --- |

---

| Comment |
| --- |

In early March 2017 our grandson was attending a party at the home of one of his friends in Pennsylvania, his state of residence. These parties had been ongoing for over a year. The parents were in the home. Alcohol was being consumed and marihuana was smoked. The students were taking pictures of each other in partial nudity with their cell phones. Young people see nothing wrong with this behavior and think it amusing. A young man attending the party became concerned his parents might find out so he went to his school counselor to discuss his fears. His counselor called his parents, which was not what he wanted.

The parents called the police and gave them the names and ages of all the students who were at the party. The only one who was 18 at the time was our grandson. The others were 17. The police came to my grandson's house, put him in handcuffs, confiscated his cell phone and took him to the local police station where he was placed in a cell. His parents immediately got a lawyer but the police would not release him to house arrest until the next day.
For the next 5 months he was had to wear an ankle bracelet and be confined to the house. He was assigned a parole officer and was forced to wait until January of the next year to have a hearing. The other students who were within 2 to 3 months of turning 18 never had their cell phones confiscated. Before the hearing the lawyer told his parents that if he went before a jury there was a chance he could be sentenced to 15 years in prison. She encouraged them to ask for a hearing and have him plead guilty to having porn on his cell phone. He pleaded guilty and received 4 years probation and 15 years before his name would be erased from the registry.

Before this painful situation began he had never been in any trouble, excelled in his courses at the high school and was well liked by students and teachers alike. At his hearing there was an outpouring of support for him from teachers, students, minister, parents of students and his family. In fact, in the same month that he was taken off to prison his teachers had voted him Student of the Month.

Since the hearing he has been in no trouble, is finishing his last year in college as an exceptional student and will soon be receiving his Bachelor's Degree. He is planning to pursue a Masters Degree and then further study to become a lawyer.

Our entire family has suffered immensely as he went through our unfair justice system. It is time to reevaluate

AR-00001815

the registery and not condemn bright young people who made one mistake.I am writing to encourage a change in our laws pertaining to the registry. They are antiquated in today's world of internet, cell phones, You Tube, etc. Young people are being labelled and destroyed by our justice system. The following is a personal example of the pain our family experienced when our 18-year-old grandson in his senior year of high school was judged by this outdated law.

---

**Comment ID**

DOJ-OAG-2020-0003-0501

---

 **Tracking Number**

1k4-9jek-zxxa

---

Comment Details                                    Submitter Info

**Received Date**

Oct 8, 2020

---



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

Regarding the proposed SORNA rule change, please consider these three issues: public safety, states' rights and the additional requirements.

I am a person who has studied the criminal system and personal safety since I was violently sexually assaulted as an adult many years ago. My attacker was not, is not, and likely never will be on the registry. His sentence is so long that it is, in effect, life. Most people who commit sex offences are never going to be listed on a registry because some will remain in prison and many will never be convicted. Do not adopt this proposed rule in the name of victims.

PUBLIC SAFETY

The public is often mislead to think, if they check the registry and no registrants live in their neighborhood or near their child's school, that they're safe. The well-documented truth about the registry's ineffective results in providing public safety is reaching the public in articles like this:

> ***Sex Offender Registries - Are they keeping our children safe?***
> Psychology Today by Professor Elizabeth Jeglic, Ph.D **,** August 09, 2019
>
> <u>Do sex offender registries prevent sex abuse</u>?
> As with most things, the answer is complicated—but researchers overwhelmingly agree that in general, the answer is "no." While some evidence1 suggests that registries may act as a deterrent for new sex crimes, the overall research has demonstrated that these laws do little to nothing to reduce reoffending. . . ."
> <u>Why don't they work?</u>
> Researchers have put forth various theories as to why sex offender registries are largely ineffective at preventing recidivism.
> 1. Most sex crimes are committed by someone known to the victim, and thus, once identified, they no longer have access to potential victims. In fact, 93 percent7 of all sex crimes against children are committed by someone known to the victim, such as a family member, friend, or community member.
> 2. Almost all (95 percent) of sex crimes are committed by someone who would not be on the sex offender registry—which means that only 5 percent of reoffending could be prevented by these registries.  . . .
> https://www.psychologytoday.com/us/blog/protecting-children-sexual-abuse/201908/sex-offender-registries

Then, for those involved in justice issues, there are articles like this from the **A*ssociation for the Treatment of Sexual Abusers*** on October 1, 2020*:*

> ***(ATSA) REPORT CONCLUDES SORNA DOES NOT ACHIEVE ITS GOALS***
>
> The research to date on SORN has not identified significant reductions in the incidence of sexual abuse or sexual offense recidivism as a result of this policy. This fact leads to the conclusion that SORN, as currently implemented within the United States, does not achieve the intended goals of preventing sexual abuse, protecting society, or effectively managing the risk of individuals convicted of sexual crimes. . . .
>
> SORN laws as currently applied to adults convicted of a sexual offense in the U.S. are not evidenced-based, do not enhance community safety or prevent sexual abuse.
> https://www.atsa.com/policy/AdultSORN.pdf

And this August 12, 2020 paper by Catherine L. Carpenter at Southwestern Law School:

> ***Blanket Exclusions, Animus, and the False Policies They Promote***
> Saying something is true does not make it so. And saying it louder does not make it truer.  But such is the legislative posture behind modern day sex offense registration laws that punish those who commit sex crimes because of entrenched myths that overstate the laws' positive impact on public safety and

exaggerate recidivism rates of offenders.
https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3665638

STATES' RIGHTS

This proposal creates conditions that could impose federal regulations on states that have their own ideas about how to best create and maintain sex offender registries. This would mean abandoning the decisions that each state/territory has made on their own as to what is best regarding their registry. States generally want to adopt these federal guidelines because it means more federal JAG funding for their state law enforcement programs. However, most states are not fully compliant today. This proposed rule change needs to be abandoned because it is an attack on states' rights.

ADDITIONAL REQUIREMENTS

In his September 16, 2020 **Remarks at Hillsdale College Constitution Day Event,** Attorney General William P. Barr stated:

> In recent years, the Justice Department has sometimes acted more like a trade association for federal prosecutors than the administrator of a fair system of justice based on clear and sensible legal rules. In case after case, we have advanced and defended hyper-aggressive extensions of the criminal law. This is wrong and we must stop doing it.
>
> **https://www.justice.gov/opa/speech/remarks-attorney-general-william-p-barr-hillsdale-college-constitution-day-event**

Proposing to collect more information from registrants is a hyper-aggressive extension of the SORNA requirements. This is wrong and we must stop doing it.

registries are **expensive**. In the Spring 2019 issue of **CATO's Letter**, Emily Ekins reports that they "find that the public turns against purportedly popular new government programs when they learn how much the programs cost and what trade-offs they will have to make. "

Judges will more likely call them **punitive** Rauch

Consider that about 95% of sex offenders do not get another sex related conviction, about 95% of new sex offense convictions are of people who are not on the registry and about 95% of sexual harm to children is committed by someone they know. That means that for every registrant who will be reconvicted there are 19 non-registrants, many familiar to us, who will get their first conviction for a sex offense. Whatever we do to protect our families from the people who are about to be convicted of their first sex offense would also protect us from the 5% or so of people who are listed on the registry who will be reconvicted.

It has long been evident that

> Joshua Vaughn The Sentinel Mar 26, 2016These are not laws that are going to actually produce safety. We need to be focused on prevention in vastly different ways.Most victims of sexual violence know the person who committed the offense prior to the offense occurring. (https://cumberlink.com/news/local/closer_look/when-facts-aren-t-facts-a-look-at-the-effectiveness/article_01b3ec77-053f-5a8f-8436-5cab0a2090c6.html).

   In recent years, several states (e.g., **Oregon, California, Arizona**) have recognized the need for changes to current SORN laws and have taken steps toward meaningful reforms such as **individualization of registration requirements based on level of risk** and **providing avenues for relie**f from registration. While ATSA applauds these efforts, they are not enough and more needs to be done. The U.S. would also benefit from exploring how our international partners have implemented registration within their jurisdictions, especially the countries that have incorporated rehabilitation and reintegration as foundational bases of their registration systems.

In addition to being ineffective at providing public safety,

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

See attached file:

This is my final version of my civil complaint in US District Court of Nevada challenging sex offender registration, the in-person requirement.

Search google "warenback" to contact me.

| Attachments  1 |
|---|

📄 6-1

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0503/attachment_1.pdf)

**Comment ID**
DOJ-OAG-2020-0003-0503

 **Tracking Number**
1k4-9jen-7u3d

AR-00001820

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 8, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download    Agencies    Learn
(/about)    (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001821

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

SORNA law is ex post facto, whether all courts currently agree if it's punishment or not. Pushing this "regulatory civil" scheme that attaches criminal liability to registrants is a thinly veiled attempt to create additional punishment without stating so. Creating a lower class of citizens that have all sorts of special exceptions and exclusions isn't keeping anyone safe and is in fact making the situation worse by inhibiting reintegration and rehabilitation of ex-offenders.

Considering how incredibly low recidivism rates are for this class of offender, this is an attempt to score political points at the expense of an already downtrodden and dehumanized class.

Proponents of SORNA, this change, and of criminal "civil" registries are on the wrong side of the law, and soon to be on the wrong side of history. These changes should not be adopted, and in fact SORNA should be abolished at best, or at worst decloaked as the criminal punishment apparatus it is.

**Comment ID**

DOJ-OAG-2020-0003-0504

 **Tracking Number**

kg1-iwhx-ipvc

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 8, 2020

AR-00001822



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001823

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

The draconian, non-fact based expansion of rules regarding the takeover of State's sovereignty, can not stand. Federal law is as it applies to States is solely base on interstate commerce. If an individual is convicted in offense of a State law and it does not offend a Feral interstate law then Federal jurisdiction does not apply, not matter how much you wish it to be so. No amount of disguised vile rhetoric will change this.

**Comment ID**

DOJ-OAG-2020-0003-0505

◎ **Tracking Number**

kg1-p8h1-pmmv

**Comment Details**                          **Submitter Info**

**Received Date**

Oct 8, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

Comment

[***DOJ DOCKET NOTE PERSONAL IDENTIFIYING INFORMATION OF THE COMMENTER REDACTED AT THE COMMENTER'S REQUEST***] PERSONAL IDENTIFYING INFORMATION: Registrants (those compelled to be publicly identified on state/federal sex offender registries) have paid their debt to society through incarceration, probation and rehabilitation/counseling programs. Public sex offender registries under SORNA present innumerable barriers to the productive reintegration of a registrant into society. Accountability presents a significant opportunity for rehabilitation of registrants, yet SORNA assures that registrants are ostracized from the very communities their home neighborhoods, places of worship, workplaces - that would form the basis of this accountability. SORNA is based in no small part on a statistic of a frightening and high recidivism rate for sex offenders that is in fact an entirely invented number. This zombie statistic, from Psychology Today, a general readership, non-peer reviewed publication, first appeared in a 1986 article and has since been repudiated by its author, a non-scientist. Yet, it continues to live in US Supreme Court and other lower court rulings. Recidivism rates for registrants are in truth extremely low. Instances of sex offenses, particularly those against children, are overwhelmingly committed by persons known to the child (a parent, step-parent, sibling, step-sibling, neighbor, teacher, coach, religious figure, etc), not by a recidivist registrant. As one of many problematic issues with SORNA, the proposed legislation notes that [b]y providing a comprehensive articulation of SORNA's registration requirements in regulations addressed to sex offenders, it will provide a more secure basis for prosecution of sex offenders who engage in knowing violations of any of SORNA's requirements. This language belies the notion that the SORNA is focused on protecting communities by preventing sex offense recidivism. It rather reveals an emphasis is on prosecuting registrants ignorance of, or misunderstanding of, complex SORNA compliance rules. Creating greater federal-state redundancies in SORNA will only increase the already significant barriers registrants experience while attempting to reintegrate into society and lead productive lives. It will not make children more safe, but will increase the social burden of registrants who require multiple forms of public aid, at taxpayer expense, due to community ostracization, homelessness, and unemployment or underemployment.

---

**Comment ID**

DOJ-OAG-2020-0003-0506

AR-00001826



**Tracking Number**

1k4-9jf1-69si

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 9, 2020



Your Voice in Federal Decision Making

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001827

**DO NOT PUBLISH ANY PERSONAL IDENTIFYING INFORMATION**
**This includes name, address, phone number, and email**

Comment on FR Doc #2020-15804

As a sister of a person who is required to register, I have concerns about how the changes would further impact the registrant and their family and friends.  The following paragraph will send light on this comment.

Following my brother's incarceration, I saw firsthand the impact it had not only on him, but loved ones.  He basically became a recluse, afraid of venturing outside the home he was offered after imprisonment.  His children moved to another state to escape notoriety, his wife had divorced him and also moved away.  The friend who offered him housing was ostracized from social circles and asked to move by neighbors or have my brother leave.  A sibling was reassigned positions on his job and another sibling was admonished by her employer.  Both were involved in the medical field and fear of loss of clients were admitted by their employers as part of the reason for the action taken – even though both these siblings had excellent reputations in their respective fields and families dependent upon their earnings.  A third sibling who lived out of state denied a relationship with our brother when colleagues asked him if he were related.  This inquiry by colleagues was based on the fact that they had the same last name and same profession, not on anything the sibling did.  To protect his job and not tarnish his reputation, he denied our brother.  I was basically out of the mob's view since I lived out of state, and my last name had been changed due to marriage.

Items to be considered for elimination from the rule change proposal # FR Doc 2020-15804:

1. **Section 72.1 Public View**   Allow only law enforcement and courts access to the registry as there is no need for viewing by the general public.  Public view sometimes brings out a mob mentality and hinders the released inmate from progressing toward being a responsible citizen by gaining housing and employment.

2. **Section 72.5 (c) Tier registry reduction** opportunities should be made available to all to reduce their registry commitment.

3. **Section 72.6 (c) Temporary lodging** time period should be 14 days rather than 7 days.  This would allow more time (especially for those whose

families live in another part of the country) for travel and visitation with loved ones to help re-establish familial relationships following release from prison.

4. **Section 72.6 (f) Vehicle information** is not necessary on another person's residence if the released person visits.  As long as the resident address of the sex offender is on file that should be sufficient.  Just because the offender visits someone should not mean that they too be subjected to the reactions of the public.

5. **Section 72.7 Registration** and **Keep Current** sections need to be simplified.  There have been people that live in one area, work in another, go to school in a third, and have families even out of state.  If the registry is truly national, one simple registration should suffice.

Rather than spend time and resources on multiple registrations that last a lifetime, why not use the funds on counseling services for the offender, their families, and for enlightenment of the general public.  Rather than imposing a lifetime of rules that keep a person from normalcy following the required therapy for release, why not give him the tools to rebuild their lives and become a productive member of society?  Those people who commit murder are given the opportunity to do so.  Why not people who commit sexual offenses?

The proposed rule as written should not be accepted,

In Reference to: Docket No. OAG 157
Registration Requirements Under the Sex Offender Registration and Notification Act (SORNA)

<div style="text-align: right">

Larry D. Morris, Jr.
# 00695618
JTVCC
1181 Paddock Rd.
Smyrna, DE 19977

</div>

First, I would like it to be known I strongly oppose the above docket which will only further condemn those affected, mainly those on the Sex Offender Registry, but more importantly their families and those who have also struggled through the offender's offense.

I'm sure by now you've skimmed over comment after comment and letter after letter of those who oppose these new changes. You may even read some who are for it. You may be taking into consideration their stories, their testimonies and making sense of all the statistics that such a change would incur. I'm sure you even see reason that such a register is unconstitutional because even though we live in a country founded upon freedom and the very act of change, this country has fallen from the very root; the seed that sprouted into personal growth and community networking.

I was born in this country forty-three years ago. On that day my right to freedom was branded in my DNA. My country gave its word to uphold the constitution on my behalf and for others in the case I break any laws. My crime is public record and one day my story will be, too. More importantly, my country failed to protect me as a child, yet later in life changed laws that gave such a person more freedom. My point is, adding more hardships don't make for good resolutions. As a convicted felon, a person's record per se is already tainted, yet even in the institutions of our country certain crimes are stereotyped and held as more "egregious" than others. Crimes such as domestic abuse, rape of the elderly, murder and drug trafficking are seen as exceptional to fellow inmates and even to society; proof being the very laws you propose.

Here's my concern. When I stood before my judge, I told the truth, took responsibility for my crime and every day since have been striving to be better than I was yesterday. I know in my heart my crime was wrong and as God as my witness know I will never re-offend. However, this isn't good enough for my government. The very same "institution" of governing persons is reneging on their word. In accordance with the court I accepted a plea of punishment they felt necessary for my crime. When said sentenced time is completed there's a plethora of stipulations I must adhere to, yet at the same time I'm asked by my counselor here (during yearly evaluations) "What will it take for me to be a successful member of the community again?" Do you know my response shocked even me. I responded, "To be confident, to know I'm accepted by humanity."

Let me give you an example of humanity from my perspective in my environment. Every day I encounter people who have failed in one way or another. I've spoken with many and they regret their actions leading to their crime. Most committed sex offenses, some took a person's life—

<div style="text-align: right">AR-00001830</div>

others fully aware the "system" thankfully only knows so much or they'd never earn their freedom—a chance to do the right thing. Matter of fact many out there are still not convicted yet of crimes from their past. My point being, a country which condemns without the chance of being recognized for rehabilitation, thus extending to them a second chance of life is no country I want to be in cohorts with. That is not the America I once knew.

Instead of furthering SORNA's requirements they should be looking for a way within reason to lesson them: promoting growth, further rehabilitation, and reaching a positive understanding within communities. Though I can't yet relate, I can imagine being a sex offender released into the community isn't being seen as a new kid in school, but being offered as a sacrifice to a world lacking compassion and forgiveness. What has become of our country when justice becomes a thirst that's never quenched?

I implore you to see reason, reason to oppose such constitutional restraints and press upon SORNA as well as our government to initiate a more supportive and understanding form of regulations for sex offenders and/or all convicted felons. I fully understand our laws are to protect "the people", but I am still part of these people, not an outcast these regulations are continually pressing upon those once guilty of a sex offense. If we were once innocent until proven guilty, how does America, our Justice Department plan on initiating or implementing procedures that remove that guilt once we fulfilled out punishment? In other words, what role do you play in ensuring released felons/convicts/people are able to be successful members of society again? It's an obvious answer! Regulate rehabilitation through programs, research, and humane ways of normalcy by treating persons newly released as full citizens again.

If a full removal of the registry doesn't seem constitutional, let alone humane, consider the turmoil our country currently struggles with. "Liberty and justice for all," sounds contradictory, but not if all members of society are treated equally. There can be "liberty and justice for all" in accordance to our Constitution, but not through continual proposals of substantial alienation of the people no matter their record. If our country truly is "One Nation Under God" then it's about time we adhere to God's laws through compassion, reasoning and extending grace to all—incentive being, less monies controlling and more on educating. Educating those released and society as a whole instead of inducing fear among the public instilling hatred in their hearts.

Registries don't stop crime form continuing nor do they effectively make society a safer place; they instill fear, hatred, confusion, stereotyping and further restrict citizens from paying their restitution forward within their community. Registries are discriminating, "justifiable" bullying and a seed to hate crime. Homosexuality and gender equality once was not "legal" but found to be constitutional and a hate crime to speak out against them. Liberty was extended because they have a right to be who they believe they are. Though wrong in the eyes of many, grace was given. Yet forgiveness and upholding our constitutional rights to persons labelled "sex offenders" a lifetime of over-bearing legislative restrictions seems adequate. Justice begins with a crime and ends with the time (completed).

Thank you for the opportunity to voice my concerns. God Bless.
Respectfully,
Larry D. Morris, Jr.

AR-00001831

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

---

Comment

I am the wife of a Tier 1 Federal Sex offender. My husband became addicted to internet pornography, and likely due to being abused himself as a child, focused on child pornography. He never sought to meet or harm any child; his students, family, and nieces and nephews all attested to his lifelong beneficence and harmlessness, and his judge stated explicitly in his sentence that he was not a danger to any child. However, we live in Cincinnati Ohio, so as soon as he served his sentence he was re-classified as Tier 2, assumed to be a predator, and forced to move from our home of 25 years, as it is within 1000 feet of a school.

The current SORNA laws lump all sex offenders into one group and assume that they are predators. This is belied by all actual data on the people who offend, their recidivism rate, and the blatant lack of effectiveness of these laws in protecting children and removing child pornography from availability on the internet. It is documented that the police and Feds are themselves keeping child porn available in order to catch unwary porn addicts: the hypocrisy is evident. My husband would have been called a victim when he was abused as a toddler, and now he needs treatment -- but what he got was 4 years of incarceration, and now legal status as an outcast from society.

SORNA laws are not just inconsistent from federal to state to locality, but completely ineffective in what they purport to accomplish. They have become yet another reason for me and my family to distrust the legal and judicial process and the officers who enforce it, including (especially) the politicized office of Attorney General. These officers are out to put notches on their belts, not to protect victims. Reform yourselves, as my husband is trying to reform. The only thing that stands in his way is this unjust set of laws.

Comment ID
DOJ-OAG-2020-0003-0509

 Tracking Number
1k4-9jf3-t1fu

AR-00001832

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 9, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001833

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003) / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001) / Comment

PUBLIC SUBMISSION

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments    724 (/document/DOJ-OAG-2020-0003-0001/comment) | View Related Comments    724 (/docket/DOJ-OAG-2020-0003/comments) |
|---|---|

Share ▲

**Comment**

As a current offender that has registered since the registry was enacted, I can honestly say that the proposal of the AWA ( Adam Walsh Act) is unjust and not proven in the public.

The registry in itself is to not protecting the public in any way. Over 95% of new sexual crime is committed by persons NOT on a registry. ( see proven data and research below).

http://psycnet.apa.org/record/2008-18509-003 https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf page 15

https://www.researchgate.net/publication/232505213_Does_a_Watched_Pot_Boil_A_Time-Series_Analysis_of_New_York_State's_Sex_Offender_Registration_and_Notification_Law

As an offender that spent nearly 30 yrs on the registry, going from tier one to tier 3 with no indication or verification as to why and/or how they actually arrived at that decision other than the Justice department picks and choses people based on wording on an ineffective system.

Proposing this law is solving absolutely nothing, other than enhancing the already problematic system.

children and young adults of offenders. It is this the outcome the Justice department seeks?? Proposing this law is solving absolutely nothing, other than enhancing the already

The registry is used to harass, bully and intimidate their families and their families and anyone related or associated with them. This includes parents, relatives,

Most of my family is law enforcement and Justice system, including father whom was a veteran in your department when you were a rookie Mr. Barr, and also worked along side president. They all believe there should be a registry, but not as a public one, the registry only truly helps law enforcement. It serves no purpose to any one else, and not in a way that creates a death sentence for any offender. They believe that each individual offender should be assessed and evaluated face to face to correctly identify risks factors and given a chance to come off come off registry. Not classify them into tier 3, a life time death sentence, without true evaluation.

In the long time frame I have had to register, I have personally come to know many of the officers and law enforcement I register at. I had the privilege of asking each one how they felt during here in Michigan, being one of the largest registries in the country. Their responses are as follows; They state that it's " time consuming.", " waste of resources.", " rather be doing real police work.", " takes up all my time.", " can't wait for some of these offenders to come off the list, takes up all my time." " Tiresome." " very burdensome", and many more comments....The majority of officers agree that many pose no problems, and they too agree there should be a registry, but cut down in size and eliminate many of the ones that have been there for quite some time that have not posed any problems as they ( law enforcement) are the ones that can honestly say which ones they trust and don't trust. They agree as well that much of the registry has too much info to keep track of, and needs to be scaled down, as it's un-necessary. They also believe the registry should be for police only, not public. Some don't see or feel the need for public registry.

IN CONCLUSION, I myself oppose the AWA proposal. That is not the answer. A good many states strongly oppose the death sentence, and that proposal is just that, a death sentence to have the majority serve a lifetime on registry. That is subjected to challenge as your aware. Even the President believes in second chances. In compromise to the proposal, I strongly suggest that assessments be made to each and every offender on registry accordingly, and adjust their time on registry accordingly. Thus to be removed completely from registry when time (AND CRIME FREE) in that time frame) is completed. I believe this to be an honest and fair approach to make all sides happy and justified.

Gentlemen and Ladies, Thank you for your time and have a pleasant day.

| Comment ID |
|---|
| DOJ-OAG-2020-0510 |

| Tracking Number |
|---|
| 1k4-9lf3-gpo6 |

| Comment Details | Submitter Info |
|---|---|

| Received Date |
|---|
| Oct 9, 2020 |



About
(/about)

Bulk Data Download
(/bulkdownload)

Agencies
(/agencies)

Learn
(/learn)

(https://resources.regulations.gov/public/component/main?main=Reports)

Reports

FAQ
(/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001835

In Reference to: Docket No.OAG 157
Registration Requirements Under the Sex Offender
Registration and Notification Act (SORNA)

Richard J. Morgan
SBI# 00649107
JTVCC
1181 Paddock Rd.
Smyrna, DE 19977

September 26, 2020

To Whom This May Concern:

   Hi. My name is Richard Morgan, currently an inmate at James T. Vaughn Correctional Center in
Delaware. I have lived around all kinds of criminals for the past 10 years and still have time left on my
sentence (even with this being my first offence). I can tell you for a fact that there are some serious rapists
in here, if they are released, they will re-offend, which is why I believe the sex offender registry is
needed. However, I believe (whole-heartedly) it is being implemented incorrectly. I believe the registry
was designed to inform the public of the most dangerous type of sex offender. But it's being abused by the
justice system as a means to classify every individual (male and female) no matter the offense as a sex
offender, when this is an injustice on the system's part. Think about it, is it fair, or right to punish a young
man (26 years old) for the rest of his life for having a sexual relationship with a willing 14, 15, 16, 17
year-old girl? Yes, he broke the law by engaging in a sexual relationship with a minor (13-17 years of
age), which is considered sexually offensive to the public (as such) be punished for it, but to ruin his life
over a dim-witted mistake is just not right, and is unconstitutional.

   The system needs to be reformed; here are my thoughts on how. The registry should be used for the
most dangerous and possible re-offender. Not an individual that got caught having sex in public with his
girl, or urinating in public, or having an inappropriate relationship with a willing minor. These offenders
should be given the opportunity to earn their way off the registry.

   Those individuals that complete their registered period of time or have completed their conditions for
Relief would have a second chance at being productive members of society instead of having their lives
ruined forever. This one is a fine line—continue reading and I'll explain. I've come up with a basis for a
format to implement the registry according to the type of offense. Note, this is not a finished work-up, my
resources are limited. I do not have access to case law; therefore, I'm unsure of the classifications of
crimes in Delaware's Title 11 and Statutory Codes.

   A rapist is someone that has violated an unwilling individual in a most traumatizing way. Those are the
most dangerous types of offenders. I classify these individuals and types of offenses as Category 1
Offenders (Rapists). These most dangerous offenders include: rapist murderers, serial rapists, sexual
assaulters, child (12 years old or younger) rapists, forcible minor (13 years to 17 years of age) rapists, and
etc.

   This system also has a Tier level system in order to gauge the seriousness of the Category Offense
(Tier 3 down to Tier 1). Tier 3 Offenders are the most serious and dangerous within their categories, Tier
1 being the least. This is where I believe the registry guidelines should be implemented by each state, at
the same time, implementing a Relief Guideline as well.

It is a currently mandated requirement for sex offenders to participate in sex offender programs that do risk assessments. This information is collected for the probation/parole officer. This mandated sex offender program will stay as it currently is, only under Category 1, not Category 2.


Category 1 (Rapist):

Tier 3 Offenders register for life every 3 months and no sentence of Registry Relief is available.

Tier 2 Offenders register for no longer than 25 years every 3 months, no Sentence Relief is available; Registry Relief is available at the discretion of parole or probation officer.

Tier 1 Offenders register for no longer than 15 years every 3 months. Relief is available as long as sentencing conditions are met.

My plan would also have the offenses and sentencing guidelines implied within this, but this is not a bill, this is an incomplete idea.


Category 2:

Now we have a second category, classified as Category 2 Offenders (sex offenders). These individuals have committed a sex-related crime that is deemed sexually offensive to the public, hence the name. Offenses include: engaging in an inappropriate sexual relationship with a willing minor (ages 13-17), urinating in public, indecent exposer, engaging in a sex act in public, and etc.

Under my idea with the Category 2, the sexual offender programs are not required unless the court deems them necessary and/or appropriate to the offense.

This follows the same Tier system I mentioned earlier. See below for Category layout:

Tier 3 offenders register for no longer than 10 years every 3 months. Relief is available as long as sentence conditions are met.

Tier 2 offenders register for no longer than 5 years every 3 months. Relief is available as long as sentence conditions are met.

Tier 1 offenders register for no longer than 2 years every 3 months. Relief is available as long as sentence conditions are met.

Now with the idea of the system shown, you need to understand the Tier system has a second function (Re-offending Guideline):

This is how it works: if an individual has previously been convicted of a Category 2, Tier 3 offense, later commits a Category 2, Tier 1 offense, then their higher classification level increases to the next Tier level. In this case, the offender will be sentenced under a Category 1, Tier 1 offense even if the new charge is a Category 2, Tier 1 offense. This is because this individual has shown to be a danger to society. With this re-offense, the Registry Time Period will stack according to the previous offense level with the new offense level which will be ten years plus fifteen years for a total of 25 years.

And if the individual has committed a Category 2, Tier1 offense before, then later commits a category 1, Tier 1 offense, well that individual would be sentenced under a Category 1, Tier 2 offense because they have shown (again) they are a danger to society.

Note, these descriptions are second-time offenders. The more times an individual commits offenses—the worse the classified offense.

Once individuals have completed their registered periods of time and/or completed their conditions for Relief, they will be removed from the registry completely, and be allowed to be a productive individual of society, instead of ruining their lives forever.

My suggestions would allow those individuals that made dim-witted mistakes second chances to be productive individuals of society, unlike the current system. Also, if the individual is a repeat offender or rapist, my system would punish these individuals more severely than under the current system. During my time in jail (Yes, I'm currently in jail for 17 years due to having an inappropriate relationship with a minor (teenage girl) 10 years ago, I've seen child rapists (12 and under) come in and out these doors more than 3 times and get less time (altogether) than I have in jail currently. I only made a dim-witted mistake. They knowingly continue to molest kids, and come and go in and out of jail with no cumulative punishment compared to me. A young man (age 26 at time of offense) made a dim-witted mistake and now his life is ruined because of it, and does more time for his first offense than a repeat sex offender. My idea will still monitor, but also free it up, by giving people a second chance.

With the benefit of reducing registry time based upon the severity of the offense, this plan will free-up costs for data collection, number of required man-hours, operation expenses, etc. All of which are great cost-saving features.

I hope people will consider my suggestions. If you have any questions about my ideas, feel free to write me.



October 9, 2020

Hon. William Barr
Attorney General, United States of America
Attn: Regulations Docket Clerk
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue, NW, Room 4234
Washington, DC 20530

<div align="center">

Re:     <u>Docket No. OAG 157</u>
**Proposed Rule Interpreting Registration
Requirements Under SORNA**

</div>

Dear Attorney General Barr:

My name is Jill Sanders, and I'm a practicing attorney in New York and New Jersey. I'm writing this letter on behalf of the Restorative Action Alliance ("the Alliance"), a newly-formed grass roots, non-profit (application in progress) corporation. I am the Alliance's secretary/treasurer and litigation group lead.

Although the organization is still relatively new, our members are not new to advocacy efforts. We focus our efforts in New York, New Jersey, and Connecticut. Through education, litigation, and legislative advocacy, the Alliance helps build safer communities which invest in primary prevention of sexual harm, create meaningful accountability for those who cause harm, and safeguard the civil liberties of all. We believe that meaningful accountability for sexual harm is imperative to facilitate healing for individuals and communities. A public health approach, rather than a carceral approach, must be taken to address sexual harm. Policies should be based on sound research and evidence, rather than fear, politics, and emotions. We divert an enormous amount of resources and attention into systems, including public registries, which continuously punish people who have already served their sentence with no public safety benefit, while cases of sexual abuse and rape routinely go uninvestigated or unsolved. Most people on sex offense registries do not re-offend, and other models of post-incarceration re-entry have been demonstrated to be more effective at keeping people crime-free. Further, research supports the notion that aggressive policies such as community notification and housing banishment laws actually increase rates of re-offending. Resources should be divested from policies that shame, perpetuate violence, surveil, and control; instead, those resources should be reinvested in primary prevention as well as transformative and restorative solutions.

As you are aware, the individual registration schemes of New York, New Jersey, and Connecticut are not compliant with the Sex Offender Registration and Notification Act

AR-00001839



("SORNA"), 34 U.S.C. § 20901 et seq. See N.Y. Correction Law §§ 168 et seq. ("Sex Offender Registration Act," or "SORA"); N.J. Stat. Ann. 2C:7-1 to 11 ("Megan's Law"); Conn. Gen. Stat. §§ 54-251 to 54-261. Yet still, SORNA may apply to the residents of New York, New Jersey, and Connecticut.

On August 13, 2020, the U.S. Department of Justice ("DOJ") issued its Notice of Proposed Rulemaking for the purpose of amending regulations relating to SORNA. The proposed rules are meant to clarify how the DOJ may interpret and implement SORNA. Unfortunately, the proposed rules provide little or no guidance about how SORNA may affect registrants in non-compliant states, including New York, New Jersey, and Connecticut. The Restorative Action Alliance respectfully requests that the DOJ reconsider or revise specific provisions of the proposed rule for the reasons discussed below.

New York, New Jersey, and Connecticut are informally known as the "tri-state." These states have similar cultures and ethnic/racial groups, and we have thriving interstate commerce, trade, and industry. In particular, the area surrounding New York City is one of the most populous metropolitan areas in the world, and it is the single largest in North America. Persons with convictions for sex offenses are often living and working within this network of interstate commerce. Thus, our tri-state area is uniquely affected by SORNA, given the frequency of people crossing state lines as they go about their daily lives. SORNA also impacts persons who travel in and out of Native American lands, and there are a number of such reservations in our states.

Given the frequency of interstate commerce and travel in the tri-state, it is clear that there may be many cases where federal jurisdiction exists to prosecute pursuant to SORNA. Our chief comment relating to the proposed rules is that they are vague concerning the issue of circumstances which may support federal jurisdiction, thus triggering a registrant's duty to comply with SORNA. Moreover, it's not clear how the DOJ intends to exercise its prosecutorial power and discretion in these cases. It may be best to consider real-life examples of the questions which persist about the risk of federal prosecution.

One area that provides confusion is which state offenses the DOJ would deem registrable pursuant to SORNA. The proposed rules are completely silent in this respect. Let us consider Tom Smith, who was convicted in New Jersey of possession of less than 1,000 images of child sexual exploitation; this conviction does not require registration in that state. See N.J.S.A. 2C:24-4b(5)(b)(iii); N.J.S.A. 2C:7-2(b)(2). What is the position of the DOJ regarding Mr. Smith's duty to register pursuant to SORNA? See 34 U.S.C. § 20911 (defining the term "sex offender"). Does the DOJ's position change if Mr. Smith travels to a neighboring state for business or personal reasons? While the requirement to register is ultimately a judicial determination, the DOJ should clarify which state offenses it would argue trigger SORNA registration.

AR-00001840



Mr. Smith's case may be an easy example as the conduct closely matches the registrable offense criminalized by 18 U.S.C. § 2252A. However, there are state offenses requiring state registration which may not match the definition of a "sex offense" pursuant to SORNA. For example, Bob Price was convicted in New York of Unlawful Surveillance in the Second Degree (N.Y. Penal Law § 250.45(3)) with an adult victim,[1] and the trial court deemed Mr. Price a sex offender required to register in New York. Yet the conduct for which Mr. Price was convicted does not closely match any registrable offense pursuant to SORNA unless the offense was against a minor. See 34 U.S.C. §§ 20911(5)(a), (7)(f). If Mr. Price travels to Connecticut for his job, but SORNA doesn't consider his offense registrable, must he register in Connecticut or face a potential SORNA failure to register charge? Thus, it is paramount that the DOJ provide clarity on which state offenses would be considered "sex offenses" pursuant to SORNA.

Another issue arises when non-resident workers are not required to register in the states in which they work. Take for example John Doe, who lives in Connecticut and works in New York City. Mr. Doe is fully compliant with Connecticut's registration requirements, yet New York does not require individuals who are employed within the state (who are not residents) to register. See N.Y. Correction Law §§ 168-f(6); 168-a(14), (15). They need only provide their current address and place of employment or education with the NYS Division of Criminal Justice Services. Id. However, this conflicts with SORNA's requirements. See Proposed Rule § 72.4 (indicating registrants must register "in each jurisdiction in which the offender resides, is an employee, or is a student"). What is the position of the DOJ regarding Mr. Doe's duty to register pursuant to SORNA if he travels each day to work in a state which does not require his registration?

Such issues also come up for those living in and around tribal nations. For example, Jane Jones lives in New York state and works at a business located within the Oneida nation lands. Ms. Jones is fully compliant with New York's registration requirements as a Level 1 registrant. Yet New York's registration scheme doesn't match up with SORNA, which governs in the Oneida nation lands. See U.S. Department of Justice, Office of Justice Programs, Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking, SORNA Substantial Implementation Review: Oneida Indian Nation (September 2015). And under SORNA, Ms. Jones is under a duty to provide additional registration information that New York doesn't collect, including employment information, location where her cars are kept, her phone numbers, and her professional license information. See Proposed Rule § 72.6 (indicating information registrants must provide). The question becomes, just by traveling to work every day within her own state onto nation lands, is Ms. Jones violating federal law because those details aren't reported to the

---

[1]   N.Y. Penal Law § 250.45. "A person is guilty of unlawful surveillance in the second degree when: … (3)(a) For no legitimate purpose, he or she intentionally uses or installs, or permits the utilization or installation of an imaging device to surreptitiously view, broadcast or record a person in a bedroom, changing room, fitting room, restroom, toilet, bathroom, washroom, shower or any room assigned to guests or patrons in a motel, hotel or inn, without such person's knowledge or consent. … ."

AR-00001841



New York registry? Are those technical differences between SORNA and New York's scheme going to subject her to failure to register?

The regulations could also clarify how the DOJ intends to enforce SORNA against people who have been removed from their state's registry. Consider Fred Bloggs, who lives New York. In 1991, he was convicted of Rape in the First Degree in New York. When he was released from prison in 1997, he registered in New York as a Level 1 and at the time, this did not require lifetime registration in New York. See N.Y. Correction Law § 168-h (requiring lifetime registration for "sexually violent offenders" for registrants so designated on or after March 11, 2002). Under SORNA, his conviction would require lifetime registration subject to the "clean record" provision. See 34 U.S.C. § 20915(b). After many years of living a law-abiding and productive life, Mr. Bloggs no longer has to register in New York pursuant to that state's law. Mr. Bloggs is employed in New Jersey, where he properly registered and later successfully petitioned to be removed from that state's registry. See N.J.S.A. 2C:7-2(f). If he has no duty to register in either jurisdiction but he doesn't qualify for a "clean record" provision pursuant to SORNA, is he subject to federal prosecution for failure to register each day he travels in interstate commerce? See Proposed Rule § 72.5 (regarding duration of registration).

Another concerning point in the proposed regulations is the retroactivity of SORNA. The proposed regulations state that retroactivity is determined by the Attorney General's Office. See Proposed Rule § 72.3 (applying SORNA's requirements to those with pre-SORNA convictions). While perhaps the Attorney General's Office may be able to make a recommendation as to whether a person is subject to SORNA, whether a person is subject to registration is a matter solely for the courts to determine. For example, in New York, the registration requirement must be a determination made by the sentencing judge or at the SORA registration hearing of a person convicted in a foreign jurisdiction of a sex offense. See N.Y. Correction Law § 168-d; People v. Liden, 19 N.Y.3d 271 (N.Y. 2012) (the court determining the risk level may also determine whether a defendant should be subject to SORA). Applying registration requirements in New York is not a determination to be made by a prosecutor or corrections official – it is left solely to the court. Id. That the DOJ believes it can make this determination without any judicial review is concerning, and smacks of violating due process.

In sum, the proposed regulations could have been a source of clarity regarding federal prosecution in locales which are non-compliant with SORNA. Yet the proposed regulations barely scratch the surface. The examples mentioned above highlight that state registration schemes do not match SORNA in terms of offenses requiring registration, tiering, and duration of registration. We're asking your office not to adopt the proposed regulations and instead re-work them into something which would be more useful to the public to understand the priorities of your office in prosecuting alleged SORNA violations.

AR-00001842



Thank you in advance for your careful consideration in this matter.

Respectfully submitted,

Jill K. Sanders
Restorative Action Alliance, Inc.
282 Katonah Ave., Unit 1017
Katonah, NY 10536
Tel: (860) 386-8544
Jill.S@restorativeactionalliance.org
www.restorativeactionalliance.org

AR-00001843

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  (724)  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  (724)  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I am Jeff Miller, a Utah representative for NARSOL (National Association for Rational Sexual Offense Laws), a member of WAR ( Women Against the Registry), a victim advocate with a public educational support and networking group VAR (Victims Against the Registry) and a registrant.

Throughout my whole experience into the criminal justice system and being on the registry. I am identified by a single past crime I committed almost 20 years ago. This administration provides no information about me as a person, only a picture, and a statutory title. It tells nothing about me being held accountable, and taking responsibility for my actions completely. I have completed all of my commitments with the Department of Corrections, termination of sentence with no violations, ever! It conceals information from the public of my actual achievements, conduct and transformations after completion of my commitments with the Department of Corrections e.g., being a law abiding American citizen out in the community for 15 years being compliant, accountable, and with no criminal violations, at all. It gives no perspective into my personal history that I came from a very dysfunctional, broken home with mental illnesses, being in DFS custody foster and shelter homes, experienced physical and sexual abuse as a child up until my teens, without assessment and without treatment. Finally, the registry places me in a homogeneous group of people that the public sees as the same, which I feel is a dangerous myth. The registry only provides a picture and past conduct. I am not viewed as a person but a mythical monster. My victim, and her family are surprised, and appalled that I am still on this registry. Throughout this whole process, I have experienced harassment,

vigilantism, scam callers, vandalism, mail fraud by law enforcement and all kinds of stigmatic labeling. I feel like my rewards for good behavior is met with endless "civil regulatory" punishments. As a victim advocate, I believe nobody has a right to violate another person in any way, and should be held accountable. I feel these policies are preventing me from reintegrating into a completely reformed person. I strongly advise totally abolishing the registry in all of its entirety. At least return the registry back to a non- public law enforcement only, minimal system, would be better served and restore all liberties back to registrants. All the social science points that this regime saves no child. What kind of system that claims to protect the public and children also puts children and documented non violent adults on a registry? The registry was originally designed to monitor the very rare and brutal criminals like ; Ted Bundy , John Wayne Gacy, etc. but none of them would ever be on the registry. Over 95% of crimes committed today are by persons NOT on the sex offender registry. The majority are for first time (like me) non-violent and statutory offenses. Over 95% of victims know there assailant so the 'stranger danger" is a very rare situation, It is a myth not some epidemic. We have been in a sex (moral)panic that spans almost 100

AR-00001844

years. Under this system nobody heals and the collateral consequences keep piling up on all sides of this issue. How much more deprivation of liberty is it going to take when you realize to scrap, remove this over-bloated, useless registry, when someone you care about is finally, labeled, a registered "sex offender"?

I will continue educating the public offering support to victims and ex-offenders. No registry can keep the public safe. Nazi Germany tried it with the Jewish. J. Edgar Hoover tried it with the "sex deviants" program targeting communists and LGBTQ people after finally suppressing and scrapping it in the 1970's. Registering the Japanese in the internment camps, etc. An endless, unpaid debt after a debt to society has been paid, no matter the conduct or reparations, forever. A misrepresentation, a false label so the 5% that might be dangerous get to hide.

I feel trapped, like I can't breathe, in this social distance, stigma regime.

Sincerely,

Jeff Miller
Utah NARSOL Rep.
Victims Advocate

**Comment ID**

DOJ-OAG-2020-0003-0513

 **Tracking Number**

1k4-9jf8-q0u7

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 9, 2020



AR-00001845

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

| Comment |
|---|

Women Against Registry advocates for the families who have loved ones required to register as sexual offenders.

According to the NCMECs last published figures there are over 912,000 men, women and children (as young as 8 and 10 in some states) required to register. The NCMEC has ceased publishing the number of registered citizens as it will soon top 1,000,000. The "crimes" range from urinating in public (indecent exposure), sexting, incest, mooning, exposure, false accusations by a soon-to-be ex-wife, angry girlfriend, or spiteful student, viewing abusive OR suggestive images of anyone 18 years old or younger, playing doctor, prostitution, solicitation, Romeo and Juliet consensual sexual dating relationships, rape, endangering the welfare of a child, the old bait-n-switch internet stings (taking sometimes 12 months before a person steps over the line) guys on the autism spectrum or with intellectual disabilities and many others.

If you multiply the number on the registry by 2 or 3 family members you can clearly see there are well over 3 million wives, children, moms, aunts, girlfriends, grandmothers and other family members who experience the collateral damage of being murdered, harassed, threatened, children beaten, have signs placed in their yards, homes set on fire, vehicles damaged, asked to leave their churches and other organizations, children passed over for educational opportunities, have flyers distributed around their neighborhood, wives lose their jobs when someone learns they are married to a registrant. Professionals indicate 3 things are needed for successful reintegration; a job, a place to live and a positive support system.

The Supreme Courts Crucial Mistake About Sex Crime Statistics Frightening and High (Debunks the 80% recidivism rate cited by now SCOTUS Justice Kennedy)

It is very important that you read the abstract below and then the full 12-page essay by Ira Mark and Tara Ellman.
ABSTRACT This brief essay reveals that the sources relied upon by the Supreme Court in Smith v. Doe, a heavily cited constitutional decision on sex offender registries, in fact provide no support at all for the facts about sex offender re-offense rates that the Court treats as central to its constitutional conclusions. This misreading of the social science was abetted in part by the Solicitor Generals misrepresentations in the amicus brief it filed in

AR-00001847

this case. The false facts stated in the opinion have since been relied upon repeatedly by other courts in their own constitutional decisions, thus infecting an entire field of law as well as policy making by legislative bodies. Recent decisions by the Pennsylvania and California supreme courts establish principles that would support major judicial reforms of sex offender registries, if they were applied to the facts. This paper appeared in Constitutional Commentary Fall, 2015. (attached)

A study reviewing sex crimes as reported to police revealed that:
a) 93% of child sexual abuse victims knew their abuser;
b) 34.2% were family members;
c) 58.7% were acquaintances;
d) Only 7% of the perpetrators of child victims were strangers;
e) 40% of sexual assaults take place in the victims own home;
f) 20% take place in the home of a friend, neighbor or relative (Jill Levenson, PhD, Lynn University)

There is a tremendous need to fund programs like "Stop It Now" that teaches parents how to begin and maintain a dialog with their children to intervene before harm occurs and about grooming behaviors as well as other things at age-appropriate levels in their Circles of Safety.

Our question to the public is one of, when does redemption begin? When are those required to register given their lives back without the stigma and hate?

We support the principles of Restorative/Transformative Justice; restore the victim, restore the offender AND restore the community. Unfortunately, our justice systems, federal and some states, prefer to annihilate human beings using mandatory minimum sentences, leaving our families destitute for years or decades and call that justice.

Our country is evidently proud to be 'the incarceration nation' with 5% of the world's population and 25% of the world's incarcerated.

Here is an example of how our families are harmed. A well-meaning teacher printed out profile pictures of local registrants and put them on the board around the classroom. She promoted her effort to protect her students by suggesting they look at and remember those people. One student pointed at one picture and said, "Katie isn't that your dad?" It was....

**Comment ID**
DOJ-OAG-2020-0003-0514

 **Tracking Number**
1k4-9jfb-98de

**Comment Details**                    **Submitter Info**

**Received Date**
Oct 9, 2020



About   Bulk Data Download     Agencies     Learn
(/about)        (/bulkdownload)    (/agencies)   (/learn)

Reports     FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001849

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
|---|---|

Comment

I have been a registrant for 25 years and am opposed to the proposed SORNA changes. The registration scheme does not work (attach#1--Registration) and these changes will not improve the mess that has ensued since its enactment. There are nearly 1 million people on the list. SORNA costs taxpayers billions of dollars. (attach#2 Justice)

The main premise of the registry is safety:
Empirical evidence and objective data are beginning to confirm what experts have said for many years: Sex-offender registration and restriction laws do not reduce recidivism, and they do not make communities safer. In fact, these laws may actually increase recidivism and decrease public safety (attach#3 Sex Offender registeries)

Since the beginning of the registration scheme, the focus has been on stranger danger. Most (93%) offences are from someone that the victim knows i.e. teacher, parent, sibling, coach, pastor and most sex offences (96%) are committed by someone with no previous sex crime convictions
(attach#1 Registration) (attach#4 Sexual Offender Laws)

Despite wide community support for these laws, there is little evidence to date, including this study, to support a claim that Megans Law is effective in reducing either new first-time sex offenses or sexual re-offenses. (attach#4 Sexual Offender Laws)
The registry is used for news sensationalism, shock, fear and votes

Section 72.5 Given the very low rate of recidivism i. e. <3.5% why are the periods of registration so long with many of the registrants being on for life? (attach#5 A limited study)

Risk level determinations and their validity, (especially given the dimension of time and age) with the actuarial tools most commonly used in the US give a 30% to 60% likelihood of error. (attach#4 Sexual Offender Laws)

Megans Law showed no demonstrable effect in reducing sexual re-offenses (attach#6 Megans law- assessing the practical and monetary efficacy)

AR-00001850

(attach#1 Registration)

A defense of Megans laws worth and constitutionality has been that recidivism rates for sex offenders is frightening and high which comes from Justice Kennedy's opinion in the 2002 The original source for his recidivism estimate was an uncorroborated assertion in a 1986 Psychology Today article by a therapist who has repudiated the number, saying he is "appalled" at its lingering impact (attach#7 Frightening )
My hometown in Wisconsin Quotes frightening and high as do countless other cities, across America to give merit to new laws making life hard for registrants, their children and families, friends, employees and coworkers.

Of note registration status does not influence recidivism & failure to register as a sex offender does not appear to increase the likelihood of sexual recidivism. & online notification was associated neither general deterrence of sex crimes nor with sexual recidivism rates (attach#8)Evaluating the Effectiveness)

As a registrant, the registry has evolved into an onerous punishing even life-threatening situation that puts me, my family, friends and co-workers/employees in economic hardship and the target of social humiliation. My construction employees have been asked to leave projects and have even been threatened.

In recognition of the fact that few low risk offenders will sexually reoffend and that even high risk offenders are less likely to recidivate as they age and as they accumulate time in the community offense-free, registered sex offenders should be provided an opportunity to be released from the requirements after a reasonable period of law-abiding behavior in the community. periods that extend across decades are excessive for most registrants. We have found that each offense-free year spent in the community predicts future offense-free years and most sex crime recidivism events occur within five years of community release. Based on this information a reasonable period might suggest commuting registration and notification requirements after a period of 5 to 10 years of offense-free behavior in the community (attach#8 Evaluating)
(attach#1 Registration)

Section 72.6 Being self-employed and owning 20 to 30 vehicles registering is between overwhelming and useless. What good can come from registering a vehicle I drive twice per year, and my employees may take home and even drive their families around in.

Registering if I leave my primary residence for 7 days is a burden. What community safety does this give to anyone? What benefit to law enforcement does this reap? How does SORNA expect any of this information to be useful if states routinely are overstating the numbers of registered citizens? (attach#9 Counting)

Section 72.7 requires in person registration Why not register initially, than changes only by mail or E-mail?

Section 72.8 Failure to register penalty of 10 years is in many cases a more severe penalty than the crime which put one on the registry.

Attachments  7

 2--Justice policy institute What will it cost states What will it cost states to comply with the Sex to comply with the Sex offender registration and notification act

 Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0515/attachment_2.pdf)

 3--Sex Offender Registries Common Sense or Nonsense

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0515/attachment_3.pdf)

 5--A limited study done by the Department of

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0515/attachment_5.pdf)

 6--Megans law- assessing the practical and monetary efficacy

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0515/attachment_6.pdf)

 7 The 'Frightening and High' Factoid

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0515/attachment_7.pdf)

 8--Evaluating the effectiveness of sex offender registration and notification policies

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0515/attachment_8.pdf)

 9--Counting and Over-Counting the Registry

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0515/attachment_9.pdf)

**Comment ID**

DOJ-OAG-2020-0003-0515

 **Tracking Number**

1k4-9jfb-mfd3

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 9, 2020

AR-00001852



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

---

Comment

The registry is obviously a failed experiment. The fact that our federal government is trying to expand federal regulations on the sex offender registry in which most states are already not in compliance with, is completely asinine, to say the least. The sex offender registry was never meant to be a tool for the public. It was originally meant to be a tool for the police to track down actual predators in case of a kidnapping. It has been so abused and distorted since its proposal it does not even resemble its original intentions. This can be observed by the fact that Jacob Wetterling's own mother (the person who was the main catalyst for the registry during its foundation) is now one of the biggest proponents for abolishing the public sex offender registry. There are now so many people with so many different crimes that are included on the registry, that it has been rendered completely useless. These crimes can range from Indecent Exposure to Possession of Explicit Material Involving a Minor. It can include someone who made a mistake very early in their life, as well as an actual predator who kidnapped and molested a child (though, the latter is exceedingly rare). There are people who take the registry to use as a vigilante "justice" system as can be seen from the recent murder of someone that was forced to register, simply because they were a sex offender. Common sense should be applied and used with this system, not blind emotional outbursts. Fact versus hysteria.

The registry is far more harmful to the registrants and their families than it is (or has ever been) useful to any victims. It is so ineffective at preventing sex crime, that its sole purpose seems to be tormenting the registrants and their families, and could easily be argued to be a form of cruel and unusual punishment. Vigilante justice is not what America was founded on and we should not devolve into a state where it becomes accepted in any form. People who commit crimes, regardless of their nature, will be held accountable by the justice system and accordingly sentenced to prison. Sex crimes have an inordinant sentence length compared to all other crimes, including many violent crimes that include victims. After the offender serves his/her time in prison, their debt to society should be paid. They should not be faced with a system that discriminates against their past at every turn and promotes vigilantism. Especially when that system has such little actual benefit to the community. Sex offenders, like many of us, are flawed human beings who have made mistakes. But, they are still human beings, nonetheless. I urge the government to reconsider their decision to expand regulations and consider an abolition of the "public form" of the registry, and revert it to government and law enforcement use only.

**Comment ID**

DOJ-OAG-2020-0003-0516



**Tracking Number**

1k4-9jfd-hcgp

**Comment Details**                                            **Submitter Info**

**Received Date**

Oct 9, 2020



About    Bulk Data Download        Agencies        Learn

(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)          Share ⌄

---

Comment

The registry is obviously a failed experiment. The fact that our federal government is trying to expand federal regulations on the sex offender registry in which most states are already not in compliance with, is completely asinine, to say the least. The sex offender registry was never meant to be a tool for the public. It was originally meant to be a tool for the police to track down actual predators in case of a kidnapping. It has been so abused and distorted since its proposal it does not even resemble its original intentions. This can be observed by the fact that Jacob Wetterling's own mother (the person who was the main catalyst for the registry during its foundation) is now one of the biggest proponents for abolishing the public sex offender registry. There are now so many people with so many different crimes that are included on the registry, that it has been rendered completely useless. These crimes can range from Indecent Exposure to Possession of Explicit Material Involving a Minor. It can include someone who made a mistake very early in their life, as well as an actual predator who kidnapped and molested a child (though, the latter is exceedingly rare). There are people who take the registry to use as a vigilante "justice" system as can be seen from the recent murder of someone that was forced to register, simply because they were a sex offender. Common sense should be applied and used with this system, not blind emotional outbursts. Fact versus hysteria.

The registry is far more harmful to the registrants and their families than it is (or has ever been) useful to any victims. It is so ineffective at preventing sex crime, that its sole purpose seems to be tormenting the registrants and their families, and could easily be argued to be a form of cruel and unusual punishment. Vigilante justice is not what America was founded on and we should not devolve into a state where it becomes accepted in any form. People who commit crimes, regardless of their nature, will be held accountable by the justice system and accordingly sentenced to prison. Sex crimes have an inordinant sentence length compared to all other crimes, including many violent crimes that include victims. After the offender serves his/her time in prison, their debt to society should be paid. They should not be faced with a system that discriminates against their past at every turn and promotes vigilantism. Especially when that system has such little actual benefit to the community. Sex offenders, like many of us, are flawed human beings who have made mistakes. But, they are still human beings, nonetheless. I urge the government to reconsider their decision to expand regulations and consider an abolition of the "public form" of the registry, and revert it to government and law enforcement use only.

AR-00001856

**Comment ID**

DOJ-OAG-2020-0003-0517

 **Tracking Number**

1k4-9jfd-68yq

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 9, 2020



About   Bulk Data Download   Agencies   Learn

(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

An official website of the United States Government.  🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments | 724 | (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- | --- | --- |

| View Related Comments | 724 | (/docket/DOJ-OAG-2020-0003/comments) |
| --- | --- | --- |

Share ▾

---

| Comment |
| --- |

To Whom It May Concern:

I wanted to address the issue of the sex offender registry.

My views on our justice system - in particular the sex offender registry - have been challenged throughout the last two years as my brother has been going through our justice system. My brother is the model citizen - respectful, cares for others, volunteers, hard working, and brings hope and joy to everyone he comes in contact with. There is no person my brother will not talk with and invest in. He is one of the most upstanding people I know. Dozens of letters documented in his case file submitted from friends, coworkers, bosses, and family members confirm this.

Going through the justice system has been revealing. My brother ended up taking a plea deal and is 2 years into his 10 year minimum sentence. My brother wore a tether for nearly a year before being remanded and had restricted areas he was unable to go into. He will be on the registry for the rest of his life and have to wear a tether.

There are many details I could go into regarding his case and the justice system that I have grown very skeptical of. There was no innocent until proven guilty. Speaking the truth did not protect him. However, I will focus on one point - the registry is most definitely a punishment. In the recent 6th Circuit case Willman vs AG of US, Attorney General Barr discredited the plaintiffs argument that the registry was cruel and unusual punishment. Barr is absolutely incorrect.

The registry places an incredible burden on those who have served their time and only want to reinstate back into society. My brother was constantly afraid his tether would be triggered by going too close to the restriction zones. It was arbitrary as to when it would go off sometimes. Not to mention the shame and baggage that accompanies wearing a huge tether on your ankle. You cannot go to the beach or the pool. You cannot put on a pair of shorts and go play a soccer game. That tether controls your life. Not to mention the huge financial burden a tether brings with it. Many would not be able to afford the cost.

Anyone who says that the registry (including tethers) is not a punishment has clearly not had to live with the consequences of the registry. The registry is a horrible ongoing punishment for those who have served their time. And much study has shown that the registry does not even make our societies safer! The registry needs to be repealed so that those who have served their time can be reinstated into society and move on with their lives.

What is the purpose of our justice system? Purely punishment? Do we even care for those people to be rehabilitated? What truly makes our society safer?

Again, what truly makes our society safer? A punitive system or a rehabilitative system? I implore Attorney General Barr to honestly evaluate this question.

**Comment ID**

DOJ-OAG-2020-0003-0518

 **Tracking Number**

1k4-9jff-6842

**Comment Details**                                      Submitter Info

**Received Date**

Oct 9, 2020



About   Bulk Data Download   Agencies   Learn

(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001859

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)   Share ⌄ |

Comment

I find myself in a weird perdicument . I have study the sex offender registration and all the rules and regulations imposed and ask myself why is this i see people on there from 1998 or 1999 20 years later with no other criminal history am i supposed to be frightened of a person who hasnt commited a crime in 20 years or scared of the drug attack or robber who just got out of prison and holds me up at gun point were does he or she live why do i not know about them or the murderer who killed someone 20 years ago and got released early on good behavior. It seems like you lump all sex offenders together on the registry yes diffrent tiers and levels but still together are the not human are they not gods children i doubt i have to worry about the guy who was convicted 20 years ago when prosecuters were charging everyone just to get a conviction scared kids boys 18 and 19 yuear olds have the personalities of 15 year old if that was illegal back then my parents grandparents judges lawyers would all be on the sex offenders list even john walsh the advocate of the adam walsh act has stated in several interviews that he would of been on the sex offenders list cause he was 23 when he was with his 16 year old wife. I know several people including myself who was the victim of a sex offense all of which happened by someone we all knew . not someone on your so called list. Please seek other methods risk assesments or only list serious threats repeat offenders the uncouragables not the ones who made a mistake 10 15 or 20 years ago we all make mistakes and i guarantee that mopst of you have had sex when you were younger. I think justice would be served better by allowing them to live and have a life...

Ps i am a victim and never thought I would ever care about what happens to sex offenders but I do I have met a few that turned their lifes around that i feel safer around then a burgular or a women beater. Also sex offenders are not invoved what so ever in the sex trafficking trades that is 95% of the time drug dealers so stop laws opposing their travels ... every report i have seen shows they have the lowest recividsim rate pout of any crime but yet they are treated the worst. like hitler did to the Jews the modern day intearment camps is the sex offender registration

danielle

Comment ID

AR-00001860

DOJ-OAG-2020-0003-0519

 **Tracking Number**

kg3-9ftz-o1o0

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 10, 2020



About    Bulk Data Download    Agencies    Learn
(/about)    (/bulkdownload)    (/agencies)    (/learn)
Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001861

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments ⟨724⟩ (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments ⟨724⟩ (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
|---|---|

---

| Comment |
|---|

Dear Attorney General William Barr:

With regard to the proposed changes to the federal SORA, we understand some of the reasoning behind the changes; however, before anything is implemented to make states "compliant" with the federal guidelines, the Adam Walsh Act needs to be overhauled.

In order to do so, please look at ALL the documentation that is out there, from many, many areas of different disciplines that prove the rate of recidivism for sex offenders is evidence based to note is the lowest percentage among any felonies or crimes. The SOR does more harm than good, as it ostracizes those on it, along with their families. The SOR is punitive as it provides NO hope of ever getting off the registry.

Our daughter is developmentally disabled and has been on the registry for over 17 years now. She was placed in a tier with the worst of the worst pedophiles, with lifetime registry, due to the charge. She passed three polygraphs and two risk assessments, in which the doctors stated she was no threat and was incapable of formulating criminal thought. Since being placed on the registry, she lost her friends, and cannot find employment or housing. She lives in our basement and had given up on life.

Please educate yourselves to the abundance of evidence based data that is available. The current SOR needs to provide people on the registry some hope that their lives are meaningful. The registry needs to be risk based, no tiers. A lifetime registry needs to be abolished; shorter times should be allowed. Please provide a path for people to be removed from this stigma, for those who have been compliant. The registry should be available only to law enforcement. The public registry provides no safety to citizens; it only provides a false sense of security.

In cleaning up the Adam Walsh Act, it is necessary to keep true pedophiles on it - but provide a method for others who do not belong on the registry a path to move on with their lives and become model citizens.

| **Comment ID** |
|---|

AR-00001862

DOJ-OAG-2020-0003-0520



**Tracking Number**

1k4-9jfp-ae2p

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 10, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download    Agencies    Learn

(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

| Comment |
|---|

To whom,

   I am a registered sex offender in Michigan.. My crime was committed back in 1991 and I was incarcerated in 1992. Almost 30 years I have followed the LAWS . Since I have had to register, the laws have changed a number of times. How can I become a productive citizen. Each time a politician makes a change to the LAWS,we get resentenced to a longer period of time to register. So in other words. We are being resentenced for the same crime a number of times!

Our fifth amendment is violated as many times as someone changes the law.. Where is the fair and equal Justice for all? For a example, there was a Sheriff in northern lower peninsula that was caught Drunk Driving .. The penalty for Drunk Drving in Michigan is 6 months, no license. He was in a county car, deer hunting. Never lost his license and back to work in two days.

I was sentenced before the LAW was even passed and put into effect in 1994. The Fifth Amendment states that ; ( no person shall be sentenced for the same crime twice that, no one shall serve multiple punishments for the same crime). So as you can see the Double Jeopardy rule as been violated ( in my case for almost 30 years). And only God knows how many more have been violated.

Here's the thing. Each time someone changes this, not only does it make it hard on me, but it makes it hard on my victim. You see my victim was my daughter.. I have managed to rebuild a good relationship with her and my grandsons. We go camping and enjoy spending time together.

I have been threatened, had police officers beating on my door sometimes at 3 or 4 am waking me out of sleep. I have had to take sleeping medicine for years, because of my time behind bars. I am 65 years old now. And would very much like to live the rest of my life in peace.. And not worry about being ostracized for a crime I committed almost 30 years ago.

I only wish that society could forgive me as my daughter has!!!

AR-00001864

**Comment ID**

DOJ-OAG-2020-0003-0521



**Tracking Number**

1k4-9jfs-vo8w

Comment Details | Submitter Info

**Received Date**

Oct 10, 2020



About   Bulk Data Download    Agencies    Learn

(/about)       (/bulkdownload)   (/agencies)  (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)         Share ⌄

---

Comment

The registry is obviously a failed experiment. The fact that our federal government is trying to expand federal regulations on the sex offender registry in which most states are already not in compliance with, is completely asinine, to say the least. The sex offender registry was never meant to be a tool for the public. It was originally meant to be a tool for the police to track down actual predators in case of a kidnapping. It has been so abused and distorted since its proposal it does not even resemble its original intentions. This can be observed by the fact that Jacob Wetterling's own mother (the person who was the main catalyst for the registry during its foundation) is now one of the biggest proponents for abolishing the public sex offender registry. There are now so many people with so many different crimes that are included on the registry, that it has been rendered completely useless. These crimes can range from Indecent Exposure to Possession of Explicit Material Involving a Minor. It can include someone who made a mistake very early in their life, as well as an actual predator who kidnapped and molested a child (though, the latter is exceedingly rare). There are people who take the registry to use as a vigilante "justice" system as can be seen from the recent murder of someone that was forced to register, simply because they were a sex offender. Common sense should be applied and used with this system, not blind emotional outbursts. Fact versus hysteria.

The registry is far more harmful to the registrants and their families than it is (or has ever been) useful to any victims. It is so ineffective at preventing sex crime, that its sole purpose seems to be tormenting the registrants and their families, and could easily be argued to be a form of cruel and unusual punishment. Vigilante justice is not what America was founded on and we should not devolve into a state where it becomes accepted in any form. People who commit crimes, regardless of their nature, will be held accountable by the justice system and accordingly sentenced to prison. Sex crimes have an inordinant sentence length compared to all other crimes, including many violent crimes that include victims. After the offender serves his/her time in prison, their debt to society should be paid. They should not be faced with a system that discriminates against their past at every turn and promotes vigilantism. Especially when that system has such little actual benefit to the community. Sex offenders, like many of us, are flawed human beings who have made mistakes. But, they are still human beings, nonetheless. I urge the government to reconsider their decision to expand regulations and consider an abolition of the "public form" of the registry, and revert it to government and law enforcement use only.

AR-00001866

**Comment ID**

DOJ-OAG-2020-0003-0522



**Tracking Number**

1k4-9jfv-orjt

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 10, 2020



Now Know in Federal Decision Making

About    Bulk Data Download    Agencies    Learn

(/about)    (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments ⟨724⟩ (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments ⟨724⟩ (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

| Comment |

The Justice Department has done their own studies that prove the sex offender registry is unconstitutional, unfair, and unjust yet they continue to add more laws to it to make it worse.

The sex offender registry is an additional law added on to a person's punishment AFTER a conviction of a sex crime no matter what level or degree of crime it is. It is a law made to punish a person BEFORE they commit a crime, then if they violate that additional law often attached for life, they are punished with long prison terms usually longer than ht punishment for their original crime was. So by adding an additional punishment, basically an additional charge to the individual, then sending them to prison for violating that law is definently punishment, a violation of our constitutional rights.

The sex offender registry violates severl constitutional rights and should be demolished. The registry is cruel and unusal in every sense. Retricing a person to this extent for the rest of their lives is cruel. Once a person pays their debt to society they should be free and given a second chance just like anyone else who committed any other crime. They should not be punished yet again for something they might or might not do. They certainly should not receive a life sentence for it. Most people learn from their mistakes and if given a chance, many never offend again. In fact the recidivism rate is very low for sex offenders, much lower than those of any other crime. With no other crime is a person forced to suffer through an additional punishment after the fact. The registry punishes kids on the list harsher than any other abuse they could ever receive. With the registry there is no hope, no chance at a life, no freedom, no opportunity, no friends, no happiness. Another violation of our constitution.

According to the U.S. Justice Department Study published in July, 2015:

"[T]he evidence is fairly clear that residence restrictions are not effective. In fact, the research suggests that residence restrictions may actually increase offender risk by undermining offender stability and the ability of the offender to obtain housing, work, and family support. There is nothing to suggest this policy should be used at this time." https://www.smart.gov/SOMAPI/sec1/ch8_strategies.html (last main section

Especially significant is this part of that report: "In a study of sex offenders subject to residence restrictions in Florida (n = 165), researchers found no significant difference in the distance recidivists (defined as a new sex crime rearrest) and nonrecidivists lived in proximity to schools and daycare centers (Zandbergen, Levenson & Hart, 2010).

This is a layman's piece, but it encapsulates this issue extremely well. https://www.capegazette.com/node/60014

The reason that limiting former sexual offenders' access to potential targets is futile is simple. Children's sexual

AR-00001868

abusers are not those already punished and now tracked for having committed a sexual crime. Children's sexual abusers are those who have never been arrested or convicted for such offenses. They are those close to the children in their everyday lives, their family members, their peers, and their authority figures. A chart that encapsulates the findings of an FBI report shows this.

In spite of all of this, if no harm were done, one could still say, "Why not?" But harm is done.

This sex offender laws, create thousand-foot areas in which those on the registry may not live or work. Registrants with jobs inside of those areas lose their jobs. Registrants living within those areas lose their homes. The result is there are more homeless, unemployed individuals living in our streets because they can't live anywhere else. . While no studies support the use of these restrictions, may studies find that the consequences to such restrictions impede rehabilitation and result in conditions that create a less safe society. In addition to those findings documented in the Justice Dept. study cited above, these document it further:

https://lawdigitalcommons.bc.edu/jlsj/vol36/iss2/5/ ;

https://journals.sagepub.com/doi/abs/10.1177/0887403413512326 (Florida specific);

https://www.npr.org/2014/10/23/358354377/aclu-challenges-miami-law-on-behalf-of-homeless-sex-offenders (Florida specific)

---

Attachments  10

📄 Registry case applies for SCOTUS review. - Florida Action Committee

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0523/attachment_1.pdf)

📄 It is time we rethink our approach

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0523/attachment_2.pdf)

📄 Registration and Community Notification of Adults Convicted of a Sexual Crime_ Recommendations for Evidence-Based Reform

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0523/attachment_3.pdf)

📄 who_are_the_offenders-jpg

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0523/attachment_5.pdf)

📄

The sex offender registry

    ⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0523/attachment_6.pdf)

Bureau of Justice Statistics Press Release_ Recidivism of Sex Offenders Released from Prison in 1994

    ⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0523/attachment_7.pdf)

In Florida another restriction that will further harm society

    ⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0523/attachment_8.pdf)

NCJRS Abstract - National Criminal Justice Reference Service

    ⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0523/attachment_9.pdf)

Sex offender restrictions ineffective

    ⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0523/attachment_10.pdf)

The Justice Department has done their own studies that prove the sex offender registry is unconstitutional

    ⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0523/attachment_11.pdf)

**Comment ID**
DOJ-OAG-2020-0003-0523

**Tracking Number**
kg4-66sy-k7rn

**Comment Details**                    Submitter Info

**Received Date**

Oct 10, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)    Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |    Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |    FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)   Share ⌄ |

---

Comment

Research by ATSA: Registration and Community Notification of Adults Convicted of a Sexual Crime: Recommendations for Evidence-Based Reform 2020

CONCLUSIONS AND RECOMMENDATIONS

The research to date on SORN has not identified significant reductions in the incidence of sexual abuse or sexual offense recidivism as a result of this policy. This fact leads to the conclusion that SORN, as currently implemented within the United States, does not achieve the intended goals of preventing sexual abuse, protecting society, or effectively managing the risk of individuals convicted of sexual crimes. Current practices additionally have numerous unintended consequences which actually potentially increase, rather than decrease, risk factors for individuals required to register. If the goals of these laws are the prevention of sexual abuse and reducing recidivism risk, meaningful legislative reforms will be required.

The U.S. would also benefit from exploring how our international partners have implemented registration within their jurisdictions, especially the countries that have incorporated rehabilitation and reintegration as foundational bases of their registration systems. It is also significant that the overall size of the registrant population has continued to grow since SORNA's passage by approximately 300,000 (600,000 at the time of SORNA's passage to more than 900,000 in 2018). This growth is estimated to add 20,000-25,000 new registrants each year (Harris et al., 2020). As a result, the fiscal impact of managing SORN, as well as the harm these policies cause to individuals, families, communities and society as a whole, cannot be ignored; it is time for policy makers to enact meaningful reforms by incorporating what the research has clearly shown to improve existing SORN systems and further our shared goal of preventing sexual abuse.

Evidence-based assessment, treatment, management, and policy strategies enhance community safety, reduce sexual abuse recidivism and prevent sexual abuse. However, too often the data surrounding public policy interventions is discounted or ignored, especially when the conclusions of the research cause discomfort among policymakers and their constituents.

Although SORN laws were created to protect the public from potentially dangerous offenders, given the research

AR-00001872

and all that is known about the negative effects of such policies, policy makers and practitioners are now faced with the necessity to modify these laws in keeping with their goals. 13 SORN laws as currently applied to adults convicted of a sexual offense in the U.S. are not evidenced-based, do not enhance community safety or prevent sexual abuse.

ATSA takes the position that sex offender registration and notification laws for adults should be reformed to better meet the goals of community safety, victim protection, and the effective rehabilitation of those who have committed such offenses.

**Comment ID**

DOJ-OAG-2020-0003-0524

 **Tracking Number**

kg4-80ja-dvkw

**Comment Details** | **Submitter Info**

**Received Date**

Oct 10, 2020



Your Voice in Federal Decision Making

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001873

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

As a current law student who has previously studied constitutional law and criminal law, I take serious issue with the proposed SORNA rule. A rule like SORNA puts far too much power in the hands of one individual, the Attorney General, and is a direct violation of both the U.S. Constitution and criminal law. According to the document, SORNA's requirements apply to all sex offenders, including those whose sex offense convictions predate SORNA's enactment. This is clearly an Ex Post Facto law, and unconstitutional. The Attorney General attempts to force states to enact the provisions of SORNA by stating that States that fail to substantially implement the SORNA guidelines will see a 10 percent reduction in their Byrne Justice Assistance Grant (JAG) funds, which are used to support multi-jurisdiction drug task forces and to provide other support to local law enforcement agencies. This clearly violates anti-commandeering, which states that the federal government cannot require states or state officials to adopt or enforce federal law. SORNA attempts to hinder the power of the States to make and enforce their own laws, which is a direct violation of the 10th Amendment.

In addition, SORNA proposes "potential criminal liability and authorizes imprisonment for up to 10 years based on a knowing failure to register or update a registration as required by SORNA." To me, this is strikingly similar to double jeopardy. At this point, it is more than likely that the perpetrator has already served their time for the criminal act. But now, the Attorney General wants to throw people back into jail for failing to make it known to the public that they committed a crime? A crime for which they have already served their time? I believe the Attorney General would be interested to know that sex-offenders released from prison are less likely to go back to prison for the same crime than any other type of criminal. Therefore, he would be throwing more people back in jail for failing to register than he would people who commit a crime again.

Furthermore, the amount of information the SORNA rule requires individuals to provide is overly invasive. As stated in the document, "the required information comprises (i) name, birth date, and Social Security number; (ii) remote communication identifiers (including email addresses and telephone numbers); (iii) information about places of residence, nonresidential lodging, employment, and school attendance; (iv) international travel; (v) passports and immigration documents; (vi) vehicle information; and (vii) professional licenses." At this rate, why not just ask each individual to wear a tracker all day every day? Requiring this amount of information strips individuals of any ounce of privacy they were desperately trying to hold on to, and opens the door to stalking, public ridicule, and heightened safety risks.

AR-00001874

Although there is an understandable appeal of requiring pertinent information to be constantly updated, thus leading to comprehensive national system of registered sex offenders, requiring a registered sex offender to inform the state he is leaving prior to his departure, and inform the destination state within three business days of his arrival there, creates a vicious cycle of judgment. A registered sex offender could choose to move in order to start a new life in an attempt to better themselves and is instead forced to don the negatively viewed label of "registered sex offender" before their boxes are even unpacked. I feel that, given the current situation in our country with violence, police killings, protests, cities in ruins, and a worldwide pandemic far from over, the government would be much better served putting their resources elsewhere.

**Comment ID**

DOJ-OAG-2020-0003-0525

 **Tracking Number**

1k4-9jg2-zsgq

**Comment Details**                                    Submitter Info

**Received Date**

Oct 10, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001875

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

While I understand this 100 page document to be one of implementation only, and not legislative, I would suggest you make available to the legislators of SORNA the comments on this thread. The laws impact is unscientific and not aiding in a safer community as intended. The costs to implement and use of law enforcement resources is wasteful. Thank you.

**Comment ID**
DOJ-OAG-2020-0003-0526

◎ **Tracking Number**
kg5-6wq6-lchb

**Comment Details**                    **Submitter Info**

**Received Date**
Oct 11, 2020

AR-00001876



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

AR-00001877

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

OAG-157

To whom it may concern,

   I am an Aunt of a very sweet and loving young man who was registered for 15 years. He was very unfairly judged because he was at a party with all minors and he had just turned 18. They were all drinking and did stupid things and used their phones to take pictures of naked body parts. Just silly teenagers being teenagers. Well later the one boy found out that my nephew took pictures of him while passed out and called the police. The whole thing was absurd because all the other kids were doing it but because my nephew had just turned 18 they charged him as an adult and a pedi file. Where is the justice in that? He had to be under house arrest what seemed like forever. He wasnt able to go to his high school graduation. The whole thing was ridiculous. And not to mention all the money spent on lawyers to keep him out of jail!! For what? A silly teenager picture taking party. Oh and by the way no other teens phones were taken by the police. Just my nephews. So now years later this lovely sweet young man is still going for lie detector tests and is under probation and has to wait many more years before his registration time is up and even if the time for that is up he still will be looked at as a pedi file for life!!

   As an aunt I had to suffer right along with him and cried many tears with my only nephew who I love more than words can say since I have no children of my own. When he was under house arrest I would go over to be with him almost everyday and felt his pain right along with him

   I am pleading with you to change this harsh law. Thank you for taking the time to read my heart felt letter.

**Comment ID**

DOJ-OAG-2020-0003-0527

 **Tracking Number**

1k4-9jge-vlcd

AR-00001878

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 11, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

AR-00001879

Reference Docket No. OAG 157  "PERSONAL IDENTIFYING INFORMATION" Redact this information: Diana Morris 9781 Sprucevale Rd. Rogers, OH 44455

I would like to express my concerns AGAINST the proposed changes to Sex Offender Registration and Notification Act (SORNA) the provision of the Adam Walsh Act.

Attorney General Barr is trying to reestablish the delegation of decision making of AWA policy to the Attorney General. The goal is to apply the AWA retroactively in spite of rulings like DOES vs. Snyder which found SORNA to be punitive. Proposed changes expand the law of strict liability and basically give the Attorney General "carte blanche" to do what he/she wants to do. One head of an agency should not have the sole decision-making power over this area of our society that has so much importance/ complexity /confusion /misunderstanding.

The decision of the 6th Circuit in Willman v. Atty. General of the U.S. held that there is an independent federal obligation for sexual offenders to register. I do not agree with this decision. Individual states should retain their powers to enact specific laws pertaining to their own method of handling sexual offenders and their registration. Every state is unique in its population. States should retain their powers and rights per the U.S. Constitution—the federal government should not interfere. Decision-making should be left up to each state. One size does not fit all.

One area of important concern is juveniles being required to register. Young people SHOULD NOT BE PLACED ON A REGISTRY without some form of assessment and should be given the opportunity to exit the registry based upon their individual circumstances. Research shows that their minds and self-control are still developing. When given the proper education/rehabilitation-they may very likely no longer be a threat and no longer have any propensity to commit a sexual crime. They should NOT BE LOCKED INTO A REGISTRY FOR THESE VERY LONG PERIODS OF TIME THAT SORNA COMPLIANCE REQUIRES.

One of the greatest failures of SORNA is its reliance on classifying all sexual offenders based upon their offense, not on their likelihood to re-commit their crime. These offenders have often served long periods of incarcerated time-research shows their recidivism rate to be low. Careful consideration should be given to MUCH SHORTER PERIODS OF REGISTRATION TIME LIMITS. Why track so many people for such great lengths of time who have already served their time for their crimes who statistically have shown no propensity to re-commit? Wouldn't it make more sense to help them with job training, education, housing, and community-support instead of spending so much money on tracking their whereabouts?

For the small minority of offenders who are a threat to society-they could receive much needed counseling and possibly special housing where there is some form of supervision. The money not spend on tracking so many who are not threats to society could be used to provide this help for the most likely to re-offend.

Attorney General Barr's regulations include expansion of information to be collected and disseminated to include expanded employment information, including professional licenses. This amounts to more regulation of a group of people (for the most part) who statistically have been shown not to be a threat to society. Yes, for those that are likely to re-offend--this regulation should be considered.

Under this proposal individuals will be required to notify their local registration office if they leave the jurisdiction for seven days or longer. This order is proposed allegedly in order to protect children who reside at the location(s) where a registrant may visit. Again, regulation only needed for a very small percentage-not the majority of sexual offenders.

The proposed regulations also address overseas travel for those subject to the International Megan's Law. Specifically, the regulations will require registrants to provide additional information to the federal government regarding their overseas travel such as whether they have dual citizenship and/or passport issued by another country. More regulation that is discriminatory against a specific group of people who for the most part pose no threat to society.

The AWA is in violation of the ex post facto clause (U.S. Constitution Art 1, section 10) and the bill of attainder clause (U.S. Constitution Art.1 section 9). It's also in violation of equal protection and due process laws of the 14th amendment and the 5th amendment guaranteeing due process. To tell states they have to not only add more stipulations to their registry laws but to also add those that are off their registry back on their registry. That is violation of separation of powers in cases that they have been court ordered off and/or have been given relief by the courts because the legislative branch cannot overrule, interfere, or act as a member of the judicial branch. In cases like Doe vs. Snyder a lot of the aspects of the registry were deemed unconstitutional because it violated the vague doctrine of the 5th amendment and the ex post facto clause. Recently, a bill that would have added several more restrictions/punishment for murderers was turned down because it was overbearing, but yet they face nowhere near the stigma and difficulties that sex offenders face.

It has been proven time and again sex offenders are the least likely to reoffend, but more laws are piled on them while people like murderers, child beaters, drunk drivers, terrorists are treated more humanely and with less restrictions/punishments.

https://www.prisonpolicy.org/blog/2019/06/06/sexoffenses/  Report by the Bureau of Justice showed in a 9-year follow-up from release of prisoners- Rape and Sexual Assault had the lowest recidivism rate of all the other categories including ALL VIOLENT crimes.

"If it saves just one child, it is worth it" is the slogan used so many times to justify these draconian laws that resemble very closely the Jim Crow laws and the Nuremburg laws under Hitler that EVERYONE IN THE FREE WORLD CONDEMNED. https://www.facinghistory.org/holocaust-and-human-behavior/chapter-6/nuremberg-laws

There have been multiple studies that show the recidivism rate for sexual offenders is much lower than for most other crimes. In fact, your office (U.S. Dept. of Justice) stated in 2010 that the recidivism rate is less than 5%.

Information from Scientific American   https://www.scientificamerican.com/article/misunderstood-crimes/: here's an excerpt from this report:

"The evidence suggests otherwise. Sex crimes researchers R. Karl Hanson and Kelly E. Morton-Bourgon of Public Safety Canada conducted a large-scale meta-analysis (quantitative review) of recidivism rates among adult sex offenders. They found a rate of 14 percent over a period averaging five to six years. Recidivism rates increased over time, reaching 24 percent by 15 years. The figures are clearly out of alignment with the public's more dire expectations."

Since 2010 there have been studies showing sexual offender recidivism rate to be much less than 5 %—this study conducted by University of Nebraska found less than #1 percent for recidivism rate of sexual offenders. https://www.unomaha.edu/college-of-public-affairs-and-community-service/nebraska-center-for-justice-research/documents/ne-sex-offender-recidivism-final-report.pdf

AR-00001881



justice-research/documents/ne-sex-offender-recidivism-report-2.
pdfhttps://www.prisonpolicy.org/blog/2019/06/06/sexoffenses/

Much has been written lately about the unintended consequences of the registry. These include: homelessness, increased joblessness, being on welfare. This is a tremendous drain on our social/economic structure. Derek Logue of Nebraska just conducted a study of the unemployment rate of registered persons in Delaware. The unemployment rate is **3 times higher** than for non-registered people in the state of Delaware.

## UNEMPLOYMENT RATE FOR DELAWARE'S REGISTERED PERSONS SEPT. 2020

A count was conducted by Derek W. Logue of Delaware's sex offense registry on September 3, 2020 to determine the unemployment rate of Delaware's Registered Persons. Based on a count of every publicly listed registrant in the state not currently incarcerated, 1146 of 3182 Registered Persons (36%) of Delaware's Registered Persons are unemployed. By comparison, the July 2020 unemployment rate for Delaware's general population was 10.4%, more than twice the unemployment rate of 3.9% posted in February 2020, likely due to COVID-19.

Some caveats: Many registered persons were "self-employed," and home addresses and work addresses were often the same. This was particularly noticeable in some smaller communities like Clayton and Felton, as well as among transient registrants. This could lead to underestimating the true unemployment rate among the registrant population. Also, because some registrants work or in school in a different city, they appear in multiple searches, thus inflating the rate of employment (see examples below):



| | |
|---|---|
| Name: | A        A |
| Risk: | Tier 2 (Moderate Risk) |
| Home: | 24519 Blue BLVD MILLSBORO DE 9988 |
| Work: | 24519 Blue BLVD MILLSBORO DE 9988 |
| School: | (no address on file) |

| | |
|---|---|
| Name: | A        Al |
| Risk: | Tier 2 (Moderate Risk) |
| Home: | 1490 Main ST WOODSIDE DE 19980 |
| Work: | 385 W No Lit ST DOVER DE 19904 |
| School: | (no address on file) |

| | |
|---|---|
| Name: | C        Jr |
| Risk: | Tier 2 (Moderate Risk) |
| Home: | 4 Marionade RD SALEM TRACE NEWARK DE 19702 |
| Work: | (no address on file) |
| School: | 400 Christiana RD NEWARK DE 19716 |

AR-00001883

Here's an article about the collateral consequences of the Sexual Offender Registry.
https://www.cjcj.org/uploads/cjcj/documents/frenzel_et_al_collateral_consequences_final_formatted.pdf


   What about the thousands of children who are homeless, fatherless, motherless, beat up, murdered, kicked out of school, humiliated to the point of committing suicide, and constantly mocked because their parent is a sex offender or are one themselves because they were "curious" or thought innocent? A very public registry makes for vigilante and violent behaviors against registrants. Presently, there are a number of these hate/vigilante individuals and groups and their number is growing. http://oncefallen.com/vigilantes.html
https://www.omahadailyrecord.com/content/omaha-man-charged-murder-sex-offender-vigilante


   **The majority of sex crimes are committed by a trusted family member, friend, or colleague and most are NOT ON THE REGISTRY.** A Bureau of Justice Report found that 3 out of 4 sex crimes were committed by someone known to the victim. Some studies cite this percentage to be much higher.   https://bjs.gov/content/pub/pdf/SOO.PDF
https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf


   So what good is the registry if most sexual offenses are being committed by people who are not on the registry? The money spent on maintaining the registry could be better spent on education: programs and counselors to help people understand their sexuality. Emphasis should be on educating all persons who are having difficulty with their sexual urges. Especially, educating young people how to manage and deal with their sexual feelings and what the laws are governing sexual behaviors that are deemed harmful. Information should be given to young people so that they would have an understanding of what acts are unlawful and would receive help before they commit these acts.

https://rsoresearch.files.wordpress.com/2012/01/free-as-the-least-free.pdf When one person loses his freedom, we're all a little less free. The presumption of innocence was addressed in Coffin v. U.S. 1895. It addressed the long history of the presumption of innocence. A statement from Supreme Court of the United States in Henry v. U.S. (1959) which established that it is better, so the 4th Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest.

   Who Really Commits New Sex Crimes?        https://sosen.org/blog/2015/12/29/who-really-commits-new-sex-crimes.html        " not forgetting to add in the re-offense rate for people on the registry for new sex crimes The June 2002: Department of Justice: Recidivism of Prisoners Released in 1994 (DOJ-2002) crime from 1994-1997. (DOJ-2002 page 5) it is known that during that time period (1994-1997): Of the released sex offenders 3.5% (339) Were reconvicted for a sex crime over a Three year period So for one year average there was 113 RECONVICTED for a new sex offense. (DOJ-2003[p2]). Now for the (reality) plug-in (113/63000) you get 0.17% or basically less than 2/10 of 1%. According to the Department of Justice, most child sexual abuse victims are molested by family members (34%) or close acquaintances (59%) totaling 93% of new sex crimes (Bureau of Justice Statistics, 2000)."

Here's the breakdown thus far, in the Percentage of new sex crimes

Close acquaintances (59%)

Family members (34%)

Police officers 3.0%

Teachers 00.7%

Clergy 00.3%

Strangers 2% those who have not been convicted of a sex crime (note: this could include somebody that was met at a party or a street dance and does not necessarily mean an adult)

**People on the registry/previously convicted 00.17%. that is 17/100s of 1%.**


By continually punishing sex offenders by having them register, restricting their places of residence/ work, and prohibiting who they may come into contact with--including their own family members (at times) we (society) are promoting these #3 negative side effects:  http://web.sbu.edu/psychology/lavin/negative%20punishment.htm

1. punishment often fails to stop and can even increase the occurrence of the undesired response.
2. punishment arouses strong emotional responses that may generalize. Results may be anxiety, apprehension, and self-punishment.
3. Usually punishment models aggression. Social power is exemplified.

I am a public school teacher of 36 years- I can attest to all of the above. NO SMOOTH SAILING FOR TEACHERS WHO DEAL OUT PUNISHMENTS ALL THE TIME WITHOUT ALLOWING FOR REWARD AND INCENTIVES: GROWTH.

Here is a document from ATSA (Association for the Treatment of Sexual Abuse with documentation of the following FACTS:       https://www.atsa.com/sex-offender-registries-and-residence-restrictions-0

Fact 1; Registries do not lower sexual re-offense rates. Re-offense rates are already so low that registries and residence requirements do not drive the numbers of re-offenders lower.  Fact 2: Registries do not make society safer. Because registries and residence requirements are designed to minimize sexual assaults by strangers, such laws do nothing to protect against the more typical situation of sexual assault by someone the victim knows. Fact 3: Registries do not help individuals become productive members of society. Fact 4: Registries are not cost effective Use of taxpayer money to maintain the registries could be more effectively used to educate the public about ways to prevent sexual abuse from occurring in the first place. Fact 5: Registries and residence restrictions are not humane. The restrictions go beyond what is reasonable and humane and create a life-long inescapable branding. Recent studies show that adolescents placed on registries have a higher suicide rate than teenagers who have committed nonsexual crimes Fact 6: Residence requirements do harm families. Often registered persons are prohibited from living with their families or in their home neighborhoods because of proximity to parks, schools, or other locations the individual is required to avoid. This splits families and reduces the individual's access to supports that promote positive outcomes and build safer communities.

CAN THE AVERAGE PERSON HONESTLY THINK THIS IS GOOD PRACTICE? HOW WOULD YOU LIKE TO BE SEPARATED FROM YOUR FAMILY/SUPPORT GROUP?

Sex offenders who have served their time for their crimes have completed their punishment. They have paid for their wrong-doings. They need to be given the opportunity to be more than their mistakes they've made in their lives.

Those who are promoting and are in charge of this very costly ineffective system of registering all people who have paid for their crimes should be held accountable for their actions.

Thank you for this opportunity to voice my concerns.
Respectfully,

AR-00001886

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

Comment

The United States fails when it opresses it's own citizens. To ignore the data and promote fear-based policies is deliberate indifference. We should look to other countries as ways to address sexual harm effectively. It is well settled that registries cause harm and fail at protecting the public. We can do better.

**Comment ID**
DOJ-OAG-2020-0003-0529

⊙ **Tracking Number**
1k4-9jgh-bwe5

**Comment Details**                                    **Submitter Info**

**Received Date**
Oct 11, 2020

AR-00001887



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001888

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)    Share ▾

---

Comment

To the AG Barr
regarding the proposal to federalize the registry.
I am going to write in every day person's language, not trying to sound like someone who uses other language, namely legalistic.
What you are proposing is basically the creation of another class of people- "THE MORAL LEPERS ".People with no chance of redemption therefore NO HOPE. People who are unable to change quite the opposite of all available data and studies including your very own department's (DOJ) researchers.
Have you you even read any of these??? I am asking with utmost respect to you and your department. Do you really seek justice reform or just some political praise? Please understand that people do make mistakes, BIG, immoral, but in the end they are also people who have accepted correction and are now looking for new start new direction new life. Are you willing to deny that opportunity to 850 000 registrants??? WOW. What a number, doesn't it speak for itself that something is wrong???
I would like to ask you AG this; if you see someone fallen, even though it is his/her fault,and that person is pretty broken will you continue kicking him/her or you would offer help??? What you are proposing is just another kick to their already broken lives. In this case, I, with your permission will pray that NO loved one of your's falls so that you should have to kick them. Yes, "WE " too have families, sons and daughters, friends who are dragged through this ordeal. Yes,"WE" realize how far is the spread of our choices, but "WE" do have the choice to change, or DO "WE " ??????

Comment ID

DOJ-OAG-2020-0003-0530

 Tracking Number

1k4-9jgi-ntk5

AR-00001889

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 11, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

In Reference to: Docket No. OAG 157

Registration Requirements Under the Sex Offender Registration and Notification Act (SORNA)

"Personal Identifying Information" that I would like redacted"

"Diana J. Morris

9781 Sprucevale Rd.

Rogers, OH 44455"

First, I would like it to be known I strongly **oppose** the above docket which will only further condemn those affected, mainly those on the Sex Offender Registry, but more importantly their families and those who have also struggled through the offender's offense.

I am speaking as one of those family members who's struggling through a sexual offender's offense. I live daily with the obstacles that my family member encounters. My family member committed a crime that he is being punished for. I believe that he should be held accountable for his crime. And in my eyes, he is being held accountable by his long prison sentence. He has served seven years of a 20-year sentence.

When my family member stood before his judge, he told the truth, took responsibility for his crime and every day since has been striving to be better than he was yesterday. He knew in his heart that his crime was wrong and now as God as his witness he has said and has shown by his many words and many actions that he will not offend again. However, this isn't good enough for his government. The very same "institution" of governing persons is reneging on their word. In accordance with the court he accepted a plea punishment they felt necessary for the crime. When said sentenced time is completed there's a plethora of stipulations he must adhere to, yet, at the same time he is asked by his counselor "What will it take for him to be a successful member of the community again?" His answer "To be confident, to know He's accepted by humanity?"

Many of the incarcerated regret their actions leading to their crime. Many of them committed sex offenses, some took a person's life—others are fully aware the "system" only knows so much or they'd never earn their freedom. Matter of fact many out there in society are still not convicted yet of crimes from their past. A country which condemns without the chance of being recognized for their rehabilitation, thus extending to them a second chance of life is no country I want to be in association with. This is not the America I thought I once knew.

Instead of furthering SORNA's requirements you, the Department of Justice, the Attorney General's office, and all involved in the "process"—should be doing the following: looking for a

way within reason to lesson requirements, further rehabilitation, and reaching a positive understanding within communities. It seems as if a sex offender released into a community is likened to being offered as a sacrifice to a world lacking compassion and forgiveness. What has become of our country when justice becomes a thirst that's never quenched? The argument that civil commitment is the rationale behind the Registry and laws is very flawed. No other group of criminals faces such registration upon their completion of sentence and probation.

I implore you to see reason, reason to oppose such constitutional restraints and press upon SORNA as well as our government to initiate a more supportive and understanding form of regulations for sex offenders and/or all convicted felons. I understand our laws are to protect the people, but sex offenders who have served their time are still part of these people, not outcasts these regulations are continually pressing upon those once guilty of a sex offense. If they were once innocent until proven guilty, how does America, our Justice Department plan on initiating or implementing procedures that remove guilt once they fulfill their punishment? In other words, what role do you play in ensuring released felons/convicts/people are able to be successful members of society again? OBVIOUS ANSWER! Regulate rehabilitation through programs, research, and humane ways of normalcy by treating persons newly released as full citizens again.

If a full removal of the registry doesn't seem constitutional, let alone humane, consider the turmoil our country currently struggles with. "Liberty and justice and all," sounds contradictory, but not if all members of society are treated equally. There can't be "liberty and justice for all" in accordance to our Constitution, but not through continual proposals of substantial alienation of the people no matter their record. If our country truly is "ONE NATION UNDER GOD", then it's about time we adhere to God's laws through compassion, reasoning, and extending grace to all—incentive being, less monies controlling and more on educating. Educating those released and society as a whole instead of inducing fear among the public instilling hatred in their hearts

Research shows that most sex offenses are committed by those NOT ON THE REGISTRY and that the victims are people known to the offender (not a stranger on the sex offender registry). Registries don't stop crime from continuing nor do they effectively make society a safer place; they instill fear, hatred, confusion, stereotyping, and further restrict citizens from paying their restitution forward within their communities. Registries are discriminating, "justifiable" bullying and a seed to hate crime. Homosexuality and gender equality once was not "legal" but found to be constitutional and a hate crime to speak out against them. Liberty was extended because they have a right to be who they believe they are. Grace was given. Yet forgiveness and upholding our constitutional rights to persons labeled "sex offenders", a lifetime of over-

AR-00001892

bearing legislative restrictions seem adequate. Justice begins with a crime and ends with the time (completed).

Thank you for this opportunity to voice my concerns and OPPOSITION to the SORNA proposals (Docket Reference OAG 157).

Respectfully,

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments | 724 | (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments | 724 | (/docket/DOJ-OAG-2020-0003/comments) |   **Share** ⌄

---

Comment

We don't think it is fair for a person to have to be on more than one registry in more than one state. We are asking you to make a rule that a person is on the list in only the state were they reside. AND after they die they are to be taken off. We also ask that if the person's real residing state does not require life time registration or require a lesser time for the crime, to let them off of it in that state according to their time. NO ONE but the most violent habitual sex offender should ever be required to be on the registry for life. Especially kids who don't know better when they are convicted and labeled.

Does the federal government give money to state for each registrant on their list? Do they receive money yearly to maintain that list and earn a certain about for each registrant even if the DO NOT live in that state? If so that is not fair to the tax payers who fund this money nor to the registrant who does not live there.

In some states a person is never removed from their registry even if they don't live there, if they die, or are reported. EVERYONE goes on for life after a conviction or plea deal, no matter how serious the sex crime is. Is that because they earn money from the feds for each offender every year? Even if they move, die, or get reported they are NEVER taken off in Florida. Each person should be sentenced according to their situation, and if they have no priors they should get lesser time in prison and on the registry. There are very FEW cases of violent and dangerous sex crimes. And almost NO ONE is ever charged with sex trafficking yet are allowed to penalize people on the list for life. If they are not convicted for sex trafficking they should not be punished for life. Yes it is a punishment, because it assumes you are guilty BEFORE you commit a crime, and the punishment for violation no matter how slight, is prison.

The Associated Press reports 28,548 sex offenders and predators call the Sunshine State home as of October 2018 – a 53 percent increase since 2005 when the state started reviewing its registry. And that number has increase substantially since law enforment started running unethical, unconstitutional, stings.

Registered sex offenders who are residents only account for 39 percent of all registered offenders in Florida, which number 73,004 in total, according to the December report released by the Office of Program Policy Analysis and Government Accountability. The majority of sex offenders and sexual predators on the state's registry – 43,607 people or about 60 percent – live in other states, are currently in prison or have been deported.

AR-00001894

Attachments   6

 The number of sex offenders living in Florida is on the rise

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0532/attachment_1.pdf)

 Florida bloated regsitry

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0532/attachment_2.pdf)

 Millions of Lives Ruined by Sex Offender Registry

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0532/attachment_3.pdf)

 Why Sex Offender Laws Don

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0532/attachment_4.pdf)

 Raised on the Registry

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0532/attachment_5.pdf)

 FLORIDA registry inescapable

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0532/attachment_7.pdf)

**Comment ID**

DOJ-OAG-2020-0003-0532

 **Tracking Number**

kg5-kx21-jukg

**Comment Details**                    **Submitter Info**

AR-00001895

**Received Date**

Oct 11, 2020



About    Bulk Data Download    Agencies    Learn

(/about)          (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001896

# The number of sex offenders living in Florida is on the rise, and most live in Orange County

Posted By Monivette Cordeiro on Wed, Jan 2, 2019 at 5:32 pm

The number of registered sex offenders and predators living in Florida is on the rise, according to a new state report.

The **Associated Press** reports **28,548 sex** offenders and predators call the Sunshine State home as of October 2018 – a 53 percent increase since 2005 when the state started reviewing its registry.

Registered sex offenders who are residents only account for 39 percent of all registered offenders in Florida, which number **73,004 in total**, according to the **December report** released by the Office of Program Policy Analysis and Government Accountability. The majority of sex offenders and sexual predators on the state's registry – 43,607 people or about 60 percent – live in other states, are currently in prison or have been deported.

Orange County has the highest number of resident registered sex offenders and predators in the state at 2,299, followed closely by Duval (2,108) and Hillsborough (1,823). In 2017, the *Orlando Sentinel* reported the greater Orlando area ranked third in the U.S. for the number of reports to the national human trafficking hotline.

The typical registered sex offender in Florida was a white, middle-aged male, accounting for 73 percent of all registered offenders, according to the report.

Sexual offenders are people who have been convicted of a "**qualifying sexual offense**," such as sexual battery, human trafficking or video voyeurism of a minor. People designated as "**sexual predators**" by a court because of an "extreme threat" to public safety include repeat sexual offenders, sexual offenders who use physical violence and sexual offenders who prey on children.

The report points out that sex offenders in Florida face significant obstacles in finding housing, which can affect **recidivism rates**.

"Many studies have established that sex offenders who maintain stable employment, housing and family relationships have significantly lower recidivism rates," the report stated. "Sex offenders in Florida face multiple barriers to housing including residence restrictions, unwelcoming property managers, a lack of affordable housing, and issues with employment and income. These factors may contribute to the growth of sex offender enclave communities and increases in offender transiency."

AR-00001897

# What's up with the Florida sex offender registry?

January 2, 2019

Florida has, according to research information just compiled, slightly over 73,000 individuals on its state sex offender registry. This makes it the state with the second highest number, coming in behind only California, which has well over 100,000 registered sexual offenders.

But this isn't what earns Florida its unique distinction. It earns that because, of its 73,000 registrants, only between a third and a half of them live in Florida.

Like virtually all the other states, registered visitors, vacationers, and those in Florida temporarily are required to register shortly after entering the state. Unlike in other states, however, they are maintained on the Florida registry when they leave and go back to their home states.

This is specified on the Florida Department of Law Enforcement website in their FAQs for sex offenders. Number 6 says:

- *Yes, if an offender or predator is visiting Florida from another state, he or she must report in person to the sheriff's office within 48 hours of establishing a **temporary residence** in Florida.*

- ***NOTE: A sexual offender/predator's information is not removed from the registry's public website when the sexual offender/predator leaves the state of Florida.***

- ***NOTE: Removal from another state's registration requirement does not guarantee removal from the requirement to register in Florida.***

  **https://offender.fdle.state.fl.us/offende r/sops/faq.jsf**

Additionally, whether in-state or out, registrants are not removed from the Florida registry when they die. The same page of FAQs, #18, reports:

- *Sexual offenders/predators reported deceased remain on the website for one year after the date of death as provided on the death certificate. This allows victims, the community, and local law enforcement time to be notified.*

One year to allow notification. Is Florida making such notification by snail? In this age where information travels at the speed of light, what would be the justification for this even if it were true?

And it is not.

A former Illinois registrant, Kenneth Simpson, still on the Florida public registry, died in March, 2013. That is almost six years, not one. And Robert Somers, Maryland, died in 2003 and Thomas Freeth of Connecticut in 2000. They are all still on the Florida website.

Perhaps Florida is just not diligent with their out-of-state registrant deaths. Surely they do better with their own.

Nope. Richard Akes, Miami, 2013; John Heard, Florida City, 2001; Darryl McClurkin, Miami-Dade, 2011; Ronald Heath, St. Augustine, 2002.

Nor are these cases outliers. Virtually every one I researched, both in and out of Florida, who is deceased, has been so for multiple years.

It seems that Florida really, really likes having its registry bloated with names of individuals from whom no threat or risk of harm is possible.

Florida does something else in the way of getting names on their public database that is almost unheard of.

Virtually every state requires registration of a convicted sex offender whose sentence involves incarceration when the prisoner is released from prison, either immediately before or after the release.

Three states require registration immediately upon conviction, before or as soon as incarceration occurs. Florida is one of the three, with Idaho and Michigan the others.

This was verified in a response to an email I sent to the Florida DLE:

***Those with Florida sexual offense convictions are placed on the public registry as soon as FDLE is made aware of their qualifying conviction regardless of whether or not they are incarcerated.***

The reasoning behind this is totally unclear.

The rationale behind the public sexual offender registry scheme, even though it has failed miserably in every aspect of its mission, is to give citizens a tool to use in protecting their families from those who have done harm in the past and might be expected to do so again when they are living in the communities.

Florida's registry, then, presents an enigma.

People who live in other states are kept on Florida's registry for the rest of their lives even though they pose no threat of harm to Floridians. Even when the requirement to register ends in other states, Florida is highly unlikely to remove such persons from its own registry. In fact, I could find no evidence that they have ever done so. People who are behind bars, some with sentences that assure they will die there, are required to be on Florida's registry. And finally, those who are dead, both in and out of Florida, are kept on that state's registry, not just for the one year claimed to be needed to make full notification, but for five, ten, twenty years past their dates of death.

Why?

Why has the Florida legislature chosen to create a registration process that increases its own maintenance and verification expenditures and that, even if it had the potential to be helpful, reduces even that slim chance by intermingling those who could possibly do harm to a citizen of Florida with those who would have to drive across the country, break out of prison, or crawl out of a grave to do so?



# Millions of Lives Ruined by Sex Offender Registry, Says Top Anti-Registry Advocate

June 1, 2020

**By Vicki Henry**

Women Against Registry advocates for the families who have loved ones required to register as sexual offenders.

According to the National Center for Missing & Exploited Children's [NCMEC] last published figures, there are over 912,000 men, women and children (as young as 8 and 10 in some states) required to register.

The NCMEC has ceased publishing the number of registered citizens as it will soon top 1,000,000. The "crimes" range from urinating in public (indecent exposure), sexting, incest, mooning, exposure, false accusations by a soon-to-be ex-wife, angry girlfriend, or spiteful student, viewing abusive OR suggestive images of anyone 18 years old or younger, playing doctor, prostitution, solicitation, Romeo and Juliet consensual sexual dating relationships, rape, endangering the welfare of a child, the old bait-n-switch internet stings (taking sometimes 12 months before a person steps over the line), guys on the autism spectrum or with intellectual disabilities, and many others.

If you multiply the number on the registry by 2 or 3 family members, you can clearly see there are well over 3 million wives, children, moms, aunts, girlfriends, grandmothers and other family members who experience the collateral damage of being murdered, harassed, threatened, children beaten, having signs placed in their yards, homes set on fire, vehicles damaged, asked to leave their churches and other organizations, having their children passed over for educational opportunities, having flyers distributed around their neighborhood, wives losing their jobs when someone learns they are married to a registrant. Professionals indicate three things are needed for successful reintegration: a job, a place to live, and a "positive" support system.

The Supreme Court's Crucial Mistake About Sex Crime Statistics – 'Frightening and High' (Debunks the 80% recidivism rate cited by now SCOTUS Justice Kennedy)

It is very important that you read the abstract and then the full 12-page essay by Ira Mark and Tara Ellman.

ABSTRACT This brief essay reveals that the sources relied upon by the Supreme Court in Smith v. Doe, a heavily cited constitutional decision on sex offender registries, in fact provide no support at all for the facts about sex offender re-offense rates that the Court treats as central to its constitutional conclusions. This misreading of the social science was abetted in part by the Solicitor General's misrepresentations in the amicus brief it filed in this case. The false "facts" stated in the opinion have since been relied upon repeatedly by other courts in their own constitutional decisions, thus infecting an entire field of law as well as policy making by legislative bodies. Recent decisions by the Pennsylvania and California supreme courts establish principles that would support major judicial reforms of sex offender registries, if they were applied to the facts. This paper appeared in Constitutional Commentary Fall, 2015. (Google: Frightening and High)

A study reviewing sex crimes as reported to police revealed that:
 a) 93% of child sexual abuse victims knew their abuser;
 b) 34.2% were family members;
 c) 58.7% were acquaintances;
 d) Only 7% of the perpetrators of child victims were strangers;
 e) 40% of sexual assaults take place in the victim's own home;
 f) 20% take place in the home of a friend, neighbor or relative (Jill Levenson, PhD, Lynn University)

There is a tremendous need to fund programs like "Stop It Now" that teaches parents how to begin and maintain a dialog with their children to intervene before harm occurs and about grooming behaviors as well as other things at age-appropriate levels in their Circles of Safety.

Our question to the public is one of, when does redemption begin? When are those required to register given their lives back without the stigma and hate?

We support the principles of Restorative/Transformative Justice; restore the victim, restore the offender AND restore the community. Unfortunately, our justice systems, federal and some states, prefer to annihilate human beings using mandatory minimum sentences, leaving our families destitute for years or decades and call that justice.

Our country is evidently proud to be 'the incarceration nation' with 5% of the world's population and 25% of the world's incarcerated.

Here is an example of how our families are harmed. A well-meaning teacher printed out profile pictures of local registrants and put them on the board around the classroom. She promoted her effort to protect her students by suggesting they look at and remember those people.

One student pointed at one picture and said, "Katie isn't that your dad?" It was….
***

**Vicki Henry**
**Women Against Registry, President**
**800-311-3764**
**Fighting the Destruction of Families**
http://www.womenagainstregistry.com
**Facebook:  Women Against Registry**
**Follow us on Twitter:  @WomenAgainstReg**

AR-00001901

AR-00001902

# Why Sex Offender Laws Don't Work

By Deborah Jacobs

There are few crimes more heinous than child molestation. Whether violently attacked by a stranger or preyed upon by a trusted adult in the home, school or place of worship, children who survive such assaults are often left to walk a lifelong path of sorrow and pain.

Unfortunately, our government has failed to take steps that will make a meaningful difference in preventing sex offenses. Megan's Law, civil commitment, and the newest trend in anti-sex offender legislation, banishment zones, which restrict sex offenders from living within certain geographic areas, all play to the fears of the public. But when it comes to stopping sex assaults, these measures do more harm than good.

To understand why, one must look at the realities of sex crimes in America today. The vast majority of sex offenses are committed by trusted adults-family members, friends, clergy-and go unreported because of manipulation of the victims, unconscionable decisions by other adults, or both. We saw this most vividly when lawsuits uncovered that the Catholic Church hierarchy had hidden and ignored countless cases of child sexual abuse for decades, choosing to protect its reputation over the children under its care. Unfortunately, this happens in family hierarchies even more frequently.

Because the most common type of sex crime so often goes unreported, most sex offenders never become part of the criminal justice system and therefore are not affected by Megan's Law or banishment zone laws. As a result, these laws give the public a false sense of security, letting us believe that sex offenders have been exiled from their neighborhood, or that if a sex offender does live nearby, we will receive notification of his presence. If we believe that, we are fooling ourselves and, worse, doing our children a disservice. Sex offenders live in every American community, and children need supervision no matter what.

Laws like banishment zone ordinances actually make us less safe, as they impede offender rehabilitation and thereby increase the likelihood of reoffense. People who transition from prison into society face countless challenges, and most have very limited resources, financial or otherwise. People who want to lead law-abiding lives after serving a prison sentence need to establish stability in their homes, jobs and families. Those are difficult things to achieve, but add to this the consequences of Megan's Law and limits to where offenders can live, and few have hope of succeeding. Indeed, the fear of the stigma of Megan's Law can force offenders underground, out of the watchful eye of police and parole officers.

Banishment zone laws may very likely force sexual offenders to move from environments in which they have support networks into other communities in which they have no support, putting residents in their new communities at risk. Further, people who are labeled as sex offenders lose jobs, get evicted, are threatened with death, and harassed by neighbors. Some have had their homes burned down or been beaten in acts of vigilantism. Coping with this kind of stress is almost impossible, and without exceptionally strong support systems, most are doomed to fail.

If you doubt whether we should care about the stress and suffering of someone who committed a sex crime, consider the consequences for society when the ex-offender fails. When nothing works out - job, home, family-individuals are more likely to give up and reoffend.
Rather than banishing sex offenders and asking them to succeed in a hostile environment, we should focus resources on programs and policies that will actually reduce the likelihood of sex offenses occurring in the first place. We need to develop and fund public education programs that teach about the effects of sex abuse and the importance of reporting abuse so that it can be stopped.

We need to improve our systems for handling reports of abuse, looking to models like Wynona's House in Essex County, which brings different agencies together to ease the burden on victims reporting abuse. And we need to provide mental health treatment for victims and offenders, in prison and out.

There is no simple fix to the devastating problem of sex abuse. Instead of politically popular measures that make no difference or in fact make us less safe, we need to turn our attention and resources to ways of addressing the epidemic of sex abuse that, while perhaps not as politically popular, will actually work so that more potential victims can be spared.

The issue is not whether our children should be protected from sex offenders, but how to accomplish that in an effective and meaningful way. Our children deserve nothing less.

*Deborah Jacobs is the Executive Director of the American Civil Liberties Union of New Jersey*

AR-00001903

AR-00001904

May 1, 2013 News Release
US: More Harm Than Good

## Summary

Jacob C. was 11 years old and living in Michigan when he was tried in juvenile court for touching, without penetrating, his sister's genitals. Found guilty of one count of criminal sexual conduct,  Jacob was placed on Michigan's sex offender registry and prevented by residency restriction laws from living near other children.

This posed a problem for his family— Jacob's parents were separated, his father lived in Florida, and Jacob could not live in the same house as his little sister. As a result, he was placed in a juvenile home. When Jacob was 14—and still unable to return home—he became the foster child of a pastor and his wife. According to Jacob, the couple helped him to "deal with the trauma" of growing up on the registry. Since his offense fell under juvenile court jurisdiction, Jacob was placed on a non-public registry. But that changed when he turned 18 during his senior year in high school, and his status as a sex offender became public. Parents of his schoolmates tried to get him expelled and he had to "fight to walk across the stage" at graduation. Jacob attended a local university in Big Rapids, Michigan, but ended up dropping out. "[I was] harassed for being on the registry," he said. "The campus police followed me everywhere."

In February 2005, at age 18, Jacob left Michigan to start a new life in Florida and reconnect with his father living there. Jacob worked for his father's company for a few months. He soon fell in love, married, and had a daughter. A year later, he and his wife divorced, and Jacob was awarded joint custody of his daughter. During this time, Jacob tried to follow Florida's sex offender laws, but continually ran afoul of residency restrictions that required him to check-in with police on a daily basis and "provide them with a home address". At one point, for example, Jacob's home was too close to a school and he had to move. Another time, he failed to register a new address after a period of homelessness and was arrested and convicted of the **felony** of failure to register.

While court documents describe Jacob as a doting parent to his daughter, Jacob's wife came under investigation by Florida's Department of Children's Services in 2009 for not having electricity in the house. However, when the court in that case learned of Jacob's felony conviction for failure to register, the judge denied him custody of his daughter, citing Florida's Keeping Children Safe Act and the fact that Jacob had a criminal felony conviction for failure to register. Jacob continues to fight for custody and visitation but cannot afford a lawyer because he has been unable to find a job. Now age 26, Jacob was removed from the registry in Michigan in 2011, but remains on the registry in Florida, and his life continues to be defined by an offense he committed at age 11.

Jacob's story is not unique. Throughout the United States, people who commit sex offenses as children (also referred to in this report as "youth sex offenders") must comply with a complex array of legal requirements that apply to all sex offenders, regardless of age.

Upon release from juvenile detention or prison, youth sex offenders are subject to *registration laws* that require them to disclose continually updated information including a current photograph, height, weight, age, current address, school attendance, and place of employment. Registrants must periodically update this information so that it remains current in each jurisdiction in which they reside, work, or attend school.

Often, the requirement to register lasts for decades and even a lifetime. Although the details about some youth offenders prosecuted in juvenile courts are disclosed only to law enforcement, most states provide these details to the public, often over the Internet, because of *community notification laws*. *Residency restriction laws* impose another layer of control, subjecting people convicted of sexual offenses as children to a range of rules about where they may live. **Failure to adhere to registration, community**

**notification, or residency restriction laws can lead to a felony conviction for failure to register, with lasting consequences for a young person's life.**

This report challenges the view that registration laws and related restrictions are an appropriate response to sex offenses committed by children. Even acknowledging the considerable harm that youth offenders can cause, these requirements operate as, in effect, continued punishment of the offender. While the law does not formally recognize registration as a punishment, Jacob's case and those of many other youth sex offenders detailed below illustrate the often devastating impact it has on the youth offenders and their families. And contrary to common public perceptions, the empirical evidence suggests that putting youth offenders on registries does not advance community safety—including because it overburdens law enforcement with large numbers of people to monitor, undifferentiated by their dangerousness.

Human Rights Watch undertook this investigation because we believe the time is right to better understand what it means to be a youth offender raised on the registry. Sex offender laws that trigger registration requirements for children began proliferating in the United States during the late 1980s and early 1990s. They subject youth offenders to registration for crimes ranging from public nudity and touching another child's genitalia over clothing to very serious violent crimes like rape. Since some of these state laws have been in place for nearly two decades, and the federal law on sex offender registration is coming up on its eighth anniversary, their effects have been reverberating for years.

## A Policy Based on a Misconception

Sexual assault is a significant problem in the United States and takes a huge toll on survivors, including children. According to the US Department of Justice (DOJ), there were an estimated 125,910 rapes and sexual assaults in 2009 (the most recent year for which data is available). In an estimated 24,930 of these cases, the victims were between the ages of 12 and 19. The DOJ study did not examine how many of these incidents involved an adult or youth offender. Thus, we do not know how many were similar to the vast majority of the cases investigated for this report—that is, cases of sexual offenses committed by children against another child. Nevertheless, the public and lawmakers have understandable concern, even understandable outrage, about sex crimes. Sex offender registration laws have been put in place to respond to those concerns.

The overlapping systems of sex offender registration, community notification, and residency restrictions were initially designed to help police monitor the "usual suspects"; in other words, to capture the names and addresses of previously convicted adult sex offenders on a list, which could be referred to whenever a new offense was committed. In theory, this was a well-intentioned method to protect children and communities from further instances of sexual assault.

In reality, however, this policy was based on a misconception: that those found guilty of a sex offense are likely to commit new sex offenses. Available research indicates that sex offenders, and particularly people who commit sex offenses as children, are among the least likely to reoffend.

In 2011, the national recidivism rate for all offenses (non-sexual and sexual combined) was 40 percent, whereas the rate was 13 percent for adult sex offenders. Several studies—including one study of a cohort that included 77 percent youth convicted of violent sex offenses—have found a recidivism rate for youth sex offenders of between four and ten percent, and one study in 2010 found the rate to be as low as one percent. These rates are so low that they do not differ significantly from the sex crime rates found among many other (and much larger) groups of children, or even the general public.

A 2006 study of approximately 250 Philadelphia youth sex offenders stated, "[s]ex offending as a juvenile does almost nothing to assist in predicting adult sexual offending." The study concludes that if the goal of registration is to identify likely future sex offenders, it would be more effective to register youth with five or more contacts with law enforcement for non-sexual offenses than to register youth found guilty or delinquent of a sex offense.

## Long-Term Impact on Youth Sex Offenders and Their Families

When first adopted, registration laws neither required nor prohibited inclusion of youth sex offenders. However, by the mid-1990s, many state sex offender registration laws were amended to include children adjudicated delinquent of sex offenses, as well as children tried and convicted of sex offenses in adult court. The resulting policies swept children into a system created to regulate the post-conviction lives of adult sex offenders.

Children accused of sexual offenses were caught at the convergence of two increasingly harsh "tough on crime" policy agendas: one targeting youth accused of violent crimes and the other targeting persons convicted of sexual offenses. In an effort to protect children from sexual assault and hold sex offenders accountable, lawmakers failed to consider **that some of the sex offenders they were subjecting to registration were themselves children,** in need of policy responses tailored to their specific needs and circumstances.

**The harm befalling youth sex offenders can be severe. Youth sex offenders on the registry experience severe psychological harm.** They are stigmatized, isolated, often depressed. Many consider suicide, and some succeed. They and their families have experienced harassment and physical violence. They are sometimes shot at, beaten, even murdered; many are repeatedly threatened with violence. Some young people have to post signs stating "sex offender lives here" in the windows of their homes; others have to carry drivers' licenses with "sex offender" printed on them in bright orange capital letters. Youth sex offenders on the registry are sometimes denied access to education because residency restriction laws prevent them from being in or near a school. Youth sex offender registrants despair of ever finding employment, even while they are burdened with mandatory fees that can reach into the hundreds of dollars on an annual basis.

Youth sex offender registrants often cannot find housing that meets residency restriction rules, meaning that they and their families struggle to house themselves and often experience periods of homelessness. Families of youth offenders also confront enormous obstacles in living together as a family—often because registrants are prohibited from living with other children. Finally, the impacts of being a youth offender subject to registration are multi-generational—affecting the parents, and also the children, of former offenders. The children of youth sex offenders often cannot be dropped off at school by their parent. They may be banned by law from hosting a birthday party involving other children at their home; and they are often harassed and ridiculed by their peers for their parents' long-past transgressions.

## Onerous Restrictions

Some restrictions imposed on the lives of registrants are so onerous and labyrinthine, it is surprising that registrants actually manage to adhere to them. Many do not. The consequences of running afoul of sex offender registration laws can be severe. **The crime of "failure to register" is a felony in many states, carrying lengthy prison sentences. The complex rules and regulations that govern the lives of sex offenders on the registry are particularly difficult to navigate when youth offenders, like the majority of those interviewed for this report, first begin registering when they are still children.**

Many youth sex offenders never learn that they will have to register until after they accept a plea deal and often after they serve their time in prison or juvenile detention. This is especially likely to be true of children in the juvenile system, where there is no clear legal obligation that they be informed of the consequences of their admissions of guilt. **Youth sex offenders are also sometimes subjected to retroactive registration requirements for offenses committed decades in the past—even after years of living safely in the community. Recent laws, like the Adam Walsh Act, reserve the harshest punishments for those who target children. Yet this means that it is often children themselves who experience these harsher penalties, because their crimes almost always involve other kids.**

It is unknown how many persons are subject to registration laws in the United States for crimes committed as children. However, in 2011, there were 747,408 sex offender registrants (adult and youth

offenders) in the country. What proportion of these people committed sexual offenses as children is impossible to determine from publicly available national data.

Human Rights Watch tried in various ways to obtain this information, but to no avail. We requested data on offenders registered for crimes committed as children from all 50 states. Two states responded with aggregate counts but we were unable to determine the percentage of total registrants these individuals represent. Our attempts to use public registries to obtain counts were stymied by the fact that states and the federal government do not independently track the age of registrants at offense; moreover, state data may undercount the reality. Since the family members of youth sex offenders often must abide by residency restriction laws if they want to live together, the numbers of people in the US affected by these laws is significant.

## Faulty Assumptions About Youth Sex Offenders

Faulty assumptions about youth sex offenders' tendency to recidivate are but one set of flawed assumptions underpinning registration laws. Registering sex offenders and publicizing information about them is predicated on the idea that sex crimes are committed by strangers. However, evidence suggests that about 86 percent of sex offenses are committed by persons known to the victim. According to the Justice Department, 93 percent of sexually abused children are molested by family members, close friends, or acquaintances. Registration will not protect a victim from a family member.

Moreover, early thinking about juvenile sexual offending behavior was based on what was known about adult child molesters, particularly the adult pedophile, under the mistaken belief that a significant portion of them began their offending during childhood. However, more recent clinical models emphasize that this retrospective logic has obscured important motivational, behavioral, and prognostic differences between youth sex offenders and adult sex offenders and has therefore overestimated the role of deviant sexual tendencies in people convicted of sex offenses as children. More current models emphasize the diversity among children who commit sexual offenses, who in the great majority of cases have a favorable prognosis for never reoffending sexually.

Registering youth sex offenders is bad public policy for other reasons, including the fact it overburdens law enforcement with large numbers of people to monitor, undifferentiated by their dangerousness. With thousands of new registrants added each year, law enforcement is stymied in their attempt to focus on the most dangerous offenders. Sex offender registries treat very different types of offenses and offenders in the same way. Instead of using available tools to assess the dangerousness of particular people who commit sex offenses as children, most sex offender laws paint them all with the same brush, irrespective of the variety of offenses they may have committed and in total denial of their profound differences from adults.

Not all states apply sex offender registration law indiscriminately to youth offenders. In Oklahoma, for example, children adjudicated delinquent of sex offenses are treated in a manner more consistent with juvenile sexual offending behavior. There, a child accused of committing a registerable sex offense undergoes a risk evaluation process reviewed by a panel of experts and a juvenile court judge. The preference is for treatment, not registration, and most high-risk youth are placed in treatment programs with registration decisions deferred until they are released, at which point they may no longer be deemed high-risk. The programs and attention provided by the state to high-risk youth means that very few youth are ultimately registered. The few children that are placed on the registry have their information disclosed only to law enforcement, and youth offenders are removed once they reach the age of 21.

## Accountability That Fits

The harm that people convicted of sex offenses as children have caused to victims of sexual assault must be acknowledged, and justice often requires punishment. As a human rights organization, Human Rights Watch seeks to prevent sexual violence and to ensure accountability for sexual assaults. But accountability achieved through punishment should fit both the offense and the offender. Good public policy should deliver measurable protection to the community and measurable benefit to victims. There is little reason to believe that registering people who commit sexual offenses as children delivers either.

Under human rights law, youth sex offenders should be treated in a manner that reflects their age and capacity for rehabilitation and respects their rights to family unity, to education, and to be protected from violence. Protecting the community and limiting unnecessary harm to youth sex offenders are not mutually incompatible goals. Instead, they can enhance and reinforce each other.

Human Rights Watch believes that unless and until evidence-based research shows that sex offender registration schemes or other means of monitoring  youth sex offenders have real benefits for public safety, persons convicted of sex offenses committed as children should not be subject to registration, community notification, or residency restriction requirements. If some youth offenders are subject to these laws, they should never be automatically placed on registries without undergoing an individualized assessment of their particular needs for treatment and rehabilitation, including a periodic review of the necessity of registration. Society's goal should be returning them to the community, not ostracizing them to the point that they and their families are banished from any semblance of a normal life.

## Methodology

This report is based primarily on an investigation conducted at Human Rights Watch by Soros Senior Justice Advocacy Fellow Nicole Pittman, between September 2011 and early March 2013. Pittman is considered a leading national expert on the application of sex offender registration and notification laws to children. Before joining Human Rights Watch, she worked as an attorney at the Defender Association of Philadelphia, where she specialized in and consulted nationally on child sexual assault cases and registries. Pittman has provided testimony to numerous legislatures, including the US Congress, on the subject.

In this report, in line with international law, the terms "child" and "children" refer to a person or persons below the age of 18. We use the term "youth sex offender" to describe any person who was below the age of 18 at the time they committed the sex offense that led to their placement on a registry, even if they are now an adult. Individuals who were required to register as sex offenders while they were below age 18 are referred to in this report as "youth registrants" or "child registrants."

In all, we investigated 517 cases of individuals who committed sexual offenses as children across 20 states for this report, including in Delaware, Florida, Louisiana, Maryland, Michigan, New Jersey, New York, Pennsylvania, Texas, and Washington. Additional information was collected from Arizona, California, Colorado, Georgia, Idaho, Illinois, Iowa, Kansas, Missouri, Nevada, Ohio, South Carolina, Virginia, and Wisconsin.

We conducted in-person interviews with 281 youth sex offenders, as well as immediate family members of another 15, in those 20 states. These 296 in-person interviews form the basis for many of the findings of this report.

Human Rights Watch selected the 20 states because of their geographic diversity and different policy approaches to youth sex offenders. At the time of our research:

- Ten of the 20 research states were deemed to have "substantially implemented" the national Sex Offender Registration and Notification Act (Delaware, Florida, Kansas, Maryland, Michigan, Missouri, Nevada, Ohio, Pennsylvania, and South Carolina).
- Four of the 20 states did not subject any children found delinquent of sex offenses in juvenile court proceedings (as opposed to criminal court proceedings) to sex offender registration (Georgia, Nevada, New York, and Pennsylvania).
- Ten of the states subjected children found guilty in both juvenile and criminal court proceedings to sex offender registration laws, and had done so since the mid-1990s (Arizona, Delaware, Illinois, Kansas, Michigan, Missouri, New Jersey, Texas, South Carolina, and Washington). Several of the states had no minimum age of juvenile jurisdiction and had put children as young as eight on their registries.
- The three states with the largest number of registered sex offenders (adults and children) were California (106,216), Texas (68,529), and Florida (57,896).[

In addition to our interviews with people placed on sex offender registries for offenses committed as children, we spoke with family members of registrants, defense attorneys, prosecutors, judges, law enforcement officials, academic experts, juvenile justice advocates, mental health professionals, and victims of child-on-child sexual assault. Individuals placed on the registry for offenses committed as adults were not interviewed for this report.

Approximately 95 percent of the youth offenders we interviewed were found delinquent of sex offenses in juvenile court proceedings; less than five percent were convicted in criminal courts. Many of the registrants were subjected to the same sex offender registration, public disclosure, and residency restrictions as adults.

We identified the majority of interviewees through a written request we posted in a bulletin circulated among loved ones of individuals on registries, mental health treatment providers, juvenile advocates, social workers, and defense attorneys. Approximately 100 interviewees were identified by a search of state sex offender registries. In addition to seeking geographic diversity, we sought registrants from an array of locations (including both rural and urban areas) and ethnic and racial backgrounds.

The overwhelming majority of the individuals interviewed for this report started registering when they were children (under age 18). Registrants were between the ages of 14 and 48 at the time we interviewed them. We made a substantial effort to interview registrants of various ages to better assess the impact of being a child or adolescent on the sex offender registry. The majority of the interviews with youth offenders were conducted at their homes. All interviews were conducted in private. A family member or significant other was present for a portion of most of the interviews.
Interviews were semi-structured and covered a range of topics related to how, if at all, being on the sex offender registry affected aspects of a registrant's life—such as the ability to go to school, obtain and maintain employment, secure housing, and associate with family. Registrants were also asked a series of questions to determine whether the registrant experienced psycho-social harm, felt vulnerable to or experienced violence, or was subject to discrimination because of his or her status as a registrant.

Before each interview, Human Rights Watch informed each interviewee of the purpose of the investigation and the kinds of issues that would be covered, and asked whether they wanted to participate. A parent or guardian gave permission before contact was made with potential interviewees under the age of 18. We informed interviewees that they could discontinue the interview at any time or decline to answer any specific questions without consequence. No financial incentives were offered or provided to persons interviewed.

Human Rights Watch has disguised with pseudonyms the identities of all interviewees, except in two cases where the degree of publicity surrounding the cases made disguising the identities impossible, and we had the informed consent of the two individuals to use their real names. All documents cited in the report are publicly available or on file with Human Rights Watch.

AR-00001910

# FLORIDA'S SEX OFFENDER REGISTRY PROVES INESCAPABLE

## Critics say the state's policy of keeping non-residents registered bloats the list—and harms public safety.

It was the kind of headline guaranteed to generate clicks even over the winter holidays and amid a federal government shutdown: "Number of Sex Offenders Living in Florida Is Growing," warned the Associated Press. In December, the Florida legislative auditor's office released a report noting that the number of people on the state's sex offender registry had expanded 53 percent since 2005, to about 73,000.

But the report also contains this detail: 60 percent of those on the list live out of state, are in prison, or have been deported—up from the 43 percent in those categories in the auditors' first report in 2006.

That's because Florida's registry increasingly scoops up anyone who has ever lived there or visited. Under state law, anyone with a sex crime in their past who comes to Florida for three days or more—say, a long weekend at Disney World or a business conference—has to visit a sheriff's office to get fingerprinted and photographed and turn over myriad other details. The state then publishes those and keeps these new registrants on its public list for a minimum of 25 years.

Not only does that artificially inflate Florida's list, critics say—it makes it impossible for those who have served a sentence and moved away to start over, even when their new home jurisdictions don't require them to be publicly listed.

Take Chris, a former Florida resident who doesn't want his full name used because he hopes to protect his family and business from further harm. Twenty years ago he was convicted of engaging in a sexual chat with an underage girl online. He says he never had physical contact with the girl, and after serving five years of probation, his offenses were classified as "adjudication withheld," a ruling in which a defendant avoids a guilty verdict if he or she completes probation.

But under Florida law, a withheld adjudication is considered a conviction for purposes of the registry. So that year his name was added. After he lost a job because someone at work searched for his name online, he said he'd had enough of the state and in 2004 he and his wife moved to Nevada, where state law doesn't require him to register. There he got a good job selling point-of-sale systems that help businesses run their cash registers, credit card

readers, and the like. He had been with his company for eight years when in 2013 a larger firm bought the business. In the background check, the new company found his name on Florida's list and fired him.

How are you protecting people from a so-called danger that doesn't even have any jurisdictional tie to the state?ᴀ

So Chris started his own business selling similar systems to bars and nightclubs. But if potential customers do a background check, they find him on Florida's site, which he thinks has hurt his sales. He has been married 16 years and says that his wife, a schoolteacher, "thinks about [his listing in Florida] constantly—she has a lot of emotional trauma and stress" and is in counseling.

The ostensible purpose of Florida's registration law is to protect its residents, says Ann Fitz, a defense attorney who's suing the state in federal court over the policy on behalf of a client who lives in North Carolina but is listed only in Florida. "How are you protecting people from a so-called danger that doesn't even have any jurisdictional tie to the state?" she asked. "It doesn't make any sense."

---

A bigger registry may help the state pull in federal funds. In fiscal year 2018, Florida, like 20 other states, was awarded money through a U.S. Department of Justice grant program that helps pay for upgrades to registries under the 2006 Adam Walsh Act. Its grant for fiscal year 2018 was about $399,000, and altogether the state has received about $2.4 million since 2008 for registry improvements.

The Florida Department of Law Enforcement's application for that money, which The Appeal obtained through a public-records request, uses the size of the registry to sell the state as a leader in punitiveness. In one section, the agency touts the more than 700 percent growth in the number of people on its registry since its inception in 1997 and its continuing expansion. "Florida currently has one of the largest registries in the country and enjoys national recognition as a leader and model in the strength of sexual predator and offender laws," the agency notes.

A larger list also inflates the agency's performance data, which it's required to report as a condition of that grant. One key measure is the percentage of offenders in compliance with the state's registry requirements, under which offenders must visit their local sheriff's department in person two to four times a year to re-register. The law enforcement department's progress report for January to June 2018, which The Appeal also obtained

under a records request, states that almost 99 percent of registrants—between 71,500 and 72,500—are complying with those requirements.

But it's impossible for the almost 44,000 registrants living out of state or imprisoned or deported to comply. Without them, the real number is just over 40 percent.

We follow all state and federal laws and have nothing further to offer.

Asked why people who don't live in Florida communities are listed as "compliant," the Department of Law Enforcement cites the need for "consistency in reporting" to "various state and national systems." The department notes an "ongoing fluidity in the situational status and locations of individual registrants" and identifies "this constant flux coupled with the broad understandings and requirements of the term 'compliance'" as the reason for the practice. In other words, it's challenging to keep tabs on a group of people whose living circumstances change often, so it's easier to classify those who can't register in person as "compliant."

The DOJ's award letter granting the money notes that "any materially false, fictitious, or fraudulent statement to the federal government related to this award ... may be the subject of a criminal prosecution." Asked about whether its practice runs afoul of this warning—and whether the agency has received approval from the DOJ to report its statistics this way—a spokesperson for the state law enforcement department replied by email, "We follow all state and federal laws and have nothing further to offer."

Whatever the state's motives, an inflated registry is most likely rife with errors. For example, Florida's registry shows Fitz's client as living in a county in California that he moved away from 15 years ago, she said. And the breadth of the list may hurt public safety.

In a 2012 study, a team of researchers concluded that "an overly inclusive public registry may produce an overload of information that makes it difficult for concerned members of the public to distinguish truly dangerous [registrants] from those who present less public safety risk."

Even without the artificial ballooning of these lists, there's little evidence that they protect people.

Asked about that finding, the law enforcement department said, in part, that "citizens have the ability to narrow their focus to those registrants within their community and, further, to those individuals with whom they interact or are considering interaction."

Even without the artificial ballooning of these lists, there's little evidence that they protect people. A summary of existing research on registration and notification laws on behalf of the DOJ, updated in March 2017, concludes that research on the effectiveness of such laws "remains relatively limited and findings from the studies are somewhat inconclusive."

Back in Las Vegas, Chris doesn't go to his wife's school events because they are afraid it would impact her job. They are thinking of having a baby but are concerned about the collateral effects on a child of having a parent who's publicly listed—no imaginary fear given data and stories on registrants' children being harassed and bullied. They would like to travel but have been told that Chris's presence on Florida's list means that if he tries, language will be added to his passport noting his sex offense conviction, and he'll be barred from entry to many countries.

They left Florida 15 years ago. But Florida won't leave them alone.

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

While there is a strong argument to say that these rules and provisions do nothing but place Sex Offenders and their family in harm, I believe that the safety of public at large and specifically young children outweighs the potential risk that Offenders may face in registering themselves. This proposed rule would not only refine and explain the powers of the Attorney General, but in my opinion would give Sex Offenders a clear cut set of rules that they are required to follow. These new rules clear up past ambiguities and do not leave room for confusion for Sex Offenders that need to follow them. With a lack of ambiguity it allows the safety of children and the public to increase as the Sex Offender registry would be up to date and include all the information that those looking to protect their children are hoping to find. The time constraints listed in this rule are helpful in ensuring that past offenders are on the hook to provide this information for a set amount of time, this again allows for public safety to be the top priority.

**Comment ID**

DOJ-OAG-2020-0003-0533

 **Tracking Number**

1k4-9jgm-bio3

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 11, 2020

AR-00001915



About (/about)  Bulk Data Download (/bulkdownload)  Agencies (/agencies)  Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)  FAQ (/faq)

Privacy & Security Notice (/privacy-notice)  |  User Notice (/user-notice)  |
Accessibility Statement (/accessibility)  |  Developers (https://open.gsa.gov/api/regulationsgov/)  |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)  Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |  Share ▾ |

---

Comment

To The Justice Department, Docket No. OAG 157

In addressing the issue of SORNA and the Sex offender registration.

Our Justice System is supposed to be fair without discrimination and regardless of crime committed.

I am not arguing for those who have been Convicted on and after, I was Convicted in the Court of law BEFORE SORNA, myself was sentenced in July 1999 to 5 to 10 years to be served in the State prison with 10 years of Megan's Law Registration following my release. I was told several times it was because my release was in 2006 that SORNA was part of my life, my answer has been, SORNA wasn't law when I was sentenced.

As of August 2017, I would have served my sentence in Full, first my prison sentence, I served just over 7 years and walked the last 3 on parole, my Megan's Law Registration began in August 2006, so those full 10 years were completed come August 2017

I am one of hundreds if not thousands of men and women who either were Convicted before there even was a Megan's law or those like me who had the 10 year registration.

There is no other criminal offense out there that has a registration let alone, a offense where no one in the Justice System would permit a illegal, unconstitutional act of allowing sentences to be modified AFTER they already been sentenced, that's Double Jeopardy.

Some might suggest that no crime effects the victim as a sex offense, and coming from me, i do partially understand and agree, I unfortunately have seen the sex offensive works from all angles, being the perpetrator, being the victim of a sex offense and my own child was molested while I did time by someone I knew.

In closing, no matter the sentence or requirements set forth to satisfy the law and Justice, if laws that are in acted and are permitted to violate due process as the SORNA has been, then we are no longer a Democracy promoting Justice for all.

AR-00001917

**Comment ID**

DOJ-OAG-2020-0003-0534



**Tracking Number**

1k4-9jgm-uobm

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 11, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)   Share ▾

---

Comment

The AWA and related policy in the states is terrible policy that harms families and denies human beings a second chance - a second chance they deserve after paying their debt to society. Despite the moral panic the fuels popular, public registries, regulators know as well as I do that the public registry experiment is an abysmal failure. The collateral damage of the registry and even the entirety of policy around sex crimes is unjustifiable.

Instead of wasting time making a stable, healthy life impossible for people on the registry, the government should focus on proactive primary prevention efforts. The primary prevention of child sexual abuse would have saved my daughter from sexual abuse by someone she loved deeply. The registery and the AWA did NOTHING to keep my daughter safe. I'm flabbergasted that the government continues to push outdated legislation that does nothing but garner political favor. It does NOT keep children safe - just like it did not keep my teenage daughter safe.

Instead, families like mine, that have both someone who sexually harmed and who was harmed, have to face multiple layers of collateral damage. We were completely denied restorative justice by a prosecutor who believes, apparently like the Attorney General, that there's nothing to do but throw people away. There's no listening to the voices of victims and survivors who say they want something different - and a large number of suvivors DO want something different.

We want the person who chose to be sexually violent to own their behavoir and commit to changing it.

The registry actually INCREASES the risk of recidivism by destabilizing families.

It blocks restorative justice and healing that families may want to have - and for which there are many willing professionals to help supervise and assess.

It's mind-boggling to me that this proposal has even come out given the unequivocal evidence about registries and their utter lack of efficacy.

Will my family be able to be together? Travel to national parks and enjoy our great country? Will my children be

AR-00001919

able to attend events without being harassed and teased by jeering peers? Will our home be safe?

I'm attaching a "meme" that is circulating on Facebook - people proudly joking about robbing sex offenders. Of course, robbery sounds merciful when you think of registrants - and their family members - who have been attacked and even killed because they're on a public registry.

Our family boldly speaks about what happened and shares how primary prevention can make a difference. We don't want to pretend that it did not happen.

But we do want the right to heal. We do want the right to live in peace without fear of government-sanctioned abuse. And the registry is government-sanctioned abuse of *former* offenders, their spouses, and their children. If you don't believe me, you try living on the registry for a year. See how it goes for you.

What kind of disruptions to our life - bogus searches, accusations, arrests, etc. are coming if you pass these life-crushing legislations?

If you want to stop child sexual abuse, you must look past this failed policy and start asking *why* such abuse happens - and how primary prevention efforts can succeed. I do applaud some efforts to rehabilitate and I am glad for the men and women who work with those who have sexually harmed. But the registry is not one of those effective efforts.

It is a failure that destroys lives, crushes families, and harms children rather than protects them.

Do not make these changes. Pull your head out of the sand, see that the emperor is wearing no clothes, and address this problem in a way that truly works. You're too late for my family, but I pray that your proactive, intelligent, and evidence-based approach in the future will save many others.

---

Attachments ( 1 )

📄  120911666_10157780370832379_7600797436923531315_o

⬇ Download ⌄

**Comment ID**
DOJ-OAG-2020-0003-0535

◎ **Tracking Number**
kg5-q852-d5mc

**Comment Details**                                     Submitter Info

**Received Date**

Oct 11, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |    Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |    FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback





An official website of the United States Government.  🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

---

| Comment |
| --- |

I have been contemplating where to start with sharing comments about these most recent regulations. Although it seems it really doesn't matter what I have to say since the mindset of those who control the laws don't seem to care about reality and their intentions are just to punish more and more no matter what changes for the good people who committed a sex crime have done and made.

I will share my thoughts anyway and hope that they are read. I always hoped I could start over from the mistakes I have made. I can't take back what I've done even though I sure wish I could. I do know now what it is like to be an outcast in society and what it feels like to part of a "witch hunt." The idea of truly starting over has been clouded by all these constant law changes and add ons. I have been out of prison since 1997 after serving my court approved sentence. Here it is 2020 and I am still being forced to keep an eye on more law changes that find their way in the books by only a few people who are making decisions based on unfounded fears and lack of knowledge about reality. Their decisions have not only affected my life but also my family who have never committed any crimes. What bothers me more than anything is that I am not the threat - it is others who now are a threat to me and my family. I feel like I'm standing in the middle of the road and can't move out of traffic.

There truly needs to be an ending point to this nightmare instead of these constant changes to the registry that require life-time registration with no assessment of true risks of the individuals committing a crime and without recognition of the readily available facts that current registries are not effective. I am a first-time offender and have proven by now that I have found a different path. I simply don't understand what the point is for the registry other than to continue to punish me more and ignore the justice system where I served my sentence. If there is so much fear in me as to what I did, then why are there sentencing guidelines in the first place? None of these laws ever stop another crime from happening. They just give others a chance to cast a stone on my life. It is my hope that someone does truly read this. It is my hope as well that rather than casting a stone at me and others like me that the whole thing gets dropped in the sand as there is recognition of how unhelpful the registry really is to protecting people. I will say this again - I can't change what I have done but I can change the future. I can only do this if I don't continue to be condemned for my past mistake.

AR-00001923

**Comment ID**

DOJ-OAG-2020-0003-0536



**Tracking Number**

kg5-rl3w-vzk0

**Comment Details** | **Submitter Info**

**Received Date**

Oct 11, 2020



About   Bulk Data Download   Agencies   Learn

(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

I am dismayed that the federal government continues to try to reach farther into the rights of states to protect their citizens. As the spouse of a convicted sex offender I was relieved when finally a federal district judge acknowledged that the registry in Michigan had several components that were unconstitutional and that the registry could not be made retroactive to offenders who had committed a crime prior to the original registry even being in existence. I was greatly disappointed to learn that the U.S. Attorney Generals office has chosen a path to make the registry even more restrictive and has declared that the Adam Walsh Act can be made retroactive. Why is it okay for a law to be made retroactive in any situation whatsoever? It is unnecessary and unfair punishment to individuals who have already served their court approved sentences and have attempted to integrate back into society as productive citizens. States are fully qualified to maintain their own registries without undue influence from the federal government.

Regulations have been put in place because of undue fear and misunderstandings about whether the registry is even effective in its current state. While I understand that a private registry for law enforcement is of value, I do not believe that the registry as it exists now is effective because it is so bloated and with too many people having to register for life. Law enforcement ends up wasting valuable time searching through thousands of people who are no longer a threat to society and can easily miss those who are actually a threat. My husband has already been on the registry for over 25 years and that in itself was already too long but when the Adam Walsh Act made those terms life time, it has become burdensome and stressful and taxing on the state police. Research shows that there is no proven value to an increased duration for individuals on the registry and recidivism rates are lower for sex offenders than other types of crimes and those crimes dont even have registries in place.

I am hopeful that these public comments are actually read and paid attention to and that constructive, productive regulations are put in place rather than just regulations that continue to unduly punish people for many years long beyond their original sentences.

**Comment ID**

DOJ-OAG-2020-0003-0537

 **Tracking Number**

1k4-9jgp-njq3

**Comment Details**          **Submitter Info**

**Received Date**

Oct 11, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download    Agencies    Learn

(/about)          (/bulkdownload)    (/agencies)  (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

"Many in the field have come to believe that sex-offender registries, as they are currently implemented, do more harm than good. They do not address the fact that most sex offenders are family members, friends or acquaintances of the victim, not strangers. Beyond that, inclusion in a sex-offender registry makes it all but impossible for a person to rent an apartment or land a job or live a stable life. Existing at the margins, or beyond the margins, can cause stress and lead to new offenses. Registries, community notification policies and geographical living restrictions can drive offenders underground where they are harder to help and keep track of. They can push offenders into poor, chaotic neighborhoods, where the most vulnerable children reside. Most damning, studies show that registries tend not to decrease sex crime recidivism which, on average, is lower than many believe, around 15 percent after five years, according to a preponderance of research cited in a 2014 report from the Washington, D.C.-based National Criminal Justice Association.

"'For the most part, sex-offender registration and notification are not effective," said Alissa Ackerman, a researcher and criminal justice professor at the University of Washington. "They really do nothing to prevent sex crimes from occurring. They destabilize the people who are on registries and what we know from the criminological literature is that when people have stable housing, stable jobs and stable interpersonal relationships, they're less likely to reoffend. And sex-offender registries make it so they don't have (those things). In many ways, we could actually be making the problem worse by mandating people to the registries.'"

"'The vast majority of people who are committing sex crimes are not on the registry," Ackerman said. "So, we're looking to strangers, we're looking to people in the community, when really abuse is happening in our homes and our schools and our day cares. We're not looking in the right place. It sort of diverts our attention from the everyday.'"

"Anti-domestic violence groups in states that have considered expanded registries suggest that money spent to maintain them would be better used on programs to stop violence before it happens. Keeping sex offender lists updated alone costs well over $1 million each year for many states, a price partially covered by fees offenders must pay."

Further restricting the rights of those on the registry is a feeble attempt at making a flawed system seem

AR-00001927

improved for the sake of saying "we did something." Considering many of the registrants were not even convicted of repeat or violent crimes (e.g., sexually active minors), and therefore not "high risk," this act would only draw attention and funds away from aiding the real issues needing to be addressed. This proposal is akin to slapping a band-aid on an amputation.

Sources cited: https://www.apmreports.org/story/2016/10/04/sex-offender-registries-wetterling-abduction
https://apnews.com/article/12308b44602e43dead432b8f468c6c13

**Comment ID**
DOJ-OAG-2020-0003-0538

 **Tracking Number**
1k4-9jgp-epi2

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Oct 11, 2020



About
(/about)

Bulk Data Download
(/bulkdownload)

Agencies
(/agencies)

Learn
(/learn)

Reports
(https://resources.regulations.gov/public/component/main?main=Reports)

FAQ
(/faq)

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

As a republican, I am appalled by the federal overreach proposed in this rule. While I disagree with many state regulations, the people within states have a right to govern themselves. This disregards changes that states have determined best fit their needs and instead attempts to bully them into following registry requirements that have already been proven harmful to communities. It also effectively landlocks families of those who have been found guilty sex offenses, most of whole never re-offend, and does nothing to prevent abuse!

The evidence that the public registry further ENDANGERS our kids is clear! We need to focus on stopping sex trafficking and promoting social services to stop abuse! This does NOTHING about either.

Save the children! Stop dangerous registration practices.

**Comment ID**

DOJ-OAG-2020-0003-0539

**Tracking Number**

kg5-vm0o-majx

**Comment Details**                                              **Submitter Info**

**Received Date**

Oct 11, 2020

AR-00001929



About   Bulk Data Download      Agencies    Learn

(/about)       (/bulkdownload)   (/agencies)  (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ⌄

---

Comment

I believe the registry is good for offenders who actually touch children. But for those who watched child porn I do not. My husband made some very bad choices in the internet and changed mine and my two children's lives forever. He is not someone who wants to touch a child. He was acting out from his own childhood trauma and work trauma. He is now on the registry for the rest of his life and ours. For someone who will not offend and is getting the therapy he needs for his own trauma I don't believe he should be in the registry for his entire life.

**Comment ID**

DOJ-OAG-2020-0003-0540

 **Tracking Number**

kg5-wh9k-727b

**Comment Details**                                          Submitter Info

**Received Date**

Oct 11, 2020

AR-00001931



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

We do not agree that the registry is an effective justice tool for our youth. In fact, we believe it to be just the opposite! This legal tool does not show supportive evidence to prevent re-offense and/or protect the community. Instead this "justice tool" is extremely shaming, does not promote healthy rehabilitation, and instead can be a cause for deep despair, and even suicide! When a youth feels like their horrific mistake now defines them in such a public way and follows them into adulthood, their future feels completely bleak. These are juveniles! Many of our youth, whom have offended, express and show that they want to be forgiven, want to forgive themselves, and positively contribute to community again. They want to overcome!....Just like King David did and not feel like a modern day leper. This is toxic shame and comes with many natural consequences, none of which are the goals you are trying to achieve here with this new legislation.

**Comment ID**
DOJ-OAG-2020-0003-0541

**Tracking Number**
1k4-9jgs-ltf2

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Oct 12, 2020

AR-00001933



About   Bulk Data Download    Agencies    Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001934

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

---

Comment

The sex offender registration is a lifelong punishment. It is inhumane and unconstitutional. I could understand repeat offenders but there are people on your registry that aren't even guilty of a crime. The registration hinders registrants to not be able to find employment, housing, and makes it impossible to contribute to society. The justice system is flawed and so is the registry. The registry puts a target on these people's back. People are harming people on the registry. All it takes is a pissed off ex wife to ruin a man's entire life. Do you care about the false accusations that are ruining these people's lives??? Why isn't there any justice for the innocent? There are women that are using your registry to screw men over. Are you going to make a registry for them? A person can commit murder and when they get out they don't have to register. They get a chance to redeem themselves where sex offenders don't. A murderers victim had no chance to heal.
My husband has been turned down for so many jobs. He would be the first pick and because he had to register he would not get the job. He was falsely accused by his ex wife. I have her on recording admitting it if anyone would like to help my husband. We've tried going to local attorneys and they say they won't help a sex offender. So like I said the justice system is flawed. I used to trust the government until I saw what happened with my husband. My husband had evidence that he was innocent. His ex wife even said it was a lie but the courts claim she was on drugs, which she wasn't. My husband had a public defender so it was the state vs the state. He was screwed from the rip. The sex offender registration needs to be abolished. It doesn't protect anyone. If you think a living restriction or a work restriction is really going to stop a real sex offender, you are mistaken. If this passes, or if it doesn't, the registration is double jeopardy. It's a punishment that never ends . It doesn't protect anyone. You wouldn't allow someone to treat their dog this way. This is ruining families and relationships.

**Comment ID**
DOJ-OAG-2020-0003-0542

 **Tracking Number**
kg6-2lcq-mxo8

AR-00001935

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

I agree 100%

**Comment ID**
DOJ-OAG-2020-0003-0543

**Tracking Number**
kg6-31r1-m2ed

| **Comment Details** | **Submitter Info** |
|---|---|

**Received Date**
Oct 12, 2020



About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001938

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
|---|---|

---

Comment

Why? Sex offenders are not created equal. It's a great tool if it wasn't over used. I can't trust anything I see on there anymore. Listing someone charged with Rape bc when they were 18 they had consenting sex with another teen is crazy! Listed a 19 for child porn when his 17 year old girlfriend sent him unsolicited nudes is crazy! Please please scale this back. The public is losing faith. Your ruining lives forever over teenage romances. This was intended for people committing violence again woman and children. Stop using it over consenting cases. I would like to know about people raping and abusing people. Not public peeing. Not teen romances. Come on. Adding thousands of people a year and not letting anyone off is only going to leave me and mothers like me who can't believe in the list bc we don't know the true facts and it's getting evident that most haven't forced themselves on anyone. Most will never reoffend. It's about mass tracking and shaming people. I want a list I can look at and see only people who are violent and actually rapist. The list, as it is, doesn't provide that at all. Putting more restrictions doesn't help anything or anyone. Scale it back so we can believe that the people on their are actually dangerous. Arkansas has a crowded prison system already. It cost a tremendous amount of money to imprison these people for not telling the government where they work, or vacation, etc..... It's sad when the punishment for forgetting to give the state your new employment info is more severe then the crime!! That is unbelievable. Get the nonviolent people that didn't use force off this list and it will make everyone safer and restore faith in the list!!!!

| Comment ID |
|---|
| DOJ-OAG-2020-0003-0544 |

|  Tracking Number |
|---|
| kg6-m5dc-8v7y |

AR-00001939

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001940

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Your current SORNA system actually increases recidivism. The entire criminal justice response is built on flawed and inconsistent and outdated research.
I am a behavioral health professional that has worked to successfully change behavior with vulnerable and at risk people for over 40 years. I also am a family member of a loved one who has been inappropriately labeled a level 2 sex offender. 12 years ago he and his wife were divorcing . He went on line and began corresponding with a person who He thought Was of age . It turned out to be an FBI Scam and he spent three years in federal prison . During that time he volunteered for treatment and was deemed successfully treated and was considered to not have any inappropriate or unmanageable behaviors that would be considered abnormal or to be a pattern. The years in prison were a great deterrent for him and the treatment was an added positive
I have been appalled at the way our criminal justice system has been a systematic catalyst for people who have sex offended to recidivate .

The probationary practices have been counterproductive to healing and positive behavior change :
The main components of true behavior change include:

Appropriate and compassionate consequences
Taking full responsibility for ones behavior

Instead -

SORNA has failed to reduce sexual offending because :

The policies and regulations are based on systematic punishment and shaming offenders in a manner that is dehumanizing
The policies themselves are based on insufficient research
The probation system routinely shames not only offenders but their innocent families
The probation system is run in secret and has no public oversight
The probation system does not recognize evidence based treatment modalities and therefore relies on shaming blaming and punishing offenders and their families .. which is counterproductive to positive and lasting behavior

AR-00001941

change
SORNA. Destroys families
Ron has been unable to see his family for over 12years since they live in Florida and he is in NYS
ALL evidence based and effective therapeutic practices that work include the support of family
The current SORNA and residency regulations prohibit family as a natural asset to rehabilitation
Housing regulations and restrictions do not make for a safer community -
They target offenders , label them publicly ( instead of keeping the registry information with police only )
The probation system encourages lying because the inherent attitude of the system is ;
That all sex offenders are monsters , that they cannot be cured and that they are reduced to a second class life..
I have seen these policies in writing in documents guiding probation management policies from the Pataki administration era.

If the goal is behavior change then our government policies need to be managed by behavior change experts specialists leading the way to safer communities ( not police and criminal justice People with limited knowledge of how to change behavior beyond incarceration, intrusive probation , and repressive SORNA regulations .

The way to true behavior change is through -

Appropriate and reasonable consequence
Not ONE SIZE FITS ALL

People who have paid the price and have been treated and reformed need support in continuing healthy behavior NOT. Continued shaming , public targeting based on labels.

Please invest in more COMMUNITY SUPPORT MODELS
CIRCLES OF SUPPORT
GOODLIVES MODEL
PUBLUC EDUCATION ABOUT SEX OFFENDING
TOWN MEETINGS TO EDUCATE COMMUNITIES SO THEY CAN SUPPORT PEOPLE RECOVERING
and make the registry more honest by including on the registry site whether a registrant has been in treatment , has not recidivated and has contributed to their community

Public honesty sharing works to reduce negative behaviors when it is presented in a behavior change model
Ex. Alcoholics Anonymous , narcotics anonymous

Please put money into more research on different types of offender. Each offender type has a different trajectory which requires a specific unique treatment.
Stop scaring communities just to get political votes .

The politicians who do this are adding to the problem .
Our country should be the catalyst for change .

Cruelty and punishment only exacerbates negative behaviors

I have witnessed many many people change their behavior -
I have used behavior change techniques that work in my practice as a school behavior counselor with thousands of children and families and as a mental health advocate in our community hospital psychiatric emergency room - I have worked with rural , suburban and urban populations - I worked in our county jail at the holding center as a forensic mental health counselor .

I have never once used shaming or blaming as a technique

AR-00001942

Compassion and consequence work !
The registry shamespeople for life . give registrants hope and a better pathway off or you condemn them to be second class citizens

Sincerely

Jan Ables
Mental health counselor and family member

---

**Comment ID**

DOJ-OAG-2020-0003-0545

---

 **Tracking Number**

1k4-9jh2-p078

---

**Comment Details** | **Submitter Info**

**Received Date**

Oct 12, 2020

---



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001943

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment



💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

I want the sex offender registry abolished permanently. Registrants suffer greatly from loss of housing, jobs and religious attendance. Harm is transmitted to the family also.

No evidence has been reported to show that society is any safer because of the registry.

Registrants have no chance of a normal life.

No other crimes require such a registry.

| Attachments ( 1 ) |
|---|

| 📄 **Ten Myths about Sex Offenders** |
|---|
| ⬇ Download (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0546/attachment_1.pdf) |

| **Comment ID** |
|---|
| DOJ-OAG-2020-0003-0546 |

| 🎯 **Tracking Number** |
|---|
| 1k4-9jh2-8rby |

AR-00001944

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 12, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001945

Ten Myths About Sex Offenders

[This document is an attempt to summarize a research report published by the National Council on Institutions and Alternatives (NCIA). The March 2007 report was called "Towards More Effective Sex Offense Legislation." This summary does not necessarily reflect the views of the NCIA itself.]

Recidivism is defined as repeat criminal behavior among offenders.

Of all crimes, sex offenders are widely believed to have the highest level of recidivism. However, treatment professionals and criminologists have known for some time that once sex offenders are caught, only a small minority of them will commit another sex crime. Although some pedophiles, before they are caught, have many victims, most have a single victim in or about their own families.

We all hope for the day when we can see fewer sex offenses and particularly fewer juvenile victims of such crimes. But so long as what we think we know about these types of crimes is based on myths and fear rather than facts, that day will never come. There are several myths that are widely believed that need to be debunked.

In recent years social scientists and criminologists have combed through an immense accumulation of data from hundreds of studies which have tracked tens of thousands of individual sex offenders for long periods of time, some even for decades.

By 1994, 670 studies of sex offenders had been done, and by the end of 2005 well over 700. Many of these studies have been systematized through a methodology called meta-analysis. The resulting data reveal that many common myths about sex offenders are simply false. We outline here some of them.

MYTH #1: "SEX OFFENDERS WILL ALWAYS KEEP OFFENDING."

Recently the Bureau of Justice Statistics published a study which tracked 9,700 sex offenders for three years, 2001-2004. Their findings concluded:

Only 5.3% of these people imprisoned for sex crimes were re-arrested for a subsequent sex offense.

Where a child was involved, the re-arrest rate dropped to 3.3%.

Between two adults, the sexual re-offense rate was 2.2%.

A more multifaceted meta-analysis was done in 2004 by the office of Canada's Solicitor General, Karl Hanson. This analysis involved 95 studies tracking 31,000 sex offenders. These studies had an average follow-up period of 5 years and found:

The recidivism rate for once-caught pedophiles was 12.7%.

The overall once caught recidivism rate (includes adult victims) was 13.7%.

Contrary to widespread public opinion, once-caught sex offenders have a very low recidivism rate. With or without treatment, more than 87% of the once-caught do not commit another sex crime. With treatment, the likelihood of re-offending is even lower.

In contrast, according to the 2004 U.S. Department of Justice Bureau of Justice Statistics study, 69% of all other types of criminals go back to prison, and they do so within five years. Over a longer period of time, other FBI statistics show, about 74% of all other types of offenders return to prison. When that figure is compared to only 2% to 13%, the recidivism rate for sex offenders in reality is only a tiny fraction of what it is for other types of crime. This is not what the public believes and certainly not what they have heard. As the tracking of tens of thousands clearly attest, most people learn from their mistakes, and sex offenders are no exception. Just getting caught changes the behavior of most individuals.

MYTH #2: "TREATMENT DOESN'T MAKE ANY DIFFERENCE."

The public has been told for years that treatment doesn't work, that "for sex offenders nothing works," but here too a myriad of major studies indicates otherwise:

The Campbell Collaboration analysis of 22,000 individuals found that treatment reduced recidivism by 37%.

Canada's Karl Hanson's 2000 analysis found a reduction of 41%.

Oshkosh Correctional's meta-analysis from 79 separate studies of over 11,000 sex offenders found that people who participated in treatment programs had a 59% re-arrest reduction.

According to Alexander's 1998 study, "Men arrested for having sex with children are usually overcome with shame and remorse and they want to stop. Since 1943 those who were treated in jails, hospitals and outpatient clinics found their way back to prison at a rate that was approximately one-third of those who had no treatment."

By 2005, most all preventative programs showed that re-arrest rates were being reduced by greater than half. With some of the latest deep aversion and victim empathy regimens, reductions were reported as high as 91%.

There is now a credible concurrence that "treatment works" and that new programs are becoming increasingly more successful.

MYTH #3: "THE GREATEST THREAT TO OUR CHILDREN COMES FROM
STRANGERS."

According to the most recent major study by the Bureau of Justice Statistics (2004), where
9,700 sex offenders were tracked, only 7% of such crimes against children were perpetrated by
strangers.

The majority (93%) of molestations of children are not committed by strangers but by people
who are known and trusted within or about the family.

Throughout the last decade, other arrest studies have found similar results. Most sex offenses
are committed by a family member or guardian/family member (often some parental substitute).

It may be a trusted uncle, father, stepfather, mother, family friend,  teacher, coach, or  priest;
but in almost all cases, the culprit is not a stranger.

If we keep in mind that 93% of the culprits are family or known to the family and that 87% of
sex offenders who are caught do not re-offend, then it would seem that most registries or
residency restrictions or tracking of individuals will be very close to a waste of time. Such
procedures will not make our communities any safer. In fact, there's evidence such measures will
do the opposite.

MYTH #4: "BANNING SEX OFFENDERS FROM PLACES WHERE CHILDREN
CONGREGATE WILL SIGNIFICANTLY PROTECT OUR CHILDREN."

To claim school yards, daycare centers, and other places where children congregate need
legislation or Global Positioning Satellite (GPS) geo-fences to keep sex offenders away may
sound sensible, but, again, the facts do not fit the reality.

The fact is that most sex offenses take place in or near one's home and that only 7% involve
strangers. Furthermore, only a tiny percentage of sex offenders have any history of kidnapping or
molesting children unknown to them.

Perhaps among the safest places for children to be are those where they are together in numbers.
School personnel are paying more attention than ever before, and older kids are keeping more of
a watchful eye. People --even kids-- look out for each other in public places.

Finally, making it difficult for sex offenders to find places to reside means that they will have a
much harder time re-integrating themselves into society, which is what most of them want to do.

MYTH #5: "TOUGHER LEGISLATION IS THE ONLY SOLUTION."

In the U.S., our judges are learned and principled and render few decisions without due diligence. Very stiff punishments for child murderers are certainly called for, but punishment is just only when it is proportioned to the severity of the crime. Such judgments should remain in the courts, subject to very specific deliberations; they should not be rendered in the legislatures, where careful deliberation is impossible.

If legislation is based on the false premise that recidivism is inevitable rather than rare, and if it blurs the line between sex offense and murder, then it will result in laws that promote public shaming and permanent exclusion. These laws presume and promote lifelong guilt, ruling out all hope of change. Thus they not only clearly violate the Constitution, but they actually encourage more of the very crimes we are trying to reduce.

If we truly want fewer victims, we should adopt a more holistic approach to reintegrating sex offenders back into society. The focus should shift from more and harsher punishment to the funding of good treatment programs. Although such a shift may have little current appeal among the public today, treatment is the only sure way that we will see fewer victims of these types of crime.

Given all the degrees that sexual offenses can take, one type of sentence does not fit all. What do you do with a 17-year-old who had sex with a 15-year-old? What do you do if he was 19? What if it was consensual? Does he get registered for a lifetime as a sex offender? What about an 8-year-old who plays doctor? What if he's 14? The fact is that nowadays even juvenile sex offenders are being branded for life.

MYTH #6: "THE ONLY WAY TO DEAL WITH THEM IS PUT THEM BEHIND BARS."

Today, with two and a quarter million inmates, our country has more people in jails and prisons than it does in all our colleges and universities combined. When three-quarters of all offenders are going back to prison, just funding more prison cells isn't the answer.

If our goal were to mass produce criminals, we couldn't be doing a better job. Without treatment programs, our prisons have become huge breweries, woefully turning out more of the same product, each generation more hardened and more dangerous than the last. If ever we're to make our societies more just and our communities more secure, our goal must be to make some serious changes and not just keep doing more of the same.

If we got more serious about funding preventative programs, then our courts could establish good treatment programs that would start from the first day of a criminal's first conviction. The result would be many fewer victims of all sorts of crimes, including sexual abuse of children.

AR-00001949

Presently there is little or no rehabilitation taking place in our prisons; there is just more and more fruitless incarceration. We need to wake up about what we are brewing and start legislating intelligently so that offenders can really get rehabilitated and contribute constructively to society.

MYTH #7: "MANDATORY MINIMUM SENTENCES ARE EFFECTIVE AND WILL HELP PROTECT SOCIETY."

Although the public may believe that extremely stiff, mandatory minimum sentences and lock'em up strategies send a message that deters crime, history tells another story.

Criminologists point out that such laws, even when publicized, are not all that effective. Often, in the heat of actual violence, perpetrators do not even think about consequences. At such moments of blinding rage and confusion, there are generally few thoughts of penalties or sentences, severe or otherwise.

Conversely, we do know that extremely harsh mandatory sentences have prompted some of the very types of crime they are intended to stem. When a perpetrator is aware of particularly dire consequences if he's caught, that fear can lead him to cause even greater harm for the victim. A person facing a stiff sentence like a mandatory 25 years to life, or even a death sentence, may decide his chances are better if he eliminates the victim and any possible witness. What might have been a lesser crime then often gets even worse.

It may seem a paradox, but the stiffer the consequences, the more Jessicas, Megans and Polly Klaases will likely be the result. It is understandable that with such terrible murders come calls for tougher punishments. However, the problem with legislation launched in anger is that it invariably ends up punishing not only those who deserve punishment but also those who do not.

MYTH #8: "SEX OFFENDER REGISTRIES ARE NECESSARY TO PROTECT SOCIETY."

Posting names, addresses and photographs on a sex offender registry is not only a risk to those on the list, but it can also lead to unintended, inappropriate, and destructive consequences for the whole community.

Registries tend to treat all sex offenders the same way, without reference to the severity of their offenses, their responsiveness to treatment, or current assessment of the risk they pose. It is seen by some as an opportunity to harass the offenders and even worse.

While it is certainly in order to professionally monitor and discipline sex offenders for various prudent periods, we must also try to be fair about how offenders are handled. Permanently branding them on registries or making targets of them with conspicuous tracking devices will only aggravate the problems, not solve them. Unfortunately, when a partially informed public is allowed and encouraged to become watchdogs, sex offenders face greater risk of confrontations by the public, due mainly to anger and hostility. Some people even feel that they have a warrant to harass offenders and make life miserable for them.

Since the start of community notification, there has been a growing number of serious beatings, not only of sex offenders but sometimes of their family members or people with whom they live. Some confrontations have led to tragedies. Two sex offenders were murdered in Maine. In this case, the victims were no longer likely threats; one was simply a young man who at 17 had a 15-year-old girlfriend. Had their names, addresses, and photographs not been on the state's registry, had the two been simply monitored by probation and treatment professionals, they would not have been spotlighted by some zealot who apparently thought he was doing the work of God.

A little wall sign at one of NCIA's clinics gets a lot of applause from those in treatment:

> "Permanent brandings may be all right for cattle,

> but they shouldn't be for people."

If we want to be humane, that sign is correct. If we want former offenders to regain their health and not be always on the run, we should not set them up to be stalked. Vengeful prescriptions that call only for more and more punishment will not produce a cure. Since so few of the once-caught remain a threat, there are smarter approaches than alarming communities with registries and turning all levels of former offenders over to the general public for surveillance.

MYTH #9: "TRACKING DEVICES ARE A PRACTICAL AND JUST MEANS FOR KEEPING SEX OFFENDERS UNDER SURVEILLANCE."

If we want fewer victims of sexual offenses, the primary goal should be to reintegrate former offenders peacefully back into society as law-abiding citizens. This cannot be done if we keep them in fear and on the run. Tracking devices that have to be worn conspicuously only make targets of the people we are trying to reintegrate into society.

When offenders are made to wear GPS bracelets, with one worn on the ankle and another on the wrist, they are big, bulky, and hard to keep hidden. For anyone who has to wear them, they are a scarlet letter, a crippling stigma of shame.

If we want to keep sex-offenders on track, turning them into prey on registries or spotlighting them with bulky tracking bracelets on both arm and leg is not the answer. Making a dart board of any human being is clearly more an act of revenge than an aid in stemming crime. The vigilante mentality is still strong in many places: one man on a sex offender registry found the severed head of his pet dog on the front porch of his house.

Sadly, the new legislation being created is aimed more at increasing punishment and appeasing the public than it is at actually making our communities safer. When the public is as misinformed and angry as they are, it is a perilous mistake to give them the addresses and photographs of all

sex offenders, particularly without the background of their crimes or updated individual assessments of risk.

The monitoring of sex offenders will always be better handled by knowledgeable treatment professionals carefully coordinating their efforts with police and parole officers than by the varied mercies of an angry, upset, and partially informed populace. If GPS devices need to be used, there now exist cell phones with GPS chips, which not only give the person's precise location but allow immediate voice contact with the person.

Unless we want to go back two centuries to the ghoulish practices of Salem, we should not get caught up in the intoxication of revenge that only fuels harassment and witch-hunts.

MYTH #10: "THE EXPERTS SAY THAT STRONG, REPRESSIVE MEASURES ARE NECESSARY TO KEEP SEX OFFENDERS FROM RE-OFFENDING."

Below are some revealing quotes from various experts and authors who have studied sex offender legislation and treatment.

Tom Masters, Program Director, Correctional Treatment Services at Oregon State Hospital:

Unfortunately a lot of crime legislation is a function of politics and does not lead to rehabilitation or community safety.

Margaret Love, former Justice Department Pardon Attorney, writes:

Mean spirited vengeful legislation is only an incitement to vigilante injustice masquerading as a responsible public safety measure.

In the June, 2006, issue of National Wildlife, Richard Law summarizes some studies on how we in America have become so overcome by fear. Here are some excerpts:

Fear is felt nearly intensely in suburban Overland Park, Kansas, as it is in urban Philadelphia. One suburban father told me, "I want to know where my kid is 24 hours a day, seven days a week. I want to know where that kid is. Which hours. Which square foot. Which telephone number.

As a parent, I have felt that fear but consider the facts:

The number of abductions by strangers has been falling for years.

Most abductors are family members.

U.S. children are safer now than they have been since 1975. According to the 2005 Duke University Child Well Being Index, violent victimization of children has dropped by more than 38 percent.

AR-00001952

A 1991 study found that in 1990, the radius within which children were allowed to roam on their own from home had shrunk to a ninth of what it had been in 1970.

What has increased is round-the-clock news coverage of a few tragedies, conditioning families to live in fear.

In her book, Harmful to Minors: The Perils of Protecting Children from Sex (University of Minnesota Press, 2002), author Judith Levine wrote:

All this rational talk may mean nothing to a parent. Out of 45 million, only nine children are raped and murdered: slim odds, sure, but if it happens to your baby, who cares about the statistics? Still, most parents manage to put irrational fears in perspective. Why, in spite of all information to the contrary, do Americans insist on believing that pedophiles are a major peril to their children?

What do people fear so formidably? Our culture fears the pedophile, say some social critics, not because he is a deviant, but because he is ordinary. And I don't mean because he is the ice-cream man or Father Patrick. No, we fear him because he is us.

In his study The Culture of Child Molesting, the literary critic James Kincaid traced this terror back to the middle of the nineteenth century. Then, he said, Anglo-American culture conjured childhood innocence, defining it as a desire-less subjectivity, at the same time as it constructed a new ideal of the sexually desirable object. The two had identical attributes --softness, cuteness, docility, passivity-- and this simultaneous cultural invention has presented us with a wicked psychosocial problem ever since. We relish our erotic attraction to children, says Kincaid (witness the child beauty pageants in which Jon Benet Ramsey was entered). But we also find that attraction abhorrent (witness the public shock and disgust at Jon Bonet's "sexualization" in those pageants). So we project that eroticized desire outward, creating a monster to hate, hunt down and punish.

In the June 2, 2006, San Francisco Chronicle Mark Martin, Peter Firmrite, and Greg Lucas wrote an article that made the following points:

Residency prohibitions on sex offenders have become increasingly popular across the country, despite any statistical evidence that they limit assaults on children. At least 18 states have some restrictions on where parolees live.

Niki Delson, a licensed clinical social worker who has worked for 30 years with sex offenders and their victims and who is chairwoman of the California Coalition on Sexual Offending, says, "Where someone lives has no relation to the commission of a crime." She calls residency requirements "a smoke screen that does little to help children."

AR-00001953

Jill Levenson, a professor at Lynn University says: "Restricting where parolees live can actually do more harm than good. Such requirements tend to push them out of metropolitan areas where they are further away from job opportunities, families, treatment options, and all the things we know that will reduce recidivism.

A review of residence restrictions Levenson published noted that both Minnesota and Colorado prison officials studied patterns of sex offenders on parole and found no correlation between new offenses the parolees committed and where they lived. Neither state adopted residency requirements.

Corwin Ritchie, Executive Director at the Iowa County Attorney's Association, stated:

In 2002, Iowa enacted a law that prohibits sex offenders from living within 2,000 feet of a school or daycare center. The law has overburdened law enforcement, has concentrated sex offenders in areas where they are allowed to live, and has led to an increase in the number of sex offenders who have stopped registering with local authorities and gone missing.

I defy anyone to try and convince me, scientifically or logically, that those requirements have any affect at all. It makes great sense politically, but has no affect whatsoever on public safety.

James Poniewozik, staff writer for Time Magazine, wrote on October 16, 2006:

Strangers make up 7% of child molesters; the vast majority are family members. But you wouldn't know it from watching TV. When stranger predators are everywhere on TV, it suggests that they are everywhere in the real world: in your school yard, roaming your street, and -- especially-- climbing the DSL line into your kids' bedrooms like an ivied trellis.

Robert Freeman-Longo, former director of the Safer Society, stated:

You ban somebody from the community, he has no friends, he feels bad about himself, and you reinforce the very problems that contribute to sex abuse behavior in the first place. You make him a worse sex offender.

CONCLUSION

Knowing of NCIA's work and having seen this report, author/researcher Henry Scammell volunteered the following:

The public has been misled into believing that sex offenders are around every corner and that even those who have been caught will go on to offend forever. The first fear is irrational and the second is less true of sex offenses than of virtually any other type of crime. The only public policies with any hope of success are those based on reliable research instead of fears and on scientific facts rather than easy political fixes fed by misconceptions.

Fear is a poor basis for public policy. It raises a nearly un-breachable barrier to the truth. And a policy that is based on the realities of low recidivism, of responsiveness to treatment, and of the relationship between the vast majority of offenders and their victims offers the only hope for reducing or eliminating one of our society's saddest and most challenging problems.

If we keep in mind the reality that once a sex offender is caught, most of the problem ceases and that preventative programs can cure almost all the rest of the once caught, then clearly treatment must be the goal. When you hear a politician calling for tougher sentences and not backing it up with dollars for treatment programs, then he is looking for votes, not solutions.

The public's fear would not be so intense today if it were not being propelled by all the exaggerated and often totally false recidivism claims. There have been too many "scarathons" that claim that the bogeyman has become much larger than he really is. Even though the public imagines the molester-kidnapper is everywhere, that simply is not the case.

Because of all the clamor and panic, what criminologists and treatment scholars have learned to date has plainly not been heard by the public. Sadly, what has been spawned politically so far, such as sex registries and residency restrictions, are measures that will do nothing to make our communities safer but in fact will do more harm.

If we want fewer sex offenders and fewer victims of these types of crime, we have got to be more levelheaded. We should see to it that the public and our legislators inform themselves better about these myths and learn to distinguish the reality from the many distorted ideas that are abroad.

To contact us:

Call us toll free at 1-888-997-RSOL (7765).

GENERAL correspondence write:

Reform Sex Offender Laws,

PO Box 400838, Cambridge, MA 02140.

DONATIONS ONLY may be sent to:

Reform Sex Offender Laws, Inc.,

PO Box 534, Mansfield, OH 44901.

Copyright © 2007 - 2013 : All Rights Reserved - Reform Sex Offender Laws, Inc.

AR-00001955

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

Comment

By clarifying the necessary elements of registration for sexual offenders It is likely there will be a decrease in the amount of offenses for failure to register or failure to register properly. I am willing to fully support this proposed rule because the ends or purpose which is being sought after is being brought about by means or measures which are proportional and constitutional on their face. The clarification of registration requirements seems to adequately explain the process, and, since the overarching goal of the legislation is not to end sexual offenses but to clarify registration requirements for sexual offenders under SORNA, the proposed rule fits within the purview of the enabling legislation of the Department of Justice.

**Comment ID**

DOJ-OAG-2020-0003-0547

◎ **Tracking Number**

1k4-9jh3-11zc

**Comment Details**              **Submitter Info**

**Received Date**

Oct 12, 2020



About
(/about)

Bulk Data Download
(/bulkdownload)

Agencies
(/agencies)

Learn
(/learn)

Reports
(https://resources.regulations.gov/public/component/main?main=Reports)

FAQ
(/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  (724)  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  (724)  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I would first like to say that I myself am a survivor of sexual abuse of many years from three years to at least eighteen. I knew all 10 of my abusers . I've been raped, molested all by people that I knew. Why are we shifting the responsibility from adults to know there friends and family . I believe that the registry gives a false sense of safety. I was abused by someone who was abusing family and family friends children for thirty years. It has to start with teaching parents and children first. The registry puts people on it for reasons that confuse and take away the meaning of the registry in first place. People who urinate in public get on this list. Couples engaging in acts together in their cars are put on list. Young adults who make a mistake are on a list for life .Only to watch the only mistake of there life be judged over and over again with no relief . I spent many years in therapy to be able to understand and overcome the abuse I endured .I now watch abuse from the other side. I have a best friend who at almost nineteen found a young lady who was almost fifteen whom was interested in him and one day they kissed . It was an innocent act on both parts . Her father found out and because she loved with her mother and was upset she had custody, turned him in .(I would also like to add that my friend is of color which I always believed this was also a factor.) He has struggles with the mistreatment and the discrimination due to this registry .Many of my abusers were molesting children for years and my friend is on the same registry . While my friend believes in registry and understands why it was put into place, I believes it gives false since of security. People know now that people get on this list for reasons other then sexual abuse. Its making it a joke. I watch the struggles of my friend in the restrictions on where to live, not being able to move about the country as they please like every American who deserves a second chance to live free. I am proud to say that the man I am writing about is now my fianc . I now share in the registry and its restrictions . No vacations more then 72 hours because of having to register in another place after the 72 hours and pay more money every time he registers. We find it hard to find a place to live because of restrictions. This has been 27 years of this for one mistake from a young man to spend the rest of his life under life restriction is unconstitutional . People need to understand that its not working that most abusers are from within the family circle. We need education not registration. I share this because I understand both sides . My fianc is a wonderful man who struggles with the sigma of the charges brought against him after all these years. It puts pain in my heart to watch and to feel the discrimination of the laws. The scarlet letter must have a regulation to change laws to truly protect our children. Abuse is real and should be understood by our law makers that putting certain people on registry for life is wrong give some a chance to move on for the one mistake they have made. Education is key to ending abuse of any kind .I thank you for your time.

AR-00001958

**Comment ID**

DOJ-OAG-2020-0003-0548



**Tracking Number**

1k4-9jh3-dkch

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020



About    Bulk Data Download    Agencies    Learn

(/about)         (/bulkdownload)    (/agencies)  (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)         Share ▾

---

Comment

Attorney General Barr,

FACTS MATTER, SCIENCE MATTERS AND CIVIL LIBERTIES MATTER. SORNA is not based on evidence based research and continues to promote a false sense of security to mislead the public AND win votes. The cornerstone of prevention is stable residency, stable employment and treat for disorders when they exist. There is little evidence that the registry acts as a deterrent. Consequences that do not serve public safety should undergo a complete analysis with experts in the field. TRUTH MATTERS.

**Comment ID**
DOJ-OAG-2020-0003-0549

◎ **Tracking Number**
1k4-9jh3-soi4

| **Comment Details** | **Submitter Info** |
|---|---|

**Received Date**
Oct 12, 2020

AR-00001960



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001961

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

Comment

To whom this may concern,
I will get right to the point- registries are destructive, punitive, and retributive! I can imagine a world where all the parties to a crime come together for rehabilitation, discussion, and healing.
I dont believe that government should continuously punish citizens for a crime they committed In the past and paid for it dearly. The price being incarceration, abused in many cases, nothing learned, and nothing gained! This can not define our nation claiming we are civilized and first rate nation! This is a sad day for America, for peoples freedom and Happiness, for moving towards successful/Productive societies, for love and kindness in the world, for innovation, for humanity.

I do not support any kind of registry because at the end of the day all Americans are under attack for being persecuted for one action or another to land on some kind of a registry.

I would like to ask that you consider reigning back restrictions on the federal level for the registry since we already have more than enough restrictions on the state level.

Thank you for your time.

| **Comment ID** |
|---|
| DOJ-OAG-2020-0003-0550 |

|  **Tracking Number** |
|---|
| 1k4-9jh3-mioi |

AR-00001962

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 12, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

Id like to be able to say that I believe adding my comment here will actually make a difference, but one thing this government is good at doing is destroying the faith its citizens have in a fair and equitable government that works for everybody and bases its laws on science and reason. Good job with that, I guess. If you cant tell, it is my position that sex offender registration laws are not only harmful to the human beings they effect directly, but to society in general. These facts are clearly supported by overwhelming evidence, despite the efforts of those who delight in inflicting pain and wish to profit from misery and the destruction of the lives of people those in positions of power deem unsavory. Punishment, retribution, and shaming are the hallmarks of a government that is lazy, authoritarian, and unworthy of loyalty. This comment is being left in response to Docket No. OAG 157. Proposed Rule Interpreting Registration Requirements Under SORNA. Tighten up.

**Comment ID**
DOJ-OAG-2020-0003-0551

**Tracking Number**
1k4-9jh4-n4om

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**
Oct 12, 2020

AR-00001964



Your Voice in Federal Decision Making

About          Bulk Data Download          Agencies      Learn
(/about)          (/bulkdownload)      (/agencies)    (/learn)

Reports      FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

I am a registrant in California, starting 2 years ago for a misdemeanor.
Since my offense I have faithfully continued treatment, observed the law, and provide for my family of now 4.
My boys are still young, but they'll grow up in a blink and start go to school and live their life their life like anybody else.

Except that I won't be able to see their school events, because I'm on the registry.

They will be subject to bullying and ostracism, because Im on the registry.

If I cant obtain the professional license tied to my job, I cant advance and start investing in their college. Theyll be at a disadvantage like I was, working while studying and taking longer to complete their studies.

If I lose my job because of my registry status, theyll go hungry because I wont be able to find gainful employment. Eventually well lose our home.

Where do we go when I wont be accepted as a tenant because of my status? How far from our home do we have to go to have a shot at living a normal life?

Is breaking up my family the only recourse I have?

Their nationality is of 3 countries, including this one, by virtue of their parents. Because of IML I cant travel to their mothers country, precluding visiting grandparents and even moving over there in the future. My passport will be marked with a scarlet statement. Why mark all of us with the same brush as child traffickers or child sex tourists?

The registry is keeping us captive in a country that impedes our pursuit of happiness. The new proposed guidelines do nothing but ever more constricting our life for no-ones benefit, and hell to pay if I ever make a false step.

AR-00001966

Not even in my own state I can relax: now Ive got to notify the sheriff if I plan to take a vacation longer than 7 days? Where is the science in this? Just because we could offend in the visiting place?

What about the grocery store? Or my backyard? Will this power grab and intrusion in our privacy and life ever cease. Clearly these guidelines want the opposite, establishing the AG's delegation of decision to meddle into state jurisdictions.

Where are the studies in recidivism and public safety that show these steps are necessary?

Why are you trying to break up my family? Im paying my debt to society. My crime was virtual, no actual contact. Im not a danger to society. Im healing through therapy. My risk assessment is about as low as it can be every single year.

Why are you taking it out on my family, my kids. How is the country safer with a broken home? With me homeless? With my kids impoverished? Lack of quality healthcare insurance?

My plea is this: punish the guilty but give a real chance to get off the registry once the debt is paid: out of jail/probation/parole.

Thank you for reading and considering my situation.

**Comment ID**
DOJ-OAG-2020-0003-0552

 **Tracking Number**
1k4-9jh4-6x3x

**Comment Details**                          **Submitter Info**

**Received Date**
Oct 12, 2020



Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001968

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)       Share ▾

---

**Comment**

Hello,

I wanted to express that I completely oppose the existence of a registry. I do not agree because it restricts housing, jobs, going to church and
Harm to family of registrant.
It is lifelong imprisonment with No proof that the registry makes the world safer. Also,
no other crime requires a registry like this.

**Comment ID**

DOJ-OAG-2020-0003-0553

 **Tracking Number**

1k4-9jh4-sy19

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020

AR-00001969



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments) | Share ⏷ |

---

Comment

[***DOJ DOCKET NOTE: PERSONAL IDENTIFYING INFORMATION OF THE COMMENTER REDACTED AT THE COMMENTER'S REQUEST.***] PERSONAL IDENTIFYING INFORMATION: I am the mother of a son who is negatively impacted by the government's personal gain blanket rules of sorna as has his entire group of family and friends. His story began at about 12/13 when a friend of his showed him how to access pornography via a method that the government would have been better served shutting down instead of using it to destroy so many lives for prosecutors to boost their scorecard. My son to this day has not and will not implicate this person. My son had always been obsessed with computers always trying to push its limits in speed, capability and trying to find the next new field of discovery. My son has taken full responsibility for his action in downloading pornography that unfortunately included child pornography although not personally sought. Puberty at its worst. He matured after first discovering this and through a personal friendship of someone impacted by an inappropriate sexual relationship realized the possible harm his searches could do so he stopped, on his own removing that hardware from his computer. At 18 while beginning his career in the military his computer crashed so he reinstalled the old hardware. Forgetting all about his past use he lent his computer to a female friend to watch movies while on gate duty and the NIGHTMARE began with a military conviction. The military judge on his case, Colonel Orr, sentenced him to less than the mandatory time to complete rehab while incarcerated and further reduced that time to 11 months acknowledging that my son had already put this behind him and was not a threat to anyone. Even though the New York point system labeled him a level 1, an overzealous pregnant first time case prosecutor pushed for a level 3 making up her own point system because my son was not confined by probation or parole because the court of sentencing deemed he was not a risk. Col Orr even wrote a letter in support of my son. Every friend and family member except 1 friend still stands by my son to this day because they know his heart. He is always the first to help anyone who asks giving 100 times more than he gets. We all know the only harm he could do to anyone would be in defending someone who was being harmed. 12 years later our NIGHTMARE continues. First for my son, jobs have been hard to come by and to keep because of the public registry so he had worked less than desirable jobs and I have slept in his car on overnight shifts to make sure he was safe from those who very erroneously deem him a monster. He has been denied jobs because a background check via Nexus classified him as violent and said he used a weapon to commit his crime. Violent? Weapon? He used a computer to understand puberty!!! Really????? MANY jobs hired for because of his hard working, caring, giving person were then lost when female co workers seeking to date him or for their daughters to date googled him and the first thing to come up is the registry that labels him a monster which cant be farther

AR-00001971

from the truth. Although my son desires a relationship and marriage and a family the registry makes this as close to impossible as it gets to find a decent woman. My biggest fear is that if he does find one that if it doesn't work a false accusation will destroy his life all over again. Until this month I have begged and pleaded for my son to live with parents so there would always be a witness if accused of anything. But, parents will not live his entire life span so with his independence stress and worry for his safety will probably shorten our lives further SADLY, I HAVE REPEATEDLY LEARNED THAT POLITICIANS CARE NOT FOR THE TRUTH, FACTS AND RESEARCH ALL OF WHICH SUPPORTS LAWS CONTRARY TO THE ONES THEY MAKE OUT OF SELF SERVING, NOT PUBLIC SERVING, GAIN. POLITICIANS CONTINUE TO ERRONEOUSLY MAKE LAWS THAT LUMP NON CONTACT TEENS WHO MAKE ERRORS IN JUDGEMENT IN WITH CONTACT HARM CAUSING PEDOPHILES THAT DESERVE THEM. EVERY piece of research says current laws and registry DO NOT protect the public and in fact can perpetuate harm. But, by political sensationalism people are lied to and made to believe the contrary SOLELY FOR THE BENEFIT OF THOSE LYING, SELF SERVING, SELF GAIN POLITICIANS. SO MANY, MANY LIVES LIKE MY SONS --- and by association every family and friend--- HAVE BEEN NEEDLESSLY DESTROYED. 2020 is teaching Americand that enough is enough. It's time to make government of the people, by the people and for the people again and not to further self serving, self gain politicians and politics. It's exactly why Trump is in office. People are tired of being lied to by career politicians who think no further than their own back yard.

**Comment ID**

DOJ-OAG-2020-0003-0554



**Tracking Number**

kg6-spcs-wiyv

**Comment Details**

**Received Date**

Oct 12, 2020



Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |

Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001973

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

---

Comment

We are in the middle of a national conversation on criminal justice reform. Groups in nearly every state are advocating with empirical data and anecdotal pleas for state lawmakers to ease up on sex offense registry requirements in an attempt to allow communities to explore restorative justice practices. There is very little data to suggest that people convicted once of sex crimes are more likely to reoffend than those who have never been convicted are likely to offend for the first time. In fact, once a person has been convicted of a sex offense, their likelihood of committing a similar act is lower than the general public, especially if they have successfully completed a treatment program (please see, i.e.: http://ctsentencingcommission.org/wp-content/uploads/2018/05/Sex_Offender_Report_December_2017.pdf). The changes proposed here would make it more difficult for communities to seek new methods of restoration of offenders to their neighborhoods. The changes would make it more difficult for those required to register to work, to experience the freedom of movement, and to enjoy the full range of liberty ensured by the Constitution. The changes would also provide for more ways to incarcerate individuals who have not created new victims but who have simply run awry of the new SORNA travel restrictions. In an era in which the public asks for mass decarceration, we should not make it so easy to incarcerate. Additionally, foreign sovereignties can make their own laws about who can travel within their borders. So too can States within our Union. In contrast, the government interest of public safety is drastically outweighed by the aforementioned interests of affected parties and the public which supports their restoration. In light of these comments, please do not implement the proposed SORNA changes, let foreign States make their own laws, and let US States work out registry and public safety interests without federal interference.

---

**Comment ID**

DOJ-OAG-2020-0003-0555

---

 **Tracking Number**

1k4-9jh5-1hq2

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

Comment

[***DOJ DOCKET NOTE: PERSONAL IDENTIFYING INFORMATION OF THE COMMENTER REDACTED AT THE COMMENTER'S REQUEST.***]Requesting right of privacy from public view regarding comments. 1) Part 72.5, RE: Tiers: Tier I registration should be reduced to end when supervised release period is completed. If offender's conviction is limited to internet download, with no contact, or distribution, registration should not be required. 2) Part 72.4, RE: Where to Register Requirements: State and Federal requirements should be aligned to be compatible, regarding registering in state of residence and in a different state of employment and/or educational institution. The registrant should have clarity on guidelines in order to be compliant. 3) Part 72.6, RE: Public Access to Detailed Personal Information: Requirement for a released prisoner, who has served the required time of incarceration, should not be receipt of further punishment by denial of personal privacy. Registry information for public access should limited and listed as zip code only. Other information should be available only to responsible law enforcement agencies. A released prisoner, who is compliant with the the supervised release mandates should not be under constant scrutiny, further making that person a prisoner again. 4) Part 72.6, RE: Driver's License and Passport Notification: Part 72.7, I recognize that a driver's license and a passport serve as legal identification tools. I state here that any stamping of 'Registered Sex Offender' should NOT appear on these 2 documents, or any certifications for one's employment skills. Respectfully submitted

**Comment ID**
DOJ-OAG-2020-0003-0556

⊙ **Tracking Number**
1k4-9jh5-wnk3

**Comment Details**

AR-00001976

**Received Date**

Oct 12, 2020



About    Bulk Data Download    Agencies    Learn

(/about)         (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)        Share ▾

Comment

Please do not add any more restrictions or requirements to sex offender registry. There is no evidence that the registry makes anyone safer, and in fact, more restrictions may make people more likely to reoffend. We need to invest is preventative measures and health care for folks who need help rather than the practical lifelong imprisonment of people who have served their time for their crime. Thank you.

**Comment ID**
DOJ-OAG-2020-0003-0557

◎ **Tracking Number**
1k4-9jh5-bjwd

**Comment Details**                              **Submitter Info**

**Received Date**
Oct 12, 2020

AR-00001978



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) |   Share ▾ |

---

Comment

The registry takes away a persons right to the pursuit of happiness. This is something that cannot be done living house to house or hotel to hotel. Hoping that a job won't turn you away because maybe this time things will be different. I feel as though part of justice is rehabilitation and if those on the registry are constantly living in fear of who they talk to or what they say, there is no space for improvement. I believe whole heartedly that the system is flawed and my personal experience, situation are not considered

**Comment ID**
DOJ-OAG-2020-0003-0558

 **Tracking Number**
kg6-u0tp-b6pu

| **Comment Details** | **Submitter Info** |

**Received Date**
Oct 12, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

The registry should not be used for low tier offenders. Not even murderers get the same treatment. People with money and connections like Jeffrey Epstein show that this system is broken and only punishes the rest of the people who aren't connected to the powerful elite.

Placing the lowest tiers of first offenders on the same level as violent high level offenders is not only cruel its counter productive.There is no distinction between sexual predators and and individuals having never touched anyone. The current practice of putting all offenders on the sex offender list does nothing to protect anyone from sex abuse or sex trafficking. However, it imposes life long punishment to the offender even after she/he has served their sentence. The sex offender list makes it practically impossible to find work, education and housing and increases homelessness and suicide. This hurts not only the offender when they leave prison but their family who are trying to help and support them which inevitably ends up draining what funds they may have available to provide their loved one housing, food, medical care and much more. This is a very, very cruel law that is not effective at all in protecting society. In fact, politicians love to single out this group so they can appear tough on crime and let's face this group is an easy target.

**Comment ID**
DOJ-OAG-2020-0003-0559

 **Tracking Number**
1k4-9jh5-fzrd

**Comment Details**                              **Submitter Info**

**Received Date**

Oct 12, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001983

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001) / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments (724) (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments (724) (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

| Comment |

Hello,

Thank you for the opportunity to be able to submit comments on SORNA. My family has been affected severely and not for good cause, in my opinion.

My son, at 24 years old, was convicted of possession of child porn. He did not search for it and did not download. He received a couple of emails, that AOL did not bother to block when it was coming in to him, but flagged the email when he replied to one of them. (A pity they could not have protected their own customer from this). That is not to say that what he did was right, but for this he earned a 4 year sentence in federal prison and in Florida a lifetime on the registry along with no place to live due to the residency restrictions. Seriously? It's not enough that he will never have any meaningful employment again, and will never be able to pull himself above the poverty line, but if by chance someone does employ him, all it takes is one person to point out that he is on the registry and it's all over.

This happened to my son. He was able to transfer, upon release from prison, to Michigan. A large retail store hired him and he was doing well, until someone saw him on the registry, which prompted the store to fire him. Keep in mind they knew of his conviction when they hired him, since he was in a halfway house at the time and they spoke with his probation officer prior to him being hired.

Since then he spent 2-3 years trying to find work, unsuccessfully until he found a gas station that needed someone to work, PART TIME, on the graveyard shift.

My son has been banished from his home, his family and his friends to live in rural Michigan, due to SORNA. It is a lonely desolate farming/hunting community, where even prospects of meeting a mate are extremely slim. He suffers from anxiety and depression and his Dad and I are having to support a separate household, instead of him being able to live with one of us here in Florida.

This is truly CRUEL and UNUSUAL PUNISHMENT and you have punished an entire family with these laws. we have had to cut all other spending to be able to support him and fear every day that he will have enough of this

AR-00001984

and decide to end his suffering. You give no second chances - no possibilities of redemption.

Truth be known there are a lot of people I believe who should be on SORNA, but you have used a HUGE NET instead of a fishing line to scoop up a lot of people who have had their lives destroyed for no good reason. There are other options for first time, non-contact offenders...classes, fines, therapy..HELP them with any issue they may have had that led them to this and let them pay monetarily as a penalty, while you teach them about what is going on.

It didn't need to be like this and I hope that you will consider the devastation SORNA has caused, and make meaningful changes to it.

Thank you for allowing my comment.

**Comment ID**

DOJ-OAG-2020-0003-0560

 **Tracking Number**

1k4-9jh5-6lli

**Comment Details**                                          **Submitter Info**

**Received Date**

Oct 12, 2020



About    Bulk Data Download    Agencies    Learn

(/about)         (/bulkdownload)  (/agencies)  (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

AR-00001985

Support (/support)   Provide Site Feedback

AR-00001986

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments | 724 | (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments | 724 | (/docket/DOJ-OAG-2020-0003/comments) |   Share ▾

---

Comment

[***DOJ DOCKET NOTE: Commenters on DOJ Proposed Rules have the option to provide or not to provide their own Personal Identifying Information (PII) such as their names. However, in order to protect the privacy of persons other than the commenter who may not have given their consent for such PII to be posted on www.regulations.gov, it is DOJ's policy to redact third-party PII from a comment. In such instances, the full, un-redacted comment is available for public inspection in person by contacting the For Further Information Contact identified in the Proposed Rule. Accordingly, although DOJ has considered the entire contents of this commenter's comment, that portion which contains third-party PII has been redacted.***] Your registry's worthless right now in Florida! The 37 y.o. registered child-raper [NAME REDACTED] in Orlando keeps allegedly walking into the toy sections at Walmart and Target, going to the boxes of WWE dolls, and sneaking ads for his all-ages wrestling school, where he also makes sex videos and books "session girls." His brother [NAME REDACTED] was supposed to be on the sex offender list too but his lawyer got it lowered to "child battery with fluids." His 45 y.o. friend kid-porn maker and kid-pimp [NAME REDACTED] apparently does the same things around Titusville wrestling matches with Team Vision Dojo. America has sex offenders who should be in prison for a long time. The courts are just putting them on the registry and telling the community can watch out for them. The community does watch out for them and call police when there's more crimes but get ignored. Neighbors of [NAME REDACTED] and [NAME REDACTED] call Orange County Sheriff or Brevard County Sheriff when these rapers allegedly do more kid-raping or make more kid-porn. Sheriffs do nothing. The community tells the Sheriffs that [NAME REDACTED] and [NAME REDACTED] are using names and staying in places that they're not listing. Nothing happens. [NAME REDACTED]'s been missing since 2016 but nobody cares. Nothing happens. All that we have right now is that you expect the community to watch known pedophiles do more crimes and watch nothing happen. Why bother?

---

**Comment ID**

DOJ-OAG-2020-0003-0561

AR-00001987



**Tracking Number**

1k4-9jh6-nrgk

**Comment Details**                                    **Submitter Info**

**Received Date**

Oct 12, 2020



Your Voice in Federal Decision Making

About      Bulk Data Download      Agencies      Learn

(/about)          (/bulkdownload)      (/agencies)    (/learn)

Reports      FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

AR-00001988

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

| Comment |

This registration and the entire concept of the sex offender list is ultimately harmful and unnecessary for a number of reasons. It is quite clear that this is an antiquated concept not based on any of the available data from research on this population. If it was, you would know that sex offenders have extremely low recidivism rates (lower than those of many other crimes, that do not have such a list) and that they can appropriately recover with proper resources and treatment given to them. You would also know that online registries do not deter sex crimes, that those on the registry are not more likely to recidivate than those who are not, that charges are often reduced to nonsex crimes over time, and that failing to register does not predict recidivism (Letourneau et al., 2010). Juvenile offenders are even less likely to re-offend than adults (CSOM). The facts show how this process is clearly arbitrary as there is a list chosen to highlight those who have committed sex crimes, but not any other crimes, despite their higher recidivism rates and equally damaging consequences to the general public. There is no reason why this list should exist when there is no evidence that it is an effective deterrent to sex crimes and only serves to mark those who are unlikely to re-offend.

Beyond this, the sex offender registration creates issues for the many who desire to reintegrate into society in a productive way. With therapeutic treatment, available housing, and access to stable employment, they can lead successful lives and rehabilitate (CSOM). However, there are significant barriers to this process that ultimately hinder their abilities to reintegrate into society. With unnecessary limits on where sex offenders can live and work, it remains difficult to re-enter society as anyone else would do. This also inhibits access to treatment as people without jobs lack insurance and likely cannot afford therapy to help them manage in the community, if necessary. The logic is supposed to be that you do the time for the crime and then can re-integrate into society, though this is not so in practice. Despite paying for their crimes and often spending time in the correctional system, they continue to face barriers upon leaving these facilities, and unfairly as they are unlikely to re-offend. The registration is a solely punitive measure that only serves to make it harder for sex offenders to live, work, and begin the process of community re-integration. It is a system that is unfair not only due to the unlikely prospect of further crimes but also that other offenders do not experience the same restrictions. To actually help this population and further reduce the already low rates of recidivism, positive solutions would be to provide more community-based interventions and vocational services to sex offenders to facilitate community re-integration and to allow for them to succeed in society, which is much better than the demarcations of the registration and how it further punishes them, and ultimately makes it harder for them to pursue opportunities.

AR-00001989

Finally, it is important to address the issue of stigma that comes from being on this registration. The sex offender label carries a lot of stigma in society and faces a lot of hate from others. These overall negative attitudes are internalized by this population as they hear them daily. Internalized stigma is one of the largest barriers to making progress in treatment and in being able to be open and honest with others. They are ostracized and can even be victims of hostile acts (CSOM). This increases isolation, a lack of being able to develop social supports, and low self-esteem. The consequences of internalized stigma cannot be overstated as they further the difficulties associated with this label and exacerbate the mental and interpersonal difficulties experienced by this population. Once again, the registration is punitive and furthers the stigma associated with this label as people are branded online for their past crimes unlike any other offender group is.

In all, I hope this registration will soon become a thing of the past. There is little evidence of its effectiveness, recidivism rates are extremely low for this group, and it only serves to perpetuate stigma and shame as they are the only group of offenders marked by a list in this way. To actually help this population and society at large, I hope there are future efforts to make community-based interventions, low-cost therapy, and vocational/housing services accessible to this population, as this is the only empathetic and successful way to help sex offenders, reduce recidivism further, and allow them to re-integrate as successful members of society, which ultimately helps all and will reduce the unfortunate societal stigma that has developed surrounding this label. If societal attitudes improve, allocating money and access to these services will soon follow.

---

**Comment ID**

DOJ-OAG-2020-0003-0562

---

 **Tracking Number**

1k4-9jh6-vlfh

---

**Comment Details**                              **Submitter Info**

**Received Date**

Oct 12, 2020



About    Bulk Data Download    Agencies    Learn
(/about)    (/bulkdownload)    (/agencies)    (/learn)
Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001991

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

Comment

The Sex Offender Registration and Notification Act, or SORNA, is responsible for establishing national standards for sex offense registrations. It is at its base a system for tracking and monitering sex offendors being released into the community, providing important information about them to authorities and public such as their name, current location, and past offenses. However, once they have been registered for sexual offense, it is stuck to their record permanently.

Numerous comments from other people regarding this act have unanimously agreed that this proposed rule is not only morally wrong, but unconstitutional. The impact that being labeled as a sex offender has is that you only have to be caught once and you are stuck with that label for life. This makes it so they have been put on restraining orders from community areas such as schools, as well as restricting their internet access and being tracked at all times. All of this over one incident.

These laws interfere with multiple protected rights: the rights to privacy, family and home, freedom of movement and liberty, and physical safety and integrity. The registration laws were designed to keep the basic human rights while serving due punishment, but state governments find loopholes to make sure they get only the basic human rights. As a result, anyone who makes one wrong move is immediately ruined for life, even if they did nothing to deserve it from a moral standpoint.

| **Comment ID** |
| DOJ-OAG-2020-0003-0563 |

 | **Tracking Number** |
| kg6-vjef-q41d |

AR-00001992

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments   724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724  (/docket/DOJ-OAG-2020-0003/comments)     Share ⌄

---

Comment

Dear AG Barr, I am a 60 year old woman who is living with a 58 year old man who is on lifetime registration as part of a plea deal for having three 30-second videos of child pornography. He did 3-years in a federal prison in Texas. The victims were not visible due to bad video but believed to be over 16. This was in 2008. At that time we had one computer to a household and used peer-to-peer networks. It is believed that the videos were downloaded by an adult step-son but my boyfriend owned the computer and was held accountable.

Since I have known this man I have been asked to move out an apartment I lived in for over 10 years. He is a hard working, capable man who has to ask permission to go to school to better himself. He is subjected to polygraph's and monthly random checks. My adult daughter lives with us and has to have her room checked as if she was a criminal. We moved into a new community over a year ago and the HOA tried to have us removed. I am a business owner and my boyfriend is an Engineer. We are hard working people who vote and contribute to our community. I am the proud child of a Marine and my boyfriend's father was a 40-year veteran of the Los Angeles Police Department.

So my question to you is...do you really think your SORNA applies to a guy like this? Do you really think 25 years on a list and enduring this abuse makes sense? I have educated myself thoroughly on these laws. I was one of the people who would have told you to lock them all up; until I learned the truth. These laws DO NOTHING TO PROTECT THE PUBLIC. They do nothing to keep children safe. And, they have the complete opposite effect on these men and women on the "hit list". I live in fear that someone will show up at my door and kill me, my child or my boyfriend simply because we exist. We are an easy target and cannot protect ourselves. You cannot begin to imagine the fear. And, with the increase in violence this year? I asked his P.O. if I could get trained and get a gun for protection. I am not allowed to use my Constitutional right because I live with someone accused of the most violent awful crimes. Your law is a one pill fits all and it is disgusting.

My two-cents isn't going to matter; but, I vote, and my family and friends vote. I will make my voice heard. I lobby in Sacramento every chance I get to make positive change to these laws. But, you will be implementing the worst possible scenario. Shame on you. How you can expect these people to move forward and be productive is beyond me. So, in your spare time, why don't you come up with a list for people who beat their wife's or have repeated DUI s? Why don't you actually overhaul SORNA and give these people a REAL way out? Community Service or something. Make real change, not the same old SORNA junk!

AR-00001994

**Comment ID**

DOJ-OAG-2020-0003-0564



**Tracking Number**

1k4-9jh6-u32u

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 12, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download    Agencies    Learn

(/about)    (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00001995

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

---

Comment

Ten years of prison for failure to promptly register is ridiculously long. Political appointees who want to appear "tough on predators" - which sex offenders rarely are, just old guys addicted to web porn - will want to enforce this to the limit. But even with mandatory minimums, most initial sentences are under ten years. Enforcing this on all SOs is like shooting mice with howitzers.

**Comment ID**

DOJ-OAG-2020-0003-0565

◉ **Tracking Number**

1k4-9jh6-sk11

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020

AR-00001996



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00001997

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I agree with the many commenters who oppose public sex offense registries because they are counterproductive and they divert valuable resources from effective treatment and prevention. Some commenters speak from personal experience and others present peer-reviewed evidence to make the case. I will not try to reiterate these comments. Instead, I will simply point out that one of the express purposes of the proposed rule is to "further SORNA's public safety objectives". I suggest that to further public safety the Department of Justice should use its prosecutorial discretion, not to double down on punishments for onerous technical offenses, but to deemphasize those requirements of the law that demonstrably do not make people safer. Instead, divert resources to offender treatment and public education about the true source of sex offense risk, which is trusted family and friends, not people on the registry.

**Comment ID**
DOJ-OAG-2020-0003-0566

⊚ **Tracking Number**
1k4-9jh6-dn1t

**Comment Details**                              **Submitter Info**

**Received Date**
Oct 12, 2020

AR-00001998



About   Bulk Data Download   Agencies   Learn
(/about)      (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

---

| Comment |

1) Part 72.5, RE: Tiers: Tier 1 registration should be reduced to end when supervised release period is completed. If offenders conviction is limited to internet download, with no contact, or distribution, registration should not be required.

2) Part 72.4, RE: Where to Register Requirements: State and federal requirements should be aligned to be compatible, regarding registering in state of residence and in a different state of employment and/or educational institution. The registrant should have clarity on guidelines in order to be compliant.

3) Part 72.6 , RE: Public Access to Detailed Personal Information: Requirement for a released prisoner, who has served the required time of incarceration should not receive further punishment or denial of personal privacy. Registry information for public access should be limited and listed as zip code only. Other information should be available only to responsible law enforcement agencies. A released prisoner, who is compliant with the supervised release mandates should not be under constant scrutiny, further making that person a prisoner again.

4) Part 72.6, RE: Drivers License and Passport Notification:
Part 72.7, I recognize that a drivers license and a passport serve as legal identification tools. I state here that any stamping of Registered Sex Offender should NOT appear on these two documents, or any certifications for ones employment skills.

| **Comment ID**
DOJ-OAG-2020-0003-0567 |

|  **Tracking Number**
1k4-9jh7-7ip5 |

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 12, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |  Share ▾ |

Comment

Re: Docket No. OAG 157:

"Personal Identifying Information". I am writing in response to the proposed update to SORNA. I believe this is going to federalize the already ineffective state registration requirements, and I am opposed to it.

My stake in this is that my son is 5 1/2 years into serving a 25 year sentence in Michigan for CSC 1. He had no prior record, but was sentenced under the "maximum minimum sentencing" and "truth in sentencing" legislation that Michigan has adopted. He was also placed on the life time sex offender registry, which he didn't learn of until his sentencing. The girl he was with ONE TIME claimed that she was of age, so he didn't even know he had committed a crime.

While my son is years from being released, about a year and a half ago, I started attending a support group in Kalamazoo called Michigan Citizens for Justice (also referred to as Fearless). I drive from Indiana to do this because I need to keep up with the laws in Michigan. I have learned so much because this group consists of a pastor who has offered his church as a meeting place, several sex offenders who have served their time and are living as responsible citizens, a therapist, a lay legal person, and a few family members like me who have a son in prison or one who is recently released.

The offenders' personal stories are different, but the stories of what their lives have been like after prison release and put on the registry are remarkably similar. Stories of extreme difficulty getting a job and a place to live, enduring harassment from neighbors, confusion about how long and where they can travel to, and difficulty following the often changing rules of how to correctly report to the authorities.

My understanding is that a person can be arrested, convicted, and sentenced for a sex offense crime ranging from urinating outside, to sexting, to being in a Romeo and Juliet type of romance/sexual relationship, to long time sexual abuse of a family member or friend, to the most awful rape and murder of a child. And yet, in many states all of the above offenses would lead to a life time sex offender registry.

Sexual crimes against children are terrible and the offenders should of course be punished. But it is my sincere

AR-00002002

belief that the sentencing of offenders and placement of them on a sex offender registry should not be a one size all application.

EACH AND EVERY CASE SHOULD BE THOROUGHLY EVALUATED! A serious offender should have a longer sentence and more counseling, and maybe some monitoring after being released, buy by a mental health professional and not a public registry.

Current statistics from numerous sources about sex offenders and the registry:

   * The recidivism rate for sex offenders at 5% is quite low, one of the lowest recidivism rates of all crimes, which has
      remained steady since well before the registries were started
   * The registry is useless at predicting future sex offenses
   * After 20 years of starting registries, no studies indicate that it has reduced sexual crimes
   * The registry does not protect children since most sexual crimes against children are committed by people they know -
      in their circle of family and friends, and the authority figures in their lives - people not on the registry
   * Registries cost states millions of dollars annually, money which could be better utilized with prevention and
      rehabilitation programs that work, and for victim assistance programs

Because of the above points, I believe that sex offender registries don't work and should be abandoned. I suggest this quietly be implemented during a non-election year, federally and state by state. Or the alternative, to be completely fair, would be to start a registry for each and every category of felony, or perhaps an enormous federal registry listing every felon who is/was released from prison, going back to 1994 when states were first required to implement a sex offense registry. Okay, maybe that's unrealistic. However, if nothing else, start dialing back on registries instead of ramping them up every few years, and then eliminate them.

Thank you.

---

**Comment ID**

DOJ-OAG-2020-0003-0568

---

 **Tracking Number**

1k4-9jh8-b90m

---

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

When Is Enough, Enough? THIS HAS TO STOP. Depression is rising. Suicide is rising. When have we paid the price? When can WE live in peace?

Please. I beg for you to hear us and all the families that are tied to 650+ of these comments. It is not just the registrants that carry this scarlet letter but their families and beyond bear the letter too.

I am a married to a registrant with a crime that was committed over 12 years ago. He was 19 when it happened and today, it still lives with us, a dark gray cloud that hovers over us that doesn't seem to leave. We wake up in fear wondering if someone will vandalize us. Hurt us. Hurt our families. Bullying. Attack us. Not allow us to buy a home. Befriend us. These are real daily long term issues that the ones in power do not know. Our children are bullied and depressed. We have paid the price. We have served the time and I say WE because it effects the entire family unity - me down to my grandma to his aunt, to my parents, to his parents, our siblings...EVERYONE. When will government realize that this registry is a money hungry, fear mongering induced system that is designed to fail? By imposing MORE restrictions on our freedom to move and live, how will this be more good? As a fact, do you know that the recidivism rate of reoffending is less than 4%? Did you know that a public registry hasn't proven improvement on the general safetiness of the community?

Please we beg you, and on the behalf of the many families in oppression for this, do not place another restriction on travel and another resgistry and more senseless laws that are based on feelings and fear. The load that many carry is monumental enough because of this modern day scarlet letter.

On February 12, 2018, Emily Horowitz debated Marci Hamilton over whether we should abolish the registry for convicted sex offenders. Horowitz is chair of the sociology and criminal justice department at St. Francis College, and Hamilton authored Justice Denied: What America Must Do to Protect Its Children. The side that gains more ground is victorious. In this case, Horowitz—who argued for abolition—won overwhelmingly by convincing 33 percent of the audience to switch over to her side.

I urge you to please watch and educate yourselves on this horrific registry that needs to be abolished. https://www.youtube.com/watch?v=SIt7-GcvLGk

AR-00002005

Blessings from Dallas, TX,
A Concerned family of 4 trying to be ourselves and live as normally as possible

**Comment ID**

DOJ-OAG-2020-0003-0569

 **Tracking Number**

kg7-0p31-phdm

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020



About    Bulk Data Download    Agencies    Learn

(/about)    (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

AR-00002006

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |  Share ▾ |

---

| Comment |

SORNA and local SORR throughout The United States are unconstitutional on many points.

First, it is a clear case where the federal government has stepped out of boundary, and crossed state lines. If a person is convicted of a state crime, where the state has imposed the decision to label a sex offender, the Federal Government should not be allowed to impose additional restrictions on the convicted if it was not a federal crime. They simply have no right to partake in the sentencing process.

SORNA attempts to apply a blanket cover of restrictions on registered sex offenders however, this concept does not make any sense because of the lack of uniformity of what causes a person to land on the list in the first place. What one state considers a sex crime, is not considered a crime in other states. This results in 2 individuals committing the same act in 2 states but treated in opposite bipolar manners: one is labeled a sex offender with draconian rules by every district/municipality they reside in, the other lives a normal life. This blanket of rules should not be applied to such an array of various crimes. It is so vast, law enforcement knows many adolescents get caught up in a one-time mistake that will ruin their entire lives without an opportunity to repair it.

SORR across this nation has become a spaghetti mess. Every state has its own version. All of which have requirements that are impossible to meet in certain circumstances. For example, finding shelter for a Hurricane when community shelters don't allow you inside, and local restrictions don't allow a registrant to relocate even temporarily.

You call SORNA "civil duty", but that is a lie by omission. SORNA is retribution, a punishment. Considering the sex offender label is issued during sentencing, and not otherwise, it is retribution. It may be called a "civil duty", but that doesn't make it mutually exclusive to a punishment. All sentences are essentially "civil duty", yet they are obviously retribution. If SORNA were not retribution, there would exist volunteers wanting to register themselves willingly. As retribution, it breaks many laws backed by the U.S. Constitution, including: Ex Post Facto, Double Jeopardy, and Cruel and Unusual Punishment.
Ex Post Facto: New rules added to SORNA should never be retroactive. How can new rules be enforced on convictions made prior to the new rules?

AR-00002007

Double Jeopardy: SORNA is punishing registrants twice. For example, if a registrant successfully finishes their registration time for a state-level registry, SORNA would require additional time on the registry, exceeding that of some states.

Cruel and Unusual: Convictions of a crime result in a combination of punishments (community service, probation, jail, prison, parole). However, only "sex" related crimes result in a public registry. This makes it cruel and unusual. Cruel because of the draconian extremity, unusual because there exists no other registry for other types of crime, such as fraud, theft, murder, etc. This one-of-a-kind registry later opens doors for vigilantes to take justice in their own hands, placing the lives of registrants' families at risk.

I do not support SORNA, and like police departments across the country, needs to be reformed or defunded.

References:Article 1 Section 9 of U.S. Constitution: "No Bill of Attainder or ex post facto Law shall be passed."

Amendment 5 of U.S. Constitution: "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . . ".

Amendment 8 of U.S. Constitution: "nor cruel and unusual punishments inflicted".

**Comment ID**
DOJ-OAG-2020-0003-0570

 **Tracking Number**
kg7-10kg-yzmv

**Comment Details**      **Submitter Info**

**Received Date**
Oct 12, 2020





Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002009

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments | 724 | (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments | 724 | (/docket/DOJ-OAG-2020-0003/comments) |

Share ▾

---

Comment

The Registry is Punishment , Retroactive Punishment is not ok. Please reconsider these rules , Many people have already been sentenced applying more punishment is not ok . This registry has grown out of control tax payers are sick of paying to keep on a registry that most are not even dangerous , The tier system is not ok either, people deserve a way off this type of registry , this registry disables anyone on it , it also stops them from proving for their families. No one deserves a life on a registry you really need to lower the amount of time on the registry also you need a way to determine the danger of a person most on this registry were young men sucked into the system with no way out is not ok. Please rethink these rules they are punitive in all ways . Use science it proves most on the registry are not dangerous .

| **Comment ID** |
| DOJ-OAG-2020-0003-0571 |

 **Tracking Number**
kg7-12wp-ovbf

| **Comment Details** | **Submitter Info** |

**Received Date**

Oct 12, 2020

AR-00002010



About
(/about)

Bulk Data Download
(/bulkdownload)

Agencies
(/agencies)

Learn
(/learn)

Reports
(https://resources.regulations.gov/public/component/main?main=Reports)

FAQ
(/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  (724)  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  (724)  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

Docket# OAG 157

I am commenting today to say myself and my family object to these changes. The research by our own government as well as many others, has shown, the failure of this scheme. If it was actually beneficial then at the very least physical abusers would have a list too and we could go on and on. But as history has taught us, making a list of human beings to be hated, with government permission to so, does nothing to advance a society. It does just the opposite.

Today, due to the internet, everyone knows of the existence of this list. Many websites will have links to the list of these horrible people and encourage people to see who is living in their neighborhood. Here is the thing, children see this too. They see the hate slung and memes passed around. So what happens when you are the 14 year old whose mother may be touching you. Do you tell? You know if you do, you and your family will be vilified. You know people will want to kill your mom. That your house will be on this map with a dot over it and so, they can find you. Will your siblings blame you? Will your siblings hate you for it? What happens to your family? To you?

Every Easter, Thanksgiving and Christmas you go to Uncle John and Aunt Jills house with your family to celebrate the holiday. But every time your Uncle John hugs you, he places his hand in a place he shouldnt. Do you tell your dad that his brother is making you uncomfortable? If you do, will Uncle John go on the list that you see on your phone app that points out child molesters? Will they become the talk of the neighborhood on the app? Will your cousins be threatened at school because their house shows up on the list and everyone now knows? I mean, you know what happens because there is a friendless child in your school because their family is on the list. Will your cousins become that friendless child? That teased child? What to do?

We have gone from trying to be there for children and to encourage children to come forward for help and care and to report any kind of abuses to on the other hand, we tell them, but if you do tell, just know your family will be listed on this list for all the public to see and we will make sure everyone knows..forever.

Think back to when you had the thinking of the child you once were, not the thinking of an adult you are now.what would you do? It would seem we have taken public information to a whole new level that actually

AR-00002012

discourages coming forth. You have a child who is being hurt or uncomfortable at the very least and then you lay this public knowledge burden at their feet. Can you imagine that choice?

This whole, register a human family idea seems to be looked at thru the eyes of adults and mostly politicians who want to feel good about themselves for protecting children, which in and of itself is a good thing. People need to be held accountable, but they are so busy seeking lifelong punishment as an answer that they have forgotten to look at it thru the eyes of children, ALL children.

So I object to changes that put even more obstacles in the way for which a person required to register may falter on and thereby risk their chances of being whole again, not to mention going to prison. If people are not given the opportunity to become whole again and to have hope, we are, in fact, increasing the chances of hurting the very children we claim we want to protect. This has to stop. It really needs to stop. Let us start moving society forward by using proven measures that work and stop expanding ones that dont.

Thank you for your time.

**Comment ID**

DOJ-OAG-2020-0003-0572

 **Tracking Number**

1k4-9jh9-9hit

Comment Details                                          Submitter Info

**Received Date**

Oct 12, 2020



About          Bulk Data Download          Agencies          Learn

(/about)          (/bulkdownload)          (/agencies)          (/learn)

Reports          FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)          (/faq)

AR-00002013

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

I OPPOSE changes to SORNA that increase any level of increased registration requirements.

SORNA as well as the State registries are focused on preventing an individual AND their families from moving forward after an event occurred in their life. Individuals with any registry requirement have huge barriers placed on:
Where they can live.
Where they can work.
Where they can go to school.
Where they can go for entertainment.
Where they can practice religious beliefs.
How they communicate online.
How long they can visit locations not identified as their home.
Unique identifiers on such as passports and drivers licenses.
Routinely being singled out, in public forums, for past transgressions.

SORNA has been identified as not punishment, but why if not punishment, does any infraction carry with it severe penalties?

SORNA is not based on empirical data but is based on strumming the emotional strings.

**Comment ID**
DOJ-OAG-2020-0003-0573

 **Tracking Number**
kg7-16r4-t3ln

AR-00002015

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Docket No. OAG 157. Proposed Rule Interpreting Registration Requirements Under SORNA

I tried to read the document outlining the requirements and justification for these changes but as a layperson and not an attorney got lost in the legal jargon. I don't see how an ordinary citizen who is required to register will be able to interpret and follow these updated regulations. I find that frequently the local law enforcement authority does not always know how to interpret the rules at the state level regardless of the federal level.

Although the Supreme Court has ruled that the registry is not punitive and therefore not subject to ex post facto laws, it has become very punitive as the states have piled on additional requirements and uses for the registry. It is very punitive to my spouse who is a registered citizen as well as to me as his spouse. His name and address and other personal information is publicly available on the internet which makes us subject to vigilante action. We have been scorned and derided by neighbors. We live in a duplex and our next door neighbor is having trouble selling her side because she lives next to a sex offender. While I understand the need for a registry for law enforcement purposes, I object to the need to have it be public and online.

The recidivism rate for sex offenders is very low in the range of 5% to 8% which is very low compared to DUI, drugs and crimes against persons and property. These regulations do not allow for any rehabilitation or redemption even when assigned tiers. My spouse served two years on house arrest after release and is now serving out 5 years of probation both on an ankle monitor. He is required to take annual polygraph tests and to attend weekly counseling sessions all at our expense. He is restricted on where he can live and where he can go in the county. He is restricted on the types of jobs he can have . These restrictions put an undue burden on the ability to live a productive life even with rehabilitation. Before his release I had to sell our house and buy another one in order to find a house that met the residency requirements of the state of Florida. It created unnecessary expenses.

The requirement to register in person with no provisions for electronic or phone requirements does not allow for exceptions in case of pandemics, illness or weather related incidents such as hurricanes. And many offices are only located in one place in a county, are only open a few days of the week and put a burden on the registrant for travel and taking off work. This needs to be remedied in these regulations.

AR-00002017

I do not understand the requirement to "register prior to release" if the person does not have all the information available at the time. Recently I have seen three public notices for sexual predators in which the address was the "woods behind Winn Dixie". How is a person supposed to preregister if he does not know which woods he is going to be dropped off at by law enforcement or a parole offices? This is a travesty and the money spend on the onerous regulations would be better spend on providing transition housing and housing for the homeless who are that way because they can't meet residency restrictions because they are on the registry.

Please clarify the punishment of "up to 10 years" for failure to comply with these requirements. Many states who like to ratchet down the rules on sex offenders will use this as a floor and not as a ceiling. This 10 years in many cases is way more than the sentence for the original offence. This needs to be mitigated.

**Comment ID**

DOJ-OAG-2020-0003-0574

 **Tracking Number**

1k4-9jh9-9pou

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 12, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002018

AR-00002019

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)       Share ▾

---

Comment

I would like to comment on these changes. I am a registrant in the state of New York. My 2 grown children reside in northwest Florida. Due to still being on probation, I haven't seen either of them since 2008. I am concerned that after probation is over, and I am registered in New York, how am I supposed to travel to visit them and interpret the federal sorna laws to where I do not end up in trouble? My thing is, they were complicated before these changes may go into effect, why does it have to be even more complicated? I want to follow the law of the land, but I also want to travel in my own country. In my experience serving my country in the Air Force, if you keep simplicity, things go better. Please give it due attention and keep it simple. If you write it to where the rules are you give due diligence to offenders who complete treatment and progress in so iety, i believe you will have less problems. Thank you.

**Comment ID**
DOJ-OAG-2020-0003-0575

◎ **Tracking Number**
1k4-9jh9-x09k

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Oct 12, 2020

AR-00002020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments (724) (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments (724) (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
|---|---|

---

| Comment |
|---|

There were periods in history when there was a commonly held belief that the Earth was flat and it was the center of the universe. This belief started due to a lack of information proving otherwise. These beliefs were eventually refuted due to scientific study and/or exploration. If someone today were to espouse either of those beliefs as truth, they would be dismissed out of hand as an uneducated individual. If the government were to base policy on such disproven notions, they would risk worldwide ridicule and reduced credibility. However, when it comes to the policy arena of sex offenses, it seems that the equivalent theories of a flat Earth at the center of the universe are what drives all decisions. Both SORNA and the proposed rule are based on an antiquated and disproven theory that individuals previously convicted of a sex offense are at a high risk to commit another sex offense. They're also based on an outdated notion that registries reduce sexual recidivism. Numerous government and academic studies have shown both tenets upon which this is built to be false. Individuals who have previously been convicted of a sex offense have among the lowest recidivism rates of any category of crime. Registries have been shown to have no effect on reducing recidivism and may in fact have the opposite effect by serving to destabilize a person's life. One aspect of the rule as I read it is to cast the net wider on timeframes to register by enforcing a federal time period on the registry even if the time period has elapsed per the state guidelines. This ignores research that demonstrates at a point there is no perceptible difference in risk of committing a sex offense when comparing an individual previously convicted of a sex offense to one who has not as time elapses from the original conviction. These rules (and SORNA, IML, etc.) all seem predicated around the idea of a person who cannot control themselves and is constantly on the prowl for victims. While there are no doubt people who fit that description, I would dare say the majority do not. Rulemaking should be based on the latest available data and should be focused on narrowing who is required to register, reducing the timeframes required for registration, and eliminating the myriad reporting requirements/ancillary restrictions which serve only to further punish someone beyond any time they have already served. For example, during the pandemic there have been many agencies that suspended in-person registration. You now have a dataset for comparison. Has recidivism by those previously convicted of a sex offense increased, decreased, or not changed? You have a state (I.e. Michigan) where enforcement of the sex offender registry has been eliminated during the pandemic. Have you seen an increase, decrease, or no change in recidivism? If there's no change or a decrease in recidivism, what's the public safety benefit derived from all the people and money spent to establish and enforce the registry? You have the opportunity to be on the right side of history by using data and facts to drive decisions. Until the rules you propose affecting the lives of over 1 million registrants and countless millions more

friends and family are based on data and evidence, I do not support them. I believe when a data centric approach is taken, the registry will be exposed for the house of cards that it really is.

**Comment ID**

DOJ-OAG-2020-0003-0576

 **Tracking Number**

kg7-1tnz-oua1

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 12, 2020



Your Voice in Federal Decision Making

About
(/about)

Bulk Data Download
(/bulkdownload)

Agencies
(/agencies)

Learn
(/learn)

Reports
(https://resources.regulations.gov/public/component/main?main=Reports)

FAQ
(/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

| Comment |
|---|

Residency restrictions and registration do not improve public safety, prevent the person from re-entering society, and extend the punishment beyond the time that they have served.

In the attached study from the Illinois Sex Offender Task Force you can see the rate of recidivism for sex offenders is lower than any other type of offense. Additionally, the most frequent reasons for a sex offender to have further convictions or recidivism isn't from committing a new sex crime, but rather inadvertently breaking one of the extremely restrictive rules in place for them.

This new regulation would toss people back into the system due to it's punitive, retroactive registration requirements. These are people who have not reoffended in all this time of not keeping track of them because it wasn't required.

It would also mean people who, in some states currently only have to register once every year and do so without ever reoffending or being a danger to anyone, would now have to report for registration multiple times a year. These are people who have to go to jobs so they can pay for living expenses and housing, adding further appointments for registration could cause people to lose the only thing that allows them to be part of a community. Many states require residents without fixed addresses to register every week, and if you miss that registration you are considered non-compliant and subject to arrest. How is someone supposed to get a job to support themselves when one out of 5 business days needs to be spent waiting outside of a criminal registration office?

Aside from the issues above, most sex offenders who have been compliant and not reoffended for over a decade are unable to age off of the registration. This will just cause the list to become unmanageably long for local police departments to keep up with, already police departments have issues with people who lack personal ids or fixed addresses. Continuing to add to the registration while only letting juvenile or specific types of offenders off seems like a cop out, instead we should allow all offenders show that they have made personal improvement, and give them opportunity to be evaluated periodically for release from this quasi-extra-judicial punishment.

AR-00002024

And finally, a majority of sex offenders come from abusive backgrounds and have PTSD or or other psychological disorders. This is trauma that has happened far prior to ever going to prison, and prison itself is a traumatic experience for everyone who lives through it. Making sex offenders follow such a restrictive, punitive regulation after serving their time will cause further anxiety and pain in all those who are subjected to it. Wouldn't it make more sense to professionally treat the trauma and psychological distress rather than add to it? People who are treated like human beings are going to be more useful in society. Functional, healthy minds will generate more income, this means they can contribute to the economic growth of the country and pay more taxes, and that is better for everybody!

Attachments  1

SOTF_report_final_12292017

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0577/attachment_1.pdf)

**Comment ID**

DOJ-OAG-2020-0003-0577

**Tracking Number**

1k4-9jh9-q2k0

**Comment Details**                              **Submitter Info**

**Received Date**

Oct 12, 2020





Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

My husband has to jump through so many hoops to get a decent job. A job paying a decent amount is next to impossible, despite his offense being over 20 years ago. He has successfully completed both probation and treatment, and in 5 years, he will be off the registry in our state. We are desperately hoping this will increase his chances to climb the ladder at work, and a federal registry will undo all the work we have done the last 10 years. We are tired of barely scraping by. He has completed his sentence, and despite what the Supreme Court may think, prolonging his time on the registry is absolutely further punishment.

**Comment ID**
DOJ-OAG-2020-0003-0578

**Tracking Number**
kg7-25re-txxy

**Comment Details**                          **Submitter Info**

**Received Date**
Oct 12, 2020



About Bulk Data Download Agencies Learn
(/about) (/bulkdownload) (/agencies) (/learn)

Reports FAQ
(https://resources.regulations.gov/public/component/main?main=Reports) (/faq)

Privacy & Security Notice (/privacy-notice) | User Notice (/user-notice) |
Accessibility Statement (/accessibility) | Developers (https://open.gsa.gov/api/regulationsgov/) |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support) Provide Site Feedback

AR-00002028

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

---

Comment

There is absolutely no data or research to support having any kind of registry. In fact, it makes people less safe
because the registry is so bloated with folks who are not a risk at all. This not only harms the register and some
selves, but their families. It puts the entire family on the registry especially children who go to school with parents
on the registry. They are ostracized, bullied, and put down once the other families find that this childs family is on
the registry. My son had a very hard time trying to find a place to live due to this registry. No apartments will let
them live there, no house rentals through an agency will let them rent. This is very destabilizing for the
registrants. The registry also makes it very difficult to find a job that will accept them.
Again there is no research nor data to support having any kind of registry. In fact there is research and data to
support not having a registry.

**Comment ID**
DOJ-OAG-2020-0003-0579

**Tracking Number**
1k4-9jh9-q83x

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Oct 12, 2020

AR-00002029



About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002030

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments | 724 | (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments | 724 | (/docket/DOJ-OAG-2020-0003/comments) |

Share ▾

---

Comment

Section 72.5-How long Must Sex Offenders Register.
Since 2005 I have registered.
In Illinois there is no TIERS Classification.
Scientific evidence does not agree that I should continue to be labeled in a class of dangerous predator as one disconnected & disrespectful of boundaries! Having no record or history of hunting or stalking in any abusive manners-before the charges or since!!
There is no sound reasoning for having to be classified as a dangerous predator!
This continues to restrict my economic,housing,and simply standard & quality of life.
As one who has served my Community as an Educator & Clergyman this has too long punished me unrighteously.

**Comment ID**

DOJ-OAG-2020-0003-0580

 **Tracking Number**

1k4-9jha-mi6q

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 12, 2020

AR-00002031



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

I'm honestly not even sure where to begin, on how wrong headed this is.

I guess I'll start with...how can you just change the rules after the game has been played?

My husband took a plea agreement to a misdemeanor of Indecent Assault in 2009.
He did so after a hung- jury trial. He AGREED to 10 years on the registry....not Lifetime.

Since then his registration period was switched to Life and then back to 10 years because my state declared it unconstitutional.
And now he's off the registry, AS HE SHOULD BE!!!
He made an Agreement!
Seems to me, it's a breach of contract to change it.
I mean, if he'd have known that Lifetime on the registry was the option, he would have went for the re- trial.
We all know people plead guilty to things they didn't do.
I'll leave it at that.

Also, the registry doesn't just affect him.
It affects my whole family.
We have been harassed, including my children, and our property damaged, and jobs lost due to the registry.
I fear being made homeless. I fear vigilantes trying to hurt us.
I'm a childhood sexual assault survivor, and dealing with the registry has been far harder to deal with than ANY of the abuse I've suffered as a child.

I respectfully ask you to reconsider, or at least " grandfather in" those who made plea agreements and are off the registry.

Thank you for your time

AR-00002033

**Comment ID**

DOJ-OAG-2020-0003-0581

 **Tracking Number**

1k4-9jhb-7mew

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020



About   Bulk Data Download   Agencies   Learn

(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I would like to say that labeling anyone for anything makes it almost impossible for that person to change, grow, move on. Prison is the punishment. SORNA is beyond the sentence. Why don't we have registry for anyone who has served time? Do you want to know if your neighbor is a thief? The boy you your daughter is dating could have stolen cars or was a drug dealer. Wouldn't you like to know that? For some reason we're celebrating anyone who has changed their life for the better, unless you have some kind of sex offender past. There are young men who went looking for porn and ended up with CP by accident. Now they are in prison and will have to face the prospect of looking for a job or finding a place to live with a PO having the power to say yes or no. It's time to move past punishment and support change and growth.

**Comment ID**

DOJ-OAG-2020-0003-0582

 **Tracking Number**

1k4-9jhb-8fq0

**Comment Details**                    **Submitter Info**

**Received Date**

Oct 12, 2020

AR-00002035



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002036

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Everyone agrees that laws should be in place to keep society safe but does the sex offender registry actually do this? The reality is that most sex crimes are committed by people that are not currently on the registry but by family and friends of the victims. Ex-offenders are statistically less likely to commit sex crimes hence making the registry ineffectual. To enforce the registry on the population that is least likely to commit the offence is inhumane and futile in it's supposed purpose of keeping society safe.

The sex offender registry not only impacts those that register but families are separated, isolated, humiliated, and are shunned from society. This makes it unfeasible for ex-offenders and their loved ones to live and function in the community. It's a punishment without an end that affects so many and simply does not work.

**Comment ID**
DOJ-OAG-2020-0003-0583

**Tracking Number**
kg7-87zt-b8vz

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**
Oct 12, 2020

AR-00002037



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

To the U.S. Department of Justice

On behalf of my husband and myself, hello, our names are Shawn and Jennifer Palmiter. As of October 28, 2020, it will be twenty years that my husband and I have been together, and in May of next year will celebrate our 18th anniversary. On our first date Shawn, told me upfront about his conviction, as he knew how important it was, considering I had two children from my previous marriage. Shawn explained that he was released from prison in February and that he would be on parole until February of 2003, and that he was unable to be involved with my children until that time.

During the next 26 months, our relationship involved dates and time together when my children were with their biological father or my parents. It is important to note that Shawn felt strongly about explaining his situation to both my parents and my brother right from the start of our relationship. My parents and brother quickly excepted Shawn, his past, and our relationship.

I told my children about Shawn; I shared he had been in trouble with the law and that they would not meet him until it was okay legally. As time passed, Shawn and I fell in love, and Shawn proposed to me; I said yes, contingent on if my children liked him. I had made a promise to myself for the sake of my children that if I ever remarried, they would have to like the person. So, on February 23, 2003, Shawn's parole ended, and it was time for him to meet my children. To say my children liked Shawn is an understatement they quickly began to love him. From the beginning, I believe that the reason the children quickly grew to love Shawn is that he was becoming the Dad that my ex-husband refused to be to them. I feel a significant point to make about my husband is that he took responsibility for my children and, in 2008, was allowed legally adopted them.

I know my comment is long, and your time in this manner is very appreciated by the two of us. However, it's so important that the individuals, who will make life-changing decisions with this case, understand that there are many good, decent, loving individuals on the registry that made a mistake, served their time, and becomes an upstanding citizen. Shawn, my husband and father to our children, is one of those individuals.

Shawn was released from prison 20 years and 7 ½ months ago and has accomplished many things that I want to highlight. The first thing is Shawn has always had a job one job he held for 11 years from 2002 to 2013, and he has kept his current position for the last seven years. Shawn currently works in tooling and is within months of getting his journeyman in toolmaking;

AR-00002039

this has required several college courses, which he carried a 4.0 GPA, and thousands of hours of on the job training. Next, besides a speeding ticket and an accident, he was found not at fault; Shawn has had no law enforcement issues. Shawn has stayed compliant with his registration duties and has never missed a verification period. Lastly, as already mentioned, Shawn legally adopted my children when their biological father did not want to fulfill his obligations and has been a partner and friend for the last twenty years.

Shawn was released from prison 20 years and 7 ½ months ago and has accomplished many things that I want to highlight. The first thing is Shawn has always had a job one job he held for 11 years from 2002 to 2013, and he has kept his current position for the last seven years. Shawn currently works in tooling and is within months of getting his journeyman in toolmaking; this has required several college courses, which he carried a 4.0 GPA, and thousands of hours of on the job training. Next, besides a speeding ticket and an accident, he was found not at fault; Shawn has had no law enforcement issues. Shawn has stayed compliant with his registration duties and has never missed a verification period. Lastly, as already mentioned, Shawn legally adopted my children when their biological father did not want to fulfill his obligations and has been a partner and friend for the last twenty years.

My husband has proven that he is a decent person for over twenty years and poses no threat to our society. Shawn was 16 when he was initially arrested and just 18 when he went to prison.  Because Shawn's conviction is with an individual younger than 12, he is currently considered the worst of the worst of offenders and must register for the rest of his life. Yet, Shawn has done everything to prove he could change his path in life; he is not that 16-year-old kid that made a huge mistake but is a highly productive citizen who follows the rules, pays his taxes, and is a dedicated husband and father. Shawn is a person who deserves the chance to be released from the registry.

Shawn and I respectfully ask that the lifetime registration requirements be abolished. We ask that a person's current path in life and their accomplishments be considered for a chance to be removed from the registry. Lastly, we ask that this comment and the countless others be seriously considered. We are a law-abiding couple, who deserve the chance to move past a conviction from so long ago, that no longer defines who this person has become.
Thank you again for your time and consideration in this matter.

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments ⟨724⟩ (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments ⟨724⟩ (/docket/DOJ-OAG-2020-0003/comments) | Share ⏷ |
|---|---|

---

Comment

SORNA represents the enormous and serious failure of all Sex Offender Registries to protect the public, provide reintegration to those who have offended and paid their debt to society, and enable reconciliation within any community. It ensures only a lifetime of labels, punishment, and banishment for the formerly incarcerated which causes very real harm and wastes resources. Homelessness, joblessness, and vigilantism are the results of SORNA laws, not public protection.

All Sex Offender registries need to be abolished.

Based on a false fear of inevitable reoffense (The frightening and high myth has long ago been conclusively debunked.) and unnecessary panic over the worst and rarest crimes committed by strangers, society has long dehumanized people forced to register.

It is no more acceptable to refer to a person who has committed a sexual offense as a monster as it is to refer to a Black American and 3/5ths human or a Native American as a savage. Each slur attempts to strip humans of humanity to justify mistreatment by those in power.

Facts and logic are needed to protect the public from sexual abuse. Well researched statistics show that over 95% of sex offenses are committed by someone not on the registry, and over 90% of offenders, both adolescents and adults, are family members, friends or well-known to the family.

People on the sex offender registry have the lowest recidivism rates compared to domestic violence, battery, drug offenses, theft, robbery, DUI, and assault. The only crime with a lower recidivism rate is murder. Research studies have also found no relationship between having a registry and a decrease in sex offenses.

I have been in a committed relationship with my significant other for over seven years and fear for what our lives will be when he is released from prison, presumably next year. This is solely due to SORNA and sex offense registry requirements. He has been thoroughly and publicly shamed, repeatedly and severely punished, completed multiple therapies and group counseling, but also has an unblemished record of service, success,

AR-00002041

and sacrifice both before and after his crime.

Nevertheless, due to the draconian and overly punitive laws, erroneous presumption of reoffense, and inhumane assumptions about his personhood, he will be labelled and limited so much so that work, housing, travel, and all basic liberties will be seriously challenged. I will suffer with him. His family will suffer. Taxpayers will pay for these unnecessary and unfair consequences. Law enforcement agencies will spend unwarranted time on his compliance.

And not a single person will be saved from harm because of these extreme measures.

No expansion or altering of SORNA will move society ahead. It must be completely dismantled.

In its place should be well researched preventative measures along with support to heal victims, those who have commited a crime, and the communities where they live.

**Comment ID**

DOJ-OAG-2020-0003-0585

 **Tracking Number**

1k4-9jhe-a6x4

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 12, 2020



AR-00002042

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)    Share ▾

---

Comment

Dear sirs,

What is the objective here?!?!!. As a retired schoolteacher, that was always the question! As a mother of a young man who was drunk & made a grave mistake 15 years ago, who felt such remorse that he took a sex offender plea, served time in jail, did the required counseling, plus additional counseling to process it all, quit drinking alcohol, got back involved in church, married, & has two children, I am pleading with you to consider my thoughts.

After reading this, I feel very discouraged, it's like you want my son & all the other sex offenders who are trying their best & succeeding to be be good citizens, to FAIL!
I always thought that our objective of the penal system was to get people to be productive members of our society. No one will hire him, he cannot attend most school functions, take his children to theme parks, go on vacation or even go overnight to the beach with them! Murderers & definitely not looters, are not treated anything nearly as bad as 'sex offenders.' By doing this you're saying they're for certain going to repeat, yet statistics show the recidivism rate is between 3.5-4%!

I know that I am just an ordinary citizen, but I come to you humbly & ask that you consider making a tier system, taking into consideration the number of years that someone has been a clean, productive, & a tax-paying citizen.
- after 10 years - go off the registry, still be a felon, sexual offender, report to their county once a year.
- after 15 years - off registry, still a felon, sex offender, report any change of address & report at the end of 15 years.
- after 20 years - go to court, off registry, expunge felon & sex offender charges.
Consequences for violating again would be 5 years in prison
(I'm not a lawyer, but I don't know why we need so many, many words)

The late Justice Ruth Bader Ginsburg wrote:
Yet buried in the infamous decision of the U.S. Supreme Court, Smith v. Doe, Ginsburg spoke clearly about her understanding of registrants and the challenges they face in her dissent to that decision.
Although a majority of her colleagues determined that the sex offender laws in the state of Alaska were not

AR-00002044

punitive and could therefore be applied retroactively, Ginsburg strongly disagreed and determined that those laws were excessive in relation to their alleged nonpunitive purpose.

Ginsburg accurately saw and reported that Alaska's sex offender laws imposed "onerous and intrusive obligations on convicted sex offenders." She went on to report that those laws expose "registrants, through aggressive public notification of their crimes, to profound humiliation and community-wide ostracism." Ginsburg added that the laws "resemble historically common forms of punishment" and called to mind "shaming punishments once used to mark an offender as someone to be shunned."

Also, in her dissent, Ginsburg noted that the Alaska laws applied to registrants, without regard to their current or future risk to public safety. She further noted that the duration of the state's reporting requirements was not keyed to "any determination of a particular offender's risk of reoffending, but to whether the offense of conviction was aggravated."

And according to Ginsburg, the reporting requirements in the Alaska laws did not reflect the possibility that registrants are capable of rehabilitation. Specifically, she stated that "(h)owever plain it may be that a former sex offender currently poses no threat of recidivism, he will remain subject to long-term monitoring and inescapable humiliation."

I have watched my son bend over backwards trying to follow all of your laws! & you keep adding more! Why? Again; What is your objective?

Because of this registry, you are making my son & his family & others like him, victims for the rest of their lives 

---

**Comment ID**

DOJ-OAG-2020-0003-0586

---

 **Tracking Number**

kg7-c1xa-27gu

---

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 12, 2020



About   Bulk Data Download     Agencies    Learn
(/about)         (/bulkdownload)   (/agencies)  (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

October 12, 2020

Hon. William Barr
Attorney General, United States of America
Attn: Regulations Docket Clerk
Office of Legal Policy
US Department of Justice
950 Pennsylvania Ave, NW, Room 4234
Washington, DC 20530

Re: Docket No. OAG 157
SORNA Regulations

Dear Attorney General Barr,

My name is Kirsten Darby and I am a concerned citizen in the Commonwealth of Virginia, a state largely compliant with SORNA regulations much to the detriment of both registrants and society in general. SORNA creates a false sense of security since very few registrants repeat sexual crimes of any type and most sexual offenses are committed by family members or trusted friends not on the registry. The registry also takes much needed resources from education, mental health services, appropriate law enforcement and other measures which are immeasurably more effective in preventing sexual harm than the punitive and unnecessary SORNA regulations. Society in general is negatively affected in that collateral consequences such as housing instability and lack of job opportunities created by the registry cause harm not only to registrants, but to the overall economy and stability in communities.

As a retired public school teacher of over 30 years, I have dedicated my life to improving the lives of young children and care deeply about their safety. SORNA does nothing to benefit or protect children and actually harms many of them, especially children of registrants whose parents are unable to fully participate in their lives and face bullying and intimidation.

SORNA is a failed, costly (in many ways) experiment based on fear mongering and punishment, not on research

AR-00002047

or data. Recidivism of sexual crimes or sexual crimes in general have not been affected by SORNA since its inception and no changes to the registration will change those facts. Nothing short of complete abolition of SORNA will free up necessary resources so that we as a society can focus on prevention of sexual harm and promote restoration and rehabilitation of both those harmed and those who cause harm.

Thank you,
Kirsten Darby
Virginia

---

**Comment ID**

DOJ-OAG-2020-0003-0587

---

 **Tracking Number**

1k4-9jhe-5nbs

---

**Comment Details**          **Submitter Info**

**Received Date**

Oct 12, 2020

---



About          Bulk Data Download          Agencies          Learn

(/about)          (/bulkdownload)          (/agencies)          (/learn)

Reports          FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)          (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002048

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  ⟨724⟩ (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  ⟨724⟩ (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

---

Comment

As a wife of a registrant , these laws that you already have in place are extremely Draconian, Puritan, Byzantine and Nazistic. In my response to you expanding sorna? I am in total opposition and totally opposed to you expanding, rearranging any wording of the constitutional laws to expand SORNA that is only effective as far as collecting revenue and ruining people's lives. My husband has 20 years of credentials of his conduct to prove without a doubt that people convicted of sex offenses are the lowest to reoffend 3.5% within three years and that came from your own source Department of Justice. There are people waking up to your laws and how they were designed to track monitor the very worst and rare criminal acts ever committed but you know those people would never get out a prison. People I'm talking about Ted Bundy, John Wayne Gacy, Etc. If you took away the 95% that are majorly nonviolent, statutory, first time offenses, then, you would be able to track the 5% that may actually pose a high risk to reoffend . That's what registry should be! Just ask Patty wetterling what she thinks about the registry now, how it's so over-bloated with about 1/3 are children, some as young as nine years old. Don't tell me anything about saving the children or#me too. In this system, these laws affect American families who are already experiencing social dysfunction in their Circle and they become entangled into your statutory will web and become even more dysfunctional and then they become mislabeled into something into a monster something that you and the media contributed to creating. And then the great lie of high recidivism thanks to dr. Robert Longo, a famous sex the rapist designed to treat offenders claiming that he has the best therapeutical Clockwork Orange program that has high success rates, as an upsell to his product like McDonald's selling a Happy Meal. And then you have Barbara Swartz from the Department of Justice said she couldn't find any data anywhere and, "just, made up a model" of the reoffense statistics of sex offenders without any, Actuarial statistical validity. Let's get this out in the open okay so that everybody knows that, the reason these unconstitutional laws are being held up is because scotus cited these two people. That is totally incompetent and very unjust. And the label "sex offenders"? Its a great political , final product to legislate to the masses and ultimate Cash Cow, right? I get it. And the public loves it. Meanwhile you're creating more and more victims and more unconstitutional collateral consequences that socially, doesn't work. Stop ignoring the social science. Over 95% of sex crimes committed today are, not, from a person on the registry. So, like I said at best your system is only 5% effective, is that that's because you're ruining the lives of dysfunctional people and you have a chance to turn them around but you want to place a label on them a label of Shame to represent the ones who are actually brutally murdered. The Scarlet, right? You need to stop with these laws. You need to stop victimizing people who you know are changing and you don't like them because you're not like them. Maybe you weren't

AR-00002049

abused as a child? Do you hear what I'm saying? The pattern of hurting began generations and generations before. Sexual Offense laws are supposed to be designed to stop victimizing not expanding on the victimization of every man woman and child of the American Family unit. Victims come in all shapes and sizes and they all need to be heard and addressed and most importantly to be allowed the constitutional space to heal. To move on in a productive, healthy law abiding way in pursuit of happiness.

Again, I am opposed to SORNA expansions, in all of its entirety because it creates victims. It doesn't save the children it doesn't, save one child. Only a mass-marketed scheme in the form of a moral panic.

Shay

Victims Against the Registry

**Comment ID**

DOJ-OAG-2020-0003-0588

 **Tracking Number**

1k4-9jhe-47c5

**Comment Details**                                        **Submitter Info**

**Received Date**

Oct 12, 2020



About          Bulk Data Download          Agencies          Learn

(/about)          (/bulkdownload)          (/agencies)          (/learn)

Reports          FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)          (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002050

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

As of 15 years of parole supervision wasn't enough now this totally unnecessary
And unconstitutional, just because I viewed something online

---

**Comment ID**

DOJ-OAG-2020-0003-0589

---

 **Tracking Number**

1k4-9jhe-wnrj

---

| **Comment Details** | **Submitter Info** |
| --- | --- |

**Received Date**

Oct 12, 2020



AR-00002051

About   Bulk Data Download      Agencies     Learn
(/about)        (/bulkdownload)   (/agencies)  (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002052

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

October 12, 2020

Hon. William Barr
Attorney General, United States of America
Attn: Regulations Docket Clerk
Office of Legal Policy
US Department of Justice
950 Pennsylvania Ave, NW, Room 4234
Washington, DC 20530

Re: Docket No. OAG 157
SORNA Regulations

Dear Attorney General Barr,

My name is Kirsten Darby and I am the Director of Communications for the Just Future Project, a grassroots organization committed to ending pre-crime preventative detention. Much like pre-crime preventative detention schemes, SORNA is a failed, costly (in many ways) experiment based on fear mongering and punishment, not on research or data. Recidivism of sexual crimes or sexual crimes in general have not been affected by SORNA since its inception and no changes to the registration will change those facts.
SORNA creates a false sense of security since very few registrants repeat sexual crimes of any type and most sexual offenses are committed by family members or trusted friends not on the registry. The registry also takes much needed resources from education, mental health services, appropriate law enforcement and other measures which are immeasurably more effective in preventing sexual harm than the punitive and unnecessary SORNA regulations. Society in general is negatively affected in that collateral consequences such as housing instability and lack of job opportunities created by the registry cause harm not only to registrants, but to the overall economy and stability in communities. SORNA does nothing to benefit or protect children and actually harms many of them, especially children of registrants whose parents are unable to fully participate in their lives and face bullying and intimidation.

AR-00002053

Nothing short of complete abolition of SORNA will free up necessary resources so that we as a society can focus on prevention of sexual harm and promote restoration and rehabilitation of both those harmed and those who cause harm.

Thank you,
Kirsten Darby
Communications Director
Just Future Project
www.ajustfuture.org

**Comment ID**

DOJ-OAG-2020-0003-0590

 **Tracking Number**

1k4-9jhe-jhgy

**Comment Details** | **Submitter Info**

**Received Date**

Oct 12, 2020



About      Bulk Data Download       Agencies       Learn

(/about)          (/bulkdownload)    (/agencies)    (/learn)

Reports       FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments ⟨724⟩ (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ⟨724⟩ (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

As a wife of a registrant , these laws that you already have in place are extremely Draconian, Puritan, Byzantine and Nazistic. In my response to you expanding sorna? I am in total opposition and totally opposed to you expanding, rearranging any wording of the constitutional laws to expand SORNA that is only effective as far as collecting revenue and ruining people's lives. My husband has 20 years of credentials of his conduct to prove without a doubt that people convicted of sex offenses are the lowest to reoffend 3.5% within three years and that came from your own source Department of Justice. There are people waking up to your laws and how they were designed to track monitor the very worst and rare criminal acts ever committed but you know those people would never get out a prison. People I'm talking about Ted Bundy, John Wayne Gacy, Etc. If you took away the 95% that are majorly nonviolent, statutory, first time offenses, then, you would be able to track the 5% that may actually pose a high risk to reoffend . That's what registry should be! Just ask Patty wetterling what she thinks about the registry now, how it's so over-bloated with about 1/3 are children, some as young as nine years old. Don't tell me anything about saving the children or#me too. In this system, these laws affect American families who are already experiencing social dysfunction in their Circle and they become entangled into your statutory will web and become even more dysfunctional and then they become mislabeled into something into a monster something that you and the media contributed to creating. And then the great lie of high recidivism thanks to dr. Robert Longo, a famous sex the rapist designed to treat offenders claiming that he has the best therapeutical Clockwork Orange program that has high success rates, as an upsell to his product like McDonald's selling a Happy Meal. And then you have Barbara Swartz from the Department of Justice said she couldn't find any data anywhere and, "just, made up a model" of the reoffense statistics of sex offenders without any, Actuarial statistical validity. Let's get this out in the open okay so that everybody knows that, the reason these unconstitutional laws are being held up is because scotus cited these two people. That is totally incompetent and very unjust. And the label "sex offenders"? Its a great political , final product to legislate to the masses and ultimate Cash Cow, right? I get it. And the public loves it. Meanwhile you're creating more and more victims and more unconstitutional collateral consequences that socially, doesn't work. Stop ignoring the social science. Over 95% of sex crimes committed today are, not, from a person on the registry. So, like I said at best your system is only 5% effective, is that that's because you're ruining the lives of dysfunctional people and you have a chance to turn them around but you want to place a label on them a label of Shame to represent the ones who are actually brutally murdered. The Scarlet, right? You need to stop with these laws. You need to stop victimizing people who you know are changing and you don't like them because you're not like them. Maybe you weren't

abused as a child? Do you hear what I'm saying? The pattern of hurting began generations and generations before. Sexual Offense laws are supposed to be designed to stop victimizing not expanding on the victimization of every man woman and child of the American Family unit. Victims come in all shapes and sizes and they all need to be heard and addressed and most importantly to be allowed the constitutional space to heal. To move on in a productive, healthy law abiding way in pursuit of happiness.

Again, I am opposed to SORNA expansions, in all of its entirety because it creates victims. It doesn't save the children it doesn't, save one child. Only a mass-marketed scheme in the form of a moral panic.

Shay

Victims Against the Registry

**Comment ID**

DOJ-OAG-2020-0003-0591

 **Tracking Number**

kg7-dm0o-q8np

**Comment Details**

**Received Date**

Oct 12, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002056

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments)   | Share ⌄

---

Comment

I am a Utah representative for NARSOL (National Association for Rational Sexual Offense Laws), a member of WAR ( Women Against the Registry) a victim advocate, public educational, support and national, networking group with VAR ( Victims Against the Registry) and registrant.

Throughout my whole experience into the criminal justice system and being on the registry. I am identified by a single crime, I committed almost 20 years ago. This administration provides no information about me as a person, only a picture, and a statutorial title. It tells nothing about me being held accountable, and taking responsibility for my actions completely. I have completed all of my commitments with the Department of Corrections, termination of sentence with no violations, ever! It conceals information from the public of my acutal achievements, conduct and transformations after completion of my commitments with the Department of Corrections e.g., being a law abiding American citizen out in the community for 15 years being compliant, accountable, and with no criminal violations, at all. It gives no perspective into my personal history that I came from a very disfunctional home, experienced physical, and sexual abuse as a child up until my teens without assessment and without treatment. Finally, the registry places me in a homogeneous group of people that the public sees as the same, which I feel is a dangerous myth. The registry only provides a picture, with a statutorial title of past conduct. I am not viewed as a person but a mythical monster. My victim, and her family are surprised, and appalled that I am still on this registry.Throughout this whole process, I have experienced harassment,vigilantism, scam callers, vandalism, mail fraud by law enforcement and all kinds of stigmatic labeling. I feel like my reward for good behavior is met with "civil regulatory" punishments. As a victim advocate, I believe nobody has a right to violate another person in any way, and should be held accountable. I feel these policies are preventing me from reintegrating into a completely reformed person. I strongly advise totally abolishing the registry in all of its entirety, at least return the registry back to a non- public law enforcement only, minimal system would be better served and restore all liberties back to registrants. All the social science points that this regime saves no child. What kind of system that claims to protect the public and children also puts children and documented non violent adults on a registry? The registry was originally designed to monitor the very rare and brutal criminals like ; Ted Bundy , John Wayne Gacy, etc. but none of them would ever be on the registry. Over 95% of crimes committed today are by persons NOT on the sex offender registry. The majority are for first time (like me) non-violent and statuatorial offenses. Over 95% of victims know there assailant so the 'stranger danger" is a very rare situation, It is a myth not some epidemic. We have been in a sex (moral)panic

AR-00002057

that spans almost 100 years. Under this system nobody heals and the collateral consequences keep piling up on all sides of this issue. How much more deprivation of liberty is it going to take when you realize to scrap, remove this overbloated, useless registry, when someone you care about is finally, labeled, a registered "sex offender"? I will continue educating the public offering support to victims and ex-offenders. No registry can keep the public safe. Nazi Germany tried it with the jews. J. Edgar Hoover tried it with the "sex deviants" program targeting communists and LGBTQ people after finally suppressing and scrapping it in the 1970's. Registering the Japanese in the internment camps, etc. An endless, unpaid debt after a debt to society has been paid, no matter the conduct or reparations, forever. A misrepresentation, a false label so the 5% that might be dangerous get to hide.

I feel trapped, like I can't breathe, in this social distance, stigma regime.

Sincerely,

Jeff Miller
Utah NARSOL
Victims advocate

**Comment ID**

DOJ-OAG-2020-0003-0592

 **Tracking Number**

kg7-dt4x-jyrm

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 12, 2020



Your Voice in Federal Decision Making

About        Bulk Data Download        Agencies        Learn

(/about)            (/bulkdownload)        (/agencies)    (/learn)

Reports      FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

AR-00002058



Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  (724)  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  (724)  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

This comment relates to the Registration Requirements under the sex offender registration and notification act as noted on the first page of the Federal Register notice originally posted on August 12, 2020.

As a Criminal Justice major at Purdue University Fort Wayne, I take great interest in the criminal justice system and the methods of deterrence and punishment that are handed out by the courts in response to criminal convictions.

The proposed actions relating to correcting the definitions of all terms to coincide with the meaning throughout the registration guidelines is something I believe should be done, however I disagree with certain time constraints placed upon offenders upon their release from incarceration. Specifically, the notion that they are required to be registered with a place of residence within three days of being released. This can be an extremely difficult task for offenders especially with the stigma that is prevalent in society. Temporary housing can be difficult to find with the lack of economic stability and/or familial or social support.

Furthermore, the requirement to update your location information every time you change residences is also problematic for the same reasons that is, that permanent residence is hard to find and with a constantly changing residence for some this requirement would lead them to either not update their information and face possible future punishment, or be constantly making in person appearances at the location of the register another requirement of registration.

In order to ease the burden on both the system and the offender I would suggest that registration be extended to at minimum five days after being released from incarceration. This give the offender much more needed time to find a place of residence. I would also recommend that there be a time added in which the offender must find a permanent place of residence. This would decrease the burden on the system with constant changes and the offender with the need to constantly make an in-person appearance to update residence information. Finally, until the date of requirement for permanent residence I would recommend that the register require only the first residence of the offender upon their release.

My request is that the requirement for offender registration in person is extended to at minimum a five-day period as opposed to the suggested three. Secondly, that there should be a requirement for a permanent residence if

AR-00002060

the registered residence is a temporary one. Finally that the first place of residence of the offender be required for registry until permanent residence can be acquired.

**Comment ID**

DOJ-OAG-2020-0003-0593

 **Tracking Number**

1k4-9jhf-zx8d

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020



Your Voice in Federal Decision Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002061

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

---

Comment

I am married to a RSO. We have been together for 10 years. Our life has been a rollercoaster due to the registry. We have been threatened multiple times, I was personally threatened by a neighbor with her fist. I lost my business because my husband is on a public website. My husband has had extreme difficulty finding a job. We don't travel. We are constantly looking over our shoulders at who may be targeting us. You must consider what this kind of regulation holds for the families of sex offenders and not just the offender themself. This is stressful, causes fear, anger, and depression for wives, children, mothers, fathers and many others who are connected to the offender. You don't just sentence the individual but their families too!

**Comment ID**
DOJ-OAG-2020-0003-0594

◎ **Tracking Number**
kg7-fl96-g9on

**Comment Details**                                    **Submitter Info**

**Received Date**
Oct 12, 2020

AR-00002062



About   Bulk Data Download      Agencies    Learn
(/about)      (/bulkdownload)   (/agencies)   (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002063

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

It is astonishing that the federal government continues to push for the expansion or rules and requirements regarding the registration for sex offenders, rather than admitting that the whole thing was misguided, a mistake, and should be done away with entirely. The registry was created out of fear and politics and based in false information originating from a 1950s article in, I believe, Reader's Digest, in which an offhand comment made by the author, with zero supporting evidence, suggested that sex offenders were not rehabilitatable. That idea has been disproven time and again by sociologists; in addition, it also has been proven time and again that the registry does nothing to improve public safety. This is common knowledge in the disciplines of sociology and criminology, and is borne out by study after study. It would be nice if the federal government did its homework and based policy in facts. In addition, sociology and criminology studies illustrate that the only thing the registry does is harm registrants' families and their children, as well as make it difficult, if not impossible, for registrants and their families to find housing and work. The registry therefore contributes to not only the overcrowding of prisons and the ever-expanding incarceration of the general public, but it also contributes to homelessness and a loss of a tax base on the part of the state. My husband is on the registry for a contactless offense and the only thing that has come of it is that my children have been socially isolated for most of their lives. They are not invited to birthdays and playdates, and have never been able to have their own friends and own birthday parties. They have paid, and continue to pay, because of the registry, for the sins of the father since they were babies: they are real victims of this system. Murderers are not on a registry; people who commit violent armed assaults are not on a registry. The only reason the registry exists for sex offenders is because of the misconception that sex offenders cannot be rehabilitated and subsequent public hysteria stemming from this piece of misinformation in 1990s when prisons were being expanded. The registry ensures that no sex offender can ever return to a normal life and therefore there is no way the offender can ever pay society back for the crime and be reintegrated, which is the whole point of the justice system. It constitutes significant ongoing punishment beyond the actual sentence and is therefore a form of cruel and unusual punishment.

| Comment ID |
| --- |
| DOJ-OAG-2020-0003-0595 |

AR-00002064



**Tracking Number**

kg7-fmzy-0ws6

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 12, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)   Share ▾

Comment

I strongly oppose SOR making a convicted offender register to the Federal Registry. When someone pays their dues and doesn't repeat their offense, why should they have a lifelong sentence. People who make mistakes should be able to put their lives back together just like any other people who has convicted a crime. How does this serve the prevention of sex crimes in our country, when you take away their second chance at rebuilding their life.

**Comment ID**

DOJ-OAG-2020-0003-0596

 **Tracking Number**

1k4-9jhg-axji

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020

AR-00002066



*Your Voice in Federal Decision Making*

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

S. Denniston, Ph.D.,
Juvenile Advocate & Policy Consultant

**Comments on the Proposed Rule Regarding Registration Requirements Under the Sex Offender Registration and Notification Act**

**Substantive Issue:**

### Section 72.3 – Applicability of the Sex Offender Registration and Notification Act, p. 49335 & 49353

The overview justifying the reasons for changes to the guideline fails to consider more current legal decisions regarding the unconstitutionality of ex-post-facto application of state law substantially implementing SORNA. For example, *Does* #1-5 *v*. *Snyder*, 834 F.3d 696 (*6th Cir*. 2016).

**Further, a test of the unconstitutionality of the retroactive application of SORNA as it specifically relates to juvenile offenders should be very different than that of adult offenders, as deference must be given to the developmental nature of juveniles, and the tenants of our juvenile justice system.**

In addition, significantly more research has been done in recent years related to juvenile registration and juveniles with sexual behavior issues, indicating:

1) Registration policy requiring registration of juveniles with sexual behavior issues lacks efficacy (Letourneau, et al., 2013)

2) Registration causes harm to juveniles with sexual behavior issues (Denniston, 2016; Harris et al., 2015; Letourneau et al., 2018; Letourneau et al., 2019), and

3) Recidivism rates of juveniles with sexual behavior issues is very low (less than 3% in a very large meta-analytic study (Caldwell, 2016; Hanson et al., 2018; Lussier et al, 2012).

This research is in addition to research on juvenile registration and offending that existed prior to 2012, which also support the findings above.  Including, but limited to: Caldwell & Dickenson (2009); Caldwell et al. (2008); Comartin et al. (2010); Letourneau & Armstrong (2008); Letourneau et al. (2009); Letourneau et al. (2010a); Letourneau et al. (2010b); Levenson & Tewksbury (2009); Prescott (2010); Reitzel & Carbonell (2006); and Worling et al. (2010).

**Research clearly supports that juvenile offender registration should be eliminated, and attention should be focused on treatment.**

**Technical Issue:**

### Section 72.4 - Where Sex Offenders Must Register, p. 49337 & 49353
### Section 72.7 – How Sex Offenders Must Register and Keep Registration Current, p. 49342 & 49354

Registering and keeping registration current in potentially three jurisdictions is unnecessarily burdensome (and even more so it if must be done within three days).  This is contrary to the goals of SORNA which provides for the collection of data that is centralized and available to other jurisdictions.  For example, it should be sufficient when informing the jurisdiction of a new residence, to also inform that same jurisdiction of their new place of employment, and/or new school attendance, without having to go to the latter two additional jurisdictions, particularly when they are all in the same state.  The same should be true of keeping registration information current (because of changes).  Jurisdictions where a registrant has begun working or attending school should receive notification from the centralized state database, or, alternatively be notified by the law enforcement agency of the residence jurisdiction of a registrant.  Requiring registrants to register and update information in potentially three jurisdictions also wastes law enforcement resources.

1 of 2

AR-00002068

S. Denniston, Ph.D.,
Juvenile Advocate & Policy Consultant

**Comments on the Proposed Rule Regarding Registration Requirements Under the Sex Offender Registration and Notification Act**

**References:**

Caldwell, M. F. (2016). Quantifying the decline in juvenile sexual recidivism rates. *Psychology, Public Policy, and Law*, 22(4), 414-426.

Caldwell, M. F., & Dickinson, C. (2009). Sex offender registration and recidivism risk in juvenile sexual offenders. *Behavioral Sciences & the Law*, *27*(6), 941–956.

Caldwell, M. F., Ziemke, M. H., & Vitacco, M. J. (2008). An examination of the sex offender registration and notification act as applied to juveniles: Evaluating the ability to predict sexual recidivism. *Psychology, Public Policy, and Law*, *14*(2), 89–114.

Denniston, S. E. (2016). The Relationship Between Juvenile Sex Offender Registration and Depression in Adulthood (Doctoral dissertation). Walden University. Retrieved from https://pdfs.semanticscholar.org/392f/3537472c09faa2f822932815acd5921fc0e9.pdf?_ga=2.246910596.1008746046.1574472582-825451179.1574472582

Does #1-6 v. Snyder, 834 F.3d 696 (6th Cir. 2016).

Hanson, R. K., Harris, A. J. R., Letourneau, E. J., Helmus, L. M., & Thornton, D. (2018). Reductions in risk based on time offense free in the community: Once a sexual offender, not always a sexual offender. *Psychology, Public Policy, and Law, 24,* 48-63.

Harris, A. J., Walfield, S. M., Shields, R. T., & Letourneau, E. J. (2015). Collateral consequences of juvenile sex offender registration and notification: Results from a survey of treatment providers. *Sexual Abuse: A Journal of Research and Treatment*, *28(8),* 770-790.

Letourneau, E. J., & Armstrong, K. S. (2008). Recidivism rates for registered and nonregistered juvenile sexual offenders. *Sexual Abuse: A Journal of Research and Treatment*, *20*(4), 393–408.

Letourneau, E. J., Armstrong, K. S., Bandyopadhyay, D., & Sinha, D. (2013). Sex offender registration and notification policy increases juvenile plea bargains. *Sexual Abuse: A Journal of Research and Treatment*, *25*(2), 189–207.

Letourneau, E. J., Bandyopadhyay, D., Armstrong, K. S., & Sinha, D. (2010a). Do sex offender registration and notification requirements deter juvenile sex crimes? *Criminal Justice and Behavior*, *37*(5), 553–569.

Letourneau, E. J., Bandyopadhyay, D., Sinha, D., & Armstrong, K. (2009). Effects of sex offender registration policies on juvenile justice decision making. *Sexual Abuse: A Journal of Research and Treatment*, *21*(2), 149–165.

Letourneau, E. J., Harris, A. J., Shields, R. T., Walfield, S. M., Ruzicka, A. E., Buckman, C., *Kahn, G. D., & Nair, R. (2018). Effects of juvenile sex offender registration on adolescent well-being: An empirical examination. *Psychology, Public Policy, and Law, 24,* 105-117.

Letourneau, E. J., Levenson, J. S., Bandyopadhyay, D., Armstrong, K. S., & Sinha, D. (2010b). Effects of South Carolina's sex offender registration and notification policy on deterrence of adult sex crimes. *Criminal Justice and Behavior*, *37*(5), 537–552.

Letourneau, E. J., Shields, R. T., Nair, R., Kahn, G., Sandler, J. C. & Vandiver, D. M. (2019). Juvenile Registration and Notification Policies Fail to Prevent First-Time Sexual Offenses: An Extension of Findings to Two New States. *Criminal Justice Policy Review, 30(7),* 1109-1123.

Lussier, P., van den Berg, C., Bijleveld, C., & Hendriks, J. (2012). A developmental taxonomy of        juvenile sex offenders for theory, research, and prevention: The adolescence-limited and the   high-rate slow desister. *Criminal Justice and Behavior, 39*(12), 1559-1581.

Reitzel, L.R., & Carbonell, J.L. (2006). The effectiveness of sexual offender treatment for  juveniles as measured by recidivism: A meta-analysis. *Sexual Abuse: A Journal of Research and        Treatment, 18,* 401–421.

Worling, J. R., Litteljohn, A., & Bookalam, D. (2010). 20-Year prospective follow-up study of specialized treatment for adolescents who offended sexually. *Behavioral Sciences & the Law*, *28*(1), 46–57.

AR-00002069

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments) | Share ⏷ |
|---|---|

| Comment |
|---|

October 13, 2020

Hon. William Barr,
Attorney General,
United States of America
Attn: Regulations Docket Clerk,
Office of Legal Policy,
US Department of Justice
950 Pennsylvania Ave, NW, Room 4234
Washington, DC 20530

Re: Docket No. OAG 157
SORNA Regulations

Dear Attorney General Barr,

I am the webmaster for several grassroots organizations committed to ending the public registry and ending pre-crime preventative detention. Much like pre-crime preventative detention schemes, SORNA is a failed, costly (in many ways) experiment based on fear mongering and punishment, not on research or data. Recidivism of sexual crimes or sexual crimes in general have not been affected by SORNA since its inception and no changes to SORNA and related laws such as AWA or IAWA will change those facts. For decades recidivism rates have been in the single digits, many states reporting as low or lower than 1% recidivism for another sex offense by those on the public registries. Over 95% of all sex offences are committed by people not on any registry because they have never been charged or convicted of any crime. This means that any person is more than 20 times more likely to be offended by someone not on any registry than by someone on the public registry. It is no wonder that these most cruel and unusual restrictions that come from the system of public registries, never can have any impact on the rates of sex offences.

Most sexual offenses are committed by family members or trusted friends and people of authority such as police

AR-00002070

officers and school teachers and church leaders who are not on the registry. The registry also takes much needed resources from education, mental health services, appropriate law enforcement and other measures which are immeasurably more effective in preventing sexual harm than the excessively punitive and unnecessary SORNA regulations.

For one man in Illinois who was entrapped in a police sting that took over a year for police to talk him into stepping over a line, he went from earning over $300,000.00 a year in 1999 to being unemployable (just because he was listed on the public registry). He was paying over $100,000 per year in income taxes until he became listed on the public registry. Since them he has been drawing on public aid, SSI, and various charities to just survive. In the last 20 years he has lost 6 million in individual income and has not paid 2 million in income taxes that he would have otherwise paid. And as he was a top expert in the world in his field he likely would have had income raises in that 20 year period if not for the public registry that insights hate from the public. While not everyone on the registry lost that level of income, the vast majority of those on the registry have all lost significant income and the government has lost massive sources of tax dollars because of the public hate and resulting unemployability of those on the public registry. Not to mention the costs to the government to provide public aid and to pay for massive police efforts to monitor almost a million such people that are very unlikely to ever commit another sex offence. The total costs to the government are in excess of many billions of dollars.

Society in general is negatively affected in that collateral consequences such as housing instability and lack of job opportunities created by the registry cause harm not only to registrants and their extended families, but to the overall economy and stability in communities. SORNA and the AWA do nothing to benefit or protect children and actually harms many of them, especially children of registrants whose parents are unable to fully participate in their lives and these children face bullying and intimidation, and even murder by vigilantes.

Nothing short of complete abolition of SORNA and the AWA, IAWA, and pre-crime preventative detention will free up necessary resources so that we as a society can focus on prevention of sexual harm and promote restoration and rehabilitation of both those harmed and those who cause harm.

Thank you,
Webmaster for
JustFutureProject.org, WomenAgainstRegistry.org, and fightawa.org
www.ajustfuture.org, womenagainstregistry.org, fightawa.org

---

Attachments   1

 SORNA-comment-OAG157

&#8595; Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0598/attachment_3.pdf)

**Comment ID**
DOJ-OAG-2020-0003-0598

**Tracking Number**
1k4-9jhk-ezqy

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



About
(/about)

Bulk Data Download
(/bulkdownload)

Agencies
(/agencies)

Learn
(/learn)

Reports
(https://resources.regulations.gov/public/component/main?main=Reports)

FAQ
(/faq)

AR-00002072

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I want to share my objection to the proposed amendments to the Adam Walsh Act. States should be responsible for their own laws and their own registries without interference for a federal registry. The money needed to create and maintain a federal registry would be better spent for victim treatment or educating the public about how sexual abuse is more often someone known by the victim rather than a stranger. Let's follow the studies rather than use scare tactics to spread misinformation.

Sex offender registries have many people listed who have not even committed a sex crime. Why are we using the registry as a catch all? We should be working towards reforming our justice system, not making it even more convoluted. Registries are difficult for law enforcement to monitor and this would burden them further. Registries are filled with people who should no longer be on the registry. People should have a path to be removed from the registry because when a person is listed on the registry longer it creates isolation. Studies show recidivism is lower when there is a path to being removed. I am against listing any juveniles on any sex offender registry in any state or federally. Children do not have fully developed brains until late adolescence--well into their 20's--and should NOT be held to making good decisions, therefore should not be criminally charged the same as adults.

I strongly disagree with the amendments proposed.

**Comment ID**

DOJ-OAG-2020-0003-0599

**Tracking Number**

1k4-9jhn-jdo5

AR-00002073

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

October 13, 2020

Regulations Docket Clerk
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW, Room 4243
Washington, DC 20530

Re: Comment to Proposed Rule for Registration Requirements Under SORNA, Docket No. OAG 157

I am writing to strenuously oppose the DOJ's proposed rule for registration requirements under SORNA, Docket No. OAG 157.

SORNA, the existing registration regime is a complex, suffocating web of requirements inflicted on sex offenders under the guise of "public safety". It is in fact and practice an ever-expanding **punishment** applied for years (or for a lifetime) **after** an offender has served their term of consequences as ordered by the courts, and in this case applied retroactively even to those sentenced prior to the advent of registration laws.

For most sex offenders who have successfully completed their sentences and probationary period, registration is not necessary and provides no tangible benefit to the community. Sex offenders have one of the lowest recidivism rates of all crimes. Criminal statistics tell us that most offenses are committed by family, friends or persons in close acquaintance who are **not on the registry** or previously known to law enforcement. Therefore, registration only provides a false sense of security doing nothing to increase public safety or prevent these offenses. Resources would be much better spent on evidence based educational and therapeutic intervention approaches to prevent the sex offenses.

Furthermore, registration places the same restrictions and conditions on persons who committed minor to moderate offenses as the small percentage who committed the most extreme, violent offenses, (who should be in a class of their own). All sex offenses are conflated under SORNA which is like equating serial killers and mass murderers with persons guilty of vehicular homicide.

Registration negatively impacts and impairs every aspect of a registrant's life and welfare, severely limiting their ability to positively reintegrate into civil society. This translates into many registrants not being able to find a place to live, secure employment, maintain family connections, shop for goods and services (even grocery shop), communicate (participate in civil discourse), travel within their county or state or out of state to work, visit family, care for sick parents or attend weddings and funerals, as well as becoming victims of persecution and vigilantism. The results of SORNA are experienced as **punishment** by the persons living under them. These conditions do not allow for rehabilitation essential to transformation into a productive citizen. If the idea is to encourage people to become their best selves and not to return to previous destructive behaviors, registration is not the way to achieve that goal.

SORNA and the proposed augmentation to the current regime is most certainly punishment in light of the harsh consequences for the slightest infraction of even one the multitude of sometimes vague, confusing or conflicting requirements. In some states, an infraction results in a minimum 3rd degree felony charge and prison time of 5 or more years, even when these consequences exceed the original charges and sentencing for the actual sex offense. Violations of registration requirements, such as to register a visitor's car parked at your place of residence for more than 3 days (an ridiculous requirement) are counted as recidivism by law enforcement even though they are not repeat sex crimes. Just living in the constant fear of somehow unintentionally making a technical violation of one of this maze of registration conditions **is punishment**.

AR-00002075

Lastly and most importantly, this DOJ rule proposal should be defeated as it attempts to further expand and augment the already overreaching, punitive SORNA requirements. It effectively overrule states' rights to legislate and enforce their own existing laws while putting persons previously not required to register and those who have been legally relieved of the requirement to register at jeopardy of Federal re-ajudication.

Respectfully,

Danell Puglisi-Knutson

AR-00002076

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

---

Comment

Id rather provide PERSONAL IDENTIFYING INFORMATION in case the AG has any questions for me. Instead I'm adding anonymously because the preview feature didn't redact.

In the preamble to Proposed Rule 28 CFR 72, the AG makes an excellent case that there are benefits of the proposed rule for all parties. Providing a concise and comprehensive statement of requirements of 18 U.S.C 2250 can help law-abiding registrants comply, as required. It can enable jurisdictions to facilitate more complete compliance, should they choose. These could result in cost reductions in both cases, since the need to seek and rely on specialized legal expertise is reduced.

However, as the AG notes, it also can enable USDOJ to more easily prosecute cases of failure to register. Since this usually results in incarceration, this will not result in a cost reduction, but rather a significant increase to the loss of time, expense, and other costs causing irreparable harm to the people affected and their families, not to mention to the country as a whole as we increase the national debt to support increased federal prison populations. This cost would be wasted, since they purchase no public benefit. Furthermore, there is now much data showing that registration systems, conforming to SORNA or otherwise, amount to a failed experiment, providing no measurable public safety benefit. I would like to see the AG use his trusted position to educate lawmakers about the damage being inflicted by the laws they have passed, and help them instead structure the kind of legal environment in which they would want their children, and ours, to grow up in.

72.2 The definitions referred to have grown far beyond their initial scope, since lawmakers have added to them based on prejudice and stereotype. For example, 34 U.S.C. 20911(7) as your preamble comments on Example 2 in 72.8(a)(2) show (page 49351, second column, first paragraph), there are jurisdictions that find no credible reason to include possession of information some call child pornography.

72.3 Just because the registration system in Smith v. Doe, 2003, was "one whose major features paralleled SORNA's in many ways" (page 49335, second column, last paragraph) does not mean that SORNA's features today do not amount to ex post facto punishment. Burdens of time and expense continue to grow as politicians feel the need to prevent future opponents shaming them with soft on sex offenders campaign ads. As the difference grows, hot much longer can that precedent continue being valid?

AR-00002077

72.5 (c) Reduction for maintaining a clean record - Sentences, such as incarceration, can be reduced for good behavior. Is the provision for reduction not an admission that a SORNA registration requirement is a sentence, and its burdens intended as a punishment?

72.6 Some items of information described would be new to many jurisdictions. If they choose to add them to what is already collected, they will need to store it somewhere. This means funding an IT project for modifying database design, and executing data conversions. This kind of computer enhancement is inherently expensive, many tens of thousands of dollars, so no cost reduction for a jurisdiction can be found here.

72.6 (d) page 49341, first column, last paragraph - "The United States does not wish to export the public safety threat posed by its sex offenders to other countries." What we are exporting to other countries is our own pseudo-science based on neurotic fear of sex offenders having a mythical frightening and high reoffense rate. The author who made this false assertion is well known, and does not deserve to be cited here.

No safety benefit from registries: https://www.ncjrs.gov/App/Publications/Abstract.aspx?id=264128

Low reoffense rate: https://www.bjs.gov/content/pub/press/rsorp94pr.cfm

As far as sex tourism goes (page 49341, third column, second paragraph), that field suffers from a "significant dearth ... of empirical data" (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6352229/). This is just another argument from prejudice and irrational fear.

In conclusion, I would encourage the AG to use his trusted position to educate lawmakers (and those who elect them) about the burdens they are imposing by the laws they have passed, and help them instead structure the kind of legal environment in which we would want our grandchildren, and theirs, to grow up in.

**Comment ID**

DOJ-OAG-2020-0003-0601

 **Tracking Number**

1k4-9jhn-l5wj

**Comment Details**                                    Submitter Info

**Received Date**

Oct 13, 2020



About   Bulk Data Download   Agencies   Learn

(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002079

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

I would like my comments to be on the record that these proposed changes do nothing to promote public safety, in fact, they worsen it by ensuring that children and families are alienated from society, subjected not only to harassment, but actual vigilante violence, and an extreme inability to find housing and jobs. All of these factors do the opposite of promoting public safety, the research proves it!

There is also the family of the registrant subjected to compliance checks, their cars and address being public info like no other citizen. Having stable family ties and reintegrating successfully into society is what keeps society safe, not demonizing entire families!

These proposed changes turn the states rights upside down! The states have decided what tiers and notification levels. These changes usurp that state authority and, WITHOUT DUE PROCESS or any hint of individualization take the states determination and toss them out. The federal government, then decides that someone who has been presumed low risk and not public for over 15 years, suddenly is a danger to the community and must be publicly posted on facebook?!? Families of registrants fear this to happen! There are hundreds of vigilantes and death threats made online when the local police post online with community notifications! This does not promote public safety in any way. Murders have happened in the last year because of this registry! (this is why my comments are submitted anonymously!) It is too easily searchable to see who has commented on this proposal. There are well founded reasons that SORNA has been avoided by the majority of jurisdictions. More than half of the states have made the decision to avoid the pitfalls that come with SORNA. Included among these is that the provisions of SORNA are overbroad, take too many tax dollars to maintain, and fail to achieve the stated safety objectives. In addition, there are aspects of SORNA that raise a variety of Constitutional questions, which are by no means settled.

Sorna has gone so far beyond a tool that the police use to help keep a community safe it is a tool of punishment. It is punishment to all associated with a registrant. Why should this group of tax paying citizens, especially those who have completed any sentences and who have performed all obligations and become contributing members to society be subject to continuing and every-changing punishment? WHY would the federal government want to destabilize any of that? Isnt that the key to a safe community?

Please reconsider implementing this unfunded mandate to the states that will create an even more disastrous mess of a patchwork of over lapping and contradicting laws that make it almost impossible for families to be safe. All of those families and children count too.

AR-00002080

**Comment ID**

DOJ-OAG-2020-0003-0602



**Tracking Number**

1k4-9jhn-ftd1

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



About    Bulk Data Download    Agencies    Learn

(/about)         (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

AR-00002081

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Good Morning,

I am writing to express my complete opposition to the existence of a registry.

In brfief, here are my reasons:

It severely restricts affability of housing.
It hinders the ability to attend worship.
It greatly harms the family of registrant.
It amounts to lifelong imprisonment.
There is absolutely no documented proof that the registry makes the world safer
No other crime requires a registry like this.

Thank you.

**Comment ID**
DOJ-OAG-2020-0003-0603

 **Tracking Number**
1k4-9jhp-hvl1

**Comment Details**                      **Submitter Info**

AR-00002082

**Received Date**

Oct 13, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download    Agencies    Learn

(/about)    (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |

Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |

FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002083

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ⌄

---

Comment

Look I think it is just time to call a spade a spade. The law is Unamerican. Any person , Leader or Organization that supports it is by that act committing an act of war and terrorism against individuals. See why argue facts , urban myths or rumors , when the truth says it all.

**Comment ID**

DOJ-OAG-2020-0003-0604

◎ **Tracking Number**

kg7-zvzm-yrff

| **Comment Details** | **Submitter Info** |
| --- | --- |

**Received Date**

Oct 13, 2020

AR-00002084



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

DO NOT PUBLISH PERSONAL INDENTIFYING INFORMATION

Including full name, address, phone number and email

Comment on FR Doc #2020-15804

I have thoroughly read the proposed changes to the SORNA regulations.   As a good family friend of a person who is required to register I have serious reservations on how these changes will further negatively impact both the registrant and their loved ones.

Studies have shown that the sex offender registry does not prevent crime or improve public safety.   Many times they contribute to additional crimes.    When people are forced to remain in an "invisible prison" as the public registry does, it forces them into unemployment, homelessness and finally desperation.   It also forces their loved ones into the same situation:   kids are bullied at school, wives & girlfriends are followed and verbally abused, (maybe even attacked) and property damage and shunning in neighborhoods is not uncommon.   This is CRUEL and the proposed rule changes only make it worse.

In the United States of America, the law states that once someone has completed their sentence, their debt to society has been paid.   It DOES NOT say that after you are freed the government can continue to punish you for life.   The sex offender registries are lifetime punishment and are out of control.   Recidivism for sex offenders is 3-5%.   Registries are chasing a problem that does not exist.

No other crime is forced to report and have all of their information publically available so people can know who, where, how to contact, follow and torment them and their families.   Murder, drug crimes, property crimes …name the crime…   felons are not on a public list.   Each of the aforementioned crimes has exponentially higher recidivism rates (greater than 60%) than sex offenders.   Yet persons convicted of murder, drug crimes or property crimes are afforded the opportunity to turn their life around.   They can re-engage with their family at home, they can secure gainful & meaningful employment…   everything that should be afforded to all formerly incarcerated individuals… INCLUDING sex offenders.   How do you rebuild your life IF you are constantly being asked to re-live your worst day?

If registries actually improved public safety, then sex crimes would have been eliminated by now.   The truth is registries DO NOT.    Most sex crimes are not committed by people on the registry, but by people that law enforcement is not even aware of.

Study after study has shown proper counseling services, family reintegration, and the opportunity to have gainful employment to provide for their families is what PREVENTS crime and most especially recidivism.    The money to create, maintain, track and follow the registry would be better spent providing the programming needed, such as Cognitive Behavioral Therapy (CBT), to insure that persons grow and become well rounded citizens.    Not hindered by the registry and its crippling results.

There are several things that should be eliminated from the RULE CHANGE PROPOSAL # FR_2020-15804.

§ 72.1:    Public View    Allow only law enforcement and courts access to the registry.   There is no need for this information to be viewed by the general public. Study after study has demonstrated the people on the registry are not re-offending. Open public view only hinders the progress toward a responsible citizen.   Would you want all of your information posted for all to see and put your family at risk of vigilantes? The family & friends of the offender might as well have a target on their back as well.

§ 72.5 (c):    Reduction    Tier registry reduction opportunities should be available to all, not just Tier I and Tier III Juvenile issues to reduce their registry commitment.

§ 72.6 (c)(2):    Temporary Lodging    Providing this information if longer than 7-days is un-realistic.   The time period should be 14-days.

Seven (7) days only serves to reduce the ability to build family ties.   To be required to expose names, addresses, contact information of family & friends on a public registry continues to reduce the ability for a registered person to build, improve, and maintain healthy positive relationships.   Vacation time is generally two-weeks.

Also remember, many families can live on opposite parts of the country.   With airline travel risky, secondary to the pandemic, travel by auto will most likely be the best way to visit.   It is impossible to drive across the country, visit and drive back within

7-days.

Family re-integration is key to successful transition from incarceration to productive citizen.   Making family & friends part of the registry is counter-productive to the goal. It brings unnecessary conflict and puts everyone at risk.   This is cruel punishment after being freed.   Don't put kids, grandkids and families in the middle.   Support the positive effort by letting all enjoy each other.   Help build families and relationships, DO NOT continue to tear apart.

§ 72.6 (f):   Vehicle information    "Information must also be provided as to where any vehicle owned or operated by the sex offender is habitually parked, docked, or otherwise kept" should be REMOVED.

Addresses of friends / significant others should NOT be part of the registry requirements.   It is WRONG to insist that INNOCENT PEOPLE get dragged onto the registry because they allow a registered person to visit.   The resident address of the sex offender is known and is enough information.

§ 72.7 (c) and § 72.7 (d) (et al):   Registration and Keep Current     Both sections are way too onerous and need to be streamlined and simplified.     Making one individual register in three places is way over the top.     If this is truly a national registry, then one registration should be more than sufficient.   All of the requirements are only a means to trip up the registered person.   It serves no useful purpose.

Multiple studies show registries do not improve public safety; registries do not decrease recidivism rates and certainly do not help people rebuild their lives.   The registry HINDERS both the person required to register as well as their family unit.   It is way past time to begin to help these individuals be successful responsible citizens.

Wouldn't it be more beneficial for everyone to have these returning citizens get decent jobs and pay taxes?

The proposed rule / regulation changes should NOT be accepted.

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

Comment

I was arrested in a sting operation when I was 21 years old because of my social immaturity at the time. I had no victim, yet my conviction claims I had a minor victim. I have served years in prison and on probation.

Today I wake up scared that my family will be harassed or attacked by vigilantes. I wake up everyday knowing my special needs child is not receiving the therapy he needs because nobody will give me a chance to prove myself in a job requiring my Bachelor of Science from a prestigious university. I wake up everyday wanting to provide for my family.

I wake up everyday believing everybody makes mistakes in their lives, and receives a second chance - except me.

I am unfairly thrown into a bandwagon of persons with severe risks, where I am told I don't belong by professionals. I have completed sex offender therapy, and reported in the lowest risk category by doctors. But what does any of that matter? Restrictions continue to become more draconian, and I can do less and less for my family as time goes on. I feel worse and worse because they cannot have a normal life. But they did nothing wrong.

I have no way to get off the list and provide for my family like every other citizen. When I was sentenced, the judge told me to petition for removal in 10 years. But now the law has changed to 25 years. (Ex Post Facto) I'm sure it will change again. Why not?

SORNA punishes, takes liberty away not only from registrants, but their families, placing them in danger. This is wrong and unconstitutional.

I pray God takes control of these rules, and its lawmakers. I pray God allow justice, remove the slavery SORNA creates and illegally allows.

AR-00002089

**Comment ID**

DOJ-OAG-2020-0003-0606

 **Tracking Number**

kg8-04kl-im4t

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



About    Bulk Data Download    Agencies    Learn

(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 13, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |   Share ▾ |

---

Comment

My young son met up with the wrong kids one day. An under age girl friended him on line. The mother turned his and our lives into a living nightmare where there is no end because of the horrid rules of the registry. He can't live with his family. Everyone that offered their home for him lives to close to a school or playground. Plus your address goes on the registry for the world to see. He's alone and extremely depressed. All his life's opportunities are gone. We're afraid for him everyday. Every minute of every day. He's not a criminal. They system is the criminal.

**Comment ID**

DOJ-OAG-2020-0003-0607

 **Tracking Number**

1k4-9jhp-zo2t

**Comment Details**                                    **Submitter Info**

**Received Date**

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

**COMMENTS OF THE ALLIANCE FOR CONSTITUTIONAL SEX OFFENSE LAWS, INC.**

**AND AFFILIATED SCHOLARS AND PRACTITIONERS**

**IN RESPONSE TO PROPOSED RULEMAKING – <u>Docket No. OAG 157</u>**

**October 12, 2020**

Comment to Proposed Rule entitled
  "Registration Requirements Under the Sex Offender
  Registration Notification Act," (SORNA)
  34 U.S.C. § 20901 and 18 U.S.C. § 2250.
<u>**Docket No. OAG 157**</u>;  AG Order No. 4759–2020
Agency:  U.S. Department of Justice
Document No. 2020-15804
RIN 1105-AB52
85 F.R. 49332-49355

On August 13, 2020, the U.S. Department of Justice ("Department") issued its Notice of
Proposed Rulemaking, Docket No. OAG 157, for the purpose of amending regulations
implementing the Sex Offender Registration and Notification Act (SORNA), P.L. 109–248, 34
U.S.C. § 20901 *et seq.* and 18 U.S.C. § 2250 (the "Proposed Rule").

The Alliance for Constitutional Sex Offense Laws, Inc. (ACSOL), a national non-profit
organization, as well as the affiliated practitioners and scholars identified below, thank the
Department for its work on the Proposed Rule, including its detailed Section-by-Section
Analysis.  In these comments, ACSOL respectfully requests that the Department reconsider or
revise specific provisions of the Proposed Rule for the reasons summarized below.

<div align="center"><u>INTRODUCTION</u></div>

SORNA contains two distinct mandates serving two distinct federal purposes: (1) to induce
states to adopt federal standards for sex offender registries, and (2) to prevent individual
registrants from evading state registration laws by traveling to another state.  We believe the
Proposed Rule often conflates these two purposes.  As a result, the Proposed Rule fails to
achieve the clarity that is the Department's purpose in proposing it.  *See* 85 F.R. 49333 (The
Proposed Rule seeks to "provide[] a concise and comprehensive statement of what sex offenders
[herein, "registrants"] must do to comply with SORNA's requirements.").

Since SORNA's adoption the Department has appropriately focused federal prosecutions for
failure to register on absconding registrants.  This traditional policy was consistent with the
Congressional purpose in enacting the portion of SORNA creating the federal registration
offense.  The traditional policy also sensibly focused federal prosecutorial resources on cases that
posed the greatest difficulty for state-level enforcement, and also insulated federal prosecutions
from plausible claims that they exceeded the federal jurisdiction allowed under both SORNA and
the Constitution.  The Proposed Rule needlessly suggests a change in prosecutorial policy that
would, if followed, undermine all of the advantages of the Department's traditional practice.

<div align="center">1</div>

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS
IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

In the comments that follow this introduction, we highlight the particular instances in which this needless conflation of SORNA's mandates arises, and suggest how the Proposed Rule can be recast to avoid it.  In this introduction we provide a background understanding of SORNA that informs all of our comments.  Finally, our comments also address several other difficulties with the Proposed Rule.

Notably, the Proposed Rule does not directly address SORNA's first mandate, which is set forth in Subdivision (a) of 34 U.S.C. § 20912.  That mandate requires states to "maintain jurisdiction-wide sex offender registr[ies] conforming to the requirements of this title."  Although the federal government may not "commandeer" state resources to pursue federal policies, it can, under the Spending Clause, condition grants of federal funds on compliance with them.  *United States v. Richardson*, 754 F.3d 1143 (9th Cir. 2014).  The Office of Sex Offender Sentencing, Monitoring, Apprehending, and Tracking (SMART Office) within the DOJ administers the federal standards.  It finds just 18 states are currently in substantial compliance with them.
*See* https://smart.ojp.gov/sorna/substantially-implemented.  Noncompliant states may be penalized by a ten percent reduction in the funds they would otherwise be allocated under the Edward Byrne Memorial Justice Assistance Grant Program, 42 U.S.C. § 20927.

The Proposed Rule addresses SORNA's second mandate, set forth in 34 U.S.C. § 20913.  That mandate requires an individual convicted of a sex offense to register, and keep his registration current, in each state in which the individual resides, is employed, or is a student.  34 U.S.C. § 20914 sets out the information that each registrant shall provide to the registering agency, and authorizes the Attorney General to supplement this statutory list with "any other information" he chooses to require.  It also authorizes the Attorney General to specify the "time and manner" in which individual registrants provide and update the required information.  Finally, knowingly failing to register as required in these sections is a federal crime under 18 U.S.C. § 2250 for an individual convicted of federal or tribal sexual offenses, and for a state offense if the individual "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country."

As explained in *Carr v. United States*, 560 U.S. 438, 446 (2010), an individual whose registration obligation is based upon a state conviction does not violate 18 U.S.C. § 2250 unless the three elements of the offense occur in the required sequence:  the individual first becomes a person required to register under 34 U.S.C. § 20913, then travels in interstate commerce, and then fails register or update the registration.  If that sequence were not required, a state offender who failed to register in the state of conviction could be prosecuted under § 2250 even though he had not left the state after his conviction, "an illogical result given the absence of any obvious federal interest in punishing such state offenders."  *Id*.  Congress, the Court concluded, clearly did not intend "to subject any unregistered state sex offender who has ever traveled in interstate commerce to federal prosecution under § 2250."  *Id*. at 452.

*Carr's* understanding of the limited reach of § 2250 is consistent with the Congressional motivation in enacting it, as evidenced by its legislative history (detailed below in Comment I(B)(3)). That is, SORNA's goal was not to replace state-level enforcement of sex offender registries with federal prosecutions, as federal registration laws have "expressly relied on state-

AR-00002094

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

level enforcement" since their inception. *Id*. The goal was much narrower: to fill a gap that state laws alone could not achieve—to catch individuals who seek to evade their registration obligations by leaving their state of conviction and not registering at their destination. "The act of travel by a convicted sex offender may serve as a jurisdictional predicate for § 2250, but it is also . . . the very conduct at which Congress took aim." *Carr*, 560 U.S. at 454.

As this passage from *Carr* suggests, this understanding of the purpose of the federal registration obligation reflects the federal government's limited jurisdictional authority over state-level offenders. The federal government does not have general police powers, *United States v. Lopez*, 514 U.S. 549, 566 (1995), and may not criminalize conduct in the absence of a specific constitutionally recognized federal interest in reaching that conduct. The Commerce Clause power to regulate conduct with a multistate impact on commercial activity does not "obliterate the Constitution's distinction between national and local authority." *United States v. Morrison*, 529 U.S. 598, 615 (2000). The Court in *Morrison* therefore rejected the claim that Congress may regulate noneconomic, violent criminal conduct just because it has some effect on interstate commerce "in the aggregate." Reiterating that the Constitution requires "a distinction between what is truly national and what is truly local," the Court observed that it could "think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims." *Id*. at 617-618. The federal power can extend to violent crime only when there is a clear nexus in the particular case between the crime and the interstate component required for federal jurisdiction. *Lopez*, 514 U.S. at 561.

The Constitutional limits on federal power are thus aligned with the Congressional purpose in enacting 18 U.S.C. § 2250: to provide an added tool with which to punish and therefore deter registrants from absconding to another state to evade their registration obligations. A registrant who moves to another state and does not register falls within both the Congressional purpose and the Congressional power. His move to a second state is, as *Carr* observed, "the very conduct at which Congress took aim." The required nexus between the criminal conduct and the interstate travel is clear.

In contrast is the registrant who travels from New Jersey to New York for the afternoon to visit his mother, but then a year later fails to renew his New Jersey registration. In the latter case, there is no nexus between the interstate travel and the failure to register, and thus no federal jurisdiction. Nor is there any reason for federal involvement. New Jersey's authority and ability to police this individual's failure to register is entirely unaffected by the registrant's afternoon trip a year earlier. This is not the kind of case to which Congress ever intended to apply federal resources. There is nevertheless confusion about this point. The Proposed Rule could and should end this confusion, but as written the Proposed Rule exacerbates it.

In the pages that follow we identify particular examples of this confusion and offer suggestions for revising the Proposed Rule to eliminate it. We first offer, however, two observations that apply generally to this question.

AR-00002095

First, the mistaken conflation of SORNA's two distinct purposes (*i.e.*, to encourage states to adopt federal registry standards, and to deal with absconding registrants) accounts for much of the confusion.  The federal crime created to serve the second purpose cannot be employed in service of the first.  Hundreds of thousands of registrants live in one of the 32 states that are not compliant with federal standards.  Their home state may place registrants in different tiers than called for under the federal standards, or they may relieve some registrants of their registration obligation earlier than the federal standards allow.  State registration schemes may not require registrants to report every item the federal standards require (*e.g.*, many state registration schemes do not require the disclosure of remote-communication identifiers), and may not require registrants to update their registration information as frequently as do the federal standards.  The federal government may condition a state's receipt of federal funds on its conforming to the federal standards, but it cannot prosecute individual registrants who comply with the relevant state laws for failing to meet federal registration standards their state has chosen to reject.  For a person whose registration obligation is based upon a state law conviction, there is no nexus between interstate activity and their noncompliance with federal rules.  The matter is less certain for those whose registration obligation is based upon a federal conviction.  The federal government may require their registration, but it remains problematic to prosecute such registrants for failing to comply with federal standards their state has not adopted.  The regulations do recognize an "impossibility" defense that may apply in some such cases, but as explained in Comment IV, the examples provided are both confusing and too narrow.  It would be far simpler, and certainly clearer, for Department to adopt a unitary policy declining to prosecute in such cases.  More importantly, such a policy would be consistent with the Congressional purpose in enacting Section 2250: to deter evasion of the registration obligation through interstate travel.

Second, although we do not have access to the data that would speak directly to the question, it appears that Department has in fact followed such a policy in the past.  The TracFed database maintained by Syracuse University shows for the eleven months thus far reported for fiscal year 2020, there have been a total of 428 convictions nationwide under § 2250.  That is 18 percent fewer than the number last year, 23 percent fewer than five years ago, and 46 percent fewer than ten years ago.  Federal prosecutions are rare and becoming more so, given that nearly one million Americans are currently required to register.  A small sample of the press releases issued by U.S. Attorney's offices in connection with § 2250 prosecutions suggests that every case involved a registrant who had moved across state lines and failed to register at his or her new residence.  Our impression is therefore that DOJ has, for the most part, in fact followed the very policy that our comments urge should be made explicit in the regulations.  We cannot exclude the possibility of particular instances in particular U.S. Attorney's offices in which prosecutions were brought against individuals who were compliant with state law registration laws applicable to them, or who, while not fully compliant, had not traveled interstate to evade their registration obligation.  But the existence of a few such prosecutions in selected U.S. Attorney's offices only adds to the need for Department to adopt an explicit policy excluding them.  In his comments last month at Hillsdale College, Attorney General Barr recently emphasized the importance of the Department ensuring a consistent national policy, especially in the exercise of prosecutorial discretion.  "It

4

does not serve the ends of justice to advocate for fuzzy and manipulable criminal prohibitions that maximize our options as prosecutors. Preventing that sort of pro-prosecutor uncertainty is what the ancient rule of lenity is all about. That rule should likewise inform how we at the Justice Department think about the criminal law."

There is no better example of the need to follow this approach than in Department's policy for choosing cases in which to bring charges under § 2250. We believe the Proposed Rule should be revised to make clear and overt the Department's traditional but silent policy of reserving such prosecutions for cases in which the defendant has traveled across state lines for the purpose of evading his registration obligation.

In light of the above, as well as additional concerns regarding the Proposed Rule, we urge the Department to revise the Proposed Rule consistent with the following comments.

<div align="center">

SUMMARY OF INDIVIDUAL COMMENTS

</div>

**Comments I and II** (pp. 8-1) discuss the issues mentioned above. To reduce misunderstanding, the Proposed Rule should state clearly that a registrant's duty to act under SORNA is triggered solely by interstate travel or other "circumstance supporting federal jurisdiction" and that Congress and the Department lack Commerce Clause authority to require registrants to do anything without that jurisdictional prerequisite. The Department should also clarify that it does not seek to impose liability where there is no nexus between interstate travel and a particular reporting requirement. Critically, if the Department contends that registrants have a duty to comply with SORNA's mandates when circumstances supporting federal jurisdiction are absent, the Proposed Rule will exceed the Department's authority under SORNA by regulating purely intrastate affairs.

**Comment III** (pp. 20-23) recommends that the Department withdraw § 72.7(d), which mandates reporting of intended "departure from" or "termination of" residence in a state prior to interstate travel or other basis for federal jurisdiction, because § 72.7(d) exceeds the scope of Congress' authority under SORNA for the reasons articulated in *Nichols v. U.S.*, 136 S.Ct. 1113 (2016).

**Comment IV** (pp. 23-27) addresses the Department's attempt to explain in the commentary to § 72.7(g) how the Proposed Rule would work when the jurisdiction's registration law differs from proposed federal requirements. The explanations offered in the commentary are not nearly adequate to resolve the confusion. This is a serious issue affecting hundreds of thousands of people. The Department acknowledges that a registrant's compliance with SORNA is a "two-party transaction" that depends upon his state's "acceptance" of the information provided by the Registrant. 85 F.R. 49336-37. However, the content of § 72.7(g) ignores this reality—as well as the Department's own historic practices—by suggesting that a registrant can still be prosecuted under SORNA when his or her state does not accept information required under SORNA. We are not certain the Department has the authority to do this. But if it does, the Proposed Rule should clarify, consistent with the Department's traditional practice, that a registrant who

<div align="center">

5

</div>

complies with his state's registration requirements and has not traveled interstate to evade
registration will not be prosecuted.

**Comment V** (pp. 27-29) explains why the Department's interpretation of the affirmative
Defense of 18 U.S.C. § 2250(c), as expressed in § 72.7(g) and 72.8 of the Proposed Rule,
violates the Due Process Clause of the Fifth Amendment by relieving prosecutors of their duty to
prove a "knowing" SORNA violation.

**Comment VI** (pp. 29-31) urges the Department to substantially revise § 72.6(b), which requires
the reporting of "remote communication identifiers," to narrow its scope, define vague terms,
and restrict public access to the registrant's identifiers.  As presently proposed, the section
violates the First Amendment for the reasons articulated in *Doe v. Harris*, 772 F.3d 563 (9th Cir.
2014) and other cases.

**Section VII** (p. 31) observes that § 72.8 omits SORNA's express requirement that liability under
18 U.S.C. § 2250(a)(2)(B) requires proof of "travel in interstate or foreign commerce, or enter or
leave, or reside in, Indian country," and requests the inclusion of this element.

**Comment VIII** (pp. 32-33) addresses § 72.6 of the Proposed Rule.  Several parts of this section
use vague and imprecise language that, while perhaps appropriate when defining "minimum
national standards" for states in connection with SORNA's first purpose, is untenable in
guidelines for individual registrants in connection with SORNA's second purpose.  An example
of vagueness and imprecision is found in § 72.6(c)(1) which requires registrants to report
unspecified "information . . . with whatever definiteness is possible under the circumstances."
The Department should review this section to be sure that the proposed requirements are
understandable to an ordinary person and provide fair notice to registrants of the conduct that
may trigger criminal prosecution.

**Comment IX** (p. 33-34) urges revising § 72.5(c) to clarify that the reduction in the duration of
the registration obligation SORNA adopts for tiers 1 and 3 is automatic under the circumstances
specified by the statutory language.

**Section X** (pp. 34-36) argues that the Proposed Rule should be revised to include a federalism
assessment and other requirements imposed by executive order 13132 and the Unfunded
Mandates Reform Act.

///

///

///

6

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

## IDENTITIES OF COMMENTING PARTIES

These comments are jointly offered by the following:

**Alliance for Constitutional Sex Offense Laws, Inc. (ACSOL)**
A California Non-Profit Corporation
c/o Janice M. Bellucci
1215 K Street, 17th Floor
Sacramento, CA 95814
E-mail:  jmbellucci@aol.com

**Adele Nicholas**
Attorney at Law
Chicago, IL

**Amber Vlangas**
Restorative Action Alliance, Inc.
New York

**Chance X. Oberstein**
Attorney at Law
President, ACSOL
Laguna Hills, CA

**Guy Hamilton-Smith**
ACSOL Board of Directors

**Ira Mark Ellman**
Charles J. Merriam Distinguished Professor
of Law and Affiliate Professor of
Psychology, Emeritus
Sandra Day O'Connor College of Law
Arizona State University

**Janice M. Bellucci**
Attorney at Law
Executive Director, ACSOL
Sacramento, CA

**Jill K. Sanders, Esq.**
Restorative Action Alliance, Inc.
Katonah, New York

**Richard Gladden**
Attorney at Law
Denton, TX

**Tara Ellman, MBA**
Research Consultant
Berkeley, CA

AR-00002099

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

<div align="center">

### COMMENTS TO PROPOSED RULE

</div>

ACSOL respectfully requests that the Department revise the Proposed Rule as outlined in the following 10 comments:

**I.    The Proposed Rule Fails to Distinguish Between Duties Imposed Upon *States* Consistent with the Spending Clause, and the More Limited Duties that May Be Imposed Upon *Individual Registrants* Consistent with the Commerce Clause**

In crafting the Proposed Rule, the Department sought to "provide[] a concise and comprehensive statement of what sex offenders must do to comply with SORNA's requirements." 85 F.R. 49333. The Department also stated that, "[b]y providing a comprehensive articulation of SORNA's registration requirements in regulations addressed to sex offenders," the Proposed Rule "will provide a more secure basis for prosecution of sex offenders who engage in knowing violations of any of SORNA's requirements." 85 F.R. 49334.

However, the Proposed Rule undermines both goals by failing to clarify individual registrants' precise duties under SORNA. The Proposed Rule creates confusion regarding the particular acts or omissions that create liability under SORNA. This confusion stems principally from the Proposed Rule's failure to distinguish between two separate jurisdictional spheres: (1) the duties that SORNA and the Department have imposed upon <u>states and other non-federal jurisdictions</u> pursuant to the Spending Clause, and (2) the separate (and more limited) set of duties that may lawfully be imposed upon <u>individual registrants</u> under the Commerce Clause. In fact, the Proposed Rule seems to conflate the requirements imposed upon states with those imposed upon registrants, leaving the impression that registrants may be prosecuted if they do not provide all of the information that SORNA desires states to collect as a condition, under the Spending Clause, of that state's SORNA compliance. This impression, whether intended or accidental, will cause many registrants (and perhaps prosecutors) to erroneously believe that registrants are subject to the myriad individual requirements expressed in the Proposed Rule, when the Department lacks authority, under the Commerce Clause, to impose such requirements upon registrants.

**A.    The requirements that SORNA imposes upon states are distinct from those imposed upon registrants because of the distinct jurisdictional grounds for each set of requirements**

As acknowledged in the "Overview" to the Proposed Rule,

> SORNA has a dual character, **[1]** imposing registration obligations on sex offenders as a matter of Federal law that are federally enforceable under circumstances supporting federal jurisdiction, *see* 18 U.S.C. 2250, *and [2]* providing minimum national standards that non-federal jurisdictions are expected to incorporate in their sex offender registration and notification programs, subject to a reduction of federal funding for those that fail to do so, *see* 34 U.S.C. 20912(a), 20926-27.

<div align="center">8</div>

AR-00002100

COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS
IN RESPONSE TO PROPOSED RULEMAKING
DOCKET NO. OAG 157

85 F.R. 49333 (emphasis added).

Consistent with SORNA's "dual character," the Department promulgated guidelines in 2008 that apply only to states, which prescribe the "minimum national standards" that those states must adopt in order to become SORNA compliant and avoid a loss of federal funding. *See* 73 F.R. 38044 ("These Guidelines are issued to provide guidance and assistance to covered jurisdictions—the 50 States, the District of Columbia, the principal U.S. territories, and Indian tribal governments—in implementing the SORNA standards in their registration and notification programs.") (hereinafter, the "2008 SORNA Guidelines").

Because the 2008 SORNA Guidelines impose no duties directly upon individual registrants, individual registrants cannot be federally liable under 18 U.S.C. § 2250 for failing to provide their jurisdictions with information required by the 2008 SORNA Guidelines. *U.S. v. Belaire*, 480 Fed. Appx. 284, 287-88 (5th Cir. 2012); *U.S. v. Ward*, 2014 U.S. Dist. LEXIS 160392, at *20-*21 (N.D. Fla. Nov. 14, 2014).

ACSOL understands that the present Proposed Rule—issued 12 years after the 2008 SORNA Guidelines—is the Department's effort to define and prescribe the requirements to be imposed directly upon individual registrants. However, the basis for imposing requirements upon individual registrants is not and cannot be the same as the basis for the requirements imposed upon states. This limitation upon the Department's regulatory authority over individual registrants is reflected in the 2008 SORNA Guidelines themselves, which state the following under the heading "Enforcement of Registration Requirements":

> SORNA enacted 18 U.S.C. 2250, a new federal failure-to-register offense, which provides federal criminal penalties . . . for sex offenders required to register under SORNA who knowingly fail to register or update a registration as required *where circumstances supporting federal jurisdiction exist, such as interstate or international travel by a sex offender, or conviction of a federal sex offense for which registration is required.*

73 F.R. 38069 (emphasis added). In other words, an individual registrant cannot be subject to regulation under SORNA absent "circumstances supporting federal jurisdiction," such as a federal sex offense conviction or, for registrants with state or foreign convictions, "interstate or international travel"—a clear reference to the limits of Congressional and regulatory authority under the Commerce Clause.

The limited federal jurisdiction under the Commerce Clause is a critical consideration in the discussion of the Proposed Rule because, without a proper basis for jurisdiction under the Commerce Clause, the Department may not require anything of an individual registrant. As the Fifth Circuit observed in connection with registrants convicted under state law,

> [W]ithout § 2250, [§ 20913] lacks federal criminal enforcement, and without [§ 20913], § 2250 has no substance….[because] neither [§ 20913] nor any other provision of SORNA creates any federal penalty for failing to register while

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS
IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

remaining within a state: *a sex offender who does not travel in interstate
commerce may ignore SORNA's registration requirements without fear of federal
criminal consequences.*"

*U.S. v. Whaley*, 577 F.3d 254, 259–60 (5th Cir. 2009) (emphasis added).

**B.  Neither Congress nor the Department may regulate individual registrants absent
"circumstances supporting federal jurisdiction," such as interstate travel, consistent
with the Commerce Clause**

The Fifth Circuit's ruling reflects the constitutional limits on Congressional and regulatory
authority over individual registrants under SORNA.  Specifically, the Commerce Clause requires
not only interstate travel as a condition of SORNA liability, but also that the alleged SORNA
violation have a "nexus" to that interstate travel.  As explained below, the requirements for
interstate travel and a "nexus" to the SORNA violation are confirmed by the plain text of
SORNA, the Supreme Court's interpretations of SORNA, the Department's prior regulations
implementing SORNA, and the basics of Commerce Clause jurisprudence.

**1.  The plain text of SORNA**

For registrants whose offenses arise under state or foreign law, SORNA itself requires interstate
travel as a condition for liability under SORNA.  *See* 18 U.S.C. § 2250(a)(2)(B) ("Whoever . . .
is required to register under [SORNA]; . . . *travels in interstate or foreign commerce*, or enters or
leaves, or resides in, Indian country; and . . . knowingly fails to register or update a registration
as required by [SORNA]; shall be fined under this title or imprisoned not more than 10 years, or
both.") (emphasis added).

**2.  Supreme Court Interpretations of SORNA**

Consistent with the statutory text, the Supreme Court has declared that there is no "federal
interest" in prosecuting registrants absent "a nexus between a defendant's interstate travel and
his failure to register as a sex offender."  *Carr v. U.S.*, 560 U.S. 438, 446 (2010) (emphasis
added).  The Supreme Court has also declared that such a prosecution would be "illogical."  *Id.*

Specifically, in *Carr v. United States*, the Court observed that § 2250 has "three elements," and
that "the statute's three elements must be satisfied in sequence."  This "sequential reading" of §
2250

> helps to ensure a nexus between a defendant's interstate travel and his failure to
> register as a sex offender. Persons convicted of sex offenses under state law who
> fail to register in their State of conviction would otherwise be subject to federal
> prosecution under § 2250 even if they had not left the State after being convicted
> —an illogical result given the absence of any obvious federal interest in punishing
> such state offenders.

AR-00002102

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS
IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

*Id.* at 446 (emphasis added).  Thus, under the Supreme Court's interpretation of § 2250 in *Carr*, Congress intended § 2250 to apply only to "persons required to register under SORNA over whom the Federal Government has a direct supervisory interest," or to persons "who threaten the efficacy of [SORNA's] statutory scheme by traveling in interstate commerce."  Notably, the Supreme Court echoed this interpretation of § 2250(a) in *Reynolds v. United States*, 565 U.S. 432 (2012), wherein the Court interpreted the phrase "whoever… is required to register under [SORNA]," as stated in § 2250(a), to be limited to "federal sex offender[s]" or "nonfederal sex offender[s] who trave[l] in interstate commerce."  *Id.* at 435.

### 3.  SORNA's Legislative History and the Department's Prior Rulemaking

SORNA's legislative history, as well as the Department's prior rulemaking, confirm that "interstate travel by a state sex offender" is a "predicate[]for federal enforcement of the SORNA registration requirements."  72 F.R. at 8895.  These sources further confirm that Congress attempted to secure *intrastate* registration of registrants only indirectly, through a *state-imposed* duty on registrants incentivized by its Spending Clause powers, because it cannot directly regulate registrants under the Commerce Clause.

The duty to register, as originally enacted in 1994 under the Jacob Wetterling Act, imposed upon registrants only a duty to register under state law.  Pursuant to its Spending Clause powers, Congress provided that enforcement of the state-law duty to register was confined exclusively to state-court jurisdiction.  42 U.S.C. §14071(c).  With regard to the subsequent enactment of SORNA in 2006, legislative history reveals Congress' purpose was to close a perceived "loophole" which permitted persons convicted of a sex offense under state law to go "missing" by relocating from one state to another by traveling in interstate commerce.  Evidence of this latter Congressional intent includes, but is not limited to, the legislative statements which follow:

- Representative Brown-Waite of Florida, a U.S. House sponsor of legislation which became SORNA, argued that "Congress has a duty to act and to protect our children nationwide, because these predators move from state to state."[1]

- Representative Coble of North Carolina voiced concern that there was "little to no infrastructure … to ensure registration when sex offenders move from one State to another or when a sex offender enters another State to go to work or to enroll in a school."[2]

---

[1] House Bills on Sexual Crimes Against Children: Hearing on H.R. 764, H.R. 95, H.R. 1505, H.R. 2423, H.R. 244, H.R. 2796, and H.R. 2797, Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary, 109th Cong. (June 9, 2005), page 13.

[2] House Bills on Sexual Crimes Against Children: Hearing on H.R. 764, H.R. 95, H.R. 1505, H.R. 2423, H.R. 244, H.R. 2796, and H.R. 2797, Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary, 109th Cong. (June 9, 2005), page 2.

AR-00002103

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS
IN RESPONSE TO PROPOSED RULEMAKING*
**DOCKET NO. OAG 157**

- Representative Sensenbrenner of Wisconsin, Chairman of the House Judiciary Committee, and a principal co-author of what became SORNA, explained that "[i]n order to address the problem of missing sex offenders, that is those who fail to comply with moving from one State to another, sex offenders will now face Federal prosecution."[3]

In addition to the foregoing statements by Members of Congress, on March 8, 2006, during debate on the floor of the House, a letter expressing the views of the United States Judicial Conference was entered into the record. With regard to what would later become § 2250, the Judicial Conference noted:

> Another section would make it a federal crime for a person to knowingly fail to register as required under the Sex Offender Registration and Notification Act if the person is either a sex offender based upon a federal conviction or is a sex offender based on a state conviction who thereafter travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country.[4]

### 4.   The Department's Prior Regulations Under SORNA

In at least four publications issued under the Department's regulatory authority to implement SORNA, the Department has consistently stated, in substantially similar form, that:

> SORNA directly imposes registration obligations on sex offenders as a matter of federal law and provides for federal enforcement of these obligations under circumstances supporting federal jurisdiction. These obligations include registration, and keeping the registration current, in each jurisdiction in which a sex offender resides, is an employee, or is a student, with related provisions concerning such matters as the time for registration, the information to be provided by the registrant, and keeping the information up to date.
>
> ****
>
> Because circumstances supporting federal jurisdiction—such as conviction for a federal sex offense as the basis for registration, or interstate travel by a state sex offender who then fails to register in the destination state—are required predicates for federal enforcement of the SORNA registration requirements, creation of these requirements for sex offenders is within the constitutional authority of the Federal Government.

72 F.R. 8894, 8895 (Interim Rule).[5]

---

[3] 151 Cong. Rec. 20,207 (debate on Children's Safety Act of 2005, H.R. 3132) (Sept. 14, 2005).

[4] 152 Cong. Rec. 2254, 2983 (March 8, 2006).

[5] *See also National Guidelines for Sex Offender Registration and Notification*, 73 F.R. 38030, 38069 (July 2, 2008) (Final Guidelines) (limiting enforcement of Section 2250 to "circumstances

AR-00002104

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

### 5. The Commerce Clause

The above-described limitations on the Department's authority to regulate registrants directly stems from the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3, which likewise precludes Congress and the Department from regulating activity where federal jurisdiction is absent. The Supreme Court has placed into three categories the circumstances which permit a valid exercise of Commerce Clause powers by Congress:

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Third, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce.

*United States v. Lopez*, 514 U.S. 549, 558 (1995) (internal citations omitted).

The status of a person who has been convicted of a sex offense in violation of state law, even when the state's laws define a "sex offense" in the same manner as does SORNA, does not involve "the use of the channels of interstate commerce" or "regulation or protection" of any "instrumentalities of interstate commerce."[6]

---

supporting federal jurisdiction… such as interstate or international travel by a sex offender, or conviction of a federal sex offense for which registration is required"); *Applicability of the Sex Offender Registration and Notification Act*, 75 F.R. 81849, 81850 (Dec. 29, 2010) (Final Rule); and *Supplemental Guidelines for Sex Offender Registration and Notification*, 76 F. R. 1630, 1638 (Jan. 11, 2011) (Final Guidelines).

[6] While the Supreme Court has ruled Congress may constitutionally "anticipate the effects on commerce of an economic activity," see, *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 557 (2012) (Roberts, C.J.), the Court has "never permitted Congress to anticipate that activity itself in order to regulate individuals not currently engaged in commerce." *Ibid*. In other words, Congress has the "power to regulate 'class[es] of activities,' not classes of individuals, apart from any activity in which they are engaged." *Id.* at 556. A person's status as a registrant, of course, does not alone establish that the person is engaged (or will engage) in interstate commerce. Just as "possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce," *United States v. Lopez*, 514 U.S. 549, 567 (1995), a person's mere status as a state sex offender "is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." For this reason, as a matter of statutory interpretation, it must be presumed Congress did not intend to impose on registrants with convictions under state law an "intrastate" federal duty to comply with SORNA in the absence of interstate commerce. *See also Gonzales v. Raich*, 545 U.S. 1, 23 (2005).

AR-00002105

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

Under these circumstances the only valid federal interest which could plausibly support federal regulation under the Commerce Clause would be a claim under the third category described above.  That is, imposition of the duty upon registrants to comply with SORNA would be authorized under the Commerce Clause only if the registrant's "intrastate" activities "threaten the efficacy" of a valid regulation of interstate commerce.  In *United States v. Morrison*, the Supreme Court clarified the legal framework for analyzing assertions of Congressional power under the "third category" of powers under the Commerce Clause, *i.e.*, activities which are entirely "intrastate," but which nonetheless "substantially affect interstate commerce."  In this context, the Court directed consideration of the following inquiries:

    1)    Whether the activity sought to be regulated involves "economic" activity;

    2)    Whether the statute seeking to regulate an intrastate activity contains an "express jurisdictional element" which limits the statute's reach to a discrete set of activities that additionally have an explicit connection with or effect on interstate commerce;

    3)    Whether the literal, textual terms of the statute which seeks to regulate an intrastate activity, or the statute's legislative history, contains "an express congressional finding" regarding the effects of the intrastate activity upon interstate commerce; and

    4)    Whether the linkage, if any, between the intrastate activity sought to be regulated, and the activity's "substantial effect on interstate commerce," is attenuated.

*United States v. Morrison*, 529 U.S. 598, 610-12 (2000).

The federal regulation of individual registrants under § 20913(a), unconstrained by § 2250(a)'s interstate travel requirement, would fail to satisfy any of the four criteria stated above.  First, a person's status acquired by having previously been convicted of a sex offense in violation of state law does not qualify as an "activity," much less an "economic" activity, within the meaning of the Commerce Clause.  Second, unlike § 2250(a), § 20913(a) does not contain an "express jurisdictional element" which limits its reach to a discrete set of activities that additionally have an explicit connection with or effect upon interstate commerce.  Third, neither the plain language of § 20913(a) nor its legislative history contain "an express congressional finding" regarding the adverse commercial effects which would result if persons with only a prior state-law conviction for a sex offense remain unregulated by an intrastate federal duty to register under § 20913(a).  Fourth, while a person remains within a state there is no "linkage" between that person's status as a registrant under state law, and any "substantial effect on interstate commerce."

///

///

///

14

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS
IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

C. **The Proposed Rule—and each discrete requirement therein—should be revised to qualify that registrants need only comply when "circumstances supporting federal jurisdiction" are present**

Despite the above-described, acknowledged limits on federal jurisdiction over individual registrants, the Proposed Rule omits any mention of the fact that "circumstances supporting federal jurisdiction" are a prerequisite to any lawful federal regulation of individual registrants, consistent with the Commerce Clause.  That is, although the Department's introduction to the Proposed Rule states that "circumstances supporting federal jurisdiction" are a prerequisite to "enforcement" of, and "liability" under, SORNA, *see, e.g.*, 85 F.R. 49333, 49336, 49350, the federal jurisdictional prerequisite is nowhere mentioned in the text of the Proposed Rule itself as a condition of the Department's authority to regulate individual registrants, nor is the prerequisite acknowledged as a condition of an individual registrant's duty to act in response to federal authority.

This omission could erroneously imply, and thereby falsely communicate to registrants and prosecutors, that the Proposed Rule requires individual registrants to comply with each discrete requirement of the Proposed Rule—including those that mirror the requirements for jurisdictions per the 2008 SORNA Guidelines—even when no "circumstance supporting federal jurisdiction" is present.  Indeed, the Proposed Rule seems to suggest that the Department may have intentionally confused the scope of its authority over individual registrants in an effort to achieve voluntary compliance with registration requirements that the Department has no statutory or constitutional authority to impose.  Attorney General Barr recently cautioned the Department against such overreach, noting:

> In exercising our prosecutorial discretion, one area in which I think the Department of Justice has some work to do is recalibrating how we interpret criminal statutes.  In recent years, the Justice Department has sometimes acted more like a trade association for federal prosecutors than the administrator of a fair system of justice based on clear and sensible legal rules.  In case after case, we have advanced and defended hyper-aggressive extensions of the criminal law. This is wrong and we must stop doing it.
>
> The rule of law requires that the law be clear, that it be communicated to the public, and that we respect its limits. We are the Department of Justice, not the Department of Prosecution.
>
> We should want a fair system with clear rules that the people can understand. It does not serve the ends of justice to advocate for fuzzy and manipulable criminal prohibitions that maximize our options as prosecutors. Preventing that sort of pro-prosecutor uncertainty is what the ancient rule of lenity is all about.  That rule

15

AR-00002107

should likewise inform how we at the Justice Department think about the criminal law.[7]

Accordingly, in order to avoid ambiguity or illegality, the Proposed Rule should plainly disclaim any attempt to regulate intrastate activity, or any activity that lacks a nexus to interstate travel. Several of the comments that follow are directed to achieving this clarification.

## II.  The Proposed Rule Lacks a Clear Statement that a Registrant᾽s Duty to Act Under SORNA Arises Only When the Registrant Travels Interstate and that Travel Has a 'Nexus' to the Alleged SORNA Violation

The authorities discussed above demonstrate that SORNA imposes no duty upon individual registrants unless they travel interstate and there is a nexus between that travel and the SORNA requirement at issue.  *Carr*, 560 U.S. at 446.  The nexus requirement is reflected in SORNA's statutory purpose.  That is, in enacting SORNA, Congress did not intend to dictate the information that each individual registrant throughout the country must report to each state, under threat of federal prosecution, irrespective of federal jurisdiction limitations.  Instead, Congress had a much narrower focus and target, namely absconders who "move to another state, fail to register there, [] thus leav[ing] the public unprotected."  *United States v. Dixon*, 551 F.3d 578, 582 (7th Cir. 2008), *citing* H.R. Rep. No. 218, 109th Cong., 1st Sess. 23-24, 26 (2005), *rev'd on other grounds by Carr v. U.S.*, 560 U.S. 438 (2010).

As currently written, however, the Proposed Rule creates ambiguity regarding the critical questions of (1) whether a registrant has a duty to act under SORNA before interstate travel occurs, and (2) what can be required of registrants who travel interstate.  The necessity of this clarification in the Proposed Rule is illustrated by the following factual scenarios involving hypothetical registrants.  The failure to provide clarity will confuse registrants and invite selective and groundless prosecutions—the opposite of the stated objective of the Proposed Rule.

### A.  Factual scenarios common to registrants illustrate the need to clarify when the federal duty to act under SORNA arises

Consider the following four factual scenario involving registrants:

- **Registrant A** changes his residence from California to Nevada and fails to register in Nevada, his new state of residence.  Registrant A is alleged to have violated SORNA by failing to register in Nevada.

///

///

---

[7] Remarks by Attorney General William P. Barr at Hillsdale College Constitution Day Event, Sept. 16, 2020, available at https://www.justice.gov/opa/speech/remarks-attorney-general-william-p-barr-hillsdale-college-constitution-day-event

AR-00002108

- **Registrant B** resides in California.  In 2021, he visits his mother for 2 days in Nevada, and returns to California.  In 2022, Registrant B neglects to renew his registration in California.  Registrant B is alleged to have violated SORNA by failing to renew his registration in California in 2022.

- **Registrant C** resides in New Jersey, but works at various locations in New York and Connecticut and travels among those three states weekly.  Registrant D is alleged to have violated SORNA by failing to report all of the information required by the Proposed Rule in each of those three states.

- **Registrant D** resides in California.  In 2021, he neglects to properly update his registration in California as required by California law.  In 2022, Registrant C visits his mother for 2 days in Nevada, and returns to California.  Registrant C is alleged to have violated SORNA by failing to update his registration in California in 2021.

- **Registrant E** resides in California and does not travel interstate.  In 2021, he neglects to register his boat with his local registering agency.  The boat is kept at home.  Registrant E is alleged to have violated SORNA by failing to report information regarding his boat as required by § 72.6(f) of the Proposed Rule.

In the case of **Registrant A**, the violation of SORNA is evident.  As explained above, Registrant A's scenario is the scenario targeted by SORNA's authors.  A circumstance supporting federal jurisdiction (*i.e.*, interstate travel) is present.  Also present is a nexus between that interstate travel and the alleged violation of SORNA.  Finally, the interstate travel preceded the SORNA violation.

In contrast, the circumstances of **Registrations B, C, D, and E** represent distinct, yet commonplace, situations in which there should be no liability under SORNA, but which the Proposed Rule fails to clarify.

**Registrant B** traveled interstate prior to the alleged SORNA violation, but there is no nexus between the travel and the alleged SORNA violation.  Without clarification that a duty to comply with SORNA arises only when interstate travel occurs and there is a nexus between that travel and the provision of SORNA at issue, registrants such as Registrant B who travel across state lines will wrongly believe that their incidental interstate travel triggers a duty to comply with all of the Proposed Rule's reporting requirements indefinitely, even if the requirements have no nexus to the interstate travel.

**Registrant C** travels interstate each week for work, because he resides in New Jersey but works in New York and Connecticut.  Registrant C is representative of thousands of registrants who live in regions of the country where interstate travel is common.  However, divorcing the prerequisite of interstate travel from a requirement that such interstate travel have a nexus to the alleged SORNA violation will produce confusion and fear, and chill these registrants' basic life activities, because they will wrongly believe that merely traveling across state lines will subject

them to federal prosecution in multiple states for failing to report all of the information required
by the Proposed Rule in each of those states.

**Registrant D** traveled interstate only after the alleged SORNA violation, and that travel had no
nexus to the SORNA violation.  Under a proper interpretation of the Commerce Clause,
Registrant D should not be liable under SORNA, because any duty he had to comply with
SORNA did not arise until after he crossed a state line.  Thus, Registrant C's SORNA violation
predated his interstate travel, and thus did not trigger any duty under SORNA.  Absent
clarification in the Proposed Rule, registrants will wrongly believe that interstate travel will
permit the Department to reach back years into the past and bring federal charges under SORNA
for any failure to comply with state law, and/or the Proposed Rule, prior to that interstate travel.

Finally, **Registrant E** did not travel interstate, and there is no other basis for federal jurisdiction
in connection with the alleged SORNA violation.  The alleged SORNA violation is for strictly
intrastate activity.  Yet, because the Proposed Rule fails to clarify that individual registrants are
not subject to a duty to act under SORNA unless and until they travel interstate, registrants such
as Registrant E will wrongly believe they are immediately and forever in violation of all of the
Proposed Rule's reporting requirements that their state does not facilitate, even when they have
taken no action that subjects them to federal jurisdiction.

In sum, the Department should clarify that the Proposed Rule's target is the same as Congress':
absconders who attempt to evade a registration requirement by moving from one state to another
in interstate commerce, like Registrant A, above.  Further, consistent with the jurisdictional
limits on Congress and the Department, the Proposed Rule should clarify that it does not seek to
impose liability in the cases of Registrants B, C, D, or E, where there is no nexus between
interstate travel and a particular reporting requirement of the Proposed Rule.

### B.  A lack of clarity in the Proposed Rule threatens arbitrary and selective enforcement

The consequences of the Proposed Rule's ambiguity regarding when a federal duty under
SORNA arises are dire because the ambiguity will invite selective and arbitrary enforcement.
For example, prosecutors may erroneously believe that the Proposed Rule, if formally issued,
provides a basis for liability even in the absence of interstate travel or a nexus to the alleged
SORNA violation.  Prosecutors made a similar error in connection with the 2008 SORNA
Guidelines when they prosecuted individual registrants for their failure to follow those
Guidelines, even though the 2008 SORNA Guidelines were written exclusively for states.  Some
prosecutions were successful in the District Court, and later reversed on appeal.  In the interim,
the affected registrants' lives were often devasted.  *Cf. U.S. v. Belaire*, 480 Fed. Appx. 284, 287-
88 (5th Cir. 2012) (reversing conviction under 2008 SORNA Guidelines); *U.S. v. Ward*, 2014
U.S. Dist. LEXIS 160392, at *20-*21 (N.D. Fla. Nov. 14, 2014) (dismissing indictment under
2008 SORNA Guidelines).

///

18

***COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS***
***IN RESPONSE TO PROPOSED RULEMAKING***
DOCKET NO. OAG 157

In addition, in light of the relative rarity of federal failure-to-register prosecutions, the Proposed Rule will exacerbate the risk of selective and inconsistent enforcement with little benefit to public safety.  According to the U.S. Sentencing Commission, the Attorney General has obtained only 4,582 convictions for SORNA violations nationwide during the 13-year period between FY 2007 and FY 2019.  Yet, of this total, 97.5% (4,466) of those convicted of failure to register committed no new sex offense "while in failure to register status," confirming that the risk to the public of persons in violation of SORNA's requirement is low.  Given that the Proposed Rule treats major and minor SORNA violations alike, maintaining ambiguity regarding the Department's authority to impose the myriad information reporting requirements of the Proposed Rule will invite a waste of federal resources.

The threatened waste of resources is exacerbated by the fact that prosecutions under SORNA are already selective and inconsistent, as demonstrated by the Sentencing Commission data.  For example, in FY 2019, only 5 people were convicted of SORNA violations in California, the state with the largest registry, whereas 46 were convicted in Texas.

Attorney General Barr recently cautioned that:

> The essence of the rule of law is that whatever rule you apply in one case must be the same rule you would apply to similar cases. Treating each person equally before the law includes how the Department enforces the law.
> ….
> We must strive for consistency. And that is yet another reason why centralized senior leadership exists—to harmonize the disparate views of our many prosecutors into a consistent policy for the Department. As Justice Jackson explained, "we must proceed in all districts with that uniformity of policy which is necessary to the prestige of federal law."[8]

Absent confirmation that federal jurisdiction is a prerequisite to any duty under SORNA, the Proposed Rule will provide even greater incentives for arbitrary and selective prosecution, providing the opposite of "a concise and comprehensive statement of what sex offenders must do to comply with SORNA's requirements," or a [] secure basis for prosecution of sex offenders who engage in knowing violations of any of SORNA's requirements."  85 F.R. 49333-34.

///

///

///

///

---

[8] Remarks by Attorney General William P. Barr at Hillsdale College Constitution Day Event, Sept. 16, 2020, available at https://www.justice.gov/opa/speech/remarks-attorney-general-william-p-barr-hillsdale-college-constitution-day-event

AR-00002111

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
Docket No. OAG 157

III.    **Sections 72.7(d) and (g) of the Proposed Rule, Containing Requirements to Report a
'Departure from a Jurisdiction' and 'Termination' of Residence, Exceed the Scope
of Legislative Authority Conferred by Congress under 34 U.S.C. § 20914(a) and (c)**

Section 72.7(d) of the Proposed Rule exceeds the scope of authority under SORNA as confirmed
by the U.S. Supreme Court in *Nichols v. U.S.*  That is, Section 72.7(d) will unconstitutionally add
additional reporting requirements neither found in nor authorized by SORNA.

A.    **The Supreme Court has already ruled that SORNA does not require 'departure' or
'termination' information such as that required by § 72.7(d)**

Section 72.7(d) provides:

(1)    A sex offender residing in a jurisdiction must inform that jurisdiction (by
whatever means the jurisdiction allows) if the sex offender will be
commencing residence, employment, or school attendance in another
jurisdiction or outside of the United States. The sex offender must so
inform the jurisdiction in which he is residing prior to any termination of
residence in that jurisdiction and prior to commencing residence,
employment, or school attendance in the other jurisdiction or outside of
the United States[; and that].

(2)    A sex offender who will be terminating residence, employment, or school
attendance in a jurisdiction must so inform that jurisdiction (by whatever
means the jurisdiction allows) prior to the termination of residence,
employment, or school attendance in the jurisdiction.

Yet, the Department admits that the information required by proposed § 72.7(d) is not required
by SORNA, *see* 85 F.R. 49346, 49347, and further acknowledges that § 72.7(d) is in tension with
the U.S. Supreme Court's decision in *Nichols v. United States*, 136 S. Ct. 1113 (2016) to the
extent that §72.7(d) would be applied to intended travel in interstate commerce.  Specifically, the
Department observes "§72.7(d) [would] resolv[e] certain potential problems in the operation of
SORNA's registration system following the Supreme Court's decision in *Nichols v. United
States*."  In other words, the statutory limits on the Department's authority articulated in *Nichols*
are a "problem," that the Proposed Rule intends to solve by proposing a basis for the federal
regulation of Registrants—despite confirmation in *Nichols* that no such basis for regulation
exists.

*Nichols* involved an inquiry into the intent of Congress when it enacted 34 U.S.C. § 20913(c).
The text of § 20913(c) provided then, as it does now, that:

A sex offender shall, not later than 3 business days after each change of name,
residence, employment, or student status, appear in person in at least 1
jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all
changes in the information required for that offender in the sex offender registry.

20

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS
IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

> That jurisdiction shall immediately provide that information to all other
> jurisdictions in which the offender is required to register.

In *Nichols* the Supreme Court ruled that under SORNA "the State a sex offender leaves—that is,
the State where he formerly resided" does not "qualif[y] as an 'involved' jurisdiction" under
former § 16913 (currently codified at 34 U.S.C.§ 20913). The Court also observed that
SORNA's immediate statutory predecessor, the Jacob Wetterling Act as amended in 1998,
directed states to require registrants to "report the change of address to the responsible agency *in
the state the person is leaving*" (emphasis in original), but that this provision of the Wetterling
Act was repealed by SORNA in 2006 and replaced by § 20913(c) as quoted above.

The Court also noted that, a short time before its decision in *Nichols*, Congress enacted a statute
known as "International Megan's Law" ("IML"). The IML for the first time required registrants
to report information to U.S. authorities prior to their departure to a foreign country. Similar to
its conclusion that Congress "could have chosen" but did not choose "to retain the language in
the amended Wetterling Act" in SORNA and thereby require registrants to report their intention
to depart to another state prior to departure, the Court's reference to the IML in *Nichols* indicates
a conclusion by the Court, at least implicitly, that when Congress enacted SORNA it consciously
chose to omit the requirement now proposed by the Department in § 72.7(d) and enforced by
§72.7(g).

On the basis of each of the foregoing observations, the Court in *Nichols* ruled that "SORNA's
plain text—in particular, § [20]913(a)'s consistent use of the present tense—therefore did not
require Nichols to update his registration" in the state from which he departed "once he no longer
resided there." Since the Supreme Court rendered its decision in *Nichols*, Congress has not
legislatively abrogated the Supreme Court's interpretation of SORNA in this respect.

Notably, the Department, in its interim rule of 2007, determined a "State sex offender" commits
an offense under § 2250(a) or breaches his "federal" duty to register under SORNA, only if, after
interstate travel, he "then fails to register in the destination state"—not after he has failed to
register in the state from whence he traveled. In other words, "travel in interstate commerce" is a
"predicate" for "federal enforcement of the SORNA registration requirements." If § 20913(a)
and § 2250(a) are read *in pari materia*, the federal regulation of individual registrants under §
20913(a), rendered enforceable by § 2250(a), must be construed to mean § 20913(a), to the
extent it concerns a "federal" duty, only imposes a duty on a "state offender" who, after interstate
travel, fails to register in the state of his "destination."

Section 72.7(d) of the Proposed Rule, and its enforcement provision, §72.7 (g), contradict the
sound reasoning of the 2007 interim rule, as well as the ruling in *Nichols*, by imposing a new
federal duty on persons who have a sex offense conviction to "update" their registration
information while still residing in a state from which they intend to depart. Among other things,
the practical effect of § 72.7 (d) and (g) would be that, for the first, time registrants would be
subjected to federal prosecution under 18 U.S.C. §2250(a) immediately upon crossing a state
border and engaging in commerce, due to a failure to "update" their registration information

21

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS
IN RESPONSE TO PROPOSED RULEMAKING*
**DOCKET NO. OAG 157**

while still residing in the state from which they departed.  This new federal duty would apply
regardless of whether, as required by § 20913(c), a sex offender: (1) "appear[ed] in person" in
"at least 1 jurisdiction involved pursuant to subsection (a)"; and (2) did so "not later than 3
business days after" his interstate travel; and then (3) timely informed the "involved jurisdiction"
(the state of his destination), as defined by *Nichols*, of "all changes in the information required"
by "the sex offender registry" after his interstate travel.

Because both § 72.7 (d) and (g) would exceed the scope of legislative authority delegated to the
Department by Congress under § 20914(a) and (c), and because Congress is not vested with an
enumerated power under the U.S. Constitution to impose upon a registrant the intrastate federal
duties that § 72.7 (d) and (g) seeks to require, both § 72.7 (d) and (g) cannot lawfully or
constitutionally be adopted by the Attorney General.

### B. The Department's proposed basis for issuing § 72.7(d) was rejected by the U.S. Supreme Court in the *Nichols* and *Gundy* cases

The Department claims authority to promulgate § 72.7 (d) and (g) on three grounds: (1) the
requirement that registrants report addresses where they "will reside;" (2) the requirement to
report "any other information required by the Attorney General;" and (3) the requirement to
provide information "in conformity with any time and manner requirements prescribed by the
Attorney General."  85 F.R. 49345-48.  However, these arguments are based on a contention that
was presented to, and squarely rejected by, the Supreme Court in *Nichols*.  In *Nichols*, the Court
observed:

> [T]he Government points out that among the pieces of information a sex offender
> must provide as part of his registration is "[t]he address of each residence at
> which the sex offender resides or will reside." § [20]914(a)(3). The use of the
> future tense, says the Government, shows that SORNA contemplates the
> possibility of an offender's updating his registration before actually moving. But §
> [20]914(a) merely lists the pieces of information that a sex offender must provide
> if and when he updates his registration; it says nothing about whether the offender
> has an obligation to update his registration in the first place.

*Nichols*, 136 S. Ct. at 1118.

As in *Nichols*, determination of whether the Department's final approval of § 72.7(d) and (g)
would exceed the scope of the authority delegated by Congress depends primarily on a
recognized legal distinction that exists between (1) "whether" a requirement should apply, and
(2) "how" a requirement should be applied.  As explained below, the former delegation of
authority, if exercised by the Department, would be unconstitutional, while the second delegation
of authority would not.

///

22

AR-00002114

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

For example, in *Gundy v. United States*, 139 S. Ct. 2116 (2019), the petitioner contended 34
U.S.C. §20913(d) unconstitutionally delegated legislative authority in a manner that allowed
the Attorney General "to do whatever he wants."  When sustaining §20913(d) against this challenge,
the Court in *Gundy*, as a matter of statutory interpretation, narrowly interpreted the phrase
"specify the applicability" in §20913(d) to mean the Attorney General had only been empowered
to determine "how" a requirement imposed by Congress would be applied.  Consistent with the
"constitutional avoidance" doctrine of statutory interpretation, the Court further ruled that
§20913(d) did not empower the Attorney General to determine "whether" to impose a
requirement.   It was by this means that the Court avoided what otherwise would have presented
a "grave" constitutional question.  *Gundy*, 139 S. Ct. at 2141,

Section 72.7(d), as proposed, answers the "whether" question already decided by the U.S.
Supreme Court in *Nichols* (*i.e.*, Congress did not intend to impose an intrastate pre-departure
requirement in SORNA), and it transparently decides, contrary to the Supreme Court's decision
in *Nichols*, that the Department retains authority to impose a new federal duty because, in its
view, Congress erred as a matter of policy when it consciously chose not to close what the
Department considers unsatisfactory "loopholes" within SORNA.  Section 72.7(d) thus is not a
regulatory act which merely specifies "how" a requirement otherwise imposed by Congress will
be applied by the Attorney General.  Rather, § 72.7(d) constitutes an unlawful and
unconstitutional attempt to assume legislative authority that has never been delegated to the
Department by Congress or by the U.S. Constitution.  For these reasons, § 72.7(d) and its
enforcement provision, § 72.7(g), are an *ultra vires* act and should be withdrawn from the
Proposed Rule.

### IV.    The Proposed Rule Should Clarify that  §  72.7(g) is a Safe Harbor that Absolves Registrants of a Duty to Report Information Required by SORNA When State Law or the Local Agency Does Not Require that Information

Section 72.7(g) addresses circumstances in which a particular registrant's state law registration
requirements differ from the requirements of SORNA in one or more of the following ways:
(1) the state no longer requires that person to register; (2) the state does not require, or collect,
the information called for by SORNA; or (3) the state has more lenient time and manner
requirements for reporting than SORNA.  Section 72.7(g) is, presumably, an attempt to
incorporate the affirmative defense of § 2250(c) into the discrete reporting requirements set forth
in § 72.7(a)-(f).  Yet, as currently written, § 72.7(g) creates unnecessary confusion regarding the
nature of a registrant's duty under SORNA in these commonplace situations and should be
clarified to confirm that registrants will not be prosecuted under SORNA when the state in which
they reside does not facilitate compliance with SORNA's mandates.

Since SORNA's enactment, federal courts have consistently found that an individual registrant's
compliance with state registration requirements satisfies SORNA's federal requirements. *E.g.*,
*U.S. v. Paul*, 718 Fed. Appx. 360, 363 (6th Cir. 2017) ("In practice, sex offenders register
according to the requirements of their state of residence; that registration also satisfies

AR-00002115

SORNA."); *U.S. v. Heth*, 2008 U.S. Dist. LEXIS 108437, at *20-21 (W.D. Tex. Sept. 30, 2008) ("When a sex offender 'knowingly' fails to register or update registration 'as required by [SORNA]' it simply means the sex offender failed 'to comply with the requirements of a [State's] registry.'").

Further, the Department's own discussion of the Proposed Rule acknowledges the "two-party" nature of registration, and specifically acknowledges that compliance with SORNA is contingent upon an individual state's "acceptance" of any information offered by a registrant. 85 F.R. 49336-37. In other words, a registrant cannot comply with SORNA unless his local registering agency "accepts" the information required by SORNA. Consistent with this reality, the Department has generally brought prosecutions for failure to register under § 2250(a) only when the registrant has crossed a state line in an attempt to avoid registering in his state of residence. The Department has not prosecuted registrants who are properly registered with their local agency because those registrants did not also provide all of the information that SORNA requires on the timeline that SORNA requires it. To prosecute a registrant under the latter scenario would be to saddle registrants with obligations that belong to state and local government.

Section 72.7 of the Proposed Rule, however, is not consistent on with this reality, or with the Department's history of prosecution under SORNA. On the one hand, § 72.7(g)(1) provides that a registrant does not violate SORNA when his jurisdiction does not facilitate all of SORNA's reporting requirements, provided that he comes into compliance with SORNA if his jurisdiction later does facilitate SORNA's reporting requirements and the registrant receives due notice of that change. Yet, on the other hand, § 72.7(g)(2) implies that a registrant can still be prosecuted for violating SORNA when his jurisdiction does not facilitate all of SORNA's reporting requirements. Section 72.7(g)(2) further implies that a registrant can escape liability under SORNA only by proving that it was impossible for him to force his jurisdiction to facilitate SORNA's reporting requirements. In addition, the commentary to the Proposed Rule appears to contemplate that a Registrant's duty to comply with SORNA endures even if his state does not accept the information required by SORNA, or does not require the same information that SORNA requires. The Department's commentary states "Notwithstanding the absence of a parallel state law, the registration authorities in the state may be willing to register the sex offender because Federal law (*i.e.*, SORNA) requires him to register. If the state registration authorities are willing to register the sex offender, he is not relieved of the duty to register merely because state law does not track the Federal law registration requirement." 85 F.R. 49336 (internal citation omitted).

This contradictory mandate is not consistent with the nature of federal jurisdiction or the realities of the registration process that the Department acknowledges.

///

///

///

24

### A.  The Proposed Rule contains no guidance regarding how a registering agency's 'willingness' to accept SORNA's registration information is to be ascertained

The Proposed Rule provides no guidance about how a local agency's "willingness" to facilitate SORNA compliance is to be ascertained, consistent with the defense articulated by the Department in § 72.7(g).  Registrants cannot by expected to query and cajole registering agencies, or individual registration officials within those agencies, regarding their "willingness" to accept the dozens of discrete informational disclosures required by the Proposed Rule, within the strict time and manner parameters of the Proposed Rule.

For example, consider a registrant who resides in California, where the deadline to register a new residence is five working days, *i.e.*, two working days longer than SORNA's 3-day deadline. Registration in California is frequently done by appointments that are either negotiated with, or dictated by, the registration official.  Is a California registrant who registers four working days after changing his residence subject to liability under SORNA unless he proves that he attempted to ascertain his local registration agent's "willingness" to make an earlier appointment?  Must the registrant appear at his local registering agency within three business days and demand to be registered on a shorter time frame than state law allows the local agency to observe?  Similarly, must a registrant attempt to force his local registering agency to accept information that state law does not require, may possess no means to collect, and may not wish to have, such as information regarding vacations lasting more than 7 days (§ 72.6(c)(2)), or the registrant's usernames and passwords for perhaps dozens of online retailers, social media sites, news websites, and other online services (§ 72.6(b))?  To require registrants to prove that they attempted all of these acts, and to further prove the "unwillingness" of their local registering agency to accept them, is equivalent to impressing individual registrants into the service of the Department's effort to secure universal SORNA compliance by state and local government, which SORNA does not require of registrants.

### B.  Section 72.7(g) is particularly unworkable for registrants who have been relieved of any duty to register under their state's law

As noted above, the inability of registrants to control the states in which they reside and their local registering agencies is particularly acute when the state has affirmatively relived that registrant of a duty to register under state law, whether through the expiration of tier-defined registration periods or through post-conviction relief.  In these situations, state law provides no legal basis for processing that person's registration or performing the necessary second "step" of "accepting" the information required in SORNA's scheme.

Consider the example of registrants residing in the states of Indiana or Maryland.  Courts in both jurisdictions have held that their respective state constitutions prohibit the registration of certain persons.  *See Wallace v. State*, 905 N.E.2d 371 (Ind. 2009); *Dep't of Pub. Safety & Corr. Servs. v. Doe*, 439 Md. 201, 94 A.3d 791 (Md. 2013).  In addition, courts in Indiana and Maryland have held that their respective state registration agencies are prohibited from accepting the registrations of such persons, *even if SORNA requires their continued registration as a matter of*

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

*federal law*.  In fact, the Maryland  Court of Appeals (the court of highest jurisdiction in Maryland) expressly ruled that, "[a]lthough . . . SORNA creates a direct obligation on sex offender to register in their home state, independent of that state's implementation of SORNA, *the state need not accept the registration if doing so would be contrary to state law*."  *Doe*, 439 Md. at 232, 94 A.2d 809 (emphasis added).  *See also Andrews v. State*, 978 N.E.2d 494 (Ind. Ct. App. 2012), *transfer denied*, 985 N.E.2d 339 (Ind. 2013); *State v. Hough*, 978 N.E.2d 505 (Ind. Ct. App. 2012).  The Proposed Rule should make clear that registrants in Indiana or Maryland (or in other states with similar rules, whether judicial, administrative or legislative) can rely upon these rules and are not required to make repeated fruitless attempts to register with their local registering agency.

A related issue arises whenever state law allows registrants a path off the registry that is not recognized by SORNA.  ACSOL estimates that there are hundreds of thousands of persons who have been removed from their state's registries through means such as the expiration of a tiered registration period shorter than that required for SORNA compliance, or through a post-conviction relief process such as a Certificate of Rehabilitation.  In California, the number of registrants eligible for removal from the registry will increase dramatically in 2021 when the state shifts to a tiered registry from the current lifetime registration system.  *See* Cal. Pen. Code § 290(d), eff. July 1, 2021.  Thousands of California registrants placed in Tier 1 or Tier 2 for old convictions will become eligible for removal from the registry because they are now beyond the minimal registration period imposed for that tier; yet, some of these registrants would still be required to register if California's new system met SORNA requirements—*i.e.*, California requires a twenty-year registration period for those placed in Tier 2, while SORNA requires 25 years.  34 U.S.C. § 20915(a)(2).  Others will fall into a higher tier under SORNA than under California law.  Registrants who have consistently complied with the registration rules of California and successfully petition for removal from the registry under California's new law may nonetheless be put in fear of a federal prosecution because California has chosen a tiering system different than SORNA's.[9]

The prosecution of such individuals would, however, be inconsistent with the Congressional purpose in creating the federal crime of failure to register, which was to target individuals who travel interstate in order to evade their registration obligations.  Indeed, as discussed above, it is likely, under the Court's analysis of federal criminal jurisdiction in *Morrison*, 529 U.S. 598

---

[9] A discrete example in California is the large proportion of registrants convicted under the "broad and amorphous" provisions of section 288(a) of the Penal Code.  *See People v. Martinez* 11 Cal. 4th 434, 442-44 (1995).  Because the conduct covered by Section 288(a) can differ in severity, California's tiered registry law assigns persons convicted of this offense to Tier 2, with a minimum 20-year registration term, and an annual update requirement.  Yet, according to the latest "Implementation Review" from the Department's SMART Office, California will be SORNA compliant only if it assigns Section 288(a) to Tier 3, and imposes both a lifetime registration obligation with a quarterly update requirement upon registrants with that conviction. U.S. Dept. of Justice, Office of Justice Programs, SMART Office, *SORNA Substantial Implementation Review of State of Cal*., at p. 19 (Jan. 2016).

AR-00002118

(2000), that the Commerce Clause would not support federal jurisdiction where there is no nexus between the interstate travel and the technical registration violation. Perhaps for that reason, as well as a rational allocation of prosecutorial resources, federal prosecutions for failure to register have to date focused exclusively on persons who move interstate and do not register in their destination, and whose travel is plausibly seen as having the purpose of evading the registration requirements.

The Proposed Rule should recognize this policy explicitly, so that individuals who have always complied with their state's registration requirements wherever they have lived or worked are not put in fear of federal prosecution unless they repeatedly attempt to persuade their local authorities to accept registrations those authorities do not require and may not accept.

## V.    The Department's Interpretation of the Affirmative Defense of § 2250(c) Violates the Due Process Clause of the Fifth Amendment

The Department's interpretation of the affirmative defense of 18 U.S.C. § 2250(a), as reflected in its commentary to § 72.7(g) and 72.8, suggests that the Proposed Rule intends to maximize the potential liability of registrants by absolving the government of its obligation to prove the registrant's knowledge of the SORNA registration requirement.  In turn, the Proposed Rule effectively places upon individual registrants a duty to prove their lack of knowledge, which is inconsistent with the basic requirements of criminal liability.

The comments to the Proposed Rule state that criminal liability under § 2250(a) does not require proof of a registrant's "knowledge" that a registration requirement "is imposed by SORNA" itself.  85 F.R. 49332, 49350.  Those comments acknowledge, however, that criminal liability may not be established under §2250(a) unless the person is factually "aware of an obligation" to register "from some source."  *Id.*  Under the Proposed Rule, the factual "knowledge" element of an offense which violates §2250(a), which necessarily must be proven for conviction, could be satisfied when a federal prosecutor proves the registrant was notified by authorities in the state in which he resides that he was required to register under "state law." *Id.*  Similarly, the "knowledge" element could be satisfied if a federal prosecutor proves at trial that the registrant was notified by authorities that he was required by "federal law" to provide notice prior to his departure from a state.

All states have adopted laws which require registration, and many states have adopted laws that contain some, but not all, of the reporting requirements set forth in the Proposed Rule.  However, a "state-law" reporting requirement is inadequate and ineffective to prove, as a matter of fact, that a registrant has received notice of a "federal duty" sufficient to impose liability under § 2250(a).  For example, notice of a state-law duty would rarely, if ever, be given to a registrant by state authorities when the state will not (or legally cannot) register that individual.  Notice of a state-law duty to register also will not provide a registrant with notice of the particular reporting requirements contained in the Proposed Rule when the state's own reporting requirements differ from those in the Proposed Rule, or contain no parallel reporting requirement at all.

27

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

These realities impose serious impediments to any finding of liability for failure to comply with the reporting requirements of the Proposed Rule. The factual "knowledge" of "a duty to register," which forms a statutory element that must be proven for conviction under §2250(a), requires knowledge by an accused of a fact that is true. This elemental requirement for criminal liability under §2250(a) is independent of, and as an evidentiary matter would ordinarily be raised at trial prior to, an accused registrant's presentation of evidence to support the affirmative defense recognized under §2250(c). However, as misconstrued by the Department's commentary, the affirmative defense recognized in §2250(c) would nonetheless categorically shift the burden to an accused to prove that "uncontrollable circumstances" existed which shielded him from criminal liability, regardless of the cause or nature of the "uncontrollable circumstance." Unlike other circumstances wherein the affirmative defense could plausibly be raised, when an "uncontrollable circumstance" is caused by the refusal or legal inability of state officials to register a person under state law, the procedural effect of shifting the burden to the accused to prove he had "knowledge" of the fact that he was not required or allowed to register (or provide information) would be constitutionally problematic. The proof necessary to establish the affirmative defense in these circumstances would unavoidably involve elements that prosecutors must prove—*i.e.*, whether the accused person had "knowledge" of the "fact" of a duty to comply with SORNA.

By shifting the burden of proof to an accused in this way, the affirmative defense under §2250(c) would unconstitutionally relieve a federal prosecutor of his burden to prove a fact necessary for conviction (*i.e.*, that the defendant "knew" he was required to register under SORNA). In other words, under these circumstances, the Proposed Rule would unconstitutionally require an accused registrant to "negate" an element of the crime which the government must prove in order to convict. Thus, an accused registrant's criminal liability, and not merely mitigation of an offense otherwise proven by the prosecution, would depend on the person's ability to disprove his factual "knowledge" of the federal duty to comply with SORNA. This burden-shifting would violate the Due Process Clause of the Fifth Amendment to the U.S. Constitution. *Smith v. United States*, 568 U.S. 106, 110 (2013) (The government "is foreclosed from shifting the burden of proof to the defendant…when an affirmative defense does negate an element of the crime.").[10]

---

[10] The interpretation of §2250(c) adopted by the proposed rule would also depart from a principle that has traditionally justified shifting to an accused the burden of proving an affirmative defense. Whether "uncontrollable circumstances" existed at the time of an accused person's alleged offense, based on the fact that a state's authorities would not (or legally could not) under state law impose SORNA's requirements, is not information that would be "peculiarly" in the possession of the person. 2 J. Strong, MCCORMICK ON EVIDENCE §337, p. 415 (5th ed. 1999) ("[W]here the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue"). Rather, the fact that such "uncontrollable circumstances" existed at the time of a person's alleged offense would be equally available to any federal prosecutor before the person's arrest or indictment. And, given this publicly available knowledge, which would fairly be imputed to federal law enforcement authorities, probable

AR-00002120

To remedy this constitutional defect in the Proposed Rule, §§ 72.7(g) and 72.8, as well as the Department's comments thereto, should expressly state that in a prosecution under § 2250(a), no "affirmative defense" need be asserted by a defendant unless and until the prosecutor first establishes a prima facie case that the defendant had "knowledge" of an actual (and not a speculative) duty to register in the destination state.

## VI.    Section 72.6(b), Concerning 'Remote Communication Identifiers,' Violates the First Amendment

Section 72.6(b) of the Proposed Rule, requiring the reporting of "Remote Communication Identifiers," requires significant revision and limitation lest it run afoul of the First Amendment for reasons of (1) ambiguity, and (2) infringement of the right to anonymous speech, as articulated in *Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) and other cases.

Section 72.6(b) of the Proposed Rule requires the reporting of "All designations the sex offender uses for purposes of routing or self-identification in internet or telephonic communications or postings, including email addresses and telephone numbers."  Any new information must be provided to the registering agency within "3 business days."  § 72.7(e).  Critically, § 72.7(b) neither defines any of its terms, nor limits the use to which the reported information may be put, or the persons to whom it may be disclosed.

The U.S. Supreme Court has recognized the right of registrants to participate in social media and other Internet activities on the same terms as non-registrants.  *Packingham v. North Carolina*, 137 S. Ct. 1730, 1736-37 (2017) (striking down statute proscribing registrants' participation in social media forums because "social media users employ these websites to engage in a wide array of protected First Amendment activity on topics as diverse as human thought.").  *See also Harris*, 772 F.3d at 570 ("[S]peech by sex offenders who have completed their terms of probation or parole enjoys the full protection of the First Amendment.")  Accordingly, in *Doe v. Harris*, the Ninth Circuit enjoined a California statute that required registrants to report "internet identifiers," defined as "an electronic mail address, user name, screen name, or similar identifier used for the purpose of Internet forum discussions, Internet chat room discussions, instant messaging, social networking, or similar Internet communication."  *Id*. at 568-69.  As explained immediately below, the First Amendment grounds upon which the Ninth Circuit enjoined the California statute apply with equal if not greater force to § 72.6(b) of the Proposed Rule.

### A.    Ambiguities in § 72.6(b) of the Proposed Rule Unlawfully Chill Speech

In *Harris*, the Ninth Circuit ruled that the California statute's definition of "internet identifiers" contained "ambiguities" and did not "make clear what sex offenders are required to report."  772 F.3d at 578.  Such ambiguities violate the First Amendment because "uncertainty surrounding what registrants must report—and the resultant potential chilling effect" "may lead registered sex

---

cause to arrest or indict a person for violation of §2250(a) under these circumstances would be lacking.

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

offenders either to overreport their activity or underuse the Internet to avoid the difficult questions in understanding what, precisely, they must report." *Id.* at 579. Further, "uncertainty" concerning the precise nature of the internet identifiers that must be reported "undermines the likelihood that the [Act] has been carefully tailored to the [State's] goal of protecting minors and other victims," as the First Amendment requires. *Id.*, *quoting Reno v. ACLU*, 521 U.S. 844, 871 (1997).

Notably, Section 72.6(b) of the Proposed Rule is even more vague and ambiguous than the statute enjoined in *Harris*, and therefore chills more speech. For example, § 72.6(b) of the Proposed Rule employs the vague terms "designations," "routing" and "self-identification," and fails to provide examples of such information. Registrants cannot reasonably be expected to know the definition of "routing," or when their online identifiers are implicated in "routing" communications. As in *Harris*, this ambiguity "may lead registered sex offenders either to overreport their activity or underuse the Internet to avoid the difficult questions in understanding what, precisely, they must report." *Harris*, 772 F.3d at 579.

In addition, the statute enjoined in *Harris* required only the reporting of communications *used in conversational contexts*, *i.e.*, "identifier[s] used for the purpose of Internet forum discussions, Internet chat room discussions, instant messaging, social networking, or similar Internet communication." The examples provided were "electronic mail address, username, screen name, or similar identifier." In contrast, § 72.6(b) of the Proposed Rule is not limited to particular Internet communications, or to Internet communications in conversational contexts, but instead broadly encompasses all "communications" over the Internet. The Proposed Rule is therefore overbroad in that it encompasses Internet communications which have no possibility of facilitating contact with potential victims, such as those with online retailers or IT help desks. Such overbreadth serves no public safety purpose and is insufficiently tailored to withstand First Amendment scrutiny. *Harris*, 772 F.3d at 579; *White v. Baker*, 696 F. Supp. 2d 1289 1310 (N.D.Ga. 2010) (enjoining state's internet identifier requirement where "the scope of the internet identifying information required to be reported is not limited to identifiers used in the type of internet communications that enable sexual predators to entice children.").

    **B.**    **The Proposed Rule Lacks the Required Safeguards on Public Disclosure of 'Remote Communications Identifiers'**

Separately, the proposed rule also violates registrants' right to communicate and participate anonymously on the Internet. The First Amendment protects "an author's decision to remain anonymous." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). This right is burdened, and anonymous speech "chilled," when a reporting requirement "too freely allows law enforcement to disclose sex offenders' Internet identifying information to the public." *Harris*, 772 F.3d at 579-80. For this reason, internet reporting requirements must contain "[]sufficient safeguards preventing the public release of the information sex offenders do report." *Id.* at 578-79. The absence of such safeguards "burdens registered sex offenders' ability to engage in anonymous online speech." *Id.*

AR-00002122

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS
IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

The Ninth Circuit in *Harris* enjoined a statute that contained a single, inadequate limitation on
the disclosure of a registrant's internet identifiers, *i.e.*, the disclosure must be "necessary to
ensure the public safety." The Ninth Circuit ruled that "'Public safety'—like 'public interest'—
is much too broad a concept to serve as an effective constraint on law enforcement decisions that
may infringe First Amendment rights." *Harris*, 772 F.3d 580. Therefore, to withstand First
Amendment scrutiny, a reporting requirement must contain guidelines sufficient to "constrain"
public disclosure of the information, and avoid burdening or chilling anonymous speech. *Id.* at
580-81. *See also White v. Baker*, 696 F. Supp. 2d 1289, 1311 (N.D.Ga. 2010) (allowing public
disclosure of registrants' internet identifiers "to protect the public" insufficiently protected
anonymous speech because "a person in law enforcement might determine that Internet
Identifiers for offenders ought to be released so that the public can search for and monitor
communications which an offender intends to be anonymous."). *Cf. Doe v. Shurtleff*, 628 F.3d
1217, 1224 (10th Cir. 2010) (internet identifier reporting statute did not chill speech because
authorized disclosure was "for limited law-enforcement purposes" and otherwise subject to
safeguards)

Section 72.6(b) of the Proposed Rule violates this First Amendment standard because it contains
no guidelines or limitations regarding the use to which a registrant's "remote communication
identifiers" may be put, or the persons to whom they may be disclosed. The risk that a
registrant's remote communications identifiers could be disclosed is compounded by the fact that
registrants are directed to report the information to local law enforcement for inclusion in state
and federal databases. This reporting process necessarily involves multiple law enforcement
agencies, each of which could independently distribute that information publicly. Disturbingly,
the 2008 SORNA Guidelines affirmatively "encourages" states to make remote communication
identifiers public, and failed to discuss any First Amendment limitations on such public
disclosure. *See* 73 F.R. 38059-60 ("Jurisdictions are accordingly permitted and encouraged to
provide public access to remote communication address information included in the sex offender
registries, in the form described above, *i.e.*, a function that allows checking whether specified
addresses are included in the registries as the addresses of sex offenders.") Section 72.6(b)
therefore prevents an even greater threat to the anonymous speech rights of registrants than the
statute enjoined in *Harris*, and must be revised to include the guidelines and limitations
necessary to avoid chilling anonymous and other protected speech.

## VII.   Section 72.8 Omits SORNA's Express Requirement that Liability Under SORNA Requires the Government to Prove a Basis for Federal Jurisdiction

For registrants with convictions under state or foreign law, 18 U.S.C. § 2250(a)(2)(B) contains,
as an element of liability for a violation of SORNA, that the registrant "travel in interstate or
foreign commerce, or enter or leave, or reside in, Indian country." Yet, § 72.8 of the Proposed
Rule contains no such requirement, thereby failing to conform with the statute and perpetuating
the Proposed Rule's untenable ambiguity regarding when a registrant's federal duty under
SORNA arises (*see* Comment II, above), as well as the registrant's liability for violations of

AR-00002123

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS
IN RESPONSE TO PROPOSED RULEMAKING*
Docket No. OAG 157

SORNA.  Accordingly, § 72.8 should be revised to include this mandatory jurisdictional
predicate for liability under SORNA.

### VIII.   Many Provisions of § 72.6 Suffer from Vagueness that Will Prevent Compliance, Limit Liability, and Encourage Arbitrary and Selective Enforcement

Many provisions of Proposed Rule § 72.6 suffer from vagueness that will prevent compliance,
foreclose liability if prosecutions are attempted, and encourage arbitrary and selective
enforcement.

Under the Due Process clause, statutes are facially unconstitutional and "void for vagueness"
when they either "fail to provide the kind of notice that will enable ordinary people to understand
what conduct [they] prohibit," or they "authorize and even encourage arbitrary and
discriminatory enforcement."  *E.g.*, *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999); *Skilling
v. U.S.*, 561 U.S. 358, 402 (2010).  In the case of SORNA, "[the] vagueness review is even more
exacting" because "[the] statute subjects transgressors to criminal penalties."  *Forbes v.
Napolitano*, 236 F.3d 1009, 1011 (9th Cir. 2000).  The following examples from the Proposed
Rule suffer from unconstitutional vagueness:

   **Section 72.6(b)**, requiring the reporting of "remote communication identifiers."  The rule
mandates the reporting of all "designations" used for the purpose of "routing or self-
identification in internet or telephonic communications or postings, including email addresses
and telephone numbers."  As discussed more fully in Comment VI, above, the vagueness of the
terms "designations," "routing," and "self-identification" is exacerbated by the fact that this list
is demonstrative rather than definite, preventing individual registrants from knowing what they
must report.

   **Section 72.6(c)(1), (c)(3)**.  In the case of registrants with no present or expected
residence address, subdivision (c)(1) mandates the reporting of "information regarding where the
sex offender resides or will reside with whatever definiteness is possible under the
circumstances."  A similar requirement under subdivision (c)(3) applies to employment
information for registrants who have "no fixed place of employment."  In addition to failing to
specify the "information" required under these provisions, the additional requirement that such
"information" be as definite as "possible under the circumstances" appears to require the
consideration of an individual registrant's particular life circumstances at the time, and/or the
particular practices of the individual law enforcement agency.  A registrant cannot possibly tailor
his reporting to the contextually dependent standard of "possible under the circumstances."  *Cf.
Forbes*, 236 F.3d at 1013 (dearth of notice and guidelines for distinguishing between "routine"
and "experimental" medical treatment was void for vagueness).  In fact, such vagueness provides
no objective measure at all, thereby inviting arbitrary enforcement in violation of the Due
Process Clause.  *Cf. Kolender v. Lawson*, 461 U.S. 352, 356-60 (1983) (loitering statute
containing exception for individuals who provide "credible and reliable" identification to law
enforcement was unconstitutionally vague); *Morales*, 527 U.S. at 61-64 (ordinance that forbade
loitering with "no apparent purpose" was unconstitutionally vague because it contained no

AR-00002124

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

standards for enforcement and allowed law enforcement to pick and choose opportunities for enforcement).

**Section 72.6(c)(2)** requires the reporting of "information" concerning any "place" the registrant "is staying when away from his residence for seven or more days, including the identity of the place and the period of time the sex offender is staying there."  In addition to failing to specify the "information" required under this provision, the imprecise word "staying" could imply places at which the registrant does not spend the night, as well as any place the registrants spends significant amounts of time, again failing to provide fair notice of what is required to comply.  *Morales*, 527 U.S. at 56.  Further, § 72.6(c)(2) provides no guidance for registrants who return sooner than seven days, such as whether and to whom this must be reported.

**Section 72.5(c)** provides for the automatic reduction in the duration of the registration requirement for certain registrants in Tiers 1 and 3 of SORNA who maintain a "clean record," pursuant to 34 U.S.C. § 20915(c).  Yet, the Proposed Rule does not specify what constitutes a "clean record."  Registrants are entitled to a clear statement in the Proposed Rule regarding the "clean record" that entitles them to the automatic reduction in the registration period, so they may conduct themselves accordingly, know when their registration term ends, and avoid clogging the federal courts with actions seeking clarification of their rights under 34 U.S.C. § 20915(c).

In sum, these vague provisions, as well as others in the Proposed Rule, confound the stated objective of "providing a concise and comprehensive statement of what sex offenders must do to comply with SORNA's requirements."  85 F.R. 49333.  In fact, these vague provisions illustrate the fundamental deficiency in the Proposed Rule articulated in Comment I, above, which is the apparent grafting of language and concepts from the 2008 SORNA Guidelines intended for states into the present Proposed Rule, which is intended for individual registrants.  While vague criteria such as "information," "under the circumstances," or "clean record" may be appropriate in a set of "minimum national standards" intended for states (which have discretion to fill in the gaps left by the federal guidelines), such vague criteria are not appropriate in a set of guidelines purporting to establish the parameters of criminal liability for individual registrants.  Accordingly, these and other vague provisions of the Proposed Rule should be revised to provide constitutionally sufficient specificity and notice to individual registrants.

## IX.     Section 72.5(c) of the Proposed Rule Should Clarify That the Reduction in SORNA Tiers 1 and 3 is Automatic

Section 72.5(c) of the Proposed Rule does not expressly state what action, if any, individual registrants must take in order to avail themselves of the "clean record" reduction described in 34 USC 20915(b), whereby the registration period for certain Tier 1 registrants is reduced from 15 to 10 years, and the registration period for certain Tier 3 registrants is reduced from lifetime to 25 years.  As a result, § 72.5(c) will confuse registrants and courts regarding the operation of this provision.  *See, e.g.*, *United States v. Templin*, 354 F. Supp. 3d 1181 (D. Mont. 2019) (federal

AR-00002125

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

district court granting defendant's request to avail themselves of the clean record reduction) and
*United States v. Klemovitch-Rhoads*, No. 1:05-cr-00027-LMB (E.D. Va. 2019) (holding that the
court lacked jurisdiction to address the defendant's request to avail themselves of the clean
record reduction).

Again, the Proposed Rule seems to be using language intended for state guidelines and
misapplying that language directly to registrants who must conform their conduct to the rule
under threat of prosecution.  To avoid ambiguity, and because the language in both the statute
and the Proposed Rule is mandatory, § 72.5(c) should operate automatically as opposed to
requiring any action on the part of the individual registrant.  Indeed, there is no action by the
registrant that could be required under the statute.  Automatic operation of this provision
pursuant to the Proposed Rule would also work to the benefit of judicial economy, as otherwise
already overtaxed federal court dockets would be burdened by people seeking to avail
themselves of a provision that could otherwise operate automatically.

**X.    The Proposed Rule Should be Revised to Include a Federalism Assessment and
        Other Requirements Imposed by Executive Order 13132 and the Unfunded
        Mandates Reform Act (UMRA)**

The Proposed Rule concludes that it "does not have sufficient federalism implications to warrant
the preparation of a federalism assessment" as required by Section 6 of Executive Order 13132
("E.O. 13132").  85 F.R. 49352.  This conclusory finding is not supported by E.O. 13132, the
Fundamental Federalism Principles articulated in Section 2 thereof, or the practical impact of the
requirements that this rule imposes on state and local governments.

E.O. 13132 prohibits the DOJ from issuing any rule "**[1]** that has federalism implications, **[2]** that
imposes substantial direct compliance costs on state and local governments, and **[3]** that is not
required by statute," unless the agency issues a federalism assessment in connection with the
rules, or funds the costs incurred by the state.  E.O. 13132 § 6(b).  The Proposed Rule satisfies
none of these three criteria:

**[1]** A rule "has federalism implications" when it "has substantial direct effects on the States, on
the relationship between the national government and the States, or on the distribution of power
and responsibilities among the various levels of government."  *Id.* § 1(a).  E.O. 13132, Section 2,
articulates several "Fundamental Federalism Principles" that, when implicated by a proposed
rule, reveal "federalism implications."  As explained below, the following "Fundamental
Federalism Principles" are implicated by the proposed rule:

- "issues that are not national in scope or significance are most appropriately
  addressed by the level of government closest to the people";

- "One-size-fits-all approaches to public policy problems can inhibit the creation of
  effective solutions to those problems";

AR-00002126

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS*
*IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

- "Acts of the national government . . . that exceed the enumerated powers of that government under the Constitution violate the principle of federalism"; and

- "The national government should be deferential to the State when taking action that affects the policymaking discretion of the states . . . ."

First, sex offender registration is a local issue that is not national in scope. As the Proposed Rule's Overview acknowledges, there is no federal registry; in fact, all registration happens at the state and local levels. Further, the vast majority of registrable sex offenses are state offenses, and even persons convicted of federal, military, or foreign offenses register with state and local governments rather than federal authorities. Significantly, the people intended to be protected by the registries live within the state, and therefore the state governments are the closest to such people and their concerns.

Second, the rule imposes a one-size-fits-all solution on all registrants in the nation. In fact, that is the acknowledged purpose of the rule. What's more, the rule effectively usurps states' prerogative concerning the registration of sex offenders within their jurisdictions by imposing a mandate on individual registrants that can vastly exceed any mandate imposed by their state governments, but can only be fulfilled by the participation of their state and local governments.

Third, as articulated elsewhere in these Comments, the Proposed Rule exceeds Congress's authority under the Commerce Clause by purporting to regulate registrants with state convictions, and by regulating registrants in connection with activities that have no substantial impact on interstate commerce.

Fourth, the Proposed Rule imposes myriad costly requirements upon states in a roundabout way. That is, although the rule does not explicitly impose any express requirements upon states, it nevertheless accomplishes the same by impressing individual registrants to act as agents of the federal government who, in order to avoid federal prosecution, must demand that their states adopt SORNA-compliant registration standards. For example, a registrant on Tier 3 of SORNA must update his registration in person every 3 months, even when many states, such as California, require only annual updates. Nevertheless, in order to facilitate his or her compliance with the rule, the registrant must visit his local registering agency four times more often than state law requires. The local registering agency must collect the information and report the same to the state's department of justice. The registrant must likewise tap state and local resources to accomplish perhaps dozens of additional requirements expressed in the rule, even when state law does not require the same.

[2] The Proposed Rule imposes substantial direct costs upon state and local governments for these same reasons, implicating both E.O. 13132 and the UMRA. That is, state and local governments must allocate substantial resources to facilitate individual registrants' attempts to comply with SORNA, which in some cases will be many times the amount needed to facilitate a registrant's compliance with state law. These factors likewise mean that the Proposed Rule are likely to impose costs upon state and local governments in the aggregate of $100 million or

AR-00002127

*COMMENTS OF ACSOL AND AFFILIATED SCHOLARS AND PRACTITIONERS
IN RESPONSE TO PROPOSED RULEMAKING*
DOCKET NO. OAG 157

more, as well as uniquely affect small governments, such as the local registering agencies who
will suffer the influx of registrants who seek to comply with the mandates of this Proposed Rule.

[3]   The requirements imposed by the Proposed Rule upon states are not required by statute,
because SORNA does not expressly require the states to collect any information.  SORNA
merely conditions the receipt of certain federal funds on states' voluntarily becoming compliant.
Yet, the Proposed Rule makes state and local governments' cooperation part of an individual
registrant's requirements, under threat of federal prosecution, thereby effectively requiring states
to comply with the rule in order to protect their residents.

Accordingly, as required by both E.O. 13132 and the UMRA, the Proposed Rule should be
revised and recirculated for public comment with the required federalism assessment and other
action under the UMRA.

<div align="center">

CONCLUSION

</div>

Once again, ACSOL thanks the Department for its work on the Proposed Rule, and hopes that
the Department will consider and accept these comments in a subsequent revision to the
Proposed Rule.

///

AR-00002128

October 13, 2020

David J. Karp
Senior Counsel
Office of Legal Policy
U.S. Department of Justice
Washington, DC 20530

*Via electronic submission*

Re: Proposed rule on *Registration Requirements Under the Sex Offender Registration and Notification Act,* RIN No. 1105-AB52, Docket No. OAG 157

Dear Mr. Karp:

The undersigned organizations object to the proposed rule because it is vague as to what is required of individuals with past sex offense convictions and increases exposure to potential federal criminal liability for failure-to-comply offenses that have little to no connection with public safety. This proposal also appears to vastly expand federal authority in an area of policymaking traditionally reserved to the states, and thus contravenes the authority of the states to reject federal standards here (which most states have rejected for various compelling policy and economic reasons).[1]

The purported goal of the Sex Offender Registration and Notification Act (SORNA) is laudable: to prevent the occurrence of sexual violence in our communities. But rather than advancing that goal, SORNA undermines it. SORNA diverts resources and attention away from primary prevention, accountability, and rehabilitation of people who have caused harm and into a Byzantine system of punishment for nearly a million people[2] who have already been held accountable for a past crime and by and large are now doing their best to live productive and meaningful lives. Such an arrangement does little to effectuate the policy goal that undergirds both SORNA and this proposed rule.

---

[1] SORNA Implementation Status, United States Department of Justice SMART Office, https://smart.ojp.gov/sorna/sorna-implementation-status (last visited October 10, 2020).

[2] Harris, Andrew J., Kimberly R. Kras, Christopher Lobanov-Rostovsky, and Qurat Ann, *States' Sorna Implementation Journeys: Lessons Learned And Policy Implications*, 3 NEW CRIM. L. REV. 23 (2020).

AR-00002129

First, studies evaluating the efficacy of SORNA and state-law systems have generally found that they do not reduce rates of re-offending.[3] SORNA is predicated on the notion that re-offense rates for people with past sex offense convictions are high,[4] yet even the government's own data readily disproves this.[5] But even if that were not the case, as Michigan Attorney General Dana Nessel recently observed, registries are not good tools to protect the public.[6] The vast majority of reported sexual violence is attributable to people who have no prior record of sexually offending and thus aren't subject to SORNA to begin with,[7] drastically limiting even any *hypothetical* utility that SORNA has in preventing sexual violence.[8] Studies tracking individuals convicted of sex offenses generally do not find that registration has a significant effect on reducing recidivism.[9] At the same time, there *is* evidence of the possible adverse consequences of these registries, including deterring victims from reporting crimes, discouraging sex convictions in courts, and criminogenic effects due to destabilizing the lives of people as they exit the criminal legal system.[10]

Second, SORNA traps individuals in a maze of rules in which even technical violations[11] are federal felonies; rather than protecting the public, this exacerbates the serious social harms already caused by mass incarceration. As of late 2018 there were approximately 900,000 individuals on registries in the United States,[12] which function

---

[3] *See* Kristen Zgoba, Wesley Jennings & Laura Salerno, *Megan's Law 20 Year's Later: An Empirical Analysis and Policy Review*, 45 CRIM. JUST. & BEH. 7 (2018);

[4] *See Smith v. Doe*, 538 U.S. 84 (2003).

[5] Wendy Sawyer, *BJS fuels myths about sex offense recidivism, contradicting its own new data*, Prison Policy Initiative, June 6, 2019; Ira Ellman & Tara Ellman, *Frightening and High: The Supreme Court's Crucial Mistake About Sex Crime Statistics*, 30 Const. Commnt. 495 (2015).

[6] Amicus Br. Of Michigan Attorney General Dana Nessel at 29, in Michigan v. Betts No. 148981.

[7] Sandler, Jeffrey C., Naomi J. Freeman, and Kelly M. Socia, *Does a Watched Pot Boil? A Time-Series Analysis of New York State's Sex Offender Registration and Notification Law,* 4 PSYCHOLOGY, PUBLIC POLICY, AND LAW 14 (2008) (finding that of over 170,000 individual sex offenses, more that 95% were attributable to people with no prior record of sexual offending).

[8] Though, research has generally not found this. *See* ATSA, Registration and Community Notification of Adults Convicted of a Sexual Crime: Recommendations For Evidence-Based Reform (2020).

[9] Zgoba et al., note 3.

[10] *See* J.J. Prescott, *Do Sex Offender Registries Make Us Less Safe?*, 54 J. L. & ECON. 161 (2011).

[11] For example, failure to register a "remote communication identifier" would be punishable under 18 USC § 2250.

[12] Harris et al., note 2.

AR-00002130

similarly to criminal supervision.[13] As with most of the criminal legal system, sex offense registration disproportionately impacts people of color and LGBTQ communities.[14]

The proposed rule would make these problems worse. As the proposed rulemaking indicates, people subject to SORNA and state-law equivalents are required to adhere to technical and complicated rules related to registration. Failure to adhere to these requirements is often akin to a "technical violation" of supervision, meaning that they are prosecuted even in the absence of a substantive sex offense (or even in the absence of intention to evade registration requirements), except that unlike technical probation, parole, or supervised release violations, failures here are federal felonies punishable by up to ten years in prison.[15] The effect here, if not the intent, is that people wind up trapped in a revolving door of "crime" from which they are ill-equipped to escape, with no benefit to public safety. In many jurisdictions, it is far more common for people on registries to return to prison for violating these technical rules than it is for a new sex offense,[16] and these failures are generally not associated with a new sex offense.[17]

In sum, even as America more broadly is trying to get people *out* of prison — particularly federal prisons[18] — this proposed rule has the effect of vastly expanding potential federal criminal liability for many hundreds of thousands of people in a number of different ways.

Third, the rule represents a massive expansion of federal authority. The proposed rule imposes complicated new federal registration requirements even on individuals who were convicted exclusively of state offenses, and even in states that do not require registration or whose registration requirements differ from SORNA. As a result, while it is not entirely clear, it appears that persons who fully comply with their own state's law may be prosecuted for a federal felony if they travel outside their state and fail to comply

---

[13] *Piasecki v. CCP, PA*, 917 F.3d 161 (3rd Cir. 2019).

[14] Hoppe, Trevor, *Punishing Sex: Sex Offenders and the Missing Punitive Turn in Sexuality Studies*, 3 LAW & SOCIAL INQUIRY 41 (2016); National Center for Lesbian Rights, On the Margins: LGBTQ People and Sex Offense Registry Reform.

[15] 18 USC § 2250(a).

[16] Joshua Vaughn, *Failure-To-Comply Arrests Reveal Flaws In Sex Offender Registries,* The Appeal, August 1, 2018.

[17] Levenson, Jill, Elizabeth Letourneau, Kevin Armstrong, and Kristen Marie Zgoba, *Failure to Register as a Sex Offender: Is It Associated with Recidivism?*, 3 JUSTICE QUARTERLY 27 (2010).

[18] For example, see Attorney General Barr's March 2020 Memorandum on Home Confinement as a Policy Response to Covid-19.

AR-00002131

with SORNA.[19] If so, the proposed rule is not clear on when that potential liability arises,
especially given DOJ's position that these rules apply to even those individuals with state
offenses who have not traveled interstate.

Relatedly, the proposed rule also seems to override the decision of most states to
opt out of SORNA's requirements for sound policy reasons by requiring individuals
subject to SORNA but not subject to state-law registration provisions to register with state
authorities. While it is not entirely clear, it appears to contemplate that the DOJ will
prosecute people who are compliant with *state* law and have only *state* offenses. It also
appears to contemplate that states must permit individuals who have no state law
reporting requirement to register solely in order to comply with SORNA and potentially
avail themselves of the affirmative defense provided by the statute.    These new
requirements are confusing, complicated, and wasteful for both individuals required to
register *and* for states, in addition to imposing new law enforcement burdens on the DOJ
that do not serve any valid public safety purpose.

Finally, the rule requires the disclosure of information that is either not required
by the statute[20] or that is described in confusing and vague terms,[21] leading to more
uncertainty and greater potential for unwitting federal criminal liability. For example, the
proposed rule requires the registration of "remote communication identifiers,"[22] even
though a number of jurisdictions have found similar requirements to be
unconstitutionally vague and to violate the First Amendment.[23]

In conclusion, these problems with respect to the proposed rule are at odds with
public positions that DOJ has taken. As Attorney General Barr recently observed:

---

[19] See commentary to § 72.6 "Notwithstanding the absence of a parallel state law, the registration
authorities in the state may be willing to register the sex offender because Federal law (i.e.,
SORNA) requires him to register. [] If the state registration authorities are willing to register the
sex offender, he is not relieved of the duty to register merely because state law does not track the
Federal law registration requirement."

[20] For example, the proposed requirement in § 72.6(g) that individuals subject to SORNA disclose
"information concerning" all professional licensures is both vague and not required by the statute.
§ 72.6(g).

[21] For example, § 72.5 is unclear whether the clean record reduction period operates automatically,
or whether some action is required on the part of the individual to avail themselves of this
reduction.

[22] § 72.6(b)

[23] *Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014); *Doe v. Kentucky ex rel. Tilley*, 283 F.Supp.3d 608
(E.D. Ky. 2017).

AR-00002132

We should want a fair system with clear rules that the people can understand. It does not serve the ends of justice to advocate for fuzzy and manipulable criminal prohibitions that maximize our options as prosecutors. Preventing that sort of pro-prosecutor uncertainty is what the ancient rule of lenity is all about. That rule should likewise inform how we at the Justice Department think about the criminal law.[24]

The nearly 100-page proposed rule seeks to enact the very sort of "fuzzy and manipulable criminal prohibitions" that the Attorney General publicly warned of.

While DOJ must enforce SORNA, it should not seek to do so in ways that go far beyond the statute and that vastly expand federal authority and individual criminal liability at the expense of these articulated principles. This proposed rule does precisely that, with no demonstrable benefits for public safety. For these reasons we call on the Department of Justice to rescind this proposed rule.

Thank you for your time and consideration.

Respectfully submitted,

*Advocates for Change*

*Advocating Opportunity*

*Black and Pink*

*Boston Release Network*

*Center for Constitutional Rights*

*Citizens for Criminal Justice Reform*

*Coalition for a Useful Registry of Michigan*

*Coalition for Sex Offense Restoration*

*Colorado Criminal Defense Bar*

---

[24] William Barr, Attorney General, Remarks at the Hillsdale College Constitution Day event (Sept. 16 2020).

AR-00002133

*Colorado CURE*

*Dakota RSOL*

*Families Advocating Intelligent Registries*

*Illinois Voices for Reform*

*Johnson & Klein, PLLC*

*Juvenile Law Center*

*Modern Military Association of America*

*National Association for Rational Sex Offense Laws*

*National Association of Criminal Defense Lawyers*

*National Equality Action Team (NEAT)*

*National Center for Lesbian Rights*

*Nebraskans Unafraid*

*Novo Legal Group*

*Ohio RSOL*

*Oregon Voices*

*Reframe Health and Justice*

*Restore Georgia*

*Restorative Action Alliance*

*The Rock Foundation*

*Safer Foundation*

AR-00002134

*The Sentencing Project*

*The SERO Project*

*Vivante Espero*

*Where Grace Abounds*

*Women Against the Registry*

*Woodhull Freedom Foundation*

AR-00002135

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments 〔724〕 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 〔724〕 (/docket/DOJ-OAG-2020-0003/comments)   Share ▾

Comment

I have been a registrant for 25 years and am opposed to the proposed SORNA changes. The registration
scheme does not work (attach#1--Registration) and these changes will not improve the mess that has ensued
since its enactment. There are nearly 1 million people on "the list". SORNA costs taxpayers billions of dollars.
(attach#2 Justice)

The main premise of the registry is safety:
"Empirical evidence and objective data are beginning to confirm what experts have said for many years: Sex-
offender registration and restriction laws do not reduce recidivism, and they do not make communities safer. In
fact, these laws may actually increase recidivism and decrease public safety" (attach#3 Sex Offender registeries)

Since the beginning of the registration scheme, the focus has been on "stranger danger". Most (93%) offences
are from someone that the victim knows i.e. teacher, parent, sibling, coach, pastor and most sex offences (96%)
are committed by someone with no previous sex crime convictions
(attach#1 Registration) (attach#4 Sexual Offender Laws)

Despite wide community support for these laws, there is little evidence to date, including this study, to support a
claim that Megan's Law is effective in reducing either new first-time sex offenses or sexual re-offenses. (attach#4
Sexual Offender Laws)
The registry is used for news sensationalism, shock, fear and votes

Section 72.5 Given the very low rate of recidivism i. e. <3.5% why are the periods of registration so long with
many of the registrants being on for life? (attach#5 A limited study)

Risk level determinations and their validity, (especially given the dimension of time and age) with the actuarial
tools most commonly used in the US give a 30% to 60% likelihood of error. (attach#4 Sexual Offender Laws)

Megan's Law showed no demonstrable effect in reducing sexual re-offenses (attach#6 Megans law- assessing
the practical and monetary efficacy)

AR-00002136

(attach#1 Registration)

A defense of Megan's law's worth and constitutionality has been that recidivism rates for sex offenders is "frightening and high" which comes from Justice Kennedy's opinion in the 2002 The original source for his recidivism estimate was an uncorroborated assertion in a 1986 Psychology Today article by a therapist who has repudiated the number, saying he is "appalled" at its lingering impact (attach#7 Frightening )
My hometown in Wisconsin Quotes "frightening and high" as do countless other cities, across America to give merit to new laws making life hard for registrants, their children and families, friends, employees and coworkers.

"Of note registration status does not influence recidivism" & "failure to register as a sex offender does not appear to increase the likelihood of sexual recidivism." & "online notification was associated neither general deterrence of sex crimes nor with sexual recidivism rates" (attach#8)Evaluating the Effectiveness)

As a registrant, the registry has evolved into an onerous punishing even life-threatening situation that puts me, my family, friends and co-workers/employees in economic hardship and the target of social humiliation. My construction employees have been asked to leave projects and have even been threatened.

"In recognition of the fact that few low risk offenders will sexually reoffend and that even high risk offenders are less likely to recidivate as they age and as they accumulate time in the community offense-free, registered sex offenders should be provided an opportunity to be released from the requirements after a reasonable period of law-abiding behavior in the community."…" periods that extend across decades are excessive for most registrants. We have found that each offense-free year spent in the community predicts future offense-free years and most sex crime recidivism events occur within five years of community release. Based on this information a "reasonable period" might suggest commuting registration and notification requirements after a period of 5 to 10 years of offense-free behavior in the community" (attach#8 Evaluating)
(attach#1 Registration)

Section 72.6 Being self-employed and owning 20 to 30 vehicles registering is between overwhelming and useless. What good can come from registering a vehicle I drive twice per year, and my employees may take home and even drive their families around in.

Registering if I leave my primary residence for 7 days is a burden. What "community safety" does this give to anyone? What benefit to law enforcement does this reap? How does SORNA expect any of this information to be useful if states routinely are overstating the numbers of registered citizens? (attach#9 Counting)

Section 72.7 requires in person registration Why not register initially, than changes only by mail or E-mail?

Section 72.8 Failure to register penalty of 10 years is in many cases a more severe penalty than the crime which put one on the registry.

---

Attachments 9

---

 1--Registration and Community Notification of Adults Convicted of a Sexual Crime Recommendations for Evidence-Based Reform 2020

 Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0610/attachment_1.pdf)

2--Justice policy institute What will it cost states What will it cost states to comply with the Sex to comply with the Sex offender registration and notification act

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0610/attachment_2.pdf)

3--Sex Offender Registries Common Sense or Nonsense

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0610/attachment_3.pdf)

5--A limited study done by the Department of

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0610/attachment_5.pdf)

6--Megans law- assessing the practical and monetary efficacy

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0610/attachment_6.pdf)

7 The 'Frightening and High' Factoid

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0610/attachment_7.pdf)

8--Evaluating the effectiveness of sex offender registration and notification policies

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0610/attachment_8.pdf)

9--Counting and Over-Counting the Registry

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0610/attachment_9.pdf)

10--Sex offender loses COVID-19 contract at VA hospital after USA TODAY asks questions - Copy

⬇ Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0610/attachment_10.pdf)

**Comment ID**

DOJ-OAG-2020-0003-0610

 **Tracking Number**

kg8-60yk-ekhz

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



About   Bulk Data Download   Agencies   Learn

(/about)        (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

AR-00002139

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I'll keep this short.
Over 95% of new sexual crimes are NOT committed by persons on a registry.
What that means is you are targeting the WRONG audience. By this I mean; especially for children, the offender is in the house RIGHT NOW! The offender is in the neighborhood or school RIGHT NOW! The symptoms of the offender are obvious but are being ignored because of embarrassment and/or shame. Family education is the answer, not hunting down persons that are NOT going to offend again.
Hunting down persons that are not going to offend again and maintaining a registry is only creating a FALSE sense of public safety. Just like the Witch Hunts of old.
Persons who have been arrested for a sex crime AND have gone through treatment (like SOTP) are extremely unlikely to reoffend. Again, you are targeting the WRONG people. I am sure you are being inundated with stats for SO's reoffending. Are any of those stats showing JUST the offenders that have gone through treatment and their recidivism rate?
The taxpayers are being lied to. DOC (Department of Corrections) is perpetuating the lie that sex offenders released need to "be watched" for public safety and are reluctant to release offenders under community custody for job security and funding reasons.
The amount of funding in the Country by taxpayers to ensure address compliance is astronomical.
Taxpayers are paying for this: Highly paid, highly skilled and trained Detectives spend all day in every town and city across the Country "checking" that Joe Offender actually lives at their address. Instead of that officer investigating real crimes, they are babysitting addresses for people that are not going to commit a crime. Knowing the offenders address is absolutely no deterrent to the offender and again, is only creating a FALSE sense of public safety.

How do I know all this? I've been inside the system for almost 20 years now. I see the cruelty of DOC and I've talked to the Detectives that come visit me. Years of training and now they are babysitting an address book that serves no purpose except to perpetuate a FALSE sense of public safety.

Joe Offender is not me, or anyone like me. It's Dad, Uncle, nice friend that comes over too much and the like.

AR-00002140

Family education is the answer!

---

**Comment ID**

DOJ-OAG-2020-0003-0611

---

 **Tracking Number**

1k4-9jhs-jaz5

---

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020

---



Your Voice in Federal Decision Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002141

## Memorandum

This memorandum outlines five objections to the Department of Justice's proposed rules implementing SORNA and International Megan's Law. Registration Requirements Under the Sex Offender Registration and Notification Act (hereinafter "Proposed Rules"), 85 Fed. Reg 49,332, 49,337 (Aug. 13, 2020).

1. **The Attorney General should disclose all ex parte contacts with U.S. Attorneys.**

Certain regulations proposed by the Attorney General under SORNA appear to be directly targeting common defenses raised by registrants accused of failing to register. See, e.g., Proposed Rules, 85 Fed. Reg. at 49,353, § 72.3. The regulations thus raise a specter that the proposals may be the product of litigation strategy rather than reasoned rulemaking. Aside from violating important precepts of the Administrative Procedures Act, such practices would also raise serious due process concerns. If line prosecutors have been lobbying the Attorney General to promulgate regulations to thwart certain defense strategies, then such contacts should be disclosed so that they can be scrutinized by the public and judiciary. See *Home Box Off., Inc. v. F.C.C.,* 567 F.2d 9, 54 (D.C. Cir. 1977) ("Even the possibility that there is here one administrative record for the public and this court and another for the Commission and those 'in the know' is intolerable.").

2. **The regulations should specify that other uncodified legislative rules about SORNA are abrogated.**

Fair notice concerns should compel the Department of Justice to consolidate all legislative rules concerning SORNA into the Code of Federal Regulations. Registrants should not need to search through scattered entries in the Federal Register in order to discover their registration duties. Therefore, the proposed regulations should include a section specifying that any legislative rules not appearing in the Code of Federal Regulations are abrogated.

3. **The Department of Justice should specify that SORNA respects the Tenth Amendment and thus permits states to impose less stringent registration requirements.**

Direct mandates to state legislatures violate the anti-commandeering principle of the Tenth Amendment. *Murphy v. Natl. Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1476 (2018). SORNA imposes direct mandates to state legislatures. 34 U.S.C. § 20912(a). However, SORNA avoids commandeering concerns because these mandates are construed as conditions on the receipt of federal funding and thus an exercise of the Spending Clause. *United States v. Richardson*, 754 F.3d 1143, 1146 (9th Cir. 2014); see also 34 U.S.C. § 20927(a). Yet this scheme means that states are free (albeit at the loss of federal funding) to impose less stringent registration requirements than those mandated by SORNA. Cf. *Natl. Fedn. of Indep. Bus. v. Sebelius*, 567

U.S. 519, 568 (2012) (holding that "if someone chooses to pay [the tax-penalty of the Affordable Care Act's individual mandate] rather than obtain health insurance, they have fully complied with the law"; similarly if a state chooses to forego federal funding rather than implement SORNA, the state has fully complied with the law).

Proposed Rules, 85 Fed. Reg. at 49,353, § 72.1(b) reads, in part: "States and other governmental entities may prescribe registration requirements and other requirements, with which sex offenders must comply, that are more extensive or stringent than those prescribed by SORNA." This section implies that states and other governmental entities may not impose registration requirements *less* extensive or stringent than those imposed by SORNA. But such an implication is misleading. States may impose less stringent registration requirements. Doing so is not a violation of federal law. And federal law does not preempt such registration systems.

Moreover, 28 C.F.R. § 72.1 should specify that SORNA respects a state's choice to decline to implement a provision of SORNA and that, when a state makes that choice, SORNA does not require a registrant to burden a state registry beyond what the state has authorized. Aside from imposing costs on state treasuries which the legislature has not authorized or anticipated — cf. *Murphy*, 138 S. Ct. at 1477; *Printz v. United States*, 521 U.S. 898, 930 (1997); *New York v. United States*, 505 U.S. 144, 168 (1992) —

extraneous federal registration duties also exacerbate the problem of over-registration which has significantly undermined the effectiveness of state registries.[1] States have an important interest in regulating how much information registrants are required to disclose and specifying how such regulations will be enforced. A state may choose to punish under-disclosure with criminal penalties but rely on self-enforcement to prevent over-disclosure. The federal government has no right to interfere with that choice.

This specification is also important to ensure registrants have fair notice of the law. Conflicting commands by the federal and state governments are confusing to registrants who are untrained in the law and unfamiliar with the nuances of cooperative federalism. While registrants theoretically have a lack of knowledge defense, as a practical matter, registrants face significant obstacles in raising such a defense. The social stigma imposed against registrants puts them at a high risk of vindictive prosecution and conviction.

Anti-commandeering and fair notice concerns can be solved if the Attorney General simply specifies that a registrant fully complies with

---

[1] Elizabeth Reiner Platt, *Gangsters to Greyhounds: The Past, Present, and Future of Offender Registration*, 37 N.Y.U. Rev. L. & Soc. Change 727, 752–53 (2013); see also Human Rights Watch, *No Easy Answers: Sex Offender Laws in the US*, 45–46 (Sept. 2007), https://www.hrw.org/sites/default/files/reports/us0907webwcover.pdf.

SORNA when he complies with his state registry laws even if the state has not implemented SORNA.

**4.    The registration period should (and does) begin running when the registrant is convicted, not when a registrant is released from custody.**

SORNA states: "A sex offender shall keep the registration current for the full registration period (excluding any time the sex offender is in custody or civilly committed)[.] 34 U.S.C. § 20915(a). As the Attorney General has previously recognized, this section does not require that periods of custody or commitment "toll" the registration period. The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,068 (July 2, 2008). Rather, when a registrant "is confined, the public is protected against the risk of his reoffending in a more direct way, and more certain means are available for tracking his whereabouts." *Id.* Therefore "SORNA does not require a sex offender to carry out its processes for registering or updating registrations during subsequent periods of confinement[.]" Proposed Rules, 85 Fed. Reg at 49,337. Of course, this is true for the initial period of confinement as with subsequent periods. So, there is no reason to toll the initial period of confinement.

Nevertheless, the Department of Justice believes that registration begins when a registrant is released from custody. *Id.* at 49,338. This interpretation is implausible because it would mean that an individual must

make an initial registration before the registration period has begun. See

34 U.S.C. § 20913(b)(1) (Registrants must make their initial registration

"before completing a sentence of imprisonment[.]"). The more logical

conclusion is that the registration period begins to run from the date of

conviction which is a readily ascertainable date and consistent with

Congress's decision to base registration duties categorically on the crime of

conviction. See 34 U.S.C. § 20911.

**5.    The 21-day notice requirement imposes an undue burden on the fundamental right to travel.**

International travel is a fundamental right protected by the

Constitution. *Aptheker v. Sec. of State*, 378 U.S. 500, 505–06 (1964). By

imposing a 21-day notice requirement, the Department of Justice will chill

the exercise of this right by making registrants liable for felony convictions

every time they travel without providing 21-days' notice. The Department of

Justice apparently recognizes that registrants may need to travel on short

notice. 85 Fed. Reg at 49,355 (proposed 28 C.F.R. § 72.8(a)(2)). In such cases,

the Department realizes that the "intention to travel" may have arose after it

became impossible to comply with the 21-days' notice requirement. *Id.*

(example 3). But even with this defense many registrants will want to avoid

being ensnared by ambiguous circumstances.

Moreover, the Department assumes that such exigent travel needs arise only from "family or work emergencies" — *id.* — but registrants also may acquire an intention to travel from less dire circumstances (say because of a great deal on airline tickets, an impromptu invitation, or a whimsical desire to go away on vacation). Registrants should be assured that travel in these circumstances will not subject them to criminal liability.

It is also worth noting that Congress knowingly declined to incorporate the 21-days' notice requirement into International Megan's Law despite it being previously promulgated by the Department of Justice. Supplemental Guidelines for Sex Offender Registration and Notification, 76 Fed. Reg. 1630, 1637–38 (Jan. 11, 2011). This evinces a congressional judgment that the 21-days' notice requirement was unnecessary and unduly burdensome. Indeed, the purpose of having registrants report foreign travel is to ensure federal agencies can inform destination countries about traveling registrants. Proposed Rules, 85 Fed. Reg. at 49,341. The Department of Justice offers no explanation or evidence for why it cannot fulfill this mission with less than 21-days' notice.

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

The registry is a hoax. It targets millions of men who are not dangerous nor even rapists. It is a violation of one's civil right to privacy. It needs to be abolished. It singles law abiding citizens out before they have committed any crime. We don't do that to any other people who have served their time for any other type crime, neither murder, robbery, fraud, etc.

**Comment ID**
DOJ-OAG-2020-0003-0613

◎ **Tracking Number**
1k4-9jhs-azbx

**Comment Details**                          **Submitter Info**

**Received Date**
Oct 13, 2020



Your Voice in Federal Decision Making.

About   Bulk Data Download   Agencies   Learn
(/about)      (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

**Broward County Reentry Task Force**
**Department of Community Programs**
**2926 North State Rd 7**
**Lauderdale Lakes, Florida 33313**

September 3, 2020

Regulations Docket Clerk
Office of Legal Policy, U.S. Department of Justice
950 Pennsylvania Avenue NW
Room 4234
Washington, DC 20530

**RE:    DOCKET NO. OAG 157 – COMMENTS ON SORNA**

To Whom It May Concern:

We are a task force comprised of representatives from county law enforcement, state probation, federal agencies, community reentry programs, treatment providers, legal professionals and returning citizens. We service Broward County, which is the second-most populous county in the state of Florida and the 17th-most populous county in the United States.

Our objective is to gather and digest information from stakeholders on both sides of criminal justice issues as well as research professionals, in order to facilitate programs and make recommendations based on public safety, community needs and best practices to reduce recidivism and foster successful reentry for those who are returning to our community.

In its most recent triannual report, Florida's Office of Program Policy Analysis and Government Accountability (OPPAGA) reported that this state has seen a 53 percent increase in the number of persons required to register as sex offenders in the 15 years since 2005. Accordingly, the population of registrants is a rapidly growing segment of the population that we must deal with.

The registrant population faces unique challenges to re-entry because they are subject to additional requirements that other returning citizens are not. Most of these restrictions are tied to their status as a "registered sex offender" and not to their likelihood to recidivate or present risk. By virtue of this status, additional requirements and restrictions are imposed on the State, County and City level, with each level becoming more restrictive. These laws dictate where they may live, work, or be present and their presence on a public registry subjects them and their family to stigma and ostracism. Notably, housing, employment stability and community support are critical to successful reentry but being a "registered sex offender" removes all of these.

1

We are writing to express our **opposition** to the proposed changes to the Sex Offender Registration and Notification Act ("SORNA") - Title I of the Adam Walsh Child Protection and Safety Act of 2006 (Public Law 109-248). SORNA is already incredibly onerous, adding additional requirement and restrictions (such as the disclosure of professional licenses) will place individuals who have been lucky enough to secure employment or businesses in jeopardy. Making it expressly retroactive will take people who have long ago completed their state-ordered sanction and effectively put them back on probation (the obligations under registration are tantamount to probation.)

Because SORNA is a "floor, not a ceiling", individuals who have committed the same offense in different states, counties or cities are subject to different requirements. Something simple, such as a one-week family vacation would subject the individual to the reporting requirements of the state of residence, the destination state and the federal reporting requirements. Florida requires 48 hours' notice for travel of 3 or more days, SORNA requires 3 business days' notice for travel of 7 or more days and the destination might have something entirely different.

If an individual who has been residing in a state that has a 10 year registration period which he completed 10 years ago and has lived in his community for 20 years offense-free, would he now have to go back on the registry if he is considered a "Tier II" under SORNA? If an individual resides in a state that has not implemented part of SORNA will federal law enforcement now arrest them for violating a rule their state has not implemented? And if so, where is someone supposed to comply with the federal requirements under SORNA if they have always reported to their County Sheriff's office under state law?

If anything, SORNA should be a "ceiling, not a floor", where individuals are on notice of the most onerous restrictions and don't have to worry about three sets of laws when they pass a state line or two layers of law enforcement out to arrest them for wholly intra-state activity. A patchwork of overlapping, confusing and usually conflicting requirements only serves as a trap into which individuals will inevitably fall and makes our job in reentry far more difficult.

Finally, and most importantly, SORNA even in its current form has done nothing to make the public safer. Its only effect has been to create a false sense of security in parents and destabilize a growing segment of the population, making it more difficult for registrants to re-integrate and thereby increasing the triggers for re-offense. For that reason, we respectfully disagree with the concept of a registry to begin with and strongly appose any changes that would make it more onerous than it already is.

Respectfully Submitted,

Meredith Powers-Lupo, LICSW
Executive Board Representative
Meredith.Powers-Lupo@va.gov

2

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
  / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
| --- | --- |

---

Comment

See attached file(s)October 13, 2020

Regulations Docket Clerk
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW, Room 4243
Washington, DC 20530

Re: Proposed rule for registration requirements under SORNA, Docket No. OAG 157

Dear Regulations Docket Clerk:

I am writing in strong opposition to Dock No. OAG 157, the DOJ's proposed rule for registration requirements under SORNA. The proposed ruling is unconstitutional as it violates the Eighth Amendment to the U.S. Constitution, which prohibits cruel and unusual punishment. Not only are the proposed requirements themselves a continued form of cruel and unusual punishment, but also, more importantly, the ramifications of any registration error or oversight incurs blatant cruel and unusual punishment, as any failure to meet these requirements would result in immediate criminal pursuit and imprisonment.

This proposed ruling threatens the basic human rights of all citizens by denying freedom and privacy for those whose misconduct has been deemed irredeemable by our justice system and society. The social disdain and harsh legal punishments, which inevitably follow the offender for life, would be further exploited under SORNA.

Under the proposed ruling there would be no federal oversight or limit to state's discretion in imposing stringent rules and requirements of sex offenders.

Additionally, there would be no differentiation between sex offenders. All would be treated the same, without any nuance being acknowledged or accommodated for. SORNA would be applied retroactively to any offender, no matter how long ago the offense was committed, and without consideration of prior state laws regarding the

AR-00002153

offense. Combine this broad approach with the local government's limitless powers of punishment and you have the makings of a Salem witch trial.

Under SORNA any offender would be required to register not only in his/her jurisdiction of residence but also in the jurisdiction of his/her conviction. With this registration comes an intrusive, legal surveillance, beginning the day an offender is "released from all sanctions" and lasting 15 years to life. Prior sentencing would have no effect on these registration requirements.

Thus, these unchecked, copious rules and restrictions dictate with tedious detail the future of those who have already long served their time. All offenders have been squeezed to fit under one small umbrella that assumes their absolute guilt and deserts of lifelong pursuit under criminal law. This law does not discriminate and does not allow for a process of remorse, repentance, and rehabilitation. Instead the endless pursuit of offenders who have fulfilled their punishment institutes a sense of hopelessness and fear. The nature of these requirements not only violates the freedom, privacy, and basic human rights of these offenders, but also threatens to do so for every citizen.

When we recognize that we are all human and we all make mistakes, we see that we are all vulnerable to even the gravest of errors. We know that more often than not, the abused becomes the abuser. Punishment does not solve the problem, but rather exacerbates it. Dehumanization and ostracization are negative reinforcement mechanisms of society. Should the law reflect such ineffective, harmful reactions? Rather than further penalizing these citizens, we should focus on prevention, education, and a more holistic approach that works to break the cycle of abuse.

Thank you for your time and consideration.

Sincerely,

Courtney Prindle

Attachments    1

📄 Letter to DOJ

⬇ Download ▾

**Comment ID**

DOJ-OAG-2020-0003-0615

◎ **Tracking Number**

kg8-7jis-b15d

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



*Your Voice in Federal Decision Making*

About    Bulk Data Download    Agencies    Learn
(/about)          (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |  Share ⌄ |

---

Comment

No, just...no. The only change that SORNA needs is its complete and total abolition. It is draconian, overly-complicated, definitely punitive, and completely devoid or rational purpose. It does NOT keep children safe. In particular, it harms the children of registered citizens by exposing them to serious physical and mental/emotional intimidation, harassment, bullying, homelessness and poverty. You MUST be aware that well over 90% of new sex offenses are committed by UNregistered persons, and that sex offenders as a group have extremely low recidivism rates. With the exception of violent rapes, most sex offenses are crimes of opportunity. Many are non-contact. Violent rapists belong in prison, not on a registry. Persons convicted of lesser sexually-based (and oftentimes, that's a stretch) offenses deserve the same chance as any other offender to do their time and resume their lives. There is nothing "particularly heinous" about many sex offenses. Often, they are more about a lack of empathy and poor behavior than true deviance. The over punishment of sex offenses is fear- and repression-based. A drunk driver with previous DUI convictions hits and maims my child. Or a bored 20 year old without much sense looks at child pornography on a computer. Guess which one is never to be free of the shame and stigma of his crime? The hyperbole that surrounds victims of sexual abuse, the anguished assertions that their "their souls have been killed" , and their lives forever ruined do not serve these victims well. What they do is make it very easy to over punish offenders, even to the point of inciting vigilante murder.

SORNA is feel good legislation pushed by a very determined group of fear mongers who have foisted misinformation on the public for 25 years. Stranger assaults on children are exceedingly rare. SORNA is overly broad and violates the ex post facto clause of the US Constitution. SORNA's "Tiers" are not risk based at all, and are therefore useless and misleading. Dismantle this thing. Failing that, restrict access to law enforcement only. Stop using sex offenders to appeal to the public's primal need to hate. Stop using them for votes. Stop letting illegal immigrants with sexual assault convictions evade and avoid prosecution while locking up non-violent citizen offenders for ridiculously long terms and then labeling them for life. SORNA is a travesty. Sex offender "management" is an industry. End this now.

| **Comment ID**
DOJ-OAG-2020-0003-0616 |

AR-00002156



**Tracking Number**

kg8-80g2-gzpl

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



Your Voice in Federal Decision Making

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001) / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Never would I have dreamed after raising my family in the United States, home of the free that I would be corresponding to the Department of Justice to express my opposition to the proposed federal enhancements of SORNA. Additionally, never would I imagine that by sharing our familys story I would be fighting for my sons rights who was born and raised in this country were I thought Justice prevailed.

My sons story begins on August 30, 2017 and continues to this date. My son has been convicted of a sex offense and is currently incarcerated as a Federal detainee in a state county jail. Prior to this dramatically impactful event, my son was on his way to fulfill his life time dream of becoming a Medical Physician as well as a contributing member of society. We thought life was good. Unfortunately, as with most cases of sexual assault, we learned that my son was also sexually abused numerous times over the span of 6 years. My son now carries two labels: Sex Offender, and Sexual Assault Survivor. Now we feel life is not good.

As a family we vowed to support him through this life changing event and began educating ourselves with what he will face once he pays his debt to society. Much to our dismay, we learned about SORNA. This law is very complex and difficult to understand, along with its numerous, onerous, intrusive restrictions. One would think that a person has no rights in a country that praises its freedom. The absurdity that my son after paying his debt to society and successfully reentering will be placed on a public registry, jeopardizing his safety, his familys safety and making his future less successful by the restraints in place for 25 years. It is punishment and not productive. The pretense that its used for public safety is very frustrating as this does nothing of the sort. Studies have determined that most sexual offenses happen between familiar relationships, and that Stranger Danger is not the case. (Case in point, my sons offenders were friends) To further the disappointment, the Registry does not allow most to graduate off. Its relaying the message, too bad, the one mistake you made will define you for the rest of your life. How is that rehabilitative?

There are better solutions than the public government registry. The public registry should be abolished made private, and provide a means to graduate off. The billions of dollars wasted on enforcing the registry could be better spent on prevention, education, and mental health issues. Any increase, or expansion, of the punitive SORNA will be very damaging to thousands of justice impacted people and families like ours while providing no benefit to the community. My family and I strongly discourage any increased empowerment to the registry, and

AR-00002158

encourage all involved in this decision making process to consider whether the registry ought to exist at all. I leave you with this question, How would you feel if your loved one faced this on a daily basis?

**Comment ID**

DOJ-OAG-2020-0003-0617

 **Tracking Number**

1k4-9jht-9p1l

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



Your Voice in Federal Decision Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002159

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

| Comment |

Hello,

This is awful. The Adam Walsh Act does nothing but place everyone in a one size fits all type of punishment. This happened to my family here in NV. We have since lost good jobs, been part of vigilante justice, property damage and harrassement from LE. One size fits all is not what the registry needs. The registry needs real reform. Chances for people to be given a second chance in life. What has happened to many families here in NV since the AWA was implemented is nothing short of cruel and unusual punishment. America is supposed to be the land of second chances. Please rethink this awful change. Please come up with some meaningful reform instead of just punishing people over and over for the same crime. My family as other families are not a danger to society. We are just people trying to live our lives. It is unfair that if your on the registry you have to be afraid everyday that some new law will happen and mess up your whole life. My husband had a good job before the AWA. Was only a tier 1 for OVER 10 YEARS. 2 years away from being able to petition to be removed. Then suddenly with no due process and no real reason was changed to a Tier 3 with no hope of ever being removed. That is wrong plain and simple!!!!! Please make some meaningful reform to the registry. One that helps people and keeps people safe. Because right now the way its run is not helping anything. Its hurting more people than its helping

| **Comment ID** |
| DOJ-OAG-2020-0003-0618 |

|  **Tracking Number** |
| 1k4-9jht-b4up |

AR-00002160

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



AR-00002161

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments ⟨724⟩ (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ⟨724⟩ (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I not only have a family member effected by registration, I work in Law Enforcement, and never see any registrants who are repeat offenders, and as such they should be allowed to live as normal a life as possible to be productive members of society.

**Comment ID**

DOJ-OAG-2020-0003-0619

◎ **Tracking Number**

1k4-9jht-vjxx

**Comment Details**                                    **Submitter Info**

**Received Date**

Oct 13, 2020

AR-00002162



*Your Voice in Federal Decision Making*

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002163

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

The already punitive and confusing registry laws are in need of an overhaul, however, this is not the way to do it. Our family is hurt by the harsh restrictions already in place and suffer as a consequence. The registry, which clinical research and peer reviewed studies, has proven to not make anyone safer. There is a 20 + year body of statistics to support this. In our case , our lived one had NO criminal record and was a successful law abiding citizen until he made one mistake one night- not over days, weeks, months or years. He was given instructions by the arresting officers to tell the truth , which he did immediately. He, because we have never even known an incarcerated person,, gave up his Miranda rights out of the fear and pressure produced by the officers. As a result of his naive and foolish decisions that night, he ultimately was again, caught in a mandatory minimum situation. His case was originally a state case that, after being on the front page of a newspaper that sensationalized the story, caught the attention of a local, ambitious , federal prosecutor. His case went federal , and after being threatened with a longer sentence if he went to trial , he plead guilty to avoid an even harsher sentence. Our public defender advised that he had a slight chance in court because the events as presented were not correct. He chose not to risk the venom of the prosecutor. As a consequence, he received a 10 year mandatory minimum, 20 years supervised release ( even though the guidelines recommend 5 and our attorney argued why.. to which neither judge nor prosecutor could give an answer and it is noted in the record) and lifetime registration. All of this for someone who had NO sex or touching of any kind and his case did not involve child pornography. He was the recipient of a police sting, and unfortunately made a bad decision. If the case had remained a state case, he may not have received ANY prison time or very minimal. He has a Masters degree, is educated, but due to SORNA, has to struggle to obtain employment. The registry needs to be abolished. It is into humane and creates a sub class of citizens. No other category of crime, including far more heinous crimes that do not remotely compare to our lived ones, suffer ongoing punishment after their debt to society had been paid. Do not go forward with these new regulations, instead , make meaningful, intelligent, logical changes that do no continue to tear peoples lives apart.

**Comment ID**

DOJ-OAG-2020-0003-0620



**Tracking Number**

1k4-9jht-um5n

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



Your Voice in Federal Decision Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments ⬤724 (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments ⬤724 (/docket/DOJ-OAG-2020-0003/comments) | Share ⏷ |

---

| Comment |

Dear Attorney General, William Barr,

I am writing in response the the new SORNA and the old one too. I don't understand how you except these guys to make a life once they finished their time of being incarcerated. It's hard for them to find work, a place to live, but still have to pay for therapy and other things once they get out. I don't know the statistics but if all theses regulations are to keep sex offenders from doing another sex crime, then why is the registry keep getting longer? I have seen statistics that sex offenders have the lowest of reoffending. But they still get a life long sentence, inside and out. It's not right.

My heart truly goes out to ones who were violently raped and child molestation. But I will tell you that some of these girls who press charges are not so sweet and innocent. In my sons case it was a he said/she said. First public defender was going to take to trial, but quit. The second one got in and scared my son in to pleading guilty before the judge, because he could get life if went to trial. I didn't know he was going to do that or I would have gotten a private paid lawyer. Which I did spend $10,000 on one to do the appeal. Lost it because he didn't provide the judges her deposition, that didn't even say he did anything, and lawyer didn't have public defenders testify. This lawyer said he knew what he was doing! Then forked out my inheritance for a post conviction lawyer of 50,000. He got the brief wrote up, talked to my son that if lose, he would get life. My son did't want me to spend anymore money and with the way the system has screwed him, he just didn't want to chance it.

The girl in his case, I would say is doing fine. She had 2 kids before incident and got pregnant 2 months after she pressed charges on my son. Had another by a different guy, that was going to take the baby and leave her. Well he ends up shooting himself in the head, while she and her lesbian girlfriend are right there. Got this info from a family member of deceased father. Authorities took their word on what happened without doing much investigating. His body was cremated. She has 4 kids by 3 different guys, all state paid deliveries. Now onto her next guy. Maybe there should be some regulations on that, if you can't pay for it then don't spread them legs. Meanwhile she is able to keep having kids and live life, my son is missing out with his only child a 14 year old daughter.

I have heard other stories where an underage girl, lied about her age. The guy gets in deep trouble for having

AR-00002166

sex with her. But she goes on with life even though she lied to begin with. There is more to these charges sometimes than what will be let out. 2 people responsible for what happened but only 1 pays the price.

Mr. Barr, I don't know if you are a Godly man, like our President. But I am begging, pleading, asking that you do away with the registry. It's not working. These guys were made by God, like all of us were. They made a mistake, like we all have. "Everybody makes mistakes in life. But that doesn't mean they have to pay for them the rest of their lives. Sometimes good people make bad choices. It doesn't mean they are bad. It means they are human." My son has a violent charge but is not a violent person. Mr. Barr please have some empathy on these guys and if your a christian, ask what would Jesus do?

Thank you for you time and reading this,

Connie Baker

**Comment ID**
DOJ-OAG-2020-0003-0621

 **Tracking Number**
1k4-9jht-lhcv

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**
Oct 13, 2020



AR-00002167

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

Comment

These changes and this act aren't about the safety of the public, it's about control over people. The DOJ and the U.S Government are not acting in a manner that benefits the people or society as a whole. The members of congress aren't willing to do what is needed to advance society, only what will get them re-elected.

---

**Comment ID**

DOJ-OAG-2020-0003-0622

---

◎ **Tracking Number**

kg8-ain6-uqo6

---

| Comment Details | Submitter Info |

**Received Date**

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments ⟨724⟩ (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ⟨724⟩ (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Hello. I am not a registrant, however my family is affected by the registry. My husband cannot find work due to his requirement to register and have his drivers license labeled. That has put an extraordinary responsibility on me and I have not done anything wrong. Please reconsider the SORNA in it's entirety. Research done over the last 20 years shows that the registry does not protect anyone. Less than 5% of "sex offenders" reoffend which is the lowest next to murder. They are the only offenders who pay a criminal sentence and then a lifetime civil sentence that not only they serve, but their entire family serves. The registry does not allow for the people who have served their time to become productive members of society. It does not allow them their right to a reputation. It does not allow them the pursuit of happiness. We cannot travel as a family. We cannot even shelter from a hurricane as a family if we were forced to evacuate. Please look at the research available and make an educated decision. Thank you.

**Comment ID**

DOJ-OAG-2020-0003-0623

 **Tracking Number**

1k4-9jhu-yoyi

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020

AR-00002171



*Your Voice in Federal Decision Making*

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments  ( 724 ) (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
| --- | --- |

| Comment |
| --- |

The sex offender registry is an extended punishment for those who have served their time. Those subject to the registry are unable to find housing or jobs and return to life as a productive citizen. In many cases, the registry serves as a list for misinformed vigilantes to harass or injure. Offenses need to be tiered and those whose crime was minor should be considered time served incarcerated as the punishment. If a person deserves a lifetime sentence, which is what the registry is, then let them serve it in prison.

| **Comment ID** |
| --- |
| DOJ-OAG-2020-0003-0624 |



| **Tracking Number** |
| --- |
| kg8-apdp-6d19 |

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



About    Bulk Data Download    Agencies    Learn
(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002174

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 PUBLIC SUBMISSION

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |     Share ⌄ |

---

| Comment |

Please reconsider SORNA. The Sex Offender Registry is not based on empirical evidence, research, Federal data, or even risk-assessment. The Registry has been used by vigilantes to murder law-abiding citizens who have been so for many decades.

I, myself, was 22 at the time of my terrible mistake. I was young, naive, and suffered severe social retardation due to medications I was given to me every day until college. In 2015, it was revealed these medications cause a severe effect on cognitive function and risk-vs-reward.

I have been given numerous risk assessments and am not at risk of reoffending. Of those on the registry, nationally, only around 5% will reoffend. All other categories of crime (with the exception of murder) have around a 67% recidivism rate.

The restrictions imposed upon those required to register are mostly ridiculous and based on hate, anger, fear, and propaganda, not on empirical evidence. In my county, for example, I cant even visit my elderly parents, simply because they live within 1,000 feet of a park and a school. My father fell and broke his hip and I was kept from helping him!

You might say, Well you shouldve thought about that before you committed a crime. First, these laws and restrictions werent even on the books at the time, so they violate Ex Post Facto and the US Constitution. Second, as stated before, I had no risk-vs-reward/social maturity/understanding at the time.

These restrictions also violate Freedom of Association and the Right to Private Property. Who has the right to tell my parents who they can and cant have on their property? Who has the right to tell a business they cant have someone patronize their establishment?

These are just some of the very serious violations of the US Constitution associated with the Registry. Please look at the empirical evidence and dont base your actions/judgments on fear/feelings.

AR-00002175

If someone is TRULY dangerous, lock them up. But for the other roughly 95%, let them serve their time and be allowed to reintegrate into society as productive American citizens.

Thank you for your time

**Comment ID**

DOJ-OAG-2020-0003-0625

 **Tracking Number**

1k4-9jhu-d5ic

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



_Your Voice in Federal Decision Making_

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

Comment

You can write as many SORNA laws as you like, but state,county, and city leaders do not seem to follow them or cherry pick they parts they want or can enforce. All that ends up happening is sex offenders living what lives they can live end up blindsided one day by the one officer in the area that actually read the laws. These laws change so often it's difficult to keep track of them for the offenders and local law enforcement.

These laws are not collateral consequences either. The damning effects of the registry alone on families that are still allowed to live together. You are basically registering everyone in the home including the children.

**Comment ID**

DOJ-OAG-2020-0003-0626

 **Tracking Number**

kg8-b30n-16oh

**Comment Details** | **Submitter Info**

**Received Date**

Oct 13, 2020

AR-00002177



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002178

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  /  Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

Thank you taking the time to read this comment, I will not go through all the research and studies posted by others, as I am sure you already have this information.
As a person required to register, I accept responsibility for my own actions, and conform to all guidelines set forth for me to follow. However, when I was sentenced, I had adjudication withheld. this is the ONLY crime that I am aware of that this does not matter. I have NO chance of ever regaining my life as a " free " person under the current laws, and these new requirements would add to the burden. While I understand that there MUST be consequences for my actions I also feel at some point I should be able to prove myself and regain my freedom from registering. These new rules, should they be passed, should act as a CEILING not a minimum.
I ask that you look at these proposed rules and act on them not on emotion or grandstanding for your constituents, but to take a good hard look at all the empirical evidence and research that has been submitted.
thank you

**Comment ID**
DOJ-OAG-2020-0003-0627

 **Tracking Number**
kg8-br4s-5us2

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Oct 13, 2020

AR-00002179



*Your Voice in Federal Decision Making*

About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002180

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
| --- | --- |

---

Comment

My name is Dr. Bernida Thompson, and I am committed to ending pre-crime preventative detention. Much like pre-crime preventative detention schemes, SORNA is a failed, costly (in many ways) experiment based on fear mongering and punishment, not on research or data. Recidivism of sexual crimes or sexual crimes in general have not been affected by SORNA since its inception and no changes to the registration will change those facts. SORNA creates a false sense of security since very few registrants repeat sexual crimes of any type and most sexual offenses are committed by family members or trusted friends not on the registry. The registry also takes much needed resources from education, mental health services, appropriate law enforcement and other measures which are immeasurably more effective in preventing sexual harm than the punitive and unnecessary SORNA regulations. Society in general is negatively affected in that collateral consequences such as housing instability and lack of job opportunities created by the registry cause harm not only to registrants, but to the overall economy and stability in communities. SORNA does nothing to benefit or protect children and actually harms many of them, especially children of registrants whose parents are unable to fully participate in their lives and face bullying and intimidation.

Nothing short of complete abolition of SORNA will free up necessary resources so that we as a society can focus on prevention of sexual harm and promote restoration and rehabilitation of both those harmed and those who cause harm.


Thank you,
Bernida Thompson


| **Comment ID** |
| --- |
| DOJ-OAG-2020-0003-0628 |

|  **Tracking Number** |
| --- |
| 1k4-9jhu-id0u |

AR-00002181

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002182

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

| Comment |
|---|

To Whom It May Concern:

I am writing this letter to comment on Dock No. OAG 157, the DOJs proposed rule for registration requirements under SORNA.

I am strongly opposed to this proposed ruling. Not every sex offender is a dangerous monster: ie some Tier One offenders! Many offenders who have paid their debt to society, (whether in prison or on probation), even though decades may have passed, will now be subject to registration all over again. Then, there is the fact that there may come some newly enacted sex offender law that is unknown to the offender that could land them back in prison because of their ignorance of it. It seems that even murderers have fewer restraints placed on them upon paying their societal debt.

Although every state has its own registration of sex offenders, there is NO proof that registration curbs sex offenses, so why add another layer that will only add complications to the existing system? Statistics say that most offenders are family members, friends or acquaintances of the involved child. The registration of offenders only serves the purpose of continuing the punishment. The one-size-fits-all approach to punishment via the registry is draconian, to say the least. If a registry is necessary at all, it should be only for those likely to re-offend, certainly not for most tier one offenders, nor for those who have long since paid their debt and have been free of offense for many years.

The purpose of the imprisonment, fines and penalties imposed on any person convicted of any crime is supposed to be rehabilitation. When a person pays for the crime, they should be allowed to rebuild their lives. Sex offenders are the objects of continual punishment by means of the registry. They are subject to continual invasion of privacy, social disdain, the possibility of vigilantism when discovered by a neighbor or acquaintance, difficulty in finding employment and housing, and the list goes on. If there is a change in the way the registration is currently handled, the offender must automatically know there is a new rule, or face 10 years or more (back) in prison for innocently failing to follow it, even if he/she never faced prison previously because theirs was a non-predatory sex offense.

AR-00002183

When a sex offender has completed his punishment and probationary period, he should be allowed to freely integrate back into society without restraint. The registry does not allow for that possibility. He is subject to continual harassment by the authorities and the community. Where he can live, whether or not he can find a job are impacted by the necessity of registration. Even though he may have long since completed his required probationary period, if he somehow forgets to register, he is subject to the possibility of long prison time.

Lastly, the continuous surveillance of offenders, even those who have long ago paid for their crimes, impacts not only the offender, but also his or her family and circle of acquaintances employers, fellow workers, church members, parents, spouses, children and even extended family members. The last thing these families need is greater possibility of breaking some potentially newly enacted law that is unknown to the offender that could land him/her back in prison! Please allow for healing and reintegration into society and family. This is so important for all concerned. Please consider whether this is truly an equitable and necessary rule.

Yours respectfully,

**Comment ID**

DOJ-OAG-2020-0003-0629

 **Tracking Number**

1k4-9jhv-696k

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



AR-00002184

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

Comment

The main problem with the proposed Rule is that there is nothing in it that would prevent sexual abuse or exploitation-- the very intention of the statute which the Rule is intended to implement.

Instead, the Rule calls for administrative compliance, whose enforcement would require the investment of law enforcement resources from all levels-- Federal, state, and local-- that would be better focused elsewhere. And the administrative compliance it calls for, focuses exclusively on those who already have been caught and held to account for such crimes, many of whom have not offended in years, having turned their lives around. Yet over 95% of reported sexual crimes are committed by those who would not even be covered by this Rule-- those with no criminal record.

For these reasons, I oppose the proposed Rule.

**Comment ID**
DOJ-OAG-2020-0003-0630

 **Tracking Number**
1k4-9jhv-ih6w

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

Ex-Post Facto law is being abolished by these continuing legislations that are being applied to registrants decades after their cases.

The fact is that if a registrant is going to re-offend, it will be early in the registration period and re-offense statistics decline for every year of registration to the point that registration is ONLY a punishment on a corrected individual.

Registration for life is unconstitutional.

Travel restrictions for life are unconstitutional.

The registries have proven to provide virtually NO safety for persons since offenders are 96% UNREGISTERED and known to the victims both before and after the institution of registries.

These laws are easy moralizations for a legislative class that profits off of public moralizations while allowing the most disgusting pornography to run rampant in print, film, broadcast and streaming media, poisoning the minds of the susceptible and turning them into sex addicts who offend.

Like any other offender, a sexual offender can be corrected and safely become a functional and productive part of society.

These red-letter laws should be abolished in any civil society and replaced with decency laws that will prevent the corruption of young minds by laying clear restrictions for indecent material.

A Florida Citizen

Comment ID

AR-00002188

DOJ-OAG-2020-0003-0631

 **Tracking Number**

1k4-9jhv-q6m5

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

Comment

Having first hand knowledge of sorta I can say for a fact that it is just another form of probation having to register erect 6 months and should be threrefor be judged a form of punishment as well as used only as a last resort ie strike 3 etc..

**Comment ID**

DOJ-OAG-2020-0003-0632

◎ **Tracking Number**

kg8-d5ij-gwwj

| **Comment Details** | **Submitter Info** |
|---|---|

**Received Date**

Oct 13, 2020



*Your Voice in Federal Decision Making*

About Bulk Data Download    Agencies    Learn
(/about)        (/bulkdownload)  (/agencies)  (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments | 724 | (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments | 724 | (/docket/DOJ-OAG-2020-0003/comments) |     Share ▾

---

Comment

Do all humans deserve to leave in peace? Or do we make them suffer for a lifetime when they made a bad choice? Does the family of this human deserve live in peace or do we make them suffer for a lifetime the consequences too? Anybody that might be reading this and have a kind heart will agree that we all deserve to live in peace. The registry is not protecting our children and is really simple to know why. The fact is that more than 95% of sex offenses against minors are don by family or Friends of the family. That's a fact is not a made out number. Basically the only way to help our children to be safe is to look out for them from the family and friends. The registry won't help a child not being victimized. The other reason why is because once a person commit a sex offense against q child and is caught, this person is unlikely he/she will commit another sex offense. That is also a fact. The registry is only making hard to imposible for sex offender to make a living, to find housing, jobs and reintegrate to society, in fact most of them lives as homeless. Some of them even take their lives because they can't keep leaving a life with no hope. Their families suffering is tremendous, not only because the love one is afflicted and have no future but because they also suffer the humiliation of the community. There are a lot of sex offenders on the registry that didn't have a victim at all, they didn't molestes a minor at all. These are also paying as if they had done the worse. They are under the same umbrella of the registry. Is just not appropriate and fair to have someone that was entice by a police officer on an adult only online chat to be on the registry, or that person that got caught urinating on public. Is just not fair. The registry has only serve to over punish those who paid for their crimes to the society. We don't have a registry for murders, dug addicts, or serial killers. Why do you think is that? That's because people won't ask questions when is about the suppose child safety and protection. Basically the registry is alive for only appearances, and for business. They money need to keep flowing to the states even though that registrant is dead for years, is out of the state, out of the country. By the way that is also a fact. I firmly believe that the registry should be abolish for good. I'm a father and have a son and I'm the one that should look out for him, not a registry that is there just to pretend that is helping us, and in the mean time lot of people living from the flowing money that comes from it. We should examine ourselves as human beings and try to make the right decision even though is not the popular decision and even though we might get angry at because that decision. We will know at the end that we did what was right for the majority. Thank you to all for reading.

**Comment ID**

DOJ-OAG-2020-0003-0633

 **Tracking Number**

kg8-dg03-382e

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



About   Bulk Data Download       Agencies       Learn

(/about)       (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

---

| Comment |

The regulations need to account for the evidence that shows a registry does not protect the public. Once identified, a person is a low risk to the community.

The regulations need to address the growing costs of compliance. In the coming lean budget years due to covid and our deteriorating economy, law enforcement does not need to be address clerks. Running around doing address checks and trying to find the homeless is not effective use of law enforcement funds. In Florida, they keep dead people on the list and those who have left the state years ago.

The registry makes no differentiation in regard to the requirements of the registrants.

SORNA misdirects child caregiver's attention. Its the individual they know without a criminal record who is the most likely to commit a new offense.

| **Comment ID** |
| DOJ-OAG-2020-0003-0634 |

|   **Tracking Number** |
| 1k4-9jhv-jfzi |

| **Comment Details** | **Submitter Info** |

**Received Date**

Oct 13, 2020

AR-00002194



About    Bulk Data Download    Agencies    Learn

(/about)        (/bulkdownload)    (/agencies)   (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002195

I am writing to comment on the proposed revision of laws related to the requirement of registration of persons convicted of sexual offenses. I am a Licensed Clinical Social Worker who spent 8 years doing Child Protection Service investigations, usually with law enforcement. I also administered a grant funded program within Parole and Probation providing counseling to families of clients. Finally, I spent another 8 years providing mental health services through the Medical Dept. of our county jail. It is in this capacity I saw that accusing persons of a sexual offense was a tool of persons they were in relationship with to destroy someone that they were angry at and it was easily successful because of our society's emotional response to even the accusation of sexual abuse and how it has become used as a scapegoat for justifying other crimes as not so bad.  I saw so many innocent persons convicted and ordered to Register for life whether they went to prison or not. Most accepted pleas with this stipulation to avoid possible lengthy sentences. They feared trial and mandatory minimum sentences as it is hard to prove innocence.  An attorney told me that the first thing they teach you in law school is that you cannot prove a negative, that you did *not* do something. In 8 years I saw one person win against a sex abuse charge at trial.

People in government are not immmune from scapegoating. The establishment and maintainence of Registration is expensive and has shown no results in research studies because it is based on a myth that most ex offenses are caused by strangers.  90% of sexual abuse convictions are from people known to their victim.  Some examples of what I typically learned while talking to families were: several women convinced their older daughters to report abuse that would have occurred when they were younger, as the mother was in a divorce and wanted to hurt their husband and/or get possession of all the property they owned together.  No evidence was available so far in the past so it was just the victims word and the learned societal response is so visceral that this was usually enough. Some men tried to get their partner to stop using drugs for the children's sake so she got tired of it and had him put in prison with false accusations. The drug dealer testified that he heard him confess to doing it.

The victim is usually in the same family. The other parent often told me the child told he that she was mad at her father or step-father and made it up. At least two had been coached by a girlfriend who had "gotten rid of her stepfather" with accusations and told her how to do it. The large majority of victims who said they wanted to tell the truth were too afraid because the DA had threatened them graphically with sending them to kids prison for having lied, if they changed their minds.

I was shocked that the DA was more interested in winning a case than finding the truth. It is easier to use the emotional response of the jury to accusation regardless of testimonies about the alleged persons character.  Another staff was equally shocked and asked if we should go to the newspapers. We found that this bias was common knowledge by law enforcement in our community and no one was going to risk confronting it. An acting DA was asked how they could sleep at night and answered, "I am hired to prosecute and win cases, not to find truth or innocence and guilt."

Many charges came from accidental touching during play or doing othre activities. Some were from persons who had become drunk and these were otherwise "normal" citizens who had tremendous remorse and wanted to make it right to their victims and were willing to get treatment. They got 6 years in prison instead and the victim got no voice.

Two teenagers I met had been good students, even working as well, and when their innocent fathers were convicted they quit school and stayed in their room. One spent all day playing video games because she said "I just want to kill someone." Families were shattered in every case of false accusations

which in my experience were at least half of them. Victims often still loved the person and just wanted them to get help to stop the abuse. These offenders were usually willing to get treatment and do whatever they could to help everyone heal.

Persons wo were career criminals of theft and robbery sometimes raped or molested victims during the course of committing other crimes. They had no empathy and  need rehabilitation. It is not too hard to distinguish these persons who are truly a threat to society from everyday productive citizens who ended up in a horrfic event and want to help victims repair if they are allowed to and to return to being positive, productive family members and citizens again. THE REGISTRY PREVENTS THIS, AND BOTH FAMILIES AND SOCIETY PAY IN A LIFETIME OF FINANCIAL COSTS AND LOST PRODUCTIVITY DUE TO MYTHS, NOT FACTS, AND USING PERSONS CONVICTED OF SEXUAL ABUSE AS SCAPEGOATS.

The prisons should be used to rehabilitate those with no empathy that prey on others, but it is exactly those people who are allowed to recreate that same criminal culture inside.  People who have held typical social values are thrown into this culture and abused, tortured and killed by other inmates who use the same emotional scapegoat justifications and with their life of robbing and assaulting others say that at least they are not sex offenders. They need to put others down to look higher.  And when persons leave prison to return to productive lives, often returning to families and looking for work they have barriers to housing and work.  Sick people who get self esteem by harassing persons on the registry hunt them down and killing them.  Even while the registry is shown not to be effective in preventing sex abuse.

Another myth is that sex offenders cannot change or be treated. That was taken out of context once and repeatedly misquoted.  Treatment is effective for most low level offenders.  I met a higher level offender on his second arrest for child sex abuse. He said "They call me a monster, they don't know I really love her and would never hurt her. I miss her so much." This man had treated his teen step-daughter like she was his wife. His real wife walked out over a year earlier because she was disgusted and said they obviously didn't need here around. I admit it was difficult to stay professional rather than judgmental while I counseled with him several times in jail. I eventually could not spend that much time and we did not see each other. A few months later he asked to see me. He said, "I wanted to tell you that I saw my stepdaughter while in court, for the first time in almost a year, and I saw a child. No wonder they called me a monster, I am a monster." Even more serious offenders can change.

I also saw people in prison for murder. Persons who were otherwise "normal" citizens who had chosen to drive while dinking. This was preventable. A family often lost one loved one in an accident and another to prison for 10 years. Why is there no outrage against drunk drivers?  The victim cannot return to the family,  receive treatment and go on to have a successful life as victims of sexual abuse can.

 Why is there no registry for those convicted of drinking and driving so we can watch out for their cars?

- Two out of three Americans will be involved in a drinking and driving accident in their lifetime. 33% of drivers arrested for drinking and driving are repeat offenders.  Recidivism for those convicted of sexual charges have a recidivism rate of .035%.

-  50% to 75% of convicted drunk drivers continue to drive with a suspended license. 95% of all sex offense convictions are committed by people NOT on the Registry. 5% of new convictions are justifying the cost and time of a Registry.

AR-00002197

- Yet the Registry is now being increased based on emotions rather than facts and will cost money that states need to solve real problems.

In Oregon we have developed a system to rate persons currently registered by their risk to society and focus our money on those rather than stop persons who are healing or healed from become productive citizens or be killed by fanatics. **Please consider a productive approach based on facts, that produces successful citizens and reduces unneccessary costs.**

(Statistics cited are from wbsites M.A.D.D., Mothers against Drunk Driving and from NAWSOL, National Association for Rational Sexual Offense Laws.)

AR-00002198

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

---

Comment

To whom it may concern:
This is regarding Docket Number OAG 157, Proposed Rule Interpreting Registration Requirements for SORNA. My son is under probation for 5 years and is held under the First Tier of Megan's Law, which requires reporting for 15 years. He was just 18 and two months old when he attended a party with his High School peers and childhood friends. These were students in his class, which he had been friends with since Kindergarten. Unfortunately, there was alcohol and drugs consumed at the party. Note, that the parents, whose children hosted the party claimed they were asleep and were not aware that alcohol and drugs were being consumed. About a week after the party the police showed up at our door and confiscated my son's cell phone. About a week later, the police came and arrested my son. He was being accused of sexual assault and pornography. The individual who accused my son was to turn 18 exactly one month and 5 days after the party took place. While my son made a mistake, if the actions had occurred one month later, Megan's Law would not have been applicable. I do not believe the intent of this Law was to harshly punish individuals who are peers and so close in age, including so close to the age of consent. In addition, I do not believe it was the intent of Megan's Law to have this harsh penalty extend out for 15 years; particularly, an offense that was deemed a Tier One.
You are taking a young individual of 18 years of age and stigmatizing him as a sexual predator until the age of 34, a period of life which is the prime time of development. By doing so, what can we expect this individual to look forward to the rest of his life after the age of 34?
The past three years have been extremely difficult, not only for my son, but for those who love him and know that he is not capable of deliberately hurting another individual. He is remorseful and understands the inappropriateness of his actions, and strives to improve his life. He has maintained the job he had before this incident took place and he has followed closely all of the Legal stipulations required of him.
Due to his current record, regarding Megan's Law, he was unable to attend the main campus of the prestigious university he currently attends. He attends a satellite branch of that same university, where he has been on Dean's List every semester, since he began.
In conclusion, it is only fair and just that if he continues to meet those probation requirements, that any Megan's Law designation should also end at the conclusion of his 5 year probation and be entitled to have this expunged from his record and be able to live a normal life.
My son is not a sexual predator, or pedophile, nor is he a danger to society. I will reiterate that Megan's Law was not intended for instances such as this. It is my opinion that SORNA is, also, inappropriate and overly restrictive

AR-00002199

in this case.

Thank you for your time and consideration.

---

**Comment ID**

DOJ-OAG-2020-0003-0636

---

 **Tracking Number**

kg8-dw5m-ooqi

---

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020

---



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002200

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
|---|---|

---

Comment

In 2008 my home was raided for child porn 10 days after my son's 18th birthday. Since I worked from home he would quickly click on limewire links when I would be out of the house, not thinking twice about it, and saving the girls his age that he liked later when I would be again out of the home. Unfortunately I hired a crocked lawyer who had me pay him $30000 up front who seemed to listen to us and understand that my son did not feel that he was guilty of child porn distribution and possession. Long story short, this lawyer does not return calls leading up to the court date and less than 24 hours before court, an associate calls and says my son has to plead guilty or risk going to jail for 10 years. Since then my son who was so looking forward to college and a bright future with girlfriend and friends, is now a recluse lucky to get a short term low paying job. For the past 9 years he is also a heroin addict. Through the years I had tried to talk to other lawyers about how unfair we thought this so called justice system was. All the lawyers agreed and took my money and did absolutely nothing. I am still paying debts but have given up hope on an opportunity to speak on my son's defense. My son's judge was a hypocrite, as he was at attendance at a annual private party at a restaurant where I had once worked. I wish now that the party would have been raided, although nothing would have happened to him due to who he was. For the 10th circuit court to say that the registry is not cruel and unusual punishment is stomach churning. If it happens to his children I highly doubt he would stand by his ruling. But then again, his child would not be charged.
I don't see an end to government greed or oppression but I wanted to write something. Had I been prepared I could have gone into detail , edited, spell checked and loaded files. However I am commenting random thoughts from my phone since today is the last day. However I would like the court to consider the teenager's lives that they are ruining. And for the older judges to look back on their lives, since I'm betting a high percentage should also be on the register due to their past behavior.

| **Comment ID** |
|---|
| DOJ-OAG-2020-0003-0637 |

AR-00002201



**Tracking Number**

1k4-9jhw-hpw5

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



About    Bulk Data Download    Agencies    Learn

(/about)    (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |  Share ⌄ |

---

Comment

It seems to me that this lengthy document imposes additional regulation, obligation, and limitation for those who
have to register. It appears to be an organization tool of sorts; a way to equalize and centralize registration
requirements. It also seems like a veiled attempt to force the states into compliance with the Adam Walsh Act.
After all this time, only 17 states have substantially complied; I'm not sure if any are in full compliance. For me,
this is an indication that the law has a wide range of potential problems.

From my perspective, the registration system does not need to be modified, improved or organized (although
changing it to a police-only registry would help). My very strong belief is that the sex offense registries across
this country need to be dismantled, eliminated and forever abolished. The registry has been shown not to
improve neighborhood safety or recidivism rates (which are already among the lowest of any crime category).
Sex offense registration is a terrible program that continues to survive because of fear, ignorance, bias, self-
serving job-preservation decisions made by legislators, and the tough-on-crime attitudes of prosecutors and
judges. It hurts not only the million-or-so people who must register but also another 2-4 million family members.
The registry creates unemployment, it increases homelessness, it does not protect our children, it offers a false
sense of security for parents, it is costly in terms of dollars and manpower, and it invites vigilanteism. And worst,
it takes away any chance of redemption, renewal, or societal reintegration for those who must register, many of
whom have already paid their debt in prison.

I do not have a legal background but I do have a son who was caught up in an ugly legal situation. I believe this
gives me credentials that (I can only guess) the framers of this new rule don't possess. The FBI sting operation
in which my son became involved was tantamount to entrapment. He didn't have a criminal record, there was no
violence, and there was no contact of any kind. This was a crime he would have been unlikely or unwilling to
commit without the grooming and prodding of the FBI. He was given 14 years in federal prison followed by
lifetime on the registry and lifetime probation. The scales of justice are way out of balance!

This DOJ document goes to great lengths to explain previous court decisions. They do this, I believe, to argue
against the constitutional challenges that have been raised in the past and are being raised again as these
arguments are finding new life in the courts across this country. Despite the legal wrangling and court decisions
to the contrary, I believe that many of the unconstitutionality arguments about the registry are in fact valid;
including arguments that cite the prohibitions of Non-delegation, Ex Post Facto, Double Jeopardy, Cruel and
Unusual Punishment and the promise of Due Process of law. I believe these arguments will eventually win out
and the registry will be defeated. For a parent whose child is caught up in this nightmare, change cannot happen

AR-00002203

soon enough. But the changes offered in this proposed DOJ rule will not improve the laws to make them constitutional and more humane. I strongly oppose the adoption of this rule.

**Comment ID**

DOJ-OAG-2020-0003-0638

 **Tracking Number**

kg8-egl7-lirt

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



Your Voice in Federal Decision Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002204



1800 JFK Boulevard, Ste. 1900B
Philadelphia, PA 19103
215-625-0551 / 800-875-8887
215-625-2808 fax
www.jlc.org

October 13, 2020

Honorable William P. Barr
Department of Justice
Office of the Attorney General
28 CFR Part 72 [Docket No. OAG 157; AG Order No. 4759– 2020]

**Re: Comments to Proposed Rules Interpreting SORNA, Document 85 FR 49332; 28 CFR 72; Docket No. OAG 157; AG Order No. 4759-2020**

Dear Attorney General Barr:

On behalf of Juvenile Law Center, we write to express our opposition to the Proposed Rules interpreting SORNA to extend federal authority over registration, including for youth. Juvenile Law Center advocates for rights, dignity, equity and opportunity for youth in the child welfare and justice systems as well as youth returning to their communities after involvement in those systems. Founded in 1975, Juvenile Law Center is the first non-profit public interest law firm for children in the country. Juvenile Law Center strives to ensure that laws, policies, and practices affecting youth advance racial and economic equity and are rooted in research, consistent with children's unique developmental characteristics, and reflective of international human rights values. Juvenile Law Center signed onto a broad coalition letter expressing opposition to the proposed rule. We write separately to specifically address the ways the proposed regulations will affect children who must register as sex offenders.

Over 200,000 individuals are on sex offender registries for offenses committed when they were children. Many young people have been required to register as a consequence of developmentally normal behavior, including playing doctor, streaking, sexting, and consensual teen romances. Registration is more likely to impact marginalized youth—particularly youth of color, low-income youth, and LGBTQ youth. These children are disproportionately placed in out-of-home settings where supervision and surveillance is especially heightened and mandatory reporting requirements apply to even normative

**BOARD OF DIRECTORS**

**Stephen Labaton, Esq.**
  *Chair*
**Kathleen Chimicles, ASA**
  *Vice Chair*
**Tom McCoy, Esq.**
  *Secretary*
**Suzanne Meiners-Levy, Esq.**
  *Treasurer*

Scott Barsky
James R. Bell, Esq.
Dr. Tami D. Benton
Emily Buss, Esq.
Gail Chavis
Sarah Chubb Sauvayre
Susan Jin Davis
Judge Nancy Gertner (Retired)

Sekou Lewis, Esq.
Rebecca Santoro Melley
Johnny Perez
Julia H. Pudlin, Esq.
Ann Rosewater
Elizabeth Scott, Esq.
Barry L. Zubrow

**EXECUTIVE LEADERSHIP**

**Susan Vivian Mangold, Esq.**
  *Chief Executive Officer*
**Marsha L. Levick, Esq.**
  *Chief Legal Officer*
**Kauthar Rahman, MBA**
  *Chief Operating Officer*

**Robert G. Schwartz, Esq.**
  *Co-Founder and Executive Director Emeritus*

sexual behaviors. In California, 76% of registered youth are youth of color, while white youth make up only 24% of registered youth despite equal offense rates.[1]

While some youth commit serious sexual harm and should be held accountable for this conduct while also receiving support and effective interventions to change their behavior, the vast majority of youth who act out sexually do not recidivate. Research shows that over 97% of children convicted of sexual offenses do not repeat this behavior.[2] Moreover, research further concludes that placing children on registries does not prevent or reduce sexual violence.[3] The federal SORNA equates juvenile and adult behavior even though there is no demonstrated, empirical relationship between youth sex crimes and adult sex crimes. Juvenile sex offending is not predictive of adult sex offending.[4] Adolescents also tend to mature out of sexual offending behavior and are not likely to commit another sexual offense.[5] Further, harsher registration schemes increase the likelihood that youth will agree to plead to a non-sexual offense, actually making it less

---

[1] *Ending the Abusive Practice of Placing Children on Sex Offender Registries, Overview, State Spotlight: California*, IMPACT JUSTICE (last visited Aug. 11, 2020) (scroll down page and select "Show More").

[2] Michael F. Caldwell, Quantifying the Decline in Juvenile Sexual Recidivism Rates, 22 PSYCHOL. PUB. POL'Y & L. 414, 419 (2016).

[3] *See* Elizabeth J. Letourneau, Dipankar Bandyopadhyay, Debajyoti Sinha & Kevin S. Armstrong, *The Influence of Sex Offender Registration on Juvenile Sexual Recidivism*, 20 CRIM. JUST. POL'Y REV. 136, 150 (2009); Elizabeth J. Letourneau, Dipankar Bandyopadhyay, Kevin S. Armstrong & Debajyoti Sinha, *Do Sex Offender Registration and Notification Requirements Deter Juvenile Sex Crimes?*, 37 CRIM. JUST. & BEHAVIOR 553, 564–65 (2010); Michael F. Caldwell & Casey Dickinson, *Sex Offender Registration and Recidivism Risk in Juvenile Sexual Offenders*, 27 BEHAVIORAL SCIS. & L. 941, 951–52 (2009).

[4] Ashley Batastini et al., *Federal Standards for Community Registration of Juvenile Sex Offenders*, 17 PSYCHOL. PUB. POL'Y & L. 451, 457–58 (2011).

[5] Michael Caldwell, et al., *Study Characteristics & Recidivism Base Rates in Juvenile Sex Offender Recidivism*, 54 INT'L J. OFFENDER THERAPY & COMP. CRIMINOLOGY 197, 198 (2010); Michael F. Caldwell, *Sexual Offense Adjudication and Recidivism Among Juvenile Offenders*, 19 SEXUAL ABUSE: J. RES. & TREATMENT 107, 11–12 (2007); Michael F. Caldwell et al., *An Examination of the Sex Offender Registration and Notification Act as Applied to Juveniles: Evaluating the Ability to Predict Sexual Recidivism*, 14 PSYCHOL., PUB. POL'Y, & L. 89, 105 (2008); E.M. Driessen, Characteristics of Youth Referred for Sexual Offenses (2002) (Ph.D. dissertation, University of Wisconsin-Milwaukee) (on file with author); Michael P. Hagan et al., *Eight-Year Comparative Analysis of Adolescent Rapists, Adolescent Child Molesters, Other Adolescent Delinquents, and the General Population*, 45 INT'L J. OFFENDER THERAPY & COMP. CRIMINOLOGY 314, 322–23 (2001); Franklin E. Zimring et al., *Investigating the Continuity of Sex offending: Evidence from the Second Philadelphia Birth Cohort*, 26 JUSTICE Q. 58, 70–72 (2009).

likely that they will receive appropriate treatment and resources within the juvenile justice system.[6]

Placing young people on registries fuels cycles of homelessness, incarceration, and trauma, for both the registrant and survivors.[7] Though SORNA was intended to protect children from sexual abuse, children who are forced to register often experience sexual violence and other harm as a result of their registration. A 2017 study revealed that registered children are nearly twice as likely to have experienced an unwanted sexual assault that involved contact or penetration in the past year, when compared to nonregistered children who have also engaged in harmful or illegal sexual behaviors.[8] They are also five times more likely to report having been approached by an adult for sex in the past year.[9] Children on sex offender registries are four times more likely to report a recent suicide attempt than non-registered children who have engaged in harmful or illegal sexual behavior.[10] Many registered youth also experience vigilantism in their communities, with 52% reporting harassment and physical violence directed at them. Accessing and maintaining housing is also a major barrier for both registered youth and their families. Over 44% of children experienced homelessness as a result of the restrictions placed on their housing due to registration.[11] Once homeless, those children become significantly more vulnerable to sexual assault and exploitation.[12] Almost all registered individuals face financial challenges and barriers to employment and education.

---

[6] Elizabeth Letourneau et al., *Sex Offender Registration and Notification Policy Increases Juvenile Plea Bargains*, 25 Sexual Abuse 189, 101–02 (2012).

[7] Nicole Pittman, Human Rights Watch, Raised on the Registry: The Irreparable Harm of Placing Children on Sex Offender Registries in the US 2–5 (2013).

[8] Elizabeth J. Letourneau et al., *Effects of Juvenile Sex Offender Registration on Adolescent Well-Being: An Empirical Examination*, 24 Psychol. Pub. Pol'y & L. 105, 114 (2017).

[9] Elizabeth J. Letourneau et al., *Effects of Juvenile Sex Offender Registration on Adolescent Well-Being: An Empirical Examination*, 24 Psychol. Pub. Pol'y & L. 105, 114 (2017).

[10] Elizabeth J. Letourneau et al., *Effects of Juvenile Sex Offender Registration on Adolescent Well-Being: An Empirical Examination*, 24 Psychol. Pub. Pol'y & L. 105, 112 (2017).

[11] Nicole Pittman, Human Rights Watch, Raised on the Registry: The Irreparable Harm of Placing Children on Sex Offender Registries in the US 65 (2013).

[12] National Sexual Violence Resource Center, Homeless Youth & Sexual Violence (Mar. 2019), https://www.nsvrc.org/sites/default/files/publications/2019-02/HomelessYouth_Final%20508.pdf.

AR-00002207

The above-cited developmental differences between youth and adults, the extremely low recidivism rates, and the tremendous harm registered children experience has led many states to adopt shorter or less onerous registration requirements and more limited notification requirements. While under Title I of the Adam Walsh Act states may currently choose varied registration approaches, the proposed rules will supplant states' autonomy to adapt registration schemes to meet the developmental characteristics and needs of children. Further, the proposed rules unconstitutionally trample on the autonomy of states and are unconstitutionally vague.

1. **The Proposed Rules violate the Tenth Amendment by compelling states to enact or administer federal law, and by applying federal registration to state law offenses.**

The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."[13] The Tenth Amendment has been used to uphold principles of federalism to limit the power the federal government exerts over state activities.[14] The U.S. Supreme Court reasoned that "[t]he Federal Government may neither issue directives requiring the states to address particular problems, nor command the States' officers, or those of their political, subdivisions, to administer or enforce a federal regulatory program."[15]

The Proposed Rules run afoul of federalism by compelling states to implement federal registration laws. Section 72.3 of the Proposed Rules provides that SORNA applies to all jurisdictions regardless of whether the jurisdiction has adopted or implemented SORNA's requirements.[16] Individuals required to register must do so "in each jurisdiction

---

[13] U.S. Const., amend. X.
[14] *See Printz v. United States*, 521 U.S. 898 (1997).
[15] *Id.* at 935; *see also New York v. United States*, 505 U.S. 144, 180 (1992) (holding Congress did not have the power to compel the states to enact a federal program regulating the disposal of toxic waste).
[16] Proposed Rules, 85 F.R. 49353 (August 13, 2020) ("[t]he requirements of SORNA apply to all sex offenders. All sex offenders must comply with all requirements of that Act...regardless of whether a jurisdiction in which registration is required has substantially implemented that Act's requirements or has implemented any particular requirement of that Act..."); Id. at 49336 (SORNA is not "conditional on registration jurisdictions' having adopted SORNA's requirements in their own registration laws or policies.").

in which the offender resides."[17] As a result, SORNA's implementation is contingent upon state compliance and action in facilitating the registration of individuals pursuant to SORNA's provisions.[18] Under the Proposed Rules, federal registration obligations will be imposed on state-run registries.  Much like the state officers who were forced to conduct background checks on gun purchasers in *Printz*, state officers are now being forced to register individuals in compliance with SORNA's requirements regardless of whether their state has implemented those requirements. This could mean that a registrant who has completed their registration requirements under a specific jurisdiction's law will still have to register in that jurisdiction under SORNA in certain circumstances.  Several states do not require children to register in their state. Yet, under this proposed rule, SORNA will compel them to register certain children anyway.  This federal commandeering is precisely what the Tenth Amendment is aimed to prevent.

Moreover, the Proposed Rule's application of federal registration to state law offenses is also problematic. The Proposed Rules state that SORNA is intended only to apply in situations where there is federal jurisdiction: if an individual violates federal law or travels in interstate commerce.[19]  However, Section 72.3 of the Proposed Rules does not mention that federal jurisdiction is a prerequisite to any responsibility to register under SORNA.  Without clarification, SORNA may be interpreted as applying federal consequences to purely state conduct/offenses, which unconstitutionally encroaches on state sovereignty in violation of the Tenth Amendment.

## 2. SORNA and the Proposed Rules are the product of an impermissible delegation of legislative power to the Executive Branch.

The foundation of our government is the separation of powers between the three branches of government. Article I, §1 of the U.S. Constitution provides, "[a]ll legislative

---

[17] *Id.* at 49353.

[18] *See Id.* at 49336 ("registration authorities in the state may be willing to register the sex offender because Federal law (i.e., SORNA) requires him to register.").

[19] *Id.* at 49333 ("registration obligations on sex offenders as a matter of Federal law that are federally enforceable under circumstances supporting Federal jurisdiction."); *see also* 18 U.S.C. § 2250(a)(2)(A) (an individual can only be convicted of a failure to register offense if that individual is convicted "under Federal law" or "travels in interstate or foreign commerce."

AR-00002209

Powers herein granted shall be vested in a Congress of the United States."[20]  Legislative power is "the power to adopt generally applicable rules of conduct governing future actions."[21] Congress can only delegate this legislative power if it "lays down by legislative act an intelligible principle by which the person or body authorized to [act] is directed to conform."[22] Put plainly, "as long as Congress makes the policy decisions when regulating private conduct, it may authorize another branch to 'fill up the details.'"[23]

Congress far exceeded this scope in delegating power to the Attorney General to implement SORNA. SORNA not only gives the Attorney General the power to create requirements for registrants, but also the authority to decide whether SORNA applies retroactively.[24]  Under such broad language, Congress has allowed the Attorney General to engage in lawmaking without any of the accountability and protective measures inherent in the legislative process. As Justice Gorsuch highlighted, "[I]t's hard to see how Congress may give the Attorney General the discretion to apply or not apply any or all of SORNA's requirements to pre-Act offenders, and then change his mind at any time. If the separation of powers means anything, it must mean that Congress cannot give the executive branch a blank check to write a code of conduct governing private conduct for a half-million people."[25]

Additionally, this proposed rule proves problematic for states that have established termination procedures for registrants that differ from SORNA. In several jurisdictions, registered children may be removed after two to five years or may petition the court for removal after some period of time has passed; the proposed rules would still require these individuals to register under SORNA. As a result, the state established termination procedures are rendered meaningless. To give the Attorney General the power to

---

[20] U.S. Const. Article 1 §1.

[21] *Gundy v. United States*, 139 S. Ct. 2116, 2133 (2019) (Gorsuch, J. dissenting).

[22] *United States v. Touby*, 500 U.S. 160, 165 (1991) (*quoting J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 [1928]).

[23] *Gundy*, 139 S. Ct. at 2136 (Gorsuch, J. dissenting).

[24] 42 U.S.C. § 16913(d) ("the Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).")

[25] *Gundy*, 139 S. Ct. at 2143 (Gorsuch, J. dissenting).

AR-00002210

functionally invalidate state enacted law violates the doctrine of non-delegation, which is foundational to the United States Constitution.

3. **The Proposed Rules violate constitutional prohibitions against ex post facto laws because it applies SORNA registration requirements to pre-SORNA/Adam Walsh Act offenses.**

The United States Constitution prohibits ex post facto laws that punish an individual for conduct that occurred before the law was passed.[26] Despite a legislature's intent to enact a non-punitive sex offender registration system, "If, [a legislature intends to] enact a regulatory scheme that is civil and nonpunitive, [courts] must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the . . . intention' to deem it civil."[27]  In *Does#1-5 v. Snyder*, the Sixth Circuit Court of Appeals found that Michigan's sex offender registration statute was invalid under the Ex Post Facto Clause of the U.S. Constitution.[28]  Michigan found that even though there was no punitive intent, the actual effects of amendments to Michigan's registration statute were punitive because they restricted where people could live, work, and loiter; categorized them into tiers without individualized assessment; and required cumbersome in-person reporting.[29]  Numerous other jurisdictions have also found that imposing sex offender registration requirements retroactively is punitive in violation of prohibitions against ex post facto laws.[30]

Section 72.3 of the Proposed Rules state that "All sex offenders must comply with all requirements of that Act, regardless of when the conviction of the offense for which registration is required occurred (including if the conviction occurred before the enactment of that Act)..."[31] This language applies SORNA and the Proposed Rules to

---

[26] U.S. Const. Art. I, § 9, Cl. 3. *See also Weaver v. Graham*, 450 U.S. 24, 28 (1981) ("The ex post facto prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.")

[27] *Smith v. Doe*, 538 U.S. 84, 92 (2003).

[28] *Id.*, 834 F.3d 696 (6th Cir. 2016).

[29] *Id.* at 705.

[30] *Hope et al. v. Commissioner*, No. 16-cv–02865 (S.D. Ind. 2019); *Doe v. Rausch*, No. 17-CV-00217 (E.D. Tenn. 2019); *Doe v. Dep't of Public Safety and Correctional Services*, 62 A.3d 123 (Md. 2013); *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017).

[31] 85 F.R. 49353.

AR-00002211

registrants who were convicted of sex offenses prior to AWA/SORNA's enactment. SORNA and the Proposed Rule's requirements include indiscriminate tier registration which is not based on an individual assessment,[32] and burdensome registration requirements.[33] These portions render SORNA's registration scheme so punitive that it constitutes criminal punishment and thus cannot constitutionally be imposed on anyone whose qualifying conviction precedes SORNA/AWA's enactment.

### 4. Sections 72.7(g) and 72.6 of the Proposed Rules are unconstitutionally vague in violation of the Fifth Amendment.

Under the Fifth Amendment's Due Process Clause, a statute is void for vagueness if the statute does not give people sufficient or fair notice of what the law requires. In *Johnson v. United States*, the Supreme Court stated that the Fifth Amendment protects against a law that is so vague that it fails to "give ordinary people fair notice of the conduct that it punishes, or is so standardless that it invites arbitrary enforcement."[34] The proposed rules fail to inform registered individuals when they are not complying with registration requirements, therefore violating constitutional due process requirements. Vague registration statutes are particularly harmful to youth required to register because youth have fewer resources and sophistication in dealing with the law, which makes it even more difficult for them to navigate complex statutory schemes.

First, provision 72.7(g) states that individuals have to comply with either SORNA requirements or the jurisdictional-specific registration requirements; however, 18 U.S.C. **§** 2250 requires the prosecution of individuals who violate SORNA.[35] This allows for the prosecution of registrants who are complying with their state's registration requirements if their state does not collect the information required by SORNA or does not have the same reporting requirements as SORNA. Individuals fulfilling their state's jurisdictional requirements are potentially vulnerable to prosecution and unable to determine whether they are in violation of federal requirements if their state does not facilitate their

---

[32] 42 U.S.C. § 16911.
[33] 85 F.R. 49353-49354.
[34] 576 U.S. 591, 591 (2015).
[35] 85 F.R. 49354.

AR-00002212

compliance. Although 18 U.S.C. **§** 2250 allows for affirmative defenses to prosecution, compliance with a state's requirements is not included among the listed defenses.

Additionally, paragraph (b) of § 72.6 requires an individual in compliance with registration requirements to provide all designations used for purposes of routing or self-identification in internet or telephonic communications or postings, including email addresses or telephone numbers;[36] but neither the section nor the rest of the statute defines "routing," "self-identification," or "postings." This vagueness would lead to limits in engaging in political speech or using social media, potentially triggering First Amendment free speech violations.[37] This provision is especially troubling for young people who use the internet for schoolwork and college and job applications, financial transactions and housing applications.  In our increasingly technological world, hindering access to the internet is incapacitating and may impede youths' ability to successfully transition to adulthood. As the statute is currently written, it is likely overbroad in the reporting it requires, and individuals who register will be unable to ascertain what information they need to provide in order to remain in compliance with registration requirements.

For the foregoing reasons, the Proposed Rules are inconsistent with current research and prevailing constitutional principles and doctrine. If enacted, they will have immediate and long-standing consequences on the lives of youth registrants, including imposing new registration requirements on many of these youth. These Proposed Rules will invalidate the legislatively enacted statutes and policies of every state, which is a direct violation of the Tenth Amendment.   Additionally, the Proposed Rules are a constitutionally impermissible delegation of authority by Congress to the Attorney General.   Lastly, these Proposed Rules are unconstitutionally vague as they fail to adequately inform registrants of their registration requirements and what conduct is

---

[36] *Id.* at 49353.

[37] *See Doe v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015) (held that the sex offender registration statute requiring individuals on the registry to report "any designation used in Internet communications or postings" was unconstitutional under the First Amendment.).

AR-00002213

prohibited. This is particularly problematic for registered youth, whose ability to navigate and understand complex regulatory systems is necessarily compromised.

Sincerely,

Riya Saha Shah, Managing Director          Malik Pickett, Staff Attorney
Emily Satifka, Zubrow Fellow                   Vic Wiener, Skadden Fellow

AR-00002214

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

I have been on the registry for over 4 years now, before taking a plea deal and being sentenced my lawyer told me it was probably 80 % that I would be acquitted but the 20% would have left my family homeless to I struck a deal which included no jail time. Had I known then what I do now I would have risked being convicted. By taking that plea and going on the registry without any hope of ever getting off I have put my family in even more jeopardy than they would have faced being homeless. The registry can be accessed by anyone and it allows anyone to find out where I live, the license plate numbers of my vehicles and even the plate numbers of people who frequently visit not myself buy my grandchildren. How is this fair under the constitution I spent 23years of my life defending. I am 72 years old now and for 67 of those years I believed we had the greatest country in the world where JUSTICE was fair and evenly applied to every citizen. Little did I know that two words "sex offender" could change that forever. Ironically enough it makes no difference why you were convicted or whether it even had anything to do with another living breathing person only that you are those two words. I am essentially relegated to living in the forest due to all the restrictions on where I can live, yet a murderer can move in next door to you and you'll never know and by the way there is a greater chance that the murderer will kill you than me sexually assaulting you if I lived next door to you, incidentally I never assaulted anyone in my life sexual or otherwise. In no way should SORNA be modified in any other way than relaxing the restrictions, giving those subject to it a way to get off the registry based on their behavior. It should not be public, if we need a registry if is to allow law enforcement to quickly eliminate suspects not subject them and their families to constant harassment. DO NOT make these changes to the registry but do consider following those medical and scientific professionals who have the data that will help to rehabilitate offenders and protect their families.

**Comment ID**

DOJ-OAG-2020-0003-0640

 **Tracking Number**

kg8-eulr-8was

AR-00002215

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002216

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I write as as a family member of someone on the list. The disparity between who makes it on the list has been obvious. Those in power and those with financial resources that should without a doubt be on the list figure out a ways to dodge the bullet, which has been seen in recent years. This list was supposed to protect our most vulnerable, children. However, its been taken to new levels and has turned into a way to keep those who cannot afford an attorney who is familiar with the laws, an automatic life sentence to a life in disarray. Ive witnessed someone who made one bad choice of exposure not knowing who was around be put in the worst sex offender registry. There was never any intention of exposure to a minor. If exposure is a requirement to get this horrible life, then the majority of individuals who go to Mardi Gras or mothers who expose themselves during breastfeeding must be on the list as well. Of course thats not the case.

Ive witnessed this person unable to progress in society as even after fulfilling the immediate punishment of their sentence, a life on the registry has shown to be much worse. Suicide has been contemplated on more than one occasion. Mostly because society refuses reentry to anyone in the list. The person is not accepted in the work force, in neighborhoods, in church, and to attend events to support their own children.

Ive witnessed, despite all of the above, someone to be able to marry someone else and have children of their own. This would sound commendable and someone on the right track, but unfortunately thats not the case. The spouse receives judgment from the registry as the entire home becomes a scarlet letter to a neighborhood. Which causes fear of vigilantes retaliating against those on the registry and their households. Children are restricted from playing with other children and treated as insignificant. Those are the same children the laws were supposed to be protecting.

The registry does not result in any offenders not reoffending. It results in suicides, failed marriages, broken homes and mockery of who should actually be receiving the punishments. Please reconsider the registry or at least rewrite it to re-evaluate how its working and how to improve it.

**Comment ID**

AR-00002217

DOJ-OAG-2020-0003-0641



**Tracking Number**

1k4-9jhw-g1fe

**Comment Details**                              **Submitter Info**

**Received Date**

Oct 13, 2020



About    Bulk Data Download    Agencies    Learn

(/about)          (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

AR-00002218

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Many people do not understand the severity of registration. Over the years I have been very intrigued by the different processes that have been given to people on SOR. I understand that some people need to be on the registry and need to have those though fit restriction to keep others safe but at the same time there are others that have done wrong and are trying to undo their wrong doings through therapy and learning. By imposing the new laws this would give people who are trying to improve themselves from their wrong doings a more harsh and rigorous journey. Not only that think about juveniles in the state of Michigan which has one of the highest registration rates has a skimpy and untaught systems. Juveniles have two possibilities no registration or life time registration. I have heard stories about kids at the age of 12 who were on the registration for the rest of their life because of on thing they did wrong when they were young. On average the human lives for 77 to 80 years old could you imagine having to register as a sex offender for the next 68 years of your life. Not everyone is a bad person some people where just misunderstood and they are the people who want to better their lives. I hope that these laws do not happen because making stricter laws dose not solve sexual abuse of sorts but therapy and learning experiences will improve the life of a person who has done wrong to another.

**Comment ID**

DOJ-OAG-2020-0003-0642

**Tracking Number**

1k4-9jhx-t91g

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)   Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002220

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

---

Comment

The sex registry is unconstitutional. Our government needs to take a good hard look at how people are getting on the registry. My son's story of how ICAC put him on the registry was illegal.

My son who has ADHD was caught up in a Florida child sex sting in 2011 called Operation Blue Shepherd. The ad posted on an adult section of Craigslist which said "Sisters looking for a hot night – w4m – 19 but they did a bait and switch. We lost at trial. Our attorney had never done a case like this, and we were not knowledgeable about the law. It has been many years of fighting, and we learned a lot. We found another lawyer who has tried to clean up the mess from the trial court but Florida will not listen. I have learned from what I can see is that the police are not the only ones who are corrupt but the courts are too. My son's case is clearly entrapment as a matter of law and the judge just turned his head and pushed it on to trial or else take two felony pleas.

When the ICAC officer took the stand (under oath) and was asked by the prosecutor, are the police allowed to bend and break the rules and even violate the laws of the state of Florida to catch a criminal" the officer answered "yes". My son was no criminal. The officer was the aggressor and pushed my son into going. My son said, "maybe tomorrow". The ICAC officer said "Oh well you sux!!! Why tomorrow". The ICAC officer was the initiator, willing participant, aggressor, or provoker of the incident. Florida will not listen and we are now out of the Florida courts. Although it is hard, I am now speaking out.

This has affected our family by the emotional ups and downs. In 2014/15, he was arrested again when he went to register. He had an old car on blocks in the backyard. When he registered the car at the DMV, he did not tell the police about it within the 24/48 hour window the sex law requires. So when he went in to register for his sex offender charge, the police arrested him. My son lost his apartment and his job. We had to pay for another attorney and go through the pain again.

This has deeply affected our family. My son and I had to see a counselor and medication etc. It feels like someone pulled your heart out. The cost of attorney fees, jail, etc. is close to $100,000. I am sick to this day.

**Comment ID**

DOJ-OAG-2020-0003-0643



**Tracking Number**

kg8-hm3e-1k56

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



Your Voice in Federal Decision Making

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

AR-00002222

PERSONAL IDENTIFIYING INFORMATION.

First, thank you for the opportunity to submit my comments as it relates to a new rule for registration requirements under the Sex Offender Registration and Notification Act ("SORNA").

I became familiar with the National Sex Offender Registry when I was living in Florida. I met a young man who was convicted for child pornography and had just finished serving two and one half years in prison. I remember thinking "well, you committed a crime, did you think there would not be consequences to your actions?"

He told me his story.  The young man at that time was twenty two years old, graduated from college with honors and joined the US Navy and became an officer. This young man had never been in trouble before and comes from a good  family. Like so many offenders he got caught up on the internet and met a girl who claimed she was of legal age.  Although ignorance is no excuse for the law, he served his sentence, paid for the crime that he committed, I thought at the time.

When he was released from prison he was placed on the sex offender registry for 25 years as a first time non-violent offender with exemplar past.

The Sex Offender Registry is a second sentence in my view and more severe than the two and a half years he spent in prison and over stretch of justice.

After researching and reading about the registry, I have concluded that the current system is seriously flawed and only serves to create larger issues and does little to mitigate the sex offenses it was intended to. In fact, it creates ancillary issues that effect all of us.

I say this because the registry in it's current state is a second punishment (double jeopardy) that affords little or no opportunity for the sex offender to lead a productive life and be a productive member of society. Opportunity for meaningful employment is severely restricted, opportunity to raise a family is severely hampered by where a offender can live and work and provide for his or her family.

The Sex Offender Registry not only poses a penalty on the offender, but also the offender's and places a scarlet letter not only on the offender but the offender's family.

There is something very wrong with the system when someone who commits murder, or is convicted of major narcotics trafficking, receives far less punishment than sex offenders cases.

SORNA and SMART are too narrow in scope.  The Department of Justice streamlining the Sex Offender Registry does not address the root cause for having a Sex Offender Registry or the ancillary problems caused as a result of the Sex Offender Registry.

The Sex Offender Registry in its current form does not make the community any safer.  It only creates a sense of hopelessness and desperation on the part of the offender, offender's family as well as the community.

All this plus the cost of maintaining the Sex Offender Registry does not justify the means when you take an objective look at the data and statistics.

I would venture to guess that Billions of dollars are allotted to SORNA and question if this money

could be better spent in more constructive ways, such as rehabilitation, education and better means of classifications of offenders by enlisting boards of psychiatrists, sociologists, psychologist, law enforcement education in each and every state to determine the threat level of each offender and whether each offender has been rehabilitated.

There are about a million people on the Sex Offender Registry and the majority are first time offenders, many of them for over 15, 20 years on the registry with no recidivism or other crimes committed. Repeat offenders or the recidivism rate is low around 5% of all the offenders.

I believe the United States and the Department Of Justice would be better served utilizing the resources at hand by looking at offenders on a case by case basis and putting the resources into identifying the people at risk of becoming repeat offenders.

It makes absolutely no sense to deploy a system that creates more problems than it solves, and granting the Department Of Justice more latitude will only add to the bureaucracy at greater cost in monetary and human capital. It is my understanding that in some states drones are used to monitor offenders and question the legality and cost of such monitoring.

Yes, we are a nation of laws, but I also believe we should be a compassionate nation where every first time nonviolent offender deserves a second chance.

I believe the current Sex Offender Registry subjects first time offenders to cruel, unusual and inhumane punishment that forces offenders from re-entering society and creates a whole host of problems from severe depression, suicide, the possibility of violent retribution towards the offender and his or her family.

This one size fits all approach in the Sex Offender Registry, with respect to Tier levels accomplishes little and does not address the root causes of sex offenses or serves the public in a meaningful way.

The vast majority of offenders are children and young adults with no future prospects as a result of the Sex Offender Registry. These offenders have served their debt to society and now the Sex Offender Registry strips these citizens of their dignity, stigma and of any hopes or dreams they may have of being productive citizens, and in some cases puts their lives at risk.

The offenders family is punished as well as becoming outcasts of society, simply because of guilt by association.

What is not fair and just is that an offender who has been on the Sex Offender Registry for many years and moves to another state, has to start the Sex Offender Registry all over again according to the other state's laws.

This country can do far better and I would ask the Department Of Justice to examine the current system for its inherent defects in fair an equitable treatment to all concerned, rather than streamlining an already flawed system.

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I believe that offenders who have not further offended after a fixed period should have the opportunity to be removed from the registry.

**Comment ID**

DOJ-OAG-2020-0003-0645

**Tracking Number**

kg8-ibvw-z375

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



AR-00002225

About    Bulk Data Download    Agencies    Learn
(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002226

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)  /  Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  /  Comment

💬 **PUBLIC SUBMISSION**

## Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments | 724 | (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments | 724 | (/docket/DOJ-OAG-2020-0003/comments) |

Share ▾

---

Comment

Here are some basic facts about registrants:

No other group of offenders, including murderers, arsonists, those who commit violent assaults, etc., is subjected to the draconian restrictions of being placed on a public list.
No other country (with the exception of North Korea) has a public list, although many countries law enforcement agencies maintain nonpublic lists.
Over 95% of new sexual crime is committed by persons NOT on a registry.
http://psycnet.apa.org/record/2008-18509-003 https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf page 15
https://www.researchgate.net/publication/232505213_Does_a_Watched_Pot_Boil_A_TimeSeries_Analysis_of_New_York's_Sex_Offender_Registration_and_Notification_Law
Public urination, sexting, underage sex, and indecent exposure can trigger a requirement to register.
https://www.hrw.org/report/2007/09/11/no-easy-answers/sex-offender-laws-us third section
Many registrants face unemployment, homelessness, instability, and personal danger.
http://journals.sagepub.com/doi/abs/10.1177/1043986204271704?journalCode=ccja ; https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf page 9
Only a small fraction of those on registries are truly high-risk.
https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf page 11
Stranger-danger is rare; 90% or more of victims know their attackers, higher for children.
https://www.rainn.org/statistics/perpetrators-sexual-violence https://www.innovations.harvard.edu/sites/default/files/105361.pdf page 7
Re-offense is rare. The DOJ has reported a 5.3% re-arrest rate, and a 3.5% reconviction rate after 3 years.
https://www.bjs.gov/content/pub/press/rsorp94pr.cfm https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf page 7
Research studies have found no relationship between having a registry and a decrease in sex offenses.
http://psycnet.apa.org/record/2008-18509-003 https://www.ncjrs.gov/pdffiles1/nij/grants/225370.pdf pp. 7, 41
Sex offender registries put innocent family members of registrants in harms way.
https://link.springer.com/article/10.1007/s12103-008-9055-x https://www.ncjrs.gov/pdffiles1/nij/grants/231989.pdf pages 9-10
Registrants are frequently denied special housing such as nursing home care and section 8 housing.
https://www.theatlantic.com/health/archive/2017/06/aging-sex-offenders/528849/ http://scholarship.law.marquette.edu/cgi/viewcontent.cgi?article=1386&context=elders
Former sex offenders are less and less likely to reoffend the longer they live offense-free.
https://www.hrw.org/report/2007/09/11/no-easy-answers/sex-offender-laws-us http://journals.sagepub.com/doi/abs/10.1177/0886260514526062
https://ofm.wa.gov/sites/default/files/public/legacy/sgc/sopb/meetings/board/2015/10/research_outline.pdf https://www.eff.org/files/filenode/024_hanson_decl_11.7.12.pdf
Current sexual offense laws create conditions that lead to increased crime.
https://qz.com/869499/new-evidence-says-us-sex-offender-policies-dont-work-and-are-are-actually-causing-more-crime/ https://repository.law.umich.edu/cgi/viewcontent.cgi?referer=https://www.google.com/&httpsredir=1&article=1078&context=articles

These are my thoughts and sentiments and I appreciate the person that wrote this complaint. Thank you

---

**Comment ID**

DOJ-OAG-2020-0003-0646

---

◎ **Tracking Number**

1k4-9jhy-iu9l

---

| **Comment Details** | **Submitter Info** |
|---|---|

**Received Date**

Oct 13, 2020



AR-00002228

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) |  Share ▾ |

---

Comment

SORNA should be abolished. Barring that, SORNA should be gutted to the greatest extent possible.

Crimes require punishment but the registry in general only unduly burdens police and investigators, creates unconstitutional ex post facto punishments parading as "regulation", and in general makes a mockery of the ideals of the country I fought for.

Whatever the punishment for sex crimes is and should be I hold out hope that I will live to see the end of the registry in the United States of America.

**Comment ID**

DOJ-OAG-2020-0003-0647

 **Tracking Number**

1k4-9jhy-9rgr

| **Comment Details** | **Submitter Info** |

**Received Date**

Oct 13, 2020

AR-00002229



*Your Voice in Federal Decision Making*

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

AR-00002230

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments)          Share ⌄

Comment

These Rules are Wrong everyone know the registry is Punishment and retro activating Punishment after the fact is not constitutional , Tiering people only on a charge basis is NOT ok , A person deserves a chance too come off the registry after so long , Not add more years too a person years after they have served their sentence is NOT ok. Stop wasting tax payers money on a registry that does NOT prevent crime in any way shape or form, This registry is bloated and needs too be re written in a way that protects the community NOT in a way too allow a Attorney General too retro activate life sentences this is NOT ok . Please stop scaring the community with fake reasons too keep applying more and more punishment to one class of citizens because you donnt like them, Use science it shows that most people on the registry are NOT a danger too the community amny have been offence free for years and years STOP THIS TYPE OF 1800S STYLE PUNISHMENT . People are disabled that are on these lists they cannt provide for them selves or families and it allows the public too shun a person and the families of a person on these registries suffer as well . It is NOT ok .

**Comment ID**
DOJ-OAG-2020-0003-0648

 **Tracking Number**
kg8-izes-oa0b

| Comment Details | Submitter Info |
|---|---|

**Received Date**
Oct 13, 2020

AR-00002231



*Your Voice in Federal Decision Making*

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002232

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments ⟨724⟩ (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments ⟨724⟩ (/docket/DOJ-OAG-2020-0003/comments) | | Share ▾ |

---

Comment

I have grave concerns over the proposed modifications, as well as the system in general. Specifically, I disagree with the notion that the federal government can mandate that the states must develop a system, leave the majority of the specifics and implementation up to the states, including the passing of legislation, then create federal criminal penalties for individuals who violate those state laws. I realize that this is a federally mandated program, but it is analogous to requiring states to institute a speed limit of 65mph in order to receive funding (which you do), having the legislatures write laws in order to implement this requirement (which they do), having state police enforce those laws and write speeding tickets (which they do), then prosecuting all speeders under federal law despite not having a federal law against speeding. You are allowing state legislatures to write the statutory factors of federal crimes, which is not permissible under the non-delegation clause.

Additionally, as Willman v Atty General recently, and incorrectly, held, individuals are responsible for registering and can be imprisoned for failing to register even if the state does not require them to register. That's a Kafka-esque level of insanity and confusion for registrants and your proposed changes do not address that.

Either implement the registry at the federal level, leaving the states out of it and ensuring consistency, or leave it up to the states to decide and get rid of the federal criminal penalties. Or get rid of the system entirely, as it has been implemented for over a decade and has consistently shown to be wholly ineffective at best and literally murderous at worst. I understand that these crimes are serious, but that does not give you impunity to enact ineffective and vindictive restrictions in return.

| **Comment ID** |
| DOJ-OAG-2020-0003-0649 |

|  **Tracking Number** |
| kg8-j4qc-52rf |

AR-00002233

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

To Whom It May Concern:

I expect that you have a lot of feedback regarding all of the legal aspects of registration.  I expect that
you have seen all of the statistics regarding registrants.  What I would like for you to understand is the
extreme pain and torment that goes with registration, much of which is unnecessary and unfair.
Additionally, I hope that you will recognize that there is a better way of handling registration.  I believe,
as do a lot of people on both sides of registration, that a more accurate registry (one with dangerous
people only) is more effective.

**My Story**

In 2009 I was arrested for possession of child pornography.  I struggled with an addiction that I did not
like.  I was a husband, father, son, brother, successful businessman, active church member, and beloved
soccer coach.  After 14 months of court hearings and back and forth between my attorney and the
prosecutor, I plead guilty to the crime of possession of child pornography.  In order to receive a reduced
sentence for possession of child pornography, a charge that did not include an option for parole or
probation, I plead to another charge that included probation.  The other charge was not something I did
and was termed by my attorney as "a best interest plea."  As a result of this charge, I am required to
register for 25 years instead of 10. Had I known the ramifications at the time, I would gladly have taken
the lengthier sentence.  I would even be willing to do the additional sentence today in order to get off of
the registry in 10 years instead of 25!

Today, statistically I am no more of a risk to commit another sex offense than any other man.
Personally, I know there is zero risk that I might commit another sex offense.  I dealt with my addiction
through counseling and have lived a very pure life free of my addiction for 11 years now.

I have raised my children to the best of my ability.  I have worked hard and stayed employed.  I have
volunteered over 2000 hours of my time to my church and other volunteer organizations.
However, I continue to live a life of great depression, despair, and hopelessness.  I struggle daily with
how to go on with my life.  The only reason I do is because of my family.  When I have moments of
feeling normal again, I am reminded by any number of things that come up regularly that I am not free
to live as anyone else.  I have restrictions that make normalcy impossible.  It is extremely frustrating and
difficult to reconcile these restrictions that are not necessary, fair, or reasonable.

Some of these restrictions/requirements include:

- I do not go to many of my children's activities.  This is the most painful.  It is difficult for me but
  also for my children and my wife.  My wife often attends alone when she would like to be there
  as a family.
- Without change I will miss most of my grandchildren's activities.

AR-00002235

- I do not volunteer at my children's school.  My wife has often worked extra to make up for my absence.
- I do not meet with my children's teachers.  I do not know the primary people shaping my children's lives. (I could but with a lot of effort and humiliation)
- I am not able to go to Disney World with my family.  The registry forces organizations to exclude registrants for liability purposes or to demonize registrants in an effort to make other scared or hateful people feel good.  They do it based on the label.
- I do not travel abroad.  Many countries will not allow me to enter.  I have missed multiple trips that my children and/or my wife have gone on.
- My professional life has been relegated to half what it once was.  I am not able to pursue many career and business opportunities because organizations fear retribution from customers or simply hate registrants.
- Every quarter I spend 1 – 4 hours at the DMV registering.
- I live in fear every day about who is going to find out and expose me.  Mostly I fear how that exposure will impact my children.  It has on many occasions.
- I live in fear after one person in prison became angry with me and said he was going to come after me when he got out and said he would use the registry to find me.
- I fear random vigilantes showing up at my door to do me harm.  Again, I mostly fear how that would impact my family.  There have been many instances of this happening to registrants.
- I would like to move to a different house, but I do not want to risk what new neighbors might do when they find out.
- I cannot live within 3000 feet of a school or daycare.  It was 1500 feet when I moved to the house I am in now.  I don't think I could move to this house today.  I know this restriction has been very difficult for many.
- **As I am writing this letter, I received notice that my son will be recognized on senior night at the football game and parents are asked to be on the field with them for this recognition.  The pain, anxiety, depression, and sadness is unbearable!  I cannot take this anymore!**
- **Public registration constantly reminds the world of a mistake I made, now over 10 years ago. It will not let the public forget and will not let me ever have redemption.  As long as I am a registrant, I will endure this punishment.**

I have a friend that is a convicted murderer and another that was convicted of manslaughter after running over and killing a lady while he was on drugs.  Both of them are celebrated today because of how they have turned their lives around and redeemed themselves.  That redemption is not possible for me.  I remain a villain because the registry continuously tells the world that I am.

Even death does not allow someone to escape registration.  I have several friends on the registry that have passed away and the state is still telling the world they are a threat.

**The Solution**

I simply ask for you to consider a way for someone that has been punished for their crime, been through counseling, been a model citizen, has supported their family, paid taxes, given a tremendous amount of time to those in need, and remained crime free to be removed from the registry.  I simply want an opportunity at redemption, to live a normal, positive, and productive life again.

I have included a document I drafted in 2013, Direction to a Better Way, as an outline for my state, the state of Mississippi, to consider that spells out a logical, fair, and effective approach to handling sex offenders and registration.  While some of the links are no longer working, the data is still completely accurate and relevant.  I hope that you will look to it as a guide to handling registration.

Sincerely,

Anonymous Registrant

AR-00002237

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

These laws and regulations are unfair and do nothing to further public safety. The registry is a tool to shame people for mistakes they have made in their past. It effectively conveys that rehabilitation is impossible (which is a lie). If someone has repaid their debt to society there is no need for them to have an extended sentence of the registry. If someone did not fix their past behaviors they would fall back into trouble. Therefore, there is no need for a registry to alienate people even further from the community. Most European countries do not have a registry, and the United States would be wise to follow their lead.

**Comment ID**
DOJ-OAG-2020-0003-0651

◎ **Tracking Number**
kg8-j9lx-7wnm

**Comment Details** | **Submitter Info**

**Received Date**
Oct 13, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002239

Case 5:22-cv-00855-JGB-SP   Document 86-5   Filed 12/15/23   Page 512 of 690   Page ID #:2905

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

---

Comment

Sex offender laws are in serious need of reform. The vast majority of registrants pose no danger to anyone. Not everyone on the registry raped anyone or harmed a child in any way. Focusing on, for instance, Romeo and Juliet type cases diverts resources from those relatively few registrants who pose a threat to our communities. The first order of business should be to actually deem a person dangerous before adding him/her to the registry. I oppose any further sex offender laws before this reform takes place.

**Comment ID**

DOJ-OAG-2020-0003-0652

 **Tracking Number**

1k4-9jhy-vcj3

| Comment Details | Submitter Info |
|:---:|:---:|

**Received Date**

Oct 13, 2020

AR-00002240



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002241

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

Please don't do this to my family. The rules are convoluted and confusing enough as it is for all involved. My husbands offense didn't even warrant prison or parole and yet this nightmare of SORNA requirements never ends for us. I am too scared to have children because I have neighbors on places like nextdoor.com who cheer and promote killing sex offenders. I fear whenever I leave for a work trip my house, dogs or husband will be targeted for violence. This has already gone too far and no one even seems to care anymore whether or not the person is an actual risk to anyone or not. It's just a government hit list for myself and for anyone associated with it.

**Comment ID**
DOJ-OAG-2020-0003-0653

**Tracking Number**
kg8-jqbr-b758

| **Comment Details** | **Submitter Info** |
|---|---|

**Received Date**
Oct 13, 2020

AR-00002242



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002243

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)     Share ▾

---

Comment

DOJ- in an effort to keep people enslaved to the government and paying fines and fees and ever broadening power over ones citizens your cronies in the military justice system are breaking every rule in the book so they can entrap soldiers in fake, badly done ICAC stings. Half the time these serve a purpose only to support the amount of numbers to give to congress that they might actually be helping keep individuals safe from sexual assault in the military. If only they followed the rules or actually did real detective work they would realize that they are merely creating criminals to bind in a labyrinth of rules such as this. Might want to keep an eye on your boys over at NCIS, AFOSI and so on- they do you and our soldiers no justice.

**Comment ID**

DOJ-OAG-2020-0003-0654

⊙ **Tracking Number**

kg8-k53r-clnn

**Comment Details**                               **Submitter Info**

**Received Date**

Oct 13, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002245

An official website of the United States Government.

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I am mom to a convicted "sex offender", the scarlet letter du jour. Before this assault on our family began, I had some trust in the system. That trust was obliterated w/this crime against my son.

My son had no criminal record prior to the FDLE intrusion into his life. Photos, some partial, were sent to his computer that he deleted. The FDLE couldn't find anything during their raid. They took all his devices & his TV. Two weeks later, they claimed they found the deleted files. They never returned his desktop PC & even though there was nothing on his MacBook, iPad or iPhone, they kept all that, too.

A couple years into probation, a new officer was assigned. The first time she met him she had him arrested because she thought he lied on his most recent polygraph even though the guy that gave the test acknowledged my son had a sinus infection at the time & that was the reason for any possible negative results. She had him arrested without a warrant. He sat in jail for 2 weeks & our new attorney got the judge to sign his release. We immediately went to the jail to be there when he was released. 8 hours later, while he was being processed out, we were told that probation officer had run to the county where the case was handled & got a warrant signed. Our son had already given away his dinner & extra clothes we had bought him. Didn't think we'd survive that, we felt broken. He was assigned a new probation officer the last few months & released.

This entire ordeal cost us around $70,000, our savings. That includes bail, the phone calls to/from jail for 4 months, the affiliate purchases, super inflated pricing for cheap junk while he was wrongly in jail, taking on his expenses because he lost his jobs. Monthly ankle bracelet monitoring fees.

My son has never hurt anyone, never touched anyone, never took any photos or videos, has never had anything to do with making "child porn" yet he is being treated the same as those who have done those things.

We learned that the government thinks that looking at a photo, the child is experiencing the act again. How can any human, in their right mind & heart, say that looking at a photo is the same as doing to a child what is in the photo? And why can they trace where photos go but not where they originated? We read that the FBI was caught sending these files, at least once.

AR-00002246

Should someone who had deleted photos, some only partial files, be labeled the same as those who have raped a child & buried them alive? Or cut off the head of a child & dumped in a canal? Should teens have their lives ruined for consensual "sexting", or adults who have been tricked by a 17 year old that looks 22 & had consensual sex be labeled the same as rapists & child molesters?

I just read statistics recently that the large majority of "sex offences" involving minors are done by family members or family friends. And that the government is prosecuting 50,000 "so" cases at any given time, most for viewing "child porn."

Loren Book is a senator here in Florida. Her father, Ron Book, is a lobbyist. According to them, Loren was molested by her babysitter as a child. She got a law passed that requires so's to register w/ local authorities of the place they are going to visit, outside their local jurisdiction, if they will be gone more than 3 days. How are they supposed to register, IN PERSON, before they get there? Now our son can't go on family trips.

This whole "so" thing has grown so out of reason. It's keeping prisons full of slave labor, affiliates' pockets full. There is an enormous lack of wisdom in these laws, even greater greed.

We adamantly oppose any further restrictions. We no longer trust cops, judges or any part of this horrible injustice system. We wonder how many of these laws would not exist if not for lobbyists. So much corruption.

The Secret Destiny of America, p138-139 by Manly P. Hall—
"The Greek law giver Solon declared that in the ideal state laws are few and simple, because they have been derived from certainties. In the corrupt state, laws are many and confused, because they have been derived from uncertainties. These corrupt laws are like the web of a spider which catch small insects but permits the stronger creatures to break through and escape.

Where there are many laws there is much lawlessness, and men come to despise and ridicule the restraints that are imposed upon freedom of action. Corrupt laws, resulting from efforts to amend inadequate legislation by further inadequate legislation, reveal a general ignorance of right and wrong. Where such ignorance exists the ideal function of democracy is impossible, and liberty degenerates into license.

The half-truth is the most dangerous form of a lie, because it can be defended in part by incontestable logic. Wherever the body of learning is broken up, the fragments become partial truths. We live in a day of partial truth; and until we remedy the condition we must suffer the inevitable consequences of division."

**Comment ID**

DOJ-OAG-2020-0003-0655

 **Tracking Number**

kg8-kwyg-09hx

**Comment Details**                          **Submitter Info**

**Received Date**

Oct 13, 2020

AR-00002247



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  /  Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020



| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

---

Comment

Regarding the proposed rule changes to the Sex Offender Registration and Notification Act (SORNA), as outlined in the Federal Register, Volume 85, Number 157.

The attached comments are respectfully submitted by the Association for the Treatment of Sexual Abusers, an association representing more than 3,000 researchers, clinicians, law enforcement and corrections officials, attorneys and members of the judiciary, victim rights advocates, and other professionals whose goal is to end sexual abuse through sound research, effective practice, informed policy, and comprehensive prevention. Comments are organized by section, with a concluding summary.

Attachments  1



📄 SORNA comments FINAL

⬇ Download (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0656/attachment_1.pdf)

**Comment ID**
DOJ-OAG-2020-0003-0656

 **Tracking Number**
kg8-kpj7-fcr5

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

AR-00002250

October 13, 2020

U.S. Department of Justice
Office of Legal Policy
Regulations Docket Clerk
Docket Number OAG 157
http://www.regulations.gov

Regarding the proposed rule changes to the Sex Offender Registration and Notification Act (SORNA), as outlined in the Federal Register, Volume 85, Number 157.

The following comments are respectfully submitted by the Association for the Treatment of Sexual Abusers, an association representing more than 3,000 researchers, clinicians, law enforcement and corrections officials, attorneys and members of the judiciary, victim rights advocates, and other professionals whose goal is to end sexual abuse through sound research, effective practice, informed policy, and comprehensive prevention. Comments are organized by section, with a concluding summary.

## Section 72.1, Purpose of SORNA:

- Notes that the Attorney General has the authority to specify SORNA requirements and their applicability.

  *Comment*: This section relies on the Congressional delegation of authority to the Attorney General to issue guidelines and regulations to interpret and implement SORNA. This statement appears to grant the Attorney General unlimited authority to make changes to the law, to set registration requirements, and to determine to whom those requirements apply, without further Congressional oversight or review. This allows changes without accountability, and creates a system that could result in different Attorneys General making significant changes in future administrations outside of Congressional oversight. This undermines stability in the law, which harms jurisdictions' abilities to plan and registrants' abilities to conform to potentially ever-changing regulations and requirements.

  *Recommendation*: ATSA recommends that a review and approval process for changes to SORNA include a system of oversight that does not allow any one individual to act unilaterally.

- Establishes a floor for sex offender registration requirements and specifies that states may prescribe requirements, with which sex offenders must comply, that are more extensive or stringent than those prescribed by SORNA.

  *Comment*: This statement does nothing to encourage states to adopt consistent laws based on science and evidence-informed best practices. Rather, by establishing SORNA as a floor and allowing harsher local regulations without guidance as to consistency or evidence-based effectiveness, SORNA continues to enable a mixed pattern of varied and ineffective laws across jurisdictions. In today's mobile society, this unnecessarily burdens registrants and their families, who must learn and comply with different regulations across jurisdictions, and does virtually nothing to promote public safety.

1

*Recommendation*: ATSA recommends that SORNA regulations serve as examples of best practices rather than as a floor, and that SORNA include a statement encouraging jurisdictions to develop and implement consistent and evidence-based regulations.

## Section 72.2, Definitions of SORNA:

- Clarifies that terms used in Section 72 have the same meanings as in SORNA.

    *Comment and recommendation*: No comments or recommendations on this section.

## Section 72.3 on Applicability of SORNA:

- Reaffirms that SORNA's requirements apply to all sex offenders regardless of when they were convicted, including those whose convictions predate SORNA's enactment.

    *Comment*: This section cites Smith v Doe (2003), United States v Felts (2012), and Reynolds v United States (2012), which upheld sex offender registration requirements against ex post facto challenges, and relies on the Congressional delegation of authority to the Attorney General to issue guidelines and regulations to interpret and implement SORNA.

    Specific wording changes include the statement that **(i) all sex offenders must comply with all requirements of SORNA, regardless of when they were convicted; (ii) this is so regardless of whether a registration jurisdiction has substantially implemented SORNA or any particular SORNA requirement; and (iii) this is so regardless of whether a particular requirement or class of sex offenders is mentioned in examples in the rules or guidelines issued by the Attorney General.** As a result, "sex offenders can be held liable for violating any requirement stated in this rule, regardless of when they were convicted, and regardless of whether the jurisdiction in which the violation occurs has adopted the requirement in its own law."

    Given that SORNA applies retroactively, this likely will cause people who have not been on the registry for years or at all to now be required to register. This can cause harm to registrants and their families (e.g., being subject to housing and job loss, bullying, and vigilantism) without a justifiable offsetting public safety benefit. In addition, regardless of court rulings, retroactively applying SORNA to a crime clearly violates ex-post facto protections in the Constitution.

    Retroactive application of laws also negatively affects legal representatives' ability to adequately represent clients in a legal landscape in which regulations and rulings in existence at the time a crime was committed may change at any time in the future to retroactively apply to those crimes.

    *Recommendation*: ATSA considers any violation of Constitutional ex post facto protections to be fundamentally flawed and requests all retroactive application of SORNA be eliminated from rule.

- Relieves registrants of the duty to comply with registration requirements for violations where their legal obligations were not made known to the offenders by authorities or where circumstances were beyond the offenders' control. In the latter situation, offenders are required

2

to fulfill their obligations as soon as "the circumstance preventing his compliance with the SORNA registration requirement no longer exists."

*Comment*: The examples of such "circumstances" all revolve around jurisdictions' laws and activities, and do not address natural disasters. Allowances for failing to comply do not include emergency situations such as public health and major weather events. Further, it is not clear who has the burden of proof to show that circumstances did or did not prevent registration compliance.

*Recommendation*: ATSA recommends SORNA expand the language about possible causes of registration violations from narrow legal technicalities and jurisdictional actions to include public health emergencies and other natural disasters (e.g., fires, floods, major earthquakes, and hurricanes). ATSA also recommends that the burden of proof when there is a disagreement over whether circumstances prevented a registrant from complying with SORNA regulations be on the jurisdiction.

- Clarifies that SORNA's registration duties for sex offenders are not conditional on whether a jurisdiction has adopted SORNA's requirements in their own registration laws or policies. Individuals who have sexually offended are not relieved of the duty to register merely because state law does not track federal registration requirements.

*Comment and recommendation*: No comments or recommendations on this item.

## Section 72.4 on where offenders must register:

- Requires sex offenders to register and keep the registration current in each jurisdiction in which the sex offender resides, is an employee, or is a student, and requires the registrant to initially register in the jurisdiction in which the offender was convicted if that jurisdiction differs from the jurisdiction of residence.

*Comment*: There do not appear to be any changes to this section of SORNA. This section draws attention, however, to the confusing mosaic of current registration laws in different jurisdictions. The range of registration requirements across jurisdictions places an undue burden on individuals who may regularly travel or who need to move for school or work. This language also does not specifically address the "how" of registration and misses the opportunity to recommend that new technology may be needed in emergency situations or simply as a cost-effective alternative to in-person registration.

*Recommendation*: ATSA recommends that SORNA develop evidence-based regulations and encourage all jurisdictions to implement consistent regulations in alignment with SORNA. ATSA also recommends that SORNA include language enabling the use of technology in place of in-person check-ins, with the goals of streamlining registration processes for jurisdictions and registrants, making registration processes more cost-effective, and providing alternatives during times of public health or natural disasters.

3

**Section 72.5 on how long offenders must register:**

- Classifies sex offenders into three ''tiers,'' based on the nature and seriousness of their sex offenses and their histories of recidivism. The tier in which a sex offender falls affects how long the offender must continue to register under SORNA. The required registration periods are generally 15 years for a tier I sex offender, 25 years for a tier II sex offender, and life for a tier III sex offender.
- Clarifies that registration under SORNA begins upon release or within three days of sentencing if the offender is not sentenced to prison.
- Provides an exception to registration "when the sex offender is in custody or civilly committed."
- Notes that registration reductions may be possible for offenders who maintain a "clean record" (i.e., no further conviction of any felony or any sex offense, successful completion of the supervision period, and successful completion of a certified sex offender treatment program).
- Allows but does not require jurisdictions to require "sex offenders to carry out their processes for registering and updating registrations during subsequent confinement."

*Comment*: There do not appear to be any significant changes to this section. However, a key weakness of SORNA on display in this section is the classification system based on crime type and supervision status rather than individual risk factors. Offense-based classification systems are not effective at identification of risk, increasing the likelihood that higher risk individuals may be misclassified as lower risk and lower risk individuals misclassified as higher risk. In addition, actual recidivism statistics are not reflected in the length of registration required.

*Recommendation*: ATSA recommends SORNA adopt a more cost-effective and public-safety-centered approach, which would include evaluating individuals upon sentencing to secure custody or community supervision, and every three years thereafter while under supervision, to determine their individual risk to reoffend, with an automatic release from registration at age 65 unless an assessment finds them to be a continuing and significant danger.

ATSA also recommends SORNA develop clear avenues and criteria for relief from registration that recognize the importance of treatment and supervision interventions for reducing recidivism risk, facilitating desistance, and strengthening protective factors.

**Section 72.6 on the information registrants must provide:**

- Requires sex offenders to provide (i) name, birth date, and Social Security number; (ii) remote communication identifiers (including email addresses and telephone numbers); (iii) information about places of residence, nonresidential lodging, employment, and school attendance; (iv) international travel; (v) passports and immigration documents; (vi) vehicle information; and (vii) professional licenses. Registrants also must provide any other information required by the Attorney General.

  Specific wording changes appear to include:
  o A registrant must **provide residence address information or other residence location information if the sex offender lacks a residence address.**

4

- o A registrant must **provide information about temporary lodging while away from his residence for seven or more days.**
- o A registrant must **provide other employment location information for sex offenders who work but do not have fixed places of employment—*e.g.,* a long-haul trucker whose "workplace" is roads and highways throughout the country, a self-employed handyman who works out of his home and does repair or home improvement work at other people's homes, or a person who frequents sites that contractors visit to obtain day labor and works for any contractor who hires him on a given day.**
- o A registrant must provide **information concerning all licensing of the offender that authorizes him to engage in an occupation or carry out a trade or business.**
- o **In addition, registration information requirements for travelers now aligns with International Megan's Law requirements.**

*Comment*: While this information may be useful to law enforcement agencies, unintended negative consequences for registrants and their families can arise if some of this information is made public. Providing birth dates and social security numbers can open the registrant to identity theft victimization. Publicizing home and work addresses can lead to vigilantism and victimization of the registrant and family members. There is limited, if any, public safety benefit to making registrant information public for all but the highest risk offenders. In addition, the variety of registration requirements across jurisdictions places an undue burden on registrants who must travel or move for work.

*Recommendation*: ATSA recommends that registrant information be made available exclusively for law enforcement purposes and be exempted from public information acts for all but the highest risk offenders. Further, ATSA recommends that SORNA encourages jurisdictions to develop, implement, and align evidence-based registration policies.

**Section 72.7 on how offenders must register and maintain registration:**

- Requires registrants to keep their registrations current in the jurisdictions in which they reside, work, or attend school. This includes permanent relocations within and beyond the original jurisdiction, temporary relocations or visits within and beyond the original jurisdiction, and U.S. and international travel.
- Requires (i) initial registration before release from imprisonment, or within three business days after sentencing if the sex offender is not imprisoned; (ii) periodic in-person appearances to verify and update the registration information; (iii) reporting of changes in name, residence, employment, or school attendance; (iv) reporting of intended departure of termination of residence, employment, or school attendance in a jurisdiction; (v) reporting of changes relating to remote communication identifiers, temporary lodging information, and vehicle information; (vi) reporting of international travel; and (vii) compliance with a jurisdiction's rules if a sex offender has not complied with the normal time and manner specifications for carrying out a SORNA requirement.
- Notes that the Attorney General has the authority to interpret and implement SORNA including the adoption of specifications regarding the time and manner in which registration requirements must be carried out.

5

Specific wording changes state that **the new section requires sex offenders to comply with the Attorney General's directions regarding the time and manner for providing and updating all registration information required by SORNA. In addition to empowering the Attorney General to specify the time and manner for reporting particular types of registration information, this provision enables the Attorney General to specify the time and manner for registration. This is so because registration on the part of a sex offender consists of providing required registration information to the registration jurisdiction for inclusion in the sex offender registry. Given that the Attorney General has the authority under section 20914(c) to specify the time and manner for a sex offender's provision of each required type of registration information, it follows that the Attorney General has the authority under section 20914(c) to specify the time and manner for a sex offender's provision of the required types of information collectively, which constitutes registration under SORNA.**

*Comment*: It is clear from the wording throughout this section that the requirements for face-to-face registration updates are meant to be intimidating. This section makes no acknowledgment that the use of modern technology could save law enforcement time and money by allowing electronic virtual in-person updates. No allowance is made for pandemics, weather disasters, or other natural emergencies. Overall, registration requirements as outlined in this section are unnecessarily onerous and will vary from jurisdiction to jurisdiction.

*Recommendation*: ATSA recommends that SORNA allow exceptions in the event of natural disasters such as severe weather, fires, earthquakes, and pandemics. ATSA also recommends that SORNA seek to reduce redundancy and conflict by recommending jurisdictions work to align their registration requirements to address the realistic needs of a mobile society. Ideally, any recommended requirements would be based on the most current research and information on best practices.

### Section 72.8 on criminal liability for violations:

- States that registration violations must occur knowingly for there to be criminal liability.

  *Comment*: This section provides an affirmative defense for uncontrollable circumstances. As examples of what those circumstances are, this section generally focuses on jurisdictions not providing information to registrants.

  *Recommendation*: ATSA recommends that the concept of an affirmative defense be strengthened by clarifying that the burden of proof is on the jurisdiction, not the registrant, as each jurisdiction varies in its requirements and effectiveness at providing accurate registration information. ATSA also recommends that SORNA specify examples of uncontrollable events beyond legal issues to include natural disasters such as severe weather, fires, and pandemics.

### GENERAL COMMENTS:

SORNA bases registration length on crime committed, not individual risk factors. Since criminal charges and convictions are frequently the result of legal bargaining, such an approach does not accurately reflect the risk factors that may increase a registrant's risk for reoffense. A new approach 1) based on

6

AR-00002256

individually assessed risks and needs, 2) with reevaluations of risk every three years, and 3) aligning with evidence that recidivism reduces to virtually zero after age 65, would be more effective at protecting public safety and more cost-effective for jurisdictions to implement.

SORNA offers no definitions or guidance on what constitutes an uncontrollable circumstance, but suggests in the text that such circumstances occur when a jurisdiction does not provide adequate or timely information. General guidance about easing in-person registration requirements in emergencies would be useful.

SORNA does not address the use of modern technology as a safe and cost-effective way to replace most in-person registration reporting requirements. Promoting new communication channels as they are developed would ease the burden on jurisdictions and registrants alike.

SORNA does not address research showing the general lack of public safety benefit of making registration information public. To prevent the likelihood of crimes against registrants, it would help to clarify that registration information is for law enforcement purposes only, is not subject to public records requests, and is not to be made available to the public except in cases where the registrant presents an extremely high risk to reoffend based on validated assessment tools used by trained and certified professionals.

SORNA does not address registry age restrictions. Research clearly shows that placing minors on registries does little to protect the public or prevent sexual abuse, while instead causing harm to minors and their families. It would be better to clarify that minors should not be placed on registries or to state that their information is not available to the public.

SORNA overall focuses on extended punishment and oversight, rather than rehabilitation. A greater policy emphasis on reducing time on a registry based on reductions in risk would reward positive behaviors and changes while continuing to promote public safety.

Much of the justification for SORNA relies on court cases and does not reflect science. SORNA's public safety goals would be better served by basing registration requirements and recommendations on science and evidence-informed best practices, and updating the statutes as new information emerges.

Finally, data show that most sex offenses are committed by people who are offending for the first time and are not on registries. The foundational reason for SORNA's existence is flawed. Money spent on SORNA would be better used to strengthen prevention programs and address the treatment needs of individuals at risk to offend.

The Association for the Treatment of Sexual Abusers applauds the goal of reducing sexual violence and improving public safety, and stands ready to lend our expertise to assist with evidence-based revisions of SORNA.

For additional detailed analysis and recommendations for evidence-based registration reforms, see:
- https://www.atsa.com/policy-papers/adultsorn
- https://www.atsa.com/policy-papers/youthregistrationnotification

AR-00002257

###

Comments due by October 13, 2020. Comments may be mailed to Regulations Docket Clerk, Office of Legal Policy, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Room 4234, Washington, DC 20530. To ensure proper handling, please reference Docket No. OAG 157 on your correspondence. You may submit comments electronically or view an electronic version of this proposed rule at http://www.regulations.gov. Mailed comments must be postmarked by October 13, 2020. Electronic comments must be received by midnight EST October 13, 2020.

AR-00002258

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

DOJ DOCKET NOTE: PERSONAL IDENTIFYING INFORMATION OF THE COMMENTER REDACTED AT THE COMMENTER'S REQUEST

My son has been on the SOR for the past 17 years out of a required 25 years to register for a non-violent, consensual relationship.

There was a time when only law enforcement had access to the registry but the fact that his picture, name and address have been listed on the SOR for the world to see has caused our family great anguish and fear for his safety. Many of our family members, friends, and neighbors no longer associate with us and consider us pariahs. We've been living with the stigma that a sex offender carries for 17 years. Not only his, but our lives have been altered forever because of this heinous, inhumane registry.

Being listed on the SOR puts a target on the registrants back which promotes vigilantism, harassment, removes all chances of securing employment and the list goes on by branding them with a scarlet letter like the draconian law from the 17th century -- basically, a ruined life.

During my sons 17 year history of being on the SOR, he has religiously complied with all legal registration requirements, has had no criminal offenses or incidents, been a law abiding citizen, has no police record, owns his own home and is not a threat to society in any way. There is no reason for him to continue to be on the registry -- it serves no purpose other than continuing to punish.

There are many registrants who end up on the SOR that were not involved in sex related crimes or were falsely accused. Do you actually think destroying someones life by listing them on the SOR for 25 years for urinating outside on or near a building is right? What about the people that have no criminal convictions but are on the registry and so are children as young as 10 years old.

Each registrant (Tier I, II and III) has different circumstances regarding their offense. There have been recent, positive changes in criminal justice reform regarding reduced sentences, early release from prison and process to apply for expungement of certain felonies and misdemeanors, i.e. The Clean Slate Project in Detroit. Those that have been on the SOR for ten plus years should be able to have a risk assessment review or put a legal

AR-00002259

mechanism in place so they can be considered for removal from the SOR, expungement of their offense and not made to suffer for most of their entire lives. They have already paid their debt to society by being incarcerated and on probation for many years.

Legislators think they are appeasing their voting constituents by placing ever more strict rules to the registry or making only minor revisions They are just hastily feeding into hysteria to advance their own careers while those of us affected by these unconstitutional laws suffer for a lifetime. The SOR is unjust, unconstitutional and violates the Eighth Amendment (cruel, unusual and excessive punishment).

There needs to be much more thought and hard work to make major, positive revisions to the SOR, create a path for pardons or repeal the registry so that thousands of registrants and their families have an opportunity for a renewed life.

**Comment ID**

DOJ-OAG-2020-0003-0657

 **Tracking Number**

1k4-9jhz-w3ui

**Comment Details**                    **Submitter Info**

**Received Date**

Oct 13, 2020



About    Bulk Data Download    Agencies    Learn
(/about)    (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

AR-00002260

Support (/support)   Provide Site Feedback

AR-00002261

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

Comment

Before getting into the minutiae of specifying the registration requirements the DOJ should take a step back and look at the effects of SORNA.

1) Is it effective in keeping the children of this country safe from sex offenders?
2) Do its benefits to society justify the life-ruining restrictions imposed on the sex offenders?
3) Are there offenders on the SOR who do not need to be there?

In response to the first question:
Most sex offenses against children are perpetrated by someone known to the child (about 93%), not by strangers. The recidivism rate for sex offenders is low (studies and statistics vary but the rate is much lower than for most other crimes). Only 5% of sex crimes are committed by someone on the Registry (Jeglic, Elizabeth, Psychology Today, 2/13/19). The Registry restrictions are driven more by fear than by facts.

In response to the second question:
Though considered a civil imposition, being on the Registry feels like a punishment, something many find worse than prison. The restrictions and public notification make it difficult to find employment, housing, pursue an education, and build meaningful relationships once out of prison. It punishes not only the offender but also his or her family. There is no need for the reputation destroying public notification. (Only 3% of offenders are strangers to their victims and very few reoffend.) Originally the SOR was information for the police only. It should return to its original form.

In response to the last question:
There are those on the SOR who do not need to be on it since they are not a threat to the public. These are those convicted of child pornography possession or distribution as their only offense. They have not directly or deliberately harmed a child. CP distribution is a misnomer in this age of computers. It is not the sale or transfer of a physical item like a porn magazine or DVD, but involves the sharing of computer images using peer-to-peer software, often without the users knowledge or intent and without any financial remuneration.
Another category that need not be on the SOR are those convicted of statutory rape, who are often adolescents close in age.

These are our thoughts and concerns as private citizens based on our reading and experience. We entreat the DOJ to do more extensive research into these areas of concern before going forward with these rulings. A new approach to monitoring sex offenders is needed. The current SORNA is ineffective and unjust.

Sincerely,
Frank and Jean Debrot

**Comment ID**

DOJ-OAG-2020-0003-0658

 **Tracking Number**

1k4-9jhz-am0y

**Comment Details**                                    **Submitter Info**

**Received Date**

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |    Share ▾ |
| --- | --- |

| Comment |
| --- |

Others have made very good point about statistics and about how this requirement is a fear based reaction to fake news. I would like to add a ore personal story.

I was sexually abused when I was 10 in 1964. For me, the sexual abuse was the price that I paid for the affection (as I understood it) and attention that I did not get in a dysfunctional family. While I did not enjoy the sexual activity, I deeply craved and needed the affection.

When my parents found out, they called in the older man, and in front of him and my brothers my mother grilled me to make a confession that what my brothers had told her was true. For awhile I denied, not because of guilt or shame, but because he had shown me love when no other had. When I finally broke down and said it was true, they told him that if he would leave town they would not call the police. He agreed and asked if he could say goodbye to me privately, and they agreed. When we went out side, he told me that I had betrayed him and because I was not faithful to th love he showed me, his life was now ruined. He would have to quit his job, sell his house and move, and it was all my fault. When I went back inside, my mother stated that this matter was over and not to be discussed. For years I grew up with the repressed feeling that I was responsible for all that happened to him.

Back in the 60's their was no one fighting for victim's rights, and no talk of therapy. Many who were abused just buried it and tried to move on with their lives, as I did. Statistics show that the greatest predictor of who might become abusive is someone who had been abused. That abuse caused a trauma that can eventually lead a person to act out. It also has a negative effect on one's self image, which also can be a deterrent to healthy adult relationships.

The registration and all of the requirements and punishments' associated with it only further deepens the trauma and further worsen the person's self respect and dignity. With the requirement to register a life long requirement, it also robs the individual of hope. In some cases, it is like pouring gas on a fire; accelerating a downward spiral. Tell people long enough that they are monsters and unredeemable, eventually they will believe it.

If you want to really do something about convicted sex offenders, provide psychological therapies. Give them a

AR-00002264

path to heal and to recover from the pains of their own abuse. The best alcohol and drug counselors are those
who have been there and found their way back. If as a society we focus on restorative justice and not revenge
and eternal punishment, we will experience a benefit to society.

Shaming, exile and condemnation will not solve the problem. Treating people as people by recognizing that they
were hurt and no one cared for them then. Compassion and counseling will produce the desired outcome of
reducing repeat offenses.

---

**Comment ID**

DOJ-OAG-2020-0003-0659

---

 **Tracking Number**

1k4-9jhz-akuy

---

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020

---



About
(/about)

Bulk Data Download
(/bulkdownload)

Agencies
(/agencies)

Learn
(/learn)

Reports
(https://resources.regulations.gov/public/component/main?main=Reports)

FAQ
(/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002265

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments)    Share ▾

---

Comment

After reading this proposed rule, I disagree with this rule to an extent. I am not in support of this rule because I believe this rule should differentiated from the different offenders. Someone who simply urinated in public, should not have this dark cloud following them for the rest of their lives. Putting them in the same category as people who have done truly disgusting things. For this rule to be affective their needs to be requirements for the offender, not just any offender. Someone with a lighter offence just should not face the same fate. This could potentially ruin lives, just think about this what if they were wrongly convicted? This must be kept in mind, not every time is someone rightfully convicted.

**Comment ID**
DOJ-OAG-2020-0003-0660

◎ **Tracking Number**
kg8-lujh-gl87

**Comment Details**                                    **Submitter Info**

**Received Date**
Oct 13, 2020

AR-00002266



About   Bulk Data Download      Agencies      Learn
(/about)      (/bulkdownload)   (/agencies)   (/learn)

Reports      FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)      (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002267

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)        Share ▾

---

Comment

I agree with this rule. The Sex Offender Registration and Notification Act or SORNA provides potential protection for our citizens. While it is true the system of SORNA does have its issues, and it certainly is not a system that can be used to prevent all sexual abuse it can serve as a possible deterrent for future sex abuse. I believe the potential for good is enough to justify the proposed rule in "Registration Requirements Under the Sex Offender Registration and Notification Act."

**Comment ID**

DOJ-OAG-2020-0003-0661

 **Tracking Number**

1k4-9jhz-vz7c

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020

AR-00002268



About   Bulk Data Download   Agencies   Learn
(/about)      (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments) |  Share ⌄ |

---

Comment

The sex offenders registry does more harm than good. Once a prisoner, especially a first offense, is released they are bound to their mistake with a public label. The registry should at least be served in tiers instead of a one label category. I believe it makes life harder on the person and harder to find a job or living condition.

**Comment ID**

DOJ-OAG-2020-0003-0662

◎ **Tracking Number**

kg8-mckm-7jn3

| **Comment Details** | **Submitter Info** |

**Received Date**

Oct 13, 2020



*Your Voice in Federal Decision Making*

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

Comment

This is the only crime that is monitored and restricted. I do not believe that it is fair that S.O. are the only offenders who are penalized for their crime outside their time served or probation.

**Comment ID**
DOJ-OAG-2020-0003-0663

 **Tracking Number**
kg8-micv-4o5s

| **Comment Details** | **Submitter Info** |
| --- | --- |

**Received Date**
Oct 13, 2020



AR-00002272

About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

Comment

I am writing a comment of the SORA laws,
I feel that Govt needs to consider how they handle Juveniles on the registry.
I do not understand how we as society can punish a young person who is
13-15 years old for the a majority of there life. I think we should offer
people a way off by proving themselves in society.
Juveniles minds are not completely developed and we need to take that into
consideration. SORA is the only thing I am aware of that can hold
a person accountable for the rest of their life with out a chance to be removed.

I please ask that you guys consider have Juveniles on a separate
set of standards.

**Comment ID**
DOJ-OAG-2020-0003-0664

 **Tracking Number**
1k4-9jhz-slbc

**Comment Details**              **Submitter Info**

**Received Date**
Oct 13, 2020

AR-00002274



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

Comment

Back in the late 1980s, I was arrested. I was sentenced in 1991. I plead guilt to things I did and things I did NOT do, to spare not only my family but others involved as well. I did not have the money for a trial and was NEVER offered a public defender. I was sent to prison for a sex crime because I could not afford a lawyer. I really never had my day in court other than being given the sentence a mass murderer would barely qualify for because the judge should have recused herself for not getting too emotional.

Having said that, there were no such thing as registries when I was sentenced and if there had been, believe me I would not have plead guilty. I did my prison, my house arrest and my probation. I did counseling and was released early from the group therapy as the state therapist stated I was not a threat and made some very bad choices. I had never been in trouble before the incident and 30 years later, still have not committed so much as a traffic violation.

I am saying all this to say this. I did my time and was ready to move on with no hard feelings even towards the unfair judge. I have been ( as best as I can be ) a productive citizen. Here though lies the issue. I cannot move on, because it is not just me on the registry. Each person on the registry has family and friends who might as well also be on the registry. My parents have been attacked because of me being on the registry. A protest took place at a business I work at because a registered sex offender ( Should be called Ex-offender by the way ) worked there. I had worked there for 9 years without incident but because of the protest, I was fired. I did NOTHING wrong at work to deserve that nor did my place of employment.

I was told ex post facto ( AFTER The fact and WAY after I was already sentenced ) that this new for of punishment called the sex offender registry was coming out and I would be on it for life with no chance of ever coming off of it. I am not listed as a predator and am not listed as a habitual offender.

At the very least if they are going to have a registry the judge should have a say in it during sentencing. I said previously, if the registry had been around when I willing threw myself on the sword and gave the prosecution everything they wanted and MORE, that I would have fought to the death to keep from getting sentenced to the registry.

I spoke earlier about our families being on the registries as well ( Metaphorically speaking ) . I cannot go on vacations with my family due to every expanding restrictions on where we can live, visit stay, or even drive past. The courts keep ruling this is not punishment but I have 20 to 30 times more restrictions now than when I was on probation. AND the registries are having people killed. Just recently a man was killed in his driveway by a man who said he thought the ex-offender was looking at children while he washed his car. REALLY?

AR-00002276

I have personally had my house shot at 3 times, the first time causing my roommate to move causing me to lose my house due to not having the funds to pay the mortgage. I have had my tires sliced, had dog poo thrown at my house, the neighbors drive by and give me dirty looks and flick me off while I mind my business and mow the lawn.

In closing, yes, I did some things wrong, many of us on the registry did. BUT we did our time and NO other Ex-offenders go what we go through. We cannot move on and rebuild our lives, heck we are not even allowed to defend ourselves against an attack less we get arrested. The registry is a ticking time bomb waiting to go off. I just hope what ever law makers read this, that your children, spouse or loved ones never make a mistake that puts them on the registry because it may take that to happen for you all to open your eyes to realize this IS in fact punishment beyond all comprehension.

**Comment ID**

DOJ-OAG-2020-0003-0665

 **Tracking Number**

kg8-mq1e-iqu2

**Comment Details**                                            Submitter Info

**Received Date**

Oct 13, 2020



About   Bulk Data Download   Agencies   Learn

(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002277

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

At a time in our country when we are questioning the equal measures and treatment of our citizens and fellow countryman our penial system always seems to lag behind. Our scales of justice are supposed to be equal regardless. Our justice is supposed to be blind but we treat prisoners and persons convicted of much more violent crimes with less restrictive more equal treatment than persons convicted of a sex crime. What other convicted person has to register or remain on probation for twenty-five years after release? Are their movements restricted, are they able to live where they choose? Registered Persons are continually being punished beyond their sentence mandates with very little in facts being provided to back up the need for such restrictions. These restrictions and registries are no different than Jim Crow laws formerly practiced in our country. Stop the unequal treatment a crossed all areas in our country. Let us get on with the business of treating all of our citizens equally.

**Comment ID**
DOJ-OAG-2020-0003-0666

**Tracking Number**
1k4-9ji0-amws

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**
Oct 13, 2020

AR-00002278



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

What is the purpose of a law if not to work effectively? SORNA has been effective for 15 years and there has been absolutely no evidence proving it works!

Yet the overwhelming majority of experts agree that what it does do is cause misery to the registrants and their families and creates a barrier for successful reentry. Department of Justice study indicates that among persons charged with a crime, sex offenses have the lowest recidivism rate, So those best poised to return as law abiding citizens ae the ones given the least chances. Further thru SORNA they are the ones with the biggest hurdles to overcome. So why add additional, confusing add ons?

How does that make any sense?

**Comment ID**

DOJ-OAG-2020-0003-0667

 **Tracking Number**

1k4-9ji0-nb5t

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020

AR-00002280



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |    Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |    FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments (724) (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments (724) (/docket/DOJ-OAG-2020-0003/comments) |  Share ▾ |

---

Comment

After briefly skimming over and reading the key points of the proposed rule, I feel that I both agree and disagree. The Sex Offender Registration and Notification Act AKA SORNA, gives citizens a certain protection. There are of course issues that SORNA possesses, and in no way can it completely prevent sexual abuse, however, it does serve as useful in terms of doing its best to deter future sexual abuse. What really turns me off about this proposed rule is the fact that someone may have not done something as bad as another individual, but they are thrown into the same group and to me that is unfair. This itself can ruin an individuals life in the case that they are randomly convicted. The rule itself has good intentions of preventing sexual abuse for the present and or future and hopefully they can tweak the faults.

**Comment ID**

DOJ-OAG-2020-0003-0668

 **Tracking Number**

kg8-nivm-4mso

|  Comment Details  |  Submitter Info  |

**Received Date**

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)    Share ▾

---

Comment

Registration should be for law enforcement purposes. Registering everyone with out categories is a waste. There are hundreds of citizens that do not represent any threat to any one but yet appear on the registry. These numbers are there because the federal funds are offered to states to increase there numbers. Entrapment operations continue to increase the numbers and very little dangerous felons are actually arrested. After these men have completed their sentences and paid there fines it is still very difficult to get work, vote, be a part of the community. How do we transition if we continue to instill fear about people who are on this list. Stop already.

**Comment ID**
DOJ-OAG-2020-0003-0669

**Tracking Number**
1k4-9ji0-9s6j

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**
Oct 13, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments) |  Share ⌄ |
|---|---|

---

| Comment |
|---|

United Office of Attorney General
Docket No. OAG 157
RE: Rules Changes to SORNA

PERSONAL IDENTIFYING INFORMATION

Esteemed Regulators:

Please enter my comments regarding the subject matter to the record as follows:

I am a 78-year-old father of a 30-year-old male convicted of sex offense and obliged to register as a level two offender for 25 years. His offense all started when he had just turned 23 and met a 15 year old young lady that lied about her age on an internet chat site (where you have to be ay least 18) and later on in person showed a fake ID to him and subsequently had consensual sex. It was found out later that this same young lady pulled the same trick on five other young men all subsequently incarcerated for the same offense and her lying about her age.

My son, after having been interned in a military brig for 30 months (out of an original sentenced plead to 36 months) is now additionally punished to remain on a Sex Offender list registered for 25 years of his most productive social, family and labor years with very little chance of pursuing a rewarding career commensurate with his high IQ, college grades and military rank .

For this type of consensual sex offense, this surely bears no rational proportion and can be regarded as cruel and unusual punishment. My son is not a rapist or a pedophile and poses no threat to anyone but the fact that he is in the sex offender registry would make think anyone who looks into this public record that he is in such a category. This is very punitive, counterproductive and quite likely unconstitutional. There is no life, liberty or pursuit of happiness here; they are forfeited and taken away arbitrarily. It is inhumane. Further, his dishonorable discharge from the armed forces limits his employment chances further as employment applications ask questions about felony and military service judgements.

AR-00002286

Registration for long periods results in an additional social and labor condemnation to someone trying to redo and commence a new or renew a prior honorable life. There is no redeemable social aspect to being listed for such a long a period for a first time, nonviolent and consensual sex offender. Further, in my son's case, none of the offended parties involved has sued or claimed compensation for any damage suffered.

The fact is that the chances of a Sex Offender to reoffend is lower than 5%, so the recidivism rate is low and does not justify the registry in its current form. There is widespread belief that the Sex Offender Registry does not protect children, and does not protect society but rather merely serves to punish offenders for the rest of their lives and that is not fair or constitutional. The vast majority, 90%, in the National Sex Registry are first time offenders. There are one million offenders listed on the registry, with average age of sex offenders reported by the US Bureau Of Justice to be 14.

I grew up and was taught by my parents that everyone makes mistakes and that most everyone deserves a second chance. This does not happen with first time offenders.

I propose that a board or mechanism be established by each state, staffed by appropriately qualified members, to review each particular case and eliminate broad and universal categories or levels, as is now the case.

As rules now stand, the resulting unintended consequences are of handing out additional punishments and additional societal, mental and spiritual incarceration that makes rehabilitation and independent living impossible, if the regulated person cannot obtain a decent paying job and community acceptance during their most productive years - all after already having paid his or her debt to society after being physically incarcerated.

I trust that you give thoughtful consideration to the opinions I expressed and to that of others who have submitted theirs.

Sincerely,

---

**Comment ID**

DOJ-OAG-2020-0003-0670

---

 **Tracking Number**

1k4-9ji0-106n

---

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



*Your Voice in Federal Decision Making.*

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments   724 (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments   724 (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
|---|---|

---

| Comment |
|---|

The Adam Walsh Act was a legislative means for the father of Adam Walsh to visit his unspeakable grief upon public policy for the purpose of monitoring and restricting of those convicted of crimes of a sexual nature. Unfortunately, it has not furthured public safety and has been shown to make the public less safe, for several reasons, among them dilution of law enforcement resources occupied with monitoring compliance among the group with the lowest reoffense rate of all felonys, and driving further underground those who could otherwise seek help in addressing their history of addictive and/or criminal sexual behavior. They weigh the cost of confession and wisely consider it foolish.

That said, the DOJ is now planning to legitimize the AWA as a working and effective model for public safety by bringing all 50 States into compliance with its cumbersome and costly requirements. This administration, as well as most Republican administrations have been keen on keeping States largely sovereign in their crafting of public safety policy, cheifly because they believe in limiting Federal interferrence with State legislatures except in the most urgent of crises, and because they do not believe in establishing unfunded mandates, which is exactly what this is.

If left uninterferred with, States will hopefully be able to dismantle this, yet another artifact of the "tough on crime" legacy which has made things less safe for children and vulnerable adults by it's refusal to address root issues of addiction and redemption within the human experience. Our attempt to punish our way out of the tragic reality of sexually selfish behavior is as expensive as it is ineffective, and the DOJ is on the cusp of exacerbating that expense, on the State's dime.

| **Comment ID** |
|---|
| DOJ-OAG-2020-0003-0671 |



**Tracking Number**

1k4-9ji0-glom

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



Your Voice in Federal Decision Making

About    Bulk Data Download    Agencies    Learn

(/about)    (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

It makes it hard to find work somewhere to live makes our life very difficult dues live in normal life like anyone else is entitle to

**Comment ID**
DOJ-OAG-2020-0003-0672

**Tracking Number**
1k4-9ji0-g500

| **Comment Details** | **Submitter Info** |
|---|---|

**Received Date**
Oct 13, 2020



AR-00002291

About   Bulk Data Download   Agencies   Learn
(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002292

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

Stop the registry. It does no good. It harms more families than people believe it helps. The majority of sexual violence against women and children is caused by people not on the registry, known by the victim, not a stranger, and will never be put on the registry. Overly broad restrictions on residency and everyday actions has caused a system that is impossible to enforce or live by. This registry system needs to abolished in it's entirety to allow rehabilitation to actually occur. Putting one person on a registry like this also harms everyone related to that person including wives, children, mothers, fathers, grandparents, and more. The laws imposed on families is nothing short of the arm bands Jews were forced to wear by the Nazi regime. The wrong belief that sex offenders have higher than average recidivism is a farce sold to politicians to give them something to grandstand about. Not only does this system not need more rules and regulations added to weigh down an already overburdened system, but these laws need to all be repealed and acknowledged as continuous cruel and unusual punishment.

**Comment ID**
DOJ-OAG-2020-0003-0673

 **Tracking Number**
kg8-p6h5-mp0l

| **Comment Details** | **Submitter Info** |
|---|---|

**Received Date**
Oct 13, 2020



*Your Voice in Federal Decision Making*

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

---

Comment

I do not support these changes. Barr has no right to impose more on SO's. He is in fact creating criminal laws since violations will resust in criminal prosecutions. He is also trying to create a federal registry which an SO may never be removed from. None of the canges listed in this proposed rule should be approved. Shame on you Barr!!!!!

**Comment ID**

DOJ-OAG-2020-0003-0674

◎ **Tracking Number**

kg8-ppy9-2oou

**Comment Details** | **Submitter Info**

**Received Date**

Oct 13, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

AR-00002296

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)        Share ▾

---

Comment

Please do not let this pass. My father has had his life ruined by implementations like this. He has never had a probation violation, was charged at a degree above the actual crime, and as a result his life and my family's has been drastically affected, even ten plus years after the attempted offense. This measure would continue the process of dehumanizing real people who are trying to make their life better.

**Comment ID**
DOJ-OAG-2020-0003-0675

◎ **Tracking Number**
kg8-q2z2-dlht

| **Comment Details** | **Submitter Info** |
| --- | --- |

**Received Date**
Oct 13, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)          Share ▾

Comment

PERSONAL IDENTIFYING INFORMATION .
It is difficult to watch a family member trying to establish a life that allows him to move forward. The sex offender registration is a shaming technique that is outdated . The term sex offender registry automatically suggests the public should be offended. It is horrible to be labeled and allow everyone to prejudge.

Reference OAG 157

**Comment ID**
DOJ-OAG-2020-0003-0676

**Tracking Number**
1k4-9ji1-rgk7

**Comment Details**

**Received Date**
Oct 13, 2020

AR-00002299



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

---

Comment

I am strongly opposed to the proposed changes to the Sex Offender Registration and Notification Act (SORNA) in their current form unless SORNA is amended to act as a ceiling and not a floor, when it comes to requirements imposed on persons required to register as sexual offenders.

SORNA needs to educate City, County, State legislators about the purpose of SORNA and not be allowed to govern rules and laws that do not apply to the reason of SORNAs purpose. The rules each state, county, or city are placing are not easy to follow as the requirements are vague, no guidance is given to those on the registry. There are no easy guidelines that are easy to learn. Even when a registered citizen tries to do the right thing, as following the awful rules someone with no education on this subject puts in place, they are punished because of something else they didnt know they had to do, or hadnt been able to do that due to circumstances out of their control. Example would be mandatory in person registration, although the location where the in person registration is located was closed to the public due to the pandemic, (COVID-19) yet, a human being on the registry was given a 2nd, 3rd degree felony for not registering in person, although the building was closed to in person business. How is that even a fair concept? It is a problem that SORNA needs fix.

If SORNA is the foundation for the sex offender registry, then I am asking that those who made this law, revise it with all states mandating the tier system, allow those on the registry the opportunities to remove themselves from the registry, also the laws should be the same in every state, it makes it easier for those on the registry to know what they need to do to remain compliant with the registry if they are traveling, working in another state, visiting family, friends, living live etc. When you allow the states to make ordinances, or legislation with no regard to suppling these individuals a map of where they are allowed to go, grocery shopping, pharmacy, out to eat, just to get basic everyday essentials, the states should be held accountable for their actions as well. Any legislator that places any votes to a law, ordinance, statute or any other form of governing for a registry, they need to be well educated in the background of the subject matter to which they are speaking of or making laws for. Not all the individuals on the registry should be on the registry.

There is no evidence that SORNA effectively reduces sex crime recidivism. In the absence of any proof that this is effective and in the face of so much evidence that registration only destabilizes and creates a barrier to successful reentry to a population that already has a low rate of recidivism, I strongly implore you to reconsider SORNA in its entirety.

AR-00002301

**Comment ID**

DOJ-OAG-2020-0003-0677

 **Tracking Number**

1k4-9ji1-fgyv

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



About   Bulk Data Download   Agencies   Learn

(/about)   (/bulkdownload)   (/agencies)   (/learn)

Reports   FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

**PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

Please do not increase the burden on RSO to meet an additional multitude of rules and regulations. These rules and regulations have no effect on preventing new sex crimes by RSO. The recidivism rate is less than 5% and after 10 years offense free it is near zero %. These new rules and regulations will only increase the administrative nightmare for RSO. Please do not implement these proposed rules.

**Comment ID**
DOJ-OAG-2020-0003-0678

**Tracking Number**
1k4-9ji1-4569

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**
Oct 13, 2020

AR-00002303



About
(/about)

Bulk Data Download
(/bulkdownload)

Agencies
(/agencies)

Learn
(/learn)

Reports
(https://resources.regulations.gov/public/component/main?main=Reports)

FAQ
(/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

The Sex offender registry guideline is not made for all cases.  Each case is different.  There are several cases that are consensual. non-violent cases, young men and women who have had sex with a minor, was most likely consensual.  And it should never be a felony for one, and there should not be a sex offender registry at all. And I'll explain why.

There is this young man, who is very dear to me, He was 20 years old, was approached by a minor, not knowing that this was a minor at first. Come to find out, she was an expert in this case because she has done this before with others and continues to do so.  She does not care how old these young men were.  She took an advantage of this person to get what she wanted.  She has also done the same thing when she was younger with someone a few years older than my son.  She also tried to approach my son's best friend and got another guy in trouble that is the same age as my son.  This young teenaged girl, a minor, admitted it and the stories of the 20-year-old young man and the minor matches. but because of the guidelines, it basically threw a book at the young man. They are unable to better to pursue their future of their dream.  People like that should be given a second chance.  Everyone deserves a second chance.  Everyone makes mistakes, like you and me no matter the case. The young man should have a chance to turn his life around and do what's right.  He should have the opportunity to learn from it and pursue their dream on what they want to do in life, like, Joining the military.  This should not block them from joining the service.

They cannot buy alcohol, cannot buy cigarettes/tobacco till they are 21 years old, but you can punish them as an adult under the age of 21. How does this make any sense at all?  If the Government has decided these young adults at the age of 18 to 21 years old are not really an

adult except to vote or to join the service? But the charges can be pressed against them as an "adult"?

There are other cases, that were reported to the authority out of anger of some people to hurt someone that had been hurt because of the breakup of the relationship? or this evil person likes other people's misery? So, they were reported to get in trouble.   what are the chances of the case to be revoked if the person admitted lying to the authority about being "touched inappropriately"?  There are cases that went ahead and pursued & punish / sentence the innocents?

I understand if there's violence/ abuse/ or even murder, I would assume the person would be in Jail/Prison. Those are most likely in level 3 tier sex offender.  They are more harden criminals.  You would not want them to be free if that is the case.

I'm talking about those in level - one and two. tier one and tier two. should not register as a sex offender at all. All those in sexual misconduct cases.  You are labeling this person for years to come. People have made judgements against them.  Because of the label,  if the person was convicted years ago, makes them an easy target, such as a person could be possible stalking the offender because all personal information has been made public, where they live, work, drive and what they look like. This is not safe for the "registered sex offender" or the family. All it does is to point out that person's flaw, the onetime mistake that was made.

There's no registry for those that have reoffended for Drugs
sellers/users, Gangs, Drunk driving/operating under influence, assaults,
domestic violence, battery, many other general related crimes. Why on
sex offenders? Most sex offenders do NOT reoffend.  This case has a
very low percentage of recidivism.   I see those with drugs, Gangs,
Drunk driving, domestic violence, assaults as i have listed above gets
released from authority and does it again.  how does this make sense?
These recidivisms have a much higher percentage rate than the sex
offenders.

The recidivism rates are underestimated of actual reoffending.  Per
report from Smart.OJP.gov and the Recidivism rates range from 5%
after 3 years and 24% after 15 years.  The rates of recidivism for
General Crime are higher than those for sex crimes.

When the registry was created, this would put offenders at risk of
retaliation and discriminations.  How does this make America great?  I
would think they would have to be in defense mindset most of the time
to protect self and family.

The damages that can be done to a "Registered sex offender" especially
those are working hard to be good citizen:

- -Trying to find a job to support self and family, unable to do so,
  Discrimination
- -Trying to find a place to live, would the bank give them a loan?
  would the landlord rent the place to 'registered sex offender'?
  Most don't want to give them a chance. Discrimination

- -Easy Target - Why?  Made their home address, work address and vehicle that they drive open to the public as well as what they look like.  This violates their privacy.  This violates the constitution! This violates the human rights. This violates their safety of themselves and their family, spouse, children, parents or even their pets!

- -Social Media, if someone gets mad at the person, can post on social media and states that this person is a Horrible, terrible, bad person because he's a sex offender, and that is all the angry person knows and for something that had happened 12, 15 or even 20 years ago! I have seen this happened How does this protect those around them?

- How can the children of a registered sex offender live a normal life? when their mom or dad had to register?  Not many other parents would allow their children to play with the kids of the registered parent.  This could be the husband that was with the wife at the time when they were younger. It was reported by the parent.  But the couple stayed together anyways, got married and had children.  Why the children or the wife be punished?

- This punishes the whole family or the whole household.  Because of the rules, restrictions, laws for something that was consensual between the couple. How can a family continue to live as normal as possible when these keeps coming up to restrict the registered person?

- This also hurts the mental health of a person that had never existed before.  It's almost like for your reason to register the person, is to push for more wrongdoings from a person, adding more rules, regulations, laws.  And to get more money out a person who really didn't do any hard-general crime.  It is also emotional draining.

What would you do if this was your child who is a young adult that made a mistake, a onetime mistake or your niece or nephew? or your Godson or your Goddaughter?  or even your grandchild?

Did you know that young adults who are at the age of 26 and younger are not actually fully matured till they are 26 years old?  There is a proven study for it.

Look up NJ Democratic Congressman, Tom Malinowski, he stated that this violates the Human Rights.  and he is correct.  There's no need for tougher punishments laws to those with sexual misconduct.

You need to focus on human trafficking, that involves kidnapping, abuse, rape and who knows what else that is happening to these poor children.  Human Trafficking is a number one organized crime in the world.  This has nothing to do with the unlawful sexual contact with a minor.  Another thing to focus on the number 2 organized crime, Hard drugs/gangs.  The sex offender registry doesn't do anyone from any sides of the fence any good at all.

The Sex offender registry needs to be fully ABOLISHED.

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)      Share ▾

---

Comment

After reading this rather lengthy document, it came to sense that this majority group of people, submerging them into one sole category of sentencing not just once, but twice. In summary, it's committing double jeopardy. It's a proposal of registering everyone ( which is unnecessary) to give the same punishment towards different sexual assault cases. It's determining someone's declared conviction. It's unfair.

**Comment ID**
DOJ-OAG-2020-0003-0680

**Tracking Number**
kg8-qms4-ftwl

| **Comment Details** | **Submitter Info** |
|---|---|

**Received Date**
Oct 13, 2020



*Your Voice in Federal Decision Making*

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002311

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

Comment

Good Day,

It comes to the point that we are becoming more and more into a socialist type of government with taking away the rights of citizens who support the government thru the taxes and other means. This Adams Walsh Act has been taken way to far at violating the constitution rights of each person in many ways, and yet the law makers and some law enforcement will admit it, but are afraid to step up and say so because of the Political backlash in the voting booth. What ever happened the the core Christian Values of this country? Does it say to treat your fellow human in this way, or does it say to be forgiving and supportive to guide them to a prosperous life. When will we get some common sense in what some of the people whom we are supposed to trust and who have stated, ran on the platform of being a dedicated Christian, Catholic etc and get some of the old laws off the books, stop with the tyrant actions against fellow human beings.

**Comment ID**

DOJ-OAG-2020-0003-0681

 **Tracking Number**

1k4-9ji1-s1u8

Comment Details | Submitter Info

**Received Date**

Oct 13, 2020

AR-00002312



*Your Voice in Federal Decision Making*

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002313

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |

| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |

---

Comment

To Whom It May Concern:

I am writing this letter to comment on Dock No. OAG 157, the DOJ's proposed rule for registration requirements under SORNA.

I strongly oppose the proposed SORNA ruling for the following reasons:

1. Each state already has in place a registry requirement they deem to be appropriate for their state. This additional registry would add another layer of requirements potentially causing confusion and difficulty beyond what is appropriate. This would excessively burden families (not just offenders) struggling to regain some normalcy.
2. This rule would unfairly impact rehabilitated offenders who have done their time, had no further offenses and had a long road back to some normalcy. Some have been off the registry for years and would now be required to register again! This is cruel and unusual punishment.
3. This rule is a one-size-fits-all rule that treats all offenders the same. They are not all the same; that is why there are tiers of varying offenses.

Please give strong consideration to this proposal for the sake of all concerned.

| **Comment ID** |
| DOJ-OAG-2020-0003-0682 |

|  **Tracking Number** |
| kg8-r01a-utyu |

AR-00002314

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002315

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ⌄

---

Comment

Docket No. OAG157- The sex offender registry is unconstitutional and does not justify clear and accurate information regarding the accuracy of risk to those placed on the registry. In the eyes of those surfing the site every person on there is considered an extreme threat. The Registry causes panic. The registry has allowed people who view it to harass those on it by means of complaining that a registered person lives in their neighborhood. I recently drove past a lot between 2 houses that had a huge sign saying pedophile lives two houses down stating name and address. In ( ) it said public record. If its public record what is your reason to make a sign other than to harass. People on the registry have a right to live in society, have a place to live, a job to support themselves and their family. The registry continues to punish those on it for life. To find a job or a place to live are top struggles. I am directly affected as a parent of a child on the registry. My daughter was placed on the registry at the age of 20 for having a consensual relationship while in high school with another student. It was deemed non consenting due to nys law. She was required to register as a level 2. I have felt her pain and suffering for going on 5 years. Her Lengthy struggles to find work to provide for her 2 young children. She is striving to move forward but the registry has defined how successful she will be. It has been almost 5 years and she still is unable to find a place to live so she is forced to live with her parents with her 2 children. All apartments handled by a realtor we have been told wont except an applicant who is on the registry. Isnt this discrimination? She has applied for several apartments and she never gets a call back after background check. The other area of concern is the registry will never gain you a high paying job therefore your minimum wage trying to find an apartment within your means to pay for it. The registry prevents anyone on the registry from getting low income housing or section 8 as they are federally funded. So a single mother of 2 on the registry working minimum wage trying to find housing seems impossible. Rents range from 750-950 per month. The registry does not protect the public from sex offenders. The registry does not accurately distinguish the risk for reoffending. The registry is lifetime punishment. The registry creates a means to harass and demean citizens. The registry does not offer an opportunity to return to society. The registry needs to eliminated and reformed with constitutional rights intact.

AR-00002316

**Comment ID**

DOJ-OAG-2020-0003-0683



**Tracking Number**

1k4-9ji2-v1pu

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



About    Bulk Data Download    Agencies    Learn

(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

AR-00002317

# Kansas Federal Public Defender

### www.ks.fd.org

Federal Public Defender Melody Brannon
First Assistant Federal Public Defender Kirk Redmond



Kansas City Division Attorneys
Tom Bartee, Branch Chief
Daniel Hansmeier, Appellate Chief
Tim Burdick
David Magariel
Chekasha Ramsey
Laquisha Ross
David Magariel

October 13, 2020

David J. Karp
Senior Counsel
Office of Legal Policy
U.S. Department of Justice
Washington, DC 20530

*Via electronic submission*

Re: Proposed rule on Registration Requirements Under the Sex Offender Registration and
    Notification Act, 85 Fed. Reg. 49332 (Document No. 2020-15804; RIN No. 1105-AB52)

Dear Mr. Karp:

The Department of Justice (the "Department") should reconsider its proposed rule on the
registration requirements under the Sex Offender Registration and Notification Act (SORNA) for
two overarching reasons. First, much of the proposed rule conflicts with SORNA's unambiguous
text (as well as SORNA's history and purpose). Second, Congress's delegations within SORNA
violate the nondelegation doctrine.

## I. Much of the proposed rule conflicts with SORNA's text and purpose.

As the Department knows, it cannot impose its own construction of unambiguous statutory text.
When "Congress has directly spoken to the precise question at issue . . . that is the end of the matter;
for the court, as well as the agency, must give effect to the unambiguously expressed intent of
Congress." *Chevron v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). The Department must
follow the statute's "commands as written"; it cannot "supplant those commands with others it may
prefer." *SAS Inst., Inc. v. Iancu*, 138 S.Ct. 1348, 1355 (2018). And this is particularly true in the
criminal context. *See, e.g.*, *Abramski v. United States*, 134 S.Ct. 2259, 2274 (2014) (rejecting agency
interpretation of criminal statute as irrelevant because "criminal laws are for courts, not the
Government, to construe"); *United States v. Apel*, 134 S.Ct. 1144, 1151 (2014) ("We have never held
that the Government's reading of a criminal statute is entitled to any deference"). Thus, although
Congress delegated to the Attorney General the authority to, *inter alia*, "issue guidelines and
regulations to interpret and implement" SORNA, 34 U.S.C. § 20912(b), any such guidelines or

---

AR-00002318

regulations must not conflict with SORNA's text. The proposed regulations do just that. In four ways, they purport to define crimes Congress never envisioned, punishing sex offenders[1] in non-SORNA-compliant jurisdictions for the jurisdiction's noncompliance, and otherwise permitting the prosecution of sex offenders who are in full compliance with SORNA's registration requirements.

**First**, proposed § 72.3 is inconsistent with 34 U.S.C. §§ 20919, 20924, and 20927. Proposed § 72.3 includes language requiring sex offenders to comply with SORNA in jurisdictions where compliance is impossible ("All sex offenders must comply with all requirements . . . regardless of whether a jurisdiction in which registration is required has substantially implemented that Act's requirements or has implemented any particular requirement of that Act"). According to the proposed rule, "sex offenders can be held [criminally] liable for violating any requirement stated in this rule, regardless of when they were convicted, and regardless of whether the jurisdiction in which the violation occurs has adopted the requirement in its own law." 85 Fed. Reg. 49336.

But SORNA itself makes clear that Congress did not intend to hold **sex offenders** criminally liable in such circumstances. Rather, if a jurisdiction fails to comply with SORNA, Congress **punishes the jurisdiction** by withholding 10 percent of appropriated funds. 34 U.S.C. § 20927(a). There is no similar provision within SORNA **punishing a sex offender for a jurisdiction's failure to comply with SORNA**.

This point is reinforced by 34 U.S.C. § 20924 (entitled, "Actions to be taken when sex offender fails to comply"). In that provision, Congress provided that an "appropriate official shall notify the Attorney General and appropriate law enforcement agencies of any failure by a sex offender to comply with **the requirements of a registry and revise the jurisdiction's registry** to reflect the nature of that failure." This provision requires the appropriate official to report violations of the "jurisdiction's registry" requirements (not violations of SORNA). If a jurisdiction is not in compliance with SORNA, a violation of SORNA might not violate the "jurisdiction's registry" requirements. And if not, the appropriate official need not notify the Attorney General or law enforcement of the sex offender's noncompliance with SORNA. This provision thus reinforces Congress's sensible conclusion that a sex offender should not be punished for a jurisdiction's failure to comply with SORNA. Indeed, if it were Congress's intent to punish sex offenders for a failure to comply with SORNA in non-SORNA-compliant jurisdictions, Congress could have used language like "the requirements of this subchapter," rather than "a registry," in § 20924. After all, Congress used the former language in other SORNA provisions. *See* 34 U.S.C. § 20912(a); 34 U.S.C. § 20913(e); 34 U.S.C. § 20925(b)(3); 34 U.S.C. § 20927(b)(2). "Congress generally acts intentionally

---

1 We use the term "sex offender" because Congress used that term to define individuals with prior sex offense convictions who are subject to SORNA. 34 U.S.C. § 20911(1). But a more accurate phrase would be individuals with *prior* sex offense convictions. These individuals are often "persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system." *Packingham v. North Carolina*, 137 S.Ct. 1730, 1737 (2017). Many are individuals who "seek to reform and to pursue lawful and rewarding lives." *Id.* They might have once offended, but they are not current offenders of any laws.

AR-00002319

when it uses particular language in one section of a statute but omits it in another." *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019).

Section 20919 (entitled, "Duty to notify sex offenders of registration requirements and to register") drives home the point. That section places an initial "duty" on the government ("an appropriate official") to: (1) inform the sex offender of his duties under SORNA and explain those duties; (2) require the sex offender to sign a form acknowledging that he understands the registration requirement; and (3) "ensure that the sex offender is registered." With this provision, Congress placed the initial burden on the government not only to inform a sex offender of his obligation to register, but to ensure that the sex offender registers. If a sex offender in a non-SORNA-compliant jurisdiction cannot register, the "appropriate official" cannot "ensure that the sex offender is registered." The "appropriate official" cannot meet his "duty to notify" under § 20919. To permit a federal prosecution under such circumstances could not possibly be what Congress intended. Congress expected sex offenders to receive notice of SORNA's requirements and to have assistance in fulfilling those requirements. Congress could not have intended for sex offenders to be prosecuted in federal court in circumstances where § 20919's duty to notify is impossible.

Congress understood that § 20919 could not be implemented in some cases. In § 20919(b), it delegated to the Attorney General the authority "to prescribe rules **for the notification of sex offenders** who cannot be registered in accordance with subsection (a)." The Attorney General prescribed such rules in July 2008. 73 Fed. Reg. at 38062-38064. Those rules make clear that the burden is on the government to notify the sex offender of SORNA's registration requirements, and that the sex offender is not required to comply with SORNA until he receives such notification. *Id.* The rules instruct the jurisdictions "to phase in SORNA registration for such sex offenders," and that such sex offenders "must be registered by the jurisdiction when it implements the SORNA requirements in its system within a year for sex offenders who satisfy the tier I criteria, within six months for sex offenders who satisfy the tier II criteria, and within three months for sex offenders who satisfy the tier III criteria." *Id.* at 38063-38064. The proposed rule does not indicate an intent to rescind the July 2008 guidelines. Nor does it purport to be based on § 20919(b)'s delegation (that provision is not cited in the proposed rule). And § 20919(b) only permits the Attorney General to issue rules for the "notification of sex offenders." It does not permit the Attorney General to direct the prosecution of sex offenders when it is impossible for the government to meet its notification obligations. Yet, that is what proposed § 72.3 does.

It is clear that the Department understands all of this. The Department acknowledges the unfairness in holding sex offenders accountable for noncompliance where compliance is impossible. 85 Fed. Reg. 49336. Its solution is to propose that a defendant charged with an offense under 18 U.S.C. § 2250 may defend the charge either by claiming that he did not know of the requirement, or that circumstances beyond his control precluded his compliance with SORNA (citing 18 U.S.C. § 2250(c). *Id.* While this proposal might be reasonable for sex offenders in SORNA-compliant jurisdictions, it is not reasonable for sex offenders who cannot comply with SORNA because of a

AR-00002320

jurisdiction's noncompliance with SORNA. Those sex offenders necessarily cannot receive proper notification under § 20919. And the fault lies not with the sex offender, but with the non-compliant jurisdiction. To permit the government to indict an offender in this circumstance, requiring the defendant to roll the dice at a jury trial – where the offender must convince a jury of his lack of knowledge or of circumstances beyond his control -- is to subject the sex offender to potential punishment and imprisonment for the jurisdiction's noncompliance. That is not a proper reading of SORNA as a whole.

Indeed, pre-SORNA law actually exposed to federal criminal liability offenders in non-SORNA-complaint jurisdictions, requiring them to register with the FBI. *Carr v. United States*, 560 U.S. 438, 453 n.7 (2010) (citing 42 U.S.C. §§ 14072(c), (g)(2), (i)). But Congress eliminated those provisions in SORNA, returning more control to the states to enforce their own state registry laws. *Carr*, 560 U.S. at 453 n.7. The proposed rule upsets this Congressionally-authorized balance of power between the states and the federal government.

Finally, we cannot lose sight of what the sex offender would have to do under the proposed rule to comply with SORNA in non-SORNA-compliant jurisdictions. What are the offender's options? Must he move to a SORNA-compliant jurisdiction to avoid prosecution? Must he demand that his local officials register him? Does he do this daily? Weekly? The proposed rule effectively turns a sex offender into SORNA's compliance officer. That is not Congress's intent. It is the various jurisdictions that implement SORNA. When those jurisdictions refuse, the Congressional remedy is to withhold funds, not to enlist sex offenders to implement SORNA in the jurisdictions' stead.

**Second**, proposed **§ 72.7(d) conflicts with § 20913.** Proposed § 72.7(d) requires a sex offender to inform a jurisdiction "if the sex offender will be commencing residence, employment, or school attendance in another jurisdiction or outside of the United States." This proposed rule also requires a sex offender to "inform the jurisdiction in which he is residing prior to any termination of residence in that jurisdiction and prior to commencing residence, employment, or school attendance in another jurisdiction or outside of the United States." In other words, proposed § 72.7(d) interprets SORNA as a "departure" notification scheme. Before a sex offender moves to another jurisdiction (or before a sex offender obtains employment in another jurisdiction or begins schooling in another jurisdiction), he must report that change prior to the change.

This proposed rule runs directly contrary to § 20913. A sex offender must register and keep his registration current only in jurisdictions where "the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913(a). If an offender changes his residence, employment, or student status, he has three business days "after each change" to "appear in person in at least 1 jurisdiction involved" and to report changes in this information. 34 U.S.C. § 20913(a), (c). A "jurisdiction involved" is one where the offender "resides," works, or attends school. 34 U.S.C. § 20913(c) (cross-referencing 34 U.S.C. § 20913(a)). Because this provision uses the present tense, and instructs offenders to update the information "after each change," a

jurisdiction where a defendant once lived is no longer a "jurisdiction involved pursuant to subsection (a)." And because it is no longer a "jurisdiction involved," an offender need not give pre-departure notification to the former jurisdiction. Instead, when an offender updates his registration in his new jurisdiction, it is that jurisdiction, and not the offender, that is required to provide the updated information to a number of entities, including all other jurisdictions in which the offender is required to register, 34 U.S.C. § 20913(c), and "each jurisdiction from or to which a change of residence, employment, or student status occurs," 34 U.S.C. § 20923(b) (3).

This interpretation of § 20913 is not up for debate. It is the interpretation adopted by the Supreme Court in *Nichols v. United States*, 136 S.Ct. 1113, 1117-1119 (2016). As *Nichols* recognizes, *id.* at 1118, SORNA's predecessor, the amended Wetterling Act, directed state registries to require a sex offender who moves to a different state to report the change of residence not only to the new state but also to the state "the person is leaving" (i.e., a "departure notification" requirement). Pub. L. 105-119, Title I, § 115(a)(1), 111 Stat. 2461 (42 U.S.C. § 14071(b)(5)) (1997). Moreover, most states include departure notification provisions within their own sex-offender registry laws. *Nichols*, 136 S.Ct. at 1118. SORNA "could have easily" included a similar departure notification provision, but it did not. *Id.* The Department has no authority to add a departure notification provision to SORNA, where none exists.

The proposed rule acknowledges *Nichols*, but claims that *Nichols* is beside the point because "§ 72.7(d) is grounded in the requirement[s] of" § 20914(a) and (c), and not § 20913(c). 85 Fed. Reg. at 49337. But *Nichols* rejected the government's claim that § 20914 includes a departure notification provision. 136 S.Ct. at 1118. "§ 16914(a) merely lists the pieces of information that a sex offender must provide if and when he updates his registration; it says nothing about whether the offender has an obligation to update his registration in the first place." *Id.* The offender's obligation to update his residence, employment, and schooling is expressly provided for in § 20913(c). It is § 20913(c)'s unambiguous text that limits the Attorney General's authority to specify time and manner requirements for residence, employment, and schooling changes (as opposed to other changes). It is that specific provision that governs here, not the more general provisions within § 20914. And again, the Department cannot write a rule that directly conflicts with a statutory provision.

Nor is it enough that § 20914 includes the phrases "will reside," will be an employee," and "will be a student." 34 U.S.C. § 20914(a)(3), (4), (5). That language refers to the requirement that an offender provide future information during initial registration prior to release from imprisonment, when the offender "is not yet residing in the place or location to which he or she expects to go following release." 73 Fed. Reg. 38030-01 at 38055 (explaining § 20914(a)(3)'s requirement to report the address where the offender "resides or will reside"); 34 U.S.C. § 20913(a). Prior guidelines confirm this point. 73 Fed. Reg. 38030-01 at 38055 (providing examples only where the offender "is not yet residing in the place or location to which he or she expects to go following release"); *see also* 34 U.S.C. §§ 20913(b)(1) (requiring registration while in prison), 20919(a)(3) (requiring law enforcement to ensure that offenders register in prison), 20923(b)(3) (requiring law enforcement to provide

information to a jurisdiction "to which" a change of residence occurs); 18 U.S.C. § 4042(c)
(requiring the Bureau of Prisons to notify officials in the jurisdiction "in which the person will
reside" of the defendant's release from custody, parole, probation, or supervised release).

And even if the terms "will reside," "will be an employee," and "will be a student" in § 20914(a)
could be applied more broadly, those terms do not mean "will no longer reside," "will no longer be
an employee," or "will no longer be a student." By its plain terms, the proposed rule requires an
offender to give "departure and termination information" to the departure jurisdiction, and not
future residence information to the arrival jurisdiction. But Congress expects sex offenders to give
"current" information about their residence, employment, and schooling, with an instruction to the
jurisdiction to "immediately provide" this current information to other jurisdictions. § 20913(c)
(entitled, "Keeping the registration current"). Because the proposed rule requires a sex offender to
report a future residence, not a current residence, it is inconsistent with § 16913(c)'s text.

For these reasons, and because the rule is entirely unnecessary (again, every state has a departure
notification provision, and § 20913(c) requires jurisdictions to share information with each other),
the Department should not adopt this rule. If a sex offender updates his residence, employment, and
schooling information as Congress has instructed in § 20913, that sex offender should not face
criminal prosecution simply because he did not repeat that information to other non-"involved
jurisdictions." Such a prosecution would do nothing more than punish a sex offender who has
complied with the law.

Proposed § 72.6(c) also includes impermissible departure-notification requirements (requiring a sex
offender to report future residence, employment, and schooling information). This language should
not be adopted for the reasons just stated. Additionally, proposed § 72.7(f) provides that a sex
offender must report intended travel outside the United States "if the sex offender is terminating his
residence in the jurisdiction, prior to his termination of residence in the jurisdiction." This latter
language is unnecessary and should be stricken. Federal law now requires a sex offender to report
intended travel to a foreign country. 34 U.S.C. § 20914(a)(7). This provision covers all intended
international travel (which would include travel where the offender does not intend to return). For
this reason, there is no need for this additional phrase. And § 20913(c) still governs a sex offender's
"change of . . . residence." Thus, while § 20914(a)(7) requires a sex offender to report the intended
international **travel**, the sex offender still has "3 business days after [the] change of . . . residence" to
report a change of **residence**. If the intended international travel is related to a change of residence,
it is not an additional violation of SORNA to fail to report this change of residence, as proposed §
72.7(f) provides. The offender would violate SORNA just once – when he fails to give notice of the
intended international travel. *See Nichols*, 136 S.Ct. 1117-1119.

**Third**, **proposed § 72.7(c) is inconsistent with § 20913(c)**. Under § 20913(c), a sex offender need
only update his registration in "at least 1 jurisdiction involved," not in one or more specific
jurisdictions. Section 20913(c) is explicit: an offender complies with SORNA so long as he

"appear[s] in person in at least 1 jurisdiction involved . . . and inform[s] that jurisdiction of *all changes* in the information required for that offender in the sex offender registry." As explained above, when an offender updates his registration in an "involved jurisdiction," that jurisdiction is statutorily required to provide the updated information to a number of entities, including all other involved jurisdictions (i.e,. jurisdictions where the offender is required to register), 34 U.S.C. § 20913(c), and "each jurisdiction from or to which a change of residence, employment, or student status occurs," 34 U.S.C. § 20923(b) (3). *See Nichols*, 136 S.Ct. at 1116 ("A sex offender is required to notify only one 'jurisdiction involved'; that jurisdiction must then notify a list of interested parties, including the other jurisdictions.").

Yet, proposed § 72.7(c) requires a sex offender to update the registration in a specific jurisdiction – "the jurisdictions in which [the changes] occur." 85 Fed. Reg. at 49345. If enforced, this proposed rule would criminalize lawful conduct. Under § 20913(c), a sex offender who appears in person in an involved jurisdiction, and reports "all changes" to the registration, has complied with SORNA. Congress does not care what "involved jurisdiction" the offender chooses because that jurisdiction is then required to inform all other "involved jurisdictions" (among others) of "all changes." SORNA's purpose – to establish "a comprehensive national system of the registration of" sex offenders, 34 U.S.C. § 20901 – is fulfilled. Proposed § 72.7(c) is unnecessary and not something that Congress would have intended. Indeed, Congress could have crafted a registration system like the one proposed § 727(c) envisions. But it did not. And the Attorney General cannot adopt regulations at odds with SORNA's plain text. A sex offender who updates his registration in compliance with SORNA's plain text should not (indeed, could not) be prosecuted because he appears in person in an "involved jurisdiction" different that the one the Department thinks best.

When combined with proposed § 72.7(d), the proposed rule is yet another example of the Department's attempt to enlist sex offenders as SORNA compliance officers. While Congress requires the various jurisdictions to inform each other of changes to an offender's registration, the Department wants to require sex offenders to do this task instead. We do not understand why. Sex offender registration is already a burden. The more burdensome it is made, the less likely offenders will be able to comply. There is no point in requiring sex offenders to travel from jurisdiction to jurisdiction updating information piecemeal when they can simply report "all changes" to one "involved jurisdiction," and that jurisdiction can then relay the changes to other jurisdictions (and the federal government). 34 U.S.C. § 20913(c). Congress wants a "comprehensive national system for the registration of" sex offenders. 34 U.S.C. § 20901. It is impossible to believe that Congress thought it best to rely on the offenders themselves to see this done. Yet, that is effectively what the Department has proposed in § 72.7(c) and § 72.7(d).

**Fourth**, proposed §§ 72.7(e) and 72.7(f) should be amended to permit the sex offender to inform any involved jurisdiction of changes in information or intended international travel. As just explained, Congress made clear its intent to require sex offenders to update their registrations in any "involved jurisdiction," not a specific jurisdiction. Although Congress delegated

to the Attorney General the authority to set "time and manner requirements" for information provided under § 20914(a) (rather than § 20913(c)), there is no reason for the Attorney General to adopt more stringent time and manner requirements for this information than Congress requires for residence, employment, and schooling information under § 20913(c). Again, a sex offender who updates his registration should not be prosecuted because he updated that registration in one involved jurisdiction instead of another involved jurisdiction. The point is that the sex offender updated the information within the registration. Congress does not require anything more. The Department should not either.

One example: an offender who works long hours at a job in State A, but lives in State B. It could be nearly impossible for that offender to update the registration in State B because the offender is in State A during normal business hours. There is no reason to require the offender to miss work, for instance, to update a registration in State B, where the offender could simply update the registration in State A, and State A would promptly inform State B of the updated information. This is the minimum registration scheme adopted by Congress in SORNA. There is no reason to make it more complex, especially where there is no benefit whatsoever in doing so. Sex offender registration should not become a trap to punish compliant offenders over immaterial technicalities. Congress would not have intended it, and SORNA's plain text precludes it. The proposed rule will spawn more litigation than it will benefits to the registration and notification scheme. For all of the above-stated reasons, the Department should reconsider the rule.

## II. SORNA's delegations to the Attorney General violate the nondelegation doctrine.

Congress cannot delegate to the Executive Branch the power to define crimes. *United States v. Kozminski*, 487 U.S. 931, 949 (1988). But that is what the proposed rules do. As explained above, the proposed rules punish conduct that is not otherwise punishable under SORNA's plain text. If Congress intended such a delegation, that delegation is unconstitutional. Moreover, it is not at all clear whether Congress can delegate to the Attorney General the authority to apply SORNA to pre-Act offenders. Until that question is settled, the Department should hold off on the enactment of any additional regulations.

The Supreme Court recently addressed whether 34 U.S.C. § 20913(d) is an unconstitutional delegation of legislative authority to the Executive Branch in *Gundy v. United States*, 139 S.Ct. 2116 (2019). A four-Justice plurality (which included Justice Ginsburg) held two things: (1) Congress delegated to the Executive Branch only when and how to implement SORNA against pre-Act offenders, not whether to apply SORNA to pre-Act offenders, 139 S.Ct. at 2123-2129; and (2) this delegation passed constitutional muster under the intelligible principle test, *id.* at 2129-2130. Despite the plurality opinion, as the three-Justice dissent noted, there is no good reason to think that *Gundy* resolved either of these issues. 139 S.Ct. at 2131 (Gorsuch, J., dissenting). In fact, the plurality opinion "resolves nothing." *Id.*

AR-00002325

On the first issue, the four-Justice plurality concluded that § 20913(d) requires the Attorney General to apply SORNA to all pre-Act offenders. *Gundy*, 139 S.Ct. at 2123. According to these four Justices, § 20913(d) only delegates to the Attorney General the task of applying SORNA to these pre-Act offenders "as soon as feasible." *Id.* The plurality concluded that this delegation "falls well within constitutional bounds." *Id.* at 2130. The three-Justice dissent took the opposite view. *Gundy*, 139 S.Ct. at 2145-2148. According to the dissent, § 20913(d) invests "the Attorney General with sole power to decide whether and when to apply SORNA's requirements to pre-Act offenders." *Id.* at 2148. The dissent concluded that this delegation was plainly unconstitutional ("delegation running riot"). *Id.* at 2148.

Justice Alito concurred only in the judgment. *Id.* at 2130-2131. Justice Alito's four-sentence concurrence focused solely on the nondelegation doctrine (and his willingness to reconsider the intelligible principle test) and said nothing whatsoever as to the scope of SORNA's delegation to the Attorney General. *Id.*; *see also id.* at 2131 (Gorsuch, J., dissenting) ("Justice ALITO . . . does not join . . . the plurality's . . . statutory analysis"). Justice Alito answered that question, however, in his dissent in *Carr v. United States*, 560 U.S. 438 (2010). And his answer is on all fours with the three-Justice dissent in *Gundy*. "Congress elected not to decide for itself *whether* [SORNA's] registration requirements—and thus § 2250(a)'s criminal penalties—would apply to persons who had been convicted of qualifying sex offenses before SORNA took effect. Instead, Congress delegated to the Attorney General the authority to decide that question." *Carr*, 560 U.S. at 466 (Alito, J., dissenting) (emphasis added). In reaching this conclusion, Justice Alito studied at least six lower court decisions on this issue. *Id.* at 466 n.6. Justice Alito found that the "clear negative implication of th[e] delegation [was] that, without such a determination by the Attorney General, the Act would not apply to those with pre-SORNA sex-offense convictions." *Id.*

As it currently stands, with Justice Ginsburg no longer on the Court, three Justices believe that § 20913(d) does not delegate to the Attorney General the power to apply (or not) SORNA to pre-Act offenders (just when and how to do so feasibly), and four Justices believe that § 20913(d) in fact delegates to the Attorney General the power to apply (or not) SORNA to pre-Act offenders. *Compare Gundy*, 139 S.Ct. at 2123-219 (plurality), *with Gundy*, 139 S.Ct. at 2145-2148 (dissent) & *Carr*, 560 U.S. at 466 (Alito, J., dissenting). If we are counting future votes, the plurality view in *Gundy* is better viewed as the dissent. Indeed, even the *Gundy* plurality acknowledged that, if § 20913(d) delegated to the Attorney General the power to determine SORNA's applicability to pre-Act Offenders ("to require them to register, or not, as she sees fit, and to change her policy for any reason at any time"), as the three *Gundy* dissenters and Justice Alito have concluded, then the Court "would face a nondelegation question." *Gundy*, 139 S.Ct. at 2123. In other words, if the delegation includes whether to apply SORNA to pre-Act offenders, then it is likely that at least six Justices (the three in the plurality and the three in dissent) would find the delegation unconstitutional. For these reasons, it is a particularly inappropriate time for the Attorney General to adopt the proposed regulations.

The calculus is the same with respect to the constitutional nondelegation issue. The *Gundy* plurality did not indicate any concern with the nondelegation doctrine's intelligible principle test. *Gundy*, 139 S.Ct. at 2130. But the three-Justice dissent did, noting that the doctrine "has no basis in the original meaning of the Constitution, in history, or even in the decision from which it was plucked." *Id.* at 2139 (Gorsuch, J., dissenting). The dissent also noted the doctrine's abuse: "where some have claimed to see intelligible principles many less discerning readers have been able only to find gibberish." *Id.* at 2140 (cleaned up). Justice Alito also indicated his willingness to reconsider the intelligible principle test. 139 S.Ct. at 2131 (Alito, J., concurring). Consistent with the dissent's reasoning, Justice Kavanaugh has written that it is one thing for the Executive to "act unilaterally to protect liberty."   Brett Kavanaugh, *Our Anchor for 225 Years and Counting: The Enduring Significance of the Precise Text of the Constitution*, 89 Notre Dame L. Rev. 1907, 1931 (2014). "[B]ut with limited exceptions, the President cannot act, except pursuant to statute, to infringe liberty and imprison a citizen." *Id.* Now is not the time to propose regulations to interpret and implement SORNA that would expand the federal government's ability to prosecute offenders who either cannot comply with SORNA, or who have complied with SORNA (but just not in the precise way in which the government thinks it should have complied).

Again, Congress cannot delegate to the Executive Branch the power to define crimes. "[D]efining crimes" is a "legislative" function, *United States v. Evans*, 333 U.S. 483, 486 (1948), and Congress cannot delegate "the inherently legislative task" of determining what conduct "should be punished as crimes," *Kozminski*, 487 U.S. at 949. To "unite the legislative and executive powers in the same person would be to mark the end of any meaningful enforcement of our separation of powers and invite the tyranny of the majority that follows when lawmaking and law enforcement responsibilities are united in the same hands." *Gundy*, 139 S.Ct. at 2144-2145 (Gorsuch, J., dissenting) (cleaned up). Consistent with these principles, the Court has enforced the nondelegation doctrine most rigorously in the criminal context. *See, e.g.*, *Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529, 542-543 (1935) (holding that Congress could not delegate to the Executive the power to approve codes of fair competition promulgated by trade associations, when the "[v]iolations of the provisions of the codes are punishable as crimes"); *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935) (holding, with respect to legislation providing for criminal sanctions, that Congress unconstitutionally delegated its legislative power to the Executive Branch*); United States v. George*, 228 U.S. 14, 20-22 (1913) (rejecting government's argument that federal agency could promulgate regulations creating a federal crime to fail to abide by agency requirements); *see also Bank Markazi v. Peterson*, 136 S.Ct. 1310, 1327 (2016) (noting that Congress may single out parties to a civil suit, whereas the Bill of Attainder Clause, Art. I, § 9, as an implementation of separation of powers, prevents Congress from singling out persons for criminal punishment); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) (permitting retroactive civil liability, whereas the Ex Post Facto Clause, in order to uphold separation of powers principles, prohibits retroactive criminal punishment).

As explained above, the proposed rule defines crimes Congress never envisioned. It seeks to punish sex offenders for a jurisdiction's non-compliance with SORNA. It seeks to punish offenders who

are plainly compliant with SORNA. The regulations do not interpret SORNA; they expand SORNA by defining lawful acts (or impossible acts) as crimes. We do not think that Congress intended this delegation. But if it did, the delegation is unconstitutional. "That congress cannot delegate legislative power to the president is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution." *Field v. Clark*, 143 U.S. 649, 602 (1892). It is up to Congress, not the Executive, to determine whether, when, and how SORNA, and its concomitant criminal penalties, apply to offenders. *Wayman v. Southard*, 23 U.S. 1, 43-43 (1825) ("It will not be contended that Congress can delegate . . . powers which are strictly and exclusively legislative. . . . [Those powers] must be entirely regulated by the legislature itself."). "The Constitution promises that only the people's elected representatives may adopt new federal laws restricting liberty." *Gundy*, 139 S.Ct. at 2131 (Gorsuch, J., dissenting). The Framers understood "that it would frustrate the system of government ordained by the Constitution if Congress could merely announce vague aspirations and then assign others the responsibility of adopting legislation to realize its goals." *Id.* (quotations omitted). "Through the Constitution, after all, the people had vested the power to prescribe rules limiting their liberties in Congress alone. No one, not even Congress, had the right to alter that arrangement." *Id.* It cannot be that SORNA "endow[s] the nation's chief prosecutor with the power to write his own criminal code governing the lives of a half-million citizens." *Gundy*, 139 S.Ct. at 2131 (Gorsuch, J., dissenting). Because the proposed rule does just that, it should be rejected.

<div style="margin-left:40%">

Sincerely,

/s Daniel T. Hansmeier
DANIEL T. HANSMEIER
Appellate Chief
KANSAS FEDERAL PUBLIC DEFENDER
500 State Avenue, Suite 201
Kansas City, Kansas 66101
Phone: (913) 551-6712
Email: daniel_hansmeier@fd.org

</div>

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

I am well acquainted with an individual who has complied with every requirement and restriction for over 13 years. His time since his conviction has been exemplary. He has been reformed, gone to counseling and changed his heart and his behavior. And yet it seems he continues to be punished by the restrictions placed on him. Restrictions that interfere with his extended family time and work responsibilities. I am AGAINST this proposal.

**Comment ID**

DOJ-OAG-2020-0003-0685

 **Tracking Number**

1k4-9ji2-uedz

| Comment Details | Submitter Info |
| --- | --- |

**Received Date**

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002330

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments ( 724 ) (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ( 724 ) (/docket/DOJ-OAG-2020-0003/comments)   Share ▾

---

Comment

PERSONAL IDENTIFYING INFORMATION Such as First Name, Last Name, Phone Number, Email Address, City, State, Zip, please do not post.

To The Justice Department,

I am writing on behalf of the law that is about to be changed, and I just want to say that some of the provisions that already do exist, make it very difficult for offenders to live, let alone be able to be rehabilitated to re-join society. The fact that the proposed SORNA changes want to help establish a "floor" instead of a "ceiling" which is BADLY needed, is not the way to handle what is going on right now. These proposals will give the states the ability to pass any law that they want and because of the non-punitive "loophole" that exists with this law, they can apply their own changes to anyone on the registry at any time and claim that they are not punitive by "design", no questions asked. States will have the ability to take everyday tasks that are LEGAL now, such as going to the store, and make it ILLEGAL for the reason of their choosing that they "claim" will help make the community "safer". The new changes can even go as far as restricting where offenders can live because without "retro-active protection", states can then place unlimited restrictions so that offenders can no longer live within a given distance of say, a church, and the offender will have no choice but to move...once again adding to the stability of a situation that is already critically unstable.

I do not want to spend my whole time on this post complaining, but rather, try to be productive about changes that could help make the system better for all parties involved...and that would start with establishing a CEILING that the states cannot go above, and open doorways to helping offenders seek the help they need to be reintegrated into society. The ultimate goal would be to not have a registry altogether, but seeing more and more how that is becoming less likely to happen, limiting how many restrictions keep getting placed on us would only help to make the situation better, not worse. We need to stop making offenders feel like there is no end in sight to this situation, and start treating them like they really are...people.

Prevention also needs to be focused on more than waiting until after the fact of a crime happening, which these changes do absolutely nothing to address. It seems like as long as we keep "administrative sanctioning" those who have already committed crimes, then it will stop the chain altogether, yet that is not the case either.

Focusing on rehabilitation needs to be the way, not an endless amount of laws and rules that need to be followed.

With there only being so many characters given, and not wanting to seem like this is just an endless droning post, I choose to end this here in hopes that it can be somewhat shown that these added laws and /or changes that may take place here with SORNA, or the ones that are yet to come with states passing their own laws are NOT the way to go. I ask that you please reconsider adding anymore rules to SORNA, give people a chance to get off of the registry instead of finding ways to keep people on it, and focus on key measures that WILL help with preventing any further crimes, such as support systems and the use of therapy. Thank you.

**Comment ID**

DOJ-OAG-2020-0003-0686

 **Tracking Number**

kg8-si9m-byob

**Comment Details**

**Received Date**

Oct 13, 2020



Your Voice in Federal Decision Making

About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002332

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments 724 (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments 724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |

---

| Comment |
|---|

The Proposed Rule states:" Beyond the benefits to effective enforcement of SORNA's requirements, the rule will benefit sex offenders by providing a clear and comprehensive statement of their registration obligations under SORNA. This statement will make it easier for sex offenders to determine what they are required to do and thus facilitate compliance." This paragraph is absolutely untrue and strikes fear in my heart and in the heart of my family. My husband is required to register, so in effect, our entire family is required to register. Our home address and vehicles are listed on the internet for vigilantes to target us. We have to put a sign up on Halloween so that all of our neighbors now know who we are. I live in constant fear that my husband will get coffee at the wrong Starbucks and be arrested for violating some local ordinance that we had no idea about. My husband and therefore me and our entire family will be on the Florida Sex Offender Registry for the rest of our lives. There is no way to easily or successfully navigate through the web of local ordinances and restrictions in Florida, and now to be ADDED to this impossibly long list will be additional Federal Rules, and now with the ADDED fear that my husband will be hunted by US Marshals for trying to go on vacation or buying a new car. This Proposed Rule will add terror to our lives.

| **Comment ID** |
|---|
| DOJ-OAG-2020-0003-0687 |

|  **Tracking Number** |
|---|
| kg8-tk7z-pg4q |

| Comment Details | Submitter Info |
|---|---|

**Received Date**

AR-00002333

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)   Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments   724   (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments   724   (/docket/DOJ-OAG-2020-0003/comments)          Share ▾

---

Comment

It is my opinion that "one size does not fit all" when it comes to required registration of sex offenders. If the offender has not offended over the years since his/her conviction but has complied with the all the guidelines and requirements of his sentence and has proven to be a trustworthy individual, this proposed rule would "sentence him for life" by its requirements of continued supervision in regard to registration. Many states are underfunded as it is,and the burden of related cost connected with mandated registration of all past offenders would negatively affect every state. It is my hope that the Department of Justice would reconsider this proposed registration rule.

**Comment ID**

DOJ-OAG-2020-0003-0688

◎ **Tracking Number**

1k4-9ji3-frqq

**Comment Details**                                **Submitter Info**

**Received Date**

Oct 13, 2020

AR-00002335



Your Voice in Federal Decision Making.

About   Bulk Data Download      Agencies      Learn
(/about)      (/bulkdownload)   (/agencies)   (/learn)

Reports      FAQ
(https://resources.regulations.gov/public/component/main?main=Reports)   (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002336

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment) |
| View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments) |

Share ▾

Comment

After reading over the proposed changes to the SORNA. I felt that I should voice my opinion. I do not agree that we should hold people who have served their time, gone through extensive treatment, polygraphs , and have been deemed no risk to society and released on their own, should be kept under a lifetime registry. I don't believe this makes our society any more safe by having these policy's in place. To make a man or women 20 years removed from his offense with no new charges of any kind makes no sense to still be actively on a registry.

They could be very productive members of society but they are still one technical violation from prison time and possibly lifetime probation under the current and proposed guidelines. For rules 99% of the country don't even think about.

I know there are quite a few including myself on this list that have worked hard to become productive members in society and now have families. By keeping these people/ us on the registry forever we are not promoting or encouraging them to be better fathers or mothers or just productive members of society. We are keeping them from doing that very thing.

This is a heart issue and how can we heal the hearts of current and future generations if we continue to make laws that keep these people on a lifetime registry.

I believe in marriage and family's sticking together. I feel that is one of the greatest things we can do to" make America great again" let's encourage people on the registry to be productive members of society.

Moreover why are we continuing to increase these registration guidelines. I am sure most citizens think someone on the registry, just has to to put their name down on a list and register where they live. Hopefully after reading this they realize how much more this really is.

If a law abiding citizen fails to register their car depending on the state, you could get pulled over and get a fine or at worse be charged with a misdemeanor. Why do we feel the need to make their offense punishable with mandatory prison time and lifetime probation? This seems like a revolving door and we are looking for ways to arrest sex offenders for technicality's that does not make the public any safer and keeps them further isolated from there families leaving their kids fatherless or motherless and leaving the door cracked for this vicious nasty cycle to start over.

Let's be better! I am not here to quote laws, and I am not a lawyer. I am a convicted sex offender that's 14 years removed. I have and continue to try to be the best husband, father to 2 young children, friend and productive

AR-00002337

member of society that I can be. I try hard every day to not bring my family in to the consequences of my bad choices. However with all the added rules and regulations it becomes harder to do so everyday.

I feel it's time to just start applying common sense to these types of conversations. Figure out what your trying to achieve and not only what effects it has on the registers but also the affects it has on their family and people around them. Please don't make these laws harder to live by on this already life sentence registry.

Thank you for your time.

**Comment ID**

DOJ-OAG-2020-0003-0689

 **Tracking Number**

kg8-ttg4-rk6k

| **Comment Details** | **Submitter Info** |
| --- | --- |

**Received Date**

Oct 13, 2020



About    Bulk Data Download    Agencies    Learn

(/about)    (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

In regards to the proposed SORNA changes, I wholeheartedly want to express my disgust with these changes. It is an absolute waste of time for any/all individuals and agencies that is currently subjected to the (current) SORNA requirements; and the exorbitant amounts of hundreds-of-thousands of dollars each year that is spent on maintaining this SORNA requirement.

And now wanting to make all of these additional changes with the proposed Rule.

I will not lengthen my comment with additional details and explanations; as many other individuals have already provided EXCELLENT and VALID information that is Based on FACTS; and SCIENCE.

The current SORNA (and proposed) is just a "smoke & mirrors" illusion that is unfortunately based solely on "Myths" and outdated concepts.     The SORNA regulations are a 'well-intentioned' endeavor; however, because of the "wide-net" that it encompasses (and the different States add their own laws, etc.) of people, it actually has the opposite effect on being effective.

Stop wasting time, resources and money on SORNA; and actually compile the data and statistics to ACTUALLY make a difference with sexual abuse, etc.     SORNA is NOT the answer.     Again; I reiterate to read all of the many other Comments that have Fact and Evidence Based Research.     SORNA is NOT working.

**Comment ID**

DOJ-OAG-2020-0003-0690

**Tracking Number**

kg8-u1s0-cy77

**Comment Details**                          **Submitter Info**

AR-00002339

**Received Date**

Oct 13, 2020



About    Bulk Data Download    Agencies    Learn

(/about)        (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |
| --- |

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) | Share ⌄ |
| --- | --- |

---

| Comment |
| --- |

October 13, 2020

Hon. William Barr,
Attorney General,
United States of America
Attn: Regulations Docket Clerk,
Office of Legal Policy,
US Department of Justice
950 Pennsylvania Ave, NW, Room 4234
Washington, DC 20530

Re: Docket No. OAG 157
SORNA Regulations

Dear Attorney General Barr,

I am the webmaster for several grassroots organizations committed to ending the public registry and ending pre-crime preventative detention. Much like pre-crime preventative detention schemes, SORNA is a failed, costly (in many ways) experiment based on fear mongering and punishment, not on research or data. Recidivism of sexual crimes or sexual crimes in general have not been affected by SORNA since its inception and no changes to SORNA and related laws such as AWA or IAWA will change those facts. For decades recidivism rates have been in the single digits, many states reporting as low or lower than 1% recidivism for another sex offense by those on the public registries. Over 95% of all sex offences are committed by people not on any registry because they have never been charged or convicted of any crime. This means that any person is more than 20 times more likely to be offended by someone not on any registry than by someone on the public registry. It is no wonder that these most cruel and unusual restrictions that come from the system of public registries, never can have any impact on the rates of sex offences.

Most sexual offenses are committed by family members or trusted friends and people of authority such as police

AR-00002341

officers and school teachers and church leaders who are not on the registry. The registry also takes much needed resources from education, mental health services, appropriate law enforcement and other measures which are immeasurably more effective in preventing sexual harm than the excessively punitive and unnecessary SORNA regulations.

For one man in Illinois who was entrapped in a police sting that took over a year for police to talk him into stepping over a line, he went from earning over $300,000.00 a year in 1999 to being unemployable (just because he was listed on the public registry). He was paying over $100,000 per year in income taxes until he became listed on the public registry. Since them he has been drawing on public aid, SSI, and various charities to just survive. In the last 20 years he has lost 6 million in individual income and has not paid 2 million in income taxes that he would have otherwise paid. And as he was a top expert in the world in his field he likely would have had income raises in that 20 year period if not for the public registry that insights hate from the public. While not everyone on the registry lost that level of income, the vast majority of those on the registry have all lost significant income and the government has lost massive sources of tax dollars because of the public hate and resulting unemployability of those on the public registry. Not to mention the costs to the government to provide public aid and to pay for massive police efforts to monitor almost a million such people that are very unlikely to ever commit another sex offence. The total costs to the government are in excess of many billions of dollars.

Society in general is negatively affected in that collateral consequences such as housing instability and lack of job opportunities created by the registry cause harm not only to registrants and their extended families, but to the overall economy and stability in communities. SORNA and the AWA do nothing to benefit or protect children and actually harms many of them, especially children of registrants whose parents are unable to fully participate in their lives and these children face bullying and intimidation, and even murder by vigilantes.

Nothing short of complete abolition of SORNA and the AWA, IAWA, and pre-crime preventative detention will free up necessary resources so that we as a society can focus on prevention of sexual harm and promote restoration and rehabilitation of both those harmed and those who cause harm.

Thank you,
Webmaster for
JustFutureProject.org, WomenAgainstRegistry.org, and fightawa.org
www.ajustfuture.org, womenagainstregistry.org, fightawa.org

Reference documents can be accessed at the following URLs
https://ww1.womenagainstregistry.org/Ellman-OAG157.pdf
https://ww1.womenagainstregistry.org/WatchedPotBoil-OAG157.pdf
https://ww1.womenagainstregistry.org/SORNA-comment-OAG157.pdf

---

Attachments   1

---

📄  SORNA-comment-OAG157

⬇  Download  (https://downloads.regulations.gov/DOJ-OAG-2020-0003-0691/attachment_1.pdf)

---

**Comment ID**

DOJ-OAG-2020-0003-0691

 **Tracking Number**

1k4-9ji3-1k8w

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

October 13, 2020

Hon. William Barr,

Attorney General,

United States of America

Attn: Regulations Docket Clerk,

Office of Legal Policy,

US Department of Justice

950 Pennsylvania Ave, NW, Room 4234

Washington, DC 20530

Re: Docket No. OAG 157

SORNA Regulations

Dear Attorney General Barr,

I am the webmaster for several grassroots organizations committed to ending the public registry and ending pre-crime preventative detention. Much like pre-crime preventative detention schemes, SORNA is a failed, costly (in many ways) experiment based on fear mongering and punishment, not on research or data.  Recidivism of sexual crimes or sexual crimes in general have not been affected by SORNA since its inception and no changes to SORNA and related laws such as AWA or IAWA will change those facts.  For decades recidivism rates have been in the single digits, many states reporting as low or lower than 1% recidivism for another sex offense by those on the public registries.  Over 95% of all sex offences are committed by people not on any registry because they have never been charged or convicted of any crime.  This means that any person is more than 20 times more likely to be offended by someone not on any registry than by someone on the public registry.  It is no wonder that these most cruel and unusual restrictions that come from the system of public registries, never can have any impact on the rates of sex offences.

Most sexual offenses are committed by family members or trusted friends and people of authority such as police officers and school teachers and church leaders who are not on the registry. The registry also takes much needed resources from education, mental health services, appropriate law enforcement and other measures which are immeasurably more effective in preventing sexual harm than the excessively punitive and unnecessary SORNA regulations.

1 of 2

AR-00002344

For one man in Illinois who was entrapped in a police sting that took over a year for police to talk him into stepping over a line, he went from earning over $300,000.00 a year in 1999 to being unemployable (just because he was listed on the public registry). He was paying over $100,000 per year in income taxes until he became listed on the public registry.  Since them he has been drawing on public aid, SSI, and various charities to just survive.  In the last 20 years he has lost 6 million in individual income and has not paid 2 million in income taxes that he would have otherwise paid.  And as he was a top expert in the world in his field he likely would have had income raises in that 20 year period if not for the public registry that insights hate from the public. While not everyone on the registry lost that level of income, the vast majority of those on the registry have all lost significant income and the government has lost massive sources of tax dollars because of the public hate and resulting unemployability of those on the public registry.  Not to mention the costs to the government to provide public aid and to pay for massive police efforts to monitor almost a million such people that are very unlikely to ever commit another sex offence.  The total costs to the government are in excess of many billions of dollars.

Society in general is negatively affected in that collateral consequences such as housing instability and lack of job opportunities created by the registry cause harm not only to registrants and their extended families, but to the overall economy and stability in communities.  SORNA and the AWA do nothing to benefit or protect children and actually harms many of them, especially children of registrants whose parents are unable to fully participate in their lives and these children face bullying and intimidation, and even murder by vigilantes.

Nothing short of complete abolition of SORNA and the AWA,  IAWA, and pre-crime preventative detention will free up necessary resources so that we as a society can focus on prevention of sexual harm and promote restoration and rehabilitation of both those harmed and those who cause harm.

Thank you,
Webmaster for
JustFutureProject.org, WomenAgainstRegistry.org, and fightawa.org
www.ajustfuture.org,   womenagainstregistry.org,   fightawa.org

Reference documents can be accessed at the following URLs
https://ww1.womenagainstregistry.org/Ellman-OAG157.pdf
https://ww1.womenagainstregistry.org/WatchedPotBoil-OAG157.pdf
https://ww1.womenagainstregistry.org/SORNA-comment-OAG157.pdf

AR-00002345

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

These laws passed to protect children have failed. But they have absolutely destroyed families with children with autism, intellectual disabilities and mental illness who have gotten caught in these traps and have become criminalized and incarcerated because of navet and a compassionless legal system. Their families hopes for their futures have been taken away because of unending punishment and humiliation.

**Comment ID**
DOJ-OAG-2020-0003-0692

⊕ **Tracking Number**
1k4-9ji3-k9ji

**Comment Details**

**Submitter Info**

**Received Date**
Oct 13, 2020

AR-00002346



About (/about)     Bulk Data Download (/bulkdownload)     Agencies (/agencies)     Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)     FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002347

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)   / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments  724 (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments  724 (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

Re: Docket No. OAG 157:

"Personal Identifying Information". I am writing in response to the proposed update of Registration Requirements Under the Sex Offender Registration and Notification Act SORNA

The Registration List doesn't prevent any crime from occurring. Having worked in the fields of Addictions, Social Work and Research, it is clear that recovery requires actively and responsibly improving quality of life, health (including behavioral/mental health) and healing. How can this happen if the registrants are constantly living in the past? There is no Public Registry with these same restrictions for terrorists, murderers, gang leaders/members, perpetrators of domestic violence, child abusers, drug dealers, pimps, etc.

This proposed update perpetuates labeling. If someone offended 40 years ago, s/he would be required to register, even with a clean record. The proposed regulations require additional information regarding employment, including whether a registrant has one or more professional licenses. If the proposed regulations are adopted, the federal government can/will notify States that have issued a professional license to a registrant. States, then, can/will revoke those licenses. This is contrary to the goal of recovery. Registrants have served their time. They need to go on with their lives.

The Registry should not cookie cut, as it does with the ridiculously inflated years of registration. There are degrees, depending upon the types of acts and history of offender.

It is debatable if the federal government can create a federal registry for those convicted of violating only state laws.

**Comment ID**

DOJ-OAG-2020-0003-0693



**Tracking Number**

1k4-9ji3-e3wo

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



About    Bulk Data Download    Agencies    Learn

(/about)    (/bulkdownload)    (/agencies)    (/learn)

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

An official website of the United States Government.

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

### Comment

I'm not sure where to begin as there are so many emotions and feelings. I am a significant other of a RSO. We share 5 kids together. From something that happened over 14 years ago, the horror still haunts us each and everyday. I never know when we will get the dreaded knock on the door and my kids worry as to why we have an officer at our door. Our family vacations, they don't exist because we can't travel instead we must travel as a broken family. We are stuck in every direction you can think of. We can't look to move because we face road blocks about where we can move. I say we because even though myself nor my kids are RSO we ALL face these hardships. A decent job is hard to come by once your name is run through the system. My son doesn't even want to go by his name because he doesn't want his father's information coming up. Please please reconsider. This life is so hard for RSO and their family. Any other felon does their time and goes on with their life. As a RSO you have the title forever even after completing your time.

### Comment ID

DOJ-OAG-2020-0003-0694

 **Tracking Number**

kg8-uxyk-3p0g

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020

AR-00002350



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002351

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
/ Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments  724  (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments  724  (/docket/DOJ-OAG-2020-0003/comments)

Share ▾

Comment

When I first glance at the words "sexual offender", I think of people who have violated human beings, monsters. That was my ignorance. Now, I'm no way defending a sexual offender but I will advocate for those who have been wrongly labeled. I believe that theres always levels to any crime. Theres petty offenses that deserve to be pardoned while theres murders who need to be sentenced life. Thats the fact. So why is a man who had consensual sex with another person in public be put on the same list as a man who killed a minor and raped her? How does putting those two crimes in the same categorical list make sense? Changing this law would make it easier for those who fear of being identified as monsters for a mistake they made that doesn't match the magnitude of their punishment.

**Comment ID**

DOJ-OAG-2020-0003-0695

 **Tracking Number**

kg8-uyth-cu6v

| Comment Details | Submitter Info |
|---|---|

**Received Date**

Oct 13, 2020



About (/about)   Bulk Data Download (/bulkdownload)   Agencies (/agencies)   Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)   FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |
Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

**Section 72.3**: How dos the USDOJ intend to notify _all individuals convicted of a sex offense regardless of when the offense occurred and whether the state where the offense occurred_ – hundred of whom may not have been required to register for many, many years??  How does USDOJ intend to find them and inform them of their new requirements to register??  Please be aware that all too often rules such as these, aimed at individuals convicted of a sex offense, are enacted by lawmakers with no consideration whatsoever as to how the individuals will be notified of their newly enacted, failure-means-felony-conviction, requirements.

**Section 72.4**: Reads: _"A registrant must register in every jurisdiction where he/she resides, is employed, and/or registers as a student. ...."_

Please review these comments below carefully as they are, in fact, applicable to my actual employment and career.  Please consider my very real situation below.  Hopefully, you can clarify the applicable Rules.  (Please note that there are enough real life "what if's" in this Section 72.6 to drive through – or park – all the "_cars, watercraft and aircraft owned or operated_" by every registrant in the entire United States!)

* WORK ADDRESS *
I am employed by the local government as a compliance auditor to monitor the contract performance  & compliance of local service providers.  The Human Resources Department is located in downtown Los Angeles (jurisdiction: City of Los Angeles Police Department), but as an auditor, I report to work each day where my division is housed in Glendale, California (jurisdiction: Glendale Police Department)  The Glendale offices are where I report to work each morning….except when I am going out to a job site – where I will be all day long, possibly even reporting in to the office each day of the audit from a provider's facility (where I audit personnel & client records that cannot be removed from the site for employee confidentiality and clients' HIPPA protections reasons).  Providers' facilities where I perform audits are located throughout the County of Los Angeles, from Lancaster in the north, to Long Beach in the south, Malibu to the west, and Pomona to the east – the County covers 4,753 square miles – an area larger than Rhode Island and Delaware, combined.

So, what if a provider's facility is located in an unincorporated Los Angeles County area of San Fernando Valley (jurisdiction: Los Angeles County Sheriff's Department)??  I might be working there for two weeks, phoning into my supervisor each morning for these two weeks to inform him that I am at the provider's facility and I am starting my workday there.

So, in accordance with your **Section 72.6**, which location do I report as where I am employed??:

- the corporate address listed on my paychecks (downtown Los Angeles – a location that I have only physically visited in person a dozen times in a dozen years) – Jurisdiction: City of Los Angeles Police Department,

- my Division's offices where I usually – but not always - start my day - Jurisdiction: City of Glendale Police Department,

- or the provider's facility where I spend 40 hours a week in San Fernando Valley (unincorporated Los Angeles County) – Jurisdiction: County of Los Angeles Sheriff's Department??

- NOTE:  I audit approximately 20 facilities each year and those facilities are located throughout and all over Los Angeles County.  So, will Section 72.6 now require that I must register each of these 20 facilities throughout Los Angeles as my "work address" for the duration of my audit at each facility???

**Section 72.4** reads: _".... must register in every jurisdiction where he/she resides, is employed…"_

Please clarify: Which of the above mentions locations where I work would be the jurisdiction(s) where I am employed??   If the overriding purpose of a Registry is to provide public safety information, then should I really use my employers address which, as mentioned, I have visited maybe 12 times in the past 12 years.  Using that address would certainly mislead the public…… but, let's be honest, there is no evidence that Registries protect the public, you folks just create, enhance, expand them for political kudos.  Really, let's try to be honest.

**Section 72.6** Reads: _"….. Registrants must identify ….. vehicle information for cars, watercraft and aircraft owned or operated by the registrant…."_

* WORK VEHICLES *
Continuing my example of the audit in San Fernando Valley, to save wear and tear on my personal vehicle, I can choose to use one of my employer's fleet vehicle while I am working.  To be clear on this subject, my employer* owns a couple _hundred_ fleet vehicles. My Division has a dozen assigned to it.  So, on any given day, I may be handed the keys to any one of a dozen different cars.  In accordance with Section 72.6, would I be required to provide vehicle information for each one of those **12** different work vehicles??
*My employer is one of the largest employers in Southern California.

AR-00002354

And what if I have a car accident and must get a rental car for a week while my own vehicle is in the collision repair shop…. Do I have to register that rental vehicle's information?  And at what timeframe:  If I rent it for 3 days?  For a week?  Or if the repairs aren't completed in time, for two weeks?? A month??

**Section 72.6** Also reads: "…..registrants must disclose "remote communication identifiers" used on the internet or in telephonic communications or postings, including email addresses and telephone numbers.

* IDENTIFIERS *
How does USDOJ intend to enforce this??  I have email addresses assigned to me by utilities that I have no knowledge of!!  For example, I get my Internet services from ATT.  They have apparently assigned an email address to me for easy identification of my account on **_their_** billing records.  If other have also done this, how exactly am I expected to know all of these "identifiers" that are assigned to me??

And, if I am staying out-of-town at a hotel, do I have to register the hotel's telephone number and my room number?

So, while these proposed USDOJ rules may have appeared to be simple and straight forward, they are – in practice – far more confusing and ambiguous.


=====================

As a consideration:  Do you folks at USDOJ have any idea how many different statutes, laws, rules, regulations, restrictions, deadline, provisions, community guidelines that every Registrants must attempt to adhere to??  And these multiple, myriad rules are all different for each of the 50 states, territories, tribal lands, etc.  Everything from residency and presence restrictions, drivers' licenses emblazoned with "Sex Offender" in bold red lettering, marked passports (I have one of those)??

When exactly does this punishment end???

I have no doubt you will proceed with your Federal Registry rules.  But be aware that you are providing an even stronger legal argument for all Registries to eventually be overturned as unconstitutional as among other things, inflicting ex post facto punishment.

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

💬 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

View More Comments ⟨724⟩ (/document/DOJ-OAG-2020-0003-0001/comment)

View Related Comments ⟨724⟩ (/docket/DOJ-OAG-2020-0003/comments)   Share ▾

---

Comment

I have read the Proposed rule and many other comments relating to the rule. An believe in the law, can see how something such as ever-changing laws in regards to the SORNA enforced by the attorney general can be confusing. Yet at the same time, the documents provided on this matter demonstrate the importance of keeping track of sex offenders and keeping them in line at all times, making sure they obey the law. Reading some of the comments there are even sex offenders themselves responding; giving their own back story on how they ended up on the registry. They all seem to end the same acknowledging what they did and pointing out they regret what they did and deserve whatever happened with this proposed rule.

**Comment ID**
DOJ-OAG-2020-0003-0697

◎ **Tracking Number**
1k4-9ji3-c6zp

**Comment Details** | **Submitter Info**

**Received Date**
Oct 13, 2020

AR-00002356



*Your Voice in Federal Decision-Making*

About (/about)     Bulk Data Download (/bulkdownload)     Agencies (/agencies)     Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)     FAQ (/faq)

Privacy & Security Notice (/privacy-notice)   |   User Notice (/user-notice)   |   Accessibility Statement (/accessibility)   |   Developers (https://open.gsa.gov/api/regulationsgov/)   |   FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)   Provide Site Feedback

AR-00002357

An official website of the United States Government. 🇺🇸

Docket (/docket/DOJ-OAG-2020-0003)
 / Document (DOJ-OAG-2020-0003-0001) (/document/DOJ-OAG-2020-0003-0001)  / Comment

 **PUBLIC SUBMISSION**

# Comment on FR Doc # 2020-15804

Posted by the **Department of Justice** on Oct 14, 2020

| View More Comments ⟨724⟩ (/document/DOJ-OAG-2020-0003-0001/comment) |
|---|

| View Related Comments ⟨724⟩ (/docket/DOJ-OAG-2020-0003/comments) | Share ▾ |
|---|---|

---

| Comment |
|---|

You need to stop adding restrictions to these people. If they have not paid their debt to society put them back in prison or kill them. What you are doing is inhuman and unconstitutional. Especially those convicted of photos only. The logic assigned to those crimes defies logic. A picture cannot be harmed every time it is viewed. Those with pictures only being lumped in with hands on offenders is ridiculous. Karma is real, you to will bear the responsibility for what you do to others.

| **Comment ID** |
|---|
| DOJ-OAG-2020-0003-0698 |

|  **Tracking Number** |
|---|
| kg8-v8lr-ejh8 |

| **Comment Details** | **Submitter Info** |
|---|---|

**Received Date**

Oct 13, 2020

AR-00002358



Your Voice in Federal Decision Making

About (/about)    Bulk Data Download (/bulkdownload)    Agencies (/agencies)    Learn (/learn)

Reports (https://resources.regulations.gov/public/component/main?main=Reports)    FAQ (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback





REFERRED
MAIL REFERRAL UNIT
OCT 1 3 2020

READER #3

MOBILE AL 366
OCT 2020  PM 2  L

Regulations Docket Clerk,
Office of Legal Policy,  Docket No. OAG 157
U.S. Department of Justice, 950 Pennsylvania Avenue *NW*
, Room 4234,
Washington, DC 20530

20530—

AR-00002360

Regulations Docket Clerk, Office of Legal Policy,
U.S. Department of Justice,
950 Pennsylvania Avenue NW, Room 4234,
Washington, DC 20530



RE:  No. OAG 157

"PERSONAL IDENTIFYING INFORMATION"

To whom it may concern:                                             October 6, 2020

Firstly, adding persons convicted before Sorna to the registry by the AG's office authority is
unconstitutional. Even If by some hocus pocus it is construed as *legal* . Is it the moral and right
approach? Why add people who have served their time and have not reoffended? It is difficult to
rebuild a life with a felony conviction. Why would one add the extra burden of the registry?
Particularly since it curtails many of the civil liberties citizens enjoy.

Fear should not dictate how we fight or rectify crime in a civilized country. We should be more
concerned with rehabilitation than punishment beyond time served. The whole of a registry as a crime
fighter is as antiquated a notion as the Salem witch hunt's practice of dunking. Housing, a job and a
chance to contribute to society should be encouraged.  The registry makes these nigh on impossible to
achieve for most who are listed. I think it is time to admit our war on crime is a dismal failure.



KET No:)
AG957

LEGAL MAIL WILMINGTON DE 197

30 SEP 2020 PM 1 L



X-RAYED

OCT 1 3 2020

DOJ MAILROOM

INSPECTED 28

Regulations Docket Clerk
Office of Legal Policy INSPECTED 26
U.S. Department of Justice
950 Pennsylvania Av, N.W
Room 4234
Washington DC 20530

AR-00002362

(1)

Open comments to proposed Rule changes for SORNA.
(Docket No. OAG 157)

I wish to express concern and opposition to the proposed

changes.

Instead of putting forward additional restrictions and intensification

of the bureaucracy committed to resourcing this ill-conceived

and emotionally driven legislation, the Attorney General would

better serve the American public and better protect those this

legislation is intended to safeguard, by ordering a comprehensive

review of this law to determine its effectiveness and value for money

with intent to remove it entirely from the statute book and

redeploy the huge resources liberated thereby in a range of

focused initiatives specifically designed to target in a productive manner

the issues this legislation purports, but so signally fails, to address

Billions of dollars annually are currently expended by Federal and

State authorities on maintenance and enforcement of Sex Offender

registration which statistics and research show:

- Does not keep our communities safer.
- Does not lower sexual offense rates.
- Mitigates against effective rehabilitation.
- Is staggeringly expensive and non cost-effective.
- Is inhumane in its restrictions.
- Harms, rather than protects, families,
- Violates cherished Constitutional rights and freedoms,

(2)

Legislation formulated in response to and in the heat of intensely emotional circumstances is invariably bad, ill-considered and ineffectual in addressing the concerns that prompt it.

This is nowhere more true than in cases involving harm to the most treasured and vulnerable members of our society - our children, to whom we owe a supreme duty of care and protection. (As a child abuse survivor myself I can identify with this imperative.)

This legislation arises in such a context and is named for a tragic victim of an infamous crime (Adam Walsh) - similar to the parallel 'Megan's Law'.

The outrage evoked by these crimes and the determination to prevent the repetition of such heinous offences in the future prompted these well-intentioned but misguided and ineffective pieces of legislation, formulated in haste and with understandable emotional impetus but without a clear vision of the desired objectives.

The result has been an ill-conceived, ineffective and exhorbitantly expensive monolith the demerits of which the Attorney General now proposes to compound with these latest proposals.

In promulgating this legislation there has been a failure to address the fundamental question - what is it designed to achieve?

If the answer is - the safety of our communities and prevention of further victimisation, especially of our children, it does not do so.

AR-00002364

(3)

Over 95% of new sexually based offences are committed by
first-time offenders not on the register. most of them trusted
family members, friends or colleagues — in 3 out of 4 cases, known
to the victim.

The registry is primarily directed toward possible re-offending by a
stranger — so called 'stranger danger'. Statistically, less than 2%
of all sexual offending falls within this sector.

Furthermore, the rate of recidivism amongst sex offenders is the
lowest (at between 1% and 3%) of any category of offense.

So what good is the registry if most sexual offences are being
committed by people who are not on the register, and those who
are, demonstrably, are overwhelmingly unlikely to reoffend?

The huge expenditure on maintenance of the registry could be far better
spent elsewhere — for example, in researching, identifying and seeking
to address the root causes of this offending behaviour. Why is this an
apparently growing area of social disfunction? What measures might most
effectively be introduced to combat it?

So what does the Registry achieve? Here are some demonstrable effects:

- Homelessness
- Joblessness
- Dependency on welfare
- Promotion of violence by vigilantes.
- Unjust perpetuation of punishment, contrary to natural justice.
- Denial of Constitutional rights and principles.

These constitute continuous punishment of sex offenders who have served
their time for their crimes and paid for their wrong-doing. By requiring them
to register, restricting their places of residence/work and prohibiting who they may
come into contact with — including their own family members at times, society
promotes ...

AR-00002366

(4)

No other category of offence/offender is singled out in this manner and to do so is contrary to natural justice and Constitutional protections afforded by equal protection and due process laws of the 5th and 14th Amendments (Doe vs. Smyth). The potential under the present proposals for retroactive application is further in violation of the 'ex post facto' clause (U.S. Constitution, Art. 1, Section 10) and the bill of attainer clause (U.S. Constitution, Art 1, Section 9). It also violates separation of powers when former registrants have been relieved of registry obligations by the courts, because the legislative branch cannot overrule, interfere or act as a member of the judicial branch.

Offenders have paid their debt to society. Most have redeemed themselves and been rehabilitated. But society does not permit past sex-offenders to re-integrate and be productive, law-abiding members of society as the great majority desire to do. SORNA identifies registrants as pariahs to be despised. It has created an entire class of 'disabled' people - often dependent on social programs for food and medical care. Most are unable to find life-sustaining (or any) employment. Many, unable to find housing, are homeless and unable to obtain many necessities of life. These injustices are perpetuated and exacerbated as the list grows ever longer.

Having to provide aid via social programs to those who want to work but cannot, due to SORNA, is an additional drain on taxpayer dollars on top of the huge cost of administering the register. This money would be far better spent on public safety initiatives rather than the continuation / expansion of SORNA which has become nothing but a punitive tool of unending persecution and non-therapeutic public shaming which causes homelessness, joblessness, vigilantism and immense collateral damage to families and loved ones of those who have at some time been arrested for a sexual offence.

It is time to scrap this misguided and misdirected legislation and redirect the huge savings in taxpayer dollars into positive and productive avenues to the benefit of society, that address effective solutions to a growing social problem and accord with the principles of equity and justice enshrined in our Constitution and Pledge of Allegiance.

23 September 2020

Regulations Docket Clerk
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW, Rm. 4234
Washington, D.C. 20530

      Re: Docket No. OAG 157
          Public Comment for U.S DOJ
          Proposed Rule Changes for SORNA

Sirs/Mesdames:

    I submit this document to register my opposition to
the proposed changes to the SORNA rules.

    The courts have long found that the People have only
one opportunity to sentence an individual who
has been convicted of violating a statute. Part
of the proposed changes to SORNA would require
local jurisdictions to impose further sentence
conditions once a sentence has been served.
Some jurisdictions tried to justify this by

AR-00002367

SORNA - Docket No. OAG 157
Pg. 2

claiming their registry to be civil rather than criminal. However, the court has found in Does v. Snyder that SORNA is punitive, which explains why registry statutes are listed in the Criminal Code in states such as Delaware. While claiming state registry requirements are civil matters, no individual found responsible for committing a sexual offense through a civil action is required to submit to the mandates of SORNA or a state equivalent. This leads to a further inequity in how cases are prosecuted.

The wealthy can afford to have their expensive lawyers draw up lucrative contracts — all non-disclosure, of course — behind which their wealthy clients can hide from prosecution while victims are paid off. None of these alleged victims kick up a fuss for their assailant to be entered into the registry because they agree to the NDA prohibiting such action. The poorer defendant must proceed through a criminal proceeding wherein the State loads up on minimally supported accusations for which no defense can be raised due to the lack of specificity in the indictments. This raises the spectre of discrimination.

SORNA - Docket No. OAG 157
Pg. 3

Most importantly, the information related to offenders who have been released into the community should be recorded for law enforcement purposes only. There is no reason why the general public needs to have the access to the minutiae of an individuals life. Any responsible person or parent should exercise such reasonable care as is necessary for the protection of themselves and their family. They should act to secure themselves as best as possible from the first-time offender. Knowing the details of a rehabilitated ex-offender will not make this responsibility any different.

In conclusion, I am opposed to the proposed SORNA changes as being unnecessary and simply an effort to make the successful rehabilitation and transition to the community of ex-offenders, particularly those who have completed service of their incarceration and community supervision, a more difficult, if not impossible, endeavor.

A concerned citizen



X-RAYED
OCT 0 8 2020
DOJ MAILROOM

INSPECTED 26

INSPECTED 28

REGULATIONS DOCKET CLERK
OFFICE OF LEGAL POLICY
U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE NW, ROOM 4234
WASHINGTON DC 20530

U.S. POSTAGE PAID
FCM LG ENV
LOUISVILLE, KY
40245
OCT 02, 20
AMOUNT
$1.20
R2303S1 04695-12

AR-00002370

02 October 2020

DOCKET #: OAG 157

Dear Honorable William Barr:

Please consider the attached information when
deciding upon the proposed rule.

In my case, I have an autistic son who was caught
up in a sting operation for viewing prohibited
pornographic material on the internet.  The
punishment of being listed on a public registry, when
considering his condition, have proven to be very
detrimental to keeping gainful employment.  Having
been diagnosed with autism at age 3, his life was
filled with extra help to allow him navigate the
educational system both in learning disabled classes
and the regular classroom.  Please consider my son
when deciding upon the proposed rules for this
offense.

Thank you!

# Principles for Prosecutors Considering
# Child Pornography Charges against
# Persons with Asperger's Syndrome

### Preface

*Among the difficulties faced by young persons afflicted with Asperger's Syndrome*
(AS) and their families is the misinterpretation of the atypical behavior of the AS patient as
dangerous and criminal. AS, defined in DSM-IV, is an "Autism Spectrum Disorder" (ASD)
typified by extreme social and emotional immaturity, the inability to "read" others or respond
appropriately in social settings, lack of intuitive awareness of social/moral/legal constraints,
and intense and narrowly directed repetitive activities. These features combine to create a
risk of engaging in behavior offensive toward others but with no offensive purpose. These
individuals tend to have the technical skills for computer use, to which they gravitate
because, unlike social interactions which are unpredictable, whimsical, and semantic-guided,
computers are predictable, logical, and syntax-guided. These are intellectually intact people,
with good computer skills but extraordinary brain-based naivete, acting in social isolation,
compulsively pursuing interests which often unknowingly take them into forbidden territory.

Accessing child pornography is not currently known to be a frequent behavior of
young persons with AS, but enough cases have arisen to demonstrate the need for prosecutors
to inform themselves of the condition and adopt a policy of restraint in the investigation and
prosecution of such cases. Given the lack of social adaptation on the part of AS patients,
interest in pornography as a means to explore ideas of sexuality and romance is expected.
The exploration of this material on the internet or peer-to-peer networks will expose AS
patients to child pornography which may arouse their curiosity. At these times AS is directly

1

AR-00002372

involved in the individual's obliviousness to the social and legal taboos surrounding child pornography, and the inability to intuit that the visual depictions are the product of any kind of **abusive** relationships. This behavior is not predictive of future involvement with child pornography or offenses against children. There is nothing inherent in Autism Spectrum Disorders, such as Asperger's, to make individuals inclined to sexual deviance of any kind. Their apparently deviant behavior is perhaps best understood within the diagnosis of "counterfeit deviance," as defined in the DM-ID. ("Diagnostic Manual -- Intellectual Disability (DM-ID): A Textbook of Diagnosis of Mental Disorders in Persons with Intellectual Disability") Persons with AS are far less likely to be predators than victims, because of their naivete and ineptness in interpreting or deflecting the advances of others, and their inability to initiate social contact with others or effectively direct or manipulate any social encounter.

Asperger's Syndrome is a lifelong disability which on its own creates substantial hurdles for the patient. Criminal prosecution, conviction and the typical sanctions imposed in such cases are not necessary to protect the public in the case of an AS patient, but they are imponderably harsh, cruel and debilitating to persons with AS and their families on whom they are dependent. Generally these individuals are not a threat to society: it's the other way around. AS patients are frequently the target of abuses, such as bullying, often from poorly chosen "friends."

**With this in mind,** we suggest that prosecutors adopt the following principles when confronted with those who suffer from Asperger's Syndrome are found to be involved with child pornography.

2

AR-00002373

## Principles

1.      *Young persons with Asperger's Syndrome (AS), despite average or higher* intelligence and academic performance, have the social and emotional skills of children well below their own chronological age, and well below the minimum age for criminal **prosecution in federal and state courts.** AS individuals are neurologically impaired in their ability to appreciate the social/moral/legal unacceptability of their conduct or to intuit why the conduct is unacceptable; these are capabilities which state legislators and Congress presumed to inhere in the general population to whom the criminal laws apply.

2.      In an interrogation setting the AS individuals may appear deceptive because of deficits in communication skills, such as the inability to make normal eye contact.  At the same time they may in fact be over compliant with suggestions made by police officers.  AS impairs the ability of offenders to respond with expressions of remorse to which prosecutors and judges typically look for reassurance in considering alternate dispositions of criminal matters.

3.      AS is not a condition related to any sexual paraphilia (e.g. pedophilia) and is not a precursor thereto.   Usually little more than giving explicit instructions is needed to prevent recurrence of the behavior.  As persons with AS age, they may become better adapted and may present different behaviors than in their youth.

4.      Prosecutors should take AS into account in determining whether to target, prosecute or seek a conviction in an apparent case of possession of child pornography.

5.      Persons with AS experience lifelong difficulties.  **Young persons with AS are** not able to live independently, and need to live with their families – their parents and siblings.  Therefore the sex offender registration and residency restrictions arising from a child pornography conviction would have a cumulative and disastrous effect in these cases,

3

AR-00002374

and on more uninvolved person, than in other cases involving neuro-typical adults.

6.     Prosecutors should be encouraged to defer criminal prosecution in cases involving young first offenders with AS who have no history of directly offending against children, or having produced or distributed child pornography, no clinical indications of pedophilia (other than accessing child pornography), nor history of prior offenses involving child pornography.

7.     Prosecutors should encourage therapeutic intervention in cases of suspected child pornography use by such individuals, and utilize probationary periods and deferred prosecutions to monitor compliance before considering actual prosecutions in such cases.

8.     The Department of Justice and state prosecutors should keep data on the incidence of criminal investigations involving persons with AS and the manner in which such cases are resolved.

9.     Expert AS resources should be sought out in local communities to assist law enforcement officers and prosecutors in understanding AS and evaluating the appropriateness of such cases for prosecution.

## Sponsors: Individuals and Organizations

Ami Klin, Phd.

> Director, Autism Program, Harris Associate Professor of Child Psychology and Psychiatry Yale Child Study Center Yale University School of Medicine

Fred Volkmar, MD

> Director, Child Study Center Irving B. Harris Professor of Child Psychiatry, Pediatrics and Psychology Yale University School of Medicine Chief, Child Psychiatry Children's Hospital at Yale-New Haven

4

AR-00002375

I/M: BARRALL          BLDG: MeRiT EAST

SUSSEX CORRECTIONAL INSTITUTION

P.O. BOX 500

GEORGETOWN, DELAWARE 19947

WILMINGTON DE 197

13 OCT 2020 PM 2 L

INSPECTED 28

Regulations Docket Clerk
U.S. Dept. of Justice
Office of Legal policy
950 Pennsylvania Ave Rm 4234
Washington DC
        20530

INSPECTED

X-RAYED
OCT 20 2020
DOJ MAILROOM

DOCKET NO. OAG 157

AR-00002376

Volume 13: Issue 5

# Rethinking the Problem of Online Pornography

*By Christopher E. Pelloski, MD*

Last fall, a New York Times article (*https://nyti.ms/32tm3qj*) reported that the number of online files depicting the sexual abuse of children, commonly known as child pornography (CP), has been growing exponentially since the turn of the century. The troubling fact is that there are now over 45 million illicit files—from just over one million in 2014.

During this same time, the federal government increased its vigilance against CP offenses. From 2004 to 2016, the number of men serving sentences in federal prisons for this charge jumped from 1,259 to 8,508 (*https://bit.ly/3i1vqp1l*) which costs taxpayers about a quarter of a billion dollars to warehouse them.

When these two observations are juxtaposed, only one conclusion can be made: the policies used to combat the problem of online CP have failed miserably and are a great disservice to the victims of this crime. The failure is rooted in the manner in which law enforcement targets offenders and who gets targeted.

A disturbing trend over the course of the evolving fight against CP is that law enforcement entities have become among the largest distributors of this material in the world. A case in point is a 2015 operation in which the FBI assumed control of The Playpen, a Dark Web site dedicated to the sexual exploitation of children. During a two-week span, there were over 100,000 visitors whereby the FBI permitted and facilitated the distribution and exchange of thousands of pictures, videos and links for hundreds of thousands, if not millions, of times. The operation led to 200 arrests, or just 0.2% of those who committed this crime. (*https://bit.ly/33uy4Lh*)

These numbers are sobering for three reasons: 1) It demonstrates just how prevalent this disturbing activity is; 2) It not only exposes the inefficiency of this strategy but undermines the principle of deterrence and encourages continued harmful behavior, given that 99.8% who participated escaped arrest; and, 3) Perhaps the most troubling, the continued victimization of the abused was allowed to occur in hundreds of thousands, if not millions, more instances at the hands of law enforcement. This is the moral and mathematical equivalent of allowing thousands to be murdered in order to catch two murderers.

This ethical paradox could potentially be excused if the end resulted in less CP traffic and circulation, increased public safety, and rescue of the victims. But this clearly is not the case. It is most often the low-end offenders who are apprehended, those who ultimately pose little tangible danger.

CP cases currently comprise nearly 80% of all federal sex crimes. Of those 8,508 federal prisoners mentioned above, 95% are non-production/non-contact offenses (NP/NC; meaning CP was not produced by them nor was there ever inappropriate contact with a child). Most of these offenders have no previous criminal records, have never used media to engage or entice children, and have never, nor would ever consider, laying a sinister hand on a child.

Further, most of these files are free and publicly available online and are a by-product of ongoing, domestic child sexual abuse, where 85-95% of the abusers are known to the victims; have a mobile phone with recording capabilities, and have a penchant for exhibitionism. After speaking with over 100 NP/NC offenders, I can say that many echoed the same sentiment: "I didn't find this stuff online. It found me."

Many myths about NP/NC offenders have been debunked by criminology and psychology research as well. Consuming this media is not a predictor of nor associated with 'hands-on' offenses, and the recidivism rate is 2-4% within this group (*https://bit.ly/2RHJuKi* and *https://bit.ly/3iM9SdPsL*).

Despite these findings, the average prison sentence remains high (85 months for receiving CP and 44 months for possession, even though there is little technical distinction between the two charges). Since the 2012 Sentencing Commission Report (*https://bit.ly/2Rpai1H*) over 70% of federal judges believe the sentencing is too severe. Post-incarceration regulations are also 'overkill' in many instances and include higher SORNA tier designations and lifetime probation/supervision.

Given these offender demographics, a more effective and less costly approach would be to create diversion programs like those that exist for nonviolent drug offenders. Diversion programs mandate education and counseling for offenders (with the goal of understanding the reason behind and preventing future offending behavior), fines to fund future law enforcement efforts, and avoidance of situations or restrictions specific to the crime (in this case, for a computer-based crime, computer monitoring).

Completion of the program would result in the charge being dropped or reduced (avoiding full prosecution and incarceration), which helps keep people's lives intact while addressing their issues. This would give first-time offenders a chance to redeem and repair themselves, as opposed to just throwing them away for years. A much shorter stint on the sex offender registry would also be appropriate.

Instead of prosecuting and incarcerating the fraction of a percent of the known active participants, processing cases through diversion programs could lead to an annual enhancement of billions of dollars. For example, if 50% of those 100,000 detected in the FBI's Playpen operation paid a fine of only $1,000, it would net $50 million. These funds could then be directed against apprehending producers and developing more sophisticated cyber-strategies to eliminate files and paralyze distributing websites. This approach would actually reduce the number of online files and overall activity, which could much better serve the victims of CP.



NEW SITE!

NARSOL RESOURCES

https://resources.narsol.org

Regulations Docket Clerk,                    October 7, 2020
Office of Legal Policy,
U.S. Department of Justice
950 Pennsylvania Ave. NW
Room 4234
Washington, DC. 20530
Docket No. OAG 157

Dear AG Barr,

I would like to offer my comments on the proposed rule changes in regards to SORNA.

I am sure that nothing I say or anyone else says will change your mind in regard to the proposed changes to SORNA. But I do hope that what I say will at least start a dialogue around this topic. It's not that I am against the registry; I am just totally against the registry being public. Offenders on the registry are not the problem, but you along with others and in Congress fail to recognize this.
Allow me to explain.

Mr. Barr it you feel that SORNA is such a powerful tool in protecting the public and children from a sex offender, then I must ask you the following:

1) **Why is there not a public registry for convictions of drunk drivers? You would also have an alcohol restriction placed on your license or State i.d. card. Think how many would be on this registry. How many people are put at risk every time an impaired driver gets behind the wheel? 5,50,500,5000 who knows? There is a simple answer, because it would not stop impaired drivers, it would be expensive and cumbersome and just plain does not make sense, so why does the sex offender registry make sense?**

    *2) If the registry is so effective at protecting the public, then*
       *why is there not a registry for all felons?*
    *3) Why not a gun registry for those that are prohibited from*
       *carrying a weapon?*
    *4) Why is there not a registry for those convicted for*
        *murder?*
*Or are you saying that the public is only worthy enough to be*
*protected from sex offenders, who I might add have the lowest*
*recidivism rate of all convictions, how is it that a sex offender is*
*so dangerous that they need a registry, but others felons do not?*

*Sex offenders are the least likely to reoffend. Study after study has*
*confirmed this. So why disregard the science. Simple, it's an easy*
*sell and good for everyone's political career. When will Congress*
*start to have some back bone and report the truth and stop the fear*
*mongering?*

*Mr. Barr, you, along with those before you and the courts all*
*concur that the registry is a civil requirement due to a sex offense.*
*So how is it that failure to registry renders criminal sanctions?*
*Our prisons should be full of people who fail to fulfill their court*
*ordered civil sanctions. Right?*

*Mr. Barr, if this proposed rule change and the registry in general*
*is so good for public safety then why must it be sold with the threat*
*of withholding funds from the states for non compliance? Simple,*
*you and Congress know that the registry is worthless,*
*cumbersome, expensive and just plain does not work in reducing*
*sex crimes. After all if something is so great it usually sells itself.*

*Mr. Barr, if your team had performed any research that is based*
*on hard data, the conclusion would have revealed that the people*
*on the registry are of little to no concern. The concern is with*

*people that are close to the victims, and are not on anyone's radar. It is with the first time offender, the one with no criminal background, good employment, good stable environment that is having issue and no one to turn to for help. This should be our target audience. Prevention is the key, be proactive in reducing sex crimes.*

*Mr.Barr, do you really want to reduce sex crimes? The registry is not the answer. Reducing sex crimes involves having the hard conversation. Providing a place for people to go and talk openly without judgment is a great first step. We must talk openly about the ramifications of sex crimes, not just from the victim's eyes but also about the ramifications that come with committing a sex crime. I invite you to show the American people how the registry has reduced sex crimes. To start with, research how many people on the registry were first time offenders. What was their status in society before the crime? I know that there is and always will be sex offenders and sex crimes. But let's focus on reducing them.*

*Mr. Barr, in closing I would like to say that there is merit to the registry, just not in its current format. The registry should be used for law enforcement only to help solve crimes. The public format invites hatred, loss of family, loss of housing, lost marriages, and clearly invites vigilantism. No one is immune from becoming a sex offender, even you Mr. Barr.*

*Mr. Barr, I have included with this letter an article featured in the NARSOL Digest volume 13: Issue 5 authored by Christopher E. Pelloski, MD. His writing describes mine and I am sure countless others addiction to online porn. Sex sells Mr. Barr. We must get a handle on these websites that promote young porn. First we must kick every porn site registered in Delaware out.*

Thank you Mr. Barr for allowing me to voice my thoughts and would love to speak more on this topic in the future maybe even with you or a representative of yours in person.

I will also be sending this to Senate Coons, Senate Carper and Rep. Blunt-Rochester along with AG. Jennings and Gov. Carney as a matter of record and in hopes of speaking with them directly also.

Respectfully,
William W. Barrall

Laurel, De.

LETTER OF COMMENT TO AG BARR

I, and many others in the state of Delaware have seen the repercussions of what substantial compliance with SORNA has wrought.  Delaware has been in substantial compliance with this ineffective and inhumane regulation for several years.  The results in Delaware have been this:  1.  SORNA has no impact regarding decreasing the number of sex offenses in our state.  The incidence of sex offenses with the laws that were in place prior to implementing SORNA are the same now as they were prior to compliance with SORNA. Obviously, the prior existing laws were just as effective. 2. SORNA has had no impact on Delaware's sexual offense recidivism rate.  It remains very low at 4.7 to 5.3%, as it was before the implementation of SORNA.  3.  Due to increased incarceration rates with SORNA'S over-reaching, over-inclusive regulations, our overcrowded prison system has forced Delaware to send inmates to another state for confinement.  This has been an added burden on tax-payers.  4.  Delaware now has an army of able-bodied people who were employed but lost their jobs after the implementation of SORNA.  Those inmates that were released after the implementation of SORNA are unable to find employment.  If they are fortunate enough to find employment, it is a job that does not provide a living wage.  Hence, many of the 5,000+ people (and growing daily) on Delaware's registry are dependent on our state's social programs such as Medicaid and food stamps.  5.  Many on the registry are homeless due to SORNA'S dictate of a having a public registry and notification of neighbors and housing managers.  This is completely counterproductive, an oxymoron, to one of the goals of SORNA, which is to know the location of registered persons at all times.  There is no way to know where a homeless person is.  6.  **Collateral damage**: *Many people cannot live with their wives and children or any family members if there are children present, even if their offense involved an adult.  Many cannot live in a home where there is a computer.  This tears families apart. *Vigilantism.  Due to the public registry, there has been destruction of property and threats against registrants.  Due to notification of neighbors and people in surrounding communities, families of registrants have had to move due to terrorist threats even if the registrant does not live in the home. *Bullying.  Some children with a parent on the public registry have been bullied and taunted by school mates and others, even though the registered parent does not live in the home. For some children, this has caused irreparable damage. *Finances.  The extra funding by the Federal Government given to SORNA compliant states does not cover the ever-growing expenditures needed to maintain compliance with SORNA. Compliant state's registries will continue to grow uncontrollably due to the overzealous, and the over- inclusive regulations of SORNA.  In addition, the amount of time a person is required to remain on the registry, 25 years to life.  This alone creates an ever-growing money-pit as more and more people are added to the registry daily. Yet another drain on tax-payers money.

**Bottom Line**: There have been many studies by reputable organizations (ATSA and others), who have statistical proof that SORNA does not make anything or anyone safer. Facts show that almost all sex offenses are committed by someone known by the victim.  The public registry, and notification of neighbors, employers, schools, and housing managers simply creates joblessness, homelessness, foments hate and vigilantism, irreparably destroys families and has created an army of disabled humans who are forced to avail themselves of social programs to survive.  The money wasted on, SORNA, a system that does not produce any positive results, and which is a total waste of taxpayer's money, money which could be spent on so many other needed resources, is a system that cannot and should not be potentiated!

Ms Susan D Cook
283 Holly Rd
Paxinos, PA 17860

HARRISBURG PA   171

13 OCT 2020   PM 4   L

FOREVER / US

Regulations Docket Clerk
Offices of Legal Policy
U.S Department of Justice
950 Pennsylvania Avenue NW
Room 4234
Washington DC 20530

REFERRED
MAIL REFERRAL UNIT

OCT 19 2020

READER #3

20530-

AR-00002383

Docket No. OAG-157

I, Susan Cook, feel that this proposal by U.S. Attorney General William Barr on SORNA, may have a negative effect on State Regulation. This I do not agree with, so I say no to OAG 157.

Thank you
Susan Cook

AR-00002384

CAUTIONclick
P.O. Box 1548
Waynesville, NC 28786

BUFFALO NY 1

2 OCT 2020   PM 2

REFERRED
MAIL REFERRAL UNIT

OCT  8 2020



 READER #3

Hon. William Barr, US Attorney General
Attn: Regulation Docket Clerk
U.S. Department of Justice, Office of Legal Policy
950 Pennsylvania Avenue NW, Room 4234
Washington, DC 20530



CAUTIONclick (CCNCR)    P. O. Box 1548    Phone: (561) 305-4959    Email: info@CAUTIONclick.com
                        Waynesville, NC 28786    (716) 632-8673    wwwCAUTIONclick.com

# CAUTIONclick
## National Campaign for Reform

October 1, 2020

Hon. William Barr, US Attorney General
Attn: Regulation Docket Clerk
U.S. Department of Justice, Office of Legal Policy
950 Pennsylvania Avenue NW, Room 4234
Washington, DC 20530

Re: **Docket No. OAG 157**
**Proposed Rule Interpreting Registration**
**Requirements Under SORNA**

This public comment is being submitted by CAUTIONclick with input from its members directly impacted by the Federal and State Sex Offender Registries, in response to: **Docket No. OAG 157**: Proposed rule interpreting Registration Requirements Under SORNA.
There are so many things to be said about the ineffectiveness of SORNA and the harm it causes, that it is difficult to begin. When the registry named after Jacob Wetterling was first established, it was for law enforcement use only. However, shortly thereafter the decision was made to create a public registry when a heinous abduction by a previous offender occurred. Even Patty Wetterling, Jacob's mother, has spoken out openly against the public registry while still working tirelessly for the safety and well-being of children.

The registry has become an industry for law enforcement, treatment providers, polygraphers, and more, all working together to maintain job security and keep contracts that put money in their pockets. In addition, it has become low hanging fruit for politicians who use the registry as a tough on crime agenda. Current treatment programs keep registrants in their programs just to generate money for their contracts and to satisfy law enforcement who want to have numbers to show their effectiveness. Rarely is anyone fully deemed as having completed treatment programs successfully which speaks to the inadequacy of either the programs or greed or both!

The registry requires a lifetime label that promotes fear and does more harm than good, especially for the families impacted. The registry, instead of keeping children safe, has damaged millions of children who must live with **one who must bear the label of sex offender for life**--such as a parent or grandparent who is publicly shamed by the label yet not a danger as evidenced by risk assessments, treatment providers and most importantly personal behavior. There are easily 2-3 million children of those on the registry who are directly impacted and being harmed the most.

There have been no efforts for diversionary programs for low risk, especially non hands-on offenders such as those caught in stings, or those charged with viewing child pornography but not distribution or production. Rather, funds are wasted that are needed

1

for research-based preventative, diversionary, rehabilitative re-entry programs meant to keep members of society safe.

A National Center for Missing and Exploited Children publication some years ago stated that only 3-5 percent of offenders on the registry reoffend. Most child abuse is caused by a family member or someone known to the family, a neighbor or other individual entrusted with the care of children.  Why is it that other criminal offenders with much higher re-offense rates have systems in place which allow for them to move forward with probation, employment, and community involvement, when much evidence proves that the vast majority of sex offenders who have served their time are no longer a danger to society and just want to move on with their lives?

 It is time to scrap the entire SORNA system and pass legislation that will truly provide safety and appropriate treatment systems and the capability for ex-offenders to redeem themselves, thereby enabling them to care for their families and be contributing members of society.  John Walsh, in the AWA, attempted but failed to establish tiers etc. purposefully, but states have aimlessly either ignored or deliberately failed in developing laws that can result in effective systems for allowing those deemed low risk (there are many well developed risk assessments) to complete treatment and diversionary programs that truly improve safety.

Let us develop and use tax dollars where the public IS truly served in its best interest. The final sentence of the **Practitioners Advisory Group** (members are 11 legal and judicial scholars) 2012 report to the US Sentencing Commission hearing on child pornography sentencing states, "We commend the Commission for its willingness to investigate ways to reform sentences in this area to better reflect true culpability and achieve justice, and are grateful for the opportunity to assist its work in this area."  This response relates to the offense of viewing child pornography, but it can apply to many others who bear the lifetime label of sex offender.

Respectfully,

Rita Finley
CAUTIONclick National Campaign for Reform
P.O. Box 1548
Waynesville, NC 28786

2

AR-00002387

ood Dr.
y, CA 91977

SAN DIEGO CA   920

6 OCT 2020   PM 5   L

REFERRED
MAIL REFERRAL UNIT

OCT 13 2020

READER #3



Regulations Docket Clerk
Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave.  Room 4234
Washington, DC  20530
Ref:  Docket No. OAG 157

20530-

AR-00002388

Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave.  Room 4234
Washington, DC  20530

Ref: Docket Number OAG 157

October 4, 2020

Dear Sir or Madam,

I am writing to protest the proposed changes to the Sex Offender Registration and Notification Act.  The added requirement to register every ninety (90) days will be burdensome and amounts to a form of additional punishment and persecution.  Even the requirement for annual registration amounts to a continuation of confinement and control.

Statistics clearly show that there is a very low rate of reoffending another sex crime.  Many who have been placed on lifetime registration, such as in California, have committed non-contact offenses.  Federal guidelines would place them on level 1 or 2, not lifetime.  Many are classified as low risk, not likely to reoffend, and yet are grouped with the few who are not low risk.  This impacts many who have served their sentence and completed parole and probation.  This also negatively affects their efforts to rejoin the community, work force, family, and society.

In closing, I'm asking that these additional requirements not be added into law.  The majority of ex-offenders, who are known to be low risk, should not be unjustly burdened by additional restrictions.

Thank you for taking the time to read and consider my input.

Sincerely,

John Garner

John Garner



U.S. POSTAGE PAID
FCM LG ENV
STEVENSVILLE, MI
49127
OCT 13, 20
AMOUNT
$1.60
R2304N118572-07

20530

1000

RETIRED
MAIL PROCESSING UNIT

OCT 22 2020

READER #3

A. Hani Hon
6671 Red Arrow Hwy.
Stevensville, MI 49127

Regulations Docket Clerk
Office of Legal Policy
U.S. Dept. of Justice
950 Pennsylvania Ave. NW
Room 4234
Washington D.C. 20530

AR-00002390

**Angelina Hamilton**
6671 Red Arrow Hwy.
Stevensville, MI 49127
(269) 769-3235
angihami@gmail.com
October 12, 2020

Dear Attorney General,

This is in regards to Reference Docket No. OAG 157, Proposed Rule
Interpreting Registration Requirements Under SORNA. I strongly oppose the
expansion of the present proposed rule part 72 of title 28 of the Code of
Federal Regulations.

I'd like to ask if you can please while you are reading my letter, can you try to
put yourself in our shoes? A parent's perspective?

I am sharing with you my familys life on the sex offender registry. Since my son
has been on the registry it has been detrimental to his life and his future. The
emotional and mental toll it has inflicted not just to my son but his parents and
siblings as well. It has had a compounding negative impact on each of us.

The registry is already difficult enough to comply and understand without
adding or tweaking the specifics. It contributes to mental and social anguish,
financial difficulties, weakening family bonds, residence hurdles, emotional
suffering, hinders them from being a contributing member of society, and
gives a false sense of security to public safety. Which is the main reason why
the registry was created. Additionally putting the offender and his family at risk
and in danger of public vigilantism due to personal details being available to
the general public.

When an individual is required to register as a sex offender, their family is
inadvertently required to register if they reside together. As in our case, my
son continues to live with me, his dad and two younger siblings. That is how
my family ended up on the registry. There is no other option than to support
our son 100%. We could not abandon him especially at a time such as this.

This has greatly put my family under extreme duress. I was diagnosed with
PTSD after the FBI raided our home with a search warrant. Suffering from
PTSD and the aftermath was excruciating. Then came the paranoia and
depression once my son was registered as a sex offender. It took me years to
be comfortable in my own home and to come to terms with everything that
had taken place. I still worry and fear for my sons and family's well being and
safety. I'm plagued with nightmares that are true to life. In regards to my other
children who reside with us, they are being punished by the restrictions that

their brother has to abide by. The registry being accessible to the general public has been detrimental to their daily lives and a form of punishment inflicted upon them.

Both of my youngest children were teenagers at the time that my oldest son was put on the registry. It's hard enough during those years struggling to find oneself. Those struggles exacerbated since their brother has been added as a registered sex offender. It creates hardships and stigma upon the entire family. The harsh restrictions have made our lives a constant struggle. A struggle, that we cannot overcome.

During his presentencing, the judge ordered my daughter to be removed from our home until his hearing. She was 13 and just starting middle school. Already a challenging time for a young girl. She went through a very dark time of confusion, sadness, and fear. She was terrified of her brother being sent to prison and the uncertainty of it all. Thankfully, she was allowed home immediately after his sentencing and he was put on the registry. She was constantly worried her friends and classmates would find out her brother was on the registry or be a target for vigilantism. And even now, 5 years later she still worries about that and her brother.

As per the restrictions, he wasn't allowed around anyone under 18. Which meant my younger kids couldn't have friends over. He wasn't allowed at family gatherings for holidays etc. He wasn't allowed to attend any school functions of his siblings. He wasn't allowed at their high school graduation commencements.

Family vacations were cancelled because he couldn't leave the state, couldn't go camping, attend amusement parks or even go to the movie theatre, library or attend out of state funerals. Which sadly, he couldn't attend the funeral of my 12 year old niece who had committed suicide because it was in Florida.

It's important to note because his crime involved a computer, he was not allowed internet access. So that meant, my school age kids who had homework and some required internet access, were forced to find other means for homework completion. In addition, the internet is no longer considered a luxury but a necessity.

This has impacted my children's relationship in a negative way and has caused a major rift between them. As a parent it's heart wrenching at the decisions and choices we must make. Sometimes it feels no matter the choice we make, one of our kids will be hurt as a result.

When lawmakers and judges state that being listed on the registry is not an added or another form of punishment, that statement is completely false and

unfounded. And from my familys and my sons standpoint, the registry is punitive punishment for the registrant and his family.

I look at this man, my son,  I feel such a profound sense of loss for that little boy with the wide toothy smile that I watched grow into a caring, intelligent and articulate young man. A young man full of ideas for his future. All the hopes and dreams I had for my son, GONE!

Because you know as well as I do, life as he knew it is a distant memory. A life on the registry is no life.

Numerous restrictions and obstacles. With that said, everything that a person needs to survive will be twice as hard for him to achieve. It's detrimental to his quality of life.

His intelligence astounds me and that would have allowed him to accomplish anything. He wanted to earn a master's degree but has given up on that because it seems pointless because his career options are zero.  Only to be stripped away by the registry because of the stigma it creates within society. Which in turn makes every aspect of life even more difficult to navigate and maintain.

Forget about trying to succeed or excel in life or finding a decent place to reside. Or getting into a relationship, having family support or keeping friendships. Or traveling on vacations or simple privacy. Allowing public access automatically renders that offender a pariah and a leper. It erases all that the person accomplished or the positive aspects of their life.

As we all know there are conflicting arguments on whether the registry is another form of punishment from both sides, those who oppose the registry and those who are in favor of the registry.

 It's important to note, my son suffers from a developmental disability, Asperger's Syndrome which is on the Autism Spectrum.

Among the difficulties faced by young persons afflicted with Asperger's Syndrome (AS) and their families is the misinterpretation of the atypical behavior of the AS patient as dangerous and criminal. AS, defined in DSM-IV, is an "Autism Spectrum Disorder" (ASD) typified by extreme social and emotional immaturity, the inability to "read" others or respond appropriately in social settings, lack of intuitive awareness of social/moral/legal constraints, and intense and narrowly directed repetitive activities. These features combine to create a risk of engaging in behavior offensive toward others but with no offensive purpose. These individuals tend to have the technical skills for computer use, to which they gravitate because, unlike social interactions which are unpredictable, whimsical, and semantic-guided, computers are

predictable, logical, and syntax-guided. These are intellectually intact people,
with good computer skills but extraordinary brain-based naivete, acting in
social isolation, compulsively pursuing interests which often unknowingly take
them into forbidden territory. Accessing child pornography is not currently
known to be a frequent behavior of young persons with AS, but enough cases
have arisen to demonstrate the need for prosecutors to inform themselves of
the condition and adopt a policy of restraint in the investigation and
prosecution of such cases. Given the lack of social adaptation on the part of
AS patients, interest in pornography as a means to explore ideas of sexuality
and romance is expected.

The exploration of this material on the internet or peer-to-peer networks will
expose AS patients to child pornography which may arouse their curiosity. At
these times AS is directly involved in the individual's obliviousness to the
social and legal taboos surrounding child pornography, and the inability to
intuit that the visual depictions are the product of any kind of abusive
relationships. This behavior is not predictive of future involvement with child
pornography or offenses against children. There is nothing inherent in Autism
Spectrum Disorders, such as Asperger's, to make individuals inclined to sexual
deviance of any kind. Their apparently deviant behavior is perhaps best
understood within the diagnosis of "counterfeit deviance," as defined in the
DM-ID. ("Diagnostic Manual — Intellectual Disability (DM-ID): A Textbook of
Diagnosis of Mental Disorders in Persons with Intellectual Disability") Persons
with AS are far less likely to be predators than victims, because of their naivete
and ineptness in interpreting or deflecting the advances of others, and their
inability to initiate social contact with others or effectively direct or manipulate
any social encounter.

Asperger's Syndrome is a lifelong disability which on its own creates
substantial hurdles for the patient. Criminal prosecution, conviction and the
typical sanctions imposed in such cases are not necessary to protect the
public in the case of an AS patient, but they are imponderable harsh, cruel and
debilitating to persons with AS and their families on whom they are
dependent. Generally these individuals are not a threat to society: it's the
other way around. AS patients are frequently the target of abuses, such as
bullying, often from poorly chosen "friends."

With this in mind, we suggest that prosecutors adopt the following principles
when confronted with those who suffer from Asperger's Syndrome are found
to be involved with child pornography.

These principles should be utilized when crimes are committed by an
individual with Aspergers Syndrome.

AR-00002394

Young persons with Asperger's Syndrome (AS), despite average or higher
intelligence and academic performance, have the social and emotional skills of
children well below their own chronological age, and well below the minimum
age for criminal prosecution in federal and state courts. AS individuals are
neurologically impaired in their ability to appreciate the social/moral/legal
unacceptability of their conduct or to intuit why the conduct is unacceptable;
these are capabilities which state legislators and Congress presumed to
adhere to in the general population to whom the criminal laws apply.

In an interrogation setting the AS individuals may appear deceptive because
of deficits in communication skills, such as the inability to make normal eye
contact. At the same time they may in fact be over compliant with suggestions
made by police officers. AS impairs the ability of offenders to respond with
expressions of remorse to which prosecutors and judges typically look for
reassurance in considering alternate dispositions of criminal matters.

AS is not a condition related to any sexual paraphilia (e.g. pedophilia) and is
not a precursor thereto. Usually little more than giving explicit instructions is
needed to prevent recurrence of the behavior. As persons with AS age, they
may become better adapted and may present different behaviors than in their
youth.

Prosecutors should take AS into account in determining whether to target,
prosecute or seek a conviction in an apparent case of possession of child
pornography.

Persons with AS experience lifelong difficulties. Young persons with AS are
not able to live independently, and need to live with their families – their
parents and siblings. Therefore the sex offender registration and residency
restrictions arising from a child pornography conviction would have a
cumulative and disastrous effect in these cases, and on more uninvolved
person, than in other cases involving neuro-typical adults.

Prosecutors should be encouraged to defer criminal prosecution in cases
involving young first offenders with AS who have no history of directly
offending against children, or having produced or distributed child
pornography, no clinical indications of pedophilia (other than accessing child
pornography) , nor history of prior offenses involving child pornography.

Prosecutors should encourage therapeutic intervention in cases of suspected
child pornography use by such individuals, and utilize probationary periods
and deferred prosecutions to monitor compliance before considering actual
prosecutions in such cases.

AR-00002395

The Department of Justice and state prosecutors should keep data on the incidence of criminal investigations involving persons with AS and the manner in which such cases are resolved.

Expert AS resources should be sought out in local communities to assist law enforcement officers and prosecutors in understanding AS and evaluating the appropriateness of such cases for prosecution.

Unfortunately, these alternatives and recommendations were not available to my son during any of the legal process. A diversions program or opportunity for expungement would be a vital alternative in situations such as these.

Site references that explain in detail the disorder as well as how an individual becomes involved in these types of crimes.

https://www.aane.org/aspergers-syndrome-and-the-criminal-law-the-special-case-of-child-pornography/

https://www.aane.org/principles-for-prosecutors/

https://www.iannfriedman.com/blog/2020/april/the-frightening-intersection-of-child-pornograph/

My son was nineteen years old when he was charged with possession of child pornography and use of a computer to commit a crime. At twenty years old, he was convicted and sentenced to incarceration, probation, and 25 years on the registry. In addition to being on the registry, he has other forms of punishment such as difficulty finding a job, housing limitations, public stigma, and family hardships just to name a few.

That said all the forms of punishment I mentioned above are not limited to just the registered offender but the family as well. Unfortunately, I speak from experience.

Again, please for a moment look at it from mothers or father's perspective.

Helplessly, I watched my son's life and future vanish before my eyes. Now, my only hope is that we can make it through this hell. The most God awful, gut-wrenching, heartbreaking moments of my existence. If you are a parent and have experienced a moment in your life where your child's future hangs in the balance and you have no control of the outcome then you can relate in some form or another.

Once he was released from jail he came back home to live with me, his Dad, a younger brother, and sister. Soon after, we had to move from the home we were renting.

Due to the residency restrictions, we had a difficult time trying to find a house to rent. We were giving up hope on finding a place and were preparing ourselves to be homeless. He couldn't live within 1000 feet of a daycare, a church playground, a school, etc.

In terms of the employment struggles, he was denied work at several businesses and fired from two jobs. The available jobs are extremely limited and low wages. He was humiliated by coworkers and then terminated.

In regards to the public stigma and vigilantism, my son and family have experienced it firsthand from strangers, friends, and neighbors.

While my son was waiting to be sentenced, he was placed on house tether with orders from the judge of the provisions he was to follow. He had to quit his job of two years because it was within 1000 feet of a high school and inform his manager the reason.

He was restricted from video consoles, computers, smartphones, and the internet. The restrictions included the entire family. With the computer and internet restricted to the entire household, it was very hard for my other kids to complete their homework etc. At a time where computers and internet are a basic utility. A big portion of school work is done through Google. All the family and personal computers, laptops, tablets and game consoles were removed from the home per court order. To me this is a form of punishment to my son and the entire family.

After incarceration, a registered offender is ordered to find employment, a residence, pay court fines, update with police regularly, adhere to strict and vague restrictions and hope to be able to reintegrate back into life and society and become a productive member of society. How in the hell are they supposed to do that with everything and everyone stacked against them?

PLEASE LOOK AT IT FROM A DIFFERENT PERSPECTIVE?

It's nearly impossible for a registered sex offender not to end up back in prison. If they have no support or family, then you might as well not even release them because they are set up to fail from the start.

I realize society as a whole does not care about a registered sex offender or my son. However, I never in my darkest fears could of imagined my son on the sex offender registry. It can happen to any parent, brother or sister.

At the rate of people being added to the registry daily, for various offenses in Michigan alone, the chances of someone you know or love will be on that list. The chances are many parents will know my heartbreak and fears as well as my sons. The registry is needed in my opinion but it is in dire need of reform. It

AR-00002397

should be limited to certain offenses and offenders. Besides, the tier system needs to be done away with or revamped. The tier system is not even close to being effective or helpful in determining real threats to society.

Before my son was charged, he had graduated high school. In his 19 years not one issue with the law or disciplinary actions from the school. Not once. Because of his intelligence, the sky was the limit but that is no more.

He has been on probation for nearly five years. I'm proud to say, he has abided by every rule of his probation and the registry. However, it's not very often that an offender does not break probation and not because they reoffend with a similar crime but from not having a job, missing curfew by 10 minutes, failing to update a vehicle by a day or two, or having no place to live, statistically speaking.

To propose this expansion in light of the fact that only a few states have substantially complied and NONE in full compliance with the Adam Walsh Act since 2006 is a brilliant indication of failure especially since the numbers began to decline in the early 1990s.

A known flaw in the design involves the transfer of criminal code in the state to the SORNA designed codes. Some are shown as Tier III when their offense falls into the Tier I category. For instance, my son is considered a Tier II, and his crime is listed as violent. Although, his crime is child pornography possession and use of computer to commit crime.

Over and above the Department Of Justice minimum guidelines registered citizens are also held accountable for state, county, and municipality requirements.

It creates and contributes to the systems' bureaucratic tangles and snags. The registration handicaps rehabilitation and can hinder the offender from being a productive and contributing member of society. In addition to the hindrance of one trying to move forward in life without a lasting negative impact.

It can inadvertently destroy families. The registry has the potential to cause harm to the offender and the family alike because of the detailed information that the offender is required to report and that is available to the public.

Unfortunately because of the public having access to the registry and my son's detailed information, both my son and my family have been personally affected by public vigilantism.

My son resides with me, his father, a younger brother, and sister. Allowing the public to have access to his home address, work address, vehicle license plates, and descriptions is not only negligent but also dangerous to my son's

safety and anyone else who resides at that address or a passenger in his
vehicle or my vehicle from retaliation from unknown vigilantes.

Some will argue that the registry is not punishment but a civic duty. However,
my son was incarcerated and served his time. He completed mandated
counseling sessions and voluntary counseling sessions. He is into his fourth
year of probation and on the registry.

There are documented cases of retaliation against registered offenders and
their families by unknown vigilantes. In addition to public Facebook vigilante
groups. This in itself is problematic.

The stigmatization of registered sex offenders is so pervasive that it extends
even to individuals suspected of having committed a sexual offense and their
families.

I'm sure you're aware of the statistics and case study results.

A recent study compiled of open-source news reports involving vigilantes who
targeted individuals because of their status as a sex offender (SO) or their
suspected involvement in a sex offense.

There is a Sex Offender Vigilante database which includes 279 separate
incidents in vigilantism against SOs, ranging from the dissemination of
unsanctioned fliers, Facebook posts to murder.

In my son's case, he was targeted by a disgruntled store patron whom he
didn't know.  My son was doing his job and refused to serve a man trying to
pass off counterfeit bills on two separate occasions. The store owner called
the police but the man was not charged due to lack of evidence. This man
went to social media and publicly threatened my son.

Allowing the public access to the registry does not mean that only law abiding
citizens will be the ones who utilize it. Anyone can access the registry, even
criminals and vigilantes.

There is little value to public safety for this costly process, it does more harm
than good.

SORNA singles out a specific category of offenders for unfair, unconstitutional
punishment. Which is a violation of our nations amendments according to the
Constitution.

While the Department of Justice cites public safety as its rationale for
continuing to enforce the overreaching requirements of SORNA, the program
has metastasized, defacing some of our most treasured rights: the right to due
process, (5th and 14th amendment) the right to be free from double jeopardy
and the right to avoid cruel and unusual punishment, (eighth amendment).

SORNA requirements punish ex-offenders by inflicting upon them tangible, secondary punishments like the inability to qualify for housing and increased difficulties securing employment.

These secondary punishments effectively banish ex-offenders to a modern leper colony by not only removing re-entry resources but also by affirmatively ostracizing those attempting to rebuild a life after incarceration.

In addition to violating double jeopardy, repeated punishments violate the Eighth Amendment by imposing cruel and unusual punishment. The government is prohibited from imposing a criminal sentence that is either vindictive or far too harsh for the crime committed. Incarceration is intended to be a punishment and a deterrence, so any subsequent punishment can only be vindictive.

After incarceration, an ex-offender's privacy is significantly diminished by the requirement to report one's name, address, photo, employment status and provide a DNA sample.
This ongoing imposition of a known and uncontrollable risk of public abuse of information from the sex offender registry, in the absence of any link to an objective risk to the public posed by each individual sex offender, has resulted in and continues to threaten [sex offenders] with punishment disproportionate to the offenses they committed."

Protecting the constitutional rights of everyone, even those convicted of sex offenses, is of the utmost importance for protecting our freedom. Therefore, both legislators - by way of developing and amending laws - and judges - via hearing arguments and creating case law - must re-examine SORNA in order to preserve liberty and uphold the Constitution.

Current registries are too inclusive, are overly restrictive, and end up hurting some of those they are intended to help.

With some common-sense reforms, sex-offender registries could become far more effective in improving public safety.

Lawmakers and public-safety advocates should consider reforms to limit the number of people in the registries. Though it may seem counterintuitive, they must roll back some of the restrictions placed on those who register if we are to have any hope of re-integrating them into society.

We must do more to keep the most dangerous offenders out of schools, and we must monitor the most potentially dangerous criminals more closely and even increase the use of the most severe sanctions (like lifetime civil commitment) that are currently available.

Registration of sex offenders can be an effective law-enforcement tool, but over-registration and overly restrictive rules on all those who are registered may do more harm than good.

According to the Bureau of Justice Statistics' overview of sex offenders, most sex offenders targeting children have some sort of prior criminal record. Only about 15%, however, have been convicted of another sex offense, and only about a third of these prior offenses involve children.

Among violent sex offenders, a category that includes all those who have sex with someone under the age of consent, the BJS data show that over 40% are arrested again within three years for some crime, but only about 5% actually commit another sex offense within three years. Indeed, just over 3% of released child molesters are arrested within three years for committing another sex crime against a child.

When non-violent sex offenders  —  a category that includes those who deal in child pornography and expose themselves in public  —  are included in the dataset, recidivism rates drop substantially. And by all

accounts, the recidivism of sex offenders is well below that of felons in general.

According to scholar Emily Horowitz, roughly 90% of sex offenders know their victims. By most estimates, about a third of victims are family members of their abusers and most of the rest are victimized by someone else their parents know.

Parents wanting to protect their own children should worry much more about their own friends and relatives than random strangers.

The correlation between widespread sex-offender registration and falling rates of sex offenses does not establish that the offenses have declined *because* of registration. The falling rates of rape closely track a decline in all forms of violent crime. One could name any number of theories explaining the causes of the overall drop in violent crime.

The best research on the efficacy of sex-offender registration *does* show positive effects, in terms of reduced sexual offenses. What appears to be the single most comprehensive, robust, and recent review of the national data, a 2011 study published in the *Journal of Law and Economics*, finds registration reduces the number of sex offenses by about 13%, after controlling for a number of relevant variables.

Most important, virtually no well-controlled study shows *any* quantifiable benefit from the practice of notifying communities of sex offenders living in their midst.

No study of the practice has shown notification, as opposed to registration, to have deterrence value in preventing sex offenses.

AR-00002402

The literature does show overwhelming evidence of large costs to
neighbors in the form of reduced real-estate prices. A major study
published in the *American Economic Review* measured an average 4%
loss in the value of homes within a tenth of a mile of a sex offender.

While there are some anecdotal cases of community notification helping
to catch individual sexual predators, it's not clear that any sex offender
who re-offended has ever been caught by neighbors solely because of
public notification of his presence. In other words, the biggest
quantifiable cost of sex-offender notification appears to be borne by the
neighbors it is intended to help, with no measurable improvement in
public safety.

In a time of stretched budgets, effectively monitoring truly dangerous
sex offenders is going to require pruning the registries.

People looking at the system of registration are thus left with a paradox:
It seems to do some good, but many of its features also do a great deal
of harm.

Ending the registries would be both unwise and hugely unpopular, but
responsible policymakers should focus on some sensible ways they
could be improved.

Making the registries more effective should start with reducing the
number of offenders listed. Removing those who do not pose any
particular public danger would both remedy the injustices done to them
and improve public officials' ability to moniTor effectively.

Laws that fail to take these obvious realities into account impose huge
consequences on juveniles convicted of sex offenses: the threat of
being banned from living with their own siblings, being forced into

foster care, and expulsion from their high schools (the same schools doing such a poor job of ensuring that pedophiles don't get hired). None of these collateral consequences does any good for society, for the offenders, or for their victims.

It's unfair and unjust to brand all sex offenders as social pariahs for the rest of their lives, particularly since they have lower recidivism rates than other types of felons.

Making it impossible for sex offenders to live in most places contributes directly to their becoming homeless, which in turn makes them harder to track — and harder to keep away from potential victims. Far-reaching residency bans, although politically popular, simply do not pass the most basic cost-benefit test.

Every dataset makes clear that children are far more likely to be sexually abused by family members than by strangers who happen to live near their school or daycare center. Judges, police, and probation officers can and should still be able to require many classes of sex offenders to stay off of school grounds during school hours and avoid other areas where children congregate (something modern GPS-monitoring can assure cheaply and easily), but blanket residency restrictions simply do not serve any valid public-safety purpose.

Forcing convicted sex offenders to the margins of society also tends to remove them from the orbit of family, friends, and houses of worship, making it more likely that they will turn to crime again. For instance, it's difficult to see why sex offenders should be automatically denied commercial driver's licenses or barred from working as insurance agents. Aside from obvious restrictions on working with children and perhaps carrying out certain medical tasks, most restrictions on sex

offenders should be tailored to fit individual circumstances and levels of
dangerousness.

Restrictions on professional licensing should be set to fit the specific
sex offense, rather than applied to every person convicted of any
sexually oriented crime.

Moreover, the lack of any evidence that public notification reduces
crime, coupled with its negative effects on property values, counsels in
favor of restricting the practice.

Notification helps attach an unnecessary stigma even to those
convicted of only minor sex offenses.

A person who sexually groped a stranger once has done something
wrong and perhaps traumatizing, but he does not pose the same public
danger as a murderer, who is not required to notify his neighbors of his
prior conviction. Yet, because of registries, he faces a greater public
stigma than a murderer.

Eliminating public notification completely would face huge political
hurdles and, given the ease with which information already on the
internet can be preserved, is probably impossible anyway.

The most practical change might be limiting mandatory community
notification and internet recording to actual predators over the age of 21
who have sexually assaulted young children. Even in these cases, the
value of notification likely comes more from the fact that the public
wants it than from any demonstrable benefit it actually provides.

On the other hand, efforts to keep sex offenders out of schools ought to
be enhanced and improved. Finding the resources to do this would be

AR-00002405

reasonably easy if much of the excess currently cluttering sex-offender registries were removed. In this context, a new, bipartisan proposal by Senators Joe Manchin and Pat Toomey deserves serious consideration.

The bill would set federal standards to prevent child predators from working in schools and would penalize states where districts try to "pass the trash," or counsel sex offenders to resign quietly before they are sent along to other schools with positive letters of reference.

For serious offenders, who constitute the majority of those currently on sex-offender registries, the practice of registration offers a deterrent value that appears effective at reducing sexual assault and child sex-abuse rates.

Three careful and deliberate policy changes could help law enforcement deal more effectively with these truly bad actors: increased mandatory outpatient treatment; increased use of indefinite civil commitment for the worst offenders; and more targeted focus of federal resources on serious, mostly internet-based child predators and other serious sex offenders, rather than the child pornographers who currently make up the lions' share of the federal case load.

Interestingly, after adjustment for a variety of variables, outpatient treatment outside of secure facilities appears to work even *better* than forcing treatment behind bars. In fact, a number of studies show that treatment for sex offenders behind prison walls is counterproductive. This suggests it may be better to focus prison sentences for child molesters almost entirely on deterrence and punishment, while augmenting treatment efforts outside the jailhouse walls.

For those who fail to participate in treatment programs, a version of the rapidly spreading "swift and certain sanctions" regimes — which

provide short, often immediate jail stays every time an offender slips
up — may provide an incentive to stick with the program and receive
treatment.

They have worked to encourage many drug addicts to break their
habits, and they may help pedophiles in the same way. Many offenders
who are removed from registries or kept on law-enforcement-only
registries might continue to be subject to long-term GPS monitoring to
keep them away from schools and other areas where they might pose a
threat.

Some sex offenders may be resistant to all treatment and unable to
control their urges to molest children. In these cases — which
comprise a small but non-trivial percentage of sex offenses — moves
toward increased civil commitment may make sense.

All states allow for civil commitment of the dangerous mentally ill in
hospital-like settings when the individual is deemed to pose a risk to
himself or others. Currently, 20 states and the District of Columbia have
statutes that provide for an additional level of review following the
release of certain sex offenders. A small number of offenders at very
high risk of offending again can, under these regimes, be detained
indefinitely in hospital-like settings.

Such treatment, of course, is advisable only as an absolute last resort.
But just as it's possible to detain a mental patient who experiences a
drive to kill or maim others, it should also be possible to detain
someone in situations where expert testimony convinces a court that
they will commit sexual violence if released. A mandatory review
process for certain grave sex offenses may be desirable.

AR-00002407

In exceptional cases, civil commitment of a tiny number of particularly
dangerous juvenile sex offenders (who might otherwise be released
with no public record) might be justified as well. Indefinite civil
commitment is a *very* powerful tool to put in the hands of the state, and,
certainly, it carries a risk of being overused. But it should not be ruled
out in all cases for sex offenders, and its use likely deserves expansion.

The most difficult cases to deal with involve individuals found guilty of
possessing child pornography. It goes without saying that any use of
sexual materials involving children deeply offends social norms, and its
mere possession ought to be subject to significant criminal sanction.

Despite efforts of many left-leaning researchers to minimize the
problem, furthermore, it is a truly serious one that has grown with the
internet. Indeed, a recent study of the "Dark Web" conducted by scholar
Gareth Owen found that roughly 80% of users visiting the secret
websites that use untraceable Tor network technology were seeking
child pornography.

But current laws involving child pornography — often prosecuted
under federal law — may need to be updated. Child-pornography laws
were written largely with the idea of prosecuting those who distributed
magazines, print photographs, videotapes, and celluloid film strips
depicting minors in sexual situations.

Today, nearly all child pornography gets shared on peer-to-peer
networks that make all consumers "distributors" simply by virtue of
participation.

The average sentence for child pornography is now nearly eight years,
longer than the average sentence for rape, which is just over five years.
Whatever harm looking at a picture of a child in a sexual situation

causes (and it's significant), it is probably not greater than the harm resulting from actual sexual assault.

Nonetheless, the BJS finds that child-porn offenses make up 70% of the federal sex-offender registry caseload.

Rather than try to effect a change in federal law or prescribe punishments federally, it would be better to focus federal resources on the greatest dangers. These include human-trafficking rings and actual predators who lure children across state lines.

Meanwhile, states should be encouraged to take on a greater share of the child-porn caseload and decide punishments based on local attitudes and beliefs. In any case, mere possession of child pornography should remain a reasonably serious crime, albeit one that is dealt with, for the most part, on the local level.

The practice of requiring sex offenders to register with law-enforcement officials is effective and has contributed to a sizable drop in sex offenses committed against children in the United States.

Notifying the public of sex offenders, on the other hand, is ineffective and should be limited if not eliminated. The registries that exist, furthermore, do tremendous harm to some people who, although clearly guilty of various wrongs, do not pose a significant threat to children or anyone else in society.

The nation needs to reconsider its headlong rush into ever-expanding sex-offender registration and target the registries more carefully at the most genuinely dangerous individuals. Certain petty restrictions should be dropped and many individuals should be deleted from the registries in order to minimize unnecessary damage to individuals and

communities and to allow law enforcement to focus on the most dangerous offenders.

In certain cases, serious punishments, including indefinite civil commitment for certain offenders, also ought to be expanded.

My son was nineteen years old at the time when he was charged with possession of child pornography and using a computer to commit a crime.

It's important to note, my son was diagnosed with Aspergers Syndrome, a neurodevelopmental disorder characterized by significant difficulties in social interaction and nonverbal communication, along with restricted and repetitive patterns of behavior and interests. They are considered high functioning on the Autism Spectrum Disorder.

The chronological age doesnt coincide with their maturity level because of their seriously delayed social maturation level, sexual and social-emotional maturity.

Please keep this in mind, I like any other parent who wants to see my children thrive, be productive, happy and safe. To know that they will be ok even after I am gone. My son committed his crimes at twenty years old. He has served his sentence and registered for 25 years for a non-violent sex crime.

I'm not arguing the fact that he was punished and continues to be. Anyone who commits a crime should be punished but to what degree? The severity of punishments should be individual to each crime not grouped together. Although, the reality is he is stigmatized for life. With that said, life is a constant struggle and not easy by any means.

My son began his adult life as a registered sex offender because of the crimes he committed. He served his sentence and is registered for 25 years. Although, I know he's stigmatized for life.

The registry rules and restrictions make life even more difficult not to mention hard to understand. Even law enforcement and government agencies aren't on the same page with the accuracy of the registry contents. Then it's ever changing this rule and this restriction.

So as a mother I worry, my son will never have a chance to redeem himself, live a productive and thriving life, feel at ease in his own home, find a career worthy job if the registry rules keep changing and potentially keep him a registered offender longer. I feel helpless and hopeless. I am hoping you will be the change we need, you will be the reform that will give my son a chance to live a productive life. A chance for my family to move past this and breathe again.

Thank you so much for your time and consideration in this very important matter.

With respect,

Angelina M. Hamilton

te Name: VERGEL OLIVER MATILES
ter Number: 27687-018     Rm# C~927
d States Penitentiary
Box 1000
sburg, PA 17837

DLP

HARRISBURG PA   171

30 SEP 2020   PM 1   L



INSPECTED 28

X-RAYED TO: DAVID J. KARP, SENIOR COUNSEL
                    OFFICE OF PUBLIC POLICY
OCT 0 8 2020        U.S. DOJ
DOJ MAILROOM     WASHINGTON D.C. 20534

X-RAYED
OCT 08 2020
DOJ MAILROOM

INSPECTED 21

20534-



AR-00002412

MON. 9/28/20 3P.M.

DEAR MR. KARP,

HELLO SIR! GOOD MORNING/AFTERNOON, I'M WRITING THIS LETTER IN SUPPORT OF DOJ & YOUR OFFICES' CHANGE OF SORNA REGULATIONS. I WISH THAT THE CHANGE WILL BE FAIR & COULD HELP & IMPROVE THE PUBLIC SAFETY IN A MOST FASHIONABLE WAY WITH FACTS & RESEARCH NOT LEAVING THE REGIS-TERED CITIZENS HANGING IN A BALANCE WITHOUT ANY RESOURCE & HELP. SORNA IS DESIGNED TO PROTECT THE PUBLIC ESPECIALLY THE VULNERABLE ONES FROM THOSE CONVICTED OF HANDS ON CRIMES AND SUPPOSE TO WORK, BUT THE SYS-TEM ITSELF IS SET UP FOR FAILURE, IN ALL GOOD FAITH, THAT IS NOT WHAT WAS INTENDED TO HAPPEN & MOST CURRENT SEX OFFENSE LAWS ARE TOO BROAD & THEY GO WAY BEYOND WHAT WAS INTENDED, IT IS CLEAR WE NEED SOME CHANGES OR BETTER YET, WE NEED A COMPLETE RE-THINKING & RE-DOING IT BASED ON RESEARCH THAT WE HAVE. SOME ASPECTS OF THE CURRENT SEX OFFENDER REGISTRIES IN THE UNITED STATES HAVE BEEN WIDELY CRITICIZED BY CIVIL RIGHTS ORGANIZATIONS HUMAN RIGHTS WATCH & THE ACLU PRO-FESSIONAL ORGANIZATIONS ASSOCIATION FOR THE TREATMENT OF SEXUAL ABUSERS (ATSA), AND ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, PO-LITICIANS, REFORMIST GROUPS LIKE NATIONAL ASSOCIATION FOR RATIONAL SEX OFFENDER LAWS (NARSOL), WOMEN AGAINST REGISTRY (WAR), USA FAIR, CHILD SAFETY ADVOCATE PATTY WETTERLING THE CHAIR OF NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN (NCMEC), & LAW ENFORCE-MENT OFFICIALS THINK THAT THE CURRENT LAWS OFTEN TARGET THE WRONG PEOPLE, SWAYING AWAY FROM HIGH-RISK SEX OFFENDERS, WHILE SEVERELY IMPACTING LIVES OF ALL REGISTRANTS & THEIR FAMILIES ATTEMPTING TO RE-INTEGRATE TO SOCIETY, VIRTUALLY NO STUDIES EXIST FINDING U.S. REGISTRIES EFFECTIVE, PROMPTING SOME RESEARCHERS

AR-00002413

—2—

TO CALL THEM POINTLESS, MANY EVEN CALLING THEM COUNTER PRODUCTIVE, ARGUING THAT THEY INCREASE THE RATE OF RE-OFFENSE, THEY DO NOT KEEP ANYBODY SAFE & DO MORE HARM THAN GOOD. FINALLY, THE RECIDIVISM RATES FOR THOSE WHO HAVE COMMITTED A SEXUAL OFFENSE AND HAVE BEEN THROUGH SEXUAL OFFENSE TREATMENT ARE VERY LOW, THEY ARE DRASTI-CALLY LOWER THAN THE RATES FOR REPEAT OFFENDERS/OFFENSES FOR THOSE COMMIT-TING BURGLARIES AND LARCENY, ALCOHOL & DRUG-RELATED OFFENSES ETC. PEOPLE WHO CANNOT FIND HOUSING BECAUSE THEY HAVE COMMITTED A SEXUAL OFFENSE WILL END UP WALKING THE STREETS OF OUR COMMUNITIES, LIVING, URINATING, & DEFECATING NEAR AND IN OUR PARKS, STREAMS, AND RIVERS AND LIVING IN THE HOMELESS SHELTERS OF OUR COMMUNITIES, WHERE DRUGS, ALCOHOLISM, THEFT, MURDER, AND YES, OPPORTUNITIES TO SEXUALLY OFFEND ABOUND. WE NEED A SYSTEM THAT WILL WORK FOR ALL OF US, NOT NEGLECTING SAFETY MEASURES. IN MY OPINION MAKING THE SEX OFFENDER REGISTRY PRIVATE WILL RESULT IN REGISTRANTS NOT BEING DISCRIMINATED AGAINST FOR EMPLOYMENT / HOUSING & LESS LIKELY TO EXPERIENCE BULLY & HARASSMENT. I BELIEVE THAT THERE SHOULD BE A WAY OFF REGISTRY FOR EVERY ONE WHO COMPLETES TREATMENT & REHABILITATION BECAUSE PUNISH-MENT SHOULD END ONCE THE PERSON HAS PAID HIS / HER DEBT TO SOCIETY. I HOPE & PRAY THAT YOUR OFFICE & THE D.O.J. WILL LISTEN & WEIGH EVERYTHING WHAT THE RESEARCHERS ARE SAYING ABOUT THE FACTS & THE DESTRUCTIVE NATURE OF SORNA, AMONG THOSE AFFECTED REGISTRANTS & THE FAMILIES. I UNDERSTOOD THAT THE GOVERNMENTS' JOB IS TO PROTECT THE PUBLIC & I HOPE THAT IT WILL DO SO FOR THE BEST INTEREST OF THE PUBLIC & THE REGISTRANTS, A LAW THAT IS FAIR & WILL WORK FOR BOTH PARTIES. I HOPE THAT MY VOICE ALSO COUNT & CONSIDER THE POINTS

AR-00002414

—3—

I'M MAKING TOWARDS A BETTER SORNA THAT WILL WORK FOR THE GOOD OF ALL ITS CITIZENS NOT NEGLECTING ANYONE BECAUSE OF NON-FAC-TUAL RESEARCH. ENCLOSED IS A PAPER I ATTACHED TO SHARE WITH YOU ? SOMETHING TO READ ? PONDER ABOUT THE RESEARCH, FACTS, ? AFFECTS OF SORNA ITSELF TO A REGISTERED CITIZEN. I THANK YOU FOR YOUR TIME ? EFFORT UPON READING MY TINY VOICE, I HOPE TO HEAR FROM YOU ON THE UPDATED SORNA CHANGES. MAY GOD CONTINUE TO BLESS THE WORKS OF YOUR HANDS ? THE DESIRES OF YOUR HEART, TAKE CARE COVID-19 FREE! ? MAY GOD BLESS AMERICA!

WITH MUCH RESPECT,

VERGEL OLIVER MATILES

Reg# 27687-048          RMA C-327

AR-00002415

zger
74 Corby St
raha NE 68116

OMAHA NE 680

13 OCT 2020 PM 4 L

Energy Awareness Work



FOREVE

INSPECTED 28

INSPECTED 23

X-RAYED

OCT 2 1 2020

DOJ MAILROOM

Regulations Docket Clerk, Ofc of Legal Policy
U.S. Department of Justice
950 Pennsylvania Ave NW  Rm 4234
Washington DC   20530

Re: Docket No. OAG 157

20530-

AR-00002416

Jeanie Mezger | 15474 Corby Street | Omaha NE 68116                     **Docket No. OAG 157**

October 13, 2020

Regulations Docket Clerk, Office of Legal Policy
U.S. Department of Justice
950 Pennsylvania Avenue NW, Room 4234
Washington, DC 20530

**Re: Proposed Sex Offender Registration and Notification Act (SORNA) rule changes**

My address (15474 Corby Street Omaha NE 68116) is PERSONAL IDENTIFYING INFORMATION that should not be published online. Thank you. I write to encourage you to reconsider the proposed changes.

While you are creating more ways to track and monitor people convicted of sex crimes, people **not** on the registry are committing new sex offenses and those on the registry are living law-abiding lives. That is what the data shows. You certainly know that, as well.

Why is it necessary to expand the current rules from 400 words to 3000 words? The registry does not protect the public safety in ANY of its 50+ current manifestations. Your document makes no reference to data showing how registries protect communities. Registries neither stop nor reduce the incidence of sex offenses. You don't need scientific studies to figure it out. A search of news articles about arrests and convictions for sex offenses turns up a lot of news stories, only a handful of which are about someone on the sex offense registry (SOR) committing another sex offense. The rest are about people not on the registry, most of them first-time offenders.

People who are victims of those first-time offenders are not protected by the registry and it is disingenuous to pretend that they are.

The proposed changes include new rules that vehicle information, remote communication identifiers and travel plans be reported to authorities within three days, under a penalty threat. Why?

States that collect vehicle information from registrants do not have a reduced incidence of sex offenses. States that collect "remote communication identifiers" or information about a registrant's travel plans don't either. Yet your document explaining the proposed changes says:

> "...because sex offenders may, for example, provide false date of birth information in seeking employment that would provide access to children or other potential victims."

> "...because sex offenders may, for example, attempt to use false Social Security numbers in seeking employment that would provide access to children or other potential victims."

> "...the potential use of telephonic communication by sex offenders in efforts to contact or lure potential victims."

> "...because sex offenders may reoffend at locations away from the places in which they have a permanent or long-term presence..."

Talking about "potential" actions that registrants "may" take for nefarious reasons is not the same as showing us that registrants actually take those actions for those reasons. After all, even people in the Attorney General's office "may" do any of that. Even if a sex crime does involve any of those possible actions and motivations, the crime will most likely be committed by someone not on the registry.

AR-00002417

Jeanie Mezger | 15474 Corby Street | Omaha NE 68116                    **Docket No. OAG 157**

It is not enough to *imagine* what a registrant might do and why they might do it. When anti-registry people explain why they are anti-registry, they have data to back them up. Do you have data to back up why you think registrants will behave the way you imagine?

Something that does not require imagination: People who need to report to the registry office take time off work to travel to the office, wait their turn, and return to work. In rural areas, people may need to travel long distances to reach the office, requiring a day off work.

In Nebraska's Cherry County, a registrant could easily live over 100 miles from the county seat where the registry office is located. Registrants are required to visit the registry office once, twice, or four times a year, plus when they need to report something within three days, costing employer productivity every time. You want to add the "within three days" requirement for buying and/or selling a vehicle, for creating a new email address or a new phone number, and for times when they plan to leave home for more than seven days.

Employers rightly prefer to keep people at work and yet you want to increase the number of times an employer will lose productivity. And for what? Do you have any data showing that knowing what car a registrant drives prevents sex crimes?

Every time you add a new requirement and casually attach a felony penalty to it, you put families at risk. Sending someone to prison because they didn't inform the registry that they sold a vehicle has repercussions that can echo for years: the cost to the government of incarceration, the cost to the family of losing an income, the emotional cost of losing a loved family member to incarceration, the cost to the community of losing a business owner or a valued employee. Families with someone in prison are often thrown into poverty and when that person comes home, the registry makes it difficult for him to find new employment.

The family and the community endure this not because he committed another sex offense but because…why? Because he was late to report information that has nothing to do with whether he is a danger.

If a tiny number of sex offenses are committed by someone on the registry, how do you explain limiting the freedom of the other 900,000+ registrants that lead law-abiding lives? Make no mistake; the registry does limit a person's freedoms—freedom to travel without notifying the authorities, freedom to create a new email address or change phone numbers without notifying the authorities, freedom to drive a vehicle without reporting its VIN to the authorities.

Registrants who have been adjudicated, sentenced, and punished, will return to the community. If we want to protect our communities, we should do everything we can to help them succeed. We are not safer when registrants are homeless and unemployed and yet the registry seems specifically designed for that result.

A year ago, Attorney General Barr gave a speech at Hillsdale College where he said:

> The criminal process is a juggernaut… Once the criminal process starts rolling, it is very difficult to slow it down or knock it off course.  And that means federal prosecutors possess tremendous power — power that is necessary to enforce our laws and punish wrongdoing, but power that, like any power, carries inherent potential for abuse or misuse.

Anyone who has witnessed the criminal justice system in action can testify to the devastating truth in this. He continued:

> … People facing federal investigations incur ruinous legal costs and often see their lives reduced to rubble before a charge is even filed.  Justice Jackson was not exaggerating when he said that "While the prosecutor at his best is one of the most beneficent forces in our society, when he acts from malice or other base motives, he is one of the worst."

AR-00002418