BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch
JEREMY S.B. NEWMAN (D.C. Bar. #1024112)
KATHRYN L. WYER (D.C. Bar #90023642)
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Washington, DC  20005
Tel. (202) 616-8475/Fax (202) 616-8470
jeremy.s.newman@usdoj.gov
kathryn.wyer@usdoj.gov
*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE #2 et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>U.S. DEPARTMENT OF JUSTICE et al.,<br><br>          Defendants. | NO. 5:22-CV-855-JGB-SP<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  April 28, 2025<br>Hearing Time: 9:00 a.m.<br>Courtroom: Riverside, Courtroom 1<br>Honorable Jesus G. Bernal<br>United States District Judge |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................1

STATUTORY AND REGULATORY BACKGROUND.........................................3

    I.    SORNA and 2008 Guidelines ..................................................3

    II.   KIDS Act, 2011 Guidelines, and the IML ................................5

    III.  The Rule ...............................................................................7

    IV.  Relevant California Law ......................................................11

FACTUAL AND PROCEDURAL BACKGROUND ........................................11

ARGUMENT ......................................................................................13

    I.    Legal Standard....................................................................13

    II.   This Court Lacks Jurisdiction Over Plaintiffs' Claims......................13

    III.  The Rule Does Not Reflect Improperly Delegated Authority (Count I) ..........................................................................21

    IV.  The Rule Adopts SORNA's Definition of Sex Offender (Count II) ..............................................................................25

    V.   Plaintiffs Fail to Establish a Due Process Violation (Count III).........31

    VI.  The Rule's Internet Identifier Requirement Does Not Violate the First Amendment (Count IV) ........................................36

CONCLUSION ....................................................................................40

Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion
Case No. 5:22-cv-855-JGB-SP

# TABLE OF AUTHORITIES

**Page**

## CASES

*All. for the Wild Rockies v. Petrick*, 68 F.4th 475 (9th Cir. 2023) .........................26

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858 (9th Cir. 2016) ...........19

*Barber v. Thomas*, 560 U.S. 474 (2010)..................................................................27

*Carr v. United States*, 560 U.S. 438 (2010)...................................................... 29, 30

*City of Grants Pass v. Johnson*, 144 S. Ct. 2202 (2024) .........................................34

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...............................................20

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)...................................31

*Colwell v. HHS*, 558 F.3d 1112 (9th Cir. 2009) .....................................................40

*Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003)............................................31

*Cox v. Garland*, No. CV 22-511, 2023 WL 3476996 (D.D.C. Apr. 26, 2023),
   *aff'd*, No. 23-5108, 2023 WL 7261384 (D.C. Cir. Oct. 31, 2023)........................37

*Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553 (9th Cir. 2019)...............16

*Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014)..........................27

*Dickerson v. New Banner Inst.*, 460 U.S. 103 (1983) .............................................29

*Doe v. Harris*,
   772 F.3d 563 (9th Cir. 2014)................................................. 37, 38, 40

*Gundy v. United States*, 588 U.S. 128 (2019)................................................. *passim*

*Haaland v. Brackeen*, 599 U.S. 255 (2023)..................................................... 13, 16

*Healey v. United States*, 186 F.2d 164 (9th Cir. 1950)............................................28

iii

*HSH, Inc. v. City of El Cajon*, 44 F. Supp. 3d 996 (S.D. Cal. 2014).......................36

*Jennings v. Mukasey*, 511 F.3d 894 (9th Cir. 2007) ...................................31

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) .....................................27-28

*Kildare v. Saenz*, 325 F.3d 1078 (9th Cir. 2003) ...................................31

*Kolender v. Lawson*, 461 U.S. 352 (1983)...........................................24

*L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644 (9th Cir. 2011).......................14

*Liparota v. United States*, 471 U.S. 419 (1985) ....................................24

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ...................................27

*Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010).....................................20

*Loving v. United States*, 517 U.S. 748 (1996) .........................................23

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...................................... 13, 15

*McCormack v. Hiedeman*, 694 F.3d 1004 (9th Cir. 2012) .....................................15

*Meyer v. Bd. of Med. Exam'rs*, 34 Cal. 2d 62, 206 P.2d 1085 (1949)....................31

*Mistretta v. United States*, 488 U.S. 361 (1989).....................................21

*Muthana v. Pompeo*, 985 F.3d 893 (D.C. Cir. 2021) .............................................14

*N.D. v. Reykdal,* 102 F.4th 982 (9th Cir. 2024)........................................14

*Nw. Env't Def. Ctr. v. Bonneville Power Admin.,* 117 F.3d 1520 (9th Cir. 1997)...13

*P & V Enters. v. U.S. Army Corps of Engrs.*, 516 F.3d 1021 (D.C. Cir. 2008) ......26

*Patterson v. New York*, 432 U.S. 197 (1977)........................................ 32, 33, 34, 35

*People v. Ansell*, 25 Cal. 4th 868 (2001) .................................................31

iv

*People v. Cressey*, 2 Cal.3d 836 (1970)....................................................................33

*Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825 (9th Cir. 2024).. 14, 15

*Powell v. Texas*, 392 U.S. 514 (1968) ....................................................................34

*Richards v. Newsom*,
    No. 8:23-cv-2413, 2024 WL 4812537 (C.D. Cal. Oct. 16, 2024) .......................19

*Robinson v. California*, 370 U.S. 660 (1962) ............................................................34

*Sessions v. Dimaya*, 584 U.S. 148 (2018)................................................................24

*State ex rel. Kuntz v. Montana Thirteenth Jud. Dist. Ct.,* 995 P.2d 951 ................33

*Stavrianoudakis v. FWS*, 108 F.4th 1128 (9th Cir. 2024)..........................................14

*Steffel v. Thompson*, 415 U.S. 452 (1974) ................................................................14

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)................................. 14, 15

*Takacs v. Engle*, 768 F.2d 122. (6th Cir. 1985)........................................................33

*Touby v. United States*, 500 U.S. 160 (1991) ............................................................24

*Treez, Inc. v. DHS*,
    No. 22-cv-07027, 2024 WL 4982723 (N.D. Cal. Dec. 3, 2024)..........................13

*Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023)................................27

*Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022) ..............................................19

*United States v. Alexander*, 480 F. Supp. 3d 988 (N.D. Cal. 2020) ........................36

*United States v. Bass*, 404 U.S. 336 (1971)..............................................................24

*United States v. Crowder*, 656 F.3d 870 (9th Cir. 2011)..........................................35

*United States v. Crowell*, 374 F.3d 790 (9th Cir. 2004) ..........................................31

v

*United States v. Elkins*, 683 F.3d 1039 (9th Cir. 2012) ...........................................35

*United States v. Felts*, 674 F.3d 599 (6th Cir. 2012) ................................................36

*United States v. Fernandes*, 636 F.3d 1254 (9th Cir. 2011)....................................31

*United States v. Grant*,
  No. 1:17-CR-236, 2018 WL 4516008 (N.D. Ga. July 4, 2018),
  *R&R adopted*, 2018 WL 4140870 (N.D. Ga. Aug. 30, 2018).............................30

*United States v. Grimaud*, 220 U.S. 506 (1911) ......................................................24

*United States v. Hardeman*, 598 F. Supp. 2d 1040 (N.D. Cal. 2009), ..................15

*United States v. Hudson*, 11 U.S. 32 (1812) .............................................................24

*United States v. Kozminski*, 487 U.S. 931 (1988)....................................................24

*United States v. Mattix*, 694 F.3d 1082 (9th Cir. 2012).............................................5

*United States v. Maupin*, 520 F.3d 1304 (11th Cir. 2008)......................................29

*United States v. Melgar-Diaz*, 2 F.4th 1263 (9th Cir. 2021) ..................................23

*United States v. Mingo*, 964 F.3d 134 (2d Cir. 2020)..............................................23

*United States v. Nichols*, 784 F.3d 666 (10th Cir. 2015).........................................24

*United States v. Pheasant*,
  No. 3:21-CR-00024-RCJ-CLB, 2023 WL 3095959 (D. Nev. Apr. 26, 2023),
  *appeal argued*, No. 23-991 (9th Cir. Oct. 10, 2024).........................................25

*United States v. Sherbondy*, 865 F.2d 996 (9th Cir. 1988)......................................29

*United States v. Wass*, 954 F.3d 184 (4th Cir. 2020)......................................... 37-38

*United States v. Watchman*,
  No. CR08-1202, 2009 WL 464995 (D. Ariz. Feb. 24, 2009),
  *aff'd sub nom. United States v. Begay*, 622 F.3d 1187 (9th Cir. 2010)................15

vi

*Vill. of Hoffman Ests. v. Flipside*, 455 U.S. 489 (1982) ..........................................35

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ................................................38

*Willman v. Att'y Gen.*, 972 F.3d 819 (6th Cir. 2020); ........................................9, 36


**STATUTES**

5 U.S.C. § 552a ...........................................................................................................20

5 U.S.C. § 706 ............................................................................................................13

18 U.S.C. § 1204 .........................................................................................................33

18 U.S.C. § 2250 .......................................................................................... *passim*

18 U.S.C. § 3146 .........................................................................................................33

34 U.S.C. § 20901 ................................................................................... 3, 21, 30

34 U.S.C. § 20911 ..................................................................................... *passim*

34 U.S.C. § 20912 ................................................................................ 3, 6, 16, 21

34 U.S.C. § 20913 ................................................................................ 3, 16, 21, 22

34 U.S.C. § 20914 ..................................................................................... *passim*

34 U.S.C. § 20915 ..................................................................................... *passim*

34 U.S.C. § 20916 ..................................................................................... *passim*

34 U.S.C. § 20918 .......................................................................................................21

34 U.S.C. § 20927 .........................................................................................................3

Pub. L. No. 110-400, 122 Stat. 4224 .................................................................6, 22

Pub. L. No. 114-119, 130 Stat. 15 (2016) .................................................................7

**STATE STATUTES**

Cal. Penal Code § 270 ...............................................................................................33

Cal. Penal Code § 290 ....................................................................................... 11, 30

Cal. Penal Code § 290.007 ................................................................................. 11, 30

Cal. Penal Code § 290.024 .......................................................................................40

Cal. Penal Code § 290.5 ..................................................................................... 11, 30

Cal. Penal Code § 1203.4 ................................................................................. *passim*

Cal. Penal Code § 3007.05 ................................................................................. 11, 30

Cal. Penal Code § 4852.01 .......................................................................................11

**LEGISLATIVE MATERIALS**

154 Cong. Rec. S10300 (Oct. 1, 2008) .....................................................................6

S. Rep. No. 110-332 (2008) ......................................................................................6

**REGULATIONS**

28 C.F.R. § 72.2 ............................................................................................. 8, 17, 27

28 C.F.R. § 72.5 ....................................................................................... 8, 17, 18, 26

28 C.F.R. § 72.6 ............................................................................................... *passim*

28 C.F.R. § 72.7 ............................................................................................... *passim*

28 C.F.R. § 72.8 .......................................................................................................10

Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion
Case No. 5:22-cv-855-JGB-SP

72 Fed. Reg. 30210 (May 30, 2007) ...........................................................................4

73 Fed. Reg. 38030 (July 2, 2008)....................................................................*passim*

76 Fed. Reg. 1630 (Jan. 11, 2011). ...................................................................6, 7, 39

85 Fed. Reg. 49332 (Aug. 13, 2020) ("NPRM")............................................7, 8, 26

86 Fed. Reg. 69856 (Dec. 8, 2021) ("Rule") ...................................................*passim*

## **OTHER AUTHORITIES**

Black's Law Dictionary ("Black's") (8th ed. 2004)...............................................28

California Department of Justice,
   https://oag.ca.gov/sex-offender-reg.............................................................11

Merriam-Webster's Collegiate Dictionary (11th ed. 2003)....................................28

Ninth Circuit Model Criminal Jury Instruction 24.20 (2022).................................33

Random House Dictionary of the English Language
   (unabridged 2d ed. 1987).........................................................................28

# INTRODUCTION

Plaintiffs the Alliance for Constitutional Sex Offense Laws ("ACSOL") and three individuals ("Doe 2-4") bring an Administrative Procedure Act ("APA") challenge to a 2021 final rule (the "Rule") issued by the Attorney General. The Rule breaks little new ground, instead comprehensively summarizing sex offenders' registration requirements under the 2006 Sex Offender Registration and Notification Act ("SORNA") and later statutory amendments, together with additional regulatory details that had already been included in guidelines issued in 2008 and 2011. Plaintiffs claim the Rule is the invalid product of unconstitutionally delegated authority and that aspects of the Rule exceed statutory authority and violate due process and the First Amendment. But the record now before the Court shows Defendants are entitled to summary judgment on all these claims.

