UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 22-0855 JGB (SPx)** | Date | April 9, 2026 |
| Title | ***John Doe, et al. v. U.S. Department of Justice, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING-IN-PART and DENYING-IN-PART Plaintiffs' Motion for Summary Judgment (Dkt. No. 131); (2) GRANTING-IN-PART and DENYING-IN-PART Defendants' Motion for Summary Judgment (Dkt. No. 136); (3) GRANTING the Parties' Applications to File Under Seal (Dkt. Nos. 134-35, 139-40); and (4) VACATING the April 13, 2026, Hearing (IN CHAMBERS)**

Before the Court are (1) a motion for summary judgment filed by Plaintiffs John Doe # 2, John Doe # 3, John Doe # 4 (jointly, "Doe Plaintiffs"), and the Alliance for Constitutional Sex Offense Laws (collectively, "Plaintiffs") ("PMSJ," Dkt. No. 131) and (2) a motion for summary judgment filed by Defendants United States Department of Justice ("DOJ") and Merrick B. Garland, Attorney General of the United States, in his official capacity (collectively, "Defendants") ("DMSJ," Dkt. No. 136) (together, the "Motions") pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motions, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the PMSJ and **GRANTS-IN-PART** and **DENIES-IN-PART** the DMSJ. The April 13, 2026, hearing is **VACATED**.

## I.    BACKGROUND

On May 24, 2022, Plaintiffs John Doe #1 ("Mr. Doe #1") and the Alliance for Constitutional Sex Offense Laws ("ACSOL") filed a complaint against Defendants. ("Complaint," Dkt. No. 2.) On June 3, 2022, Plaintiffs filed a motion for preliminary injunction.

("First Motion for Preliminary Injunction," Dkt. No. 13.) The same day, Plaintiffs filed a motion for leave to proceed using a pseudonym. (Dkt. No. 14.)

On September 28, 2022, the Court denied the First Motion for Preliminary Injunction without prejudice. ("Order Denying First Motion for Preliminary Injunction," Dkt. No. 40.) The Court denied the First Motion for Preliminary Injunction for lack of standing and granted Plaintiffs leave to file an amended complaint by October 11, 2022. (Id.)

On October 11, 2022, Plaintiffs Mr. Doe #1, John Doe #2 ("Mr. Doe #2"), John Doe # 3 ("Mr. Doe #3"), John Doe #4 ("Mr. Doe #4"), and ACSOL filed a first amended complaint. ("FAC," Dkt. No. 41.) The FAC alleges four causes of action: (1) violation of the U.S. Constitution—non-delegation doctrine and separation of powers; (2) violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(c)—rule in excess of statutory authority; (3) violation of the U.S. Constitution—due process; and (4) violation of the U.S. Constitution—First Amendment. (See FAC.) These claims challenge a final administrative rule (the "Rule" or the "2021 Rule") which specified various registration requirements under the Sex Offender Registration and Notification Act ("SORNA"). Registration Requirements Under the Sex Offender Registration and Notification Act, 86 Fed. Reg. 69856 (Dec. 8, 2021).

On October 19, 2022, Plaintiffs filed a renewed motion for preliminary injunction. ("Second Motion for Preliminary Injunction," Dkt. No. 44.) The same day, Plaintiffs filed a motion for leave to proceed using pseudonyms. (Dkt. No. 45.) On October 20, 2022, the Court approved the motion for leave to proceed using pseudonyms. (Dkt. No. 46.)

On January 13, 2023, the Court granted the Second Motion for Preliminary Injunction. ("PI Order," Dkt. No. 55.) In the PI Order, the Court held that Plaintiffs demonstrated a likelihood of success on their due process claim and a substantial question going to the merits on their First Amendment claim. (See id.) Plaintiffs did not demonstrate a likelihood of success on their nondelegation and APA claims. (See id.)

On February 13, 2023, Defendants filed a motion to dismiss the FAC. ("MTD," Dkt. No. 56.) On March 14, 2023, Defendants filed a notice of appeal of the PI Order. (Dkt. No. 61.) On March 15, 2023, Plaintiffs filed a notice of cross-appeal of the PI Order. (Dkt. No. 62.) On March 20, 2023, the parties filed a stipulation to stay the case pending resolution of their respective appeals. (Dkt. No. 65.) On March 29, 2023, the Court approved the stipulation and stayed the case. (Dkt. No. 66.) On April 13, 2023, the Ninth Circuit Court of Appeals dismissed the appeals following the parties' joint motion of voluntary dismissal. (Dkt. Nos. 67, 68.) On April 14, 2023, the parties filed a status report. ("Status Report," Dkt. No. 69.) On April 19, 2023, the Court reopened the case and set a briefing schedule and hearing on the MTD. (Dkt. No. 70.) On July 5, 2023, the Court denied the MTD. ("MTD Order," Dkt. No. 76.) On August 2, 2023, Defendants answered the FAC. ("Answer," Dkt. No. 79.)

On December 15, 2023, Defendants produced a Certified Administrative Record ("CAR") for the 2021 Rule. (See "CAR Certification" or "CAR," Dkt. No. 86.) On January

**CIVIL MINUTES—GENERAL**   Initials of Deputy Clerk MG

23, 2024, Plaintiffs filed a motion to supplement the administrative record, requesting that the Court order Defendants to supplement the CAR with the full administrative records for two sets of guidelines issued by the Attorney General in the years before its issuance of the 2021 Rule: the 2008 Guidelines and 2011 Supplemental Guidelines.  ("Motion to Supplement," Dkt. Nos. 93-94.)  On April 5, 2024, the Court granted that motion in full and ordered that the CAR be supplemented to include the full administrative records for the 2008 and 2011 Guidelines. ("Supplement Order," Dkt. No. 113.)  On April 19, 2024, Defendants filed a motion for reconsideration of the Supplement Order.  ("Reconsideration Motion," Dkt. No. 115.)  On June 6, 2024, the Court granted-in-part and denied-in-part the Reconsideration Motion. ("Reconsideration Order," Dkt. No. 124.)  The Court found that Defendants were obligated to produce documents and materials supporting the 2008 Guidelines for inclusion in the administrative record but were not obligated to do the same for the 2011 Guidelines.  (Id.) Defendants produced the supporting comments and materials for the 2008 Guidelines on June 24, 2024.  (Dkt. No. 125.)

On August 5, 2024, Plaintiff Mr. Doe # 1 filed a notice of voluntary dismissal of individual claims pursuant to Federal Rule of Civil Procedure 41(a)(1)(A).  (Dkt. No. 128.)  On October 10, 2024, the parties filed a stipulation to vacate the trial date and pre-trial deadlines, asserting that "this case can be resolved through cross-motions for summary judgment . . . ."  ("Stipulation," Dkt. No. 129.)  The Court approved the Stipulation on October 23, 2024, and vacated the trial date and all associated pre-trial deadlines.  (Dkt. No. 130.)

On November 18, 2024, Plaintiffs moved for summary judgment.  (PMSJ.)  In support of the PMSJ, Plaintiffs filed the following documents:

- Statement of Undisputed Facts ("Pl. SUF," Dkt. No. 131-4);
- Declaration of Mr. Doe # 2 ("Doe 2 Decl.," Dkt. No. 131-5) with attached exhibits;
- Declaration of Mr. Doe # 3 ("Doe 3 Decl.," Dkt. No. 131-6) with attached exhibits;
- Declaration of Mr. Doe # 4 ("Doe 4 Decl.," Dkt. No. 131-7) with attached exhibits;
- Declaration of Janice Bellucci, Executive Director of ACSOL ("Bellucci Decl.," Dkt. No. 131-8), with an attached exhibit; and
- Declaration of attorney Molly Dixon ("Dixon Decl.," Dkt. No. 131-9) with an attached exhibit.

On January 17, 2025, Defendants filed a joint opposition to the PMSJ and a motion for summary judgment.  (DMSJ.)  In support of the DMSJ, Defendants filed the following documents:

- Defendants' Statement of Undisputed Facts ("Def. SUF," Dkt. No. 136-2);
- Defendants' Statement of Genuine Disputes of Material Fact ("Def. SGDMF," Dkt. No. 136-3);
- Declaration of Kathryn Wyer ("Wyer Decl.," Dkt. No. 4) with attached exhibits; and
- Declaration of Brian Segal ("Segal Decl.," Dkt. No. 13) with attached exhibits.

---

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk MG

Defendants also filed an application to file their DMSJ under seal, which is **GRANTED**. (Dkt. No. 134.) Plaintiffs filed a combined Opposition to Defendants' Motion for Summary Judgment and Reply in support of their PMSJ on February 25, 2025. ("Pl. Opp'n," Dkt. No. 141.) Plaintiffs also filed an application to file their Pl. Opp'n under seal, which is **GRANTED**. (Dkt. No. 139.) On April 11, 2025, Defendants filed their reply in support of the DMSJ. ("Def. Reply," Dkt. No. 146.)