As an initial matter, Plaintiffs lack standing. None of the three remaining individual Plaintiffs are current registrants in California. They thus do not—and cannot— provide any registration information that the Rule requires. Indeed, though Plaintiffs challenge the Rule's requirement to provide Internet identifiers, California never has and never will collect Internet identifiers from these individuals, making their asserted chill wholly speculative. Nor do they establish any specific injury from the Rule's narrow exercises of delegated authority to require such information as telephone numbers, passport numbers, and dates of birth. Because the Rule itself contains no enforcement mechanism, any conceivable injury relies on a credible threat of prosecution under 18 U.S.C. § 2250—which Plaintiffs fail to tie to any specific Rule provision, and which they fail to establish at all given their at-best tenuous plans to travel outside the state—and is only available where a constitutional right is at stake. Plaintiffs' challenge to the Rule also fails the causation prong of standing where—as in the case of their statutory interpretation and due process challenges—SORNA itself, not any regulation, is the source of their asserted injury.

Defendants are also entitled to judgment on the merits on all four of Plaintiffs'

claims. First, SORNA provides intelligible principles sufficient to withstand Plaintiffs' nondelegation challenge. Indeed, the record shows that the Attorney General's narrow exercises of delegated authority in the Rule were all supported by reference to SORNA's stated public safety purpose and consistent with express statutory requirements.

Second, Plaintiffs' challenge to the Attorney General's interpretation of who is "convicted," and thus a "sex offender" under SORNA, is waived because it was never raised in comments on the proposed rule, nor did the Rule address it. Moreover, nothing in SORNA suggests that the meaning of "convicted" varies with state law. Rather, the term's ordinary meaning as "having been found guilty" properly applies, and only post-conviction relief that nullifies that finding can change an offender's status. Doe 2—the only plaintiff to raise this claim—has not received such relief. Instead, California lifted his state registration obligation based on notions of rehabilitation, not because his conviction was in error.

Third, even if the Court considers Plaintiffs' due process challenge as a challenge to SORNA itself, their claim fails. Plaintiffs make no attempt to establish a facial due process violation. Rather, their challenge focuses only on circumstances where an offender is entitled to the affirmative defense set forth in 18 U.S.C. § 2250(c) on specific grounds—where the "uncontrollable circumstances" at issue result from a state's refusal to allow him to register as SORNA requires. But such an as-applied claim fails, even if deemed ripe, because even in that circumstance, the affirmative defense provides adequate procedural protection and does not shift the burden of proof for any element of the offense defined in § 2250(a). The record here demonstrates that any of the three individual Plaintiffs could easily establish the § 2250(c) affirmative defense because they have documentation showing they are not required to register under California law, and California does not allow such individuals to register.

Fourth, should the Court reach the merits of Plaintiffs' First Amendment

challenge to the Rule's Internet identifier requirement, that claim also fails because the requirement is narrowly tailored to serve the government's compelling interest in preventing, and facilitating investigation of, crimes involving online sexual abuse or exploitation. Such crimes are rampant across a wide variety of Internet platforms, and the Rule only requires identifiers used in communications and postings. The Rule does not limit access to or participation in online content, and the fact that identifiers are subject to Privacy Act protection and are not publicly disclosed is sufficient to protect anonymous speech.

## **STATUTORY AND REGULATORY BACKGROUND**[1]

## I.    **SORNA and 2008 Guidelines**

Against a backdrop where all states had required some form of sex offender registration for over a decade, the 2006 Sex Offender Registration and Notification Act ("SORNA") sought to establish a "comprehensive national system" setting forth uniform minimum registration requirements and ensuring offenders would continue meeting those obligations when they change jurisdictions. 34 U.S.C. § 20901; *Gundy v. United States*, 588 U.S. 128, 132-33 (2019) (plurality); DSUF ¶¶ 1-7. SORNA conditions federal funding on states' substantial implementation of its requirements. 34 U.S.C. §§ 20912(a), (b), 20927(a).

SORNA also imposes requirements directly on sex offenders. *Id.* § 20913(a)-(d). In particular, SORNA requires sex offenders to provide relevant jurisdictions with a list of specific information as well as other information "required by the Attorney General." *Id.* § 20914(a). SORNA establishes criminal sanctions for a sex offender subject to federal jurisdiction who "knowingly fails to register or update a

---

[1] The Court has already set forth relevant statutory and regulatory background in its Order of July 5, 2023 [ECF 76] ("MTD Order"), at 3-8; and Order of Jan. 13, 2023 [ECF 55] ("PI Order"), at 3-8. Defendants therefore provide an abbreviated summary here but include material details in Defendants' Statement of Undisputed Facts ("DSUF"), filed concurrently herewith. *See* DSUF ¶¶ 1-8, 12-31, 36, 42-48, 52-71, 76-79, 83-84.

registration as required by" SORNA, 18 U.S.C. § 2250(a), while providing an affirmative defense where "uncontrollable circumstances prevented the individual from complying" with registration requirements. *Id.* § 2250(c).

SORNA defines a "sex offender" as "an individual who was convicted of a sex offense" and generally categorizes offenders into three tiers, with corresponding registration periods of 15 years, 25 years, or lifetime, based in part on the nature and seriousness of the offense, measured by reference to specified federal offenses. *See* 34 U.S.C. §§ 20911(2)-(4), 20915(a). For tier I offenders, SORNA reduces the registration period where the offender maintains a clean record for 10 years. *Id.* § 20915(b). No clean record reduction is available for tier II offenders or non-juvenile tier III offenders. *Id.*

The Attorney General issued proposed SORNA guidelines for registration jurisdictions in 2007, soliciting public comments. 72 Fed. Reg. 30210 (May 30, 2007). Among the issues addressed, the proposed guidelines stated that, because SORNA's language defined a "sex offender" as someone "convicted" of a sex offense, continued registration would normally not be required "if the predicate conviction is reversed, vacated, or set aside, or if the person is pardoned for the offense on the ground of innocence." *Id.* at 30216. However, variations in jurisdictions' terminology, and procedures that nominally "vacate[]" or "set aside" the conviction, but "do not relieve a conviction of substantive effect," would not "negate the SORNA requirements." *Id.* Moreover, "the sealing of a criminal record or other action that limits the publicity or availability of a conviction, but does not deprive it of continuing legal validity, does not change its status as a 'conviction' for purposes of SORNA." *Id.*

Final guidelines were issued in 2008. National Guidelines for Sex Offender Registration and Notification ("2008 Guidelines"), 73 Fed. Reg. 38030 (July 2, 2008). The Preamble to the Guidelines noted comments urging that "individual jurisdictions" should "have a free hand to stipulate that the dispositions of criminal

cases"—such as those of certain young adult sex offenders—"do not constitute 'convictions' for purposes of SORNA." *Id.* at 38040. But the Preamble rejected that approach as "inconsistent with SORNA's purpose to establish a 'comprehensive national system for the registration of [sex] offenders'" and instead concluded that "the meaning of 'convicted' for purposes of SORNA is a matter of federal law" that does not depend on "the terminology a jurisdiction uses in referring to the disposition of a criminal case." *Id.* The Guidelines therefore made clear that, in order to determine whether a state's so-called vacatur or setting aside of a conviction removed an individual from SORNA's definition of "sex offender," it would be necessary to look at whether the conviction had "continuing legal validity" or "substantive effect." *Id.* at 38050. The Guidelines did not specifically address California's laws, nor those of any other jurisdiction.[2]

The 2008 Guidelines also carefully identified and explained each invocation of delegated authority under 34 U.S.C. § 20914(a)(8) (then (a)(7)) when requiring certain information not expressly listed in § 201914(a)(1)-(6). *See* 73 Fed. Reg. at 38055-57 (explaining public safety rationales for collecting internet identifiers, telephone numbers, fake social security numbers, temporary or non-fixed addresses and work locations, passport and immigration document information, professional license information, watercraft and aircraft information, and dates of birth).

The 2008 Guidelines went into effect on August 1, 2008, and have the force of law with respect to federal registration requirements. *United States v. Mattix*, 694 F.3d 1082, 1084 (9th Cir. 2012).

## II.    KIDS Act, 2011 Guidelines, and the IML

Congress enacted two laws after SORNA that impact federal registration

---

[2] Given that state laws do not remain static, the Guidelines could not feasibly have provided such a jurisdiction-specific assessment even if any commenter had requested it. *Cf.* 73 Fed. Reg. at 38032 (noting jurisdiction-specific questions were properly addressed to the SMART Office); DSUF ¶¶ 31-35 (Cal. Penal Code § 1203.4 has been amended ten times since 2008 Guidelines were issued).

requirements. First, in 2008, Congress enacted the Keeping the Internet Devoid of
Sexual Predators ("KIDS") Act, Pub. L. No. 110-400, 122 Stat. 4224. The Senate
Report accompanying the Act recognized that "[n]umerous crimes involving sexual
exploitation of children are perpetrated through the use of the Internet," including
through social networking websites, and that "the faceless, anonymous nature of
online communications ha[s] made the Internet a source for sexual predators to use
in soliciting minors." S. Rep. No. 110-332, at 1-2 (2008); *see* DSUF ¶¶ 37-42.
Although the 2008 Guidelines had already required the collection of Internet
identifiers, the KIDS Act "permanently mandate[d] that certain Internet identifier
information be required in the registration process." 154 Cong. Rec. S10300 (Oct.
1, 2008) (statement of Sen. Schumer). The Act thus directed the Attorney General
to exercise pre-existing delegated authority pursuant to § 20914(a)(8) to include
Internet identifiers among the registration information required under SORNA. *See*
34 U.S.C. § 20916(a); *see id.* § 20916(e)(2) (defining "Internet identifiers" as
"electronic mail addresses and other designations used for self-identification or
routing in Internet communication or posting"). The Act further directed the
Attorney General to exercise pre-existing delegated authority pursuant to § 20912(b)
to "specify the time and manner for keeping current" the Internet identifier
information that the Act required. *Id.* § 20916(b). Congress further directed that the
Attorney General prohibit jurisdictions from including registrants' Internet
identifiers on public registry websites. *Id.* § 20916(c).

The Attorney General implemented these requirements in the Supplemental
Guidelines for Sex Offender Registration and Notification ("2011 Guidelines"), 76
Fed. Reg. 1630, 1637 (Jan. 11, 2011). As had already been stated in the 2008
Guidelines, the 2011 Guidelines confirmed that Internet identifiers must be reported,
and changes in identifiers must be reported "within three business days." *Id.* The
2011 Guidelines also implemented the KIDS Act's prohibition on allowing Internet
identifiers to be included on public registry websites. *Id.* The 2011 Guidelines thus

"create[d] a mandatory exemption of sex offenders' e-mail addresses and other Internet identifiers from [jurisdictions'] public Website posting." *Id.* at 1633.