## II.  FACTS

### A.  Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); see Fed. R. Civ. P. 56(e). For summary judgment, courts consider evidence with ***content*** that would be admissible at trial, even if the ***form*** of the evidence would not be admissible at trial. See, e.g., Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). The Court considers the parties' objections only where necessary.[1] All other objections are **OVERRULED AS MOOT**.

### B.  Undisputed Facts

The following material facts are sufficiently supported by admissible evidence and are uncontroverted, except as noted. They are "admitted to exist without controversy" for purposes of the Motions. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

#### 1.  John Doe #2

Mr. Doe #2 is a resident of California. (Doe #2 Decl. ¶ 1.) He was convicted in 2005 of one count of sexual battery under California Penal Code section 243.4(a). (Id. at Ex. A.) He was sentenced to 30 days in jail and three years' probation. (Id.) The conviction was reduced to a misdemeanor on December 5, 2008. (Id.) At the time, he was required to register as a sex offender for life in California. (Id.) On April 4, 2012, Mr. Doe #2's "plea, verdict, or finding of guilt" was "set aside and vacated," and a "plea of not guilty . . . entered[.]" (Id.) In 2016, the court issued a Certificate of Rehabilitation pursuant to Cal. Penal Code section 4852.01. (Id. at Ex. B, C.) Under California law, he is no longer required to register as a sex offender. (Id.) Under the most recently available federal review of California laws, Mr. Doe #2's statute of conviction qualifies as a Tier III offense, requiring lifelong registration under SORNA. See Department of Justice, SORNA Substantial Implementation Review State of California, at 23

---

[1] "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are therefore "redundant" and unnecessary to consider here. Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").

(April 2024) ("2024 California Review").  The Rule requires Mr. Doe #2 register and comply with the Rule's requirements.[2]  (Doe #2 Decl. ¶ 8.)

### 2. John Doe #3

Mr. Doe #3 is a resident of California.  (Doe #3 Decl. ¶ 1.)  He was convicted in 1997 of Cal. Penal Code § 288(a), lewd and lascivious acts with a minor under the age of 14.  (Id. at Ex. A.)  At the time, he was required to register as a sex offender for life in California.  (Id.)  In 2012, he was convicted of a misdemeanor for failure to register under Cal. Penal Code § 290(g)(1).  (Id.)  On December 18, 2015, Mr. Doe #3's "pleas, verdicts, or findings of guilt" were "set aside and vacated," and a "plea of not guilty . . . entered . . . and . . . the complaint . . . dismissed[.]"  (Id. at Ex. B.)  In 2022, Mr. Doe #3 successfully petitioned to be removed from the California registry under Cal. Penal Code § 290.5.  (Id. at Ex. C.)  He is no longer required to register as a sex offender under California law.  (Id. at Ex. C, D.)  Under the most recently available federal review of California laws, Mr. Doe #3's statute of conviction qualifies as a Tier II offense, resulting in a minimum 25-year registration period under SORNA.  See 2024 California Review at 22.  The Rule requires Mr. Doe #3 to register and comply with the Rule's requirements.[3]  (Doe #3 Decl. ¶ 9.)

A county sheriff's detective told Mr. Doe #3's attorney that the federal sex offender registry compiles state records, and that registration requirements are managed by states, rather than federal authorities.  (Id. ¶ 6, Ex. F.)  The detective stated that his office does not handle federal registration, and that he was unaware of any agency that does.  (Id.)

### 3. John Doe #4

Mr. Doe #4 is a resident of California.  (Doe #4 Decl. ¶ 1.)  He was convicted in 1996 of violation of Florida Statute 800.04 for lewd and lascivious conduct with a child under 16.  (Id. at Ex. A.)  Mr. Doe #4's conviction required lifelong registration in Florida.  (Id. ¶ 3, Ex. A.)  When Mr. Doe #4 moved to California, he was also subject to lifelong registration in California.  (Id. ¶ 5.)  In 2022, Mr. Doe #4 successfully petitioned for removal from Florida's registry.  (Id. at Ex. B.)  He successfully petitioned for removal from California's registry in 2023.  (Id. at Ex. C.)  A federal government review of Florida laws in 2010 classified Mr. Doe #4's statute of conviction

---

[2] Defendants inadequately dispute this fact.  (See "Standing Order," Dkt. No. 9, at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed . . . .").)  They object to this fact because of the existence of an affirmative defense in the criminal statute creating penalties for failure to comply with the Rule.  But the existence of a defense on which a defendant has the burden not mean that the Rule does not apply to Mr. Doe #2.  By that logic, no one could be charged with murder if they said they acted in self-defense.

[3] Defendants inadequately dispute this fact.  (See "Standing Order," Dkt. No. 9, at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed . . . .").)  See fn. 2.

---

**CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk MG

as Tier III in certain circumstances.  See Department of Justice, SORNA Substantial Implementation Review State of Florida at 3 (May 2010).  The Rule requires Mr. Doe #4 to register and comply with the Rule's requirements.[4]  (Doe #4 Decl. ¶ 12.)

### 4. The Alliance for Constitutional Sex Offense Laws

The Alliance for Constitutional Sex Offense Laws ("ACSOL") is a California-based nonprofit organization working to restore the civil rights of people listed in public registries and their families.  (Bellucci Decl. ¶ 6.)  ACSOL has members within the Central District of California.  (Id. ¶ 8.)  One of ACSOL's central purposes is limiting unlawful registration requirements for its membership to help its members live law-abiding and productive lives as part of their communities.  (Id. ¶ 9.)  John Does #2 and #4 are members of ACSOL.  (Deposition of John Doe #2 ("Doe #2 Depo."), PMSJ, Ex. 1-7; Doe #4 Decl., Ex. C.).

### 5. The 2021 Rule

In 2006, Congress enacted SORNA.  Pub. L. No. 109-248, §§ 102-155, 120 Stat. 587 (2006).  By 1996, a decade before SORNA's enactment, all 50 states and the District of Columbia had their own sex offender registration systems in place.  See Gundy v. United States, 588 U.S. 128, 132 (2019).  Congress's purpose in enacting SORNA was to address loopholes in state registration systems that resulted in more than 100,000 sex offenders being unregistered by establishing "a comprehensive national system for the registration of [sex] offenders" that would make "'more uniform and effective' the prior 'patchwork' of sex-offender registration systems" and enhance the ability to keep track of sex offenders when they move to a different jurisdiction for residence, work, or study.  Id. at 132–33.

SORNA conditions certain federal funding on whether a jurisdiction "substantially implement[s]" the statute.  34 U.S.C. § 20927(a).  SORNA defines a "sex offender" as "an individual who was convicted of a sex offense."  34 U.S.C. § 20911(1).  SORNA sets forth a statutory definition of "sex offense" and defines three tiers of sex offenses in part based on whether an offense "is comparable to or more severe than" specified federal offenses.  34 U.S.C. § 20911(2)-(8).  SORNA requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."  34 U.S.C. § 20913(a).  "Jurisdiction" refers to, among other things, states.  34 U.S.C. § 20911(10).

SORNA sets forth a list of information that a sex offender must provide to a relevant jurisdiction's sex offender registry, including the sex offender's name; alias; social security number; address; name and address of place of employment; name and address of the place where the sex offender is a student; vehicle description and license plate number; and "[a]ny

---

[4] Defendants inadequately dispute this fact.  (See "Standing Order," Dkt. No. 9, at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed . . . .").)  See fn. 2.

other information required by the Attorney General." 34 U.S.C. § 20914(a). SORNA identifies registration periods for sex offenders depending on their tiers: Tier I offenders' full registration period is 15 years; tier II sex offenders' full registration period is 25 years; and tier III sex offenders' registration period is the life of the offender. 34 U.S.C. § 20915(a). SORNA allows a sex offender's full registration period to be reduced when an offender qualifies for a "clean record" reduction as set forth in 34 U.S.C. § 20915(b).

SORNA directs the Attorney General to maintain a "national database," to be known as the National Sex Offender Registry ("NSOR"), of information provided to jurisdictions' sex offender registries and to ensure, through NSOR or otherwise, that "updated information about a sex offender is immediately transmitted by electronic forwarding to all relevant jurisdictions." 34 U.S.C. § 20921.

SORNA makes it a crime punishable by fine and/or imprisonment of not more than 10 years for a person who is required to register under SORNA, who "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country," and who "knowingly fails to register or update a registration as required by" SORNA. 18 U.S.C. § 2250(a). The statute contains an affirmative defense comprised of three elements:

(1) uncontrollable circumstances prevented the individual from complying;
(2) the individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and
(3) the individual complied as soon as such circumstances ceased to exist.