In the second law, the 2016 International Megan's Law ("IML"), Pub. L. No. 114-119, 130 Stat. 15 (2016), Congress sought to strengthen the tracking of sex offenders who travel outside the United States, and thus revised SORNA to require registrants to provide information relating to intended international travel. *Id.* § 6(a) (adding current § 20914(a)(7)). The IML also added § 20914(c), stating sex offenders must "provide and update" required information "in conformity with any time and manner requirements prescribed by the Attorney General." *Id.*

## III.    The Rule

The Rule that Plaintiffs challenge here was issued in 2021, following notice-and-comment rulemaking. Notice of Proposed Rulemaking ("NPRM"), 85 Fed. Reg. 49332 (Aug. 13, 2020); Rule, 86 Fed. Reg. 69856, 69856 (Dec. 8, 2021). The Rule does not supersede or amend SORNA's statutory provisions, nor the 2008 or 2011 Guidelines. *See id.* Rather, the Rule, like the 2008 and 2011 Guidelines, in large part simply reproduces express statutory requirements. 86 Fed. Reg. at 69856-57 ("[m]any of the requirements" set forth in the Rule "reflect express SORNA requirements"). To the extent it goes beyond such express requirements, the Rule "embodies the same policies as those appearing in the previously issued . . . guidelines," in a "concise and comprehensive" form. *Id.* at 69856-57. It thus incorporates the same limited past exercises of the Attorney General's authority in those Guidelines under § 20914(a)(8) by requiring, for example, dates of birth, passport numbers, and professional licenses. 28 C.F.R. § 72.6; *see* 86 Fed. Reg. at 69871-74 (identifying whether each requirement is an express statutory requirement, and if not, explaining the public safety rationale for including the requirement).

The NPRM proposed that that "terms used" in the new regulations, including "such terms as sex offender (and tiers thereof), sex offense, convicted or conviction," would "have the same meaning as in SORNA." 85 Fed. Reg. at 49335; *cf.* 34 U.S.C.

§ 20911. No commenter addressed that proposal, nor did any commenter ask the Department to address whether postconviction relief under a specific state law sets aside or vacates a conviction or not for purposes of SORNA, and it was promulgated without change. DSUF 72-75; 86 Fed. Reg. at 69884; 28 C.F.R. § 72.2.

The NPRM also proposed to promulgate 28 C.F.R. § 72.5, which would "reproduce[]" the express requirements in § 20915, regarding the duration of the registration obligation, including the "statutory standards" governing the availability of a "clean record" reduction in limited circumstances. *See* 85 Fed. Reg. at 49337, 49340; id. at 49334 (citing § 20915 in connection with "express statutory requirements" regarding "how long sex offenders must continue to register").

One commenter proposed that the Department add an additional subsection to § 72.5 that would require a registrant's removal from the sex offender registry within 3 days of obtaining a pardon. *See* AR-1682. The comment did not address the meaning of "convicted" in SORNA's definition of "sex offender," or even mention the word "convicted," but urged the policy position that a pardon "is evidence that the registrant is not considered sexually dangerous," and that pardons would have "little, if any, value" if they did not relieve offenders of registration obligations and allow expungement of criminal records. *Id.* Responding to this comment, the Preamble to the Rule noted that the Attorney General "has no authority to require registration jurisdictions to expunge the records of sex offenders who are pardoned in those jurisdictions." 86 Fed. Reg. at 69866. The Preamble also referenced the only instance where the Attorney General had previously mentioned the impact of pardons on SORNA requirements, citing the statement in the 2008 Guidelines that "only pardons on the ground of innocence terminate registration obligations under SORNA." *Id.* (citing 73 Fed. Reg. at 38050).

As to Internet identifiers, the Rule repeats the requirement, present since the 2008 Guidelines and statutorily mandated by the KIDS Act, that sex offenders provide to their registering jurisdictions "[a]ll designations the sex offender uses for

purposes of routing or self-identification in internet or telephonic communications or postings, including email addresses and telephone numbers." 28 C.F.R. § 72.6(b). Responding to ACSOL's comment that the requirement "infringes on the right to anonymous speech unless accompanied by restrictions on public disclosure of the identifiers," the Department explained that the federal statutory restrictions on disclosure of identifiers—which are addressed to jurisdictions—were "beyond the scope of this rulemaking," but noted those restrictions, including the KIDS Act's prohibition of identifiers in registry websites, had already been addressed in the 2008 and 2011 Guidelines. 86 Fed. Reg. at 69859; DSUF 81-83. The Rule adopts the same requirement in the 2008 Guidelines that any changes in identifiers must be reported "within three business days," and rather than requiring in-person reporting, the Rule, like the Guidelines, allows such changes to be reported "by whatever means the jurisdiction allows." 28 C.F.R. § 72.7(e); *cf.* 86 Fed. Reg. at 69874-75, 69880.

The Rule further provides that, where a sex offender does not comply with the time and manner requirements in § 72.7(a)-(f), the offender must comply with the state's time and manner specifications. 28 C.F.R. § 72.7(g)(1); 86 Fed. Reg. at 69881. In effect, § 72.7(g)(1) "adopt[s] [a state's] time and manner specifications as SORNA requirements in the situations it covers." 86 Fed. Reg. at 69881. But § 72.7(g)(2) recognizes that (g)(1) cannot change the elements of the crime identified in 18 U.S.C. § 2250(a) or the affirmative defense identified in § 2250(c). *See* 28 C.F.R. § 72.7(g)(2); 86 Fed. Reg. at 69882. Responding to a commenter's proposal that § 72.7(g) should "absolve[] registrants of a duty to report information required by SORNA when state law or the local agency does not require that information," the Rule notes that the proposed statement is "legally incorrect because SORNA's requirements exist independently of state law requirements." 86 Fed. Reg. at 69859 (citing *Willman v. Att'y Gen*, 972 F.3d 819, 821-24 (6th Cir. 2020)). However, the combination of § 2250(a)'s scienter requirement, requiring the government to prove an offender's knowledge as an element of the crime, together

with § 2250(c)'s affirmative defense, excusing noncompliance "where compliance is prevented by . . . a jurisdiction's failure to carry out a necessary complementary role," avoids any "unfairness to sex offenders based on differences between SORNA's requirements and state law requirements." *Id.*

The Rule also describes, but does not alter, a sex offender's potential criminal liability under 18 U.S.C. § 2250(a). *See* 28 C.F.R. § 72.8(a)(1). Section 2250, not the Rule, "provides criminal liability for sex offenders based on SORNA violations." 86 Fed. Reg. at 69882. Any liability depends on the sex offender's awareness of a requirement since "sex offenders are not held liable" under § 2250 "for violations of registration requirements they did not know about." *Id*. Because "[r]egistration is a reciprocal process" that relies on jurisdictions to accept the information that sex offenders must submit, the Rule recognizes that "a registration jurisdiction's failure or refusal to carry out the reciprocal role needed to effect registration, or the updating of a registration, as required by SORNA," may bring into play the affirmative defense set forth in 18 U.S.C. § 2250(c). 86 Fed. Reg. at 69882.

Responding to further comments raising due process concerns on the ground that §§ 72.7(g) and 72.8 set forth an "interpretation of the affirmative defense" of § 2250(c) that "shifts the burden of proof to defendants," the Rule points out that the promulgated regulations do not "impose on the defendant a burden of proving that he lacked . . . awareness" of the requirement he is charged with violating— knowledge of the requirement being an element of the crime set forth in § 2250(a). 86 Fed. Reg. at 69859. The Rule also makes no change to the burden of proof for § 2250(c), which Congress "has expressly made an 'affirmative defense.'" *See id.*; *see also id.* at 69864 (stating § 72.8(a)(1)(iii) "moots fair notice concerns by explaining that sex offenders are not held liable under 18 U.S.C. § 2250 for violating requirements of which they are unaware," and an offender's "noncompliance with SORNA may be excused where compliance was prevented by a state's failure to carry out a necessary complementary role").

**IV.    Relevant California Law**

California has required sex offender registration since 1947, long before SORNA.[3] *See* Cal. Penal Code §§ 290 *et seq*. California originally imposed a lifetime registration obligation on sex offenders, but in 2021, it began categorizing sex offenders by tier and since then has allowed offenders to seek termination of their registration obligation, pursuant to Cal. Penal Code § 290.5, once the requisite registration period for their tier has expired. *See id.* § 290.5; Segal Decl. ¶ 8. Under current California law, the duty to register is generally not terminated unless the person "is entitled to relief from registration pursuant to [§] 290.5, or is exonerated pursuant to" Cal. Penal Code § 3007.05. Cal Penal Code § 290.007; *see id.* § 3007.05(j) (defining "exonerated"); Segal Decl. ¶ 8.

## **FACTUAL AND PROCEDURAL BACKGROUND**[4]

The original Complaint in this case was filed May 24, 2022 by ACSOL and an individual designated as Doe. [ECF 2.] The Court denied the original motion for preliminary injunction on standing grounds, among other things "declin[ing] to find that ACSOL establishes standing on the basis of other members" who were not named plaintiffs in the case. Order of Sept. 28, 2022 [ECF 40], at 8.

ACSOL and Doe 2-4 filed a First Amended Complaint ("FAC") on October 11, 2022.[5] [ECF 41] No individual plaintiff currently registers as a sex offender. Doe 2 received relief under Cal. Penal Code § 1203.4 in 2012 and stopped registering as

---

[3] *See* Cal. Dep't of Justice, https://oag.ca.gov/sex-offender-reg; *cf.* Declaration of Brian Segal ("Segal Decl.") ¶ 2 (submitted herewith in support of Defendants' arguments that the Court lacks subject matter jurisdiction).

[4] The DSUF statements cited herein reference material obtained through jurisdictional discovery and submitted herewith in support of Defendants' arguments that this Court lacks subject matter jurisdiction. *See* Declaration of Kathryn L. Wyer in Support of Defendants' Motion for Summary Judgment ("Wyer SJ Decl.") & Exhibits 1-8, filed herewith.

[5] Although the original Doe was also a plaintiff (Doe #1) in the FAC, he has since dismissed his claims and is no longer part of this case. [ECF 128.]

---

a sex offender in 2016 after receiving a certificate of rehabilitation under Cal. Penal Code § 4852.01. DSUF 88-97. Both Doe 3 and Doe 4 finished the registration terms required by California law, as revised in 2021, and stopped registering as a sex offender after their petitions under Cal. Penal Code § 290.5 were granted, respectively, on February 8, 2022, and June 6, 2023. DSUF 121-23, 153-54. None of these individuals has been notified of any intent by federal law enforcement to prosecute them under SORNA.

Plaintiffs nevertheless challenge the Rule on four grounds under the APA: (1) that it reflects an exercise of impermissibly delegated authority by Congress, FAC ¶¶ 110-22; (2) that it exceeds the Attorney General's statutory authority under SORNA, *id.* ¶¶ 123-34; (3) that its description of the affirmative defense set forth in 18 U.S.C. § 2250(c) impermissibly presumes guilt in violation of due process, *id.* ¶¶ 135-49; and (4) that its requirement that sex offenders report internet identifiers violates the First Amendment, *id.* ¶¶ 150-55. On January 13, 2023, the Court granted in part Plaintiffs' renewed PI motion on the ground that Plaintiffs' due process claim was likely to succeed on the merits. PI Order at 31, 55. On July 5, 2023, the Court denied Defendants' partial motion to dismiss on the grounds that Plaintiffs' nondelegation and statutory interpretation claims should be resolved upon review of the administrative record. MTD Order at 15.

Defendants lodged the certified administrative record for the Rule on December 15, 2023 [ECF 86], and, pursuant to orders of the Court, as narrowed on reconsideration, lodged the comments and supporting materials for the 2008 Guidelines on June 24, 2024 [ECF 125]. Following jurisdictional discovery, Plaintiffs filed a motion for summary judgment on November 18, 2024. [ECF 131.]