18 U.S.C. § 2250(c).

The Attorney General proposed SORNA guidelines for registration jurisdictions in 2007, soliciting public comments. 72 Fed. Reg. 30210 (May 30, 2007). The proposed guidelines stated that "[s]ince the SORNA registration requirements are predicated on convictions, registration (or continued registration) is normally not required under the SORNA standards if the predicate conviction is reversed, vacated, or set aside, or if the person is pardoned for the offense on the ground of innocence. This does not mean, however, that nominal changes or terminological variations that do not relieve a conviction of substantive effect negate the SORNA requirements." 72 Fed. Reg. at 30216.

The proposed guidelines identified as an example that "the need to require registration would not be avoided by a jurisdiction's having a procedure . . . under which the convictions of such sex offenders may nominally be 'vacated' or 'set aside,' but the sex offender is nevertheless required to serve what amounts to a criminal sentence for the offense." Id. The proposed guidelines also stated that "the sealing of a criminal record or other action that limits the publicity or availability of a conviction, but does not deprive it of continuing legal validity, does not change its status as a 'conviction' for purposes of SORNA." Id.

Following notice and comment, the Attorney General promulgated National Guidelines for Sex Offender Registration and Notification ("2008 Guidelines") on July 2, 2008. 73 Fed. Reg. 38030 (July 2, 2008). The promulgated guidelines contained the same statements as the proposed guidelines quoted above. See 73 Fed. Reg. at 38050. In the 2008 Guidelines, the Attorney General cited to SORNA's statutory authority in 34 U.S.C. § 20914(a)(8) (then (a)(7)) as a basis to require sex offenders to provide additional "types of information that are not expressly required by SORNA § 114, such as e-mail addresses and comparable Internet identifiers, telephone numbers, temporary lodging information, travel document information, professional license information, and date of birth information." Id. at 38042, 38054-58.

On October 13, 2008, Congress enacted the Keeping the Internet Devoid of Sexual Predators ("KIDS") Act. Pub. L. No. 110-400, 122 Stat. 4224 (2008). The KIDS Act directs the Attorney General to exercise authority under 34 U.S.C. § 20914(a)(8) (then (a)(7)) to "require that each sex offender provide to the sex offender registry those Internet identifiers the sex offender uses or will use of any type that the Attorney General determines to be appropriate under that Act." 34 U.S.C. § 20916(a).[5] The KIDS Act defines "Internet identifiers" as "electronic mail addresses and other designations used for self-identification or routing in Internet communication or posting." 34 U.S.C. § 20916(e)(2). The KIDS Act provides that the "records of Internet identifiers shall be subject to the Privacy Act (5 U.S.C. 552a) to the same extent as other records in the National Sex Offender Registry." 34 U.S.C. § 20916(a). The KIDS Act also directs the Attorney General to exercise authority under 34 U.S.C. § 20920(b)(4) to "exempt from disclosure all information provided by a sex offender under" 34 U.S.C. § 20916(a).[6] 34 U.S.C. § 20916(c). The KIDS also directs the Attorney General to exercise authority under 34 U.S.C. § 20914(b) to "specify the time and manner for keeping current" the Internet identifier information that the KIDS Act required.[7] 34 U.S.C. § 20916(b).

On January 11, 2011, in supplemental guidelines issued following notice and comment, the Attorney General stated his position that the 2008 Guidelines' specification of Internet identifiers as information that offenders must provide, and their specification that changes in

---

[5] Plaintiffs inadequately dispute this fact. (See "Standing Order," Dkt. No. 9, at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed . . . .").) Plaintiffs contend that the statute under which the Attorney General is directed to exercise authority is in dispute, and thus the scope of the authority granted to the Attorney General and the relationship between these statutory provisions are questions of law. The cited statute does, however, direct the Attorney General to require provision of Internet identifiers. Whether the statute's direction is legally *valid* may be disputable, but not what the statute says.

[6] Plaintiffs inadequately dispute this fact. (See "Standing Order," Dkt. No. 9, at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed . . . .").) See fn. 5 for further analysis.

[7] Plaintiffs inadequately dispute this fact. (See "Standing Order," Dkt. No. 9, at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed . . . .").) See fn. 5 for further analysis.

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk MG

identifiers must be reported "within three business days" by any means that a jurisdiction allows, satisfies the KIDS Act's directives in 34 U.S.C. § 20914(a) and (b).  Supplemental Guidelines for Sex Offender Registration and Notification ("2011 Guidelines"), 76 Fed. Reg. 1630, 1637 (Jan. 11, 2011) (internal citations omitted).  The 2011 Guidelines also reflected the Attorney General's efforts to implement 34 U.S.C. § 20916(c) by providing that "jurisdictions cannot, consistent with SORNA, include sex offenders' Internet identifiers (such as e-mail addresses) in the sex offenders' public Web site postings or otherwise list or post sex offenders' Internet identifiers on the public sex offender Web sites."  76 Fed. Reg. at 1637.

On December 8, 2021, the Attorney General issued a rule entitled Registration Requirements Under the Sex Offender Registration and Notification Act (the "Rule").  86 Fed. Reg. 69856.  The Rule became effective on January 7, 2022.  (Id.)  Under the Rule, "sex offenders can be held liable for violating any requirement stated in this rule, regardless of when they were convicted, and regardless of whether the jurisdiction in which the violation occurs has adopted the requirement in its own law."  86 Fed. Reg. at 69686.[8]

In the Rule, the Attorney General asserted "authority to specify the requirements of SORNA and their applicability as provided in this part pursuant to provisions of SORNA, including 34 U.S.C. 20912(b), 20913(d), and 20914(a)(8), (c)."  86 Fed. Reg. at 69884.

The Rule requires registrants to provide information including the registrant's date of birth, "remote communication identifiers," temporary lodging information, all passport and immigration information, information about where the registrant's vehicles are kept, and all processional licenses.  86 Fed. Reg. at 69880.  California has never collected Internet identifiers from registered sex offenders whose sex offense convictions occurred before January 1, 2017, and even in the limited circumstances where it collects Internet identifiers now, it does not transmit that information to the National Sex Offender Registry ("NSOR").  Cal. Penal Code § 290.024; Declaration of Brian Segal ("Segal Decl."), Dkt. No. 137-13 ¶ 5, Exs. B, C.  California generally does not accept Internet identifiers or other registration information from sex offenders who are no longer required to register under California law. (Segal Decl. ¶ 8.)

The Rule, consistent with SORNA, requires sex offenders to appear "in person" at least annually in their local jurisdiction for verification of their information.  86 Fed. Reg. at 698885-86; 34 U.S.C. § 20918.  The Rule also requires sex offenders to report, in person, address changes within three days; give advance notice if the sex offender intends to change residences, jobs, or schools; report changes in remote communication identifiers within three days; and give

---

[8] Defendants inadequately dispute this fact.  (See "Standing Order," Dkt. No. 9, at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed . . . .").)  Defendants argue that this "unqualified assertion disregards the limitations on SORNA's registration requirements and on liability for violations."  While the Rule goes on to address 18 U.S.C. § 2250's knowledge requirement and affirmative defenses, Plaintiffs' description of the Rule's statement is correct.  Plaintiff's omission of the Rule's additional elements does not render incorrect what they described.

**CIVIL MINUTES—GENERAL**        Initials of Deputy Clerk MG

advance notice of any international travel plans before the trip. 86 Fed. Reg. at 69886. The requirement to report changes in name, residence, employment, or student status appears in 34 U.S.C. § 20913. 34 U.S.C. § 20913(c). The requirement to report international travel appears in 34 U.S.C. § 20914. 34 U.S.C. § 20914(a)(7).

A 2024 review of California's compliance with SORNA by DOJ found that "California has not yet substantially implemented SORNA." 2024 California Review at 18.

At the time of their declarations in this case, Mr. Doe #2, Mr. Doe #3, and Mr. Doe #4 "aspire[d] to travel interstate." (Doe #2 Decl. ¶ 9; Doe #3 Decl. ¶ 7; Doe #4 Decl. ¶ 8.)

The Rule requires that the Doe Plaintiffs disclose their remote communication identifiers.[9] (Doe #2 Decl. ¶ 10; Doe #3 Decl. ¶ 10; Doe #4 Decl. ¶ 12.) Mr. Doe #2, Mr. Doe #3, and Mr. Doe #4 seek to engage in anonymous speech on the internet through the use of anonymous remote communication identifiers, such as email addresses and social media usernames, and have refrained from doing so.[10] (Doe #2 Decl. ¶ 13; Doe #3 Decl. ¶ 13; Doe #4 Decl. ¶¶ 15-16.)