# ARGUMENT

## I.    Legal Standard

In this APA case, the Court does not consider "whether there are disputed factual issues for trial"; rather, the Court "acts like an appellate court" and determines "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Treez, Inc. v. DHS*, No. 22-cv-7027, 2024 WL 4982723, at *1 (N.D. Cal. Dec. 3, 2024) (internal quotation omitted).[6] As relevant here, the Court considers whether the challenged portions of the Rule are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" "contrary to constitutional right"; or "in excess of statutory jurisdiction" or "authority." 5 U.S.C. § 706(2)(A)-(C).

## II.    This Court Lacks Jurisdiction Over Plaintiffs' Claims

"Article III requires a plaintiff to show that [he] has suffered an injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Haaland v. Brackeen*, 599 U.S. 255, 291-92 (2023). While this Court concluded that Plaintiffs had standing at the preliminary injunction stage, PI Order at 15-21, Plaintiffs fail the heightened summary judgment burden of demonstrating "specific facts," through "affidavit[s] or other evidence," proving their standing, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).[7]

---

[6] In accord with this Court's standing order [ECF 9], Defendants submit a Statement of Undisputed Facts herewith. In light of the APA standard of review, the undisputed facts at issue derive primarily from statutes and the administrative record. However, the Court may consider extra-record evidence regarding Plaintiffs' standing. *Nw. Env't Def. Ctr. v. Bonneville Power Admin.,* 117 F.3d 1520, 1527–28 (9th Cir. 1997).

[7] ACSOL relies solely on its member plaintiffs Doe 2 and 4 for its standing, DSUF ¶ 173, and does not identify any other member by name in its declaration [ECF 131-8], which should be disregarded. *See* Order of Sept. 28, 2022, at 8 (declining to consider ACSOL's unidentified members for purposes of standing). The Court's jurisdiction over each of Plaintiffs' claims thus relies solely on Doe 2-4.

---

Here, Plaintiffs raise a pre-enforcement challenge to the Rule, but the Rule imposes no burden on them because, regardless of what it purports to require, California does not accept registration information from former registrants. Segal Decl. ¶ 8. Doe 2 and 3 had no registration obligation under California law when they filed suit, and Doe 4 obtained similar relief shortly thereafter.[8] DSUF 88-97, 121-23, 153-54. Moreover, the Rule itself lacks any enforcement mechanism. Contrary to the Court's earlier analysis, PI Order at 17, this is not a case where plaintiffs have standing to challenge a final rule "as the objects of regulation." *Stavrianoudakis v. FWS*, 108 F.4th 1128, 1141 (9th Cir. 2024) (rejecting plaintiffs' standing to challenge FWS rule absent "clear burden" imposed by rule).[9] Instead, Plaintiffs' asserted injury is a statutory one, based on an alleged threat of prosecution under 18 U.S.C. § 2250(a). As such, Plaintiffs must show "[1] an intention to engage in a course of conduct arguably affected with a constitutional interest, but [2] proscribed by a statute, and [3] there exists a credible threat of prosecution thereunder." *Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 836 (9th Cir. 2024) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

Court have applied the first prong of this test to deny preenforcement review when a claim raises "questions of statutory interpretation unconnected with" a plaintiff's "'exercise of his constitutional rights.'" *Muthana v. Pompeo*, 985 F.3d 893, 911 (D.C. Cir. 2021) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). On that basis, Plaintiffs lack standing to assert Count II, which raises no

---

[8] At the very least Doe 4's claims are moot. *N.D. v. Reykdal,* 102 F.4th 982, 989 (9th Cir. 2024) (claim is moot where relief is "no longer a possibility"). However, for the reasons set forth below, Doe 4 also lacks standing to assert most or all claims.

[9] The Court cited *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011), PI Op. at 17, but there, the plaintiff had already received an administrative demand for repayment pursuant to the challenged administrative scheme. Neither the Rule nor any other Department mechanism allows for an administrative action against Plaintiffs here. The only enforcement mechanism in SORNA is § 2250(a), so the *Driehaus* preenforcement analysis applies.

---

1    constitutional issue but alleges misinterpretation of the statutory term "convicted."

2         Plaintiffs also fail to meet the third prong of the *Driehaus* test for any of their

3    claims. Significantly, Doe 2-4 fail to identify a concrete intent to travel to another

4    jurisdiction.[10] Absent such travel, Doe 2-4 cannot be prosecuted, 18 U.S.C.

5    § 2250(a)(2)(B), defeating any notion of an "imminent" prosecution threat. *Planned*

6    *Parenthood*, 122 F.4th at 836. Moreover, Doe 2 was relieved of California

7    registration obligations in 2016 and has failed to comply with SORNA since that

8    time, but he has never been prosecuted under SORNA, nor do Plaintiffs identify

9    similar prosecutions of others for failing to provide information when California will

10   not accept it. *Cf. McCormack v. Hiedeman*, 694 F.3d 1004, 1021 (9th Cir. 2012)

11   ("history of past prosecution" is relevant).[11]

12        Moreover, even aside from that general problem, Plaintiffs cannot show a

13   credible threat of prosecution for failure to provide any particular piece of

14   information—such as Internet identifiers (Count IV) or the additional pieces of

15   information that the Attorney General first identified in the 2008 Guidelines and

16   again in the Rule pursuant to delegated authority (Count I). Rather, because Plaintiffs

17   cannot register at all, any prosecution Plaintiffs might face would be for "outright

18   failure to register." *United States v. Watchman*, No. CR08-1202, 2009 WL 464995,

19   at *5 (D. Ariz. Feb. 24, 2009), *aff'd sub nom. United States v. Begay*, 622 F.3d 1187

20   (9th Cir. 2010). Such a prosecution would not distinguish between name, vehicle

21   location, e-mail address, or temporary lodging. Thus, Plaintiffs also cannot show the

22   causation or redressability prongs of standing for Counts I or IV because Plaintiffs

23   would not be less likely to be prosecuted simply because the Court struck some of

---

24   [10] *Cf.* DSUF 114, 141, 172. Doe 2-4's "'some day' intentions" to travel interstate at

25   some unknown future time do not establish standing. *Lujan*, 504 U.S. at 564.

26   [11] *United States v. Hardeman*, 598 F. Supp. 2d 1040 (N.D. Cal. 2009), previously

27   cited by this Court, is not such a case; there, the defendant *was* still required to

     register under California law despite receiving relief under Cal. Penal Code

28   § 1203.4. *Hardeman*, 598 F. Supp. at 1041.

---

the Rule's requirements while leaving others in effect.

Nor are these the only problems with Plaintiffs' standing. For Count I, Plaintiffs also lack standing to challenge exercises of delegated authority that do not affect them. *See Haaland*, 599 U.S. at 296 (state lacked standing to challenge Indian Child Welfare Act's placement preference delegation when it failed to show a redressable injury caused by placement preferences); *Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 560 (9th Cir. 2019) (plaintiff lacked standing to challenge a specific provision on nondelegation grounds when its alleged injury, based on possible future exercises of authority under that provision, "rests on a speculative chain of future possibilities"). Plaintiffs now focus their nondelegation claim solely on the Attorney General's exercise of delegated authority pursuant to 34 U.S.C. § 20914(a)(8). P.Br. [ECF 131-1] 12. That alone defeats their standing to challenge 34 U.S.C. § 20912. Indeed, though Plaintiffs challenge § 20912 as a separate delegation, P.Br. 10, they identify no exercise of authority in the Rule that relies solely on § 20912. In similar circumstances, the Supreme Court limited its consideration to the specific SORNA delegation that caused the plaintiff's asserted injury. *Gundy*, 588 U.S. at 144-45 n.3 (noting that the relevant SORNA provision was 34 U.S.C. § 20913(d), not § 20912).[12]

Plaintiffs bring Count II—their challenge to the Rule's alleged misinterpretation of the term "convicted" in SORNA—only on behalf of Doe 2, the only plaintiff who received relief under Cal. Penal Code § 1203.4 as well as a certificate of rehabilitation. *See* FAC ¶ 128. Notably, Plaintiffs concede that none of them has been pardoned, DSUF 97, 127, 159, so they clearly lack standing to challenge any determination in the Rule regarding pardons. PI Order at 48 (recognizing no "live controversy" regarding pardons). Nor is any such claim

---

[12] As for § 20914(a)(8), the only exercise of authority that Plaintiffs identify and that conceivably affects any of them is the Rule's requirement to provide professional license information. P.Br. 12.

1  asserted in the FAC.

2      Rather, Doe 2 argues that the Rule is contrary to the "plain meaning" of

3  SORNA's definition of "sex offender" in § 20911(1) because, he asserts, the Rule

4  considers "expunged convictions" under Cal. Penal Code § 1203.4, "coupled with

5  certificates of rehabilitation," to "nevertheless require registration under SORNA.

6  FAC ¶ 133. But Doe 2's theory fails the causation and redressability prongs of

7  standing because the Rule plays no role whatsoever in whether Doe 2 still qualifies

8  as "convicted" under SORNA, nor could the Court's vacatur of any Rule provision

9  impact that determination. Rather, the only relevant regulation promulgated by the

10  Rule simply states that "[a]ll terms used in [the Rule] have the same meaning as in

11  SORNA," 28 C.F.R. § 72.2. *See* P.Br. 24 (citing 86 Fed. Reg. at 69884). Nowhere

12  in the NPRM or Rule did the Attorney General address the impact of post-conviction

13  relief under Cal. Penal Code § 1203.4 on SORNA obligations, nor did any

14  commenter ask the Attorney General to address that issue. *See* DSUF 64, 72-77.

15      Doe 2 errs in suggesting the Rule "explicitly incorporate[d]" the 2008

16  Guidelines' discussion of the meaning of "convicted" when the Preamble to the Rule

17  responded to a comment that never mentioned the word "convicted," but instead

18  suggested that the Attorney General revise the proposed 28 C.F.R. § 72.5, which

19  reproduces SORNA's express "clean record" reduction standards in 34 U.S.C.

20  § 20915(b), by adding pardons as an additional basis to reduce registration periods.

21  *See* DSUF 78-80. The Attorney General lacked authority to accept the commenter's

22  proposal because § 20915(b) does not identify pardons as a basis for reduction. The

23  Preamble thus responded that "only pardons on the ground of innocence terminate

24  registration obligations under SORNA," referencing the 2008 Guidelines'

25  recognition that only such pardons (as opposed to pardons based on notions of

26  clemency or rehabilitation) nullify the original conviction. 86 Fed. Reg. at 69866.[13]

27  _____

28  [13] To be sure, the Preamble's response was gratuitous. The Preamble could instead simply have pointed out that § 20915(b) does not identify pardons as a basis for

That statement does not address Cal. Penal Code § 1203.4, and as explained, Plaintiffs identify no injury relating to pardons. Any relief addressed to the Rule would not redress Doe 2's asserted injury.

Additional factors also doom Plaintiffs' standing to challenge the Rule on procedural due process grounds (Count III). Again, causation and redressability are lacking, this time because any criminal prosecution under SORNA would take place pursuant to the statutory provision in 18 U.S.C. § 2250(a), and any affirmative defense would rely on the statutory provision in § 2250(c). Yet Plaintiffs' claim challenges a regulatory provision, 28 C.F.R. § 72.7(g), which in no way controls or alters the procedures through which a criminal prosecution or affirmative defense under § 2250 would be adjudicated. *See* FAC ¶¶ 144-48; P.Br. 17 (confirming Plaintiffs' challenge is to § 72.7(g)). Indeed, § 72.7(g) does not purport to interpret either § 2250(a) or 2250(c). Instead, it expressly disavows any impact on § 2250 prosecutions. 28 C.F.R. § 72.7(g)(2) ("In a prosecution under 18 U.S.C. 2250, paragraph (g)(1) of this section does not . . . relieve a sex offender of the need to establish . . . an affirmative defense . . . as provided in 18 U.S.C. 2250(c)[.]"). By their description, Plaintiffs' due process injury relates to the fact that their inability to register as SORNA requires would be addressed through the affirmative defense in § 2250(c). But that injury was not caused by § 72.7(g)—the object of Plaintiffs' due process challenge—nor would it be redressed by vacating § 72.7(g), as the Court has already recognized. Order of Jan. 13, 2023, at 53-55.[14] The Court should thus conclude that Plaintiffs lack standing to challenge § 72.7(g) on due process grounds.