---

[9] Defendants inadequately dispute this fact. (See "Standing Order," Dkt. No. 9, at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed . . . .").) Defendants argue that the Doe Plaintiffs are entitled to the affirmative defense set forth in 18 U.S.C. § 2250(c) because the Doe Plaintiffs cannot register their remote communication identifiers in California because California will not register them. Defendants have not challenged that the Rule requires the Doe Plaintiffs to register, merely that an affirmative defense is available to them if they are prosecuted for failing to register.

[10] Defendants inadequately dispute this fact. (See "Standing Order," Dkt. No. 9, at 7 ("If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed . . . .").) Defendants contend that the Doe Plaintiffs have not "identifie[d] a plausible desire to engage in anonymous online speech." Defendants cite as evidence that Doe #2 and Doe #3 only use the Internet for a limited purpose of work and connecting with people they know on Facebook or email; Doe #4 does not specify any messages he wishes to convey anonymously; and Doe #2 and Doe #4 are already publicly identified online as sex offenders or former sex offenders. None of these arguments undermine the Doe Plaintiffs' assertions that they wish to engage in anonymous online speech. Rather, the Doe Plaintiffs' limited use of the Internet is perfectly consistent with their present refrain from posting because of their concern that their anonymous communications will not actually remain anonymous. Additionally, that Doe #2 and Doe #4 are *somewhere* on the Internet identified as sex offenders or former sex offenders does not eliminate their interest in anonymous speech in other areas of the Internet. Finally, each Doe Plaintiff states an interest in speaking anonymously about issues of public concern, including sex offender registration requirements and the unfairness of the new SORNA rule. Asking Plaintiffs to share more would effectively strip their speech of the very anonymity they wish.

### III.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the nonmoving party's case. Id. at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. Id.; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the nonmoving party must then show that there is a genuine issue of material fact that must be resolved at trial. Celotex, 477 U.S. at 324. The nonmoving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. Id. at 322; Anderson, 477 U.S. at 252. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. "This burden is not a light one. The nonmoving party must show more than the mere existence of a scintilla of evidence." In re Oracle, 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the nonmoving party based on the record taken as a whole. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### IV.   DISCUSSION

Before the Court reaches the merits of each claim, it must be satisfied that Plaintiffs have standing. The substantive merits discussions follow. Because, as detailed below, the Court finds that Plaintiffs lack standing to bring their First Amendment claim, that claim is not substantively addressed.

### A. Standing

Defendants continue to contest Plaintiffs' standing. To establish Article III standing, (1) "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and (3) "it

must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision." <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted).  A plaintiff must establish standing with respect to each claim and form of relief.  <u>See</u> <u>Wildearth Guardians v. United States EPA</u>, 759 F.3d 1064, 1070–1072 (9th Cir. 2014) (organization had standing to challenge only certain EPA decisions); <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 185 (2000) (requiring plaintiff to show standing separately for injunctive relief and civil penalties).

At the summary judgment stage, Plaintiffs must "submit affidavits or other evidence showing, through specific facts," that they have standing.  <u>Lujan</u>, 504 U.S. at 563.

To satisfy Article III's standing requirements in the context of a pre-enforcement challenge, a plaintiff must show that they face "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."  <u>Babbitt v. United Farm Workers National Union</u>, 442 U.S. 289, 298 (1979).  A plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough." <u>Id.</u> (quoting <u>Pennsylvania v. West Virginia</u>, 262 U.S. 553, 593) (1923)).  "When contesting the constitutionality of a criminal statute, it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights.'"  <u>Id.</u> (quoting <u>Steffel v. Thompson</u>, 415 U.S. 452, 459 (1974)).  "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'"  <u>Id.</u> (quoting <u>Doe v. Bolton</u>, 410 U.S. 179, 188 (1973)).  Where, however, the feared prosecution is too "imaginary" or "speculative," there is no standing.  <u>Id.</u> (quoting <u>Younger v. Harris</u>, 401 U.S. 37, 42 (1971)).  "In evaluating the genuineness of a claimed threat of prosecution," courts "look to whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute."  <u>Thomas</u>, 220 F.3d at 1139.  The severity of the potential penalty (whether, for example, the feared enforcement would be civil or criminal) is also relevant.  <u>See, e.g.</u>, <u>id.</u> at 1141.

Defendants first argue that Plaintiffs lack standing to raise their second claim—an APA claim for promulgating a rule in excess of statutory authority—because an out-of-circuit court declined to review a claim raising "questions of statutory interpretation unconnected with" a plaintiff's "exercise of his constitutional rights."  (DMSJ at 14 (citing <u>Muthana v. Pompeo</u>, 985 F.3d 893, 911 (D.C. Cir. 2021) (internal citations omitted)).)  Yet Plaintiffs' second claim raises the constitutional issue of the limits on the Attorney General's authority to promulgate regulations.  Whether that claim is meritorious or not is not the question; even assuming Defendants' standard applies, Plaintiffs have pled a constitutional interest.

Defendants also assert that the Doe Plaintiffs "fail to identify a concrete intent to travel to another jurisdiction" and refer to Plaintiffs' plans for travel as "some day" intentions.  (DMSJ at

---

15 (citing Lujan, 504 U.S. at 564).)  It is somewhat disingenuous to compare Plaintiffs' intentions to travel over state lines within the United States for business and family purposes—especially given that they have in fact done so during the pendency of this case[11]—and the Lujan plaintiffs' speculative plans to travel overseas to Egypt and Sri Lanka to see endangered animals.  Interstate travel is not international travel, and the fact that Plaintiffs have continually expressed an intention to travel interstate and have repeatedly actually traveled, even if a specific trip is not on the books at all times while the case is pending, is sufficient.

Next, Defendants claim there is no credible threat of prosecution because Plaintiffs have failed to identify a history of past prosecution or enforcement.  (DMSJ at 15.)  While that is a factor in the Court's consideration, an evaluation of credible threat of prosecution is a balancing test that considers "(1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute."  McCormack v. Hiedeman, 694 F.3d 1004, 1021 (9th Cir. 2012) (internal quotations omitted).  Plaintiffs have plainly articulated a concrete plan to violate the law in question: they have and will travel interstate, know that SORNA requires them to register, and are not registering.  That there may be a defense to Plaintiffs' conduct does not negate the fact that they have not just a plan to, but in fact *have*, violated the statute's plain terms.  Further, prosecutions under 18 U.S.C. § 2250 have taken place.  See, e.g., Brohn v. United States, 2015 WL 1347198, at *1 (E.D. Cal. Mar. 24, 2015); USA v. Ikharo, 2025 WL 1393214, at *1 (N.D. Cal. May 14, 2025).

Even though those prosecutions may not have taken place against individuals in the Doe Plaintiffs' position, this is not an obscure, unenforced statute lying dormant in the federal criminal code.  The Rule itself reinforces that the Attorney General anticipates prosecutions under this statute, including under the circumstances facing Plaintiffs.  The Rule explicitly states that "sex offenders can be held liable for violating any requirement stated in this rule, regardless of when they were convicted, and regardless of whether the jurisdiction in which the violation occurs has adopted the requirement in its own law."  86 Fed. Reg. at 69868.  Such a statement communicates that the Attorney General believes liability can attach for precisely what Plaintiffs have done here.  Thus, even absent a specific threat by a prosecutor to these Plaintiffs or prosecution under the precise circumstances Plaintiffs face, there is a credible threat of prosecution.

Defendants further contend that Plaintiffs "lack standing to challenge exercises of delegated authority that do not affect them."  (DMSJ at 16.)  Yet the Attorney General's exercise of his delegated authority plainly affects Plaintiffs—the Rule uses the statutes' delegations to

---

[11] See Dkt. No. 141-5 ¶ 5 ("Doe #2 Opp'n Decl.") (referencing travel during 2024 to Nevada); Dkt. No. 141-6 ¶ 4 ("Doe #3 Opp'n Decl.") (referencing travel during 2024 to Florida, Nevada, Oregon, Washington, and Hawaii); Dkt. No. 141-7 ¶ 4 ("Doe #4 Opp'n Decl.") (referencing travel during 2024 to Pennsylvania).

promulgate the precise components Plaintiffs challenge.  Plaintiffs are not third parties to the Rule's dictates; they are precisely the people regulated by the Rule.