---

reduction, so the Attorney General lacked authority to add the proposed subsection to § 72.5. However, the fact that the Preamble responded to the comment more comprehensively than necessary in no way suggests that Doe 2's alleged injury—unrelated to pardons—is redressable through a challenge to the Rule.

[14] The Court already discussed the difficulties in providing redress when issuing a preliminary injunction on Plaintiffs' due process claim, which only confirms that Plaintiffs never established causation for this claim. *See id.* at 53 (recognizing that vacating the Rule would be "underinclusive in that" it would not affect Plaintiffs'

---

Finally, Plaintiffs also lack standing to assert their First Amendment challenge to the Rule's Internet identifier requirement because, not only is there no credible threat of prosecution as described above, but the purported chill on their online speech is neither credible nor objectively reasonable. *Richards v. Newsom*, No. 8:23-cv-2413, 2024 WL 4812537, at *4 (C.D. Cal. Oct. 16, 2024) ("The test for chilling speech is an objective one." (citing *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 868 (9th Cir. 2016))). Plaintiffs' assertions regarding their purported chill are conclusory and belied by their failure to describe with particularity what they have refrained from saying, and on what platform. *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173–74 (9th Cir. 2022) ("nakedly asserting" chill does not suffice). Indeed, Doe 2 and 3 admit they do not post publicly on social media. DSUF 108, 136-37. Moreover, though Doe 2 and 4 claim they fear public disclosure of their status as sex offenders, in fact both individuals are ██████████ ACSOL ████ members whose status as sex offenders or former sex offenders has already been publicly identified. DSUF 98, 113, 142, 152, 163.

Plaintiffs further concede that their fears of future harm depend on the occurrence of a series of purely speculative events, DSUF 112, 139, 170—beginning with California's collection of their identifiers, which has never happened and never

---

obligations under SORNA and the prior Guidelines). The Court's solution at the PI stage was to directly restrict prosecutions under § 2250(a). At summary judgment, the Court should carefully consider the fact that, to the extent SORNA addresses the allocation of burdens in a criminal prosecution, it does so in § 2250, not in any regulatory provision. Plaintiffs' due process challenge is inherently flawed, and fails to establish their standing, for the very reason that it depends on the notion that § 72.7(g) somehow changes the allocation of burdens under § 2250. But in fact, § 72.7(g) has no impact on the allocation of burdens, and nothing in the Rule suggests that it does. Instead, § 2250(a) puts the burden of establishing every element of a § 2250(a) violation on the government.

will under current California law and registration policy.[15] *See* Segal Decl. ¶¶ 5, 8. Plaintiffs also ignore existing California and federal law strictly limiting disclosure and use of registrants' identifiers—*e.g.*, 34 U.S.C. § 20916(a) (Internet identifiers are subject to the Privacy Act, 5 U.S.C. § 552a); Segal Decl. ¶ 5—and rely on conjecture that if their identifiers are ever collected, they might then be illegally misused or made public by law enforcement or hackers. DSUF 111, 139, 169.[16] Such an attenuated chain of possibilities based on unsupported theories fails to make their "subjective chill" objectively reasonable. *Cf. Lopez v. Candaele*, 630 F.3d 775, 792 (9th Cir. 2010) ("self-censorship alone is insufficient to show injury"). Rather, courts consistently reject plaintiffs' attempts to "manufacture standing" by "inflicting harm on themselves based on their fears of hypothetical future harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401-02 (2013). For all these reasons, the Court lacks jurisdiction over Plaintiffs' claims.

---

[15] A conviction under § 2250—even if focused specifically on failure to report Internet identifiers rather than outright failure to register—would not change Plaintiffs' inability to report their identifiers to California registration authorities. And Plaintiffs could not be convicted, even if they were prosecuted, given Plaintiffs' entitlement to the affirmative defense set forth in § 2250(c) based on California's refusal to accept identifiers or transmit them to NSOR. Segal Decl. ¶ 5, 8; *see* DSUF 81 (Plaintiffs possess official documentation establishing their inability to register in California).

[16] Plaintiffs attempt to support their alleged chill by citing the 2011 Guidelines' recognition that the KIDS Act does not prohibit states, in their discretion, from setting up a website function through which members of the public can check whether an already-known Internet identifier belongs to a registered sex offender. P.Br.22 (citing 76 Fed. Reg. at 1637). But Plaintiffs identify no such website in California, nor would it disclose offenders' identities. Just as registration jurisdictions' disclosures were "beyond the scope of th[e] [2021] rulemaking," 86 Fed. Reg. at 69859, they have nothing to do with the Rule at issue. Rather, any challenge to a state's practices would properly be directed to the state itself.

### III.    The Rule Does Not Reflect Improperly Delegated Authority (Count I)

Plaintiffs claim that the Rule exercises authority that Congress has unconstitutionally delegated to the Attorney General. But as the Court has held and Plaintiffs do not dispute, the "intelligible principle" test governs, PI Order 39; P. Br. 10, which this Court has described as "extremely forgiving," MTD Order 14, and is satisfied even by a "broad general directive," PI Order 41 (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)). Applying that test, the Court correctly concluded that the "broad principle of protecting the public from sex offenders," set forth in 34 U.S.C. § 20901, alone sufficed to sustain SORNA's general delegation of rulemaking authority in 34 U.S.C. § 20912. PI Order 40-41. Having reached that conclusion, the Court further recognized that "the narrower delegations codified at 34 U.S.C. § 20914 easily survive."  PI Order 41.

Although Plaintiffs continue to pursue their nondelegation challenge, the Court's prior reasoning continues to apply. Furthermore, statutory delegations should not be interpreted "in a vacuum" but instead "derive much meaningful content" from their "context" within the overall statutory scheme and "in light of the statutory purpose." *Gundy*, 588 U.S. at 141. Plaintiffs now challenge just one specific delegation, § 20914(a)(8), which requires registrants to provide "[a]ny other information required by the Attorney General."[17]  Plaintiffs argue that this provision confers unbounded authority. P.Br. 11. In fact, however, Congress provided ample guidance in SORNA's overall scheme, and in § 20914(a), in particular. In addition to SORNA's purpose, SORNA's operational provisions further constrain the Attorney General, by setting forth (among other things) who must register, *see* 34 U.S.C. §§ 20911(1), (5)-(9), for how long they must register, *id.* §§ 20911(2)-(4), 20915, with what jurisdictions they must register, *id.* § 20913(a), what information

---

[17] Plaintiffs have abandoned prior challenges to § 20914(a)(7) and § 20914(c), *see* P.Br. 9-16, and even tout § 20914(a)(7), which requires registrants to provide "other travel-related information required by the Attorney General," as a properly "limit[ed]" delegation.  P.Br. 11.

---

1  they must provide, *id.* §§ 20914(a), (b), 20916, and how to keep their registration

2  updated, *id.* §§ 20913(c), 20918.[18]

3      Moreover, as this Court observed, § 20914(a)(8) follows the enumeration of

4  seven types of information required by statute. PI Order 41. Applying the canons of

5  *noscitur a sociis and ejusdem generis*, the Court correctly interpreted the provision

6  as "confer[ring] authority on the Attorney General to make registration effective and

7  protect public safety by requiring information relating to offenders' identities,

8  locations, and primary activities." *Id.*[19]

9      Plaintiffs argue that § 20914(a)(8) has been implemented in a manner

10  suggesting that it confers unlimited authority, P.Br. 11-12, but the examples cited by

11  Plaintiffs only underscore the provision's limitations. As Plaintiffs point out,

12  Congress confirmed the Attorney General's prior exercise of § 20914(a)(8) authority

13  to require reporting of internet identifiers, Pub. L. No. 110-400, § 2(a); 28 C.F.R.

14  § 72.6(b) (internet identifiers), and the Rule exercises § 20914(a)(8) authority when

15  requiring professional license information and advance notice of changes of

16  residence. *See id.* § 72.6(g) (professional license information); *id.* § 72.7(d) (changes

17  of residence). Each of these examples "relat[e] to offenders' identities, locations,

18  and primary activities." PI Order 41. And the Attorney General explained why they

19  serve SORNA's purpose of protecting the public by helping to identify and locate

20

21

22  [18] The administrative record confirms that SORNA meaningfully constrains the

23  Attorney General's rulemaking. The Preamble to the Rule explains the rejection of

    many proposed changes on the ground that they would conflict with or are not

24  authorized by SORNA's text. *See*, *e.g.*, AR-1278 (comment proposing using

    "scientific research of recidivism risk" to set registration duration); 86 Fed. Reg. at

25  69861 (rejecting this proposal as inconsistent with SORNA's text); *see also* 86 Fed.

26  Reg. at 69858 (explaining other proposals' rejection "because the Attorney General

    has no authority to repeal the requirements enacted by Congress in SORNA").

27  [19] Plaintiffs reject application of *noscitur a sociis* and *ejusdem generis*, P.Br. 11, but

28  provide no justification for doing so.

sex offenders, or apprehend them if they commit crimes.[20] This delegation to require information similar in kind to the reporting requirements enumerated in SORNA is the type of "narrow, interstitial delegation[] of authority," *United States v. Melgar-Diaz*, 2 F.4th 1263, 1267 (9th Cir. 2021), that courts routinely uphold.

Plaintiffs also argue that SORNA violates the nondelegation doctrine because it purportedly "delegates criminal lawmaking authority to the Attorney General." P.Br. 13. The Court has already correctly rejected this argument, explaining that "the Supreme Court has permitted" Congress to "make[] the violation of regulations a criminal offense and fix[] the punishment, so long as "the regulations 'confin[e] themselves within the field covered by the statute.'" PI Order 42 (quoting *Loving v. United States*, 517 U.S. 748, 768 (1996).

Here, Congress itself identified "knowing[] fail[ure] to register or update a registration as required by [SORNA]" as a crime chargeable against sex offenders subject to federal jurisdiction. 18 U.S.C. § 2250(a). Courts have repeatedly rejected nondelegation challenges to the imposition of criminal liability under this provision, including cases where the predicate offense involved a violation of administrative rules. *See Gundy*, 588 U.S. at 134-35 (rejecting nondelegation challenge to Attorney General's determination in a final rule that SORNA's registration requirements applied to pre-Act offenders); *United States v. Mingo*, 964 F.3d 134, 137-39 (2d Cir. 2020) (rejecting nondelegation challenge based on Congress's delegation to Secretary of Defense "which particular military offenses should qualify as a 'sex offense'" under SORNA). Moreover, in regard to the specific provision Plaintiffs challenge here, Congress expressly stated that sex offenders "shall provide . . . information required by the Attorney General."  34 U.S.C. § 20914(a), (a)(8). A

---

[20] *See* 86 Fed. Reg. at 69866 (discussing justification for professional license requirement); *id.* at 69878 (same for advanced notice of residence changes); 73 Fed. Reg. at 38055 (same for internet identifiers); *see also* 73 Fed. Reg. at 38042, 38055-57 (explaining public safety rationale for each type of information required by the Attorney General).

violation of SORNA's requirement to comply with the Attorney General's directions within these narrow contours thus falls within the offense defined by § 2250(a).