Defendants also allege that John Doe #2 lacks standing to bring an APA claim challenging the definition of "convicted."  (Id.)  Specifically, they argue that the Rule does not play a role in interpretating the meaning of "conviction," stating only that "[a]ll terms used in [the Rule] have the same meaning as in SORNA."  86 Fed. Reg. at 69884.  Elsewhere in the Rule, there is a reference to the effect of pardons on registration requirements.  Id. at 69866.  The Rule's response cites to the 2008 Guidelines in stating that "only pardons on the ground of innocence terminate registration obligations under SORNA."  Id.  Defendants argue that the reference to the 2008 Guidelines does not incorporate those guidelines and the response does not address an issue at play in Plaintiffs' case.  Because the 2008 guidelines are the real source of the interpretative issues Plaintiffs identify, Defendants contend that they cannot be challenged here.

But as the Court previously found, the reopening doctrine would seem to allow Plaintiffs to challenge the Rule.  (PI Order at 20.)  That doctrine "allows an otherwise stale challenge to proceed because 'the agency opened the issue up anew,' and then 'reexamined . . . and reaffirmed its [prior] decision.'"  P & V Enterprises v. U.S. Army Corps of Engineers, 516 F.3d 1021, 1023 (D.C. Cir. 2008) (citation omitted) (overruling on other grounds recognized by Jackson v. Modly, 949 F.3d 763 (D.C. Cir.), cert. denied sub nom. Jackson v. Braithwaite, 141 S. Ct. 875 (2020).  The doctrine applies "where the entire context . . . demonstrates that the agency . . . has undertaken a serious, substantive reconsideration of the existing rule."  Id. (citation, internal quotations and brackets omitted).  Courts within the Ninth Circuit have applied the reopening doctrine.  See, e.g., Oceana, Inc. v. Bryson, 940 F. Supp. 2d 1029, 1045 (N.D. Cal. 2013) (applying doctrine and collecting cases doing so).  The Court continues to find that the Rule constitutes a lengthy, substantive reconsideration of, and amendment to, previous agency regulation.  Even if many of its provisions previously existed and the Rule largely reaffirms them, the Attorney General opened its (previous) decisions up to legal challenge when he promulgated the Rule through notice and comment rulemaking.  Plaintiffs' challenge to the interpretation of the meaning of "convicted," even if attached to the 2008 Guidelines' position on the issue, therefore has standing.

With respect to Plaintiffs' due process challenge, Defendants argue that they lack standing because the Rule does not cause their injury, and therefore Plaintiffs' claims are not redressable.  (DMSJ at 18.)  First, the Court construes Plaintiffs' claim as an attack on both the Rule and the statute.  Defendants acknowledge this prospect and give the Court no reason not to do so.  (See id. at 32.)  The statute and the Rule together surely create the issue Plaintiffs allege.  Is it also possible to imagine that a version of the Rule could have been promulgated that interprets the statute in a manner limiting some of the problems Plaintiffs allege, thereby placing this limiting authority within Defendants' ambit.  In any event, because the Court considers the challenge as to the Rule and the statute, there is redressability and therefore standing.

Finally, Defendants challenge Plaintiffs' standing to assert their First Amendment claim.  (DMSJ at 19.)  While the Court previously found standing to assert this claim, a more developed

---

record now counsels a different outcome.  Plaintiffs have alleged that they refrain from speaking anonymously because of the possibility that, at some point, California might comply with the Rule and require them to share their remote communication identifiers, which would reveal anonymous speech to government officials and could risk their identities being revealed to the public.  (Doe #2 Decl. ¶ 13; Doe #3 Decl. ¶ 13; Doe #4 Decl. ¶¶ 15-16.)  The Court is not unsympathetic to that fear, but it is insufficient to confer standing.  Plaintiffs allege a concrete and particularized injury: that, should they actually be required to share their remote communication identifiers, their anonymous speech will no longer be anonymous.  And, in *anticipation* of this prospect, Plaintiffs refrain from engaging in anonymous speech so as to prevent future disclosure.  Yet therein lies the problem—Plaintiffs' fears are conjectural or hypothetical.  Plaintiffs "cannot manufacture standing by choosing to [take actions] based on hypothetical future harm that is not certainly impending."  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 402 (2013).  The Rule's relevant requirement is that the Doe Plaintiffs register their remote communication identifiers with their state.  Here, that state is California.  But California does not collect Plaintiffs' remote communication identifiers for two reasons: (1) it does not collect *any* registration information from Plaintiffs, and (2) it does not collect remote communication identifiers from *anyone* whose conviction predated January 1, 2017.

Of course, if California were to change course and reimpose registration requirements on Plaintiffs *and* require registrants to provide remote communication identifiers consistent with the Rule, Plaintiffs would have standing.  At that point as well, if they had engaged in anonymous speech in the meantime, such a policy change could expose that previously anonymous speech.  There would be, in a sense, no going back.  But that does not create standing today.  Such circumstances would require two substantial law changes in California and, assuming a lawsuit challenged the Rule and/or state statute in that situation, a finding that the Rule and statute can stand.  Each step the Court has identified before the Doe Plaintiffs could be actually harmed is more attenuated than the next.

There is simply no indication in the record that California has considered, is considering, or will consider reimposing Plaintiffs' registration requirements, much less that the other steps outlined above could or would follow.  Additionally, even if the Court were to strike down the Rule in its present format, the Attorney General could promulgate a new rule.  In that case, if Plaintiffs spoke anonymously in the interim and a future rule was upheld permitting registration of some remote communication identifiers, some of that anonymous speech might still be potentially revealed.  Finally, even if the Court struck down the Rule, nothing would stop California from choosing to impose its own statutory requirements that the Doe Plaintiffs register and provide remote communication identifiers—Rule or not, California could pass a law.  Of course, there is no evidence in the record that California is more likely to pass such a law because it is in the Rule or because it simply wants to.  The Rule has been in place for years and still California has not complied, which certainly cannot be taken to imply that California is itching to pass such a law and it is only a matter of time.  If anything, California's continued failure to come into compliance suggests the state affirmatively does not wish to comply.  Ultimately, there is no assurance that, were the Court to provide the relief Plaintiffs seek in this case, that Plaintiffs

would not operate under the same risk of eventual disclosure of their remote communication identifiers and therefore their presently anonymous speech.

If Plaintiffs were presently or imminently—by virtue, for example, of a statute currently under consideration in the state legislature—at risk for having their anonymous speech revealed through a registration requirement, the situation might be different. But there are too many occurrences that there is no evidence will happen that would have to happen for Plaintiffs' statements to actually be de-anonymized. And there is no guarantee that striking down the Rule would genuinely alleviate Plaintiffs' fears. As such, there is no standing on Plaintiffs' First Amendment claim.

## B. Delegation

Plaintiffs contend that the Rule is the result of an unconstitutional delegation of legislative power. (PMSJ at 9.) They characterize SORNA as "delegate[ing] to the Attorney General—the nation's chief prosecutor—the power to write his own criminal code governing the lives of hundreds of thousands of Americans." (Id.) Specifically, they challenge the Rule's exercise of authority under 34 U.S.C. §§ 20912 and 20914. (Id. at 9-10.)

34 U.S.C. § 20912 provides that "each jurisdiction shall maintain a jurisdiction-wide sex offender registry conforming to the requirements of this subchapter." Id. (a). It states that the "Attorney General shall issue guidelines and regulations to interpret and implement this subchapter." Id. (b). 34 U.S.C. § 20914 states that a sex offender "shall provide the following information to the appropriate official for inclusion in the sex offender registry" a series of specific pieces of information, such as his name, social security number, residential address, etc. Id. (a)(1-6). It also requires "[i]nformation relating to intended travel of the sex offender outside the United States, including any anticipated dates and places of departure, arrival, or return, carrier and flight numbers for air travel, destination country and address or other contact information therein, means and purpose of travel, and any other itinerary or other travel-related information required by the Attorney General." Id. (a)(7). Finally, the statute requires an offender to supply "[a]ny other information required by the Attorney General." Id. (a)(8). Plaintiffs challenge the specific delegations codified at 34 U.S.C. §§ 20912(b) and 20194(a)(8). (See PMSJ at 10-11.)

While Plaintiffs previously questioned the continued validity of the "intelligible principle" test in evaluating a delegation challenge, they now appear to accept that it carries the day. (PMSJ at 9-10; see also United States v. Motamedi, 2022 WL 101951, at *1 (9th Cir. Jan. 11, 2022) (acknowledging that "[w]e are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court".) That test directs that "[i]f Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to fix such rates is directed to conform, such legislative action is not a forbidden delegation of legislative power." J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409 (1928). In other words, "a delegation is permissible if Congress has made clear to the delegee 'the general policy' he

must pursue and the 'boundaries of [his] authority.'" Gundy v. United States, 588 U.S. 128, 146 (2019) (internal citation omitted).