Plaintiffs cite a series of mostly inapposite cases, such as nonbinding dissenting opinions,[21] cases addressing federal courts' authority to create new federal crimes or interpret criminal statutes,[22] and cases applying an entirely different (void-for-vagueness) doctrine.[23] Plaintiffs cite the Supreme Court's statement that "[t]he definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota v. United States*, 471 U.S. 419, 424 (1985). But here, Congress set forth the elements of the crime: (1) a requirement to register under SORNA, (2) circumstances that satisfy federal jurisdiction, and (3) a knowing violation of SORNA. *See* 18 U.S.C. § 2250(a).[24]

Plaintiffs also cite *Touby v. United States*, 500 U.S. 160 (1991), for the notion that "something more than an intelligible principle" may be required for delegation in the criminal context. PI Mot. 10. But *Touby* did "not resolve the issue," holding the statute under review would "pass[] muster even if greater congressional specificity is required in the criminal context." *Touby*, 500 U.S. at 166. In *Gundy*, the Court answered the question left open in *Touby* by applying the intelligible principle test (rather than a stricter test) to uphold a sex offender's conviction under § 2250 for violating SORNA. 588 U.S. at 135 (plurality) (applying "intelligible

---

[21] *See United States v. Nichols*, 784 F.3d 666, 670 (10th Cir. 2015) (Gorsuch, J. dissenting from denial of rehearing en banc); *Gundy*, 588 U.S. at 149-79 (Gorsuch, J., dissenting).

[22] *See United States v. Hudson*, 11 U.S. 32, 34 (1812); *United States v. Bass*, 404 U.S. 336, 347-49 (1971); *United States v. Kozminski*, 487 U.S. 931, 949-50 (1988).

[23] *See Sessions v. Dimaya*, 584 U.S. 148, 156 (2018); *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

[24] Thus, contrary to Plaintiffs' suggestion, P.Br. 14, in enacting § 2250, Congress "declare[d] what shall be crimes." *United States v. Grimaud*, 220 U.S. 506, 516 (1911).

---

principle" test); *id.* at 149 (Alito, J., concurring in judgment) (voting to affirm based on "the approach this Court has taken for many years").[25] This Court should thus reaffirm its prior rejection of Plaintiffs' nondelegation claim.

## IV. The Rule Adopts SORNA's Definition of Sex Offender (Count II)

As with Count I, the Court already rejected Plaintiffs' Count II—which claims that the Rule improperly defines the term "convicted" in SORNA's statutory definition of "sex offender"—at the PI stage, PI Order at 48, but reserved a final ruling until the "abstract" nature of the issue could be clarified by the administrative record. *See* MTD Order at 16. The record now demonstrates that Defendants are entitled to judgment on this claim.

As noted above, Plaintiffs raise this claim only on behalf of Doe 2, asserting that the relief Doe 2 received under California law—relief under Cal. Penal Code § 1203.4, together with a certificate of rehabilitation—should mean that he is no longer "convicted" within the meaning of 34 U.S.C. § 20911(1). As also discussed, Doe 2 lacks standing to challenge the Rule on this basis because the Rule did not address this issue and thus caused no redressable injury. Along similar lines, as an additional threshold matter, the claim is waived because neither Plaintiffs nor any other commenter suggested during notice-and-comment rulemaking that the Rule should address the meaning of "convicted" in § 20911(1), nor that the Rule should address the impact of Cal. Penal Code § 1203.4, or any other specific form of

---

[25] Plaintiffs cite a recent decision from another district rejecting a delegation of authority to the Secretary of the Interior. *United States v. Pheasant*, No. 3:21-CR-00024-RCJ-CLB, 2023 WL 3095959 (D. Nev. Apr. 26, 2023), *appeal argued*, No. 23-991 (9th Cir. Oct. 10, 2024). The government disagrees with that decision, which fails to follow Supreme Court precedent upholding even broadly-worded delegations. *See Gundy*, 588 U.S. at 146 (plurality) (collecting cases). But in any event, *Pheasant* is distinguishable because the district court read (and in the government's view, misread) that statute as providing the agency with "unfettered legislative authority" without "any guidance or restraint." 2023 WL 3095959, at *6-7. Here, SORNA's statement of purpose and operational provisions meaningfully guide and constrain the Attorney General's authority. *See supra*, pp. 21-22.

---

California post-conviction relief, on SORNA registration obligations. *Cf. All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 487–88 (9th Cir. 2023) ("[A]bsent exceptional circumstances, failure to raise arguments before an agency, such as in comments during a public-comment process, usually waives a litigant's rights to make those arguments in court.").

Although Defendants raised this waiver bar over a year ago[26], Plaintiffs make no attempt to identify a comment that raises "particular objections" regarding Cal. Penal Code § 1203.4 that would have "allow[ed] the agency to give the issue meaningful consideration," *Petrick*, 68 F.4th at 489. Instead, Plaintiffs suggest without legal support that—even though the issue was not raised—the Department acted arbitrarily by failing to address it sua sponte in the Rule. *See* P.Br. 28. Plaintiffs' entire "arbitrary and capricious" argument, which purports to challenge a decision the Department did not actually make in the Rule—should be rejected.

As explained above, the record now makes clear that the single reference in the Rule to pardons responded to a comment that did not address the meaning of "convicted," but instead proposed a revision of § 72.5 to add pardons as another basis to reduce registration periods, in addition to the "clean record" reductions expressly described in 34 U.S.C. § 20915. *See supra* pp. 17-18.[27] Contrary to the Court's prior suggestion, that reference does not suggest the Department reopened its consideration of the meaning of "convicted." *Cf. P & V Enters. v. U.S. Army Corps of Engrs.*, 516 F.3d 1021, 1023 (D.C. Cir. 2008) (reopening doctrine requires that the "entire context" demonstrate that an agency "has undertaken a serious,

---

[26] Jt. Rpt. [ECF 82], at 4-5; *cf.* Apr. 5, 2024 Op. [ECF 113] at 12 n.4.

[27] Plaintiffs do not challenge the Department's rejection of the commenter's proposed revision to § 72.5. Indeed, Congress's express enactment of limited rehabilitation-based relief required the Department's response—just as it counsels against finding the atextual elimination of registration requirements that Plaintiffs propose here.

substantive reconsideration of" a prior rule). Rather, the Department proposed that all terms used in the Rule would "have the same meaning as in SORNA." 85 Fed. Reg. at 49335. The Rule promulgated that uncontested proposal. 28 C.F.R. § 72.2.

Plaintiffs implicitly concede that the specific issue presented in their FAC—whether a sex offender who receives relief under Cal. Penal Code § 1203.4 and a certificate of rehabilitation is still "convicted" within the meaning of § 20911(1)—is not properly before the Court by instead pivoting to a broader claim that their FAC did not raise: They now suggest that it would be "irrational" for Congress to have intended the term "convicted" in § 20911(1) to have a uniform federal meaning rather than one dependent on state law. *See* P.Br. 25-26. But Plaintiffs' attempt to amend their complaint through summary judgment briefing is futile. *Cf. Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154–55 (9th Cir. 2014). Again, this issue is waived because it was not raised in comments on the Rule.

Moreover, even if the Court disregards waiver and considers the meaning of "convicted" in § 20911(1), it should conclude that the term's meaning does not vary based on different state systems of post-conviction relief.[28] Rather, the meaning of "convicted" is a question of federal law, based on the term's "ordinary meaning." *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1161 (9th Cir. 2023).[29] Dictionaries

---

[28] Plaintiffs do not dispute that Doe 2's nolo contendere plea qualified as a conviction, whether under California or federal law. Their claim is limited to the notion that Doe 2's post-conviction relief—a dismissal under § 1203.4 and a certificate of rehabilitation—changed his status from "convicted" to not "convicted" within the meaning of § 20911(1).

[29] If the term is deemed ambiguous, the Court must determine its "best meaning," using traditional tools of statutory construction, with "due respect for the views of the Executive Branch." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2266-67 (2024). Here, the meaning of "convicted" can be resolved based solely on dictionary definitions, but other tools of construction would yield the same result. Certainly, there is no "grievous ambiguity" here that would trigger the rule of lenity, *Barber v. Thomas*, 560 U.S. 474, 488 (2010), nor is there a "plausible construction" of SORNA that could trigger the constitutional avoidance canon, *Jennings v. Rodriguez*, 583

uniformly define the term by reference to a finding of guilt.[30] It follows that an offender is no longer "convicted" only if that original finding of guilt is nullified in some way. The 2008 Guidelines demonstrate this precise understanding when they state that "revers[ing], vacat[ing], or set[ting] aside" a predicate conviction normally relieves an offender of any registration obligation under SORNA. 73 Fed. Reg. at 38050. Under the ordinary meaning of each of those terms, the predicate conviction is effectively nullified, so the individual is no longer "convicted" of a sex offense within the meaning of § 20911(1).[31]

In arguing that the meaning of "convicted" in SORNA depends on state law

---

U.S. 281, 296 (2018). The Court should thus reject Plaintiffs' invitation to apply such doctrines. *Cf.* P.Br. 27.

[30] *Cf.* Black's Law Dictionary ("Black's") 358 (8th ed. 2004) ("convict" means "[t]o find (a person) guilty of a criminal offense upon a criminal trial, a plea of guilty, or a plea of nolo contendere (no contest)"); Merriam-Webster's Collegiate Dictionary 274 (11th ed. 2003) ("convict" means "to find or prove to be guilty"); *accord* Random House Dictionary of the English Language 445 (unabridged 2d ed. 1987) ("convict" means "to prove or declare guilty of an offense, esp. after a legal trial").

[31] The term "vacate" generally means "to make legally void: ANNUL," Merriam-Webster's Collegiate Dictionary 1380; *cf.* Random House Dictionary 2100 ("to render inoperative; deprive of validity; void; annul: *to vacate a legal judgment*"); Black's 1584 ("[t]o nullify or cancel; make void; invalidate <the court vacated the judgment>"). The term "reverse" generally means "NEGATE, UNDO: as **a** : to overthrow, set aside, or make void (a legal decision) by a contrary decision," typically on appeal; *cf.* Merriam-Webster's Collegiate Dictionary 1067; Random House Dictionary 1647 ( "to revoke or annul (a decree, judgment, etc.): *to reverse a verdict*"); Black's 1344 ( "[t]o overturn (a judgment) on appeal"). The term "set aside" generally means, in reference to a court order, "to annul or vacate (a judgment, order, etc." Black's 1404. Similarly, a pardon on the ground of innocence—the other circumstance identified in the 2008 Guidelines as relieving a registration obligation based on the meaning of "convicted"—recognizes that the underlying finding of guilt was erroneous at the outset. Other forms of pardon, on the other hand, "carr[y] an imputation of guilt," or even "a confession of it." *Healey v. United States*, 186 F.2d 164, 167 (9th Cir. 1950).

---

rather than the term's ordinary meaning, Plaintiffs suggest that SORNA's "regulatory scheme relies on state law to supply the predicate convictions for its registration requirements." P.Br. 25. But they are wrong. The case they cite, *Carr v. United States*, 560 U.S. 438 (2010), did not address predicate convictions at all, instead simply observing that, consistent with the Commerce Clause, SORNA allows for federal *enforcement* only when the predicate conviction is federal or a state offender has traveled interstate. *Id.* at 453. And in fact, SORNA does not leave the definition of predicate convictions to the discretion of states but expressly defines "sex offense," 34 U.S.C. § 20911(5)-(8), and defines Tier II and Tier III offenders based in part on whether their offense is "comparable to or more severe than" specified federal crimes, *id.* § 20911(3)-(4).[32]

The weight of authority also contradicts Plaintiffs' view. Both the Supreme Court and the Ninth Circuit have recognized in other contexts that federal law generally determines the meaning of federal statutory terms—including "convicted." *Dickerson v. New Banner Inst.*, 460 U.S. 103, 111-12 (1983) ("Whether one has been 'convicted' within the language of the gun control statutes is necessarily . . . a question of federal, not state, law," which "makes for desirable national uniformity unaffected by varying state laws, procedures, and definitions of 'conviction.'"); *United States v. Sherbondy*, 865 F.2d 996, 1004–05 (9th Cir. 1988) (concluding, even after *Dickerson*'s ruling was superseded through statutory amendment, that federal law still governs unless the federal statute at issue provides otherwise); *United States v. Maupin*, 520 F.3d 1304, 1306 (11th Cir. 2008) ("[t]he meaning of the word 'conviction' in a federal statute is a question of federal law unless Congress provides otherwise." (citing *Dickerson*, 460 U.S. at 119)). At least one district court

---

[32] In citing Substantial Implementation Review assessments, Plaintiffs concede that state law offenses must be compared to the federal offenses expressly identified in SORNA, 34 U.S.C. § 20911(3), (4), to determine a state offender's SORNA tier. [ECF 131-4 SUF 11, 19, 28.] Congress thereby sought to apply SORNA's obligations uniformly across jurisdictions.