Only twice ever—in 1935—has the Supreme Court found a delegation excessive, "in each case because 'Congress had failed to articulate *any* policy or standard' to confine discretion." Id. (citing Mistretta v. United States, 488 U.S. 361, 373 n. 7 (1989)). Since then, delegations have been upheld even though they are as broad as authority "to regulate in the 'public interest[,]'" "to set 'fair and equitable' prices and 'just and reasonable' rates[,]" and "to issue whatever air quality standards are 'requisite to protect the public health.'" Id. (internal citations omitted).

The broad principle underlying SORNA is "to protect the public from sex offenders and offenders against children" by "establish[ing] a comprehensive national system for [their] registration." Id. at 133 (quoting 34 U.S.C. § 20901). While this hardly represents a detailed and precise delegation of authority, it cannot be said that this provides *no* intelligible principle. Section 20912 is certainly broad in its authorization to issue guidelines and regulations related to the requirement that "[e]ach jurisdiction shall maintain a jurisdiction-wide sex offender registry conforming to the requirements of this subchapter." But it presents an intelligible principle, a clear direction to create a sex offender registry.

As the Court previously found, the delegation contained in 34 U.S.C. § 20914(a)(8) also survives. (See PI Order at 41.) Subsection (a)(8) authorizes the collection of "[a]ny other information required by the Attorney General" and follows a list of seven more specific categories of information to be collected. "[U]nder the established interpretative canons of *noscitur a sociis* and *ejusdem generis*, where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar to those enumerated by the specific words." Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler, 537 U.S. 371, 384 (2003) (internal quotations and citations omitted). The Court continues to agree with Defendants that the preceding information categories relate to offenders' identities, locations, and primary activities. (See PI Order at 41; DMSJ at 22.)

Plaintiffs also raise the argument that SORNA impermissibly delegates criminal lawmaking authority to the Attorney General, raising separation of powers issues. Yet as the Court previously noted, courts will uphold "delegations whereby the Executive or an independent agency defines by regulation what conduct will be criminal, so long as Congress makes the violation of regulations a criminal offense and fixes the punishment, and the regulations 'confin[e] themselves within the field covered by the statute.'" (PI Order at 42 (citing Loving v. United States, 517 U.S. 748, 768 (1996) (citation omitted)).) The Court's suggestion in Touby v. United States that "something more than an 'intelligible principle' is required when Congress authorizes another Branch to promulgate regulations that contemplate criminal sanctions," is belied by the plurality's decision in Gundy making use of the intelligible principle standard in a case involving just such a scenario. Touby v. United States, 500 U.S. 160, 165–66 (1991); Gundy, 588 U.S. at 135. Here, Congress has established the criminal offense—18 U.S.C. § 2250—along with fixing the punishment. And the regulations confine themselves to the

field covered by statute.  The Attorney General has not established, under the guise of SORNA, a registry for all people with red hair who will be punished absent proper registration.  Nor has the Attorney General required sex offenders to provide their shoe size to registries, when there is plainly no relation between the goals of sex offender registration and recording that information about an individual.  The delegation would not bear those exercises of authority, nor has the Attorney General attempted an exercise of authority outside of the delegation.

Binding precedent requires the conclusion that Congress did not impermissibly delegate authority to the Attorney General through 34 U.S.C. §§ 20912 and 20914(a)(8).  The PMSJ is **DENIED** and the DMSJ is **GRANTED** as to Claim One.

## C.  Meaning of "Convicted"

Mr. Doe #2 argues that the Rule's definition of "sex offender" violates the APA.  5 U.S.C. § 706.  SORNA defines a "sex offender" as "an individual who was convicted of a sex offense."  34 U.S.C. § 20911(1).[12]  The statute's only extrapolation on the meaning of "convicted" is that it "includes adjudicated delinquent as a juvenile" for offenses under certain conditions.  Id. (8).  28 C.F.R. § 72.2, a portion of the Rule, states that "[a]ll terms used in this part have the same meaning as in SORNA."  86 Fed. Reg. at 69884.  In response to a comment proposing that a "sex offender be removed from the sex offender registry if he receives a pardon," the Rule states that "only pardons on the ground of innocence terminate registration obligations under SORNA, see 73 FR at 38050, and the Attorney General has no authority to require registration jurisdictions to expunge the records of sex offenders who are pardoned in those jurisdictions."  86 Fed. Reg. at 69886.  The internal citation there refers to the 2008 Guidelines, which state:

> Because the SORNA registration requirements are predicated on convictions, registration (or continued registration) is **normally not required under the SORNA standards if the predicate conviction is reversed, vacated, or set aside, or if the person is pardoned for the offense on the ground of innocence.** This does not mean, however, that nominal changes or terminological variations that do not relieve a conviction of substantive effect negate the SORNA requirements.  For example, the need to require registration would not be avoided by a jurisdiction's having a procedure under which the convictions of sex offenders in certain categories (e.g., young adult sex offenders who satisfy certain criteria) are referred to as something other than "convictions," or under which the convictions of such sex offenders may nominally be "vacated" or "set aside," but the sex offender is nevertheless required to serve what amounts to a criminal sentence for the offense.  Rather, an adult sex offender is "convicted" for

---

[12] Defendants argue that John Doe #2 does not have standing to bring this claim because no commenter suggested during notice-and-comment on the Rule that it should address the meaning of "convicted," making the argument waived.  Because the Court ultimately finds for Defendants on this claim, the Court does not address this waiver issue.

SORNA purposes if the sex offender **remains subject to penal consequences based on the conviction, however it may be styled.** Likewise, the sealing of a criminal record or other action that limits the publicity or availability of a conviction, but does not deprive it of continuing legal validity, does not change its status as a "conviction" for purposes of SORNA.

73 Fed. Reg. at 38030 (emphasis added).

Plaintiffs do not believe that this is the best reading of the statutory text. Instead, they contend that, because "SORNA's regulatory scheme relies on state law to supply the predicate convictions for its registration requirements," so too should state law inform the meaning of "convicted." (PMSJ at 25.) Implicit in that argument is the notion that, if "convicted" was interpreted under state law, Mr. Doe #2 would not be considered "convicted." Defendants urge the Court to find that "convicted" is meant to be defined as a question of federal law, based on the "ordinary meaning" of the term. (DMSJ at 27.) But the Court need not go so far as to resolve whether a federal or state interpretation of "convicted" is appropriate—under Defendants' definition Mr. Doe #2 remains "convicted" *and* under Plaintiffs' preferred interpretive scheme Mr. Doe #2 remains "convicted."

Section 1203.4, the statute under which Mr. Doe #2 received relief, does not prevent a prior conviction from being used as an enhancement or predicate "in any subsequent prosecution." Cal. Pen. Code § 1203.4(a)(1). Additionally, absent additional relief, offenders must still register as sex offenders under California law. Cal. Pen. Code § 290.007.[13] Mr. Doe #2 makes much of this aspect, noting that registration is not considered a penal consequence, and that penal consequences must be different than collateral consequences, which are not included in 2008 Guidelines interpretation. But a conviction's relevance for enhancement or predicate purposes is not collateral, it is penal. It serves to prove or enhance a future offense, and to potentially affect the custodial consequences of such an offense.

While Section 1203.4 may allow a defendant to "truthfully represent to friends, acquaintances and private sector employers that he has no conviction," People v. Arata, 151 Cal. App. 4th 778, 788 (2007), for the government's purposes and in important legal contexts, "the nature of the relief available under section 1203.4 does not vacate or void a conviction"—"[i]t does not . . . act to nullify, annul, cancel, or make void a conviction." People v. E.B., 51 Cal. App. 5th 47, 57-58 (2020). (See also People v. Vasquez, 25 Cal. 4th 1225, 1230 (2001) ("[Penal Code] section 1203.4 does not, properly speaking, 'expunge' the prior conviction. The statute does not

---

[13] The statute also does not restore various other rights, like driving, possessing a firearm, or holding public office, nor does it affect suspension of certain professional licenses or employment qualifications. See Cal. Penal Code § 1203.4(a)(1-3); Meyer v. Bd. of Med. Examiners, 34 Cal. 2d 62, 66-67 (1949); In re Phillips, 17 Cal. 2d 55, 60-61 (1941); Copeland v. Dep't of Alcoholic Beverage Control, 241 Cal. App. 2d 186, 188-89 (1966); People v. Hamdon, 225 Cal. App. 4th 1065, 1071 (2014).

purport to render the conviction a legal nullity. . . . The limitations on this relief are numerous and substantial[.]")

Because either interpretation of "convicted" still covers Mr. Doe #2, the DMSJ is **GRANTED** and the PMSJ is **DENIED** as to Claim Two.