---

has expressly applied this authority to SORNA, concluding that "convicted" has a standard federal meaning, consistent with SORNA's purpose to "make [sex offender registration requirements] more uniform" across jurisdictions." *United States v. Grant*, No. 1:17-CR-236, 2018 WL 4516008, at *10–14 (N.D. Ga. July 4, 2018), *R&R adopted*, 2018 WL 4140870 (N.D. Ga. Aug. 30, 2018). Finally, the 2008 Guidelines also explained that, "[]consistent with SORNA's purpose to establish 'a comprehensive national system for the registration of [sex] offenders,'" "the meaning of 'convicted' for purposes of SORNA is a matter of federal law, and its applicability is not determined by the terminology a jurisdiction uses in referring to the disposition of a criminal case." 73 Fed. Reg. at 38040 (quoting 34 U.S.C. § 20901). Plaintiffs' proposal that the meaning of "convicted" in SORNA varies based on state law therefore should be rejected.[33]

Plaintiffs' dispute—though it goes beyond anything addressed in the Rule or the 2008 Guidelines—thus boils down to whether Doe 2's § 1203.4 relief, together with his certificate of rehabilitation, served to nullify his original conviction. But the answer to that question is clearly no. California law makes clear that those who receive relief under § 1203.4 must continue to register unless they are entitled to relief from registration pursuant to Cal. Penal Code § 290.5, or they are "exonerated" pursuant to Cal. Penal Code § 3007.05(e). Cal. Penal Code § 290.007; *see also* PI Order at 46 (listing numerous other consequences of conviction that continue after § 1203.4 relief). Section 1203.4, by itself, thus does not change a person's status as "convicted," and required to register pursuant to § 290(c)(1), even under California

---

[33] Contrary to Plaintiffs' suggestion, SORNA's omission of an FBI registration option when a state lacks "a minimally sufficient sexual offender registration program" is not an express indication that state law governs. P.Br. 26 n.26 (quoting *Carr*, 560 U.S. at 453 n.7). By the time SORNA was enacted, all jurisdictions had "minimally sufficient" sex offender registries, *Carr*, 560 U.S. at 453 n.7, and SORNA's affirmative defense more broadly addresses situations where "uncontrollable circumstances" prevent registration. 18 U.S.C. § 2250(c).

---

law, nor does it "render the conviction a legal nullity," as would be required to change an offender's status under SORNA. *Jennings v. Mukasey*, 511 F.3d 894, 898-99 (9th Cir. 2007) (also stating § 1203.4 "does not, properly speaking, 'expunge' the prior conviction"); *Meyer v. Bd. of Med. Exam'rs*, 34 Cal. 2d 62, 67, 206 P.2d 1085, 1088 (1949) (holding § 1203.4 did not "purge [an individual] of the guilt inherent [in his prior conviction]"). Nor does a certificate of rehabilitation change that fact. Such relief is merely "a 'judicial recommendation for a pardon' under California law," in recognition of an offender's rehabilitation, "not a pardon itself or its equivalent," and not a recognition that the original conviction is a nullity. *See* PI Order 48 (quoting *People v. Ansell*, 25 Cal. 4th 868, 891 (2001)).[34] Defendants are entitled to judgment on this claim.

## V.    Plaintiffs Fail to Establish a Due Process Violation (Count III)

Defendants are also entitled to judgment on Plaintiffs' procedural due process claim. Procedural due process prohibits deprivation of a protected liberty or property interest without "adequate procedural protections," *Kildare v. Saenz*, 325 F.3d 1078, 1085 (9th Cir. 2003), which essentially consist of "notice and an opportunity to respond," *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Because offender registration, by itself, does not implicate due process, *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 5–8 (2003); *United States v. Fernandes*, 636 F.3d 1254,

---

[34] Plaintiffs make much of the examples identified in the 2008 Guidelines of state formulations that would not nullify a conviction, such as laws that continue to subject an offender to "penal consequences" or that "limit[] the publicity or availability of a conviction" but do not "deprive it of continuing legal validity," 73 Fed. Reg. at 38050. But those examples do not reflect a "shifting" position, P.Br. 25 n.25; rather, in each instance, the underlying conviction has not been nullified. Plaintiffs' repeated use of the term "expungement" also has no bearing on the meaning of "convicted" and simply confuses the issue. *United States v. Crowell*, 374 F.3d 790, 792–94 (9th Cir. 2004) (clarifying that the term "expunge" generally does not mean setting aside or nullifying a conviction but instead refers to the destruction or sealing of court records).

1257 (9th Cir. 2011), Plaintiffs' claim must be limited to the prospect of criminal prosecution under 18 U.S.C. § 2250. Yet Plaintiffs have not raised a due process challenge to § 2250 itself. Instead, as described above, Plaintiffs assert that an explanatory statement in the Rule, set forth in § 72.7(g), "presume[s] that defendants voluntarily failed to register . . . until they prove otherwise." P.Br. 17. However, § 72.7(g)(2) simply states that nothing in § 72.7(g)(1) changes a sex offender's "need to establish" the affirmative defense set forth in 18 U.S.C. § 2250(c). 28 C.F.R. § 72.7(g)(2). The regulation does not affect the statutory allocation of burdens. 86 Fed. Reg. at 69882 (§ 72.7(g) does not "shift" burdens). Plaintiffs point to nothing in the Rule suggesting otherwise, nor do they identify any SORNA prosecution where a court shifted applicable burdens because of § 72.7(g). Plaintiffs' claim thus rests on a fallacy and fails for that reason alone.

Even if construed as challenging § 2250 itself, Plaintiffs' claim fails. Any facial challenge fails because Plaintiffs identify no due process concerns in situations where offenders' registration jurisdictions would allow them to register as SORNA requires. Plaintiffs rely on a line of cases culminating with *Patterson v. New York*, 432 U.S. 197 (1977), addressing whether state criminal laws impermissibly shift to the defendant the burden of proving an element of the offense. But those cases examined the text of the criminal statutes at issue to ensure that "the prosecution [must] prove beyond a reasonable doubt all of the elements of the offense of which the defendant is charged," and that a "legislature" has not "declare[d] an individual guilty or presumptively guilty of a crime." *Id.* at 210.

Here, § 2250(a) by its plain terms requires the government to prove every element of the offense described, including that a defendant "fail[ed] to register" as SORNA requires, and that he did so "knowingly." 18 U.S.C. § 2250(a). Plaintiffs read into § 2250(a) the notion that a failure to register—which they call the "actus reus"—must be "voluntary." P.Br. 17. However, even if this notion is correct (and Plaintiffs cite no authority addressing voluntariness in connection with § 2250(a)),

§ 2250(a)(3) indisputably describes voluntary conduct—failing to register as required by SORNA—when considered on its face. Indeed, courts have recognized that "[t]he voluntary act requirement is a narrow one, removing only truly uncontrollable physical acts from criminal liability, and is easily satisfied even when a person acts under duress," in self-defense, or due to an "irresistible impulse" caused by insanity. *Takacs v. Engle*, 768 F.2d 122, 126-27. (6th Cir. 1985); *see State ex rel. Kuntz v. Montana Thirteenth Jud. Dist. Ct.,* 995 P.2d 951, 959 (omission to perform a legal duty is voluntary if offender would be "physically capable of performing" it). Even considered as-applied, Plaintiffs are not unable to register due to physical incapacity. Rather, their inability stems from external circumstances beyond their control—no different, in a legal sense, from any other "uncontrollable circumstance" that properly falls within the affirmative defense in § 2250(c).

Though Plaintiffs suggest that "the law cannot punish the impossible," P.Br. 18, neither of the two civil cases they cite addresses allocation of burdens in a criminal case. Contrary to Plaintiffs' suggestion, impossibility is commonly an affirmative defense.[35] By contrast, Plaintiffs identify no criminal law that, by its terms, places the burden on prosecutors to disprove impossibility, much less a longstanding tradition of doing so. *Cf. Patterson*, 432 U.S. at 210 ("Traditionally, due process has required that only the most basic procedural safeguards be observed," with "more subtle balancing" left to legislatures). Here, Congress established the affirmative defense in § 2250(c) to ensure that offenders will not be punished for failing to do what "uncontrollable circumstances" prevented them from doing. Nor is the burden of establishing a § 2250(c) affirmative defense onerous for

---

[35] *See, e.g.*, 18 U.S.C. §§ 1204(c)(3) (impossibility defense to international parental kidnapping); 3146(c) ("uncontrollable circumstances" affirmative defense to bail jumping); Ninth Circuit Model Criminal Jury Instruction 24.20 (2022); *People v. Cressey*, 2 Cal.3d 836, 844 (1970) (inability to pay child support would be affirmative defense to violation of Cal. Penal Code § 270).

those who, like Plaintiffs, have documentation that they have been removed from the California registry. DSUF 181; Segal Decl. ¶ 8.

Courts have intervened in statutorily allocated burdens only in narrow circumstances not present here. Failing to comply with a known legal duty—the offense described in § 2250(a)—is not a "status" akin to the drug addiction addressed in *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (reversing conviction on Eighth Amendment grounds), nor does it lead to a presumption of guilt based on "mere proof of the identity of the accused," *Patterson*, 432 U.S. at 210. Indeed, the Supreme Court recently emphasized its prior refusal to extend *Robinson*'s "narrow holding" to "'involuntary' acts," and suggested that courts should instead consider that "a variety of other legal doctrines and constitutional provisions work to protect those in our criminal justice system from a conviction"—including the availability of affirmative defenses. *City of Grants Pass v. Johnson*, 144 S. Ct. 2202, 2220 (2024) (citing *Powell v. Texas*, 392 U.S. 514, 534-35 (1968)).

A due process assessment of § 2250 should conclude that the affirmative defense identified in § 2250(c) provides adequate procedural protection by allowing an offender to raise *any* "uncontrollable circumstances" that might have prevented him from registering as SORNA required. *See* 18 U.S.C. § 2250(c)(1). In most if not all instances, the offender is best equipped to know whether such circumstances exist and what they are—a relevant factor when assigning burdens, as Plaintiffs concede, P.Br. 18 n.15. Here, for example, Plaintiffs possess official documentation showing their removal from California's registry. DSUF 181. The statute's facial allocation of burdens makes sense, and Plaintiffs offer no principled distinction between offenders who cannot register because California will not let them, and other offenders who cannot register due to some other "uncontrollable circumstance." Under Plaintiffs' logic, prosecutors would have to prove the absence of every conceivable circumstance that might make a violation unavoidable, and indeed, every affirmative defense would violate due process as applied to anyone able to

invoke it. But that is not the law. *Patterson*, 432 U.S. at 210 ("Proof of the nonexistence of all affirmative defenses has never been constitutionally required.").