**D.  Due Process**

Plaintiffs argue that the Rule and 18 U.S.C. § 2250 together presume that defendants voluntarily failed to register until they prove otherwise, which they assert is a due process violation. (PMSJ at 17.) It is undisputed that the Doe Plaintiffs cannot register because the state of California will no longer accept their registrations. (Doe #2 Decl., Ex. B-C; Doe #3 Decl., Ex. C-D; Doe #4 Decl., Ex. B-C.) The Rule, however, requires each Doe Plaintiff to register and otherwise comply with the Rule's requirements. (Doe #2 Decl. ¶ 8; Doe #3 Decl. ¶ 9; Doe #4 Decl. ¶ 12.) Defendants argue that the existence of a knowledge requirement and an affirmative defense eliminate any due process concerns Plaintiffs raise. (DMSJ at 32.)

SORNA defines a "sex offender" as "an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1). The Act requires a sex offender to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913(a). To keep his registration current, "[a] sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved . . . and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." Id. § 20913(c). Under SORNA, a "sex offender registry" is a "registry of sex offenders, and a notification program, maintained by a jurisdiction," which includes each state. Id. § 20911(9), (10).

Pursuant to 18 U.S.C. § 2250, it is a crime for a person who is "required to register" under SORNA to "travel[] in interstate or foreign commerce" and while that person "knowingly fails to register or update a registration as required by" SORNA. 18 U.S.C. § 2250(a); see also Gundy, 139 S. Ct. at 2121 (2019) ("Any person required to register under SORNA who knowingly fails to do so (and who travels in interstate commerce) may be imprisoned for up to ten years."). The statute also contains an affirmative defense, comprised of three elements:

(1)  uncontrollable circumstances prevented the individual from complying;
(2)  the individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and
(3)  the individual complied as soon as such circumstances ceased to exist.

18 U.S.C. § 2250(c).

A simple overarching principle guides the Court's analysis: "In the criminal law, both a culpable *mens rea* and a criminal *actus reus* are generally required for an offense to occur." United

States v. Apfelbaum, 445 U.S. 115, 131 (1980).  Here, Plaintiffs contend, and the Court agrees, that the *actus reus* in this offense is the failure to register "as required," and the *mens rea* is the knowledge of the requirement to register.[14]  (PMSJ at 17.)  As discussed above, the Rule specifically acknowledges a scenario such as when Plaintiffs are unable to register:

> Notwithstanding the absence of a parallel state law, the registration authorities in the state may be willing to register the sex offender because Federal law ( *i.e.,* SORNA) requires him to register. . . . If the state registration authorities are willing to register the sex offender, he is not relieved of the duty to register merely because state law does not track the Federal law registration requirement. . . . **Hence, sex offenders can be held liable for violating any requirement stated in this rule, regardless of when they were convicted, and regardless of whether the jurisdiction in which the violation occurs has adopted the requirement in its own law.** This does not mean, however, that SORNA unfairly holds sex offenders liable for failing to comply with its requirements, where the requirement is unknown to the sex offender or impossible for him to carry out. . . . Federal enforcement of SORNA's requirements occurs primarily through SORNA's criminal provision, 18 U.S.C. 2250. **That provision makes it a Federal crime for a person required to register by SORNA to knowingly fail to register or update a registration as required by SORNA under circumstances supporting Federal jurisdiction**, such as conviction of a Federal sex offense or interstate or foreign travel. As discussed below, section 2250 holds sex offenders liable only for violations of known registration obligations, and it excuses failures to comply with SORNA under certain conditions if the noncompliance results from circumstances beyond the sex offenders' control.

86 Fed. Reg. 69868 (emphasis added).  The enacted rule states that:

> A sex offender who does not comply with a requirement of SORNA in conformity with the time and manner specifications of paragraphs (a) through (f) of this section must comply with the requirement in conformity with any applicable time and manner specifications of a jurisdiction in which the offender is required to register.

28 C.F.R. § 72.7(g)(1).  It also clarifies that:

> In a prosecution under 18 U.S.C. 2250, paragraph (g)(1) of this section does not in any case relieve a sex offender of the need to establish as an affirmative defense an

---

[14] Someone must also travel in interstate or internationally, but that is not the crux of the statute, which cares about registration and simply must have an interstate element to pass constitutional muster.  In any event, the Doe Plaintiffs all traveled interstate during the pendency of this case.

inability to comply with SORNA because of circumstances beyond his control as provided in 18 U.S.C. 2250(c) and § 72.8(a)(2).

Id. (g)(2).

The Court begins with a discussion of the knowledge requirement.  Defendants argue that the knowledge requirement in Section 2250(a)(3) provides due process protection to a defendant through an "enhanced" *mens rea* requirement: "if the only registration requirements at issue are federal, the government would have to prove knowledge of a requirement to registser [sic] under federal law."  (DMSJ at 35.)  There are several problems with this perspective.  First, it is not clear that the Ninth Circuit's interpretation of Section 2250's knowledge requirement accommodates Defendants' interpretation.  The panel in United States v. Crowder held that Section 2250(a)(3) "require[es] the government to prove that a convicted sex offender knew of a registration requirement and knowingly failed 'to register or update a registration.' It does not require the government to prove that the sex offender also knew that the failure to register violates SORNA."  56 F.3d 870, 876–77 (9th Cir. 2011).  Of course, Crowder arose in a context where there was a state registration requirement, and the panel's position clarified that only knowledge of a general registration requirement was necessary, not further knowledge of a federal registration requirement.  But its language is still clear that knowledge of a federal requirement is insufficient.

Even beyond the potential implications of Crowder, there is a more significant problem: many people—including the Doe Plaintiffs—know that they have a federal registration obligation.  It is cold comfort, and no "enhanced" protection whatsoever, to the vast majority of potential defendants in the Doe Plaintiffs' situation that there is a knowledge requirement they obviously satisfy.  Perhaps for someone who doesn't know of a federal registration requirement this assists them, but then Defendants' position only helps those who are walking around in ignorant bliss, and not people like the Doe Plaintiffs who have sought to register and been prevented from doing so.  In other words, a person who *does* know there is a federal registration requirement, and who *tries* to do the right thing by attempting to register but cannot, has handed the Government more or less irrefutable proof of the knowledge requirement that Defendants apparently think protects the Doe Plaintiffs.

Plaintiffs in this case now face an extensive record before this Court making it a virtual certainty that, under Defendants' standard for knowledge, the Government could easily carry its burden on that element.  The case before this Court involves three individuals who have made their best efforts at compliance, and yet this "enhanced procedural protection" offers them no relief from the risk of prosecution.  It cannot be, then, that this knowledge requirement—one that specifically punishes those who are trying their best to abide by the requirements they know about—does anything to alleviate concerns about due process.

Having once again determined that Section 2250's knowledge *mens rea* requirement does not to satisfy the due process concerns Plaintiffs identify, the Court turns to the issue of the affirmative defense.  Defendants continue to argue that Plaintiffs' concerns with the affirmative defense amount to an expectation that the Government disprove every possible defense to the

statute.  (DMSJ at 34 (citing Patterson v. New York, 432 U.S. 197, 210 (1977) ("Proof of the nonexistence of all affirmative defenses has never been constitutionally required[.]))).)  Once again, the Court emphasizes that this is simply not Plaintiffs' argument.  Plaintiffs' concern is that the affirmative defense in this statute shifts the burden of proving an essential element of the offense to a defendant.  The critical rule is this: "[A] State must prove every ingredient of an offense beyond a reasonable doubt, and . . . it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense."  Patterson v. New York, 432 U.S. at 215.  Failure to register "as required" is surely an ingredient of the offense; it is the *actus reus* of the offense.  Yet the statute allows the Government to prove mere evidence of not being registered, paired with the *mens rea*, to stand in for full proof of the *actus reus*.  The statue allows the Government to force a presumption, by virtue of proving there has been no registration and that the defendant knew he had to register, that an *actus reus* of non-registration has occurred.  But where a Plaintiff by operation of state law—not some hypothetical, individualized "uncontrollable circumstance"—cannot register, there has been no *actus reus*, no affirmative choice, for example, not to register.  The act of non-registration is not inherently the same thing as not being registered.  The act of non-registration implies that an action of some kind has been taken to not register, while not being registered simply indicates that, for some reason, registration didn't occur.  The statute thus permits the Government to use incomplete proof of an *actus reus*, paired with proof of the *mens rea*, to presume the remainder of the *actus reus* of non-registration.  That is precisely what Patterson forbids.

Defendants point out that "Plaintiffs offer no principled distinction between offenders who cannot register because California will not let them, and other offenders who cannot register due to some other 'uncontrollable circumstance.'"  (Id.)  The reason is perhaps painfully simple: requiring an individual to raise the affirmative defense for other "uncontrollable circumstances" may also be a problem.  Ultimately, that is not the issue before the Court, so the Court confines itself only to failures to register based on California's refusal to register.  To the extent that the Court's preliminary injunction (and permanent injunction, as spelled out in this order) devises a mechanism for protecting people whose uncontrollable circumstance is that they cannot register due to California's refusal to accept their registration, that is simply a product of the issue presented to the Court in this case.  The Court has not been asked to impose an injunction protecting those with other uncontrollable circumstances.  But the fact that other uncontrollable circumstances might exist that are based on a presumption and presently require raising an affirmative defense does not count against Plaintiffs—it weighs in their favor.