Although the Court issued a preliminary injunction based on Plaintiffs' due process claim, it should rule for Defendants at summary judgment. In addition to the problems with Plaintiffs' position described above, the PI Order misconstrued applicable case law. First, the Order erroneously read Ninth Circuit authority as bolstering Plaintiffs' due process claim. *See* PI Order at 26. But the two cited cases simply held that, where prosecutors had proven the defendant knew he was required to register under state law, they need not prove that the defendant *also* knew he was required to register under SORNA. *See United States v. Crowder*, 656 F.3d 870, 876-77 (9th Cir. 2011) (government must prove "that a convicted sex offender knew of a registration requirement and knowing failed 'to register or update a registration'"); *United States v. Elkins*, 683 F.3d 1039, 1041 & n.2, 1050 (9th Cir. 2012) (rejecting defendant's due process defense where defendant was informed of lifetime registration obligation under state law and of obligations if he moved to another state). Nothing in *Crowder* or *Elkins* relieves the government of proving a defendant's knowledge. Thus, if the only registration requirements at issue are federal, the government would have to prove knowledge of a requirement to registser under federal law (SORNA)—a task that would likely be more difficult when—as is the case for Doe 2-4 here—a defendant has received express notice that he is *not* required to register under California law. In that situation, the mens rea requirement provides enhanced procedural protection and mitigates any due process concerns, just as Defendants have previously argued. Def. PI Opp. at 20; *cf. Vill. of Hoffman Ests. v. Flipside*, 455 U.S. 489, 499 (1982).[36]

---

[36] Though Plaintiffs claim they "are left wondering whether and how often they must call to see if registration policy has changed," P.Br. 18 n.16, the mens rea requirement ensures that the government bears the burden to prove a sex offender became aware of any such change.

Second, the PI decision erroneously conflated the concept of "fair notice," as discussed in a Sixth Circuit vagueness analysis, with the "knowing" mens rea requirement in § 2250(a). But the former has no bearing on the latter. The Sixth Circuit concluded that the language of § 2250(a) was sufficiently clear that "a person of ordinary intelligence" who read it would understand (have "fair notice" of) what the statute prohibits. *See Willman.*, 972 F.3d at 827; *cf. United States v. Alexander*, 480 F. Supp. 3d 988, 998 (N.D. Cal. 2020) (vagueness is "an objective inquiry" that does not ask "whether the person being prosecuted . . . *actually* received a warning that alerted him or her that their behavior was subject to the statute"). By contrast, in a criminal prosecution (which *Willman* was not), prosecutors would have to prove beyond a reasonable doubt that the *defendant* knew he was required to register and failed to do so. Neither *Willman* nor the Sixth Circuit's earlier decision in *United States v. Felts*, 674 F.3d 599, 605 (6th Cir. 2012), suggests that due process requires judicial re-writing of the allocation of burdens in § 2250. Rather, if anything, *Felts'* rejection of a due process claim in the context of a specific prosecution shows why Plaintiffs' due process claim here is unripe. The notion that Plaintiffs face prosecution under § 2250(a) in a manner that would violate their due process rights "remains entirely hypothetical." *HSH, Inc. v. City of El Cajon*, 44 F. Supp. 3d 996, 1004-05 (S.D. Cal. 2014). Indeed, the record before the Court suggests instead that Plaintiffs could so easily establish an affirmative defense under § 2250(c) that it would hardly make sense for prosecutors to bring charges in the first place (and, as mentioned above, nothing in the record suggests charges are typical in such circumstances). Plaintiffs fail to show that any additional process is necessary. Rather, the affirmative defense provides adequate due process protection.

## VI.    The Rule's Internet Identifier Requirement Does Not Violate the First Amendment (Count IV)

Defendants also should be granted judgment on Plaintiffs' First Amendment challenge to the Rule's requirement that sex offenders provide registries with

Internet identifiers. *See* 28 C.F.R. § 72.6(b). As described above, in the 2008 KIDS Act, Congress specifically directed the Attorney General to require sex offenders to report this information, while also mandating that identifiers be exempted from public website posting. 34 U.S.C. § 20916(a), (c), (e)(2). Restating the same regulatory requirement that has been in effect since 2008, the Rule requires offenders to report identifiers used in "internet . . . communications or postings." 28 C.F.R. § 72.6(b). SORNA's structure ensures that the federal government will only receive identifier information that state registries actually collect—though California does not transmit identifiers to the federal government in any event. Segal Decl. ¶ 5.

The identifier reporting requirement satisfies applicable intermediate scrutiny under the First Amendment because it is "narrowly tailored to serve a significant governmental interest," and "leave[s] open ample alternative channels for communication of the information." *See Doe v. Harris*, 772 F.3d 563, 576-77 (9th Cir. 2014) (internal quotation omitted). The Ninth Circuit recognizes that the government "has a substantial interest in protecting vulnerable individuals, particularly children, from sex offenders, and the use of the Internet to facilitate that exploitation is well known." *Id.* at 577; *cf.* DSUF 36-41 (describing enactment of KIDS Act and material supporting compelling governmental interest). The identifier reporting requirement serves the same important interests that other SORNA reporting requirements serve, including deterrence and allowing law enforcement to identify and track sex offenders when warranted—here in the digital rather than physical realm, and limited to contexts where offenders use identifiers to "communicat[e] or post[]." *See Cox v. Garland*, No. CV 22-511, 2023 WL 3476996, at *5 (D.D.C. Apr. 26, 2023) ("By keeping track of sex offenders' whereabouts and routinely monitoring them, SORNA is intended to help law enforcement prevent the commission of sex crimes against minors, successfully investigate these crimes, and apprehend the perpetrators of such crimes." (citing 86 Fed. Reg. at 69871-74)), *aff'd*, No. 23-5108, 2023 WL 7261384 (D.C. Cir. Oct. 31, 2023); *United States v. Wass*,

954 F.3d 184, 192–93 (4th Cir. 2020) ("Congress intended SORNA's registration requirements . . . to keep track of sex offenders.").

The requirement is thus narrowly tailored because it "promotes a substantial government interest that would be achieved less effectively absent the regulation," *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)): Absent the requirement, law enforcement would face greater difficulty connecting online evidence to registered offenders. 86 Fed. Reg. at 69872; 73 Fed. Reg. at 38055. Even so, access to and use of such information is limited. *See* 34 U.S.C. § 20916(a), (c). The requirement does not prohibit any communication or post, nor does it expose offenders' identities to the public. *See id.* It thus leaves open ample channels for communication, including anonymous communication vis-à-vis the public.

Plaintiffs' arguments to the contrary rely on speculative and vague notions about the impact of a requirement that none of them ever have complied with and—barring some speculative change in California law—never will. For the same reasons their asserted subjective chill fails to support their standing, *supra* pp. 19-20, it also fails to show that the requirement burdens "substantially" more speech than necessary. Plaintiffs now concede that the Rule provision is "not identical" to the state law struck down in *Harris*, P.Br. 20. Those differences support the conclusion that the Rule provision here is narrowly tailored. First, as this Court already recognized, the Rule provision contains none of the inconsistencies or ambiguities present in the state law at issue in *Harris*, 772 F.3d at 578-79. *See* PI Op. at 33 (agreeing Rule is "more tailored to 'interactive communication'"). The statutory and regulatory language specifies a narrow category of identifiers to be reported—those an offender "uses" to identify himself in a website post or route a communication to a recipient. 28 C.F.R. § 72.6. The Court questioned whether identifiers used for "online chats" with a merchant's customer service were covered, PI Op. at 33, but neither the Court nor Plaintiffs have identified a single merchant that requires a

unique Internet identifier for such a purpose—a notion that is far from certain.[37] The Court also questioned the meaning of "routing," but in conjunction with the term "designation" (which means "name" or "label"), the term "routing" clearly refers to e-mail or instant messaging addresses or any similar personal identifier that serves to "route" a communication from the sender to a recipient. While IP addresses may "route" data, they identify computer locations, not individuals, so they are not included. *Cf.* 86 Fed. Reg. at 69862; 73 Fed. Reg. at 38055.[38] The category of identifiers covered is thus not "vague" as Plaintiffs suggest (though Plaintiffs raise no vagueness claim). Considering that online sexual exploitation occurs through a wide variety of online platforms, including gaming and e-commerce websites as well as social networking, DSUF 40, the reporting requirement would be less effective if did not extend to all identifiers used for communication or posting.[39]

The Court has already recognized that the Rule has "less significant" implications for anonymous speech, due to its prohibitions on public disclosure, and

[37] Such communications might instead take place within an existing online merchant or social media account (where one is already identified by name and email, which are already subject to reporting) or on a website where no identifier is required at all.

[38] The Court concluded that the Rule's requirement of "all" such designations, including "telephonic," appeared broader than the 2008 Guidelines, PI Op. at 33, but the Guidelines also required "all" such designations as well as telephone numbers, 73 Fed. Reg. at 38055. Neither the Court nor Plaintiffs identify any real difference between the Guidelines and the Rule in this regard. Moreover, Plaintiffs have not identified any injury relating to the requirement to provide telephone numbers— which each of them already provided for years to the California registry, apparently without experiencing any communicative "chill" as a result. Segal Decl. Ex. B (identifying telephone number as information California collects). Nor do Plaintiffs suggest that, to the extent the Rule covers identifiers used for online gaming or virtual reality platforms, it exceeds what the First Amendment would permit. To the contrary, the use of such platforms for child exploitation purposes is well established. *See, e.g.*, DSUF 40.

[39] Of course, registrants would not need to provide an update if no new identifier were used, and many platforms—such as Facebook, LinkedIn, Instagram, etc.— simply use names and e-mail addresses, *e.g.*, DSUF 162,

that it is "less burdensome than the problematic 24-hour update provision in *Harris* in multiple respects." PI Op. at 34-35; *cf. Harris*, 772 F.3d at 581-82 (referring favorably to another jurisdiction's 72-hour reporting window); 86 Fed. Reg. at 69880 (identifier changes may be reported within three business days by any means a jurisdiction allows). Although the Court noted the Ninth Circuit's concern in *Harris* that the former state provision at issue applied "in an across-the-board fashion," the Rule's uniform application of the Internet identifier requirement to all SORNA registrants is justified, particularly given the low burden that it imposes, the existing protections regarding the government's disclosure and use of identifiers, and the narrow class of offenders subject to SORNA in the first place. *See* 34 U.S.C. § 20911(5)-(7) (mainly requiring registration by persons convicted of sexually violent crimes or crimes involving sexual abuse or exploitation of children). The governmental interest in keeping track of such sex offenders is equally, if not more, significant in the digital context as in the physical world. As discussed, Internet identifiers may be used on a wide variety of platforms in the commission of child exploitation and other sex crimes, and identifiers may help law enforcement in investigating and preventing such crimes.[40] Accordingly, judgment should be granted to Defendants on this claim.

## **CONCLUSION**

For the foregoing reasons, summary judgment should be entered in favor of Defendants, and Plaintiffs' motion should be denied.

---

[40] Like Plaintiffs' First Amendment claim generally, this issue has little, if any, real-world import in California because California only collects Internet identifiers from a subcategory of offenders based on a court order. Cal. Penal Code § 290.024. Plaintiffs do not fall in this subcategory, and their claim should be dismissed as prudentially unripe if not on jurisdictional grounds as discussed above. *Colwell v. HHS*, 558 F.3d 1112, 1128–29 (9th Cir. 2009) (dismissing claim as unripe where postponing review imposed no "immediate, direct, and significant" hardship).

Dated: January 17, 2025          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
JOSHUA E. GARDNER
Special Counsel, Federal Programs Branch

 /s/
JEREMY S.B. NEWMAN (D.C. #1024112)
KATHRYN L. WYER (D.C. #90023642)
U.S. Department of Justice, Civil Division
1100 L Street, N.W.
Washington, DC  20005
Tel. (202) 616-8475/Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for the Defendants*