The real crux of the issue seems to be that few statutes impose criminal liability for a person's failure to act, which is the case with Section 2250.  Typically, proof that a person did a specific affirmative act—for example, the injuring of another or the taking of another's property—properly establishes the *actus reus* of an offense without a presumptive leap.  Section 2250 is somewhat unusual: it provides for the possibility of a completed *actus reus* without any action taken whatsoever.  And on top of that, the *actus reus* is paired with only a knowledge requirement as its *mens rea*, not some higher standard like intent.  Defendants themselves provide an example of a statute featuring an *actus reus* of non-action, but with a more stringent *mens rea*.  California Penal Code § 270 states that "[i]f a parent of a minor child willfully omits, without

---

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk MG

lawful excuse, to furnish necessary clothing, food, shelter or medical attendance, or other remedial care for his or her child, he or she is guilty of a misdemeanor." This statute, like Section 2250, contains an *actus reus* of non-conduct—the omission of care. Unlike Section 2250, however, it contains a *mens rea* of "willfully." Thus, even though a presumptive leap might be made that failure to do something was the product of non-action, a person is only culpable where the non-action is proven to be willful, as opposed to accidental or as the product of being prevented from doing something. That it certainly a more "enhanced" *mens rea* than "knowledge."

An affirmative defense does not fix this problem. Because there is a presumptive leap between not being registered and proving an *actus reus* of non-registration, the burden shifts to a defendant to prove the affirmative defense without the Government ever having to carry the true burden of proving the *actus reus*. This is not so in, for example, a self defense case. There, the Government would have to prove the affirmative *actus reus* that a person harmed another person, along with the requisite *mens rea*. Only then, with all essential ingredients proven by the Government, does the burden shift to a defendant to explain why all of that was justified by self defense. There is no presumptive leap between proving that one person shot another person and proving that the *actus reus* of one person shooting another person has occurred. The proof of the occurrence is the proof of the *actus reus* without any need for inference or assumption that a relevant action has occurred. In that case, it does not offend due process to then shift the burden to a defendant. But here, the Government essentially gets to skip a step in carrying its evidentiary burden, prematurely imposing it on a defendant. That is simply not how criminal liability works in this country.

Defendants' references to impossibility defenses as constitutionally sufficient in other statutes are unavailing. (See DMSJ at 33 fn. 35.) For example, 18 U.S.C. § 1204 features an impossibility defense, but it also contains an intent requirement that must be proven by the Government. As the Court previously acknowledged in its PI Order, this case might look very different if Congress had phrased Section 2250 with an intent requirement because it would then place the burden on the Government to affirmatively prove that individuals like Plaintiffs had intent not to register, which functions to close the gap on the *actus reus* side. Though this issue is not squarely before the Court, it is likely that such a requirement would address the critical deficiencies here because it would be difficult, if not impossible, for the Government to prove that individuals like Plaintiffs, who *want* to comply but *cannot*, had a *mens rea* of intent not to register. The Court takes no position on the validity of Section 1204, which is not before the Court, but notes that the existence of an intent requirement in the affirmative case the Government must prove makes it wholly distinct from the statute at issue in this case. Similarly, California Penal Code § 270 also contains an impossibility affirmative defense, but it is attached to a statute with a stronger "willfully" *mens rea* requirement.

By Congress writing this statute as it did, and by the Attorney General interpreting it as it has in the Rule, the Executive and Legislative branches have tread too far onto criminal defendants' constitutional rights. Defendants catastrophize about their view that Plaintiffs' interpretation of the statute would require them to disprove an unlimited slew of "uncontrollable

---

circumstances" and that every affirmative defense is violative of due process. But that is hardly the case here, or in many statutes. For one, Plaintiffs here only raise the issue of inability to register by virtue of state law, so the Court's remedy is limited to that issue. The Court will not order the Government do more than what solves the precise problem raised here. Further, to the extent the list of "uncontrollable circumstances" the Government must prove to avoid the presumptive *actus reus* leap could grow with future litigation, that is a sign of a poorly written law, not an overbearing constitutional due process obligation. As to other affirmative defenses, where proof that an act occurred requires no presumptive leap to establish the *actus reus* and/or where a more robust *mens rea* requirement exists to help close that gap, affirmative defenses remain appropriate. But an affirmative defense is insufficient where, as here, the underlying statute is defective by permitting a presumptive leap to constitute proof of an essential element.

Defendants also argue that the statute's facial allocation of burdens "makes sense" because "the offender is best equipped to know whether such [uncontrollable] circumstances exist and what they are." (Id.) Yet where the "uncontrollable circumstance" is the state's refusal to register the Doe Plaintiffs, the Doe Plaintiffs are not "best equipped" to provide that information relative to the Government. The Government regularly reviews California's compliance with SORNA and knows where it fails to align. It is no harder for the Government, if it wants to prosecute a person for failure to register, to confirm with the state that it is even possible for a person to register than it is for the person to do so. This is not an unusual or highly individualized "uncontrollable circumstance." The Court is not imposing an injunction whereby the Government must contact every hospital in the state to confirm that a defendant was not under anesthesia at the time a defendant failed to comply with SORNA in order to bring a prosecution. The Court is not imposing an injunction whereby the Government must review traffic cameras from the day a defendant was due to register in person to confirm that there wasn't a foot of snow burying the defendant's street. SORNA requires states to comply with federal registration standards, and the Government performs periodic reviews. A state's unwillingness to register a defendant consistent with the Government's expectations is precisely within the Government's knowledge as an entity that oversees and documents state compliance.

Finally, as a practical matter, the existence of an affirmative defense does not address the potential burden on a defendant who is likely to win but must still set his case before a jury to make use of the defense. Conviction is not the only cost of prosecution. Prosecution is a public ordeal, one in many cases involving arrest, confinement, and protracted proceedings. A person whose community does not know their status as a person who has been convicted of a sexual offense—in this case specifically because he has earned from the state the right not to disclose that information due to his rehabilitation—can face meaningful, life-altering prejudice and consequences merely by virtue of being charged. That a person could, if he properly raises the affirmative defense and the jury accepts it, be acquitted does not repair the harm already done by the allegation and the ordeal of fighting a case. Of course, many defendants might prevail on an affirmative defense under another statute and the fact that they had to endure prosecution does not invalidate the statute. But this case presents a scenario where the bar is too low for the Government to bring a facially meritorious claim and thrust a defendant into an affirmative burden to overcome the prosecution. That is not a proper balancing of burdens. Nor is it enough

---

to trust that some, or even most, prosecutors might never bring such charges. The Rule's clear statement that a defendant is not relieved of his or her burden by a state's refusal to register contemplates the prospect of prosecution and the necessity of raising an affirmative defense.

For the foregoing reasons, the PMSJ is **GRANTED** as to Claim Three; the DMSJ is **DENIED** as to that claim.

## V.      PERMANENT INJUNCTION

Having decided in Plaintiffs' favor on their due process claim, the Court must now fashion the appropriate relief. Federal Rule of Civil Procedure 65(d) sets forth the requirements for issuing an injunction. In order to issue an injunction, the Court must:

(A) state the reasons why it issued;
(B) state its terms specifically; and
(C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.

Fed. R. Civ. Pro. 65(d)(1). The parties have not otherwise addressed the scope or contours of an injunction in their pleadings. The Court finds that the terms of the preliminary injunction are the proper terms of a permanent injunction.

The federal government is **ENJOINED** from prosecuting any California resident under 18 U.S.C. § 2250 for any violation of SORNA, the Rule, or any other regulation, without first abiding by the following requirements:

(1) In all such prosecutions, the federal government must seek and obtain certification from the State of California that the individual was required to register under California law.
(2) In a prosecution concerning a failure to provide specific information required by statute or regulation (as opposed to a failure to register altogether), the federal government must seek and obtain certification from the State of California that California law allows the individual to furnish that information to state authorities.

## VI.      CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Applications (Dkt. Nos. 134-35, 139-40), **GRANTS-IN-PART** the PMSJ, **GRANTS-IN-PART** the DMSJ. The Court enters the above injunction and **DISMISSES** Claims One, Two, and Four of the First Amended Complaint **WITH PREJUDICE** as against all Defendants. The April 13, 2026, hearing is **VACATED**. Judgment shall issue accordingly, and the Clerk of the Court is **DIRECTED** to close this case.

**IT IS SO ORDERED.**